## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

              Plaintiff,

   v.

SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,

              Defendants.

Case No: 3:21-cv-00933-JAM

December 1, 2022

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL PLAINTIFF CONSERVATION LAW FOUNDATION, INC.'S
RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES, SECOND
SET OF REQUESTS FOR PRODUCTION, AND
AMENDED REQUEST FOR PRODUCTION NO. 1**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

BACKGROUND ..................................................................................................4

LEGAL STANDARD ..........................................................................................6

ARGUMENT .......................................................................................................7

I.    CLF'S OBJECTION REGARDING FACTUAL MATERIAL
DEVELOPED BY EXPERTS IS IMPROPER AND CONTRARY TO
THIS COURT'S ORDER .........................................................................7

II.    CLF'S RESPONSES TO INTERROGATORY NOS. 18, 19 AND 20
ARE INCOMPLETE AND EVASIVE ...................................................13

III.    CLF'S RESPONSE TO DEFENDANTS' INTERROGATORY NO. 17
SEEKING CLF'S KNOWLEDGE OF PAST "INCIDENCES" OF
STORM SURGE FLOODING ON THE TERMINAL IS NON-
RESPONSIVE ........................................................................................16

IV.    CLF'S RESPONSES TO INTERROGATORY NOS. 21 AND 24 ARE
NON-RESPONSIVE ...............................................................................17

V.    CLF MUST PROVIDE DOCUMENTS IN ITS POSSESSION THAT
NEGATE THE ALLEGATIONS IN ITS NOTICE OF INTENT AND ITS
AMENDED COMPLAINT .....................................................................19

VI.    CLF MUST CLARIFY WHETHER IT IS WITHHOLDING
DOCUMENTS RESPONSIVE TO RFP NO. 46 ..................................20

VII.    CLF IMPROPERLY OBJECTS ON PRIVILEGE GROUNDS AND
IMPROPERLY IDENTIFIES A PRIVILEGE FOR "INTERNAL
COMMUNICATIONS"...........................................................................21

CONCLUSION ...................................................................................................24

## **TABLE OF AUTHORITIES**

**Federal Court Cases**

*Aidoo v. Cela*,
 No. 3:16-CV-147(VAB), 2018 WL 6435650 (D. Conn. Dec. 7, 2018)...................................21

*Charter Practices Int'l, LLC v. Robb*,
 No. 3:04–CV–01897, 2014 WL 273855 (D. Conn. Jan. 23, 2014) ....................................7, 10

*Clark v. Quiros*,
 No. 3:19-CV-575(VLB), 2022 WL 3716355 (D. Conn. Aug. 29, 2022)...............................12

*Deangelis v. Corzine*,
 No. 1:11-CV-07866-VM-JCF, 2016 WL 93862 (S.D.N.Y. Jan. 7, 2016) .............................12

*Higher One, Inc. v. TouchNet Info. Sys., Inc.*,
 298 F.R.D. 82 (W.D.N.Y. 2014) .........................................................................................12

*In re NTL, Inc. Sec. Litig.*,
 244 F.R.D. 179 (S.D.N.Y. 2007) .........................................................................................21

*Neal v. Elec. Boat Corp.*,
 No. 3:07-CV-00700, 2009 WL 10687910 (D. Conn. Feb. 3, 2009) ......................................17

*Perry v. Schwarzenegger*,
 591 F.3d 1147 (9th Cir. 2010)..............................................................................................24

*Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014) ...............................................12

*Schanfield v. Sojitz Corp. of Am.*,
 258 F.R.D. 211 (S.D.N.Y. 2009) .....................................................................................22, 23

*Sexual Minorities of Uganda v. Lively*,
 No. 3:12-30051, 2015 WL 4750931 (D. Mass. Aug. 10, 2015) ......................................23, 24

*United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers
 of Am., AFL-CIO*,
 119 F.3d 210 (2d Cir. 1997)..................................................................................................23

*Whitserve LLC v. Computer Patent Annuities N. Am., LLC*,
 No. 3:04–CV–01897, 2006 WL 1273740 (D. Conn. May 9, 2006) ...................................7, 10

**Federal Rules**

Fed. R. Civ. P. 26(a)(2)(b) ...........................................................................................................12
Fed. R. Civ. P. 26(b)(1)...............................................................................................................6, 7
Fed. R. Civ. P. 26(b)(4)............................................................................................................11, 12
Fed. R. Civ. P. 33 ......................................................................................................................6, 7, 17
Fed. R. Civ. P. 34 ......................................................................................................................6, 7, 20
Fed. R. Civ. P. 37 ......................................................................................................................6, 7, 24

## INTRODUCTION

This is the second time that Plaintiff Conservation Law Foundation, Inc.'s ("CLF") evasive and incomplete discovery responses have required Defendants to seek relief from this Court. As set forth in Defendants' August 24 Motion to Compel Responses to Defendants' First Set of Interrogatories and Requests for Production ("Defendants' First Motion to Compel"), ECF No. 103, despite litigating this case for over a year, CLF has still not provided Defendants with the factual bases for its allegations and claims in this case. While styled as a citizen suit alleging violations of the Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA"), CLF has made this case – and discovery in particular – far more expansive than necessary to address the narrow permit-related allegations contained in CLF's Amended Complaint ("Amended Complaint"). CLF's theory, that the New Haven bulk fuel terminal ("Terminal") at issue in this case is not prepared for future precipitation and flooding risks exacerbated by climate change, reaches far beyond the four corners of Terminal's permit. This case, like the other nearly identical suits CLF has filed against operators of New England fuel terminals,[1] is a stalking horse designed to advance CLF's preferred policy on climate change. It is not a reflection of what the regulatory regime actually is, but instead, what CLF *wishes* it was. CLF has not even articulated – as it must – the regulatory standards that it claims exist and were violated. Instead, CLF has pled its claims in a vague and conclusory fashion, and provided incomplete and evasive answers to discovery requests seeking to elicit this *factual* information.

---

[1] *Conservation Law Found., Inc. v. ExxonMobil Corp.*, No. 1:16-cv-11950-MLW (D. Mass) (filed Sept. 26, 2016); *Conservation Law Found., Inc. v. Shell Oil Prods. US, et al.*, No. 1:17-cv-396-WES-LDA (D.R.I) (filed Aug. 28, 2017); *Conservation Law Found., Inc. v. Gulf Oil Ltd. P'Ship*, No. 3:21-cv-932-KAD (D. Conn.) (filed July 7, 2021); *see also* Ltr. from Christopher M. Kilian, CLF to Eddie Soberal, Operations Sup., New Haven Terminals, Magellan Midstream Partners, L.P. (July 28, 2020), https://www.clf.org/wp-content/uploads/2020/07/New-Haven-NOI-Letters.pdf, 32; Ltr. from Christopher M. Kilian, CLF to Steven Cipullo, Terminal Manager, Sprague Twin Rivers Technology Terminal (May 19, 2021), https://www.clf.org/wp-content/uploads/2021/05/Sprague-TRT-Notice-of-Intent_FINAL.pdf.

Following receipt of CLF's notice letter, Defendants engaged in pre-suit discussions with CLF to attempt to understand the basis of its concern, but to no avail – no information was provided, and CLF proceeded to file suit. The Amended Complaint is virtually silent when it comes to identifying any actual specific deficiencies with the Terminal or specific standards that CLF alleges apply to support its claims that Defendants have somehow violated the Connecticut General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit"). CLF has yet to identify a cognizable standard by which it contends the Terminal should allegedly be held.[2]

Defendants sought these specific facts – which provide the basis for CLF's allegations – through written discovery. While Defendants' First Set of Interrogatories to CLF requested that CLF state these facts, following the hearing on Defendants' First Motion to Compel and in keeping with the Court's guidance, Defendants propounded a Second Set of Interrogatories designed specifically to elicit those *factual* contentions. Those facts include: the elements of the analysis that CLF claims is required by the General Permit (i.e., what year storm event should have been evaluated – 25 year, 100 year, 500 year, or some other number, what level of sea level rise should have been considered and based on what data set, and by what year should those calculations be based – 2030, 2050, etc.).

Although the Court clarified during a September 19 hearing on Defendants' First Motion to Compel that CLF could not "withhold responsive facts known to it, merely because those facts are in the possession of experts," CLF continues to provide incomplete, evasive responses that do

---

[2] CLF's allegations and discovery responses indicate that CLF has considered the standards, but that it will not tell Defendants the applicable standards that CLF contends apply in response to the Requests. Instead of committing to a standard by which the Terminal should be held, CLF vaguely refers to "examples" of what these standards "might" be. *See infra* Section II.

not address the actual discovery requests and hide behind the expert discovery schedule claiming that the issues are premature. This is not so. Defendants are only seeking facts.

CLF's general objections and refusal to identify the facts underlying its Amended Complaint not only run afoul of the Federal Rules of Civil Procedure, but also have resulted in unnecessary delay and expense of litigating this motion. If CLF's allegations are not based on specific standards or alleged deficiencies, CLF should so state. As discussed in Defendants' Opposition to Plaintiff's Motion for Enlargement of Case Management Deadlines and Counterproposal for Advancement of Schedule for Limited Discovery and Briefing of Early Motion for Summary Judgment, ECF No. 128, the threshold question that will resolve most, if not all, of the issues in this case is whether the permitting regime requires the analysis that CLF claims. Defendants believe that it is clear that the General Permit unambiguously does not impose such a requirement and plan to file a dispositive motion on that point. Defendants are entitled to know the factual basis for CLF's claims in order to properly defend the case – including filing dispositive motions at the earliest opportunity to bring an end to this litigation. It is fundamentally unfair for CLF to lie behind the proverbial "log" and not reveal those facts until expert discovery.

With each evasive and incomplete discovery response, Defendants become increasingly concerned that instead of having a factual basis for its allegations, CLF brought this case as part of a policy preference that CLF is attempting to force through litigation, rather than the appropriate regulatory process. CLF should have had a *reason* underlying its belief that Defendants' have failed to comply with the requirements of the General Permit and/or RCRA. That reason should be based upon specific facts that CLF contends the General Permit required. CLF continues to respond to requests seeking information regarding this underlying reason with

broad conclusory statements regarding its belief and an explanation that the experts will opine on these topics. That approach distorts how the federal rules work. The federal rules require CLF to have had a factual foundation about the specific permit requirements *prior* to filing suit. Litigation is not an opportunity to propound broad discovery requests in an attempt to find factual support for a claim *after* filing a complaint.

Through the meet and confer process, the parties were able to narrow the scope of some discovery disputes. CLF has committed to producing documents responsive to Defendants' Requests and supplementing its privilege log so that it fully complies with the parties' Electronically Stored Information Agreement by December 2.[3] On other issues, the parties are at an impasse. Defendants therefore now move to compel full and complete responses to Interrogatory Nos. 17, 18, 19, 20, 21, 22, and 24; Amended Request for Production No. 1; and Request for Production Nos. 43, 45, 46, 47, and 48. For the reasons discussed below, this Court should grant Defendants' motion to compel in its entirety, thus ensuring Defendants receive the foundational information to defend their case.

## BACKGROUND

CLF's lawsuit is a citizen suit brought under the CWA and RCRA. All but one of CLF's twelve remaining causes of action are CWA claims through which CLF seeks to enforce the terms of the General Permit at the Terminal. Despite the voluminous, 500-plus-paragraph Amended Complaint, CLF does not actually aver specific factual allegations supporting CLF's claims that Defendants have violated the CWA or RCRA. *See* ECF No. 50-1.

Defendants filed a motion to compel CLF's responses to Defendants' First Set of Interrogatories and Request for Production on August 24, 2022 raising many of the same issues

---

[3] Defendants continue to reserve their rights to challenge the privilege log if the parties reach an impasse through the meet and confer process.

that Defendants raise again in this motion. ECF No. 103. The Court granted in part Defendants'
motion on September 21, 2022. ECF No. 113. As instructed by the Court, on September 23,
2022, Defendants served their Amended Request for Production No. 1. Ex. A. On October 2,
2022, Defendants served their Second Set of Interrogatories ("Interrogatories") and Second Set
of Requests for Production ("RFPs") (collectively, "Requests"). Ex. B, C. Citizen suits brought
under CWA and RCRA are facility-specific and permit-specific, and the Defendants' Requests
are targeted at understanding what was allegedly done to violate those statutes.

CLF responded to Defendants' Amended Request for Production No. 1 on October 24,
2022, raising numerous objections and failing to fully answer. Ex. D. In its November 1, 2022
Responses to Defendants' Second Set of Interrogatories ("Interrogatory Responses") and
Responses to Defendants' Second Set of Requests for Production of Documents ("RFP
Responses") (collectively, "Responses"), CLF again raised numerous objections, gave evasive
answers, and refused to respond to two Interrogatories. Exs. E, F. CLF also provided no
documents responsive to Defendants' Second Set of Requests for Production.

On November 16, 2022, in a good-faith attempt to resolve the discovery disputes,
Defendants sent CLF a letter setting forth the deficiencies with CLF's Responses. Ex. G (Ltr.
from M. Morgan, Beveridge & Diamond to E. Petersen, Kanner & Whiteley (November 16,
2022)). On November 22, 2022, Defendants and CLF met and conferred to discuss CLF's
objections and lack of responses. Ex. H (Email from M. Morgan, Beveridge & Diamond to A. St.
Pierre, CLF (November 23, 2022)). During the meet and confer, CLF agreed to provide a
supplemental response to Interrogatory No. 21, respond to Interrogatory No. 24, and consider
supplementing its response to Interrogatory No. 17. *Id.* CLF also agreed to consider
supplementing its responses to RFP No. 43 and Amended RFP No. 1, and stated that it would

confirm that it is not withholding documents responsive to Amended RFP No. 1, and RFP Nos. 43, 45, 46, 47, and 48. *Id.* CLF committed to providing a production of documents responsive to Defendants' First and Second Set of Requests for Production of Documents, and providing a revised first privilege log by December 2.[4] *Id.*

On November 30, CLF responded to Defendants' November 23 email providing some supplemental responses and addressing some of Defendants' concerns regarding CLF's objections. Ex. J. (Letter from A. St. Pierre, CLF to M. Morgan, Beveridge & Diamond (November 30, 2022)). Based on CLF's November 30 response, Defendants responded that the parties are at an impasse on several of the Requests and asked for further clarification on CLF's position on RFP No. 46. Ex. K (Email from M. Morgan, Beveridge & Diamond, to A. St. Pierre, CLF (November 30, 2022)). As of 8:30 p.m. on December 1, CLF has not responded. Pursuant to the schedule set by the Court and according to Federal Rules of Civil Procedure 33, 34, and 37, Defendants file the instant motion to compel proper and sufficient responses to Interrogatory Nos. 17, 18, 19, 20, 21, 22, and 24, Amended Request for Production No. 1, and RFP Nos. 43, 45, 46, 47, and 48.

## LEGAL STANDARD

Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). This scope of discovery also applies to the scope of information that can be

---

[4] As of December 1, Defendants have received no documents in response to Defendants' Second Set of Requests for Production. Further, CLF has not yet provided a revision to its August 24 privilege log, despite the Court's September 21 Order for the parties to meet and confer on the privilege log. Defendants raised issues with CLF's August 24 privilege log on September 13. CLF responded on October 3 asking for clarification on Defendants' position. Defendants' provided clarification on October 19, and followed up again on November 16, and have not yet received a written response or a revision to the privilege log. *See* Ex. I (Email from M. Morgan, Beveridge & Diamond, to E. Petersen, Kanner & Whiteley (November 16, 2022)).

asked of a party through an interrogatory or a request for production of documents. *Id.* 33(a)(2); 34(a).

"[A]nswers to interrogatories and production requests must be full and complete, not evasive." *Charter Practices Int'l, LLC v. Robb*, No. 3:04–CV–01897, 2014 WL 273855, at *1 (D. Conn. Jan. 23, 2014). "The party answering an interrogatory is under an obligation to respond separately, fully and truthfully . . . answers must be responsive, complete, and not evasive." *Whitserve LLC v. Computer Patent Annuities N. Am., LLC*, No. 3:04–CV–01897, 2006 WL 1273740, at *3 (D. Conn. May 9, 2006) (internal quotation marks and citations omitted).

"[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Accordingly, if a party provides "an evasive or incomplete disclosure, answer, or response[,]" to an interrogatory submitted under Rule 33 or a request for production served under Rule 34, then the requesting party "may move for an order compelling an answer . . . ." *Id.* 37(a)(3), (a)(4). "The courts have consistently held that they have the power to compel adequate answers. This power is recognized and incorporated into the rule." Fed. R. Civ. P. 37 advisory committee notes to 1970 amendment.

## ARGUMENT

**I.    CLF'S OBJECTION REGARDING FACTUAL MATERIAL DEVELOPED BY EXPERTS IS IMPROPER AND CONTRARY TO THIS COURT'S ORDER**

- **Interrogatory No. 17: Paragraphs 393, 418, and 424 of the Complaint refer to alleged "past incidences of storm surge flooding" citing "supra." Describe any past incidences of storm surge flooding on the Terminal property that You have knowledge of, the basis of this knowledge (including Identifying any Document Relating to this knowledge), and cite to any paragraph(s) of the Complaint that Describe such incidences, if any.**

- **Interrogatory No. 18: Paragraph 231 of the Complaint alleges that "[t]he Terminal is at severe risk of flooding from (a) storm surge, (b) sea level rise, and (c) increasing ocean temperatures." If you contend that the currently effective General Permit for the Discharge of Stormwater Associated with**

**Industrial Activity issued by CT DEEP requires a permittee to address these risks in its SWPPP and Defendants have failed to do so, please Describe:**

- o **(i) What standard or level of storm surge does the current Permit require be addressed? For example, if measured in feet, how many feet? Or if measured as a category of storm or hurricane (Category 1, 2, 3, etc.), which category? If measured in some other way(s), please use Your best efforts to Describe with specificity the level or standard of storm surge that is required to be addressed under the Permit.**

- o **(ii) What level or standard of sea level rise does the current Permit require be addressed? For example, if measured in inches or centimeters, how many? Or if measured as a function of degrees of temperature change, how many degrees? If measured in some other way(s), please use Your best efforts to Describe with specificity the level or standard of sea level rise that is required to be addressed under the Permit.**

- o **(iii) What level or standard of increasing ocean temperatures does the current Permit require be addressed? For example, if measured as a function of degrees of temperature change, how many degrees? If measured in some other way(s), please use Your best efforts to Describe with specificity the level or standard of increasing ocean temperatures that is required to be addressed under the Permit.**

- **Interrogatory No. 19: Paragraph 314 alleges that Defendants have "not taken action to address severe precipitation events at the Terminal." If you contend that the current Permit requires actions to address severe precipitation events, please Describe what level or standard of precipitation the Permit requires be addressed. For example, if it is a defined storm event, which type of storm event (e.g., a 100-year storm in the year 2022, a 500-year storm in the year 2050, etc.)? If measured in some other way(s), please use Your best efforts to Describe with specificity the level or standard of precipitation event that is required to be addressed under the Permit. Please note that Interrogatory No. 19 is not asking for an opinion; it is asking what standard You contend applies under the Permit that Defendants have failed to meet.**

- **Interrogatory No. 20: Other than the absence of a discussion or analysis in the Terminal's SWPPP of the factors described in Section I.V.A. of the Complaint, Describe with specificity any and all ongoing or current deficiencies in how the Terminal is designed or operated that support your CWA and RCRA claims in this case. If Your answer includes an alleged failure to modify the Terminal (or similar response), please Describe what about the Terminal's design or operation You believe needs to be modified and why.**

- **Interrogatory No. 21: If you contend that risks from flooding and precipitation due to the factors described in Section IV.A. of the Complaint are current risks, what is the probability of harm from those risks occurring before September 30, 2024?**

- **Interrogatory No. 22: Describe with specificity the injunctive relief you seek in the prayer for relief in the Complaint, including, but not limited to, the actions you believe Defendants should take to correct or cease any alleged violations of the Terminal's Permit, the Clean Water Act, the Resource Conservative and Recovery Act, and alleged violations of any other federal, state, or local law or regulation.**

- **Interrogatory No. 24: For the risks You described in response to Interrogatory [23], Describe the probability of and timeframe in which you contend those risks will occur.**

- **Amended RFP No. 1: All Documents that support, negate or otherwise concern the allegations of Your Amended Complaint in this Litigation.**

- **RFP No. 43: All Documents that support, negate, or otherwise concern the allegations in Your July 28, 2020 Notice of Intent to File Suit letter sent to Defendants.**

- **RFP No. 45: All Documents Relating to your statement in Interrogatory Response No. 9 that "Defendants' ASTs and containment structures are not designed to protect against floodwaters or storm surge flowing into the Terminal."**

- **RFP No. 47: All Documents relied upon in the preparation of, or referenced in, Your responses to Defendants' Second Set of Interrogatories, including any supplemental responses thereto.**

- **RFP No. 48: All Documents that contain data, studies, or underlying facts regarding the Terminal, including data, studies, or underlying facts regarding weather risks to the Terminal, and including Documents that contain data, studies, or underlying facts that you provided to any expert retained or hired by You for purposes of this Litigation.**

Defendants propounded these Requests to understand the facts underpinning core

allegations in CLF's Amended Complaint about the Terminal and the alleged standards to which

CLF asserts the Terminal must adhere. CLF alleges that "[t]he Terminal is at severe risk of

flooding from (a) storm surge, (b) sea level rise, and (c) increasing ocean temperatures." ECF

No. 47, ¶ 231. CLF also alleges that Defendants have "not taken action to address severe

precipitation events at the Terminal," *id.* ¶ 314, have not "designed, maintained, modified, and/or operated" the Terminal to account for the "effects of climate change[,]" *id.*, ¶ 73, have not "properly engineered, managed, operated, or fortified" the Terminal to protect against the effects of climate change, *id.* ¶ 493, and that the Terminal has "infrastructure failures and inadequate infrastructure design[,]" *id.* ¶ 508. CLF presumably had a factual basis for making these statements when it filed its Amended Complaint. Yet CLF fails to provide that basis in response to Defendants' Interrogatories and Requests for Production, instead hiding behind improper objections that the material sought is better left for expert discovery.

Defendants reiterate that these requests seek only facts known to CLF (which should have been known at the time of filing the Amended Complaint), not material developed by experts during discovery. It can hardly be disputed that Defendants are entitled to know – as a factual matter – the permit requirements and standards that CLF alleges that Defendants have failed to meet and why – factually – CLF believes that Defendants have failed to meet these standards.

Defendants move to compel complete and full responses to these Interrogatories because the responses CLF provided are deficient. CLF is under an obligation to provide "answers to interrogatories and production requests [that are] full and complete, not evasive." *Charter,* 2014 WL 273855, at *1; *see also Whitserve*, 2006 WL 11273740, at *3 ("The party answering an interrogatory is under an obligation to respond separately, fully and truthfully . . . answers must be responsive, complete, and not evasive." (internal quotation marks and citations omitted)).

Rather than answer these interrogatories, CLF hides behind its objection that these questions may only be answered through expert testimony and that "Defendants are not entitled to factual material developed by or the opinions of CLF's experts in interrogatory responses."

Ex. E, Responses to Interrogatory Nos. 18, 19, 20, 21, 22, Ex. J, Responses to Interrogatory Nos. 17, 24. However, such incomplete answers are in direct contradiction to this Court's order regarding an identical objection. When addressing this exact same objection made by CLF to Defendants' First Set of Interrogatories, the Court stated that "CLF need not disclose any expert opinion at this stage, but it may not withhold responsive facts known to it, merely because those facts are in the possession of experts." ECF No. 113.

Despite that ruling from the Court, CLF raised the same objection again in response to Defendants' Second Set of Interrogatories. After the parties' meet and confer, it is apparent that the parties fundamentally disagree on what constitutes a fact and what constitutes expert opinion. *See* Ex. H. If CLF obtained information about standards that it believes Defendants should have complied with, or deficiencies in the Terminal, CLF must provide this information to Defendants now so that Defendants can properly defend against these claims. During expert discovery, CLF's experts will presumably take the information CLF learns about Defendants and the Terminal during fact discovery, and apply those standards or actions to reach an opinion on whether or not Defendants are in compliance with those standards or actions. Defendants do not seek expert opinion at this time, only the underlying facts regarding the standards that CLF alleges are applicable.

Similarly, with respect to the Requests for Production, CLF objects to Amended RFP No. 1 and RFP Nos. 43, 45, 47 and 48 on the grounds that the requested material is protected by "Rule 26(b)(4)." CLF states that "materials provided to non-testifying experts and CLF's communications with any testifying expert witness are exempt from disclosure" and asserts that "Defendants are only entitled to discover information that a testifying expert relied upon, and then only at the time provided in the scheduling order." Ex. F, Response to RFP Nos. 43, 45, 47,

48. Again, Defendants are not seeking information that they will be entitled to during expert discovery. Defendants seek the underlying facts. CLF cannot avoid its factual discovery obligations by providing documents to experts. Even during expert discovery, CLF cannot withhold the documents merely because they were provided to experts (whether non-testifying or testifying). The federal rules require that a testifying expert must disclose "the facts or data considered by the witness." *Clark v. Quiros*, No. 3:19-CV-575 (VLB), 2022 WL 3716355, at *2 (D. Conn. Aug. 29, 2022) (citing Fed. R. Civ. P. 26(a)(2)(b)). Further, even facts known by a consulting expert may be discoverable in certain instances. *See Higher One, Inc. v. TouchNet Info. Sys., Inc.*, 298 F.R.D. 82, 87 (W.D.N.Y. 2014) ("[a] party may engage in discovery with respect to information that a consultant expert acquired prior to the time he or she was retained by an opposing party. Further, Rule 26(b)(4) does not preclude the discovery of facts and opinions that an opposing party's consultant experts acquired in anticipation of the litigation but prior to being retained by the opposing party.") (quoting Moore's Federal Practice, 3d ed. § 26.80 (2011)).

Rule 26(b)(4) is designed to protect expert work product, not protect the documents underlying factual information provided to or by experts. *See Deangelis v. Corzine*, No. 1:11-CV-07866-VM-JCF, 2016 WL 93862, at *3 (S.D.N.Y. Jan. 7, 2016) ("the driving purpose of the 2010 amendment' to Rule 26 was to protect 'attorney mental impressions, conclusions, opinions, or legal theories' from discovery . . . .") (quoting *Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 (9th Cir. 2014). Federal Rule 26(b)(4)(C)(ii) specifically states that communications with a testifying expert that identify facts or data are *not* exempt from disclosure.

As Defendants have stated repeatedly, CLF cannot make allegations in its Amended Complaint that lack factual support, and then when asked for the underlying facts, refuse to

provide them. This thwarts the basic purpose of fact discovery. CLF is obligated under the federal rules to provide full and complete responses to these Interrogatories and Requests for Production. CLF should be compelled to meet this obligation. If CLF does not have any specific basis for the allegations that are the subject of these Requests, then CLF should be required to state so instead of responding with an evasive objection regarding alleged expert work product. Therefore, Defendants respectfully request this Court require CLF to provide a full and complete response to Interrogatory Nos. 17, 18, 19, 20, 21, 22, and 24, Amended Request for Production No. 1, and Request for Production Nos. 43, 45, 47 and 48.

## II.   CLF's RESPONSES TO INTERROGATORY NOS. 18, 19 AND 20 ARE INCOMPLETE AND EVASIVE

- **Interrogatory No. 18: Paragraph 231 of the Complaint alleges that "[t]he Terminal is at severe risk of flooding from (a) storm surge, (b) sea level rise, and (c) increasing ocean temperatures." If you contend that the currently effective General Permit for the Discharge of Stormwater Associated with Industrial Activity issued by CT DEEP requires a permittee to address these risks in its SWPPP and Defendants have failed to do so, please Describe:**

  - **(i) What standard or level of storm surge does the current Permit require be addressed? For example, if measured in feet, how many feet? Or if measured as a category of storm or hurricane (Category 1, 2, 3, etc.), which category? If measured in some other way(s), please use Your best efforts to Describe with specificity the level or standard of storm surge that is required to be addressed under the Permit.**

  - **(ii) What level or standard of sea level rise does the current Permit require be addressed? For example, if measured in inches or centimeters, how many? Or if measured as a function of degrees of temperature change, how many degrees? If measured in some other way(s), please use Your best efforts to Describe with specificity the level or standard of sea level rise that is required to be addressed under the Permit.**

  - **(iii) What level or standard of increasing ocean temperatures does the current Permit require be addressed? For example, if measured as a function of degrees of temperature change, how many degrees? If measured in some other way(s), please use Your best efforts to**

13

**Describe with specificity the level or standard of increasing ocean temperatures that is required to be addressed under the Permit.**

- **Interrogatory No. 19: Paragraph 314 alleges that Defendants have "not taken action to address severe precipitation events at the Terminal." If you contend that the current Permit requires actions to address severe precipitation events, please Describe what level or standard of precipitation the Permit requires be addressed. For example, if it is a defined storm event, which type of storm event (e.g., a 100-year storm in the year 2022, a 500-year storm in the year 2050, etc.)? If measured in some other way(s), please use Your best efforts to Describe with specificity the level or standard of precipitation event that is required to be addressed under the Permit. Please note that Interrogatory No. 19 is not asking for an opinion; it is asking what standard You contend applies under the Permit that Defendants have failed to meet.**

- **Interrogatory No. 20: Other than the absence of a discussion or analysis in the Terminal's SWPPP of the factors described in Section I.V.A. of the Complaint, Describe with specificity any and all ongoing or current deficiencies in how the Terminal is designed or operated that support your CWA and RCRA claims in this case. If Your answer includes an alleged failure to modify the Terminal (or similar response), please Describe what about the Terminal's design or operation You believe needs to be modified and why.**

CLF's fails to provide complete responses to Interrogatory Nos. 18, 19 and 20, thus preventing Defendants from learning the basis of CLF's claims. Each of these Interrogatories seeks facts relating to specific allegations in CLF's Amended Complaint. CLF alleges that Defendants have failed to follow best industry practice. *See* ECF No. 47, ¶¶ 193, 194, 362, 423. In order to make such statement, CLF must first have an understanding of what is "best industry practice." These interrogatories simply ask CLF to articulate what that standard is. Interrogatory No. 18 asks for the standards that CLF alleges the General Permit requires a permittee to address with respect to the risks identified in Paragraph 231 of the Amended Complaint (storm surge, sea level rise, and increasing ocean temperatures). Interrogatory No. 19 asks for the standard of precipitation that CLF alleges the General Permit requires be addressed. Interrogatory No. 20

14

asks for "ongoing or current deficiencies in how the Terminal is designed or operated . . . ."
Instead of providing clear standards or deficiencies, CLF's responses are evasive and incomplete.

CLF states vaguely in response to Interrogatory Nos. 18 and 19 that the General Permit
requires permittees to use "best industry practice" and states that this topic must be "fleshed out
by expert testimony." CLF's response to Interrogatory No. 18 states that "one example of best
industry practice" related to storm surge "might" be a standard published by the American
Society of Civil Engineers. This neither provides clarification as to whether CLF believes this is
a best industry practice, whether CLF alleges that this standard applies to the Terminal, or
whether there are other standards that CLF alleges apply to the Terminal. Similarly, CLF states
that the General Permit requires permittees to address "at a minimum" the sea level rise scenario
adopted by CT DEEP without suggesting how the standard is applied, and while leaving open
that Defendants may be required to comply with a "higher level of sea level rise." With respect
to rising ocean temperatures and severe precipitation events, CLF provides no answer other than
"best industry practice." As discussed above, CLF cannot hide behind expert discovery to shield
the factual basis for its allegations. Responding that the standard is "best industry practice" is
circular at best and does not provide Defendants with the basis for CLF's allegations. Defendants
are entitled to this information so as to appropriately tailor their defense and motions practice.

With respect to Interrogatory No. 20, CLF objects that it is "premature" and "seeks
information about specific deficiencies at the Terminal which will be based upon the facts
developed in discovery . . . ." CLF responds by stating that it "cannot respond to this
Interrogatory at this time." Ex. E.  CLF filed this case alleging that there are deficiencies in the
design and operation of the Terminal over a year ago. If CLF cannot point to a single deficiency
in the design or operation of the Terminal after over a year of litigation, Defendants question

whether CLF had an appropriate basis for filing this lawsuit. Further, CLF's response that it

"cannot respond" is evasive. If CLF has identified no specific deficiencies, it should state so.

Defendants request that this Court compel CLF to make complete, non-evasive responses to

Interrogatory Nos. 18, 19, and 20.

### III.   CLF'S RESPONSE TO DEFENDANTS' INTERROGATORY NO. 17 SEEKING CLF'S KNOWLEDGE OF PAST "INCIDENCES" OF STORM SURGE FLOODING ON THE TERMINAL IS NON-RESPONSIVE

- **Interrogatory No. 17: Paragraphs 393, 418, and 424 of the Complaint refer to alleged "past incidences of storm surge flooding" citing "supra." Describe any past incidences of storm surge flooding on the Terminal property that You have knowledge of, the basis of this knowledge (including Identifying any Document Relating to this knowledge), and cite to any paragraph(s) of the Complaint that Describe such incidences, if any.**

Defendants request this Court to compel a response to Interrogatory No. 17, which

requests that CLF identify and describe the past "incidences" of *storm surge* flooding at the

Terminal that CLF has alleged in its Amended Complaint to have occurred. CLF's Amended

Complaint repeatedly refers to "past incidences of storm surge flooding" without further detail or

any citation other than a vague *supra*. ECF No. 47, ¶¶ 394, 418, 424. Interrogatory No. 17 seeks

the factual basis for these specific statements about "storm surge" flooding, but instead of

providing responsive information, CLF's response (even its supplemental response) evades the

question. CLF's supplemental response states that "CLF does not have sufficient information at

this time to confirm whether, and to what extent, the flooding . . . was 'due to storm surge.'" Ex.

J. CLF goes on to say that CLF "reasonably believes storm surge contributes to flooding" and

that it referenced storm modeling "as examples of instances when the Terminal may have been

subject to storm surge flooding in the past."[5] *Id.* This response does not answer the question.

---

[5] CLF's supplemental response cites to publicly available information regarding "past incidences of storm surge events at the Terminal," but grossly overstates the significance of those documents. *See* Ex. J. For example,

CLF's Amended Complaint bases its claims on "past incidences of storm surge flooding" – Defendants have a right to know what the basis for that statement was. If CLF has no such examples of storm surge flooding on the Terminal property, it should be required to state so.

CLF states that information of Defendants' that Defendants *may* produce *may* inform CLF's response. Ex. J. This ignores the fact that CLF made this allegation in its Amended Complaint. CLF is welcome to supplement its response as appropriate, but must provide a complete, non-evasive response in the first instance. Thus, Defendants respectfully request this Court require CLF to provide a full and complete response to Interrogatory No. 17.

## IV. CLF'S RESPONSES TO INTERROGATORY NOS. 21 AND 24 ARE NON-RESPONSIVE

- **Interrogatory No. 21: If you contend that risks from flooding and precipitation due to the factors described in Section IV.A. of the Complaint are current risks, what is the probability of harm from those risks occurring before September 30, 2024?**

- **Interrogatory No. 24: For the risks You described in response to Interrogatory [23], Describe the probability of and timeframe in which you contend those risks will occur.**

CLF's responses to Interrogatory No. 21 and 24[6] improperly conflate the concepts of "risk" and "harm" and are non-responsive. Interrogatory No. 21 asks for "the probability of

according to CLF, the first document, titled Tropical Cyclone Report Hurricane Irene, allegedly shows "storm surge at or near the Terminal." *Id.* The actual image is a map of nearly the entire eastern seaboard with a dot that appears to be placed somewhat near New Haven Harbor. L. Avila and J. Cangialosi, National Hurricane Center, Tropical Cyclone Report Hurricane Irene (AL092011), at 43, Fig. 8 (Dec. 14, 2011), https://www.nhc.noaa.gov/data/tcr/AL092011_Irene.pdf. It is a leap to state that this figure shows "storm surge at or near the Terminal."

[6] CLF objects to Interrogatory No. 24 on the belief that Defendants have exceeded the allowable amount of interrogatories under the Federal Rules of Civil Procedure, basing this belief on its assessment that Interrogatory No. 18 constitutes three separate and distinct interrogatories. Fed. R. Civ. P. 33(a)(1). Although CLF agreed to supplement and provide a response to Interrogatory No. 24, it maintained its objection. CLF's objection is incorrect. Although Defendants' Interrogatory No. 18 is structured to have three subparts for the sake of readability and coherence, these subparts are not discrete and all relate to the basic request that CLF explain the standards that CLF contends the General Permit requires as related to the allegations in Paragraph 231 of CLF's Amended Complaint. "[A] subpart should not be labeled discrete, and thereby regarded as a separate interrogatory, unless it is logically or factually independent of the question posed by the basic interrogatory." *Neal v. Elec. Boat Corp.*, No. 3:07-CV-00700, 2009 WL 10687910, at *3 (D. Conn. Feb. 3, 2009). Conversely, subparts that are logically dependent of the basic interrogatory are not separate. *Id.*

harm" from the risks of "flooding and precipitation" occurring before September 30, 2024. Instead of addressing the probability of harm, CLF's supplemental response states that the "harms from risks from flooding and precipitation . . . are certainly impending and/or present a substantial risk of harm to CLF." Ex. J. This response is circular at best (the harm presents a substantial risk of harm). CLF cites to a decision in this case and in the Providence case where the courts found that CLF had sufficiently pled the facts for standing to survive a motion to dismiss. That legal standard and the decisions cited have nothing to do with the underlying facts, which Defendants seek now through discovery.[7]

Similarly, Interrogatory No. 24 asks for the "probability of and timeframe in which" CLF contends the risks described in response to Interrogatory No. 23 will occur. In Response to Interrogatory No. 23, CLF discusses its members' concerns regarding pollution in the waterways. CLF's response explains "the risk of harm from a severe weather event and flooding reduces[] CLF's members' enjoyment of the waters surrounding the Terminal." CLF's Response to Interrogatory No. 24 includes numerous objections and states only that "[t]he risks of harm described in CLF's Response to Interrogatory No. 23 are ongoing and continuous." Ex. J. This Response does not include a likelihood that the harm will occur (probability) or a timeframe in which it will occur. CLF cannot avoid answering this Request. Thus, Defendants ask this Court to compel a full and complete response to Interrogatory Nos. 21 and 24.[8]

---

[7] CLF also raises the allegedly "arbitrary" date of September 30, 2024 contained in Defendants' Interrogatory Nos. 21 and 24. September 30, 2024 is the date of expiration of the General Permit that is applicable to the Terminal. *See* General Permit, § 3(f): https://portal.ct.gov/-/media/DEEP/water_regulating_and_discharges/stormwater/industrial/20210316-Industrial-General-Permit-As-Is-Renewal---CleanSIGNED.pdf.

[8] As in its response to Interrogatory No. 17, CLF states that information that Defendants *may* produce *may* inform CLF's responses. Ex. J. Again, CLF may supplement its responses, but it still has an obligation to provide complete and non-evasive responses in the first instance.

## V.   CLF MUST PROVIDE DOCUMENTS IN ITS POSSESSION THAT NEGATE THE ALLEGATIONS IN ITS NOTICE OF INTENT AND ITS AMENDED COMPLAINT

- **Amended RFP No. 1: All Documents that support, negate or otherwise concern the allegations of Your Amended Complaint in this Litigation.**

- **RFP No. 43: All Documents that support, negate, or otherwise concern the allegations in Your July 28, 2020 Notice of Intent to File Suit letter sent to Defendants.**

Defendants' RFP No. 1 initially sought all Documents "referenced, reviewed or relied upon" by CLF in its Amended Complaint. CLF stated that it had produced documents "referenced" or "relied upon" but objected on work products grounds with respect to documents that were "reviewed" but not "referenced" or "relied upon." Defendants moved to compel a response to RFP No. 1 and the Court, while denying the motion, instructed Defendants to serve an amended request seeking "production of documents that support, negate or otherwise concern the allegations of the complaint . . . ." ECF No. 113. Defendants served the Amended RFP No. 1 following the Court's language, and served RFP No. 43, which asked for documents that "support, negate or otherwise concern" the allegations of the notice of intent letter.

Despite the language of these Requests coming verbatim from the Court's Order, CLF provides an evasive and incomplete response. CLF initially responded to each Request that it has produced documents that "concern" the allegations, without addressing whether it produces documents that "negate" the allegations in its Amended Complaint or notice of intent letter. *See* Exs. D, F. Defendants' raised this issue in a November 16 letter and during the November 22 meet and confer. Exs. G, H. CLF provided "supplemental responses" on November 30. Ex. J. However, these responses do not answer the basic question posed by this Court of whether CLF will produce documents that "support, negate, or otherwise concern" the allegations in its Amended Complaint and notice of intent letter. Instead of providing true "supplemental

19

responses," CLF responds to Defendants' November 23 email (although misquoting Defendants' statements). These are not supplemental discovery responses upon which Defendants can rely. Defendants request this Court require CLF to provide a full and complete response to Amended RFP No. 1 and RFP No. 43 by providing a clear response as to whether it will produce documents that "negate" its allegations (if such documents exist).

## VI.   CLF MUST CLARIFY WHETHER IT IS WITHHOLDING DOCUMENTS RESPONSIVE TO RFP NO. 46

- **RFP No. 46: All Documents Relating to any observations by CLF's members of any pollutant discharges coming from the Terminal.**

CLF objects that this Request "seeks to obligate CLF to produce documents that are not in CLF's possession, custody, or control," and is "unduly burdensome" and "overbroad." CLF should clarify whether it is withholding any documents on the basis of these objections. CLF states it had produced documents responsive to this Request "via its production related to RFP Nos. 7, 8, and 9, as to the following CLF members: Anstress Farwell, Chris Ozyck, David Weinreb, Jacqueline Maisonpierre, and Tiffany Lufkin." Ex. F. CLF also clarified in its November 30 correspondence that it is not "currently" withholding any documents related to this Request and appears to agree that if it were in possession of documents relating to observations of any pollutant discharges coming from the Terminal by other CLF members, such documents would be responsive. Ex. J.

CLF did not address in its November 30 correspondence whether it has knowledge of documents relating to such pollutant discharges, as requested in Defendants' November 23 email. Ex. H. With respect to documents that are not in CLF's possession, custody, or control, "courts in the Second Circuit have repeatedly held that Rule 34 'does not require that the party have legal ownership or actual physical possession of the documents at issue.' . . . In essence,

such Second Circuit decisions suggest that a party cannot evade production when it could gain

control of the evidence through reasonable means." *Aidoo v. Cela*, No. 3:16-CV-147 (VAB),

2018 WL 6435650, at *15 (D. Conn. Dec. 7, 2018) (quoting *In re NTL, Inc. Sec. Litig.*, 244

F.R.D. 179, 195 (S.D.N.Y. 2007), *aff'd sub nom*). If CLF is withholding documents that it knows

exists on the basis of this objection, CLF must demonstrate that it cannot obtain the documents

through reasonable or practicable means.

Further, Defendants are entitled to know the factual bases for CLF's claims. To the extent

CLF has such responsive documents, CLF has an obligation to produce them.

Following CLF's November 30 correspondence, Defendants' asked CLF again for

confirmation that it does not have knowledge of documents relating to observations of any

pollutant discharges from the Terminal. Ex. K. Defendants stated that if CLF did not respond by

December 1 at 1 pm ET, Defendants would assume that the parties are at an impasse. *Id.* As of

8:30 p.m. on December 1, CLF has not responded. Defendants respectfully request this Court

require CLF to provide a full and complete response to RFP No. 46.

## VII.   CLF IMPROPERLY OBJECTS ON PRIVILEGE GROUNDS AND IMPROPERLY IDENTIFIES A PRIVILEGE FOR "INTERNAL COMMUNICATIONS"

- **Amended RFP No. 1: All Documents that support, negate or otherwise concern the allegations of Your Amended Complaint in this Litigation.**

- **RFP No. 43: All Documents that support, negate, or otherwise concern the allegations in Your July 28, 2020 Notice of Intent to File Suit letter sent to Defendants.**

- **RFP No. 47: All Documents relied upon in the preparation of, or referenced in, Your responses to Defendants' Second Set of Interrogatories, including any supplemental responses thereto.**

CLF objects to Amended RFP No. 1, and RFP Nos. 43 and 47 on several grounds

including work product doctrine, attorney-client privilege and "any other applicable privilege or

immunity such as attorney notes or internal communications." Exs. D, F. Defendants are

unaware of any privilege for "internal communications." During the parties' November 22 meet

and confer, Defendants asked whether this objection is meant to refer to the "associational

privilege," which CLF has repeatedly invoked throughout this litigation. CLF did not provide a

response, but stated that it would provide a definition of the privilege for "internal

communications." Ex. H. On November 30, CLF responded that:

> [I]ts use of 'internal communications' was meant to refer to attorney-client
> communications, attorney-attorney communications, and/or other
> communications within CLF that full under the privileges identified in its
> objection, including attorney work product, attorney-client, and any other
> applicable privileges or immunities. Ex. J.

CLF's November 30 response provides no additional clarity. First, CLF fails to identify with

specificity the relevant privileges under which it may be withholding documents, instead

repeatedly falling back to the phrase "other applicable privileges or immunities." Ex. J. This fails

to give Defendants the requisite specificity to evaluate – and challenge – CLF's invocation of a

privilege.

Further, CLF's response appears to identify a privilege for "other communications within

CLF" as a separate privilege from attorney-client communications, or attorney-attorney

communications. Logically, the only remaining combination is communications between two

non-lawyers. Without further explanation for why these communications would be privileged,

CLF has failed to meet its burden for claiming privilege. *See Schanfield v. Sojitz Corp. of Am.*,

258 F.R.D. 211, 214 (S.D.N.Y. 2009) (quoting *United States v. Int'l Brotherhood of Teamsters,*

*Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997))

(CLF has the burden to establish that the document contains "legal advice…from a professional

legal advisor in his capacity as such" and the communication was "made in confidence…by the

client" and bears "the 'heavy burden' of establishing the applicability of the work product doctrine.") (internal quotation marks and omitted). Nothing about these Requests is inherently privileged. Amended RFP No. 1 was specifically amended as suggested by the Court to avoid work product issues. RFP No. 43 is worded similar to Amended RFP No. 1. RFP No. 47 asks for documents relied upon in preparation of CLF's responses to Defendants' Second Set of Interrogatories. If there are responsive documents that are privileged, CLF should search for them and provide a privilege log so that Defendants can assess the privilege claim.

To the extent that CLF's reference to an "internal communications" privilege is tantamount to an associational privilege objection, the associational privilege is not applicable here.[9] An attempt to apply associational privilege here, where the Requests do not seek information concerning the organization's members, and CLF's objections implicate internal CLF communications, would push the associational privilege beyond its limits. CLF would not be able to meet its burden of showing how the associational privilege applies to these Requests.

For the privilege to apply in the first instance, the information must concern the organization's members. *See*, *e.g., id.* at 3 ("Information that may be privileged on the basis of associational rights includes identities of rank and file members and similarly situated individuals."); *see also Edmondson*, 2018 WL 2768643, at *2 (requiring "harassment of members due to their associational ties,…harassment directed against the organization itself, [or a] pattern of threats or specific manifestations of public hostility"). Further, the associational privilege protects the disclosure of discovery that "would have the practical effect of discouraging the exercise of constitutionally protected associational rights…." *See Sexual*

---

[9] Defendants raised with CLF whether the "internal communications" privilege was meant to refer to the "associational privilege" in Defendants' November 16 correspondence and during the parties' November 22 meet and confer. *See* Ex. G. CLF has not directly responded.

*Minorities of Uganda v. Lively*, 2015 WL 4750931, at *3 (D. Mass. Aug. 10, 2015) (internal citation and quotation marks omitted). CLF has failed to identify any constitutionally protected associational rights that are affected by these Requests. Even if the associational privilege were to apply, the privilege is not absolute. CLF must "demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Sexual Minorities of Uganda v. Lively*, 2015 WL 4750931, at *3 (D. Mass. Aug. 10, 2015) (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010)). CLF would not be able to meet this standard. Defendants request that this Court overrule CLF's objections on the grounds of privilege and compel complete responses to these Requests.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Compel Responses to Defendants' Second Set of Interrogatories with respect to Interrogatory Nos. 17, 18, 19, 20, 21, 22, and 24, Defendants' Amended Request for Production No. 1, and Defendants' Second Set of Requests for Production with respect to RFP Nos. 43, 45, 46, 47, and 48, as well as any other relief permitted under Federal Rule of Civil Procedure 37(a)(5).

Respectfully submitted,

*/s/ Megan L. Morgan*

James O. Craven
ct18790
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832

24

New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann
ct25359
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina Reddy
phv20420
Beveridge & Diamond, P.C.
400 W. 15th Street, Suite 1410
Austin, Texas 78701
T: (512) 391-8045
F: (512) 391-8099
breddy@bdlaw.com

Megan L. Marzec Morgan
phv20623
Roy Prather
phv206800
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1300
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2022, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Compel Plaintiff Conservation Law Foundation, Inc.'s Responses to Defendants' Second Set of Interrogatories, Second Set Requests for Production, and Amended Request for Production No. 1, was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Megan L. Morgan*
Megan L. Morgan