# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-JAM |

## PLAINTIFF CONSERVATION LAW FOUNDATION'S
## NOTICE OF ORAL AND VIDEOTAPED REMOTE DEPOSITION

PLEASE TAKE NOTICE that Plaintiff, the Conservation Law Foundation ("CLF") will take the deposition for use at trial pursuant to Fed. R. Civ. P. 30(b)(6) of the individual(s) employed or designated by Shell USA, Inc., to testify on its behalf via eLitigate on March 27, 2023, and will be about matters set out within Attachment A of this Notice.

The deposition shall commence electronically before a public notary or other officer duly authorized to administer oaths, shall be recorded by stenographic means and videotaped by Esquire Depositions Solutions using the "Record" feature within the eLitigate platform.

Said person(s) should have full and appropriate knowledge regarding the matters or issues listed in the 30(b)(6) topics listed in Attachment A. Shell USA, Inc. is hereby required to present the corporate representative(s) most knowledgeable and able to respond to the topics listed in Attachment A.

1

|  |  |
|---|---|
| DATED: March 6, 2023 | Respectfully submitted, |

/s/ Kenneth J. Rumelt

Alexandra St. Pierre (ct31210)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1732
E-mail: aestpierre@clf.org

Chris Kilian (ct31122)
Kenneth J. Rumelt*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (803) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org

Allan Kanner (ct31051)
E-mail: a.kanner@kanner-law.com
Elizabeth B. Petersen (ct 31211)
E-mail: e.petersen@kanner-law.com
Allison S. Brouk (ct31204)
E-mail: a.brouk@kanner-law.com
Chancey E. Raymond (ct31311)
E-mail: c.raymond@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street
New Orleans, Louisiana 70130
Tel: (504) 542-5777
Facsimile: (504) 524-5763

*Attorneys for Plaintiff
Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

## ATTACHMENT A

## TOPICS FOR RULE 30(B)(6) DEPOSITION

1. The corporate structure, hierarchy, and management of each Defendant, including the details of any legal, business, or other relationship between or among Defendant, parent, holding company, subsidiary, members, sister corporations or partners associated with the New Haven Terminal (*e.g.*, Shell Pipeline Company LP).

2. The structure, hierarchy, and management of any line of business, unit, division, or other organization within Shell group (e.g., Shell Trading and Supply Operations, Shell Downstream, HSSE, Reliability & Integrity) associated with the Terminal, including the details of any legal, business, or other relationship between or among such organization, Defendant, parent, holding company, subsidiary, members, sister corporations or partners.

3. The following policies, procedures, frameworks, standards, tools, and processes and the details of any determination by Defendants that they apply or do not apply to the Terminal:

   a. Terminal Operations Manual

   b. Manual of Authorities

   c. Investment Management Guide

   d. Asset Management System

   e. Asset Integrity Process

   f. Hazards and Effects Management Process

   g. Design and Engineering Practices, including any related to Metocean (*e.g.*, DEP 37.00.10.11-Gen)

   h. Design Engineering Manuals

   i. Health, Safety, Security, and Environment and Social Performance Control Framework

   j. Hazards and Effects Management Process

   k. Distribution Global Assessment Management Excellence

4. Project development requests (PDR) and authorization for expenditures (AFE) regarding risks at the Terminal or on-shore or near shore Shell facilities from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures. Defendant's knowledge

of risks to the Terminal from severe weather (*e.g.*, hurricanes, tropical storms, flooding, storm surge).

5. Defendant's knowledge of risks to the Terminal from severe weather (*e.g.*, hurricanes, tropical storms, flooding, storm surge).

6. The loss of containment event at the Sewaren Terminal during Hurricane Sandy, including investigations or audits about causes or contributing factors to the loss of containment.

7. Any changes to corporate policies, procedures, frameworks, standards, tools, and processes based on information learned from the loss of containment event at the Sewaren Terminal during Hurricane Sandy.

8. The General Permit for Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") with registration number GSI1002800 that is currently in effect and any other version(s) of the General Permit that have been in effect since January 1, 2011. Defendant's consideration of any sea level change scenario published by the Marine Sciences Division of The University of Connecticut.

9. Defendants' analysis, evaluation, assessment, review, modeling, or critique, if any, of the sea level rise scenario adopted by the Connecticut Department of Energy & Environmental Protection on December 26, 2018 ("0.5 m . . . higher than the national tidal datum in Long Island Sound by 2050"). See https://portal.ct.gov/-/media/DEEP/coastal-resources/coastal_management/coastal_hazards/SeaLevelChangeDEEPStatement12262018 pdf.pdf?la=.

10. The Terminal's stormwater pollution prevention plan (SWPPP), including its preparation, certification, implementation, modifications, and updates.

11. The Terminal's spill prevention control and countermeasures (SPCC), including its certification, preparation, implementation, modifications, or updates.

12. Best Management Practices that

    a. have been used at any point since January 1, 2011 at the Terminal, or

    b. which are currently planned, and

    that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

13. [Withdrawn]

14. Control measures that

    a. have been used at any point since January 1, 2011 at the Terminal, or

    b. which are currently planned, and

that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

15. Best Management Practices that have been used at any point since January 1, 2011 at the Terminal, or which are currently planned, to minimize the potential for leaks and spills resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

16. Information Defendants submitted to the Connecticut Department of Energy and Environmental Protection since January 1, 2011 regarding risks of pollutant discharges associated with hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

17. Stormwater discharges from the Terminal to the New Haven Harbor via the City of New Haven's Municipal Separate Storm Sewer System.

18. Defendant's monitoring for indicator pollutants in its discharges for the impairment in New Haven Harbor.

19. Steps taken to prevent or mitigate the carrying away of pollutants and solid waste from the Terminal by waters of a base flood (*i.e.*, a flood that has a 1 percent or greater chance of recurring in any year or a flood of a magnitude equaled or exceeded once in 100 years on the average over a significantly long period).

20. Instances of flooding at the Terminal during severe weather events (e.g., hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge).

21. The presence and concentration of solid and hazardous wastes, as those terms are defined under the Resource Conservation and Recovery Act, in the soil and groundwater at the Terminal.

22. [Withdrawn]

23. Activities of the Metocean team regarding on- and near shore facilities in the United States.

24. The design and/or modification of the Terminal to address pollutant discharges and/or releases due to climate change, climate effect, weather, precipitation, flooding, inundation, wind, sea level rise, storm surge, and hurricane.

25. Insurance policies regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

26. Communications with insurers regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

27. The present impacts and risks at the Terminal due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

28. Information shared between or among any Defendant and entities within the Shell group regarding climate change-related risks at the Terminal, other Shell group terminals in the northeast United States, and other on- or near shore Shell group facilities.

29. The noticed party's confirmation, adoption, agreement, disagreement, and/or opinion of statements made by entities within the Shell group or Shell business lines quoted in CLF's amended complaint paragraphs 53, 59, 213–219, 373–377, 380–383 (ECF No. 47).

30. Instances of damage at the Terminal from severe weather events, including Hurricane Katrina, Superstorm Sandy, and Hurricane Harvey.

31. [Withdrawn]

32. The identity of all documents used by, consulted, looked at, or relied on in any way by Defendant in preparing for the topics listed above.

33. [Withdrawn]

34. Defendant's databases, information technology infrastructure, network infrastructure, software programs, messaging systems, and any policies that govern the possession, custody, or control of documents maintained by the custodians and SharePoint sites that Defendants searched for responsive records in this matter.

35. The process Defendants used to identify records custodians and information about the custodians' job titles, employer(s), and relationship to the Terminal.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2023, a copy of the foregoing document was served on all parties by electronic transmission.

*/s/ Kenneth J. Rumelt*
Kenneth J. Rumelt
