UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

Plaintiff,

v.

SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,

Defendants.

Case No: 3:21-cv-00933-JAM

April 27, 2023

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' DEPOSITIONS AND FOR SANCTIONS AND DEFENDANTS' CROSS-MOTION FOR PROTECTIVE ORDER ON PLAINTIFF'S 30(B)(6) DEPOSITION TOPICS AND FOR SANCTIONS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND .............................................................................................................. 5

LEGAL STANDARD........................................................................................................ 8

ARGUMENT .................................................................................................................. 9

I.   CLF Is Not Entitled to Sanctions Due to Defendants' Good Faith Efforts to Narrow CLF's Improper 30(B)(6) Deposition Topics and the Parties' Prior Conduct.................................... 9

    A.   CLF's Notices of Deposition Were Improper as They Were Not Described with Reasonable Particularity. ................................................................................ 9

    B.   Defendants Did Not Fail to Appear for Their Deposition; the Parties Did Not Intend for the Depositions to Occur. ................................................................. 10

    C.   Defendants' Conduct Was Substantially Justified. .................................... 13

    D.   Imposition of Sanctions Would Be Manifestly Unjust. ............................. 15

    1.   Defendants Did Not Willfully Refuse Compliance. ................................... 15

    2.   Sanctions Against Defendants Are Not Warranted. ................................... 16

II.   Defendants Require the Court's Protection Against CLF's Irrelevant And Overbroad Topics. ............................................................................................................ 18

    A.   CLF's Topics Seek Irrelevant Information Pertaining to Extraneous Corporate Entities. (Topics 1 & 2)............................................................................. 18

    B.   CLF's Topics Seek Irrelevant Information Concerning Metocean. (Topics 3 & 23). 20

    C.   CLF's Topics Seek Irrelevant Information Concerning Corporate Policies. (Topic 3) 22

    D.   CLF's Topics Seek Irrelevant Information Concerning Terminals Other Than the New Haven Terminal. (Topics 4, 6, 7,  23, & 28) ...................................... 23

    E.   CLF's Topics Seek Irrelevant Information Concerning Defendants' "Knowledge" of Terminal Risks. (Topic 5) ....................................................................... 25

    F.   CLF's Topics Seek Irrelevant and Duplicative Information Concerning Defendants' Insurance Policies and Communications with Insurance Companies. (Topics 25 & 26) 25

    G.   CLF's Topics Seek Irrelevant Information Regarding Climate Change. (Revised Topic 29).................................................................................................. 26

    H.   CLF's Deposition Topics Are Not Tailored To The Relevant Discovery Time Period. (Topics 8, 12, 14-15, & 17-18) ................................................................. 27

III.  Good Cause Exists to Grant a Protective Order Because CLF's Overly Broad and Ambiguous Topics Create an Undue Burden.  (Topics 1, 2, 4, 6, 7, 23, 28 And 29)............................... 29

    A.   Topics 1 & 2.......................................................................................... 30

B.  Revised Topic 4, Topic 23, & Topic 28.................................................. 31

C.  Topics 6 & 7....................................................................................... 31

D.  Revised Topic 29 .............................................................................. 32

IV. Defendants Are Entitled to Sanctions Due to CLF's Bad Faith and Abusive Discovery Practices. ....................................................................................................... 32

A.  CLF's Instant Motion for Sanctions Is Frivolous and Made in Bad Faith.................. 32

B.  CLF's Discovery Practices Are Abusive and Harassing and Warrant Sanctions. ...... 35

CONCLUSION................................................................................................. 36

# TABLE OF AUTHORITIES

**Federal Court Cases**

*BAT LLC v. TD Bank, N.A.*,
   2019 WL 13236131 (E.D.N.Y. Sept. 24, 2019) ................................................................. 22

*Bigsby v. Barclays Capital Real Estate, Inc.*,
   329 F.R.D. 78 (S.D.N.Y. 2019) .......................................................................................... 9

*Bilodeau v. Vlack*,
   2010 WL 2232480 (D. Conn. May 26, 2010) ..................................................................... 33

*Bodne v. George A. Rheman Co.*,
   811 F. Supp. 218 (D.S.C. 1993) ......................................................................................... 28

*Bosse v. Dep't of Economic & Community Development*,
   2021 WL 6337745 (D. Conn. May 12, 2021) ...................................................................... 9

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) .............................................................................................................. 33

*Chaney v. Vermont Bread Company*,
   2022 WL 16757624 (D. Vt. Nov. 8, 2022) ......................................................................... 20

*Dauska v. Green Bay Packaging Inc.*,
   291 F.R.D. 251 (E.D. Wis. 2013) ....................................................................................... 15

*Davis v. Rumsey Hall Sch., Inc.*,
   2022 WL 2802334 (D. Conn. July 18, 2022) ................................................................. 8, 16

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
   2022 WL 2702378 (E.D.N.Y. Feb. 11, 2022) .................................................................... 10

*Doe v. Town of Greenwich*,
   2020 WL 3634546 (D. Conn. July 3, 2020) ................................................................... 9, 29

*Dongguk Univ. v. Yale Univ.*,
   270 F.R.D. 70 (D. Conn. 2010) ................................................................................... 8, 9, 26

*Dove v. Atl. Capital Corp.*,
   963 F.2d 15 (2d Cir. 1992) ................................................................................................... 9

*Equal Employment Opportunity Commission v. Thurston Motor Lines*,
   124 F.R.D. 110 (M.D.N.C. 1989) ................................................................................. 17, 18

*Funk v. Belneftekhim*,
   861 F.3d 354 (2d Cir. 2017) ............................................................................................... 15

*Gissendaner v. Credit Corp Solutions, Inc.*,
  358 F. Supp. 3d 213 (W.D.N.Y. 2019) ...................................................... 33

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987) ...................................................................................... 28

*Havadjias v. Vanguard Ins. Co.*,
  46 F.3d 1141 (9th Cir. 1995) ..................................................................... 36

*Hewett v. Triple Point Tech.*,
  2015 WL 6675529 (D. Conn. Oct. 30, 2015) ............................................ 34

*Honey v. Dignity Health*,
  2013 WL 6709953 (D. Nev. Dec. 18, 2013) .............................................. 13

*Howard Univ. v. Borders*,
  2022 WL 3568477 (S.D.N.Y. Aug. 17, 2022) ........................................... 11

*HSBC Bank USA v. Harris*,
  2021 WL 5501711 (D. Conn. Nov. 23, 2021) ........................................... 15

*Imperial Chemicals Industries, PLC v. Barr Laboratories, Inc.*,
  126 F.R.D. 467 (S.D.N.Y. 1989) ............................................................... 35

*In re Air Crash at Taipei, Taiwan on October 31, 2000*,
  2002 WL 32155477 (C.D. Cal. Oct. 23, 2002) ......................................... 12

*BrideIn re SageCrest II, LLC*,
  444 B.R. 20 (D. Conn. 2011) ..................................................................... 16

*Conservation Law Found. v. Shell Oil Prods. US, et al.*,
  No. 1:17-cv-00396 (D.R.I. filed July 21, 2022) .......................................... 4

*Kamen v. Am. Telephone & Telegraph Co.*,
  791 F.2d 1006 (2d Cir. 1986) ..................................................................... 33

*Klein v. Torrey Point Grp., LLC*,
  979 F. Supp. 2d 417 (S.D.N.Y. 2013) ....................................................... 14

*Krasney v. Nationwide Mut. Ins. Co.*,
  2007 WL 4365677 (D. Conn. Dec. 11, 2007) ........................................... 30

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018) ............................................................... 35

*McBride v. Medicalodges, Inc.*,
  250 F.R.D. 581 (D. Kansas 2008) ................................................... 20, 24, 29

*N. Shore Window & Door, Inc. v. Andersen Corp.*,
  2022 WL 16788807 (E.D.N.Y. Sept. 14, 2022) ........................................................ 29

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
  242 F.R.D. 164 (D. Mass. 2007) ............................................................................ 10

*Ng v. HSBC Mortg. Corp.*,
  2008 WL 5274272 (E.D.N.Y. Dec. 18, 2008) ........................................................ 10

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir. 1986) ................................................................................ 33

*ProDox, LLC v. Professional Document Services, Inc.*,
  341 F.R.D. 679 (D. Nev. 2022) ............................................................................. 17

*Quintel Tech. Ltd. v. Huawei Technologies, Inc.*,
  2017 WL 3712349 (E.D. Tex. June 12, 2017) ........................................................ 20

*Ride, Inc. v. APS Tech., Inc.*,
  2014 WL 12754998 (D. Conn. Aug. 28, 2014) ...................................................... 34

*S. New Eng. Tel. Co. v. Global NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ................................................................................... 16

*Salahuddin v. Harris*,
  782 F.2d 1127 (2d Cir. 1986) ................................................................................. 11

*Sanofi-Synthelabo v. Apotex Inc.*,
  2009 WL 5247497 (S.D.N.Y. Dec. 30, 2009) ........................................................ 30

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir. 1999) ............................................................................. 16, 35

*Scott-Warren v. Liberty Life Assurance Co. of Boston*,
  2016 WL 3876660 (W.D. Ky. July 13, 2016) ........................................................ 14

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ................................................................................................. 29

*Sierra Club Inc. v. Granite Shore Power LLC*,
  2019 WL 8407255 (D.N.H. Sept. 13, 2019) .......................................................... 28

*Societe Civile Succession Guino v. Renoir*,
  305 Fed. App'x 334 (9th Cir. 2008) ...................................................................... 18

*Stanley Works Israel Ltd. v. 500 Grp., Inc.*,
  2019 WL 5485266 (D. Conn. Oct. 25, 2019).  ...................................................... 18

*Universitas Education, LLC v. Benistar*,
   2021 WL 8202406 (D. Conn. Dec. 22, 2021).................................................................. 35

*U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC*,
   339 F.3d 23 (1st Cir. 2003).......................................................................................... 28

*Vaigasi v. Solow Management Corp.*,
   2016 WL 616386 (S.D.N.Y. Feb. 16, 2016)................................................................. 36

*Winfield v. City of New York*,
   2018 WL 840085 (S.D.N.Y. Feb. 12, 2018)...................................................... 18, 27, 30

*Woelfle v. Black & Decker (U.S.) Inc.*,
   2020 WL 1180749 (W.D.N.Y. Mar. 12, 2020).......................................................... 9, 19

*Zeitler v. Nationwide Property & Casualty Ins. Co.*,
   No. 3:21-cv-519, 2022 WL 1125397 (D. Conn. Apr. 15, 2022) ................................... 18

## Federal Statutory Authorities

28 U.S.C. § 1927 ......................................................................................................... 33

28 U.S.C. § 2462 ......................................................................................................... 28

33 U.S.C. § 1365(a)(1) ................................................................................................. 25

42 U.S.C. 6072(a) ........................................................................................................ 25

## Federal Rules and Regulations

Fed. R. Civ. P. 26 .......................................................................................... 8, 12, 13, 36

Fed. R. Civ. P. 26(a)(1) ................................................................................................ 26

Fed. R. Civ. P. 26(b)(1).................................................................................... 8, 18, 35

Fed. R. Civ. P. 26(c) ................................................................................................. 9, 29

Fed. R. Civ. P. 26(c)(3) and 37(a)(5) .............................................................................. 5

Fed. R. Civ. P.  26(g) ................................................................................................ 35, 36

Fed. R. Civ. P. 26(g)(ii) ............................................................................................... 36

Fed. R. Civ. P. 26(g)(1)(B) ........................................................................................... 35

Fed. R. Civ. P. 30(b)(6)......................................................................................... passim

Fed. R. Civ. P. 37(d)(1)(A)(i) ........................................................................................... 8

**Local Rules**

Local Rule 37 ........................................................................................ 12, 34, 35

Local Rule 37(a) .................................................................................... 14, 16

**INTRODUCTION**

Plaintiff Conservation Law Foundation, Inc.'s ("CLF") Motion to Compel Defendants' Depositions and for Sanctions marks the culmination of CLF's harassing and bad faith discovery practices targeted at discovery for the sake of discovery rather than any semblance of reasonableness.  CLF's efforts to obtain irrelevant discovery have been relentless and mired this case in costly and unnecessary motions practice. CLF continues this approach here by seeking testimony from three Defendants on 31 identical topics, the majority of which are wholly disconnected from the claims in this case.

Courts are clear that the purpose of a 30(b)(6) deposition is to seek targeted, limited information from a party and not use it as an opportunity to seek discovery that would be best for other discovery methods. CLF, however, continues compounding discovery in this case by noticing topics that are facially irrelevant, unreasonable, unduly burdensome, and not specified with reasonable particularity.  For example, despite having a sworn declaration and the deposition testimony of two fact witnesses explaining the lack of any connection between the New Haven Terminal and the work of Metocean, CLF continues to seek information about Metocean by including it as one of its 30(b)(6) deposition topics. This approach to discovery that continuously ignores the information learned to date to seek more documents and testimony without basis constitutes harassment and unnecessarily prolongs and increases the costs related to the discovery process.  In addition to irrelevant deposition topics, CLF also refuses to limit the time period of its deposition topics, making them patently overbroad and unduly burdensome. Bogged down in CLF's boundless deposition topics, Defendants, again, proceeded through a lengthy meet and confer process to try to narrow the scope of discovery. CLF represented in these discussions with Defendants' counsel that it would withdraw its deposition notices to allow the parties time to complete their conferring over the deposition topics — a  process that

1

Defendants were required by rule to conclude before filing any motion for protective order. Indeed, Defendants provided this very same courtesy to CLF in relation to Defendants' own 30(b)(6) notice of deposition of CLF.

Not only have Defendants gone through the costly and lengthy process of trying to narrow CLF's 30(b)(6) deposition topics, but Defendants are now being forced to defend against yet another discovery motion – this time a frivolous motion for sanctions based upon circumstances CLF manufactured in bad faith. CLF claims Defendants were "no-shows" for depositions. But there is no objectively reasonable way that CLF believed that the 30(b)(6) depositions of Defendants were proceeding on the noticed dates. Counsel for CLF acknowledges that the discussion of withdrawing the deposition notices occurred, and CLF's counsel led Defendants' counsel to believe that CLF would withdraw the deposition notices to allow the parties time to complete the meet and confer process. At no time did CLF believe that any deposition would occur on the noticed dates, evidenced by CLF's failure to take any steps at all to actually take such a deposition. Defendants reasonably believed and CLF represented that the parties would follow a similar approach to what they had previously done for Defendants' 30(b)(6) notice until CLF's sudden reversal that runs counter to everything the parties exchanged up to that point. In a troubling show of bad faith, CLF reversed course, expressed surprise that no deposition occurred (despite never actually scheduling it), and stated that it would seek sanctions. This absurd gamesmanship — apparently for the sake of seeking waiver of Defendants' objections to continue pursuing unbounded discovery — has to stop.

Since before this case's inception, CLF has publicly stated its intention to use this limited permit litigation against Defendants as leverage to pursue broad-based discovery requiring Defendants to "fully answer for [their] knowledge of climate change and the risks it presents."

*See* Ex. E, CLF, *Climate Change Lawsuit Against Shell Moves Forward* (Sept. 28, 2020); *see also* Ex. F, CLF, *Pushing Shell to Reveal Climate Knowledge* (Mar. 4, 2022) ("'The public deserves to know about Shell's involvement in the climate crisis,' said Darrell Brown, Vice President of CLF Rhode Island.").[1]  Defendants will not repeat all of the arguments regarding the improper scope of CLF's discovery as those issues have been fully briefed in relation to CLF's Renewed Motion to Compel.  Stated simply, the vast majority of the 31 identical topics that CLF wishes to probe in each of the noticed 30(b)(6) depositions are not relevant to this citizen suit, represent a dramatic departure from the site-specific discovery that is standard for citizen suit compliance claims, and create a substantial and undue burden for Defendants to even attempt to prepare witnesses to testify about them.

Defendants have engaged in dozens of hours of meeting and conferring in this case and the related Rhode Island case in an effort to narrow CLF's discovery to information that is relevant to its claims, which are limited questions of permit compliance under the Clean Water Act ("CWA") and hazardous waste management under the Resource Conservation and Recovery Act ("RCRA").  Despite all of those efforts, CLF's position remains the same: it is entitled to discovery regarding everything *any* Shell Group entity (including non-defendants and companies based outside the United States) knows about climate change, how *any* other asset or facility manages weather risks, and a host of other topics, irrespective of that entity's or the information's connection to the operation of the New Haven Terminal.

CLF's abusive discovery practices are even more egregious when considering those practices span across two cases. In the Rhode Island case, Judge Almond adopted Defendants'

---

[1] CLF recently retweeted a post regarding "Big Oil's" alleged knowledge of global change, stating "#ShellKnew. And they lied. That's why we're taking them to court to hold them accountable." Twitter, *available at* https://twitter.com/CLF/status/1644343724686581760?cxt=HHwWgICx6fn58NEtAAAA.

suggestion to streamline discovery by having CLF take the deposition of Mr. James Kent Yeates, who would be able to answer CLF's questions as to how the Terminal manages precipitation and flooding risks and who makes decisions for the Terminal. Mem. & Order, *Conservation Law Found. v. Shell Oil Prods. US, et al.*, No. 1:17-cv-00396 (D.R.I. filed July 21, 2022) (ECF No. 94). Judge Almond ordered this deposition with the explicit purpose of narrowing discovery so that the parties could move forward efficiently. This Court allowed the parties to use Judge Almond's approach with the same aim of narrowing discovery. Rather than use this opportunity to narrow discovery as intended, CLF actually expanded the scope of its discovery requests, as evidenced by its Renewed Motion to Compel. CLF has now also served in the Rhode Island case subpoenas *duces tecum* on four non-party entities within the Shell Group.  Those subpoenas seek over a dozen categories of documents, many of which have no relevance to CLF's claims and transparently attempt to obtain information about climate change from non-parties that is irrelevant to this case.

Defendants seek the Court's protection to stem this unreasonable, abusive, and costly tide of CLF's unabated demand for overly broad and burdensome discovery. Moreover, CLF should be admonished for its bad faith abuse of the discovery process, including by manufacturing a sanctions motion through misrepresentation.  For these reasons and those provided below, Defendants oppose CLF's motion to compel and for sanctions ("Motion") and request that this Court deny it in its entirety.  Additionally, Defendants request a protective order striking Topics 2, 5, 25, 26, and 29 from CLF's notices of 30(b)(6) depositions in their entirety, limiting Topics 1-4, 6, 7, 23, and 28 to the relevant scope described below and in Defendants' Cross-Motion for Protective Order.

Defendants further move the Court to impose sanctions against CLF for filing its frivolous motion for sanctions by awarding Defendants reasonable expenses incurred in opposing CLF's motion and bringing their motion for protective order, including attorneys' fees, pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5).

## BACKGROUND

In an effort to keep discovery progressing in this case, Defendants first requested from CLF a list of 30(b)(6) deposition topics on November 22, 2022. Ex. A, Decl. of Roy Prather III ("Prather Declaration") ¶ 2.  CLF did not provide any topics until over two months later on January 25, 2023. Now p (ECF 193-02).  With the then-approaching fact discovery deadline, on February 3, 2023, CLF noticed 30(b)(6) depositions of Shell USA, Inc., Equilon Enterprises LLC d/b/a Shell Oil Products US, and Triton Terminaling LLC for mid-February (Feb. 14, 15, and 16 — less than two weeks later) despite not having yet met and conferred with Defendants about the topics or deposition scheduling. *See* Ex. B, Email from A. St Pierre to R. Prather (Feb. 3, 2023). In its notice, CLF identified 35 identical topics for all three depositions.  Ex. A, Prather Decl. ¶ 3.

On February 3, 2023, the parties held a meet and confer, during which Defendants communicated their objections to CLF's topics and noted the large number of topics that involve issues currently in dispute and subject to CLF's Renewed Motion to Compel.  *Id.* ¶ 4.  Following the Court's February 6, 2023 Order placing the fact discovery deadline in abeyance (ECF 176), the parties agreed that no depositions would occur on the noticed dates to allow additional time to meet and confer.  *See* Ex. A, Prather Decl. ¶ 4.  On February 13, Defendants provided a summary of the parties' February 3 meet and confer, stating their objections and their understanding that the depositions would not proceed.  *See* Ex. C, Letter from R. Prather to K. Rumelt (Feb. 13, 2023). CLF did not respond or otherwise propose any resolution to Defendants' objections until several weeks later on March 1, 2023, at which time CLF proposed language to

narrow some of the topics but largely refused to address Defendants' objections on most of the topics.  (ECF 203-03).

On March 6, 2023, despite having not yet reached any agreement with Defendants regarding the topics or having any discussions regarding witnesses, CLF served amended notices of deposition, scheduling the depositions for the week of March 27, 2023.  (ECF 203-04, 5, 6, and 7). On March 15, 2023, Defendants replied to CLF's March 1, 2023 letter indicating where they were not amenable to CLF's proposals and stated that Defendants intended to move for a protective order upon confirming with CLF the topics on which the parties had reached an impasse. (ECF 203-09). CLF responded to Defendants' correspondence on March 20, 2023, a week before the first of the three depositions CLF had noticed, offering further proposals to resolve Defendants' objections.  (ECF 203-10).

On March 22, 2023, the parties met and conferred regarding a separate discovery dispute on Defendants' privilege log.  *Id.* ¶ 10.  Once counsel concluded discussions regarding the privilege log, CLF's counsel inquired whether Defendants intended to produce witnesses for the noticed 30(b)(6) depositions of Defendants scheduled for the following week.  *Id.*  Defendants' counsel confirmed witnesses would not be presented on the noticed dates given the ongoing meeting and conferring over CLF's proposed topics and Defendants' intention to file a motion for protective order upon concluding that process (which CLF had been on notice of since March 15). *See* Ex. A, Prather Decl. ¶ 10.  On the next day, March 23, 2023, CLF acknowledged this in an email summarizing the meet and confer, stating "CLF also asked whether Defendants intended to file a motion for protective order regarding the three Rule 30(b)(6) depositions that are scheduled for next week.  Counsel indicated that Defendants intend to file for a protective

order and **will not produce witnesses next week**." *See* Ex. D, Email from K. Rumelt to M. Morgan (March 23, 2023) (emphasis added).

On March 24, 2023, counsel for the parties met in person at the Hartford courthouse in connection with the Court's oral argument on CLF's Renewed Motion to Compel and Motion for Additional Depositions. Ex. A, Prather Decl. ¶ 12. After the hearing, counsel continued to confer on outstanding issues related to CLF's proposed 30(b)(6) topics and Defendants' counsel again confirmed to CLF's counsel that the 30(b)(6) depositions would not take place the week of March 27, 2023.  Defendants also stated they would be sending correspondence to confirm where the parties had reached impasse to conclude the meet and confer process. *Id.* CLF's counsel represented that CLF would withdraw its notices. *Id.* ¶ 13. At no point during that conversation did CLF's counsel indicate that it expected the first of the depositions would take place three days later on March 27, or, that it would refuse to withdraw the notices for deposition and instead file a motion for sanctions. *Id.*

Defendants replied to CLF's March 20, 2023 correspondence on March 28, 2023, indicating that the parties had reached an impasse on all remaining objections to CLF's topics and proposed that Defendants move for a protective order after the Court's issuance of its decision on CLF's Renewed Motion to Compel, given the overlap of many issues. (ECF 203-11). Defendants also asked CLF to confirm that it would withdraw the 30(b)(6) deposition notices as it had represented.  *Id.*  CLF responded later that day and again acknowledged Defendants "indicated in person after the March 24th hearing … that Defendants were not going to produce a witness for any of these depositions and would be filing a motion for a protective order."  (ECF 203-11 at 4). In the same email, CLF claimed Defendants "simply decided not to appear" for the March 27 deposition and refused to withdraw the notices of deposition.  *Id.*  Defendants

responded the same day noting that CLF's position did not reflect its prior representations. *Id.* at

3. On March 31, CLF informed Defendants that it intended to file a motion for sanctions. *Id.* at

1.

## LEGAL STANDARD

Rule 37(d)(1)(A)(i) provides that a court has the power to order sanctions when "a party

or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or

31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition."

Fed. R. Civ. P. 37(d)(1)(A)(i). Sanctions, however, are not required where "the failure was

substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(d)(3).

"Conduct is substantially justified if there was a genuine dispute or if reasonable people could

differ as to the appropriateness of the contested action." *See, e.g.*, *Davis v. Rumsey Hall Sch.,*

*Inc.*, No. 3:20-cv-01822 (SALM), 2022 WL 2802334 (D. Conn. July 18, 2022).

"Like other forms of discovery, a Rule 30(b)(6) Notice is subject to limitations under

Rule 26 of the Federal Rules of Civil Procedure." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70,

72 (D. Conn. 2010). Rule 26 requires that information sought in discovery be "relevant to any

party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Thus, the "'deposition topics must be relevant to any party's claim or defense,…should be

proportional to the needs of the case, not unduly burdensome or duplicative, and described with

reasonable particularity.'" *Bosse v. Dep't of Economic & Community Development*, 2021 WL

6337745, at *2 (D. Conn. May 12, 2021) (quoting *Bigsby v. Barclays Capital Real Estate, Inc.*,

329 F.R.D. 78, 81 (S.D.N.Y. 2019)). A "portion of a party's 30(b)(6) notice may also be stricken

if it is overbroad." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. at 74.

Under Rule 26(c), "a court may, for good cause, issue an order to protect a party or

person from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *Dongguk*

*Univ.*, 270 F.R.D. at 73 (quoting Fed. R. Civ. P. 26(c)). "When a protective order is sought, the

party seeking discovery must first establish that the discovery sought is relevant." *Doe v. Town*

*of Greenwich*, 2020 WL 3634546, at *1 (D. Conn. July 3, 2020) (internal citation omitted). Once

the party seeking discovery has shown that "'the discovery is relevant, the burden [then] is upon

the party seeking non-disclosure or a protective order to show good cause.'" *Id.* at *1 (quoting

*Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)). "Good cause is established by

demonstrating a particular need for protection." *Woelfle v. Black & Decker (U.S.) Inc.*, 2020 WL

1180749, at *1 (W.D.N.Y. Mar. 12, 2020) (internal quotation marks and citation omitted).

## ARGUMENT

I.   **CLF Is Not Entitled to Sanctions Due to Defendants' Good Faith Efforts to Narrow CLF's Improper 30(B)(6) Deposition Topics and the Parties' Prior Conduct.**

   A.   **CLF's Notices of Deposition Were Improper as They Were Not Described with Reasonable Particularity.**

Rule 30(b)(6) requires CLF to "describe with reasonable particularity the matters for

examination." Fed. R. Civ. P. 30(b)(6). "'Reasonable particularity' means that the noticing party

must describe the noticed topics with 'painstaking specificity' as to the subject areas that are

relevant to the dispute at issue." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2022 WL 2702378,

at *2 (E.D.N.Y. Feb. 11, 2022). Failure to describe 30(b)(6) deposition topics with reasonable

particularity constitutes improper notice. *Ng v. HSBC Mortg. Corp.*, 2008 WL 5274272, at *1

(E.D.N.Y. Dec. 18, 2008) (finding "the notice of deposition served on one of the corporate

defendants was defective because it did not describe the subjects about which testimony was to

be given with reasonable particularity" and granting motion to strike deposition notices). In good

faith, Defendants attempted to cure CLF's defective notices of deposition by following the "good

practice to discuss any issues respecting a 30(b)(6) deposition notice with the party which

9

noticed the deposition in an attempt to work out an agreement...." *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007).

Defendants timely raised their objections concerning the lack of reasonable particularity of CLF's deposition topics. Defendants first raised their objections during the meet and confer on February 3, 2023, and subsequently served letters on February 13, March 15, and March 28, each advising CLF that its topics contained overbroad and ambiguous language. *See* Ex. A, Prather Decl. ¶¶ 5, 8, 14. During the meet and confer, for example, Defendants explained that CLF's language for Topic 3 to seek information regarding "[c]orporate policies, procedures, frameworks, standards, tools, and process that have *or could apply at the Terminal including...*" was not reasonably particular. *See* Ex. C (emphasis added). Such speculative and ambiguous language (e.g., "could apply") is too imprecise to allow any reasonable means for a party to prepare a witness to testify.  *See* Ex. A, Prather Decl. ¶ 25.  In response to Defendants' objections, CLF amended this topic by eliminating the "could apply" language. Thus, any argument by CLF that Defendants have somehow waived their objections to CLF's deposition notices because they were not timely made is irrefutably erroneous.

### B.    Defendants Did Not Fail to Appear for Their Deposition; the Parties Did Not Intend for the Depositions to Occur.

"Rule 37(d) is 'strictly construed in this Circuit and only occurs where a deponent 'literally fails to show up for a deposition session'" without an excuse. *Howard Univ. v. Borders*, 2022 WL 3568477, at *3 (S.D.N.Y. Aug. 17, 2022) (quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986)). In *Howard University*, the court refused to impose sanctions where the witness's absence was excused. *Id.*  Both CLF and Defendants knew and understood that Defendants' 30(b)(6) depositions were not going to transpire on March 27, 29, and 31. CLF attempts to cast Defendants in a false light by saying "Defendants simply did not appear for their

depositions," but this just is not the case. Not only was a motion for protective order by Defendants not ripe due to the ongoing meet and confer process, but Defendants repeatedly told CLF that they would not be presenting witnesses and this is confirmed in CLF's own correspondence.  The parties all knew and tacitly agreed that the depositions would not take place the week of March 27.

The parties' understanding that the depositions would be postponed was demonstrated on March 24, 2023, when the parties spoke in person at the Hartford courthouse in connection with the hearing on CLF's Renewed Motion to Compel.  Defendants' counsel informed CLF's counsel that Defendants were preparing a letter in further response to CLF's proposed resolutions to the parties' dispute over the topics.  *See* Ex. A, Prather Decl. ¶ 12.  CLF's counsel indicated that CLF would withdraw the notices to allow for the parties to complete their meeting and conferring.  *Id.* ¶ 13. Mr. Rumelt at no time indicated that he expected the noticed depositions to move forward, that CLF would refuse to withdraw its notices, or even more egregious, that CLF would file its present motion for sanctions. *Id.*  CLF's characterization that "Defendants simply did not appear for their deposition" is untrue, and there is no objectively reasonable way that CLF could believe it to be true.

In addition, CLF played a role in prolonging the meet and confer process that had to conclude before any motion could be filed.  Just a week before the first scheduled deposition, on March 20, 2023, CLF sent a letter refusing to acknowledge the parties' impasse on all of Defendants' objections and proposing pathways to address issues with its deposition topics. For example, with respect to Topic 2, "CLF suggests that Defendants identify the relationship or lines of business within the Shell group that <u>are</u> associated with the New Haven Terminal and relevant to this case to help narrow this Topic and avoid the need for court intervention."  (ECF

203-10 at 5) (emphasis in original). With respect to Topic 28, CLF proposed the language of a second revised topic. No party believed that the depositions were ready to proceed because the parties remained engaged in the meet and confer process. *Id.* at 6.

Contrary to CLF's claim that as of March 20, CLF believed the meet and confer process was completed (Mot. at 4), CLF could not have reasonably believed this when it had outstanding proposals on the language of two of its deposition topics. As CLF well knows, per Local Rule 37, "No motion pursuant to Rules 26 through 37, Fed.R.Civ.P., shall be filed unless counsel making the motion has conferred…with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution." L.R. 37(a). Defendants could not file a motion for protective order while CLF continued to propose topic language requiring further discussion. With issues left unresolved, Defendants were not in a position to file a motion for a protective order until it had responded to CLF's letter <u>and</u> received CLF's response.

Courts strictly construe Rule 37(d) and frequently refuse to order sanctions where the circumstances indicate the parties did not expect the deposition to proceed as originally noticed. In *In re Air Crash at Taipei, Taiwan on October 31, 2000*, the court refused to order sanctions, finding that "the parties appear to have reached an informal agreement that [the] deposition would not proceed while defendant…pursued legal remedies to overturn this Court's order." 2002 WL 32155477, at *5 (C.D. Cal. Oct. 23, 2002). In *Gee v. City of Chicago Public Schools*, the court refused to order sanctions finding that "it seems that Defendant agreed to postpone Plaintiff's deposition at her request." 2002 WL 1559704, at *2 (N.D. Ill. July 12, 2002). In that case, the deposing party changed its mind and filed the motion for sanctions, which the court denied. *Id.*; *see also Honey v. Dignity Health*, 2013 WL 6709953, at *1-2 (D. Nev. Dec. 18,

2013) (refusing to order sanctions where "[a]lthough Defendant noticed the Plaintiffs' deposition on several occasions, those deposition dates were canceled or postponed….It does not appear that [the deponent] actually failed to appear at a noticed deposition and that [the deposing party's counsel] proceeded with the deposition and made a record of their nonappearance.").

At no point could CLF have reasonably believed the depositions were going to occur because CLF knew that Defendants had not yet designated a specific witness — nor had CLF inquired about any such witness leading up to the noticed deposition date.  Defendants informed CLF on multiple occasions that Defendants would not be producing a witness until the parties resolved their objections through negotiation or motion.  *See* Ex. A, Prather Decl. ¶¶ 8, 10. Tellingly, CLF never arranged for a court reporter or even scheduled the deposition with a remote deposition services vendor, the practice the parties have used for every deposition that has already occurred in this case. *Id.* ¶¶ 16-17.  CLF's own conduct demonstrates that it did not intend for Defendants' 30(b)(6) depositions to occur at the end of March.

### C.   Defendants' Conduct Was Substantially Justified.

In the event the Court finds that the parties' conduct and statements did not effectively postpone the deposition date, Defendants' conduct in not proceeding with the depositions was substantially justified. "Under Rule 37, 'conduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action.'" *John Wiley & Sons, Inc.*, 298 F.R.D. at 148 (quoting *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013). The meet and confer process concerning the scope of the 30(b)(6) depositions was ongoing, and CLF's March 20, 2023 letter continued the meet and confer process, which would have required another round of correspondence between both parties before an impasse or resolution for all topics could have been reached. In its March 20 letter, CLF specifically states, "I am responding to Defendants' objections *in an additional good*

*faith effort to reach a compromise on as many topics as possible to avoid the need for Court intervention.*" (ECF 203-10 at 4).  CLF expected additional conferring, which does not support CLF's statement that "CLF confirmed the Parties' impasse by letter on March 20…."  Pl's Mot. at 16, ECF 203. CLF inexplicably claims in its motion that "Defendants had more than enough time to file a motion for a protective order" since Defendants first articulated their objections on February 3. Mot. at 15. CLF ignores that Local Rule 37(a) requires the completion of a meet and confer process prior to filing a motion for a protective order. Until such impasse or resolution was reached, any motion for a protective order by Defendants was unripe and would have violated Local Rule 37(a).

The court's decision in *Scott-Warren v. Liberty Life Assurance Co. of Boston* is instructive. In *Scott-Warren*, the court denied a request for sanctions, finding the defendant's failure to appear for the deposition to be substantially justified.  2016 WL 3876660, at *10 (W.D. Ky. July 13, 2016).  Specifically, the court found that "Plaintiff had ample notice that Defendant objected to the taking of the deposition," objections with respect to "specific areas of inquiry and documents requested in the deposition notice" as "the dispute regarding the deposition is inextricably linked to the dispute…regarding written discovery." *Id.*  Because the deposition notice covered the same topics as those in discovery requests, the plaintiff "knew or should have known that Defendant would object to the deposition notice." *Id.*  Notwithstanding Rule 37(d)(2), the court found that the "Plaintiff cannot argue credibly that she expected Defendant to appear for the deposition" based on the defendant's communications and deemed the defendant's conduct substantially justified.  *Id*.  The same is true here. Defendants' conduct was reasonable and substantially justified, and the Court should not grant the sanctions CLF seeks as "to issue sanctions against Defendant[s] under these circumstances would be to reward gamesmanship on

14

the part of Plaintiff" since "[i]t is difficult to imagine how Defendant[s] could have more clearly communicated its opposition to the deposition going forward." *Id.* at \*12; *see also Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 257 (E.D. Wis. 2013) (denying sanctions request where party informed deposing party that deponent "would not be appearing for the deposition" and deposing party "did not mention [any objection] until…its motion for sanctions").

### D.     Imposition of Sanctions Would Be Manifestly Unjust.

Under Rule 37, "[c]ourts may consider the following non-exclusive factors when determining whether to impose Rule 37 sanctions: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *HSBC Bank USA v. Harris*, 2021 WL 5501711, at \*4 (D. Conn. Nov. 23, 2021) (quoting *Funk v. Belneftekhim*, 861 F.3d 354, 355 (2d Cir. 2017)). While none of these factors is dispositive, consideration of these factors weigh heavily against awarding sanctions.

### 1.     Defendants Did Not Willfully Refuse Compliance.

Faced with yet another overbroad, irrelevant, and burdensome discovery request, Defendants proceeded in good faith to meet and confer with CLF regarding its deposition topics. This process continued into late March, when Defendants informed CLF that the depositions would not proceed as scheduled due to the ongoing conferring. CLF acknowledged and agreed that the depositions would not proceed up until the first deposition date had passed. CLF asserts now that "there is no debate that Defendants acted willfully," (Mot. at 28) but CLF does not explain how Defendants' conduct constituted willful noncompliance. CLF further claims that Defendants' decision not to move for a protective order somehow was willful noncompliance with the Rules, when in fact, it is the mandate of Local Rule 37(a) that prevented Defendants

from filing the motion for a protective order until the meet and confer process was complete. Defendants engaged in good faith to address CLF's notices of deposition and Defendants' conduct was in no way "willful non-compliance."

### 2. Sanctions Against Defendants Are Not Warranted.

"'A court considering sanctions can and should consider the equities involved before rendering a decision.'" *Davis*, 2022 WL 2802334, at *5 (quoting *Schalfier Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999)). The "Second Circuit specifies that severe sanctions are 'generally to be used only when the district court has considered lesser alternatives.'" *In re SageCrest II, LLC*, 444 B.R. 20, 24 (D. Conn. 2011) (quoting *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010)). The equities in this case do not weigh in favor of granting sanctions. CLF requests reasonable expenses and fees, an order compelling Defendants to appear for Rule 30(b)(6) depositions, and additional sanctions, including an order "holding that all objections to the noticed topics have been waived by Defendants[]...." Mot. at 9. Each of these sanctions is either manifestly unjust or moot and should not be awarded by this Court.

First, an order compelling Defendants to appear for Rule 30(b)(6) depositions is moot and nonsensical. Defendants have never refused to appear for a Rule 30(b)(6) deposition. Defendants acted in good faith to resolve the disputes over CLF's topics. Any other implication by CLF that Defendants refused to appear for their depositions is inaccurate and misleading.

Second, Defendants have already expended significant time and incurred substantial costs during the lengthy meet and confer process over CLF's deposition topics. Not only should Defendants not be forced to pay CLF's reasonable expenses in connection with this motion, but, instead, as discussed below, CLF should be the party to pay Defendants' costs associated with CLF's frivolous motion and abusive discovery practices.

Lastly, CLF's request that all of Defendants' objections to CLF's deposition topics should be deemed waived is nothing more than gamesmanship and a further attempt to seek irrelevant, burdensome discovery that it has not yet been able to obtain through its equally inappropriate Requests for Production and Interrogatories. Defendants timely and with much detail stated their objections to CLF's improper deposition topics. CLF does not cite to any authority supporting its request that all of Defendants' "relevance, overbreadth, vagueness, and burden" objections to CLF's deposition topics be waived. The cases CLF does rely on are wholly inapposite.[2] For CLF to bring this motion for sanctions seeking a complete waiver of all of Defendants' properly asserted objections based on deposition dates it knew would not proceed is sanctionable conduct in and of itself, and would be patently unjust if awarded.

---

[2] In *ProDox, LLC v. Professional Document Services, Inc.*, the court awarded a percentage of the attorneys' fees and expenses and ordered the defendant to sit a deposition, despite some prior procedural objections. 341 F.R.D. 679, 685-87 (D. Nev. 2022). The court did not waive any objections to the substance of the deposition topics. *Id.* There, the deposing party actually appeared for the deposition, the deponent filed a motion for a protective order at the eleventh hour, and the deponent "engaged in a similar tactic earlier in th[e] case and was expressly rebuffed from doing so." *Id.* at 683.

In *Equal Employment Opportunity Commission v. Thurston Motor Lines*, the deponent refused to designate a witness and only conveyed this information at the time of the deposition, where counsel for the deponent also told the deponent to refuse to answer questions based on irrelevance or vagueness. 124 F.R.D. 110, 114 (M.D.N.C. 1989). Despite deeming the conduct sanctionable, the court still did not order the waiver of any of the deponent's objections to the notice of the deposition. *Id.* at 115.

In *Societe Civile Succession Guino v. Renoir*, the court imposed sanctions where the deponents, who resided and agreed to be deposed in Paris, France, only informed the deposing party that they would not agree to be deposed under the Hague Convention "after Defendants' counsel, the court reporter, videographer, and translator had already arrived in Paris the day before the deposition." 305 Fed. App'x 334, 338 (9th Cir. 2008). Because the deponent never "raised the issue earlier ***and/or*** moved for a protective order," the court awarded sanctions and found that the district court did not clearly err "in refusing to consider [the deponent's] arguments as to the Hague Convention and French law," which concerned the ability to take the deposition at all, not the substance of the deposition topics. *Id.* The Ninth Circuit and the district court never held that any objections to the actual substance of the deposition topics or the notice were waived. CLF finally cites to *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, an inapposite case that does not deal with a motion for sanctions. 2019 WL 5485266, at *4 (D. Conn. Oct. 25, 2019).

II.     **Defendants Require the Court's Protection Against CLF's Irrelevant and Overbroad Topics.**

"The primary purpose of a Rule 30(b)(6) deposition is to streamline the discovery process." *Winfield v. City of New York*, 2018 WL 840085, at *5 (S.D.N.Y. Feb. 12, 2018) (internal quotation marks and citation omitted)).  Relevance is tied to the claims or defenses. Fed. R. Civ. P. 26(b)(1). The burden of demonstrating relevance initially rests with the party seeking discovery.  *Zeitler v. Nationwide Property & Casualty Ins. Co.*, No. 3:21-cv-519, 2022 WL 1125397, at *1 (D. Conn. Apr. 15, 2022) (internal quotation marks and citation omitted)). CLF has not carried its burden of demonstrating that the disputed topics are relevant.

A.     **CLF's Topics Seek Irrelevant Information Pertaining to Extraneous Corporate Entities. (Topics 1 & 2)[3]**

Topics 1 and 2 are overbroad, and thus involve irrelevant subjects, because they include within their scope any corporate "parent, holding company, subsidiary, members, sister corporations or partners associated with the New Haven Terminal." Topic 1 specifically seeks the "corporate structure, hierarchy, and management" of any entity within that exceptionally broad scope affiliated with the New Haven Terminal. Topic 2 also involves "any line of business, unit, division, or other organization within the Shell group…associated with the Terminal." These topics as written are overbroad because they include entities and information that are wholly irrelevant to CLF's claims, including entities that have *any* relationship to the

_____

[3] Topic 1 seeks "The corporate structure, hierarchy, and management of each Defendant, including the details of any legal, business, or other relationship between or among Defendant, parent, holding company, subsidiary, members, sister corporations or partners associated with the New Haven Terminal (e.g., Shell Pipeline Company LP)" *See, e.g.,* ECF 203-05 at 3.

Topic 2 seeks "The structure, hierarchy, and management of any line of business, unit, division or other organization within Shell group (e.g., Shell Trading and Supply Operations, Shell Downstream, HSSE, Reliability & Integrity) associated with the Terminal, including the details of any legal, business, or other relationship between or among such organization, Defendant, parent, holding company, subsidiary, members, sister corporations or partners." *Id.*

entities connected to the New Haven Terminal. Defendants have never disputed who owns and operates the New Haven Terminal; the permit for which CLF bases its citizen suit makes that clear. Yet, CLF refuses to narrow either of these topics, claiming that the fact the topics are limited to the Terminal makes them sufficiently narrow. This erroneously assumes that "any line of business, unit, division, or other organization within the Shell group" or any "parent, holding company, subsidiary, members, sister corporations or partners associated with the New Haven Terminal" is relevant to CLF's claims. Not only is this false, but CLF has also agreed that this is not true when it previously agreed to limit discovery. For example, CLF agreed that information and documents concerning the Terminal's Title V permit under the Clean Air Act is not relevant. The Title V permit involves a "line of business, unit, division, or other organization within the Shell group" associated with the Terminal but is not relevant to CLF's claims. CLF's CWA and RCRA claims "do not implicate questions concerning the Defendants['] corporate structure, and Plaintiff does not need this information to make a showing of legal wrongdoing." *Woelfle v. Black & Decker (U.S.) Inc.*, 2020 WL 1180749, at *2 (W.D.N.Y. Mar. 12, 2020) (granting protective order against topic "about the corporate structure," finding the information to be "not relevant and proportional to the needs of the case"). These topics are, therefore, overbroad and should be limited to only the relationship between those entities and lines of business, units, divisions, or other organizations that are related to CLF's *claims, i.e.*, the Defendants' CWA and RCRA compliance.

Moreover, a request for a 30(b)(6) witness to provide testimony regarding the corporate structure, hierarchy, and management of all corporate affiliates, which number in the thousands, is facially inappropriate and unduly burdensome. *See* Ex. A, Prather Decl. ¶ 24. Such information is beyond the scope of what is reasonable and required under Rule 30(b)(6). *See,*

*e.g., McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kansas 2008) ("To allow Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."). Similarly, including all conceivable corporate relationships, between "all affiliated entities," are "overly broad[, and t]he burden outweighs the likely benefit of the testimony." *Quintel Tech. Ltd. v. Huawei Technologies, Inc.*, 2017 WL 3712349, at *9 (E.D. Tex. June 12, 2017). With respect to the corporate structure, hierarchy, and management of Defendants, Defendants have produced documents concerning this topic. Thus, to the extent the Court is inclined to allow any further discovery on this point, CLF's topics should be tailored to the relevant claims of CWA permit compliance and management of hazardous waste so that the witness can be adequately prepared to discuss relevant information. *See Chaney v. Vermont Bread Company*, 2022 WL 16757624 (D. Vt. Nov. 8, 2022) (tailoring topic concerning corporate relationships and affiliates to "questioning [that] must be tailored to ultimately support Plaintiffs'…claim as it pertains to this case").

**B.    CLF's Topics Seek Irrelevant Information Concerning Metocean. (Topics 3 & 23)[4]**

With Topics 3 and 23, CLF yet again attempts to seek discovery on Metocean, a Projects & Technology team that provides services for certain assets that request its services.  From the

---

[4] Topic 3 seeks "The following policies, procedures, frameworks, standards, tools, and processes and the details of any determination by Defendants that they apply or do not apply to the Terminal:

a. Terminal Operations Manual
b. Manual of Authorities
c. Investment Management Guide
d. Asset Management System
e. Asset Integrity Process
f. Hazards and Effects Management Process

beginning of this case, Defendants have repeatedly told CLF that Metocean has had no

relationship at all to the New Haven Terminal in general, let alone to the Terminal's RCRA and

CWA permit compliance. Metocean has never done any work for the New Haven Terminal; nor

has the Terminal ever requested it. CLF knows this. CLF's Request for Production No. 17 asked

for "All Documents related to the work of Shell's Metocean Team and any Metocean Advisors."

(ECF 149-03).  Defendants responded that Defendants "have determined that the Metocean team

has not done any work involving the New Haven Terminal and therefore, there are no Metocean

documents related to it." (ECF 149-05).  Similarly, CLF's Interrogatory No. 15 asked

Defendants to explain what work the "Metocean Team has done or does for any and all Shell

Business Units."  (ECF 149-03).  Defendants responded "The Metocean team has not been asked

to, nor otherwise undertaken, an evaluation of the New Haven Terminal." (ECF 149-05).

In September 2022, James Kent Yeates, the Lead Facility Engineer for the East Coast

Equilon Terminals (including the New Haven Terminal), submitted a declaration where he

explained that "Metocean has never undertaken an analysis of the New Haven Terminal" and

that the "New Haven Terminal has never had a need to seek out [Metocean's] services." (ECF

181-22 ¶ 16). Mr. Yeates was deposed on December 22, 2022, and he was asked about

Metocean. He testified that neither he nor his staff was aware of the Metocean Design and

Engineering Practices document referenced in Topic 3,[5] and he did not believe he could even

---

g. Design and Engineering Practices, including any related to Metocean (e.g., DEP
      37.00.10.11-Gen)
h. Design Engineering Manuals
i. Health, Safety, Security, and Environment and Social Performance Control Framework
j. Hazards and Effects Management Process
k. Distribution Global Assessment Management Excellence"

Topic 23 seeks "Activities of the Metocean team regarding on- and near shore facilities in the United States."  *See*
ECF 203-05 at 3, 5.
[5] This document is non-responsive and irrelevant to CLF's document requests and was inadvertently produced.

access it. Yeates Depo. 200:19-20; 220:20-23, ECF 149-07. Mr. Yeates and his team are responsible for the engineering practices at the New Haven Terminal and he testified he had *no* familiarity with the Metocean document CLF identified.

Yet, despite this sworn testimony of Mr. Yeates, not to mention Defendants' repeated objections to discovery on Metocean, CLF continues demanding all information pertaining to Metocean. *See BAT LLC v. TD Bank, N.A.*, 2019 WL 13236131, at *5 (E.D.N.Y. Sept. 24, 2019) ("A Rule 30(b)(6) deposition is not to be used to re-ask all of the questions a party has previously explored with multiple witnesses."). Even if Metocean had performed any work related to the Terminal its work relative to this Terminal would be in scope only to the extent that information was shared with the Terminal. No such information has been shared. Metocean has no relevance to the New Haven Terminal, let alone CLF's claims, and CLF cannot show that it is an appropriate topic for a 30(b)(6) deposition.

**C.   CLF's Topics Seek Irrelevant Information Concerning Corporate Policies. (Topic 3)**

Topic 3 lists 11 policies, procedures, frameworks, and documents about which CLF wishes to question 30(b)(6) witnesses. Defendants objected to this topic because it includes items inapplicable to the New Haven Terminal either in whole or in part, and are therefore irrelevant to CLF's claims. For example, the Investment Management Guide is a guide that outlines the process and guidelines for the Trading & Supply line of business for investment management. This topic is entirely irrelevant to Defendants' RCRA and CWA permit compliance and should be stricken from CLF's deposition topics entirely. The other enumerated items may have limited applications to the New Haven Terminal, and Defendants do not object to CLF asking questions about those applications. But, for example, any questions pertaining to Design and Engineering Practices concerning Metocean are entirely irrelevant and impose an undue burden on

22

Defendants to prepare for that topic, as discussed in the previous section. The scope of this topic should be limited to only the parts of these policies, procedures, and frameworks that pertain to hazardous waste management and stormwater management that are relevant to this case.

**D.     CLF's Topics Seek Irrelevant Information Concerning Terminals Other Than the New Haven Terminal. (Topics 4, 6, 7,  23, & 28)**

Defendants object to Topics 4, 6, 7, 23, and 28 because they each are overbroad in seeking information pertaining to the many facilities Defendants own in the United States and around the world. Defendants have briefed this issue in their Opposition to CLF's Renewed Motion to Compel (ECF 177), and CLF is attempting to use the 30(b)(6) deposition as an opportunity to circumvent its overbroad discovery requests. Topics 4, 23, and 28 all cover information "regarding on- or near shore facilities" either in the United States or in the world. These topics are patently overbroad, include irrelevant information, and run afoul of the particularity requirement in Rule 30(b)(6). The weather or "climate change" risks at other facilities around the world have no relevance whatsoever to whether Defendants are in compliance with RCRA or their CWA permit in New Haven, Connecticut. How Defendants are managing potential flooding issues for their facilities in the Gulf of Mexico or the North Sea, for example, has no relevance to how Defendants are managing stormwater at the New Haven Terminal, and CLF has not demonstrated how such information is relevant. *See, e.g.*, *McBride*, 250 F.R.D. at 584 (finding good cause of a protective order "based on lack of a geographic limitation").

In addition, the lack of any geographic limitation also flouts the requirement under Rule 30(b)(6) that the topics be "describe[d] with reasonable particularity." It is unclear what "near shore" means. CLF does not provide any distance or other way to determine which facilities it wishes to question Defendants about. CLF also does not provide any further explanation for

"facilities," which could refer to myriad assets, many of which have nothing to do with bulk fuel storage terminals. Topics must be described with reasonable particularity so the Defendants know how to prepare their witness for the deposition. CLF's topics as written are so broad to the point of rendering it impossible for Defendants to begin to prepare their witnesses.

Topics 6 and 7 are narrower in scope in that they only apply to the Sewaren Terminal, but CLF refuses to limit the scope to information about the events at Sewaren that are relevant to CLF's claims here. Defendants are not objecting to the entirety of these topics, but rather, as they stated in their March 15 letter, "Defendants are willing to accept these topics if they are limited to information specifically pertaining to the New Haven Terminal…." (ECF 203-09 at 5).  CLF did not engage with Defendants to narrow this topic, but instead declared that the "Parties are at an impasse." *See* (ECF 203-10 at 5).  Defendants recognize the relevance of these topics to the extent what transpired at the Sewaren Terminal is applicable to the New Haven Terminal, such as what lessons were learned, if any, that were then subsequently implemented at the New Haven Terminal. But with respect to the aspects of these topics that seek irrelevant information, such as the specific details of the Sewaren Terminal and the operations and processes at the Sewaren Terminal, Defendants object to this topic as irrelevant. CLF's claims, which pertain to RCRA and CWA permit compliance, are specific to the New Haven Terminal, and information pertaining to other terminals simply has no bearing on whether the New Haven Terminal is compliant with its stormwater permit and RCRA. To prepare a witness to testify about a terminal that is not the subject of this lawsuit would be unduly burdensome. CLF has already questioned Mr. Yeates, Mr. James Ledbetter, and Mr. Michael Sullivan regarding the Sewaren Terminal. To require a 30(b)(6) witness to testify regarding additional information is duplicative and not proportional to the needs of this case.

### E.   CLF's Topics Seek Irrelevant Information Concerning Defendants' "Knowledge" of Terminal Risks. (Topic 5)

With Topic 5, CLF seeks to question "Defendant's knowledge of risks to the Terminal from severe weather (*e.g.*, hurricanes, tropical storms, flooding, storm surge)."  (ECF 203-05 at 4). This topic is irrelevant to CLF's claims because none of its claims contains a knowledge element. CLF's claims are citizen suit claims, and there is no knowledge element in any citizen suit cause of action. To prove Defendants are liable under the CWA's citizen suit provision, CLF must show Defendants are: (1) persons, and (2) in violation of an effluent standard or limitation, or order from EPA or a state. 33 U.S.C. § 1365(a)(1); *see also* 42 U.S.C. 6072(a) (analogous RCRA citizen suit provision). Whether Defendants "know" or do not "know" about severe weather has no bearing whatsoever on whether CLF has proved its claims. Additionally, the topic is vague, redundant, and nonsensical.  CLF has already noticed a topic regarding risks to the Terminal.  Whatever Defendants' prepared 30(b)(6) witnesses discuss regarding those topics are effectively the "knowledge" of the deposed defendant.  Defendants should be protected from having to spend time and resources attempting to prepare any witness for this irrelevant topic or discern how that witness would testify as to a defendant's knowledge about its knowledge.

### F.   CLF's Topics Seek Irrelevant and Duplicative Information Concerning Defendants' Insurance Policies and Communications with Insurance Companies. (Topics 25 & 26)

CLF's Topics 25 and 26 involve "[i]nsurance policies" and "[c]ommunications with insurance companies," respectively, "regarding risk of loss to Terminal assets due to severe weather events (*e.g.*, hurricanes, tropical storms, flooding, storm surge) whether exacerbated by climate change impacts (*e.g.*, sea level rise or not)." (ECF 203-05 at 6).  Defendants already informed CLF in their Rule 26(a)(1) Initial Disclosures that "there are no insurance policies that are applicable in this matter." This information has already been provided, and as such, these

topics are duplicative and should not be permitted. *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("Courts have found Rule 30(b)(6) notices to be unduly burdensome which merely request the duplication of other information already obtained through other discovery methods."). Moreover, "[c]ommunications with insurance companies" are completely irrelevant and have no bearing on whether Defendants have complied with their RCRA and CWA permit compliance obligations at the New Haven Terminal. In addition, those communications with insurance companies, to the extent there are any, would likely include highly sensitive, confidential business information, the probing of which is immaterial to this case.

### G.   CLF's Topics Seek Irrelevant Information Regarding Climate Change. (Revised Topic 29)

CLF's Revised Topic 29 is another bite at its Requests for Production that ask for all documents and media regarding climate change. CLF has already served extensive discovery requests on this topic of "climate change," and it now seeks to obtain 30(b)(6) deposition testimony on this incredibly broad topic, circumventing Defendants' previously lodged objections. Specifically, this topic covers Defendants' "confirmation, adoption, agreement, disagreement, and/or opinion or statements made by entities within the Shell group or Shell business lines quoted in CLF's amended complaint paragraphs 53, 59, 213-219, 373-377, 380-383 (ECF No. 47)."  (ECF 203-05 at 6). The various statements in these paragraphs have no relevance to the New Haven Terminal, let alone to CLF's claims in this case. What Defendants or its corporate affiliates have or have not said about climate change and whether the named Defendants agree or disagree has no relevance to whether Defendants have met its hazardous waste storage obligations under RCRA or its CWA permit compliance requirements. CLF recognized this topic's irrelevance when it effectively withdrew the first version of Topic 31, which involved "[p]ublications, reports, and films about climate change, storm surges,

hurricanes, and flooding that are published, authored, or contracted by Shell, plc, or persons or entities within the Shell group." (ECF 203-05 at 6).  The relevance of Revised Topic 29 is no different; it touches on the exact same subject just through a different form: documents versus statements. Defendants should not be required to prepare and present a 30(b)(6) witness on this enormously overbroad and irrelevant topic. As the "primary purpose of a Rule 30(b)(6) deposition is to streamline the discovery process," this topic completely undermines such purpose by seeking essentially anything Defendants or affiliated Shell entities knew or said about climate change. *Winfield*, 2018 WL 840085, at *4. This topic is blatantly irrelevant, and should be stricken from CLF's deposition notices.

**H.    CLF's Deposition Topics Are Not Tailored To The Relevant Discovery Time Period. (Topics 8, 12, 14-15, & 17-18)**

Several of CLF's topics, specifically Topics 8, 12, 14-15, and 17-18, are not tailored to the relevant time period for discovery in this case. Defendants objected to these topics originally because they were vague and ambiguous as to which time period or time periods these topics referred. In response to Defendants' original objections, CLF provided revised versions of these topics that specified that the relevant time period for the aforementioned topics is from January 1, 2011 to the present.

CLF's time period of January 1, 2011 to the present for these topics is overbroad and not tailored to the relevant discovery time period. As Defendants have previously informed the Court, Defendants agreed to provide discovery on CLF's CWA claims from 2017 to present and on CLF's RCRA claims from 2011 to present. Defendants' approach is more than reasonable to provide CLF with the discovery it requires to support its claims. All of CLF's claims stem from alleged *current* violations of the Terminal's General Permit. The law is well-established that the citizen suit provisions of the CWA and RCRA are strictly limited to enforcement of current or

27

ongoing violations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59-64 (1987). Defendants decided upon 2017 as the default discovery period because the statute of limitations for "citizen actions seeking the enforcement of civil penalties" for the CWA and RCRA and for injunctive relief under the CWA is five years. *U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC*, 257 F. Supp. 2d 407, 426 (D. Me.), *aff'd sub nom. U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC,* 339 F.3d 23 (1st Cir. 2003) (compiling CWA cases); *see also Sierra Club Inc. v. Granite Shore Power LLC*, 2019 WL 8407255, at *8-14 (D.N.H. Sept. 13, 2019) (applying the concurrent remedy doctrine to CWA claims); *Bodne v. George A. Rheman Co.,* 811 F. Supp. 218, 221 (D.S.C. 1993) (applying five-year statute of limitations to RCRA and noting "[n]umerous courts have held that 28 U.S.C. § 2462 is the relevant federal statute of limitations to citizen actions under environmental statutes"). Defendants have applied a discovery period beginning in 2011 for the RCRA claims because historic waste can currently be the cause of an alleged endangerment.

Each of the aforementioned topics at issue pertains to CLF's CWA claims: Topic 8 pertains to the CWA General Permit issued by the Connecticut Department of Energy and Environmental Protection; Topics 12, 14, and 15 concern "Best Management Practices" and "control measures" used by Defendants, both of which are components of the General Permit and SWPPP issued under the CWA; and Topics 17 and 18 concern "stormwater discharges," and "Defendant's [sic] monitoring for indicator pollutants in its discharges," respectively, both of which are concerns under the CWA.  (ECF 203-05).  Because each of these topics specifically pertain to CLF's CWA claims, the applicable time period for these topics should be from 2017 to the present, not from 2011 as CLF insists. Thus, the Court should grant Defendants' protective order limiting the time period of these topics to January 1, 2017 to the present. *See, e.g.*, *N. Shore*

*Window & Door, Inc. v. Andersen Corp.*, 2022 WL 16788807, at *1-2 (E.D.N.Y. Sept. 14, 2022) (limiting applicable time period because it is "overly broad and burdensome"); *McBride*, 250 F.R.D. at 585-86 (granting protective order for overly broad temporal scope).

### III.   Good Cause Exists To Grant A Protective Order Because CLF's Overly Broad and Ambiguous Topics Create An Undue Burden.  (Topics 1, 2, 4, 6, 7, 23, 28 and 29)

To the extent the Court finds that CLF has carried its burden to demonstrate that any of the aforementioned topics is relevant, good cause exists to grant a protective order limiting that discovery. Under Rule 26(c), trial courts have "'broad discretion…to decide when a protective order is appropriate and what degree of protection is required.'" *Town of Greenwich*, 2020 WL 3634546, at *1 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). For a "Rule 30(b)(6) Notice…[this means] the information sought not be unduly burdensome." *Id.* "The court must limit the frequency or extent of discovery when: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Winfield*, 2018 WL 840085, at *4 (internal quotation marks and citation omitted). Moreover, "topics that are not relevant to the…litigation…pose an undue burden." *Sanofi-Synthelabo v. Apotex Inc.*, 2009 WL 5247497, at *2 (S.D.N.Y. Dec. 30, 2009).

As discussed above, CLF has not met its burden in demonstrating the relevance of many of its 30(b)(6) deposition topics. And for even those topics that have marginal relevance, the broad, imprecise language of the topics impose an undue burden on Defendants to prepare a

30(b)(6) witness. Many of these topics are cumulative and duplicative of prior discovery requests; CLF's dissatisfaction with a perfectly adequate response is not grounds to seek the discovery again. Further, the wording of the topics impose an impossible burden on Defendants to prepare given the magnitude and volume of information a witness would need to review to do so. *See* Prather Decl. ¶¶ 23-26.

Under Rule 30(b)(6), CLF must describe its deposition topics with "reasonably particularity," which "requires the topics listed to be specific as to subject area and to have discernible boundaries." *Winfield*, 2018 WL 840085, at *5. The "topics should be substantively and temporally relevant to the claims or defenses." *Id.* "[F]ederal judges have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) Notices." *Krasney v. Nationwide Mut. Ins. Co.*, 2007 WL 4365677, at *3 (D. Conn. Dec. 11, 2007). Many of CLF's topics suffer from the lack of requisite reasonable specificity. "Rather than targeting those issues in which Rule 30(b)(6) testimony is truly needed, [CLF's] deposition notice appears to have been drafted to cover nearly every conceivable facet of this litigation," which is "improper, overly burdensome, and clearly disproportional to the needs of the case." *Wieland*, 2021 WL 3549893, at *3.

### A.    Topics 1 & 2

The overbroad, ambiguous language of Topics 1 and 2 impose an undue burden on Defendants to prepare a witness. The 30(b)(6) deposition is not an opportunity for CLF to reach to every corner of potentially relevant discovery; it is meant to be an efficient means for obtaining targeted discovery. The language of Topics 1 and 2 sweep in myriad entities and topics that would take weeks to prepare and involve the searching for and review of copious documents. *See* Ex. A, Prather Decl. ¶ 23.  Such an undue burden should not be imposed on

Defendants for information that is irrelevant to CLF's claims and is not proportionate to the needs of this case.

### B.      Revised Topic 4, Topic 23, & Topic 28

The overbroad language contained in Topics 4, 23, and 28 create an impossible burden for Defendants to prepare a 30(b)(6) witness. Not only do Defendants not have knowledge of every "on or near shore Shell facility[y]," but the preparation of how each of those facilities handles its project development requests or authorizations for expenditures regarding weather risks would require months of interviews and document review that are just simply not proportional to the needs of this case. The relevance of how a document storage facility in Houston, Texas, for example, assuming that the facility is considered "near shore," is entirely outweighed by the burden it would cost Defendants to prepare a witness. The cost and burden of preparing any number of witnesses to testify regarding thousands of individual facilities for a 30(b)(6) witness deposition is undue. In addition, as Metocean is not a part of any of Defendants' corporate structure, it is a part of an entirely different company and line of business. Defendants would need to conduct significant preparation to learn what "activities" Metocean even conducts. Simply because the Metocean group is part of the larger Shell plc corporate structure does not make its work discoverable or appropriate for a 30(b)(6) deposition for any other corporate entity within that structure.

### C.      Topics 6 & 7

As discussed above, Defendants do not object to CLF asking questions of Defendants' 30(b)(6) witnesses about the loss of containment at the Sewaren Terminal to the extent it is relevant to the New Haven Terminal. Questions going beyond the applicability of that event to the New Haven Terminal is overbroad and imposes an undue burden on Defendants to prepare a

30(b)(6) witness regarding all aspects of the event at the Sewaren Terminal, much of which has no applicability to the New Haven Terminal.

### D.      Revised Topic 29

The burden on Defendants to prepare a witness to testify to information dating back to 1988 dealing with topics that have no relevance to the New Haven Terminal and CLF's claims would be extensive.  Given the lack of relevance these statements have to the claims asserted here, the burden on Defendants to prepare a witness about them is also disproportionate to the needs of this case. This request would require hundreds of hours of document searches and countless hours of review and subsequent preparation that would be enormously costly and time consuming.

## IV.  **Defendants Are Entitled To Sanctions Due To CLF's Bad Faith and Abusive Discovery Practices.**

### A.      **CLF's Instant Motion for Sanctions Is Frivolous and Made in Bad Faith.**

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'" *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (quoting *Kamen v. Am. Telephone & Telegraph Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986)). Similar to § 1927, a court has the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks and citation omitted). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must

have been undertaken for some improper purpose such as delay." *Olivieri*, 803 F.2d at 1273. "As

a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent

authority may be decided in a single inquiry." *Gissendaner v. Credit Corp Solutions, Inc.*, 358 F.

Supp. 3d 213, 224 (W.D.N.Y. 2019) (internal quotation marks and citation omitted). To award

sanctions, there must be "clear evidence that the challenged actions are entirely without color,

and [are taken] for reasons of harassment or delay or for other improper purposes." *Bilodeau v.

Vlack*, 2010 WL 2232480, at *4 (D. Conn. May 26, 2010) (quoting *Olivieri*, 803 F.2d at 1272)

(internal quotation marks omitted).

      CLF's motion filed by counsel "multiplies the proceedings in [this] case unreasonably

and vexatiously" and pursuant to Section 1927 and this Court's inherent powers, this Court

should sanction CLF to cover the costs, expenses, and fees incurred from this motion.

Sanctionable conduct includes when a party brings a colorless "claim [that] is 'entirely

without…any legal or factual basis….'" *Hewett v. Triple Point Tech.*, 2015 WL 6675529, at *5

(D. Conn. Oct. 30, 2015) (quoting *Olivieri*, 803 F.2d at 1272)); *see also Ride, Inc. v. APS Tech.,

Inc.*, 2014 WL 12754998, at *1 (D. Conn. Aug. 28, 2014) ("Bad faith conduct can be established

where the attorney's actions are so completely without merit as to require the conclusion that

they must have been undertaken for some improper purpose.") (internal quotation marks and

citation omitted)). CLF's counsel's conduct leading up to and including the filing of this motion

evinces the requisite bad faith to impose such sanctions.

      First, CLF manufactured the circumstances and pretenses under which this motion was

filed. The parties were engaged in good faith discussions to meet and confer regarding CLF's

30(b)(6) deposition topics. None of the parties expected that the noticed depositions would occur

at the end of March. Defendants informed CLF of this fact, which was met by acknowledgment

from CLF, not any protest. Up until the business day before the first deposition, counsel for both parties, in person, discussed withdrawing the notice for depositions, with both parties having full awareness that such depositions were not going to take place. CLF's own conduct in not arranging for any depositions that week, such as the scheduling of a court reporter or a remote deposition services vendor, evidences this understanding. Yet, CLF sprung this manufactured trap for sanctions for no other purpose than to attempt to obtain a blanket waiver of all of Defendants' objections to CLF's deposition topics, many of which are currently subject to CLF's Renewed Motion to Compel. CLF's conduct demonstrates bad faith, and its motion has no basis in law or fact.

CLF cannot point to any basis in law or fact to support its motion. As previously discussed, CLF cites to no authority that allows a party to disregard Local Rule 37 and file a motion for a protective order while the parties have ongoing discussion to continue the meet and confer process. The only "bad faith" conduct by Defendants that CLF cites to is Defendants' very adherence to Local Rule 37. Such a claim is entirely unreasonable, and to base a motion for sanctions on such conduct can be for no other purpose than to vexatiously harass and add additional burdens on Defendants. *See Universitas Education, LLC v. Benistar*, 2021 WL 8202406, at *11 (D. Conn. Dec. 22, 2021) ("'Bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999)). This Court has previously held that counsel's representations made to

34

opposing counsel that are then contradicted by a subsequent motion are "clearly not objectively reasonable." *Benistar*, 2021 WL 8202406, at *11.

**B.      CLF's Discovery Practices Are Abusive and Harassing and Warrant Sanctions.**

Under Rule 26(g), CLF is under an obligation to serve deposition topics that were "not interposed for any improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" *and* were "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B)(ii)-(iii). Notices of deposition "are subject to the requirements of Rule 26(g)." *Imperial Chemicals Industries, PLC v. Barr Laboratories, Inc.*, 126 F.R.D. 467, 472 (S.D.N.Y. 1989). "Sanctions imposed pursuant to Rule 26(g)…may be imposed upon either the attorney or the party or both; and no finding of subjective bad faith is required." *Id.* "If the requests nevertheless fall outside the Rule 26(b)(1) scope of discovery, the serving attorney or party may face [Rule] 26(g)(3) sanctions if it made the certification without substantial justification." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 577 (N.D. Tex. 2018). Furthermore, "Imposition of sanctions for a violation of Rule 26(g) is mandatory." *Vaigasi v. Solow Management Corp.*, 2016 WL 616386, at *18 (S.D.N.Y. Feb. 16, 2016).

CLF violated Rule 26(g)(ii) and (iii) when it signed and served its notices of deposition, where CLF certified that its notices of deposition were "not interposed…[to] needlessly increase the cost of litigation" or neither "unreasonably nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case…and the importance of issues at stake in the action." Each of CLF's notices of deposition lists 31 topics, many of which are entirely irrelevant to CLF's CWA and RCRA claims in this case. As discussed *supra* Section __, many of CLF's

topics are essentially the same as its Requests for Production or Interrogatories, to which

Defendants objected and are now subject to CLF's Renewed Motion to Compel. CLF's listing

these topics in the notices of deposition attempts to circumvent Defendants' pending objections

and to elicit deposition testimony from Defendants that could otherwise be denied to CLF upon

the Court's decision on CLF's Renewed Motion to Compel. Because CLF has served a

substantial number of 30(b)(6) deposition topics that are irrelevant and serve no other purpose

than to "needlessly increase the cost of litigation," CLF has violated Rule 26 and must be

sanctioned. *See Havadjias v. Vanguard Ins. Co.*, 46 F.3d 1141, 1141 (9th Cir. 1995) (affirming

district court's order of sanctions where "virtually all of the requests had no relevance to the

underlying action and could only be intended to harass….").  Accordingly, Defendants seek all

expenses, including attorneys' fees, in connection with CLF's discovery practices.

## CONCLUSION

The record reflects a common understanding among the parties regarding the noticed

depositions that Defendants reasonably relied upon in its good faith engagement to resolve their

objections to CLF's 30(b)(6) topics.  CLF's manufactured motion to compel and for sanctions is

a needless and unproductive act of gamesmanship that deserves to be admonished.  Moreover,

many of CLF's noticed topics remain overly broad and unduly burdensome because they are not

reasonably particularized.  For these reasons and those discussed above, CLF's motion to compel

and for sanctions should be denied.  Additionally, Defendants respectfully request that the Court

enter an order (1) striking Topics 2, 5, 25, 26, and 29 from CLF's notices of 30(b)(6) depositions

in their entirety and limiting Topics 1-4, 6, 7, 23, and 28 to the relevant scope as described in

Defendants' Cross-Motion for Protective Order; and (2) impose sanctions against CLF for filing

a frivolous motion for sanctions by awarding Defendants their reasonable expenses incurred in

opposing CLF's motion and bringing their motion for protective order, including attorneys' fees.

Dated: April 27, 2023                    Respectfully submitted,

                                    */s/ Roy D. Prather III*
James O. Craven
ct18790
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

BEVERIDGE & DIAMOND, P.C.
John S. Guttmann
ct25359
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina Reddy
phv20420
400 W. 15th Street, Suite 1410
Austin, Texas 78701
T: (512) 391-8045
F: (512) 391-8099
breddy@bdlaw.com

Megan L. Morgan
phv20623
Roy D. Prather III
phv206800
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1300
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2023, a copy of the foregoing Memorandum of Law In Support of Defendants' Opposition To Plaintiff's Motion To Compel Defendants' Depositions and for Sanctions and Defendants' Cross-Motion for Protective Order on Plaintiff's 30(b)(6) Deposition Topics and for Sanctions was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

_/s/ Roy D. Prather III_____
Roy D. Prather III