## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Conservation Law Foundation, Inc., | |
| Plaintiff, | Civil No. 3:21-cv-00933 (JAM) |
| v. | |
| Shell Oil Co., *et al.*, | May 16, 2023 |
| Defendants. | |

### RULING AND ORDER ON MOTION TO SEAL [ECF No. 150]

The plaintiff, Conservation Law Foundation, Inc. ("CLF"), moved for an order compelling the defendants, Shell Oil Company and others ("Defendants"), to provide additional responses to interrogatories and requests for production. (ECF No. 149.) CLF attached to its motion several exhibits that the Defendants had designated "Confidential" under the terms of the governing protective order. (ECF No. 7.) CLF does not agree that the exhibits are confidential, but it felt constrained by the Defendants' designation to follow the provisional sealing process set forth in D. Conn. L. Civ. R. 5(e)4(a). It filed a motion to seal under Local Rule 5(e)4(a)(1) (ECF No. 150), but because it does not believe the materials qualify for sealing, it essentially opposes its own motion. (*See, e.g.*, ECF No. 180.) The Defendants filed a brief in support of sealing (ECF No. 174), and CLF filed a reply. (ECF No. 180.)

For the following reasons, CLF's motion to seal is granted in part and denied in part. It is granted as to Exhibits J, K, L, N, O, P, Q, and R (ECF Nos. 155, 156, 157, 159, 160, 161, 162, 163), which will remain sealed, but denied as to Exhibits G, H, and I. (ECF Nos. 152, 153, 154.) The motion is granted in part and denied in part as to Exhibit M (ECF No. 158) and CLF's memorandum of law (ECF No. 151) as set forth more fully in Section 3 below.

1. **Applicable Legal Principles**

"The Supreme Court and the Second Circuit have recognized the public's right to access court records and proceedings, which is rooted in both the common law and the First Amendment." *Travelers Indem. Co. v. Excalibur Reins. Corp.*, No. 3:11-cv-1209 (CSH), 2013 WL 4012772, at *2 (D. Conn. Aug. 5, 2013) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978)). "Consequently, there is a strong presumption against sealing court records from public inspection." *Id.* "The public's right to access court documents is not, however, absolute in that it may be surmounted by a party's showing that sealing will further other substantial interests, for example, a criminal defendant's right to a fair trial or a third party's privacy interests." *Id.* at *3 (citing *Matter of New York Times Co.*, 828 F.2d 110, 114-16 (2d Cir. 1987)). "Thus, in limited circumstances and upon a showing of compelling need, the court may order certain records to be sealed." *Id.* (citing, *inter alia*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006)).

Courts in the Second Circuit follow a three-step process in determining whether to seal documents that have been placed before them. *Lugosch*, 435 F.3d at 119-20. First, the court determines whether the document is a "judicial document" to which a presumption of public access attaches. *Id.* at 119. Second, if the document is indeed a judicial document, the court determines the weight to be given to the presumption under the circumstances of the case. *Id.* Third, after determining the weight to be accorded to the presumption, the court "balance[s] the competing considerations against it." *Id.* at 120. "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

In performing the first step of this three-step process, courts regard the document at issue as a "judicial document" if it is "relevant to the performance of the judicial function and useful in the judicial process[.]" *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). "Such documents are presumptively public so that the federal courts 'have a measure of accountability' and so that the public may 'have confidence in the administration of justice.'" *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *U.S. v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")). "In determining whether a document is a judicial record, [courts] evaluate the 'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceedings.'" *Id.* (quoting *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166-67 (2d Cir. 2013)) (brackets and ellipsis omitted).

In performing the second step of the process – the assessment of the weight to be accorded to the presumption – courts consider "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1049). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049. For example, "[t]he weight of [the] presumption is of the 'highest' for 'documents used by parties moving for summary judgment,' which 'should not remain under seal absent the most compelling reasons.'" *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, No. 3:18-cv-705 (VLB), 2020 WL 13303727, at *2 (D. Conn. Aug. 21, 2020) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)) (ellipsis omitted). Conversely, "[d]ocuments that play no role in the performance of

Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." *Amodeo II*, 71 F.3d at 1050.

When the document was placed before the court as an exhibit to a discovery motion, the presumption of access typically "has only 'modest' weight[.]" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023) ("*Keurig*") (quoting *In re New York City Policing During Summer 2020 Demonstrations*, __ F. Supp. 3d __, 2022 WL 7886182, at *2 (S.D.N.Y. Oct. 14, 2022)). "Although a court's authority to oversee discovery and control evidence introduced at trial surely constitutes an exercise of judicial power . . . this authority is ancillary to the court's core role in adjudicating a case." *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). "Accordingly, the presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or for summary judgment." *Id.* "Thus, while a court must still articulate specific and substantial reasons for sealing such material, the reasons usually need not be as compelling as those required to seal summary judgment filings." *Id.*; *accord Bionpharma Inc. v. CoreRx, Inc.*, No. 21-cv-10656 (JGK) (VF), 2023 WL 2977998, at *1 (S.D.N.Y. Mar. 6, 2023) (observing that, where documents were "filed in connection with a discovery dispute," "the presumption of access that attached to these documents is not particularly great") (citation and quotation marks omitted); *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) ("[I]f the transcript is filed for purposes of a motion to compel, the presumption that would attach to the transcript would be low.").

In the third step of the three-step process, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch*, 435 F.3d at 120

(quoting *Amodeo II*, 71 F.3d at 1049). "Courts have identified several countervailing considerations that may overcome even strong presumptions of public access." *Keurig*, 2023 WL 196134, at *3. "Foremost among the competing concerns that a court weighing disclosure must consider is 'the privacy interest of the person resisting disclosure.'" *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020) (quoting *Amodeo II*, 71 F.3d at 1050). "In determining the proper weight to accord an asserted privacy interest, a court should consider both 'the degree to which the subject matter is traditionally considered private rather than public,' as well as 'the nature and degree of the injury' to which the party resisting disclosure would be subjected were the privacy interest not protected." *Id.* (quoting *Amodeo II*, 71 F.3d at 1051) (brackets omitted).

Relatedly, courts recognize the confidentiality of a litigant's business information as a "competing consideration" that can merit sealing. In *Mark v. Gawker Media LLC*, for example, the Court found "the privacy interests in . . . Gawker's confidential business information to be 'competing considerations' sufficient to reject the common-law presumption of access." No. 13-cv-4347 (AJN), 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015); *see also Standard Inv. Chartered, Inc. v. Fin. Indus. Reg. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (summary order) (affirming district court sealing order premised on a conclusion "that NASD's interest in protecting confidential business information outweighs the qualified First Amendment presumption of access"). To be sure, "conclusory statements that documents contain confidential business information are insufficient to justify sealing;" rather, "the moving party must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *Secs. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-cv-10832 (AT), 2022 WL 17751466, at *2 (S.D.N.Y. Dec. 19, 2022) (citation and quotation marks omitted). But if the party makes that showing, "[t]he demonstration of a valid need to protect the

confidentiality of sensitive business information . . . may be a legitimate basis to rebut the public's presumption of access to judicial documents." *Valassis Commc'ns, Inc. v. News Corp.*, No. 17-cv-7378 (PKC), 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020).

### 2. Application

In this case, CLF appended eighteen exhibits to its motion to compel.  (ECF No. 149.)  Its motion concerns twelve of them – Exhibits G through R[1] – and those passages of its memorandum of law that quote from those twelve documents.  Exhibit G is the transcript of the deposition of the Defendants' engineering manager, James Kent Yeates.  (ECF No. 152.)  Exhibits H through R are documents that the Defendants produced in discovery and designated as "Confidential" under the terms of the protective order.  (ECF Nos. 153-163.)  The Defendants have provided a declaration from a Mr. Brian Evans, "Distribution Operations Manager US East," explaining why they believe the documents are confidential, although Mr. Evans omitted any discussion of Exhibits H and I, as will be discussed below.  (ECF No. 174-1.)  For reasons that will become clear, it makes sense to discuss Exhibits H through R first, and Exhibit G and the memorandum of law last.

### a. *Exhibits H and I*

Exhibits H and I (ECF Nos. 153, 154) are two of the Defendants' many "Design and Engineering Practice Specifications," or "DEP," documents.  CLF says that the two DEPs support its motion to compel the production of information related to each Defendants' operator liability under the Clean Water Act.  (ECF No. 149, at 14.)  The Defendants describe the DEPs as internal, confidential engineering documents that outline unique and proprietary practices and contain

---

[1] Exhibits A through F are copies of CLF's discovery requests, the Defendants' responses and objections thereto, and CLF's counsel's Local Rule 37 declaration. (ECF Nos. 149-1 – 149-6.) CLF filed these documents unsealed on the public docket, without objection from the Defendants.

commercially valuable and sensitive technical information. (ECF No. 174, at 5-6.) The Defendants add that, "[s]hould competitors have access to" the two documents, "it could cause financial harm." (*Id.* at 6.) These are only the unsworn statements of counsel, however; they are unsupported by the Evans declaration. (*See generally* ECF No. 174-1.)

I begin my analysis of Exhibits H and I by concluding that they are "judicial documents" for purposes of the first step of the *Lugosch* process. Because "[d]iscovery motions, such as motions to compel, 'call upon the court to exercise its Article III powers' . . . 'all documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some common law presumption of access.'" *U.S. v. Warburg Pincus LLC*, No. 2:21-mc-178, 2022 WL 2128669, at *9 (D. Vt. June 14, 2022) (quoting *Brown*, 929 F.3d at 50). I also conclude that, precisely because the documents were submitted in connection with a motion to compel – as opposed to, say, a motion for summary judgment – the presumption of public access is entitled to no more than "modest" weight. *Keurig*, 2023 WL 196134, at *3. Having reached these two conclusions, the question presented by CLF's motion is therefore whether the Defendants' claims of business confidentiality outweigh the public interest in open access – and whether the Defendants have sufficiently supported those claims in a non-conclusory manner. *Ripple Labs,* 2022 WL 17751466, at *2.

I conclude that the Defendants have not adequately supported their claims with respect to Exhibits H and I. It is well established that "conclusory statements that documents contain confidential business information are insufficient to justify sealing," and that a party seeking to overcome the presumption of access on confidentiality grounds must make a "particular and specific demonstration . . . that disclosure would result in an injury sufficiently serious to warrant protection." *Ripple Labs*, 2022 WL 17751466, at *2 (citation and quotation marks omitted).

Claims that Exhibits H and I are confidential – let alone that an injury would follow from their public disclosure – are conspicuously absent from Mr. Evans' declaration. (ECF No. 174-1.) The Defendants argue that the documents themselves prove their confidential character (ECF No. 174, at 5-6), but they do not. Indeed, the documents make clear that the Defendants share them with "other companies receiving technical advice and services from Shell FSI or another Shell Company," including "[c]ontractors" and "subcontractors." (ECF No. 153, at 2; ECF No. 154, at 2.) In any event, the Defendants have not explained the injury that would follow from their disclosure, aside from a conditional and conclusory statement by their counsel that, "[s]hould competitors have access," "it *could* cause financial harm." (ECF No. 174, at 6) (emphasis added).

The Defendants raise another argument unique to Exhibit H – they say that its "dissemination is restricted by Export Administration Regulations" at 15 C.F.R. Parts 744 and 746. (*Id.*) Exhibit H does say on its first page that it "contains information that is classified as" so-called "EAR99" information – that is, information that is not specifically controlled for export, but cannot be transmitted to an embargoed country or a national thereof. U.S. Dep't of Commerce, Int'l Trade Admin., *Export Control Classification # (ECCN) and (EAR 99), available at* https://www.trade.gov/eccn-and-export-administration-regulation-ear99 (last visited May 15, 2023). The Defendants suggest that filing an unsealed Exhibit H on the public docket would make it available to such countries and nationals. (*Id.*) But Mr. Evans' declaration does not explain what information in the document is export-restricted, and without such an explanation, the Defendants' claim is too conclusory to support sealing.

Because the Defendants' confidentiality claims with respect to Exhibits H and I are supported only by conclusory statements of its counsel, the motion to seal is denied as to those exhibits. The Clerk of the Court is respectfully directed to unseal Exhibit I (ECF No. 154)

forthwith. With respect to Exhibit H, the Court will stay its unsealing order for fourteen days – because if indeed that exhibit contains information that should not be available to a hostile nation, it should not become public merely because counsel has neglected to show that the standard for sealing has been met. If the Defendants contend that Exhibit H contains EAR99 information, they may file a supplemental brief and declaration no later than May 30, 2023.

### b. Exhibits J through R

The Defendants describe Exhibit J as an internal Hazard and Effects Management Process ("HEMP") tool for their New Haven oil terminal. In his declaration, Mr. Evans explains that a "HEMP" "is a process by which risk at terminals is managed." (ECF No. 174-1, ¶ 11.) He adds that Exhibit J "contains the detailed and specific processes used for assessing hazards, threats, and barriers for tank farms," which competitors "could use . . . to improve their own internal processes, which could lead to value erosion or financial loss for Defendants." (*Id.*)

Exhibit K is a Project Development Request Form that "includes a list of all global fuel terminals with locations, addresses, phone numbers, employee information, information on joint ventures and other confidential business relationships, and 'special features' of certain terminals." (ECF No. 174, at 7.) According to Mr. Evans, competitors could use this information to "obtain an understanding of internal operations and business relationships that are not otherwise public, which could lead to value erosion or financial loss for Defendants." (ECF No. 174-1, at 3.) The Defendants also point out that the document includes personal information of employees. (*Id.* at 3-4.)

Exhibit L contains the "terms of reference for an internal confidential audit." The Evans Declaration states that Exhibit L contains commercially valuable and other competitively sensitive business information, and that it details internal audit processes and procedures that are unique to

the Defendants. (ECF No. 174-1, at 5.) The declaration adds that competitors could use this information to improve upon their own audit processes and procedures. (*Id.*; ECF No. 174, at 8.)

Exhibit M is a Continuity Plan that lists general steps that the Defendants' New Haven Terminal would take to prepare for a severe weather event. (ECF No. 174-1, at 5.) The Defendants concede that the document is not detailed enough to be commercially valuable or sensitive, but ask that Appendix A, the phone numbers in Appendix B, and Appendix C be sealed. (ECF No. 174.) Appendix A contains the name, title, business phone, and fax for Shell employees all over the country. (ECF No. 158, at 11-14.) Appendix B contains the office phone number for Shell's Procurement Manager. (*Id.* at 15.) Appendix C consists of Shell's preferred electric, mechanical, and welding contractors. (*Id.* at 16.)

Exhibit N is a Hazard Determination worksheet that describes a process for managing risk that is unique to the Defendants. (ECF No. 174, at 9; ECF No 159.) According to the Evans Declaration, the document "discuses barriers and controls that could be selected to manage the risk of tank stripping to [as low as reasonably practical] including managing ignition sources, vapor recovery, and nitrogen injection." (ECF No. 174-1, at 6.) Mr. Evans states that competitors could use this information to improve upon their own risk management processes.

Exhibit O is a chain of emails discussing an operational process called tank stripping. (ECF No. 160; ECF No. 174-1, at 7.) Mr. Evans explains that the emails discuss the Defendants' Terminal Operations Manual, which includes confidential procedures, and proprietary tank stripping procedures. (*Id.*) The email chain also discusses internal processes to manage risks that are unique to the Defendants. (*Id.* at 7.) Mr. Evans avers that competitors could use the information to improve upon their own operations manual, risk management, and tank stripping

procedures. (*Id.*) He also points out that the emails include the names of several of Defendants' employees and their work email addresses. (*Id.*)

Exhibit P is the Terminal Operations Manual referenced throughout the email chain in Exhibit O. (ECF No. 161.) Mr. Evans explains that it contains commercially valuable and proprietary business information "regarding the unique processes for management and oversight of tank operations, internal operational processes, the specific tank equipment utilized, including equipment diagrams and process flows, and cleaning and entry processes." (ECF No. 174-1, at 6.) The appendices also include confidential technical information, such as flow rates and flow rate calculations. (*Id.*) Mr. Evans states that the manual contains confidential technical information specific to the Defendants, and that competitors could use this information to improve upon their own operations manuals. (*Id.* at 6-7.) Exhibit Q is a presentation that discusses the Defendants' unique operational process for tank stripping and managing risks. (ECF No. 162; ECF No. 174-1, at 7.) Mr. Evans says that the Defendants' processes for managing the risks described in this presentation is commercially valuable and proprietary business information that competitors could use to their advantage.

Exhibit R is a slide deck from a presentation on safety performance data. (ECF No. 163; ECF No. 174-1, at 7.) Much of the document is already redacted. Mr. Evans explains that safety performance is measured by Key Performance Indicators ("KPIs") which are unique to the Defendants and are themselves commercially valuable, sensitive, and proprietary. (*Id.*) He says that how "the Shell group of companies analyzes and considers its safety performance is unique to the Shell group of companies. Competitors could use this information to improve upon their own KPIs or compare their own performance to the performance of the Shell group of companies, leading to value erosion or financial loss for Defendants." (*Id.* at 8.)

As with Exhibits H and I, I begin my analysis of Exhibits J through R by concluding that they are "judicial documents." *See Warburg Pincus LLC*, 2022 WL 2128669, at *9. I also conclude that the presumption of public access to them is entitled to no more than "modest" weight under the circumstances presented by CLF's discovery motion. *See Keurig*, 2023 WL 196134, at *3. Thus, as with Exhibits H and I, the question is whether the Defendants' business confidentiality and other claims outweigh a relatively low public interest in open access – and whether the Defendants have sufficiently supported those claims. *Ripple Labs*, 2022 WL 17751466, at *2.

Arguing against its own motion, CLF says that Exhibits J through R should be unsealed because the Defendants have not shown that they qualify for trade secret protection. (ECF No 180, at 4, 6) (citing *Conn. Fair Hous. Ctr.*, 2020 WL 13303727, at *2-3). But while trade secret law can be "instructive" on the question of sealing, "a business's information need not be a 'true' trade secret in order to warrant protection from disclosure." *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). "[C]onfidential 'commercial information' of a business" – including not only "trade secrets," but also "confidential research, internal business documents and information about a business's operations" – "has been recognized repeatedly as a proper subject for sealing." *CSL Silicones, Inc. v. Midsun Grp., Inc.*, No. 3:14-cv-1897 (CSH), 2017 WL 4750701, at *3 (D. Conn. July 12, 2017); *see also Alexander v. Azar*, 396 F. Supp. 3d 242, 253 (D. Conn. 2019).

*Connecticut Fair Housing Center* is distinguishable for the additional reason that the documents were submitted in connection with a summary judgment motion, not a discovery motion. 2020 WL 13303727, at *1. In that case, the court observed that "[t]he weight of [the] presumption is of the 'highest' for 'documents used by parties moving for summary judgment,'" because its decision on such a motion "is a formal act of government, the basis of which should,

absent exceptional circumstances, be subject to public scrutiny.'" *Id.* at *2 (quoting *Joy*, 692 F.2d at 893) (ellipsis omitted). *CSL Silicones*, also cited by CLF, likewise concerned documents submitted as attachments to dispositive motions, 2017 WL 4750701, at *1, as did *Grayson v. General Electric Co.*, No. 3:130-cv-01799 (WWE), 2015 WL 1867736 (D. Conn. Apr. 23, 2015). But as the Second Circuit has explained, a different balance applies when the documents were submitted in connection with a motion to compel discovery. *Brown*, 929 F.3d at 50. As noted above, because "oversee[ing] discovery" is "ancillary to the court's core role in adjudicating a case," "the presumption of public access in filings submitted in connection with discovery disputes . . . is generally somewhat lower than the presumption applied to material introduced . . . in connection with dispositive motions." *Id.*

Applying these principles, I conclude (with one partial exception) that the Defendants' claims outweigh the relatively low weight that attaches to the presumption of access in this discovery dispute. The Defendants have come forward with a declarant who has said, under penalty of perjury, that Exhibits J through R are not publicly available, and that their public disclosure would cause competitive harm. (ECF No. 174-1, at 2.) I have reviewed each document and, unlike Exhibits H and I, each appears to be an internal document containing no indicia of external circulation to contractors and other third parties. Each document also describes or references engineering, audit, and risk management processes and information that are ostensibly unique to the Defendants, and it is well established that the protection of such information can constitute a "competing consideration" sufficient to outweigh the "modest" presumption of access that applies here. *See Valassis Commcn's, Inc.*, 2020 WL 2190708, at *3 ("The demonstration of a valid need to protect the confidentiality of sensitive business information . . . may be a legitimate basis to rebut the public's presumption of access to judicial documents.") And because it appears

13

that it would be impossible to redact this information from the documents, I conclude – again, with one partial exception – that sealing them in their entirety is narrowly tailored to protect the interests that the Defendants seek to protect.

The one partial exception concerns Exhibit M. That exhibit is a "Continuity Plan" setting forth steps to be taken "when a major event occurs and is anticipated to . . . [p]revent or limit access to a terminal for more than 72 hours." (ECF No. 158, at 3.) The Defendants concede that the plan is "a general business process that is not detailed enough to be considered commercially valuable or competitively sensitive" (ECF No. 174, at 8), and they therefore have not met their burden to show that this portion should be sealed. But they note that the plan's appendices A, B, and C contain the personal contact information of people who would be called upon "when a major event occurs," including dozens of work phone and fax numbers (*id.*; *see also* ECF No. 158 at 11-14, 15, 16-19), and courts typically permit redaction of such information. *See, e.g., City of Providence v. BATS Glob. Mkts., Inc.*, No. 14-cv-2811 (JMF), 2022 WL 539438, at *4 (S.D.N.Y. Feb. 23, 2022). CLF's motion is therefore granted in part and denied in part as to Exhibit M; it shall refile the exhibit redacting the personal contact information on pages 11-19, but only that information.

   c. **Exhibit G**

Exhibit G is the transcript of the deposition of James Kent Yeates, the Defendants' engineering manager. CLF examined Mr. Yeates on several documents that the Defendants had designated "Confidential" during the document production phase of the case, including the two that eventually became Exhibits H and I to its motion to compel. In the version of the transcript that it filed on the public docket, CLF redacted the discussions of any documents so designated. (ECF No. 149-7.) But because the Defendants did not timely designate any portion of *the transcript* as "Confidential," and because it does not believe the document designations were

meritorious in any event, CLF urges the Court to "enter the unredacted transcript on the public docket." (ECF No. 180, at 5-6.)

The Defendants do not contend that the entire transcript should be sealed, but they exhort the Court to docket their own, more heavily redacted version. (ECF No. 174, at 5 n.2; ECF No. 174-2.) They offer two principal arguments. First, they note that the transcript "directly quotes [Exhibit H], which . . . is commercially valuable, competitively sensitive and/or proprietary business information that should be filed under seal." (ECF No. 174, at 5.) Second, they contend that their failure to timely designate any portion of the transcript as "Confidential" was "inadvertent" and "reasonable" given how discovery was unfolding in another case between the same parties.[2]

The first argument is easily dispatched. Because Exhibit H does not qualify for sealing, it follows that deposition testimony discussing Exhibit H does not qualify for sealing either.[3] And the second argument is equally unavailing, because even if the Court were to excuse non-compliance with the designation deadline, the Defendants have not supported their designations.

---

[2] CLF sued members of the Shell Oil family of companies in the United States District Court for the District of Rhode Island, alleging violations of the Clean Water Act at a bulk fuel storage terminal in Providence. *Conservation L. Found. v. Shell Oil Prods. US*, No. 1:17-cv-396 (WES) (LDA). The parties agreed that Mr. Yeates' December 22, 2022 examination would serve as his deposition in both the Connecticut and Rhode Island cases. (ECF No. 174, at 5 n.2.) Whereas the protective order in this case requires deposition confidentiality designations to be made within ten business days of receipt of the transcript (Prot. Order, ECF No. 7, ¶ 13), the Defendants read the protective order in the Rhode Island case to allow forty-five days. (ECF No. 174, at 5 n.2.)

The Defendants ultimately designated several portions of the transcript as confidential, but they concede that they did not do so "within the 10 days allotted in this Court's Standing Order." (*Id.*) They nonetheless argue that they should not be regarded as having waived their rights, because their designations were timely under the Rhode Island order. (*Id.*) ("Defendants' designations of certain portions of Mr. Yeates' testimony as confidential is reasonable and timely when also considering the applicability of the protective order in the Rhode Island matter.").

[3] The Court will allow for the possibility that this testimony may have included "EAR99" information in its order in Section 3 below.

The protective order is clear that designating deposition testimony as "Confidential" does not, on its own, entitle the party to have the testimony filed under seal. (ECF No. 7, ¶ 14) ("This Protective Order does not provide for the automatic sealing of such Designated Material."). Designated testimony may be sealed "only upon motion and in accordance with applicable law" (*id.*), and if the Defendants wanted their "Designated Material" to be sealed, they were obliged to show that it merits sealing under the *Lugosch* test. They have not done so. The motion to seal will therefore be denied as to Exhibit G.

### d. *CLF's memorandum of law*

CLF's memorandum of law quotes Exhibits G through R. Because the Defendants had designated those documents as "Confidential," CLF redacted the quotes from the version that it filed on the public docket. Yet because it contends that the designations are unmeritorious, it contends that the unredacted version should be publicly available. (ECF No. 180, at 9.)

Having concluded that Exhibits J through R should be sealed at this stage, but that Exhibits G, H, and I should not be, the Court will grant CLF's motion in part and deny it in part with respect to the memorandum of law. CLF shall publicly file a version of its memorandum of law that redacts quotes from Exhibits J through R only. To allow for the possibility that the hitherto-redacted quotes from Exhibit H contain EAR99 information, CLF shall not file this version until (a) May 31, 2023, if the Defendants do not file a supplemental memorandum and declaration on or before May 30, 2023; or (b) if the Defendants do file a supplemental memorandum and declaration, within five business days of the Court's ruling on it.

### 3. Conclusion and Order

For the foregoing reasons, CLF's motion is granted as to Exhibits J, K, L, N, O, P, Q, and R. ECF Nos. 155, 156, 157, 159, 160, 161, 162, and 163 shall remain sealed. In holding that the

*Lugosch* test favors sealing these documents in this instance, I express no view as to whether they would merit sealing if submitted at a later phase of the case, *e.g.*, in connection with a summary judgment motion. *See, e.g., Mark*, 2015 WL 7288641, at *3 (noting that "a heightened presumption of access" may apply at later stages of the case).

CLF's motion is denied as to Exhibits G, H, and I. The Clerk of the Court is respectfully directed to unseal ECF No. 154 forthwith. The Court will stay its order with respect to Exhibits G and H (ECF Nos. 152, 153) until May 31, 2023. If the Defendants contend that Exhibits G or H contains so-called EAR99 information that cannot be publicly docketed under export control regulations, they may file a supplemental memorandum and declaration on or before May 30, 2023. The supplemental memorandum and declaration must be strictly limited to the export control issue.

CLF's motion is granted in part and denied in part as to Exhibit M. (ECF No. 158.) CLF shall, within five business days of this order, publicly file a version that redacts only the personal contact information on pages 11-19.

CLF's motion is granted in part and denied in part as to its memorandum of law. CLF shall publicly file a version of its memorandum of law that redacts quotes from Exhibits J through R only. CLF shall do so (a) on May 31, 2023, if the Defendants do not file a supplemental memorandum and declaration by May 30, 2023, or (b) if the Defendants do file a supplemental memorandum and declaration by May 30, 2023, within five business days of the Court's ruling on it.

This is not a recommended ruling. It is a ruling by a Magistrate Judge on a "nondispositive motion[] . . . relating to discovery," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A);

17

Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b).  It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 16th day of May, 2023, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge
