**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-JAM |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | |
| *Defendants*. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' CROSS-MOTION
<u>FOR PROTECTIVE ORDER AND FOR SANCTIONS</u>**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................II

TABLE OF AUTHORITIES.................................................................................. IV

EXHIBIT LIST.....................................................................................................VII

I.      INTRODUCTION ...................................................................................1

II.     DEFENDANTS HAVE NOT SHOWN GOOD CAUSE TO STRIKE OR LIMIT
        THE NEGOTIATED 30(B)(6) TOPICS. ............................................................2

        A.  Topics 2, 3, 5, 25, 26 and 29 Seek Relevant Information. ...........................3

            1.  Revised Topic 2 seeks relevant information about Shell group lines of
                business and other Shell group entities associated with the Terminal. ..................3

                a.  Various Shell group entities are directly involved in operating the
                    Terminal...............................................................................................5

            2.  Revised Topic 3 (relating to Shell's Investment Management Guide,
                Manual of Authorities, and any documents pertaining to Metocean) seeks
                information relevant to CLF's claims...................................................8

                a.  Shell's Investment Management Guide.............................................8

                b.  Shell's Manual of Authorities.........................................................9

                c.  Metocean documents ...................................................................10

            3.  Revised Topic 5 (Defendants' knowledge of climate change related risks)
                seeks information relevant to CLF's claims..........................................12

            4.  Topic 25 & 26 (insurance policies and communications with insurance
                companies regarding risk of loss to Terminal assets due to severe weather
                events) seeks information relevant to CLF's claims. .............................12

            5.  Revised Topic 29 (Defendants' position regarding certain climate-related
                statements by Shell plc quoted in CLF's amended complaint) seeks
                information relevant to CLF's claims..................................................13

        B.  The Court Should Deny Defendants' Request to Limit Topics 1, 2 (revised), 3
            (revised), 4, 6, 7, 8, 12, 14, 15, 17, 18, 23, and 28. .....................................15

            1.  Topic 1 and Revised Topic 2 seek relevant information known or
                reasonably available to the noticed Defendants about Shell Group
                corporations and entities associated with the Terminal.........................15

2. The Court should not limit Topic 23 (relating to activities of Metocean) "only to the New Haven Terminal."...................................................................16

3. This Court should not limit Revised Topic 3 (subparts a, d, e, f, h, i, j, k), which seeks relevant information about corporate policies that apply to the Terminal..........................................................................................................17

4. The Court Should Deny Defendants' request to limit certain topics regarding other terminals (Topics 4, 6, 7, 23, and 28) .................................18

   a. Topics 4, 23, and 28 regarding on- or near shore facilities. ............................18

   b. Topics 6 and 7 regarding Sewaren. .................................................19

5. The Court should not limit the relevant discovery time period (Topics 8, 12, 14–15, & 17–18) as Defendants request..........................................................20

C. Defendants Have Not Shown Undue Burden for Any of the Topics. .........................21

   1. Defendants do not support their undue burden objections to Topics 1 and 2.   21

   2. Defendants mischaracterize CLF's topics regarding other Shell group facilities and provide no support for their burden objections. ..............................22

   3. Defendants do not support their objection to Topics 6 and 7. .............................23

   4. Defendants' arguments misrepresent Revised Topic 29. .......................................23

III.  DEFENDANTS FAIL TO SUPPORT THEIR MOTION FOR SANCTIONS. ..............24

A. Defendants Failed to Confer with CLF and Seek Impermissible Relief. ....................24

B. Defendants Are Not Entitled to Sanctions Under Section 1927 or This Court's Inherent Authority, Because CLF Is Not Responsible for Defendants' Violation of the Federal Rules.....................................................................................25

C. Defendants Are Not Entitled to Sanctions Under Rule 26(g) Because CLF's Topics Comply with Rule 26 and Are Substantially Justified...................................28

IV.  CONCLUSION ...........................................................................................................30

# TABLE OF AUTHORITIES

## *Cases*

*BAT LLC v. TD Bank, N.A.*, No. 15 CV 5839, 2019 WL 13236131 (E.D.N.Y. Sept. 24, 2019)................................................................................11

*Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78 (S.D.N.Y. 2019)....................................11

*Bregman v. D.C.*, 182 F.R.D. 352 (D.D.C. 1998) ....................................................................1, 27

*Brown v. Clayton*, No. 3:11CV714 JCH, 2013 WL 1409884 (D. Conn. Apr. 8, 2013)..........................................................................................................24

*Conservation L. Found. v. Shell Oil Prods. US, et al.*, No. 1:17-cv- 00396, 2022 WL 2866705 (D.R.I. July 1, 2022)..........................................................................30

*Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21CV00933(SALM), 2022 WL 4292183 (D. Conn. Sept. 16, 2022)....................................................4, 17, 18, 30

*Doe v. Hicks*, No. 3:15CV01123(AVC), 2016 WL 5172814 (D. Conn. Sept. 21, 2016)...........................................................................................................29

*Doe v. Mastoloni*, 307 F.R.D. 305 (D. Conn. 2015)....................................................................24

*Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2021 WL 4704852 (D. Conn. Oct. 8, 2021) ............................................................................................3

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Royal Bank of Scotland Grp. PLC*, No. 3:11CV1383(AWT), 2015 WL 13634404 (D. Conn. Aug. 20, 2015)...........................................................................................................2, 23

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125 (E.D. Tex. 2003)............................................................................................................1, 27

*Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*, 215 F. Supp. 3d 114 (D. Mass. 2016)..............................................................................................................14

*Hewett v. Triple Point Tech.*, No. 3:13-cv-1382, 2015 WL 6675529 (D. Conn. Oct. 30, 2015); ...................................................................................................26

*In re: Vitamins Antitrust Litig.*, 216 F.R.D. 168 (D.D.C. 2003)..................................................5

*Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, 274 F.R.D. 115 (S.D.N.Y. 2011)...........................................................................................26

*Klosin v. E.I. Du Pont De Nemours & Co.*, No. 119CV00109EAWMJR, 2023 WL 1097859 (W.D.N.Y. Jan. 30, 2023)...........................................................................11

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481 (N.D. Cal. 2012) .........................................................................................11

*Markey v. Lapolla Indus., Inc*., No. CV 12-4622 JS AKT, 2015 WL 5027522 (E.D.N.Y. Aug. 25, 2015), *report and recommendation adopted,* No. 12-CV-4622(JS)(AKT), 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016)......................................29

*McBride v. Medicalodges, Inc.*, 250 F.R.D. 581 (D. Kan. 2008)...................................................19

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164 (D. Mass. 2007) .....................................................................27

*Quintel Tech. Ltd. v. Huawei Technologies, Inc.*, 2017 WL 3712349 (E.D. Tex. June 12, 2017)..................................................................................15

*Ride, Inc. v. APS Tech., Inc.*, No. 3:11-cv-1721, 2014 WL 12754998 (D. Conn. Aug. 28, 2014)).............................................................................26

*Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391 (D.N.J. 2011).....................................................17

*Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959 (S.D. Ohio Apr. 13, 2006)...............................................................................11, 20

Turner Broad. Sys., Inc. v. Tracinda Corp., 175 F.R.D. 554 (D. Nev. 1997) ...............................3

*U.S. v. Newmont USA Limited,* 2008 WL 4621566 (E.D. Wash. 2008).......................................4

*U.S. E.E.O.C. v. Caesars Entertainment*, 237 F.R.D. 428 (D. Nev. 2006) .................................2

*U.S. v. Ray*, 585 F. Supp. 3d 445 (S.D.N.Y. 2022) .....................................................................14

*U.S. v. Sterling Cetrecorp, Ind.*, 960 F. Supp. 2d 1025 (E.D. Cal. 2013) .....................................4

*United States v. Bestfoods*, 524 U.S. 51 (1998)...........................................................................3

*United States v.* Taylor, 166 F.R.D. 356 (M.D.N.C. 1996)....................................................5, 23

*Walls v. City of New York*, 502 F. Supp. 3d 686 (E.D.N.Y. 2020)..............................................21

*Woelfle v. Black & Decker (U.S.) Inc.*, No. 1:18-cv-486, 2020 WL 1180749 (W.D.N.Y. Mar. 12, 2020) ..............................................................3

### Statutes

28 U.S.C. § 1927 ...................................................................................................................24, 27

### Other Authorities

Fed. R. Civ. P. 37(d)(2) advisory committee's note to 1970 amendment ......................................26

### Rules

D. Conn. L.R. Civ. P. 37(a) .........................................................................................................24

Fed. R. Civ. P. 26(a)(1)(iv)..........................................................................................................13

Fed. R. Civ. P. 26(g)(3) ...............................................................................................................29

Fed. R. Civ. P. 27(g)(ii)–(iii)........................................................................................................29

Fed. R. Civ. P. 30(b)(6) ...................................................................................................17, 23, 25

Fed. R. Civ. P. 35(a)(5)(B).............................................................................................................2

Fed. R. Civ. P. 37(a)(5)(A) ............................................................................................25

Fed. R. Civ. P. 37(d)(2) ................................................................................................26

Fed. R. Evid. 401 .........................................................................................................14

**EXHIBIT LIST**

Exhibit A.    Affidavit of Alexandra Jordan

Exhibit B.    Summary of Final, Revised Deposition Topics

Exhibit C.    Shell Asset Management System Manual (SOPUS_NHVN00030239)*

Exhibit D.    Shell Investment Management Guide (SOPUS_NHVN00108538)*

Exhibit E.    Excerpts from Deposition Transcript of Michael Sullivan (March 23, 2023)

*Filed Under Seal

## I.    INTRODUCTION

After Defendants Shell USA, Inc., Equilon Enterprises LLC d/b/a Shell Oil Products US, and Triton Terminaling LLC ("Defendants") failed to file for a protective order prior to their noticed Rule 30(b)(6) depositions, CLF filed a motion to compel Defendants' depositions and for sanctions. *See* ECF 203. In response, and one month after their depositions were scheduled to occur, Defendants filed a cross motion for a protective order seeking to strike some topics and limit others,[1] and for sanctions against CLF. *See* ECF 215. This Court granted CLF an extension of time to file this Opposition until May 23, 2023. *See* ECF 224.

This Court should deny Defendants' motion for protective order because it is untimely. *See* ECF 219 at 6–7 (citing cases).[2] Notably, Defendants move this Court for a protective order as to topics on which Defendants stated the Parties had reached "an impasse" as of March 15, 2023— twelve days before the first deposition. *See* Mar. 15 Ltr., ECF 203-9 at 4–7 (noting the Parties were "at an impasse" as to topics 1–8, 12, 14–18, 23–29, and 34). Additionally, Defendants failure to designate witnesses for the topics on which they have not moved—including Topics 9, 10, 11, 19, 20, 21, 30, and 35, to which Defendants have no objections, and Topics 16, 24, 27, 32, and 34, to which Defendants noted the Parties were at an impasse, *see* Summary of Final Topics, attached as Exhibit B—"[i]s literally inexcusable under the Federal Rules of Civil Procedure." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 143–44 (E.D. Tex. 2003)  (quoting *Bregman v. D.C.*, 182 F.R.D. 352, 355 (D.D.C. 1998)); *id.* at 142 ("When a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice must either

---

[1] Defendants asked this Court to strike (and/or limit) topic 2 as irrelevant, overbroad, and unduly burdensome; to strike topics 5, 25, 26, and 29 as irrelevant; to limit topics 1, 3, 4, 6, 7, 23, and 28 as irrelevant, overbroad, and unduly burdensome; and to limit the temporal scope of topics 8, 12, 14, 15, 17, and 18 on relevance grounds.

[2] Pin citations to documents filed on the docket refer to the ECF header page number unless otherwise stated.

move for a protective order regarding *each topic* or designate a person to testify regarding *each topic*." (emphases added) (citing cases)).

Furthermore, CLF's deposition topics, which the Parties negotiated extensively for months, are relevant to the claims and defenses in this case, and Defendants have failed to show that good cause exists to strike or modify any of the topics. As shown below and in other briefing presently before this Court, each of these Topics are relevant to the claims and defenses in this case.[3]

Finally, Defendants' motion for sanctions is retaliatory, fails to comply with the Federal Rules of Civil Procedure and the Local Rules, and is wholly without merit. *See* Affidavit of Alexandra Jordan ¶ 2, attached hereto as Exhibit A. The Court should deny both motions and award CLF its reasonable fees in opposing the motions. *See* Fed. R. Civ. P. 35(a)(5)(B).

## II.    DEFENDANTS HAVE NOT SHOWN GOOD CAUSE TO STRIKE OR LIMIT THE NEGOTIATED 30(B)(6) TOPICS.

As the party opposing discovery, Defendants bear the burden of proof to show "good cause" to deny CLF's discovery. *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Royal Bank of Scotland Grp. PLC*, No. 3:11CV1383(AWT), 2015 WL 13634404, *1 (D. Conn. Aug. 20, 2015) (internal citations omitted). To establish "good cause" for a protective order, courts "have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (internal citations omitted). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient. *U.S. E.E.O.C. v. Caesars Entertainment*, 237 F.R.D. 428, 432 (D. Nev. 2006). "[A] showing that discovery may involve some inconvenience or expense is likewise insufficient to obtain a protective order." *Turner Broad.*

---

[3] Defendants changed their position on the relevance of other terminals to this case and now "recognize the relevance of . . . what transpired at the Sewaren Terminal . . . to the New Haven Terminal, such as what lessons were learned, if any, that were subsequently implemented at the New Haven Terminal." ECF 214 at 32; *but see* ECF 177 at 6 ("There is no element of any claim in this case that concerns . . . any other location . . . or what Defendants' corporate policies are and whether they are being followed.").

*Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997). Because Defendants have failed to carry their burden to demonstrate good cause, this Court should deny their motion.

### A. Topics 2, 3, 5, 25, 26 and 29 Seek Relevant Information.

The scope of discovery is "broad" and "includes information that is logically relevant to a claim or defense that has been pled in the case." *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2021 WL 4704852, *3 (D. Conn. Oct. 8, 2021) (citation omitted). Once a party seeking discovery has made a *prima facie* showing of relevance, "it is up to the responding party to justify curtailing discovery." *Id.* (citation omitted) If the requested information "bears on, or reasonably could lead to other matter that could bear on, any issue in the case, the party resisting discovery bears the burden of showing why discovery should be denied." *Id.* (internal citations and alterations omitted). Relevant information can also include "a variety of types of information not directly pertinent to the incident in the suit," such as "other incidents of the same type" or "[i]nformation about organizational arrangements. . . ." *Id.*

### 1. *Revised Topic 2 seeks relevant information about Shell group lines of business and other Shell group entities associated with the Terminal.*

Defendants' Proposed Order seeks to both strike Topic 2 in its entirety and limit it only to Defendants. ECF 215 at ¶¶ 1.a, 2.a. Though it is not entirely clear from their brief, Defendants appear to present three arguments in support of their motion to strike. One appears to be a legal argument that CLF's claims "do not implicate questions concerning the Defendants' corporate structure, and Plaintiff does not need this information to make a showing of legal wrongdoing." ECF 214 at 27. Defendants cite *Woelfle v. Black & Decker (U.S.) Inc.*, No. 1:18-cv-486, 2020 WL 1180749 (W.D.N.Y. Mar. 12, 2020), however, that case does not involve operator liability under *United States v. Bestfoods*, 524 U.S. 51 (1998) and its progeny. Whatever determination the court

made in *Woelfle* about the relevance of corporate structure to an unrelated legal theory and set of claims has no bearing here.

Operator liability under *Bestfoods* is a highly fact-specific inquiry into the actions and relationships among corporations and their agents to a polluting facility. *See Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21CV00933(SALM), 2022 WL 4292183, at \*15 (D. Conn. Sept. 16, 2022); ECF 151 at 11–12[4]; *see also U.S. v. Sterling Cetrecorp, Ind.*, 960 F. Supp. 2d 1025, 1050 (E.D. Cal. 2013) (parent companies' "pervasive management of the [facility] and control over the [daughter] leads this court to conclude that [the daughter] acted alongside its parent . . . in a joint venture of the type recognized in *Bestfoods*."); *U.S. v. Newmont USA Limited*, 2008 WL 4621566 (E.D. Wash. 2008) (inextricably interwoven involvement of parent company in the management of daughter).  This body of caselaw shows that in conducting a *Bestfoods* analysis, courts examine the very facts Defendants seek to prevent CLF from discovering.

Defendants' second argument raises a mixed relevance/overbreadth objection that is similarly misplaced. ECF 214 at 26–27. Defendants appear to argue that because *some* entities within the Shell group *may* be associated with the Terminal on matters unrelated to CLF's claims, they should not be required to testify about *any* entities that are. *Id.* As an initial matter, Defendants refused to identify entities associated with the Terminal on what they believe to be relevant matters during meet and confer. *See* ECF 203-10 at 5; ECF 203-9 at 4. Rather than providing CLF with information that could help it narrow the topic, they simply stated that Shell group entities associated with the Terminal only on Clean Air Act permitting issues would not be relevant. ECF 203-9 at 4. While CLF agreed entities only involved with Clean Air Act permitting would not be relevant, ECF 214 at 27, it is clear from the correspondence that CLF sought information about

---

[4] For documents filed under seal, page numbers refer to the number at the bottom of each page.

other entities *related to its claims*. But CLF is not a position to know on its own, without information from Defendants, what those entities are. In fact, that is the one purpose of Topic 2.

Defendants suggest the Topic is overbroad for seeking information on "thousands" of irrelevant Shell group entities. ECF 214 at 27; *see also infra* Part II.C.1. But they have not given *any* examples of supposedly irrelevant entities associated with the Terminal (real or hypothetical), let alone "thousands." Defendants cannot show good cause for a protective order based on nothing more than unsubstantiated exaggeration.

Third, Defendants seek to avoid 30(b)(6) testimony on Topic 2 arguing they "have produced documents concerning this topic." ECF 214 at 28. However, they cite no case law holding that written discovery can substitute for Rule 30(b)(6) testimony. *See id.* The opposite is true. Indeed, one role of a 30(b)(6) designee is to provide the entity's interpretation of documents. *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996); *In re: Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172, 174 (D.D.C. 2003) ("A corporation may not take the position that its documents state the company's position."). Defendants cannot show good cause for a protective order on Topic 2 based on unspecified documents they produced in discovery.

### a. Various Shell group entities are directly involved in operating the Terminal.

Documents and testimony CLF has obtained through discovery undermine Defendants' assertion that CLF seeks information about "extraneous" entities. The record shows the opposite: in addition to Defendants' admissions that Equilon is the operator and Triton is the owner, *see* Ans., ECF 120 ¶¶ 29, 31, other Shell group entities actively participate in and exercise control over policies and operations at the Terminal. For example, the Terminal falls within Shell group's "Trading & Supply" management structure. ECF 84-4 at 18. Though Defendants assert that Trading & Supply "is not a corporate entity of any type," ECF 193 at 18, it establishes policies for

the Terminal and individuals within its management structure actively participate in matters at the Terminal, including environmental risk evaluation, operations, engineering, and project approvals.

One such policy is the "Global Trading and Supply Operation Asset Management System Manual" (AMS), attached as Exhibit C. The AMS describes the ███████████ for ████████ ████████████████████████████████████." *Id.* at 3. It provides, among other things, that the "████████████████████████████████████████████████████ ████████████████████████████████████████████." *Id.* at 18. "████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████." *Id.* Where an operating unit lacks "████████████ ████████████," they should consider the "████████████" of ████████████ ████████████████████████████████████████████████████████ ████████████████████████." *Id.* Among the procedures required under the AMS is a "████████████████████████ which is an ████████████████ ████████████████████████████████████████████████████████ ████████████████████████." *Id.* at 19. "████████████████████████ ████████████████████████████████." *Id.* HSSE & SP CF requirements include ██ ████████████████████████████████████████████████████████ ████████████." *Id.* at 19.

One corporate entity, Shell Pipeline Company LP (SPLC), appears to fall within the Shell Trading & Supply line of business and employs individuals directly involved with the Terminal. For example, SPLC employs James Kent Yeates, Brian Evans, and Michael Sullivan, each of whom have responsibilities at the Terminal. *See* Yeates Dep. Tr. 72:9–12, ECF 174-2 at 19; Evans

Dep. Tr. 72:2–3, ECF 185 at 14; Sullivan Dep. Tr. 83:9–19, attached as Exhibit E. Mr. Yeates is "responsible for the engineering practices at the New Haven terminal." ECF 214 at 29–30. Mr. Sullivan's responsibilities include the Terminal's compliance with its Clean Water Act stormwater permit and RCRA. ECF 181-8 at 7.[5] Mr. Evans holds authority over these areas as well. *Id.*

Defendants have relied nearly exclusively on SPLC employees during discovery. Mr. Sullivan signed interrogatory responses on behalf of each Shell group Defendant, despite the fact he was never employed by any of those companies. *See* ECF 149-5 at 25. Defendants have relied upon declarations of Mr. Evans and Mr. Yeates throughout discovery. *See* Yeates Decl., ECF 181-22; Evans Decl., ECF 174-1. An electronic search of documents produced by Defendants in this matter for the terms "SPLC" or "Shell Pipeline Company" returns 11,674 non-duplicate documents. *See* Jordan Aff., Ex. A ¶¶ 3–4.

Other entities are also directly involved with Terminal operations. For example, a series of emails regarding tank stripping procedures involves individuals from Shell group entities identified as █████████████████████████████████████████████████████████ ████████████████████████████████████████. ECF 160 (filed under seal) at 1. CLF understands that each of these acronyms represents a separate Shell group corporation, line of business, or both.[6]

---

[5] During a hearing before this Court, Defendants represented that Mr. Sullivan "works for the terminal under a contract he was hired to do and [CLF is] aware of that arrangement because the defendants disclosed it to them." Mar. 24 Hrg. Tr., ECF 201 at 70:3–14. Defendants have not produced an executed copy of any contract or internal document outlining the rights and responsibilities under this "arrangement" with Shell Pipeline Company LP, or any contract under which Mr. Sullivan was hired to work for the Terminal. *See* Jordan Aff., Ex. A ¶ 5. Furthermore, in their Amended Initial Disclosures, Defendants continue to state that Mr. Sullivan is an employee of Defendant Equilon. *See* ECF 219-3 at 2.

[6] CLF questioned various witnesses about the meaning of these email identifiers, but the witnesses could only speculate as to their meaning. *See, e.g.*, Yeates Tr. at 71:18–23, ECF 152 at 18.

Even when the Terminal was ostensibly owned and operated by Defendant Motiva, a joint venture, Shell group policies may have applied:



Shell Investment Management Guide ("IMG") at 7 (emphasis added), attached as Exhibit D.[7] Because Shell group entities exercise control over joint ventures in many instances, it is likely that Shell, through SOPC Holdings East LLC, an affiliate of Shell Oil Company (now Shell USA, Inc.) and joint owner of Motiva, exercised control during Motiva's tenure as owner and operator.[8] ECF 191-7 at 1. The various entities described above are not "extraneous" Shell group entities. This Court should therefore deny Defendants' request to strike Topic 2 for failure to show good cause.

   2. ***Revised Topic 3 (relating to Shell's Investment Management Guide, Manual of Authorities, and any documents pertaining to Metocean) seeks information relevant to CLF's claims.***[9]

      a. **Shell's Investment Management Guide**

Defendants ask this Court to strike Revised Topic 3 regarding Shell's Investment Management Guide based solely on an unsupported statement that "the Investment Management Guide is a guide that outlines the process and guidelines for the Trading & Supply line of business for investment management" and therefore it is irrelevant. ECF 214 at 30. Nothing more. Bald

---

[7] Pin cites to the IMG are to the printed numbers at the bottom of the original document.

[8] Because Defendants refuse to produce the joint venture agreement, *see* ECF 191 at 8–9, CLF can only determine the degree of control the Shell group Defendants had during the Motiva ownership period through a deposition.

[9] Attorney Prather's declaration incorrectly states that Topic 3 seeks information about policies that "*could apply at the* Terminal." ECF 214-1 ¶ 25. CLF revised Topic 3 to address this concern. *See* ECF 203-5 at 3. Revised Topic 3 asks for "policies, procedures, frameworks, standards, tools, and processes and the details of any determination by Defendants that they apply or do not apply to the Terminal." *Id.*

assertions and unreasoned conclusions do not satisfy the showing required for a protective order. Defendants' request should be denied.

The IMG outlines corporate policies and procedures that control capital expenditures by entities within Shell Trading and Supply related to, among other things, ███████. IMG, Ex. D. The IMG defines ██████ as a:



IMG, Ex. D at 24 (emphasis added). The IMG also states that its policies ██████ ██████. It defines ██████ ██████ ██████ ██████.″ *Id.* at 18. The IMG also states that ″██████ ██████.″ *Id.* at 12. Thus, ██████ ██████ entities other than Defendants Triton and Equilon, such as ██████. *Id.* Mr. Yeates' similarly testified that certain Shell Design Engineering Manuals are mandatory for "capital projects" to "manage asset integrity. . . ." Yeates Tr. at 156:1–7.

The record demonstrates that the IMG is a relevant topic for 30(b)(6) deposition testimony in this case regarding operator liability.

**b.  Shell's Manual of Authorities**

Defendants ask the Court to strike Topic 3 regarding Shell's Manual of Authorities. ECF 215 at 2. However, Defendants make *no* showing in support of their request. *See* ECF 214 at 30–31. Although Defendants are not entitled to any relief on this basis alone, the IMG is relevant. CLF

understands that the Manual of Authorities is a database that identifies individuals within Shell group and their corresponding levels of approval authorities for capital projects at the Terminal.[10] *See* Jordan Aff., Ex. A ¶ 6. Testimony about who has approval authority and which company those individuals work for is relevant to operator liability under *Bestfoods*. *See supra* Part II.A.1.

### c.  Metocean documents

CLF briefed the relevance of Metocean in its Renewed Motion to Compel, *see* ECF 151 at 22, 28, and its Motion for More Depositions, *see* ECF 183 at 34–38. Metocean is an entity within Shell group that evaluates climate change risks for Shell group infrastructure. The Metocean DEP Informative applies to the "█████████████████████████████████████████ ████████," for both new structures and the "████████████████████████," and includes specific plans to account for climate change in facility design. *See* ECF 151 at 21 (citing ECF 154 at 6–7); *id.* at 28.

Defendants' instant motion fails to address the text of the Metocean DEP itself. Defendants' argument instead relies on testimony from their hand-picked witness who has limited personal knowledge or familiarity with Metocean, his hearsay testimony about what others on his team don't know, and Defendants' determination that Metocean has not performed any work at the Terminal. ECF 214 at 29–30. However, prior testimony and written discovery responses do not demonstrate the need for a protective order on this topic and Defendants have presented no case law to suggest otherwise.

Rule 30(b)(6) was drafted to avoid the situation CLF finds itself in—the need to serially depose fact witnesses because the witnesses disclaim knowledge on a topic. The Rule promotes efficiency by "eliminating the need for lawyers to waste time and money deposing

---

[10] Defendants have not produced any version of the Manual of Authorities.

multiple corporate employees to find the ones with pertinent information by making the company responsible for identifying witnesses with knowledge of relevant subject matter." *Klosin v. E.I. Du Pont De Nemours & Co.*, No. 119CV00109EAWMJR, 2023 WL 1097859, at *2 (W.D.N.Y. Jan. 30, 2023) (citation omitted). "[I]f witnesses designated pursuant to Rule 30(b)(6) lack personal knowledge concerning the matters set out in the deposition notice, then the corporation is obligated to prepare them so that they may give knowledgeable answers." *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 80–81 (S.D.N.Y. 2019) (internal citations omitted). The organization "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* at 81 (internal citations omitted). Courts have "soundly rejected" objections to 30(b)(6) depositions based on prior fact witness testimony and written discovery. *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, *5 (S.D. Ohio Apr. 13, 2006) (prior testimony); *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) (prior document production and testimony). CLF is not seeking to "re-ask all of the questions a party has previously explored with multiple witnesses," as Defendants suggest. ECF 214 at 30 (quoting *BAT LLC v. TD Bank, N.A.*, No. 15 CV 5839, 2019 WL 13236131, at *5 (E.D.N.Y. Sept. 24, 2019)). CLF is seeking binding testimony from the noticed Parties based on information known or reasonably available to them.

Even if Mr. Yeates' prior testimony could justify striking Revised Topic 3 as it relates to Metocean (which it cannot), Mr. Yeates is not an employee of any Defendant and, despite CLF's request, Defendants refused to allow him to testify as a corporate designee. Yeates Dep. Tr. 27:17–21, ECF 174-2 at 8. Similarly, Defendants' interrogatory answers were signed by Michael Sullivan who is not employed by any Defendant and whose legal relationship to the Terminal is unclear at best. *See supra* Part II.A.1.a. Mr. Sullivan's deposition testimony reveals gaping holes in his

11

"reasonable inquiry" into the veracity of Defendants' interrogatory answers, which was limited to contact with counsel. Sullivan Dep. Tr., Ex. E at 77:10–19. He did not contact anyone from any Defendant to verify Defendants' answers. *Id.* Both Mr. Yeates' testimony and Defendants' interrogatory answers are inconsistent with public statements from Defendants' ultimate parent company about climate change risks and the need for resiliency at their facilities. *See infra* Part II.A.5. Revised Topic 3 seeks relevant information regarding Metocean and is entirely consistent with Rule 30(b)(6), and Defendants have failed to show good cause for a protective order.

### 3. *Revised Topic 5 (Defendants' knowledge of climate change related risks) seeks information relevant to CLF's claims.*

CLF explained why Defendants' knowledge of climate change risks is relevant in its Renewed Motion to Compel. ECF 151 at 24–31. Defendants assert that their knowledge of climate change-related risks at the Terminal is not relevant to the claims in this case. ECF 214 at 33. These arguments are not new. What is new is that Defendants acknowledge, "Whatever Defendants' prepared 30(b)(6) witnesses discuss regarding [other] topics [about risks to the Terminal] are effectively the 'knowledge' of the deposed defendant." ECF 214 at 33. One such Topic Defendants do not find objectionable is Revised Topic 27 (*see* ECF 215): "The present impacts and risks at the Terminal due to [severe weather events], including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding." *See* Ex. B at 8. Thus, according to Defendants' own argument, they will be testifying about their knowledge of climate change-related risks at the Terminal.

### 4. *Topic 25 & 26 (insurance policies and communications with insurance companies regarding risk of loss to Terminal assets due to severe weather events) seeks information relevant to CLF's claims.*

CLF explained the relevancy of Topics 25 and 26 during the Parties' meet and confer. Defendants may have shared information with its insurers (or vice versa) about climate-related

risks. ECF 203-3 at 9. These communications may also reflect conditions insurers place on the Terminal for managing climate-related risks. *Id.* Defendants have not addressed these points and instead merely assert that such communications are completely irrelevant and have no bearing on this case. ECF 214 at 33–34. Defendants are not entitled to a protective order based on unreasoned relevance assertions.

Defendants' brief presents an argument never raised during meet and confer: that Topics 25 and 26 seek duplicative information based on Defendants' initial disclosures, which state "there are no insurance policies that are applicable to this matter." ECF 214 at 33. However, Rule 26 does not require Defendants to disclose the information sought in Topics 25 and 26. It requires production of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(iv). CLF is not seeking information related to a damages award. Topics 25 and 26 do not seek information "duplicative" of Defendants' initial disclosures.

Last, Defendant claim that any such communications would include "highly sensitive, confidential business information." ECF 214 at 34. They omit any reference to the protective order entered in this case and that Defendant may designate testimony and documents as confidential. Defendants offer no caselaw holding that discovery should not be had when it involves "highly sensitive, confidential business information." *See id.* Therefore, the Court should reject Defendants' request to strike Topics 25 and 26 for failure to show good cause.

### 5. *Revised Topic 29 (Defendants' position regarding certain climate-related statements by Shell plc quoted in CLF's amended complaint) seeks information relevant to CLF's claims.*

CLF seeks to depose Defendants about statements from its ultimate parent company, Shell plc and corporate affiliates related to climate change risks. Revised Topic 29 specifically identifies

each statement by reference to the Amended Complaint paragraph for which Defendants would need to prepare. Those statements include:

- "Each Shell entity and each Shell-operated venture is responsible for implementing climate change policies and strategies." ECF 47 ¶ 53 (internal citations omitted).

- "To ensure informed judgements are made, businesses' senior managers present their current assessments of how likely climate risks are to happen, what their potential impact would be, and what is being done to mitigate the risk." ECF 47 ¶ 59 (internal citations omitted).

- "At Shell, we are taking steps at our facilities around the world to ensure that they are resilient to climate change. This reduces the vulnerability of our facilities and infrastructure to potential extreme variability in weather conditions." ECF 47 ¶ 373 (internal citations omitted).

Without addressing any specific statement, Defendants simply declare that each has "no relevance" to claims in this case. ECF 214 at 34. CLF explained why such statements are relevant in its Renewed Motion to Compel. For example, this Court endorsed CLF's operator liability claims based on mandatory policies established by Defendants' parent companies. ECF 149 at 20–21. CLF should not be prevented from obtaining binding Testimony from the noticed Defendants confirming, *inter alia*, whether the quotes are true (or if not, why not?), and ask follow-up questions. Defendants have not shown why any of the statements fail to clear the "relatively low bar of relevance." *U.S. v. Ray*, 585 F. Supp. 3d 445, 459 (S.D.N.Y. 2022) (citation omitted); Fed. R. Evid. 401; *see also, e.g.*, *Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*, 215 F. Supp. 3d 114, 124 (D. Mass. 2016).

Defendants round out their argument on Topic 29 with misrepresentation and exaggeration. First, Defendants claim that CLF somehow "recognized this topic's irrelevance when it effectively withdrew the first version of Topic 31." ECF 214 at 34. CLF never conceded Topic 29 or Withdrawn Topic 31 are irrelevant to the claims in this case. Rather, consistent with the mandate of Rule 30(b)(6), CLF made a good faith effort to narrow the deposition topics. Second, Defendants argue that Topic 29 is "seeking essentially anything Defendants or affiliated Shell entities knew or said about climate change." *Id.* at 35. This is pure exaggeration. Revised 29 Topic is limited to specific quotes listed by paragraph number in CLF's Amended Complaint. For these reasons, the Court should deny Defendants' request to strike Revised Topic 29.

**B. The Court Should Deny Defendants' Request to Limit Topics 1, 2 (revised), 3 (revised), 4, 6, 7, 8, 12, 14, 15, 17, 18, 23, and 28.**

**1. *Topic 1 and Revised Topic 2 seek relevant information known or reasonably available to the noticed Defendants about Shell Group corporations and entities associated with the Terminal.***

Defendants propose the following limitations for Topic 1 and Revised Topic 2:

**Proposed Topic 1**: The corporate structure, hierarchy, and management of each Defendant ~~including the details of any legal, business, or other relationship between or among Defendant, parent, holding company, subsidiary, members, sister corporations or partners~~ associated with the New Haven Terminal (*e.g.*, Shell Pipeline Company LP). *See* ECF 215 ¶ 2.a.

**Proposed Topic 2**: The structure, hierarchy, and management of any line of business, unit, division, or other organization within Shell group (*e.g.*, Shell Trading and Supply Operations, Shell Downstream, HSSE, Reliability & Integrity) associated with the Terminal, ~~including details of any legal, business, or other relationship between or among such organization, Defendant, parent, holding company, subsidiary, members, sister corporations or partners~~. *See* ECF 215 ¶ 2.a.

This Court should reject Defendants' attempt to limit Topic 1 and Revised Topic 2 to information about the noticed Defendant based on relevance. *See* Section II(A)(1), *supra*. The Court should also reject Defendants' overbreadth objections, which rely on *Quintel Tech. Ltd. v. Huawei Technologies, Inc.*, 2017 WL 3712349, at *9 (E.D. Tex. June 12, 2017). ECF 214 at 28. In that case the 30(b)(6) topic sought corporate and organizational structure of a large corporation

15

and "all affiliated entities" without limitation. *Quintel*, 2017 WL 3712349 at *9. Here, CLF does not seek information about "all affiliated entities" and limited Topic 1 and Revised Topic 2 to corporations and entities associated with the Terminal. *Quintel* is inapposite. Defendants have failed to show good cause for a protective order.

> ## 2. *The Court should not limit Topic 23 (relating to activities of Metocean) "only to the New Haven Terminal."*

Despite arguing (incorrectly) that Metocean is irrelevant, ECF 214 at 28–30, Defendants' do not ask the Court to strike Topic 23: "Activities of the Metocean team regarding on- and near shore facilities in the United States." *See* ECF 215 ¶ 2.c. Instead, they seek to limit Topic 29 "only to the New Haven Terminal." *Id.* Defendants state that, "if Metocean had performed any work related to the Terminal its work relative to this Terminal would be in scope only to the extent that information was shared with the Terminal. No such information has been shared." ECF 214 at 30. But their argument is largely indecipherable. What do Defendants mean by the phrase "in scope" (perhaps they mean relevant)? What does it mean to "share[ such information] with *the Terminal*" (does "the Terminal" mean a Defendant? Shell Trading & Supply? Shell Pipeline Company LP)? Why does sharing the information with "the Terminal" determine the relevancy of Metocean's work?

Despite the lack of clarity, Defendants' focus on "shared" information undermines their Metocean-related argument in two important ways. First, their argument implies that Metocean's work is relevant to this case. If not, Metocean's work would not be relevant even if "shared with the Terminal." Second, the argument implies that Defendants did not verify whether Metocean performed any work related to the Terminal with Metocean itself. Defendants appear only to confirm that Metocean-related work related to the Terminal was not "shared with the Terminal." ECF 214 at 30; *see also* Sullivan Dep. Tr., Ex. E at 77:10–19.

Whether Metocean's work was "shared with the Terminal" is inconsequential for purposes of Rule 30(b)(6), which requires a corporate designee to testify based on information that is known or reasonably available. Fed. R. Civ. P. 30(b)(6). "[K]nowledge from corporate affiliates can be 'reasonably available' to a 30(b)(6) deponent in certain circumstances." *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 395 (D.N.J. 2011). "Direct, legal control over the related entity is not required." *Id.* A key factor is whether the corporation either has the "legal or *practical ability* to obtain information from its corporate affiliate." *Id.* (emphasis added). Here, Defendants have shown *at least* the practical ability to obtain information from and about Metocean. Mr. Yeates' declaration states that the "Metocean team is part of the [Shell group] Projects & Technology business, and *is available* . . . to provide support for assets, and in particular those that are influenced by oceanic and meteorologic conditions." ECF 181-22 at 4 (emphasis added). Likewise, Defendants produced a copy of the Metocean DEP and Informative indicating that Metocean information is available to them as a practical matter. Thus, Defendants have shown the "practical ability" to obtain information from and about Metocean and its work. Defendants have not shown good cause to limit the scope of Topic 23.

### 3. *This Court should not limit Revised Topic 3 (subparts a, d, e, f, h, i, j, k), which seeks relevant information about corporate policies that apply to the Terminal.*

Defendants seek to limit testimony on certain policies, procedures, frameworks, and documents (collectively, "policies") based solely on an assertion that the policies "include[] items inapplicable to the New Haven Terminal either in whole or in part, and are therefore irrelevant to CLF's claims." ECF 214 at 30. The lack of a specific showing provides no basis for CLF to address their objections or for this Court to grant a protective order limiting Revised Topic 3 (subparts a, d, e, f, h, i, j, and k). As the Court recognized, Shell's "mandatory policies" are relevant to CLF's operator liability claims. *CLF*, 2022 WL 4292183, at *15.

17

4. ***The Court Should Deny Defendants' request to limit certain topics regarding other terminals (Topics 4, 6, 7, 23, and 28)***

a. **Topics 4, 23, and 28 regarding on- or near shore facilities.**

Topic 4 seeks information about Project Development Requests (PDRs) and Authorizations for Expenditures (AFEs) regarding risks to the Terminal or on-shore or near shore Shell facilities from various climate-change and severe weather threats. Ex. B at 2. CLF understands that PDRs represent an initial stage of preparing a capital expenditure project within Shell group companies relating to asset integrity, *see* IMG, Ex. D at 22, and that AFEs document project approvals. Topic 23 seeks information about "Activities of the Metocean team regarding on- and near shore facilities in the United States." Ex. B at 7. Topic 28 seeks "Information shared between or among any Defendant and entities within the Shell group or Shell business lines regarding climate change-related risks to Terminal or other on- or near shore Shell facilities." *Id.* at 9.

Defendants argue that these Topics should be limited because "weather or 'climate change' risks at other facilities around the world have no relevance" to CLF's Clean Water Act and RCRA claims but they fail to explain why. ECF 214 at 31. While facilities may be located elsewhere, a key feature is that they are situated on or near the shore and therefore subject to flooding and storm surge as amplified by climate-change factors such as sea level rise. This Court recognized as much in its Order on Defendants' Motion to Dismiss, holding "[i]t is reasonable to infer . . . that the infrastructure at the Terminal is at risk of experiencing the same infirmities as those alleged to have occurred at Shell's Houston and Deer Park Facilities, among others." *CLF*, 2022 WL 4292183, at *17. The Houston and Deer Park facilities are located on or near the Gulf of Mexico, yet Defendants still assert how they are managing potential flooding issues at facilities in the Gulf

"have no relevance" and cite an unrelated employment discrimination case. ECF 214 at 31 (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 585 (D. Kan. 2008).

Defendants' own documents belie their claim that the term "near shore" is unclear. Shell has a standard Design and Engineering Practice (DEP) for "Onshore and nearshore site investigations." ECF 153 at 28. The Metocean DEP Specification defines ███████████████ as a "███████████████████████████████████████████████████████████ ███████████████████████ . . . ." *Id.* at 5.

### b. Topics 6 and 7 regarding Sewaren.

Defendants now *admit* information about another terminal is relevant. With respect to Topics 6 and 7, "Defendants ***recognize the relevance of these topics*** to the extent what transpired at the Sewaren Terminal is applicable to the New Haven Terminal, such as what lessons were learned, if any, that were then subsequently implemented at the New Haven Terminal." ECF 214 24 (emphasis added). This is the first time Defendants have acknowledged the relevance of the loss of containment event at Sewaren. *See, e.g.*, ECF 177 at 6 ("There is no element of any claim in this case that concerns . . . any other location . . . or what Defendants' corporate policies are and whether they are being followed.").

Defendants' argument is also unclear. While they recognize the relevance of the events that transpired at Sewaren and lessons learned, they appear to want to draw a line between aspects of the Sewaren event that are relevant and those that are not. *See* ECF 214 at 33. But it's unclear where they want to draw that line. Defendants admit that "what transpired at the Sewaren Terminal" is relevant but object to testifying about "specific details of the Sewaren Terminal and the operations and processes at the Sewaren Terminal" as irrelevant. ECF 214 at 32. How can CLF question a designee about "what transpired" at Sewaren without also asking for at least some "specific details" about that facility? How can CLF question a designee about "what transpired"

without questioning the designee about basic "operations and processes" at Sewaren? Defendants' objection and proposed limitations make no sense. CLF engaged in a good faith attempt to narrow these Topics during meet and confer but noted, as here, it is unworkable. ECF 203-3 at 5–6.[11]

Defendants state that certain witnesses have already been questioned about Sewaren and that preparing a designee to testify regarding "additional information is duplicative" and not proportional. ECF 214 at 32. But by definition "additional information" is not "duplicative." Moreover, as noted above, have "soundly rejected" objections based on prior fact witness testimony. *Smith*, 2006 WL 7276959 at *5. *Defendants'* arguments about other terminals are similarly illogical. If the Sewaren Terminal is relevant, then others are too. Defendants have not shown good cause to limit Topics 6 and 7.

### 5. *The Court should not limit the relevant discovery time period (Topics 8, 12, 14–15, & 17–18) as Defendants request.*

CLF briefed the issue of the relevant time frame in its Renewed Motion to Compel and reassert, without repeating, those arguments here. *See* ECF 149 at 31–34. Additionally, Defendants' newly expressed acknowledgement about the relevance of events at Sewaren undermine their argument about the relevant time period. Defendants ask this Court to limit Topics related to CLF's Clean Water Act claims to January 1, 2017 to the present. However, "Defendants recognize the relevance of these topics to the extent what transpired at the Sewaren Terminal is applicable to the New Haven Terminal, such as what lessons were learned, if any, that were then subsequently implemented at the New Haven Terminal." ECF 214 at 32. Hurricane Sandy occurred in 2012, so whatever lessons Defendants learned relate to CLF's Clean Water Act claims,

---

[11] Defendants falsely claim that CLF did not engage with Defendants on this Topic. ECF 214 at 32.

including those regarding best management practices and control measures, occurred years before their proposed time period.

### C. Defendants Have Not Shown Undue Burden for Any of the Topics.

Defendants make several exaggerated claims that they will be unduly burdened by Topics 1, 2, 4, 6, 7, 23, 28, and 29, but fail to offer any support—either through citations to the record or through an affidavit—for such assertions. In making these claims, Defendants repeatedly ignore limitations written into the topics or communicated through the Parties' conferences, creating the illusion of burdens that do not exist. Defendants also claim that some of the deposition topics are "cumulative" or insufficiently specific, *see* ECF 214 at 37–38, but fail to state *which* topics suffer from such infirmities or offer any support—legal or factual—for these assertions.[12]

For these reasons, Defendants cannot show good cause for a protective order. *See, e.g.*, *Walls v. City of New York*, 502 F. Supp. 3d 686, 691 (E.D.N.Y. 2020) ("[P]arty seeking to avoid discovery on grounds of burden" must "address those proportionality factors pertinent to that case and provide specific evidence and argument . . . .").

### 1. *Defendants do not support their undue burden objections to Topics 1 and 2.*

Defendants' objection to Topics 1 and 2 on burden grounds implies that there are so many Shell group corporations and lines of business "associated with the New Haven Terminal" that it would "take weeks to prepare" for a deposition on these topics. *See* ECF 214 at 38. But Defendants neither make this claim outright nor support it. Instead, Defendants cite a paragraph of Attorney Prather's declaration that merely restates the topics themselves, without any other information. *Id.*

---

[12] In the introduction to their undue burden argument, Defendants cite Attorney Prather's declaration for the general proposition that (unnamed) topics "impose an impossible burden on Defendants." *See* ECF 214 at 38 (citing ECF 214-1 ¶¶ 23–26). But those paragraphs of Attorney Prather's declaration only restate the scope of Topics 1 and 2, without any facts or argument, *see* ECF 214-1 ¶ 23, and assert an argument for a topic not raised in the brief, *compare id.* ¶ 25 (discussing Topic 3), *with* ECF 214 at 37–40 (not discussing Topic 3 in the undue burden section); *see also supra* note 9 (noting the declaration misstates Topic 3).

(citing ECF 214-1 ¶ 23). In his declaration, Attorney Prather also states that there are "thousands" of Shell group corporate affiliates, *see* ECF 214-1 ¶ 24, but he does not address whether all (or any) of those affiliates are "associated with the New Haven Terminal," which is the key limitation in Topics 1 and 2. Because Defendants do not state how many affiliates are "associated" with the Terminal and support why such a number is unduly burdensome, they have not demonstrated good cause for a protective order.

### 2. *Defendants mischaracterize CLF's topics regarding other Shell group facilities and provide no support for their burden objections.*

Defendants object to Topics 4, 23, and 28 by raising strawmen, ignoring the Parties' record, and without reference to a single piece of evidence. First, Defendants allege Topic 4 includes "a document storage facility in Houston," ECF 214 at 39, but CLF's Letter from March 1, 2023, makes clear that Topic 4 "seeks information only about (a) <u>terminals</u> (<u>as opposed to all facilities</u>) that are (b) on-shore or near shore (as opposed to terminals that are not adjacent to a body of water)." ECF 203-3 at 5 (emphases added). Defendants go on to allege that Topic 4 would require them to prepare designees as to "thousands of individual facilities," but they offer no support for the (implied) assertion that the Shell group operates thousands of bulk fuel terminals "adjacent to a body of water."

Topic 23 seeks only Metocean information for "on- and near shore facilities"—a geographic limitation defined in Defendants' Metocean documents, *see supra* Part II.A.4.a.—within the United States. Defendants' witness, James Kent Yeates, provided a declaration and deposition testimony discussing the scope of the Metocean team's work. *See* Mar. 1 Ltr., ECF 203-2 at 8 (citing Yeates Decl., ECF 181-22; Yeates Tr., ECF 152 at 200:9–222:16). Thus, Defendants' unsupported claim that they would require "significant preparation to learn what 'activities' Metocean . . . conducts," ECF 214 at 39, is contracted by their behavior thus far in this litigation.

Finally, Defendants also object to Topics 4, 23, and 28 based on their lack of knowledge of Shell group's on- and near shore facilities, *see* ECF 214 at 39, but such a claim cannot support an undue burden objection where Defendants are only required to prepare designees as to "information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Relatedly, Defendants ignore that Topic 28 is limited only to "[i]nformation shared" by or with Defendants and does not extend to all Shell group facilities or affiliates.

### 3. *Defendants do not support their objection to Topics 6 and 7.*

Defendants offer only two sentences to support their objection to Topics 6 and 7 as unduly burdensome, neither of which describe *why* the topics, which ask only about the loss of containment event at the Sewaren Terminal, are "unduly burdensome." *See* ECF 214 at 39–40. Nor do Defendants offer any support for the assertion that preparing a designee would be burdensome.

### 4. *Defendants' arguments misrepresent Revised Topic 29.*

Revised Topic 29 asks for each Defendant's "confirmation, adoption, agreement, disagreement, and/or opinion of" specific statements listed in CLF's Amended Complaint. Such a request does not require historical research, contrary to Defendants' assertion, *see* ECF 214 at 40, but instead only requires Defendants to offer each corporation's "position" and "subjective beliefs and opinions." *See Fed. Hous. Fin.*, 2015 WL 13634404, at \*4 (quoting *Taylor*, 166 F.R.D. at 361).

In addition to misrepresenting the Topic, Defendants make a blanket assertion that preparation would "require hundreds of hours of document searches and countless hours of review," *see* ECF 214 at 40, without citing to anything to support such a claim. Defendants' position is also difficult to understand because the statements at issue are directly quoted in the

Amended Complaint, with hyperlinks to facilitate retrieval and review of the entire document. *See, e.g.*, ECF 47 ¶ 214 (providing link to document).

## III.    DEFENDANTS FAIL TO SUPPORT THEIR MOTION FOR SANCTIONS.

Defendants appear to seek sanctions against CLF because CLF dared to enforce the discovery rules when Defendants failed to comply with them. Such retaliatory tactics neither justify imposition of sanctions against CLF nor shield Defendants from the consequences of their actions. Nor can Defendants' unsupported motion for sanctions support a "split the difference" approach, where CLF has complied with the Rules of this Court and Defendants have not. As explained below and in CLF's motion (ECF 203), had Defendants responded to CLF's correspondence regarding the 30(b)(6) depositions, the Parties would not be here now.

### A.  Defendants Failed to Confer with CLF and Seek Impermissible Relief.

In seeking sanctions, Defendants cite to 28 U.S.C. § 1927, the court's "inherent power," and Federal Rules of Civil Procedure 26(g) and 37(a)(5). *See* ECF 214 at 40, 42; ECF 215 at 3. Under the local rules, Defendants were required to confer with CLF prior to filing any motion "pursuant to Rules 26 through 37." D. Conn. L.R. Civ. P. 37(a). Though the Parties have conferred extensively regarding Defendants' objections to the deposition topics, Defendants never conferred with CLF about their intent to seek sanctions. *See* Prather Decl., ECF 215-1 (absence of such communications in required attorney affidavit); Jordan Aff., Ex. A ¶ 2. Failure to confer with CLF is fatal to Defendants' motion. *E.g.*, *Doe v. Mastoloni*, 307 F.R.D. 305, 313–14 (D. Conn. 2015) (denying motion to compel where plaintiffs failed to "confer with opposing counsel and . . . discuss discovery disputes *in detail*") (emphasis in original); *Brown v. Clayton*, No. 3:11CV714 JCH, 2013 WL 1409884, at *2 & n.3 (D. Conn. Apr. 8, 2013).

Further, Defendants do not clarify whether they seek sanctions under Rule 37(a)(5)**(A)** (assuming they prevail on their motion for protective order) or Rule 37(a)(5)**(B)** (assuming CLF's

motion for sanctions is denied). *See* ECF 215 at 3; ECF 214 at 40–44 (failing to discuss Rule 37).

Regardless, Defendants may not obtain their expenses and fees for the time the Defendants spent

"responding to CLF's Notices of Deposition," *see* ECF 215 at 3, because such expenses were not

"incurred in making the motion" for protective order or "incurred in opposing the motion" for

sanctions. Fed. R. Civ. P. 37(a)(5)(A)–(B). Instead, the meet and confer process regarding the

topics is required in the normal course of discovery. *See* Fed. R. Civ. P. 30(b)(6) ("[T]he serving

party and the organization must confer in good faith about the matters for examination."); *e.g.*,

*Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 104 (E.D.N.Y.

2002) (reducing fee award for prevailing, moving party under Fed. R. Civ. P. 37(a)(5)(A) where

"time spent responding to the defendants' discovery demands" "would have been incurred in the

course of normal discovery"); *Charles F. de Laire v. Gary Michael Voris, et al.*, No. 21-CV-131,

2022 WL 433068, at *2 (D.N.H. Jan. 14, 2022) (reducing fee award for prevailing, nonmoving

party under Fed. R. Civ. P. 37(a)(5)(B), where fees for time "before the motion to compel was

filed . . . attempting to resolve the discovery issues" were not "incurred in <u>opposing the motion</u>").

## B. Defendants Are Not Entitled to Sanctions Under Section 1927 or This Court's Inherent Authority, Because CLF Is Not Responsible for Defendants' Violation of the Federal Rules.

Defendants allege that they are entitled to sanctions against CLF under Section 1927 and

the court's inherent authority because CLF filed its motion for sanctions without any basis in law

or in fact, thereby multiplying the proceedings by forcing Defendants to file a response.[13] *See* ECF

at 41–42. Sanctions under these authorities require Defendants to prove that CLF's motion was

filed in bad faith and "so completely without merit" and there could be no possible "legal or factual

---

[13] Defendants do not clarify what sanctions they seek under these two sources of authority, or against whom they seek sanctions (CLF or its counsel). *See* ECF 214 at 40–43 (failing to specify in argument); Motion, ECF 215 (citing only Rules 26(c)(3), 26(g), 35(a)); Proposed Order, ECF 215-1 at 3 (citing no authorities).

basis." *Id.* at 41 (quoting *Hewett v. Triple Point Tech.*, No. 3:13-cv-1382, 2015 WL 6675529, at *5 (D. Conn. Oct. 30, 2015); *Ride, Inc. v. APS Tech., Inc.*, No. 3:11-cv-1721, 2014 WL 12754998, at *1 (D. Conn. Aug. 28, 2014)). Because CLF's motion for sanctions resulted from Defendants' misdirection, delay, and violation of the Federal Rules, Defendants cannot meet their burden.

Defendants claim that CLF created and sprung a trap for Defendants evidencing bad faith. *E.g.*, ECF 214 at 42. But where the Federal Rules of Civil Procedure clearly dictate parties' responsibilities and the consequences of noncompliance, Defendants' claim of a "trap" strains credulity. "No diligent and reasonable attorney, after being served with proper notice of a deposition(s) of the parties represented by that attorney, would disregard the controlling authority [in] . . . Fed. R. Civ. P. 37(d)." *Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, 274 F.R.D. 115, 118 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 37(d)(1)(A)(i); Fed. R. Civ. P. 37(d)(2)); *see also* Fed. R. Civ. P. 37(d)(2) advisory committee's note to 1970 amendment (noting the Rule "make[s] clear" that a party "must apply for a protective order").

Defendants' Motion is an attempt to play the victim of their own missteps and misrepresentations. CLF's motion for sanctions was filed as a result of *Defendants'* noncompliance with discovery rules, *not* CLF's. Defendants repeatedly assured CLF they would file a motion for a protective order. *See* CLF's Feb. 3 Email, ECF 203-2 at 1 (summarizing Defendants' "inten[t] to file a Motion for Protective Order" conveyed during the Parties' conference); Defs.' Mar. 15 Email, ECF 203-9 at 1 (stating "inten[t] to move for a protective order to resolve the parties' dispute over the deposition topics"); Meet & Confer Email, ECF 203-13 at 1–2 (summarizing Defendants' statements during March 22nd meeting); *accord* Prather Decl., ECF 214-1 ¶ 8. CLF understood that the timing of that motion would comply with Rule 37(d)(2), *i.e.*, prior to the depositions. This understanding was reasonable in light of the expectation that attorneys know and

will comply with the Federal Rules, *see, e.g.*, *Tolliver v. Abuelo's Int'l, LP*, No. 2:20-CV-3790, 2021 WL 9667735, at *3 (S.D. Ohio Dec. 17, 2021), and CLF's consistent statements that CLF would not agree to delay Defendants' depositions pending resolution of the Renewed Motion to Compel, *see* Mar. 1 Ltr., ECF 203-3 at 2; Mar. 20 Ltr., ECF 203-10 at 4. That Defendants understood their obligation to file a motion (or designate a witness) in a timely manner is also plain from their own conduct: but for Defendants' obligation to either appear for depositions or else file a motion for protective order, Defendants would not have requested (belatedly) that CLF withdraw the notices. *Accord Ferko*, 218 F.R.D. at 142 ("[I]f a party fails to designate a witness to appear at a deposition, that party has violated Rule 37(d) unless that party has moved for a protective order.") (citing *Bregman*, 182 F.R.D. at 355 n.3).

The written record[14] makes it clear that *Defendants* sprung the trap on CLF, misleading CLF for months that they would comply with the Federal Rules and then expecting absolution when they did not do so. Indeed, it is Defendants' delay that has "multiplie[d] the proceedings in [this] case unreasonably and vexatiously," 28 U.S.C. § 1927. Had Defendants followed through with their commitment to seek a protective order before their depositions, rather than a month later, CLF would not have been forced, yet again, to carry the weight of Defendants' intransigence and noncompliance with the Federal Rules through motions practice. *See New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007) ("What is not proper practice is to refuse to comply with the [deposition] notice, put the burden on the party noticing the deposition to file a motion to compel, and then seek to justify non-compliance in opposition to the motion to compel.").

---

[14] Defendants rely on disputed hearsay in Attorney Prather's affidavit to assert that CLF agreed to withdraw the notices and then abruptly changed course. *See* ECF 214 at 42. CLF has forcefully disputed those representations of counsel's March 24th conversation. *See* ECF 219 at 8 (quoting Rumelt Aff., ECF 203-1 ¶ 6). CLF repeatedly invited Defendants to create a written record to avoid this type of tactic, but Defendants ignored CLF's communications. *See id.* at 11.

Defendants' argument that they could not file such a motion because of ongoing negotiations on Topic 2, *see* ECF 214 at 41–42, is contradicted by their own briefing and conveniently ignores that, with a week prior to the depositions, it was only Defendants' unexplained delay in responding to CLF that left negotiations "open." *See* CLF Reply, ECF 219 at 10–11 (responding to argument); *see also* Defs.' Mar. 15 Ltr., ECF 203-9 at 4–7 (noting the Parties were "at an impasse" as to topics 1–8, 12, 14–18, 23–29, and 34, which encompasses every topic at issue in the belated motion for protective order). Had Defendants simply responded to CLF's correspondence, the Parties would not be here now. *Id.*

Defendants are not entitled to sanctions against CLF related to CLF's motion for sanctions (ECF 203), because Defendants' conduct "forced [CLF] to expend wholly unnecessary time and effort in its unsuccessful attempts to get the defendants to comply with their discovery obligations. This waste of time and resources was caused by the defendants' bad conduct, which required the plaintiff to make motions to compel and motions for sanctions." *Creative Res. Grp.*, 212 F.R.D. at 102 (awarding sanctions against defendants under Rule 37).

### C. Defendants Are Not Entitled to Sanctions Under Rule 26(g) Because CLF's Topics Comply with Rule 26 and Are Substantially Justified.

Defendants assert that they are entitled to sanctions under Rule 26(g)(ii)–(iii) because CLF served "irrelevant" deposition topics in its Rule 30(b)(6) notices. *See* ECF 214 at 43–44. Defendants do not identify which topics seek information that is so irrelevant as to be sanctionable, *see id.*, and capaciously "seek all expenses, including attorneys' fees, in connection with CLF's discovery practices," *id.* at 44; *see also* ECF 215 at 3 (seeking "reasonable expenses incurred in bringing th[eir] motion and responding to CLF's Notices of Deposition, including attorneys' fees, pursuant to Rule No. 26(c)(3), (g), and 37(a)(5)").

First, as explained above, CLF's discovery requests seek relevant information that Defendants have unreasonably withheld. *See supra* Parts II.A–B. Thus, CLF's Rule 30(b)(6) deposition notices are not sanctionable, because the notices complied with the signature requirements certifying that the discovery was not interposed for an improper purpose or in contravention of allowable discovery under Rule 26(b)(1). *See* Fed. R. Civ. P. 27(g)(ii)–(iii); *see generally* CLF Renewed Mtn. to Compel, ECF 151 (explaining relevance of information sought by CLF in its written discovery requests); CLF Reply, ECF 191 (same).

Second, even if this Court holds that one or more of CLF's deposition topics seek irrelevant information, CLF's deposition topics were substantially justified and do not warrant sanctions. *See* Fed. R. Civ. P. 26(g)(3). "[S]ubstantial justification does not mean 'justified to a high degree, but rather has been said to be satisfied if there is a genuine dispute or if reasonable people could differ regarding the appropriateness of the conduct at issue.'" *Markey v. Lapolla Indus., Inc.*, No. CV 12-4622 JS AKT, 2015 WL 5027522, at *18 (E.D.N.Y. Aug. 25, 2015) (citation and quotation marks omitted), *report and recommendation adopted,* No. 12-CV-4622(JS)(AKT), 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016); *accord Doe v. Hicks*, No. 3:15CV01123(AVC), 2016 WL 5172814, at *8 (D. Conn. Sept. 21, 2016). As demonstrated in the Parties' briefing, there is, at minimum, a "genuine dispute" as to whether information about Defendants' corporate policies, other terminals, and knowledge of climate change are relevant to CLF's CWA and RCRA claims. For example, whether Defendants have shared information regarding "risks" to Northeastern terminals and "on-or near shore Shell group facilities" from "hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge," *see* Mar. 20 Ltr., ECF 203-10 at 6–7 (revised Topic 28), is relevant to Defendants' knowledge of climate risks at the similarly situated New Haven Terminal. Am. Compl., ECF 47 ¶¶ 405–14 (Count III).

Furthermore, this Court has already stated that loss of containment events "alleged to have occurred at Shell's Houston and Deer Park Facilities, among others" are relevant to CLF's RCRA claims. *See CLF*, 2022 WL 4292183, at *17. CLF's reliance on this ruling in seeking discovery was reasonable, such that the deposition topics relating to Defendants' other facilities are substantially justified.

Finally, CLF's deposition topics are reasonable because Defendants' objections to providing <u>documents</u> responsive to similar requests are not applicable to preparing a deponent. *See* Mar. 1 Ltr., ECF 203-3 at 2; Mar. 20 Ltr., ECF 203-10 at 4. CLF's attempts to secure this discovery through an alternative device were substantially justified, particularly where Defendants previously insisted upon such an alternative discovery device in this case and in the related Rhode Island case. *See* Joint Status Report, ECF 95 at 5; Defs.' Supp. Br. at 4, *Conservation L. Found. v. Shell Oil Prods. US, et al.*, No. 1:17-cv- 00396, 2022 WL 2866705 (D.R.I. July 1, 2022) (ECF 92) (proposing the Court order CLF to depose Mr. Yeates instead of allowing document discovery); Rhode Island Order, ECF 95-1 at 3 (ordering, over CLF's objections, CLF to depose Mr. Yeates to testify on particular topics as an alternative to "far-reaching" document discovery).

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for protective order and for sanctions and enter a briefing schedule on whether CLF is entitled to its reasonable expenses and attorneys' fees in responding to this motion. *See* Fed. R. Civ. P. 37(a)(5)(B).

Dated: May 23, 2023

Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc., by its attorneys

*/s/ Alexandra M. Jordan*

Alexandra M. Jordan (ct31466)
Alexandra St. Pierre (ct31210)
Conservation Law Foundation, Inc.
62 Summer Street
Boston, MA 02110
Tel: (617) 850-1732
E-mail: ajordan@clf.org
E-mail: aestpierre@clf.org

Christopher Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org

Allan Kanner (ct31051)
E-mail: a.kanner@kanner-law.com
Elizabeth B. Petersen (ct 31211)
E-mail: e.petersen@kanner-law.com
Chancey E. Raymond (ct31311)
E-mail: c.raymond@kanner-law.com
KANNER & WHITELEY, L.L.C.
701 Camp Street New Orleans, LA 70130
Tel: (504) 542-5777
Facsimile: (504) 524-5763

*Attorneys for Plaintiff
Conservation Law Foundation, Inc.*

31

*Admitted as Visiting Attorney