**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Case No: 3:21-cv-00933-JAM <br><br> May 23, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF THE MAY 16, 2023 RULING AND ORDER [ECF No. 221] ON PLAINTIFF'S MOTION TO SEAL**

1

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ 1
**BACKGROUND** ................................................................................................................. 2
**LEGAL STANDARD** ........................................................................................................ 3
**ARGUMENT** ....................................................................................................................... 4
   **I.   The Court Overlooked the Inherent Confidentiality and Proprietary Nature of Intellectual Property** ................................................................................................. 4
   **II.   The Court Overlooked Language in Exhibits H and I that Demonstrates the Confidential and Proprietary Nature of the Documents** ....................................... 7
   **III.   The Court Overlooked the Balancing of Interests and Low Interest of Public Access to Documents filed in Discovery Disputes** ................................................ 10
**CONCLUSION** ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
  12 Civ. 6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ................................................... 11

*Bailey v. Interbay Funding, LLC*,
  No. 3:17-cv-1457, 2020 U.S. Dist. LEXIS 108219 (Dist. Conn. June 19, 2020) ...................... 3

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019) ....................................................................................................... 4

*CSL Silicones, Inc. v. Midsun Group Inc.*,
  No. 14-CV-1897, 2017 WL 4750701 (D. Conn. July 12, 2017) ........................................... 4, 6

*Gelb v. Am. Tel. & Tel. Co.*,
  813 F.Supp. 1022, 1035 (S.D.N.Y.1993) ............................................................................... 11

*In re Air Crash at Dubrovnik*,
  No. 3:98-cv-2464, 2001 U.S. Dist. LEXIS 14334 (D. Conn June 4, 2001) .............................. 3

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  No. 14-MD-2542, 2023 WL 196134 (S.D.N.Y. Jan. 17, 2023) .............................................. 10

*In re New York City Policing During Summer 2020 Demonstrations*,
  20 Civ. 8924, 2022 WL 7886182 (S.D.N.Y. Oct. 14, 2022) .................................................. 10

*Lagnese v. City of Waterbury*,
  No. 15CV00975, 2015 U.S. Dist. LEXIS 169133 (Dist. Conn. December 18, 2015) .............. 3

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) ..................................................................................................... 4

*Refco Group Ltd.., LLC v. Cantor Fitzgerald, L.P.*,
  No. 13 Civ. 1654, 2015 WL 4298572 (S.D.N.Y. July 15, 2015) ........................................... 11

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ....................................................................................................... 3

*Travelers Indem. Co. v. Excalibur Reinsurance Corp.*,
  No. 3:11-CV-1209, 2013 WL 4012772 (D. Conn. Aug. 5, 2013) ........................................... 4

*United States. v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995) ............................................................................................ 4, 5, 11

**Rules and Regulations**

Local Rule 5(f)(3) ........................................................................................................... 10, 11
Local Rule 7(c) ....................................................................................................................... 3

**INTRODUCTION**

Defendants respectfully submit this motion for partial reconsideration of the Court's May 16, 2023 Order (ECF No. 221) ("Order") on Plaintiff Conservation Law Foundation, Inc.'s ("CLF") January 20, 2023 motion to seal (ECF No. 150) ("Motion to Seal"). Exhibits H and I to CLF's motion to compel (ECF No. 153, 154) are Design and Engineering Practices ("DEPs") that contain commercially valuable and confidential intellectual property. The Court's Order did not address controlling and crucial facts available on the face of these documents, including about their proprietary nature, restricted use, and subject matter. The Court only noted in its Order that the documents could be shared with third parties including contractors and subcontractors but did not address the language in the documents discussing the restrictions and agreements that must be in place before sharing such documents with third parties.

The Court's Order also did not address the extremely limited value of the documents to the judicial process – CLF quoted only excerpts from 5 pages out of the total 74 pages in the two documents. As raised in Defendants' Response to CLF's Motion to Seal (ECF No. 174), CLF did not follow the procedures in the Standing Protective Order to challenge the confidentiality designations of the documents and did not meet and confer with Defendants in advance of filing its motion. The Court did not weigh in on the appropriate procedure the parties must take before filing such a motion, which is relevant to the balancing of interests.

On their face, Exhibits H and I reflect internal engineering processes that may be used by companies within the Shell group and that were developed using the unique experience acquired in the design, construction, operation and maintenance of Shell group facilities. They are maintained as confidential with restricted access. Access is granted to third parties only when there are appropriate contractual agreements in place that include confidentiality or non-

1

disclosure provisions. Shell GSI grants access to these proprietary documents to third parties in exchange for compensation. Thus, there are clear and compelling reasons to seal these documents.

While the express language of Exhibits H and I is sufficient to support filing the documents under seal, to further address the confidential and commercial nature of the documents, and clarify and expand upon the language used in the documents (which are in draft form), Defendants also provide the attached declaration of Matthew Penny. *See* Ex. 1, Decl. of Matthew Penny ("Penny Decl.").

## BACKGROUND

In conjunction with a motion to compel certain discovery responses, CLF filed its Motion to Seal documents that it submitted as exhibits to its January 20, 2023 Motion to Compel (ECF No. 149) and that Defendants had designated "Confidential." Plaintiff stated in its Motion to Seal that it did not agree with Defendants' confidentiality designations. However, instead of following the process in the Standing Protective Order for challenging such designations, CLF proceeded to essentially oppose its own motion. Defendants filed a response to support the Motion to Seal (ECF No. 174), and CLF filed a reply (ECF No. 180). The Court ruled on CLF's motion to compel (ECF No. 221) granting it in part and denying it with respect to Exhibits G, H, and I.

The Court directed the Clerk of the Court to unseal Exhibit I and stayed its order with respect to Exhibits G and H until May 31, 2023. *See* ECF No. 221. On May 19, Defendants filed an emergency motion to stay the unsealing of Exhibit I (ECF No. 225) pending this limited

motion for reconsideration.[1]  The Court granted Defendants' emergency motion that same day. *See* ECF No. 226.

## LEGAL STANDARD

Granting a motion for reconsideration is warranted where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord* Local Rule 7(c) (motion to reconsider may be granted where "the movant can point to controlling decisions or data that the court overlooked"). Courts will consider and grant motions to reconsider decisions regarding discovery disputes.  *In re Air Crash at Dubrovnik*, No. 3:98-cv-2464, 2001 U.S. Dist. LEXIS 14334, at *1 (D. Conn June 4, 2001) (granting motion to reconsider a court order granting in part a motion to compel the production of certain documents); *Bailey v. Interbay Funding, LLC*, No. 3:17-cv-1457, 2020 U.S. Dist. LEXIS 108219, at *14-15 (Dist. Conn. June 19, 2020) (granting motion to reconsider the court's ruling finding a motion for Rule 11 sanctions moot); *Lagnese v. City of Waterbury*, No. 15CV00975, 2015 U.S. Dist. LEXIS 169133, at *7-8 (Dist. Conn. December 18, 2015) (granting motion to reconsider order granting in part a motion for a protective order).

---

[1] Following Defendants' emergency motion, CLF notified Defendants that Exhibit I had already been unsealed and that CLF had distributed the unsealed Exhibit I to "individuals outside the scope of those in the Protective Order." Ex. 2, May 19, 2023 email from A. St. Pierre (CLF) to Counsel for Defendants.  Following the Court's grant of the emergency motion, Defendants asked CLF to direct any recipients to destroy any copies of Exhibit I, and to further direct any subsequent recipients to destroy any copies of Exhibit I, and confirm once CLF had taken such action.  *Id.*, May 19, 2023 email from M. Morgan (B&D) to A. St. Pierre (CLF).  During a meet and confer on May 22, CLF informed Defendants that it sent Exhibit I to persons within the CLF organization, and that have contracted with CLF.  Ex. 3, Decl. of M. Morgan, ¶ 3.  CLF informed Defendants that it had made the outreach requested by Defendants, but had not yet received confirmation from all recipients of Exhibit I that they had destroyed any copies.  *Id.* ¶ 4.

3

When evaluating whether to seal documents, the Court determines whether the documents at issue are "judicial documents," determines the weight of the presumption to public access, and balances the competing considerations against it. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). Documents, such as those attached to discovery motions, "that play only a negligible role in the performance of Article III duties are accorded only a low presumption that amounts to little more than prediction of public access absent a countervailing reason." *Brown v. Maxwell*, 929 F.3d 41, 49-50 (2d Cir. 2019) (quoting *United States. v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (internal quotation and citation omitted); *see also* Order at 3-4. The public's right to access court documents is not absolute and may be surmounted by a party's showing that sealing will further other substantial interests. *Travelers Indem. Co. v. Excalibur Reinsurance Corp.,* No. 3:11-CV-1209, 2013 WL 4012772, at *3 (D. Conn. Aug. 5, 2013). "[C]onfidential 'commercial information' of a business—including trade secrets, confidential research, internal business documents and information about a business's operations—has been recognized repeatedly as a proper subject for sealing." *CSL Silicones, Inc. v. Midsun Group Inc.*, No. 14-CV-1897, 2017 WL 4750701, at *3 (D. Conn. July 12, 2017); *see also* Order at 5-6.

## ARGUMENT

### I. The Court Overlooked the Inherent Confidentiality and Proprietary Nature of Intellectual Property

The Court overlooked controlling law and facts regarding proprietary business information that is protected intellectual property. Exhibits H and I on their face note their proprietary nature, which was not mentioned in the Court's Order. For example, the Preface to Exhibit H states that DEPs reflect the professional, technical views of Shell GSI and, in some instances, other companies in the Shell group that are based on their experience during the

4

involvement with design, construction, operation, and maintenance of processing units and facilities. *See* Ex. H., Preface, paragraphs 1-2. Exhibit H (the Specification) includes detail on proprietary processes for what data should be collected to account for metocean risks, including data sources, equipment, and how to measure the data. *See* Ex. H, Section 3; *see also* Penny Decl. ¶ 14. Exhibit I (the Informative) includes a proprietary risk and mitigation matrix, a flowchart, and significant detail on the internal knowledge supporting the risk takings for certain process safety requirements. *See* Ex. I, Table 3, Figure 1, Section 1.3.1; *see also* Penny Decl. ¶ 14.

Further, DEPs are subject to copyright. Penny Decl. ¶ 13. The final versions of Exhibits H and I are protected by copyright. *Id.* ¶ 13. Although these draft versions do not contain express copyright language, the same copyright protections would apply. *Id*. Copyrighted proprietary technical information, such as Exhibits H and I, which are inherently private information, weighs heavily in favor of sealing because such disclosure would necessarily harm the owner of the intellectual property. *Amodeo*, 71 F.3d at 1051 ("courts should first consider the degree to which the subject matter is traditionally considered private rather than public.").

Because of the clear prefatory language to Exhibits H and I, and the subject matter of the documents, Defendants did not believe there was a need for a declaration in the Defendants' Response to CLF's Motion to Seal explaining the nature of the harm.[2] Courts require only a

---

[2] The Court also put undue weight on the fact that a discussion of the confidential nature of the documents or harm was "conspicuously absent from Mr. Evan's declaration." Mr. Evans did not address the documents because he was unfamiliar with the documents and could not speak to the content. *See, e.g.*, Ex. 4, Evans Dep. 20:5-7 (discussing Ex. H) ("Q: Have you seen this document before? A: No I have not."). No implications should be drawn from the absence of that information in Mr. Evans' declaration. This is consistent with counsel for Defendants' statements at the Motion to Compel hearing that DEPs apply in specific situations, which do not include existing assets. Thus, the documents do not apply to the New Haven Terminal. *See* Ex. 5, Mar. 24, 2023 Hearing Tr. 66:7-15; *see also* Ex. 6, Yeates Dep. 155:21-156: 9 (discussing

"particular and specific demonstration of factshowing that disclosure would result in an injury sufficiently serious to warrant protection." *CSL Silicones, Inc.,* 2017 U.S. Dist. LEXIS 189918, at *9 (denying motions to seal where parties rely "solely on the fact that the information has been designated as confidential or [attorneys eyes only] under the Protective Order"). The express language of the document shows that the information is restricted, there are significant measures taken to guard the secrecy of the information, the information has value to the business, and was prepared based on the business's internal knowledge from expertise in operations and project management. *See* Penny Decl. This is a sufficient demonstration of the value of the document and thus the harm that would flow from making such a document public.

While such a declaration should be unnecessary to address the clear harm of making publicly available proprietary intellectual property, the Penny Declaration confirms that making such information available to competitors would cause two distinct types of financial and competitive harm. Penny Decl. ¶ 15. "First, competitors could use this information to improve their own internal processes, which would lead to value erosion or financial loss to the Shell group." *Id.* Additionally, "potential customers could access the documents without compensation to Shell GSI, the owner of the intellectual property, causing direct financial loss to Shell GSI." *Id.*

The Court did not address the proprietary nature of the Exhibits, nor the prefatory language discussing the internal technical knowledge and expertise that went into the creation of these documents. The language of the underlying documents, particularly when coupled with the

---

application of DEPs) ("Q: You mentioned earlier that DEPs apply to what you refer to as new projects; is that right? A: That is correct. Q: What is the definition of a new project? A: A new project is considered, in our T&S Speak, a capital project, meaning that the funding for the project comes from the capital budget. It is a new addition or asset. . . . It is not for standard maintenance. That is an expense budget.").

6

supporting Penny declaration, provides a more than sufficient basis for the Court to reconsider its Order and find that there is a compelling reason to file these documents under seal.

II. **The Court Overlooked Language in Exhibits H and I that Demonstrates the Confidential and Proprietary Nature of the Documents**

The Court's Order on the Motion to Seal overlooked controlling and crucial facts in finding that Exhibits H and I are not confidential based on their prefatory language. Exhibits H and I are only provided to third parties in exchange for compensation and under license agreements or other contractual arrangements. These limitations are described in the prefatory language to Exhibits H and I. Penny Decl.¶¶ 7, 11. In addition, as the Penny declaration indicates, those agreements include strict confidentiality and non-disclosure provisions. *Id.* ¶¶ 11-12. The Order focuses on language in Exhibits H and I that explained that the documents could be shared with "other companies receiving technical advice and services from Shell GSI or another Shell Company," including "[c]ontractors" and "subcontractors." Order, 8. The Court misconstrued these statements and overlooked language in the same sections of Exhibits H and I that described the contractual limitations required for such sharing, and the steps taken to preserve confidentiality of the documents even when shared.

The Order does not describe the proprietary technical nature of the documents, which is stated not only in their prefaces but is also self-evident from their content. DEPs are internal standards for use in design and construction of Shell group projects. Penny Decl. ¶¶ 5-6. Exhibit H states that it reflects the professional, technical views of Shell GSI and is developed based on the experience acquired during the design, construction, operation and maintenance of processing units and facilities. Ex. H, Preface, paragraphs 1-2; Penny Decl. ¶ 6. The Exhibits explain how they are to be used – Exhibit I (the Informative) is intended for internal use by the Principal contracting with Shell GSI for the work, and Exhibit H (the Specification) is typically

7

used by the contractor doing the work.  Ex. H, Preface paragraph 2; Penny Decl. ¶ 7.  In other words, the Informative provides the background explanation and rationale for the Specification, and the Specification provides the more detailed "instructions."  Penny Decl. ¶ 7.

While the Order correctly notes that Exhibit H and I could be shared with third parties, it leaves out that this occurs through a Service Agreement or contractual agreement.  Ex. H, Preface, paragraph 6; Ex. I, Preface, paragraph 3.  Further, sharing the documents with third parties does not impact the confidential and proprietary nature of the documents.  As is stated in the prefatory language of Exhibits H and I, the contractual agreements by which the information could be shared protect against any further redisclosure of information or subsequent disclosure to additional parties.  Ex. H, Preface, paragraph 8; Ex. I, Preface, paragraph 5.  The documents must be destroyed or returned to Shell GSI once the project for which they were contracted for is complete.  *Id.*  As explained by Mr. Penny, in practice, these provisions are carried out through confidentiality or non-disclosure clauses in the contracts.  Penny Decl. ¶¶ 11-12.  Terms of the non-disclosure clauses prevent the contracted party from sharing the information with any entities that are not part of the project, changing the information or circumventing the security device embedded within the information.  *Id.* ¶ 12.  These provisions illustrate the confidential nature of the documents.

The prefatory language to Exhibits H and I also specifically states that access to the documents is restricted.  This refers to both external access to the document, as described above, and internal access to the document.  Access to DEPs is limited through a restricted portal system.  *Id.* ¶ 9.  The security controls in place register the identity of persons accessing or downloading the DEP and there is watermarking on any downloads with the individual's identity.  *Id.*  For third parties, access is granted only if the individual is doing work under

8

contract for the Shell group or is authorized under contract with non-disclosure provisions. *Id.* These security controls further illustrate the confidential nature of the documents and measures taken to control access to the documents.

Finally, the Court should reconsider its Order because the documents have commercial value that will be eroded by unsealing them. As Mr. Penny indicates, Shell GSI's services are not limited to Shell group companies. *Id.* ¶ 10. Third parties can, and do, hire Shell GSI to provide project related technical advice and services. *Id.* To the extent DEPs are provided to a third party that has hired Shell GSI, the DEPs are provided under contractual agreements through which Shell GSI is compensated. *Id.* ¶ 11. As is also stated on the face of the DEPs, in such contractual agreements, provisions for the use of DEPs ensure that the DEPs are tightly controlled and protected from redisclosure. *Id.* Sharing the DEPs with third parties under strict NDAs, even in exchange for compensation, does not affect the confidential nature of the documents – instead what it shows is that they are indeed intended to be and are treated as confidential.

The Court overlooked and misconstrued a number of key facts about Exhibits H and I. The exhibits expressly explain that the documents are restricted in their use and only shared under Service Agreements or License Agreements. Mr. Penny further explains that these agreements include confidentiality provisions or non-disclosure provisions, that there are security measures restricting access to the DEPs, and that these types of documents have commercial value. When taken as a whole, this information that was not addressed in the Court's Order supports Defendants' motion to reconsider and provides more than compelling reason to support filing the documents under seal.

### III. The Court Overlooked the Balancing of Interests and Low Interest of Public Access to Documents filed in Discovery Disputes

Finally, the Court overlooked controlling law and facts when balancing the relevant interests. The presumption of public access has only "modest" weight where the documents are attached as exhibits to discovery motions. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542, 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023) (quoting *In re New York City Policing During Summer 2020 Demonstrations*, 20 Civ. 8924, 2022 WL 7886182, at *2 (S.D.N.Y. Oct. 14, 2022)). CLF cited to Exhibits H and I in its motion to compel for three limited purposes yet sought to enter the entirety of the documents into the record. *See* Motion to Compel, 14, 21, 37 (ECF No. 149). That the entirety of the documents was not relevant for CLF's argument should have been considered in the Court's analysis. *See* Local Rule 5(f)(3) (requiring the "necessary portion of discovery material" to be filed with the Court).

Further, the Court did not consider Defendants' discussion in their Response to CLF's Motion to Seal regarding whether CLF followed the proper procedure to meet and confer in advance of filing. *See* Defs.' Response to CLF Motion to Seal, 2-3 (ECF No. 174). CLF cites to two pages of Exhibit H (a 38-page document), and three pages of Exhibit I (a 36-page document). CLF had more than a binary choice of whether to file the entire document under seal or not, which is directly related to the underlying question of whether Defendants' confidential and proprietary information should be put on the public docket. As explained in Defendants' Response to CLF's Motion to Seal, CLF did not challenge the confidentiality designations of the documents under the Standing Protective Order, and did not otherwise confer with Defendants in advance of filing its motion. *See* ECF No. 174, 2-3. The failure to meet and confer and attempt to narrow the confidential material that would be put into the public domain should be considered by the Court when balancing the interests.

Had CLF conferred with Defendants in advance, the parties may have been able to come to an agreement regarding stipulations or redactions that would obviate the need to file documents under seal. *See* ECF No. 174, 3. Such a procedure would have been consistent with the local rule that requires only that "the necessary portion of discovery material" be filed when needed for consideration of a motion. Local Rule 5(f)(3). If CLF had met and conferred on the issue, this possibility would have been further fleshed out. The Court did not address the proper procedure for the parties to follow to ensure compliance with both the Standing Protective Order and the local rules and did not include this evaluation in the balancing of interests.

Further, the limited references to the documents (5 pages out of a total 74 pages) in a discovery dispute show that the documents as a whole have little value to the judicial process. *See Amodeo*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."). Thus, the large majority of the documents have little to do with the underlying argument and should be afforded little weight. *See Refco Group Ltd.., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654, 2015 WL 4298572, at *4 (S.D.N.Y. July 15, 2015).

Since the documents contain confidential, proprietary information – that is also commercially sensitive – the balancing should weigh in favor of sealing the documents. *Id.* (granting a motion to seal where exhibits contain information "concerning entities' intellectual property and licensing practices"); *see also Alexander Interactive, Inc. v. Adorama, Inc.*, 12 Civ. 6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) (allowing documents supporting a motion to compel containing confidential information concerning a business relationship to be filed under seal); *Gelb v. Am. Tel. & Tel. Co.*, 813 F.Supp. 1022, 1035 (S.D.N.Y.1993) (noting

11

that "defendants' assertion that its competitors ... could use [the information] to do competitive injury to the defendants is, on the facts of this case, a sufficient basis" for sealing). Thus, controlling case law weighs in favor of sealing the documents attached to the discovery motion.

Defendants' concern about public dissemination of this information is not theoretical. As noted above in footnote 1, shortly after the clerk unsealed Exhibit I, CLF shared this document with multiple recipients, the identity of whom is unknown to Defendants. As Defendants have repeatedly raised with the Court, Defendants are concerned that CLF's discovery tactics are being used as a tool or weapon to obtain documents from Defendants as part of its larger public policy campaign.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Partial Reconsideration and, upon reconsideration, seal Exhibits H and I (ECF Nos. 153, 154), and portions of CLF's memorandum of law (ECF No. 151) and Exhibit G (ECF No. 152) that reference Exhibits H and I.

Respectfully submitted,

*/s/ Megan L. Morgan*
James O. Craven
ct18790
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

BEVERIDGE & DIAMOND, P.C.
John S. Guttmann

ct25359
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina Reddy
phv20420
400 W. 15th Street, Suite 1410
Austin, Texas 78701
T: (512) 391-8045
F: (512) 391-8099
breddy@bdlaw.com

Megan L. Morgan
phv20623
Roy D. Prather III
phv206800
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1300
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 23, 2023, a copy of the foregoing Memorandum of Law In Support of Defendants' Motion for Partial Reconsideration of the May 16, 2023 Ruling and Order on Plaintiff's Motion to Seal was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

                                                                                 */s/ Megan L. Morgan*
                                                                                 Megan L. Morgan