## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

           v.

SHELL OIL COMPANY, EQUILON
ENTERPRISES LLC D/B/A SHELL OIL
PRODUCTS US, SHELL PETROLEUM, INC.,
TRITON TERMINALING LLC, and MOTIVA
ENTERPRISES LLC,

    *Defendants*.

Civil Action No. 3:21-cv-00933-JAM

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND RESPONSES TO
### PLAINTIFF'S REVISED REQUESTS FOR PRODUCTION

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Table of Contents...................................................................................................... ii

Table of Authorities .................................................................................................iii

Exhibit List.................................................................................................................v

I.       Introduction ...................................................................................................1

II.      Background ...................................................................................................2

    A.   Defendants' Document Collections .............................................................3

    B.   CLF's Revised RFPs and Efforts to Narrow Disputes................................3

III.     Legal Standard ..............................................................................................6

IV.      Argument ......................................................................................................8

    A.   Defendants' Relevance Objections Based on Defendants' Conception of CLF's
         Claims Are Invalid and Have Been Rejected Numerous Times By this Court. ........9

    B.   Defendants' Objections to Producing Documents "Not Limited to the Terminal"
         Have Been Previously Overruled and Are Unsupported. ..................................10

         1.   CLF narrowed its requests in response to Defendants' objections, but
              Defendants have refused to negotiate on any objections. .....................11

         2.   Defendants' practices at other facilities are relevant to CLF's claims. ...............14

         3.   Defendants' burden objections do not comply with Rule 34 and are
              unsubstantiated........................................................................................15

         4.   Defendants' have not substantiated their burden objections regarding
              documents already collected and reviewed by Defendants. ..................21

    C.   Defendants Are Withholding Documents From Prior to 2017 Based on Their
         Preferred Determination of Unresolved Merits Issues......................................24

    D.   Defendants' Additional Objections Are Without Merit....................................29

    E.   Defendants Have Refused to Conduct New Searches, or Make Productions on
         Non-Objectionable Portions of Requests, in Violation of Rules 26 and 34. ..................30

         1.   Defendants' burden objections cannot be sustained because Defendants'
              have failed to conduct adequate searches or provide documents responsive
              to the unobjectionable part of the Revised RFPs. ................................31

         2.   Defendants have not substantiated their burden objections for documents
              CLF specifically requested. ....................................................................34

    F.   Defendants Violated Rule 34(b)(2)(B) by Failing to Produce Documents on the
         Date They Agreed to and Failing to Provide a Date Certain for Production....................37

V.       Conclusion ...................................................................................................38

**TABLE OF AUTHORITIES**

**Cases**

*Alberty v. Hunter*, 343 F.R.D. 1 (D. Conn. 2022) ................................................. 6, 15, 34

*Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507 (D. Nev. 2020) ..................................... 26

*Black Love Resists in the Rust ex rel. Soto v. City of Buffalo*, 334 F.R.D. 23
    (W.D.N.Y. 2019) ................................................................................................ 16, 32

*CapRate Events, LLC v. Knobloch*, No. 17-cv-5907 (NGG) (SJB), 2018 WL
    4378167 (E.D.N.Y. Apr. 18, 2018).................................................................... passim

*Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, No. 3:19-cv-1324 (JCH), 2023
    WL 5567410 (D. Conn. Apr. 12, 2023)....................................................... 26, 28, 38

*Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d 416 (D. Conn.
    2022) ............................................................................................................... 26, 36

*Cornerstone Realty, Inc. v. Dresser Rand Co.*, 993 F. Supp. 107 (D. Conn. 1998) ..................... 27

*Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-cv-1361 (JCH), 2014 WL 2515221
    (D. Conn. June 4, 2014)........................................................................................ 16, 21

*Harmon Indus., Inc. v. Browner*, 19 F. Supp. 2d 988 (W.D. Mo. 1998), aff'd, 191
    F.3d 894 (8th Cir. 1999) ....................................................................................... 27

*Huseby, LLC v. Bailey*, No. 3:20-cv-00167 (JBA), 2021 WL 3206776 (D. Conn.
    July 29, 2021)....................................................................................................... 6

*In re 60 East 80th St. Equities, Inc.*, 218 F.3d 109 (2d Cir. 2000) ................................. 22

*In re Kidd*, No. 3:20-cv-00800 (KAD), 2020 WL 5594122 (D. Conn. Sept. 18,
    2020) ................................................................................................................... 7

*In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83 (D. Conn. 2005) ..................................... 21, 29

*Integrated Structures Corp. v. Liberty Mut. Ins. Co.*, No. 21-cv-1744 (ARR)
    (SJB), 2022 WL 16786747 (E.D.N.Y. Aug. 9, 2022)............................................ 7, 17, 18, 31

*Komondy v. Gioco*, No. 3:12-cv-250 (CSH), 2015 WL 917867 (D. Conn. Mar. 3,
    2015) ............................................................................................................. 7, 16, 34

*Kulynch v. Delta Mach., Inc.*, No. 05-cv-345 (JG) (RER), 2006 WL 2844229
    (E.D.N.Y. Oct. 2, 2006)........................................................................................ 22

*Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168 (N.D. Iowa 2017) ......................... 21

*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354 (D. Md. 2008) ................................ 7, 18

*Milner v. City of Bristol*, No. 3:18-cv-1104 (JAM), 2020 WL 6049261 (D. Conn. Oct. 13, 2020) ...................................................................................................... 30

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 341 F.R.D. 291 (D. Kan. 2022) ...................................................................................................................... 29

*U.S. Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61 F. Supp. 3d 1 (D.D.C. 2014) ................................................................................. 18

*Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548 (S.D.N.Y. 2012) ...................................... 18, 20

## Other Authorities

Fed. R. Civ. P. 26(b)(5), advisory committee's note to 1993 amendment ................................... 18

## Rules

D. Conn. Loc. R. Civ. P. 7(a)(5) ............................................................................................ 24

Fed. R. Civ. P. 26(g)(1) ......................................................................................... 7, 18, 31

Fed. R. Civ. P. 34(b)(2)(B) .................................................................................................. 31

Fed. R. Civ. P. 34(b)(2)(C) ........................................................................................ 7, 18, 20, 29

**EXHIBIT LIST**

| | |
|---|---|
| Exhibit (A) | Affidavit of Alexandra Jordan |
| Exhibit (B) | CLF's Revised Requests for Production of Documents (Sept. 5, 2023) |
| Exhibit (C) | Defendants' Redlines to CLF's Revised Requests for Production (Sept. 12, 2023) |
| Exhibit (D) | CLF's Responses to Defendants' Redlines (Oct. 3, 2023) |
| Exhibit (E) | Table of CLF's Revisions to Requests for Production |
| Exhibit (F) | Defendants' Responses to CLF's Revised Requests for Production (Oct. 12, 2023) |
| Exhibit (G) | Defendants' Revised Responses to CLF's Revised Requests for Production (Nov. 17, 2023) |
| Exhibit (H) | Table of Defendants' Objections to CLF's Revised Requests for Production |
| Exhibit (I) | 2018 Hazards and Effects Register for the New Haven Terminal (SOPUS_NHVN0028307)* |
| Exhibit (J) | Applying the Risk Assessment Matrix (SOPUS_NHVN0029479)* |
| Exhibit (K) | Excerpts from Shell plc's Form 20-F Annual Report (Mar. 22, 2022) (PSCT021666) |
| Exhibit (L) | Sequeiros & Jaramillo, Extreme Coastal Inundation Under Different Climate Scenarios: Fourchon Junction Case Study, Offshore Technology Conference (Aug. 16, 2021) |
| Exhibit (M) | Comparison of Redacted and Unredacted Versions of Brian Evans Email* |
| Exhibit (N) | Motiva Organization Chart (SOPUS_NHVN00242872)* |
| Exhibit (O) | Shell Organization Chart (SOPUS_NHVN00242865)* |
| Exhibit (P) | Emails Regarding Defendants' Responses to CLF's Revised RFPs (Oct.–Nov. 2023) |
| Exhibit (Q) | Emails Between Alexandra Jordan and Bina Reddy (Sept. 13–15, 2023) |
| Exhibit (R) | Letter from Alexandra Jordan (Sept. 20, 2023) |
| Exhibit (S) | Emails Between Alexandra Jordan and Bina Reddy (Oct. 3, 2023) |
| Exhibit (T) | Emails Regarding Revisions to 30(b)(6) Topics (Sept.–Oct. 2023) |

Exhibit (U)     Email from Anthony Papetti Confirming No Production in Response to Revised RFPs (Oct. 18, 2023)

Exhibit (V)     Correspondence Between Anthony Papetti and James Meinert Regarding Search Terms (Nov. 8–10, 2023)

Exhibit (W)     Letter from Roy Prather (Mar. 3, 2022)

Exhibit (X)     Email from Roy Prather (Apr. 11, 2022)

Exhibit (Y)     Letters Between Alexandra Jordan and Roy Prather (Oct. 5–11, 2023)

Exhibit (Z)     Shell, *Managing Risk Manual* (SOPUS_NHVN00049773)*

\* Denotes documents filed under seal in compliance with D. Conn. L. R. Civ. P. 5(e) and this Court's Protective Order, ECF 7

## I.    <u>INTRODUCTION</u>

Plaintiff Conservation Law Foundation, Inc. ("CLF" or "Plaintiff") respectfully files this Motion in accordance with Federal Rule of Civil Procedure Rules 26(g) and 37 and District of Connecticut Local Rules 7 and 11 to compel document productions from Defendants Shell Oil Company, Equilon Enterprises d/b/a Shell Oil Products US, Shell Petroleum Inc., Motiva Enterprises LLC, and Triton Terminaling LLC, (collectively "Defendants") in response to CLF's Revised Requests for Production ("Revised RFPs"), and to request sanctions for improperly certified discovery responses. CLF seeks clear direction from the Court and strict deadlines to ensure that Defendants conduct reasonable searches and produce documents to Revised RFPs 6, 7, 9–12, 17, 18, 20, 23–29, 31–34, 36, 38–49, 51, 53, 54, 63, and 64, which CLF revised in compliance with the Court's Discovery Order and which seek information critical to CLF's claims.

Defendants are refusing to conduct any searches and are withholding documents in response to 39 of CLF's 41 narrowly tailored requests based on relevance arguments this Court has already ruled on in CLF's Motion to Compel (ECF 277) and Defendants' Motion to Dismiss (ECF 111) and Motion for Partial Summary Judgment (ECF 302). Defendants have also objected on burden and proportionality grounds, but they have conducted no searches in response to the Revised RFPs and have not provided documents responsive to the non-overbroad construction of the requests. Defendants' failure to search for documents has undermined the Parties' ability to resolve these disputes without court intervention. The inadequacy of Defendants' responses to the Revised RFPs is further underscored by Defendants' failure to produce documents for many of CLF's Revised RFPs: Defendants have produced a mere 4,985 documents responsive to *all* RFPs. Furthermore, public information found by CLF clearly shows that Defendants are withholding extensive information directly relevant to identifying, characterizing, and mitigating climate change and severe weather risks at facilities similar to the New Haven Terminal.

1

Defendants' refusals to engage with any non-objectionable formulation of RFPs means that the Parties' work in briefing the Motion to Dismiss, CLF's prior Motion to Compel, the Motion for Partial Summary Judgment, and the Court's work in reviewing and deciding those motions, have largely been wasted effort in clarifying the claims, the consequent scope of relevance, and in moving this case forward. Throughout this litigation, Defendants have relied on the idea that future and pending motions may resolve issues in their favor and therefore they are entitled to withhold discovery until another day. That day has come and passed, and Defendants' ongoing refusals violate the Federal Rules of Civil Procedure, the adversarial process, the schedule agreed to by the Parties, and the prior decisions of this Court. Furthermore, Defendants' strategy to wait out the clock on discovery without producing entire categories of documents relevant to CLF's claims is designed to deprive CLF of discovery necessary to numerous merits issues in dispute. For these reasons, this Court should grant CLF's requested relief.

## II. BACKGROUND

On October 19, 2023, Judge Meyer ruled from the bench to deny Defendants' Motion for Partial Summary Judgment ("MPSJ"). *See* MPSJ Order, ECF 302; MPSJ Tr., ECF 305. Judge Meyer held that the requirement in Connecticut's industrial stormwater permit ("Permit") to apply "best industry practices" applies to Defendants' Terminal in New Haven. MPSJ Tr., ECF 305 at 82:23–83:15. Judge Meyer further held that this is a fact-specific inquiry based on Defendants' practices at their facilities and others' practices. *Id.* at 83:11–15, 85:13–23. Judge Meyer rejected Defendants' argument that "climate change" is irrelevant under the Permit. *Id.* at 77:5–7, 86:10–14. Judge Meyer's order denying Defendants' MPSJ is the second time this Court has rejected Defendants' attempts to narrowly define CLF's claims and to erase the pressing issue of climate change from this case. *See also* ECF 111 (largely denying Defendants' motion to dismiss).

2

A.    **Defendants' Document Collections**

In response to the Court's Order on CLF's Renewed Motion to Compel (the "Discovery Order"), ECF 277, Defendants identified only 4,985 documents as responsive to CLF's RFPs, though initial searches pulled nearly 2 million documents. Jordan Aff., Ex. A ¶ 33. Defendants have explained that their productions are comprised of "records, policies, procedures, manuals, presentations, and other documents *for the New Haven Terminal*." Prather Decl., ECF 177-1 ¶ 15 (emphasis added); *see also* Defs.' Br., ECF 177 at 43.[1] Defendants withheld collected documents that only discussed or applied to Defendants' other facilities and redacted that same information from any produced document on relevance grounds. Prather Decl., ECF 177-1 ¶¶ 15, 24.

Defendants have not shared the universe of search terms they used to respond to CLF's Revised RFPs. Jordan Aff., Ex. A ¶¶ 25, 35, 41. Defendants collected documents using (a) 95 climate change search terms based on 19 of CLF's 65 First RFPs, (b) unknown terms based on an unknown number of CLF's First Set of RFPs, and (c) unknown terms based on an unknown number CLF's Second Set of RFPs. *Id.* ¶¶ 26, 35; Prather Decl., ECF 177-1 ¶¶ 13, 15. The Parties negotiated search terms in 2021 and 2022 based on CLF's First Set of RFPs in the Rhode Island matter, Prather Letter (Mar. 3, 2022), Ex. W, but Defendants never shared with CLF the list of which terms they used and/or adapted for this litigation or the terms based on CLF's Second Set of RFPs. Jordan Aff., Ex. A ¶¶ 25, 39. Defendants did not create new search terms for CLF's Revised RFPs. *Id.* ¶¶ 36–40.

B.    **CLF's Revised RFPs and Efforts to Narrow Disputes**

The Court's Discovery Order allowed CLF to narrow 53 of its original RFPs. ECF 277 at 50–51. CLF issued Revised RFPs on September 5, 2023, for 42 of the 65 original RFPs. Jordan

---

[1] Pin cites to docket entries refer to the ECF header page number.

Aff., Ex. A ¶ 3. CLF narrowed its requests to address the concerns raised in the Discovery Order to avoid seeking "all documents related to" formulations. Instead, CLF modified requests to seek "documents sufficient to show," "all policies," or "all reports," and replaced all instances of "relating to" with more narrowly defined "referring to" or "concerning" articulations. Revised RFPs (Sept. 5, 2023), Ex. B at 6.

Before objecting or responding to the Revised RFPs, Defendants sent CLF a redlined version the Revised RFPs to, in their view, "align the requests with the MTC order and Judge Farrish's guidance at the 9/7 conference." Reddy Email (Sept. 12, 2023), ECF 285-1 at 166. Defendants struck all RFP language referencing other facilities. *Id.* at 187. CLF asked if Defendants would accept their own edits without further objections. Jordan Aff., Ex. A ¶ 7. Defendants would not. *Id.* ¶ 8. In response, CLF declined to accept Defendants' redline and offered two narrower options: (1) coastal facilities in the Americas or (2) coastal facilities Defendants had given a high risk rating for weather events. *Id.* ¶ 9. Defendants rejected both of CLF's proposed compromises on other facilities during the Parties' conference on September 19, 2023. *Id.* ¶ 10. CLF invited Defendants to come up with a counterproposal. *Id.* More than two months later, the evening before this Motion was due, Defendants stated they would not provide one. *Id.* ¶ 31.

In their September 14 email, Defendants also noted that since they had "not yet had time to attempt to search for and gather documents," they could not yet say if they had burden objections. Jordan Aff., Ex. A ¶ 8. CLF invited Defendants to begin document searches so the Parties could discuss and narrow the RFPs based on Defendants' substantiated burdens. *Id.* ¶ 9. CLF reminded Defendants of their deadline to produce documents and their obligation to produce documents within a non-overbroad reading of the RFP. *Id.*

CLF further narrowed its Revised RFPs following the Court's Order on the Motion for Partial Clarification and Reconsideration. ECF 293. CLF accepted some of Defendants' redlines on Revised RFPs 12, 31, 32, 39, 45, 46, 47, 48, 49, and 59, and narrowed the "other facilities" language. *See* RFP Revisions Table, Ex. E at 3, 7–12. CLF provided detailed responses to all of Defendants' comments. CLF Resps. to Defs.' Redlines (Oct. 3, 2023), Ex. D. At Defendants' request, CLF consented to an extension of one week to October 12, 2023, for Defendants to respond to and produce documents in response to CLF's Revised RFPs. Jordan Aff., Ex. A ¶ 12.

Defendants responded to CLF's Revised RFPs just after midnight on their deadline but did not produce any documents. Jordan Aff., Ex. A ¶ 13. Defendants objected to 39 of CLF's 41 Revised RFPs, stated they "will produce" for some requests, and refused to produce documents for Revised RFPs 12, 20, 25, and 52. Defs.' Initial Resps., Ex. F. CLF inquired about the lack of production on October 13, 2023. Jordan Aff., Ex. A ¶ 13. On October 18, 2023, Defendants stated they "have no additional documents to produce in response to CLF's Revised RFPs." *Id.* ¶ 16.

In a meet and confer on October 24, 2023, following resolution of Defendants' MPSJ, Defendants stated they would not revise their objections or responses despite the statements of counsel to Judge Meyer during the hearing that resolution of the MPSJ would resolve numerous discovery disputes. *See* Jordan Aff., Ex. A ¶ 17; MPSJ Tr., ECF 305 at 44:2–6, 71:19–72:3. Defendants also stated (for the first time) that they intended to provide a supplemental production that would include documents responsive to the Revised RFPs but did not specify the timing of that production. Jordan Aff., Ex. A ¶ 17.

On October 27, 2023, CLF sent a list of eighteen issues with Defendants' objections and responses, including all the issues raised in this Motion. Jordan Aff., Ex. A ¶ 18. The Parties conferred about these issues over email and on Zoom on November 3, 2023, wherein Defendants

stated they would provide a proposal on discoverability of other facilities. *Id.* ¶¶ 19–22. Defendants also confirmed they would produce documents the week of November 20, 2023, but did not estimate the size or give a specific date. *Id.* ¶ 22.

The Parties continued to confer by email and conferred on Zoom on November 14, 2023. Jordan Aff., Ex. A ¶¶ 23–29. CLF asked Defendants several questions designed to understand how Defendants distinguished between their relevance and burden objections, and whether Defendants had conducted any searches to distinguish the burden between searching for new documents, searching within already collected and reviewed documents, and for reviewing information behind redactions. *Id.* ¶ 29. Defendants confirmed they had not searched for documents in response to the Revised RFPs and provided so specific support for their burden objections. *Id.*

The day before this filing was due, Defendants stated they would not provide a proposal on discoverability of other facilities. Jordan Aff., Ex. A ¶ 31. Defendants have not provided their search terms, nor have Defendants produced any documents responsive to CLF's Revised RFPs. *Id.* ¶¶ 41–42. Finally, Defendants have not withdrawn any objections in spite of CLF's compromises, the Parties' numerous conferences, and the Court's order denying their MPSJ. Instead, Defendants clarified their objections to one request on November 17, 2023. *Id.* ¶ 30; Defs.' Revised Resps., Ex. G at 36 (Revised RFP 42).

### III.    LEGAL STANDARD

A party filing a motion to compel "bears the initial burden to show the relevance of the information it seeks." *Alberty v. Hunter*, 343 F.R.D. 1, 6 (D. Conn. 2022) (quoting *Huseby, LLC v. Bailey*, No. 3:20-cv-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021)). "[T]he 'party resisting discovery [then] bears the burden of showing why discovery should be denied.'" *Id.* (citation omitted). "[F]acts that demonstrate[] the burdensomeness or excessive cost of the discovery request . . . should [be] disclosed . . . in the objection," *CapRate Events, LLC v.*

6

*Knobloch*, No. 17-cv-5907 (NGG) (SJB), 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018) (quoting *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008)), and should relate "to the specific document requests at issue," *Integrated Structures Corp. v. Liberty Mut. Ins. Co.*, No. 21-cv-1744 (ARR) (SJB), 2022 WL 16786747, at *2 (E.D.N.Y. Aug. 9, 2022) (hereinafter "*Integ. Struct. Corp.*"). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *In re Kidd*, No. 3:20-cv-00800 (KAD), 2020 WL 5594122, at *11 (D. Conn. Sept. 18, 2020) (internal quotation marks and citation omitted). "Rather, the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Komondy v. Gioco*, No. 3:12-cv-250 (CSH), 2015 WL 917867, at *3 (D. Conn. Mar. 3, 2015) (alteration in original) (internal quotation marks and citation omitted). An objecting party nevertheless has an obligation to respond and make productions on a non-objectionable formulation of the request. *See CapRate*, 2018 WL 4378167, at *2 (citation omitted); Fed. R. Civ. P. 34(b)(2)(C).

Pursuant to Rule 26(g), an attorney or party who signs discovery responses and objections is required to conduct a "reasonable inquiry" prior to signing and must ensure that the responses and objections are "(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument . . . [and] (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B). Where a party fails to comply with these requirements "without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

## IV.    ARGUMENT

Defendants objected to 39 of CLF's 41 Revised RFPs, asserting relevance objections as to information Defendants view as outside the scope of CLF's claims, to information about Defendants' other facilities and best industry practices, and to information from 2011 to 2017.[2] *See* Table of Defs.' Objections, Ex. H. This Court should overrule all of Defendants' relevance objections, which have already been resolved against Defendants in the MPSJ, Motion to Dismiss, and Discovery Order, or which improperly raise merits disputes through discovery.

Defendants also objected to nearly every Revised RFP as unduly burdensome, overbroad, and/or not proportional to the needs of this case. *Id.* Despite CLF's months-long efforts to engage with Defendants on their burden objections, Defendants refused to substantiate any of their objections and failed to run any searches, develop search terms applicable to the Revised RFPs, provide CLF with a list of all search terms used by Defendants, produce documents responsive to the unobjectionable aspects of requests, or search for specifically enumerated documents requested by CLF. For these reasons, the Court should not entertain any *post hoc* justifications for Defendants' burden and proportionality objections and instead overrule these objections as improperly interposed for the inappropriate purpose of delaying this litigation even further.

Finally, Defendants have not produced any documents in response to CLF's Revised RFPs, flaunting both the agreed-to deadline submitted by the Parties to the Court and Rule 34(b)(2)(B). CLF requests this Court enter an aggressive compliance schedule for productions in response to Revised RFPs 6, 7, 9–12, 17, 18, 20, 23–29, 31–34, 36, 38–49, 51, 53, 54, 63, and 64.

---

[2] Because Defendants objected to CLF's Revised RFPs using the same boilerplate objections, CLF has organized its Motion to address objection categories. Addressing each objected-to Revised RFP individually is not possible within the page limitations because of Defendants' capacious objections. *See* ECF 277 at 20 (allowing such an approach).

A.      **Defendants' Relevance Objections Based on Defendants' Conception of CLF's Claims Are Invalid and Have Been Rejected Numerous Times By this Court.**

Defendants objected to Revised RFPs 6, 9, 10, 11, 12, 17, 18, 20, 23, 24, 25, 27, 28, 33, 42, 48, and 64 on the grounds that the information sought is not relevant to CLF's claims or relief sought in this case. *See* Defs.' Revised Resps., Ex. G. Based on Defendants' responses, it appears that they have withheld documents on the basis of their view of CLF's claims in response to Revised RFPs 6, 9, 12, 17, 18, 20, 23, 25, and 33, as well as the RFPs addressed in Parts IV.B and IV.C, which specifically relate to Defendants' temporal and geographic objections. *See* Table of Defs.' Objections, Ex. H ("Reasons" column). These relevance objections are facially invalid, *see* ECF 277 at 2, 38, and CLF addresses them here briefly as a group.

Defendants' relevance objections to the Revised RFPs are virtually identical to the relevance objections Defendants made to CLF's First Requests over a year and a half ago. *Cf.* Defs.' Initial Resps. CLF RFPs (May 13, 2022), ECF 149-4. For example, in response to Revised RFP 12, which seeks a list of enumerated reports and "[a]ll Reports that Shell authored since 2011 concerning Climate Change impacts on the frequency or intensity of hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, or sea level rise generally or where the Terminal, Sewaren, Long Island, Houston, and Deer Park facilities fall within the geographic scope of the report," Defendants objected by proclaiming that "[t]here is no element of these claims that requires an evaluation of all reports, including those authored by non-parties, related to the vast topic of Climate Change impacts on a variety of weather events." Defs.' Revised Resps., Ex. G at 12–15. But since Defendants first began imposing their view of relevance in discovery in May 2022, this Court has repeatedly rejected Defendants' assertions that this case is limited to information with a "nexus to the New Haven Terminal," Jordan Aff., Ex. A ¶ 14, or

that climate change, including Defendants' study thereof or adaptations thereto, is irrelevant. ECF 111 (denying Defendants' motion to dismiss); MPSJ Tr., ECF 305 at 75:2–86:25.

Furthermore, this Court previously told Defendants that their relevance objections are not appropriate in discovery and that where Defendants contested CLF's interpretation of the Permit, they should "do so with the appropriate motion. . . . Unless and until such a motion is made and granted . . . the opponent is entitled to discover information relevant to its claim." ECF 277 at 39 (internal citations and quotation marks omitted). Defendants filed such a motion, and Judge Meyer flatly rejected it. MPSJ Order, ECF 302. And although Defendants acknowledged to Judge Meyer that "a lot of" the discovery disputes in this case "relate fundamentally to this disagreement . . . about what the permit requires," MPSJ Tr., ECF 305 at 44:2–6, when Judge Meyer rejected Defendants' interpretation of the Permit, they did not revise any of their objections to the Revised RFPs, Jordan Aff., Ex. A ¶ 17.

Because Defendants continue to waste both CLF's and this Court's time by refusing to produce documents on the basis of relevance objections that this Court has rejected, CLF requests that this Court overrule the objections, order complete compliance with Revised RFPs 6, 9, 12, 17, 18, 20, 23, 25, and 33, and impose whatever sanctions it deems appropriate under Rule 26(g)(3).

**B.** **Defendants' Objections to Producing Documents "Not Limited to the Terminal" Have Been Previously Overruled and Are Unsupported.**

Defendants refuse to search for or produce documents responsive to Revised RFPs 9, 10, 12, 17, 23, 24, 25, 26, 27, 28, 48, 63, and 64, which seek policies, reports, or information about both the Terminal and other facilities owned or operated by Defendants. CLF's claims involve evaluating Defendants' conduct against best industry practices, which the Court has ruled is an issue of fact to be established in part on Defendants' conduct at other facilities. MPSJ Tr., ECF 305 at 83:11–15. Nonetheless, Defendants have taken the position that information about other

facilities is only relevant when it directly relates to the New Haven terminal. Defendants also objected to each Revised RFP as facially overbroad and therefore burdensome and not proportional to the needs of the case. Defendants did not substantiate their burden objections by conducting searches, did not offer or respond to a nonburdensome formulation, and ignored or rejected CLF's narrowing constructions, such as requests for policies and requests for "documents sufficient to show." None of Defendants' objections are valid under Rule 34(b)(2).

The Court should overrule Defendants' objections and order Defendants to produce documents within a short timeframe. Given Defendants' wholesale refusal to engage with CLF's attempts to find a nonburdensome limit on these Revised RFPs, the Court should grant CLF explicit roles in Defendants' search for documents and determinations on relevance to ensure this issue does not come back to the Court on future motions.

> ### 1.    *CLF narrowed its requests in response to Defendants' objections, but Defendants have refused to negotiate on any objections.*

CLF's Revised RFPs seek documents, policies, or information about specific activities at the Terminal and Defendants' other facilities. CLF has narrowed the scope of its requests to subsets of other facilities three times, and Defendants rejected each formulation, claiming CLF's Revised RFPs concerning other facilities "seek information that is not relevant to the claims in this matter and/or the relief sought by Plaintiff, including documents that are not limited to the Terminal." Defs.' Revised Resp. to RFPs 9, 10, 17, 23, 24, 25, 26, 27, 28, 48, and 64, Ex. G at 8–10, 16–18, 21–28, 40–41, 47–48. Defendants also object to RFPs 12 and 63 on similar grounds, even though those requests seek information on specifically enumerated other facilities. *Id.* at 12–16, 46.

Following the Court's Discovery Order, CLF re-issued RFPs 9, 10, 17, 23, 24, 25, 26, 27, 28, 48, and 64 to seek information about "the Terminal or coastal facilities that store or handle petroleum products in bulk, including the Sewaren, Long Island, Houston and Deer Park." Revised

RFPs (Sept. 5, 2023), Ex. B at 9, 13–15, 19, 21. Defendants objected to this formulation, so CLF proposed narrowing the requests to apply only to coastal facilities (1) in the Americas or (2) with a high weather risk rating using Defendants' own Risk Assessment Matrix. Jordan Aff., Ex. A ¶ 9. CLF noted that the second option would "minimize[] inclusion of irrelevant information and prioritize[] information related to the core issues in the case." *Id.* Defendants rejected both proposals and stated any documents without "some nexus to the New Haven Terminal" was categorically irrelevant or disproportionate *Id.* ¶¶ 10, 14. CLF nonetheless narrowed Revised RFPs 9, 10, 17, 23, 24, 25, 26, 27, 28, 48, and 64 to "the Terminal or coastal facilities that store or handle petroleum products in bulk and that have a Risk Assessment Matrix (RAM) rating of yellow or red for category H-09.01 (weather conditions)." RFP Revisions Table, Ex. E.

The Shell RAM scores and classifies risks at facilities. *See* Shell, *Managing Risk Manual*, Ex. Z at 1; Joint Report, ECF 298 at 3. The RAM score and classification is an output of the Hazards and Effects Management Process ("HEMP"), which itself is an implementation component within the broader Health, Security, Safety, Environment, and Social Performance Control Framework ("HSSE&SP Control Framework"). Ex. Z at 1. The primacy and applicability of RAM and HEMP are not in dispute: Defendants characterized the HEMP and HSSE&SP Control Framework as Shell's fundamental policy systems for evaluating and tracking risks to its facilities in their interrogatory responses.[3] Defs.' Resps. CLF Interrogs., ECF 149-5 at 18–20.

---

[3] In response to Interrogatory 9, Defendants explained: "The Terminal's process for risk assessment begins with the Health, Security, Safety, Environment and Social Performance Control Framework (HSSE Control Framework). This is an overarching, general framework that provides a high-level set of goals and objectives for all companies within the Shell group to identify risks." Defs.' Resps. CLF Interrogs., ECF 149-5 at 18. Defendants' Engineering, HSSE, and Operations teams "conduct assessments and develop plans" "at the site-level" to classify the risks and implement the needed "risk-based and fit-for-purpose" actions and plans. *Id.* at 19. This site-level risk assessment is the RAM classification and scoring system that CLF has used to tailor its RFPs.

The RAM classification and scoring system applies to many aspects of Shell's facilities and types of Hazards. The 2018 HEMP assessment for the New Haven Terminal shows RAM evaluations on a variety of hazard categories—from flammable materials (category H-03) to toxic gases (category H-20). *See* Shell, New Haven_TSO HEMP_v2_0b 18apr2018_handshaked.xlsm (last modified Dec. 10, 2018) (SOPUS_NHVN00228307), Ex. I. The RAM hazard subcategory CLF used to narrow its RFPs is "weather conditions" (H-09.01). *Id*. at 7. The "weather conditions" subcategory (H-09.01) includes "Floods, Windstorm, Tornadoes, Hurricanes, Snow storms, Sea conditions, etc." Joint Report, ECF 298 at 3; *see* Ex. I at 7 (excel sheet, tab 3 "Hazards & Effects Register"). The New Haven Terminal is rated with a maximum risk of 4C[4] for H-09.01 based on the highest risk event of "loss of control" with the consequences "serious injury/fatality." Ex. I at 7. The rating means the severity is "major damage" and the likelihood is "has happened in the Organization or more than once per year in the Industry." *See* Ex. J at 2–3 & fig.1; Metocean DEP Informative, ECF 154 at 16 (noting high potential cost of adverse weather conditions).

Despite CLF's efforts to tailor its other facilities requests to Defendants' own document systems with the RAM rating formulation, in response to each such RFP, Defendants wholesale objected to providing information and gave the same objection:

> Defendants also object that the request for documents concerning "coastal facilities that store or handle petroleum products in bulk and that have a Risk Assessment Matrix (RAM) rating of yellow or red for category H-09.01 (weather conditions)" is irrelevant, overbroad, unduly burdensome, and not proportional to the reasonable needs of the case because it seeks large amounts of information regarding assets and infrastructure with no geographic limitation that is unrelated to the Terminal.

---

[4] RAM ratings include a numeric "severity" rating from 0 to 5 (where 0 means "no injury or health effect" or "no damage," while a 5 means "more than 3 fatalities" or "massive effect") and an alphabetical "likelihood" rating from A to E (where A means "never heard of in the Industry," while E means "has happened more than once per year at the Location"). Shell, *Applying the Risk Assessment Matrix* (Oct. 24, 2017), Ex. J at 2–3 & fig.1. Each alphanumeric rating combination is assigned a RAM color—from the lowest severity/likelihood of light blue (e.g., an 0C or 1A rating)), to blue (e.g., a 1D or 2B rating), to yellow (e.g., a 4B or 3D rating), to the highest severity/likelihood of red (e.g., a 5C or 4E rating). *See id.*

13

Defs.' Revised Resps., Ex. G at 8–10, 17–18, 21–28, 40–41, 47–48. Based on this objection, Defendants refuse to even search for documents. *Id.*

CLF reissued two other RFPs that seek documents about a limited number of other facilities. Revised RFP 12 does not use the RAM rating formulation but merely lists four enumerated facilities. Defendants objected and refused to produce documents because the RFP "seeks information regarding assets and infrastructure unrelated to the Terminal." Defs.' Revised Resps. to RFP 12, Ex. G at 15–16. Revised RFP 63 seeks "[d]ocuments sufficient to show the cause(s) of loss of containment at the Sewaren facility during Superstorm Sandy, the resulting environmental impacts, and subsequent environmental remediation or restoration." CLF Resps. to Defs.' Redlines (Oct. 3, 2023), Ex. D at 57. Though Revised RFP 63 seeks information about only one other terminal, Defendants objected to this RFP and refused to produce any "documents unrelated to the New Haven Terminal." *See* Defs.' Revised Resp. to RFP 63, Ex. G at 46.

In sum, CLF has Revised its RFPs based on the Court's Discovery Order and sought to narrow its requests to a subset of Defendants' most relevant facilities by using Defendants' own hazard identification and risk management systems. In spite of the Court's MPSJ ruling, Defendants have not updated their view of relevance in this case and have stated they will not conduct document searches on facilities beyond the New Haven Terminal in response to Revised RFPs 9, 10, 12, 17, 23, 24, 25, 26, 27, 28, 48, 63, and 64. *See* Defs.' Revised Resps., Ex. G at 8–18, 21–28, 40–41, 46–48.

## 2. *Defendants' practices at other facilities are relevant to CLF's claims.*

CLF's Revised RFPs 9, 10, 12, 17, 23, 24, 25, 26, 27, 28, 48, 63, and 64 seek relevant information on Defendants' other facilities by limiting the requests to facilities that Shell's own risk assessment systems identify as being at the highest risk for severe whether events. The Court's denial of Defendants' MPSJ ruled that this information is relevant to CLF's claims.

Judge Meyer's denial of Defendants' MPSJ established that the New Haven permit's Best Management Practice standards are based on and incorporate best industry practices and that "[t]he very purpose of a best industry practice requirement . . . is to require industry to conform to best industry practices even if the content of such best practices are not spelled out word for word in the permit itself . . . ." MPSJ Tr., ECF 305 at 83:5–11. Defendants' MPSJ had attempted to limit the scope of the case and discovery by arguing that Defendants' obligations under the CT General Permit are not controlled by "practices used at other facilities operated by Defendants or their corporate affiliates." Defs.' MPSJ, ECF 248-1 at 20. Judge Meyer denied this argument and ruled that what constitutes best industry practice is a factual issue to be determined from the actual practices of Defendants at their other facilities as well as other companies' comparable facilities in the industry. MPSJ Tr., ECF 305 at 83:11–15. Furthermore, CLF narrowed its Revised RFPs to those facilities that are at greatest risk from climate and weather hazards, which Judge Meyer ruled is subject to fact discovery. *See id.* at 77:10–14 ("[T]here are ample grounds--based on plausibly alleged facts yet to be established . . . for CLF's contention that the permit does indeed require consideration of climate change factors."). The Court should rule that CLF's Revised RFPs 9, 10, 12, 17, 23, 24, 25, 26, 27, 28, 48, 63, and 64 seek relevant information with the scope of Rule 26(b) and therefore CLF has met its initial burden. *See Alberty*, 343 F.R.D. at 6.

### 3.   *Defendants' burden objections do not comply with Rule 34 and are unsubstantiated.*

Defendants have objected to CLF's RFPs on other facilities as facially overbroad, unduly burdensome, and not proportional to the needs of the case. Given that CLF is the proponent of the discovery requests at issue, it is not required to respond to Defendants' objections at this stage. *See Alberty*, 343 F.R.D. at 6. Nevertheless, CLF writes to highlight that Defendants have failed to "demonstrat[e] specifically" how <u>each</u> of CLF's objected-to requests are "overly broad,

burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Komondy*, 2015 WL 917867, at *3 (internal quotation marks omitted); *Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-cv-1361 (JCH), 2014 WL 2515221, at *3 (D. Conn. June 4, 2014) (party resisting discovery bears burden of demonstrating that its objections should be sustained, and objection to document request must clearly set forth specifics of the objection and how that objection relates to documents being demanded) (citation omitted).

First, Defendants state that CLF's Revised RFPs are unduly burdensome because they "seek large volumes of information regarding assets and infrastructure with no geographic limitation that is unrelated to the Terminal." Defs.' Revised Resps., Ex. G at 8–10, 17–18, 21–27, 40–41, 47. As an initial matter, this is not applicable to Revised RFPs 12 and 63, which specifically enumerate four and one additional facilities, respectively. Furthermore, CLF's other Revised RFPs are limited to coastal facilities that store petroleum in bulk, and CLF offered to limit these RFPs to coastal facilities in the Americas. Jordan Aff., Ex. A ¶ 9. Defendants rejected the geographic limitation CLF offered and refused to provide any counteroffer.[5] *Id.* ¶¶ 14, 31.

Second, Defendants' mere assertions that the RFP's implications are voluminous, without describing the volume or the costs of search or production, is not sufficient to stand on a burden objection. *Black Love Resists in the Rust ex rel. Soto v. City of Buffalo*, 334 F.R.D. 23, 29 (W.D.N.Y. 2019) (holding failure to "quantif[y] that burden in terms of the number of documents

---

[5] CLF also notes that there is no geographic limitation for "best industry practice" in the Permit. *See* Permit, ECF 248-5 at 7, 18. If Defendants operate internationally and employ better practices to mitigate climate hazards at facilities outside of the United States, then those practices are relevant not only to the "best industry practice" inquiry but also to what "control measures . . . are technologically available" at the Terminal. *Id.* at 18. Defendants recognize this reality by applying lessons learned from all Shell group facilities globally. *See, e.g.*, ECF 149 at 20–22 (discussing examples); ECF 162 at 4, 20 (presenting best practices at Shell terminals around the globe in "comparison with industry" and citing a tank explosion at a Conoco Philips facility in "Oklahoma, USA" as evidence of a bad practice); ECF 163 at 2–9, 19 (describing incidents at terminals across the country and comparing outcome statistics between countries and regions).

subject to collection and review or 'the amount of time and manpower that would be reasonably required' to comply with the requests" is fatal) (citation omitted). In fact, Defendants have stated they "will not search for documents related" to the other facilities formulation, *e.g.*, Defs.' Revised Resps., Ex. G at 9–10, and confirmed that they have conducted neither new document searches nor searches within the documents already collected and loaded into their document management software. Jordan Aff., Ex. A ¶ 29; *see also infra* Part IV.B.4.

Third, Defendants have not disclosed in their objections why any particular RFP construction is overbroad or unduly burdensome, contrary to their obligations under the Rules. *See CapRate*, 2018 WL 4378167, at *2 ("[F]acts that demonstrate[] the burdensomeness or excessive cost of the discovery request . . . should [be] disclosed . . . in the objection") (citation omitted); *Integ. Struct. Corp.*, 2022 WL 16786747, at *2 (requiring objections to relate "to the specific document requests at issue"). CLF's Revised RFPs 9, 10, 17, and 26 seek "all documents" concerning specific relevant reports, design standards, and assessments. CLF's Revised RFPs, 24, 25, and 48 seek specific types of policy documents applicable to the other facilities, and CLF's Revised RFPs 23, 27, 28, and 64 seek "documents sufficient to show" actions or changes to policies based on climate-related incidents. While each Revised RFP seeks different types of documents and some are significantly constrained in time to a single event, Defendants do not tailor their explanation of burden in any meaningful way to the construction of the request. This is further evidenced by Defendants' identical boilerplate burden objections and responses to Revised RFPs 12 and 63.

Defendants' failure to conduct searches to support their objections and failure to offer any evidence of the burden as to any particular RFP not only constitutes a failure to substantiate their burden objections under Rule 34(b)(2)(B), but also a violation of the certification requirement in

17

Rule 26(g), which requires all discovery responses and objections to be "formed after a reasonable

inquiry." Fed. R. Civ. P. 26(g)(1). As one district court found,

> It would be difficult to dispute the notion that the very act of making such boilerplate objections is *prima facie* evidence of a Rule 26(g) violation, because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver.

*Mancia*, 253 F.R.D. at 359 (listing cases).

Finally, Defendants have not proposed non-overbroad constructions of the Revised RFPs.

Instead, when asked, Defendants have stated that providing information about even one facility

other than the Terminal would be unduly burdensome. Jordan Aff., Ex. A ¶¶ 14, 31. But an

objecting party has an obligation make productions or permit inspection based on the non-

objectionable formulation of the request. *See* Fed. R. Civ. P. 34(b)(2)(C); *CapRate*, 2018 WL

4378167, at *2; *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 560 (S.D.N.Y. 2012) (Although

"Plaintiffs' discovery requests 7–9 are clearly overbroad . . . those requests also contained

documents that are relevant to plaintiffs' claims. BOC was obligated under the Federal Rules to

permit inspection of such documents."); *Integ. Struct. Corp.*, 2022 WL 16786747, at *1; *U.S.

Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 61 F. Supp. 3d 1, 7 (D.D.C.

2014) (an objecting party is "required to produce documents for those parts of the RFP to which

they did not object"); Fed. R. Civ. P. 26(b)(5), advisory committee's note to 1993 amendment ("If

a broad discovery request is made . . . and the responding party believes in good faith that the

production of [some documents] would be unduly burdensome, it should make its objection to the

breadth of the request and . . . produce the [unobjectionable] documents.").

CLF has itself searched for documents and indications that there are other facilities that

Defendants have assessed and adapted to climate change and could thus be offered by Defendants

as a non-objectionable response. Not only are there the examples in CLF's Amended Complaint, which are folded into its Revised RFPs (Sewaren, Deer Park, Houston), but Shell plc's 2021 20-F SEC disclosure gives an example of a facility where climate risks were assessed and the facility's tanks and building were moved and elevated to adapt to sea level rise concerns. *See* Shell plc, Form 20-F Annual Report (Mar. 22, 2022)[6] ("SEC Disclosure"), Ex. K at 9. Shell plc's SEC Disclosure makes clear there are specific groups within the Shell group that analyze climate-related hazards to Defendants' coastal facilities—Metocean engineering experts. *Id.* at 7; *see also* Metocean Design Engineering Specification, ECF 153 at 4–6, 17; Metocean DEP Informative, ECF 154 at 5–7, 18. The SEC Disclosure also makes clear that those analyses are used within the risk assessment framework CLF used to formulate its requests. SEC Disclosures, Ex. K at 7–9 (discussing use of the "Shell Control Framework" to identify and assess climate-related risks with "mandatory standards and manuals").

Shell identified a risk, evaluated it, and decided to take action to adapt to climate risks identified through its risk assessment systems at the Port Fourchon facility in Louisiana, where the infrastructure was physically relocated and elevated to adapt to sea level rise. SEC Disclosures, Ex. K at 9. Shell employees authored a paper detailing this analysis for the Port Fourchon facility in 2021. *See* Sequeiros & Jaramillo, *Extreme Coastal Inundation Under Different Climate Scenarios: Fourchon Junction Case Study*, Offshore Tech. Conf. (Aug. 16, 2021), Ex. L. The paper describes climate-modeling, scenarios assessment, and the determination that the facility location "is expected to be permanently under water by the end of the lifespan." *Id.* at 26.

---

[6] Though this document is in Defendants' possession, custody, and control, Defendants did not produce SEC filings. This document was located, reviewed, and produced in this matter by CLF to Defendants. Jordan Aff., Ex. A ¶ 46.

The 2021 Port Fourchon paper—which CLF had to pay for and which Defendants have not produced, Jordan Aff., Ex. A ¶ 47—is responsive to at Revised RFPs 9, 10, and 26, at minimum. *See* RFP Revisions Table, Ex. E at 1–2, 6. Beyond this paper, Defendants are also likely to have other documents about Port Fourchon that are responsive to CLF's Revised RFPs, such as the HEMP process RAM assessments for Port Fourchon (Revised RFPs 9, 10); documents detailing the investment approval for construction projects to adapt the facility to identified climate risks (Revised RFPs 10, 23); and documents sufficient to show the design and construction modifications of berms, stormwater draining, and tanks (Revised RFP 23). Furthermore, the Shell Metocean team appears to have created an adaptation plan for Port Fourchon, which is responsive to Revised RFP 17(c). Defendants should have produced these documents.

Defendants have not attempted to determine how many facilities might be implicated by each of the other facilities Revised RFPs, but importantly, their obligation when making objections is not to hide behind hypothetical scenarios of voluminous searches but to come up with a non-overbroad construction of the RFP they can respond to. *See* Fed. R. Civ. P. 34(b)(2)(C); *CapRate*, 2018 WL 4378167, at *2; *Wultz*, 910 F. Supp. 2d at 560. That Defendants could not come up with one single facility they would find unburdensome to respond to a "documents sufficient to show" RFP should be evidence enough that Defendants have not met their obligation to make their burden objections. Because Defendants made no attempt to find a non-objectionable construction to RFPs 12 and 63, which specifically enumerate facilities, and could not provide one or a few facilities, such as Port Fourchon, in response to any of the Revised RFPs 9, 10, 17, 23, 24, 25, 26, 27, 28, 48, and 64, the Court should overrule Defendants' burden objections. Furthermore, the Court should impose sanctions under Rule 26(g)(3) for Defendants' repeated use of unsubstantiated and boilerplate burden objections. *See Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 189

(N.D. Iowa 2017) ("'[B]oilerplate' objections . . . delay and imped[e] discovery . . . . [T]he impropriety of employing such frivolous objections in every single discovery response also demonstrates the parties' obstructionist attitude toward discovery and would further confirm suspicions that the responses were interposed for an improper purpose") (citation omitted).

### 4.    *Defendants' have not substantiated their burden objections regarding documents already collected and reviewed by Defendants.*

In addition to Defendants' refusal to search for new documents related to its other facilities based on burden objections, Defendants refuse to review already collected and reviewed documents, or their relevance redactions on over 16,000 already produced documents, to locate information responsive to CLF's Revised RFPs. Defendants' burden is fundamentally different when it comes to reviewing already collected documents, much less portions of already reviewed and produced documents. Defendants have an obligation to "clearly set forth the specifics of the objection and how that objection relates to the documents being demanded." *Hannah*, 2014 WL 2515221, at *3 (quoting *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005)). Defendants have not met this burden because they failed to account for the significantly lessened burdens of already collected and reviewed documents and already reviewed portions of already produced documents.

As the Court knows from recent briefing on this issue, Defendants withheld information concerning other facilities from prior productions based on their relevance objections. *See* Prather Decl., ECF 177-1 ¶ 24. Recognizing that Defendants' redactions were generally impermissible, the Court ordered that CLF could identify up to 50 documents that contained relevance redactions, and Defendants shall produce those documents unless objecting on privilege grounds. ECF 277 at 49–50. CLF identified 50 documents, but Defendants only produced 36 documents in unredacted form and decided to withhold the other 14, not on privilege grounds. *See* Jordan Aff. Ex. A ¶ 44.

21

CLF did not, and does not, agree that Defendants had any grounds to withhold those 14 documents other than privilege concerns and views Defendants' decision to withhold those documents as a violation of the Court's Discovery Order. *Id.* ¶ 45. However, the Parties were able to resolve nearly all of their other disputes regarding ECF 277 compliance and CLF chose not to file a motion for Rule 37(b)(2)(A) sanctions to enforce[7] the Court's Discovery Order just on those 14 documents out of respect for the Court's resources. *Id*.

CLF has reviewed the information Defendants originally redacted from the 36 documents Defendants produced, and those few documents show that Defendants redacted highly relevant information about other terminals that would be responsive to CLF's other facilities Revised RFPs. Based on this information, it is clear Defendants are currently withholding relevant and responsive information amongst the 16,000 other redacted documents. For example, an email chain of five emails with a subject line of "REVIEW: Hurricane Messaging" demonstrates that Defendants redacted highly relevant information about the changes to Defendants' policies applicable to all U.S. East terminals, including the New Haven Terminal, because of the loss of containment event at the Sewaren Terminal during Superstorm Sandy. *See* Email (May 7, 2020), Ex. M (comparison of redacted and unredacted versions). The email chain is between employees that oversee environmental compliance and management at Defendants' U.S. East Coast oil terminals, including the New Haven Terminal. *Id.* The original redactions hid the four substantive emails in the chain and withheld discussions between the employees responsible for U.S. East Coast terminals on messaging, operational, and engineering issues including the safe levels of oil

---

[7] CLF notes that while it elected not to file an additional motion regarding ECF 277, the Court at all times has authority to issue sanctions *sua sponte* over violations of its own discovery orders. *See, e.g.*, *In re 60 East 80th St. Equities, Inc.*, 218 F.3d 109, 117–18 (2d Cir. 2000) (discussing the court's inherent power to issue sanctions *sua sponte*); *Kulynch v. Delta Mach., Inc.*, No. 05-cv-345 (JG) (RER), 2006 WL 2844229, at *1–2 (E.D.N.Y. Oct. 2, 2006) (discussing the propriety of issuing Rule 37 sanctions *sua sponte* for failure to make ordered productions).

products in tanks immediately prior to a hurricane. *Id.* The discussions pertain to an attachment to the original email, which Defendants have not produced. Jordan Aff., Ex. A ¶ 48. One of the emails from Brian Evans states that the "safe levels" of product, mentioned in the attachment, refers to the volume required "to prevent a 'tank float' incident in the event that the tank farm becomes flooded. This actually happened at our Sewaren terminal in Hurricane Sandy. The minimum volume is calculated by our Engineering team." Ex. M at 1. Thus, the information redacted from these emails is directly responsive to Revised RFPs 27 and 64 and should never have been redacted. In fact, Defendants do not dispute that this document is responsive, as Defendants' own metadata overlay identified this document as responsive to the original RFP 27.

In the meet and confer process on the Revised RFPs, CLF requested that Defendants review the information behind redactions for production in response to the Revised RFPs. Jordan Email (Oct. 27, 2023), Ex. P at 15–16. Defendants refused to conduct these lower-burden reviews on the grounds that the Court ruled against CLF on Defendants' redactions and thus there was no basis for Defendants to re-review the redactions for responsiveness. Jordan Aff., Ex. A ¶ 21. Defendants took the position that they would not review any redactions regardless of whether there was relevant and responsive information behind the redactions.

The Court should rule that Defendants have failed to demonstrate that the requested discovery on other facilities is unduly burdensome and disproportionate to the needs of the case and compel Defendants to re-review documents it has already collected as well as documents it produced with relevance redactions for information responsive to CLF's Revised RFPs 9, 10, 12, 17, 23, 24, 25, 26, 27, 28, 48, 63, and 64.

## C.    Defendants Are Withholding Documents From Prior to 2017 Based on Their Preferred Determination of Unresolved Merits Issues.

Defendants have objected to 36 of CLF's 41 Revised RFPs on relevance grounds, asserting that any information which Defendants believe relates only to CLF's Clean Water Act claims is not relevant if it pre-dates 2017. *See* Table of Defs.' Objections, Ex. H (objecting as to time for Revised RFPs 6, 7, 9–12, 17, 18, 20, 23–29, 31–34, 36, 38–41, 43–47, 49, 51, 53, 54, 63, and 64). Defendants have also objected to these requests on proportionality grounds for the same reason, citing this Court's Order on CLF's prior Motion to Compel. *E.g.*, Defs.' Revised Resps., Ex. G at 31 (objecting to RFP 34 and citing ECF 277 at 42). In CLF's responses to Defendants' redlines on October 3, 2023, CLF offered detailed reasoning opposing Defendants' assertions regarding the relevant time for Revised RFPs 12, 18, 45, 46, 47, 48, 49, 51, 52, 53, 54.[8] *See* CLF Resps. to Defs.' Redlines (Oct. 3, 2023), Ex. D at 15, 24, 45–53, 60.[9] CLF noted, for example, that the Court's Discovery Order did not hold that *all* pre-2017 information was irrelevant or unduly burdensome. *See* ECF 277 at 28. The Court also affirmed this in the hearing on September 7, 2023: "I don't think that this starts from 2017 going forward on every request. . . . I wouldn't suggest that you guys [Defendants] dig your heels in too much in the negotiations about January 1st, 2017 as a hard stop on any production obligations." ECF 284 at 30:3–5, 30:18–20. Nonetheless, Defendants refused to withdraw any of their time objections.

CLF has asserted in its Amended Complaint that Defendants Shell USA, Shell Petroleum, Equilon Enterprises, and Triton Terminaling are liable for CWA (and RCRA) violations at the

---

[8] Defendants did not propose to limit Revised RFPs 6, 7, 9, 10, 17, 23, 29, 34, 36, 38, 39, 40, 41, 43, or 44 in their redlines but objected to those RFPs in their Revised Responses. *Compare* CLF Resps. to Defs.' Redlines (Oct. 3, 2023), Ex. D, *with* Defs.' Revised Resps., Ex. G.

[9] Because of space limitations, *see* D. Conn. Loc. R. Civ. P. 7(a)(5), CLF has provided its full responses in Exhibit D and the table in Exhibit E but will not repeat every response and objection in this Motion.

Terminal dating back to the adoption of the current Permit in 2011, when only Defendant Motiva was the registered permittee and Terminal owner. *See* ECF 47 ¶¶ 34–47, 51, 55–56, 67, 108–09, 175, 334–61, 389–502; *see also* ECF 149 at 32–33 (arguing the same). CLF has pled that the non-Motiva Defendants are liable as operators of the Terminal due to their ownership of Motiva (which was a joint venture of Shell and Suadi Aramco) and their employees' participation in the operations of the Terminal during the Motiva ownership period. *See* ECF 47 ¶¶ 35–37; *see also* ECF 181 at 29 & n.12 (reviewing evidence). Defendants' organizational charts also show that Defendant Equilon directly owned Motiva Company, and Defendants Shell USA and Shell Petroleum indirectly owned 50% of Defendant Motiva as part of a joint venture during the Motiva ownership period, *see, e.g.*, Motiva Organization Chart, Ex. N; 2017 Shell Organization Chart, Ex. M, and Shell plc's 2020 Annual Report notes that mandatory policies apply to joint ventures, *see* SEC Disclosures, Ex. K at 10. CLF is seeking penalties from Defendants for these "ongoing and continuous" violations from 2011 to the present in their roles as owners and operators of the Terminal. *See* ECF 47 ¶¶ 395, 404, 414, 420, 426, 431, 436, 442, 448, 457, 463; *id.* at 99 (seeking "civil penalties of up to $55,800 per day per violation").

Whether Defendants are liable for CWA violations during the Motiva ownership period, and whether Defendants are liable for penalties for ongoing violations since 2011, are disputed merits issues that have never been resolved by this Court. To accept Defendants' objections that pre-2017 information regarding stormwater or the CWA are irrelevant, this Court would have to resolve one of two disputed issues in Defendants' favor. Either this Court would have to hold (a) Shell USA, Shell Petroleum, Equilon Enterprises, and Triton Terminaling were not operators of the Terminal when Motiva owned the Terminal, pursuant to the test articulated in *United States v. Bestfoods*, or (b) that no operator can be liable for ongoing violations of a CWA permit that pre-

date the most recent permit registration, which in this case was in 2017. Resolution of such merits

disputes in a discovery motion is anathema to the Federal Rules of Civil Procedure and to CLF's

right to obtain information that may lead to the discovery of admissible evidence relevant to its

claims or to Defendants' defenses. *See Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507,

511–12 (D. Nev. 2020) (rejecting argument that party may refuse to produce discovery "based on

merits-based arguments" regarding claims or defenses, because such an approach "would instead

have the Court interpret the [Rule 26] standard as being 'matter that is relevant to any party's

legally meritorious claim or defense,' which is simply not how the rule is written"); *Conn. Gen.

Life Ins. Co. v. BioHealth Lab'ys, Inc.*, No. 3:19-cv-1324 (JCH), 2023 WL 5567410, at *5 (D.

Conn. Apr. 12, 2023) ("Cigna seeks to terminate the Labs' discovery rights simply because Cigna

says it's not relevant. That argument has been rejected by this court.") (citation omitted).

This Court has already held that CLF has plausibly alleged its CWA claims against the so-

called "non-owner/operators," *see Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d

416, 442 (D. Conn. 2022) (reviewing the *Bestfoods* test and stating "'corporate control is a fact-

specific inquiry'"), and CLF is therefore entitled to discovery as to whether Defendants Shell USA,

Shell Petroleum, Equilon Enterprises, and Triton Terminaling operated the Terminal from 2011–

2017 by exercising control over aspects of stormwater or emergency management. For example,

Defendants are refusing to produce documents pre-dating 2017 in response to Revised RFP 45,

which seeks "Policies or presentations sufficient to show employee training for stormwater

discharge monitoring at the Terminal, including any updates, revisions, or changes thereto from

2011 and the present." RFP Revisions Table, Ex. E at 9. If any of the non-Motiva Defendants have

such trainings or policies, it would support CLF's contention that those Defendants were directly

involved in CWA operations prior to the transfer. *See also id.* at 10–11 (Revised RFPs 46, 47, 48,

26

51, 53, among others, seek similar information). Such discovery may be in the possession of either these Defendants or Defendant Motiva, who is not subject to CLF's CWA claims but is a fact witness as to Terminal operations prior to transfer of the Terminal's registration in 2017. Because Defendants have refused to produce information relating to stormwater management prior to 2017, CLF is unable to effectively rebut Defendants' position that Motiva was the operator pre-2017.

Similarly, because CLF has alleged that the Defendants have continuously violated the CWA as operators since the permit first went into effect, the transfer of the Terminal's registration should not serve to restrict the period of discovery. "Under the continuing violation doctrine, 'the limitations period for a continuing offense does not begin until the offense is complete.'" *Cornerstone Realty, Inc. v. Dresser Rand Co.*, 993 F. Supp. 107, 115 (D. Conn. 1998) (citation omitted). Courts have held that the five-year limitations period within 28 U.S.C. § 2462 does not bar parties from filing suit beyond the limitation period when the violative conduct is alleged to be ongoing. *See, e.g.*, *id.* at 117. Under this doctrine, if Defendants began violating the permit as soon as it went into effect in 2011, then they may be liable for civil penalties for the *entirety* of the period of ongoing violations. Defendants have offered no legal basis for the proposition that transferring a permit's registration relieves those who were operating the facility *before and after* the transfer from liability, and to interpret the CWA in such a manner would undermine the remedial nature of the statute by allowing Defendants "to operate unlawfully and be immune from sanctions" by simply transferring the registration from Motiva to the other existing operators. *See id.* at 115 n.7; *see also Harmon Indus., Inc. v. Browner*, 19 F. Supp. 2d 988, 998 (W.D. Mo. 1998) (finding manufacturer in violation of RCRA for twenty-five years of continuing violations and noting that "[t]he regulations are not meant to reward long term repetitive violators of RCRA who escape getting caught"), *aff'd,* 191 F.3d 894 (8th Cir. 1999). "[I]t is not appropriate on a Motion

to Compel to cut off the [plaintiff's] discovery rights based on an arbitrary date of [Defendants'] choosing . . . ." *Conn. Gen. Life Ins. Co.*, 2023 WL 5567410, at *5.

Additionally, Defendants' temporal objections to Revised RFPs 7, 27, 38, 46, 49, and 53 incorrectly assert, without any justification, that information sought in the Revised RFP is relevant *only* to the CWA claims. For example, Revised RFP 46 seeks "Policies or presentations sufficient to show employee training for preventing or controlling the discharge or **release of pollutants** from the Terminal during or following wet weather events, including but not limited to hurricanes, storms, or floods." *See* RFP Revisions Table, Ex. E at 10 (emphasis added). Defendants have asserted that only information post-dating the year the CWA permit registration transferred to Defendant Equilon is relevant, but CLF's RCRA claim *also* alleges that Defendants' "failure to address the known imminent risks associated with severe precipitation, extreme weather, storm surge, and sea level rise, *see generally* Section IV.A, will result in release of these [petroleum] products when these foreseeable events occur," which CLF's alleges constitute hazardous waste in violation of RCRA.[10] ECF 47 ¶ 506. Thus, Defendants have impermissibly narrowed the temporal scope of six Revised RFPs because they are ignoring CLF's assertions that the exact same facts and conditions at the Terminal can constitute *both* a CWA violation and a RCRA violation. When CLF raised this issue to Defendants, Defendants continued to maintain their assertions regarding a distinction between RCRA and CWA information where the facts underlying the claims are identical. Papetti Email (Nov. 13, 2023), Ex. P at 6–7. Accordingly, the Court should overrule Defendants' temporal objections to Revised RFPs 7, 27, 38, 46, 49, and 53.

Finally, as to Defendants' undue burden objections, Defendants have not substantiated these in any way or offered specific details as to why producing pre-2017 documents for any given

---

[10] Defendants have admitted that 2011 is the temporal cutoff for RCRA information. *See* ECF 277 at 27.

request would be unduly burdensome. *See* Defs.' Revised Resps., Ex. G. For substantially the same reasons as detailed in Parts IV.B.3–4, this Court should find that Defendants waived their undue burden and proportionality arguments.

### D.    Defendants' Additional Objections Are Without Merit.

In addition to the relevance and burden objections addressed in prior sections, Defendants objected to the Revised RFPs on several additional grounds, each without merit.[11] First, Defendants refused to produce documents in response to Revised RFP 52 on the grounds that "this is not a Revised Request." Defs.' Revised Resps., Ex. G at 43. CLF raised this issue with Defendants, but they did not change their position. *See* Jordan Email (Oct. 27), Ex. P at 15; Defs.' Revised Resps., Ex. G at 43. Defendants' objection is predicated on an incorrect assertion: CLF *did* revise this request by replacing "relating to" with "concerning" and defining concerning in the Revised RFPs with a narrower construction than relating to. RFP Revisions Table, Ex. E at 11. Because Defendants asserted no other objections to Revised RFP 52, this Court should overrule their objection and order Defendants to comply.

Second, Defendants objected to Revised RFPs 12 and 20 as unduly burdensome because "the Request seeks information that is publicly available and therefore equally available to Plaintiff." *See* Defs.' Revised Resps., Ex. G at 16, 20. First, this is not a valid objection to a

---

[11] Defendants objected to Revised RFPs 6, 11, 17, 18, 24, 26, 27, 28, 31, 33, 34, 36, 44, 63, and 64 on several grounds but for some objections (including vagueness, ambiguity, failure to revise the RFP, and relevance) Defendants' responses do not indicate that they constrained their searches or withheld documents on the basis of these objections. *See, e.g.*, Table of Defs.' Objections, Ex. H (showing objections to Revised RFPs 11, 24, 26, 27, 28, 31, 33, 63, and 64 for time period but not stating documents were withheld on that basis); Defs.' Revised Resps., Ex. G at 32 (objecting that "pollution" is vague and ambiguous but not withholding documents on this basis). Where Defendants raised an objection but did not expressly withhold any information on the basis of the objection, the objection has no legal import. *See In re Priceline.com*, 233 F.R.D. at 86 (noting where objections are posed but no documents are withheld, the court has no controversy to decide). Indeed, many courts hold that such responses constitute waiver of the objections under Rule 34, which requires the responding party to "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C); *see, e.g.*, *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 341 F.R.D. 291, 302 (D. Kan. 2022).

discovery request. *See, e.g.*, *Milner v. City of Bristol*, No. 3:18-cv-1104 (JAM), 2020 WL 6049261, at *3 (D. Conn. Oct. 13, 2020) (rejecting objection and citing cases). Even after CLF raised this issue with Defendants, *see* CLF Resps. to Defs.' Redlines (Oct. 3, 2023), Ex. D at 60; Jordan Email (Oct. 27, 2023), Ex. P at 15, Defendants refused to withdraw the objection, *see* Defs.' Revised Resps., Ex. G at 16, 20. Second, as CLF stated in the Revised RFPs, a purpose of these requests is to establish Defendants' possession, custody, or control of the information, *see* CLF Resps. to Defs.' Redlines (Oct. 3, 2023), Ex. D at nn.4 & 5, which directly bears on Defendants' *knowledge* of the contents of the requested documents, *see* ECF 277 at 2 ("The Defendants' . . . knowledge of certain climate change risks, are relevant in the Rule 26(b)(1) sense to claims asserted in CLF's Amended Complaint."). Thus, CLF offered that Defendants could provide a stipulation in lieu of production to alleviate any alleged burden, *see* CLF Resps. to Defs.' Redlines (Oct. 3, 2023), Ex. D at nn.4 & 5, but Defendants objected to that alternative as well, *see* Defs.' Revised Resps., Ex. G at 16, 20. Thus, this Court should overrule Defendants' objections to Revised RFPs 12 and 20.

### E.    Defendants Have Refused to Conduct New Searches, or Make Productions on Non-Objectionable Portions of Requests, in Violation of Rules 26 and 34.

CLF issued Revised RFPs that had been narrowed in accordance with the Court's Discovery Order. *See* RFP Revisions Table, Ex. E. During the five weeks Defendants had to respond to the Revised RFPs, CLF further narrowed its requests. Jordan Aff., Ex. A ¶¶ 9, 11. But when Defendants responded to the Revised RFPs, they produced no documents and confirmed they ran no searches to collect documents or understand the potential burden posed by the Revised RFPs. *Id.* ¶¶ 13, 29. To date, Defendants have not produced any documents responsive to either the original or narrowed versions of RFPs 9, 10, 11, 12, 17, 20, 24, 25, 26, 28, and 64. *Id.* ¶ 33. Defendants have also failed to produce responsive documents CLF has identified *by name*. *See* Jordan Aff., Ex. A ¶¶ 51–55. Defendants' failure to craft even one search based on a single Revised

RFP, or to search for documents CLF has requested by name, strains any conception of the reasonable inquiry required by Rule 26(g)(1). Furthermore, Defendants' failure to tailor their objections to only those aspects of the requests for which they have a specified burden, while permitting inspection or production of the remainder, is a violation of Rules 34(b)(2)(B)–(C). Because of these infirmities, the Court should overrule all of Defendants' unsupported burden and proportionality objections to Revised RFPs 6, 7, 9, 10–12, 17, 18, 20, 23–29, 31–34, 36, 38–49, 51, 53, 54, 63, and 64. In addition, the Court should order Defendants to produce documents where Defendants have produced nothing (Revised RFPs 9, 10, 11, 12, 17, 20, 24, 25, 26, 28, and 64) and where CLF requested responsive documents *by name* (Revised RFPs 6, 10, 11, 17(b)–(c), 24, 25, 27, 28, 48, and 64).

> ### 1. *Defendants' burden objections cannot be sustained because Defendants' have failed to conduct adequate searches or provide documents responsive to the unobjectionable part of the Revised RFPs.*

All of Defendants' objections and responses to the Revised RFPs are invalid because Defendants' inquiry for responsive documents was confined to a set of documents that had been collected based on a different set of requests. Jordan Aff., Ex. A ¶¶ 26, 35–40. Rule 26 requires a party to serve discovery responses only after conducting "a reasonable inquiry." Fed. R. Civ. P. 26(g)(1). The response to a request must either state the discovery "will be permitted as requested," or the response must "state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B). Defendants evaluated CLF's 41 Revised RFPs without running a single search for new documents based on the RFPs and without revising prior search terms based on the Revised RFPs. Jordan Aff., Ex. A ¶¶ 29, 36–40. Just as "having produced a large volume of documents already is not license to avoid providing proper and complete responses to an additional set of document requests," *Integ. Struct. Corp.*, 2022 WL 16786747, at *2, having searched for one set of RFPs should not be license to avoid searching for a different set of RFPs. *Cf. Black Love Resists,*

334 F.R.D. at 29 ("Although Defendants assert that it would be unduly burdensome for them to produce ESI because Plaintiffs' proposed search terms are incompatible with Defendants' email systems, they have not quantified that burden in terms of the number of documents subject to collection and review.").

Defendants created and filed three declarations describing their original collection of documents in this case: Papetti Declaration, ECF 128-5, Prather Declaration, ECF 177-1, and Contreras Declaration, ECF 177-7. Across these declarations, it appears that Defendants collected 1,747,411 documents, ECF 128-5 ¶ 2; ECF 177-7 ¶ 19, those documents were collected using 95 search terms, ECF 177-1 ¶ 13; ECF 177-7 ¶ 16, the list of search terms was provided to CLF on August 3, 2022,[12] ECF 177-1 ¶ 13, and the search terms were created "to identify responsive documents for RFP Nos. 8, 9, 10, 11, 24, 26, 27, 28, 31 (in part), 33, 36, 37, 38, 40, 42, 53, 54, 58, and 63," ECF 177-1 ¶ 13. Defendants filed the August 3, 2022 search term email as Tab 8 in a correspondence exhibit. *See* ECF 177-2 at 44–50. Defendants state the terms were "used to collect and review documents potentially responsive to CLF's First Set of Requests for Production," but the list "does not include terms that correspond to the Requests for which defendants maintain pending objections." *Id.* at 45.

The Discovery Order required that Defendants identify which produced documents were responsive to each of the original RFPs. ECF 277 at 50. That information showed that Defendants' prior searches and relevance reviews had only located 4,985 responsive documents from a collection of 1,747,411 documents. Jordan Aff., Ex. A ¶ 33. Upon learning Defendants were "in the process of collecting and reviewing more recent documents as part of a supplemental production," CLF requested joint creation of search terms for the Revised RFPs due to the apparent

---

[12] The affidavit says 2021, but this is apparently a typo, as the email exhibit, ECF 177-2 at 45 is dated August 3, 2022.

numerical overbreadth of their prior collections. *Id.* ¶ 36. CLF asked for confirmation that document collections were using the search terms Defendants previously chose and disclosed to CLF on August 3, 2022 and explained concerns with the unmodified use of this list. *Id.*

CLF repeatedly asked Defendants, over the course of two months, how past and current document collections were being collected, and Defendants revised their positions multiple times. Defendants first revision acknowledged that "[t]he recent document collection was conducted using the same search terms Defendants previously used for the original document productions," but also "used additional search terms derived from the language of the RFPs to which Defendants indicated they would provide documents . . . [t]hese search terms were agreed to in connection with the Providence litigation." Jordan Aff., Ex. A ¶ 37. CLF noted "that additional (unidentified) search terms were chosen creates further confusion and contradicts Defendants' prior commitments to CLF. *E.g.*, ECF 84-8 at 1." *Id.*

In a meet and confer on November 3, 2023, Defendants confirmed the supplemental document collection occurred mid-summer before the Revised RFPs were served. *Id.* ¶ 38. CLF requested confirmation that the "additional terms" came from a list emailed in the Rhode Island matter on March 3, 2022 (Prather Letter (Mar. 3, 2022), Ex. W), and CLF requested a final version of those terms (as adapted to the Connecticut matter). *Id.* ¶ 39. Defendants confirmed that no copy of the final terms had been previously provided and agreed to provide a copy. *Id.*

On November 13, 2023, Defendants provided "a few clarifications with CLF's summary" of the November 3 meet and confer, noting: "Defendants' documents collections" "used the search terms from the Providence matter," "the August 2022 climate change terms, and search terms derived from CLF's Second Set of RFPs." Jordan Aff., Ex. A ¶ 40. In a meet and confer on November 14, Defendants confirmed these three sets of search terms had been used to collect the

~1.7 million documents described in their prior declarations. *Id.*; *but see* ECF 128-5 ¶ 2 (describing collection of 1,747,411 documents "in response to [CLF's] First Set of Requests for Production"); ECF 177-1 ¶ 13 (listing 19 RFPs and stating "[t]he search term list included 95 terms"); ECF 177-7 ¶¶ 16–19 (stating documents collected with 95 search terms). As of this motion, Defendants have not provided final copies of the search terms used. Jordan Aff., Ex. A ¶ 41.

Regardless of whether Defendants' original collection of 1,747,411 documents resulted from only the 95 search terms based on 19 of CLF's original RFPs listed in ECF 177-1 ¶ 13, or resulted from those *and* two other sets of terms from other RFPs not listed in the declarations, there can be no dispute that Defendants have never created search terms based on the Revised RFPs. Thus, Defendants objected to and responded to the Revised RFPs without any specific knowledge of the number of documents implicated by the requests or the hours or dollars required to review responsive documents. The Court should rule that all of Defendants' objections and responses have failed to meet the basic requirements of Rule 34(b)(2)(B) and (b)(2)(C) and that their responses were not made after a reasonable inquiry as required by Rule 26(g).

### 2. Defendants have not substantiated their burden objections for documents CLF specifically requested.

As the proponent of the discovery request at issue, CLF is not required to respond to Defendants' undue burden objections at this stage. *See Alberty*, 343 F.R.D. at 6. But where Defendants have failed to "demonstrat[e] specifically" how each of CLF's objected-to requests are "overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden," *Komondy*, 2015 WL 917867, at *3 (internal quotation marks omitted), in response to CLF's requests for specific policy documents, engineering standards, and derivative checklists and agreements, this Court should overrule Defendants' claims that these specific documents are "disproportionate in scope to CLF's requests." *See* Prather Letter, Ex. Y at 17.

For example, CLF has requested Shell's HSSE&SP Control Framework, the overarching policy framework of mandatory risk standards and manuals referenced by Defendants in Interrogatories 9 and 14. *See supra* in Part IV.B.1; Letter (Oct. 5, 2023), Ex. Y at 6. The framework is responsive to Revised RFPs 24 and 46, *see* RFP Revisions Table, Ex. E at 5, 10, but Defendants have produced only excerpts, claiming these are "the responsive portions." Letter (Oct. 11, 2023), Ex. Y at 18. But the produced portions of the framework are replete with cross-references to other manuals and standards that have not been produced and thus remain incomplete. *See, e.g.*, Ex. Z (referencing "Impact Assessment Manual Section," which was not provided).

CLF has also repeatedly requested—since at least February 2, 2023—individual policy and contract documents that are referenced in produced documents, including:

- the complete Terminal Operations Manual[13];

- Joint venture agreements regarding the Terminal between SOPC Holdings East LLC and Saudi Refining, Inc.;

- the agreement governing SOPC Holding East LLC's "separation" of interest in Defendant Motiva;

- the Asset Integrity Process Safety Manual;

- all versions of Metocean DEPs from 2011 to present[14];

- Design Engineering Manuals (DEM)-1, and all manuals that qualify under DEM-1;

- Business Assurance Letters for the Terminal and other Shell group terminals;

- corporate guidance for the Business Assurance Letters;

- Learning from Incidents guidance; and

- a list of eight financial and management decision-making policies, guides, tools, and checklists referenced in Defendants' Investment Management Guide, which include the

---

[13] Defendants have only produced some chapters from this Manual. Jordan Aff., Ex. A ¶ 53.

[14] CLF has received a draft version of the Metocean DEP Specification from September 2017 (ECF 153), which Defendants claim was inadvertently produced, *see* St. Pierre Aff., ECF 149-1 ¶ 55; Defs.' Br., ECF 193 at 19 n.8.

> Investment Proposal Checklist; Opportunity Realization Standards, Opportunity Delivery Manual, Pre-Final Investment Decision Guidelines, Routing Matrix, Manual of Authorities[15] tool, Shell Joint Venture website, and Downstream Joint Venture website, *see* Shell's Investment Management Guide, ECF 231 at 3–7, 10, 12, 16, 19–21, 26.

Jordan Email (Sept. 2, 2023), ECF 285-1 at 10; Jordan Letter (Oct. 5, 2023), Ex. Y at 4–6. Defendants previously stated they were withholding these documents because they "are the subject of Defendants' ongoing objections regarding the lack of relevance and disproportionate scope of CLF's requests." Prather Email (Feb. 2, 2023), ECF 285-1 at 11. This Court ruled that Shell plc policies may be relevant, ECF 277 at 32–33, and CLF understands that these specific documents would inform and constrain decisions around engineering, operations, spending, and risk assessment at the Terminal. *See* CLF Br., ECF 246-1 at 15–19 (detailing several of these policies and their relevance to CLF's claims). Defendants also cannot assert a search for 17 documents is burdensome considering CLF has identified the requested documents by name. And yet, Defendants have not produced these documents, which are responsive to at least Revised RFPs 6, 10, 11, 17(b)–(c), 24, and 25, and, depending on their contents, may also be responsive to Revised RFPs 27, 28, 48, and 64. *See* Table of Revised RFPs, Ex. E; Email, ECF 285-1 at 13 (identifying RFPs the documents are responsive to).

Because CLF has plausibly pled operator liability against all non-Motiva Defendants, where CLF alleged Shell plc's policies and procedures are binding on all companies in the Shell group, *see Conservation L. Found.*, 628 F. Supp. 3d at 442; *see also* ECF 277 at 32–33, this Court should overrule Defendants' burden objections where they have refused to produce documents requested by name, as there is no undue burden searching for a single named document.

---

[15] The Manual of Authorities is requested by name in Revised RFP 6. *See* RFP Revisions Table, Ex. E at 1.

**F.**     **Defendants Violated Rule 34(b)(2)(B) by Failing to Produce Documents on the
Date They Agreed to and Failing to Provide a Date Certain for Production.**

Defendants were required to produce documents "no later than the time . . . specified in the
request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B).
Defendants agreed to produce documents on the same date they were required to provide responses
to CLF's Revised RFPs, originally October 5, 2023. *See* Joint Report, ECF 285 at 5 ("Defendants
Respond to Revised Requests / Produce Documents"). CLF agreed to "a one-week extension to
respond and produce documents" and, pursuant to that consent, this Court extended Defendants'
deadline to October 12, 2023. Jordan Aff., Ex. A ¶ 12; ECFs 295, 296. Defendants' revised
responses to the Revised RFPs state that, for numerous RFPs, "Defendants will produce
responsive, non-privileged documents in their possession, custody, and control." *E.g.*, Defs.' Initial
Resps., Ex. F at 31–32 (responding to Revised RFP 34). In violation of both their commitments to
CLF and this Court, as well as the Federal Rules, Defendants did not produce documents on the
consented-to deadline, nor did Defendants' responses specify a time for production.

"The point of these requirements is not to create procedural hurdles. Rather, it is to force
parties to be transparent about discovery." *CapRate*, 2018 WL 4378167, at *2. Defendants have
not been transparent about their discovery obligations, and indeed, did not tell CLF that they
intended to produce any documents at all until October 27, 2023. Papetti Email (Oct. 27, 2023),
Ex. P at 16–17. Instead, CLF had to repeatedly ask Defendants why they did not comply with the
production deadline and when they intended to do so. *See* Jordan Aff., Ex. A ¶¶ 13, 16–17.

Defendants' gamesmanship has once again drawn out the discovery timetable, which the
Parties discussed in detail and Defendants agreed to meet expeditiously. *See, e.g.*, Joint Report,
ECF 285 at 5; ECF 285-1 at 24–26 (recounting Parties' conferences on scheduling). Defendants
have repeated this behavior of delays throughout this litigation, placing CLF in the difficult

position of meeting deadlines with incomplete information. *See, e.g.*, Mtn. to Stay, ECF 166 at 3–6 (detailing Defendants' history of productions after agreed-upon deadlines and relevant depositions). CLF requests that this Court hold Defendants accountable for their numerous and repeated violations of the Federal Rules by overruling Defendants' non-privilege[16] objections to Revised RFPs 6, 7, 9–12, 17, 18, 20, 23–29, 31–34, 36, 38–49, 51, 53, 54, 63, and 64 and entering an aggressive production schedule for Defendants (fourteen days). *See Conn. Gen. Life Ins. Co.*, 2023 WL 5567410, at *3 ("Failure to comply with these discovery rules is, by itself, a sufficient ground to overrule an objection to discovery.") (citation omitted).

## V.    CONCLUSION

For the forgoing reasons, CLF requests this Court overrule Defendants' objections to CLF's Revised RFPs and enter an Order compelling the following:

1.    Within 7 days of this Court's Order, Defendants must provide CLF with:

    a.    a list all coastal facilities owned or operated by any Defendant, that store or handle petroleum in bulk and that have a Risk Assessment Matrix (RAM) rating of yellow or red for category H-09.01 (weather conditions), or, upon a substantial showing of burden, a list of no fewer than 25 such facilities; and

    b.    a list of search terms designed tailored to the Revised RFPs.

2.    Within 5 days of receiving the lists of facilities and search terms, CLF will choose no more than 15 facilities for which Defendants must provide information responsive to Revised RFPs 9, 10, 17, 23, 24, 25, 26, 27, 28, 48, and 64, and add search terms to this list if necessary.

---

[16] Defendants objected to numerous Revised RFPs on the basis of privilege, *see* Table of Defs.' Objections, Ex. H, but as they have not produced any documents, they have also not provided a privilege log.

3.    Defendants must conduct a diligent search for documents using the new search terms and for the facilities selected by CLF and produce responsive documents to CLF within 14 days of receiving the final lists from CLF.

4.    Defendants must conduct a diligent search for documents responsive to Revised RFPs 12 and 63 and produce responsive documents to CLF within 14 days of this Court's Order.

5.    Defendants must review documents already collected documents and information behind relevance redactions for responsiveness to the Revised RFPs and produce responsive documents within 14 days of this Court's Order.

Finally, CLF further requests this Court impose appropriate sanctions under Fed. R. Civ. P. 26(g) and award CLF its reasonable expenses. *See* Fed. R. Civ. P. 37(a)(5)(A).

DATED: November 22, 2023                    Respectfully submitted,

*/s/ Alexandra M. Jordan*
Alexandra M. Jordan (ct31466)
Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1748
Tel: (203) 298-7692
E-mail: ajordan@clf.org
E-mail: amcmonigle@clf.org

Kenneth J. Rumelt (phv207130)*
Christopher M. Kilian (ct31122)
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
E-mail: krumelt@clf.org
E-mail: ckilian@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.

39

235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowely@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

40