# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

        v.

SHELL OIL COMPANY, EQUILON
ENTERPRISES LLC D/B/A SHELL OIL
PRODUCTS US, SHELL PETROLEUM, INC.,
TRITON TERMINALING LLC, and MOTIVA
ENTERPRISES LLC,

    *Defendants*.

Civil Action No. 3:21-cv-00933-JAM

**PLAINTIFF CONSERVATION LAW FOUNDATION'S REPLY TO DEFENDANTS'**
**<u>CORRECTED OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

EXHIBIT LIST ............................................................................................................ iv

I.    CLF PROPERLY NARROWED ITS REVISED REQUESTS ............................... 1

II.   DEFENDANTS' BURDEN OBJECTIONS REGARDING COASTAL
FACILITIES ARE UNTIMELY AND LACK SUPPORT. .................................. 3

    A.  CLF's requests seek information Judge Meyer held is relevant and necessary to
resolve a central factual dispute in this case. ..................................................... 3

    B.  Defendants' productions to date undermine their claim that identifying coastal
terminals with weather risks is unduly burdensome. ........................................... 4

    C.  Defendants' cost claim is not credible because the proposed searches ignore the
text of the requests and are multiplied by misleading, hypothetical terms. ........ 5

III.  PRE-2017 DOCUMENTS ARE RELEVANT AND NECESSARY TO CLF'S
CLAIMS AND DEFENDANTS HAVE MADE NO SHOWING OF BURDEN ........ 7

IV.  DEFENDANTS' SEARCHES WITHIN COLLECTED DOCUMENTS ARE
INSUFFICIENT AND NEW SEARCHES ARE NOT UNDULY BURDENSOME. ........... 9

V.   DEFENDANTS MUST REVIEW THEIR IMPERMISSIBLE REDACTIONS
WHERE THE INFORMATION IS RESPONSIVE TO NEW REQUESTS. ........ 9

VI.  CONCLUSION ................................................................................................. 10

**TABLE OF AUTHORITIES**

*Cases*

*D'Agostin v. Fitness Int'l, LLC*, No. 20-CV-01657, 2021 WL 1923786 (D. Conn. May 12, 2021) ............................................................................................................... 5

*Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126 (E.D.N.Y. 2021) ............................ 10

*Hobson v. Kemper Indep. Ins. Co.*, No. 20CV00812, 2021 WL 3486867 (D. Conn. Aug. 9, 2021) ................................................................................................... 1

*Malzberg v. New York Univ.*, No. 19-cv-10048, 2020 WL 3618962 (S.D.N.Y. July 2, 2020) ............................................................................................................... 1, 5

*ML Fashion, LLC v. Nobelle GW, LLC*, No. 21-cv-499, 2022 WL 19406186 (D. Conn. Feb. 15, 2022) ...................................................................................................... 3

*Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 822 F.2d 104 (D.C. Cir. 1987) .................................. 4

*Rules*

Fed. R. Civ. P. 26(g) ............................................................................................................... 3, 6

Fed. R. Civ. P. 34(a)(1) ............................................................................................................... 3

Fed. R. Civ. P. 34(b)(2)(B) ........................................................................................................... 3

Fed. R. Civ. P. 34(b)(2)(C) ........................................................................................................... 2

Fed. R. Civ. P. 54(b) .................................................................................................................. 10

**EXHIBIT LIST**

Exhibit A.    Affidavit of Alexandra Jordan

Exhibit B.    Compilation of HEMPs Produced by Defendants in Discovery*

Exhibit C.    Stammer Email (SOPUS_NHVN00170459) and attachment
              (SOPUS_NHVN00170460) (Aug. 28, 2018)*

Exhibit D.    Sharma Email (SOPUS_NHVN00033699) and attachment
              (SOPUS_NHVN00033700) (Jan. 1, 2019)*

Exhibit E.    Wilson Email (July 12, 2019) (SOPUS_NHVN00047398)*

Exhibit F.    Sullivan Email (Mar. 19, 2019) (SOPUS_NHVN00245331)*

Exhibit G.    Papetti Email (Dec. 12, 2023)

Exhibit H.    Excerpts from Deposition Transcript of Brian Evans (February 7, 2023)*

Exhibit I.    Emails on Confidential Exhibits (Dec. 18–22, 2023)


* Documents denoted with an asterisk are being filed under seal pursuant to this Court's
Protective Order (ECF 7)

Defendants' Corrected Response to CLF's Motion to Compel (ECF 325-1) relies on new information in declarations not provided to CLF in the Parties' months of negotiations and nevertheless fails to substantiate Defendants' burden objections. As an initial matter, Defendants did not respond to CLF's arguments regarding Revised RFPs 29, 31, 34, 39–40, 42–43, 45, 47, 52, and 54, or to CLF's arguments on Defendants' public documents and lack-of-revision objections, *see* ECF 309 at 35–36. Thus, the Court should overrule those objections. In this Reply, CLF addresses Defendants' arguments in turn, correcting the record on its revised requests, which CLF narrowed in conformance with this Court's Order (ECF 277); clarifying that CLF seeks discovery regarding 15 facilities (not 20 or 100, *see* ECF 325-1 at 6), which are easy to identify; and seeking a role for CLF to improve Defendants' inadequate search for responsive documents. For those reasons, as explained further below, CLF requests this Court grant its Motion.

## I.    CLF PROPERLY NARROWED ITS REVISED REQUESTS.

Defendants ask the Court to sustain their relevance objections to Revised RFPs 6, 9, 12, 17, 18, 20, 23, 25 and 33, yet only argue that Revised RFPs 6, 9, 11,[1] and 12 seek irrelevant information because they begin with "All Documents." *See* ECF 325-1 at 18–21. Many RFPs Defendants challenge, however, include no such language. *E.g.*, ECF 309-5 at 1, 5 (Revised RFPs 6 and 25 seek "[a]ll policies"; Revised RFP 20 seeks a copy of a Shell video and information "relied upon in creating the video"; and Revised RFP 23 seeks "[d]ocuments sufficient to show"). Nor is a request seeking "all documents" facially improper. *E.g.*, *Malzberg v. New York Univ.*, No. 19-cv-10048, 2020 WL 3618962, at *5 (S.D.N.Y. July 2, 2020). Instead, the request is judged by the relevance and tailoring of the words that *follow* "all documents." *E.g.*, *Hobson v. Kemper Indep. Ins. Co.*, No. 20CV00812, 2021 WL 3486867, at *4–7 (D. Conn. Aug. 9, 2021).

---

[1] Yet Defendants do not ask the Court to sustain their relevance objection to Revised RFP 11. ECF 325-1 at 21.

Defendants fail to show that the three requests they address, and seek relief on, seek irrelevant information. For Revised RFP 6, CLF followed the Court's guidance, ECF 277 at 45–47, by replacing "[a]ll Documents related to" with a request limited to *policies* on Defendants' control over and participation in Terminal operations. *See* ECF 309-5 at 1. These policies are relevant to Defendants' operator status, which CLF must prove under its CWA and RCRA claims. *See* ECF 277 at 28–33. CLF amended RFP 9 to seek "[a]ll Documents referring to the Terminal," or similar other facilities, that use six climate and weather terms (reduced from eleven). ECF 309-5 at 1. CLF replaced "related to" with "refer," which seeks documents "expressly referring" to a subject. *See* ECF 309-2 at 6. Documents responsive to this request are relevant to Counts 1–9 and 13, which allege Defendants know about severe weather risks to the Terminal and have failed to plan for such risks. *See* ECF 47 ¶¶ 389–448, 486–502. Finally, Revised RFP 12 seeks specific reports and "[a]ll Reports that Shell authored since 2011 concerning Climate Change impacts on the frequency or intensity" of several climate and weather events, including where the Terminal or four listed facilities fall within the report's geographic scope. ECF 309-5 at 3. CLF deleted "[a]ll Documents related to," offered to accept a statement of possession by Defendants rather than the specified reports, and narrowed the request based on authorship. *Id.* CLF thus narrowed the request to focus on Defendants' knowledge of climate risks, which is relevant, *see* ECF 277 at 34–38.

Even if these requests encompass some irrelevant material, the Federal Rules require that "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Defendants' choice to object to the requests, offer no counterproposal, and produce *no documents* responsive to Revised RFPs 9, 11, 12, 17, 20, and 25, is inexcusable. *See* ECF 309-6 at 8–24. If this Court finds the requests overbroad in some manner, the Court may grant CLF's Motion as to the part "reasonably tailored to seek relevant information." *ML Fashion, LLC*

*v. Nobelle GW, LLC*, No. 21-cv-499, 2022 WL 19406186, at *5–6 (D. Conn. Feb. 15, 2022).

## II.    DEFENDANTS' BURDEN OBJECTIONS REGARDING COASTAL FACILITIES ARE UNTIMELY AND LACK SUPPORT.

Revised RFPs 9, 10, 17(b), 23, 24, 25, 26, 27, 28, 48, and 64 seek information about how Defendants plan for and adapt to severe weather and climate change risks at facilities that are on the coast, store petroleum in bulk, and are at a moderate to high risk of damage or failure from weather events. Revised RFPs 12 and 63 seek information about only the Terminal and one to four other specified coastal fuel terminals in the United States. Despite the close nexus of this information to CLF's claims and the close fit between the Terminal and the facilities in CLF's requests, Defendants assert that the requests are overbroad, that searches for this information would cost $5 million, and that CLF already has the discovery it needs. ECF 325-1 at 21–33. These statements are incorrect, unsupported, and attempt to hide that Defendants have conducted no searches, do not know what burden is posed by these requests, and have violated Rules 26(g) and 34(b)(2)(B). *See* ECF 309 at 19–27; *accord* Jordan Aff., ECF 309-01 ¶¶ 8, 29.

### A.    CLF's requests seek information Judge Meyer held is relevant and necessary to resolve a central factual dispute in this case.

First, Defendants claim these RFPs "go beyond 'Defendants.'" ECF 325-1 at 21. But the requests are directed to Defendants and information in their possession, custody, or control, as required under Rule 34(a)(1). *See* ECF 309-2 at 2 ¶ 3. If Defendants possess, for example, documents sufficient to show how a facility, not owned or operated by any Defendant, adapted to address "the loss of containment event at the Sewaren terminal during Superstorm Sandy," *see* ECF 309-5 at 6 (Revised RFP 27), then that information is directly relevant to the claims in this case, *see* MPSJ Tr., ECF 305 at 83:11–15 ("[I]ndustry-wide practices establish what constitutes best industry practice."). Whether Defendants *control* another facility utilizing best industry practices is of no consequence to whether the Terminal has failed to adopt best practices.

3

Second, Defendants misrepresent the Permit, asserting that the relevant factual inquiry asks if Defendants' SWPPP is similar to other CT SWPPPs.[2] *See* ECF 325-1 at 22. But, as Judge Meyer stated, the question is whether Defendants have "implement[ed]" "[BMPs] in a manner that will minimize the discharge of pollutants . . . by reference to what is the best industry practice." MPSJ Tr., ECF 305 at 79:22–80:1. Nothing in the Permit or Judge Meyer's ruling cabins "best industry practice" to what other entities write in their SWPPPs, or to the borders of Connecticut. Indeed, such limits would undermine the CWA's "technology-forcing framework" by encouraging a race to the bottom among Connecticut polluters when other jurisdictions enforce more stringent standards. *See Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 822 F.2d 104, 122 (D.C. Cir. 1987).

Third, Defendants assert these RFPs seek information on facilities that are not "like" the Terminal and that would be difficult to discern.[3] *See* ECF 325-1 at 24–25 (citing Yeates Decl., ECF 324-4); Bennett Decl., ECF 324-5 ¶ 9. Defendants assert (without support) that their Port Fourchon terminal "has unique climate risk considerations . . . that do not apply" to the Terminal. ECF 325-1 at 26. But whether the Terminal is faced with similar climate risks, and thus should adopt control measures like those at Port Fourchon, is a central question in this case. Defendants may not circumvent the factfinder by preventing discovery into how they adapt to climate risks at facilities where Defendants account for such risks. *See* ECF 277 at 38–39.

B. **Defendants' productions to date undermine their claim that identifying coastal terminals with weather risks is unduly burdensome.**

---

[2] Defendants falsely assert they produced 175 Connecticut SWPPPs. ECF 324-1 ¶ 6; ECF 325-1 at 4. Defendants provided 152 partial SWPPPs, over half of which were created prior to the issuance of the current Permit in 2011. *See* ECF 260 at 42–43. Thus, Defendants produced SWPPPs for fewer than 5% of facilities registered under the current Permit, *id.* (75 divided by 1647), an unknown subset of which relate to facilities Defendants would consider to be "like" the Terminal, *see* ECF 325-1 at 24–25. Furthermore, CT DEEP does not review or approve SWPPPs as a matter of course. *See* Permit, ECF 248-5 at 14 (§ 4(c)(2)(H)), 16 (§ 4(d)(2)), 28 (§5(c)(4)(B)). Thus, there is no evidence that any of the partial SWPPPs provided by Defendants are compliant with the Permit, let alone best industry practice.

[3] This is the first time Defendants have raised this objection. *See, e.g.*, ECF 309-6 at 8–9. If limiting the requests to terminals will expedite compliance, *but see infra* Part II.B, then CLF consents to this revision.

4

The Bennett Declaration asserts that since there are more than 100 terminals globally, collecting the HEMPs[4] to identify those with yellow or red risk ratings may not be possible. *See* ECF 324-5 ¶¶ 7, 9–11, 13. CLF disputes that collecting 100 HEMPs from different locations poses an undue burden. *E.g.*, *D'Agostin v. Fitness Int'l, LLC*, No. 20-CV-01657, 2021 WL 1923786, at *3 (D. Conn. May 12, 2021) (overruling burden and proportionality objections to request covering 102 of defendant's 753 fitness clubs). Regardless, Defendants' claim that HEMPs are difficult to locate and are not stored "in one central location" is undermined by the fact that Defendants already produced HEMPs for 20 unique facilities, *see* Jordan Aff., Ex. A ¶¶ 2–3; HEMPs, Ex. B, and other documents indicate HEMPs are tracked regionally or nationally. *Compare* ECF 325-1 at 30, *with*, *e.g.*, Stammer Email (Aug. 28, 2018), Ex. C (tracking HEMPs for 16 facilities in the Americas); Sharma Email and attachment (Jan. 9, 2019), Ex. D (tracking HEMPs for 27 facilities); Wilson Email, Ex. E (attaching two HEMPs "███████████████████████."). Regardless of how many locations would be searched to find 80 more HEMPs, "to the extent that [Shell's] burden is a function of its own record-keeping, that factor that [sic] should not prejudice [CLF's] ability to obtain clearly relevant information." *Malzberg*, 2020 WL 3618962, at *4 (citation omitted).

Defendants also claim they cannot determine if a facility is "coastal." ECF 324-5 ¶ 7. Defendants did not object to "coastal" as ambiguous, *e.g.*, ECF 309-7 at 8–10, and ignore that CLF defined "coastal" using Shell's policies, *see* ECF 309-2 at 5 ¶ 6. Ms. Bennett also ignores that HEMPs include proxies for coastal facilities, such as whether a facility has a "████████████ ███████████████████████████████████." *E.g.*, HEMPs, Ex. B at 3.

**C.  Defendants' cost claim is not credible because the proposed searches ignore the text of the requests and are multiplied by misleading, hypothetical terms.**

---

[4] HEMP is the Hazards and Effects Management Process, where risk scores are tracked. *See* ECF 309 at 18–19.

Defendants claim that a document collection for the other facilities Revised RFPs would cost $5 million. *See* ECF 325-1 at 6, 32–33. This figure is not credible because it is not based on the Revised RFPs and is purely hypothetical. The Contreras Declaration asserts that 85,963 documents contain the search terms in Revised RFP 9, ECF 324-3 ¶ 29, but this ignores the first limitation in the request—that documents with those terms *also* "refer[] to the Terminal." ECF 309-5 at 1. Furthermore, Mr. Contreras does not quantify how many of the 85,963 would not be reviewed because they (a) were already produced, (b) are duplicates of documents already produced, or (c) are duplicates within the search results.[5] *See* ECF 324-3 ¶ 29. These search results are meaningless because they ignore the text of RFP 9 and the number of reviewable documents.

Mr. Contreras also uses the faulty search term result for Revised RFP 9 to extrapolate how many documents would be collected for Revised RFPs 10, 17(b), 23, 24, 25, 26, 27, 28, 48, and 64.[6] ECF 324-3 ¶ 34. Mr. Contreras multiplies the 85,963 search results by 11 and then by 20, assuming all 11 RFPs would be repeated at 20 facilities. *Id.* ¶¶ 31, 34, 35. There are several problems with these estimates. First, CLF has sought relief for only 15 other facilities. *See* ECF 309 at 44. Second, these estimates ignore the text of CLF's requests. Revised RFPs 23, 27, 28, 48, and 64 are "sufficient to show" requests that require production of a limited number of documents. *See* ECF 309-5 at 5–6, 10, 13. Revised RFPs 24 and 25 seek policies applicable to the facilities, which are likely single documents applicable to multiple locations. *Id.* at 5; *see, e.g.*, ECF 309 at 18–19 (describing overarching policies). Defendants' reliance on these misleading estimates simply underscores that, rather than conducting searches designed for each request to substantiate their burdens, Defendants never complied with their basic obligations under Rules 26(g) and 34.

---

[5] Of the 41,135 documents produced by Defendants, only 50.7% are unique. *See* Jordan Aff., ECF 309-1 ¶ 32.

[6] Contreras does not list RFPs, ECF 324-3 ¶ 34, but CLF assumes the 11 are the RAM RFPs, not RFPs 12 and 63.

III.    **PRE-2017 DOCUMENTS ARE RELEVANT AND NECESSARY TO CLF'S CLAIMS AND DEFENDANTS HAVE MADE NO SHOWING OF BURDEN.**

Defendants incorrectly assert that CLF did not allege pre-2017 violations of the CWA such that information pre-dating 2017 is irrelevant, and then state, without support, that producing such information is nevertheless unduly burdensome. These arguments are meritless.

First, Defendants argue that "CLF has not alleged pre-2017 violations of the General Permit against the non-Motiva Defendants." ECF 325-1 at 33. This is not accurate. *See* ECF 309 at 30–32. CLF alleges that "Shell," defined as *all* Defendants, reported violations of the Permit in 2011. *See* ECF 47 ¶¶ 260–63 (citing ECF 47-9). Furthermore, CLF alleges that Motiva was a joint venture of the non-Motiva Defendants from 2000 to 2017 (the "Motiva ownership period"), *see* ECF 47 ¶¶ 35–36, and that Shell group's policies were mandatory for Motiva as a Shell group joint venture, *id.* ¶¶ 41–44, 53, 55–63; *id.* ¶ 51 ("Compliance with Shell's climate change policies and strategies is mandatory for each Defendant."). These allegations are only included in the complaint to support CLF's assertion that *all* Defendants are liable as operators during Motiva's ownership period.[7] CLF also alleges that liability under the Permit transferred from Motiva to Defendants Equilon and Triton, *id.* ¶ 37, which supports CLF's allegation that the non-Motiva Defendants are liable for the ongoing and continuous violations that began during Motiva's ownership period.

Moreover, Defendants' argument also strains credulity because they have accepted that 2011 to present is the relevant discovery period for *all Defendants* on CLF's RCRA claims. *See* ECF 277 at 27. The only difference between CLF's CWA and RCRA claims is that Motiva is no longer a Defendant for the CWA claims. *See* ECF 111 at 62. But Motiva's status should not affect whether the non-Motiva Defendants provide discovery for the Motiva ownership period, *unless*

---

[7] Defendants dispute that these policies applied to Motiva, ECF 324-5 ¶ 10, but that is a fact issue subject to discovery.

*those Defendants were also operators during that time*. Defendants' temporal differentiation between the CWA and RCRA claims is thus a merits argument: even if the non-Motiva Defendants may have been operators under RCRA during the Motiva ownership period, they were not operators under the CWA and need not provide discovery on CWA compliance for 2011 to 2017. Such a merits argument is not appropriate as a limitation on discovery. *See* ECF 309 at 32.

As a final point on relevance, Defendants' latest production[8] reinforces the relevance of pre-2017 discovery. In a 2019 email, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████. *See* Sullivan Email (Mar. 19, 2019), Ex. F. This exchange makes clear that policies and procedures used at the Terminal from 2017 to present are informed by documents created before 2017. Though pre-2017 documents attached to recent emails are incidentally collected (as here), Defendants may not withhold relevant documents *not* attached to emails based on arbitrary time cut offs.

Finally, Defendants claim that producing "an additional five years of documents is unduly burdensome," ECF 325-1 at 33, but provide no information about the burden of pre-2017 discovery for the Revised RFPs. Defendants merely state that prior reviews for the *original* RFPs involved 25,000 documents for each year from 2017 to 2023. ECF 325-1 at 34; ECF 324-3 ¶ 37. Tellingly, Defendants do not claim that this represents the burden associated with the Revised RFPs, *see* ECF 325-1 at 34; ECF 324-3 ¶ 37, and the Court should not assume as much. The pre-2017 figure is also misleading because it is based on the broader and more numerous original RFPs. Furthermore, if the non-Motiva Defendants' claim that they did not operate the terminal pre-2017 is true, the

---

[8] Defendants produced documents on November 28, 2023, *see* ECF 324-1 ¶ 4(xiii), six weeks after the date agreed upon to expedite the remaining document discovery, *see* ECF 309 at 43–44.

extrapolation of post-2017 documents would entail a significant overestimate of burden.

## IV.    DEFENDANTS' SEARCHES WITHIN COLLECTED DOCUMENTS ARE INSUFFICIENT AND NEW SEARCHES ARE NOT UNDULY BURDENSOME.

Defendants claim no obligation to collect new documents because the 1.7 million already collected "necessarily encompass" those responsive to the Revised RFPs. *See* ECF 325-1 at 36–37. This cannot be true, however, because Defendants' original collection was based on search terms for a subset of CLF's original RFPs and involved no (intentional) collection on other facilities. *See* ECF 177-1 ¶ 13; ECF 324-1 ¶¶ 7–8.[9] As Defendants' February 2022 declaration and brief remain the only list of RFPs for the 1.7 million collection, it appears Defendants never collected documents with terms based on the original (or revised) RFPs 6, 7, 12, 17, 18, 20, 23, 25, 29, 32, 34, 39, 41, 43–49, 51, 52, 57, 59, or 64. *See* Jordan Aff., Ex. A ¶¶ 12–14. And though Defendants claim CLF has never raised issues with specific search terms, ECF 325-1 at 37, CLF has done so repeatedly. *See* ECF 309-1 ¶¶ 25, 36; ECF 309-16 at 15–16; Jordan Aff., Ex. A ¶ 8.

Any burden alleged with regard to collecting new documents is unsubstantiated as Defendants only quantified searches within the already-collected documents and only for Revised RFPs 9, 23, and 48.[10] ECF 324-3 ¶¶ 27–29. CLF disputes that these figures show an undue burden, as Defendants only manually review 13% of documents (fewer accounting for duplicates), *see id.* ¶ 32. While Defendants claim they conducted "review" searches, *see* ECF 325-1 at 37, they never describe these searches or their results and admit they have never reviewed the majority of the already-collected documents, *see* ECF 309-16 at 2.

## V.    DEFENDANTS MUST REVIEW THEIR IMPERMISSIBLE REDACTIONS WHERE THE INFORMATION IS RESPONSIVE TO NEW REQUESTS.

---

[9] CLF has continued to request clarity while briefing this Motion, but Defendants have not provided promised copies of all final search terms. *See* Papetti Email (Dec. 12, 2023), Ex. G at 1; Jordan Aff., Ex. A ¶ 8.

[10] Defendants claim to have quantified a search for Revised RFPs 24 and 25, but that search is for the original RFPs. *See* ECF 324-3 ¶ 26; ECF 177-7 ¶ 23(a) (same). The Revised RFPs were narrowed. *See* ECF 309-5 at 5.

Defendants claim they are excused by the law of the case from reviewing their relevance redactions for information responsive to the Revised RFPs. *See* ECF 325-1 at 6, 10, 38. Prior consideration of these redactions relied on Defendants' representation that redacted information "about facilities other than the New Haven Terminal [] has no bearing as these claims," ECF 177 at 40, but the MPSJ ruling has since rejected Defendants' position, *see* MPSJ Tr., ECF 305 at 83:11–15. The Court has the authority to revisit and conform prior decisions to new developments in the case, *see* Fed. R. Civ. P. 54(b), to correct manifest error, consider newly discovered evidence, prevent manifest injustice, or apply a change in law, *e.g.*, *Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126, 133–35 (E.D.N.Y. 2021) (altering a sanctions award, then reviewing and conforming prior orders). Such authority is appropriate for the circumstances presented here.

Defendants' redactions of information about other facilities in thousands of documents have prejudiced CLF. These documents come from key witnesses, and Defendants admit they show learnings from other facilities applied to the Terminal. *See, e.g.*, ECF 309 at 28–29; ECF 326-3 (showing prior redaction of learnings from Sewaren applied to other Terminals); ECF 177-1 ¶¶ 15–16 (Defendants produced communications "regarding storms and major weather events at other facilities and learnings from prior incidents"). Brian Evans, who emailed about the Sewaren tank float event during Hurricane Sandy in ECF 326-3, was deposed in February 2023. Mr. Evans was shown an exhibit referencing a "███████████████████," and CLF asked Mr. Evans ██████████████████████, to which Mr. Evans responded, "███████████████████████████." Evans Tr., Ex. H at 169:11–17. CLF could have used the unredacted emails at ECF 326-3 to refresh Mr. Evans' memory and develop testimony, if Defendants had not improperly redacted them.

## VI.    CONCLUSION

For the foregoing reasons, CLF asks the Court to grant the relief requested in its Motion.

Dated: December 22, 2023

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ Alexandra M. Jordan*
Alexandra M. Jordan (ct31466)
Ana McMonigle (ct31370)
Zachary Manley (phv207600)*
Conservation Law Foundation, Inc.
62 Summer Street
Boston, MA 02110
Tel: (617) 850-1748
Tel: (203) 298-7692
Tel: (617) 850-1707
E-mail: ajordan@clf.org
E-mail: amcmonigle@clf.org
E-mail: zmanley@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 622-3020
Tel: (802) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com

11

*Attorneys for Plaintiff Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*