IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES, LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, AND MOTIVA ENTERPRISES LLC, <br><br> Defendants. | No. 3:21-cv-00933-JAM <br><br><br> January 15, 2025 |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE STANDING PROTECTIVE ORDER (ECF. No. 505).**

Since Plaintiff filed this action on July 7, 2021, CLF has served Defendants with **130** discovery requests in this case alone.[1] Defendants have produced **over 300,000** documents, all in accordance with—and reliance upon—the terms of the Standing Protective Order ("SPO"). Over three years after the SPO was entered, CLF is now seeking to modify the SPO for the second time, without reasonable justification. CLF's Motion is merely its latest tactic in a string of actions to expand the scope of discovery and, more specifically, how Plaintiff is able to use that discovery **outside** the context of this case. *See* Dec. 19, 2024 E-Mail from K. Daly entitled, "We just read over 2 million pages from Shell Oil. What are they hiding?" ("Dec. 19, 2024 CLF E-Mail") (CLF fundraising E-mail discussing Defendants' recent document production and

---

[1] In a parallel case in the District of Rhode Island, Plaintiff has served 284 discovery requests, and Defendants have produced millions of pages of discovery. *See CLF v. Equilon Enterprises LLC d/b/a Shell Oil Products,* No. 1:17-cv-00396-WES-LDA, (D. R.I.).

1

suggesting that **"Shell is fighting to conceal" documents** which CLF believes **"the public has a right to know"**) (emphasis added).[2] The Court should follow its prior ruling and deny Plaintiff's second attempt to modify the SPO, just four months after the Court denied Plaintiff's initial request on similar grounds. *See* ECF No. 470.

As before, Plaintiff offers no legal authority for the de-designation of confidential records related to the New Haven Terminal that could overcome Defendants' legitimate concerns regarding well-established security and business needs for maintaining the confidentiality of information related to their fuel distribution operations throughout the Northeast. As this Court has already recognized, courts throughout the Second Circuit are highly skeptical of efforts to modify a protective order where the non-movant has reasonably relied on the order. *See* ECF No. 470. Indeed, the Second Circuit has instructed that "a District Court should not modify a protective order '**absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need**.'" *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979) (emphasis added). Plaintiff has not and cannot meet that standard here.

Defendants have reasonably relied upon the SPO in exchanging extensive document productions involving highly sensitive and confidential documents for the entirety of the three-year discovery process in this case. The SPO implemented in this case has worked well for the past three years. CLF has waited until the eve of the discovery deadline—after Defendants have produced over 300,000 documents—to seek yet another unjustified modification. Plaintiff

---

[2] Although the above-referenced December 19, 2024 E-Mail has not been produced by any party in this case, and is not designated as confidential, Defendants have abstained from attaching a full copy of the E-mail as an exhibit in accordance with this Court's instructions in ECF 501. Defendants will furnish a complete copy of this E-mail at the Court's request.

therefore cannot show the "extraordinary circumstances" or any "compelling need" to justify a modification where a SPO has been in place for the entirety of this case.  *See* ECF No. 007 (Judge Bryant entering the SPO on July 7, 2021).  Plaintiff does not even attempt to do so.

Despite its claims to the contrary, Plaintiff's proposed modifications are by no means minor.  Instead, Plaintiff seeks to fundamentally restructure the de-designation process outlined in the SPO in effort to force Defendants' confidential business information into the public domain.  Plaintiff's motivation is confirmed by its own very recent marketing statements to its donors, seeking to raise money to continue pursuing its case against Defendants.  But rewriting the SPO so Plaintiff can ramp up its fundraising is not a legitimate, legal reason to modify it.

This Court previously recognized that Defendants have legitimate reasons—and the legal right—to maintain the confidentiality of materials produced in discovery.  Specifically, Judge Farrish found that "[w]hile I have not sustained all of Shell's confidentiality claims I have conducted a careful inquiry into those that did come before me and **I have found good cause for protection in several instances**."  *See* Sept. 30, 2024 Hr'g Tr. at 33:19-22 (emphasis added).  The SPO serves to protect those interests.  Judge Farrish noted that "basically CLF is asking me to rule that Shell was unjustified in relying upon an order that sprung from the court in the first instance and **that would be a really remarkable ruling and one that I don't think has ever been made before in this district**."  *Id*. at 35:1-6 (emphasis added).

As this Court's rulings confirm, the SPO provides a framework that adequately addresses Plaintiff's purported concerns with over-designation, while still protecting Defendants' legitimate interest in safeguarding its confidential discovery materials.  Plaintiff will suffer no prejudice if the existing SPO remains in place, and its Motion offers no principled reason to upend it.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(c) provides that a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The law protects parties who have produced documents in reasonable reliance on protective orders, holding that "a District Court should not modify a protective order 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'" *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). Only in the absence of a party's reliance on the protective order may a district court modify the order upon "the exercise of its informed discretion." *Id*. at 234; *see also Grant v. Lamont*, No. 3L22-CV-01223 (JBA) 2023 WL 6958763, at *2 (D. Conn. Oct. 20, 2023) ("Where a protective order has not engendered reliance, the presumption against modification is weaker and the decision whether to modify a protective order is left to the sound discretion of the Court."). The Second Circuit has rejected the theory that a proponent of maintaining a protective order has the burden of establishing good cause to maintain it. *See TheStreet.com*, 273 F.3d at 231 n.9; *Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 Fed. App'x. 878, 880–81 (2d Cir. 2005) (summary order).

**ARGUMENT**

Motivated by the expressed desire to force Defendants' confidential documents and information into the public domain, Plaintiff again seeks to restructure the de-designation process that has been in place for over three years. Plaintiff's proposed modifications would impose more burdens on the Defendants and risk substantial harm and prejudice with inadvertent de-designation, without an appropriate legal basis or justification to do so. Moreover, Plaintiff would suffer no prejudice whatsoever if the existing protective order were left in place.

4

In short, Plaintiff has provided no "extraordinary circumstance or compelling need" justifying the Court to deviate from its prior ruling and grant Plaintiff's proposed modifications. *See*, *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) (holding that "[w]here there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'") (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). Not only is Plaintiff's proposed revision unwarranted, but granting Plaintiff's Motion would unquestionably lead to additional Court intervention—far from the purportedly "efficient" approach CLF envisions.[3] Plaintiff's Motion should be denied.

### 1. Plaintiff Has Once Again Failed to Demonstrate Any Extraordinary Circumstance or Compelling Need to Modify the SPO.

The SPO—governing discovery for the entire length of this litigation—already includes an appropriate process for designating and labeling sensitive and business-confidential information, and Defendants have relied on the SPO in producing confidential documents in an efficient manner. There is no compelling need to modify it.

Plaintiff offers no actual or legal support for its argument that Defendants have violated the SPO by failing to exercise reasonable care. CLF concedes that the sole category of mis-designated documents specifically identified in the Motion—public newsletters inadvertently designated as confidential—were ultimately de-designated following the procedures that are already outlined by the existing SPO. Pl.'s Mot. at 4, n.7. Beyond this, Plaintiff merely points to

---

[3] Plaintiff's argument that its proposed modifications were "utilized in other federal cases" is inapposite. Plaintiff's one cited example of modified de-designation procedures came from a case governed by a ***stipulated*** protective order. See Mot. at 5 citing ECF No. 165, *Ellis et al. v. CVS Health Corp. et al.*, No. 2:16-cv-01582-GAM (E.D. Pa. Dec. 26, 2024) ("ORDERED, pursuant to the Stipulated Protective Order . . . .") (emphasis added).

the large quantities of documents produced in this litigation and a vague claim that it is burdened by the complexities of the case. *Id.* at 4. As an initial matter, it should come as no surprise that discovery into coastal fuel distribution facilities and the business operations of a large energy company with competitive business interests—which is a potential target of malicious actors—generates the production of highly confidential and sensitive documents.

But producing these sensitive materials with confidentiality designations does not prejudice Plaintiff in any way. Indeed, nothing about the SPO precludes Plaintiff from utilizing the discovery to support its claims or use the documents and information at trial. Plaintiff cannot simply point to the sheer scope of this case—driven solely by CLF's own litigation strategy over the last several years—and cry foul when its discovery requests result in the production of hundreds of thousands of documents, many of which are confidential. As this Court already confirmed, the SPO "does provide CLF with means for addressing" concerns related to over-designation, and there is no need for modification. *See* Sept. 30, 2024 Hr'g Tr. at 33:2-6.

Plaintiff's remaining arguments are likewise unpersuasive. First, Plaintiff depicts a "halting" and "unmanageable" trial if this case proceeds under the SPO. Pl.'s Mot. at 3. But the SPO already provides for trial procedures regarding the handling of confidential information, expressly stating the "Court will determine how Designated Material will be treated during trial and other proceedings as it deems appropriate." ECF 7, at ¶ 15. And of course, courts routinely deal with issues of confidentiality from the onset of trial through the identification and exchange of exhibits. *See* JAM Instructions for Joint Trial Memorandum at 5(b), available on the United States District Court, District of Connecticut website (www.ctd.uscourts.gov).

Second, Plaintiff baldly claims the Court "has already been burdened by numerous motions to seal" and "additional litigation." (Mot. at 2, n. 3). This is largely a problem of

6

Plaintiff's own making, as CLF has repeatedly submitted confidential documents into the record that were not even relied upon in their briefing. *See*, *e.g.*, ECF 239, at 2-3; ECF 288. CLF has also failed, on multiple occasions, to confer with Defendants regarding confidentiality designations prior to filing its motions—an issue previously raised by Defendants on February 3, 2023. *See* ECF 174 at p. 2. Further, the mere fact that motion practice has occurred does not mean it was unnecessary or wasteful. Indeed, after "careful inquiry," the Court has already "found good cause for protection in several instances." Sept. 30, 2024 Hr'g Tr. at 33:19-22.[4] As such, the existing SPO provides a framework that has and continues to address Plaintiff's purported concerns with over-designation, while maintaining Defendants' legitimate concerns in the protection of their highly sensitive and confidential information and documents.

With the years-long discovery process now approaching its end, Plaintiff asks the Court to undo the existing SPO. While Plaintiff claims that its proposed modifications are "minor" and "merely require[] Defendants to justify a confidential designation[,]" (Pl.'s Mot. at 3, n. 7), its proposed modifications are subject to a vague and imprecise standard.[5] As the case law makes clear, "[w]here there has been reasonable reliance by a party or deponent, a District Court *should not* modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'" *SEC v.*

---

[4] Additionally, other confidentiality motions labeled by Plaintiff as burdensome were either mooted or withdrawn. *See* Pl.'s Mot., at 2, n.3; ECF Nos. 85, 228, 310.

[5] Plaintiff repeatedly conflates the presumption of open access to judicial documents with the level of confidentiality afforded materials produced in discovery. *See*, *e.g.*, Pl.'s Mot at 4, n.6 (discussing public access to "judicial documents" in the context of 323,206 document produced by Defendants in discovery in this case). Simply put, "there is no public right of access to discovery materials." S*canlan v. Town of Greenwich*, No. 3:18CV01322(KAD), 2021 WL 1352994, at *3 (D. Conn. Apr. 12, 2021) (quoting *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 324 (D. Conn. 2009)).

*TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). This Court has already recognized Defendants' reasonable reliance on the SPO. Sept. 30, 2024 Hr'g Tr. at 31:7-35:7 (denying prior motion to modify protective order based in part on reasonable reliance); *see also*, ECF No. 470. Plaintiff makes virtually no effort to reconcile this Court's prior rulings or establish any improvidence in that Order, and offers no extraordinary circumstance or compelling need warranting modification.

Accordingly, Plaintiff's Motion should be denied because it has failed to satisfy the standard for modifying the protective order, especially in light of Defendants' historical reliance on the SPO terms for over three years in this case.

**2.    Plaintiff's Recent Fundraising Efforts Reveal Its True Motive For Modifying the SPO, But Do Not Provide a Legal Justification for Doing So.**

Plaintiff's motion argues that its latest request to modify the SPO is motivated by "efficiency," (*See* Pl. Mot., at pp. 2-3) but its public statements tell the real story. *See* Dec. 19, 2024 CLF E-Mail. This E-Mail reveals CLF's intent to force the publication and open access to Defendants' confidential documents and information is an effort to raise money from donors:



Big milestone today –

CLF's litigation team is deep in the process of carefully combing over 2 million-plus pages of documents that Shell Oil just turned over to us as we prepare to take them to trial in 2025.

. . .

8

> I ask you, now that you know what we're up against, **will you help fund the legal fight to take Shell to trial in 2025?**
>
> We need all hands on deck if we're going to match Shell's deep pockets in court next year. This case needs New Englanders like you leading the charge to hold Shell accountable.
>
> **CONTRIBUTE**
>
> ==We think the public has a right to know== exactly what Shell knew about the effects of climate change and when. ==We think you have a right to know== whether they're factoring in storms supercharged by fossil fuels when they make their plans for the future.
>
> ==Shell is fighting to conceal these documents from the public, and so we can't share with you right now exactly what they contain.==
>
> But one thing is for sure: Shell knows, and has known for years, that burning fossil fuels supercharges storms – and that puts their toxic facilities and us all in danger.

*Id.* (emphasis added). This E-Mail, which contains a **direct link for recipients to donate** to CLF's lawsuit, reveals Plaintiff's true motivation for modifying the SPO. *Id.* Plaintiff is seeking money from donors to fight against the "burning [of] fossil fuels," ignoring that this case only concerns Defendants' compliance with the applicable stormwater permit for the New Haven Terminal. *Id.* This does not constitute a legal justification for Defendants' confidential information and documents to be released to the public domain or to modify the SPO.

However, Plaintiff's E-Mail and prior conduct shows that this is precisely what CLF would do if it were successful in de-designating confidential documents from Defendants' document productions. On its public website, CLF posted an article titled "A Shell Game,"

9

where CLF summarized evidence produced by Defendants in this case. *Id.* There, CLF wrote:

> Still, **the evidence turned over by the company** itself starkly demonstrates our point: **Company photos show** Shell's Providence facility flooded with water after a December 2022 storm. It's clear the company knows its terminals are vulnerable to weather conditions worsened by climate change.

*See* https://www.clf.org/blog/feature/a-shell-game/ (emphasis added). In fact, this statement and the fundraising E-Mail reveal that CLF is already disclosing the content of Defendants' confidential materials to its donors, in violation of the CPO.[6]

In this regard, the Court should also consider CLF's "purpose in seeking modification" of the SPO. *Scanlan*, 2021 WL 1352994, at *3 (D. Conn. Apr. 12, 2021) ("A litigant's purpose in seeking modification of an existing protective order is also relevant for determining whether to grant a modification.") (internal citations omitted). As this Court has held, "[r]equests to modify protective orders so that the public may access discovery materials is arguably subject to a more stringent presumption against modification because there is no public right of access to discovery materials." *Id.* Plaintiff's actions make its intentions clear: CLF seeks the de-designation of Defendants' confidential information and materials so that it can publicly disseminate them to its donors. This is not a legal justification for doing so, let alone an "extraordinary circumstance" or "compelling need" to modify the existing SPO.

This Court should deny Plaintiff's Motion to replace—and ultimately weaponize—the confidentiality de-designation procedures that are already adequately provided under the SPO.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to deny Plaintiff's Motion to modify the SPO (ECF No. 505).

---

[6] Defendants also object to CLF's characterization of the production of documents subject to the SPO as Defendants somehow "hiding" or "concealing" documents, which is factually untrue.

10

Dated: January 15, 2025

Respectfully submitted,

/s  Douglas A. Henderson
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com
CToledo@KSLAW.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street Suite 1700
Charlotte, North Carolina 28202
T: (704) 503-2600
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower 265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832

T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)
Beveridge & Diamond, P.C.
400 West 15th Street Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2025, the foregoing Defendants' Opposition to Plaintiff's Motion to Modify the Standing Protective Order was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s  Douglas A. Henderson
Douglas A. Henderson (phv05547)