# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-JAM |

## NOTICE OF SUBPOENA

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiff Conservation Law Foundation, Inc., by and through its counsel, will cause the subpoena attached hereto to be served upon Shell Pipeline Company LP (SPLC).

Dated: December 18, 2024.

Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc., by its attorneys

/s/ Michael J. Pendell
Michael J. Pendell
CT27656
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Tel: (860) 882-1681
Fax:  (860) 882-1682
Email: mpendell@motleyrice.com

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-JAM |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF**
**SHELL PIPELINE COMPANY LP (SPLC)**

PLEASE TAKE NOTICE that Plaintiff, the Conservation Law Foundation ("CLF") will take the deposition for use at trial pursuant to Fed. R. Civ. P. 30(b)(6) of the individual(s) designated by Shell Pipeline Company LP (SPLC) to testify on its behalf regarding matters set out within Attachment A of the Subpoena attached to this notice. The deposition will take place on Tuesday, January 21, 2025 at 9:00 A.M. EST at 195 Church St. Mezzanine Level, Ste. B New Haven, CT 06510 and shall continue day to day until completed.

The deposition shall commence before a public notary or other officer duly authorized to administer oaths, and shall be recorded by stenographic means and videotaped.

2

Said person(s) should have full and appropriate knowledge regarding the matters or issues listed in the 30(b)(6) topics listed in Attachment A. Shell Pipeline Company LP (SPLC) is hereby required to present the corporate representative(s) most knowledgeable and able to respond to the topics listed in Attachment A.

Dated: December 18, 2024.  Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

/s/ _____
Michael J. Pendell
CT27656
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Tel: (860) 882-1681
Fax:  (860) 882-1682
Email: mpendell@motleyrice.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 18, 2024, a copy of the foregoing document was served on all parties by electronic transmission.

/s/ _____
Michael J. Pendell

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

CONSERVATION LAW FOUNDATION, INC.

)
)
*Plaintiff* )
v. ) Civil Action No. 3:21-cv-00933-JAM
SHELL OIL COMPANY, Et al. )
)
*Defendants* )

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:   Shell Pipeline Company LP (SPLC)

*(Name of person to whom this subpoena is directed)*

✔ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | 195 Church St.<br>Mezzanine Level, Ste. B<br>New Haven, CT 06510 | Date and Time: | Tuesday, January 21, 2025 at 9:00AM EST or other mutually agreed upon time |
|---|---|---|---|

The deposition will be recorded by this method:   Video/Audio and Court Reporter

✔ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment A (enclosed)

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  December 18, 2024

CLERK OF COURT

OR

_____        _____
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Conservation Law Foundation, Inc., who issues or requests this subpoena, are: Michael J. Pendell, 20 Church St., 17th Floor Hartford, CT 06103, mpendell@motleyrice.com, (860) 882-1681

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:21-cv-00933-JAM

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

′ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

′ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____                _____
                                                    *Server's signature*

                                            _____
                                                    *Printed name and title*

                                            _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

**Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)**

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)   is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    ( ) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (i) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (ii) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to, subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**TOPICS FOR RULE 30(B)(6) DEPOSITION[1]**

1. The corporate structure, hierarchy, and management of each Defendant and Shell Pipeline Company LP, including the details of any legal, business, or other relationship between or among Shell Pipeline Company LP, any Defendant, and any parent, holding company, subsidiary, members, sister corporation, or partner that participates in projects or operations, provides services, performs work, develops policies, or makes decisions regarding physical facility infrastructure; environmental compliance; management of severe weather, sea level rise, extreme precipitation, flooding, or storm surge risks; climate or weather-related planning; and/or engineering at or for the New Haven Terminal.

2. The structure, hierarchy, and management of any line of business, unit, division, or other organization within Shell group[2] (e.g., Shell Trading and Supply Operations, Shell Downstream, HSSE, Reliability & Integrity) that participates in projects or operations, provides services, performs work, develops policies, or makes decisions regarding physical facility infrastructure; environmental compliance; management of severe weather, sea level rise, extreme precipitation, flooding, or storm surge risks; climate or weather-related planning; and/or engineering at or for the Terminal, including the details of any legal, business, or other relationship between or among such organization(s) and Defendant and/or Shell Pipeline Company LP.

3. The following policies, procedures, frameworks, standards, tools and processes and the details of any determination by Defendants and/or Shell Pipeline Company LP that they apply or do not apply to the Terminal:

a. Terminal Operations Manual

b. Manual of Authorities

c. Investment Management Guide

d. Asset Management System

e. Asset Integrity Process

f. Hazards and Effects Management Process

g. Design and Engineering Practices, including any related to Metocean (e.g., DEP 37.00.10.11-Gen)

h. Design Engineering Manuals

i. Health, Safety, Security, and Environment and Social Performance Control Framework

j. Distribution Global Asset Management Excellence

---

[1] Unless otherwise specified, the time period for all topics is from January 1, 2011, to present.
[2] "Shell group" refers to subsidiaries of Shell plc.

4. Project development requests (PDR) and authorization for expenditures (AFE) regarding risks at the Terminal or on-shore or near-shore Shell facilities with a Shell risk assessment matrix rating of yellow or red,[3] from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

5. Defendants' and Shell Pipeline Company LP's knowledge of risks to the Terminal from severe weather (e.g., hurricanes, tropical storms, flooding, storm surge) whether exacerbated by climate change impacts (e.g., sea level rise) or not.

6. The loss of containment event at the Sewaren Terminal during Hurricane Sandy, including investigations or audits about causes or contributing factors to the loss of containment.

7. Any changes to corporate policies, procedures, frameworks, standards, tools, and processes based on information learned from the loss of containment event at the Sewaren Terminal during Hurricane Sandy.

8. The General Permit for Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") with registration number GSI1002800 that is currently in effect and any other version(s) of the General Permit that have been in effect since January 1, 2011.

9. Defendants' and Shell Pipeline Company LP's analysis, evaluation, assessment, review, modeling, or critique, if any, of the sea level rise scenario adopted by the Connecticut Department of Energy & Environmental Protection on December 26, 2018 ("0.5 m . . . higher than the national tidal datum in Long Island Sound by 2050"). See https://portal.ct.gov/-/media/DEEP/coastalresources/coastal_management/coastal_hazards/SeaLevelChangeDEEPStatement12262018p df.pdf.

10. The Terminal's stormwater pollution prevention plan (SWPPP), including its preparation, certification, implementation, modifications, and updates.

11. The Terminal's spill prevention control and countermeasures (SPCC), including its certification, preparation, implementation, modifications, or updates.

12. Best Management Practices that

a. have been used at any point since January 1, 2011 at the Terminal, or

b. which are currently planned, and

that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of

---

[3] This request shall be limited to the facilities identified through the Parties' compliance with ECF 372.

projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

13. Control measures that

a. have been used at any point since January 1, 2011 at the Terminal, or

b. which are currently planned, and

that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding

14. Best Management Practices that have been used at any point since January 1, 2011 at the Terminal, or which are currently planned, to minimize the potential for leaks and spills resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

15. Information Defendants and/or Shell Pipeline Company LP submitted to the Connecticut Department of Energy and Environmental Protection since January 1, 2011 regarding risks of pollutant discharges associated with hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

16. Stormwater discharges from the Terminal to the New Haven Harbor via the City of New Haven's Municipal Separate Storm Sewer System.

17. Defendants' and Shell Pipeline Company LP's monitoring for indicator pollutants for the impairments in New Haven Harbor in the Terminal's stormwater discharges.

18. Steps taken to prevent or mitigate the carrying away of pollutants and solid waste from the Terminal by waters of a base flood (i.e., a flood that has a 1 percent or greater chance of recurring in any year or a flood of a magnitude equaled or exceeded once in 100 years on the average over a significantly long period).

19. Instances of flooding at the Terminal during severe weather events (e.g., hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge).

20. The presence and concentration of solid and hazardous wastes, as those terms are defined under the Resource Conservation and Recovery Act, in the soil and groundwater at the Terminal.

21. Services provided by Metocean team to the Port Fourchon facility and the types of services the Metocean team offers to on- and near shore facilities in the United States and the circumstances under which those services are offered or performed.[4]

22. The design and/or modification of the Terminal to address pollutant discharges and/or releases due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding.

23. Insurance policies regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

24. Communications with insurers regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

25. The present impacts and risks at the Terminal due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

26. Information shared between or among any Defendant and/or Shell Pipeline Company LP and entities within the Shell group regarding risks due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding at the Terminal and on-shore or near-shore Shell facilities with a Shell risk assessment matrix rating of yellow or red.[5]

27. The noticed party's confirmation, adoption, agreement, disagreement, and/or opinion of statements made by entities within the Shell group or Shell business lines quoted in CLF's amended complaint paragraphs 53, 59, 213–219, 373–377, 380–383 (ECF No. 47).

28. Instances of damage at the Terminal from severe weather events, including Hurricane Irene, Superstorm Sandy, and Hurricane Ian.

29. The identity of all documents used by, consulted, looked at, or relied on in any way by Shell Pipeline Company LP in preparing for the topics listed above.

30. Defendants' and Shell Pipeline Company LP's databases, information technology infrastructure, network infrastructure, software programs, messaging systems, and any policies that govern the possession, custody, or control of documents maintained by the custodians and SharePoint sites that Defendants searched for responsive records in this matter.

---

[4] To the extent any other specific Metocean projects are identified in productions from Defendants produced in compliance with ECF 372, those are also encompassed in this Topic.
[5] This request shall be limited to the facilities identified through the Parties' compliance with ECF 372.

31. The process Defendants and Shell Pipeline Company LP used to identify records custodians and information about the custodians' job titles, employer(s), and relationship to the Terminal.

32. The Trading and Supply line of business, including information sufficient to describe (1) what Trading and Supply is and (2) the supervision and management structure for employees within Trading and Supply.

33. The Trading and Supply line of business's relationship to the Terminal, including information sufficient to describe (1) whether and how Trading and Supply policies are created for and implemented at the Terminal; (2) the relationship between Trading and Supply, or employees within the Trading and Supply line of business, and Defendants and Shell Pipeline Company LP; and (3) the authority of persons within the Trading and Supply line of business to direct operations for or at the Terminal.

34. The incorporation or exclusion of climate change factors on the following policies or processes within the Trading and Supply line of business: (1) the Business Assurance Letter process and guidance; (2) the hazard and effects register; and (3) the scope and application of the DEM-1.