# Exhibit C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-JAM |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | January 10, 2025 |
| *Defendants*. | |

**RESPONSES AND OBJECTIONS TO PLAINTIFF CONSERVATION LAW FOUNDATION'S NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF SHELL PIPELINE COMPANY LP (SPLC)**

Pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure, nonparty Shell Pipeline Company LP ("SPLC") by and through its attorneys, responds and objects to the subpoena to SPLC dated December 18, 2024 (the "Subpoena") as follows:

**GENERAL OBJECTIONS**

1.      SPLC objects to this Subpoena because it is not an owner or operator of the facility at issue and any information it provides would be identical to and duplicative of information provided by the Defendants.

2.      SPLC objects to the Subpoena in its entirety to the extent it is part of Plaintiff's efforts to add SPLC as a party in this litigation.  Adding SPLC as a defendant at this late stage would be improper and prejudicial to Defendants, and Defendants intend to oppose any Motion to Amend.  CLF's deadline to amend pleadings expired on September 5, 2021. *See* Order on Pretrial Deadlines (ECF No. 5).  CLF has been aware of Shell Pipeline's identity and role in Defendants' operations since at least May 2022.  *See* Defs' Resp. to Pl. CLF's First set of

1

Interrogatories at No. 11 (served May 13, 2022). Now, over two and a half years later, CLF should not be permitted to create a new avenue for their fishing expedition by adding an additional defendant and conducting discovery on that defendant. Especially where the Court has expressed that the parties should be winding down discovery, not expanding it. *See* Scheduling Conference and Motions Hearing (Sep. 30, 2024) Tr. at 21:19-22:1.

3.      SPLC objects to the Subpoena to the extent that it was served to frustrate and harass nonparty SPLC and Defendants regarding issues that bear no connection to the parties' claims or defenses and are not relevant or proportional to the needs of this case. This Subpoena represents the latest effort from Plaintiff to conduct a fishing expedition into irrelevant matters, at an enormous cost to Defendants. Many of Plaintiff's topics seek testimony regarding issues such as "climate change," "sea level rise," and other hypothetical weather events that are not defined in the Subpoena nor sufficiently related to the controlling regulatory framework applicable to the New Haven Terminal. For these reasons, SPLC maintains that this Subpoena is irrelevant and object to the introduction of any resulting testimony at any trial of this action, for any purpose.

4.      In the event SPLC produces a corporate representative for deposition in response to this Subpoena, SPLC would make a reasonable inquiry of those persons likely to possess discoverable information responsive thereto and would conduct a reasonable search of those records in SPLC's possession, custody, or control where the requested information would likely be maintained in the ordinary course of business. To the extent Plaintiff requests that SPLC go to greater lengths, SPLC objects on grounds that this Subpoena is unduly burdensome.

5.      SPLC objects to the Subpoena to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, including the common-interest and joint-defense privileges. In addition, many of CLF's deposition topics are so broadly drawn that they potentially implicate privileged material.

In the event SPLC agrees to make a witness available to testify on a particular topic, SPLC does not waive any objection based on privilege, and reserves its right to refuse to provide testimony in response to specific questions based on an assertion of privilege. Lastly, SPLC's Responses and Objections are not intended to and cannot be construed as a waiver or relinquishment of any applicable privilege or immunity.

6.      SPLC objects to the Subpoena to the extent that it calls for information beyond the scope of discovery permitted under the Federal Rules of Civil Procedure. This includes, but is not limited to, information that is not relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence, including because the information sought is not limited to a reasonable time period.

7.      SPLC objects to the Subpoena to the extent Plaintiff's claims are unreasonably speculative in that they pertain to whether there are current or ongoing violations of certain provisions of Shell's permit applicable to the New Haven Terminal or whether the Terminal is currently managed in violation of the Resource Conservation and Recovery Act (RCRA). Furthermore, SPLC objects to the Subpoena because numerous topics seek information that is not relevant to these claims (*e.g.*, entirely unrelated to the Terminal, issues beyond the CWA/RCRA claims, or time periods at issue), and/or the relief sought by Plaintiff.

8.      SPLC objects to the Subpoena to the extent that CLF seeks the production of information or documents that are publicly available, and therefore equally available to Plaintiff.

9.      SPLC objects to the deposition topics identified in the Subpoena to the extent they are misleading, predicated on erroneous assumptions, or to the extent that they state incorrect facts, including facts or assumptions regarding the operations, assets, and structure of Defendants including its subsidiaries and other related entities.

10.      SPLC objects to the Subpoena to the extent it seeks information available through less burdensome means. This includes information that is available to the Defendants, has previously been provided by Defendants, or which may be provided by Defendants in subsequent discovery, including but not limited to, depositions of Defendants. Lastly, in light of prior 30(b)(6) testimony provided by Defendants, to the extent SPLC makes a corporate witness available for further deposition, such testimony would be unnecessary, duplicative, and a waste of judicial resources.

11.      Testimony given in response to the Subpoena, if any, is being given solely for the purpose of this action. Should any party seek to admit the information contained in any such testimony in motion or trial, such information is subject to all objections regarding relevance, authenticity, materiality, propriety, and admissibility and any other objections that would require exclusion of such information from evidence. All such objections are expressly reserved and may be raised at the time of motion or trial.

12.      SPLC objects to the Subpoena to the extent any topics contained therein imply that SPLC owns, operates, or otherwise imposes some degree of control over the New Haven and Sewaren terminals. Any testimony proffered by SPLC does not constitute an admission or acknowledgement of such control, and any suggestion to the contrary will be improper.

13.      SPLC reserves the right to object to other discovery directed to the subject matter of the Subpoena. Information provided, if any, notwithstanding the objectionable nature of any Subpoena should not be construed as a stipulation or admission that the information provided is relevant or admissible, a waiver of any objection, or an agreement that requests for similar discovery will be treated in a similar manner.

These General Objections are incorporated by reference into each of the individual Responses and Objections below. Any specific objection made by SPLC in no respect limits or modifies the General Objections stated herein.

## RESPONSES AND OBJECTIONS TO TOPICS

**Topic 1**: The corporate structure, hierarchy, and management of each Defendant and Shell Pipeline Company LP, including the details of any legal, business, or other relationship between or among Shell Pipeline Company LP, any Defendant, and any parent, holding company, subsidiary, members, sister corporation, or partner that participates in projects or operations, provides services, performs work, develops policies, or makes decisions regarding physical facility infrastructure; environmental compliance; management of severe weather, sea level rise, extreme precipitation, flooding, or storm surge risks; climate or weather-related planning; and/or engineering at or for the New Haven Terminal.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad, vague, and unduly burdensome in that this topic seeks testimony regarding numerous entities, on an overwhelming assortment of topics. Specifically, this topic seeks testimony regarding the "corporate structure, hierarchy, and management of each Defendant" as well as its "parent, holding company, subsidiary, members, sister corporation, or partner that participates in projects or operations, provides services, performs work, develops policies, or makes decisions regarding physical facility infrastructure; environmental compliance; management of severe weather, sea level rise, extreme precipitation, flooding, or storm surge risks; climate or weather-related planning; and/or engineering at or for the New Haven Terminal."

**Topic 2**: The structure, hierarchy, and management of any line of business, unit, division, or other organization within Shell group (e.g., Shell Trading and Supply Operations, Shell Downstream,

5

HSSE, Reliability & Integrity) that participates in projects or operations, provides services, performs work, develops policies, or makes decisions regarding physical facility infrastructure; environmental compliance; management of severe weather, sea level rise, extreme precipitation, flooding, or storm surge risks; climate or weather-related planning; and/or engineering at or for the Terminal, including the details of any legal, business, or other relationship between or among such organization(s) and Defendant and/or Shell Pipeline Company LP. (footnote omitted).

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad, vague, and unduly burdensome in that this topic encompasses a wide range of, mostly irrelevant, topics, which have nothing to do with the claims in this case and/or the New Haven Terminal. Specifically, this topic seeks testimony regarding the "structure, hierarchy, and management of any line of business, unit, division, or other organization within the Shell group," meaning "subsidiaries of Shell plc." This topic is much too broad and not reasonably tailored to the issues or claims in this case.

**Topic 3**: The following policies, procedures, frameworks, standards, tools and processes and the details of any determination by Defendants and/or Shell Pipeline Company LP that they apply or do not apply to the Terminal:

a. Terminal Operations Manual

b. Manual of Authorities

c. Investment Management Guide

d. Asset Management System

e. Asset Integrity Process

f. Hazards and Effects Management Process

g.  Design and Engineering Practices, including any related to Metocean (e.g., DEP 37.00.10.11 Gen)

h.  Design Engineering Manuals

i.  Health, Safety, Security, and Environment and Social Performance Control Framework

j.  Distribution Global Asset Management Excellence

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad and unduly burdensome in that this topic seeks testimony regarding "policies, procedures, frameworks, standards, tools, and processes and the details of any determination by Defendants and/or Shell Pipeline Company LP that they apply or do not apply to the Terminal….". By including "or do not apply" this topic becomes vastly overbroad and imposes an enormous burden on SPLC to prepare what could possibly apply to the New Haven Terminal, which SPLC does not own or operate. Lastly, as a non-operator, SPLC objects to this topic as it seeks information not within SPLC's possession, custody, or control—information best sought from named Defendants, which CLF has had ample opportunity to obtain. Additional testimony on this topic then would necessarily be unfruitful or unnecessary and duplicative.

**Topic 4**: Project development requests (PDR) and authorization for expenditures (AFE) regarding risks at the Terminal or on-shore or near-shore Shell facilities with a Shell risk assessment matrix rating of yellow or red, from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.  (footnote omitted).

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as vague with regard to the terms "[p]roject development requests (PDR)" and "authorization for expenditures (AFE)." Assuming this topic requests all PDRs and AFEs, SPLC also objects to this topic as unduly burdensome in that this topic fails to specify a reasonably limited period from which such information may be obtained. This topic is also overbroad and unduly burdensome to the extent it seeks information from SPLC, a non-party and non-operator, related to facilities beyond the terminal at issue in this case.

**Topic 5**: Defendants' and Shell Pipeline Company LP's knowledge of risks to the Terminal from severe weather (e.g., hurricanes, tropical storms, flooding, storm surge) whether exacerbated by climate change impacts (e.g., sea level rise) or not.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as vague with regard to the phrase "knowledge of risks." Additionally, SPLC objects to the use of the term "climate change" as vague considering it is unclear from the topic whether the concept of "climate change" refers to changes in temperature in the atmosphere, surface or sea, precipitation, or wind, or a range of other meteorological or physical changes or conditions not at issue in this case, or some other meaning anticipated by Plaintiff in this case. Lastly, SPLC does not own or operate the New Haven terminal. As a non-operator, SPLC objects to this topic as it seeks information not within SPLC's possession, custody, or control—information best sought from named Defendants, which CLF has had ample opportunity to obtain. Additional testimony on this topic then would necessarily be unfruitful or unnecessary and duplicative.

**Topic 6:** The loss of containment event at the Sewaren Terminal during Hurricane Sandy, including investigations or audits about causes or contributing factors to the loss of containment.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad and unduly burdensome to the extent it is not related to the New Haven Terminal at issue in this lawsuit. Moreover, SPLC does not own or operate the Sewaren terminal. As a non-operator, SPLC objects to this topic as it seeks information not within SPLC's possession, custody, or control—information best sought from named Defendants, which CLF has had ample opportunity to obtain. Additional testimony on this topic then would necessarily be unfruitful or unnecessary and duplicative.

**Topic 7**: Any changes to corporate policies, procedures, frameworks, standards, tools, and processes based on information learned from the loss of containment event at the Sewaren Terminal during Hurricane Sandy.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad and unduly burdensome to the extent it is not related to the New Haven Terminal at issue in this lawsuit. Moreover, SPLC does not own or operate the Sewaren terminal. As a non-operator, SPLC objects to this topic as it seeks information not within SPLC's possession, custody, or control—information best sought from named Defendants, which CLF has had ample opportunity to obtain. Additional testimony on this topic then would necessarily be unfruitful or unnecessary and duplicative.

**Topic 8:** The General Permit for Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") with registration number GSI1002800 that is currently in effect and any other version(s) of the General Permit that have been in effect since January 1, 2011.

9

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as vague and ambiguous with regard to the language "any other version(s) of the General Permit that have been in effect since January 1, 2011." Without more specificity, SPLC does not know what CLF is referring to and cannot adequately prepare a witness to testify as to this topic. Moreover, SPLC objects to this topic as unduly burdensome in that information concerning the General Permit can and will be obtained from Defendants.

**Topic 9:** Defendants' and Shell Pipeline Company LP's analysis, evaluation, assessment, review, modeling, or critique, if any, of the sea level rise scenario adopted by the Connecticut Department of Energy & Environmental Protection on December 26, 2018 ("0.5 m . . . higher than the national tidal datum in Long Island Sound by 2050"). See https://portal.ct.gov/-/media/DEEP/coastalresources/coastal_management/coastal_hazards/SeaLevelChangeDEEPStatement12262018p df.pdf.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad, vague, and unduly burdensome in that this topic seeks testimony regarding CDEEP's sea level rise scenarios.

**Topics 10-11**: **[10]** The Terminal's stormwater pollution prevention plan (SWPPP), including its preparation, certification, implementation, modifications, and updates; **[11]** The Terminal's spill prevention control and countermeasures (SPCC), including its certification, preparation, implementation, modifications, or updates.

**RESPONSE AND OBJECTION:**

10

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC does not own or operate the New Haven terminal. As a non-operator, SPLC objects to this topic as it seeks information not within SPLC's possession, custody, or control—information best sought from named Defendants, which CLF has had ample opportunity to obtain. Additional testimony on this topic then would necessarily be unfruitful or unnecessary and duplicative.

**Topics 12-14**: **[12]** Best Management Practices that

a. have been used at any point since January 1, 2011 at the Terminal, or

b. which are currently planned, and

c. that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding;

**[13]** Control measures that

   a. have been used at any point since January 1, 2011 at the Terminal, or

   b. which are currently planned, and

that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding;

**[14]** that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to these topics as overbroad, vague, and ambiguous in that these topics seeks information regarding Best Management Practice and control measures "which are currently planned" at the Terminal. This language is much too vague and ambiguous considering this topic fails to specify a reasonably limited period from which such information may be obtained.

**Topic 15**: Information Defendants and/or Shell Pipeline Company LP submitted to the Connecticut Department of Energy and Environmental Protection since January 1, 2011 regarding risks of pollutant discharges associated with hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as vague with regard to the terms "information" and "risks."

**Topics 16-17**: **[16]** Stormwater discharges from the Terminal to the New Haven Harbor via the City of New Haven's Municipal Separate Storm Sewer System; **[17]** Defendants' and Shell Pipeline Company LP's monitoring for indicator pollutants for the impairments in New Haven Harbor in the Terminal's stormwater discharges.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to these topics for lack of specified time period. This topic is also unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

12

**Topic 18-20**: **[18]** Steps taken to prevent or mitigate the carrying away of pollutants and solid waste from the Terminal by waters of a base flood (i.e., a flood that has a 1 percent or greater chance of recurring in any year or a flood of a magnitude equaled or exceeded once in 100 years on the average over a significantly long period); **[19]** Instances of flooding at the Terminal during severe weather events (e.g., hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge); **[20]** The presence and concentration of solid and hazardous wastes, as those terms are defined under the Resource Conservation and Recovery Act, in the soil and groundwater at the Terminal.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to these topics as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 21**: Services provided by Metocean team to the Port Fourchon facility and the types of services the Metocean team offers to on- and near shore facilities in the United States and the circumstances under which those services are offered or performed. (footnote omitted).

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad and unduly burdensome to the extent it is not related to the New Haven Terminal at issue in this lawsuit. SPLC also objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 22**: The design and/or modification of the Terminal to address pollutant discharges and/or releases due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical

cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic for lack of specified time period. SPLC also objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topics 23-24**: **[23]** Insurance policies regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding; **[24]** Communications with insurers regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad, vague, and irrelevant. Insurance policies and communications about them have no relevance to any of CLF's claims. SPLC also objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 25**: The present impacts and risks at the Terminal due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

14

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 26**: Information shared between or among any Defendant and/or Shell Pipeline Company LP and entities within the Shell group regarding risks due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding at the Terminal and on-shore or near-shore Shell facilities with a Shell risk assessment matrix rating of yellow or red. (footnote omitted).

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad and irrelevant to the extent it seeks information shared between any of the Defendants and other entities that are not parties to this litigation. Moreover, this request is unduly burdensome in that it seeks information from SPLC, a non-party involving facilities beyond the terminal at issue in this case.

**Topic 27**: The noticed party's confirmation, adoption, agreement, disagreement, and/or opinion of statements made by entities within the Shell group or Shell business lines quoted in CLF's amended complaint paragraphs 53, 59, 213–219, 373–377, 380–383 (ECF No. 47).

**RESPONSE AND OBJECTION:**

Subject to the General Objections, SPLC has no further objections to this topic.

**Topic 28**: Instances of damage at the Terminal from severe weather events, including Hurricane Irene, Superstorm Sandy, and Hurricane Ian.

15

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to these topics for lack of specified time period. SPLC also objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 29**: The identity of all documents used by, consulted, looked at, or relied on in any way by Shell Pipeline Company LP in preparing for the topics listed above.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: This topic is unduly burdensome and not an appropriate 30(b)(6) witness topic but would be better suited for another type of discovery request. SPLC also objects to this topic to the extent it implicates documents or information protected by the attorney-client privilege or work product doctrine.

**Topic 30**: Defendants' and Shell Pipeline Company LP's databases, information technology infrastructure, network infrastructure, software programs, messaging systems, and any policies that govern the possession, custody, or control of documents maintained by the custodians and SharePoint sites that Defendants searched for responsive records in this matter.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic. Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad, vague, and unduly burdensome in that this topic seeks testimony regarding record retention practices. Specifically, this topic seeks information regarding "Defendants' and Shell Pipeline Company LP's databases, information technology infrastructure, network infrastructure, software programs, messaging systems, and any policies that govern the possession, custody, or

16

control of documents maintained by the custodians and SharePoint sites that Defendants searched for responsive records in this matter."  This topic is clearly directed to the retention practices and document collection procedures carried out by the Defendants in this case.  As such, SPLC objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 31**: The process Defendants and Shell Pipeline Company LP used to identify records custodians and information about the custodians' job titles, employer(s), and relationship to the Terminal.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic.  Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to this topic as overbroad, vague, and unduly burdensome in that this topic seeks testimony regarding record collection practices.  Specifically, this topic seeks testimony regarding "[t]he process Defendants and Shell Pipeline Company LP used to identify records custodians and information about the custodians' job titles, employer(s), and relationship to the Terminal."   This topic is clearly directed to the custodian identification and document collection procedures carried out by the Defendants in this case.  As such, SPLC objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 32**: The Trading and Supply line of business, including information sufficient to describe (1) what Trading and Supply is and (2) the supervision and management structure for employees within Trading and Supply.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic.  Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to the phrase

"sufficient to describe" as vague and ambiguous.  SPLC objects to "[t]he Trading and Supply line of business" as vague and ambiguous.  SPLC also objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 33**: The Trading and Supply line of business's relationship to the Terminal, including information sufficient to describe (1) whether and how Trading and Supply policies are created for and implemented at the Terminal; (2) the relationship between Trading and Supply, or employees within the Trading and Supply line of business, and Defendants and Shell Pipeline Company LP; and (3) the authority of persons within the Trading and Supply line of business to direct operations for or at the Terminal.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic.  Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to "[t]he Trading and Supply line of business" as vague and ambiguous.  SPLC also objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

**Topic 34**: The incorporation or exclusion of climate change factors on the following policies or processes within the Trading and Supply line of business: (1) the Business Assurance Letter process and guidance; (2) the hazard and effects register; and (3) the scope and application of the DEM-1.

**RESPONSE AND OBJECTION:**

SPLC incorporates its general objections, detailed above, in response to this topic.  Subject to and without waiving those objections, SPLC responds as follows: SPLC objects to the use of the word "climate change" as overbroad, vague, and unduly burdensome in that it is unclear from the topic whether the concept of "climate change" refers to changes in temperature in the

atmosphere, surface or sea, precipitation, or wind, or a range of other meteorological or physical changes or conditions not an issue in this case, or some other meaning anticipated by Plaintiff in this case. SPLC also objects to this topic as unduly burdensome to the extent it seeks information from SPLC, a non-party, that Plaintiff has obtained, will obtain, or could have obtained from Defendants.

Dated: January 10, 2025                    Respectfully submitted,

                                           /s/ Antonio E. Lewis
                                           Antonio E. Lewis (phv03069)
                                           **KING & SPALDING LLP**
                                           300 S Tryon Street Suite 1700
                                           Charlotte, NC 28202
                                           T: (704) 503-2600
                                           alewis@kslaw.com

                                           Douglas A. Henderson (admitted pro hac vice)
                                           Carmen R. Toledo (admitted pro hac vice)
                                           Ryan T. Kearney (admitted pro hac vice)
                                           KING & SPALDING LLP
                                           1180 Peachtree Street, NE Suite 1600
                                           Atlanta, GA 30309
                                           T: (404) 572-4600
                                           dhenderson@kslaw.com
                                           ctoledo@KSLAW.com
                                           rkearney@kslaw.com

                                           Rose J. Jones (admitted pro hac vice)
                                           HILGERS GRABEN PLLC
                                           1372 Peachtree St NE
                                           Atlanta, GA 30309
                                           T: (402) 218-2106
                                           rjones@hilgersgraben.com

                                           Anthony G. Papetti (admitted pro hac vice)
                                           Beveridge & Diamond, P.C.
                                           825 Third Ave., 16th Floor

New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

John S. Guttmann (admitted pro hac vice)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (admitted pro hac vice)
Beveridge & Diamond, P.C.
400 West 15th Street Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Roy D. Prather III (admitted pro hac vice)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
rprather@bdlaw.com

James O. Craven
Wiggin and Dana
265 Church Street, 17th Floor
New Haven, Connecticut 06510
T: (203) 498-4400
jcraven@wiggin.com

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing instrument to be served on all counsel of record on January 10, 2025.

/s/ Antonio E. Lewis
Antonio E. Lewis (phv03069)
**KING & SPALDING LLP**
300 S Tryon Street Suite 1700
Charlotte, NC 28202
T: (704) 503-2600
alewis@kslaw.com