**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

---

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

              v.

SHELL OIL COMPANY, EQUILON
ENTERPRISES LLC D/B/A SHELL OIL
PRODUCTS US, SHELL PETROLEUM, INC.,
TRITON TERMINALING LLC, and MOTIVA
ENTERPRISES LLC,

    *Defendants*.

Civil Action No. 3:21-cv-00933-VDO


April 28, 2025

---

**PLAINTIFF CONSERVATION LAW FOUNDATION'S EMERGENCY MOTION TO**
**AMEND THE SCHEDULING ORDER AND FOR SANCTIONS**


**In Person Oral Argument Requested**

**TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

EXHIBIT LIST ................................................................................................................ iv

I.    Introduction ........................................................................................................... 1

II.   Background ............................................................................................................ 2

III.  Legal Standard ...................................................................................................... 4

IV.   Argument ............................................................................................................... 6

      A.   There is Good Cause to Modify the Scheduling Order.................................... 6

           1.   The ALL4, Inc. Documents are Directly Relevant to the Issues in this Case.............. 6

           2.   CLF Reasonably and Timely Sought these Documents and Diligently
                Prepared its Case ............................................................................................ 9

      B.   Sanctions Are Warranted For Failure to Comply with This Court's Order and
           Failure to Timely Supplement Incomplete Productions ................................... 13

V.    Conclusion ............................................................................................................ 20

# TABLE OF AUTHORITIES

## *Cases*

*Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357
(2d Cir. 1991) ................................................................................................ 19

*Fair Isaac Corp. v. Fed. Ins. Co.*, 337 F.R.D. 413 (D. Minn. 2021) ......................... 18

*Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003) ....................................... 4

*Milner v. City of Bristol*, No. 3:18-cv-1104-JAM, 2021 WL 4391240 (D. Conn.
Sept. 24, 2021) ................................................................................................ 5

*Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253 (2d Cir. 1999) ......................... 19

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002) ....... 19

*Rivera v. Distortions Unlim. Corp.*, 2007 WL 9754607 (D. Conn. Sept. 10, 2007) .... 13

*Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63 (W.D.N.Y. 2011) ..... 5, 18

*Roberts v. Bennaceur*, No. 3:12-CV-01222-JAM, 2015 WL 1471889 (D. Conn.
Mar. 31, 2015) ............................................................................................. 6, 20

*S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010) ................ 5

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350
(W.D.N.Y. 2011) ............................................................................................ 17

## *Rules*

D. Conn. L. R. 16(b) ................................................................................................ 5

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................. 5, 17

Fed. R. Civ. Pro. 16(b)(4) ........................................................................................ 4

Fed. R. Civ. Pro. 37(b)(2) ..................................................................................... 2, 5

Fed. R. Civ. Pro. 37(b)(2)(A) ....................................................................... 14, 16, 19

Fed. R. Civ. Pro. 37(c) ....................................................................................... 14, 17

Fed. R. Civ. Pro. 37(c)(1) ..................................................................................... 5, 19

**EXHIBIT LIST**

Exhibit A.    M. Sullivan Deposition Transcript, Feb. 6, 2025*

Exhibit B.    Email from R. Jones to CLF re: Shell CT and RI – Supplementation, Mar. 31, 2025

Exhibit C.    Email from R. Jones to CLF re: Shell CT and RI – Supplementation, Apr. 7, 2025

Exhibit D.    Email from S. Galloway to T. Geijer re: New Haven BFE, Nov. 4, 2024*

Exhibit E.    Email from T. Geijer to L. Smith re: New Haven SWPPP Resiliency Section, Jan. 2, 2025*

Exhibit F.    Email from S. Galloway to M. Sullivan re: New Haven Terminal Berm, Dec. 10, 2024*

Exhibit G.    Email from T. Geijer to L. Smith re: RIDEM proposed SW permit – ALL4 CALL MAIN POINTS, June 19, 2024*

Exhibit H.    Email from K. Costello to T. Geijer re: Shell Stormwater Plan Review – Providence ERAP, Jul. 9, 2024*

* Documents denoted with an asterisk are being filed under seal pursuant to this Court's Protective Order (ECF 7)

## I.    INTRODUCTION

Plaintiff Conservation Law Foundation, Inc. ("CLF" or "Plaintiff") respectfully files this Emergency Motion to Amend the Scheduling Order to grant additional time for CLF's experts to incorporate essential documents into their reports that Defendants only produced on Friday, April 25, 2025 at 5:32pm ET, and for Sanctions. The recently produced documents relate specifically to an important issue in this case—namely, whether Defendants have and are required to conduct climate change risk assessments and analyses for their bulk petroleum terminals under pertinent Clean Water Act permits. Unbeknownst to CLF until very recently, Defendants have engaged a consultant to conduct such an assessment and have tried to shield information about that assessment from CLF despite affirmative discovery obligations to produce this information to CLF. The assessments call into question testimony by Defendants' employees (including its 30(b)(6) witness), and relate directly to topics to be addressed by each and every one of CLF's expert witnesses. The current deadline to disclose expert reports is in three days on May 1, 2025. ECF 507. Given the imminence of this deadline, CLF requests expedited consideration of this Motion by the Court under Local Rule 7(a)(6). CLF requests that all case deadlines be moved back two weeks, or in the alternative that CLF's deadline to disclose expert reports is moved back two weeks but all other case deadlines remain the same. There is good cause for this motion because Defendants withheld essential documents until just before CLF's deadline to disclose expert reports, CLF diligently sought these documents, diligently prepared for expert disclosures, and it was not reasonably foreseeable by CLF that Defendants had these documents in their possession but had not produced them.

Defendants' intentional conduct in withholding documents and information directly related to the issues in this lawsuit without a good faith basis for doing so, is not acceptable. It is beyond dispute that the recently produced documents are responsive to multiple RFPs seeking analyses of

climate change factors and documents and analyses related to compliance with the Clean Water Act at the New Haven Terminal. Defendants willfully failed to produce these documents after being directed by the Court (ECF 372) to produce them. Willful violation of a court order is sanctionable under Rule 37(b)(2). Defendants only produced these documents in response to a specific demand for supplementation by CLF. That Defendants failed to supplement their productions on their own as documents were created and proactively produce these documents is highly suspect given that their 30(b)(6) witness testified in February on deposition topics covering the core subject matter of these documents. Furthermore, Defendants only made this supplemental production a month after CLF specifically requested it out of an abundance of caution, despite the fact that the production is only 88 documents.

CLF believes this Emergency Motion is not "a discovery dispute that arises between the parties" within the meaning of the Court's Discovery Order (Oct. 1, 2024), ECF 473, and thus files this motion consistent with Local Rule 7.

## II.    BACKGROUND

In response to the Court's March 29, 2024 Order, ECF 372, Defendants produced hundreds of thousands of documents over a few days just before and on their deadline of August 18, 2024. *See* Joint Status Rpt. (ECF 455) at 1C2. That set of documents included an email from June 19, 2024, and a chain of emails from July 7 and 8, 2024, between Theresea Geijer, the Shell Environmental Coordinator for a set of terminals including New Haven, and few employees from a consulting company ALL4, Inc. These emails showed Ms. Geijer setting up a meeting, and then sending documents after that meeting, where Shell and ALL4, Inc. discussed ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ There were no additional meetings, emails, or analysis, or any other clear indication that the engagement

with the consulting company had proceeded. Because Ms. Geijer is a core ESI custodian in this case with 3,117 documents produced from her custodial file, a reasonable conclusion was that a lack of additional responsive documents from her custodial file related to ALL4, Inc. meant those documents were not in existence. This is especially true considering Defendants insisted their document production was complete.

As follow-up on this issue, CLF asked Defendants' 30(b)(6) witness Michael Sullivan at his deposition in February about ████████████████████████████████████████ ████████████████████████████████████████████████████, and he testified, untruthfully, ████████████████████████. Michal Sullivan 30(b)(6) Deposition (Feb. 6, 2025), Ex. #A at 106:19–25, 107:17–25, 109:10–15, 250:21–251:2, 252:21–253:2.

Despite Defendants' assertions that their document production had been completed and their 30(b)(6) witness's testimony that ██████████████████████████ ████████████, CLF requested on March 26, 2025, that Defendants' supplement their prior productions under Rule 26(e) for "any work being conducted by the consultant ALL4 Inc. to draft a SWPPP for the New Haven and Providence Terminals." Email from James Meinert to Defendants (Mar. 26, 2025) ("Meinert Email"), Ex. B at 3; *see also* Joint Status Rpt. (ECF 558) at 2 (noting CLF's request to supplement). That email noted the bates numbers of the few emails with ALL4, Inc. from June and July 2024 that Defendants had produced, and then noted that communications and work product with ALL4, Inc. related to drafting a SWPPP including scopes of work and analysis would be responsive to at least five listed Revised RFPs, and, depending on the content of any documents, could be responsive to other Revised RFPs. *See* Meinert Email, Ex. B at 3. CLF also demanded that any responsive documents be produced in time to ensure review

by CLF's experts before a Court-ordered April 10 site visit. *Id.*

On March 31, 2025, Defendants wrote to confirm they were looking into CLF's demand. Email from Rose Jones to CLF (Mar. 31, 2025), Ex. B at 2; *see also* Joint Status Rpt., ECF 558 at 2. Defendants confirmed in a phone call there was consultant materials to produce. On April 7 Defendants notified CLF that they were working to supplement their production consistent with CLF's demand and that they were "making every effort to deliver the supplemental production by April 10." Email from Rose Jones to CLF (Apr. 7, 2025), Ex. C at 2; *see also* Joint Status Rpt., ECF 564 at 2 (noting Defendants "are looking into the request and are working to identify responsive, not privileged documents, if any, for potential production"). Defendants did not produce any documents by April 10. After over two weeks of silence and inaction, Defendants finally produced 88 responsive documents on Friday, April 25, 2025, at 5:32pm ET. Of these 88 documents, 25 are emails and attachments from July 2024 that should have been produced before the ECF 372 deadline of August 19, 2024.

CLF emailed Defendants on April 27, 2025, to meet and confer regarding this Motion, the Parties met and conferred today April 28, 2025. Defendants indicated they oppose this Motion.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16(b) allow the modification of a scheduling order only upon a showing of good cause. Good cause "depends on the diligence of the moving party." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). In this District, "[t]he good cause standard requires a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." D. Conn. L. R. 16(b).

Rule 37(b)(2) authorizes sanctions on a party that fails to comply with a court order, and Rule 37(c)(1) authorizes sanctions on a party that fails to supplement discovery responses in the timely manner required by Rule 26(e). The duty to supplement applies to a party who has made a discovery response and they "must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). "'Information' is 'incomplete or incorrect' in some material respect if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D.N.Y. 2011) (quoting *Sender v. Mann*, 225 F.R.D. 645 (D. Colo. 2004)).

Sanctions may be imposed to serve any or all of the following purposes: "(1) 'to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations' and/or restore those parties to where they would have been absent the discovery violation; (2) 'to ensure that a party will not benefit from its own failure to comply'; (3) 'to obtain compliance with the particular order issued'; or (4) 'to serve a general deterrent effect on the case at hand and on other litigation.'" *Milner v. City of Bristol*, No. 3:18-cv-1104-JAM, 2021 WL 4391240, at *2 (D. Conn. Sept. 24, 2021) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)). The Second Circuit's guidance on relevant factors for the district court to consider in selecting a sanction include, but are not limited to: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co.*, 624 F.3d at 144. This

court has found a number of behaviors count as "willful," including: "repeated tacit non-production, inadequate production, and delays in production . . . misrepresentations of available documents, to outright and unambiguous defiance of court orders." *Roberts v. Bennaceur*, No. 3:12-CV-01222-JAM, 2015 WL 1471889, at *11 (D. Conn. Mar. 31, 2015).

## IV.    ARGUMENT

### A.  There is Good Cause to Modify the Scheduling Order

This request to modify the scheduling order comes only a few days before the current deadline to disclose expert reports, but this timing was caused by Defendants not CLF. The current schedule cannot reasonably be met by CLF, through no fault of CLF and despite CLF's diligence in seeking documents and preparing its expert reports. It was not reasonably foreseeable to CLF that Defendants had these documents in their possession and yet failed to produce them, given how central the recently produced documents are to this case. Additional time is needed because these recently produced documents are core to the elements of this case and must be reviewed by each of CLF's experts and incorporated into those experts' analyses and reports.

#### 1.  The ALL4, Inc. Documents are Directly Relevant to the Issues in this Case

The untimely produced documents show Defendants' consultant ██████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████, all of which are issues specifically relevant to this litigation. Not only did the consultant ████████████████, but the consultant also ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████. The documents also contain questions and analyses related to the ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

██████████████ .

The documents also show that on November 4, 2024, ALL4, Inc. sent ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Email from Shane Galloway, to Theresa

Geijer (Nov. 4, 2024), Ex. D at 3. This ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ . *Id.* CLF's experts need to evaluate these data

choices and the scenarios selected to generate applicable information for the Terminal to opine as

to whether this consultant's work is consistent with Best Industry Practices.

Following the above ████████████████ , ALL4, Inc. then sent along a ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████ Email from T. Geijer to L. Smith (Jan. 2, 2025) and Draft Shell New Haven CT

SWPPP Resiliency Measures (Dec. 20, 2024), Ex. E at 2. This draft begins with ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ . The draft evaluates the following ████████████

████████████████████

██    ████████████████████████████████████████

████████████████



*Id.* at 5–7.  These are the types of analyses and measures CLF has long pointed out others in the industry regularly perform in relation to climate change and have long alleged Defendants have been required to perform at the New Haven Terminal. CLF's experts need to evaluate the proposed measures in this analysis and consider how the fact that Defendants have done these evaluations impacts or should be integrated with CLF's experts' opinions.



The documents also contain discussions of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. An email from ALL4, Inc. on November 19, 2024, asked Michael Sullivan for information about ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Email from Shane Galloway, to Michael Sullivan (Nov. 19, 2024), Ex. F at 2. CLF's experts need to evaluate ▮▮▮▮▮▮▮▮ and determine if they affect any of their calculations about ▮▮▮▮▮▮▮▮▮▮▮▮▮. The production does not include any responses from Mr. Sullivan on this issue; the recent production only lists Theresa Geijer as custodian for all 88 documents, so it is possible Defendants have not completed their supplemental collection and production. CLF should be afforded the opportunity to pursue this glaring omission and evaluate the berm height information with its experts.

CLF had no way of knowing that these documents relating to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ existed or that Defendants would wait to produce them until a few days before CLF's expert disclosure deadline.

Indeed, this is the very reason the rules impose upon a party the affirmative obligation to supplement document production without being asked to do so.  These are not minor documents that can be addressed by adding a single footnote to one expert's report. These documents are *central* to a number of issues in the case and must be evaluated in full.   CLF and its experts need time to discuss how or whether any of this information affects expert reports on climate change best industry practices, stormwater management at the Terminal, Shell's knowledge of best industry practices, and similar topics.

### 2. CLF Reasonably and Timely Sought these Documents and Diligently Prepared its Case

As discussed above, CLF diligently sought documents from Defendants regarding any evaluations of climate change hazards and efforts to analyze or adapt the New Haven Terminal or other facilities to protect against those hazards. The core of CLF's RFPs, ROGs, 30(b)(6) Deposition Topics, and other discovery requests in this case went to the question of whether Defendants have ever evaluated the impacts of climate change at the New Haven Terminal and other similar facilities. In their discovery responses and testimony, Defendants were adamant that no such evaluation had ever been conducted. It is also clear under the well-known rules of our civil practice that Defendants were obligated to supplement their discovery responses if and when additional information was discovered or became available. This is especially true here because CLF took affirmative action to verify, on multiple occasions, that document production was complete. CLF easily meets the good cause standard under Local Rule 16(b) because CLF was diligent and could not have reasonably foreseen that these documents were in existence and would be produced a few days before the expert disclosure deadline.

CLF's original RFPs and its Revised RFPs clearly sought documents and information related to extreme weather events, increased precipitation, increased frequency and severity of

storms, and increased risk of flooding to the Terminal. *See generally* Defs. Resps. to CLF's First RFPs (May 13, 2022), ECF 149-4 at 10–14, 30, 33, 39 (CLF's original RFPs 8–11, 23, 26, 32, and 33 variously asking for documents related to the Terminal using various climate change and weather terms and any plans or analyses of climate change hazards and preparations or changes to the Terminal thereto). Defendants had an obligation to produce this information notwithstanding their objections to many of these requests. The Court ruled that CLF's use of the formulation "All Documents related to" in its original RFPs was *per se* overbroad, but the Court also clearly ruled that much of CLF's core requests were relevant to the case. *See* Ruling and Order on Mot. to Compel (Aug. 22, 2023), ECF 277 at 34–40. There can be no question that CLF has long-sought and long been entitled to the type of information Defendants just recently produced.

In fact, Defendants are under a Court Order to produce these documents because CLF's Revised RFPs continued to seek documents related to any climate change risk assessment or analyses done at the Terminal. Revised RFP 9 sought documents referring to the Terminal and using "storm surge" "flood" "sea level rise" or "hurricane"; Revised RFP 17(a) sought documents concerning "assessments of Climate Change Factors . . . that include or encompass the Terminal"; Revised RFP 26 sought documents "concerning the study of climate change . . . created, used, or relied on by Defendants [at] the Terminal"; Revised RFP 32 sought communications with the state of Connecticut by Defendants or their representatives regarding "the Terminal's compliance with the Clean Water Act" "risk of flooding at the Terminal" or "the impact of Climate Change Factors at the Terminal"; and Revised RFP 36 simply sought "documents concerning your consideration or analysis of potential sources of pollution" at or that could affect stormwater at the Terminal. *See* Def. Rev. Resps. to CLF's Rev. RFPs (Nov. 17, 2023), ECF 309-7 at 8, 16, 24, 29–30, 32. While Defendants objected to all of these requests, the Court ordered Defendants to comply in full with

the majority of these Revised RFPs. Ruling and Order on Mot. to Compel (Mar. 29, 2024), ECF 372.

In reviewing the documents Defendants produced following ECF 372, CLF noted a June 19, 2024, email from Theresa Geijer, Shell's Environmental Coordinator for the New Haven and Providence Terminals, to Lizzie Smith, a consultant at ALL4, Inc. In that email Ms. Geijer ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ██████████████ Email from T. Geijer to L. Smith (June 19, 2024), Ex. G at 2. In the only other email chain with ALL4, Inc. on this topic produced before the ECF 372 deadline, from around July 8, 2024, another ALL4, Inc. employee noted ███████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████. Email from K. Costello to T. Geijer (July 9, 2024), Ex. H at 5. The email then further noted ██████████████████████████████████████████████████ ████████████ Id. Presumably this note indicated ██████████████████████████████ ████████████████████████████████████. Defendants did not, and have not, produced ███████████████████████████████████████████████████ ███ Based on these limited emails, it was unclear if Defendants ███████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████

CLF specifically, directly, and repeatedly followed up on this issue in the 30(b)(6) deposition of Michael Sullivan. In that deposition, Mr. Sullivan was asked ███████████ ██████████████████████████████████████████████████████ and he responded, ████████████████ Sullivan Tr., Ex. A at 250:21–23. To clarify, CLF asked:

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████ *Id.* at 252:21–253:2. Then Mr. Sullivan was asked

████████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* at 250:24–251:2.

Separately, CLF asked Mr. Sullivan about whether Defendants knew ████████████████

████████████████████████████████. *Id.* at 106:19–25. Mr. Sullivan was

then asked ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████. *Id.* 107:17–25. CLF then asked whether Defendants

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████ *Id.* at 109:10–15. Based on this testimony there was no indication that Defendants were

at that time ████████████████████████████████████████

███████████████████████████████████████████. In fact, Mr.

Sullivan's testimony would lead any reasonable party to conclude ████████████████████

████████████████████████████.

Defendants' document productions and deposition testimony were deliberately calibrated

to make CLF believe Defendants ████████████████████████████████

████████████████████████████. Nevertheless, CLF sent a specific request to

Defendants on March 26, 2025, that Defendants supplement their document productions for any communications or analyses with ALL4, Inc. related to a climate change assessment or evaluation or the drafting of a new SWPPP. *See* Meinert Email, Ex. B at 3. This specific request for supplementation is further evidence of CLF's diligence because CLF inquired about documents it did not know existed and were led to believe did not exist.

The Court's evaluation of diligence under the good cause standard concerns whether the moving party had opportunity to pursue an issue and did not take it and whether amending the schedule would "undermine the 'court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Rivera v. Distortions Unlim. Corp.*, 2007 WL 9754607, at *1 (D. Conn. Sept. 10, 2007) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)). In this case, CLF doggedly pursued discovery that it requested numerous times. In fact, Defendants were already under a court order to produce these documents that were just recently produced. The timing of CLF's request for specific supplementation was not lazy or cavalier, but rather was diligent.

For these reasons, the Court should grant CLF's request for additional time to work with its experts and incorporate the newly produced documents.

**B. Sanctions Are Warranted for Failure to Comply with This Court's Order and Failure to Timely Supplement Incomplete Productions**

Defendants' production of documents after the ECF 372 deadline on core issues to the case is inexcusable and sanctionable under Rule 37(b)(2)(A). For documents created after the ECF 372 deadline, Defendants' failure to supplement in a timely manner as the documents were created or in response to CLF's specific demand for supplementation is sanctionable under Rule 37(c).

Of the 88 newly produced documents, 25 are additional emails between Theresa Geijer and the ALL4, Inc. consultants from July 2024 that should have been produced by the ECF 372

deadline. Five of the newly produced documents are continuations of the same email chains where Defendants had produced some initial emails. However, the other twenty are new email chains between those individuals from the same time-period. The email chains and documents produced before and after the ECF 372 deadline are shown in the below table:

| Bates Number | Email Sent Date | From | Email Subject | Attachment Filename |
|---|---|---|---|---|
| **Produced before the ECF 372 Deadline** | | | | |
| SOPUS_NHVN02367774 | 06/19/2024 | Theresa Geijer | RE: RIDEM proposed SW permit - ALL4 CALL MAIN POINTS | |
| SOPUS_NHVN02367913 | 07/08/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - New Haven SPCC | |
| SOPUS_NHVN02368039 | 07/08/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - New Haven ERAP | |
| SOPUS_NHVN02367011 | 07/09/2024 | Kyle Costello | RE: Shell Stormwater Plan Review - Providence ERAP | |
| SOPUS_NHVN02367142 | 07/09/2024 | Kyle Costello | RE: Shell Stormwater Plan Review - Providence ERAP | |
| SOPUS_NHVN02367281 | 07/09/2024 | Kyle Costello | RE: Shell Stormwater Plan Review - Providence ERAP | |
| SOPUS_NHVN02367428 | 07/09/2024 | Kyle Costello | RE: Shell Stormwater Plan Review - Providence ERAP | |
| **Produced on April 25, 2025, after the ECF 372 Deadline, but created before the deadline** | | | | |
| SOPUS_NHVN02489378 | 7/8/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - Providence SPCC | |
| SOPUS_NHVN02489381 | | | | Disposal Plan.pdf |
| SOPUS_NHVN02489389 | | | | Forms Upload_Upload Form_1.pdf |
| SOPUS_NHVN02489391 | | | | Forms Upload_Upload Form_2.pdf |
| SOPUS_NHVN02489393 | | | | Forms Upload_Upload Form_3.pdf |
| SOPUS_NHVN02489394 | | | | Forms Upload_Upload Form_4.pdf |
| SOPUS_NHVN02489395 | | | | Forms Upload_Upload Form_5.pdf |
| SOPUS_NHVN02489396 | | | | Forms Upload_Upload Form_6.pdf |
| SOPUS_NHVN02489397 | | | | Facility Map_Upload Map_1.pdf |
| SOPUS_NHVN02489398 | | | | Facility Map_Upload Map_2.pdf |
| SOPUS_NHVN02489399 | | | | Facility Map_Upload Map_3.pdf |
| SOPUS_NHVN02489400 | | | | Supporting Documents_Supporting Document Upload_1.pdf |
| SOPUS_NHVN02489419 | | | | SHLPROVSPCC_4493_81961_185425_602722.PDF |
| SOPUS_NHVN02489735 | 7/10/2024 | Kyle Costello | RE: GW maps Providence and New | |

| | | | Haven | |
|---|---|---|---|---|
| SOPUS_NHVN02489768 | 7/10/2024 | Theresa Geijer | FW: GW maps Providence and New Haven | |
| SOPUS_NHVN02489770 | | | | Providence GW Summary Diagram.pdf |
| SOPUS_NHVN02489771 | | | | New Haven 2023 Siteplans with GW Flow and Sampling Results.pdf |
| SOPUS_NHVN02490130 | 7/11/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - Providence / New Haven | |
| SOPUS_NHVN02489787 | 7/11/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - Providence ERAP | |
| SOPUS_NHVN02489792 | | | | BC and SAP 7 11 24.pdf |
| SOPUS_NHVN02490120 | 7/11/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - Providence ERAP | |
| SOPUS_NHVN02490145 | 7/15/2024 | Exchange Admin Group | RE: Shell Stormwater Plan Review - Providence ERAP | |
| SOPUS_NHVN02489540 | 7/15/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - New Haven info | |
| SOPUS_NHVN02489546 | | | | New Haven SWPPP 2017 (3).pdf |
| SOPUS_NHVN02490114 | 7/17/2024 | Theresa Geijer | RE: Shell Stormwater Plan Review - Providence ERAP | |

The file path information on these documents seems to contain date information from when the document was collected from Theresa Geijer's email. For ten of the twenty-five July 2024 documents that were recently produced, the collection date appears to be **April 2, 2025**.[1] However, for the remaining fifteen of the twenty-five July 2024 documents that were recently produced, the collection date appears to be **July 30, 2024**.[2] CLF has not confirmed with Defendants the exact meaning of the dates in the file path metadata field, but notes that it appears to be the case that many of the only recently produced documents were collected during the ECF 372 compliance period but not produced until a few days ago. The production of these documents now in a

---

[1] For example, many have the file path: "Geijer__Theresa_20250402\Exchange\theresa.geijer@shell.com.pst\Top of Personal Folders\top of information store\sent items."

[2] For example, many have the file path: "2020-20119 Request No- 1 EXO and ODB Export 20240730_1_1\Geijer, Theresa\EXO\theresa-geijer-shell-com.pst\Top of Personal Folders\Top-of-Information-Store\Sent-Items."

supplemental production months after the deadline to comply with a Court Order is sanctionable under Rule 37(b)(2)(A).

Many of the documents Defendants produced on April 25, 2025, were created between September 2024 and March 2025. For these documents, Defendants had an ongoing obligation under Rule 26(e) to supplement their prior productions "in a timely manner" with information "the party learn[ed]" made their prior productions "incomplete or incorrect" "in some material respect." Fed. R. Civ. P. 26(e)(1)(A). Defendants failed to make a timely supplementation on their own and only did so in response to a specific request from CLF. This is sanctionable under Rule 37(c). The materials were known to Defendants as the two individuals regularly meeting and emailing with the ALL4, Inc. consultants are Theresa Geijer and Michael Sullivan who are the primary employees and custodians at Shell involved in this case. In fact, Defendants' Initial Disclosures only name two Shell employees as individuals likely to have relevant information under Rule 26(a)(1)(A)(i) and they are Ms. Geijer and Mr. Sullivan. Defs. Init. Disclosures (Feb. 11, 2022), ECF 181-11 at 2–3.

Rule 26(e) requires information be produced when it becomes known to "the party" and it is almost certainly the case that, at a minimum, Defendants' counsel became aware of this information while preparing Michael Sullivan to testify as Rule 30(b)(6) witness, which he did on February 6, 2025. *See generally Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 357 (W.D.N.Y. 2011) (duty to supplement applies "whether the corrective information is learned by the client or the attorney"). Among the topics Mr. Sullivan was prepared to testify on are many that could have involved discussions of the ALL4, Inc. ███████, but there are three topics where it would be almost certain the ongoing ALL4, Inc. ███████ were discussed:

- Topic 5: "Defendant's knowledge of risks to the Terminal from severe weather (e.g., hurricanes, tropical storms, flooding, storm surge) whether exacerbated

by climate change impacts (e.g., sea level rise) or not."

- Topic 18: "Steps taken to prevent or mitigate the carrying away of pollutants and solid waste from the Terminal by waters of a base flood (i.e., a flood that has a 1 percent or greater chance of recurring in any year or a flood of a magnitude equaled or exceeded once in 100 years on the average over a significantly long period)."
- Topic 25: "The present impacts and risks at the Terminal due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding."

*See* CLF Notice for 30(b)(6) Dep. (Feb. 5, 2025), ECF 550-1 at 5, 6, 7; *see also* Stip. of Dismissal (Feb. 11, 2025), ECF 527 at 2 (noting Mr. Sullivan was the designated witness for topics 3(a) and 3(f), 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 25, 28, and 29). When preparing Mr. Sullivan to testify on Topic 5, "Defendant's knowledge of risks to the Terminal from severe weather," the most recent ███████████████████████████████████████████ ███████████████████████████████████████████████. In preparation, Mr. Sullivan and Counsel almost certainly discussed what is included in "Defendant's knowledge," whether it included all assessments over decades, or only knowledge related to the 2011 and 2017 SWPPPs, or whether it included ██████████████████████. Furthermore, Topic 18 even more specifically asks about what is needed to mitigate pollution at the Terminal under a Base Flood scenario, ████████████████████████████████████████████ ████████████████████████████████.

As noted above, it is not plausible that the ongoing engagement with ALL4, Inc. was not known to Defendants until CLF made a specific supplementation request on March 26, 2025. However, even upon that notice, Defendants did not produce the 88 documents for a month. Under Rule 26(e) the phrase "timely manner" is based on the context of the case. "[T]imeliness is not measured by a particular date or event; rather, timeliness means without undue delay upon discovering the information that is to be provided." *Fair Isaac Corp. v. Fed. Ins. Co.*, 337 F.R.D.

413, 419 (D. Minn. 2021). Defendants' production was not timely for three reasons. First, the metadata on fifteen of the documents suggests they were collected in July 2024, meaning that Defendants produced them nine months after they were initially collected. *See Robbins & Myers, Inc.*, 274 F.R.D. at 81 (finding that documents not produced for six months after their creation "were not provided in a 'timely manner,' as required by rule 26(e)(1)(A)"). Second, Defendants produced the documents after their 30(b)(6) depositions in this case, which "substantially and adversely limited [CLF's] effective conduct" of Defendants' 30(b)(6) depositions. *Id.* ("In fact, Plaintiff's belated and limited production occurred following the Rigot deposition, as a result of Defendants' questioning of Rigot, and later demand for the documents . . . substantially and adversely limited Defendants' effective conduct of the Rigot deposition on these material issues raised by" the documents at issue.). Third, Defendants only produced these documents after CLF specifically requested the documents be produced before an expert site visit (which at the time of the request was 15 days away) and the production was made 23 days after most of the documents appear to have been collected. *See supra* n.1 at 15 (noting that the file path metadata appears to indicate most documents were collected on or around April 2, 2025).

Rule 37(b)(2)(A) authorizes sanctions on a party that fails to comply with a court order, and Rule 37(c)(1) authorizes sanctions on a party that fails to supplement discovery responses in the timely manner required by Rule 26(e). The foregoing section outlines three independent grounds for finding Defendants' actions sanctionable: (1) Defendants only produced documents related to an ███████████████████████████████████████ on April 25, 2025. This late production occurred <u>mere days before</u> CLF's deadline to disclose expert reports exactly on this topic and despite Defendants court ordered obligation to have produced many of these materials by August 19, 2024; (2) Defendants

failed to timely supplement their prior productions on their own and as new materials were created, despite preparing a 30(b)(6) topics on these subjects and with a 30(b)(6) witness involved with these activities during this time period;. and (3) Defendants did not timely supplement their prior productions when CLF specifically identified and requested the information, instead waiting a month to produce 88 documents.

The district court has broad discretion in fashioning sanctions for discovery violations. *See, e.g.*, *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002); *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). The only limitations on a district court's "wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2)" are "that the sanctions must be 'just'; and the sanction must relate to the particular claim to which the discovery order was addressed." *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365–66 (2d Cir. 1991). In this instance, Defendants engaged in ███████ at the heart of this case, and did not produce documents relating to it, despite being under a Court order, and then did not timely supplement their productions even when CLF requested they do so. Defendants already reaped advantages from these behaviors as the documents now produced were not known to CLF as it prepared to take 30(b)(6) depositions and made decisions on the necessity of additional fact deposition testimony. The purpose of the rule to supplement is to prevent just this type of unfair gamesmanship and the purpose of the sanction authorities are to ensure parties do not benefit from their own noncompliance and to protect against prejudice to other parties. The factors to consider when selecting an appropriate sanction include the willfulness of the violation, and this court has found a number of behaviors count as "willful," including: "repeated tacit non-production, inadequate production, and delays in production . . . misrepresentations of available documents, to outright and unambiguous defiance of court orders."

19

*Roberts*, 2015 WL 1471889, at *11. CLF believes the subject matter of these documents alone makes their non-production willful, but the additional facts surrounding timing of collection and production also show willfulness. As sanction CLF requests the Court order Defendants to pay for the expedited document review CLF undertook to timely review the documents produced in response to ECF 372, and/or order Defendants to pay the cost of CLF's experts to prepare their initial reports. In addition, CLF requests an additional two hours to re-depose Defendants' 30(b)(6) witness Mr. Sullivan, at Defendants' expense, so that he can be asked questions about the untimely produced documents and information contained therein.

## V.    CONCLUSION

For the foregoing reasons, CLF requests the Court move back all case deadlines by two weeks, or in the alternative, that CLF's deadline to disclose expert reports is be moved back two weeks but all other case deadlines remain the same. To sanction Defendants for their conduct, CLF requests Defendants be ordered to pay the costs CLF incurred to conduct an expedited document review, and/or be ordered to pay the cost of CLF's experts to prepare their initial reports. In addition, CLF requests an additional two hours to re-depose Defendants' 30(b)(6) witness Mr. Sullivan, at Defendants' expense, so that he can be asked questions about the untimely produced documents and information.

Dated: April 28, 2025                          Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ James Y. Meinert*

James Meinert (ct31637)

Zachary Manley (pvh207600)*
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
Tel: (617) 850-1707
E-mail: jmeinert@clf.org
E-mail: zmanley@clf.org


Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 622-3020
Tel: (802) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)
Elizabeth Smith
401 9th St. NW, Suite 630

Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Email: lsinger@motleyrice.com
Email: esmith@motleyrice.com

Michael Pendell (ct27656)
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
Email: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Email: rmazingo@motleyrice.com

*Attorneys for Plaintiff Conservation Law
Foundation, Inc.*

*\*Admitted as Visiting Attorney*

22