**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

CONSERVATION LAW FOUNDATION, INC.,

         Plaintiff,

    v.

SHELL OIL COMPANY, EQUILON
ENTERPRISES LLC D/B/A SHELL OIL
PRODUCTS US, SHELL PETROLEUM, INC.,
TRITON TERMINALING LLC, and MOTIVA
ENTERPRISES LLC,

         Defendants.

Case No: 3:21-cv-00933-VDO

April 30, 2025

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY
MOTION TO AMEND THE SCHEDULING ORDER AND FOR
SANCTIONS (ECF 570)**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 4

   1.   Applicable Regulatory Framework ...................................................................... 4

   2.   Engagement of All4 Regarding Anticipatory Compliance with Draft Permit ............... 5

   3.   Prior Production of Documents Regarding Work Performed by All4 ........................... 5

   4.   Plaintiff's Request for Supplementation of Written Discovery ...................................... 6

III.    LEGAL STANDARD ........................................................................................ 7

   1.   Required Showing to Modify Scheduling Order ...................................................... 7

   2.   Higher Burden Required to Impose Sanctions ........................................................ 8

IV.    ARGUMENT ................................................................................................... 10

   A.   Plaintiff Has Not Shown that an Extension of the Expert Disclosure Deadline or Sanctions Is Warranted ........................................................................................ 10

      1.   Defendants' Disclosure of Additional All4 Documents Does Not Justify an Extension of the Expert Witness Deadline ............................................... 10

      2.   Defendants' Disclosure of Additional All4 Documents Does Not Justify Granting CLF's Request for Sanctions ................................................... 13

   B.   Plaintiff Has Proffered No Evidence that Mr. Sullivan Was Either Unprepared or Testified Untruthfully at Deposition, and Plaintiff's Suggestion to the Contrary is Inappropriate .................................................................................................. 15

   C.   Plaintiff Failed to Satisfy the Procedural Requirements to File this Motion by Refusing to Meaningfully Confer with Defendants and Failing to Follow this Court's Protocols for Reporting Impasse on Discovery Disputes (ECF 473) ........................................... 20

V.    CONCLUSION .............................................................................................. 22

## I.  INTRODUCTION

Plaintiff has not justified an extension of the deadline to produce expert reports that has been in place since January 13, 2025 (ECF 507).  In its constant pursuit of more discovery and more time, Plaintiff has drummed up a purported "emergency"—along with an extreme request for sanctions against Defendants—because Defendants produced just 88 documents (at Plaintiff's request), of which only 34 of those documents (some of which Plaintiff already had) pre-dated Defendants prior document production deadline under the Court's Order in ECF 372.  These documents are all associated with work performed by non-party consultant All4, Inc. ("All4").  Absent a stay of all discovery and proceedings related to Plaintiff's "climate change" and "climate adaptation" allegations, which Defendants explain below, the production of this limited set of documents is no reason to extend the deadlines.  There has been more than enough discovery in this case—it needs to end so the case can move forward.

The 25 documents created before the ECF 372 deadline that Plaintiff raises in its Motion concern recent services All4 has performed to prepare both the New Haven, Connecticut Terminal ("New Haven Terminal") and the Providence, Rhode Island Terminal ("Providence Terminal") for new permitting requirements that are not yet in effect but which both terminals will need to be prepared to address once the corresponding draft permit is issued as final.  *See* Pl. Mot., at 13-15.  As to the New Haven Terminal, All4 was hired in June 2024 to assist Defendants with the anticipated significant changes to the regulatory framework that will become effective when the Connecticut Department of Energy and Environmental Protection ("CT DEEP") finalizes its draft General Permit for the Discharge of Stormwater Associated with Industrial Activity ("Draft Permit").[1]  Most importantly, the Draft Permit will expressly require, for the first time, that

---

[1] CT DEEP first published the Draft Permit in March 2024, and reissued it in January 2025.  CT DEEP has advised that there will be a final public hearing regarding the issuance of the Draft

industrial stormwater permittees consider certain resilience measures in their operation of facilities such as the New Haven Terminal.

None of All4's work concerned either the permit at issue in this case or its predecessors. Nor do any of the communications referenced in the All4 documents relate to the Stormwater Pollution Prevention Plan ("SWPPP") in effect at the New Haven Terminal, any prior SWPPPs, or the current permit. To the contrary, All4's work is preparatory work, in draft form, and associated with the Draft Permit, **not** the issues in this case regarding the current permit. And of course, All4's work does not relate to any of Plaintiff's claims under the Resource Conservation and Recovery Act.

CT DEEP itself has referred to these climate resilience measures as "new" and "significant changes" to the old regulatory framework, and the finalization of the Draft Permit will have wide-reaching implications for both the future operation of the Terminal as well as the viability of Plaintiff's claims in this case. Indeed, a stay of **all** discovery and proceedings related to Plaintiff's "climate change" and "climate adaptation" allegations is warranted until the finalization of the Draft Permit to avoid the continued waste of very substantial time and resources related to claims that will be eviscerated by this significant regulatory action.[2]

It is undisputed that the **2021** General Permit for Discharge of Stormwater Associated with Industrial Activity issued by CT DEEP (the "2021 Permit") is the operative permit at issue in this case and will continue to govern operations at the Terminal until the Draft Permit is finalized. Since the filing of this lawsuit over four years ago, the parties have been engaged in extensive

_____

Permit on May 13, 2025, and it is currently anticipated that the Draft Permit will be finalized shortly thereafter.

[2] The parties met and conferred over Defendants' proposal to stay discovery and proceedings on April 28, 2025, and Plaintiff advised that it will not consent to the proposed stay. Accordingly, Defendants anticipate that Court intervention will become necessary on this issue in the near future.

discovery and motion practice related to the specific requirements in the 2021 Permit, including the parties' respective positions over what the language of that permit does—and does not—require Defendants to do. Those questions, including the Court's initial finding of a question of fact in the absence of clear guidance from CT DEEP, have now been answered, and Plaintiff cannot reinterpret the 2021 Permit in a manner contrary to CT DEEP through this lawsuit. In any case, All4's work, and the documents related to that work, relate only to Defendants' upcoming compliance with anticipated regulatory changes in either New Haven or Rhode Island. It has nothing to do with the 2021 Permit, let alone whether Defendants have complied with the 2021 Permit, which does not include those requirements for "climate change" considerations in operating the New Haven Terminal.

Defendants engaged All4 in June 2024 to analyze the New Haven Terminal and develop recommendations, if any, for the preparation of a new Stormwater Pollution and Prevention Plan ("SWPPP") that will comply with the new requirements of the Draft Permit, including its provisions that Defendants, for the first time, consider certain "climate change" factors in operating the New Haven Terminal. It is undeniable that CT DEEP has now confirmed that the 2021 Permit imposed no such requirements, and no work performed by All4 regarding the anticipated finalization of the Draft Permit can change that fact.

There was nothing improper with Defendants' production of these All4 documents, let alone anything to justify an "emergency" extension of discovery deadlines (which have been in place for over 100 days) concerning this case about Defendants' compliance with the 2021 Permit. Accordingly, no sanctions are warranted. Nor does the cited testimony, which Plaintiff takes out of context, support a request for sanctions—the testimony was truthful and accurate.

As discussed below—and absent a complete stay of all discovery and proceedings regarding Plaintiff's "climate adaptation" allegations—there is no basis in Defendants' production of the All4

documents (or otherwise) to justify the extension of a deadline to produce expert reports that Plaintiff has had four years to prepare, nor for the imposition of any sanctions upon Defendants. Plaintiff's Motion should be denied.

## II. BACKGROUND

### 1. Applicable Regulatory Framework

On March 27, 2024, CT DEEP published the Draft Permit online for public comment.[3]  The Draft Permit, and associated guidance documents and pronouncements from CT DEEP, advised permittees of CT DEEP's intent to promulgate new provisions that, for the first time, would require permittees to expressly consider "climate change" factors in operating facilities under its purview, including the New Haven Terminal.  Specifically, CT DEEP has expressed as follows:

> "(v) Resilience Measures. Implementing structural improvements, enhanced/resilient pollution prevention measures, and other mitigation measures **can help to minimize impacts from stormwater discharges from major storm events such as hurricanes, storm surge, extreme/heavy precipitation, and flood events**. If such SCMs are already in place due to existing requirements mandated by other state, local or federal agencies, the permittee should document in their SWPPP a brief description of the controls and a reference to the existing requirement(s)."

> CT DEEP revised draft New Permit (issued Jan. 7, 2025) p. 42. (emphasis added).[4]

> "The Resilience Measures element is a **new component of the SWPPP** and was added in response to Connecticut's commitment to prepare for ongoing climate changes."

---

[3] *See* https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwater-gp.

[4] https://portal.ct.gov/-/media/deep/water_regulating_and_discharges/stormwater/industrial/2024-industrial-sw-gp-reissuance---public-notice-docs/december-2024-public-notice/2024-11-25_draft-2024-stormwater-igp-permit_ahd.pdf?rev=af1c80877444485a9c7de092bdbb25e6&hash=165C40AF003DF4AFF17705F60EC1436B

*See* CT DEEP Fact Sheet (issued Jan. 7, 2025) (emphasis added).[5]

There is no dispute that the 2021 Permit does not express such language.

On January 7, 2025, CT DEEP subsequently issued a revised version of the Draft Permit for public comment. *Id*. At the same time, CT DEEP published a "Summary of Changes for the Second Draft Permit" that explains the changes made to the Draft Permit since its initial publication in March 2024. *Id*. CT DEEP reiterated its guidance that the Second Draft Permit contains "new" provisions and has since also explained that "[t]he only timely challenge made to the contents of the Second Draft Permit pertains to section 7(j)(31) Sector AE" regarding "Bulk Solid De-icing Material Storage.[6] The Second Draft Permit is now marching toward a final public hearing on May 13, 2025 and is anticipated to be finalized shortly thereafter.

## 2. Engagement of All4 Regarding Anticipatory Compliance with Draft Permit

In June 2024, Defendants contacted All4 regarding an assessment of what would be required at the New Haven Terminal to comply with the new requirements of the Draft Permit. Plaintiff concedes this point. *See* Pl. Mot., at 2-3; *see also* Pl. Mot., Ex. B, at 3 (citing Theresa Geijer's email to All4 dated June 19, 2024).

## 3. Prior Production of Documents Regarding Work Performed by All4

Since this case was filed on July 7, 2021, Defendants have spent millions of dollars collecting, reviewing, and producing over 315,000 documents from 360 Shell and Motiva custodial

---

[5] https://portal.ct.gov/-/media/deep/water_regulating_and_discharges/stormwater/industrial/2024-industrial-sw-gp-reissuance---public-notice-docs/december-2024-public-notice/2024-11-20_industrial-gp_fact_sheet_final_ahd.pdf?rev=f87f49fea3e14640b34e52827590bc85&hash=C6395966D8A0CBD4197AD44066636942

[6] https://portal.ct.gov/deep/public-notices/public-notices-proposed-actions---opportunity-for-comment/proposed-general-permits/notice-of-informational-hearing-general-permit-for-the-discharge-of-stormwater-industrial-activitie.

and non-custodial data sources, as well as written responses to Plaintiff's 130 discovery requests served on Defendants in this case alone.[7]  Indeed, Defendants previously produced  documents on the very subject Plaintiff now complains about—All4's work.  Defendants previously produced 25 documents regarding All4's work for Defendants, only 7 of which are documents Plaintiff references in its motion.  *See* Pl.'s Mot., at 14.

Clearly, Plaintiff was well aware of the subject and nature of All4's work long before Plaintiff asked Defendants to supplement their responses—in fact, the reason why Plaintiff asked for the supplementation in the first place was because they knew about All4's work from the documents Defendants had previously produced.

### 4. Plaintiff's Request for Supplementation of Written Discovery

On March 26, 2025, Plaintiff requested that Defendants supplement their prior productions "as they relate to any work being conducted by the consultant ALL4 Inc. to draft a SWPPP for the New Haven and Providence Terminals."  *See* Pl. Mot., Ex. B, Email Chain between J. Meinert and R. Jones dated March 26-31, 2025 at 3.  In connection with this request, counsel for Plaintiff stated:

> "As of Defendants' **August 2024 productions**, the environmental coordinator for the New Haven Terminal, Theresa Geijer, **had begun a dialog[ue] with All4 to create updated SWPPPs for New Haven and Providence. Geijer Email (June 19, 2024) (SOPUS_NHVN02367774); see also Geijer Email (June 19, 2024)(SOPUS_NHVN01844896).** Any communications related to that work since that time and any work product need to be produced under Rule 26(e)."
> *Id*. (emphasis added).

Pursuant to the scheduling order, the deadline to complete fact discovery was March 31, 2025.  *See* ECF 507.

On April 7, 2025, Defendants informed Plaintiff that they were working to supplement their

---

[7] On top of these, Plaintiff served Defendants with 284 separate discovery requests in its related action pending in the District of Rhode Island.

production as Plaintiff requested.  *See* ECF 569-3, Ex. C to CLF's Motion, Email from R. Jones

dated April 7, 2025.  Less than a month after receiving Plaintiff's request, Defendants collected,

reviewed, and produced 88 responsive, supplemental documents on April 25, 2025.

### III. LEGAL STANDARD

#### 1. <u>Required Showing to Modify Scheduling Order</u>

Federal Rule of Civil Procedure Rule 16(b)(4) provides that a schedule may be modified

only for good cause and with the Court's consent.  The Second Circuit has held that "[w]hether

good cause exists turns on the 'diligence of the moving party.'"  *See Cardew v. New York State*

*Dep't of Corr. & Cmty. Supervision*, 743 F. Supp. 3d 523, 526 (W.D.N.Y. 2024) (quoting *Callahan*

*v. Cnty. of Suffolk*, 96 F.4th 362, 370 (2d Cir. 2024)).  Of course, the moving party bears the burden

of establishing good cause.  *See id*. (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340

(2d Cir. 2000)).

Courts routinely decline to find good cause if the party "knew, or should have known" steps

it needed to take (*e.g.*, amending a pleading, deposing a witness, etc.) "in advance of the deadline

sought to be extended."  *Id*. (citing *Smith v. Bradt*, 329 F.R.D. 500, 505 (W.D.N.Y. 2019)); *see also*

*Shemendera v. First Niagara Bank N.A.*, 288 F.R.D. 251, 253 n.3 (W.D.N.Y. 2012) (finding no

good cause where counsel did "little or nothing to schedule depositions" until shortly before the

deadline).  To grant a request to extend discovery deadlines, the Court should consider whether the

party "had ample time in which to pursue the discovery that it now" seeks or "claims is essential."

*Cardew*, 743 F. Supp. 3d at 527 (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De*

*Corp.*, 769 F.2d 919, 927 (2d Cir. 1985)).

Courts within the Second Circuit have routinely held that a motion to permit untimely

discovery "should be denied where the moving party has not persuaded the Court that it was

*impossible* to complete the discovery by the established deadline.'"  *Cardew*, 743 F. Supp. 3d at

528 (denying request for extension upon finding that it was **possible** for the party to have served their discovery requests years ago) (citing *Gotlin v. Lederman*, No. 04-CV-3736 (ILG) (RLM), 05–CV–1899 (ILG) (RLM), 2007 WL 1429431, at *3 (E.D.N.Y. May 7, 2007) (emphasis added) (quoting *Gavenda v. Orleans Cnty.*, No. 95-CV-0251E, 1996 WL 377091, at *1 (W.D.N.Y. June 19, 1996)) (collecting cases), *report and recommendation adopted*, Nos. 04 CV 3736 (ILG) and 05 CV 1899(ILG), 2007 WL 2088875 (E.D.N.Y. July 19, 2007); *Namin v. Broadridge Financial Sols., Inc.*, No. 3:22-cv-749 (RNC), 2023 WL 10802679, at *3 (D. Conn. July 17, 2023) ("Parties who fail to use the early months of a year-long discovery period, trusting that the discovery will be exactly where they expect it to be in the last month, do so at their peril.")).

### 2. <u>Higher Burden Required to Impose Sanctions</u>

The Court may impose sanctions **only** if it finds, with a high degree of specificity, "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." *Raleigh v. Baribault*, 729 F. Supp. 3d 250, 254 (D. Conn. 2024); *see also Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *Milltex Indus. Corp. v. Jacquard Lace Co. Ltd.*, 55 F.3d 34, 38 (2d Cir. 1995); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986).

In the context of written discovery, courts require a party moving for sanctions to first demonstrate two predicates under Rule 37(b): (1) a "court order directing compliance with discovery requests," and (2) "non-compliance with that order[.]" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 356 (S.D.N.Y. 2023) (quoting *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *9 (S.D.N.Y. 2017)). To impose sanctions, courts must consider: "(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of ... the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4)

the possibility of a continuance." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) (quoting *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).  Absent exceptional circumstances, a court must consider the efficacy of less drastic remedies before imposing a severe sanction for a discovery violation.  *In re SageCrest II, LLC*, 444 B.R. 20, 26 (D. Conn. 2011).

Even where there is an ostensible violation of Rule 26, district courts should not impose sanctions under Rule 37(c)(1) where a party's failure to comply was "substantially justified" or where the conduct was "harmless."  Fed. R. Civ. P. 37(c)(1).  "Substantial justification" is "'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request,' or 'if there exists a genuine dispute concerning compliance.'"  *Id*. (quoting *AIG Global Asset Management Holdings v. Branch*, 2005 WL 425494, at *l (S.D.N.Y. 2005)).  On the other hand, a violation is "harmless" when there is an absence of prejudice to the opposing party.  *See id*. (citing *Williams v. County of Orange*, 2005 WL 6001507, at *3 (S.D.N.Y. 2005)).

Even when the court is confronted with the extreme facts needed to justify sanctions, the award must still be subject to certain limitations.  The United States Supreme Court has made clear that any sanction to reimburse legal fees and costs incurred by the prevailing party must be **compensatory** rather than **punitive** in nature.  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 826–30 (1994) (distinguishing compensatory from punitive sanctions and specifying the procedures needed to impose each kind).  And the severity of the sanction must be "commensurate with the non-compliance."  *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).  That means any fee award may go no further than to redress the wronged party "for losses sustained"—it may not impose an **additional** amount as punishment for the sanctioned party's misbehavior.  *Id*. (citing

*Bagwell*, 512 U.S. at 829) (quoting *United States v. Mine Workers*, 330 U.S. 258, 304 (1947)).

In assessing the grant of any sanctions award permitting the recovery of attorneys' fees, the Supreme Court has applied the "but-for" test, which limits recovery to "only the portion of his fees that he would not have paid for **but for**" the misconduct. *Id.* at 109 (emphasis added). In other words, if "the cost[] would have been incurred in the absence of the discovery violation, then the court (possessing only the power to compensate for the harm the misconduct has caused) must leave it alone." *Id*.

### IV. ARGUMENT

#### A. Plaintiff Has Not Shown that an Extension of the Expert Disclosure Deadline or Sanctions Is Warranted

##### 1. Defendants' Disclosure of Additional All4 Documents Does Not Justify an Extension of the Expert Witness Deadline

Defendants' supplemental production of just 88 documents, the vast majority of which were not even created until after the ECF 372 compliance deadline, do not justify Plaintiff's request to modify the scheduling order, let alone for sanctions. CLF does not dispute, nor could it, that the All4 documents produced on April 25, 2025 relate only to new draft permits governing the discharge of industrial stormwater published for public comment by either CT DEEP or the Rhode Island Department of Environmental Management ("RIDEM"). As such, the All4 documents are not relevant to CLF's analysis in this case for two reasons: (1) they relate to regulatory requirements published by RIDEM that apply to the Providence Terminal that is not at issue in this case; and (2) they have nothing to do with the 2021 Permit at issue in this case, let alone whether Defendants have complied with the 2021 Permit.

Nothing about Plaintiff's receipt of the All4 documents prevents Plaintiff from meeting its expert disclosure obligations. There is no dispute that All4's work concerns only proposed new regulatory requirements at either the New Haven Terminal or the Rhode Island Terminal.

10

Plaintiff has known about the nature of All4's work since the documents were produced before the ECF 372 deadline on August 19, 2024.  Plaintiff has represented that the documents produced on April 25, 2025 contain new information, however, CLF certified on December 19, 2024 that it completed its review of each and every document produced by Defendants in compliance with ECF 372.  *See* ECF 499.  Despite certifying review on December 19, 2024, it took Plaintiff 98 additional days to raise this issue with Defendants on March 26, 2025.  Additionally, on page 14 of its motion, Plaintiff states: "Five of the newly produced documents are continuations of the same email chains where Defendants had produced some initial emails," and further, "…twenty are new email chains between those individuals from the same time period."  This characterization is not accurate.  *See* Ex. 1, R. Jones Affidavit at ¶ 6.  Of the 25 documents CLF identifies as having been produced after ECF 372, there are, in fact, 9 emails and 16 attachments.  *Id*.  Of the 9 emails, 7 are part of email chains that were previously produced prior to the August 19, 2024 deadline, either in New Haven or Providence.  *Id*.  These are the very same email chains CLF correctly cites in its motion as previously produced.  *Id*.

Furthermore, 15 of the 16 attachments are duplicates of documents that were produced before the August 19, 2024 deadline—either in the New Haven matter or in the parallel Providence matter.  *Id*.  CLF further references a table on the same page of its motion, stating: "The email chains and documents produced before and after the ECF 372 deadline are shown in the table below," and lists seven documents under the "Produced Before the ECF 372 Deadline" section.  However, CLF omits 16 attachments associated with six of the seven cited documents.  *Id*.  To provide clarity and context, Appendix A of Ex. 1, R. Jones Affidavit, includes an updated version of CLF's chart, reflecting the full set of documents.

Defendants acknowledge that 34 of the 88 documents produced in Defendants' supplemental production were created before the production deadline ordered in ECF 372.  *See*

ECF 569, CLF's Motion at p. 13; *see also*, Ex. 1, R. Jones Affidavit ¶ 9.  To address the 25

documents created before the production deadline order in ECF 372 cited by CLF (*Id.* at 14-15), 13

documents were not produced in response to ECF 372 because they related to the Providence

facility only.  *Id*, ¶ 10.  The remaining 12 documents are duplicates or more inclusive threads of

documents produced before the ECF 372 deadline.  *Id*.  *See also* Ex. 1, R. Jones Affidavit at App'x.

B.

     As of February 11, 2025, all documents produced in the Rhode Island matter were

considered produced in the Connecticut matter and vice-versa.  *See* ECF No. 527 Stipulation of

Dismissal of Shell Oil Company & Shell Petroleum, Inc. ("The Parties are allowed to use all

discovery produced in this case in the Rhode Island litigation and vice-versa; however, documents

will remain subject to their respective protective orders in each matter, except all materials will

remain available until the resolution of both matters, after which all material produced in this case

will be destroyed pursuant to the Standing Protective Order in this case").  Therefore, CLF's

experts were free to rely upon and incorporate these documents to the extent they wished prior to

the re-production of these documents in this case.

     In short, Plaintiff has not shown that good cause exists to extend any deadline in the

scheduling order.  *See Parker*, 204 F.3d at 340 (moving party must establish good cause); *Cardew*,

743 F. Supp. 3d at 528 (motion to extend deadlines "should be denied where the moving party has

not persuaded the Court that it was *impossible* to complete the discovery by the established

deadline.'").  A recent, small production of documents on a subject Plaintiff has long known about

does not constitute good cause.  The Court should reject Plaintiff's request for yet another

discovery delay.

###   2.   Defendants' Disclosure of Additional All4 Documents Does Not Justify Granting CLF's Request for Sanctions

Even if the Court believes some extension is warranted, the Court should not award sanctions to Plaintiff.  Plaintiff has not, and cannot, show that the circumstances of this case call for the extreme remedy of sanctions against Defendants.  *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) ("To impose sanctions, courts must consider: "(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of ... the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.") (quoting *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)).

First, Defendants have complied with their discovery requirements in good faith.  Defendants did not improperly withhold documents to gain some kind of litigation advantage—just the opposite.  In fact, Defendants had previously produced documents from All4 showing the nature and scope of its work.  When Plaintiff asked Defendants to supplement their responses, they did so.  There is simply no failure to meet a discovery requirement here.

Second, the All4 documents identified in Plaintiff's Motion have nothing to do with the 2021 Permit.  While the Draft Permit itself and CT DEEP's guidance about the changes in the Draft Permit are critical for the legal interpretation of the 2021 Permit, All4's work related to compliance with the Draft Permit has nothing to do with Plaintiff's claims.  Even if there was something wrong with how Defendants disclosed these documents (and there was not), the documents do not change anything about the case.

Third, Plaintiff has not suffered any significant prejudice from the production of the All4 documents.  Plaintiff already knew about All4's work from documents Defendants previously

produced.  It did not take long for Plaintiff to review these documents, perhaps because they already had many of them.  Nor is there any reason to believe that any of these documents would affect Plaintiff's strategy in any way.  For example, Plaintiff has not shown that it will need additional experts due to a previously unknown fact in any of these documents, and the current schedule also has provisions for rebuttal reports.  Against this backdrop, the idea that any of these documents could change any of Plaintiff's experts' opinions is simply not credible.  Plaintiff has not been prejudiced by Defendants' production of the All4 documents at all.

In any event, Defendants agree that a brief continuance is possible and in fact warranted, however via a stay of all expert discovery pending CT DEEP's issuance of the final permit.  As discussed above, the Draft Permit and associated guidance, once final, will control the interpretation of the 2021 Permit and render Plaintiff's Clean Water Act claims invalid.  There is no reason for any of the parties to waste more resources on these claims.  At a minimum, the Court should stay expert discovery until it can rule on whether Plaintiff's claims can survive CT DEEP's very clear pronouncement that these requirements are "new" and represent "significant changes" to the prior regulatory framework.

All of the factors weigh against an award of sanctions.  They are not warranted, and the Court should reject Plaintiff's request.

Even if the Court believes sanctions are warranted, which they are not, Plaintiff has still failed to justify any of its requests for sanctions against Defendants.  CLF requested the Court grant three separate sanctions against Defendants: (1) CLF's costs associated with the "expedited" review of 88 documents; (2) costs incurred by CLF's experts in preparing their initial reports; and (3) the compulsion of an additional deposition of Mr. Sullivan at Defendants' expense.  None of these sanctions are recoverable here.

The United States Supreme Court held that in assessing the amount of any fee award the

"but-for" test must be applied, which limits recovery to "only the portion of his fees that he would not have paid for but for" the misconduct. *Goodyear Tire & Rubber Co.*, 581 U.S. at 109. In other words, if "'the cost[] **would have been incurred in the absence of'** the discovery violation", then the court (possessing only the power to compensate for the harm the misconduct has caused) **must leave it alone**." *Id*. (emphasis added). Here CLF has not shown, nor could it, that it never would have otherwise reviewed these 88 documents or prepared initial expert reports **but for** Defendants' alleged failure to produce the 88 documents earlier in discovery. As such, CLF's request for "all costs" associated with either task is clearly not recoverable under federal law. Plaintiff's requests for sanctions related to the deposition of Michael Sullivan are addressed below.

### B. Plaintiff Has Proffered No Evidence that Mr. Sullivan Was Either Unprepared or Testified Untruthfully at Deposition, and Plaintiff's Suggestion to the Contrary is Inappropriate

Plaintiff's gratuitous attack on the preparation and truthfulness of testimony from Defendants' Rule 30(b)(6) witness, Michael Sullivan, is likewise unfounded. Plaintiff has provided no support for its serious accusation that anyone testified "untruthfully" at any point in this case. The specific portions of his testimony that Plaintiff attaches to its Motion confirm this. *See* Pl. Mot., at 3. The record reflects that Mr. Sullivan testified truthfully, to the best of his ability, in response to all questions that were asked of him and to the extent they were actually noticed by Plaintiff. *See* Pl. Mot., Ex. A, at 107:17-25 (providing incomplete transcript of Mr. Sullivan's answer to question regarding sea level rise scenarios, merely testifying that Defendants' risk management processes take into account various risk scenarios, including "storm surge" and "sea level rise"); 109:10-15 (testifying that Defendants' risk management processes would take into account a risk related to sea level rise if it was determined to be a "credible scenario"); 250:21-251:2 (answering a specific question about whether Defendants conducted a "climate change risk assessment" for the Terminal's SWPPP and further answering that he was not personally aware

whether such assessments have been completed at other facilities); 252:21-253:2 (similar).[8]  There

is no basis to suggest that Mr. Sullivan answered any of these questions untruthfully, evasively, or

in any way that would implicate Defendants' obligation to prepare their corporate representative to

testify regarding the contents of the deposition notice.

Nor do any of the documents attached to Plaintiff's Motion support its argument that any of

the testimony was untruthful.  In fact, the only item of correspondence attached to Plaintiff's

Motion that **even includes Mr. Sullivan** is an e-mail sent to him by Shane Galloway of All4 asking

(and following up upon receiving no response) about berm height measurements at the Terminal.

*See* Pl. Mot., Ex. F, Dec. 10, 2024 E-Mail from S. Galloway to M. Sullivan re: "New Haven

Terminal Berm").  Plaintiff has not pointed to anything in Mr. Sullivan's deposition transcript that

even implicates berm height measurements, merely speculating that because the e-mail chain does

not include a response from Mr. Sullivan, there might be some additional e-mail from Mr. Sullivan

that Plaintiff's experts would want to see before preparing their expert reports.  *See* Pl. Mot., at 8.[9]

This unfounded speculation does not warrant any relief.

Plaintiff's contention that Mr. Sullivan was not properly prepared is also flatly wrong.

Notably, no suggestion or argument about this was made after his deposition.  Indeed, Mr. Sullivan

has attended each of Plaintiff's three site inspections and made himself available to answer

questions posed by CLF's experts at those inspections.

Under Rule 30(b)(6), "an entity must make a good-faith effort to designate the person or

---

[8]Defendants join in Plaintiff's Motion to Seal its Emergency Motion to Amend (ECF 569) and
corresponding exhibits filed at ECF 570.  Defendants also intend to file a brief in support of
Plaintiff's Motion to Amend (ECF 570).

[9] Again, Defendants join in Plaintiff's Motion to Seal its Emergency Motion to Amend (ECF 569)
and corresponding exhibits filed at ECF 570.  Defendants also intend to file a motion in support of
Plaintiff's Motion to Amend (ECF 570).

persons with the knowledge sought and to prepare those individuals so that they may fully answer the questions posed on the relevant subject matters." *Expert Choice, Inc. v. Gartner, Inc.*, 2006 WL 8447096, at *4 (D. Conn. 2006). Mr. Sullivan was fully prepared to provide testimony on the designated topics, and did so for over six hours of record time and 345 transcript pages. Moreover, Plaintiff's Notice of Rule 30(b)(6) Deposition was served nearly one full year before the Draft Permit was published, and in any event, only included topics regarding permits that have been "in effect" since 2011. *See* Ex. 2, Plaintiff's May 14, 2023 Notice of Oral Deposition of Equilon Enterprises LLC d/b/a Shell Oil Products ("30(b)(6) Depo. Notice") (containing several topics of questions regarding the permit "that is currently in effect and any other version(s) of the General Permit that have been in effect since January 1, 2011"); *see also* Apr. 15, 2025 Ruling and Order on Discovery Dispute, ECF 566, at 4 (this Court ruling that challenged testimony on subjects that "appear to be outside the scope of the topics" does not support a request for sanctions). That necessarily excludes any obligation for Defendants to prepare a witness to discuss draft permits that are not yet "in effect." Clearly, no sanctions are warranted based on Mr. Sullivan's preparation for questions outside the scope of the deposition notice. Simply put, Defendants have already satisfied their obligation to produce a witness with knowledge to testify—and testify truthfully—on these broad topics as served by Plaintiff, and no additional deposition is justified.[10]

As this Court has already recognized in a similar dispute regarding a different Rule 30(b)(6) representative, "a Rule 30(b)(6) deposition is not designed to be a memory test." ECF 566, at 2 (citing *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 19 CV 226 (ILG) (CLP), 2022 WL 2702378, at *10 (E.D.N.Y. 2022). The Court further recognized that "there is a 'limit to the specificity of the

---

[10] Even if the Court allows Plaintiff to take an additional deposition of Mr. Sullivan, which Defendants vehemently oppose, such deposition should be limited to the time that Plaintiff left on the table after concluding the deposition of Mr. Sullivan on February 6, 2025.

information the deponent can reasonably be expected to provide.'" *Id.* (citing *U.S. ex rel. Fago v. M & T Mort. Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006)); *see also* ECF 566, at 2 ("[A] missed answer here or there does not constitute a failure to appear[.]").  Moreover, no witness is expected to recall every minute fact or circumstance under the sun, just because it may fall under the broad umbrella of a noticed topic.  *See Harger Da Silva v. New York City Transit Auth.*, No. 17CIV4550FBVMS, 2023 WL 8096925, at *4 (E.D.N.Y. 2023) ("further stating that "Rule 30(b)(6) does not require the organization to be pressed into the role of a private investigator for the plaintiff.") (internal citation and quotations omitted); ECF 566, at 3 ("[T]he fact that 'one might envision additional preparatory steps' a witness may have taken does not itself demonstrate sanctionable unpreparedness.") (citing *K.S. v. City of New York*, No. 21 CIV. 4649 (JSR) (SLC), 2025 WL 307348, at *4 (S.D.N.Y. Jan. 27, 2025)).

Further, parties conducting depositions pursuant to Rule 30(b)(6) are required to "confine the examination to the matters stated with reasonable particularity" in the topics contained in the deposition notice.  *Falchenberg v. N.Y. State Dept. of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y.2008) (citation omitted).  Plaintiff cannot demand answers to questions outside the scope of the noticed topics.  "If the 30(b)(6) deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem."  *Id.*

"[I]n order to impose sanctions for [inadequate testimony], the inadequacies of the testimony must be egregious."  *Expert Choice, Inc. v. Gartner, Inc.*, No. 303CV02234CFDTPS, 2006 WL 8447096, at *4 (D. Conn. June 21, 2006) (internal citations omitted).  The record shows that Mr. Sullivan's testimony was not inadequate, and certainly not egregious.  *See Harger Da Silva,* 2023 WL 8096925, at *4 ("A party seeking sanctions for an unprepared Rule 30(b)(6) witness must show that the deponent's inability to testify was 'egregious and not merely lacking in desired specificity in discrete areas.' Even when there is deficient Rule 30(b)(6) testimony, courts

are reluctant to award sanctions.").

Based on the foregoing, even if Mr. Sullivan could not recall certain highly particularized details regarding specific deposition questions or documents, this does not suggest he was insufficiently prepared. And it certainly does not establish that Mr. Sullivan lied in giving his answer to any particular question. At most, Mr. Sullivan's answers to the questions identified in Plaintiff's Motion may provide fodder for cross-examination. They do not render his testimony invalid or untrue. *See* ECF 566, at 3 (ruling that "if any of [the witness's] answers were inconsistent with other evidence in the record, such inconsistencies implicate the corporation's credibility, not its preparedness.") (citing *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 35 (2d Cir. 2015) (noting, as this Court recognized, that the testimony of 30(b)(6) witnesses sometimes requires "correcting, explaining, or supplementing," though "a party whose testimony 'evolves' risks its credibility")); *see also Fashion Exch. LLC v. Hybrid Promotions, LLC,* 2019 WL 1533212, at *1 (S.D.N.Y. 2019) ("If the deponent answers on behalf of the organization that it cannot remember a certain fact, that inability to remember is imputed to the organization but does not invalidate the deposition."). Even if Mr. Sullivan's "level of preparation might have led to less specificity than CLF desired"—which Defendants contest—that does not render Mr. Sullivan "wholly unable" to present Defendants' knowledge on the noticed topics, nor does it justify the imposition of sanctions, including any supplemental deposition on these questions or documents. *See* ECF 566, at 4.

The same is true for Plaintiff's insinuation that Mr. Sullivan was obligated to prepare to testify about efforts undertaken to comply with anticipated provisions of the Draft Permit. The Draft Permit is distinct from the 2021 Permit at issue in this case. More importantly, the Draft Permit was not within the scope of Plaintiff's Rule 30(b)(6) Notice of Deposition. *See* Ex. 2, 30(b)(6) Depo. Notice (containing several topics of questions regarding the permit "that is currently

in effect and any other version(s) of the General Permit that have been in effect since January 1, 2011").

In any event, the record clearly demonstrates that Mr. Sullivan was sufficiently prepared to testify on each of the noticed topics, including the subject matter highlighted in Plaintiff's Motion. There is **zero** support for Plaintiff to assert that any such testimony was untruthful. Plaintiff's request for sanctions associated with Mr. Sullivan's deposition should be denied.

### C. Plaintiff Failed to Satisfy the Procedural Requirements to File this Motion by Refusing to Meaningfully Confer with Defendants and Failing to Follow this Court's Protocols for Reporting Impasse on Discovery Disputes (ECF 473)

Also, the Court should reject Plaintiff's motion because Plaintiff failed to follow this Court's procedures for filing a discovery motion on two levels. First, Plaintiff e-mailed Defendants' counsel asking to meet and confer regarding a potential Motion after 9:00 pm Sunday evening, April 27, 2025, without providing any details or specifics. *See* Ex. 1, R. Jones Affidavit at ¶ 11. The parties then joined a teleconference to discuss Plaintiff's email in the afternoon of Monday, April 28, 2025. *Id* at ¶ 12. However, during the teleconference, Plaintiff refused to provide Defendants with any information regarding the basis for its Motion to extend the expert discovery deadline, or its issues with the All4 document production or deposition testimony that could warrant the extreme sanctions it seeks in this Motion. *Id* at ¶ 13. Plaintiff's counsel responded that Defendants would "see it in the motion once it's filed." *Id*. This did not provide the parties with any meaningful opportunity to meet and confer regarding the relief requested in Plaintiff's Motion, nor any opportunity to have an informed or productive conversation regarding any potential agreement the parties could reach to obviate the requests, as the Rules are intended to provide. *See* ECF 473 (this Court's October 1, 2024 Order requiring the parties to "confer[] with one another and to have made a good faith effort to eliminate or reduce the area of controversy); *see also* D. Conn. Local R. 37(a) ("No motion pursuant to Rules 26 through 37, Fed. R. Civ. P.

shall be filed unless counsel making the motion has conferred, in person or by telephone, with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution."). Defendants' counsel even requested if there was any potential agreement that could resolve Plaintiff's intent to proceed with filing the Motion that Defendants' counsel could discuss with their client, and Plaintiff's counsel advised that there were none. *Id.* at 14.

Shortly after the teleconference concluded around 3:38pm ET, CLF then proceeded with filing its 26-page Motion and exhibits, bypassing this Court's ordered protocol for the presentation of discovery disputes and its limitations on the length of briefing and exhibits. *Id* at ¶ 16.  Clearly, Plaintiff already possessed the information that Defendants' counsel requested on the conference call but refused to provide it.  This includes: (1) Plaintiff's basis for the requested extension, (2) the identity of the documents at issue (which appears to be only 25 of the 88 produced documents), and (3) the identity of the particular portions of Mr. Sullivan's deposition testimony at issue.  *See id*. at ¶ 13.  Instead of providing this meaningful context as required, CLF proceeded with filing its extensive Motion and exhibits in violation of its obligations under the Federal Rule of Civil Procedure, this Court's local Rules, and the Court's prior Discovery Order (ECF 473).

By refusing to provide Defendants with the necessary context, CLF failed to fulfill its obligations to meaningfully meet and confer with Defendants prior to filing this Motion.

Second, CLF failed to follow the Court's specific procedures for advising and briefing the Court on a pending discovery dispute as required in ECF 473.  This Order includes an initial requirement for the parties to initiate a telephone call to chambers to: "(a) advise that they have a discovery dispute; and (b) identify with particularity the nature and scope of the dispute."  *See* ECF 473, at 1.  Defendants suggested to Plaintiff's counsel on the teleconference that this was required, but CLF advised that it did not wish to contact chambers prior to filing its Motion.  *Id*. at 15.

Second, the Discovery Order expressly limits the briefing of a discovery dispute to "letter briefs not exceeding seven single-spaced pages of 12-point type . . .." *See* ECF at 2. The Court's Order also does not allow a party to attach any exhibits, without leave of Court, to their letter briefs. CLF's Motion does not abide by any of these briefing requirements.

Accordingly, CLF failed to follow any of these required procedures before filing its Motion. Had CLF followed those procedures, the areas of dispute may have been able to be narrowed before Court involvement. For example, the Court likely would not have been required to consider the 54 documents post-dating Defendants compliance with ECF 372. This could have been avoided if Plaintiff had followed the correct procedures.

## V.  <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's Motion to Amend the Scheduling Order and for Sanctions (ECF 570), and further request that the Court award sanctions to Defendants for their fees and expenses associated with responding to this unnecessary Motion that failed to include material facts and was filed without a proper meet and confer and in violation of the Court's discovery dispute process, pursuant to Fed. R. Civ. P. 37.

Dated: April 30, 2025                      Respectfully submitted,

<u>/s Douglas A. Henderson</u>
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street

Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

23

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 30, 2025, the foregoing Defendants' Opposition to Plaintiff's Motion to Amend the Scheduling Order and for Sanctions was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.


<u>/s Douglas A. Henderson</u>
Douglas A. Henderson (phv05547)