# Exhibit 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br>      *Plaintiff,* <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br>     *Defendants*. | Civil Action No. 3:21-cv-00933-JAM |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S NOTICE OF**
**ORAL DEPOSITION OF EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US**

PLEASE TAKE NOTICE that Plaintiff, the Conservation Law Foundation ("CLF") will take the deposition for use at trial pursuant to Fed. R. Civ. P. 30(b)(6) of the individual(s) designated by Equilon Enterpises LLC d/b/a Shell Oil Products US to testify on its behalf on matters set out within Attachment A of this Notice. The deposition will take place via eLitigate on June 28, 2024, beginning at 10:00 a.m. Eastern and shall continue day to day until completed.

The deposition shall commence electronically before a public notary or other officer duly authorized to administer oaths and shall be recorded by stenographic means.

You are advised that you must designate one or more officers, directors, managing agents, or other persons who will testify on your behalf regarding the matters listed in "Attachment A" which are known or reasonably available to Equilon Enterprises LLC d/b/a Shell Oil Products US.

DATED: May 14, 2023

Respectfully submitted,

CONSERVATION LAW FOUNDATION, INC., by its attorneys

*/s/ Kenneth J. Rumelt*
Kenneth J. Rumelt (phv207130)*
Christopher M. Kilian (ct31122)
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
E-mail: krumelt@clf.org
E-mail: ckilian@clf.org

Zachary Manley (pvh207600)*
James Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1707 Tel: (617) 850-1477
E-mail: zmanley@clf.org
E-mail: jmeinert@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com

Allan Kanner (ct31051)
E-mail: a.kanner@kanner-law.com
KANNER & WHITELEY, L.L.C. 701 Camp Street
New Orleans, Louisiana 70130
Tel: (504) 542-5777
Facsimile: (504) 524-5763

*Admitted as Visiting Attorney

2

**ATTACHMENT A**
**TOPICS FOR RULE 30(B)(6) DEPOSITION[1]**

1. The corporate structure, hierarchy, and management of each Defendant, including the details of any legal, business, or other relationship between or among Defendant and any parent, holding company, subsidiary, members, sister corporation, or partner that participates in projects or operations, provides services, performs work, develops policies, or makes decisions regarding physical facility infrastructure; environmental compliance; management of severe weather, sea level rise, extreme precipitation, flooding, or storm surge risks; climate or weather-related planning; and/or engineering at or for the New Haven Terminal (e.g., Shell Pipeline Company LP).

2. The structure, hierarchy, and management of any line of business, unit, division, or other organization within Shell group [2] (e.g., Shell Trading and Supply Operations, Shell Downstream, HSSE, Reliability & Integrity) that participates in projects or operations, provides services, performs work, develops policies, or makes decisions regarding physical facility infrastructure; environmental compliance; management of severe weather, sea level rise, extreme precipitation, flooding, or storm surge risks; climate or weather-related planning; and/or engineering at or for the Terminal, including the details of any legal, business, or other relationship between or among such organization(s) and Defendant.

3. The following policies, procedures, frameworks, standards, tools and processes and the details of any determination by Defendants that they apply or do not apply to the Terminal:

   a. Terminal Operations Manual

   b. Manual of Authorities

   c. Investment Management Guide

   d. Asset Management System

   e. Asset Integrity Process

   f. Hazards and Effects Management Process

   g. Design and Engineering Practices, including any related to Metocean (*e.g.*, DEP 37.00.10.11-Gen)

   h. Design Engineering Manuals

   i. Health, Safety, Security, and Environment and Social Performance Control Framework

---

[1] Unless otherwise specified, the time period for all topics is from January 1, 2011, to present.

[2] "Shell group" refers to subsidiaries of Shell plc.

       j.   Distribution Global Assessment Management Excellence

4.   Project development requests (PDR) and authorization for expenditures (AFE) regarding risks at the Terminal or on-shore or near-shore Shell facilities with a Shell risk assessment matrix rating of yellow or red,[3] from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding, or extreme temperatures.

5.   Defendant's knowledge of risks to the Terminal from severe weather (e.g., hurricanes, tropical storms, flooding, storm surge) whether exacerbated by climate change impacts (e.g., sea level rise) or not.

6.   The loss of containment event at the Sewaren Terminal during Hurricane Sandy, including investigations or audits about causes or contributing factors to the loss of containment.

7.   Any changes to corporate policies, procedures, frameworks, standards, tools, and processes based on information learned from the loss of containment event at the Sewaren Terminal during Hurricane Sandy.

8.   The General Permit for Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") with registration number GSI1002800 that is currently in effect and any other version(s) of the General Permit that have been in effect since January 1, 2011.

9.   Defendants' analysis, evaluation, assessment, review, modeling, or critique, if any, of the sea level rise scenario adopted by the Connecticut Department of Energy & Environmental Protection on December 26, 2018 ("0.5 m . . . higher than the national tidal datum in Long Island Sound by 2050"). *See* https://portal.ct.gov/-/media/DEEP/coastal-resources/coastal_management/coastal_hazards/SeaLevelChangeDEEPStatement12262018pdf.pdf.

10. The Terminal's stormwater pollution prevention plan (SWPPP), including its preparation, certification, implementation, modifications, and updates.

11. The Terminal's spill prevention control and countermeasures (SPCC), including its certification, preparation, implementation, modifications, or updates.

12. Best Management Practices that

       a.   have been used at any point since January 1, 2011 at the Terminal, or

       b.   which are currently planned, and

---

[3] This request shall be limited to the facilities identified through the Parties' compliance with ECF 372.

that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

13. Control measures that

   a. have been used at any point since January 1, 2011 at the Terminal, or

   b. which are currently planned, and

that address pollutant discharges or run-on resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

14. Best Management Practices that have been used at any point since January 1, 2011 at the Terminal, or which are currently planned, to minimize the potential for leaks and spills resulting from hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

15. Information Defendants submitted to the Connecticut Department of Energy and Environmental Protection since January 1, 2011 regarding risks of pollutant discharges associated with hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

16. Stormwater discharges from the Terminal to the New Haven Harbor via the City of New Haven's Municipal Separate Storm Sewer System.

17. Defendant's monitoring for indicator pollutants for the impairments in New Haven Harbor in the Terminal's stormwater discharges.

18. Steps taken to prevent or mitigate the carrying away of pollutants and solid waste from the Terminal by waters of a base flood (i.e., a flood that has a 1 percent or greater chance of recurring in any year or a flood of a magnitude equaled or exceeded once in 100 years on the average over a significantly long period).

19. Instances of flooding at the Terminal during severe weather events (e.g., hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge).

20. The presence and concentration of solid and hazardous wastes, as those terms are defined under the Resource Conservation and Recovery Act, in the soil and groundwater at the Terminal.

3

21. Services provided by Metocean team to the Port Fourchon facility and the types of services the Metocean team offers to on- and near shore facilities in the United States and the circumstances under which those services are offered or performed.[4]

22. The design and/or modification of the Terminal to address pollutant discharges and/or releases due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, flooding.

23. Insurance policies regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

24. Communications with insurers regarding risk of loss to Terminal assets due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

25. The present impacts and risks at the Terminal due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.

26. Information shared between or among any Defendant and entities within the Shell group regarding risks due to hurricanes, tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, and storm surge, including any projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding at the Terminal and on-shore or near-shore Shell facilities with a Shell risk assessment matrix rating of yellow or red.[5]

27. The noticed party's confirmation, adoption, agreement, disagreement, and/or opinion of statements made by entities within the Shell group or Shell business lines quoted in CLF's amended complaint paragraphs 53, 59, 213–219, 373–377, 380–383 (ECF No. 47).

28. Instances of damage at the Terminal from severe weather events, including Hurricane Irene, Superstorm Sandy, and Hurricane Ian.

29. The identity of all documents used by, consulted, looked at, or relied on in any way by Defendant in preparing for the topics listed above.

30. Defendant's databases, information technology infrastructure, network infrastructure, software programs, messaging systems, and any policies that govern the possession, custody, or control

---

[4] To the extent any other specific Metocean projects are identified in productions from Defendants produced in compliance with ECF 372, those are also encompassed in this Topic.

[5] This request shall be limited to the facilities identified through the Parties' compliance with ECF 372.

of documents maintained by the custodians and SharePoint sites that Defendants searched for responsive records in this matter.

31. The process Defendants used to identify records custodians and information about the custodians' job titles, employer(s), and relationship to the Terminal.

32. The Trading and Supply line of business, including information sufficient to describe (1) what Trading and Supply is and (2) the supervision and management structure for employees within Trading and Supply.

33. The Trading and Supply line of business's relationship to the Terminal, including information sufficient to describe (1) whether and how Trading and Supply policies are created for and implemented at the Terminal; (2) the relationship between Trading and Supply, or employees within the Trading and Supply line of business, and Defendant; and (3) the authority of persons within the Trading and Supply line of business to direct operations for or at the Terminal.

34. The incorporation or exclusion of climate change factors on the following policies or processes within the Trading and Supply line of business: (1) the Business Assurance Letter process and guidance; (2) the hazard and effects register; and (3) the scope and application of the DEM-1.