UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>                Plaintiff,<br><br>   v.<br><br>EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>                Defendants. | Case No: 3:21-cv-00933-VDO<br><br>May 6, 2025<br><br>**Request for Expeditated Consideration Pursuant to Local Rules 7(a)(4) and 7(a)6)**<br><br>**Oral Argument Requested** |

**DEFENDANTS' MOTION TO STAY DISCOVERY AND PROCEEDINGS RELATED TO PLAINTIFF'S "CLIMATE CHANGE" ALLEGATIONS IN COUNTS I-IX OF COMPLAINT; REQUEST FOR EXPEDITED CONSIDERATION PURSUANT TO LOCAL RULES 7(a)(4) AND 7(a)(6)**

In this lawsuit, Plaintiff Conservation Law Foundation ("CLF") alleges that Defendants were required to extensively analyze "climate change" and then renovate Defendants' fuel storage terminal (the "Terminal") in New Haven for climate change impacts under a 2021 Connecticut Department of Energy and Environmental Protection ("CT DEEP") General Permit for the Discharge of Stormwater Associated with Industrial Activity (the "Current Permit"). The central legal issue in Counts I-IX of Plaintiff's Complaint is whether Defendants were required to consider "climate change" (beyond other adverse weather events like hurricanes, etc.) in developing and implementing their Stormwater Pollution Prevention Plan ("SWPPP") for the New Haven Terminal under the Current Permit.

Early in the case, the Court ruled that due to the lack of guidance from the United States Environmental Protection Agency ("EPA") and CT DEEP, an open question of fact remained whether the Current Permit's inclusion of the generic term "best industry practice" would require Defendants to consider "climate change" in the development of the SWPPP.  Oct. 19, 2023 Order Denying Motion for Partial Summary Judgment [ECF 302] ("If the best industry practice is to require consideration of "climate change" factors, then the permit includes this requirement **despite the absence of more explicit language in the permit** about 'climate change' factors." (emphasis added)).  At the hearing, the Court recognized that "CT DEEP could have"—but did not—"more explicitly required consideration of particular climate change factors."  Oct. 19, 2023 Hearing Tr. at 81:19-21.

Based on that initial finding of a question of fact, the parties have conducted discovery for almost five years in accordance with the Court's ruling.  Although fact discovery is now ending,[1] expert discovery is ongoing—and in fact accelerating—at great expense to the parties.  An enormous amount of judicial waste will ensue unless a stay is entered to prevent the litigating of claims that CT DEEP has now rendered non-viable as a matter of law.

Now CT DEEP has directly and explicitly spoken on what is required under the Current Permit, and CT DEEP has proposed a new draft General Permit for Industrial Stormwater ("Draft Permit") that will require permittees—for the first time—to consider "climate change" in the operation of their facilities.[2]  Even more relevant to this case, CT DEEP has expressly stated

---

[1] Written fact discovery is complete, and the fact discovery period is now limited to three remaining depositions.

[2] CT DEEP first published the Draft Permit in March 2024, and reissued it in December 2024. There is one remaining public hearing scheduled in May 2025, and the Draft Permit is anticipated to be finalized shortly thereafter.  *See* https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwater-gp.

these permit provisions are "new" and "significant changes" from the prior, Current Permit. Within the next month or soon thereafter, CT DEEP will be finalizing this draft and issuing a new permit that will become the operative permit applicable to the New Haven Terminal. The New Permit makes it absolutely clear that the permit at issue in this lawsuit never required consideration of "climate change," including any of the mitigation measures proposed by Plaintiff in its requested injunctive relief. As a result, CT DEEP is poised to answer the Court's question in the negative and defeat CLF's claims in this case.

CT DEEP refers to its provision regarding "climate change" considerations as a "**<u>new</u> component . . . added in response to Connecticut's commitment to prepare for ongoing climate changes**." Ex. A, November 2024 Permit Fact Sheet, at 12 (emphasis added). The agency also recognized that these "**significant changes**" to the prior permitting regime are such that a 120-day waiting period will be necessary for permittees to come into compliance and submit a revised SWPPP. *See* Ex. B, Draft Permit, at 51. Nothing could be more relevant to this case than CT DEEP speaking directly on whether its own permits did or did not require consideration of "climate change." And because CLF, in filing a "citizen suit" under the Clean Water Act, only "stands in the shoes" of the CT DEEP, the statements by CT DEEP are dispositive of all key issues in this never-before seen lawsuit. *See, e.g., Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987) ("Citizen enforcement actions greatly resemble government enforcement and qui tam actions . . . citizen plaintiffs . . . effectively stand in the shoes of the EPA."); *see also Conn. Fund for Env't, Inc. v. Upjohn Co.*, 660 F. Supp. 1397, 1411 n.22 (D. Conn. 1987) (recognizing that "Plaintiffs in this citizen suit stand in the shoes of the government with respect to this matter.").

The Draft Permit resolves the legal question at the heart of Plaintiff's claims, which the

Court (without the benefit of the Draft Permit and its associated guidance) initially viewed as a question of fact.

Given CT DEEP's new permit addressing the very issue in this case, it would not serve the interests of judicial economy to press on with costly fact and expert discovery related to Plaintiff's "climate change" and "climate adaptation" allegations in this case. The parties and the Court have already expended far too many resources chasing and litigating these "climate change" allegations that will, in short order, be mooted and legally invalid. Fact discovery is nearly complete, and expert discovery will make no difference in deciding the key **legal** question for the Court. CT DEEP's interpretation of its own permit provisions as "new" is controlling and will dispose of the issue. Until that happens, there is no reason for the parties or the Court to waste further time and resources on claims that will be resolved in the very near future.

Accordingly, Defendants ask the Court for expedited review of this motion and an order granting a stay of all discovery and proceedings related to Plaintiff's "climate change" and "climate adaptation" claims until CT DEEP has issued its Draft Permit in final form (a matter of weeks or months), after which the Court can consider and rule on how CT DEEP's guidance alters the viability of Plaintiff's claims. Defendants respectfully request an expedited review of this motion and that discovery and proceedings be stayed in this case for the following reasons:

1. The central question that underlies Counts I-IX in Plaintiff's Complaint is whether Defendants were required to consider "climate change" in developing and implementing their Stormwater Pollution Prevention Plan ("SWPPP") at the New Haven Terminal under the Current Permit.

2. In early 2024, CT DEEP issued its Draft Permit. Once the Draft Permit is issued by CT DEEP, it will become the operative permit applicable to the New Haven Terminal going

forward. The Draft Permit, and associated guidance from CT DEEP, makes it clear that the permit at issue in this lawsuit never required consideration of "climate change."

3. The publication of CT DEEP's Draft Permit and associated guidance goes directly to the central question at issue in Counts I-IX. The Draft Permit will require permittees—for the first time—to consider climate change in the operation of their facilities. What is more, CT DEEP has expressly stated that these permit provisions are "new" and "significant changes" from the Current Permit.

4. As such, CT DEEP's Draft Permit and related guidance is dispositive of the central issue in this case and conclusively instructs that the Current Permit never required Defendants to consider "climate change" in their operation and management of the Terminal. The Draft Permit will accordingly be dispositive of the central issue in this case.

5. Because the Draft Permit instructs that the Current Permit does not require what CLF claims, Defendants requested CLF to agree to stay discovery in this case until the Draft Permit is finalized. *See* Ex. C, May 6, 2025 Declaration of Douglas A. Henderson, Esq. ("Henderson Decl."). CLF not only refused to do so, but continues to pursue discovery related to their climate change allegations. *Id*.

6. Expert discovery is ongoing at great expense to the parties. Given the ongoing discovery and upcoming expert discovery deadlines, Defendants respectfully request the Court's expedited review of this motion to stay discovery and proceedings pursuant to Local Rules 7(a)(4) and 7(a)(6). This Court ordered Defendants to file their motion to stay discovery "promptly," and directed Defendants to do so under the standard Local Rule 7 motion procedures. *See* ECF 582, Judge Farrish's Conference Memorandum and Order (the "Order") (dated May 1, 2025). At the same time, the parties are preparing to designate trial experts and

serve expert reports pursuant to Fed. R. Civ. P. 26(a)(2) on any issues to which they bear the burden of proof, which are due by May 8, 2025.  *Id*.  The parties are similarly preparing to designate all trial experts and serve expert reports on all other issues by June 9, 2025.  *See* ECF 507, Court's Text Order Granting Joint Motion for Extension of Discovery Deadlines (dated Jan. 13, 2025).  Based on the foregoing, there is good cause to grant an expedited review of this motion.

7. Defendants also intend to file a Motion for Partial Summary Judgment based upon CT DEEP's Draft Permit.  However, CLF has advised its intent to argue that such a motion is premature because the Draft Permit is still in draft form and has not yet been finalized.  *See* Ex. C, Henderson Decl., at ¶ 5.  While Defendants disagree with that notion, to avoid that argument presenting any potential issue for Court, Defendants respectfully request that the Court, at a minimum, stay further discovery in this case until CT DEEP has issued its Draft Permit in final form.

The reasons supporting the imposition of a discovery stay are more fully stated in the accompanying Memorandum of Law.

Dated: May 6, 2025

Respectfully submitted,

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com
CToledo@KSLAW.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP

300 S Tryon Street Suite 1700
Charlotte, North Carolina 28202
T: (704) 503-2600
alewis@kslaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower 265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

Rose J. Jones (phv208026)
Hilgers Graben PLLC
1372 Peachtree Street, N.E. 19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

John S. Guttmann (ct25359)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)
Beveridge & Diamond, P.C.
400 West 15th Street Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)

7

                Roy D. Prather III (phv206800)
                Beveridge & Diamond, P.C.
                201 North Charles Street, Suite 2210
                Baltimore, MD 21201-4150
                T: (410) 230-1305
                F: (410) 230-1389
                mmorgan@bdlaw.com
                rprather@bdlaw.com

                ***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 6, 2025, the foregoing was served via email to all counsel of record.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com