UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | May 21, 2025 |
| *Defendants*. | |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S MOTION FOR RECONSIDERATION AND IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME TO RESPOND TO DEFENDANTS' DISPOSITIVE MOTION**

Pursuant to Rule 7(c) of the District of Connecticut Local Civil Rules, Plaintiff Conservation Law Foundation, Inc. ("Plaintiff" or "CLF") respectfully files this Motion for Reconsideration of the Court's May 19, 2025, Briefing Schedule Order at ECF 593, and in the alternative for an Extension of Time under Local Rule 7(b).

**INTRODUCTION**

On Monday, May 19, Defendants insisted the parties call Court Chambers to report what Defendants mischaracterized as an impasse on "discovery issues." In reality, the impasse is a thinly veiled excuse to file a significant merits motion on the admissibility of key evidence in CLF's case and to challenge the validity of CLF's claims.

Defendants are seeking—by their own admission—rulings on the propriety and admissibility of CLF's experts' testimony in order to make a determination on the admissibility of

1

CLF's experts' opinions. Defendants' forthcoming motion will likely require the Court to make dispositive rulings regarding (1) the sufficiency of CLF's Notice of Intent under the Clean Water Act (CWA) and the Resource Conservation and Recovery Act (RCRA); (2) whether CLF's claims fall within the scope of the CWA and RCRA; and (3) whether a 2024 draft CT DEEP general permit that has not been finalized or issued renders CLF's claims "Moot and Legally Invalid." Contrary to Defendants' assertions otherwise, none of these issues are "discovery issues" that can or should be decided by letter brief over a truncated briefing schedule. Under the current Briefing Schedule Order at ECF 593, CLF has a mere two days to respond to Defendants' *Daubert* challenges and summary judgment styled arguments. Defendants are using the Court's expedited discovery dispute process as a Trojan Horse for dispositive motion practice. If the Court is going to entertain argument on any of these issues, it should do so under a normal briefing schedule. CLF respectfully requests the Court reconsider its May 19, 2025, Briefing Schedule Order at ECF 593. In the alternative, CLF requests an extension of two days, until May 30, to respond to Defendants' letter brief.[1]

## BACKGROUND

Defendants first raised any issue with regard to CLF's expert reports a week after receiving them on Thursday, May 15. During the subsequent meet and confer that day, Defendants stated their intent to file a "motion to strike" and provided some general topics in CLF's expert reports that they found objectionable. Defendants did not specify which expert reports or sections of expert reports were at issue. CLF objected and explained a Rule 12 motion to strike is limited to

---

[1] CLF will not have time to seek an extension upon receiving Defendants' brief as CLF's opposition will be due before the three business days required for a motion for extension under Local rule 7(b). Defendants do not oppose Plaintiff's alternative motion for an extension to May 30 to respond to Defendants' Motion. This is CLF's first request for an extension of time.

pleadings and there is no valid procedure for striking opinions in CLF's experts' reports. Defendants committed to sending a follow-up letter with further details over the weekend.

On Sunday May 18, Defendants sent CLF a letter that cherry-picked quotes from a few expert reports and demanded that CLF withdraw those opinions from the reports based on allegations that CLF's Notice of Intent was insufficient, that CLF's experts' reports involve claims outside the scope of the CWA and RCRA, and that a draft CT DEEP permit from 2024 *that has not been finalized or issued* renders CLF's expert opinions "Moot and Legally Invalid." The bulk of Defendants' letter focused not on the permissibility of CLF's experts' opinions, but on the validity of CLF's claims in general. *See* Letter from Defense Counsel Douglas Henderson May 18, 2025, attached as Exhibit A. Defendants' letter contained no citation or reference to any Federal Rule or case law. *Id.*

The Parties met and conferred again on Monday, May 19. In that meet and confer, CLF declined to withdraw its expert reports and asked Defendants for the legal basis for filing what is ultimately a dispositive motion disguised as a discovery dispute. Defendants informed CLF that despite initially calling their forthcoming motion a "motion to strike," they would not be relying on Rule 12(f), but instead would file a "*Daubert*-type" motion seeking to exclude the expert reports on admissibility grounds. Defendants acknowledged this would be a *Daubert* motion subject to the Court's scheduling order that sets September 1, 2025, as the date for *Daubert* challenges, but nonetheless intended to take it to the Court now. Defendants' only disclosed basis for their intended motion was to avoid the costs of litigation. As in their letter, Defendants again primarily focused not on the permissibility of Plaintiff's experts' opinions, but on the merits of Plaintiff's claims.

CLF asked whether the motion would include a request to extend Defendants' expert report

deadline and Defendants denied they would seek that relief. Defendants only demand was that CLF withdraw its expert reports, in whole or in part, and if it did not, that Defendants would move the Court for an expedited determination on the admissibility of those experts' opinions. Even after receiving their letter and participating in two meet and confers, CLF is still unsure which portions of which expert reports Defendants are seeking to exclude. When asking for Defendants' position on this motion, Defendants stated their forthcoming motion would seek exclusion of portions of experts' reports not directly cited in the May 18 letter.

Defendants demanded the Parties report impasse at the end of the second meet confer and CLF reluctantly agreed. The Parties called the Chambers Clerk, and Defendants for the first time stated that the motion was also seeking an extension of their expert report deadline, despite having explicitly stated to CLF that they would not be seeking an extension of time. CLF informed the Clerk that it was the first time Defendants disclosed any intention of seeking an extension of time to serve their expert reports.

## ARGUMENT

### I.  CLF's MOTION FOR RECONSIDERATION

Defendants are not seeking resolution of a discovery dispute—Defendants are seeking a dispositive ruling from the Court regarding the merits of CLF's claims themselves and the admissibility of critical evidence in CLF's case in chief. Not only is this procedure an improper vehicle for Defendants to challenge any of CLF's claims, it is also an improper vehicle for Defendants to challenge the admissibility of CLF's experts. Indeed, any *Daubert* motion at this stage of the litigation is premature. *See United States v. Roberts*, No. 01 CR 410 RWS, 2001 WL 1602123, at *11 (S.D.N.Y. Dec. 14, 2001) (holding a *Daubert* motion "is premature . . . [where] the parties have not even exchanged expert discovery."). The parties have not finished exchanging

expert discovery. Defendants have not disclosed their experts' reports and no expert depositions have taken place. There are also still outstanding fact witness depositions to be taken which may reveal information requiring Plaintiff's experts to supplement their current reports. Any ruling on the admissibility of expert testimony, and certainly on the merits of Plaintiff's claims, at this stage and under this process, would be based on incomplete information and therefore premature.

Regarding Defendants' claim that CT DEEP's Draft 2024 Permit renders Plaintiff's claims "[m]oot and [l]egally [i]nvalid," this issue is presently being briefed before the Court. *See* Order at ECF 584. Defendants are attempting to circumvent the Court's resolution of this issue via expedited discovery briefing. It is improper and an abuse of the discovery process.

Defendants also allege in their Sunday, May 18 Letter that CLF's expert opinions regarding the Connecticut Coastal Management Act (CMA) are beyond the jurisdiction of this Court. *See* Ex. A. They cite no case law in support of their argument and neglect to mention that CLF included violations of the CMA in its nearly five-year-old notice of intent to sue explaining that Defendants' CWA permit includes a term incorporating applicable goals and policies in the CMA. ECF 47-1 at 9. CLF's Amended Complaint specifically includes this as an enumerated count. ECF 47 at 5, 36–38; 79–80 (Count II – Violation of the Clean Water Act – Activity Inconsistent with the Coastal Management Act and Causing Adverse Impacts to Coastal Resources). Defendants could have moved to dismiss these claims at an appropriate time but did not. *See* Defs. Mot. to Dismiss Am. Complaint (Feb. 25, 2022), ECF 50-1, at 44 (discussing compliance with the CMA but not claiming the CMA count is jurisdictionally deficient). Still, under the current scheduling order, they may move for summary judgment on these claims rather than gum up the schedule, which this Court is trying to maintain.

Regarding Defendants' claims that Plaintiff's Notice of Intent was insufficient and that Plaintiff's claims are outside the scope of the CWA and RCRA, these are complex issues requiring substantial briefing and thus properly addressed through a Rule 12 motion or summary judgment. These issues should not be decided via letter brief over a condensed timeline. Defendants have been on notice of these issues since CLF's Notice of Intent letters (ECF 47-1 and 47-2) and the Complaint itself (ECF 47) were filed over three years ago. CLF's discovery responses, first served in June of 2022, also set forth in detail the violations of the CWA and RCRA Plaintiff is alleging. This is not an emergency requiring expedited briefing. Defendants have had ample opportunity to raise these issues and only do so now and under this process to force CLF to respond to them under a severely truncated schedule with a less than fulsome opportunity to respond. The adequacy of CLF's Notice and the validity of CLF's claims are not simply a "discovery dispute" subject to expedited letter briefing. *See Timmerman v. U.S. Bank*, 483 F.3d 1106, 1112 (10th Cir. 2007) ("[O]ne value implicit in [FRCP] 56 is that each party to a summary judgment motion, both moving and non-moving, be given an adequate opportunity to present argument and evidence supporting its respective position. We can imagine a case where a page limitation . . . would be an abuse of discretion.").

Forcing CLF to respond to significant substantive merit issues on the truncated schedule set forth in ECF 593, severely prejudices CLF. Additionally, by styling this motion as a discovery dispute, Defendants unfairly get to shield this briefing from the public docket and obtain a merits ruling in relative secret. As such, CLF respectfully asks the Court to reconsider its ruling on the Briefing Schedule Order at ECF 593.

**II.   CLF'S ALTERNATIVE REQUEST FOR AN EXTENSION OF TIME**

In the alternative, CLF requests an extension of two days—until May 30—to respond to

6

Defendants' letter brief.  This would give CLF the same amount of time Defendants were given to write their brief.  Defendants do not oppose this portion of CLF's Motion.

Defendants have had since May 8, when Plaintiff disclosed its expert reports, to review, process, research, and devise the arguments they intend to raise in their forthcoming brief.  In contrast, CLF will have a mere two days to review, research, and respond to Defendants' arguments.  This is especially true given Defendants never fully disclosed the expert opinions they are seeking to exclude or the legal authority for the exclusions.  Moreover, Defendant's will get to file their brief at 5:00 PM the Friday before a long holiday weekend.  CLF will have only two business days to respond.

Any ruling on Defendants' motion will have serious implications for CLF's case.  An adequate opposition will require substantial research, citation, and briefing on multiple areas of law.  Two days simply does not allow CLF ample time to respond.

## CONCLUSION

Defendants are not seeking adjudication of a "discovery dispute."  Defendants are seeking a dispositive ruling on the merits of CLF's claims and the evidence CLF can present in its case in chief.  Allowing dispositive motion practice under the severely truncated schedule set forth for "discovery disputes" is highly prejudicial to CLF and disruptive to the judicial process.  As such, the Court should grant CLF's Motion for Reconsideration and should deny Defendants' request for letter briefing.  In the alternative, the Court should grant CLF's motion to allow an additional two days to respond to Defendants' motion.

Dated: May 21, 2025                                      Respectfully submitted,

                                                         CONSERVATION LAW
                                                         FOUNDATION, Inc., by its attorneys

                                                         */s/ Vincent Greene*

7

Vincent Greene (phv208487)*
40 Westminster St. 5th Floor.
Providence, RI 02903
Tel: (401) 457-7700
Email: vgreene@motleyrice.com

Linda Singer (phv208339)
Elizabeth Smith
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Email: lsinger@motleyrice.com
Email: esmith@motleyrice.com

Michael Pendell (ct27656)
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
Email: mpendell@motleyrice.com

James Meinert (ct31637)
Zachary Manley (pvh207600)*
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
Tel: (617) 850-1707
E-mail: jmeinert@clf.org
E-mail: zmanley@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602

Tel: (802) 622-3020
Tel: (802) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com

*Attorneys for Plaintiff Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

# EXHIBIT A





King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

May 18, 2025

**VIA EMAIL (krumelt@clf.org)**

Kenneth J. Rumelt
Senior Attorney, Strategic Litigation
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602

   **RE:** *Conservation Law Foundation, Inc. v. Equilon Enterprises LLC, et al.*
     **No. 3:21-cv-933 (D. Conn.)**
     **Meet & Confer Re: Motion to Strike Jurisdictionally Deficient and**
     **Invalid Claims in Plaintiff's Expert Reports**

Dear Ken:

  I am writing to follow up on the parties' good faith meet & confer discussion on Friday May 16, 2025 regarding Defendants' intention to file a motion to strike certain jurisdictionally deficient and invalid claims contained within Plaintiff's expert reports produced on May 8, 2025.[1]

  Plaintiff's expert reports raise various alleged violations of the Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA") that were not included in any Notice of Intent to File Suit, nor Plaintiff's Amended Complaint. As you know, the CWA's limited authorization of citizen enforcement suits carries strict pre-suit requirements for a plaintiff to serve a Notice of Intent to File Suit, setting forth the claims it intends to bring and the specific, factual bases for same. Plaintiff is prohibited from prosecuting any claim that is not included in Plaintiff's Notices of Intent.

  Plaintiff's expert reports also assert multiple opinions regarding claims that are either legally invalid or not specifically authorized by the CWA or RCRA, including "climate change" and "climate adaptation" claims that have been mooted and/or invalidated by the CT Draft Permit, as well as claims based on other laws, statutes, and regulations that are outside the context of the CWA and RCRA. The CWA **only** authorizes claims regarding the effluent standards or limitations of conditions set forth in the Act. *See* 33 U.S.C. § 1365(a) ("[A]ny

---

[1] By identifying certain claims and opinions in Plaintiff's expert reports via this correspondence, Defendants expressly preserve, and do not waive, their right to seek the striking and/or preclusion of any additional claims or opinions contained in Plaintiff's expert reports at a later stage, including but not limited to dispositive, *Daubert* and/or pre-trial motions in limine.

May 18, 2025
Page **2** of **7**

citizen may commence a civil action on his own behalf . . . who is alleged to be in violation of (A) an **effluent standard or limitation** under this chapter . . . ." (emphasis added); *see also*, 40 C.F.R. § 135.2 (requiring that a "[n]otice of intent to file suit pursuant to section 505(a)(1) of the Act shall be served upon an alleged violator **of an effluent standard or limitation under the Act** . . . ." (emphasis added)). Further, the only remaining claim under RCRA is Count 13 regarding solid and hazardous wastes.

Defendants' expert reports are currently due on June 9, 2025, and Defendants should not be forced to expend significant time and resources for its experts to rebut claims that are jurisdictionally and legally invalid, and should not be part of this case. Defendants therefore reiterate their request for Plaintiff to immediately amend their expert reports to remove these impermissible claims and opinions.

I.      **Claims and Opinions That Were Not Included in any Notice of Intent**

Plaintiff's experts Dr. Richard Horner, Mr. Robert Nairn, Dr. Wendi Goldsmith, Dr. James O'Donnell, Dr. Matthew Barlow, Dr. Naomi Oreskes, and Dr. Joshua Macey have each issued expert reports containing claims and opinions regarding alleged violations of the CWA and RCRA that are nowhere to be found in any Notice of Intent served by Plaintiff in this case, and are completely irrelevant to the questions presented in the case.

Under the CWA, a party intending to file a citizen suit must provide pre-suit notice to the alleged violator that includes specific and "**sufficient information**" regarding the alleged violation. 40 C.F.R. at §135.3(a). Plaintiff has served several Notices of Intent in this case, but has never asserted many of the new claims and opinions that are now included in its expert reports, including but not limited to:

- **Inadequate Capacity of Secondary Containment Areas:** "[T]he operation of a bypass pipe installed in 2022 to drain the contents of the inadequately sized Containment Area 1 into Containment Area 2 in the event of a large, rapid product release . . . would not transfer the released products in time to avoid overflow into the drainage channel leading to New Haven Harbor." Horner, at 5. "For compliance, Shell must install a lift station and piping capable of conveying to Containment Area 2, before overflow occurs, both the tank contents and stormwater quantities." Horner Report, at 32.

- **Low Points in Secondary Containment Areas:** "Portions of the secondary containment berms for the tank farm were observed to be eroded resulting in low points in the containment areas." Horner Report, at 18.

- **Permeability of Secondary Containment Areas:** "The conditions [at the Terminal] do not comply with the 'impermeable' terms of the Stormwater Permits or the 'sufficiently impervious' requirements of the [Spill Prevention, Control, and Countermeasure] SPCC guidance." Horner Report, at 18.

- **Structural Integrity of Secondary Containment Berms:** "The secondary containment structures at the Site should be engineered to withstand the

- compound flood condition of storm surge combined with rainfall-induced flooding, in addition to consideration of compound flooding under the evolving climate dynamics of the 21st century." Nairn Report, at 10.

- **Wave Attacks on Secondary Containment Berms:** "[I]t is expected that the front face protection of the berm will likely experience failure due to wave attack, leading to failure of the containment system." Nairn Report, at Page V.

- **Bare Soil on Secondary Containment Berms:** "[B]are soil on the berm faces is an unacceptable condition which will lead to potential berm failure." Nairn Report, at 65.

- **Failure to Report on Secondary Containment Deficiencies:** "In addition, Shell failed to report to CT DEEP that the Terminal's secondary containment system was insufficient." Horner Report, at 26.

- **Groundwater Infiltration:** "Groundwater beneath the Shell Terminal is subject to regulations requiring that the entire volume of infiltrated runoff be treated prior to infiltration and that the treatment system for this purpose have an impermeable liner. The water infiltrating from Shell's unlined tank secondary containments is not treated, nor are the treatment basins to which stormwater runoff is directed." Horner Report, at 4.

- **Stormwater Pond Liner:** "[T]he Manual (at page 356) states that, 'A liner is required for stormwater ponds that receive runoff from Land Uses with Higher Potential Pollutant Loads (LUHPPLs).'" Horner Report, at 21.

- **Insufficient Stormwater Treatment Basin:** "Shell's stormwater treatment basins do not meet the requirement of the Stormwater Permits to use control measures at the level of best industry practice. They should be replaced with a form of advanced stormwater treatment." Horner Report, at 5.

- **Emergency Vehicle Access for Ingress and Egress:** Plaintiff's expert reports include several new opinions regarding "ingress and egress" issues at the New Haven Terminal that are nowhere to be found in Plaintiff's Notices of Intent, including but not limited to the following:

  - "Section 4.1.4 outlines the challenges with the current ingress and egress for the site, where the sole access road is inundated by more than 2 feet of water for several hours during hurricane storm surges, as demonstrated by model results. This limits emergency response capabilities and poses a significant safety risk by cutting off support during extreme weather events." Narin, at 73. "[T[he depth threshold of 2 ft for emergency vehicle access is exceeded for a period of approximately 9 hours along Connecticut Avenue." Narin Report, at 5.

May 18, 2025
Page **4** of **7**

- o "An important consideration is the duration of time that emergency vehicles would be unable to access the Site through the ingress and egress route during a storm." Narin Report, at 50.

- o "The Association of State Floodplain Managers (ASFPM) states that for critical facilities, the flood protection elevation shall be two feet above the 0.2% [500-yr] flood elevation and that elevation shall be used as the basis for the ingress/egress to the site, 156 incorporating the need to address flood risk for key access functions, not only the facility." Goldsmith Report, at 41.

- **Failure to Implement Corrective Action Plan:** "The certification of Shell's 2017 stormwater pollution prevention plan is not compliant with the requirements of the Stormwater Permits because of . . . (2) failure to immediately implement a Corrective Action Plan and report deficiencies to CT DEEP within the requisite five-day period . . . ." Horner Report, at 5.

None of these alleged violations of the CWA or RCRA were properly noticed in any Notice of Intent served by Plaintiff. As a result, these new claims are impermissible and jurisdictionally deficient as a matter of law.

Further, Plaintiff's expert Dr. Macey additional opinions on pure questions of law that are likewise absent from any Notice of Intent, and have nothing to do with the claims or defenses in this case, let alone the types of damages that Plaintiff may seek in an environmental citizen suit such as this one. For example, Dr. Macey's report delves into improper legal issues including whether and which Defendants exerted operational control of the Terminal. *See* Macey Report, at 9-22. Dr. Macey also opines that "Shell has a healthy balance sheet and is capable of paying a large fine." *See* Macey Report, at 22-24. This opinion is not only irrelevant, but extremely and unduly prejudicial to Defendants on issues that have nothing to do with their compliance with the industrial stormwater permit at the New Haven Terminal. This is not a tort case seeking punitive damages against Defendants, and these kinds of opinions are wholly improper in a CWA environmental enforcement action. As such, Dr. Macey's opinions should be excluded as jurisdictionally deficient, irrelevant, improper, and unduly prejudicial.

Lastly, Drs. O'Donnell, Barlow, and Oreskes offer solely generic and global opinions on "climate change" and "climate adaptation" that are not only irrelevant but also not contained within any of the CWA or RCRA claims in Plaintiff's Notices of Intent. These claims are not sufficiently tethered to Defendants' operations or compliance at the New Haven Terminal. *See generally* O'Donnell Report, Barlow Report, and Oreskes Report. These jurisdictionally deficient opinions are also therefore not relevant to the central issue in this case—whether Defendants operations at the Terminal violated the operable permit.

Plaintiff's experts Dr. James O'Donnell, Dr. James Barlow, and Dr. Naomi Oreskes have also asserted additional—and wholly new—opinions that focus on Defendants' knowledge or "deceit" regarding generic and global climate change issues. These experts allege that Defendants have engaged in "climate deceit" or other tortious, fraudulent, or improper activities

May 18, 2025
Page **5** of **7**

that are absent from Plaintiff's Notice of Intent, and in any event completely untethered to Defendants' compliance with the industrial stormwater permit at the New Haven Terminal.

For example, Plaintiff's experts have proffered opinions including, but not limited to:

- "Shell spent an estimating [sic] $22 million lobbying against climate policies." Oreskes Report, at 117.

- Defendants participated in a group which "led an aggressive lobbying and advertising campaign aimed at achieving these goals by sowing doubt about the integrity of the IPCC and the scientific evidence that heat-trapping emissions from burning fossil fuels drive global warming." Oreskes Report, at 91.

- "Shell knew or should have known about sea level rise and the risks of flooding." O'Donnell Report, at 23.

In addition to these being wholly improper, they are also absent from the Notices of Intent and therefore cannot be prosecuted in this CWA and RCA citizen suit.

Accordingly, Defendants request that Plaintiff immediately amend the expert reports of Dr. Horner, Mr. Nairn, Dr. Goldsmith, Dr. O'Donnell, Dr. Barlow, Dr. Oreskes, and Dr. Macey to remove all references to these improperly noticed, jurisdictionally deficient, and impermissible claims to avoid unnecessary motion practice and alleviate the substantial time and resources that would be required to rebut claims that are not subject to this Court's jurisdiction.

## II. Claims Outside the Scope of the CWA and RCRA

Plaintiff's experts also offer opinions on inapplicable federal and state laws that are not covered by the CWA's limited authorization of citizen suits. In a CWA citizen suit like this one, Plaintiff can only assert claims to enforce the effluent standards or limitations of conditions set forth in the Acts. Further, the only remaining claim under RCRA is Count 13 regarding solid and hazardous wastes. However, Plaintiff's expert reports assert various violations of other federal and state regulations that are not covered by the scope of those acts and that Plaintiff is not authorized to prosecute here. These opinions on other laws and regulations are clearly impermissible and should be withdrawn.

For example, Mr. Nairn alleges Defendants are in violation of the National Highway Traffic Safety Administration ("NHTSA") guidance regarding flood ingress and egress standards for road traffic. *See* Nairn Report, at 50 and 73. Plaintiff did not plead an alleged violation by Defendants of the NHTSA in either its Notices of Intent or the Amended Complaint, nor is Plaintiff authorized to include such claim in this limited citizen suit.

Additionally, Dr. Goldsmith opines the Terminal is "is unprepared for ongoing and amplified risks due to climate change, including sea level rise mandated by the Coastal Management Act as incorporated into the permit." Goldsmith Report, at 40.

May 18, 2025
Page **6** of **7**

Plaintiff cannot assert claims under the NHTSA, the Coastal Management Act, or any other federal or state law claims outside the limited and express authorization for citizen suits under the CWA and RCRA. These claims should be withdrawn.

### III. Opinions Regarding "Climate Change" and "Climate Adaptation" Claims that are Moot and Legally Invalid

Plaintiff's expert reports also contain numerous opinions regarding Defendants' alleged failure to consider certain "climate change" and "climate adaptation" factors in their operation of the New Haven Terminal. As you know, Defendants have filed a Motion to Stay all proceedings and discovery regarding Plaintiff's "climate change" and "climate adaptation" opinions until the finalization of this CT Draft permit.

Defendants should not be forced to expend significant time and resources for their experts to prepare opinions on these mooted and invalidated claims. Therefore, unless Plaintiff will agree to withdraw these opinions from its expert reports, Defendants will have no choice but to move to strike them and request hearing on an expedited basis.

### IV. Request for Expedited Review

Defendants intend to proceed with filing a motion to strike the impermissible and jurisdictionally deficient expert opinions outlined above. With the upcoming deadline to produce expert reports on June 9, 2025, Defendants must seek review and ruling from the Court on an expedited basis to avoid incurring the significant and unnecessary expense that would be required to prepare their expert opinions to rebut these impermissible, jurisdictionally deficient, and irrelevant issues.

* * * *

Defendants look forward to our further discussion regarding these issues on Monday, May 19, 2025. At that time, please plan to advise whether Plaintiff will agree to withdraw any of the expert reports referenced herein, so the parties may narrow the issues for Court intervention and proceed towards the anticipated reporting of this discovery impasse to Judge Farrish under the procedures outlined in ECF 473.

Sincerely,

*/s Douglas A. Henderson*
Douglas A. Henderson

cc:   Vincent Greene
      Michael Pendell
      James Meinert
      Carmen Rosario Toledo
      Antonio Lewis
      Ryan T. Kearney

May 18, 2025
Page **7** of **7**

    Drew Bell
    Rose Jones
    James Craven