

King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

May 23, 2025

**VIA ECF**

Hon. Judge Thomas O. Farrish
U.S. District Court, District of Connecticut
United States Courthouse
450 Main Street - Suite 262
Hartford, Connecticut 06103

> RE:     ***Conservation Law Foundation v. Shell Oil Products U.S., et al.,***
>         **Civil Action No. 3:21-cv-00933-VDO**
>         **<u>Defendants' Motion To Strike Improper Expert Opinions</u>**

Dear Judge Farrish:

        In this lawsuit, Plaintiff Conservation Law Foundation ("CLF") filed a citizen suit under the Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA") to enforce the terms of **one** permit issued by **one** agency, the Connecticut Department of Energy & Environmental Protection ("CT DEEP").  Under the CWA and RCRA, CLF was prohibited from filing these claims until 60 days after filing a Notice of Intent to File Suit.  *See* 33 U.S.C. § 1365(b)(1)(A); 42 U.S.C. § 6972(a)(1); 40 C.F.R. at § 135.3(a).

        On July 28, 2020, CLF filed a Notice of Intent to Sue ("NOI").  By statute and regulation, CLF's NOI was required to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of the violations that formed the basis of its claims.  *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. at § 135.3(a).  In its NOI, CLF identified 12 CWA claims and 3 RCRA claims.  CLF first inspected the Terminal on December 5-6, 2022.  CLF filed supplemental NOIs on February 17, 2021 and November 21, 2024, which did not add any claims.

        The submission of the NOI is a jurisdictional requirement that required CLF to identify its specific allegations before it could file this lawsuit.  *See, e.g., Hallstrom v. Tillamook Cnty.,* 493 U.S. 20, 25 (1989) ("[C]ompliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit."); *Cottonwood Envtl. Law Ctr. v. Edwards,* 86 F.4th 1255, 1264 (9th Cir. 2023) ("For a federal court to exercise subject matter jurisdiction over a private CWA claim, the individual or entity bringing the claim 'must give a 60-day notice of intent to sue. . . . absent that notice, the action is prohibited, as it is a jurisdictional necessity." (internal quotation marks omitted)); *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000) ("If a party seeking to bring a citizen enforcement action has not complied with the CWA's notice requirement, then the district court in which that action is brought lacks subject matter

jurisdiction and must dismiss the action."). As a matter of law, CLF cannot pursue claims based on alleged violations that were not identified in the NOI. *See Catskill Mountains Ch. Of Trout Unlimited, Inc. v. City of N.Y.,* 273 F.3d 481, 487 (2d Cir. 2001) (affirming dismissal of thermal discharge claims not adequately identified in the NOI). This is true even those claims are later raised in the complaint. *See id.* (dismissing claims in complaint).

Now, in its May 8, 2025 expert reports, CLF has asserted new claims and alleged violations that are absent from the NOIs. Tellingly, most of the opinions in the reports do not refer to any sections in the Permit at all. The case law is very clear: CLF has no right to raise new allegations it did not identify with specificity in the NOI. *See, e.g., Catskill Mountains,* 273 F.3d at 487 (to pursue a CWA citizen suit, "the prospective plaintiff must provide notice" under 40 C.F.R at § 135.3(a)); *see also Shark River Cleanup Coal. v. Twp. of Wall,* 47 F.4th 126, 136 (3d Cir. 2022) (NOI that "left the Defendants guessing" about what section of the CWA was violated required dismissal); *Karr v. Hefner,* 475 F.3d 1192, 1203 (10th Cir. 2007) (holding notice was inadequate because it failed to adequately allege sufficient details to permit the defendant to "identify the specific standard, limitation, or order alleged to be violated"); *ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1142 (9th Cir. 2002) (claims correctly dismissed where the NOI did not adequately cover the alleged violations); *New Mexico Citizens for Clean Air v. Espanola Mercantile Co., Inc.,* 72 F.3d 830, 833 (10th Cir. 1996) (dismissing citizen suit by the Pueblo of San Juan for failing to strictly adhere to the CWA notice requirements); *Sierra Club Ohio Ch. v. City of Columbus,* 282 F. Supp. 2d 756, 765 (S.D. Ohio 2003) (holding the alleged violations of the permit were not sufficiently alleged in the NOI, requiring dismissal); *Cal. Sportfishing Prot. All. v. City of W. Sacramento,* 905 F. Supp. 792, 800 (E.D. Cal. 1995) (failure to give proper notice under the CWA will lead to dismissal).

With CLF's new reports, Defendants find themselves in the position of having to defend against allegations never mentioned before in the original or amended NOIs. The NOI is specific about what claims CLF has (and by exclusion, does not). *See* Prop. Exs. A-C, NOI.[1] The new allegations in the expert reports include:

| New Alleged Violations in CLF's Expert Reports | Identified in an NOI? | CT DEEP Notified? |
|---|---|---|
| Inadequate Capacity of Secondary Containment (Prop. Ex. E, Horner Report at 5[2]; Prop. Ex. G, Goldsmith Report at 40, 43, 44, 46, 47) | No | No |
| Permeability of Secondary Containment Areas (Prop. Ex. E, Horner Report at 18; Prop. Ex. G, Goldsmith Report at 40, 43) | No | No |
| Low Points in Secondary Containment Areas (Prop. Ex. E, Horner Report at 18; Prop. Ex. G, Goldsmith Report at 40, 43) | No | No |

[1] Defendants have filed a Request for Leave to Submit Additional Exhibits to this motion.
[2] Because CLF disclosed cumulative experts whose opinions overlap, many of these alleged violations appear in multiple expert reports. Defendants include these citations as examples and ask the Court to exclude these topics in their entirety, wherever they appear in the reports.

| | | |
|---|---|---|
| Structural Integrity of Secondary Containment Berms (Prop. Ex. F, Nairn Report at 10; Prop. Ex. G, Goldsmith Report at 40, 45) | No | No |
| Wave Attacks on Secondary Containment Berms (Prop. Ex. F, Nairn Report at V; Prop. Ex. G, Goldsmith Report at 40, 47) | No | No |
| Bare Soil on Secondary Containment Berms (Prop. Ex. F, Nairn Report at 65; Prop. Ex. G, Goldsmith Report at 40) | No | No |
| Failure to Report on Secondary Containment Deficiencies (Prop. Ex. E, Horner Report at 26; Prop. Ex. G, Goldsmith Report at 40) | No | No |
| Groundwater Infiltration (Prop. Ex. E, Horner Report at 4) | No | No |
| Stormwater Pond Liner (Prop. Ex. E, Horner Report at 21) | No | No |
| Insufficient Stormwater Treatment Basin (Prop. Ex. E, Horner Report at 5) | No | No |
| Emergency Vehicle Access for Ingress and Egress (Prop. Ex. F, Nairn Report at 5, 50; Prop. Ex. G, Goldsmith Report at 40, 41) | No | No |
| Failure to Implement Corrective Action Plan (Prop. Ex. E, Horner Report at 5) | No | No |
| Failure to Apply Best Industry Practice in Defendants' Risk Management Program (Prop. Ex. G, Goldsmith Report at 49-52) | No | No |
| Tank Spacing Violates National Fire Protection Association Guidance (Prop. Ex. G, Goldsmith Report at 54) | No | No |

None of these alleged violations appears in any of CLF's NOIs to Defendants. As a result, these claims are jurisdictionally defective as a matter of law.

Defendants' expert reports are currently due as soon as June 23, 2025, leaving them with a short time to respond to these opinions that are not part of the noticed claims. Defendants should not be forced to expend significant time and resources for their experts to rebut claims that are jurisdictionally and legally invalid. Defendants therefore ask the Court to strike these opinions from CLF's expert reports.

I.    **CLF Cannot Assert New Claims And Opinions About Alleged CWA And RCRA Violations Not Included In CLF's NOIs.**

To file a citizen suit under the CWA or RCRA, a plaintiff must identify the alleged violations in a pre-suit NOI. *See, e.g., Shark River*, 47 F.4th at 136 (NOI that "left the Defendants guessing" about what section of the CWA was violated required dismissal); *ONRC Action*, 286 F.3d at 1142 (claims correctly dismissed where the NOI did not adequately cover the alleged violations); *Sierra Club Ohio*, 282 F.Supp.2d at 765 (holding the alleged violations of the permit were not sufficiently alleged in the NOI, requiring dismissal); *Cal. Sportfishing*, 905 F.Supp. at 800 (failure to give proper notice under the CWA will lead to dismissal). This is not optional. If a plaintiff has not complied with the notice requirement, then the district court lacks subject matter jurisdiction. *See Nat. Res. Def. Council*, 236 F.3d at 995 ("If a party seeking to

bring a citizen enforcement action has not complied with the CWA's notice requirement, then the district court in which that action is brought lacks subject matter jurisdiction and must dismiss the action."); *Stone v. High Mountain Mining Co., LLC,* No. 17–cv–01295–RM–KMT, 2018 WL 1175039, at *9 (D. Colo. Mar. 5, 2018) (dismissing CWA claims for lack of jurisdiction where the NOI failed to identify the alleged violations "with specificity"). This is not optional. *See Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*, No. 23-CV-4870 (KMK), 2024 WL 4150206, at *13 (S.D.N.Y. Sep. 11, 2024) ("Strict compliance with this 'notice provision is a mandatory, not optional, condition precedent for suit.'"). As a result, failure to provide pre-suit notice of an alleged violation requires dismissal of any claim based on that violation. It follows that Plaintiff's experts cannot offer opinions about claims not properly before the Court. *See* Fed. R. Evid. 702.

A party intending to file a citizen suit under the CWA **must** specify in its NOI the "specific standard, limitation or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. at § 135.3(a); *see also Mid-New York*, 2024 WL 4150206, at *13-14 (the NOI must identify the "specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice."); *Shark River,* 47 F.4th at 136 (dismissing CWA case where the notice failed to describe the alleged violation in sufficient detail). "Failure to do so will justify a district court's dismissing claims . . . not properly noticed." *Catskill Mountains*, 273 F.3d at 488.

The purpose behind a pre-suit NOI is to afford both the regulatory agency and the alleged violator an opportunity to correct the issues before a citizen suit starts. *See, e.g.*, *Brod v. Omya, Inc.*, 653 F.3d 156, 166 (2d Cir. 2011) (explaining that "the content of an NOI must serve the purpose of giving 'the appropriate governmental agencies an opportunity to act and the alleged violator an opportunity to comply.'") (internal citations omitted); *see also New Mexico Citizens*, 72 F.3d at 833 ("[T]he purpose of pre-suit notice is to allow . . . a non-adversarial time period" for the defendant and agencies to seek resolution).

Unlike in a normal lawsuit, a citizen suit plaintiff cannot just change its claims after it has filed. Instead, it must file a new NOI and complaint. CLF knows how to do that. For example, not only has it supplemented its NOI twice in this case in an effort to add new party defendants, but CLF also served NOIs in other cases against other entities operating bulk storage facilities in New Haven at the same time. *See* Gulf NOI, ECF 1-2, *Conservation Law Found. v. Pike Fuels Ltd. Pship,* No. 3:21-cv-00932-SVN (D.Conn.) ("Gulf NOI"); Prop. Ex. D, Buckeye NOI. In the Gulf and Buckeye NOIs, CLF alleged "Gulf has not designed, maintained, modified, and/or operated its Terminal to account for the numerous impacts of climate change." *See* Gulf NOI at 1; Prop. Ex. D, Buckeye NOI at 2. Unlike CLF's NOI to Defendants, CLF's NOI to Gulf included CWA permit violations for (1) "Illegal Infiltration of Stormwater"; and (2) "failure to

maintain an impervious containment area." *See* Gulf NOI at 13; Prop. Ex. D, Buckeye NOI at 14. It is too late now to amend.[3]

Five years after serving its initial NOI, and after four years of vigorous litigation before this Court, including the 2022 inspection of the Terminal, CLF is purporting to change the allegations in this case through its expert reports. If the Court allows CLF to do so, it will mean the NOI process is meaningless. And we know that is not the case—just the opposite; compliance with the NOI process is clearly required by statute, regulation, and case law. The Court should strike the portions of CLF's expert reports that attempt to bypass this requirement and assert new allegations not found in its NOIs.[4]

## II.  CLF's Experts Cannot Offer Opinions Regarding Violations of Other State And Federal Laws.

CLF's expert reports also contain improper opinions about alleged violations of **other** federal and state laws. Not only were these alleged violations not included in CLF's NOIs, but CLF also has no standing to pursue them. For example, Mr. Nairn now alleges that Defendants have violated the NHTSA regulations regarding flood ingress and egress standards for road traffic. *See e.g.*, Prop. Ex. F, at 50 and 73. This alleged violation does not appear in the NOIs.

Even if it did, CLF could not bring a claim to enforce this violation in this CWA citizen suit. The plain language of the CWA explains that "any citizen may commence a civil action on his own behalf . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation . . . ." 33 U.S.C. § 1365(a)(1). Section 1365(a)(1) **does not** provide for any other claim to be brought in a CWA citizen suit.

Neither the National Traffic and Motor Vehicle Safety Act nor NHTSA regulations provide for citizen suits. Instead, 49 U.S.C.A. § 30162 allows "any interested person" to file a petition with the Secretary of Transportation "requesting the Secretary to begin a proceeding (1) to prescribe a motor vehicle safety standard; (2) or to decide whether to issue an order under section 30118(b) of this title." If CLF wants to assert a claim for a violation of the National Traffic and Motor Vehicle Safety Act, then it must follow this procedure, not lump these claims in this case with its CWA and RCRA claims.

---

[3] The deadline for amending the pleadings expired on September 5, 2021. *See* Order on Pretrial Deadlines (ECF No. 5). A plaintiff should be permitted to assert an amended complaint after a scheduling order's deadline to do so **only** if there is "good cause" for the modification of the scheduling order. Fed. R. Civ. Pro. 16(b)(4). "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *See, e.g., Luck v. McMahon*, No. 3:20-CV-00516 (VAB), 2021 WL 4248887, at *36 (D. Conn. Sept. 17, 2021) (citation omitted). CLF cannot show good cause why it did not include these new allegations at any time while this case was pending for five years.

[4] If the Court would like additional information on any of these issues, Defendants respectfully request an opportunity to brief the matter in more detail. Defendants can provide the Court with copies of CLF's expert reports highlighting the new opinions upon request.

Similarly, CLF's expert reports contain opinions regarding alleged violations of the Connecticut Coastal Management Act. *See* Goldsmith Report at 40. The Second Circuit has spoken directly on this issue": while "states' standards may be enforced under the CWA by the states or the EPA . . . **private citizens have no standing to do so**." *Atl. States Legal Found., Inc. v. Eastman Kodak Co.* 12 F.3d 353, 354 (2d Cir. 1993) (emphasis added). In short, "state regulations . . . are not enforceable through a citizen suit under 33 U.S.C. § 1365." *Id.* at 359 (citing 40 C.F.R. § 123.1(i)(2)). Clearly, CLF cannot pursue state-law claims in this case, and the Court should strike these opinions.

### III. The Court Should Strike CLF's Expert Opinions On Irrelevant And Unfairly Prejudicial Matters.

CLF's expert reports also contain improper expert opinions regarding the causes of "climate change" and "climate adaptation." These witnesses have also disclosed opinions that Defendants engaged in bad conduct concerning "climate change" entirely unrelated to the Terminal (as if this were a tort case). Once again, these general topics are not identified as permit violations in CLF's NOIs. Moreover, they are irrelevant. CLF cannot convert this CWA citizen suit into a tort case through these expert opinions, and the Court should strike them.

Early in this permit violation case, the Court articulated the central question of fact as whether "best industry practice" in the Permit required Defendants to consider "climate change" factors in developing a SWPPP. *See* ECF 302. This is purely a permit interpretation question.

Despite the clear issue in this case, CLF designated several experts to offer opinions on the existence and potential causes of "climate change," while alleging that Defendants have engaged in "climate deceit" or other tortious, fraudulent, or improper activities:

| Expert Opinion | Identified as a Violation In NOIs? | Relevant to Any Claim? |
|---|---|---|
| "Summary of Scientific, Government, and Industry Knowledge Before the 1970s." Prop. Ex. H, Oreskes Report at 48. | No | No |
| "Industry Pushback: Denial and Disparagement of Climate Science." Prop. Ex. H, Oreskes Report at 82. | No | No |
| "Shell knows and has admitted the reality of climate change." Prop. Ex. H, Oreskes Report at 94. | No | No |
| "Despite what it knew and should have known, Shell supported third party organizations that disparaged the credible scientific evidence of climate change and worked to block the meaningful policy that Shell publicly claimed to support." Prop. Ex. H, Oreskes Report at 115. | No | No |
| "The Terminal Poses a Threat to the Surrounding Community." Prop. Ex. G, Goldsmith Report at 56. | No | No |

6

| | | |
|---|---|---|
| "The science of human-caused climate change." Prop. Ex. I, Barlow Report at 10. | No | No |

None of these opinions concerns Defendants' compliance with the Permit. Claims like these are contrary to what a citizen suit is supposed to be about. The central issue in this case is not why "climate change" is occurring or whether Defendants engaged in tortious conduct regarding "climate change" science, but instead simply whether Defendants were required to consider "climate change" factors in the development of a SWPPP under the operative permit. Expert testimony on the issue of "climate change science" will not assist the trier of fact in answering the permit violation question at issue. Fed. R. Evid. 401, 403.

CLF also filed an expert report from Professor Macey, who offered legal conclusions as expert opinions, including:

- "Defendants All Exerted Operational Control Over the Terminal." Prop. Ex. J, Macey Report at 9.

- "Shell Has a Healthy Balance Sheet and Is Capable of Paying Large Fine." Prop. Ex. J, Macey Report at 22.

Prof. Macey's opinions are nothing more than improper and inadmissible legal conclusions. *See U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible."). For example, the permittees (Equilon Enterprises LLC and Triton Terminaling LLC) are clearly identified in the permit, and no expert is necessary or appropriate on that subject. These opinions from CLF's experts will only create a confusing, prejudicial, and time-consuming sideshow. The Court should strike them.

## IV.    CONCLUSION

Defendants respectfully request that the Court grant its Motion to Strike CLF's Improper Expert Opinions. Also, to the extent CLF is attempting to assert claims in this case based on alleged violations not included in its NOI or its complaint, Defendants ask that the Court dismiss those claims under Rule 12(b)(1) for lack of jurisdiction. To the extent the Court does not strike all of the expert opinions discussed in this motion, Defendants ask the Court to stay their deadline to file their expert reports so that Defendants can locate experts to respond to these new opinions. Defendants thank the Court in advance for its consideration of this motion.

Respectfully submitted,

Douglas A. Henderson

KING & SPALDING, LLP

cc: Counsel of Record