# EXHIBIT B



King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

EXHIBIT B

April 2, 2025

**VIA EMAIL (krumelt@clf.org)**

Kenneth Rumelt
Senior Attorney, Strategic Litigation
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602

RE: *Conservation Law Foundation, Inc. v. Equilon Enterprises LLC, et al.*
No. 1:17-cv-396 (D.R.I.)
No. 3:21-cv-933 (D. Conn.)
<u>Fed. R. Civ. P. 11 Request to Dismiss Frivolous Claims</u>

Dear Ken:

      On behalf of the Defendants in the above cases, I am writing to request that Plaintiff Conservation Legal Foundation ("CLF") dismiss its climate-adaptation claims in both cases immediately. New industrial stormwater permits issued by the Rhode Island Department of Environmental Management ("RIDEM") and the Connecticut Department of Energy and Environmental Protection ("CT DEEP"), related regulatory guidance from RIDEM and CT DEEP, and written statements made by RIDEM and CT DEEP make it crystal clear that Plaintiff's claims are meritless. Accordingly, CLF's continued prosecution of its climate-adaptation claims is frivolous, abusive, in bad faith, and contrary to federal and state law. If CLF will not agree to dismiss these frivolous claims, then Defendants will seek reimbursement for all attorneys' fees and litigation costs incurred in the defense of these claims under Rules 11(b)(2) of the Federal Rules of Civil Procedure, 33 U.S.C. § 1365(d), and 42 U.S.C. § 6972(e).

      As you know, both RIDEM and CT DEEP recently issued new industrial stormwater permits applicable to the Providence and New Haven Terminals at issue in these CLF lawsuits. Each of these new industrial stormwater permits now require—for the first time—that permittees must consider "climate change," "climate resilience," and extreme weather conditions in the operation of the respective Terminals. By their terms, the new RIDEM and CT DEEP industrial stormwater permits demonstrate conclusively that the prior industrial stormwater permits covering the Terminals never required the "climate change" steps that CLF alleges.

      In both cases, CLF's theory appears to be that, although neither the Providence nor New Haven Terminal industrial stormwater permits expressly required Defendants to consider "climate change" factors in the operation of the Terminals, other language somehow required

EXHIBIT B

Defendants to complete "climate change" assessments above and beyond the actual requirements set out in the language of the RIDEM and CT DEEP permits themselves. To date, CLF has cited no statute, regulation, or case that supports its "climate change" arguments under the Clean Water Act or the Resource Conservation and Recovery Act. If you have applicable statutes, regulations, or cases to the contrary, please send that to us.

The recent RIDEM and CT DEEP industrial stormwater permits extinguish all possible doubt that CLF's theory has any merit whatsoever. In Rhode Island, RIDEM issued a new General Permit for Industrial Stormwater Permit, explicitly confirming that Defendants were not previously required to consider "climate change" or "climate resiliency" under the prior industrial stormwater permit, but will now be required to do so going forward. No language, practice or standard ever included any such requirement before now, and RIDEM's clear guidance in the new permit defeats Plaintiff's novel claims to expand the actual requirements of the permit upon which Plaintiff's claims are based. There can be no violation of a requirement that never existed in the first place.

With respect to the Connecticut case, CT DEEP expressly states the inclusion of "climate change" considerations is a "new component" of the draft CT DEEP industrial stormwater permit, which was "added in response to Connecticut's commitment to prepare for ongoing climate changes." CT DEEP even acknowledged its new "climate" provisions represented "significant changes" to the prior permits, showing the permits at issue in the CLF cases never required the "climate" assessments that CLF alleges. We recognize that Judge Meyer initially allowed these claims to proceed past the pleadings stage, but at this point there is clearly no remaining question of fact. As a matter of law, RIDEM's and CT DEEP's new industrial stormwater permits and associated guidance documents moot Plaintiff's climate-adaptation claims in both cases.

In this letter, we write in good faith to resolve this dispute before costly motion practice will need to be undertaken and Court intervention becomes necessary. The Rhode Island case has been pending since 2017, and the Connecticut case has been pending since 2021. In these two cases, Defendants have already spent millions of dollars to defend baseless claims that are now undoubtedly moot. Despite this, CLF continues to pursue its climate-adaptation claims, and still seeks to expand discovery into even more facilities globally, including endless requests for written discovery and depositions of witnesses on climate-adaptation issues. None of these discovery efforts are related to Plaintiff's non-adaptation claims, subjecting Defendants to very substantial, and wholly unnecessary, costs in the defense of moot causes of action. The continued defense of Plaintiff's climate-adaptation claims through expert discovery, motion practice and trial will needlessly and significantly add to these litigation costs. There is no justification for doing so.

With RIDEM's and CT DEEP's issuance of the new industrial stormwater permits, it is crystal clear that CLF's "climate adaptation" claims are not legally viable in either case. A party that continues litigation after a claim becomes frivolous is subject to Rule 11 sanctions. *See, e.g., Plante v. Fleet Nat. Bank,* 978 F. Supp. 59, 66 (D.R.I. 1997) ("Rule 11 subject[s] litigants to potential sanctions for insisting upon a position after it is no longer tenable." (internal quotation omitted)); *Samra v. PHH Mortgage Corp.*, 408 F.Supp.3d 3, 4 (D. Mass. 2019) (awarding

April 2, 2025
Page **3** of **3**

sanctions where "Plaintiff . . . pursued a legal contention after it became frivolous during the litigation."). No showing of bad faith is required. *See Cardillo v. Cardillo*, 360 F.Supp.2d 402, 413 (D.R.I. 2005) ("According to the First Circuit, the standard under Rule 11 is an objective one, *i.e.*, 'reasonableness under the circumstances.' A showing of bad faith is not required.").

For these reasons, Defendants demand that CLF dismiss all climate-adaptation claims in the above-referenced actions against Defendants, with prejudice. If CLF does not agree to voluntarily dismiss its claims with prejudice, Defendants will seek Court intervention to dismiss these frivolous claims, and Defendants will seek all costs and expenses related to their defense of same.

Please let us know your position on these issues within 21 days of receipt of this letter.

Sincerely,

Douglas Henderson

cc:   Counsel of Record



15 East State Street
Suite 4
Montpelier, VT 05602    EXHIBIT B
P: 802.223.5992
F: 802.223.0060

www.clf.org

April 23, 2025

VIA E-MAIL

Douglas Henderson
King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521

Re:  *Conservation Law Foundation, Inc. v. Equilon Enterprises LLC, et al.*
     *No. 1:17-cv-396 (D.R.I.)*
     *No. 3:21-cv-933 (D. Conn.)*
     ***Defendants' Fed. R. Civ. P. 11 Request to Dismiss Frivolous Claims***

Dear Doug,

On behalf of Conservation Law Foundation, Inc. ("CLF"), I am responding to your April 2, 2025 letter threatening Rule 11 sanctions against CLF for continuing to press its climate-adaptation claims in the above-referenced cases and demanding that CLF dismiss these claims with prejudice ("Letter"). In short, CLF will not withdraw these claims. Your Letter has no basis in fact or law and so appears to be interposed to threaten or harass.

As an initial matter, the Letter claims that both the Rhode Island Department of Environmental Management ("RIDEM") and the Connecticut Department of Energy and Environmental Protection ("CT DEEP") issued new industrial stormwater permits applicable to the Providence and New Haven Terminals. As you know, these claims are false. First, CT DEEP has not finalized its *draft* Connecticut General Permit for the Discharge of Stormwater Associated with Industrial Activity ("CT General Permit"). Reliance on any aspect of draft materials CT DEEP has developed in the permit reissuance process is misplaced. Second, the Providence Terminal is *not* governed by the 2024 RIDEM Multi-Sector General Permit for Stormwater Discharge Associated with Industrial Activity ("2024 RIDEM MSGP"). The Providence Terminal is still governed by its individual RIPDES permit last issued in 2019. Thus, neither the 2024 RIDEM MSGP nor the *draft* CT General Permit are controlling. That the Letter ignores these basic realities and still demands CLF withdraw its claims is further evidence the Letter is frivolous and without a basis in fact or law.

Moreover, the Letter claims that "[t]o date, CLF has cited no statute, regulation, or case that supports its 'climate change' arguments," and then requests that if CLF has such citations to "please send that to us." That statement is demonstrably false and indicates you may have not read the public dockets or Complaints in either case. CLF invites you to read CLF's Amended Complaint in the Connecticut matter, Third Amended Complaint in the Rhode Island matter,

CLF CONNECTICUT  ·  CLF MAINE  ·  CLF MASSACHUSETTS  ·  CLF NEW HAMPSHIRE  ·  CLF RHODE ISLAND  ·  CLF VERMONT

EXHIBIT B

CLF's Oppositions to Defendants' Motion to Dismiss in both matters, the Court's rulings on Defendants' Motions to Dismiss, CLF's Motions to Compel Discovery in both cases, and the Court's rulings on each. Across those filings, and the Courts' rulings in CLF's favor on each, you will find the arguments and support you claim have never been made. Among them, and without paraphrasing them all for you, CLF notes that for over a decade CT DEEP has included an additional water quality-based effluent limitation best management practice ("BMP") in the CT General Permit pursuant to 33 U.S.C. § 1311(b)(1)(C) requiring that Shell's activities must be "consistent with the applicable goals and policies in Section 22a-92 of the Connecticut General Statutes, and must not cause adverse impacts to coastal resources as defined in section 22a-93(15) of the Connecticut General Statutes." Among other applicable goals and policies Shell's activities must:

- consider in the planning process **the potential impact of a rise in sea level, coastal flooding and erosion patterns** on coastal development so as to minimize damage to and destruction of life and property and minimize the necessity of public expenditure and shoreline armoring to protect future new development from such hazards
- [and ensure] ... that structures in tidal wetlands and coastal waters be designed, constructed and **maintained** to **minimize adverse impacts** on coastal resources, circulation and sedimentation patterns, water quality, and flooding and erosion, to reduce to the maximum extent practicable the use of fill, and to reduce conflicts with the riparian rights of adjacent landowners
- [and] . . . **minimize the risk of spillage of petroleum products** and hazardous substances, to provide effective containment and cleanup facilities for accidental spills . . . .

Conn. Gen. Stat. Ann. § 22a-92(a)–(c) (emphasis added).

In addition to the above language, the State of Connecticut has legally adopted a specific sea level rise requirement for use in coastal planning and regulation. Conn. Gen. Stat. Ann. § 22a-93(19). This sea level rise design standard has been developed pursuant to express statutory authority and adopted by CT DEEP.

Assuring consistency with the goals and policies in Section 22a-92, as mandated by the CT General Permit, includes accounting for the irrefutable impacts of climate change that are well known and documented by Shell, the State of Connecticut, and the risk management industry. To ignore these risks would be tantamount to negligence given the certainty of scientific understanding. These provisions of the CT General Permit are well known to Shell, have been cited repeatedly in the public filings in the Connecticut matter, and have been blatantly disregarded throughout the statute of limitations period by Shell regardless of the adoption of further specific provisions in any reissued permit. Defendants have also had ample time to move for partial summary judgment to press their legal theories in the Rhode Island matter. The 2024 RIDEM





EXHIBIT B

MSGP was signed on July 15, 2024 and became effective on September 1, 2024. If Defendants believed the MSGP is controlling and governs the claims in CLF's litigation, it should have filed a motion for partial summary judgment like it did in the Connecticut matter. However, as Defendants know, their reliance on ambiguous post-hoc statements made by RIDEM in connection with the 2024 RIDEM MSGP do not determine, or even serve as relevant information for interpreting, the meaning of Shell's 2011 or 2019 RIPDES permits.

Similarly, Shell has flouted the CT General Permit's requirements to maintain adequate secondary containment volumes and to have "impermeable" secondary containment areas. These terms are critical requirements of the permit to protect against water pollution associated with any amount of precipitation and are even more critical in the face of the extreme precipitation events now resulting from climate change, such as the extreme rainfall that occurred in Connecticut just last August 2024. Not only has Shell violated these permit terms, but Shell's belated attempt to develop a Stormwater Pollution Prevention Plan ("SWPPP") after the dissolution of Motiva included an express notification to Shell by Shell's own consultant, Triton Environmental, that these permit terms were being violated. Despite this notification, Shell remains in violation of these strict liability permit terms. Further, Shell has never notified CT DEEP of this known non-compliance in yet another violation of the CT General Permit's requirements.

### A. Defendants' Rule 11 Letter Fails to Identify Any Conclusive Authority and Ignores the Courts' Prior Rulings Against Defendants

The argument you raise in your Letter—that climate change considerations "conclusively" were "never required" under the 2011, 2016, and 2021 CT General Permit—are arguments Defendants have raised through a motion to dismiss, in opposition to motions to compel discovery, and in a motion for partial summary judgment. The Connecticut District Court rejected Defendants' arguments in each instance, noting each time that CLF's arguments succeed as a matter of law. In short, whether the CT General Permit requires consideration of climate change is an issue for trial.

Your Letter points to the use of the word "new" in the fact sheet associated with a draft CT General Permit. That fact sheet explicitly does not address or concern the meaning of any prior permits. Thus, CT DEEP's use of the term "new" in the fact sheet does not equate to a "conclusive" agency interpretation. As you know, the CT General Permit requires permittees to implement Control Measures or BMPs "to minimize the discharge of pollutants from the permitted facility," reducing and/or eliminating said discharge "using control measures that are technologically available and economically practicable and achievable in light of *best industry practice*." CT General Permit § 5(b) (emphasis added). This requirement has been in effect for well over a decade. Given this requirement to utilize "best industry practice," considering climate change has been mandatory at many facilities depending on their industry or circumstances. This has certainly been a requirement for Shell, which has been well aware of the impact of climate change on its coastal facilities. CLF rejects Defendants' interpretation that the word "new" on a



EXHIBIT B

fact sheet of a draft permit is a "conclusive" interpretation of the agency on the terms of all prior permits.

Furthermore, courts have already rejected Defendants' argument that agency statements can resolve this matter. In their Motion for Partial Summary Judgment, Defendants argued that "CT DEEP determines best management practices, not Defendants." ECF 248-01 at 14–15. The Court rejected this argument and held that neither CT DEEP's interpretations nor its past enforcement practices are conclusive on interpretation of the permit terms. Hearing and Ruling on MPSJ (ECF 305), Oct. 24, 2023 Tr. 82:20–83:15. The Court noted Defendants' argument and then disagreed, holding that CT DEEP's statements are not conclusive and that "[t]he very purpose of a best industry practice requirement, in my view, is to require industry to conform to best practices even if the content of such best practices are not spelled out word for word in the permit itself . . . ." *Id.* at 83:5–9. Thus, even assuming CT DEEP's fact sheet constituted an agency interpretation as your Letter argues, which it does not, the Court has ruled that such agency statement would not control the issue in this case. Defendants cannot base a Rule 11 motion on a position already rejected by the Court.

CLF does not see any possible grounds for you to conclude that a single word taken out of context in a fact sheet of a draft permit is a conclusive and binding interpretation of the permit at issue in the Connecticut matter. The Connecticut District Court has already ruled that the language of the CT General Permit is clear and thus your appeal to extrinsic evidence is contrary to precedent.

Your position that the agency statement on the fact sheet for the draft is definitive or "conclusive" is premised on a gross misunderstanding of law and procedure. The documents you cite are documents issued to aid the public in understanding the regulatory proceeding. These are rulemaking actions where the state issues a draft permit, explains the overall proceeding to the public in a fact sheet and invites comments from the public. The state then reviews those comments and makes a considered decision whether to change any aspects of the original draft. The state's final decision can then be litigated through an administrative appellate system and the courts. Only the very first of these actions has occurred—there is not yet any final agency action, much less a final agency guidance on that action.

Likewise, Defendants' argument regarding the 2024 RIDEM MSGP has no relevance to the litigation in Rhode Island. Your Letter does not detail any factual basis or legal theory to support the claim that agency statements about the General Permit affect the interpretation of "good engineering practices" in Shell's individual RIPDES Permit. Clean Water Act permits are construed like any other contract and under contract law courts do not consider post-permit extrinsic evidence when interpreting disputed terms. *See, e.g.*, *American Canoe Ass'n Inc. v. District of Columbia Water & Sewer Auth*., 306 F. Supp. 2d 30, 43 (D.D.C. 2004). Further, as you know, the State of Rhode Island submitted an amicus brief in the Rhode Island matter supporting the Court's ability to determine whether the phrase "good engineering practices" in Shell's



individual permit requires considering climate changes. RI ECF 49. The State wrote that the Court's inquiry in this case is "to identify how *contemporary professionals* presently define 'good engineering practices.'" *Id.* at 14–15 (emphasis added). The Court's inquiry into what "good engineering practices" requires is based on expert testimony and is not affected by the 2024 RIDEM MSGP.

These foregoing reasons alone make your Letter frivolous such that it appears to be interposed purely to threaten or harass.

### B. Defendants' Theory Can Only Be Addressed with a Dispositive Motion; Not a Rule 11 Motion

If Defendants still wish to advocate their theories, a Rule 11 Motion is not an appropriate vehicle. Rule 11 is not a device "to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position." *On Time Aviation, Inc. v. Bombardier Cap. Inc.*, 570 F. Supp. 2d 328, 331–32 (D. Conn. 2008) (quoting Fed. R. Civ. P. 11 committee note), *aff'd*, 354 F. App'x 448 (2d Cir. 2009); *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 495 F. Supp. 3d 47, 51–52 (D. Mass. 2020) (same). Rule 11 motions "should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1336.3. In fact, courts have awarded fees to the plaintiff where defendants attempted to use Rule 11, instead of a dispositive motion, to challenge the sufficiency of the complaint. *See Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*, No. 18-CV-02092, 2022 WL 1546673, at *2 (S.D.N.Y. Apr. 5, 2022) ("courts within the Second Circuit have imposed sanctions where a party persists in raising previously rejected claims or defenses.") (collecting cases); *see, e.g.*, *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 630 (D.N.J. 2004). Defendants could have filed a motion for partial summary judgment in the Rhode Island matter asserting the argument your Letter raises at any point after the 2024 RIDEM MSGP was signed on July 15, 2024 and became effective on September 1, 2024. Defendants' decision to forgo filing such a dispositive motion in that case is consistent with the glaring weaknesses of the Letter's legal argument.

As outlined above, it is sanctionable conduct to advocate for a position in a Rule 11 Motion that a party has already raised and lost in a dispositive motion. If you were to file Rule 11 Motions based on your Letter, CLF believes that the Court would deny the motions and that CLF would be forced by your actions to consider Rule 11 sanctions against the motions' signatories.



### C. Defendants' Rule 11 Letter Ignores Facts Known to Defendants as Established by Discovery Materials and Deposition Testimony and CLF Requests Defendants Remove Any Confidentiality Claims from the Verlaan Deposition Testimony and its Exhibits

The Court in the Connecticut matter has already ruled that whether the permit requires consideration of climate change factors is not an issue of law, the permit terms are unambiguous, and it will be determined as a matter of fact whether such considerations are indeed a best industry practice. *See* Hearing and Ruling on MPSJ (ECF 305), Oct. 24, 2023 Tr. at 84:3–12 & 86:8–15 ("[T]he permit unambiguously imposes a minimization duty that, in turn, references and incorporates best industry practice. If the best industry practice is to require consideration of climate change factors, then the permit includes this requirement despite the absence of more explicit language in the permit about climate change factors. Whether best industry practice is to consider climate change factors is a factual question . . ."). Your Letter requested that CLF send you the citations supporting our climate adaptation claims but, as you know, those will be the facts and expert opinions about best industry practices. The discovery process in the Connecticut matter has shown that Defendants do, in fact, believe that climate change assessments of increasing precipitation, storm frequency and severity, and sea level rise are best practices for evaluating environmental hazards and that it is a best practice to adapt the design and operation of Defendants' facilities to account for those hazards. This has been shown by numerous documents and testimony in the case, which would be in part the response to Defendants' request for information.

Because Defendants have now put Rule 11 at issue in these cases and have already publicly sought relief from Judge Farrish based on your Letter (ECF 564), Defendants appear prepared to file a Rule 11 motion in the coming days. CLF requests that Defendants remove and/or forego any confidentiality claims over the Verlaan Deposition and its exhibits (attached), which CLF will incorporate in its response to demonstrate the baselessness of the arguments raised in your Letter. Pursuant to the standing protective order in the Connecticut matter, Defendants have fourteen (14) days to fully explain why any line of the Verlaan Deposition or any of its exhibits is confidential in the context of a publicly filed Rule 11 Motion.

Sincerely,

/s/ Kenneth J. Rumelt

Kenneth J. Rumelt
Conservation Law Foundation, Inc.
15 East State St, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
E-mail: krumelt@clf.org



EXHIBIT B

James Crowley, Esq.
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel. (401) 228-1905
jcrowley@clf.org

Zachary Manley
James Y. Meinert
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1707
Tel: (617) 850-1744
E-mail: zmanley@clf.org
E-mail: jmeinert@clf.org

Christopher M. Kilian
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 622-3020
E-mail: ckilian@clf.org

Ana McMonigle
Conservation Law Foundation, Inc.
195 Church Street Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

CC: All Attorney of Record

Encl:
1. Deposition Transcript of Paul Verlaan (Mar. 20, 2025), *Consv. L. Found. v. Shell Oil Co., Inc., et al.*, No. 3:21-cv-00933-VDO (D. Conn.).
2. Verlaan Deposition Exhibit 1250 – Shell Global Solutions International B.V., *DEP Informative*: *Metocean Design and Operating Considerations (Endorsement of ISO 19901-1:2005)* (Feb. 2011).



EXHIBIT B

3. Verlaan Deposition Exhibit 1251 - Shell Global Solutions International B.V., *DEP Informative: Metocean Design and Operating Considerations for Offshore and Onshore Structures – Adaption to Climate Change* (Feb. 2015).
4. Verlaan Deposition Exhibit 1252 - Shell Global Solutions International B.V., *DEP Informative: Meteorological and Oceanographic Design and Operating Considerations Offshore, Costal and Onshore (Amendments/Supplement to ISO 19901-1:2015)* (Feb. 2017).
5. Verlaan Deposition Exhibit 1253 – Shell Global Solutions International B.V., *DEP Informative: Metocean Data Acquistiondata Requirements for Projects and Real-Time Systems* (Sept. 2017).
6. Verlaan Deposition Exhibit 1254 – Email from Niel L. Golightly SHLOIL-CXUA, to Herbert Heitmann RDS-CX, Tracy S. Faulkner SI-CXD, Lisa A. David SLUBE-DIU, et al., RE: FW: Hurricane Sandy: Impact on Motiva Terminals Including Sewaren, NJ (Nov. 1, 2012).
7. Verlaan Deposition Exhibit 1255 - Shell Global Solutions International B.V., *Water Risks – Climate Change - Tools: A Review: Focus on Flood - Drought - Water Quality, brief touch regarding Storms and Sea Level* (SR.20.00588) (Mar. 2020).
8. Verlaan Deposition Exhibit 1256 – International Petroleum Industry Environmental Conservation Association, *Addressing Adaptation in the Oil and Gas Industry, Climate Change* (2013).
9. Verlaan Deposition Exhibit 1257 - Shell Global Solutions International B.V., *DEP Specification: Meteorological and Oceanographic Design and Operating Considerations Offshore, Costal and Onshore (Amendments/Supplement to ISO 19901-1:2015)* (Feb. 2017).
10. Verlaan Deposition Exhibit 1258 - Shell Global Solutions International B.V., *DEP Specification: Metocean Design and Operating Considerations for Offshore and Onshore Structures – Adaption to Climate Change* (Feb. 2015).
11. Verlaan Deposition Exhibit 1259 – Library Spreadsheet
12. Verlaan Deposition Exhibit 1260 – Email from GF KM Support SOMWIPRO, to Chris J. Hadley GSUSI-PTP/E/F, RE: CAL2522986||CSO Know How (Oct. 21, 2019).
13. Verlaan Deposition Exhibit 1261 – J. J. Dell and P. Pasteris, CH2M HILL, *Adaptation in the Oil and Gas Industry to Projected Impacts of Climate Change*, SPE 126307, Society of Petroleum Engineers International Conference on Health, Safety, and Environment in Oil and Gas Exploration and Production (Apr. 12-14, 2010).
14. Verlaan Deposition Exhibit 1262 – Met Office Hadley Centre, Met Office Climate Consultancy, *Climate Risk Assessment: Pilot Project* (May 2014).
15. Verlaan Deposition Exhibit 1263 - Shell Global Solutions International B.V., *Climate Change Impact and Adaptation* (SR.20.00697) (June 2020).
16. Verlaan Deposition Exhibit 1264 - Shell Global Solutions International B.V., *Metocean Design and Operating Considerations - Guideline for Inclusion of Climate Change Criteria in Metocean Criteria and Associated Adaptation* (SR.16.13305) (Aug. 2017).
17. Verlaan Deposition Exhibit 1265 – Alison Brown, Ag Stephens, Ben Rabb, et al., *Including the Impact of Climate Change in Offshore and Onshore Metocean Design Criteria to Ensure Asset Robustness*, Proceedings of the ASME 2019 38th International Conference on Ocean, Offshore and Arctic Engineering (June 9-14, 2019).
18. Verlaan Deposition Exhibit 1266 – Email from Joanna J. Chan SI-FT/O, to Bud N. Willoughby SHLOIL-FA/H, RE: US Hurricane Exposure Estimates (Dec. 14, 2021).
19. Verlaan Deposition Exhibit 1267 - Shell Global Solutions International B.V., *Reducing the Impact of Weather and Climate Hazards on Operations – Guideline 1: Weather Risk Assessment and Mitigation* (SR.15.10517) (May 2016).



-9-

EXHIBIT B

20. Verlaan Deposition Exhibit 1268 - Shell Global Solutions International B.V., *Reducing the Impact of Weather and Climate Hazards on Operations – Guideline 2: Main Weather-Related Hazards & Considerations by Region* (SR.15.10518) (May 2016).
21. Verlaan Deposition Exhibit 1174 – IOGP/JCOMM/WCRP Workshop, *Our Future Climate: Understanding the Spread of Physical Risk for the Oil and Gas Industry* (Sept. 25-27, 2018).



King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

EXHIBIT B

April 25, 2025

VIA EMAIL (krumelt@clf.org)

Kenneth Rumelt
Senior Attorney, Strategic Litigation
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602

RE: *Conservation Law Foundation, Inc. v. Equilon Enterprises LLC, et al.*
No. 1:17-cv-396 (D.R.I.)
No. 3:21-cv-933 (D. Conn.)
<u>Proposal to Stay Proceedings Regarding Climate Change/ Adaptation Allegations</u>

Dear Ken:

We write to propose a stay of all discovery and proceedings in both the Rhode Island and Connecticut cases that are related to Plaintiff's climate change and climate adaptation allegations pending, respectively, 1) the issuance of the final individual permit for the Providence Terminal by the Rhode Island Department of Environmental Management (RIDEM); and 2) the finalization of the Connecticut Department of Energy and Environmental Protection ("CT DEEP") General Permit for Industrial Stormwater, which is currently published in draft form.

Defendants maintain the new permits in Rhode Island and Connecticut, as well as associated guidance from RIDEM and CT DEEP, defeat and moot Plaintiff's climate change and climate adaptation claims in both cases, and therefore the continued pursuit of those claims is frivolous. By contrast, Plaintiff's recent statements in these and related cases demonstrate CLF's intent to argue that the draft nature of the permits precludes reliance on that language before the respective permits go final.

Therefore, and at a minimum, Defendants propose that the parties agree to stay all proceedings and discovery related to CLF's climate change and climate adaptation claims pending the finalization of the new permits, to avoid continuing down the path of costly fact and expert discovery in pursuit (and defense) of claims that will be conclusively foreclosed when the permits are finalized. Please accept this correspondence as Defendants' effort to meet and confer on this issue, per Judge Farrish's instruction on April 15, 2025 (CT ECF 565). In the event that the parties are unable to reach agreement to stay these claims, Defendants will proceed with filing formal motions to stay and/or for partial summary judgment, and reserve the right to seek sanctions and attorneys fees under Fed. R. Civ. P. 11 as previously advised.

April 25, 2025
Page **2** of **2**

      The Rhode Island case has been pending since 2017, and the Connecticut case has been pending since 2021. The parties have already spent millions of dollars to pursue and defend claims that are now moot and/or baseless, yet Plaintiff still seeks to expand discovery even further with additional depositions and document production on the subject of climate change and climate adaptation. Pending the completion of three depositions, fact discovery in Connecticut is already closed. And now, as the Connecticut case is moving towards expert discovery, the parties will needlessly and significantly add to their litigation costs to no one's benefit. Therefore, a stay of all proceedings and discovery regarding CLF's climate change and climate adaptation claims in both cases until the finalization of the new permits makes good sense, and will save the parties—and the Court—significant time and resources.

      Accordingly, please let us know when you are available as soon as possible to meet and confer regarding the proposed stay, in effort to avoid unnecessary motion practice.

Sincerely,

*Douglas A. Henderson*

Douglas Henderson

cc:    Vincent Greene vgreene@motleyrice.com
       Michael Pendell mpendell@motleyrice.com
       James Meinert jmeinert@clf.org
       Chance Raymond chancethelawyer@gmail.com
       Christopher Killian ckilian@clf.org