# Exhibit A

```
 1                UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF CONNECTICUT
 2
                               )
 3   CONSERVATION LAW FOUNDATION, )  No. 3:21-CV-00933-VDO
                               )    450 Main Street
 4            vs.              )    Hartford, Connecticut
                               )
 5   SHELL OIL COMPANY, ET AL.   )  May 1, 2025
                               )
 6   _____

                   TRANSCRIPT OF HEARING
 7
            BEFORE THE HONORABLE THOMAS O. FARRISH
 8
               UNITED STATES DISTRICT JUDGE
 9
     APPEARANCES:
10   For the Plaintiff:     JAMES YUAN MEINERT, ESQ.
                            Conservation Law Foundation
11                          62 Summer Street
                            Boston, MA 02110
12
                            CHANCE RAYMOND, ESQ.
13                          Kanner & Whiteley, L.L.C.
                            701 Camp Street
14                          New Orleans, LA 70130

15                          MICHAEL J. PENDELL, ESQ.
                            Motley Rice, LLC
16                          40 Westminster St., 5th Floor
                            Providence, RI 02903
17
     For the Defendants:    ANTONIO LEWIS, ESQ.
18                          RYAN KEARNEY, ESQ.
                            King & Spalding
19                          300 Tyson Street
                            Suite 1700
20                          Charlotte, NC 28202

21                          JAMES O. CRAVEN, ESQ.
                            Wiggin & Dana
22                          One Century Tower
                            265 Church Street
23                          P.O. Box 1832
                            New Haven, CT 06510
24
                            ROSE J. JONES, ESQ.
25                          Hilgers Graben PLLC
```

1                              1372 Peachtree Street, N.E.
                               Atlanta, GA 30309

2

3    ECR Operator:            COURT SMART

4                        Nicole Ferguson, CDLT-149
                           7227 N. 16th Street
5                              Suite 207
                           Phoenix, AZ 85020
6                           (800) 257-0885

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

Colloquy

1        (4:01 O'CLOCK, P.M.)

2            THE COURT:  Good afternoon, everyone.  We're here in

3    the matter of Conservation Law Foundation v. Shell Oil

4    Company.  It's case number 12-CV-933.  It's assigned for trial

5    to Judge Oliver.  This is Judge Farrish.  We'll start taking

6    the appearances.

7            Who's got the mic for Conservation Law today?

8            MR. PENDELL:  So two of us, Your Honor.  This is Mike

9    Pendell, Motley Rice.  Thanks for your time, and it's nice to

10   meet you over the phone.

11           THE COURT:  Okay.  And who else?

12           MR. MEINERT:  And this is James Meinert from

13   Conservation Law Foundation.

14           THE COURT:  Okay.  Good afternoon, Mr. Meinert.

15           Is there anybody else from Conservation Law like to

16   identify themselves?

17           MR. RAYMOND:  This is Chance Raymond for CLF.

18           THE COURT:  Good afternoon, Mr. Raymond.

19           Okay.  How about from the defendants?  Who's got the

20   mic for the defendants today?

21           MR. LEWIS:  Good afternoon, Your Honor.  Similar

22   situation with defendants, we'll be splitting that duty.  I'm

23   Antonio Lewis from King & Spalding, and I'll be handling some

24   portions of the argument, depending on what Your Honor is

25   interested in hearing.

Colloquy

```
 1          THE COURT:  Okay.  And who else do we have?

 2          MS. JONES:  Hello, Your Honor.  It's Rose Jones from

 3   Hilgers Graben.

 4          THE COURT:  Okay.  Good afternoon, Attorney Jones.

 5          And is there anybody else who'd like to identify

 6   themselves for the defendants?

 7          MR. CRAVEN:  Good afternoon, Your Honor.  Jim Craven

 8   from Wiggin & Dana.

 9          THE COURT:  Good afternoon, Mr. Craven.

10          MR. KEARNEY:  And good afternoon, Your Honor.  Ryan

11   Kearney on behalf of defendants.

12          THE COURT:  Okay.  Good afternoon to you, too.  All

13   right.  So it sounds like you guys have big, divided arguments

14   planned.  I don't mean to disappoint you.  I kind of

15   conceptualized this as a very short phone call.  We're here to

16   discuss the emergency motion to amend the scheduling order and

17   for sanctions, that's at ECF number 571.  I've also read the

18   opposition at ECF 581.  I'd also like to briefly take up some

19   of the issues raised in the status report at ECF number 578.

20          So let's talk about the emergency motion first.  Now,

21   I'm not going to take up sanctions on an emergency basis, but

22   the expert deadline is today, so I wanted to get on the phone

23   and talk with you all about that.  So I don't know if that's a

24   Meinert issue or a Pendell issue, but whoever has got the mic

25   on this.
```

Colloquy

1          Let me ask you first.  So if I were to give both

2    sides another week on their expert disclosures, through May

3    8th, could you keep the rest of the dates in the schedule?

4          MR. PENDELL:  Your Honor, this is Mike Pendell from

5    Motley Rice.

6               I believe that we can.

7          THE COURT:  Okay.  And I don't know who has this

8    issue for the defendants; is that Ms. Jones or Mr. Lewis?

9          MR. LEWIS:  It's primarily me, Your Honor.  If Your

10   Honor, wants any details about document production collection,

11   that'd be my colleague, Ms. Jones, but --

12         THE COURT:  Yeah.  No, I did read the affidavit,

13   so --

14         MR. LEWIS:  Okay.  Fair enough.

15         THE COURT:  Yeah.  And so -- yeah.  So Mr. Lewis, let

16   me put it to you, though.  So if they had just asked you for

17   another week, as a courtesy between counsel, and stripped of

18   all the adjectives and the sanctions motion, now, would you

19   have opposed it?  Or would you have done them that courtesy?

20         MR. LEWIS:  Your Honor, typically, that's a courtesy

21   we would normally agree to with counsel.

22         THE COURT:  Okay.

23         MR. LEWIS:  And as Your Honor said, though, you

24   assume that the adjectives and accusations weren't involved.

25   But yes, that's not something we normally have a big fight

Colloquy

1    about.

2            THE COURT:  Okay.  And if I were to give both sides

3    another week on their burden of proof expert reports, to May

4    8th, do you guys think you could keep the rest of the

5    schedule?  Or would that prompt an amendment (indiscernible)

6    any of the downstream dates?

7            MR. LEWIS:  From my perspective, Your Honor, I think

8    we could keep all the downstream dates.

9            THE COURT:  Okay.  Well, that's what I'm inclined to

10   do here, is just grant the motion to the extent that it asked

11   for an amendment to the scheduling order through May 8th on

12   burden of proof experts.

13           Mr. Lewis, I acknowledge your side's view, that they

14   might not have shown good cause for even that much, but they

15   said they just recently got some new documents, and I'm

16   inclined to think that that's enough good cause enough for a

17   week extension, so we'll do that.

18           Now, as I said, I'm not going to take up -- I'm

19   sorry.  Did somebody want to interject there?

20           MR. LEWIS:  Your Honor, I didn't mean to interrupt.

21   The only thing -- and it's not (indiscernible) that you saw,

22   the only thing I would say to that is that --

23           THE COURT:  I'm sorry.  Is this Mr. Lewis?

24           MR. LEWIS:  Yes.  Yes, Your Honor, it's still me.

25           THE COURT:  Okay.

Colloquy

```
 1          MR. LEWIS:  Still me.  The only thing I would say

 2   that (indiscernible) received these documents in August, they

 3   certified for the Court that they had read them in December,

 4   and then they waited over three months --

 5          THE COURT:  No, I get it.

 6          MR. LEWIS:  -- (indiscernible).

 7          THE COURT:  I get it.  And what I'm trying to do, Mr.

 8   Lewis, is just -- we got a deadline in about 53 minutes, and I

 9   just want to come up --

10          MR. LEWIS:  I understand.

11          THE COURT:  -- with a Solomonic approach.  So

12   unless --

13          MR. LEWIS:  Fair enough.

14          THE COURT:  I'm sorry.  Who else wants to interject

15   here?

16          MR. LEWIS:  No one, Your Honor.  I think I just said,

17   fair enough.

18          THE COURT:  Oh, okay.  All right.  Well, that -- all

19   right.  Unless Mr. Pendell or Mr. Meinert wants to tell me

20   that we absolutely can't get this additional bit of expert

21   opinion over the transom in a week, which I'm hoping is not

22   the case, I think that's what I want to do here is just grant

23   the motion to the week extension.

24          MR. PENDELL:  Your Honor, we hear you loud and clear,

25   and I don't think it's going to be a problem.  James can,
```

Colloquy

1    obviously, speak if he's feels differently, but I think we can

2    make that happen.

3         THE COURT:  Okay.  That's what we'll do, then.  We'll

4    get something up on the docket about it.  Now, as I said, I'm

5    not going to take up any kind of sanctions on an emergency

6    basis.  There's no emergency in the plaintiff's claim for

7    attorney's fees.  But I see that at the very end of your

8    memorandum, you guys want the 30(b)(6) deposition reopened, so

9    we should probably talk about that briefly.

10        So I don't know if that's a Mr. Meinert issue or a

11   Mr. Pendell issue, but whoever's fielding this.  So you guys

12   say that the deposition should be reopened because the

13   recently produced documents reveal that the testimony was

14   untruthful.  But I've read the transcript excerpt, and I do

15   think there might be a difference the questions you think you

16   asked and the questions that you actually asked.  So maybe you

17   could point me to the specific question that you guys think

18   has been revealed to be untruthful, and explain to me how

19   that's the case.

20        MR. PENDELL:  Sure, Your Honor.  This is Mike

21   Pendell.

22        I'm happy to do that.  And yes, we would like a short

23   amount of time to open up the deposition to ask about these

24   documents.  So let me start from here, and I'll be very brief,

25   Your Honor.  And I appreciate that you want to be brief and

Colloquy

1   love brevity.

2           The three documents that we outlined in our papers,

3   one was a November 4th preliminary BFE evaluation, and that is

4   for base flood elevation evaluation.  In that, they were

5   looking at base flood risk, the historical and predicated

6   storm surge height, sea level rise, major storm rainfall

7   events.  All of those are used to determine things like

8   heights of flood barriers to prevent catastrophic flooding at

9   the New Haven terminal.

10          There's a document that's a set of questions about

11  specific berm height measurements from a survey.  And then,

12  finally, there's a December 20th draft climate change

13  resiliency measures report.  And that report gave a more

14  fulsome analysis that had been previewed in that preliminary

15  BFE document, and evaluated suitability of best management

16  practices and physical control measures that could be used at

17  the New Haven terminal.

18          It's been in question -- now, I would argue I didn't

19  look through that transcript, and I'm confident that I could

20  find other instances where this was -- this information would

21  have been responsive.  But in particular was -- and I think

22  it's Exhibit F where the question to Mr. Sullivan asked about

23  whether or not they had done any -- or anybody had done any

24  climate resiliency or climate analysis with regards to the

25  SWIC (ph.).  And he said, no, not locally.  And then I

Colloquy

1   followed up and said, well, how about --

2          THE COURT:  Okay.  I'm sorry.

3          MR. PENDELL:  -- (indiscernible).

4          THE COURT:  Could I ask you to pause there, so I --

5          MR. PENDELL:  Sure.

6          THE COURT:  Exhibit F is an email; are we talking

7   about Exhibit A, the one that's under seal, at 572?

8          MR. PENDELL:  James, is that correct?  It's the depo

9   transcript.  I thought it was F.  I apologize.

10         MR. CRAVEN:  Your Honor, that's correct.  The depo

11  transcript's at Exhibit A.

12         THE COURT:  Yeah.  Okay.  So what page and line are

13  you going to point me towards here, Mr. Pendell?

14         MR. PENDELL:  That would be -- okay.  All right.

15  Sorry.  Trying to find it here, now.

16         James, do you have it?

17         THE COURT:  Yeah.

18         MR. PENDELL:  (Indiscernible).

19         THE COURT:  I think the one you were trying to

20  headline for me in the brief was at page 250, lines 20 through

21  23 -- or 21 through 23, "did you conduct any climate change

22  risk assessment as part of the New Haven terminal SWIC".  And

23  he says we locally did not.  But I don't know that I see a

24  follow-up question that's been -- the answer to which has been

25  revealed to be untruthful by the documents that you're calling

Colloquy

1  to my attention.

2          MR. PENDELL:  Well, Your Honor, if I may.  So the

3  SWIC is a requirement of the permit.  The analysis that these

4  folks do in their consulting are with regard to the permit,

5  which includes the SWIC.  So they're trying to couch it very

6  specifically, but the SWIC is part of that permit process.  It

7  is part of all of the stuff that is being done as part of the

8  analysis.

9          THE COURT:  Okay.  Well, I get why that might make

10  this line of inquiry very relevant, but I think the thing

11  you're asking me here is to reopen the deposition because

12  somebody gave you an untruthful answer -- an answer that's

13  been revealed to be untruthful to a precise question that's

14  been asked, and I'm not sure I see that here.

15          Whoops.  Did we lose someone?

16          Mr. Meinert, do we still have you?

17          Did we lose Mr. Pendell?

18          MR. MEINERT:  No, I'm still here, Your Honor.

19          THE COURT:  Okay.  All right.  I don't know who that

20  was who we just lost, but -- all right.

21          Well, Mr. Pendell, I've read the transcript excerpts

22  that you cited to me here, and I'm not inclined to reopen the

23  deposition on the grounds that the testimony that's been given

24  has been revealed to be untrue by the documents that you guys

25  are calling to my attention.  Again, I think there may be a

Colloquy

1  difference between the question that you think you asked, the

2  question that you might have hoped you asked, but maybe it got

3  lost a little bit in the back and forth of the deposition.

4       But I don't see just the question, "Have you guys at

5  any time done an analysis of climate change risk at the New

6  Haven facility".  If that question had been answered no, I

7  think, maybe, there's some follow-up that you get to do, but I

8  don't see that here.

9       All right.  So that's really as far as I want to go

10  on any kind of sanction at all.

11       Mr. Pendell, I don't know that you and I have really

12  talked about the issue of sanctions before, but I think I told

13  Attorney Meinert, certainly Attorney Jordan, that I really

14  just don't have the bandwidth to deal with a sanctions motion

15  on every discovery dispute that we have here.  So my

16  inclination is to kind of save up attorneys' fees type issues

17  until we get to the end of discovery, or at least a major

18  phase of discovery.

19       And then, if everybody wants to come to me then, and

20  both sides can tell me, Judge, I think you should sanction the

21  other guy because they've been behaving horribly, maybe we can

22  consider it all, and get you all together in an afternoon to

23  consider it all at once.  But we've just had -- I'm looking at

24  my law clerk here.  Are we pushing 70 discovery motions in

25  this case now?  And I just don't have the bandwidth to take up

Colloquy

1   attorneys' fees every time we have one of these disputes, so

2   I'm kind of inclined to leave it there on the question of

3   sanctions.  Okay?

4          All right.  So I, principally, wanted to get you on

5   the phone, though, just to make sure that the sun didn't go

6   down today without us getting resolution on what we're going

7   to do with the May 1st deadline for expert witness

8   disclosures.  We've got our resolution there.

9          Let me turn to Mr. Lewis.  So Mr. Lewis, there was a

10  motion to seal all of the exhibits, and I think you intended

11  to file a memorandum in support.  But I think what you

12  actually did is ending up -- ended up filing your opposition

13  to the plaintiff's motion, twice.  So why don't you just tell

14  me what you would say in favor of sealing the exhibits here?

15         MR. LEWIS:  Well, actually, Your Honor, that was

16  actually one of the points I wanted to raise with you before

17  we got off the call, and that was, we do intend to file a

18  response in support of the motion.

19         THE COURT:  Oh, well, somebody filed something under

20  the -- as a -- oh, I'm sorry.  Actually, both of them are

21  labeled as memorandum in opposition of their order.  There

22  were two of them, so I thought --

23         MR. LEWIS:  (Indiscernible).

24         THE COURT:  -- maybe (indiscernible) try to do was

25  file something in support of sealing.

Colloquy

1         MR. LEWIS:  Right.  No, Your Honor, I think it was --

2   the original opposition was filed, and was attached to the

3   wrong ECF, and so we --

4         THE COURT:  Oh, I see.

5         MR. LEWIS:  -- (indiscernible).

6         THE COURT:  Okay.

7         MR. LEWIS:  Yes.

8         THE COURT:  Well, I will tell you what, Mr. Lewis, I

9   don't think I need to hear much, but I do need to hear

10  something in support of sealing exhibits to a motion for a

11  two-week extension of a scheduling order.  If you're ready to

12  give me that now, I'm ready to hear it.  If you want to file

13  something on the docket, you can do that, too; whatever your

14  preference is.

15        MR. LEWIS:  I would ask that we be able to file

16  something on the docket, if that's okay with Your Honor.

17        THE COURT:  Okay.  Well, sure, but I will tell this

18  to both sides, you may not believe this, but I actually read

19  every word that you file.  When you file a 1,000-page contract

20  exhibit and whatnot, just for a throwaway, one-sentence point

21  in a brief and whatnot, I actually have to read it all.  So

22  it's difficult for everybody to ask me to act quickly and

23  then, simultaneously, to throw me a whole bunch of pages.

24        So Mr. Lewis, I'm going to tell you that I am not

25  going to need a whole lot of --

Colloquy

 1          MR. LEWIS:  Okay.

 2          THE COURT:  -- support for the notion that you guys

 3   attach a privacy interest to these documents in order to

 4   conclude that the balance of the Lugosch factors favor sealing

 5   in this instance.  So you can file something on the docket,

 6   but it doesn't need to be super long.

 7          MR. LEWIS:  Understood, Your Honor.  We hear that.

 8   We appreciate the diligent, and we'll try not to make you work

 9   extra hard on this.

10          THE COURT:  Okay.  Well, I'm perfectly happy to work

11   hard, it's just that when people are simultaneously asking me

12   to read over 100 pages on a motion for a two-week amendment of

13   a scheduling order, and then asking me to do it on an

14   emergency basis, it's tough to do both.

15          MR. LEWIS:  Understood.

16          THE COURT:  All right.

17          MR. CRAVEN:  Your Honor, this is Attorney Craven.

18          On that last point, historically, the Court had asked

19   for affidavits in support of sealing.  Am I hearing the Court

20   say that in some circumstances, such as short extension, an

21   affidavit from a percipient witness may not be needed?

22          THE COURT:  Well, that's always best, particularly if

23   Mr. Pendell is going to tell me that they're going to contest

24   what you guys are saying to me here.  But if you want to

25   approach it with an affidavit just to shut off any kind of

Colloquy

1    claim from the other side that, hey, Judge, this isn't true,

2    it isn't supported, all I'm saying is that maybe it doesn't

3    need to be the longest affidavit with a ton of exhibits

4    attached to it.

5              MR. CRAVEN:  Understood.  Thank you, Your Honor.

6              THE COURT:  All right.  Mr. Pendell or Mr. Meinert, I

7    don't know, anybody want to say any last words on this point?

8              MR. MEINERT:  Your Honor, this is James Meinert for

9    Conservation Law Foundation.

10             I will just note that, once again, on its brief,

11   defendants have cited deposition transcript and quoted

12   deposition transcript section that were confidential networks

13   (indiscernible) because they did not file their brief with

14   redactions and under seal, the procedure that (indiscernible)

15   to talk about these (indiscernible).

16             So we'll be happy to put in a reply, if it's

17   warranted, on that, but I just wanted to make the point now in

18   case we have to streamline everybody's consideration of that.

19             THE COURT:  Okay.  Well, we'll take that under

20   consideration when we see what they file.  All right.  So

21   we've got the one-week extension.  I'm going to wish you guys

22   well in wrapping that up, and for a smooth expert discovery

23   phase of the case.  All right?

24             Let's move on to -- I did want to talk to you guys

25   about some of the issues raised in the status report.  So

Colloquy

1   there was a mention about CLF's association with privilege

2   objections.  I know that I owe you a decision on the

3   associational privilege issues that were reserved, as ECF

4   number 469.  I apologize for losing track of it, and we will

5   get on top of it.

6          It does sound, though, like there's been a new

7   privilege log since then.  So should I see that privilege log,

8   and should I decide its privilege claims under the existing

9   briefing?  Or does that new privilege log raise new and

10  distinct issues?

11         Let me throw that to CLF, first.

12         MR. MEINERT:  Your Honor, this is James Meinert.

13         I believe that practice has been, here, that

14  defendants contested the privilege log and then reserved the

15  right to have the same decision apply to future law, so that

16  was, I believe how the practice went on our -- I believe there

17  were two additional logs.  I could say the numbers that are in

18  my head, but I don't know that, quite right.

19         I believe the challenge was actually to the sixth

20  log, and there was motion practice to kind of preserve the

21  right for the seventh and eighth logs to -- all under the same

22  decision, and I believe they would do the same for this one --

23         THE COURT:  Okay, so CLF's view --

24         MR. MEINERT:  -- (indiscernible) log.

25         THE COURT:  -- if I just get you out a decision -- a

Colloquy

1  long overdue decision, the issues are reserved at 469, that's

2  going to give you guys enough guidance to decide whatever to

3  do with the claims in this new privilege log?

4          MR. MEINERT:  I believe that's correct.

5          THE COURT:  Okay.  All right.  Mr. Lewis, does that

6  work on your side?

7          MR. LEWIS:  I think that's right.  I would ask if my

8  colleague, Attorney Jones, has anything to add on that point,

9  because this is going back -- we're talking about the six

10  months, going back some way, and I know Attorney Reddy is on

11  the call, to the extent she has anything to add on that point.

12          MS. JONES:  Yes, this is Attorney Jones.

13          So I do believe that that will be sufficient, Your

14  Honor, but without having looking at ECF 469 recently, and

15  also, that was handled before I entered an appearance, I would

16  like an opportunity to reserve -- a chance to just speak to it

17  if there's something in there that might not meet the

18  requirements of the documents that are currently being

19  challenged.  However, I do think that that will be okay.  And

20  I apologize for not --

21          THE COURT:  No, that's all right.

22          MS. JONES:  -- having (indiscernible).

23          THE COURT:  (Indiscernible) long overdue on that,

24  and -- well, I'll operate on the assumption that our ruling on

25  the issues reserved at 469 will give you guys enough guidance

Colloquy

1    to work with.  But if, Attorney Jones, after reviewing

2    everything, you think otherwise, you can bring it to my

3    attention on the docket some way.  But I know you're anxious

4    to get a ruling on that quickly, because you probably want to

5    know if these documents are in play for the 30(b)(6)

6    deposition.  So if you do decide to bring anything to my

7    attention on the docket about the new privilege log, keep it

8    short.  Okay?

9            MS. JONES:  Yes, Your Honor.

10           THE COURT:  All right.

11           MS. JONES:  Point well taken.  Yes, Your Honor.

12           THE COURT:  Then, I guess there's a motion to stay

13   discovery looming.  Do we have a target date for when you guys

14   might submit that to me?

15           MR. CRAVEN:  In fact, Your Honor, that was one of the

16   last questions I wanted to ask you, and that is, basically,

17   how and when to file.  Because for that motion, it's fairly

18   complex.  There will be some exhibits that we want to submit

19   to the Court, the draft permit itself and the fact sheets that

20   are associated with it.  Things like that, that are sort of

21   outside the normal discovery process that Your Honor set forth

22   for us.

23           So we would ask that that be -- we'd be allowed to

24   submit that as a regular motion as opposed to sort of the

25   truncated expedited process, and wanted to get Your Honor's

Colloquy

1    guidance on that.

2         THE COURT:  Okay.  Well, let me ask Mr. Meinert or

3    Mr. Pendell what they think of it.  It sounds like this is one

4    of those motions that really implicates everybody's view of

5    the merits.  And I think I gave CLF a lot of room to file

6    40-page briefs when they were in a similar situation, but let

7    me hear your thoughts on that.

8         MR. MEINERT:  James Meinert, Your Honor, for CLF.

9         I think our position is that this is any closer to a

10   merits type briefing, if that would warrant a longer filing.

11        THE COURT:  Okay.  All right.  Well, I'll tell you

12   what, I will just -- we'll make some notation on the docket

13   about this, but I will make an exception to my discovery order

14   for this particular motion.

15        And Mr. Lewis, you can treat that as an ordinary

16   motion, subject to the ordinary page limits, and so on.

17        All right?  The only other thing I would say on that

18   regard is, let's get it filed as soon as you can.

19        MR. LEWIS:  Absolutely, Your Honor.  Thank you.

20        THE COURT:  Okay.  That's really all I wanted to talk

21   about today.  Is there anything else, as long as you're all on

22   the phone, that anybody else wants to get out in front of?

23        Mr. Meinert?

24        Mr. Pendell?

25        MR. MEINERT:  No, Your Honor.  This is Jim Meinert.

Colloquy

1          Not (indiscernible).

2          THE COURT:  Okay.  (Indiscernible)?

3          MR. PENDELL:  Nothing from me, Your Honor.

4          THE COURT:  All right.  I will let you guys go.

5    We'll get some stuff up on the docket memorializing what we

6    just said here.  Okay.  Thanks, everybody.  Have a good day.

7          UNIDENTIFIED SPEAKER:  Thank you for your time, Your

8    Honor.

9          THE COURT:  Yeah.  Bye.

10          (Whereupon the above matter was concluded at 4:28

11    o'clock, p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3          I, Nicole Ferguson, Official Court Transcriber for

4    the United States District Court for the District of

5    Connecticut, do hereby certify that the foregoing pages are a

6    true and accurate transcription of the proceedings in the

7    aforementioned matter to the best of my skill and ability.

8

9

10   Date: May 10, 2025

11

12

13

14   _____

15              NICOLE FERGUSON, CDLT-149

16              eScribers, LLC
              7227 N. 16th Street
17            Phoenix, AZ 85020
              (800) 257-0885

18

19

20

21

22

23

24

25