# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

          v.

SHELL OIL COMPANY, EQUILON
ENTERPRISES LLC D/B/A SHELL OIL
PRODUCTS US, SHELL PETROLEUM, INC.,
TRITON TERMINALING LLC, and MOTIVA
ENTERPRISES LLC,

    *Defendants*.

Civil Action No. 3:21-cv-00933-VDO

June 4, 2025

## PLAINTIFF CONSERVATION LAW FOUNDATION'S REPLY BRIEF OPPOSING DEFENDANTS' OPPOSITION TO PLAINTIFF'S PARTIAL OBJECTION TO THE MAGISTRATE JUDGE'S ORDER NO. 582 (DKT. NO. 617)

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................ii

EXHIBIT LIST ...........................................................................................................ii

I.    Introduction ...................................................................................................... 1

II.   Argument ......................................................................................................... 1

   A.  Defendants Failed to Justify Their Non-compliance With Rule 26................................... 1

   B.  The Magistrate Judge's Denial of CLF's Request to Reopen the Corporate
       Representative Deposition Without Full Consideration of All CLF's Arguments
       Was Clear Error ........................................................................................ 2,3

   C.  The 30(b)(6) Deposition Notice Covered the Information Contained in the
       Untimely Produced Documents ................................................................... 3,4,5

   D.  CLF has No Reason to Know All4 had been Engaged by Defendants........................ 5,6,7

   E.  Use of Material by CLF's Experts ................................................................. 7,8

   F.   CLF Has Been and Continues to be Unfairly Prejudiced……………………………… 8,9

III.  Conclusion ..................................................................................................... 9

**EXHIBIT LIST**

Exhibit A.        Excerpts of M. Sullivan 30(b)(6) Deposition Transcript

## I.    INTRODUCTION

Plaintiff Conservation Law Foundation ("CLF") stands by the arguments raised in its Partial Objection to the Magistrate Judge's Order No. 582 (Dkt. No. 592) and respectfully submits this reply brief to address several legal and factual mischaracterizations and omissions in Defendants' Opposition to Plaintiff's Partial Objection to the Magistrate Judge's Order No. 582 (Dkt. No. 617).

## II.    ARGUMENT

### A.    Defendants Failed to Justify Their Non-compliance with Rule 26

Defendants' failure to even attempt to justify their non-compliance with their affirmative obligation to supplement their document production under Rule 26(e)(1) is telling—there is unequivocally no good faith basis for withholding a climate change risk assessment of the New Haven Terminal by their consultant, ALL4 Inc. ("ALL4"), until *after* their August 19, 2024 deadline to complete productions under threat of sanctions (ECF 446), *after* their 30(b)(6) deposition, *after* CLF specifically raised the issue, and then only *after* the close of fact discovery. Defendants knew these documents were obviously and unquestionably relevant and responsive to CLF's discovery requests.[1] For information that is indisputably subject to the Rule 26(e)(1) obligation to supplement because it renders the prior discovery response incomplete or incorrect in a material way, which these documents are, Defendants had a duty to supplement with these documents as they were created. Yet they actively waited until April 7, 2025, to even generally advise CLF that they were working on supplementing their production. (Opp. at 6.)  Defendants do not even attempt to offer any excuse as to why their production wasn't supplemented before the

---

[1] That Defendants clearly knew that these documents were responsive to CLF's discovery requests is evidenced by the fact that they timely produced other documents involving ALL4 Inc., the environmental consultant they engaged to conduct a climate change risk analysis for the New Haven Terminal's stormwater pollution protection plan ("SWPPP").

30(b)(6) deposition, or why it took them nearly a month to produce just 88 documents after CLF identified the potentially missing documents by letter.

    **B.**    **The Magistrate Judge's Denial of CLF's Request to Reopen the Corporate Representative Deposition Without Full Consideration of All CLF's Arguments Was Clear Error**

Defendants are wrong that the Magistrate Judge's ruling was based upon "careful consideration of the relevant factors and evidence pending before the Court." (Opp. at 11). The Magistrate Judge never addressed Defendants' failure to timely supplement their document production pursuant to Rule 26(e)(1) at the hearing or in his minute order. Instead, after informing the Parties that he "conceptualized [the hearing] as a very short phone call" to "briefly take up some of the issues" (May 1, 2025 Hr'g Tr. at 5:14-19), the Magistrate Judge limited the hearing to two issues: (1) how much additional time he was going to give CLF to produce its expert reports (M*Id*. at 5:20-7:17), and (2) CLF's contention that Defendants' 30(b)(6) witness lied when he gave an answer to a discrete question. (*Id*. at 8:14:19 ("But I've read the transcript excerpt, and I do think there might be a difference [between] the questions you think you asked and the questions that you actually asked. So maybe you could point me to the specific question that you guys think has been revealed to be untruthful, and explain to me how that's the case."); *Id*. at 10:19-11:1 ("I think the one you were trying to headline for me in the brief was at page 250, lines 20 through 23 - - or 21 through 23, 'did you conduct any climate change risk assessment as part of the New Haven terminal SWIC [sic].' And he says we locally did not. But I don't know that I see a follow-up question that's been – the answer to which has been revealed to be untruthful by the documents you are calling to my attention."); *Id*. at 11:9-14 ("Well, I get why that might make this line of inquiry very relevant, but I think the thing you're asking me here is to reopen the deposition because somebody gave an untruthful answer - an answer that's been revealed to be untruthful to a precise question that's been asked, and I'm not sure I see that here."); *Id*. at 11:21-25 ("Well, Mr.

2

Pendell, I've read the transcript excerpts that you cited to me here, and I'm not inclined to reopen the depositions on the grounds that the testimony that's been given has been revealed to be untrue by the documents that you guys are calling to my attention.").

Respectfully, this should not have been the end of the analysis. Although, as will be discussed below, several of Mr. Sullivan's 30(b)(6) deposition answers to questions that implicated the New Haven climate change risk assessment were not true—whether by mistake or by design—the resolution of that issue in Defendants' favor does not absolve Defendants' clear failure to timely supplement their discovery responses. They did not. The ruling does not address Rule 26(e) or the prejudice to CLF from Defendants' untimely production.

### C.    The 30(b)(6) Deposition Notice Covered the Information Contained in the Untimely Produced Documents

Defendants' incorrectly claim that the 30(b)(6) deposition notice, which they negotiated, only included topics regarding permits that have been in effect since 2011. (Opp. at 5 & 14). First, the deposition notice has several topics that are not limited to permits in effect since 2011 and cover the information that Defendants wrongfully withheld. (Dkt. No. 550-1).[2] For example, the ALL4 New Haven Terminal climate change risk analysis is undoubtedly covered by Topic 5 ("Defendants' knowledge of risks to the Terminal from severe weather (e.g., hurricanes tropical storms, flooding, storm surge) whether exacerbated by climate change impacts (e.g., sea level rise) or not."); Topic 10 ("The Terminal's stormwater pollution prevention plan (SWPPP), including its preparation, certification, implementation, modifications, and updates."); and Topic 13 ("Control measures that (a) have been used at any point since January 1, 2001 at the Terminal, or (b) which are currently planned, and that address pollutant discharges or run-ons resulting from hurricanes,

---

[2] Although ECF 550-1 is the deposition notice for Defendants' other 30(b)(6) witness Mr. Evans, it contains the exact same topics and topic numbers as the 30(b)(6) deposition notice for Mr. Sullivan. CLF cites to this docket number for convenience as Mr. Sullivan's duplicate notice is not currently on the docket.

tropical storms, Nor'easters, tropical cyclones, extratropical cyclones, flooding, storm surge, including any incorporation of projected sea level rise or changes in the frequency and intensity of storms, precipitation, or flooding.").

Second, Defendants misstate the relevance to this motion of the ALL4 climate change risk analysis documents. Defendants acknowledge the fact that the draft permit (which they hope to hang their hat on in other briefing), is neither currently in effect nor is there anything to indicate when it will be passed and become official. (Opp. at 12). Until that permit is finalized and issued, the permits in effect since 2011, are the only permits governing Defendants' obligations at the New Haven terminal in this lawsuit. As such, any climate change risk analyses that are in existence or resiliency modifications to the terminal that are being planned are, within the meaning of CLF's 30(b)(6) topics, with regard to the permits that have been in effect since 2011. Which General Stormwater Permit the analysis was conducted under or referenced in contracting engagements does not alter the fact that the analysis exists and is highly relevant under Rule 26(b) and within the scope of CLF's discovery requests. The Court should not entertain Defendants' hyper-technical reading of the 30(b)(6) topics that would have a reference to analysis relevant to all permits somehow exclude an analysis relevant to any permit.

Third, as noted in CLF's initial brief, there are two main issues to be resolved at trial. The first issue is whether the reference to best industry practice in the Connecticut permits since 2011 require Defendants to consider the risk of climate change to the Terminal and its SWPPP. The second issue, assuming best industry practice does require Defendants to consider the risks of climate change, is how the Terminal and the SWPPP need to be modified, if at all, to meet those standards. At a minimum, the documents that were untimely produced and without justification for that delay speak to that issue.

**D.      CLF had No Reason to Know ALL4 had been Engaged by Defendants**

Defendants' suggestion that CLF knew or should have known that Defendants definitively engaged environmental consultants ALL4 to perform work at the Terminal based on a few email exchanges discussing a ***possible*** engagement to conduct climate change risk analyses of the New Haven and Providence Terminals that were produced in August 2024 is disingenuous at best and constitutes a brazen and unjustified attempt to shift the Defendants' discovery obligations to CLF. (Opp. at 3-4, 13.)  There was nothing in the few items Defendants did timely produce to indicate that the engagement was finalized and that ALL4 actually did any climate change risk analysis. Indeed, Defendants confirm in their own opposition brief that they knew CLF was unaware that the engagement had been consummated.  (Opp. at 6 ("As of Defendants' August 2024 productions, the environmental coordinator for the New Haven Terminal, Theresa Geijer, ***had begun a dialog[ue]*** with All4 to create updated SWPPPs for New Haven and Providence.  Geijer Email (June 19, 2024) (SOPUS_NHVN02367774); *see also* Geijer Email (June 19, 2024) (SOPUS_NHVN01844896)).  Any communications related to that work since that time and any work product need to be produced under Rule 26(e)." (emphasis added)).  As CLF noted in its underlying Motion, the documents that were produced by August 2024 actually stated that ALL4's ███████████████████████████████████████████████████████. (ECF 571 at 11 (citing ECF 577 at 7)).

In further trying to blame CLF for their failures, Defendants wrongly assert that CLF neglected to ask Mr. Sullivan questions during his 30(b)(6) deposition on either ALL4's work or the draft permit.  To the contrary, Mr. Sullivan was asked numerous questions that, if answered accurately, would have prompted undersigned counsel to ask follow-up questions that would have disclosed to CLF the fact that the engagement had indeed been consummated and work on a

climate change risk analysis/resiliency plan was being conducted ALL4. (*See, e.g.*, Sullivan Dep. Tr. (2/6/25) at 250:21-23 ("Q. Did you conduct any climate change risk assessment as part of the New Haven terminal SWPPP? A. We locally did not."); 252:21-253:2 ("Q. And when I asked you that question about whether or not climate change assessment was done for the SWPPP and you said 'not locally,' how about not locally? You're not aware of anybody else not doing it either? A. I'm not."), *compare with* Exhibit E to CLF's Partial Objection to the Magistrate Judge's Order No. 582 (Dkt. No. 592), ALL4's New Haven CT SWPPP Resiliency Study; *see also, e.g.*, Sullivan Dep. Tr. (2/6/25) at 106:19-107:2 ("Q. And in this letter, he adopts [CIRCA's]recommended sea level change scenario as described in the final sea level scenario change scenario report and, more specifically, 'the sea level rise scenario shall be 0.5M' – then, in parentheses, it says '1 foot 8 inches' – 'higher than the national tidal datum in Long Island Sound by 2050.' Do you see that? A. I do."); 107:12-16 ("Aside from the lawyers hired by the defendants in this case in this lawsuit, have you spoken to anyone else about the contents of this document? A. No.") *compare with* Exhibit E to CLF's Partial Objection to the Magistrate Judge's Order No. 582 (Dkt. No. 592), ALL4's New Haven CT SWPPP Resiliency Study at 7-3 (███████████████████ ██████); *See also, e.g.*, Sullivan Dep. Tr. (2/6/25) at 168:11-16 ("Q. Don't you agree with me that the defendants had the resources and the expertise to evaluate coastal inundation under different storm scenarios? A. I'm not sure to be honest with you."); *compare with* Exhibit E to CLF's Partial Objection to the Magistrate Judge's Order No. 582 (Dkt. No. 592), ALL4's New Haven CT SWPPP Resiliency Study at 7-1 (████████████████), *see also* Exhibit D to CLF's Partial Objection to the Magistrate Judge's Order No. 582 (Dkt. No. 592) (email between ALL4 and Theresa Geijer ██████████████████████████████ ██████████████████); *see also, e.g.*, Sullivan Dep. Tr. (2/6/25) at 333:16-

22 ("The berms haven't been raised since they were constructed, though.  Is that true?  A. I wouldn't know pre-2007.  Q.  Okay.  But at least from 2007, they haven't been raised; correct?  A. No."), *compare with* Exhibit F to CLF's Partial Objection to the Magistrate Judge's Order No. 582 (Dkt. No. 592) (email between ALL4 and Michael Sullivan discussing ███████████████ ████████████████████████████).

Moreover, Defendants don't explain why CLF would be expected to waste time asking questions about a consultant that CLF believed Defendants never actually engaged.

Finally, it is clear that CLF had no reason to know that ALL4 had been engaged by Defendants because both before and after Defendants' corporate representative Mr. Sullivan testified, Defendants continued to represent to CLF that its document production was complete.  It was not until March 31, 2025, during a telephone conversation between the parties discussing a private mediation, that Defendants' counsel officially and for the first time disclosed that ALL4 had in fact been engaged and was conducting work at the New Haven Terminal and that the work it was conducting was related to the issues raised in CLF's lawsuit.

###    E.    Use of the Material by CLF's Experts

Defendants try to make hay out of the fact that only one of CLF's experts cited to the late produced documents in her report. (Opp. at 13.)  That argument is a red herring for at least four reasons.  First, several issues raised in the ALL4 documents were addressed in other expert reports. For example, in Dr. Nairn's report he explains that best industry practice is to consider climate change impacts over the service life of the facility, not a 5-year permit term,which is the time period ALL4 uses in their resiliency analysis. Second, CLF was only granted a one-week extension of time to produce expert reports. Considering the technical detail involved in a climate risk assessment, a one-week extension was an insufficient amount of time to fully consider the late

produced documents. Third, Defendants did not produce any of ALL4's underlying data or analyses. That, coupled with the fact that CLF was wrongfully prohibited from eliciting testimony from Defendants' 30(b)(6) witness about the analysis and work conducted at the terminal by ALL4, left too many unanswered questions about that analysis and work.  Defendants should not now be permitted to benefit from the prejudice suffered by CLF from their inexcusable late production, in their own defense. Fourth, CLF requested the extension in order to discuss ALL4's work with its technical experts and determine how or whether to include them in expert reports or at what stage to put them at issue. CLF's attorneys needed time to have those discussions and advise their client on how or whether to adapt existing reports. Many discussions occurred and continue to occur, which cannot be accounted for, or dismissed, by Defendants' evaluation of how many citations they find across the disclosed reports. On top of all of this, CLF must stress that the Parties are very much in the middle of expert discovery and the ALL4 documents may be included in Defendants' experts' reports such that rebuttal reports and depositions may include questioning on these documents and ALL4's analysis.  CLF's engineering experts found that one week was insufficient to analyze the New Haven Terminal's climate change resiliency and fully review late documents.

### F.  CLF Has Been and Continues to be Unfairly Prejudiced

Finally, contrary to Defendants' proclamations otherwise, CLF has been and continues to be prejudiced here.  As a result of Defendants' recalcitrant conduct, CLF was deprived of a full and fair opportunity to question their 30(b)(6) witness about ALL4's engagement, consultation, and work at the terminal.  CLF was also deprived of the opportunity to have their experts review the documents before conducting a site visit, and to give its experts a fair and full opportunity to study the documents and potentially address them in their reports.  In addition, if the documents

were timely produced at the time they were created, CLF would have had the opportunity to subpoena ALL4 and seek documents and potentially testimony from it in this case.

## III.    CONCLUSION

It is clear that Defendants' inexcusable failure to timely produce these highly relevant documents, as they were required to do by Federal Rule of Civil Procedure 26, prejudiced CLF. The solution to rectifying this failure and the prejudice to CLF is simple. CLF should be permitted to reopen Defendants' 30(b)(6) deposition for two hours so it can question Defendants about the untimely produced documents and its engagement of All4.

***

Dated: June 4, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ Michael Pendell*

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
Email: mpendell@motleyrice.com

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4

9

Montpelier, VT 05602
Tel: (802) 622-3020
Tel: (802) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org
Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Email: lsinger@motleyrice.com
Email: esmith@motleyrice.com

James Y. Meinert (ct31637)
Zachary Manley (pvh207600)*
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
Tel: (617) 850-1707
E-mail: jmeinert@clf.org
E-mail: zmanley@clf.org

Ridge Mazingo (phv208402)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620

Email: rmazingo@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903
Tel: (401) 457-7730
Email: vgreene@motleyrice.com

*Attorneys for Plaintiff Conservation Law
Foundation, Inc.*

*\*Admitted as Visiting Attorney*

11