UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>                    Plaintiff,<br><br>   v.<br><br>EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>                    Defendants. | Case No: 3:21-cv-00933-VDO<br><br>June 4, 2025<br><br>**Request for Expeditated Consideration Pursuant to Local Rules 7(a)(4) and 7(a)(6)** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY DISCOVERY AND PROCEEDINGS RELATED TO PLAINTIFF'S "CLIMATE CHANGE" ALLEGATIONS IN COUNTS I-IX OF COMPLAINT (ECF 584)**

I. **INTRODUCTION**

Plaintiff cannot run from the fact that CT DEEP's New Permit will resolve the central issues in this case in Defendants' favor. In 40 pages, Plaintiff has failed to explain why Defendants and the Court should waste their time and resources on expert discovery when CT DEEP's New Permit will dramatically narrow Plaintiff's novel claims, making this work unnecessary. Instead, Plaintiff mischaracterizes the issues and argues that the Court should ignore the New Permit despite its clear implications for this case. Plaintiff is wrong, and there is no justification for the Court to turn a blind eye to CT DEEP's Draft Permit or its significant implications for this case. As explained in Defendants' Motion, the permit will eliminate many, if not all, of Plaintiff's claims. After the Court disposes of the invalid claims, the parties can proceed to the relevant discovery on any issues that remain.

Plaintiff's Response repeatedly misconstrues Defendants' Motion. First, Plaintiff claims the Court already resolved the question of whether Plaintiff's claims can survive summary judgment in light of the Draft Permit. *See* ECF 604 at 8. That is obviously impossible because the Court ruled on the prior motion to dismiss **before CT DEEP announced its new Draft Permit** in March 2024. *See* ECF 302 (the Court denying a prior motion for summary judgment on October 19, 2023). While Defendants respectfully disagree with the Court's prior ruling, that Order had nothing to do with the Draft Permit, which did not yet exist.

Second, Plaintiff tries to avoid application of the Draft Permit by misconstruing the issue as one of contract interpretation, not permit compliance. While some tools of contract interpretation can be used to interpret language in a permit, that does not mean the Court cannot look to an agency's later statements and actions to interpret an earlier permit. Indeed, courts often consider extrinsic evidence like later agency statements and actions to interpret that term.

1

*See, e.g., Nat. Resources Defense Council v. Cnty. of L.A.,* 725 F.3d 1194, 1207-08 (9th Cir. 2013) (reviewing later statements by the state agency that issued the permit in an amicus brief to interpret CWA NPDES permit); *Sierra Club, Inc. v. Granite Shore Power LLC*, 706 F. Supp. 3d 257, 285 (D.N.H. 2023) (in a CWA case, "the EPA's reasonable interpretations of its own permits should also be afforded deference."); *Congaree Riverkeeper, Inc. v. Car. Water Serv., Inc.,* 248 F. Supp. 3d 733, 753 (D.S.C. 2017) (extrinsic evidence should be considered to interpret ambiguous permit terms).

The reason Plaintiff implores the Court to look away from the Draft Permit is clear: the Draft Permit and related guidance slams the door on Plaintiff's novel theory that the terms "best industry practices" and "best management practices" in the Current Permit required Defendants to consider "climate change factors" and adapt the Terminal for "climate resiliency," even in the absence of any express requirement to do so. Plaintiff stands in the shoes of CT DEEP. And CT DEEP has unambiguously explained that its "resiliency measures" provisions in the New Permit are a "**new component . . . added in response to Connecticut's commitment to prepare for ongoing climate changes**." *See* ECF 585, Ex. A, November 2024 Fact Sheet at 12 (emphasis added). Because CT DEEP has declared these "climate change" provisions to be new and "significant changes" in the New Permit, it necessarily follows that they were not part of Current Permit, even under Plaintiff's efforts to expand terms like "best industry practices" or "best management practices," beyond recognition and well beyond CT DEEP's prior usage. *See* Ex. A, March 2011 Guidance Doc. for Preparing a Stormwater Pollution Prevention Plan at 15 (equating "best management practices" to the enumerated "control measures identified in Section 5 of the 2011 version of the Current Permit). Plaintiff's claims run contrary to CT DEEP's own permit interpretation and are therefore invalid.

As explained further below, none of Plaintiff's arguments change the reality that CT DEEP simply did not require "climate change" considerations or adaptations under the Current Permit. Given that landscape, it makes no sense to expend additional time and resources on claims that will be nullified by the Draft Permit once it is finalized. Accordingly, the Court should issue a stay until CT DEEP finalizes its Draft Permit and the Court can narrow the issues accordingly.

## II.    ARGUMENT

### A.  The Draft Permit Clearly Has "Legal Significance."

At bottom, this case is about permit interpretation and compliance. Conversely, this is not a contracts case. While some principles of contract interpretation may help to interpret permit language, that does not mean Plaintiff (or the Court) can ignore CT DEEP's interpretation of the Current Permit or its requirements.  *See* ECF 604 at 11-15. Contrary to Plaintiff's claim that the Draft Permit has "no legal significance," CT DEEP has conclusively spoken on Plaintiff's theory in this case—whether CT DEEP implied "climate change" requirements and adaptations through the terms "best management practices" and "best industry practices." CT DEEP's answer is a resounding "no," thereby negating Plaintiff's claims. The Court must, respectfully, consider CT DEEP's position on its own permit language. And when it does, the Court will see that the new permit invalidates Plaintiff's claims as a matter of law.

In CT DEEP's words, the Draft Permit's "resiliency measures" element "is **a new component** of the SWPPP and was added in response to Connecticut's commitment to prepare for ongoing climate changes." *See* ECF 585, Ex. A, November 2024 Fact Sheet at 12 (emphasis added). Consistent with CT DEEP's recognition that these requirements are brand new and will require permittees to make significant changes to come into compliance, the Draft Permit also

3

grants facilities an interim period of 120 days to update their SWPPPs, during which time those facilities will maintain coverage under the Current Permit. *See* ECF 585, Ex. B, Draft Permit, at 57. With the benefit of CT DEEP's explanation of specific terms in the Draft Permit, there can be no longer be any doubt that the Current Permit does not require what Plaintiff claims.

Courts routinely "defer to an agency's interpretation of its own regulations." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 207-08 (2d Cir. 2009); *see also Auer v. Robbins*, 519 U.S. 452, 462-63 (1997) (holding a regulatory body has the power to resolve ambiguities in its own regulations); *City Club of N.Y. v. U.S. Army Corps. of Eng'rs*, 246 F. Supp. 3d 860, 869 (S.D.N.Y. 2017) (endorsing "*Auer* deference" for a court to defer to an agency interpreting its own regulations). This deference can include agency interpretations that are issued **after** the regulation or permit at issue in the case. *See, e.g., Nat. Resources Defense Council,* 725 F.3d at 1207-08 (later statements by the state agency that issued the permit in an amicus brief); *U.S. v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1143-44 (10th Cir. 2010) (holding EPA was free to change its plausible interpretations of RCRA regulations). Given CT DEEP's interpretation of its regulatory requirements, the Court must reject Plaintiff's effort to avoid this clear statement from CT DEEP.

    **B.  The Factors Weigh in Favor of a Stay in Discovery and the Proceedings, Regardless of the Standard Applied.**

Plaintiff argues that a different, albeit very similar, set of factors should apply to the Court's consideration of Defendants' motion. Tellingly, Plaintiff applies a standard that omits the "likelihood of success on the merits" factor, which, given the New Permit's impact on this case, would weigh heavily in favor of a stay. Plaintiff's argument is misguided for two reasons. Defendants recognize there is no set standard for which factors should apply to a motion to stay pending issuance of a final permit by an agency. Defendants proposed the general factors

4

applicable to most stay motions, and Plaintiff has proposed a similar set of factors that apply to cases where there is parallel litigation. Neither fits this unique situation perfectly. In fact, the factors, while not identical, overlap significantly. However, under either standard, a stay is warranted. As explained below, even applying the *Kappel* standard selected by Plaintiff, the result is the same: a stay is appropriate under the circumstances of this case.

### 1. A Stay Will Not Injure Plaintiff.

While Defendants do not agree that the *Kappel* standard is the appropriate one for this case, a stay is warranted even under the factors Plaintiff has proposed. The first *Kappel* factor is whether a stay will injure Plaintiff—it will not. Plaintiff mistakenly contends that a stay would result in "one-sided discovery." ECF 604 at 36-37. It will not. Defendants seek a stay of discovery and proceedings regarding Plaintiff's "climate change" and "climate adaptation" allegations until the Draft Permit is finalized by CT DEEP, which will answer that question in the negative and narrow, if not eliminate entirely, the issues accordingly. Neither Plaintiff nor Defendant will be subjected to any discovery regarding those claims during that time, let alone "one-sided discovery."

Plaintiff also complains that Defendants seek an indefinite stay, because it is unknown precisely **when** CT DEEP will finalize the New Permit. *Id*. at 38-40. This argument highlights why a stay is necessary here. CT DEEP's New Permit is coming, and it makes sense to stay the case until the agency issues the final version of the Draft Permit so the Court may apply it to the case. In any event, all signs point to the Draft Permit being finalized in the coming weeks.[1] It

---

[1] CT DEEP held a hearing on the Draft Permit on May 13, 2025 and the window for public comments closed on May 20, 2025. https://portal.ct.gov/deep/public-notices/public-notices-proposed-actions---opportunity-for-comment/proposed-general-permits/notice-of-informational-hearing-general-permit-for-the-discharge-of-stormwater-industrial-activities

makes no sense to continue wasting time and resources on claims that are legally invalid in the meantime.

### 2. Defendants Will Suffer Irreparable Injury and Expense If Forced to Conduct Unnecessary Expert Discovery.

By contrast, Plaintiff claims Defendants will not be harmed by proceeding with needless expert discovery on claims that will soon be invalidated. This is clearly belied by the record. Since the filing of Defendants' Motion (ECF 585), Plaintiff has disclosed **seven** expert reports. A dispute regarding these expert reports is already pending before this Court and the parties have begun discussing another one. *See* ECF 593 and 595. Many of Plaintiff's expert reports contain improper opinions and impermissible, jurisdictionally invalid allegations that Defendants have moved to strike. *See* ECF 601. Plaintiff also failed to produce the data and calculations underlying many of its experts' opinions in compliance with Rules 26 and 37. Even Plaintiff characterized this dispute between the parties as "**complex issues requiring substantial briefing** . . . ." ECF 595, at 6. Given the highly technical and scientific nature of the claims, as well as Plaintiff's continuous efforts to expand discovery in this case, more costly and time-consuming disputes are inevitable. This case has already consumed far too much time and expense and will only continue to balloon without a stay. This will result in irreparable and unnecessary expense, and weighs in favor of a stay.

### 3. A Stay Will Benefit this Court, which has Already Expended Too Many Resources on Discovery Battles in this Case.

The next *Kappel* factor is whether a stay will benefit the Court. It will. As a result of Plaintiff's ever-expanding approach to discovery, the Court has been tasked with resolving endless discovery disputes between the Parties. Judge Farrish noted that there have been approximately 70 discovery disputes so far, and the drain on judicial resources is notable (so much so that the Court now requires weekly status reports and has imposed rules on briefing and

6

motions). *See* ECF 617-1, Defendants' Motion Ex. A, May 1, 2025 Hr'g Tr. at 12-13 ("we [are] pushing **70 discovery motions** in this case now? And **I just don't have the bandwidth** to take up attorney's fees every time we have one of these disputes. . . .") (emphasis added). Judge Meyer also acknowledged the resource intensive nature of this case. *See* Ex. B, October 19, 2023, Hr'g Tr. at 75 ("in what has clearly been **a resource-intensive case to date**.") (emphasis added). The New Permit will dispose of many of the claims in this case, so there is no sense in continuing to drain precious judicial resources needlessly litigating disputes about those claims. A stay would conserve those resources to focus only on those any claims that may remain.

### 4. The Public Interest Favors a Stay.

A stay is also in the public interest, as explained in Defendants' motion. ECF 585, at 22-24. Yet Plaintiff ignores these points and still alleges Defendants have not provided a reason as to how the public interest would be served, focusing on the maturity of this "years-long" litigation. ECF 604, at 23. This argument misses the mark. Indeed, the fact that this litigation has pressed for so long—and exhausted so many resources—is even stronger support to stay this case and avoid the continued judicial waste that would occur if the parties are forced to continue litigating claims that are soon to be mooted and invalidated.

Further, as explained in Defendants' Motion, the decision in this case will impact not only Defendants, but the entire regulated community. ECF 585, at 22. CT DEEP has now spoken on what was—and was not—required under the current permit. Allowing Plaintiff to create new regulatory requirements that are directly contrary to CT DEEP's interpretations of its own permit is not only improper under black letter law, but also dangerous and unintelligible to the regulatory community, which will now have to guess at what they must do to comply with permits that do not put them on notice of what steps are or are not required. *See Gwaltney of*

*Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 50 (1987) ("the citizen suit is meant to supplement, not supplant, governmental action").

### C.  Plaintiff's Primary Jurisdiction Argument is a Red Herring.

Plaintiff's argument that Defendants' Motion is based on primary jurisdiction is yet another transparent attempt to distract from the issues at hand, and persuade the Court to ignore CT DEEP's position and guidance on its own permits.  Defendants have already confirmed their Motion is not based on primary jurisdiction. ECF 585, at 16-18. More specifically, Defendants do not request the Court relinquish jurisdiction until CT DEEP acts. Instead, Defendants seek to avoid costly and time-consuming litigation on claims because CT DEEP **has** acted and **will** issue the New Permit imminently, which will negate the main issue in the case. In other words, Defendants' argument is that Plaintiff's claims are legally invalid due to agency action, not that the Court lacks jurisdiction to enter judgment as a matter of law due to agency inaction. Plaintiff's attempt to mischaracterize Defendants' argument as primary jurisdiction fails.

### D.  Defendants Proposed a Stay Before Plaintiff's Expert Reports Were Even Due, Not Later in Pursuit of a "Tactical Advantage."

Plaintiff's proposition that Defendants seek a motion to stay in order to gain a "tactical advantage" (ECF 604, at 24-25) is not only baseless but contrary to the record. Plaintiff claims that Defendants timed the filing of this motion so that Plaintiff would have to disclose experts before a stay was entered. ECF 604, at 24-25. This is wrong, both because Defendants approached Plaintiff regarding a stay nearly one month before Plaintiff's expert deadline (to prevent both parties from incurring those unnecessary costs), and because Defendants cannot control the Court's briefing schedule or ruling timeline.  *See* ECF 564, April 14, 2025 Joint Status Report at 3 ("Defendants request direction from the Court on how to proceed with staying discovery on CLF's climate adaptation-related discovery, which is now clearly irrelevant and an enormous source of cost in light of the extensive document requests and expert discovery.").

8

Consistent with the Court's instruction, Defendants sent a meet-and-confer letter to Plaintiff on April 25, 2025—before Plaintiff's expert disclosure deadline—to propose a stay. *See* ECF 578, April 28, 2025 Joint Status Report, at 3. Plaintiff refused. *Id*. Defendants also sent Plaintiff a Rule 11 letter requesting dismissal.  Plaintiff again refused.  Defendants were therefore forced to file their motion on May 6, 2025, and sought an expedited briefing schedule to obtain a ruling on an emergent basis. The Court set the Motion for an ordinary briefing schedule and scheduled it for hearing on June 6, 2025. Obviously, Defendants had no control over when the Court would order the parties to brief or argue the Motion or ultimately issue the stay.

### E.  Judge Meyer's Prior Ruling (ECF 302) Did Not Consider the Draft Permit.

Plaintiff contends that Judge Meyer's Order on Defendant's Motion for Partial Summary Judgement (ECF 302) prohibits this Court from considering and applying CT DEEP's Draft Permit.  ECF 604, at 8-10 and 11. Not so. Judge Meyer's ruling pre-dates CT DEEP's issuance of the Draft Permit, and Defendants' argument concerning the new permit was, of course, not raised because it did not yet exist. The Court should reject Plaintiff's attempt to dodge the consequences of CT DEEP's permitting actions by conflating the Court's prior Orders.

### F.  Plaintiff Cannot Pursue a Claim Based on a General Duty to "Minimize Pollution."

Plaintiff claims CT DEEP's interpretation of the Draft Permit should not be applied because it would require the Court "to hold that the Current Permit excludes consideration of severe weather events from Defendants' unambiguous duty to **minimize pollution** using control measure that apply best industry practice." ECF 604 at 17. That is not the issue. As Defendants have explained, the CWA requires agencies to instruct permitted entities what they may and may not do to minimize pollution.  *See City and Cnty. of San Francisco, Cal. v. Environmental Protection Agency*, No. 23–753, slip op. at 2 and 12 (U.S. Mar. 4, 2025). The CWA does not

allow agencies to impose restrictions on a permittee where the provisions in the permit "do not spell out what a permit must do or refrain from doing" **because it would be impossible for permittees to know what they need to do to comply**. Similarly, the CWA does not authorize Plaintiff, standing in the shoes of CT DEEP, to impose a violation on Defendants through the guise of "best management practices." Yet Plaintiff argues that this language somehow requires Defendants, not CT DEEP, to analyze and address "major storm events such as hurricanes, storm surge, extreme/heavy precipitation, and flood events." ECF 604, at 17-18. Plaintiff's only support for this position are cherry-picked snippets from the 30(b)(6) deposition of Defendants. *Id*. As a matter of law, however, it is CT DEEP's responsibility to tell Defendants what steps it must take, and it has, in the Current Permit. Plaintiff cannot add to those requirements merely by pointing to an end result like "minimize pollution" without a specific permit requirement.

### G. The State Law Requirements Plaintiff Seeks to Enforce Do Not Apply to the Terminal.

Finally, Plaintiff concedes, as it must, that it is not pursuing state law claims through this citizen suit. However, Plaintiff claims that the Current Permit nevertheless requires compliance with the Connecticut Coastal Management Act ("CMA") as part of "best management practices." *See* ECF 604, at 14, 18-19. This is incorrect. The section of the CMA Plaintiff cites in its complaint specifically states that it applies to the "planning process" for "future new development," not to facilities that have been in operation for decades, like the Terminal. *See* Conn. Gen. § Stat. 22a-92(a)(5). This provision simply does not apply to the Terminal

### III. CONCLUSION

For these reasons, Defendants respectfully request that the Court stay further proceedings until CT DEEP has finalized its Draft Permit and the Court has ruled on the implications of that permit on CLF's claims.

Dated: June 4, 2025

Respectfully submitted,

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com
CToledo@KSLAW.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street Suite 1700
Charlotte, North Carolina 28202
T: (704) 503-2600
alewis@kslaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower 265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

Rose J. Jones (phv208026)
Hilgers Graben PLLC
1372 Peachtree Street, N.E. 19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

John S. Guttmann (ct25359)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100

Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)
Beveridge & Diamond, P.C.
400 West 15th Street Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, a copy of the foregoing Defendants' Reply In Support Of Motion to Stay Discovery and Proceedings was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com