# EXHIBIT A

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., SHELL TRADING (US) COMPANY, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> Defendants. | Case No: 3:21-cv-00933-JAM |

## DECLARATION OF MATTHEW PENNY

1. My name is Matthew Penny. I currently work in the contracting and procurement function in the Projects and Technologies line of business and support capital projects throughout their life cycle. My previous role was as Senior Legal Counsel in the Legal team in the Project and Technologies line of business, providing legal advice regarding contractual issues for capital projects.

2. As part of my past and current responsibilities I am familiar with Shell Global Solutions International B.V. ("Shell GSI") Design and Engineering Practices ("DEPs"), and the safeguards in place governing the use and sharing of these documents both internally among other companies in the Shell group of companies, with Shell joint ventures, or externally with third parties.

3. I have personal knowledge of the information described in this declaration.

1

4. I have reviewed Exhibits H and I to Plaintiff Conservation Law Foundation, Inc.'s ("CLF") Motion to Seal and the Court's May 16, 2023 Order and Ruling on the Motion to Seal. Exhibits H and I are not publicly available documents. Both of these documents are versions that were being circulated for comments in the drafting phase of a scheduled technical revision. As such, they are marked as "Draft: September 2017" or "Comments Round: September 2017."

5. The Projects & Technologies line of business provides technical and project support to companies within the Shell group when requested, as well as to Shell joint ventures and to third parties according to Service Agreements or License Agreements. Shell GSI, sometimes along with other Shell companies, develops DEPs as its own internal standards for use in the design and construction of Shell projects.

6. As noted in the Preface to Exhibit H, DEPs reflect the professional, technical know-how of Shell GSI and in some instances of other companies in the Shell group (*see* Preface, paragraphs 1-2). They are based on the unique experience acquired during the involvement with the design, construction, operation and maintenance of processing units and facilities (*see* Exhibit H, Preface, paragraph 2).

7. Exhibits H and I exemplify two different types of DEPs: Specification (Exhibit H) and Informative (Exhibit I). They are companion documents. An Informative provides the background explanation and rationale for the Specification, which is akin to more detailed "instructions." The Informative states in the Preface that it is generally intended for internal use by the Principal contracting for the work (Exhibit I, Preface, paragraph 2). The Specification is generally used by the contractor doing the work. Neither are available to the public, and, as reflected in the language in the Preface to Exhibits H and I, to the extent they are shared, access is restricted and only granted under a Service Agreement or other contractual agreement like a

2

License Agreement (Exhibit H, Preface, paragraph 6; Exhibit I, Preface, paragraph 3). Such agreements contain confidentiality and/or non-disclosure provisions, which are described further below.

8. The language in the Preface to Exhibits H and I expressly reflects their confidential nature and the restricted use of the documents. (Exhibit H, Preface, paragraphs 6 and 8; Exhibit I, Preface, paragraphs 3 and 5). Exhibits H and I clearly contain technical knowledge and expertise and are therefore protected intellectual property. This is evident on the face of the documents. Their focus is the acquisition of meteorological and oceanographic (metocean) data.

9. Access to the DEPs is controlled through a restricted portal system that has security controls in place. Access to the DEPs by non-Shell personnel must be requested and will be granted only if the requesting individual is providing work under contract for Shell companies or Authorised companies with the necessary Service Agreement or License Agreement (all of which as noted above include non-disclosure provisions). The security controls in place include registering the identity of persons accessing or downloading the DEP and watermarking any downloads with the individual's identity. These security controls further illustrate the confidential nature of the DEPs.

10. Shell GSI's services are not limited to Shell companies. Third parties can, and do, hire Shell GSI to provide project related technical advice and services. The Court's opinion states that the DEPs are shared with contractors and subcontractors. That is correct, but the other language in the documents not noted by the Court reflects the restricted and confidential nature of these documents and any protections put in place to permit sharing the documents with third parties.

11. To the extent DEPs are provided to a third party that has hired Shell GSI, the DEPs are provided under contractual agreements through which Shell GSI is compensated. Thus, the DEPs have commercial value. Contrary to the Court's opinion, sharing the DEPs with third parties in exchange for compensation does not affect the confidential nature of the documents. As is also stated on the face of the DEPs, in such contractual agreements the provisions for the use of DEPs is tightly controlled and protected from redisclosure (see Exhibit H, Preface, paragraph 8; Exhibit I, Preface, paragraph 5) under Non-Disclosure Agreements ("NDAs").

12. The NDAs prevent dissemination of this information to anyone other than those entities who are part of the project. For example, among the terms of the NDAs are that the contracted party not disclose any of the information contained within the DEP to any third party and not use any of the information for any reason other than the purpose contracted. Further, those agreements require the contracted party to not make any changes to the information or circumvent the security device embedded within the information. There are also provisions in the contracts that require DEPs to be destroyed or returned to Shell GSI after use, including any authorized copies which are made only with the express prior consent of Shell GSI.

13. In addition to the language of the DEP itself in the Preface, strict internal controls, and the use of NDAs, we also note in the final version of these documents the assertion that they are protected by copyright. Even though Exhibits H and I (as drafts) do not contain that express language, they would nevertheless also be subject to copyright.

14. Unsealing Exhibits H and I would cause harm to the Shell group. As noted above, the DEPs contain protected intellectual property, meaning that both Exhibits H and I, like all other DEPs, have commercial value. For example, Exhibit H includes detail on what information needs to be collected in which project phases in order to account for metocean risks, including

4

details on the data sources, equipment that should be used to collect data, and what is measured and for how long (see Exhibit H, Section 3). Exhibit I includes a metocean data acquisition risk and mitigation matrix (see Exhibit I, Table 3), a metocean acquisition and analysis flow chart (see Exhibit I, Figure 1), and summaries of the internal knowledge supporting the reasons and risk ratings for the underlying process safety requirements (see Exhibit I, Section 1.3.1, and throughout for summaries).

15. Unsealing these documents would allow the public (including competitors) access to the DEPs and cause two distinct types of financial and competitive harm. First, competitors could use this information to improve their own internal processes, which would lead to value erosion or financial loss to the Shell group, as it utilizes these proprietary practices. Second, potential customers could access the documents without compensation to Shell GSI, the owner of the intellectual property, causing direct financial loss to Shell GSI.

/

/

/

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 5/23/23

Matthew Penny

5