UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------ x
                               :

CONSERVATION LAW FOUNDATION, INC.,   :
                               :
                  *Plaintiff,*   :
                               :
         -against-   :
                                 :
EQUILON ENTERPRISES LLC *doing business as* :
SHELL OIL PRODUCTS US, TRITON :
TERMINALING LLC, *and* MOTIVA :
ENTERPRISES LLC,   :
                               :
                *Defendants.*   :
------------------------------------------------------------ x

**OMNIBUS RULING DENYING MOTION TO STAY, DENYING MOTION TO STRIKE, VACATING RULING ON MOTION FOR RULE 37 SANCTIONS, AND REFERRING MOTIONS TO SEAL AND TO STRIKE**

3:21-cv-933 (VDO)

**VERNON D. OLIVER**, United States District Judge:

        This long-running and complex action is nearing the end of discovery. With related deadlines quickly approaching, developments both in the discovery process and external to the case itself have prompted the Parties to file a flurry of motions. At least three of those motions, a motion to stay the case, a motion to amend the scheduling order and for discovery sanctions, a motion to strike portions of expert reports, have been captioned "emergency" motions or have requested expedited resolution.[1]

---

[1] At oral argument, the Defendants requested that the Court resolve the motions to stay and to strike (ECF Nos. 584, 601) as soon as possible. At the same argument, the Plaintiff represented that they had changed their position and that the discovery dispute which they had deemed an emergency before the Magistrate Judge (ECF Nos. 569, 592) was no longer an emergency.

The Court convened oral argument on these motions on June 6, 2025,[2] and now addresses each pending motion in turn. Because of the expedited nature of this ruling, the Court assumes familiarity with the background of this case and the pending motions.

The first pending motion, and the motion which would have the most significant impact on the trajectory of the case, is the Defendants' motion to stay.[3] That motion requests that the Court stay the case while the Connecticut Department of Energy and Environmental Protection's ("CT DEEP") finalizes a pending draft General Permit for the Discharge of Stormwater Associated with Industrial Activity (the "Draft Permit").[4] The Draft Permit, Defendants claim, conclusively resolves the Plaintiff's central claim in this action: That the now-governing General Permit required the Defendants to consider the effects of climate change in developing and implementing the Stormwater Pollution Prevention Plan ("SWPPP") for Defendants' New Haven bulk fuel storage terminal, and that the Defendants failed to comply with this requirement.

Plaintiff raises its claims pursuant to two versions of the General Permit: The 2011 General Permit and the 2021 General Permit. The 2021 Permit presently governs (the "Current Permit"). The Current Permit requires that entities engaged in industrial activity and subject to the permit create Stormwater Pollution Prevention Plans ("SWPPPs") for every covered site. A SWPPP must "include records and documentation of compliance with [Best Management

---

[2] As recently as a few days ago, however, the Parties have continued to exchange filings regarding an additional "notice of supplemental authority." *See* ECF Nos. 637, 639. That "supplemental authority"—a deposition that took place on June 4, 2025—emphasizes the fast-moving, fact-bound, and still-developing nature of the disputes in question.

[3] Mot. to Stay, ECF No. 584.

[4] *Id.* at 6.

Practices of the General Permit] and shall be kept on-site at all times along with a copy of this general permit. The permittee shall maintain compliance with the Plan thereafter."[5]

Plaintiff's claims rest on Section 5(b) of the Current Permit. That Section lays out thirteen "Best Management Practices,"[6] which the Permit requires that "the permittee [] implement to minimize the discharge of pollutants from the permitted facility."[7] None of those thirteen practices explicitly discuss climate change. The Plaintiff argues, instead, that the requirement to consider climate change is incorporated through the Best Management Practices' reference of the term "minimize," which the next sentence of that Section defines: "The term 'minimize' means reduce and/or eliminate to the extent achievable using control measures that are technologically available and economically practicable and achievable in light of best industry practice."[8] Specifically, Plaintiff argues that consideration of climate change is and has been a best industry practice. Therefore, Plaintiff contends that failure to consider climate change in responding to each of the thirteen Best Management Practices would violate the Current Permit's requirement to "minimize . . . in light of best industry practice" the discharge of pollutants.[9]

In 2023, the Defendants filed a Motion for Partial Summary Judgment.[10] That motion argued that, as a matter of law, the Current Permit did not require consideration of climate

---

[5] ECF No. 585-7 at 24.

[6] *Id.* at 19-23.

[7] *Id.* at 19.

[8] *Id.*

[9] *Id.*

[10] Mot. for Partial Sum. J., ECF No. 248.

change because the Current Permit did not explicitly discuss consideration of climate change, that the "best industry practice" term did not add affirmative requirements, and pointed to other evidence to argue that the Permit did not require consideration of climate change. Judge Meyer, then presiding over the action, denied the motion.[11] He held that the term "industry best practice" as used in the definition of "minimize" in fact adduced additional requirements, and further held that whether consideration of climate change was an "industry best practice" remained an issue of material fact that could not be resolved as a matter of law.[12]

In March 2024,[13] CT DEEP has published a new draft of the general permit, along with an accompanying fact sheet.[14] In subsequent months, CT DEEP published additional fact sheets.[15] The Draft Permit retains the Best Management Practices: It moves that provision to a new section, Section 7(b), but maintains the use of the terms "minimize" and "best industry practice" in identical form.[16] In the next subsection, however, the Draft Permit introduces additional requirements not found in the Current Permit. These newly proposed requirements are labeled as "Resilience Measures."[17]

---

[11] Ord. Denying Mot. for Partial Sum. J., ECF No. 304; Tr. of Oral Arg. on Mot. for Partial Sum. J., ECF No. 305.

[12] Tr. of Oral Arg. on Mot. for Partial Sum. J. at 75-90.

[13] The Draft Permit in the record is not clear on its original date of publication, but the Parties agree that the first Draft Permit was published in March of 2024. Mem. in Supp. of Mot. for Stay, ECF No. 585 at 6 n.4, Mem. in Opp. to Mot. for Stay, ECF No. 604 at 10.

[14] ECF No. 585-6.

[15] *See, e.g.*, ECF Nos. 585-1, 585-4, 585-5, 585-6.

[16] ECF No. 585-2 at 30.

[17] *Id.* at 49-50 (Section 7(c)(2)(D)(V)).

These "Resilience Measures" are described in the "February 2024"[18] fact sheet as an "element [which] is a new component of the SWPPP and was added in response to Connecticut's commitment to prepare for ongoing climate change."[19] Subsequent fact sheets contain identical or nearly identical language. For example, that same sentence appears in the December 2024 Supplemental Fact Sheet,[20] the November 2024 fact sheet,[21] and the March 2024 Supplemental Fact Sheet.[22]

On the basis of this Draft Permit and accompanying fact sheets, the Defendants move to stay the ongoing portions of this action pending CT DEEP's final publication of the Draft Permit. They argue that the fact sheets' description of the Resilience Measures as a "new component" that "was added in response to . . . ongoing climate change" dispositively resolves whether the Current Permit required consideration of climate change. For that reason, Defendants say that upon publication, the Draft Permit would resolve the vast majority of the disputes in this case, and therefore requests that the Court stay this case to prevent it from accruing further litigation expenses. The Court declines to do so.

Defendants first contend that because the Plaintiff in this suit "stand[s] in the shoes of the government," *Connecticut Fund for Env't, Inc. v. Upjohn Co.*, 660 F. Supp. 1397, 1411 (D. Conn. 1987), Plaintiff cannot bring a suit based on a theory that the relevant government

---

[18] This fact sheet does not, as best the Court can tell, contain a clear statement of the date of its publication, but is dated "February 2024" on each page. *See* ECF No. 585-4.

[19] ECF No. 585-5 at 11.

[20] ECF No. 585-4 at 4.

[21] ECF No. 585-1 at 13.

[22] ECF No. 585-6 at 4.

agency has rejected. They contend that the nature of a citizen suit is that if the regulatory agency disclaims the theory behind a suit, that pronouncement is decisive: Here, they contend, "the statements by CT DEEP are dispositive of all key issues."[23] Defendants view of citizen suits is far from correct. Agencies are afforded no veto power over citizen suits. *Cf. Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 326 (2014) (citing 78 Fed. Reg. 12477, 12486–12487 (2013)) (affirming, in a Clean Air Act case, that "the 'independent enforcement authority' furnished by the citizen-suit provision cannot be displaced by a permitting authority's decision not to pursue enforcement."). Instead, the citizen suit provision is perhaps at its most force when an agency disagrees with the suit's theory of recovery.

Moreover, there is no basis to find substantial prejudice in allowing this action to proceed through the normal discovery process. It is extraordinarily well-established in the Second Circuit that "ordinary litigation expenses do not create substantial prejudice." *Pearson Educ., Inc. v. Heliosbooks, Inc.*, 2022 WL 970454, at *4 (S.D.N.Y. Mar. 31, 2022) (citing *Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir. 1993)); *see also L. Z. v. BigAirBag B.V.*, 721 F. Supp. 3d 169, 177 (D. Conn. 2024) ("'Delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice.'" (quoting *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (alterations adopted)).

And the costs that remain forthcoming are not overwhelming: discovery will end within the next few months, and, at that time, the Defendants could simply file a motion for summary judgment raising the same argument. Certainly, expenses will continue to accrue throughout the expert phase of discovery, but those expenses are not so unusually significant as to justify

---

[23] Mem. in Supp. of Mot. for Stay at 20.

an exception to this Circuit's established rule that litigation expenses do not constitute prejudice. Nor are the remaining costs sufficient to warrant abandoning the remaining portion of the normal process for resolving questions of law in civil litigation (discovery and summary judgment briefing).

Further, Defendants waited far too long to bring this motion to justify granting such relief at this point. The first fact sheet in the record is dated February 2024, and that fact sheet contains the key reference to "new" Resilience Measures that the Defendants rely on. And the Resilience Measures themselves are available in the Draft Permit published the next month. Yet, more than a year later and as important deadlines are mere days or weeks away, Defendants now ask for an urgent stay.

Defendants contend that they raised these claims with reasonable speed because the Draft Permit was reissued later in 2024 with additional fact sheets added around that time. This argument is unavailing. Defendants' core claim —that this new section on resiliency represents the first climate change requirement—was clearly available at least as of March 2024. Put otherwise, Defendants had ample opportunity to bring this motion far earlier, which would have had the effect of cutting down on litigation costs much more substantially. At this stage, however, the Court concludes in the exercise of its discretion to manage its docket that the Parties should proceed through the end of discovery and to summary judgment.

The lack of prejudice alone is more than sufficient to warrant the denial of the Defendants' motion.[24] But there are further deficiencies that provide an independent basis for

---

[24] The Parties dispute what standard applies to this motion. Plaintiff understands this as a motion to invoke the doctrine of primary jurisdiction, while the Defendants apply the traditional factors for a stay. This

denying the motion. Defendants argue that they are nearly certain to succeed at summary judgment. They contend that through the Draft Permit and its accompanying fact sheets, CT DEEP is interpreting its own regulations and ought to receive *Auer* deference.[25] Notwithstanding the fact that *Auer* is a federal doctrine of deference for federal agencies,[26] it is not clear that the Draft Permit's fact sheets are either (1) the sort of agency interpretation of its own regulation entitled to deference or (2) whether these fact sheets state what the Defendants believe they do.

As to the first concern, while "a[] [Connecticut state] agency's interpretation of its own regulations is entitled to deference," *Velez*, 306 Conn. at 488 (quotations omittted), the Draft Permit's fact sheets are primarily an effort to describe new provisions of the draft permit, not an effort to provide guidance as to its existing regulations. The fact sheets are not, therefore, the usual example of the sorts of agency action that are afforded deference. As a result, it is not clear how much deference the statements in the fact sheets accompanying the Draft Permit ought to be afforded.

As to the second concern, while it is eminently clear that the fact sheets refer to the Resilience Measures as both (1) new and (2) in response to climate change, it is not clear whether the oft-repeated sentence that Defendants rely on—"The Resilience Measures element is a new component of the SWPPP and was added in response to Connecticut's commitment

---

dispute is of no moment, however: The reasons for denying this motion traverse the factors included in both standards.

[25] *Id.* at 22-23 (citing *Auer v. Robbins*, 519 U.S. 452 (1997)).

[26] Connecticut state law has its own similar doctrine of deference. *See Velez v. Comm. of Lab.*, 306 Conn. 475, 488 (2012).

to prepare for ongoing climate changes"—speaks to whether the inclusion of *any* climate change consideration was new to this Draft Permit or whether merely the Resilience Measures are new. In fact, the natural reading of the phrase "[t]he Resilience Measures element is a new component of the SWPPP" indicates only that those specific measures are deemed "new." The word "new" does not obviously apply to "climate change [considerations]."

At no point do either the Draft Permit or its accompanying fact sheets explicitly speak to whether Section 5(b) incorporated "best industry practices" and therefore—potentially, depending on the resolution of a dispute of fact—"climate change" requirements. Nor do either the Draft Permit or the accompanying fact sheets specifically address whether the Current Permit's included any climate change considerations. The Draft Permit certainly adds "Resilience Measures" in response to climate change, and *those* provisions are indisputably new. But because the statements regarding climate change in the Draft Permit and the accompanying fact sheets are somewhat circumscribed, it is not clear at this preliminary stage what weight to afford the statements in the fact sheets.

Defendants have not established either prejudice absent a stay or any sort of substantial or overwhelming likelihood of success. For that reason, the motion to stay is DENIED. The action will proceed through the normal process of discovery and summary judgment, which Defendants remain free to move for at any time.

Relatedly, Defendants have also move to "strike" various expert opinions it alleges are improper.[27] They seek to strike opinions pursuant to a few theories: (1) that Plaintiff's notice of intent to sue was, as a matter of law, defective such that several of the subjects addressed in

---

[27] Def.'s Mot. to Strike, ECF No. 601.

the opinions cannot be raised in this suit, (2) that Plaintiff's experts improperly opine on whether Defendants have violated laws of other sovereigns, and (3) that other portions of the reports are prejudicial and/or irrelevant.

The Court DENIES this motion because a single "motion to strike" is not the proper vehicle for raising this medley of arguments. The arguments Defendants raise and the relief they seek are well-known to courts. These issues are raised, however, through procedural vehicles other than the motion to strike, and Defendants have not identified any provision within the Federal Rules of Civil Procedure that contemplates arraying requests for relief of these sorts in a single "motion to strike." Defendants' arguments should be resolved through the normal process, under the appropriate rule and the appropriate standard: Whether *Daubert* motions, motions for partial summary judgment, motions *in limine*, or something else, these motions should be resolved by a motion pursuant to whatever Federal Rule of Civil Procedure or of Evidence contemplates addressing the issues Defendants raise.

For example, the Parties identify a split in authority from other circuits regarding whether the notice of intent requirement is jurisdictional.[28] The Court could not resolve this dispute on the basis of a table listing allegedly improper opinions and the notice of intent to sue alongside a few lines of briefing from either party. The underdeveloped nature of this exchange demonstrates why a motion to resolve these theories or claims as a matter of law is required. If the Defendants seek to raise this and their other theories, they remain free to do so, but not outside of the process contemplated by the Federal Rules of Civil Procedure.

---

[28] *See* Def.'s Mot. to Strike at 4-5, Pl.'s Opp. to Motion to Strike, ECF No. 20 at 1-2 n.2.

Third, the Court turns to the Rule 72(a) objection to the ruling of a Magistrate Judge raised by the Plaintiff.[29] This dispute relates to the belated production of documents by the Defendants. Shortly before the close of fact discovery, and about a month after Plaintiff prompted the Defendant to reexamine their records related to one particular consultant, the Defendants produced an additional eighty-eight responsive documents to the Plaintiff.[30] Plaintiff swiftly filed an emergency motion seeking discovery sanctions, namely the ability to depose the Defendants Rule 30(b)(6) witness for two hours regarding the content of those documents as well as fees and costs.[31]

In their emergency motion, Plaintiff argued at length that the Defendants' Rule 30(b)(6) deponent answered questions dishonestly in light of information contained in the eighty-eight late-disclosed documents. The Magistrate Judge examined this claim on the highly expedited basis that Plaintiff requested and concluded that the Rule 30(b)(6) deponent's answers were not clearly dishonest. That accelerated timeline robbed the Magistrate Judge of a clear presentation of the dispute, but that may well ultimately be the fault of the Defendants for (1) failing to disclose these documents until prompted by Plaintiff, (2) failing to produce the relatively small number of documents at issue for nearly a month *after* being prompted by Plaintiff, and (3) producing these documents only shortly before important expert report deadlines facing Plaintiff.

---

[29] Obj. to Ord. on Mot. to Amend Sched. Ord., ECF No. 592.

[30] *Id.* at 6-7. Because the factual record with respect to this dispute is underdeveloped, the Court assumes that the facts contained in Plaintiff's objection are true for purposes of resolving whether the Magistrate Judge erred in failing to make findings as to the Rule 37(c) portion of the motion.

[31] Emer. Mot. to Amend Sched. Ord. and for Sanctions, ECF No. 569.

Certainly, Plaintiff's initial presentation of their motion left much to be desired, an issue which is frustratingly compounded by Plaintiff's more recent admission at oral argument that the issue does not still present a true emergency. But in addition to their claim that the deponent was dishonest, Plaintiff raised more run-of-the-mill arguments under Federal Rule of Civil Procedure Rule 37(b)(2)(A) and 37(c)(1) that the Defendant failed to produce responsive documents as required by prior rulings on motions to compel and failed to timely supplement its disclosures. This argument raises serious claims regarding documents that appear to be core to the Plaintiff's claims.

The presently unexplained disclosure of these documents after the Rule 30(b)(6) depositions had the effect of preventing Plaintiff from asking about these documents during those depositions. Acting on the expedited timeline that was requested, the Magistrate Judge's oral ruling examined this dispute only with regard to whether sanctions were warranted on the basis of the Rule 30(b)(6) deponent's answers in light of these newly produced documents. Accordingly, pursuant to Federal Rule of Civil Procedure 72(a), the Court VACATES the Magistrate Judge's ruling at ECF No. 582 to allow the Magistrate Judge to develop the record and evaluate the Rule 37(b)(2)(A) and Rule 37(c)(1) factors.[32]

Lastly, there are a number of pending motions related to the sealing of various filings (ECF Nos. 605, 625, and 640). There is a further pending request, which appears to be a

---

[32] To be sure, Rule 72(a) has an unusually deferential standard of review. Still, the Plaintiff should receive a full review of their claims that the Defendants ought be sanctioned under Rule 37 for the late disclosure of these documents—through brief and cabined reopening of a deposition, the opportunity for experts to briefly supplement their reports using these documents, or whatever the Magistrate Judge may or may not determine is appropriate. The proper disposition here, therefore, is to remand to the Magistrate Judge for findings and reasoning to support whether curative discovery or sanctions is necessary under Rule 37.

motion, by the Plaintiff to strike the Defendant's notice of supplemental authority (ECF No. 639). The Magistrate Judge has carefully and capably resolved any number of similar disputes in this case, and the Court believes that he is best situated to resolve these motions. Therefore, to the extent these motions are not already clearly referred to the Magistrate Judge pursuant to the general referral at ECF No. 93, the Court confirms that these four motions are REFERRED to the Magistrate Judge.

**<u>CONCLUSION</u>**

For the reasons set forth above, the Court DENIES the Defendants' motion for a stay (ECF No. 584) and to strike (ECF No. 601). The motion to strike is denied without prejudice to refiling under the proper rules of evidence and civil procedure. The Court further VACATES the ruling at ECF No. 582 and REFERS the motions at ECF Nos. 605, 625, 639, and 640 to the Magistrate Judge to the extent they were not already clearly referred.

**SO ORDERED.**

Hartford, Connecticut
June 13, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge