## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | July 2, 2025 |
| *Defendants*. | |

**DEFENDANTS' RESPONSE TO PLAINTIFF CONSERVATION LAW FOUNDATION, INC.'S EMERGENCY MOTION TO RESTORE ORIGINAL TIMELINE FOR EXPERTS' REBUTTAL REPORTS [ECF 646 AND 648]**

Plaintiff requests that this Court extend its deadline to provide rebuttal reports, arguing that it is simply seeking to "restore" the original timeline for expert reports. This characterization of its motion is belied by Plaintiff's own statements to the Court in the parties' June 23, 2025 Joint Status Report (ECF 643), where Plaintiff assured the Court that—except for two individuals who had scheduling conflicts—its experts were ready for and could comply with the July 7, 2025 rebuttal deadline. Moreover, Plaintiff had just rejected Defendants' request for a one-week extension of their June 23 expert report deadline with a concomitant extension of Plaintiff's rebuttal report deadline, a proposal that would have provided relief to both sides.

Nor does the Memorandum of Supplemental Information Plaintiff filed today in support of its Motion (ECF 648) create any other basis for the extension Plaintiff is seeking for unrelated reasons. As shown herein, Plaintiff's expert reports actually omitted far more of the data and calculations that its experts relied on in preparing their expert reports, and Plaintiff did not complete its production of these materials until nearly a month after producing its expert reports

(and 13 days after Defendants had to expressly request these materials).  By contrast, Defendants promptly responded to Plaintiff's request for additional materials with an initial chart providing Bates numbers for all documents referenced in Defendants' expert reports (something that at least some of Plaintiff's experts have never done, to this day) one business day after Plaintiff requested them, and completed its production of all requested materials within three business days of Plaintiff's request.  Plaintiff's argument that an extension of its rebuttal deadline is necessary based on this issue is a red herring that should be rejected by the Court.

Plaintiff's blatant gamesmanship should not be rewarded, and its refusal to consent to Defendants' proposed mutual extension, only to immediately turn around and request an even longer extension just for itself is unwarranted.  CLF seeks to have it both ways on these significant expert discovery deadlines.  It fails to justify its behavior and also fails to address the cascading and now prejudicial effect the extension will have on other scheduling deadlines if its request is granted.

### I.   BACKGROUND

#### A.  Scheduling Order Deadlines

The Court entered the current Scheduling Order on January 13, 2025.  ECF 507. Pursuant to that Scheduling Order, Plaintiff's initial deadline to disclose expert reports was May 1, 2025.  *Id.*  The Scheduling Order further provided a deadline for Defendants to serve their expert reports by June 9, 2025, and a rebuttal expert deadline of July 7, 2025.  *Id.*  Expert discovery is scheduled to be completed by August 11, 2025, and *Daubert* motions are due to be filed by September 1, 2025.  *Id.*

#### B.  Plaintiff's Emergency Motion to Extend First Expert Report Deadline

On April 28, 2025, Plaintiff filed an "emergency" motion for sanctions related to the production of written discovery that it claimed prejudiced CLF's ability to serve its expert reports by the May 1 deadline. ECF 569. In its motion, Plaintiff claimed that the production of discovery regarding consulting services provided by non-party consultant All4, Inc. ("All4") were "essential documents" that "relate specifically to an important issue in the case." ECF 569, at 1. Defendants promptly opposed the motion on several grounds, including Defendants had already produced multiple documents regarding All4's consulting work long before Plaintiff filed its motion. Of note, the All4 documents related to work being performed in connection with the new Draft Permit that is set to be implemented shortly not the Permit that is currently in effect. ECF 580, at 3, 6.

At the May 1, 2025 hearing on Plaintiff's motion, Defendants represented that while they disagreed with the purported basis for the extension, they still would have agreed to the professional courtesy of a one-week extension of Plaintiff's deadline had Plaintiff simply picked up the phone and asked:

> THE COURT: Mr. Lewis, let me put it to you, though. So if they had just asked you for another week, as a courtesy between counsel, and stripped of all the adjectives and the sanctions motion, now, would you have opposed it? Or would you have done them that courtesy?
>
> MR. LEWIS: "Your Honor, typically, that's a courtesy we would normally agree to with counsel."

Ex. A, May 1, 2025 Hr'g Tx., at 5; *see also id.* at 5-6 ("[Y]es, that's not something we normally have a big fight about.").

3

The Court then resolved then Plaintiff's motion by extending Plaintiff's expert report deadline by one week to May 8, 2025. ECF 582.[1]

### C. Plaintiff's May 8, 2025 Expert Reports and Defendants' Motion to Strike

Plaintiff then served seven expert reports on May 8, 2025, totaling nearly 600 pages of opinions. July 2, 2025 Declaration of Douglas A. Henderson ("Henderson Decl."), ¶ 3. Tellingly, none of Plaintiff's expert reports even discussed a single document related to the work performed by All4, the "essential documents" upon which Plaintiff had just claimed an extension was needed for its experts to address. *See id.*, ¶ 3; ECF 569, at 1.

However, Plaintiff's expert reports contained a litany of claims and opinions that were not included in Plaintiff's pre-suit Notices of Intent, as required by law for citizen enforcement suits under the Clean Water Act ("CWA"). *See* ECF 601. As a result, these opinions were new to Defendants, who had no reasonable expectation that their experts would be required to rebut such opinions in their own reports, which were then due on June 9, 2025. Henderson Decl., ¶ 4.

On May 23, 2025, Defendants filed a motion to strike the improper expert opinions and requested a stay of Defendants' expert report deadline while their motion was pending. ECF 601. Defendants also argued that an extension of the deadline was necessary to complete the Rule 30(b)(6) deposition of Plaintiff, which had to be rescheduled due to a medical emergency. On May 22, 2025, the Court granted an initial extension of Defendants' deadline to serve expert reports by two weeks to June 23, 2025, to provide Defendants some relief while they took the

---

[1] Plaintiff challenged Magistrate Judge Farrish's ruling on its emergency motion for sanctions by filing an Objection to Judge Oliver on May 15, 2025. ECF 592. This Objection was heard on June 6, 2025, and referred back to Judge Farrish for further proceedings. ECF 641.

4

Rule 30(b)(6) deposition of Plaintiff, and while the Court considered Defendants' motion.  ECF 598.[2]

### D. Plaintiff's Failure to Timely Provide the Underlying Facts, Data and Calculations Relied Upon by its Experts in Preparing their Reports

Plaintiff also caused additional delay in the preparation of Defendants' expert reports by failing to include with its expert reports the underlying facts, data and calculations relied upon by Plaintiff's experts in preparing their opinions, as required by Fed. R. Civ. P. 26(a)(2)(b).  *See* Henderson Decl., ¶ 5.  Defendants requested that Plaintiff provide such materials via e-mail correspondence dated May 29, 2025.  *Id.*, ¶ 5.  Plaintiff initially disagreed that it was required to disclose the missing facts, data and calculations, but ultimately provided some additional materials via e-mails dated June 4, 2025, June 5, 2025, and June 11, 2025.  *Id.*, ¶ 5.

On June 26, 2025, Plaintiff requested the production of similar underlying calculations and data from Defendants' experts, including the Bates numbers of documents referenced in the reports.  Henderson Decl., ¶ 11.  Defendants responded with a chart of all referenced documents and Bates numbers on June 27, 2025.  *Id.*, ¶ 11.  This notably contrasted with Plaintiff's expert reports, at least one of which did not include any Bates numbers whatsoever.  *Id.*, ¶ 11.  Further, on July 1, 2025, Defendants produced the requested data, spreadsheets and other materials generated and/or relied on by their experts, just 3 business days after Plaintiff's request for same.  *Id.*, ¶ 11.

Plaintiff has now filed a Memorandum of Supplemental Information in Support of its Motion (ECF 648) to add this additional argument in support of its Motion for an extension of

---

[2] The Court ultimately denied Defendants' Motion to Strike on procedural grounds, without prejudice to refile, by Order dated June 13, 2025.  ECF 641.  The denial of Defendants' Motion to Strike left Defendants and their experts with just 10 days to respond to the new claims and opinions in Plaintiff's expert reports.

the rebuttal deadline that it seeks for unrelated reasons. Plaintiff's arguments lack merit and should be rejected by the Court, especially in light of the stark contrast in the parties' respective positions and productions around this issue.

### E. Attempts to Meet and Confer on Extension of Defendants' Deadline

In light of these issues, Defendants contacted Plaintiff's counsel on June 16, 2025 to request an extension of their June 23, 2025 deadline and to offer an in-kind extension to Plaintiff's counsel for its rebuttal reports. *Id.*, ¶ 6. Defendants requested the professional courtesy of a one-week extension of their expert report deadline, and offered the same extension to Plaintiff. *Id.*, ¶ 6. Plaintiff's counsel asked how many expert reports Defendants anticipated serving, and Defendants responded that they were not sure at that time, but may serve "8 or 9 or more" reports on the service deadline. *Id.*, ¶ 6.

The only type of extension that Plaintiff would entertain was a one-week extension of the service deadline for two of Defendants' experts, in exchange for an 18-day extension for the service of two reports of Plaintiff's rebuttal experts, who purportedly had unrelated scheduling issues. *Id.*, ¶ 7. Defendants responded that a one-week extension was sought for all of its experts to complete their reports under these circumstances, but Defendants were met with an outright refusal from Plaintiff to entertain any such extension, which would have applied to CLF's experts as well. *Id.*, ¶ 7.

After Plaintiff rejected Defendants' request for extension, Defendants' counsel—and expert witnesses—worked tirelessly to meet the deadline of June 23, 2025 and ultimately timely served its expert reports. *Id.*, ¶ 8. One of the designated experts was previously deposed in this litigation about her work and opinions, and CLF has had her materials for more than two years.

6

Defendants' attorneys worked up to 20 hours per day, including weekends, to serve their reports on time.  *Id.*, ¶ 8.

    F.  **June 23, 2025 Joint Status Report**

On June 23, 2025, the parties submitted their mandatory bi-weekly Joint Status Report. ECF 643.  In that report, the parties submitted their positions on the expert reporting deadlines, and Plaintiff reported to Court that it would request an extension until July 25, 2025 for **two** of its experts to serve their rebuttal reports, based on purported scheduling conflicts, but noting that all other experts could serve rebuttal reports by the deadline, expressly stating that "CLF does not currently anticipate needing an extension of the rebuttal report deadline for its five other experts."  *Id.*, at 3.

    G.  **Plaintiff's Request to Extend Rebuttal Deadline**

Just two days later, Plaintiff's counsel contacted Defendants to request a two-week extension of its deadline for **all** of its rebuttal experts to submit their reports.  July 2, 2025 Declaration of Ryan T. Kearney ("Kearney Decl."), ¶ 3.

The parties met and conferred regarding Plaintiff's request on June 26, 2025.  Kearney Decl., ¶ 3.  Defendants' counsel asked Plaintiff what had changed, if anything, since Plaintiff's representation to Court just two days prior that no extension would be needed for all but two of its experts.  *Id.*, ¶ 3.  The only response from Plaintiff's counsel was that CLF had been operating under the assumption that Defendants would only serve "8 or 9" expert reports, and ultimately served 13.  *Id.*, ¶ 3.  Defendants clarified that they never committed to serving any specific number of expert reports—nor would any rule require Defendants to make such a commitment before the service deadline—but had merely represented Defendants' evolving understanding of

7

the approximate number of expert reports they anticipated serving at the time of that conversation.  *Id.*, ¶ 3.

Defendants responded that they could not acquiesce to Plaintiff's request for an extension immediately after CLF had refused to grant Defendants any professional courtesy or extension of their own expert deadline.  *Id.*, ¶ 4.  Defendants communicated to Plaintiff's counsel that Defendants remained disappointed with Plaintiff's gamesmanship, and Plaintiff's counsel responded, "I don't care if you're upset."  *Id.*, ¶ 4.

During the meet and confer, Defendants' counsel also informed Plaintiff that they understood the Court's Order regarding the presentation of discovery disputes applied to this Motion, and inquired whether Plaintiff's counsel intended to contact the Court and await guidance for how to proceed.  *Id.*, ¶ 5; *see also* ECF 473.  As it has before, Plaintiff advised that it did not intend to comply with that Court's Order and that it would be filing this as an ordinary motion.  Kearney Decl., ¶ 5.

Plaintiff ultimately filed the instant Motion on June 26, 2025, bypassing the Court's Order on the presentation of discovery disputes (ECF 473) and omitting any formal request for emergency relief that would generate a ruling before Plaintiff's July 7, 2025 rebuttal deadline.  ECF 646.  Indeed, the Court's docket currently provides that Defendants' response to this Motion is not due to be filed until July 17, 2025.  *Id.*  Defendants are nevertheless filing this Response today to prevent any confusion whether Defendants oppose Plaintiff's request for extension, as well as any subsequent argument—or potential claim of ignorance—that Plaintiff may not be required to serve its rebuttal reports in compliance with the Scheduling Order simply because it has a motion pending.

    **II.**    **ARGUMENT**

In its Motion, Plaintiff asks the Court for an extension of its deadline to serve all rebuttal reports until July 22, 2025 for all of its experts, and then an additional three days to serve the reports of two other experts until July 25, 2025. Pl. Mot., at 1. While Plaintiff takes great steps to avoid characterizing its motion as a request for an "extension" or "enlargement" of its time to serve rebuttal reports, that is exactly what Plaintiff is requesting here. But Plaintiff has not made any showing that would justify such an extension, let alone the "good cause" necessary to extend these deadlines. *See* D. Conn. L. Civ. R. 16(b). Moreover, considering its outright refusal to consent to Defendants' request just one week earlier, as well as Plaintiff's representation to the Court that no extension would be needed as recently as June 23, 2025, actual concrete facts establishing good cause are necessary but notably absent here.

### A. **Plaintiff's Request for Extension Represents Unfair Gamesmanship.**

Any extension of Plaintiff's rebuttal deadline would reward Plaintiff's unprofessional behavior and gamesmanship in denying Defendants' good faith request for a one-week extension, just to turn around and request an even longer extension for itself. Indeed, the record reflects Defendants had good cause for their own request for extension, and there was no "reason other than to strategically disadvantage Defendants for Plaintiff to not have accommodated [Defendants'] reasonable request." *Booker v. P.A.M. Transport, Inc.*, No. 2:23-cv-18WJ/KRS, 2024 WL 4664420, at *10 (D. N.M. Nov. 4, 2024) (granting extension of expert disclosure deadline and holding that "a party's refusal to accommodate a scheduling request for purely strategic reasons (as opposed to demonstrated inability), is good cause for an extension of the opposing party's disclosure deadline, both to avoid undue prejudice . . . and to discourage counsel from engaging in gamesmanship like conduct"). Having denied Defendants' reasonable request for extension, Plaintiff should not be permitted to have its cake and eat it too. Instead, if

9

Plaintiff is going to force Defendants' experts and legal team to work around the clock to meet their deadline, CLF must be prepared to live with that reality for its own experts.

As shown herein, Defendants were more than willing to work with Plaintiff to propose an in-kind extension of each parties' upcoming expert deadlines and provide relief to both sides that also addressed the other case deadlines, but cannot consent to a one-way extension.

B. **Plaintiff's Request for Extension is Untimely.**

Plaintiff has also waited too long request an extension of its rebuttal expert deadline after taking a hard line with Defendants' deadlines. This Court has previously held that the "good cause" standard for amending deadlines in a scheduling order "requires a particularized showing that the schedule [could] not be reasonably met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan." *Namin v. Broadridge Fin. Solutions, Inc.*, No. 3:22-cv-749, 2023 WL 10802679, at *2 (D. Conn. July 17, 2023) (citing D. Conn. L. Civ. R. 16(b)). In *Namin*, discovery had been open for one year prior to the requested amendment, and the requesting party had "not explained why this could not have been done within the deadline had he been working more diligently." *Id.* This Court specifically held that leaving the complained-of issue unresolved for a period of two months did "not constitute 'good cause' for a scheduling order amendment." *Id*; *see also id.* at *3 ("Parties who fail to use the early months of a year-long discovery period, trusting that the discovery will be exactly where they expect it in the last month, do so at their own peril.").

Defendants' deadline was extended by the Court well over a month ago, on May 22, 2025, after Plaintiff's 30(b)(6) witness was not available for his deposition. If Plaintiff was concerned about the impact of that extension on Plaintiff's rebuttal deadline, then that would

10

have been the appropriate time to raise it. But as Plaintiff concedes, CLF made no objection at the time (Pl. Mot., at 3), and should not be belatedly permitted to do so now. As explained further in the next section, Plaintiff has likewise failed to demonstrate any substantial change in circumstances or unforeseeable development in the month since the Defendants' extension was granted that is sufficient to demonstrate good cause here. This case has been pending for four years and involved a great deal of substantive motion practice that has already set forth Defendants' legal theories, factual contentions, and defenses to Plaintiff's allegations in this case, which are now supported by Defendants' expert reports.[3] The parties must already work diligently to comply with other rapidly approaching discovery and briefing deadlines, and any further extension would limit this already tight window to complete expert depositions in advance of the August 11 expert discovery cutoff.

C. **Plaintiff Has Not Demonstrated Any Prejudice Necessitating this Motion.**

Plaintiff's sole claim of prejudice is apparently based on a misunderstanding of how many expert reports Defendants would be serving on June 23. In this regard, Plaintiff misrepresents the record, claiming that Defendants "represented in the Joint Status Report that they would only disclose 8 or 9 expert witnesses." *See* Pl. Mot., at 2. This is not an accurate summary of the Joint Status Report, in which the parties merely summarized meet and confer discussions from the prior week. Indeed, the Joint Status Report only states that Defendants represented, during the meet and confer discussions on June 16, 2025, that Defendants "may serve 8 or 9 reports **but were not certain at that time**." ECF 643, at 2 (emphasis added). To be

---

[3] *See, e.g.*, Motion to Dismiss Plaintiff's Complaint (ECF 41); Motion to Dismiss Amended Complaint (ECF 50); Motion for Summary Judgment (ECF 248); Motion to Stay Discovery and Proceeding Related to Plaintiff's "Climate Change" Allegations in Counts I-IX of Complaint (ECF 584); Motion to Strike Improper Expert Opinions (ECF 601).

11

clear, Defendants made no statement in the Joint Status Report about the number of reports they intended to serve, and certainly did not represent that its expert reports would be limited to that number. *See id.* In fact, the statement regarding the number of expert reports that Plaintiff claimed Defendants said they would serve was repeatedly inserted by Plaintiff's counsel after Defendants' counsel deleted it, in back-and-forth revisions to the Joint Status Report before it was filed with Court. Henderson Decl., ¶ 9.

In any event, there is no Rule that requires Defendants to disclose how many expert reports they intend to serve before the service deadline, just like there was no Rule that requires Plaintiff to pre-disclose how many rebuttal reports it intends to serve. Defendants are entitled to serve as many expert reports as they believe are necessary to rebut Plaintiff's allegations in this case. Plaintiff has not demonstrated any reason why its rebuttal obligations should be treated differently than any other case, nor why 29 days are necessary to rebut expert opinions in a case that has been pending for four years, and in which Defendants have already filed numerous motions outlining their substantive legal arguments and defenses.

This is especially important in the context of rebuttal experts, which are "intended solely to contradict or rebut evidence on the same subject matter identified by another party." *Aidoo v. Cela*, No. 3:16-cv-147-VAB, 2018 WL 6435650, at *8 (D. Conn. Dec. 7, 2018). Indeed, "[a] rebuttal expert report is not the proper place for presenting new legal arguments, unless presenting those arguments is substantially justified and causes no prejudice." *Id.* (internal citation omitted). In this context, it is unclear what new opinions or defenses Plaintiff believes were presented in Defendants' expert reports for which Plaintiff was not previously on notice, and that could possibly justify a 180-degree change in Plaintiff's position regarding the need for an extension of its rebuttal deadline in just two days. To be sure, Plaintiff has identified none.

At this point, it would be extremely difficult for Plaintiff to claim surprise by the expert opinions it is now confronted with, and Plaintiff's Motion makes no effort to substantiate any. As a result, it remains unclear why Plaintiff needs additional time to prepare rebuttal expert reports in this case.

D. **Defendants Would Be Severely Prejudiced by the Requested Extension.**

Finally, Plaintiff ignores the obvious prejudice to Defendants in granting an extension at this late stage of expert discovery, as well as the prejudice that has already been caused by CLF's earlier refusal to consent to any extension of Defendants' deadline. Plaintiff claims that Defendants would not be prejudiced by any further extension of Plaintiff's rebuttal deadline up to July 25, 2025 for some experts—a hard argument to make with a straight face, considering the rapidly approaching deadlines for: 1) expert discovery (August 11); 2) *Daubert* motions (September 1); and 3) dispositive motion filings (September 19).

Indeed, extending the deadline for Plaintiff to serve expert reports to July 22 would only provide 14 business days for Defendants to depose Plaintiff's expert witnesses, and it would not allow for the sequencing of expert depositions between Defendants and Plaintiff that is part of the Scheduling Order.[4] To make it even more difficult to meet the expert discovery deadline, Plaintiff has yet to provide any available dates for the deposition of six of its seven experts, despite Defendants' request for such dates by the end of last week.[5] Worse, disclosing rebuttal

---

[4] Without knowing which of Plaintiff's experts that were initially disclosed on May 8, 2025 may be submitting additional opinions via a rebuttal expert report, Defendants are unable to depose any of Plaintiff's experts before the rebuttal deadline. In fact, doing so would run the unacceptable risk that Defendants could be forced to depose Plaintiff's experts based solely on the contents of their May 8, 2025 reports, and then be denied any opportunity to re-depose those experts on the contents of their rebuttal reports served at least two months later.

[5] On June 30, 2025, Plaintiff's counsel provided two potential dates for the deposition of its expert Dr. O'Donnell, but no dates for any of the six other experts Plaintiff disclosed in this case.

experts on July 25 would provide only 11 business days to prepare for and complete depositions. Plaintiff's initial expert disclosure already included seven experts, and it is abundantly clear that Plaintiff is anticipating disclosing several more experts when its rebuttal reports are filed. *See* ECF 643 (representing in the Joint Status Report that Plaintiff was contemplating "prepar[ing] potentially nine rebuttal reports" before Defendants' expert disclosures had even been made). The limited remaining time period for expert discovery, alone, is sufficient evidence of the extreme prejudice to Defendants that would result from an extension of Plaintiff's rebuttal deadline.

Moreover, Plaintiff's Motion also ignores the prejudice that Defendants' experts and legal team would have already suffered in working around the clock to comply with their own reporting deadline while Plaintiff nevertheless obtains an extension of its rebuttal deadline. If this were to occur, Defendants' experts and legal team will have wasted countless hours, resources, legal fees, and even sleep in preparing their expert reports just 10 days after the Court denied Defendants' Motion to Strike, requiring Defendants' experts to sprint in responding to claims and opinions which Defendants maintain should not be part of this case. By contrast, Plaintiff is requesting 29 days, and up to 32 days for two of its experts, to rebut the opinions of Defendants' experts which are consistent with the positions Defendants have repeatedly and consistently taken in this litigation for years, without providing any relief from the remaining deadlines. That would be a demonstrably unfair outcome that Defendants respectfully implore the Court to reject.

E. **Alternative Request to Extend Remaining Deadlines**

This case has been pending since 2021, and the current scheduling order has been in place since January 2025. The Court has repeatedly advised that while the parties remain free to

request extensions of individual discovery deadlines, the Court remains focused on maintaining the deadline for filing dispositive motions by September 19, 2025.  Against that backdrop, any further extension of the expert discovery period, as would be necessary if Plaintiff's requested extension is granted, would render the existing deadlines for serving *Daubert* and dispositive motions simply not feasible.

Therefore, in the event that the Court is inclined to grant any extension for Plaintiff's rebuttal expert reports, which it should not, Defendants respectfully submit that the extension cannot be longer than **7 days**.  Defendants vehemently maintain that no extension should be granted, but in the alternative, respectfully request that an in-kind extension of all remaining deadlines should also be granted by an equal number of days.

### III.    CONCLUSION

For all these reasons, Defendants respectfully submit that Plaintiff has not demonstrated good cause to extend its deadline for serving rebuttal expert reports, especially considering Plaintiff stated its experts would meet the rebuttal deadline and would not entertain Defendants' request for the professional courtesy of a 1-week extension for Defendants' reports.  Defendants respectfully request Plaintiff's Motion be denied in all respects.  Alternatively, in the event that the Court is inclined to grant any extension of Plaintiff's rebuttal deadline (which, in any event, should be no more than one week), Defendants propose that all remaining deadlines be extended by an equal amount of days, to avoid artificially narrowing the time period to complete this very substantial amount of expert depositions in time currently allotted under the existing scheduling order and all subsequent briefing deadlines.

Dated: July 2, 2025                                                                        Respectfully submitted,

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com
CToledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street Suite 1700
Charlotte, North Carolina 28202
T: (704) 503-2600
alewis@kslaw.com

Rose J. Jones (phv208026)
Hilgers Graben PLLC
1372 Peachtree Street, N.E. 19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower 265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020

        F: (202) 789-6190
        jguttmann@bdlaw.com

        Bina R. Reddy (phv20420)
        Beveridge & Diamond, P.C.
        400 West 15th Street Suite 1410
        Austin, TX 78701-1648
        T: (512) 391-8000
        F: (202) 789-6190
        breddy@bdlaw.com

        Megan L. Marzec Morgan (phv20623)
        Roy D. Prather III (phv206800)
        Beveridge & Diamond, P.C.
        201 North Charles Street, Suite 2210
        Baltimore, MD 21201-4150
        T: (410) 230-1305
        F: (410) 230-1389
        mmorgan@bdlaw.com
        rprather@bdlaw.com

        ***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 2, 2025 a copy of the foregoing Response to Plaintiff Conservation Law Foundation, Inc.'s Motion to Restore Original Timeline for Experts' Rebuttal Reports [ECF 646 and 648] was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

      /s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com