## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| Plaintiff, | Case No: 3:21-cv-00933-VDO |
| v. | |
| EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | October 3, 2025 |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT JAMES O'DONNELL, Ph.D.

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC (collectively, "Defendants") move to exclude two categories of opinions offered by Plaintiff's expert Dr. James O'Donnell, Ph.D. because they are irrelevant, impermissible, and highly prejudicial. *See* Fed. R. Evid. 402, 403, 702.

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

    A.    Dr. O'Donnell Proffers No Opinion Connected to the Terminal at Issue ............. 3

    B.    Dr. O'Donnell's Own Weather Tools Indicate That The Terminal Is Not At Risk of Flooding ................................................................................. 4

    C.    Dr. O'Donnell Offers No Opinion Connected to the 2018/2021 Permit at Issue in This Case.................................................................................. 5

III.  LEGAL STANDARD.......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 8

    A.    Dr. O'Donnell's Opinions Should Be Excluded as Irrelevant Because They Do Not Concern the Specific Terminal, Its Specific Location, And Do Not Rely Upon Any Facility Data. ..................................................... 8

        1.    Dr. O'Donnell's Report Does Not "Fit" Any Issue Relevant to This Case Because It Does Not Concern the Terminal at Issue at All................ 9

        2.    Dr. O'Donnell Recognizes That His Analysis Requires Specificity To Be Accurate, But Nonetheless Ignores His Own Tools Indicating The Terminal Is Not a Risk of Flooding .......................................................... 12

    B.    Dr. O'Donnell's Opinions Should Be Excluded Because He Has No Knowledge of The 2018/2021 Permit Terms Or 2018/2021 Permit Guidance. ... 16

    C.    Dr. O'Donnell's Opinions Would Serve Only to Confuse and Inflame the Jury and Should Be Excluded Under Rule 403 .......................................................... 20

V.    CONCLUSION................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)............................................................................6, 16

*City & Cnty. of San Francisco, California v. Env't Prot. Agency*,
  604 U.S. 334 (2025)...............................................................................17, 18, 21

*Conservation Law Found., Inc. v. ExxonMobil Corp.*,
  No. 1:16-cv-11950 (D. Mass.) .........................................................................2

*Conservation Law Found., Inc. v. Pike Fuels Ltd. Pship.*,
  No. 3:21-cv-00932 (D. Conn.) .........................................................................2

*Conservation Law Found., Inc. v. Shell Oil Products US, et al.*,
  No. 1:17-cv-00396-WES-LDA (D.R.I.) ............................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..........................................................................6, 7, 8, 21

*K.E. v. GlaxoSmithKline LLC*,
  2017 WL 440242 (D. Conn. Feb. 1, 2017) ......................................................15

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
  982 F.3d 113 (2d Cir. 2020).............................................................................6

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005)........................................................................7, 21

*Oliver v. Am. Express Co.*,
  2024 WL 100848 (E.D.N.Y., Jan. 9, 2024) .....................................................15

*Precision Trenchless, LLC v. Saertex multiCom LP*,
  2022 WL 594096 (D. Donn. Feb. 28, 2022).................................................16, 17

*Pugliano v. United States*,
  315 F. Supp. 2d 197 (D. Conn 2004)........................................................ *passim*

*Redd v. DePuy Orthopaedics, Inc.*,
  700 F. App'x 551 (8th Cir. 2017) ....................................................................15

*Reynolds v. Arnone*,
  645 F.Supp.3d 17 (D.Conn., 2022)........................................................11, 12, 13

*In re Rezulin*,
   369 F.Supp.2d at 425 ................................................................................................. 12

*Ruggiero v. Warner–Lambert Co.*,
   424 F.3d 249 (2d Cir. 2005) ...................................................................................... 16

*United States v. Jones*,
   965 F.3d 149 (2d Cir. 2020) ........................................................................................ 7

*Wang v. Omni Hotels Management Corporation*,
   3:18-cv-2000, 2025 WL 1782264 (D. Conn. June 27, 2025) ..................................... 6

**Other Authorities**

40 CFR §§ 124.8, 123.25 ................................................................................................. 19

Fed. R. Evid. Rule 401 ................................................................................................... 16

Fed. R. Evid. Rule 403 ........................................................................................ *passim*

Fed. R. Evid. 702 ................................................................................................ *passim*

Federal Rules of Evidence 702 Advisory Comm. Note 6 to 2023 Amends. .................................. 6

## I.    INTRODUCTION

This Court should exclude the proposed opinions of Plaintiff's expert James O'Donnell, Ph.D., pursuant to Federal Rules of Evidence 702 and 403 because they have no relevance to the issues to be decided by this Court and will subject the jury to substantial prejudice and confusion.

***First***, Dr. O'Donnell offers no opinion on the potential for sea level rise or coastal flooding at Defendants' New Haven Terminal (the "Terminal").  CLF claims that Defendants violated their industrial stormwater management permit (the "2018/2021 Permit")[1], which applies exclusively to the Terminal and nowhere else.  ████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

████████████  Dr. O'Donnell cannot assist the jury in determining any fact relevant to compliance with the Terminal-specific 2018/2021 Permit.

***Second***, Dr. O'Donnell is not an expert on Connecticut's CT DEEP permitting system, and in fact testified that he has no experience with stormwater permits whatsoever.  Lacking even

---

[1] At the time this lawsuit was filed, the applicable permit was the 2018 General Permit.  In 2021, CT DEEP renewed the permit without any substantive changes.

a general knowledge of the permit requirements at the core of this dispute, Dr. O'Donnell omits from his report any site-specific opinion or analysis that could assist the trier of fact in evaluating sea level rise or storm surge as they pertain to the Terminal and its 2018/2021 Permit.

*Third*, because Dr. O'Donnell's report lacks any probative value as to the Terminal or the 2018/2021 Permit, his opinions must be excluded to protect the jury from serious prejudice and confusion.  The jury will recognize Dr. O'Donnell's expert qualifications and will afford great weight to his report and testimony, but they may well fail to discern the fatal lack of site-specific analysis in his opinions.  The jury will likely assume that Dr. O'Donnell's generalized conclusions apply to the Terminal site, despite Dr. O'Donnell's own acknowledgement that the effects of sea level rise and storm surge are too variable to draw such conclusions about a particular location.  To avoid the confusion and prejudice that would surely result, Dr. O'Donnell's opinions must be excluded.

## II.    BACKGROUND

In this lawsuit, Conservation Legal Foundation ("CLF") alleges that Defendants Triton Terminaling, LLC, Equilon Enterprises LLC, and Motiva Enterprises LLC ("Defendants") violated the State of Connecticut 2018/2021 Permit at Defendants' New Haven Terminal, a petroleum bulk storage facility, because they did not consider the risks of climate change. CLF is an environmental advocacy group that has filed CWA citizen suits[2] asserting novel claims that the terms of 2018/2021 Permit issued under the CWA implicitly included an obligation to consider climate change and adoption of resiliency measures.  In support of its claims, CLF identified as an expert **James O'Donnell, Ph.D**., a Professor of Marine Sciences at the

---

[2] Plaintiff has filed lawsuits asserting identical claims against petroleum bulk storage terminals across New England. *See Conservation Law Found., Inc. v. Shell Oil Products US, et al.*, No. 1:17-cv-00396-WES-LDA (D.R.I.); *Conservation Law Found., Inc. v. ExxonMobil Corp.*, No. 1:16-cv-11950 (D. Mass.); *Conservation Law Found., Inc. v. Pike Fuels Ltd. Pship.*, No. 3:21-cv-00932 (D. Conn.).

University of Connecticut and the Executive Director of the Connecticut Institute for Resilience and Climate Adaptation ("CIRCA")." Dr. O'Donnell is disclosed to testify to *general* projected sea level rise and coastal flooding.

###    A.    Dr. O'Donnell Proffers No Opinion Connected to the Terminal at Issue

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████.

At deposition, Dr. O'Donnell disclaimed any opinion relating to the Terminal, the Terminal's location, or the Terminal's operation.  For instance, Dr. O'Donnell testified that:

> **Q You have done no evaluation of the specific Equilon terminal in this case. True?**
> A That is correct.
> **Q And you are not going to offer any opinions about the potential effects any sea level rise may or may not have on the Equilon terminal in this case?**
> A That is correct.

Ex. B, O'Donnell Dep. at 185:13-21. ████████████████████████████



██████████████████████████████████████████

████████████████████████████████████

Likewise, in performing his analysis, Dr. O'Donnell ignored any data specific to the actual Terminal.  *See id.* at 185:13-186:10.  And when questioned regarding past storms affecting the Terminal, Dr. O'Donnell testified that he didn't "know of any" and that he had "not studied that site."  *Id.*  Indeed, Dr. O'Donnell conceded that "to the extent [his] report refers to risk of

flooding, [he is] not offering any opinions that any specific site at the port will flood under any given scenario." *Id.*  And Dr. O'Donnell offered no opinion on whether the Terminal would be affected by adverse weather events.

> **B.    Dr. O'Donnell's Own Weather Tools Indicate That The Terminal Is Not At Risk of Flooding**

With specific relevance to this dispute, Dr. O'Donnell's own weather modeling tools indicate that the Terminal site is not at risk of any future flooding. █████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

█████████████    Among other things, CIRCA has an online model for hypothetical storm events (available at https://circa.uconn.edu/sea-level-rise-and-storm-surge-viewer/). Unsurprisingly, Dr. O'Donnell expressed his confidence in the reliability, specificity, and usefulness of the CIRCA tool set. *See*, *e.g.*, Ex. B, O'Donnell Dep. at 131:14-133:9 (agreeing that the CIRCA data is "[a]bsolutely" reliable and useful.).

What is surprising, however, is that Dr. O'Donnell disclaims any opinion relating to flooding risks and the Terminal at issue, incorrectly identified the Defendants' Terminal on a CIRCA map, and was oblivious to the fact that his own Institute at the University of Connecticut predicts no risk to the Terminal under any flooding scenario hypothesized. ████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████    He testified:

> **Q. Would you agree that based on using those layers, there are some areas of New Haven port that [do not] show the effects of storm surge and sea level rise . . . .?**
>
> A. That is correct

*Id.* But when shown a map of the New Haven Harbor, Dr. O'Donnell incorrectly identified the Defendant's terminal as one directly on the shoreline. *See* Ex. C, O'Donnell Deposition Ex. 5. Further still, when shown images of projected flooding by CIRCA, Dr. O'Donnell never recognized that the images he was viewing showed no flooding risk to the Terminal under any of the hypothesized flooding scenarios. *See* Ex. D, O'Donnell Deposition Ex. 11 (images of the CIRCA flood analyses showing no flooding risk to the Terminal).

### C. Dr. O'Donnell Offers No Opinion Connected to the 2018/2021 Permit at Issue in This Case.

Additionally, at deposition, Dr. O'Donnell confirmed what his report makes clear: his opinion is not related to the 2018/2021 Permit at issue in this case in any way. *See* Ex. B, O'Donnell Dep. at 168: 3-25. Dr. O'Donnell testified that he never reviewed the 2018/2021 Permit or any permitting materials, and expressly testified that he has no opinion on what any permit requires:

> **Q. Dr. O'Donnell, I am showing you what has been marked as Exhibit 16, which is entitled, General Permit for the Discharge of Stormwater Associated with Industrial Activity, effective October 1st, 2018. Do you see that document?**
>
> A Yes.
>
> **Q Have you reviewed this document prior to today?**
>
> A No.
>
> **Q Have you cited this document as something you considered in connection with your opinions in this case?**
>
> A No.
>
> **Q Would it be fair to say you are not going to offer any opinions about the contents of the General Permit for the Discharge of Stormwater Associated with Industrial Activity, dated October 1st, 2018?**
>
> A No. Well --
>
> **Q That is fair to say?**
>
> A It is fair to say that I am not going to offer any opinions on this document in this case.

Ex. B, O'Donnell Dep. at 168: 3-25; *see also id.* at 169: 4-18 (disclaiming any knowledge of the 2021 Stormwater Discharge Permit); *id.* at 174:3-22 (disclaiming any knowledge of the Defendant's pollution prevention plans or any related compliance).

In short, Dr. O'Donnell lacks any of the requisite knowledge required to understand just how site-specific analysis of the Terminal needs to be for his analysis to have any relevance to the central legal issue in this case: whether Defendants complied with the 2018/2021 Permit.

## III.    LEGAL STANDARD

Federal District courts play a crucial "'gatekeeping function' under Rule 702 and are charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Wang v. Omni Hotels Management Corporation*, 3:18-cv-2000 (VDO), 2025 WL 1782264, at *2 (D. Conn. June 27, 2025) (Oliver, J.) (quoting *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020)); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 259, 265 (2d Cir. 2002) (same).  The recent amendments to Rule 702 emphasize that courts must fulfill their gatekeeper role by strictly enforcing the requirements of the Rule. As the Advisory Committee noted in an accompanying comment, a prior trend of cases that held flaws in expert analysis went to "questions of weight and not admissibility" reflected "an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 Advisory Comm. Note to 2023 Amends. 6. For, as the Supreme Court notes, the importance of the gatekeeping function "cannot be overstated" because expert testimony "can be both powerful and quite misleading because of [a jury's] difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (internal quotations omitted).

The amended rule prohibits a witness who is qualified as an expert from testifying unless the proponent proves it is more likely than not that: "(a) the expert's scientific, technical, or other

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. In other words, a Rule 702 inquiry focuses on whether 1) the expert at issue is qualified to speak on the evidence or facts at issue, 2) whether the testimony is based on reliable facts, data, and methodologies, and 3) whether the expert's actual opinion reflects a reliable application of the relevant facts and methodologies. Failure to comply with any of the elements is fatal to an expert's opinion, for even if an expert is qualified to testify, expert opinions are not admissible unless they are both reliable and relevant to the issues in the case. *See Daubert*, 509 U.S. at 589 ("under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). The party proffering the expert—here, CLF—bears the burden of establishing Rule 702's requirements by a preponderance of the evidence. *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020); *see also* Fed. R. Evid. 702. ("A witness who is qualified as an expert ... may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is *more likely than not* that [the criteria for admissibility are met] ...." (emphasis added)).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403). The Supreme Court and Second Circuit have emphasized "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's

deliberations." *Id.* (citing *Daubert*, 509 U.S. at 595). Because expert testimony has a greater chance of misleading the jury, a court evaluating potential prejudice under Rule 403 "exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

## IV.    ARGUMENT

No doubt Professor O'Donnell is a marine scientist with expertise in sea level rise. Defendants do not challenge Professor O'Donnell's qualifications on that issue in this motion.

But given the lack of focus on the Terminal at issue in this lawsuit and the lack of discussion of the specific provisions of the 2018/2021 Permit, the Court should exercise its gatekeeping duty to exclude Dr. O'Donnell's opinions for at least three independent reasons:

***First***, Dr. O'Donnell's opinions are irrelevant, unreliable, and unhelpful to the jury under Rule 702 because they do not relate to the specific Terminal, the Terminal's specific location, utilize a reliable methodology with support from actual Terminal data, or assess any "probable" or "impending" storm effects relating to Terminal.

***Second***, Dr. O'Donnell's opinions should be excluded under Rule 702 for failing to "fit" the facts of the case as they do not relate to the 2018/2021 Permit in any way.

***Third***, Dr. O'Donnell's opinions should be excluded under Rule 403 because they are irrelevant and substantially more prejudicial than helpful to the jury because they serve only to invite the local jury to speculate about the causes and consequences of climate change in New Haven generally and the New Haven Terminal in particular.

### A.    Dr. O'Donnell's Opinions Should Be Excluded as Irrelevant Because They Do Not Concern the Specific Terminal, Its Specific Location, And Do Not Rely Upon Any Facility Data.

Dr. O'Donnell's opinions do not "fit" as required under Rule 702 because they are not tethered in any way to the Terminal, the Terminal's location, the Terminal's operations, or any

imminent risk to the Terminal. *See Pugliano v. United States*, 315 F. Supp. 2d 197, 202 (D. Conn 2004).

### 1.    Dr. O'Donnell's Report Does Not "Fit" Any Issue Relevant to This Case Because It Does Not Concern the Terminal at Issue at All.



And perhaps most remarkably, Dr. O'Donnell did not even evaluate any prior storms or precipitation history at the actual Terminal.  He testified,

> **Q As you sit here today, you are not aware whether the Equilon facility has ever experienced any damage or any damage related to any storm in the past. True?**
>
> A I don't know of any.
>
> **Q You haven't done any sort of assessment of the Port of New Haven in connection with potential flooding or past flooding related to storms?**
>
> A I have not studied that site.
>
> **Q And so to the extent that your report refers to risk of flooding, you are not offering any opinions that any specific site at the port will flood under any given scenario. True?**
>
> A That is correct.

*Id.* at 185:1-186:24.

Indeed, Dr. O'Donnell's lack of knowledge of the actual issues of this case is so great that when asked to identify the Terminal on a map of New Haven, he was unable to do so.  At deposition, he was presented with an identical map to the one attached to Plaintiffs' complaint

and was asked to identify the Terminal facilities at issue. *See id.* at 37:25-39:19. His response, along with an image of the correctly identified Terminal, are included below.



Ex. C., O'Donnell Dep. Ex. 5 (O'Donnell misidentification of the terminal at issue)



Ex. E, Defendants' Terminal Identification Map.[3]

---

[3] For ease of the Court's reference, the O'Donnell markings have been left in the image to help demonstrate Dr. O'Donnell's confusion regarding the proximity of the Terminal to the harbor and its size, as compared to the actual location of the terminal, which is identified in the bottom left corner of the map by the green circle added by counsel.

Further questioning of Dr. O'Donnell revealed what the images confirmed: Dr.

O'Donnell is entirely unfamiliar with the Terminal or any data related to it.  He testified that

> **Q: To be clear when I asked you earlier to identify specific terminal facilities, you circled an area on the east side of the New Haven Harbor. True?**
>
> A: Correct.
>
> **Q: Are you able to identify which terminal facility is on the west side of the New Haven Harbor?**
>
> A: I don't know the name.

Ex. B, O'Donnell Dep. at 48:25-49:9.

> **Q Okay. To the extent that I asked you questions whether or not you visited any terminal facilities in the Port of New Haven given that we have now defined the word Port of New Haven, would it be fair to say that you haven't been on-site on any terminal facility near the harbor of New Haven?**
>
> A That is correct.

*Id.*

In short, Dr. O'Donnell confirms he has no knowledge or familiarity with the Terminal at

issue in this case, a fact that he readily concedes.  He testified that

> **Q You have done no evaluation of the specific Equilon terminal in this case. True?**
>
> A That is correct.

*Id.* at 185:13-21.  That lack of familiarity is itself fatal to Dr. O'Donnell's opinion under Rule

702, for without considering the data specific to the only Terminal at issue, Dr. O'Donnell's

generalized opinions about the New Haven Port can only serve to confuse, not assist, the jury.

*See Reynolds v. Arnone*, 645 F.Supp.3d 17, 22 (D.Conn., 2022) ("This [fit] requirement means

that [e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo,

non-helpful.") (internal quotations omitted).

    **2.**      **Dr. O'Donnell Recognizes That His Analysis Requires Specificity To Be Accurate, But Nonetheless Ignores His Own Tools Indicating The Terminal Is Not a Risk of Flooding**

In addition to recognizing his lack of familiarity with the Terminal, Dr. O'Donnell also recognized the need for specificity in marine science analysis, as he conceded that flooding from rising sea levels and subsequent storms would nevertheless leave many areas unaffected under any predicted condition. For example, using the University of Connecticut CIRCA Storm Surge Viewer, Dr. O'Donnell acknowledged that while certain layers (such as mean higher high water, 100-year and 500-year flood events, and scenarios adding 20 inches of sea level rise) show impacts to portions of the New Haven Port, the impacts did not affect all facilities or terminals. He testified that

> **Q. Would you agree that based on using those layers, there are some areas of New Haven port that [do not] show the effects of storm surge and sea level rise . . . .?**
> A. That is correct.

*Id.* at 110:3-116:24. In other words, Dr. O'Donnell recognized that to know whether his analysis would have any impact on a given Terminal, you would need to know its location. *See In re Rezulin*, 369 F.Supp.2d at 425 ("[C]ourts have excluded expert testimony where the expert selectively chose his support from the scientific landscape.").

But Dr. O'Donnell did not do this, because he wasn't asked to do so. When questioned regarding what materials he reviewed, he testified:

> A. . . . I triaged those [expert reports] to see if there was anything that was relevant to the question that I was asked to provide an opinion on and decided that there weren't and it wasn't worth me charging them for time required to absorb them all. . . . My report is not about a particular site. . . . I want to be clear that I didn't -- I don't address the details of any site in my report."

*See id.* at 33:4-36:19.

The likely reason why he wasn't asked to make his analysis specific to the Terminal strikes at the heart of the reliability of his opinion: ***Dr. O'Donnell's own methods for assessing flood risks when applied indicated that the Terminal would not be at risk.*** For the CIRCA Storm Surge Viewer (developed by CIRCA for whom Dr. O'Donnell serves as the Executive Director), which Dr. O'Donnell lauded as "[a]bsolutely" reliable and useful," *see id.* at 133: 4-9, allows users to view scenarios that might come about as a result of higher high water, 100-year and 500-year flood events, and even future scenarios adding 20 inches of sea level rise. *See* Ex. D, O'Donnell Dep. Ex. 11. Yet using the CIRCA Storm Surge Viewer, the area where the Defendants' Terminal is located is not projected to be impacted under any of the modeled scenarios.



Ex. E, Defendants' Terminal Identification Map (with Dr. O'Donnell's original misidentification included in red).



Ex. D, O'Donnell Dep. Ex. 11 (showing flooding at the Terminal Dr. O'Donnell mistakenly

believed to be the Defendants', but no flooding at the Defendants' Terminal, even with a

maximized projected mid-century sea level rise and in once in a century flood event).



*Id.* (showing flooding at the Terminals Dr. O'Donnell mistakenly marked, but no flooding at the

Defendants' Terminal, even with a maximized projected sea level rise and a 500-year flood

event).  Further still, even Dr. O'Donnell's only peer-review publication on climate change related floodings indicated that no hypothesized flooding scenario in the New Haven Port would ever reach the Terminal at issue here.  *See* Ex. F, O'Donnell Dep. Ex. 13, (Dr. O'Donnell's 2021 article entitled "*Modeling nearshore dynamics of extreme storms in complex environments of Connecticut*" including a picture showing no risk to the Terminal at issue here under any of the analyses performed).

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████     *See Pugliano*, 315 F. Supp. 2d at 202 (Expert opinions "must be able to assist the trier of fact to reach accurate results.  This is the so-called 'fit' requirement.").

The reason for this generality strikes at the heart of the reliability of his opinion, for a more tailored analysis would have forced Dr. O'Donnell to concede that according to his own organization, and modelling that he has endorsed, no flooding risk existed for the Terminal under the scenarios he envisioned.  The lack of specificity to the facility at issues is one of the hallmarks of an unreliably applied methodology.  *See Oliver v. Am. Express Co*., 2024 WL 100848, at *4 (E.D.N.Y., Jan. 9, 2024) ("[A]n expert's methodology is not reliable if he or she simply ignores inconvenient facts."); *Redd v. DePuy Orthopaedics, Inc.*, 700 F. App'x 551, 555 (8th Cir. 2017) (affirming exclusion where expert failed to address "obvious alternative explanation[s]"); *K.E. v. GlaxoSmithKline LLC*, 2017 WL 440242, at *10 (D. Conn. Feb. 1,

2017) (excluding expert whose presentation was "incomplete… [and] therefore unreliable").
Accordingly, Dr. O'Donnell's opinions should be excluded in their entirety.

> **B.    Dr. O'Donnell's Opinions Should Be Excluded Because He Has No
> Knowledge of The 2018/2021 Permit Terms Or 2018/2021 Permit Guidance.**

Even if generalized flood risks and rising sea levels were relevant to the specific Terminal
at issue here, Dr. O'Donnell's opinions are also inadmissible because they are not connected in
any way to the Terminal's obligations under the 2018/2021 Permit or claims under the CWA or
RCRA.  For this reason, because his opinions do not "fit" the facts of the case, they are unhelpful
to the finder of fact and unreliable under Rule 702.

Rule 702 requires that an expert opinion "assist the trier of fact to understand the
evidence or to determine a fact in issue" and "reflect[] a reliable application of the principles and
methods to the facts of the case," i.e., "the so-called 'fit' requirement." *Pugliano*, 315 F. Supp.
2d at 202.  "This condition goes primarily to relevance," because "[e]xpert testimony which does
not relate to any issue in the case is not relevant and, ergo, non-helpful." *Ruggiero v. Warner–
Lambert Co.,* 424 F.3d 249, 255 (2d Cir. 2005).  Thus, "in fulfilling this gatekeeping role, the
trial court should look to the standards of Rule 401 in analyzing whether proffered expert
testimony is relevant, i.e., whether it "has any tendency to make the existence of any fact that is
of consequence to the determination of the action more probable or less probable than it would
be without the evidence." *Amorgianos*, 303 F.3d at 265 (internal quotation omitted) (affirming
the exclusion of expert testimony that relied on scientific literature that did not "fit" his
opinions).  For example, in *Precision Trenchless, LLC v. Saertex multiCom LP*, this Court
excluded a damages expert's testimony about homeowners' insurance policies because it was
irrelevant to the issue of damages in the case and invited an "apples to oranges" comparison. No.
3:19-CV-0054 (JCH), 2022 WL 594096, at *31 (D. Conn. Feb. 28, 2022) (J. Hall).

16

As is clear from the Complaint, the sole claim in this case is that Defendants failed to comply with the CT DEEP 2018/2021 Permit. And importantly, under the CWA, permit violations are a matter of strict liability; either a party has violated a permit or it has not. *City & Cnty. of San Francisco, California v. Env't Prot. Agency*, 604 U.S. 334, 350 (2025) ("The CWA imposes a regime of strict civil liability[.]"). The causes of action brought by CLF do not lie in negligence and, accordingly, any knowledge regarding climate change, Defendants' own alleged knowledge of climate change, and whether climate change will affect New Haven generally are not relevant. Indeed, CLF's 30(b)(6) representative admitted as such. *See* Excerpts from June 4, 2025 Deposition of S. Mahoney, attached as Ex. G, at 64:9-17 ("Q. No fraud counts – claims? . . . . A. I'm not aware of any fraud claims."), 61:10-22 ("Q. . . . [J]ust so we're clear, CLF is not making any claims that are not in the complaint; correct? . . . . A. The complaint speaks for itself. Those are the claims that CLF has brought. Q. So if it's not in the complaint, they're not bringing a claim for it? . . . A. Not as I sit here today.").

███████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

And therein lies the fatal flaw with Dr. O'Donnell's opinion. The Defendants' claimed foresight is not relevant to any issue in this case because this case involves a "regime of strict civil liability" and does not involve negligence in anyway. *See Env't Prot. Agency*, 604 U.S. at 350 ("The CWA imposes a regime of strict civil liability[.]"). But nowhere does he offer any opinion that would "fit" his report to anything relevant to the interpretation of the 2018/2021 Permit at issue. *See Pugliano*, 315 F. Supp. 2d at 202. Indeed, at his deposition, he confirmed that he has 1) no experience with stormwater permits, *see* Ex. B, O'Donnell Dep. at 168: 3-16; 2) had never read or considered the permits at issue in this case, *see id.* at 174:21-25; and 3) had no knowledge relating to the regulatory background at issue in this case, *see id.* at 122:5-11. Indeed, he was not even aware of who the Defendants were or what their role is with the Terminal. *Id.* at 123:10-12 ("Q Are you aware that the defendants are Equilon Enterprises, Triton Terminaling, and Motiva? A No."). This lack of familiarity with the facts or 2018/2021 Permit requirements central to this dispute permeates Dr. O'Donnell's entire opinion and renders it irrelevant to any issue in this case, as his analysis is not tied to the site-specific facts of the 2018/2021 Permit in any way. *See id.*

First, Dr. O'Donnell also confirmed that he had <u>no</u> prior experience related to stormwater permits. As confirmed in his deposition, Dr. O'Donnell testified that he never reviewed the 2018/2021 Permit or any permitting materials and expressly testified that he has no opinion on what any permit requires:

> **Q Would it be fair to say you are not going to offer any opinions about the contents of the General Permit for the Discharge of Stormwater Associated with Industrial Activity, dated October 1st, 2018?**
>
> A No. Well --
>
> **Q That is fair to say?**
>
> A It is fair to say that I am not going to offer any opinions on this document in this case.

Ex. B, O'Donnell Dep. at 168:3-16; *see also id.* at 169:4-18 (disclaiming any knowledge relating to the 2021 General Permit); *id.* at 172:22-25 (also disclaiming knowledge of the two draft permits: "You don't intend to offer any opinions about the contents of the draft permit or the other permits I showed you in this case. True? A: that is correct.").

Dr. O'Donnell also explained that he is not offering any opinions on the meaning of the 2018/2021 Permit or whether Defendant complied with it. He explicitly testified that:

> **Q: [T]o the extent that there is a dispute about the particular meaning of certain language in a particular permit in this case, are you intending to offer any opinions about that?**
>
> A: No.

*Id.* at 174: 21-25. Similarly, he stated he did not review any of the "Fact Sheets" or other 2018/2021 Permit guidance documents. *Id.* at 172:1-21; *cf.* 40 CFR §§ 124.8, 123.25 (setting forth the regulatory requirements for "Fact Sheets"). Likewise, when specifically queried about whether he was going to offer opinions about the Defendants' stormwater pollution prevention plan, Dr. O'Donnell also conceded he would not be doing so. *Id.* at 167:1-24 ("Q. Have you seen this [stormwater pollution prevention plan] document before? A. No."); *Id.* at 174: 15-18 ("Q. In connection with your opinions in this case, have you reviewed any pollution prevention plans prepared by the defendants in this case? A. No."); *Id.* at 167:1-24 ("Q. So would it be fair to say that you are not going to offer any opinions in this case on how to prepare a stormwater

pollution prevention plan. True? A No, I would not specifically make recommendations on this in this case.")

Finally, Dr. O'Donnell also acknowledged he was not even familiar with RCRA, let alone prepared to testify as an expert regarding its requirements. He testified:

> **Q: You don't intend to offer any opinions about RCRA in this case?**
> A: I am not sure what RCRA is, but if it was explained to me I might be able to answer more clearly.

*Id.* at 122: 5-11.

Taken together, Dr. O'Donnell's report and deposition testimony show his testimony has no bearing on any regulatory or factual issue that will assist the jury in this case. Because Dr. O'Donnell's opinions are completely devoid of any connection to the 2018/2021 Permit claims in this case, his opinions are unreliable and unhelpful to the jury. *See* Fed. R. Evid. 702. Worse still, Dr. O'Donnell disclaimed any knowledge of permitting generally, the 2018/2021 Permit at issue, or any relevant regulatory background. From a Rule 702 perspective, Professor O'Donnell's general commentary on climate change and rising sea levels in the general area does not "fit" the claims in this case, i.e., are not related to compliance with the 2018/2021 Permit, *Pugliano*, 315 F. Supp. 2d at 202, and accordingly are not helpful to the jury. Fed. R. Evid. 702.

### C.    Dr. O'Donnell's Opinions Would Serve Only to Confuse and Inflame the Jury and Should Be Excluded Under Rule 403

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Second Circuit and Supreme Court recognize "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert

testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595).

The Supreme Court further emphasizes that because expert testimony has a greater chance of misleading the jury, a court evaluating potential prejudice under Rule 403 "exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. Specifically, with regard to proposed expert testimony regarding bias and credibility, the Second Circuit previously held in *Nimely* that "it was an abuse of the district court's substantial discretion in such matters to determine that [an expert] vouching for [other witnesses'] veracity—even were it otherwise admissible—was not prejudicial, confusing, and misleading to the jury within the meaning of Rule 403." *Nimely*, 414 F.3d at 398.

Here, Dr. O'Donnell seeks to present to the jury testimony regarding rising sea levels, their general impact on New Haven, and the foreseeability that such changes across the State would occur as a result of climate change. *See generally* Ex. A, O'Donnell Rpt. at 15-29. Yet as discussed above, this case does not involve any claim of fraud or negligence. *Env't Prot. Agency*, 604 U.S. at 350 (2025) ("The CWA imposes a regime of strict civil liability[.]"). Dr. O'Donnell's opinions are therefore of little to no aid in resolving any question related to compliance with the specific requirements of the 2018/2021 Permit. To suggest that rising sea level is occurring without keying it to the requirements of the 2018/2021 Permit and the specific features of the Terminal creates an unfair and inaccurate inference the Terminal would be impacted, when, in fact, the CIRCA information shows that it would not be impacted.

Further, the 2018/2021 Permit issued by CT DEEP did not require consideration of rising sea levels and none of the guidance documents suggest it is required either. Instead, Plaintiffs seek to present Dr. O'Donnell's testimony about the foreseeability and general impacts

of climate change on New Haven Port to implicitly connect Defendants' alleged conduct in this case with a requirement of climate change. By presenting state-wide analysis that was not available to Defendants in 2018/2021, it misleads the jury into evaluating the Defendants' conduct under standards that did not exist at the time.

Likewise, CT DEEP has notably issued a New Permit on October 1, 2025 that indicates it will require "consideration" of potential adverse weather conditions. This reflects CT DEEP's new and evolving approach to climate-related risks—but it is <u>not</u> the standard applicable to the conduct at issue in this case. It follows that such opinions serve only to inflame the jury's passions and confuse them as to the real issues in this case: whether the Defendants complied with the 2018/2021 Permit at issue. Accordingly, any minimal relevance that Dr. O'Donnell's opinion has is strongly outweighed by its prejudicial effects, and the opinion should be excluded. *See* Fed. R. Evid. 403.

## V.    CONCLUSION

Because Dr. O'Donnell's opinions are irrelevant to whether Defendants complied with the 2018/2021 Permit at the specific Terminal, they will not assist the trier of fact and the Court should exclude his opinions and testimony in their entirety under Rules 702 and 403.

Dated: October 3, 2025

Respectfully submitted,

*/s/ Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410

23

Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com