**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-VDO <br><br> October 3, 2025 <br><br> **FILED UNDER SEAL** |

**[UNREDACTED] MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CONSERVATION LAW FOUNDATION'S *DAUBERT* MOTION TO PRECLUDE THE EXPERT TESTIMONY OF DEBORAH FRENCH-MCCAY, PH.D.**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

    I.    THE EXPERT CONSULTANT FOR INTEGRAL'S DELFT3D FM MODEL IS
        FUNCTIONALLY UNDISCLOSED. ............................................................................. 2

    II.   SIMAP HAS NOT BEEN VALIDATED FOR ITS PURPOSE IN THIS CASE- TO
        MODEL A POSSIBLE OIL SPILL UNDER STORM SURGE AND FLOOD
        CONDITIONS AT THE NEW HAVEN TERMINAL. ......................................................... 4

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT ............................................................................................................................ 7

    I.    DR. FRENCH-MCCAY LACKS THE QUALIFICATIONS TO OFFER OPINIONS ON
        INTEGRAL'S DELFT3d FM MODEL, AND THOSE OPINIONS ARE
        UNRELIABLE. ............................................................................................................ 7

        A.   Integral's Consultant Who Ran the Delft3D FM Model Upon Which Dr. French-
            McCay Relied Was Not Disclosed. .................................................................. 7

        B.   The Court Should Exclude Dr. French-McCay's Opinions That Require Expertise in
            Flood Modeling. ................................................................................................ 9

    II.   SIMAP DOES NOT REST ON A RELIABLE FOUNDATION UNDER DAUBERT.... 10

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Ambrosini v. Labarraque*,
101 F.3d 129 (D.C. Cir. 1996)...................................................................................... 7

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ................................................................................... 6, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).................................................................................... 5, 6, 7, 10

*Davis v. Carroll*,
937 F. Supp. 2d 390 (S.D.N.Y. 2013)..................................................................... 10

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir.2006)......................................................................................... 8

*Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*,
No. 05–CV–80, 2007 WL 1560277 (N.D.Ohio May 29, 2007) ................................ 8

*Griffin v. Coffee County*,
623 F.Supp.3d 1365 (2022) ..................................................................................... 10

*Heller v. Shaw Industries, Inc.*
167 F.3d 146 (3rd Cir. 1999)...................................................................................... 6

*In re Mirena IUD Products Liability Litigation*,
169 F. Supp. 3d 396 (2016)............................................................................... passim

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir.1994) ..................................................................................... 6, 12

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)................................................................................................... 6

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ...................................................................................... 5

*Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc.*,
208 F. Supp. 2d 423 (S.D.N.Y. 2002) ...................................................................... 7

*State Farm Fire & Cas. Co. v. Omega Flex, Inc.*,
No. 3:20-CV-00648 (SVN), 2023 WL 2666676 (D. Conn. Mar. 28, 2023) ....... 4, 8, 9

*United States v. Tin Yat Chin*,
371 F.3d 31 (2d Cir. 2004) .................................................................................... 6, 10

*United States v. Williams*,
506 F.3d 151 (2d Cir. 2007)....................................................................................... 7

*Vale v. United States*,
673 F. App'x 114 (2d Cir. 2016) ............................................................................... 5

*Valente v. Textron, Inc.*,
931 F. Supp. 2d 409 (E.D.N.Y. 2013), aff'd, 559 F. App'x 11 (2d Cir. 2014) ..........11

*Wright v. Aargo Sec. Servs., Inc.,*
　No. 99–CV–9115, 2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001)................................................11

**Rules**

Federal Rule of Civil Procedure 26(a)(2)(B) .................................................................... 7

Federal Rule of Civil Procedure 37(c)(1) ......................................................................... 8

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) ............................................................... 4

Federal Rule of Evidence 401............................................................................................ 7

Federal Rule of Evidence 702.................................................................................... 5, 7, 10

## <u>EXHIBIT LIST</u>

| | |
|---|---|
| Exhibit 1 | Deborah French-McCay's Deposition Transcript* |
| Exhibit 2 | Deborah French-McCay's Expert Report* |
| Exhibit 3 | Jacqueline Michel, Ph.D. Expert Report* |
| Exhibit 4 | Robert Nairn Ph.D. Expert Rebuttal Report* |
| Exhibit 5 | Craig Jones, Ph.D. Deposition Transcript |
| Exhibit 6 | Craig Jones, Ph.D. Expert Report* |

*Documents denoted with an asterisk are being filed under seal pursuant to this Court's Protective Order (ECF 7).*

**INTRODUCTION**

Dr. Deborah French-McCay is an environmental consultant who focuses on environmental risk assessments using modeling and scientific analyses. Ex. 1, French-McCay Dep. at 19:17–19. She has a Ph.D. in Oceanography from the University of Rhode Island. Ex. 2, French-McCay Rpt., Appendix L at 1. She has submitted a 405-page expert report. *Id*. (including appendices). Dr. French-McCay was hired in this case for her expertise in operational and accidental spill discharge, fate and effects modeling. Ex. 1 at 26:13–17. She evaluates transport and fates, exposure, and the effects of pollutants on individual organisms, populations, and aquatic systems. *Id*. Despite these credentials, Dr. French-McCay's deposition testimony admits several key deficiencies rendering her qualifications inadequate and results unreliable in this case. Namely, the expert consultant for the hydrodynamic Delft3d FM model that Dr. French-McCay used for input into the SIMAP model is undisclosed. SIMAP has limited applicability under storm surge conditions as utilized in this case.

**BACKGROUND**

Dr. French-McCay, a Senior Principal Scientist at RPS Ocean Science office within Tetra Tech, seeks to opine on the potential trajectory, fate, and adverse environmental impacts of a catastrophic oil spill at the New Haven Terminal. Ex. 2 at 4. She is employed by Tetra Tech whose clients are oil industry clients and government clients. *See* Ex. 1 at 73:18–24. Dr. French-McCay relies on two distinct modeling systems to support her opinions:

(1) Integral's separate Delft3d Flexible Mesh Hydrodynamic Model ("Delft3d FM") which provides storm surge data inputs to SIMAP, and

(2) SIMAP (Spill Impact Model Application Package), a proprietary oil spill model that she developed. Based on these modeling systems, of which Dr. French-McCay offers the

1

following opinions: (a) oil spill modeling for maximum credible discharges (MCDs) of oil at the New Haven Terminal during extreme storm surges would be extremely improbable because the tanks are designed to withstand such conditions and would be ballasted in preparation for a storm, (b) oil is unlikely to reach the New Haven Harbor given the low probabilities of a spill, (c) the spill would need to be "catastrophic and instantaneous at the time the surge reaches the tanks in the Terminal for there to be any possibility of oil entering the harbor," (d) "the adverse impacts to coastal resources from a catastrophic oil spill would be at worst a short period of acute toxicity to sensitive aquatic biota in the New Haven Harbor and the mouth of the Quinnipiac and Mill Rivers," (e) "it is extremely unlikely that a large oil spill from the New Haven Terminal would cause extensive adverse impact to coastal resources," and finally (f) "[t]he volumes of the oils handled at the New Haven Terminal do not represent an imminent and substantial endangerment to the environment." Ex. 2 at 5–6.

Dr. French-McCay formulated the above opinions in part using the Delft3d FM model data as input to SIMAP. *See* Ex. 2 at 4-5; *see also*, Ex. 1 at 52:23–24, 53:1–8. However, she also relied on the opinions of Defendants' experts, Doug B ayles P.E., Austin Pace P.E. and Dr. Craig Jones, for part of opinion (a), that the tanks are designed to withstand storm surge conditions and extreme winds. *See Id*. at 23; *see also* Ex. 1 at 91:8–24. Likewise, for support of opinion (f), she relied on Defendants' expert, Dr. Dagmar Etkin, who provided purported data on maximum oil volume that is possible in any tank at the New Haven Terminal. Ex. 2 at 23–24.

Dr. French-McCay's testimony should be precluded in full because:

I. **THE EXPERT CONSULTANT FOR INTEGRAL'S DELFT3D FM MODEL IS FUNCTIONALLY UNDISCLOSED.**

2

According to Dr. French-McCay's expert report and her testimony, Defendants' consultant, Integral, prepared the Delft3D FM hydrodynamic datasets that serve as critical storm surge data inputs to SIMAP. Ex. 1 at 52:23–24, 53:1–8. Who prepared the datasets is not known. Someone at Integral also provided verbatim the technical summary describing the Delft3D FM model preparation in Appendix B of Dr. French-McCay's Expert Report. *Id.* at 15:1–6, 88:12–24, 89:1–3. The Delft3D FM model was applied to simulate water levels across the New Haven Terminal and surrounding upland areas during synthetic 100-year and 500-year flood events. Ex. 2 Appendix B at 7. Dr. French-McCay admittedly lacks qualification in flood modeling. *See* Ex. 1 at 89:4–11. Dr. French-McCay testified that she is not offering any testimony about how the Delft3d FM model was constructed, calibrated, or run. *Id.* at 86:12–15. She was not involved in Integral's choice of the Delft3d FM model or selecting the inputs for the model. *Id.* at 47:16–24, 48:1–19, 49:6–13. Dr. French-McCay further testified that she cannot recall using the Delft3D FM model output as input for SIMAP model runs prior to this case and has never run the model personally before. *Id.* at 46:24, 47:1–6. Yet, she testified that model results are subject to the accuracy of the inputs. *See Id.* at 35:1–5.

It was not until September 4, 2025 (after the deposition of Dr French-McCay on August 29, 2025) that Dr. Craig Jones, Defendants' expert and the Managing Principal Director at Integral, testified to running the Delft3d FM model. *See* Ex. 5, Jones Dep. at 138:20–25. Dr. Jones testified that the Delft3d FM model was conducted by [him] and Chris Leonard (an unknown person to this case). *See* Ex. 5 at 138: 24–25. **Critically, Dr. Jones did not use the Delft3d FM model in his expert report nor designate which of his opinions rely on the model**. *See* Ex. 6, Jones Rpt. Dr. Jones confirmed that he included **tank modeling** information in his report but not, "[t]he Delft FM model that is included as an appendix in the French McCay report." *See* Ex. 5 at 138:13–25; 139:1–

2. Dr. Jones has not been disclosed by Defendants as the expert for the Delft3d FM model. *See* Ex. 6. Dr. Jones is not listed as the author of Appendix B of Dr. French-McCay's report, nor did he testify accordingly. *See* Ex. 2, Appendix B. Moreover, the Delft3d FM model is mentioned 30 times in Dr French-McCay's report and not once is it associated with Dr. Jones. *See* Ex. 2. Given that Dr. French-McCay is not offering an opinion on how the Delft3d FM model was run or its inputs and Dr. Craig Jones is not offering opinions about the Delft3d FM model, there is no testifying expert on the Delft3d FM model. Under the Federal Rules, opinions on the Delft3d FM model must have been disclosed in the expert report of Dr. Jones for reliance thereon by Dr. French-McCay and admission in any court proceeding.  *See* Fed. Rule of Civil Procedure 26(a)(2)(B)(ii); *In re Mirena IUD Products Liability Litigation*, 169 F. Supp. 3d 396, 470 (2016); *see also State Farm Fire & Cas. Co. v. Omega Flex, Inc.*, No. 3:20-CV-00648 (SVN), 2023 WL 2666676 at 5. (D. Conn. Mar. 28, 2023).

## II.  SIMAP HAS NOT BEEN VALIDATED FOR ITS PURPOSE IN THIS CASE- TO MODEL A POSSIBLE OIL SPILL UNDER STORM SURGE AND FLOOD CONDITIONS AT THE NEW HAVEN TERMINAL.

Dr. French-McCay's oil spill model for oil fate under the conditions run (i.e. storm surge and resulting flood conditions) for the New Haven Terminal has not been validated. *See* Ex. 3 Michel Rpt. at 12. Dr. French-McCay acknowledges Dr. Jacqueline Michel as a reputable scientist and oil spill responder with whom she would work with on future projects. *See* Ex. 1 at 75:18–24, 76:1. Dr. French-McCay testified that, other than this case, SIMAP has only been used to model oil fate under storm surge conditions for Hurricane Katrina and Rita, the results of which are unpublished and privileged. *Id*. at 45:18–24, 46:1. Moreover, SIMAP is a proprietary model with full licenses unavailable to other researchers or organizations. *Id*. at 37:7–23, 38:23–24, 39:2–6. According to Dr. French-McCay, SIMAP licenses are not provided to others primarily because it is "difficult to support" and "people might come up with the wrong answer because they do not

4

understand what they're doing." *Id*. at 38:1–7. Dr. French-McCay has testified that no one outside of Tetra Tech possesses the expertise to operate SIMAP with accuracy. *Id*. at 39:7–9. Therefore, the SIMAP results in this case are likely unreproducible by CLF or its consultants, rendering independent and meaningful evaluation impossible. *See Id.*

For the above reasons, the gate should be closed to Dr. French-McCay's unqualified and unreliable testimony.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that a qualified expert "may testify in the form of an opinion" if the proponent of the expert demonstrates to the Court that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

District courts perform a "gatekeeping" function in deciding whether an expert's testimony is admissible under Rule 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), one that operates within the "liberal standard of admissibility" embodied by Rule 702. *See Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005). In defining the gatekeeping role of the Court, the Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact. *Id.* at 396–97.

**Whether the witness is "qualified by knowledge, skill, experience, training, or education to render his or her opinions as an expert" is a "threshold matter"** that courts consider before analyzing the relevance and reliability of the testimony itself. *Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016) (citing *Nimely*, 414 F.3d at 396 n.11). A witness is qualified

5

where he or she has "superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

If an expert meets the threshold requirement of qualification, the Court then must determine **whether the expert's testimony itself is reliable.** In *Daubert*, the Supreme Court identified several factors that may be considered in assessing reliability: (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation,'" and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593–94) (internal quotation marks and citations omitted). These factors, however, do not constitute a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Id*. The *Daubert* "requirement that the expert testify to scientific knowledge— conclusions supported by good grounds for each step in the analysis—means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Amorgianos*, 303 F.3d at 265 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir.1994); see also *Heller v. Shaw Industries, Inc.* 167 F.3d 146, 155 (3rd Cir. 1999) ("[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.").

Next, in addition to ensuring that expert testimony is reliable, **the Court must decide whether the expert's testimony is relevant, i.e., whether it will "help the trier of fact."** *In re*

6

*Mirena IUD*, 169 F. Supp. 3d at 413. Like other forms of evidence, expert testimony is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Once the thresholds of reliability and relevance are met, the testimony is admissible. Thereafter, any purported weakness in an expert's methodology or conclusion goes to the degree of credibility to be accorded to the evidence, not to the question of its admissibility." *Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc.*, 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 133–35 (D.C. Cir. 1996)).

<u>**ARGUMENT**</u>

I. **DR. FRENCH-MCCAY LACKS THE QUALIFICATIONS TO OFFER OPINIONS ON INTEGRAL'S DELFT3d FM MODEL, AND THOSE OPINIONS ARE UNRELIABLE.**

The party offering expert testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert*, 509 U.S. at 592 n.10); see also Fed. R. Evid. 702, advisory committee's note to 2023 amendment.

A. **Integral's Consultant Who Ran the Delft3D FM Model Upon Which Dr. French-McCay Relied Was Not Disclosed.**

Federal Rule of Civil Procedure Rule 26(a)(2)(B) requires that an expert's report contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming" his or her opinions. "[T]he courts have embraced an objective test that defines 'considered' [in Rule 26(a)(2)(B)(ii)] as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed." *Euclid Chem. Co. v. Vector Corrosion Techs.*, Inc., No. 05–CV–80, 2007 WL

7

1560277, at \*4 (N.D.Ohio May 29, 2007) (footnotes omitted). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) ... the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "Rule 37 is self-executing" and "the non-disclosing party has the burden to demonstrate that the failure to disclose was substantially justified or that the failure was harmless." *In re Mirena IUD,* 169 F. Supp.3d at 470; *see also State Farm Fire & Cas. Co.*, No. 3:20-CV-00648 (SVN), 2023 WL 2666676 at 5. The Court has "wide discretion to impose sanctions, including severe sanctions, under [Rule 37]." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir.2006). Rule 37 does not require a showing of bad faith in order for sanctions to be imposed, and preclusion is not mandatory even where the district court finds no substantial justification and the failure to disclose is not harmless. *Id*. at 296–97.

Here, Dr. French-McCay testified that she is not offering any testimony about how the Delft3d FM model was constructed, calibrated, or run. Ex. 1 at 86:12–15. She was not involved in Integral's choice of the Delft3d FM model or selecting the inputs for the model. *Id*. at 47:16–24, 48:1–19, 49:6–13. Dr. French-McCay further testified that she cannot recall using the Delft3D FM model output as input for SIMAP model runs prior to this case and has never run the model personally before. *Id*. at 46:24, 47:1–6. Dr. French-McCay testified that she is not qualified as a flood expert. *See Id*. at 89:4–11. She wholesale accepted the Delft3d FM model data for input into SIMAP from Integral without disclosing what expert she was accepting information from.  *See* Ex. 2. The Delft3d FM model data was input into SIMAP to simulate 100-year and 500-year storm events and to draw inferences as to their effects on oil spill conditions at the New Haven Terminal. *See* Ex. 1 at 50:14–24, 51–52:1–11. Critically, these simulations undergird Dr. French-McCay's

key opinion that oil cannot reach the New Haven Harbor unless a spill occurs at the height of the storm surge. *See Id.* at 92:3–19.

CLF was unaware until the deposition of Dr. Jones on September 4, 2025—after the deposition of Dr French-McCay on August 29, 2025—that he ran the Delft3d FM model. *See* Ex. 5 at 138:20–25. Dr. Jones testifies that the Delft3d FM model was conducted by [him] and Chris Leonard (an unknown person to this case). *See* Ex. 5 at 138: 24–25. Critically, Dr. Jones did not use the Delft3d FM model in his expert report nor did he designate which of his opinions rely on the model. *See* Ex. 6. Dr. Jones confirmed that he included tank modeling information in his report but not, "[t]he Delft FM model that is included as an appendix in the French McCay report." *See* Ex. 5 at 138:13–25, 139:1–2. Dr. Jones has not been disclosed by Defendants as the expert for the Delft3d FM model. Dr. Jones is not listed as the author of Appendix B of Dr. French-McCay's report, nor did he testify accordingly. *Id.* Worse still, when CLF requested the data supporting the models used in Dr. French-McCay's report including the Delft3d FM model, Defendants only provided the output data not the input data. *See* Ex. 4, Robert Nairn Rebuttal at 18.

Defendants therefore failed to provide information and identify the witness testifying on Delft3d FM model as required under Rule 26(a) and thus should not be able to use the Delft3d FM model evidence at trial. *See In re Mirena IUD*, 169 F. Supp. 3d at 470; *see also State Farm Fire & Cas. Co.*, No. 3:20-CV-00648 (SVN), 2023 WL 2666676 at 5. Allowing Dr. French-McCay to testify without having fully disclosed the bases for her opinions is harmful to CLF because it will deny the opportunity to properly and fully cross-examine her on the Delft3d FM model at trial. *See In re Mirena IUD*, 169 F. Supp. 3d at 472.

### B. The Court Should Exclude Dr. French-McCay's Opinions That Require Expertise in Flood Modeling.

District courts have considerable discretion in determining an expert's qualifications. *See Davis v. Carroll*, 937 F. Supp. 2d 390, 411–412 (S.D.N.Y. 2013). The trial judge must ensure that all scientific evidence is not only relevant but also reliable. *Daubert*, 509 U.S. at 589–90. A witness is qualified when they possess "superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Tin Yat Chin*, 371 F.3d at 40.

When an expert admitted under Rule 702 attempts to offer opinions beyond the scope of their expertise, courts can strike the extraneous testimony. *See Davis*, 937 F. Supp. 2d at 413. Here, Dr. French-McCay testified in her deposition that she is not trained as a flood expert and is not offering opinions about flood modeling. *See* Ex. 1 at 88:12–24, 89:1–13. Her normal practice is to consult a flood expert for flood modeling because it is not her area of focus. *See Id.* at 88:12–24, 89:1–13. An expert who explicitly admits being unqualified to testify on a specific topic should be excluded from testifying on that matter. *See Davis*, 937 F. Supp. 2d at at 413 ("expert testimony should be excluded if the witness is not actually applying [their] expert methodology"), *see also Griffin v. Coffee County*, 623 F.Supp.3d 1365 (2022) ("[w]here an expert 'by his own admission is unqualified to testify on an issue, he should be excluded on that topic"). Mainly, her opinion (c) that "[t]he spill would need to be "catastrophic and instantaneous at the time the surge reaches the tanks in the Terminal for there to be any possibility of oil entering the harbor" is based on her interpretation of the Delft3d FM model as input in SIMAP. *See* Ex. 1 at 92:3–19. Exclusion thereof ensures that expert testimony is both relevant and reliable, as required under the rule. *See Davis,* 937 F. Supp. 2d at 413.

II. **SIMAP DOES NOT REST ON A RELIABLE FOUNDATION UNDER DAUBERT.**

Dr. French-McCay testified that beyond this case, SIMAP has previously been used to model oil fate under storm surge conditions for only Hurricanes Katrina and Rita—and those results remain unpublished and privileged. Ex. 1 at 45:18–24, 46:1. Dr. Michel confirmed that

10

SIMAP has not been validated under the storm surge conditions modeled for the New Haven Terminal. *See* Ex. 3 at 12.[1]  Dr. French-McCay's personal unwillingness to divulge SIMAP model results for Hurricane Katrina and Rita may be justified in light of her duty of confidentiality to the State of Louisiana. *Id*.; *see In re Mirena IUD*, 169 F. Supp. 3d at 472. Nonetheless, it is Defendants' burden to show that its failure to disclose its expert's basis is substantially justified in the context of this case. *Id*., *See Wright v. Aargo Sec. Servs., Inc.,* No. 99–CV–9115, 2001 WL 1035139, at *2 (S.D.N.Y. Sept. 7, 2001). Defendants have not offered a reason why they chose Dr. French-McCay as an oil model expert when they knew she could not fully disclose the bases of her opinions. Plaintiffs should not be unfairly prejudiced through Dr. French-McCay's unreliable testimony.

Additionally, instructive here is the *Valente* case, where the court observed that, "[s]imply because the simulation can reliably predict *a* real world event does not prove that the simulation can reliably predict *any* real world event." *Valente v. Textron, Inc*., 931 F. Supp. 2d 409, 424 (E.D.N.Y. 2013), aff'd, 559 F. App'x 11 (2d Cir. 2014). In that case, the court excluded the expert's simulation model because it was run on an application that had not been validated. It was not peer reviewed outside litigation by anyone other than the expert and his company. Its error rate was unknown and could not be determined. Moreover, no other expert could run the simulation accurately. *Id*. at 425, 429. Likewise, here, SIMAP is not known to be peer reviewed and validated under storm surge conditions. *See* Ex. 3 at 12. Its error rate is not known and cannot be measured against real-world results due to the confidential and privileged nature of Hurricanes Katrina and Rita study. *See* Ex. 1 at 45:18–24, 46:1. Further, due to the proprietary and sophisticated nature of

---

[1] Significantly, Dr. French-McCay herself acknowledges Dr. Michel as a reputable scientist and oil spill responder with whom she would work with on future projects. *See* Ex. 1 at 75:18–24, 76:1.

the SIMAP model, Dr. French-McCay has testified that no one outside of Tetra Tech can run it accurately. Ex. 1 at 39:7–9. Accordingly, under *Daubert,* Dr. French-McCay has not demonstrated "good grounds for each step in [her] analysis… any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Amorgianos*, 303 F.3d at 265 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 745).

Accordingly, Dr. French-McCay's testimony that relies on SIMAP and Integral's Delft3d FM model data—specifically opinions a through f—should be excluded to avoid confusing or prejudicing the jury. Furthermore, the testimony of Defendants' experts that relied on Dr. French-McCay's opinions should also be excluded.

<u>CONCLUSION</u>

For the foregoing reasons, CLF respectfully requests that the Court grant the above *Daubert* motion to preclude the testimony of Defendants' expert witness, Dr. Deborah French-McCay.

Dated: October 3, 2025

Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc.,
by its attorneys

*/s/ Shalom D. Jacks*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9013
E-mail: sjacks@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

12

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street, Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street, Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street, Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: dwilliams@motleyrice.com

13

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
E-mail: rmazingo@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

14