# EXHIBIT E



# Nairn 2025 Rebuttal Report on the Shell Oil Terminal Flood Risk

Shell Oil Terminal - New Haven, Connecticut

July 22, 2025   |   13611.303.R2.Rev0

Baird.
Innovation Engineered.

baird.com

# Nairn 2025 Rebuttal Report on the Shell Oil Terminal Flood Risk

## Shell Oil Terminal - New Haven, Connecticut

Prepared for:



Mr. Christopher Kilian, Vice President for Strategic Litigation | Conservation Law Foundation

15 East State St., Suite 4

Montpelier, VT 05602

Prepared by:



W.F. Baird & Associates Coastal Engineers Ltd

For further information, please contact

Rob Nairn, Ph.D., P.Eng. at +1 905 845 5385

rnairn@baird.com

www.baird.com

## 13611.303.R2.Rev0

Z:\Shared With Me\QMS\2025\Reports_2025\13611.303.R2.Rev0_NairnExpertReport_Rebuttal.docx

| Revision | Date | Status | Comments | Prepared | Reviewed | Approved |
|---|---|---|---|---|---|---|
| Rev0 | July 22, 2025 | Final | | RBN | RBN | RBN |

© 2025 W.F. Baird & Associates Coastal Engineers Ltd (Baird) All Rights Reserved.  Copyright in the whole and every part of this document, including any data sets or outputs that accompany this report, belongs to Baird and may not be used, sold, transferred, copied or reproduced in whole or in part in any manner or form or in or on any media to any person without the prior written consent of Baird.

This document was prepared by W.F. Baird & Associates Coastal Engineers Ltd for Mr. Christopher Kilian, Vice President for Strategic Litigation | Conservation Law Foundation.  The outputs from this document are designated only for application to the intended purpose, as specified in the document, and should not be used for any other site or project.  The material in it reflects the judgment of Baird in light of the information available to them at the time of preparation.  Any use that a Third Party makes of this document, or any reliance on decisions to be made based on it, are the responsibility of such Third Parties.  Baird accepts no responsibility for damages, if any, suffered by any Third Party as a result of decisions made or actions based on this document.



# 3. Rebuttal of Jones (2025)

In Section 3.1 I provide my comments on Jones' opinions as stated in his expert report that I disagree with, and in Section 3.2 I discuss the Integral/Jones Delft3D numerical model results. These sections provide an overview of my detailed comments provided on the entire Jones (2025) report that are included in Appendix A of this report.

Jones did not mention the Delft3D model in his report, however it was presented in the Appendices of the French-McCay (2025) report as the Integral model. I refer to this model as the Integral/Jones model, as Jones is a Managing Principal at Integral, and the model output files as shared with me from the Defendant's included the name 'Jones' in the filename.

I received the Integral/Jones Delft3D numerical model output files, but the Defendant's did not share the model input files. This prevents me from being able to properly assess the Integral/Jones numerical model results as the input files contain the configuration details such as boundary conditions, grid setup, bathymetry and model parameters that define how the model was constructed and run. In addition, no calibration or validation of the model was presented in the Jones or French-McCay report, which further reduces my ability to assess the model results[8]. Nevertheless, the Integral/Jones Delft3D results presented in Appendix C of French-McCay (2025) agree with my findings that all three containment areas are completely inundated during a 100-yr or more frequent flood event.

## 3.1 Rebuttals to Opinions in the Jones Report

**Opinion 1:** *From my perspective as an ocean and environmental engineer, the New Haven Terminal was in full compliance with all applicable requirements of the 2018 Connecticut Multi-Sector General Permit (MSGP) for industrial stormwater at the time CLF submitted its notice of intent (NOI). The 2018, or 2021, Connecticut MGSPs for industrial stormwater did not mandate the consideration of rising sea levels, storm surge, or other adverse weather events.*

**RBN Response:** As noted, both me and Integral/Jones (in Appendix C of French-McCay) find that the containment areas fail to function under the present-day 100-year storm event as they are fully flooded (this evaluation only considered sea level rise to 2021 and not in the future). In other words, in the evaluation of the performance of the facility's containment berms by Integral/Jones and I under the 100-year storm event and present day risks the containment areas are fully inundated, without the consideration of future climate change.

**Opinion 2:** *The allegations raised in CLF's NOI are based on aspirational standards, future climate modeling, and nonbinding guidance documents that were not incorporated into the 2018 or 2021 Connecticut MSGP and do not establish enforceable compliance obligations.*

**RBN Response:** This is not true for my report. Both Integral/Jones (in Appendix C of French-McCay) and I found the performance of the containment berms to fail in containing water under the present-day estimate of the 100-year storm condition. Based on that finding, substantial improvements are required to the containment berms at this facility and ASCE24 indicates the design of those improvements consider sea level rise over a minimum 50-year service life.

---

[8] I am accepting the Integral/Jones Delft3D numerical model results as given without endorsement because I was not provided the input files to the model and therefore could not verify or fully review the work.

*Opinion 3:* The best management practices (BMPs) implemented at the New Haven Terminal were fully compliant with all regulatory requirements at the time CLF submitted its NOI. The terminal's stormwater pollution prevention plan (SWPPP) was current, complete, and properly executed in accordance with the 2018 Connecticut MSGP—including all monitoring, inspection, and documentation obligations—and does not require the terminal to incorporate climate scenario modeling or long-term oceanographic projections.

**RBN Response:** This is an incorrect representation. Both Integral/Jones (Appendix C of French-McCay) and I have shown that the secondary containment berms fail to serve their function during the present-day 100-year or more frequent storm event, and the 100-year storm is a not a climate change (CC) scenario or "long-term" projection. CC is considered for substantial improvement design which is at least required for all three containment areas. As such, according to ASCE24, substantial improvements are required and ASCE24 dictates consideration of sea level rise as part of that design process.

*Opinion 4:* The assertion that "best industry practices" impose a higher compliance standard for many water-based standard than the MSGP is unfounded and unsupported by any authority. This term has no formal definition within Connecticut's MSGP or the U.S. Environmental Protection Agency's (EPA's) MSGPs from 2015 or 2021, and the term has not been adopted as a binding compliance benchmark.

**RBN Response:** In his report, Jones states that Best Industry Practice includes evaluation of the performance of facilities under the 100-year event conditions.

*Opinion 6:* EPA's climate resilience guidance provides nonbinding recommendations and does not create enforceable design or permitting obligations. The New Haven Terminal remains fully compliant with EPA's (2024a) core goal: "Facilities must be designed, constructed, maintained, and operated to minimize the possibility of a release of hazardous waste or hazardous waste constituents that could threaten human health and the environment."

**RBN Response**: Jones notes in several parts of his report that facilities should be designed to achieve these stated goals under the 100-year storm condition. In this case, that would mean isolating water within the containment area during the 100-year event. My expert report shows that this facility does not contain water in its secondary containment areas during the 100-year storm surge event. Integral/Jones results in Appendix C of French-McCay (2025) also show that all three containment areas are fully flooded during the 100-year event.

*Opinion 7:* ASCE guidance documents, including ASCE 7 and ASCE 24-14, offer design criteria for new construction and substantial modification. These standards are not retroactive and do not require modifications to existing facilities, such as the New Haven Terminal.

**RBN Response:** We have shown that this facility will be ineffective at isolating waters within their secondary containment areas during the 100-year storm surge. Therefore, the facility requires substantial improvement to its secondary containment berms to provide this level of industry standard protection. ASCE24-14 on Flood Resistant Design and Protection is the standard for designing flood protection and spells out the requirements. ASCE24-24 recently replaced ASCE24-14 and has more stringent requirements.

*Opinion 9:* Flood risk guidance from the U.S. Army Corps of Engineers (USACE), including ER 1105-2-101 and its supporting manuals, provides planning frameworks for future federal infrastructure projects and does not impose design or retrofit requirements for existing private storage facilities like the New Haven Terminal.

**RBN Response**: This is not true. The USACE engineering manuals and the USACE North Atlantic Comprehensive Coastal Study (NACCS) data base of design wave and water level conditions are both widely applied in the public and private sector as the industry standard for coastal engineering including flood

protection projects. I note Integral/Jones also relied on USACE NACCS to define the 100-year storm surge condition in Appendix C of Defendant's expert French-McCay's (2025) report.

**Opinion 15:** *The New Haven Terminal's containment berms are constructed, maintained, and inspected in full compliance with EPA's SPCC and the 2018 and 2021 MSGP. Assertions that these earthen berms are noncompliant or structurally deficient are factually unsupported.*

**RBN Response:** I disagree. I presented industry standard calculations to show that the berms are deficient in their design and construction, Jones does not provide any evidence or calculations to the contrary, nor did he critique the methods I applied.

**Opinion 16:** *The 2018 Connecticut MSGP does not require containment berms to be designed for "wave attack," whatever the definition. CLF provides no credible basis for its claims of berm instability, as Nairn's analysis lacks site-specific data on berm composition, cover, and structural design.*

**RBN Response:** The function of the containment berms at this facility is to contain water and isolate it from the harbor waters for conditions up to the 100-year storm event. I have shown that the berms would fail to serve that function in their current state at the 100-year or more frequent event, both structurally (through breaching) and functionally (through overflow). I rely on photographic evidence and apply industry standard methods to calculate that the berm protection is inadequate. Regarding the breaching potential, Jones does not critique the methods I applied or provide alternative calculations to refute my findings. And regarding overflow, Integral/Jones (in Appendix C of French-McCay) reach the same conclusion as me that all three containment areas completely flood in the 100-yr storm.

**Opinion 18:** *The 100-year event is the accepted regulatory benchmark for flood protection under Federal Emergency Management Agency (FEMA) standards, EPA's SPCC and MSGP programs, and Connecticut's industrial stormwater permitting framework. It provides a risk informed basis for infrastructure resilience that protects human health and the environment without requiring speculative or nonbinding design thresholds like the 500-year event.*

**RBN Response:** I agree that the performance of the existing secondary containment berms at the site should be designed to withstand complete inundation of the containment areas during the 100-year storm event. Based on the findings of Integral/Jones (Appendix C of French-McCay) and I, the secondary containment berms at the site fail to prevent complete inundation of the and the uncontrolled release of liquid from the containment areas into the harbor/flood waters during the present-day (i.e. including only historic sea level rise up to 2021) 100-year or more frequent storm event.

Given both Integral/Jones and I found that the containment berms at the site fail to achieve their function under the 100-year or more frequent storm event, substantial improvements to the berms are required. ASCE24-14 requires that substantial improvements be designed to withstand the 500-year storm event for this type of facility (Flood Design Class 4). ASCE24-14 has recently been replaced by ASCE24-24 which requires flood protection withstand the 1,000-year event.

**Opinion 19:** *Design criteria for newly constructed and substantial modifications for storage tank terminals are appropriately based on the 100-year flood event. Higher thresholds, like the 500-year event, are not required for existing terminals under current law or standards.*

**RBN Response**: It is established based on my analysis and that of Integral/Jones (Appendix C of French-McCay) that the existing secondary containment berms are inadequate under the 100-year storm or more frequent condition and therefore substantial improvements are required. ASCE24-14 requires that substantial improvements be designed to withstand the 500-year storm event for this type of facility (Flood Design Class

4). ASCE24-14 has recently been replaced by ASCE24-24 which requires flood protection withstand the 1,000-year event.

**Opinion 20:** *Contrary to the suggestion of CLF, Category 3 hurricanes are rare near New Haven, and no Category 4 or 5 hurricanes have been recorded within 150 miles. The New Haven Terminal's infrastructure and preparedness measures—including tank ballasting and emergency planning—appropriately reflect the region's storm history.*

**RBN Response:** The historic record is not long enough to develop robust statistics on the 100-year and less frequent events (500-year and 1,000-year). Instead, industry practice dictates the use of synthetic storm data sets which represent 1,000s of years (I note Integral/Jones also relied on NACCS and its synthetic data set to define the 100-year storm surge condition in Appendix C of Defendant's expert French-McCay's (2025) report).

**Opinion 21:** *The sea level rise assumptions proposed by O'Donnell (2025) are not incorporated into any regulatory standard governing the New Haven Terminal.*

**RBN Response:** In my evaluation I found that the containment berms of the facilities failed to contain waters within the containment area under the 100-year or more frequent storm event. In this evaluation I considered the sea level rise (SLR) that has occurred to 2021, but not future SLR. A consideration of future SLR is required under ASCE24-24 for design of substantial improvements, which are required here due to the insufficiency of the secondary containment berms to contain water during the 100-year or more frequent storm event. In addition, the inclusion of SLR has been the standard in coastal engineering projects throughout the country for many years. As mentioned in my expert report, the consideration of sea level rise in the development of design for flood risk reduction projects has been standard practice for the USACE, who are responsible for most of the largest coastal storm risk reduction projects in the country since at least 2000 with the initial publication of the design guidance document ER-1105-2-100 (USACE, 2000). Further documentation from USACE includes EC-1164-2-212 (USACE, 2011) and ER 1100-2-8162 (USACE, 2013). Lastly, the National Research Council issued a report regarding engineering implications due to changes in sea level in 1987 (National Research Council, 1987).

**Opinion 22:** *The use of mean water levels from the North Atlantic Coast Comprehensive Study (NACCS) in the New Haven Terminal's flood risk assessment is consistent with FEMA and EPA guidance. It also provides a scientifically valid basis for risk evaluation. The 95th percentile NACCS water levels represent an upper-bound uncertainty estimate and are not appropriate for use as flood protection benchmarks.*

**RBN Response:** I agree with Jones that he NAACCS is the appropriate source of information to define the 100-year storm surge level. I have shown that the secondary containment berms at the site fail to contain water during the 100-year storm event at the 84% Confidence Interval (CI) for the South Yard and the Stormwater Area and at the 90% CI for the North Yard. In Appendix C of French-McCay (2025), Integral/Jones' own modeling shows that the facility fully floods under the NACCS 100-year storm at the 50% CI, which would result in the uncontrolled release of water from the containment areas into the harbor/flood waters.

**Opinion 23:** *The New Haven Terminal's application of tank ballasting, consistent with EPA (2016) guidance and operational standards, effectively mitigates failure risk during coastal flood events and supports compliance with accepted engineering practice and environmental protection objectives.*

**RBN Response:** I disagree. I found that during the 100-year storm event the secondary containment areas fully flood with water. In other words, the containment berms fail to contain and isolate the water inside the containment areas from the harbor waters outside. Integral/Jones in Appendix C of French-McCay also found that the containment areas were fully flooded in the 100-year storm event. In the circumstances of the greatest risk to fuel storage tank and related infrastructure damage during the 100-year or less frequent hurricane event

(with the associated severe winds and waves), the berms fail to achieve containment. In addition, there are several examples where tank ballasting was insufficient, and failures occurred leading to releases of stored fuel during flood events.

**Opinion 24:** *Probabilistic modeling confirms the New Haven Terminal's aboveground storage tanks are not at structural risk during 100- and 500-year flood and storm events when adequately ballasted. The berms are not required to protect the tanks against floods.*

**RBN Response:** These berms fail to prevent mixing between liquid inside the containment area and the harbor/flood water outside the berms during the 100-year flood or more frequent event according to the results of Integral/Jones (Appendix C of French-MCay) and myself.

**Opinion 25:** *Projected sea level rise over the next 5 years does not pose a structural risk to the terminal's aboveground storage tanks. The 2024 Connecticut Stormwater Quality Manual, for the first time, mentions that sea level will rise 20 inches by 2050, but it still does not prescribe that permittees take action to address any specific impacts.*

**RBN Response:** Both me and Integral/Jones (Appendix C of French-McCay) have shown that the containment berms fail to prevent mixing between liquid inside the containment area and the harbor/flood water outside the berms during the 100-year or more frequent storm event. Therefore, substantial improvements are required and the current design guidance for these improvements (ASCE24) requires a consideration of sea level rise over a 50-year service life.

**Opinion 26:** *Historical storms—including Hurricane Sandy—did not result in flooding of the New Haven Terminal.*

**RBN Response:** As noted under my response to Opinion 20 above, both Jones and I agree that the relevant design water level for the 100-year storm event is provided by the USACE NACCS data base which relies on synthetic storms to complete the statistical analysis to define the 100-year level. The water level during Hurricane Sandy at this site was significantly less than the 100-year water level.

**Opinion 27**: *Modeling results—including those under the most conservative and extreme conditions—demonstrate that the adequately ballasted tanks exhibit negligible probabilities of failure across all modeled hazards, confirming the robustness of the terminal's design, maintenance, and operational protocols under extreme but plausible conditions.*

**RBN Response:** Both me and Integral/Jones (Appendix C of French-McCay) have shown that the containment berms fail to prevent mixing between liquid inside the containment area and the harbor/flood water outside the berms during the 100-year or more frequent storm event.

**Opinion 28:** *Critical infrastructure in the region—including Union Station, power substations, and hospital access corridors—are more exposed to disruption or structural failure risk during a 100-year flood event than the New Haven Terminal, underscoring the terminal's relative resilience.*

**RBN Response:** No quantitative proof is provided to substantiate this statement. Also, whether or not other facilities may be susceptible to failure during the 100-year flood has no bearing on the fact that the required function of the secondary containment is not achieved during a 100-year or more frequent flood event at the Shell site, which both Integral/Jones (Appendix C of French-McCay) and I have found.

## 3.2  Jones' Flood Results

Jones presents maps of flood depths for the NACCS mean 100-year flood event, mean 500-year flood event, and the upper 95th confidence limit 500-year flood event combined with 1.64 ft of sea level rise by 2050 in Figure 14, 15 and 16 respectively. Figure 14 showing the NACCS 100-year flood event does not show any flooding of the containment areas. However, Jones fails to explain exactly how these flood depths were developed. It appears that he followed a bathtub approach where the NACCS return period water level is compared to the land elevation to evaluate flood depths. Another reason I believe that Jones presented results from a bathtub approach is that in the following section of his report Jones describes the NACCS model results as such:

> "While the NACCS-based coastal hazards assessment employs a static, or "bathtub," approach—assuming instantaneous equilibrium of water levels across New Haven Harbor and the terminal—it is important to recognize that real-world flooding during rare storm events is dynamic and time limited."

As Jones stated above, this static approach is not as accurate as actually simulating a storm as I have done. Importantly, Integral/Jones did create and run a Delft3D numerical model to simulate flooding from a hurricane storm surge at the Site. The results are presented in Appendix C of the French-McCay (2025) report, and they show complete flooding of all containment areas for the NACCS mean 100-year flood event, contradicting what is shown in Figure 14 of Jones (2025). Jones, who is a Managing Principal at the company Integral, does not mention the Delft3D numerical model (presented in the French-McCay report) once in his own expert report.

French-McCay (2025) explains in Appendix B of her report that she completed a comparison of the Integral/Jones Delft3D results with a bathtub approach as a check and to support confidence in the model results. However, she notes that "the Delft3D FM model provides a more physically representative simulation of flood dynamics, accounting for temporal variations and flow routing that are not captured in the static analysis." I agree with French-McCay that the Delft3D numerical model results that Integral/Jones present in Appendix C of French-McCay (2025) are a more accurate representation of the flooding at the site for the NACCS mean 100-year flood event (and show complete inundation of all three containment areas).

The Integral/Jones Delft3D FM model results as provided by French-McCay in Appendix C are discussed in Section 2.1.