## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | October 3, 2025 |
| *Defendants*. | |

**[UNREDACTED] MEMORANDUM IN SUPPORT OF PLAINTIFF CONSERVATION LAW FOUNDATION'S *DAUBERT* MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. CRAIG JONES**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

EXHIBIT LIST ............................................................................................................................. v

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD.................................................................................................................. 4

ARGUMENT .............................................................................................................................. 6

    A.  Dr. Jones' Opinions 1-4, 6-19, 25, and 29 are based on legal opinions and should
        be precluded in full. .......................................................................................................... 6

    B.  Dr. Jones Must Be Precluded from Offering Any Testimony on the Delft3D FM
        Model he Referenced in his Deposition and was Relied Upon by Defendants'
        Expert Dr. French-McCay. ............................................................................................... 8

CONCLUSION............................................................................................................................ 12

# TABLE OF AUTHORITIES

***Cases***

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)............................................................................................. 6

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..................................................................................................... 1, 5

*Heller v. Shaw Indus., Inc.*,
   167 F.3d 146, 155 (3d Cir. 1999).................................................................................... 6

*In re Mirena IUD Products Liability Litigation*,
   169 F. Supp. 396 (2016) ........................................................................................ 4, 11, 12

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999)......................................................................................................... 6

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005)............................................................................................ 5

*Old Gate Partners, LLC v. Paddock Enterprises, LLC*,
   2024 WL 3520168 (D. Conn. May 30, 2024).................................................................. 7

*SLSJ, LLC v. Kleban*,
   277 F. Supp. 3d 258 (2d Cir. 2017) ............................................................................. 7, 8

*State Farm Fire & Cas. Co. v. Omega Flex, Inc.*,
   No. 3:20-CV-00648 (SVN), 2023 WL 2666676 (D. Conn. Mar. 28, 2023)...................... 4, 11

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991).......................................................................................... 7

*United States v. Tin Yat Chin*,
   (371 F.3d 31 (2d Cir. 2004) ............................................................................................ 5

*Vale v. United States*,
   673 F. App'x 114 (2d Cir. 2016) ..................................................................................... 5

***Rules***

Fed. R. Civ. P. 26(a)(2)(B)(i)................................................................................... passim

Fed. R. Civ. P. 37(c)(1)................................................................................................ 4, 11

Fed. R. Evid. 702 ........................................................................................................................ 1, 5, 12

1, 5, 12

## <u>EXHIBIT LIST</u>

Exhibit A.     Jones CV- from Original Expert Report*

Exhibit B.     Jones Amended Expert Report*

Exhibit C.     Jones Deposition Transcript

Exhibit D.     French-McCay Expert Report Appendix B*

Exhibit E.     Expert Rebuttal Report of Robert Nairn

\* Documents denoted with an asterisk are being filed under seal pursuant to this Court's Protective Order (ECF 7)

## **INTRODUCTION**

Plaintiff, Conservation Law Foundation ("CLF"), respectfully files this Memorandum in support of its Motion to Exclude Certain Opinions of Craig Jones, Ph.D., pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). This Motion also seeks to preclude any testimony based on a model that was not properly disclosed under Federal Rule of Civil Procedure 26(a)(2)(B)(i).

Dr. Craig Jones is a coastal engineer with a Ph.D. from the University of California, Santa Barbara. His expertise focuses on riverine, lacustrine, estuarine, and coastal environments with a specialization in hydrodynamics, wave action, sediment transport and contaminant fate. *See* Ex. A, Jones CV, at 1. Dr. Jones was retained to provide opinions on the New Haven Terminal's preparedness for extreme weather, flooding, and climate change risks. *See* Ex. B, Jones Expert Report, at 1. In providing those opinions, Dr. Jones also included legal opinions and legal conclusions on the requirements and interpretations of the Clean Water Act and the Connecticut General Permit for Discharge of Industrial Stormwater, and Dr. Jones purported to give opinions that Defendants' New Haven Terminal and its SWPPP were fully compliant with various legal requirements. Dr. Jones does not have the necessary knowledge or experience to provide these opinions because he is an engineer who primarily deals with distribution of contaminated sediments in the environment and even if he were an expert on legal compliance he would not be allowed to give expert opinion on legal conclusions. These elements of his opinions and expert report must be excluded. In addition, Dr. Jones gave deposition testimony as to flood scenario modeling of the New Haven Terminal that was performed by his employer Integral Consulting and potentially by Dr. Jones. This modeling was not disclosed in any opinion in Dr. Jones' report, and he confirmed in his deposition that he is not giving an expert opinion on this model. However,

1

Dr. Jones conflictingly also said in his deposition that he relied on this modeling, which has risen the specter that Dr. Jones and Defendants' will attempt to give testimony and opinion as to this model as it does underly expert testimony of Defendants' other experts. To ensure CLF has complied with the Court's October 3, 2025, deadline to file any motion to preclude expert testimony, CLF now moves to preclude any testimony by Dr. Jones as to a Delft3D FM model run by him and/or Integral Consulting as not disclosed under Rule 26(a)(2)(B)(i).

**BACKGROUND**

Dr. Craig Jones' CV states his degrees are in "Mechanical and Environmental Engineering," "Fluid Mechanics," and "Coastal Engineering," and currently serves as the "Managing Principal, Business Director" for Marine, Coastal, Climate and Technology services at Integral Consulting. *See* Ex. A, Jones CV.. As an ocean and environmental engineer, Dr. Jones is a specialist in sediment and containment behavior. *Id.* Dr. Jones originally submitted a 175-page expert report, including an appendix of his CV and materials considered on June 23, 2025. On September 2, 2025, Defendants produced a Supplemental Materials Considered, Dr. Jones' Invoices, and Objections to the Jones' Notice of Deposition. On September 4, 2025, the day of the deposition, Dr. Jones provided an Amended Expert Report, which did not contain his CV, but updated two pages of mathematical calculations. The Amended Expert Report accompanies this Motion as Exhibit B. The original Expert Report, which is the only copy containing Dr. Jones' CV is Exhibit A. On September 18, 2025, Plaintiff received the transcript from Dr. Jones' deposition. During the deposition, Defendants' counsel requested the transcript be provided as soon as it was ready and CLF requested to receive it at the same time. Thus, both Parties had ten business days from September 18, 2025, to designate the transcript as confidential, *see* ECF 7 ⁋

2

13, which ran yesterday, October 2, 2025. No party designated any portion of the deposition transcript confidential and so it is filed publicly as Exhibit C.

Dr. Jones offers opinions on the New Haven Terminal permitting framework, standards of practice and best industry practice, climate risk guidance, industry standards and practice, the Terminal's existing risk management plans, the Terminal's aboveground storage tank resilience to climate hazards, and storage tank resilience under extreme events. *See generally* Ex. B, Jones Amended Expert Report, at 16–101. Out of 29 total opinions, Dr. Jones offers 20 that extend beyond any engineering expertise and include legal opinions and legal conclusions. *Id.* at 4–7.

Dr. Jones' Expert Report does not contain any reference to the Delft3D FM model that was used to simulate flooding at the Terminal. Dr. Jones confirmed in his deposition, that all of his opinions and sources are contained within his Expert Report, Supplemental Materials and Additional Materials Considered. *See* Ex. C, Jones Dep. 14:16. Yet, in his deposition, for the first time, when asked what modeling he completed for the New Haven Terminal, he specifically identified a model called the Delft3D FM Model. *See* Ex. C, Jones Dep. 138:24–139:2. Dr. Jones testified that he allegedly applied this model, and it is central to Defendants' expert Dr. French-McCay's report. *See* Ex. C, Jones Dep. 136:23–24. Dr. Jones' report also does not cite or include Appendix B of the Dr. French-McCay Expert Report, which is where the Delft3D FM Model is explained. *See* Ex. D, French-McCay Expert Report, Appendix B at1–7. In his deposition, Dr. Jones was asked whether he was offering any opinions on the Integral modelling. Dr. Jones responded, "My opinions are informed by the Integral modelling." *See* Ex. C, Jones Dep. 137:23–25, 138:1–2. Dr. Jones was then asked: "Could you please show me where in your report you completed the flood modeling?" *See* Ex. C, Jones Dep. 138:13–14, and he replied, "The flood modelling for our work, I relied on NACCS water level data to look at loadings on the

3

tanks. Work that Dr. French-McCay relied on, I believe, was informed by additional modelling that we had done that I did not report on in my expert report." *See* Ex. C, Jones Dep. 138:15–19. When asked directly, "Dr. Jones, have you completed modeling for the New Haven Terminal?" *See* Ex. C, Jones Dep. 138:20–21, Jones stated, "Yes, the Delft FM model that is included as an appendix in the French-McCay report and the tank modelling--the tank risk modeling that is included in my report." *See* Ex. C, Jones Dep. 138:24–139:2. However, Dr. Jones' Expert Report contains no information on the Delft3D FM model. Dr. Jones never wrote about how the model was constructed, calibrated or run. He stated in his deposition that he relied on Integral modeling, yet Integral has not been designated as an expert consultant, its opinion was not disclosed, and it was not available for cross-examination.

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 26(a)(2)(B)(i) requires that an expert's report contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) ... the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "Rule 37 is self-executing" and "the non-disclosing party has the burden to demonstrate that the failure to disclose was substantially justified or that the failure was harmless." *In re Mirena IUD Products Liability Litigation*, 169 F. Supp.3d 396, 470 (2016); *see also State Farm Fire & Cas. Co. v. Omega Flex, Inc.*, No. 3:20-CV-00648 (SVN), 2023 WL 2666676 at 5. (D. Conn. Mar. 28, 2023).

Federal Rule of Evidence 702 provides that a qualified expert "may testify in the form of an opinion" if the proponent of the expert demonstrates to the Court that "(a) the expert's

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

District courts perform a "gatekeeping" function in deciding whether an expert's testimony is admissible under Rule 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), one that operates within the "liberal standard of admissibility" embodied by Rule 702. *See Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005). In defining the gatekeeping role of the Court, the Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact. *Id.* at 396–97.

**Whether the witness is "qualified by knowledge, skill, experience, training, or education to render his or her opinions as an expert" is a "threshold matter"** that courts consider before analyzing the relevance and reliability of the testimony itself. *Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016) (citing *Nimely*, 414 F.3d at 396 n.11). A witness is qualified where he or she has "superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

If an expert meets the threshold requirement of qualification, the Court then must determine **whether the expert's testimony itself is reliable.** In *Daubert*, the Supreme Court identified several factors that may be considered in assessing reliability:(1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer

5

review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation'" and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593–94) (internal quotation marks and citations omitted). These factors, however, do not constitute a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Id*. The *Daubert* "requirement that the expert testify to scientific knowledge— conclusions supported by good grounds for each step in the analysis—means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir.1994); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.").

## **ARGUMENT**

### A.  **Dr. Jones' Opinions 1-4, 6-19, 25, and 29 are based on legal opinions and should be precluded in full.**

Dr. Jones offers 20 opinions that contain legal opinions and legal conclusions. Nearly all of these opine on the regulatory requirements of the 2018 and 2021 Connecticut General Permit and whether or not various industry standards are required to be used to comply with the General Permit's Best Industry Practice standard.  In addition, a set of these opinions also provide legal conclusions as to whether the Terminal is in full compliance with legal requirements. These

6

aspects of these opinions are impermissible legal conclusions and legal opinions that must be excluded, and Dr. Jones must be precluded from offering such testimony.

In Opinions 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 25, and 29, Dr. Jones purports to give opinions as to whether a specific engineering standard, process, or evaluation would apply to the New Haven Terminal generally or explicitly as part of the meaning of Best Industry Practices. *See* Ex B., Jones Report, at 19, 26, 30- 35, 40, 41, 44, 86, 101. For example, in Opinion 1, Dr. Jones describes the general permit that applies to the Terminal, but then he offers a legal conclusion that those permits "did not mandate the consideration of rising sea levels, storm surge, or other adverse weather events." *Id.* at 19. Similarly, in Opinion 3, Dr. Jones provides his opinion on the Best Management Practices that were used in the Terminal's SWPPP, but then goes beyond any engineering opinion to state that the General Permit "does not require the terminal to incorporate climate scenario modeling or long-term oceanographic projections." *Id.* at 26. Whether the General Permit and Defendants' SWPPP must include consideration of sea level rise or climate modeling is a legal question for the Court to determine. In each of the above-listed opinions, Dr. Jones attempts to give opinion testimony of how the Clean Water Act and CT General Permit must be interpreted, which are an impermissible legal opinion and legal conclusion. *See Old Gate Partners, LLC v. Paddock Enterprises, LLC*, 2024 WL 3520168, at \*7(D. Conn. May 30, 2024) (expert's legal conclusions "usurp […] the role of the trial judge" and therefore must be excluded); *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 267 (2d Cir. 2017) (expert may not 'stat[e] ultimate legal conclusions'"); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (expert testimony that offers "legal conclusions" is barred). CLF requests this court exclude the legal conclusions from Dr.

7

Jones Opinions 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 25, and 29 and preclude Dr. Jones from offering testimony as to these legal opinions and conclusions.

In Opinions 1, 2, 3, 4, 14, 15, 17, and 19, Dr. Jones purports to give opinions as to whether the New Haven Terminal is in compliance with the CT General Permit and at times in compliance with all legal requirements on the New Haven Terminal from any source. For example, in Opinion 15, Dr. Jones claims, "The New Haven Terminal's containment berms are constructed, maintained, and inspected in full compliance with EPA's SPCC and the 2018 and 2021 MSGP." Ex. B, 40. By extending his assessment of the berms to a legal conclusion that the structures are "in full compliance" with EPA regulations and the Connecticut General Permit, Dr. Jones has impermissibly strayed into providing improper legal conclusions. In fact, Dr. Jones testified that he never had anything to do with compliance at the New Haven Terminal. *See* Ex. C, Jones Dep. 139:24–140:1. Yet these opinions provide legal conclusions as to compliance with local permit requirements. These conclusions, if allowed, would usurp the role of the judge and/or jury and are therefore irrelevant and of no assistance to the trier of fact and cannot be offered as expert opinions in this matter. Under *SLSJ, LLC v. Kleban*, an expert may describe "general industry customs" but may not conclude that a specific corporate practice satisfies a statutory requirement. 277 F. Supp. 3d 258, 267 (2d Cir. 2017).

This Court should not permit Defendants to offer any of Dr. Jones' legal arguments against the viability of CLF's claims.

   **B. Dr. Jones Must Be Precluded from Offering Any Testimony on the Delft3D FM Model he Referenced in his Deposition and was Relied Upon by Defendants' Expert Dr. French-McCay.**

Federal Rule of Civil Procedure Rule 26(a)(2)(B)(i) requires that an expert's report contain, among other things, "a complete statement of all opinions the witness will express and

the basis and reasons for them." Dr. Jones' Expert Report does not describe, reference, or disclose any opinion on a Delft3D FM Model of flood scenarios at the New Haven Terminal or any other location. However, another of Defendants' Experts, Dr. French-McCay, states in her report that she relied on a Delft3D FM Model purportedly run by Integral Consulting, where Dr. Jones works, and described some output results from that modeling. Ex. D, French-McCay Appendix B, at 1–7. When asked if he was the expert providing opinion on the Integral flood modeling, Dr. Jones confirmed that is not part of his expert report, stating: "[w]ork that Dr. French McCay relied on, I believe, was informed by additional modelling that we had done that I did not report on in my expert report." Ex. C, Jones Dep. 138:17–19. Based on this testimony, and the lack of any disclosed opinion in his report, CLF requests the court preclude any expert testimony regarding a Delft3D FM Model of flood scenarios run by Integral Consulting.

Dr. Jones' report does not have any specific opinions that purport to rely on this modeling for the Court to exclude, however, in his deposition, Dr. Jones appeared to contradict these facts by saying he did run a Delft3D FM model. When Dr. Jones was asked generally what modeling he had "completed […] for the New Haven Terminal," Jones stated, "Yes […] the Delft FM model that is included as an appendix in the French-McCay report and the tank modelling--the tank risk modeling that is included in my report." *See* Ex. C, Jones Dep. 138:20–139:2. And when asked, "What is the name of the model that you are relying on?" Dr. Jones replied, "The key models are relying on FEMA flood plain maps that are informed by models that FEMA commissions; the NACCS model, which I reference in the report; the Delft Flexible Mesh model which I use." Ex. C, Jones Dep. 135:20–23. While Dr. Jones claims he has not based any of his disclosed opinions about the probabilistic failure of tanks at the New Haven Terminal on the

9

Delft3D FM model run by his colleagues at Integral, if Dr. Jones were to later claim that he has provided an opinion on this model, he must be precluded from offering that testimony.

While Dr. Jones does not include any information in his Expert Report on this model, he is a Managing Principal at Integral and the French-McCay report labels the model as the Integral model. When requesting the facts and data underlying Defendants' reports, Defendants' produced files associated with a Delft3D Model run, which CLF gave to its experts for rebuttal. The results of the model run appear to be presented in Appendix B of the French-McCay expert report, and they show "complete flooding of all containment areas for the NACCS mean 100-year flood event."[1] *See* Ex. E, Expert Rebuttal Report of Nairn, at 23. Notably, Plaintiff's expert Robert Nairn received the model with output files which included the name 'Jones' in the filename, which indicates that Dr. Jones was part of the modeling. *Id.* at 18. There was no calibration or validation of the data presented in either Dr. Jones' report or the French-McCay report.

During Dr. Jones' deposition, he stated that his Expert Report contained all of the materials he relied upon to write the report. Dr. Jones does not list the French-McCay report or Delft3D FM modeling in his references, materials considered, or supplemental materials. He confirms that his opinions are contained in his Expert Report: "My opinions to date are in there." *See* Ex. C, Jones Dep. 14:16. Dr. Jones never cited, explained, or wrote about Integral modeling in his Expert Report, yet at his deposition, he stated, "My opinions are informed by the Integral modeling." *See* Ex. C, Jones Dep. 138:1–2. Dr. Craig Jones was not disclosed by Defendants as an expert for the Delft3D FM model. Dr. Jones is additionally not listed as the author of

---

[1] NACCS is the North Atlantic Coast Comprehensive Study which is a statistical analysis for coastal regions from Virginia to Maine and includes data on storm surge and water levels.

Appendix B of Dr. French-McCay's report, nor did he testify that he is. Dr. French-McCay is not offering an opinion on how the Delft3D FM model was run or the inputs that were used. Dr. Jones is also not offering an opinion on how the Delft3D FM model was run or the inputs that were used, therefore there is not a testifying expert in this litigation on the Delft3D FM model. Dr. Jones' expert report and deposition testimony are based on incomplete and insufficient facts and data.

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires "a complete statement of all opinions the witness will express and the basis and reasons for them." When a party fails to disclose an expert or their report as mandated by Rule 26(a), Rule 37(c)(1) prohibits that party from using the expert or their testimony at trial, in motions, or at hearings—unless the nondisclosure was substantially justified or harmless. *In re Mirena IUD Products Liability Litigation*, 169 F. Supp. 396, 470 (2016); *see also State Farm Fire & Cas. Co. v. Omega Flex, Inc.*, No. 3:20-CV-00648 (SVN), 2023 WL 2666676 at *5 (D. Conn. Mar. 28, 2023). This exclusionary rule operates automatically and is self-executing, placing the burden on the party who failed to disclose to prove justification or lack of harm. *Id*.

Here, Dr. Jones never identified or described using the Delft3D FM model in his expert report, therefore he cannot give expert testimony as to this model and how it was run to simulate flood scenarios at the New Haven Terminal. Yet during his deposition, Dr. Jones stated that he completed a Delft3D FM model at the New Haven Terminal. When asked "Could you please show me where in your report you completed the flood modeling?" *See* Ex. C, Jones Dep. 138:13–14. Dr. Jones replied, "The flood modelling for our work, I relied on NACCS water level data to look at loadings on the tanks. Work that Dr. French McCay relied on, I believe, was informed by additional modelling that we had done that I did not report on in my expert report."

11

*See* Ex. C, Jones Dep. 138:15–19. When asked directly, "Dr. Jones, have you completed modelling for the New Haven Terminal?" *See* Ex. C, Jones Dep. 138: 20–21, Dr. Jones stated, "Yes, the Delft FM model that is included as an appendix in the French-McCay report and the tank modelling- the tank risk modeling that is included in my report." *See* Ex. C, Jones Dep. 138:24–139:2. During his deposition, Dr. Jones confirmed that all of his opinions were included in his report, and yet in the same deposition he stated that he completed modeling using the Delft3D FM model, which was not included in his expert report. Allowing Dr. Jones to testify without having fully disclosed his opinions or the basis for his opinions is harmful to CLF because CLF was prevented from a meaningful opportunity to cross-examine him on the Delft3D FM model. *See In re Mirena IUD Products Liability Litigation*, 169 F. Supp. 3d 396, 472 (2016). Pursuant to Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26(a)(2)(B)(i), Conservation Law Foundation, Inc. ("CLF") moves to exclude certain opinions of Defendants' expert witness, Dr. Craig Jones.

## CONCLUSION

For the foregoing reasons, CLF respectfully requests that the Court grant the above Daubert motion to preclude Opinions 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 25, and 29 of the Expert Report of Dr. Craig Jones and to preclude Dr. Jones from offering any testimony on the undisclosed Delft3D FM model he referenced in his deposition.

Dated: October 3, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ Anna Tadio*

Anna Tadio (phv208827)*
Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 622-3009
Tel: (802) 223-5992
Tel: (802) 622-3020
E-mail: atadio@clf.org
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574

13

New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Devin Williams (phv208827)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP

14

44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
**Admitted as Visiting Attorney*