## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

                    Plaintiff,

    v.

EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,

                   Defendants.

Case No: 3:21-cv-00933-VDO

October 3, 2025

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT MATTHEW BARLOW, Ph.D.

Defendants Equilon Enterprises LLC (d/b/a Shell Oil Products US), Triton Terminaling LLC, and Motiva Enterprises LLC ("Defendants") submit the following Memorandum of Law and Facts in support of their Motion to Preclude the Expert Testimony of Matthew Barlow, Ph.D., under Fed. R. Evid. 702 and 403.

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .................................................................................................. 1

    A.    Overview of Prof. Barlow and His Opinions .......................................... 2

    B.    Prof. Barlow's Opinions Should Be Excluded Under Federal Rules of Evidence 702 and 403 ............................................................................... 3

II.    LEGAL STANDARD ............................................................................................ 4

III.    ARGUMENT ......................................................................................................... 5

    A.    Prof. Barlow's Opinions are Inadmissible under Rule 702 because They Do Not "Fit" the Facts of the Case ............................................................ 5

        1.    Prof. Barlow's Opinions Do Not Help the Jury Determine the Scope of the 2018/2021 Permit ................................................ 6

        2.    Prof. Barlow Improperly Applies Inapplicable Regulatory Materials ........ 7

        3.    Prof. Barlow's Opinions Do Not Help the Jury Because They Are Not Specific to the Terminal ............................................ 8

        4.    Prof. Barlow's Opinions Do Not Help the Jury Because the Effects He Discusses Are Too Far in the Future to Impact Conduct under any Permit ...................................................... 13

        5.    Prof. Barlow's Opinions Do Not Help the Jury Because the Effects He Discusses Are Too Far in the Future to be "Imminent" ............................. 14

        6.    Prof. Barlow's Opinions Are Not Relevant to CLF's RCRA Claim ......... 15

    B.    Prof. Barlow's Opinions Are Inadmissible under Rule 403 .................. 17

IV.    CONCLUSION .................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)............................................................3

*Bustamante v. KIND, LLC*,
100 F.4th 419 (2d Cir. 2024) ..........................................................5

*Connecticut Fair Hous. Ctr v. CoreLogic Rental Prop. Sols., LLC*,
No. 18-CV-705, 2021 WL 1186604 (D. Conn. Mar. 30, 2021) ...............6

*Conservation L. Found., Inc. v. Gulf Oil Ltd. P'ship*,
No. 3:21-CV-00932 (SVN), 2022 WL 4585549 (D. Conn. Sept. 29, 2022) .....................14, 15

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).....................................................................4, 5

*Colon ex rel. Molina v. BIC USA, Inc.*,
199 F. Supp. 2d 53 (S.D.N.Y. 2001)................................................17

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)..........................................................5

*Oliver v. Am. Express Co.*,
19-CV-566 (NGG) (SJB), 2024 WL 100848 (E.D.N.Y. Jan. 9, 2024) .................3

*Pugliano v. U.S.*,
315 F. Supp. 2d 197, (D. Conn. 2004). ...........................................6

*Reynolds v. Arnone*,
645 F.Supp.3d 17 (D. Conn. 2022) ...............................................12

*Snyder v. Wells Fargo Bank*
594 F. App'x 710 (2d Cir. 2014) .................................................6

*United States v. Jones*,
965 F.3d 149 (2d Cir. 2020)..........................................................5

*Wang v. Omni Hotels Management Corporation*,
3:18-cv-2000, 2025 WL 1782264 (D. Conn. June 27, 2025) (Oliver, J.)................4

**Regulations**

Conn. Agencies Regs. § Section 22a-430-3(b)(6)(C) ....................................................13

**Rules**

Fed. R. Evid. 403 ............................................................................................................17

Fed. R. Evid. 702 ...........................................................................................................4,5

Fed. R. Evid. 702 Advisory Comm. Note to 2023 Amends. 6 .......................................4

## I.    INTRODUCTION

In this lawsuit, Plaintiff Conservation Law Foundation, Inc. ("CLF") brings Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") against Equilon Enterprises LLC ("Equilon"), Triton Terminaling LLC ("Triton"), and Motiva Enterprises LLC ("Motiva") (collectively "Defendants") concerning a bulk fuel storage terminal located in New Haven, CT ("The Terminal"). Triton is the current owner of the Terminal, Equilon is the current operator of the Terminal, and Motiva is a prior operator through 2017. Am. Compl., ¶¶ 31, 29, 34. (ECF 47).

CLF contends, among other things, that Defendants violated Connecticut's 2018/2021 General Permit for the Discharge of Stormwater Associated with Industrial Activity (the "2018/2021 Permit")[1] by failing to consider various factors like sea level rise, increased precipitation, and increased storm levels (alleged "Climate Change Factors") in developing and implementing the Stormwater Pollution Prevention Plan ("SWPPP"), a "requirement" CLF asserts was implied by references to "best industry practice." *Id.* at ¶ 175. Indeed, the Connecticut Department of Energy & Environmental Protection ("CT DEEP") made clear that the 2018/2021 Permit contains no such requirement when it issued Defendants' most recent permit and required Defendants to consider these Climate Change Factors. *See* 2018/2021 Permit, attached as Ex. A; *compare* 2025 Permit, attached as Ex. B, at 39–40. CLF also alleges that these same alleged failures present an "imminent and substantial endangerment to human health or the environment. *Id*. at ¶¶ 494-98, 500-02.

---

[1] At the time this lawsuit was filed, the applicable permit was the 2018 General Permit. In 2021, CT DEEP renewed the 2018/2021 Permit without any substantive changes. Both of those Permits have now expired and a new Permit went into effect on October 1, 2025.

### A.     Overview of Prof. Barlow and His Opinions

In support of its case, CLF disclosed **Matthew Barlow, Ph.D**., a climate scientist and

Professor of Climate Science at the University of Massachusetts, to support its CWA and RCRA

claims.



Prof. Barlow offers no opinions regarding what the 2018/2021 Permit requires. *See* Sept.

10, 2025 Deposition of Matthew Barlow, Ph.D. ("Barlow Dep."), attached as <u>Ex. D</u>, at 63:21-25

("Q. Do you have any opinions in this case as to what's required under any Connecticut permit?

**A. I do not have opinions on permitting.** Q. Or what is required under any permit? **A. Or what**

**is required.**"). He also does not offer any opinion regarding whether the SWPPP for the

---

[2] Climate Program Office, NOAA, *NOAA Atlas 14 Precipitation Frequency Atlas of the United States* (Feb. 21, 2020) (available at https://cpo.noaa.gov/noaa-atlas-14-precipitation-frequency-atlas-of-the-united-states/).

Terminal was compliant or not. *Id*. at 126:16-22 ("Q. You're not going to offer any opinions in this case as to whether or not, one way or another, the [SWPPP] in connection with the facility in this case is compliant or not compliant? **A. I will not be offering opinions on that, yes.**").

Prof. Barlow's opinions as stated in his Report should be excluded.

**B.    Prof. Barlow's Opinions Should Be Excluded Under Federal Rules of Evidence 702 and 403**

This Court should exclude the proposed opinions of CLF's expert Matthew Barlow, Ph.D, pursuant to Federal Rules of Evidence 702 and 403 because they have no relevance to the issues to be decided by this Court and will subject the jury to confusion and needlessly cumulative evidence.

*First*, Prof. Barlow's opinions are not admissible under Rule 702 because they are not relevant to any issue the jury will resolve in this case. CLF's primary claim is that Defendants violated their 2018/2021 Permit. However, Prof. Barlow's opinions do not "fit" for several reasons, including that they: (1) do not (and cannot) give the jury any insight regarding Defendants' obligations under the 2018/2021 Permit; (2) █████████████████████████ ████████████████████ (3) are not specific to the Terminal; (4) offer no insight regarding precipitation impacts during the term of the 2018/2021 Permit, and (5) do not relate to any "imminent" impacts. Moreover, Prof. Barlow explicitly disclaims any opinions regarding RCRA.

*Second*, Prof. Barlow's opinions should also be excluded under Rule 403, not only because—as noted above—they are entirely irrelevant to any issue that would be before the jury and thus likely to cause confusion, but also because his opinions are cumulative of opinions offered by multiple other experts in this case.

Accordingly, the Court should exclude Prof. Barlow's opinions.

## II.     LEGAL STANDARD

Trial courts play a crucial "'gatekeeping function' under Rule 702 and are charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Wang v. Omni Hotels Management Corporation*, 3:18-cv-2000 (VDO), 2025 WL 1782264, at *2 (D. Conn. June 27, 2025) (Oliver, J.) (quoting *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020)); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 259, 265 (2d Cir. 2002) (same). The recent amendments to Rule 702 emphasize that courts must fulfill their gatekeeper role by strictly enforcing the requirements of the Rule. As the Advisory Committee noted in an accompanying comment, a prior trend of cases that held flaws in expert analysis went to "questions of weight and not admissibility" reflected "an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 Advisory Comm. Note to 2023 Amends. 6. For, as the Supreme Court notes, the importance of the gatekeeping function "cannot be overstated" because expert testimony "can be both powerful and quite misleading because of [a jury's] difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (internal quotations omitted).

The amended rule prohibits a witness who is qualified as an expert from testifying unless the proponent proves it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Failure to comply with any of the elements is fatal to an expert's opinion, for even if an expert is qualified to testify, expert opinions are not admissible unless they are both reliable and relevant to the issues in the case.

*See Daubert*, 509 U.S. at 589 ("under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). The party proffering the expert—here, CLF—bears the burden of establishing Rule 702's requirements by a preponderance of the evidence. *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020); *see also* Fed. R. Evid. 702. ("A witness who is qualified as an expert ... may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is *more likely than not* that [the criteria for admissibility are met] ...." (emphasis added)).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403). The Supreme Court and Second Circuit have emphasized "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Id.* (citing *Daubert*, 509 U.S. at 595). Because expert testimony has a greater chance of misleading the jury, a court evaluating potential prejudice under Rule 403 "exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

## III.    ARGUMENT

### A.    Prof. Barlow's Opinions are Inadmissible under Rule 702 because They Do Not "Fit" the Facts of the Case

To be admissible, expert testimony must be relevant and help the jury decide facts at issue in the case. *Nimely*, at 397 ("Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'"); *see also Bustamante v. KIND, LLC*, 100 F.4th 419, 430 (2d Cir. 2024) (affirming district court's decision to exclude expert testimony because it was "not relevant to the task at hand.") (internal

quotations and citations omitted); *see also Snyder v. Wells Fargo Bank*, N.A., 594 F. App'x 710, 713–14 (2d Cir. 2014) (affirming exclusion of expert testimony as irrelevant and improper where the opinion lacked foundation in the defendant's policies or established industry practice, and was instead based solely on the expert's prior employer and the facts of the case itself.); *Connecticut Fair Hous. Ctr v. CoreLogic Rental Prop. Sols., LLC*, No. 18-CV-705, 2021 WL 1186604, at *5 (D. Conn. Mar. 30, 2021) ("Because this conclusion reached by [the expert] is no longer relevant, it will not help the trier of fact and is inadmissible."). As general rule of law, an expert's testimony is only admissible if, among other things, it "'reflects a reliable application of the principles and methods to the facts of the case,' i.e., the so-called 'fit' requirement." *Pugliano v. U.S.*, 315 F. Supp. 2d 197, 202 (D. Conn. 2004).

As explained above, the only issues in this case for the Court or the jury to decide (and for experts to weigh in on) are: (1) whether the 2018/2021 Permit includes a requirement to consider Climate Change Factors; and (2) whether failure to consider Climate Change Factors exactly as CLF and its experts believe they should be considered constitutes a violation of the 2018/2021 Permit and represents an "imminent and substantial endangerment to human health or the environment." Prof. Barlow's testimony is not relevant or helpful to the jury as it will not assist it in deciding either of these issues.

### 1.    Prof. Barlow's Opinions Do Not Help the Jury Determine the Scope of the 2018/2021 Permit

Prof. Barlow makes no attempt in his report to help the jury understand Defendants' obligations under the 2018/2021 Permit. Nor could he. Indeed, as he admitted in his deposition, Prof. Barlow:

- has no opinions related to the CWA, Barlow Dep. at 194:13-16 ("Q. So you're not going to offer any opinions that the Clear Water requires something or doesn't require something in this case? **A. That's correct.**");

6

- lacks "the expertise to discuss permitting," *id.* at 161:10-11;

- never reviewed the 2018 Permit, *id.* at 60:4-6 ("Q. Have you reviewed the Connecticut General Permit from 2018? **A. Not that I recall.**");

- never reviewed the 2021 Permit, *id.* at 60:7-9 ("Q. Did you review the Connecticut General Permit from 2021? **A. Not that I recall.**");

- never reviewed the draft 2024 Permit, *id.* at 64:1-3 ("Q. Do you have a recollection of reviewing the 2024 draft industrial permit? **A. No.**");

- never reviewed any fact sheet relating to the 2018/2021 Permit, *id.* at 64:4-7 ("Q. Do you have a recollection of reviewing any of the fact sheets related to the Connecticut General Industrial Permit for Stormwater Purposes? **A. No.**");

- never reviewed any permitting materials for any terminal in Connecticut, *id.* at 63:17-20 ("Q. Have you reviewed any of the permitting materials for any terminal located in the state of Connecticut? **A. Not that I recall.**");

- has no opinions regarding what is required under any such permit, *id.* at 63:21-25 ("Q. Do you have any opinions in this case as to what's required under any Connecticut permit? **A. I do not have opinions on permitting.** Q. Or what is required under any permit? **A. Or what is required.**");

- has never reviewed a SWPPP, *id.* at 126:10-15 ("Q. . . . If I refer to is as a Stormwater Pollution Prevention Plan, is it the same answer, that you haven't reviewed anything like that in connection with this case? **A. Not that I recall, yes.**");

- is offering no opinions regarding whether the SWPPP applicable to the Terminal complied with any Permit, regulation, or law, *id.* at 126:16-22 ("Q. You're not going to offer any opinion in this case as to whether or not, one way or another, the [SWPPP] in connection with the facility in this case is compliant or not compliant? **A. I will not be offering opinions on that, yes.**").

Accordingly, per Prof. Barlow's clear testimony, he cannot help the jury to understand

Defendants' obligations under the 2018/2021 Permit.

### 2.    Prof. Barlow Improperly Applies Inapplicable Regulatory Materials

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████



Again, Defendants' obligations under the CWA in this suit are circumscribed by the 2018/2021 Permit. And, as Prof. Barlow acknowledged, NOAA Atlas 14 is integrated into the 2018/2021 Permit. Barlow Dep. at 159:22-25 ("Q. As you sit here today, is it your understanding that Connecticut DEEP has adopted the NOAA Atlas 14? **A. That's my understanding today, yes.**"). Indeed, Prof. Barlow admitted that he advocated to CT DEEP to adopt something other than the NOAA Atlas 14, but that CT DEEP ultimately declined when it issued the Terminal's new draft permit, choosing instead to continue using NOAA Atlas 14. *Id*. at 158:14-18 ("Q. In your Declaration to Connecticut DEEP on the 6th of May, 2024, did you advocate for Connecticut DEEP to do something other than rely upon the NOAA Atlas? **A. Yes.**"), 160:1-4 ("Q. So to the extent that you were advocating for them to adopt something other than NOAA Atlas 14, they decided not to do that; isn't that true? **A. That appears to be the case, yes.**"); *see also* Exhibit 16 to Barlow Dep., attached as <u>Ex. E</u> (showing CT DEEP's consideration and rejection of other models).

### 3. Prof. Barlow's Opinions Do Not Help the Jury Because They Are Not Specific to the Terminal

Even if CLF's interpretation of the 2018/2021 Permit is correct and it did indeed require consideration of climate change-related precipitation risks and sea level rises (it does not), Prof.

Barlow's opinions are still inadmissible because they are not tethered to the Terminal, the Terminal's location, or the Terminal's operations.

Prof. Barlow has never visited the Port of New Haven or the Terminal, did not attend any of the three formal site visits by CLF experts, and cannot even identify the location of the Terminal on a map:

> Q. Have you been to the Port in New Haven?
>
> **A. Not that I recall, I don't think so.**
>
> Q. Were you aware that there were site visits in connection with this case where experts were allowed to go on site and actually look around the terminal at issue in this case?
>
> **A. That some site visits were made sounds familiar, but I don't recall anything about the specifics.**
>
> Q. You did not attend any site visits in this case, true?
>
> **A. True.**

Barlow Dep. at 35:21–36:7.

Most telling when asked directly, Prof. Barlow conceded he knew *nothing* about the Terminal's stormwater programs or processes:

> **Q. Do you have any knowledge whatsoever as to how the facility at issue in this case handles precipitation or stormwater?**
>
> A. Not really, no.

*Id.* at 197:22-25.

Prof. Barlow also openly admitted to having no knowledge of any data specifically relevant to the terminal, testifying:

> Q. Did you look at any documents from any bulk storage fuel terminal facility related to the impacts of storms?
>
> **A. No.**

*Id.* at 121:18-21.

Q. Are you aware or did you look at documents related to flood preparation for various types of facilities?

**A. No, I don't think so.**

*Id.* at 123:7-15.

Q. And, again, you're not offering any opinions in this case as to whether or not the facilities in New Haven Harbor are able to withstand any increase in precipitation or particular storm, or storm surge, true? . . . You're not saying whether they can or can't; you have no opinions about that, right?

**A. That's correct.**

*Id.* at 119:22-120:6.

Q. You made no effort to find out whether or not the defendant[s'] terminal, the Gulf terminal, ever flooded, true?

**A. That's correct.**

**. . . .**

Q. You made no effort to determine whether or not any of the terminals in the Port of New Haven have ever flooded, true?

**A. That's correct.**

Q. Did you make any effort to determine whether or not there's ever been any river flooding on the rivers connected to the Port of New Haven?

**A. I don't recall.**

*Id.* at 178:10-23 (objections omitted).

Further still, when shown a map of the Port of New Haven, he could not identify where

the Terminal was even located, as demonstrated by the pictures below:



Exhibit 7 to Barlow Dep., attached as <u>Ex. F</u>; *see also* Barlow Dep. at 61:7-22. The Terminal's

location has been marked below in green in the bottom right corner of the map:



Prof. Barlow's error is meaningful as the different location and distance to water put the

Terminal in a different flood risk zone and also impact the potential for flooding based upon

various models:



*See* Exhibit 9 to Barlow Dep., attached as Ex. G (CIRCA Storm Surge Viewer[3] showing flooding at the facilities and terminals Prof. Barlow mistakenly marked, but no flooding at Defendants' Terminal, even with a maximized 2050 projected sea level rise and a once-in-500-years level flood event).[4] The importance of this unfamiliarity cannot be ignored. The result of Prof. Barlow confusing one site from another shows exactly why specificity is a requirement of reliability, for it shows that Prof. Barlow fails to understand and consider that the Terminal at issue is not located on the waterfront, is in a different flood zone than the other terminals, and is not subject to the same flood risks as the other terminals in the Port.

In sum, Prof. Barlow manifested a complete lack of familiarity with the Terminal at issue. Even under CLF's flawed interpretation of the 2018/2021 Permit, his lack of familiarity is fatal under Rule 702, for having not considered the data specific to the only Terminal at issue, Prof. Barlow's generalized opinions about the New Haven Port cannot assist the jury. *See Reynolds v.*

---

[3] This predictive tool was developed by CIRCA, for whom Dr. O'Donnell, another of Plaintiffs' experts, is the executive director.

[4] University of Connecticut, Connecticut Institute for Resilience and Climate Adaptation (CIRCA), *Connecticut Sea Level Rise and Storm Surge Viewer*, available at https://circa.uconn.edu/sea-level-rise-and-storm-surge-viewer/ (last visited Oct. 3, 2025).

*Arnone*, 645 F.Supp.3d 17, 22 (D. Conn. 2022) ("This [fit] requirement means that [e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (internal quotations omitted). Indeed, as demonstrated above, his lack of familiarity has resulted in him overlooking the fact that the impacts he opines about are not likely to affect the Terminal. *See Oliver v. Am. Express Co*., 19-CV-566 (NGG) (SJB), 2024 WL 100848, at *4 (E.D.N.Y. Jan. 9, 2024) ("[A]n expert's methodology is not reliable if he or she simply ignores inconvenient facts.").

Accordingly, Prof. Barlow's failure to connect his opinions to the Terminal specifically renders his opinions unhelpful to the jury.

### 4. Prof. Barlow's Opinions Do Not Help the Jury Because the Effects He Discusses Are Too Far in the Future to Impact Conduct under any Permit

Prof. Barlow's opinions are also irrelevant to CLF's CWA claims because he offers no information relevant to the 2018/2021 Permit's term or, indeed, the 2025 Permit's term.

As noted several times already, CLF's CWA claims are limited by the bounds of Defendants' obligations under the 2018/2021 Permit. CT DEEP issued Defendants' 2018/2021 Permit and new 2025 Permit to apply for a maximum of five years. CONN. AGENCIES REGS. § Section 22a-430-3(b)(6)(C). Prof. Barlow was unaware of this fact. Barlow Dep. at 203:18-21 ("Q. Do you have an understanding as to what the duration of the permits are in this case? **A. No.**").

Prof. Barlow's analysis focused on "**mid-century and end-of-century projections**." *Id.* at 176:7-11. He performed no analysis to determine extreme precipitation risks within the term of the 2018/2021 Permit, nor, for that matter, within the term of the current 2025 Permit (which is not the subject of CLF's claims). For example, he did not calculate increased rain days in New Haven over the next several years, despite admitting that he could have done so:

Q.  Do you have any specific opinions as to how many days increase in rain there will be in New Haven in 2026?

**A.  I don't have a specific opinion as to 2026. I could calculate an estimate considering 2026 to be similar to the current five-year period and make an estimate of how that's differed from preindustrial or some other baseline. That would be possible to do.**

Q.  As you sit here today, you haven't done that calculation?

**A.  No.**

Q.  Is that no, you haven't done that?

**A.  No, I have not done that calculation.**

Q.  If I asked the same question for 2027, 2028, 2029, 2030, is it the same answer?

**A.  I think it's the same answer. 2030 is also a period I have looked at a little bit. But it would be a similar answer, yes.**

*Id*. at 202:23-203:17.

Accordingly, Prof. Barlow's failure to assess likely precipitation impacts within the time period of the 2018/2021 Permit renders his opinions further irrelevant to CLF's CWA claim.

> **5.      Prof. Barlow's Opinions Do Not Help the Jury Because the Effects He Discusses Are Too Far in the Future to be "Imminent"**

Prof. Barlow's opinions regarding far distant and uncertain harms are also unhelpful as they fail to demonstrate that these harms are sufficiently imminent for the purposes of Article III standing.

As this Court has previously held whilst ruling against CLF, "while imminence is a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Conservation L. Found., Inc. v. Gulf Oil Ltd. P'ship*, No. 3:21-CV-00932 (SVN), 2022 WL 4585549, at *6 (D. Conn. Sept. 29, 2022) (dismissing CLF's claims regarding "possible future injury" due to climate change impacts because CLF alleged only an injury that

14

may occur "at some indefinite future time, without demonstrating any real and immediate threat of harm, Plaintiff has stretched the elastic concept of imminence beyond its breaking point") (emphasis in original) (citations and marks omitted). To that end, the Court flagged that "even in cases where other courts have allowed [CLF's] claims regarding near-term risks of pollutant discharges to proceed, those courts have stated that [CLF] did not have standing to pursue claims solely alleging injury that will occur in the distant future," citing to decisions where courts held that CLF lacked standing over alleged future injuries arising from climate change impacts in 2050 or 2100. *Id*. at *7 (citing *Conservation L. Found., Inc. v. Shell Oil Prods. US*, No. 17-396 WES, 2020 WL 5775874, at *1, *8 n.9 (D.R.I. Sept. 28, 2020) and *Conservation L. Found., Inc. v. ExxonMobil Corp.*, No. 16-cv-11950 (D. Mass. Sept. 13, 2017), ECF No. 29.

Here, as noted above, Prof. Barlow's opinions focus almost exclusively on longer term projections starting in 2050 at the earliest. Barlow Dep. at 176:7-11. Per this Court's prior case law, CLF lacks standing over any claim based on these alleged remote potential outcomes and, accordingly, Prof. Barlow's opinions regarding these outcomes are not relevant.

### 6. Prof. Barlow's Opinions Are Not Relevant to CLF's RCRA Claim

Finally, Prof. Barlow's opinions do not help the jury rule on CLF's lone RCRA claim.

*First*, Prof. Barlow himself disclaimed any opinions regarding RCRA. Prof. Barlow testified that he lacks any expertise regarding RCRA and that he is offering no opinions regarding RCRA:

> Q. Are you familiar with the Resource Conservation and Recovery Act, some people refer to as RCRA?
>
> **A. That sounds vaguely familiar.**
>
> Q. Do you consider yourself an expert in RCRA?
>
> **A. No.**

> Q. Do you intend to offer any opinions in this case with regards to RCRA?
>
> **A. No.**

Barlow Dep. at 193:21-194:5 (objections omitted).

*Second*, as discussed above, Prof. Barlow has no site-specific opinions. *See supra* Section III.A.5. Relevant to RCRA specifically, he offers no opinions (and has done no analysis to support an opinion) regarding whether there are any specific conditions at the Terminal which present an "imminent and substantial endangerment to human health or the environment" and disclaims expertise on the topics required for such opinions in this case. He testifies the following:

> Q. You didn't do any environmental sampling of soil conditions or anything like that in this case, true?
>
> **A. That's correct.**
>
> Q. You haven't looked at any such sampling if it exists, true?
>
> **A. That's correct.**
>
> Q. You haven't done any sort of study of the bulk storage terminal tanks at the terminal?
>
> **A. That's correct.**
>
> Q. You don't consider yourself an expert as to sort of the structural components of bulk storage terminal tanks, do you?
>
> **A. I don't consider myself an expert in bulk terminals.**

Barlow Dep. 41:8-23. In other words, as Prof. Barlow does not (and cannot) offer any opinions regarding any relevant conditions at the Terminal, he cannot testify as to whether any of those conditions are likely to cause an "imminent and substantial endangerment to human health or the environment."

**B.      Prof. Barlow's Opinions Are Inadmissible under Rule 403**

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Prof. Barlow's opinions should also be excluded under Rule 403 because they are completely irrelevant to the case and, as such, likely to confuse the jury. In addition, his opinions are cumulative of opinions offered by multiple other experts disclosed by CLF.

*First*, Prof. Barlow's opinions, in addition to being unhelpful to the jury as explained above, are likely to instead confuse jurors because he implies the existence of standards and requirements that simply do not apply. For example, Prof. Barlow discusses climate change-caused precipitation risks at length, but, as discussed, Defendants have no obligation under the Permit to consider such risks. ███████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ *See supra* Section III.A.2. Prof. Barlow's opinions are also likely to confuse a jury because, given his failure to consider any site-specific information in forming his opinions, his opinions do not actually apply to the Terminal specifically. *See supra* Section III.A.3.

*Second*, Prof. Barlow's opinions are needlessly cumulative. ██████████████ █████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████████████████ ██████ *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 96 (S.D.N.Y. 2001)

("Expert testimony presents no exception to [the] general rule" that courts may exclude

"needlessly cumulative" evidence under Rule 403.).

## IV.    CONCLUSION

Given the above, Defendants respectfully request that the Court grant their Motion to

Preclude the Expert Testimony of Matthew Barlow, Ph.D., under Federal Rules of Evidence 702

and 403.


 Dated: October 3, 2025                              Respectfully submitted,

                                                    /s/ *Douglas A. Henderson*
                                                    Douglas A. Henderson (phv05547)
                                                    Carmen R. Toledo (phv20194)
                                                    King & Spalding, LLP
                                                    1180 Peachtree Street, N.E.
                                                    Atlanta, GA 30309
                                                    T: (404) 572-2769
                                                    dhenderson@kslaw.com
                                                    ctoledo@kslaw.com

                                                    Antonio E. Lewis (phv03069)
                                                    King & Spalding, LLP
                                                    300 S Tryon Street
                                                    Suite 1700
                                                    Charlotte, NC 28202
                                                    (704) 503-2551
                                                    alewis@kslaw.com

                                                    Rose H. Jones
                                                    Hilgers Graben PLLC
                                                    1372 Peachtree Street, N.E.
                                                    19th Floor
                                                    Atlanta, GA 30309
                                                    T: (678) 229-1983
                                                    rjones@hilgersgraben.com

                                                    Anthony G. Papetti (phv206982)
                                                    Beveridge & Diamond, P.C.
                                                    825 Third Ave., 16th Floor
                                                    New York, NY 10022
                                                    T: (212) 702-5400

F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com