**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>    *Plaintiff*,<br><br>                 v.<br><br>SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>    *Defendants*. | Civil Action No. 3:21-cv-00933-VDO<br><br><br>October 3, 2025<br><br><br>**FILED UNDER SEAL** |

**[UNREDACTED] MEMORANDUM IN SUPPORT OF PLAINTIFF CONSERVATION LAW FOUNDATION'S *DAUBERT* MOTION TO PRECLUDE EXPERT TESTIMONY OF MR. DAVID UHLMANN**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

EXHIBIT LIST ................................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    I.    Mr. Uhlmann's Opinions 1, 2, 5 and 6 Are Legal Conclusions that Infringe on the Court's Authority and the Jury's Province. ....................................................................................... 3

    II.    Mr. Uhlmann Lacks the Expertise to Offer Opinions on "Best-Industry Practices" ..... 7

CONCLUSION .................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 589 (1993)................................................................................................ 2

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1992).................................................................................. 2

*In re Initial Pub. Offering Sec. Litig.*,
   174 F. Supp. 2d 61 (S.D.N.Y. 2001).................................................................... 3, 7

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005).................................................................................. 2

*Old Gate Partners LLC v. Paddock Enters., LLC*,
   No. 3:18 CV 01657 (JCH), 2024 WL 3520168 (D. Conn. May 30, 2024) .................... 3, 4, 5, 6

*SLSJ, LLC, v. Kleban*,
   277 F. Supp. 3d 258 (D. Conn. 2017).................................................................... 2, 4, 5, 6

*Snyder v. Wells Fargo Bank, N.A.*,
   594 F. App'x 710 (2d Cir. 2014) .......................................................................... 3

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)................................................................................ 3, 4, 5, 6

**Rules**
Fed. R. Evid. 702 .................................................................................................... 2, 7

## **EXHIBIT LIST**

Exhibit A.    Expert Report of David Uhlmann*

Exhibit B.    Expert Deposition Transcript of David Uhlmann*

Exhibit C.    Curriculum Vitae of Wendi Goldsmith


\* Documents denoted with an asterisk are being filed under seal pursuant to this Court's Protective Order (ECF 7)

**INTRODUCTION**

Plaintiff Conservation Law Foundation ("CLF") respectfully moves this Court to preclude David M. Uhlmann, an attorney whom Defendants retained as an expert witness.[1] Mr. Ulmann is partner in the law firm of Marten Law in Washington, D.C.  whose expertise is rooted in environmental law.  He was retained "by King & Spalding to evaluate claims against their clients" under the CWA and RCRA, and is billing $2,250 per hour for that work. Uhlmann Report, Ex. A, at ¶ 1.  Mr. Uhlmann has incorporated his legal analysis into his expert report and presents this analysis as an "expert opinion." Mr. Uhlmann's "expert opinions" concern the applicability of the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") to the New Haven Terminal, the adequacy of Defendants' stormwater pollution prevention plan, and the potential liability of corporate parents under *United States v. Bestfoods*, 524 U.S. 51 (1998) ("*Bestfoods*").

Mr. Uhlmann's statements are, however, not expert opinions but instead legal conclusions—interpretations of statutes, regulations and case law —that are outside the permissible scope of expert testimony under Federal Rule of Evidence 702 and the *Daubert* jurisprudence. In addition, Mr. Uhlmann offers additional opinions that are premised on his assessment of what constitutes best industry practices for a bulk storage fuel terminal located in a coastal area. Mr. Uhlmann, who is an attorney with no scientific or other professional experience, lacks the necessary qualification to offer expert opinions about best industry practices in this context. Accordingly, Mr. Uhlmann should be precluded from testifying as to the opinions set forth in his report.

---

[1] CLF is also moving the Court to preclude Defendants' expert, Susan Bodine.

## **LEGAL STANDARD**

The proper scope of an expert's testimony is delineated by Federal Rule of Evidence 702.

That rule provides that

> "[a] witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a fact in
> issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of
> the case."

Fed. R. Evid. 702.

The United States Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals*, 509

U.S. 589, 113 S.Ct. 2786 (1993) that Rule 702 governs the district court's responsibility to ensure

that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.*

Since *Daubert*, the Second Circuit has noted that "[t]he shift under the Federal Rules to a more

permissive approach to expert testimony . . . did not represent an abdication of the screening

function traditionally played by trial judges." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d

Cir. 2005).

In applying the *Daubert* standard to expert testimony that amounts to a legal opinion or

conclusion, the Second Circuit "is in accord with other circuits requiring exclusion of expert

testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)

(citations omitted). Experts are barred from offering legal opinions or conclusions as such

opinions are unhelpful to the trier of fact and thus violate the relevance prong of *Daubert*. *See*

*SLSJ, LLC, v. Kleban*, 277 F. Supp. 3d 258, 267 (D. Conn. 2017) ("Specifically, with respect to

relevance, Rule 702, Fed. R. Evid., requires the district court to decide whether the expert's

testimony will 'help the trier of fact.'" (quoting *In re Mirena IUD Prod. Liab. Litig.*, 169 F.Supp.3d 396, 413 (S.D.N.Y. 2016)); *Old Gate Partners LLC v. Paddock Enters., LLC*, No. 3:18 CV 01657 (JCH), 2024 WL 3520168, at *7 (D. Conn. May 30, 2024) ("However, expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it' does not aid the jury in making a decision." (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).

Indeed, "[t]he rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed a basic premise or assumption of the evidence law — a kind of axiomatic principle . . . In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (internal quotations and citations omitted); *see also Bilzerian*, 926 F.2d at 1294 (holding that, while an expert "may opine on an issue of fact within the jury's province", he "may not give testimony stating ultimate legal conclusions based on those facts"); *Snyder v. Wells Fargo Bank, N.A.*, 594 F. App'x 710, 714 (2d Cir. 2014) (same).

## **ARGUMENT**

### I.    **Mr. Uhlmann's Opinions 1, 2, 5 and 6 Are Legal Conclusions that Infringe on the Court's Authority and the Jury's Province.**

Mr. Uhlmann's expert report offers his statutory interpretation of certain provisions of the CWA and RCRA and his legal conclusions or legal opinions on the requirements of those two federal statutes. Mr. Uhlmann also offers his interpretation of the Supreme Court's decision in *Bestfoods* and then applies that interpretation to a limited set of facts of the case that were selected by Defendants, and presents his resulting opinion regarding potential liability of corporate parents as expert opinions. Each of these opinions are inadmissible legal conclusions. *Bilzerian*, 926 F.2d at 1294. They do not assist the trier of fact in understanding evidence; instead, they prescribe how

3

the law should be interpreted and applied.  Indeed, Mr. Uhlmann's report sets forth Defendants' legal arguments in defense of CLF's claims to improperly bolster Defendants' position. As a result, the contents of Mr. Uhlmann's report and any testimony are irrelevant, unreliable and must be precluded in their entirety.

> **Opinion 1: Mr. Uhlmann's opinion that enforcement actions under the CWA and RCRA must be constrained to the existing permit or regulatory requirements is a legal conclusion because it interprets statutory text and agency authority rather than offering a scientific or technical analysis.**

Mr. Uhlmann's first opinion is a legal interpretation of the statutory and regulatory requirements of the CWA and RCRA and falls squarely within the Second Circuit's precedent precluding expert witnesses from offering legal opinions. In his report, Mr. Uhlmann relies on his interpretation of the CWA and RCRA, implementing regulations and EPA policy documents to opine on the question of whether the EPA would have a basis to allege CWA or RCRA violations related to a lack of climate planning, in the absence of express permit requirements to that effect. Uhlmann Report, Ex. A, at ¶¶ 22-24, 39-41.

Mr. Uhlmann's opinion regarding the enforceability of climate change risk mitigation requirements is merely a legal argument and should be excluded. *See Bilzerian*, 926 F.2d at 1294. His opinion on this issue is not based on scientific or technical analyses but is instead based on interpretations of statutory text and agency authority—the very type of legal conclusion that the Second Circuit has held to be inadmissible. *See Old Gate Partners,* 2024 WL 3520168, at *7; *SLSJ, LLC*,  277 F. Supp. 3d at  267;  *Bilzerian*,  926 F.2d at 1294  (2d Cir. 1991).  Moreover, although Mr. Uhlmann worked at and represented EPA, he is not, and should not be allowed to, testify on behalf of EPA.  Uhlmann Dep. Tr., Ex. B, 27:13-15 (confirming he is not testifying on behalf of EPA).  Mr. Uhlmann's speculative opinions as to what EPA could or would do are based

4

on his legal analysis of the statutes and regulatory programs under those statutes and should be excluded.

**Opinion 2: Mr. Uhlmann's opinion regarding the requirements and enforceability of provisions of the Clean Water Act is an improper legal opinion based on his interpretation of the statute.**

In his second opinion, Mr. Uhlmann's report provides a legal analysis of the purposes of general and individual permits under the CWA, the use of best industry practice standards, and enforceability of those practices.  Uhlmann Report, Ex. A, at ¶¶ 26-27, ¶ 29, and ¶ 30.  Again, his opinion is another purely legal interpretation of the regulatory regime and must be excluded.  The Second Circuit has repeatedly warned that an expert who offers opinions that embody legal conclusions—including conclusions about the legal enforceability of industry standards—exceeds the permissible scope of expert testimony.  *Bilzerian*, 926 F.2d at 1294-95; *SLSJ, LLC*, 277 F. Supp. 3d at 269; *Old Gate Partners*, 2024 WL 3520168, at *7.  For these reasons, the Court should preclude Mr. Uhlmann from testifying.

**Opinion 5: Mr. Uhlmann's opinion that Defendants are not liable under RCRA is a legal conclusion because it interprets the statutory definition of "solid waste" and "discarded" to determine legal liability, without reliance on scientific testing or data.**

Mr. Uhlmann relied on his interpretation of RCRA, case law, and a review of the Amended Complaint in this matter when he concluded that Defendants' storage of petroleum at the New Haven terminal does not create an "imminent and substantial endangerment" claim under the statute. Uhlmann Report, Ex. A, at ¶ 43.  Mr. Uhlmann's analysis provides his interpretation of the definition of terms such as "solid waste", "hazardous waste", and "discarded" and compares facts from the Amended Complaint to case law he deems relevant. *Id.* at ¶ 46.

5

This type of legal analysis involving the interpretation of legal pleadings, statutory language, and case law to determine the scope of liability is the work of advocates and judges, precisely the type of legal analysis that *Bilzerian* proscribes as expert testimony. *Bilzerian*, 926 F.2d at 1294; *SLSJ, LLC*, 277 F. Supp. 3d at 291 (expert may not give "ultimate legal conclusions"); *Old Gate Partners*, 2024 WL 3520168, at *7. Accordingly, Opinion 5 is also a legal argument and must be excluded.

> **Opinion 6: Mr. Uhlmann's opinion regarding corporate parent liability is a legal opinion based on his interpretation of the Supreme Court's decision in *United States v. Bestfoods* and application of that legal interpretation to the facts of this case.**

Here, Mr. Uhlmann seeks to offer his legal opinions regarding corporate parent liability. His opinions are premised on his legal interpretation of the Supreme Court's decision in *Bestfoods* in light of facts provided to him. Uhlmann Report, Ex. A, at ¶ 49-54.[2] The interpretation of a Supreme Court decision and then application of that law to the facts of a case constitutes legal conclusions and opinions that cannot be presented under the guise of "expert testimony."

Mr. Uhlmann's legal opinion as to whether Shell plc, Shell Petroleum, Inc., and Shell Oil Company exercised the level of control required to trigger liability under *Bestfoods*, and his further opinions regarding the limits of any corporate parent liability under the applicable law or EPA penalty policy are clearly legal conclusions. The Second Circuit has expressly barred experts from rendering corporate liability conclusions. *SLSJ, LLC*, 277 F. Supp. 3d at 268-69 ("disallowing [corporate governance expert] testimony on ultimate legal conclusions."); *Old Gate Partners*, 2024 WL 3520168, at *7; *Bilzerian*, 926 F.2d at 1294. Because Opinion 6 is a legal

---

[2] Uhlmann's report states that this assessment was conducted because CLF's expert, Professor Joshua Macey, "appears to be trying to establish Shell's corporate liability under the *United States v. Bestfoods* standard, although he does not explicitly state that conclusion." Uhlmann Report, Ex. A, at ¶ 49.

determination of corporate liability, it is inadmissible under Fed. R. Evid. 702 and the controlling case law.

In sum, the opinions in Mr. Uhlmann's expert report are legal conclusions based on an interpretation of case law and a statutory and regulatory analysis. Under the gatekeeping framework of *Daubert* and the Second Circuit's extensive jurisprudence, such opinions must be excluded as they usurp the court's role in interpreting statutes and exceed the permissible scope of expert testimony. Indeed, admitting Mr. Uhlmann's report and any resulting testimony would contravene the longstanding principle that "experts may not invade the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 64.

## II.    Mr. Uhlmann Lacks the Expertise to Offer Opinions on "Best Industry Practices"

Mr. Uhlmann's opinions on whether Defendants either complied with or were in violation of certain terms and conditions of the General Permit for the New Haven Terminal constitute legal opinions and should be excluded on that basis alone.  In addition, and related to his legal opinions, Defendants seek to have Mr. Uhlmann offer an expert opinion on what "best management practices" or "best industry practices" (collectively "best industry practices") that are incorporated into the General Permit require for a bulk storage fuel terminal located in a coastal area.  As this Court found when considering the Defendants' motion for partial summary judgment, "whether best industry practice is to consider climate change factors is simply a question of fact." Oct. 19, 2023 Motion Hearing Tr., ECF 305 at 85:13-15.  Mr. Uhlmann's professional experience as a lawyer does not provide him with the necessary qualifications to offer expert opinions on best industry practices in areas in which he has no training, education or professional experience.  These additional opinions, which are found in Opinions 3 and 4, should be precluded on that basis.

7

**Opinion 3: Mr. Uhlmann lacks the qualifications to offer an opinion on whether the climate resiliency measures proposed by Dr. Wendi Goldsmith are best industry practice.**

In Opinion 3 of his report, Mr. Uhlmann applies his stated opinions on best industry practices to offer a further opinion on whether recommendations made by Plaintiff's expert, Dr. Wendi Goldsmith, to address and mitigate climate risk or enhance climate resilience at bulk fuel storage terminals, represent "best industry practices" in this industry.[3] Uhlmann Report, Ex. A, at ¶¶ 31-42.

Mr. Uhlmann does not have the qualification to provide expert opinion testimony on this issue.[4] Mr. Uhlmann is an attorney with experience in the field of environmental law. The hourly rate of $2,250 per hour for his work on this case was based on his premium hourly billing rate of $2,500 as a Marten Law partner, which Mr. Uhlmann testified is "the New York/DC big law rate[.]" Uhlmann Dep. Tr., Ex. B, at 205:19-206:4. Mr. Uhlmann was the "billing attorney" on this matter for the law firm's client, but received assistance from two other lawyers at his law firm, who also billed on the matter. *Id.* at 214:16-216:8. Mr. Uhlmann has no other education, training or professional experience that would allow him to offer an expert opinion on best industry practices. *See id.* at 56:24-58:2. Indeed, he candidly testified in deposition that he is not "an expert in the expert witness sense of the term in any scientific field or other area that requires advanced training, which I don't have." *Id.* at 60:7-10. He also acknowledged that he does not have any advanced degrees other than his law degree. *Id.* at 56:24-57:2. In addition, Mr. Uhlmann is not an

---

[3] In support of his opinion, Mr. Uhlmann noted that he knew of no EPA or state enforcement actions targeting climate-resiliency best-industry practices. Uhlmann Report, Ex. A, at ¶ 32. He baselessly claimed that because no actions exist to his knowledge, that there was no enforceable requirement at the time of the complaint. *Id.* Mr. Uhlmann's conclusion is not only an inadmissible legal opinion, but it is also wholly unsupported and logically unsound.

[4] "Dr. Wendi Goldsmith is a transdisciplinary expert in climate-resilient infrastructure, applied geoscience, and environmental policy integration. With over three decades of experience spanning consulting, research, and public sector advising, she has shaped high-impact strategies to reduce risk and optimize sustainability across sectors including water, energy, defense, and transportation." Curriculum Vitae of Wendi Goldsmith, PhD, PG, Ex. C, at 1.

engineer, hydrologist, environmental modeling professional, hydrogeologist, toxicologist, or stormwater profession. *Id*. at 57:3-15, 59:14-19. Nor does he have any other education, training or experience in other scientific professions that might inform an opinion on best industry practices. *See id.* at 64:22-65:23. Although Mr. Uhlmann, as an attorney, has worked on cases involving expert witnesses with expertise on the movement of pollutants in the environment, he acknowledges that he would want to have a scientific background to testify as an expert about such matters. *Id*. at 57:16-59:5.

Based on his own admission, Mr. Uhlmann lacks the qualifications to offer any opinions as an expert on best industry practices for bulk fuel storage facilities. His lack of any such qualifications, which is a threshold requirement under Rule 702, requires the exclusion of his testimony.

**<u>Opinion 4</u>: Mr. Uhlmann lacks the qualifications to offer an opinion on whether Defendants' hurricane action and business continuity plans are best industry practice.**

Opinion 4 in Mr. Uhlmann's report should be precluded for the same reasons.  In Opinion 4, Mr. Uhlmann opines regarding whether Defendants' hurricane action plan and other emergency responses measures and plans at the New Haven Terminal were best industry practices for a bulk petroleum storage facility located in coastal areas. Uhlmann Report, Ex. A, at ¶¶ 38-42. Mr. Uhlmann lacks the necessary qualifications as a lawyer to provide expert opinion testimony on best industry practices, and he should also be precluded from testifying as to Opinion 4 in his report.

Further, Mr. Uhlmann's opinions do not satisfy the reliability factors enumerated in *Daubert*. His testimony sets forth legal hypotheses that are not empirically testable. No methodological standards governing legal analysis are cited. Mr. Uhlmann's testimony is premised

on his personal judgment, not peer-reviewed scientific or technical articles, and not on generally accepted scientific or technical practices or methods. For these reasons, his testimony should be excluded.

## **CONCLUSION**

For the foregoing reasons, CLF respectfully requests that the Court grant CLF's *Daubert* motion to preclude the testimony of Defendants' expert witness, Mr. David Uhlmann.

Dated: October 3, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ James Y. Meinert*
James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Devin Williams (phv208827)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013

11

E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*

12