FILED UNDER SEAL

# EXHIBIT B

FILED UNDER SEAL

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

----------------------------

CONSERVATION LAW FOUNDATION,

INC.,

                Plaintiff,

V.                                  Civil Action No.

SHELL OIL COMPANY, EQUILON      3:21-cv-00933-VDO

ENTERPRISES LLC D/B/A SHELL

OIL PRODUCTS US, SHELL

PETROLEUM, INC., TRITON

TERMINALING LLC, and MOTIVA

ENTERPRISES LLC,

                Defendants.

--------------------------


    REMOTE VIDEO-RECORDED EXPERT DEPOSITION OF

                DAVID M. UHLMANN

            Friday, September 12, 2025

                  9:15 PM EST


Job No. MDLG7585638

Reported by:  Denise Dobner Vickery, CRR, RMR

FILED UNDER SEAL

Page 2

Friday, September 12, 2025

9:15 PM EST

Remote Video-Recorded Expert Deposition of DAVID M. UHLMANN, held in the location of the witness in Washington, DC.

Pursuant to notice, before Denise Dobner Vickery, Certified Realtime Reporter, Registered Merit Reporter, and Notary Public in and for the District of Columbia.

Page 27

you brought with you today, the only document?

A.      That's the only document I have with me.  Yes, sir.

Q.      Yeah.  And can you confirm that all of the opinions that you are offering in this matter are contained in your expert report?

A.      I can confirm that all the opinions that I offered in the expert witness report are in my expert report, but I may offer opinions today that -- that go beyond what's in the report, depending on what you ask me and what Mr. Henderson asks me.

Q.      Are you here testifying on behalf of the Environmental Protection Agency today?

A.      I am not.

Q.      Are you here today testifying on behalf of the United States Department of Justice?

A.      I am not.

Q.      In providing the opinions in your expert report, did you utilize information obtained or developed in the course of your work at the Environmental Protection Agency?

A.      Sir, I worked at the Environmental Protection Agency for -- for 25 months.  So, you

FILED UNDER SEAL

Page 56

For some reason, Tennessee or the Western District of Tennessee jumps out.  I just remember that, and I -- and, of course, I know because I'm currently practicing there that I'm admitted in the Western District of Michigan.

Q.    Are you admitted to any -- to practice before any appellate -- federal appellate courts?

A.    Yes.

Q.    Which ones?

A.    I don't know whether these are -- you know, I don't know what happens to these.  I mean, again, this dates to when I was at the Justice Department.  So I don't know if they are forever.

But I was during my Justice Department tenure admitted to practice in the Sixth Circuit, in the Eighth Circuit, in the Ninth Circuit, may have been others, but those are the three that I remember arguing -- where I remember arguing appeals.

Q.    Okay.  Thank you.

A.    You're welcome.

Q.    Do you have any advanced degrees

Page 57

other than your law degree?

A.      I do not.

Q.      Are you an engineer?

A.      I am not.

Q.      So you're not a licensed Professional Engineer in the State of Connecticut?

A.      I am not.

Q.      Are you a hydrologist?

A.      I am not.

Q.      Are you an environmental modeling professional?

A.      I mean, you know, it's interesting that you're asking about.  These are all people I worked with at EPA, but I'm not a modeling professional, no.

Q.      Are you an expert in assessing the fate and transport of pollutants?

A.      That's a strange question.

        Can you define what you mean by expert in the fate of -- of storage --

Q.      I take it from your question that you don't understand the use of that terminology; is that correct?

A.      Oh, I understand those terms,

FILED UNDER SEAL

Page 58

Mr. Kilian.  I just don't understand what you mean by your question.  I'm sorry.

Q.    Okay.  Have you ever hired an expert to address the fate and transport of pollutants in the environment?

A.    I mean, my goodness, we've had in our cases had expert witnesses about that question a lot.  I just, you know, I -- I think any of us who work on environmental cases have to have a fair amount of expertise on the -- on the question that you're asking about, what happens to pollutants in the environment.

I assume you have expertise on that. I assume Mr. Henderson does.  I would say I do as well, but -- but I've never been an expert witness on that question, if that helps.

Q.    Do you feel that you're qualified to be an expert witness on that question?

A.    You know, it's a topic I know a lot about.  I don't know that I would.

I would -- I would want to have scientific background to testify as an expert about it, but, again, expert is a term, you know, is a term with different meanings.

Page 59

It's certainly within my area of expertise, the question, but it's not -- I don't know that it's something I would want to -- I wouldn't do -- I wouldn't do an expert witness report about that question unless it was at a very high 30,000-foot level.

Q.    And I take it you never have to date provided an expert report on that question, correct?

A.    That's correct.

Q.    Have you ever provided an export -- expert opinion addressing flooding?

A.    No, I have not.

Q.    Have you -- are you a hydrogeologist?

A.    I am not.

Q.    Are you a toxicologist?

A.    I am not.

Q.    Are you a stormwater professional?

A.    I am not.

Q.    Are you a risk assessment -- environmental risk assessment professional?

A.    I'm just going to interrupt and say, I mean, I'm a lawyer.  In the course of my legal

FILED UNDER SEAL

Page 60

career, I have worked with all the types of people that you're talking about and part of what I've had to do is assimilate the information that they provide me and figure out what to do, particularly in enforcement matters -- actually specifically in enforcement matters -- with that information.

But I am not -- I am not an expert in the expert witness sense of the term in any scientific field or other area that requires advanced training, which I don't have.

Q.      Thank you.

So back to my question.

You're not an environmental risk assessment professional, correct?

MR. HENDERSON:  Object to the form of the question.

THE WITNESS:  Yeah, I just -- I mean, I'm under oath, sir, you're not, and -- and I'm trying to be very careful about my answers because of that.

My work and your work involves environmental risk assessment quite often.  So in that sense of the term, absolutely.  But I think you mean

Page 64

MR. KILIAN:  I'm not taking a break right now.

MR. HENDERSON:  We're going for an hour, more than an hour.  So I would like --

MR. KILIAN:  I'm not taking a break right now, Doug.  I want to get back to my questions.

BY MR. KILIAN:

Q.    Are you a Certified Environmental Risk Assessment Manager?

MR. HENDERSON:  I have -- okay.  The way the rules work, you've asked the question.  After he responds to that question, we can take a break.

Go ahead.

MR. KILIAN:  I'm almost done with this section of my questioning, so I want to keep going for another couple minutes.

BY MR. KILIAN:

Q.    Are you a Certified Environmental Risk Assessment Manager?

MR. HENDERSON:  Object to the

Page 65

form of the question.

THE WITNESS:  I am not a certified -- not certified in whatever you said.  I'm sorry.  There's a lot of back-and-forth here.

BY MR. KILIAN:

Q.    Are you aware that there is a certification for environmental risk assessment managers available?

MR. HENDERSON:  Object to the form of the question.

THE WITNESS:  I mean, I'm aware generally that certifications are available in any number of environmental, yes.

BY MR. KILIAN:

Q.    Are you an economist?

A.    I am not an economist.

Q.    Are you a hazardous waste manager?

MR. HENDERSON:  Object to the form of the question.

THE WITNESS:  I'm not a hazardous waste manager.

BY MR. KILIAN:

Page 205

rate that was paid to an expert in a case that you tried in the past?

A.    I'm sorry, Mr. Kilian, I don't -- I don't remember how much the experts in our cases charged.

I do remember one fabulous toxicologist who charged us nothing because it was the Justice Department and he believed in our case, and he told me that he was -- he would make up for it in the private party litigation he handled where he'd be charging a whole lot more.

So, you know, I know that people -- people's rates are all over the place. There's a wide -- wide range of rates, but I'm confident saying that the experts we retained when I was at the Justice Department weren't making $2,250 per hour. We just -- we didn't have that kind of budget.

Q.    Is $2,250 an hour your regular hourly rate as an attorney at Marten Law?

A.    So I have -- I have sort of different rate categories at Marten Law.

Q.    Can you describe that rate structure to me?

Page 206

A.    Sure.  I have a -- I have a premium rate, which is the New York/DC big law rate, sort of a standard big law rate, which is $2,500 an hour.

I have a -- I have a rate of $2,000 an hour, which is sort of a standard rate for -- I actually don't have any of this work right now, but if I -- if the Justice Department and EPA get back to bringing enforcement actions and there was something that I felt was appropriate to handle, that's -- that's in that rate category.

I have a base corporate rate of $1,750 an hour and then I have -- because I'm trying to do work on behalf of state and local governments, I have a state and local government rate that's $1,400 an hour.

All of those rates are subject to -- I mean, you may know this in the law firm world. I'm just learning this, but they're all subject to discounting.

Q.    Can you describe that discounting to me?

A.    Well, sure.  I mean, I gave a 10 percent discount in this case because of my

Page 214

A.        So one was an attorney named Daniel Mulvihill -- and for the court reporter, that's M-u-l-v-i-h-i-l-l -- who Dan is a partner in our New York office and he is a former Assistant Attorney General in the State of New York, and I believe also may have worked at one point as an attorney for New York City.

And then the second attorney is an attorney named Michael Smith.  Michael is an associate in our Seattle office, and he's relatively new to private practice, year or two, after clerking for federal judge.

Q.        Can you describe what Mr. Mulvihill's substantive role was in assisting you in preparing the report that -- the expert report that you've provided in this matter?

A.        Just sort of in the interest of time because I know you were concerned about that, it might -- I mean, I might describe the work that Dan and Michael did together and just say that Dan was the more senior of the two.

So if there was, you know, there were times when Dan did review of work that Michael had done, but maybe I could just describe

Page 215

to you what they together did for me.

Q.     Sure.

A.     I mean, I'll do -- I'll do this however you want.  I just thought that might -- just because that's the reality of how it worked, that might be easier.

Q.     Go ahead.

A.     Okay.  So I thought it made sense just in terms of managing the costs of this project and also just in terms of balancing the demands on my time, I thought it made sense to have other lawyers with -- with far lower rates do the initial document review and identify for me which documents and ideally which sections of documents I needed to also review.

I also -- so that's one of the things that they did, and both of them did. Although Michael did the largest percentage of that because his rate is the lowest, but Dan reviewed a lot of material as well.  They did subdividing and conquering.  There's a lot of material in this case, as you're aware.

But the two of them did the initial cut on -- on the documents, and then the two of

FILED UNDER SEAL

Page 216

them were my sounding boards for sort of thinking through and talking through the issues I thought were raised by the case and helping me arrive at my opinions.

I did ask them to do follow-up research on questions that arose for me and then I -- then they assisted me in the drafting and editing of the report.

Q.     What is Mr. Mulvihill's hourly rate for work on this matter?

A.     Could I look at my phone?  Maybe could I look at it?

I mean, I'd want to look at an actual document rather than -- I mean, I can -- I can find one, but I just -- I don't have his -- his different rates all memorized.  I know ballpark, but I don't know the exact number.

MR. KILIAN:  Yeah, I guess consistent with that, I'm wondering, Doug, if we can ask for an itemized invoice that just actually indicates the hourly rates and time spent from all billers instead of this.

I mean, we thought we had