## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-VDO <br><br> October 3, 2025 <br><br> **FILED UNDER SEAL** |

### [UNREDACTED] MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CONSERVATION LAW FOUNDATION'S *DAUBERT* MOTION TO PRECLUDE THE EXPERT TESTIMONY OF RENEE BOURDEAU

## TABLE OF CONTENTS

**INTRODUCTION**......................................................................................................................... 1

**LEGAL STANDARD** ................................................................................................................. 1

**ARGUMENT**.............................................................................................................................. 3

**CONCLUSION** ......................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) .................................................................................. 3, 8, 9

*Daubert v. Merrell Dow Pharmaceuticals*,
509 U.S. 589 (1993) .................................................................................................. passim

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ..................................................................................................... 9

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
2013 U.S. Dist. LEXIS 155136 (S.D.N.Y. Oct. 29, 2013) ......................................... 6

*In re Mirena IUD Prod. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016) ........................................................................ 3

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ..................................................................................................... 3

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ........................................................................................ 2

*Old Gate Partners, LLC v. Paddock Enters., LLC*,
No. 3:18-CV-01657 (JCH), 2024 WL 3520168 (D. Conn. May 30, 2024) ........................ 2, 3, 6

*SLSJ, LLC v. Kleban*,
277 F. Supp. 3d 258 (D. Conn. 2017) ........................................................................ 2, 3, 6

*United States v. Tin Yat Chin*,
371 F.3d 31 (2d Cir. 2004) ........................................................................................... 2

*Washington v. Kellwood Co.*,
105 F.Supp.3d 293 (S.D.N.Y. 2015) ........................................................................... 2

**Rules**

Federal Rule of Evidence 403 .......................................................................................... 3

Federal Rule of Evidence 702 ...................................................................................... 1, 2, 3

iii

## **EXHIBIT LIST**

Exhibit 1          Renee Bourdeau Expert Report*

Exhibit 2          Renee Bourdeau August 2025 Deposition Transcript

Exhibit 3          Renee Bourdeau May 2023 Deposition Transcript

*Documents denoted with an asterisk are being filed under seal pursuant to this Court's Protective Order (ECF 7).*

**INTRODUCTION**

Renee Bourdeau is a "water resources engineer" who was retained by Defendants to "review and analyze Stormwater Pollution Prevention Plans (SWPPPs) prepared by industrial permittees" in Connecticut "to determine if permittees took climate change . . . into consideration" when preparing SWPPPs. Ex. 1, Expert Report of Renee Bourdeau at 1:2–23. Ms. Bourdeau concludes, in pertinent part, "I see no evidence of an 'industry practice' or a 'best industry practice' in the State of Connecticut for facilities regulated under the DEEP program to conduct a 'climate change vulnerability' risk assessment." Ex. 1 at 4:132–137. Ms. Bourdeau concludes this based on her review of 152 SWPPPs (out of 1,647), an unknown number of enforcement actions, and a discussion with a Connecticut Department of Energy and Environmental Protection (CT DEEP) employee. Ms. Bourdeau's opinions are not based on her "knowledge, skill, experience, training, or education," as *Daubert* requires, and they are unreliable, as they are based on flawed methodology and insufficient facts and data. The Court should grant CLF's motion and exclude Ms. Bourdeau as an expert in this case.[1]

**LEGAL STANDARD**

The proper scope of an expert's testimony is delineated by Federal Rule of Evidence 702. That rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

---

[1] Two deposition transcripts are referenced throughout this Memorandum because Ms. Bourdeau was deposed as a purported fact witness on May 25, 2023 and was deposed regarding her expert report on August 15, 2025.

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The United States Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 589 (1993) that Rule 702 governs the district court's responsibility to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* Since *Daubert*, the Second Circuit has noted that "[t]he shift under the Federal Rules to a more permissive approach to expert testimony . . . did not represent an abdication of the screening function traditionally played by trial judges." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).

"Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 264 (D. Conn. 2017) (quoting *Washington v. Kellwood Co.*, 105 F.Supp.3d 293, 304 (S.D.N.Y. 2015)). "A witness is qualified where he or she has 'superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'" *Old Gate Partners, LLC v. Paddock Enters., LLC*, No. 3:18-CV-01657 (JCH), 2024 WL 3520168, at *6 (D. Conn. May 30, 2024) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).

"If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable." *Old Gate Partners, LLC,* 2024 WL 3520168, at *6. In *Daubert*, the Supreme Court identified four factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of

2

error," and "the existence and maintenance of standards controlling the technique's operation' " and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593–94) (internal quotations and citations omitted). However, these factors are not a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). "Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* For nonscientific evidence, the Court still "must act as a 'gatekeeper,' following general standards 'in deciding whether the evidence is reliable and helpful.'" *SLSJ, LLC*, 277 F. Supp. at 274.

"In addition to ensuring that expert testimony is reliable, the court must decide whether the expert's testimony is relevant, i.e., whether it will 'help the trier of fact.'" *Old Gate Partners, LLC*, 2024 WL 3520168, at *7 (quoting *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016)). "[E]xpert testimony is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 403).

## ARGUMENT

Ms. Bourdeau's "expert opinion" does not meet the *Daubert* standard. Ms. Bourdeau's opinion that permittees are not required to consider climate change in developing a SWPPP is not derived from her "knowledge, skill, experience, training, or education."[2] Fed. R. Evid. 702. Ms.

---

[2] Ms. Bourdeau's report states her opinion as "I see no evidence of an 'industry practice' or a 'best industry practice' in the State of Connecticut for facilities regulated under the DEEP program to conduct a 'climate change vulnerability' risk assessment." Ex. 1 at 4:132–137. She states in her report, "DEEP does not require SWPPPs to include climate change provisions" (Ex. 1 at 4:114; *see also* 4:119–127), and in deposition she testified that, "the 2021 general permit doesn't require permittees to consider climate change in preparation of their SWPPPs" (*See,*

3

Bourdeau states in her report, and testified in her deposition, that in reaching her opinions she read the Permits and the 2011 SWPPP Guidance document, reviewed publicly available SWPPPs submitted by other permittees, reviewed enforcement actions in files at CT DEEP, and spoke to a CT DEEP employee. Ex. 1 at 2:50–3:96. In reviewing the publicly available SWPPPs, Ms. Bourdeau looked to see if the SWPPP writers included words or language "which suggests that they were considering climate change such as sea level rise, extreme precipitation patterns, terms like that associated with climate change."[3] Ex. 2, 8/15/2025 Deposition of Renee Bourdeau at 60:1–5. In speaking with the CT DEEP employee, Karen Abbott, Ms. Bourdeau asked Ms. Abbott if she knew of a SWPPP that considered climate change or of an enforcement action against a permittee for failing to include climate change considerations in a SWPPP. Ex. 1 at 4:110–113; Ex. 3, 5/25/2023 Deposition of Renee Bourdeau at 52:12–22. Based on the fact that the she did not see a requirement for permittees to consider climate change in the Permits or the 2011 CT DEEP Guidance, did not see reference to climate change language in the SWPPPs she reviewed, and was told by Ms. Abbott that she could not recall a SWPPP including climate change considerations or an enforcement action regarding climate change, Ms. Bourdeau concludes that best industry practice does not require permittees to consider climate change when preparing a SWPPP. Ex. 1 at 4:118–137; Ex. 2, 8/15/2025 Deposition at 59:15–61:16, 67:20–71:2, 72:14–74:19. She did not conduct any other review to determine whether best industry practice requires permittees to consider climate change when preparing a SWPPP. Ex. 2, 8/15/2025 Deposition at 74:21–76:2.

While Ms. Bourdeau states in her report that she is a Professional Engineer in New Hampshire and that she considers herself an expert in "water quality, stormwater management,

---

e.g., Ex. 2, 8/15/2025 Deposition at 61:8–10).  Both opinions, or versions of her opinion, fail the *Daubert* standard for the reasons described herein.

[3] Notably, Ms. Bourdeau does not purport to be an expert on climate change. *See* Ex. 1 at 1:14–36.

nutrient control planning, and related areas," she did not use any of that purported expertise or her experience in reviewing and preparing SWPPPs to form her opinions in this case. *See* Ex. 1 at 1:14–36. Ms. Bourdeau admitted as much in her deposition:

> **Q.** I think you testified earlier that the permittees are not required to consider climate change in their SWPPP's.  Did you use your professional experience to come to that conclusion?
> **A.** There is just no language within the Multi-Sector General Permit or the SWPPP guidance that says that needs to be done.
> **Q.** Okay. And you're familiar with that based on your work as an engineer?
> **A.** I reviewed the Multi-Sector General Permits and the Connecticut SWPPP guidance that is part of the scope of work.

Ex. 3, 5/25/2023 Deposition at 74:18–75:6.

Simply reviewing the Permits, Guidance, and SWPPPs for the term "climate change" or language associated with climate change does not require or reflect any particular or specialized knowledge or expertise, other than the ability to read. Indeed, Ms. Bourdeau testified that after she was retained by defense counsel in 2022, she and counsel decided that she would serve as a fact witness, not an expert, due to the work she was planning on conducting. She stated, "[W]hen we began to talk about the scope of work, we decided that the scope of work best fit for me is to be a fact witness for an investigator." Ex. 3, 5/25/2023 Deposition at 18:7–10; *see also id*. at 46:11–21, 47:2–4. Ms. Bourdeau testified in her 2023 deposition that the only work that she was asked to do was to collect and review Connecticut SWPPPs. *Id.* at 47:9–11. Ms. Bourdeau testified in her 2025 deposition that, once she was retained as an expert in June of 2025, she did not conduct any additional work, other than preparing her expert report and preparing for her deposition. Ex. 2, 8/15/2025 Deposition at 52:6–53:12.

Ms. Bourdeau should be excluded as an expert because her opinion is not based on her purported expertise. As one court in the Second Circuit has explained:

[A]n expert must, in fact, be an expert; **and, his or her opinions must demonstrate such expertise.** A trial court is tasked with the responsibility of weeding out proffered expert opinions which do not meet certain required standards. Such an evaluation requires more than a passing inquiry into whether 'it looks like a duck and quacks like a duck.' Instead, the Court must delve more deeply into whether the proffered duck is – in fact – a duck at all **and whether if a duck, it is doing the types of things a Court would expect a duck to do.** Failure as to either the first or the second inquiry requires that the Court serve its gatekeeper function and exclude the declaration or testimony.

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 U.S. Dist. LEXIS 155136, at *40 (S.D.N.Y. Oct. 29, 2013) (emphasis added) (cleaned up). Ms. Bourdeau's opinions are not based on "doing the types of things a Court would expect . . . [an expert] to do." *Id.* This Court should exercise its gatekeeper function and exclude her as an expert.

Additionally, the Court should exclude Ms. Bourdeau's opinions because they are unreliable, as she utilized flawed methodology and relied on insufficient facts and data in reaching her opinions.[4] *See SLSJ, LLC*, 277 F. Supp. at 264, 266–267. Ms. Bourdeau relies on her review of publicly available SWPPPs located at CT DEEP's office or on its website. Ex. 2, 8/15/2025 Deposition at 55:12–25. Ms. Bourdeau claims that she determined "if the permittees and engineers who were writing the SWPPPs" considered climate change by observing whether they included in the SWPPP language such as "sea level rise" "extreme precipitation patterns" or "terms like that associated with climate change." *Id.* at 59:23–60:5. Ms. Bourdeau did not contact anyone who prepared the SWPPPs or speak to anyone at the permittees' facilities to ask if they considered climate change when the SWPPPs were drafted. *Id.* at 61:17–62:1.

---

[4] To the extent the opinion Ms. Bourdeau plans to offer is simply that she "see[s] no evidence of" an industry practice to include climate change considerations in SWPPPs in Connecticut (*see* Ex. 1 at 4:132-137), her opinion should be excluded for the additional reason that it is a factual conclusion based on incomplete data, not an expert opinion. Further, such an "opinion," based on the inadequate work discussed herein, is not relevant as it is not "helpful to the trier of fact" and does not tend to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable" than it would be otherwise. *Old Gate Partners, LLC,* 2024 WL 3520168 at *7.

6

Ms. Bourdeau testified that at the time of her review, there were 1,647 facilities under the general industrial stormwater permit that were required to prepare a SWPPP. Ex. 2, 8/15/25 Deposition at 56:1–15.  She reviewed only 152 of those 1,647 SWPPPs. *Id.* at 56:22–57:6. The sole criteria that she employed to determine what SWPPPs to review was whether the SWPPP was publicly available. *Id.* She does not know how many of the SWPPPs she reviewed were for coastal facilities, or whether her review included all of the facilities located on New Haven Harbor.  Ex. 3, 5/25/2023 Deposition at 71:4–11; Ex. 2, 8/15/2025 Deposition at 66:7–15. She admitted that only one of the SWPPPs she reviewed was for a bulk petroleum storage terminal. Ex. 3, 5/25/2023 Deposition at 71:19–72:21. Furthermore, Ms. Bourdeau could not verify that any of the SWPPPs she reviewed were the most recent SWPPPs for each facility and admitted that the most recent SWPPP would be available at the facilities themselves. Ex. 3, 5/25/23 Deposition at 71:12–18 ("I know that permittees are required to review and update their SWPPPs as needed on site. So I would assume that the most recent SWPPP is available on site."). The list of the SWPPPs that Ms. Bourdeau reviewed shows that more than half of them are dated from before the first issuance of the current Permit in 2011. *See* Ex. 1 at Exhibit B, "Table Summarizing SWPPPs Reviewed." In sum, there is no indication that the SWPPPs Ms. Bourdeau reviewed in reaching her opinion are representative of, or even relevant to, the SWPPP at issue in this case.

Ms. Bourdeau also bases her opinion on her review of enforcement actions reflected in notices of violations in permittee files at CT DEEP's office. Ex. 2, 8/15/2025 Deposition at 62:21–63:8. She claims that none of the enforcement actions she reviewed included violations for the failure of the permittee to include considerations related to climate change in a SWPPP. Ex. 1 at 4:107–109; Ex. 3, 5/25/2023 Deposition at 41:16–20. However, Ms. Bourdeau does not know how many of the 1,647 industrial permittees had notices of violation. Ex. 2, 8/15/2025 Deposition at

7

63:18–20. She cannot identify which permittee's files contained notices of violations or how many notices of violations she reviewed in order to reach her opinion. Ex. 2, 8/15/2025 Deposition at 63:9–64:9. She did not make copies of the notices or take photos of them, nor did she create a list of the notices of violation she reviewed or provide such a list to CLF. *Id.*

Ms. Bourdeau's opinion is not reliable, as it is based on flawed methodology and incomplete information.

> In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand.

*Amorgianos,* 300 F.3d at 267 (2d Cir. 2002). Ms. Bourdeau's opinion is based on a review of less than 10% of all SWPPPs, which she cannot demonstrate are relevant to this case, and on a review of an unknown number of enforcement actions for an unidentifiable set of permittees. While Ms. Bourdeau claims to have also spoken to a CT DEEP employee who said she was not aware of SWPPPs that considered climate change or of enforcement actions against permittees whose SWPPPs did not include such considerations, Ms. Bourdeau has no information about how many SWPPPs or enforcement actions the CT DEEP employee had actually reviewed, what the employee's role was in the review of SWPPPs or enforcement actions, or how long the employee was involved in such a role.[5] Ex. 2, 8/15/25 Deposition at 71:3–72:13.

While some deficiencies in an expert's methodology go to the weight, not the admissibility of the expert's testimony, "when an expert opinion is based on data, methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the

---

[5] Ms. Bourdeau testified, "I haven't done extensive research on Karen Abbott's career and how long she's been with DEEP – I think she said it was 15 years – or when she started or what her roles were in all those situations." Ex. 2, 8/15/2025 Deposition at 71:8–15.

exclusion of that unreliable opinion testimony." *Amorgianos,* 300 F.3d at 266; *see also id.* at 267

(stating that the judge should exclude evidence if "the flaw is large enough that the expert lacks

good grounds for his or her conclusions."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)

("[a] court may conclude that there is simply too great an analytical gap between the data and the

opinion proffered"). Ms. Bourdeau's opinion is based on methodology and information that is

wholly inadequate. The Court should grant CLF's motion to exclude Ms. Bourdeau as an expert.

**CONCLUSION**

For the foregoing reasons, CLF respectfully requests that the Court grant its *Daubert*

motion to preclude the opinion testimony of Defendants' expert witness, Ms. Renee Bourdeau.

Dated: October 3, 2025

Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc.,
by its attorneys

*/s/ Elizabeth Smith*

Elizabeth Smith (phv208361)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9627
E-mail: esmith@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020

9

Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street, Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street, Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street, Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9628
E-mail: lsinger@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*

10

Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff
Conservation Law Foundation, Inc.*

*Admitted as Visiting Attorney*

11