## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| Plaintiff, | Case No: 3:21-cv-00933-JAM |
| v. | |
| EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | October 3, 2025 |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE THE EXPERT TESTIMONY OF NAOMI ORESKES, PH.D., UNDER RULES 702 AND 403

Defendants Equilon Enterprises LLC (d/b/a Shell Oil Products US), Triton Terminaling LLC, and Motiva Enterprises LLC ("Defendants") attach the following Memorandum of Law and Facts in support of their Motion to Preclude the Expert Testimony of Naomi Oreskes, Ph.D., under Fed. R. Evid. 702 and 403.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

    I.     Overview of Prof. Oreskes and Her Opinions ...................................... 2

    II.    Prof. Oreskes's Opinions Should Be Excluded Under Federal Rules of
            Evidence 702 and 403 ............................................................................ 3

LEGAL STANDARD ......................................................................................... 6

ARGUMENT ...................................................................................................... 7

    I.     PROF. ORESKES'S AFFIRMATIVE OPINIONS PROFFERED IN HER
           INITIAL REPORT SHOULD BE EXCLUDED IN THEIR ENTIRETY.............. 7

        A.     Prof. Oreskes Is Not Qualified to Testify Regarding Any Topic at
             Issue in This Case ...................................................................... 7

        B.     Prof. Oreskes's "Methodologies" Are Unreliable ...................................... 9

                                                                              ............ 9

        a.    Courts Consistently Hold that Reviewing Documents the Experts Has No First-
        Hand Knowledge of and Making Their Own Conclusions from that Review Is Not a
        Reliable Methodology.................................................................... 9

                                                                  10

                                                 ............ 13

                                                 ............ 15

        C.     The Opinions Prof. Oreskes Proffers in Her Initial Report Are
             Irrelevant and Do Not Help the Jury .................................... 17

             1.     Prof. Oreskes's Affirmative Opinions Are Not Relevant to
                   Any Fact at Issue in the Case ............................................. 18

        a.    Prof. Oreskes's opinions do not help the jury to determine whether Defendants
        operated within the scope of the 2018/2021 Permit.................................... 18

        b.    Even by CLF's own flawed interpretation of the 2018/2021 Permit, Prof.
        Oreskes's opinions are not relevant ............................................ 19

        c.    Prof. Oreskes does not know who the Defendants are and has done no analysis
        specific to them ................................................................ 20

        d.    Prof. Oreskes's opinions do not help the jury determine whether Defendants'
        conduct will cause "imminent and substantial endangerment to human health or the
        environment"................................................................... 21

2. ████████████████████████ Does Not Help the Jury .......................................................................... 22

    a.    Clear Second Circuit precedent establishes that expert testimony consisting ██████████████ documents is not helpful to the jury ..................... 23

█ ████████████████████████ ....................... 24

II.    PROF. ORESKES'S REBUTTAL OPINIONS SHOULD BE EXCLUDED IN THEIR ENTIRETY ................................................................... 26

█ ████████████████████████████████ ................... 27

█ ████████████████████████████████ ................... 30

█ ████████████████████████ ................... 31

██ ████████████████████████████████████ ................... 31

██ ████████████████████████████ ................... 33

█ ████████████████████████████ ................... 34

█ ████████████████████████████ ................... 35

    D.    Prof. Oreskes's Rebuttal Opinions Should be Excluded under Rule 403 ..................................................................................................... 36

CONCLUSION ..................................................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Amtrak,*
    303 F.3d 256 (2d Cir.2002)..................................................................33

*Bermejo v. Amsterdam & 76th Assocs.,*
    Index No. 23985/09 (N.Y. Supreme Ct. July 1, 2013) ...........................32

*City & Cnty. of San Francisco, California v. Env't Prot. Agency,*
    604 U.S. 334 (2025)..............................................................................20

*Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
    No. 19-CV-839 (JBA), 2021 WL 4170757 (D. Conn. Sept. 14, 2021) ................10

*Coward v. Owens-Corning Fiberglass Corp.,*
    729 A.2d 614 (Sup. Ct. Pa. 1999) .........................................................32

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993).................................................................... *passim*

*Highland Cap. Mgmt., L.P. v. Schneider,*
    379 F. Supp. 2d 461 (S.D.N.Y.)............................................................10

*J.G. v. N.Y.C. Dep't of Educ.,*
    719 F. Supp. 3d 293 (Feb. 22, 2024) .....................................................15

*Keystone Trans. Solutions, LLC v. Nw. Hardwoods, Inc.,*
    2019 WL 1756292, (W.D. Va. Apr. 19, 2019) .........................................32

*Kumho Tire Co., Ltd. v. Carmichael,*
    526 U.S. 137 (1999)..............................................................................14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
    299 F. Supp. 3d 430 (S.D.N.Y. 2018)...............................................12, 13

*Luck v. McMahon,*
    No. 3:20-CV-00516 (VAB, 2022 WL 5500934 (D. Conn. Feb. 11, 2022) ...........23

*Mann v. National Review, Inc., et al.,*
    2012 CA 008263 B (D.C. Super. Ct July 26, 2021) .........................4, 11, 13

*Mann v. National Review, Inc., et al.,*
    2012 CA 008263 B (D.C. Super. Ct. Jan. 25, 2022)..................................12

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)......................................................................................23, 25, 35

*Max Zach v. Marker 17 Marine*,
    No. 3:23-CV-01088 (VDO), 2024 WL 4614487 (D. Conn. Oct. 30, 2024)
    (Oliver, J.) ..............................................................................................................................12

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,
    No. 95 CIV. 3901 (PKL), 1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) ................................23

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    593 F. Supp. 2d 549 (S.D.N.Y. 2008)...................................................................................14

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016)...................................................................................34

*NAACP, Inc. v. City of Niagara Falls, NY*,
    65 F.3d 1002 (2d Cir. 1995)...................................................................................................25

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)........................................................................................ *passim*

*Parsi v. Daioleslam*,
    852 F. Supp. 2d 82 (D.D.C. 2012) .........................................................................................34

*Pugliano v. United States*,
    315 F. Supp. 2d 197 (D. Conn 2004) .....................................................................................17

*In re Reserve Fund Sec. and Derivative Litig.*,
    No. 09 CIV. 4346 PGG, 2012 WL 12356742 (S.D.N.Y. Sept. 10, 2012)..............................25

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................................24, 34

*Rice v. Williams*,
    No. 7:16-cv-00396, 2017 WL 3197242 (W.D. Va. July 26, 2017) .......................................32

*Ruggiero v. Warner–Lambert Co.*,
    424 F.3d 249 (2d Cir. 2005)...................................................................................................17

*Scentsational Techs., LLC v. Pepsi, Inc.*,
    No. 13 Civ. 8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ........................10, 23

*TMI Tr. Co. v. WMC Mortg., LLC*,
    No. 3:12-CV-1538 (CSH), 2017 WL 6617050 (D. Conn. Dec. 28, 2017)..............................6

*United States v. Cruz*,
    363 F.3d 187 (2d Cir. 2004)......................................................................................................8

*United States v. Jones*,
   965 F.3d 149 (2d Cir. 2020)............................................................................7

*United States v. Roldan-Zapata*,
   916 F.2d 795 (2d Cir. 1990)...........................................................................7

*Wang v. Omni Hotels Mgmt. Corp.*,
   No. 3:18-cv-2000 (CDO), 2025 WL 1782264................................................6

## Other Authorities

Fed. R. Evid. 403 ................................................................................................36

Fed. R. Evid. 702 .......................................................................................... *passim*

## <u>INTRODUCTION</u>

In this case, Plaintiff Conservation Law Foundation ("CLF") alleges that the 2018/2021 General Permit for the Discharge of Stormwater Associated with Industrial Activity (the "2018/2021 Permit"),[1] issued under the Clean Water Act ("CWA") by the Connecticut Department of Energy and Environmental Protection ("CT DEEP"), required Equilon Enterprises LLC (d/b/a Shell Oil Products US), Triton Terminaling LLC, and Motiva Enterprises LLC ("Defendants") to consider various factors like sea level rise, increased precipitation, and increased storm levels (alleged "Climate Change Factors") in developing and implementing the Stormwater Pollution Prevention Plan ("SWPPP") for the New Haven bulk storage terminal (the "Terminal"). *See, e.g.*, Am. Compl. (ECF 47) at ¶ 394. Yet nothing in the 2018/2021 Permit—nor any other statute, regulation, or guidance—states such a requirement. Instead, CLF asserts that this requirement is implied by references to "best industry practice." CLF also asserts that these same alleged failures violate the Resource Conservation and Recovery Act ("RCRA") by allegedly creating an "imminent and substantial endangerment to human health or the environment." *Id*. at ¶¶ 494-98, 500-02.

As a matter of law, the only issues in this case for the Court or the jury to decide (and for experts to weigh in on) are: (1) whether the 2018/2021 Permit includes a requirement to consider Climate Change Factors; and (2) whether failure to consider Climate Change Factors exactly as CLF and its experts believe they should be considered constitutes a violation of the 2018/2021 Permit and represents an "imminent and substantial endangerment to human health or the environment."

---

[1] At the time this lawsuit was filed, the applicable permit was the 2018 General Permit. In 2021, CT DEEP renewed the 2018/2021 Permit without any substantive changes.

In support of its case, CLF offers the opinions of Professor Naomi Oreskes.

## I.    Overview of Prof. Oreskes and Her Opinions

A professor of "the History of Science" at Harvard University, Prof. Oreskes is also a prominent advocate against oil and gas companies, as demonstrated by her books, including *Merchants of Doubt: How a Handful of Scientists Obscured the Truth on Issues from Tobacco Smoke to Global Warning*, ███████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████



Notably, she admitted to having **never read** the relevant 2018/2021 Permit, Sept. 9, 2025 Dep. of Prof. Oreskes ("Oreskes Dep."), attached as <u>Ex. C</u>, at 65:17-23, and to having no opinion regarding what constitutes "best industry practice," "best management practices," the design of the Terminal, ███████████████████████████ ████████████████████. *Id.* at 311:17-21, 311:23-312:4, 107:4-9, 191:15-19, 191:20-24, and 192-11:16.

███████████████████████████████████

███████████████████████████████████



Prof. Oreskes's opinions stated in both reports should be excluded under well-settled law.

## II. Prof. Oreskes's Opinions Should Be Excluded Under Federal Rules of Evidence 702 and 403

The opinions offered in Prof. Oreskes's initial Report suffer from multiple fatal defects:

*First,* Prof. Oreskes is not qualified to offer opinions regarding any issues relevant to this case, i.e., the meaning of the 2018/2021 Permit and the best practices required to design and operate a facility such as the Terminal as she is not an engineer or a lawyer, and she explicitly disclaims any expertise in permitting and enforcement. *See* Oreskes Dep. at 109:9-13, 263:8-10, 303:21-304:1.

*Second*, Dr. Oreskes's report does not "reflect[] a reliable application of the principles and methods to the facts of the case"—as required by the 2023 amendments to Rule 702. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████ The District of Columbia Superior Court excluded Dr. Oreskes's proposed opinions that were the product of the same "methodologies," described by her in that case as "reading and thinking," because they were "not the types of 'reliable methodologies typical of an expert witness."[2] This conclusion applies squarely here as well. ████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████

*Third*, Prof. Oreskes's opinions are irrelevant to any issue in this case, based on the claims alleged in the Amended Complaint and listed in CLF's Notice of Intent. By her own admission, Prof. Oreskes has no opinions regarding the 2018/2021 Permit or the best practices involved in running facilities like the Terminal. ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[2]    Order on Expert Motions in Limine, *Mann v. National Review, Inc., et al.*, 2012 CA 008263 B (D.C. Super. Ct July 26, 2021) ("*Mann* Order"), attached as <u>Ex. E</u>, at 25.

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████

Therefore, as a matter of evidence law under Rule 702, none of Prof. Oreskes's opinions can assist the jury in deciding any issue in this case. ███████████████████████

████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

The opinions stated in her Rebuttal Report similarly suffer from multiple fatal defects:

███████████████████████████████████

█████████████████████████████████████

███████████████████████████

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

██████████████████

████████████████████████████████████

████████████████████████

*Fourth*, her rebuttal opinions are inadmissible under Rule 403 because to the extent these opinions have any relevance at all—they do not—any such minimal relevance is outweighed by the danger of undue prejudice and confusion of the jury.

For all these reasons, Defendants respectfully request that the Court exclude the expert testimony of Prof. Oreskes in its entirety.

## **LEGAL STANDARD**

District courts play a "'gatekeeping' function' under Rule 702 and 'are charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Wang v. Omni Hotels Mgmt. Corp.*, No. 3:18-cv-2000 (CDO), 2025 WL 1782264, at *2 (quoting *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020)). The importance of the gatekeeping function "cannot be overstated" because expert testimony "can be both powerful and quite misleading because of [a jury's] difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (internal quotations omitted); *see also TMI Tr. Co. v. WMC Mortg., LLC,* No. 3:12-CV-1538 (CSH), 2017 WL 6617050, at *4 (D. Conn. Dec. 28, 2017) ("The principal target of *Daubert* and Rule 702 is the professional expert witness—well educated, impeccably dressed, highly articulate—who dispenses cleverly packaged junk scientific or other specialized opinions to lay jurors.").

Federal Rule of Evidence 702 prohibits a witness who is qualified as an expert from testifying unless: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Accordingly, a Rule 702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). The party proffering

the expert—here, CLF—bears the burden of establishing Rule 702's requirements by a preponderance of the evidence. *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely,* 414 F.3d at 397 (quoting Fed. R. Evid. 403).

## ARGUMENT

Prof. Oreskes is an advocate who has not proffered any admissible opinions. She has no experience or training in engineering, regulatory, or permitting issues. ▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮ that invades the province of the jury, while her opinions do not "fit" the claims at issue in this case or help the jury. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮

## I.    PROF. ORESKES'S AFFIRMATIVE OPINIONS PROFFERED IN HER INITIAL REPORT SHOULD BE EXCLUDED IN THEIR ENTIRETY

### A.    Prof. Oreskes Is Not Qualified to Testify Regarding Any Topic at Issue in This Case

Rule 702 requires that an expert witness first be qualified based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Even so, "[a]n expert may be qualified to testify on certain matters and not others." *United States v. Roldan-Zapata*, 916 F.2d 795, 805 (2d Cir. 1990) (citation omitted) (affirming the district court's exclusion of a drug expert's testimony about recordkeeping procedures, for which his expertise was not established); *see also Nimely*, 414 F.3d at 399 n. 13 (Even if an expert witness is qualified in "certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields."). Accordingly, "district courts, in their role as gatekeepers, must be ever vigilant

against expert testimony that could stray from the scope of a witness' expertise." *United States v. Cruz*, 363 F.3d 187, 194 (2d Cir. 2004) (holding that the district court "failed to satisfy its obligations as a gatekeeper" by allowing an expert to "stray from the scope of his expertise.").

Prof. Oreskes, by her own clear admissions, is not qualified to offer opinions on any issue relevant to this case. Under CLF's claims, the only question in this case is whether the 2018/2021 Permit, specifically language discussing "best industry practices" and "best management practices," can be interpreted to require Defendants to consider Climate Change Factors when developing and implementing its SWPPPs. ███████████████████

████████████████████████████████████████████████

███ She is not a lawyer or regulator and claims no expertise in interpreting the requirements of the CWA, RCRA, analogous state laws, or permits issued under any of those laws. Nor is she an engineer or other relevant industry professional claiming expertise regarding "best industry practice" or "best management practices."

Indeed, she readily admitted repeatedly throughout her deposition that she has no relevant expertise to interpret the meaning of Defendants' 2018/2021 Permit. She admitted that she is not an expert in:

- the operation of energy and oil and gas facilities, Oreskes Dep. at 53:14-16 ("Q. Are you an expert in day-to-day operations at oil and gas facilities? **A. No.**");

- permitting or enforcement, *id*. at 303:25-304:1 ("**I have no specific expertise about permitting or enforcement**.") (emphasis added); or

- industrial stormwater permits, *id.* at 60:7-10 ("Q. Do you know what an industrial stormwater permit is? **A. Well, again, this is way outside the scope of my expertise.**").

Further, Prof. Oreskes testified that she has no opinion regarding:

- what is "best industry practice" under any relevant permit, *id*. at 311:17-21 ("[Q.] You're not offering any opinion about what best industry practice is under any of these industrial stormwater permits, correct? **A. Correct.**");

- what are "best management practices," *id*. at 311:23-312:4 ("Q. And you're not offering opinions on best management practices under these industrial stormwater permits, or even generally in this case, you're not offering opinions on best management practices, correct? . . . . **A. Correct.**");

- the design of the terminal, *id*. at 107:4-9 ("[Q.] You're not offering any opinions the terminal was poorly designed in any way. . . . **A. I'm not offering any opinions on the design of the terminal.**");



Accordingly, by her own admission, Prof. Oreskes is not qualified to offer opinions on any relevant issue in this case.

**B.    Prof. Oreskes's "Methodologies" Are Unreliable**



      *a.    Courts Consistently Hold that Reviewing Documents the Experts Has No First-Hand Knowledge of and Making Their Own Conclusions from that Review Is Not a Reliable Methodology*

Under Rule 702, a judge must determine whether proffered expert testimony is "based on sufficient facts or data," "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). As the Supreme Court explained in *Daubert*, "[m]any considerations will bear on the inquiry, including whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error rate and the

9

existence and maintenance of standards controlling its operation, and whether it has attracted

widespread acceptance within a relevant scientific community." *Daubert*, 509 U.S. at 580.

Courts are clear that merely reading documents and reaching conclusions based on one's

own interpretation of what one has read does not meet the criteria set out under Rule 702 or

under *Daubert*. *See Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*

*PA*, No. 19-CV-839 (JBA), 2021 WL 4170757, at *19 (D. Conn. Sept. 14, 2021) ("Rule 702

demands more than the exercise of an expert's subjective judgment for his or her testimony to be

'reliable' under the Federal Rules, including an explanation of how the expert's subjective

judgment is applied to the facts."), *on reconsideration*, No. 19-CV-839 (JBA), 2021 WL 5039035

(D. Conn. Oct. 29, 2021); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468

(S.D.N.Y.) (holding it would be improper for an expert to testify "solely for the purpose of

constructing a factual narrative based upon record evidence"); *Scentsational Techs., LLC v.*

*Pepsi, Inc.*, No. 13 Civ. 8645 (KBF), 2018 WL 1889763, at *3-4 (S.D.N.Y. Apr. 18, 2018)

(holding that an expert may not "act as a vehicle to present a factual narrative of interesting or

useful documents for a case, in effect simply accumulating and putting together one party's

story.") (citation omitted).

████████████████████████████████████████████████

████████████████████████████████████

Prof. Oreskes's methodology is unreliable by definition. Indeed, Prof. Oreskes has been excluded on these grounds before. In *Mann v. National Review, Inc.*, plaintiff Prof. Mann sued various individuals and entities for making allegedly defamatory statements in blog posts that criticized a model he created purporting to show rising global temperatures. *Mann* Order at 2. There, Prof. Oreskes was disclosed to testify regarding the reliability of scientific research, particularly with regards to climate change, and to opine that entities like one of the defendants in the case "ignore, misrepresent, or reject principled scientific thought on environmental and climate issues." *Id.* at 23.

There, the court held that Prof. Oreskes's "methodologies," described by her in that case as "reading and thinking," were "not the types of 'reliable methodologies typical of an expert witness, which leaves the Court unable to distinguish why Prof. Oreskes is more capable than the average juror, who can also read and think about documents." *Mann* Order at 25 (citing *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 89 (D.D.C. 2012) (holding that while "reading defendant's works was a necessary component of evaluating them, . . . that does not mean that 'reading,' standing alone, is an acceptable methodology")). The court also went on to explain that her "'reading and thinking' have not been peer-reviewed, have no known success rate, and cannot be replicated by others." *Id*. Moreover, the court found that her "opinion is not derived from the scientific method and is more aptly described as a historical narrative or research compilation than scientific testimony." *Id*. (citing *Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 (finding that identifying scientific testimony "forces the court to focus on principles and methodology, not

on the conclusions they generate, and thus demands a grounding in the methods and procedures

of science, rather than subjective belief or unsupported speculation")).[3]

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ However, Second Circuit precedent is clear that "[i]n the absence

of some recognizable, describable methodology," such "appeals to [] qualifications" simply

render an expert's opinions "'the essence of unverifiable subjectivity, amounting to the sort of

*ipse dixit* connection between methodology and conclusion' that is properly excluded." *In re*

*LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 502 (S.D.N.Y. 2018)

(quoting *Nimely*, 414 F.3d at 399).

When confronted with an expert who "review[ed] various trader communications" and

concluded such communications demonstrated "trader-based manipulation" based on his "vast

experience and knowledge gained through his work in the dealing rooms of financial

institutions," the Southern District of New York held "[s]uch a vague methodology is not a

methodology at all, and it is certainly not a methodology that can or has been tested or one with a

known or potential error rate." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp.

3d at 502; *see also Max Zach v. Marker 17 Marine*, No. 3:23-CV-01088 (VDO), 2024 WL

4614487, at *4 (D. Conn. Oct. 30, 2024) (Oliver, J.) (finding expert opinion unreliable when it

was impossible to discern the exact methodology used).

---

[3] The court in *Mann* subsequently allowed Prof. Oreskes to testify on the more limited grounds of "the importance of
scientific expertise and the significance of the scientific method and peer review process in scientific debate." *See*
*Mann v. National Review, Inc., et al*, 2012 CA 008263 B, (D.C. Super. Ct. Jan. 25, 2022), attached as Ex. F, at 20.
Prof. Oreskes does not offer those opinions here, nor are such opinions relevant to this case.

█████████████████████████████████████ In *Mann*, the court explained that while "there are instances where an expert's opinion can be based substantially on her experience, [] in those instances the expert must explain 'how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts.'" *Mann* Order at 25-26 (quoting *Arias v. DynCorp.*, 928 F. Supp. 2d 10, 15-16 (D.D.C. 2013)). The court then concluded, "Prof. Oreskes' opinion is not derived from her personal experience, but rather, it is derived from her review of documents and reports created by third-parties." *Id.* at 26.

Just as the at-issue expert did *In re LIBOR* and as Prof. Oreskes did in *Mann*, Prof. Oreskes here fails to state any objective, testable methodology and instead expects the Court to simply defer to her expertise. ███████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████
███████████

Thus, given the above, and as other courts have agreed ███████████████████████████
██████████████████████████████ is unreliable as a matter of clear Second Circuit law.
████████████████████████████████████████████████████████████

Prof. Oreskes's uncritical use of secondary sources does not comport with the methods used by those in her profession outside of litigation, even by her own admission.

Another well-established hallmark of reliability is whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 593 F. Supp. 2d 549, 564 (S.D.N.Y. 2008) (excluding expert testimony for failing to rise to intellectual rigors of his field).

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████ The American Historical Association ("AHA"), which "provides leadership for the discipline" and has "the largest membership association of historians in the world,"[4] explains in its Statement on Standards of Professional Conduct that the "distinction between primary and secondary sources is among the most fundamental that historians make" and that "the professional practice of history means respecting the integrity of primary and secondary sources **while subjecting them to critical scrutiny** and contributing in a fairminded way to ongoing scholarly and public debates over what those sources tell us about the past and also what they fail to illuminate." AHA, *Statement on Standards of Professional Conduct* (2023) (emphasis added), attached as <u>Ex. G</u>, at 2.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[4] *See* AHA, *About Us* (last accessed Oct. 2, 2025) (available at https://www.historians.org/about/).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

Accordingly, her failure to apply the same rigor to her work in this litigation as is expected of historians outside of litigation renders her methodology unreliable.

█████████████████████████████████████████

██████████████████████████████████████████

██████████████████

As the Supreme Court has recognized, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. Courts in the Second Circuit demonstrate a high degree of wariness with the use of AI in litigation. *See, e.g., J.G. v. N.Y.C. Dep't of Educ.*, 719 F. Supp. 3d 293, 308 (Feb. 22, 2024) (noting ChatGPT's tendency to fabricate citations and striking evidence generated by ChatGPT in part because proponent did "not identify the inputs on which ChatGPT relied").

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

        █████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

Here, it is impossible for Defendants' experts to perform the same review as Prof.

Oreskes to verify her work and evaluate her methodology. ████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Accordingly, as no one, including Defendants, could use the information made available by CLF or Prof. Oreskes to precisely repeat her analysis, her methodology is rendered even more unreliable.

***

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████

### C.    The Opinions Prof. Oreskes Proffers in Her Initial Report Are Irrelevant and Do Not Help the Jury

Rule 702 requires that "an expert's opinion reflects a reliable application of the principles and methods to the facts of the case," i.e., the so-called 'fit' requirement." *Pugliano v. United States*, 315 F. Supp. 2d 197, 202 (D. Conn 2004). An expert must also "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance," because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005); *Pugliano*, 315 F. Supp. 2d at 202.

In addition, expert testimony that usurps the role of the jury is, as a matter of settled law, not helpful to the jury. *Nimely*, 414 F.3d at 397 ("We have consistently held, in that respect, that

---

[5] ████████████████████████████████████████████
████████████████████████████████████

expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus 'attempts to substitute the expert's judgment for the jury's.'") (internal marks and cites omitted).

As Prof. Oreskes's opinions are not relevant to any fact at issue in this case and also invades the role of the jury, her affirmative opinions should be excluded under the "fit" prong of Rule 702.

> ### 1. Prof. Oreskes's Affirmative Opinions Are Not Relevant to Any Fact at Issue in the Case
>
> #### a. *Prof. Oreskes's opinions do not help the jury to determine whether Defendants operated within the scope of the 2018/2021 Permit*

The central issue to be decided in this case is whether the 2018/2021 Permit required Defendants to perform "climate change assessments" to be incorporated in the SWPPP. The case does not concern the cause of climate change, international treaties on climate change, or the conduct and/or knowledge of non-defendant Shell entities. ██████████████████

████████████████████████████

████████████████████████████

████████████████████████████

█ Not one of these opinions even attempts to broach the requirements stated by the 2018/2021 Permit.

Indeed, in her deposition, Prof. Oreskes readily admitted that she had *never even seen* any of the Terminal's permits and that she is offering no opinion on what any of the 2018/2021 Permits here require. Oreskes Dep. at 65:17-23 ("Q. Have you reviewed any permit in this

lawsuit? **A. No, I have not.** Q. And you're not offering any opinions on what a permit requires or does not require in this lawsuit, correct? **A. Correct.**").

In her deposition, Prof. Oreskes argued that her opinions were relevant to the claims in the case because "broadly my understanding of the complaint is that, as part of the requirements of the 2018/2021 Permit under which Shell and its subsidiaries operate the installations in question, Shell is required to reveal all known risks, and Shell is required to update its understanding of those risks in light of new information that may come to light," and, per Prof. Oreskes, her "expertise is relevant to the matter of what risks Shell did or did not disclose in relation to the operation of this installation." Oreskes Dep. at 37:3-10, 37:22-24.

But Prof. Oreskes admitted that she has never seen the 2018/2021 Permit and, indeed, her understanding of what the 2018/2021 Permit requires is based entirely on CLF's counsel's interpretation of the 2018/2021 Permit. *Id*. at 95:6-96:4 (explaining that "**[c]ounsel [for CLF] directed my attention to the portion of the complaint that begins on page 85, Count VIII**" and discusses the alleged "**permit requirement to supply information relevant to risks**" to CT DEEP). In other words, CLF's counsel asked Prof. Oreskes to assume that its allegations regarding *the ultimate issue in the case that the jury must decide* is true. Accordingly, Prof. Oreskes's opinions necessarily cannot help the jury to decide this issue.

> **b.    *Even by CLF's own flawed interpretation of the 2018/2021 Permit, Prof. Oreskes's opinions are not relevant***

Even if the 2018/2021 Permit imposed a requirement upon Defendants to inform CT DEEP of risks at the Terminal related to Climate Change Factors (it does not), ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Under the CWA, permit violations are a matter of strict liability; either a party has violated a permit or it has not. *City & Cnty. of San Francisco, California v. Env't Prot. Agency*, 604 U.S. 334, 350 (2025) ("The CWA imposes a regime of strict civil liability[.]"). ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Indeed, CLF's 30(b)(6) representative admitted as such. *See* Excerpts from June 4, 2025 Deposition of S. Mahoney, attached as <u>Ex. I</u>, at 64:9-17 ("Q. No fraud counts – claims? . . . . **A. I'm not aware of any fraud claims.**"), 61:10-22 ("Q. . . . [J]ust so we're clear, CLF is not making any claims that are not in the complaint; correct? . . . . **A. The complaint speaks for itself**. Those are the claim that CLF has brought. Q. So if it's not in the complaint, they're not bringing a claim for it? . . . **A. Not as I sit here today.**").

### c.    *Prof. Oreskes does not know who the Defendants are and has done no analysis specific to them*

Indeed, even if a defendant's knowledge of or conduct pertaining to climate change discussions *were* relevant to CLF's claims, Prof. Oreskes offers no opinions relevant to any Defendant in this case. Prof. Oreskes fails to mention Defendants Equilon Enterprises, LLC and Triton Terminaling, LLC anywhere in her report. Oreskes Dep. at 118:8-14 ("[Q.] Your report, your expert report, dated May 1, 2025, actually never mentions Triton Terminaling, LLC, does it? **A. No, it does not.** Q. And your report does not mention Equilon Enterprises, LLC, either, does it? **A. No, it does not.**"). Prof. Oreskes mentions Defendant Motiva Enterprises, LLC only once in her report, ██████████████████████████████████. *Id.* at 118:15-18 ("Q. And there is only one reference to the Defendant Motiva in your report, correct? **A. I'd have to double-check, but that sounds right to me.**"), ███████████████████████████



She also admits to

offering no opinions regarding whether any Defendant denies the existence of climate change. *Id*.

at 130:7-23.

However, by her own

admission, she is "not an expert on corporate structure" and, thus, unable to opine on the

relationships between any Defendant and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. at

99:19-20 ("**I don't know. I'm not an expert on corporate structure.**").

Thus, as Prof. Oreskes's opinions do not actually relate to any Defendant, her opinions

are not relevant and should be excluded.

> **d.    *Prof. Oreskes's opinions do not help the jury determine whether Defendants' conduct will cause "imminent and substantial endangerment to human health or the environment"***

Just as with CLF's CWA claims relating to the 2018/2021 Permit, Prof. Oreskes makes no

mention of RCRA anywhere in her report. In her deposition, she admitted to having no opinions

21

relating to RCRA. Oreskes Dep. at 67:10-12 ("[Q.] Are you offering any opinions about RCRA? **A. No, I am not.**").

In addition, the same conduct that CLF alleges as the basis of its CWA claim forms the basis of its RCRA claim. Am. Comp. at ¶¶ 493-98, 500-01, 506, 509-10, 513 (alleging that failure to consider Climate Change Factors violated RCRA). Accordingly, as Prof. Oreskes disclaims any opinions regarding the design or operation of facilities like the Terminal or the regulation of stormwater, her opinions are not relevant to CLF's RCRA claims. Oreskes Dep. at 312:5-8 ("Q. You're not offering opinions on good engineering practice, either, are you? . . . . **A. Correct.**"), ██████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ 60:18-21 ("Q. And you're not offering any opinions about the regulation of stormwater in the United States? **A. No.**"), 107:4-9 ("[Q.] You're not offering any opinions the terminal was poorly designed in any way. . . . **A. I'm not offering any opinions on the design of the terminal.**").

***

Accordingly, as Prof. Oreskes's opinions in her affirmative report do not "fit" the issues to be resolved by the jury in this case, they should be excluded.

**2.** ████████████████████████████████████ **Does Not Help the Jury**

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

22

<blockquote>

**a.     *Clear Second Circuit precedent establishes that expert testimony consisting ███████████████████ documents is not helpful to the jury***

</blockquote>

"It is well-settled that 'expert testimony is excluded under Rule 702 if it is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'" *See Luck v. McMahon*, No. 3:20-CV-00516 (VAB), 2022 WL 5500934, at *7 (D. Conn. Feb. 11, 2022) (quoting *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 2978289, at *2-6 (D. Conn. Apr. 9, 2010)). As a matter of clear law in the Second Circuit, expert testimony that consists merely of reviewing documents of which the witness has no first-hand knowledge and creating factual narratives based on those documents—in addition to being unreliable, as discussed above—is unhelpful to the jury, as the expert is no better positioned to read these documents and come to conclusions about them than the jury. As the Second Circuit has held, while experts are permitted to rely on hearsay, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony" and, instead, "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (quoting *Malletier v. Dooney & Bourke, Inc.,* 525 F.Supp.2d 558, 666 (S.D.N.Y.2007) (affirming exclusion of historian expert testimony regarding business practices of Marvel); *see also Scentsational Techs., LLC*, 2018 WL 1889763, at *4 ("Most typically, and certainly here, experts are not percipient witnesses. They are witnesses who, by virtue of specialized expertise, are able to provide opinions or information beyond the ken of the layperson. It is therefore inappropriate for experts to act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story.'"); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV. 3901 (PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (excluding expert "testimony

[that] is not based on personal knowledge, but instead on his review of documents and depositions produced by the parties").

In a pharmaceutical product liability case, the plaintiffs proffered an expert to testify about the "history" of the drug Rezulin by providing "a narrative reciting selected regulatory events concerning Rezulin, including Advisory Committee meetings, labeling changes, 'Dear Doctor' letters, and approval and withdrawal decisions by regulators in the United States and abroad." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). But the Southern District of New York found that the expert's testimony consisted merely of "a narrative of the case which a juror is equally capable of constructing," noting that "the material [cited by the expert], to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence." *Id*. The court ultimately excluded the expert, concluding that he would do "no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of [defendant's] conduct." *Id*. (citing *GST Telecomm., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000) ("In short, the Court should not shift to [expert] witnesses the responsibility to give conclusory opinions and characterizations of the business conduct portrayed[.]")).

█████████████████████████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████  Accordingly, in line with well-established Second Circuit precedent discussed above, her testimony is unhelpful to the jury, ██████████████████████
█████████████████████████████  of these documents themselves.

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████

The Second Circuit recognizes that a historian may help a jury in "some cases," such as in cases where, without such interpretation, historical "evidence [] would otherwise elude, mislead, or remain opaque to a layperson," where the expert "might helpfully synthesize dense or voluminous historical texts," or "offer background knowledge or context that illuminates or places in perspective past events." *Marvel Characters, Inc*., 726 F.3d at 135-36.

But this case is not one of those limited instances. ███████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Thus, as the jury is just as capable of [REDACTED]

[REDACTED] her opinions are not helpful to the jury and her testimony should be

excluded.

## II.    PROF. ORESKES'S REBUTTAL OPINIONS SHOULD BE EXCLUDED IN THEIR ENTIRETY

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Prof. Oreskes, however, does not address

the substance of any of these opinions in her Rebuttal Report. Oreskes Dep. at 256:25-257:12

("Q. You're not offering any opinions that Mr. Uhlmann's technical opinions in his expert report are wrong in any way, are you? **A. That's correct.** . . . Q. In fact, his opinions may very well be correct. You don't have any opinion; is that true? **A. I don't have an opinion one way or the other.**").

████████████████████████████████████████████████████████████

██████████████████

████████████████████████████████████████████████████████████████████

████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ But Prof. Oreskes is not

qualified to testify as to any of these topics.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Instead, as

courts in the Second Circuit and across the country have long held, the ability to decide whether a witness testifying at trial is "biased" or not belongs solely to the fact-finder. *Nimely*, 414 F.3d at 398 (citing *U.S. v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)).

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

27

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

Prof. Oreskes admitted she is not an expert in the ethical obligations of lawyers (Mr. Uhlmann's profession) or on the Rules of Professional Responsibility. Oreskes Dep. at 258:19-25 ("Q. Do you know what the Rules of Professional Responsibility are for lawyers? . . . . **A. I mean, I have a general idea. I'm sure I've seen reference to it, but I'm certainly not an expert on that.**"). Instead, she falls back on her assertion that she is "**an expert is scientific objectivity**" (a self-professed area of expertise for which she cites no establishing criteria other than apparently her own say-so). *Id*. at 256:16-20 ("Q. Are you an expert in legal ethics **A. No. But I'm an expert in scientific objectivity, and that was the basis for the main discussion in this Rebuttal Report.**"). Prof. Oreskes could not, however, provide any authority to support her opinions about "scientific objectivity," other than her own say-so.

Moreover, Mr. Uhlmann is not a scientist and is not offering scientific opinions. ████████ ███████████████████████████████████████████████ which Prof. Oreskes admits she has no expertise in. *Id*. at 256:21-24 ("Q. I think you previously testified you did not have any expertise in the Clean Water Act or RCRA; is that correct? **A. Correct.**").

Further, despite claiming to be an expert on bias and objectivity, Prof. Oreskes herself is clearly biased. Outside of this litigation, Prof. Oreskes has primarily made a name for herself as a climate advocate focused on holding oil and gas companies "accountable" for climate change. For example, in 2012, Prof. Oreskes "conceived" of and co-led a "workshop" titled "Establishing

Accountability for Climate Change Damages: Lessons from Tobacco Control," where participants "sought to compare the evolution of public attitudes and legal strategies related to tobacco control with those related to anthropogenic climate change," including the "most promising and mutually reinforcing intellectual, legal, and/or public strategies for moving forward." Climate Accountability Institute & Union of Concerned Scientists, *Establishing Accountability for Climate Change Damages: Lessons from Tobacco Control*, *Summary of the Workshop on Climate Accountability, Public Opinion, and Legal Strategies* (Oct. 2012), attached as Ex. K, at 2-4.

Participants, including Prof. Oreskes, noted that "[a] key breakthrough in the public and legal case for tobacco control came when internal documents came to light showing the tobacco industry had knowingly misled the public" and that "**[s]imilar documents may well exist in the vaults of fossil fuel industry and their trade associations and front groups**, and there are **many possible approaches to unearthing them.**" *Id.* at 4 (emphasis added). The workshop specifically highlighted the use of litigation as a way to unearth and publicize these internal documents for the purpose of furthering advocacy efforts, with one participant noting, "**that bringing documents to light must be established as an objective independent of the litigation, or else the most valuable documents are not likely to be made public.**" *Id.* at 9. In short, this publication casts doubt on the true nature of Prof. Oreskes participation in this litigation—is she here as a neutral expert seeking to provide specialized expertise in order to educate and assist the jury, or is she an advocate seeking only to misuse the access she has now been granted to Defendants' confidential internal documents with the goal of furthering her

advocacy efforts outside of litigation? Given the facially obvious lack of relevance her opinions have to this litigation, it appears the latter is the case.[6]

███████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████

*** 

Accordingly, as Prof. Oreskes lacks expertise on bias, Mr. Uhlmann's ethical obligations, or on the reasonability of expert fees, she is not qualified to offer the opinions she asserts in her Rebuttal Report.

███████████████████████████████████████████████

One of the core requirements under Rule 702 is that an expert witness's opinions must be "based on sufficient facts or data," "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Courts assess a number of factors to determine reliability, such as "whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community." *Daubert*, 509 U.S. at 580. ████████████████████████

███████████████████████████████████████████████





kind of subjective speculation is improper and inadmissible *ipse dixit*. *See Amorgianos v. Amtrak,* 303 F.3d 256, 266 (2d Cir.2002) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (quoting *General Electric Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

███████████████████████████████████████████████████

████████████████████████████

    ███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

As courts in the Second Circuit and other jurisdictions have made clear, "opinions concerning purported ethical standards" that are "based on [an expert's] personal, subjective views . . . do not meet the core requirement of Rule 702 that expert testimony rest on 'knowledge,' a term that 'connotes more than subjective belief or unsupported speculation'" and, accordingly, "[s]uch speculative testimony . . . cannot serve as the predicate for any purported industry ethical standard." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. at 543 (excluding expert testimony regarding ethical obligations of defendant); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 486–87 (S.D.N.Y. 2016) ("She is not qualified to opine on—nor does she purport to use—FDA or any other objective standards, and we are left with a vague notion that in her personal opinion Bayer's conduct was inadequate. This is impermissible expert testimony."); *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 89 (D.D.C. 2012) (finding that while identifying applicable professional standards and assessing defendant's conduct in light of those standards is clearly "an acceptable area for expert testimony," . . . . [a]n expert proposing to testify about professional standards must, however, identify specific and objective standards, not rely on his personal opinions about what professional standards should be.").

        ████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████

████████████████████████████████████████████████████

As discussed above, the final consideration under Rule 702 is that an expert's testimony must help the jury decide a fact at issue. *See* Fed. R. 702. ██████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

Under well-settled law Second Circuit law, "expert opinions that constitute evaluations of witness credibility . . . are inadmissible." *Nimely*, 414 F.3d at 398 (citing *U.S. v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)); *Marvel Characters, Inc.*, 726 F.3d at 136 ("And the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder.").

███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████

### D.      Prof. Oreskes's Rebuttal Opinions Should be Excluded under Rule 403

Finally, to allow Prof. Oreskes to offer testimony ████████████████████████████ runs afoul of Federal Rule of Evidence 403.

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Second Circuit and Supreme Court recognize "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595). The Supreme Court further emphasizes that because expert testimony has a greater chance of misleading the jury, a court evaluating potential prejudice under Rule 403 "exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. Specifically, with regard to proposed expert testimony regarding bias and credibility, the Second Circuit previously held in *Nimely* that "it was an abuse of the district court's substantial discretion in such matters to determine that [an expert] vouching for [other witnesses'] veracity—even were it otherwise admissible—was not prejudicial, confusing, and misleading to the jury within the meaning of Rule 403." *Nimely*, 414 F.3d at 398.

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

Accordingly, Prof. Oreskes's rebuttal opinions should also be excluded under Rule 403.

<u>**CONCLUSION**</u>

Given the above, Defendants respectfully request that the Court grant their Motion to

Preclude the Expert Testimony of Naomi Oreskes under Federal Rules of Evidence 702 and 403.

Dated: October 3, 2025                              Respectfully submitted,

/s Douglas A. Henderson
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)

WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com

1