# Exhibit C

Page 1

1              UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF CONNECTICUT

3

4    ---------------------------x

5    CONSERVATION LAW FOUNDATION, INC.,

6              Plaintiff,              Case No.

7       vs.                    3:21-cv-00933-VDO

8    EQUILON ENTERPRISES LLC d/b/a

9    SHELL OIL PRODUCTS US, TRITON

10   TERMINALING LLC, and MOTIVA

11   ENTERPRISES LLC,

12             Defendants.

13   ---------------------------x

14

15

16            VIDEOTAPED DEPOSITION OF

17             NAOMI ORESKES, PH.D.

18          Tuesday, September 9, 2025

19                 9:13 a.m.

20

21

22

23   Reported by: MaryJo O'Connor, RDR, RMR

24   Job No. 7576948

25

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 2

1

2

3

4

5              Tuesday, September 9, 2025

6                  9:13 a.m. EST

7

8

9         VIDEOTAPED DEPOSITION of NAOMI

10  ORESKES, PH.D., held at Beveridge & Diamond,

11  155 Federal Street, Suite 1600, Boston,

12  Massachusetts, pursuant to notice, before

13  MaryJo O'Connor, Registered Diplomat

14  Reporter, Registered Merit Reporter and

15  Notary Public in and for the Commonwealth of

16  Massachusetts.

17

18

19

20

21

22

23

24

25

Page 3

1    A P P E A R A N C E S:

2

3    ATTORNEYS FOR PLAINTIFF:

4        (Attending remotely)

5        MOTLEY RICE, LLC

6        28 Bridgeside Boulevard

7        Mt. Pleasant, South Carolina 29464

8        (843) 216-9000

9        BY:    SHALOM D. JACKS, ESQ.

10               sjacks@motleyrice.com

11

12               - and -

13

14        CONSERVATION LAW FOUNDATION

15        62 Summer Street

16        Boston, Massachusetts 02110

17        (617) 850-1744

18        BY:    JAMES MEINERT, ESQ.

19               jmeinert@clf.org

20

21

22

23

24

25

Page 4

```
1   A P P E A R A N C E S (Continued):

2

3   ATTORNEYS FOR DEFENDANTS:

4       KING & SPALDING, LLP

5       1180 Peachtree Street NE, Suite 600

6       Atlanta, Georgia 30309

7       (404) 572-4600

8       BY:    DOUGLAS A. HENDERSON, ESQ.

9              dhenderson@kslaw.com

10             CRISTINA AZCOITIA, ESQ. (Via Text)

11             cazcoitia@kslaw.com

12

13

14

15  ALSO PRESENT:  Shawn Budd, Videographer

16                 Joel Mafrige, Esq.

17

18

19

20

21

22

23

24

25
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 5

```
 1                    I N D E X
 2    Deposition of:                         Page
 3    NAOMI ORESKES, PH.D.
 4       By Mr. Henderson                 11,359
 5       By Ms. Jacks                         355
 6
 7
 8            I N S T R U C T I O N S
 9       Page   Line
10       47         14
11
12               E X H I B I T S
13    No.                                     Page
14    Exhibit 1    Document entitled           9
15                 "Defendants' Notice of
16                 Deposition of Naomi Oreskes,
17                 Ph.D., and Request for
18                 Production of Documents"
19    Exhibit 2    Document entitled "Amended  9
20                 Complaint and Jury Demand"
21    Exhibit 3    Document entitled "Expert   9
22                 Rebuttal Report of Naomi
23                 Oreskes"
24    Exhibit 4    Document entitled "Expert   9
25                 Report of Naomi Oreskes"
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

```
                                              Page 6
  1            E X H I B I T S, (Continued)
  2    No.                                    Page
  3    Exhibit 5    Work Log and Invoice, Bates      9
  4                 NORESKES_000005 to
  5                 NORESKES_000005
  6    Exhibit 6    Work Log and Invoice, Bates      9
  7                 NORESKES_000001 to
  8                 NORESKES_000004
  9    Exhibit 7    Document entitled "Additional    9
 10                 Materials Considered"
 11    Exhibit 8    Document entitled "Expert        9
 12                 Witness Report of David M.
 13                 Uhlmann"
 14    Exhibit 9    Document entitled              270
 15                 "Memorandum Opinion"
 16    Exhibit 10   Westlaw, Keystone             277
 17                 Transportation Solutions,
 18                 LLC v. Northwest Hardwoods,
 19                 Inc.
 20    Exhibit 11   Westlaw, Walter J. Coward v.  279
 21                 Owens-Corning Fiberglas
 22                 Corporation, et al.
 23    Exhibit 12   Article entitled "Scientists' 328
 24                 warning on fossil fuels"
 25
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 7

1              E X H I B I T S, (Continued)

2    No.                                            Page

3    Exhibit 13   Article entitled "How          329

4                 scientists' collective climate

5                 advocacy affects public trust

6                 in scientists and voting

7                 behavior"

8    Exhibit 14   Article entitled "Extreme       329

9                 weather event attribution

10                predicts climate policy

11                support across the world"

12   Exhibit 15   Article entitled "Trust in      329

13                climate science and climate

14                scientists: A narrative review"

15   Exhibit 16   Article entitled "Why           329

16                Misinformation Must Not Be

17                Ignored"

18   Exhibit 17   Article entitled "The 2024      329

19                state of the climate report:

20                Perilous times on planet Earth"

21   Exhibit 18   Article entitled "Climate       329

22                Change and the Clean Air Act

23                of 1970 Part I: the Scientific

24                Basis"

25

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 8

1            E  X  H  I  B  I  T  S, (Continued)

2    No.                                          Page

3    Exhibit 19   Document entitled "Science      343

4                 Journals/AAAS Authorship Form

5                 & Statement of Conflicts of

6                 Interest"

7    Exhibit 20   Article entitled "Outside       343

8                 interests."

9    Exhibit 21   Document entitled "Science      347

10                Journals/AAAS Authorship Form

11                and Statement of Conflicts of

12                Interest"

13

14

15

16

17

18

19

20

21

22

23

24

25

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 37

```
 1              MS. JACKS:  Objection to the form.
 2        A.      Well, "relationship" is a broad
 3   word, but I would say broadly my understanding
 4   of the complaint is that, as part of the
 5   requirements of the permit under which Shell
 6   and its subsidiaries operate the installations
 7   in question, Shell is required to reveal all
 8   known risks, and Shell is required to update
 9   its understanding of those risks in light of
10   new information that may come to light.
11              As a person who's spent more than
12   20 years studying climate science and
13   scientific findings regarding climate risks,
14   including risks related to sea level rise and
15   storm surge, and increased extreme weather
16   events, that knowledge is relevant to the
17   question of the risks.  And so my expert report
18   is about that knowledge, the history of the
19   development of that knowledge, and the history
20   of Shell's involvement with and knowledge of
21   that knowledge.
22              So my expertise is relevant to the
23   matter of what risks Shell did or did not
24   disclose in relation to the operation of this
25   installation.
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 53

1    can't remember.  But I feel like in graduate

2    school when I studied sedimentary basins with

3    Professor Steve Graham, who had worked for many

4    years for Chevron, I feel like we had a field

5    trip where we visited a facility in California,

6    but I couldn't swear to it.  But I think we

7    did.

8         Q.    Have you ever been to an offshore

9    platform?

10        A.    No, no.  No.  I have a lot of

11   friends who have worked on offshore platforms,

12   but I haven't personally had the privilege.

13   They don't usually allow visitors.

14        Q.    Are you an expert in day-to-day

15   operations at oil and gas facilities?

16        A.    No.

17        Q.    How about interviews, Dr. Oreskes?

18   How big a part is your job as a historian of

19   science are interviews, interviews with company

20   employees?  Who -- have you ever interviewed

21   any employees at fossil fuel companies?

22        A.    Okay.  You just asked two

23   different questions, and I'd like to ask you to

24   unpack that.

25        Q.    Have you ever interviewed any

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 60

```
 1          A.      Correct.  I am not.

 2                  MS. JACKS:  Objection to the form.

 3          Q.      Now, in this case, are you aware

 4     that the allegations address an industrial

 5     stormwater permit?

 6          A.      Yes.  I'm aware of that.

 7          Q.      Do you know what an industrial

 8     stormwater permit is?

 9          A.      Well, again, this is way outside

10     the scope of my expertise.  But I understand

11     that facilities operate under permits, and

12     those permits address a variety of issues,

13     which also can include stormwater discharges.

14          Q.      Do you have any experience with

15     the regulation of stormwater in the

16     United States?

17          A.      No.

18          Q.      And you're not offering any

19     opinions about the regulation of stormwater in

20     the United States?

21          A.      No.

22          Q.      And you're not offering any

23     opinions on any features of the terminal, like

24     secondary containment, or equipment, or

25     anything like that?
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 61

```
 1        A.      No.
 2                MS. JACKS:  Objection.  Outside
 3        the scope.
 4        Q.      Do you know what an SWPPP is?
 5        A.      I feel like I've seen that
 6   abbreviation, probably in the complaint, but
 7   offhand I can't remember what it stands for.
 8        Q.      You're not offering any expert
 9   opinion on what an SWPPP is or contains,
10   correct?
11                MS. JACKS:  Objection to the
12        scope.  Outside the scope.
13        A.      Correct.
14        Q.      Correct, you're not providing --
15        A.      Correct, I'm not -- I was waiting.
16   I'm trying really hard to count to three.
17                So, correct.  I'm answering
18   "correct" in response to your question.
19        Q.      And you're not offering -- do you
20   know what an SPCC is?
21        A.      Again, I'm fairly sure I've seen
22   that acronym somewhere, but I do not know what
23   it stands for, and I'm not offering an opinion
24   about it.
25        Q.      That's all I'm just trying to get.
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 64

```
 1   those risks.
 2        Q.     But the comment that the permit
 3   requires disclosure of risk, you did not
 4   confirm that by your reading of the permit --
 5        A.     No.  By my --
 6             MS. JACKS:  Objection to form.
 7             THE WITNESS:  Sorry.
 8             MR. HENDERSON:  Shalom, can you
 9        please for the record, I'm asking you
10        professionally again, can you just let
11        me get through with my question and then
12        you can object?
13             MS. JACKS:  I'm trying to do that,
14        and object before an answer has begun.
15        So if we could just give me a little bit
16        more time to get an objection lodged,
17        please.
18             THE WITNESS:  Okay.  I've been
19        counting to three.  I'll count to five.
20        I think there is a lag.
21             MR. HENDERSON:  Can you read --
22             THE WITNESS:  There is a lag
23        within Zoom.  I think that's part of the
24        problem.
25             MR. HENDERSON:  Can you reread the
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 65

1          question, MaryJo.

2                    (Record read as requested.)

3          Q.      -- that the permit actually

4     required the disclosure of risk.

5          A.      I read the complaint, and I read

6     the amended complaint.  It's up to lawyers to

7     read and interpret the permit.

8          Q.      Do you know what permit applies to

9     this lawsuit?

10         A.      You mean like the number, the

11    specific?

12         Q.      Yeah.

13         A.      No, no.

14         Q.      What year are the --

15         A.      Again, that would be outside of my

16    scope.

17         Q.      Have you reviewed any permit in

18    this lawsuit?

19         A.      No, I have not.

20         Q.      And you're not offering any

21    opinions on what a permit requires or does not

22    require in this lawsuit, correct?

23         A.      Correct.

24         Q.      How about experience with the

25    Clean Water Act, Dr. Oreskes?  Is this your

Naomi Oreskes , Ph.D.                     September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 67

1        A.      You know what?  I know I can still
2    answer.  So you actually don't have to do that.
3    I'm just trying to respect everyone by pausing,
4    so my pausing doesn't mean I'm not answering.
5                Now I've lost the train.  I'm
6    sorry.  Could you read it, MaryJo?
7                (Record read as requested.)
8        A.      No, I did not.
9        Q.      How about what we call RCRA
10   [RECK-ruh], R-C-R-A?  Are you offering any
11   opinions about RCRA?
12       A.      No, I am not.
13       Q.      Do you have any familiarity with
14   RCRA?
15       A.      A little bit --
16               MS. JACKS:  Objection.  Beyond the
17          scope.
18       A.      In my courses I teach the history
19   of environmental science and environmentalism
20   in America.  And as part of that, we sometimes
21   discuss statutes.  Most of my teaching and
22   research related to statutes involves the Clean
23   Air Act, but I certainly know a little bit
24   about the Clean Water Act and other important
25   environmental statutes.

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 95

1   attended to, which is relevant to my report, is

2   about the requirement to disclose risks.

3              I think that answers the question.

4   I'm not making claims about other possible

5   permit violations.

6       Q.     And that's based on what your

7   lawyer told you the permit required?

8              MS. JACKS:  Objection to the form.

9       A.     Again, it's not my lawyer.

10  Counsel doesn't represent me.  But --

11      Q.     It's based upon what counsel

12  for --

13      A.     Can I finish?

14      Q.     Yeah, sure.

15      A.     Take a deep breath.

16             Counsel directed my attention to

17  the portion of the complaint that begins on

18  page 85, Count VIII:

19             "Violation of the Clean Water

20        Act - failure to submit required facts

21        or information to Connecticut Department

22        of Energy and Environmental Protection."

23             That's DEEP, who we've been

24  talking about.  This section of the

25  complaint discusses the permit requirement

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 96

1   to supply information relevant to risks.  My

2   report deals with this section of the

3   complaint, and, as far as I know, not any

4   other section.

5          Q.     Right.  But in your expert report,

6   you do not say that any activity by Defendants

7   violated that section of the permit, do you?

8          A.     Well, I think --

9          Q.     No, just what is stated in your

10  expert report, it does not state, "And this

11  failure of, whatever it is you believe,

12  violates this section of the permit," correct?

13         A.     Correct.

14         Q.     So why -- let's look at your

15  expert report, which I think is Exhibit O3.

16         A.     No, O4.

17         Q.     O4.

18                What's the title of your report?

19         A.     Well, the title is "Expert Report

20  of Naomi Oreskes."

21         Q.     And what's below that?

22         A.     What's below that is the date.

23         Q.     You have "Conversation Law

24  Foundation v. Shell New Haven Terminal,"

25  correct?

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 99

1        A.     Yes.  I'm going to call your
2   attention to Exhibit O2, the "Amended Complaint
3   and Jury Demand" dated February 11, 2022, which
4   says:
5               "Conservation Law Foundation,
6          Inc., Plaintiff, v. Shell Oil Company,
7          Equilon Enterprises LLC d/b/a Shell Oil
8          Products US, Shell Petroleum, Inc.,
9          Triton Terminaling LLC, Motiva
10         Enterprises LLC."
11              So, in fact, Shell Oil Company
12  is a named Defendant in this case, as is
13  Equilon Enterprises, which is part of the
14  Shell Oil Products group, and Triton
15  Terminaling, which is also part of the Shell
16  group.
17       Q.     Which Shell group?  What company
18  is it part of?
19       A.     I don't know.  I'm not an expert
20  on corporate structure.
21       Q.     Did any of the CLF lawyers tell
22  you that on February of this year Shell Oil
23  Company and Shell Petroleum were dismissed from
24  this litigation?
25       A.     Well, no, they didn't tell me that

Page 107

```
 1          A.     I know.  It's a funny name.  It's
 2    not your fault.
 3          Q.     So, just going through what you
 4    are testifying on and what you're not.  You're
 5    not offering any opinions the terminal was
 6    poorly designed in any way.
 7                 MS. JACKS:  Objection to the form.
 8          A.     I'm not offering any opinions on
 9    the design of the terminal.
10          Q.     You're not offering any opinions
11    that the terminal should be renovated in any
12    way.
13                 MS. JACKS:  Objection to the form.
14          A.     I'm not offering any opinions on
15    the design of the terminal.
16          Q.     And you're not offering any
17    opinions that the terminal should not flood,
18    are you?
19                 MS. JACKS:  Objection to the form.
20          A.     Personally, I don't think the
21    terminal should flood, but it's not part of my
22    formal opinion.
23          Q.     And you're not offering any
24    opinions about the safety of the terminal.
25                 MS. JACKS:  Objection to the form.
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 109

1          A.      No, I am not.

2          Q.      And, Dr. Oreskes, I think we can

3    go through this pretty quick.  You're not a

4    licensed engineer, are you?

5          A.      No, I'm not.

6          Q.      Have you ever been?

7          A.      A licensed engineer?  No, I've

8    never been a licensed engineer.

9          Q.      From the CV, was your training

10   more as a geologist or an engineer?

11         A.      I wouldn't say I have any formal

12   training as an engineer.  I'm trained as a

13   scientist and a historian of science.

14         Q.      Was your degree actually in

15   history of science?

16         A.      Well, which degree I have?

17         Q.      Your doctorate.

18         A.      My doctorate was a joint degree in

19   geology and history of science, but Stanford

20   University had a rule that joint degrees

21   couldn't have the name of a department in it,

22   so we agreed on geological practice and history

23   of science.  And that was something that my

24   professors all signed off on.

25         Q.      Do you consider yourself a climate

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 118

```
 1          Q.      And you've proofread your report?
 2          A.      Yes.  But obviously, sometimes
 3   small errors slip by.
 4          Q.      And in terms of your report,
 5   Dr. Oreskes --
 6          A.      Yes.  Thank you.
 7          Q.      Close my eyes, I get it right.
 8                  Your report, your expert report,
 9   dated May 1, 2025, actually never mentions
10   Triton Terminaling, LLC, does it?
11          A.      No, it does not.
12          Q.      And your report does not mention
13   Equilon Enterprises, LLC, either, does it?
14          A.      No, it does not.
15          Q.      And there is only one reference to
16   the Defendant Motiva in your report, correct?
17          A.      I'd have to double-check, but that
18   sounds right to me.
19          Q.      And that was on page 109, just --
20   I believe that's the only reference you have to
21   Motiva.
22          A.      So, where is the reference to
23   Motiva?
24          Q.      I think it's on page 109.
25          A.      It seems like your pagination
```

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 119

1    isn't quite the same as mine.

12          Q.      And do you even know the name of
13    that other facility that you were referencing?
14                  MS. JACKS:   Objection to the form.
15          A.      I don't understand your question.
16          Q.      What facility did the spill happen
17    in 2012?
18          A.      You mean which specific Motiva oil
19    tank facility?
20          Q.      Yes.
21          A.      I don't know.
22          Q.      It wasn't the New Haven Terminal,
23    was it?
24          A.      I don't know.
25          Q.      Okay.  And I think we've answered

Naomi Oreskes , Ph.D.                      September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 130

1           confirms that climate change is

2           occurring and has caused, and will

3           continue to cause, a rise in sea levels,

4           more severe weather, increased

5           precipitation, flooding, fires, and

6           other serious consequences."

7           Q.      And, Dr. Oreskes, in your report,

8    you're not offering any opinion that Equilon

9    Enterprises is denying climate change is

10   occurring, are you?

11               MS. JACKS:  Objection to the form.

12          A.      No, I am not.

13          Q.      And you're not offering any

14   opinion that Triton Terminaling, LLC, is

15   denying that climate change is occurring, are

16   you?

17          A.      No, I'm not.

18          Q.      And you haven't offered any

19   opinion that Motiva Enterprises is denying that

20   climate change is occurring, have you?

21               MS. JACKS:  Objection to the form.

22          A.      No, I have not offered an opinion

23   to that effect.

24          Q.      And I think we went over it, but

25   as of today, you did not know that Shell is not

Naomi Oreskes , Ph.D.                           September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 156



Naomi Oreskes , Ph.D.                              September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 191



Page 192



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 219

1    risk that you say Shell was aware of?

2              MS. JACKS:   Objection to the form.

3         Calls for speculation.

4         A.      Well, again, I can't speak for the

5    EPA, but I think it would be a reasonable

6    conclusion to say that they were.  Or they

7    should have been if they weren't, and I would

8    they were derelict in their duty as regulators.

9         Q.      So why didn't EPA change the

10   permit and require permitees to take more

11   action on climate change?

12             MS. JACKS:   Objection to the form.

13        Calls for speculation.

14        A.      Yeah, I really can't speak to

15   that.

16        Q.      And you're not offering any

17   opinions on that?

18        A.      I can't speak to what EPA did or

19   didn't do on any particular thing.

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 220



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 222

1    would submit it to peer review.  But because of

2    the constraints of confidentiality, that method

3    isn't available to experts doing expert

4    witnessing, whether they're scientific or

5    historical.

Naomi Oreskes , Ph.D.                              September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 223



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 224



Naomi Oreskes , Ph.D.                          September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 226



Page 227



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 228



Naomi Oreskes , Ph.D.                     September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 234



[redacted]

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 256

1    assurance is?

2         A.    Well, I've heard the term before.

3    I couldn't give you specifics on it.

4         Q.    Do you know what his

5    responsibilities were at EPA?

6              MS. JACKS:  Objection to the

7         extent this calls for speculation.

8         A.    I mean, I assume there is a common

9    sense meaning of the term "enforcement."  So I

10   assume that that's what he did, but I couldn't

11   speak in detail about what his exact

12   responsibilities were.

13        Q.    Are you an expert in environmental

14   enforcement?

15        A.    No, I'm not.

16        Q.    Are you an expert in legal ethics?

17        A.    No.  But I'm an expert in

18   scientific objectivity, and that was the basis

19   for the main discussion in this rebuttal

20   report.

21        Q.    I think you previously testified

22   you did not have any expertise in the Clean

23   Water Act or RCRA; is that correct?

24        A.    Correct.

25        Q.    You're not offering any opinions

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 257

1    that Mr. Uhlmann's technical opinions in his

2    expert report are wrong in any way, are you?

3          A.     That's correct.

4                 MS. JACKS:  Objection.

5                 THE WITNESS:  Oh, sorry.

6          A.     That's correct.

7          Q.     In fact, his opinions may very

8    well be correct.  You don't have an opinion; is

9    that true?

10                MS. JACKS:  Objection to the form.

11         A.     I don't have an opinion one way or

12   the other.

13         Q.     Okay.  And you're not offering any

14   opinions that Mr. Uhlmann misinterpreted the

15   Clean Water Act, correct?

16                MS. JACKS:  Objection to the form.

17         A.     I think I'm raising the question

18   of whether or not his interpretations may be

19   biased.  So you could say that I'm raising the

20   possibility that they might be

21   misinterpretations.

22         Q.     You're not saying there is a legal

23   problem with Mr. Uhlmann's opinions, are you?

24         A.     No, I'm not.

25         Q.     You're not saying that Mr. Uhlmann

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 258

1    is offering a fraudulent testimony, are you?

2                MS. JACKS:  Objection to the form.

3        A.      No, I am not.

4        Q.      You're not offering any opinion

5    that Mr. Uhlmann is offering misleading

6    testimony, are you?

7                MS. JACKS:  Objection to the form.

8        A.      I think my opinion raises the

9    possibility that it could be misleading based

10   on his conflict of interest.

11       Q.      And you understand Mr. Uhlmann is

12   a licensed attorney and an officer of the

13   court?

14       A.      I do understand that.

15       Q.      You cite the Rules of Professional

16   Responsibility in your opinion; is that

17   correct?

18       A.      That's correct.

19       Q.      Do you know what the Rules of

20   Professional Responsibility are for lawyers?

21       A.      I have a general --

22                MS. JACKS:  Objection to the form.

23       A.      I mean, I have a general idea.

24   I'm sure I've seen reference to it, but I'm

25   certainly not an expert on that.

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 263

1   me with the search.

2          Q.      He's the computational --

3          A.      Right.  The one we've already been

4   discussing.

5          Q.      -- physicist?  Is that what he is?

6          A.      Well, computational scientist and

7   astrophysicist originally.

8          Q.      And I know you already testified

9   you're not a lawyer, correct?

10          A.      (Nods.)

11          Q.      Have you ever taken any law

12  courses?

13          A.      No, I have not.

14          Q.      Are you trained in legal research?

15          A.      No.

16                 MS. JACKS:  Objection to the form.

17          A.      No, but I have done some legal

18  research, and I have used LexisNexis and

19  Westlaw.

20          Q.      Did you use it here?

21          A.      No, I did not.

22          Q.      Have you ever had a course in

23  legal professional responsibility?

24          A.      No, I have not.

25          Q.      Are you offering any legal

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 286

1    his actions can be determined to be quid pro

2    quo.

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 287



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com



Page 288

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 289



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 290



Naomi Oreskes , Ph.D.                September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 291



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 292



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 293



Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 303

6        Q.      Do you know the difference between

7    what permitting is and enforcement?

8        A.      Well, I think I do.

9        Q.      Can you explain it?

10       A.      Well, again, I'm not a lawyer, but

11   my understanding is a permit, as the word

12   suggests, permits a person or an entity to do

13   certain kinds of things.  And enforcement

14   implies that after the fact a regulatory

15   agency, or a state or local government, would

16   have the right to enforce the terms of that

17   permit or any other laws that might apply to

18   those activities.

19              So, in a sense, one is before, and

20   the other is after.

21       Q.      But you have no special regulatory

22   expertise on distinguish between permitting or

23   enforcement, correct?

24              MS. JACKS:  Objection to the form.

25       A.      I have no specific expertise about

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 304

1    permitting or enforcement.

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com



Naomi Oreskes , Ph.D.                     September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 307



Page 311

1    stake here, so I did not use them.

2              MR. HENDERSON:  Can we take a

3         five-minute break.

4              VIDEO TECHNICIAN:  The time is

5         4:38.  We're off the record.

6              (Proceedings recessed at

7         4:38 p.m., and reconvened at 4:53 p.m.)

8              VIDEO TECHNICIAN:  We are back on

9         the record.  The time is 4:53.

10   BY MR. HENDERSON:

11        Q.    Professor Oreskes, let's continue

12   moving.

13        A.    Yes.  Good idea.

14        Q.    I'm going to ask you a few things

15   I think I've already asked you.  I'm just

16   making sure.

17              You're not offering any opinions

18   about what best industry practice is under any

19   of these industrial stormwater permits,

20   correct?

21        A.    Correct.

22              MS. JACKS:  Objection to the form.

23        Q.    And you're not offering opinions

24   on best management practices under these

25   industrial stormwater permits, or even

Naomi Oreskes , Ph.D.                    September 9, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 312

1    generally in this case, you're not offering

2    opinions on best management practices, correct?

3              MS. JACKS:  Objection to the form.

4         A.    Correct.

5         Q.    You're not offering opinions on

6    good engineering practice, either, are you?

7              MS. JACKS:  Objection to the form.

8         A.    Correct.

9         Q.    Professor Oreskes, based on your

10   research of the fossil fuel industry or other

11   industries, has the energy industry ever

12   developed a consensus standard on how

13   facilities should evaluate climate risk?

14             I think you may have answered

15   this, but I just want to make sure.

16             MS. JACKS:  Objection to the form.

17        Calls for speculation.

18        A.    Not to my knowledge.

19        Q.    Do you know of any survey of how

20   industries have evaluated the climate risk on

21   their facilities?

22             MS. JACKS:  Objection to the form.

23        A.    I believe the reinsurance industry

24   has collected information on that sort, but I

25   don't really know for sure.