# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> Defendants. | Case No: 3:21-cv-00933-VDO <br><br><br> October 3, 2025 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE THE EXPERT TESTIMONY OF PHILLIP PASTERIS

Defendants Equilon Enterprises LLC (d/b/a Shell Oil Products US), Triton Terminaling LLC, and Motiva Enterprises LLC ("Defendants") attach the following Memorandum of Law and Facts in support of their Motion to Preclude the Expert Testimony of Phillip Pasteris, M.S., under Fed. R. Civ. P. 26 and Fed. R. Evid. 702 and 401–403.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................................ 1

II.   LEGAL STANDARD ..................................................................................... 3

III.  ARGUMENT ................................................................................................. 5

    **A.    The Court Should Exclude Mr. Pasteris's Testimony under Federal Rule of Civil Procedure 26** ........................................................................... 5

        1.    Mr. Pasteris's Report Consists Exclusively of Affirmative Opinions ...................................................................................... 5

            *a.    Second Circuit Law is Clear that Expert Rebuttal Testimony Must Not Be Used to Offer Affirmative Opinions* ............................................................................ 5

            *b.    Mr. Pasteris's Report is Rebuttal in Name Only* ............................. 7

        2.    Mr. Pasteris's Untimely Affirmative Opinions Are Not Substantially Justified or Harmless ............................................... 10

        3.    Mr. Pasteris's Improper Rebuttal Should Be Precluded ............................ 11

    **B.    Mr. Pasteris's Failure to Disclose Materials Underpinning His Opinions Renders Those Opinions Inadmissible** ............................................. 12

        1.    Mr. Pasteris Has Failed to Disclose Materials in His Possession Upon Which He Relies ............................................................. 13

        2.    Mr. Pasteris's Failure to Disclose These Materials Is Neither Substantially Justified Nor Harmless ............................................ 14

        3.    Mr. Pasteris's Failure to Disclose These Materials Also Provides Grounds for Preclusion ............................................................ 15

    **C.    The Court Should Exclude Mr. Pasteris's Testimony under Federal Rule of Evidence 702** ........................................................................... 16

        1.    Mr. Pasteris is Not Qualified to Offer the Opinions He Asserts in This Case .......................................................................... 16

        2.    Mr. Pasteris Failed to Use a Reliable Methodology to Form His Opinions .......................................................................... 17

Table of Contents (continued)

Page

a.    An Expert Opinion on "Best Industry Practice" Must Be Reliably Based on Data, Not Anecdote or Personal Experience............................................................................ 17

b.    Mr. Pasteris Fails to Cite Any Support for His Opinion that "Best Industry Practice" Requires Consideration of Extreme Precipitation Risks.......................................... 18

3.    Mr. Pasteris's Opinions Are Not Relevant to Any Fact at Issue in this Case ...................................................................... 21

**D.**    **The Court Should Exclude Mr. Pasteris's Testimony Under Federal Rule of Evidence 403**............................................... 28

IV.    CONCLUSION ....................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*,
 707 F. Supp. 3d 309 (S.D.N.Y. 2023)........................................................................................9

*Allen v. Koenigsmann*,
 No. 19-CV-8173 (LAP), 2023 WL 11803060 (S.D.N.Y. Mar. 30, 2023)..............................12

*Brink's Global Servs. USA, Inc. v. Bonita Pearl Inc., et al.*,
 No. 22-cv-6653, 2024 WL 4227760 (S.D.N.Y. Sept. 18, 2024) .............................................6

*Bustamante v. KIND*,
 LLC, 100 F.4th 419 (2d Cir. 2024)........................................................................................22

*Capri Sun GmbH v. American Beverage Corporation*,
 595 F. Supp. 3d 83 ...................................................................................................................6

*Chery v. Town of Enfield*,
 No. 3:19-CV-1952 (VDO), 2024 WL 4372386 (D. Conn. Oct. 2, 2024)...........................4, 11

*Connecticut Fair Hous. Ctr v. CoreLogic Rental Prop. Sols., LLC*,
 No. 18-CV-705, 2021 WL 1186604 (D. Conn. Mar. 30, 2021) .............................................22

*Conservation L. Found. v. Gulf Oil Ltd. P'ship*,
 No. 3:21-cv-00932 (SVN), 2022 WL 4585549 (D. Conn. Sept. 29, 2022)...........................26

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993).......................................................................................................*passim*

*Donaldson v. Grous*,
 No. 3:22-cv-810 (VDO), 2025 WL 1373741 (D. Conn. May 12, 2025).........................12, 16

*FAA v. Landy*,
 705 F.2d 624 (2d Cir. 1983), *cert. denied*, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232
 (1983)......................................................................................................................................24

*Foley v. United States*,
 294 F. Supp. 3d 83 (W.D.N.Y. 2018) ...................................................................................16

*Gen. Elec. Co. v. Joiner*,
 522 U.S. 136 (1997)...............................................................................................................18

*Hart v. BHH, LLC*,
 No. 15CV4804, 2018 WL 3471813 (S.D.N.Y. July 19, 2018)................................................9

*Hawley v. Hannaford Bros. Co LLC*,
　　No. 2:16-cv-00249, 2018 WL 3647202 (D. Vt. Aug. 1, 2018) ............................................18

*Jakobovits as Trustee of Lite Trust I v. PHL Variable Ins.*,
　　645 F. Supp. 3d 95 (E.D.N.Y. 2022) ....................................................................................6, 7

*Kunstler v. City of New York*,
　　242 F.R.D. 261 (S.D.N.Y. 2007) ...........................................................................................10

*Max Zach Corp. v. Marker 17 Marine*,
　　No. 3:23-CV-01088 (VDO), 2024 WL 4614487 ....................................................................4

*McCullock v. H.B. Fuller Co.*,
　　981 F.2d 656 (2d Cir. 1992)....................................................................................................16

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
　　293 F.R.D. 568 (S.D.N.Y. 2013) ............................................................................................13

*Colon ex rel. Molina v. BIC USA, Inc.*,
　　199 F.Supp. 2d 53 (S.D.N.Y. 2001)........................................................................................28

*Munn v. Hotchkiss Sch.*,
　　24 F. Supp. 3d 155 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018) ........18, 20, 21, 22

*Nimely v. City of New York*,
　　414 F.3d 381 (2d Cir. 2005)................................................................................................5, 22

*In re Paoli R.R. Yard PCB Litig.*,
　　35 F.3d 717 (3d Cir. 1994)......................................................................................................18

*Paulus v. Holimont, Inc.*,
　　315 F.R.D. 13 (W.D.N.Y. 2016).....................................................................................3, 10, 11

*Pugliano v. United States*,
　　315 F. Supp. 2d 197 (D. Conn 2004).......................................................................................24

*Reilly v. Natwest Mkts. Grp. Inc.*,
　　181 F.3d 253 (2d Cir. 1999).....................................................................................................4

*Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
　　282 F.R.D. 76 (S.D.N.Y. 2012) ...................................................................................... *passim*

*Snyder v. Wells Fargo Bank*,
　　N.A., 594 F. App'x 710, 713-714 (2d Cir. 2014)....................................................................22

*Suazo v. Ocean Network Express (N. Am.), Inc.*,
　　2023 WL 2330428 (S.D.N.Y. Mar. 2, 2023) ...........................................................................6

*TMI Tr. Co. v. WMC Mortg., LLC*,
No. 3:12-CV-1538 (CSH), 2017 WL 6617050 (D. Conn. Dec. 28, 2017) ..............................4

*Wang v. Omni Hotels Mgmt. Corp.*,
No. 3:18-CV-2000 (VDO), 2025 WL 1782264 (D. Conn. June 27, 2025) ..........................4

*Yazujian v. PetSmart*,
729 Fed. App'x 213 (3d Cir. 2018).........................................................18, 19, 24

STATUTES

Clean Water Act...............................................................................................1

Connecticut Coastal Management Act...........................................................................1

Resource Conservation and Recovery Act ..............................................................1, 2

OTHER AUTHORITIES

Fed. R. Civ. P. 26 ........................................................................................ *passim*

Fed. R. Civ. P. 37 ..................................................................................3, 11, 12

Fed. R. Evid. 403 ......................................................................................3, 5, 28

Fed. R. Evid. 702 ....................................................................................... *passim*

## I.     INTRODUCTION

In this case, Plaintiff Conservation Law Foundation's ("CLF") Complaint alleges that the

2018/2021 General Permit for the Discharge of Stormwater Associated with Industrial Activity

(the "2018/2021 Permit"),[1] issued under the Clean Water Act ("CWA") by the Connecticut

Department of Energy and Environmental Protection ("CT DEEP"), required Equilon Enterprises

LLC (d/b/a Shell Oil Products US), Triton Terminaling LLC, and Motiva Enterprises LLC

("Defendants") to consider various factors like sea level rise, increased precipitation, and

increased storm levels (alleged "Climate Change Factors") in developing and implementing the

Stormwater Pollution Prevention Plan ("SWPPP") for the New Haven bulk storage terminal (the

"Terminal"). *See, e.g.*, Am. Compl. (ECF 47) at ¶ 394. Yet nothing in the 2018/2021 Permit —

nor any other statute, regulation, or guidance—states such a requirement. Instead, CLF asserts

that this requirement is implied by references to "best industry practice."[2] CLF also asserts that

these same alleged failures violate the Resource Conservation and Recovery Act ("RCRA") by

allegedly creating an "imminent and substantial endangerment to human health or the

environment."

As a matter of law, the only issues in this case for the Court or the jury to decide (and for

experts to weigh in on) are: (1) whether the 2018/2021 Permit includes a requirement to consider

Climate Change Factors; and (2) whether failure to consider Climate Change Factors exactly as

CLF and its experts believe they should be considered constitutes a violation of the 2018/2021

---

[1] At the time this lawsuit was filed, the applicable permit was the 2018 General Permit.  In 2021, CT DEEP renewed the permit without any substantive changes.
[2] CLF also references the Connecticut Coastal Management Act. Am. Compl. at Count II, p. 79. However, this claim is also brought under the CWA and based on the same allegations upon which CLF brings its other CWA claims. *Id.* at ¶¶ 339, 403.

Permit and represents an "imminent and substantial endangerment to human health or the environment."

CLF disclosed Mr. Phillip Pasteris solely as a rebuttal expert. Accordingly his report, Mr. Pasteris's task was to "rebut the reports of Susan Parker Bodine, Craig Jones, Eric Kovich, and David Uhlmann which seek to minimize the projected impacts of climate on the Shell[3] Site and fail to account for the factors outlined in [Mr. Pasteris's] report." July 22, 2025 Rebuttal Report of P. Pasteris ("Rebuttal Report" or "Rep."), attached as Ex. A, at 1. Mr. Pasteris is a meteorologist and "former industry consultant." *Id*.

In that Rebuttal Report, Mr. Pasteris offers two primary opinions:

1) "Best Industry Practice requires [nonparty] Shell to consider and protect against reasonably foreseeable risks, including risks from climate change such as the increasing risk of extreme precipitation events." Rep. at 1.

2) "Climate change does in fact pose risks to the facility, including projected changes in precipitation extremes." *Id.*

He concludes his Rebuttal Report by stating, "Based on this data [regarding increased precipitation risks] and my background, education, and experience as a meteorologist in both the public and private sector – a reasonable terminal owner/operator in New Haven, CT, in the face of these trends would incorporate risks from climate change in its facility infrastructure plans and risk management protocols in order to be consistent with Best Industry Practices." *Id*. at 19.

Mr. Pasteris's opinions should be excluded under three separate rules:

---

[3] Mr. Pasteris expresses no opinions about the Defendants in this case, Equilon, Triton Terminaling, and Motiva. First and foremost, Shell plc is not a party to this case.  Plaintiff has not asserted any claims against Shell plc, nor has it sought to hold Shell plc liable under any theory.  *See* ECF 47; ECF 529. Any opinions regarding Shell plc's conduct, policies, or alleged operational control are wholly irrelevant to the liability or penalty determinations that must be made with respect to the actual Defendants.

*First*, Mr. Pasteris's opinions should be excluded under Rule 26 because (1) his testimony is actually late-disclosed affirmative opinions and (2) he failed to disclose key materials he considered in developing his opinions.

*Second*, Mr. Pasteris's opinions should be excluded under Rule 702 because (1) he is not qualified to testify as to the opinions he offers here, (2) he has failed to use a reliable methodology to support his opinion that "Best Industry Practice" requires performing a climate change analysis that includes an assessment of risks of extreme precipitation, and (3) his opinions are not relevant to any fact at issue in the case.

*Third*, Mr. Pasteris's opinions should be excluded under Rule 403 because all of his opinions are duplicative and cumulative of opinions offered by affirmative experts disclosed by CLF.

Accordingly, Defendants respectfully request the Court to preclude Mr. Pasteris's testimony.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the disclosure requirements for expert testimony. *See* Fed. R. Civ. P. 26(a)(2). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Paulus v. Holimont, Inc.*, 315 F.R.D. 13, 17 (W.D.N.Y. 2016) ("A party who fails to identify a witness as required by Rule 26 is not allowed to present that witness at trial unless the failure 'was substantially justified or is harmless.'"). If the proponent of the expert fails to demonstrate that the late disclosure was substantially justified or harmless, the Court then evaluates whether preclusion is appropriate by "consider[ing] 'the following factors: (1) the party's explanation for the failure to comply with

the discovery order; (2) the importance of the testimony of the precluded witness(es); (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" *Chery v. Town of Enfield*, No. 3:19-CV-1952 (VDO), 2024 WL 4372386, at *1 (D. Conn. Oct. 2, 2024) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 269 (2d Cir. 1999)).

As clarified by the recent amendments to Rule 702, as the proponent of the testimony, CLF bears the burden of proving that it is admissible by a preponderance of the evidence. *Wang v. Omni Hotels Mgmt. Corp.*, No. 3:18-CV-2000 (VDO), 2025 WL 1782264, at *2 (D. Conn. June 27, 2025). Federal Rule of Evidence 702 prohibits a witness who is qualified as an expert from testifying unless: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *Max Zach Corp. v. Marker 17 Marine*, No. 3:23-CV-01088 (VDO), 2024 WL 4614487, at *1 (this Court summarizing Fed. R. Evid. 702); *see also, e.g.*, Advisory Committee Note to 2023 Amendments to Rule 702 (explaining that "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology.").

The importance of the gatekeeping function "cannot be overstated" because expert testimony "can be both powerful and quite misleading because of [a jury's] difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (internal quotations omitted); *see also TMI Tr. Co. v. WMC Mortg., LLC,* No. 3:12-CV-1538 (CSH), 2017 WL 6617050, at *4 (D. Conn. Dec. 28, 2017) ("The principal target of *Daubert* and Rule 702 is

the professional expert witness—well educated, impeccably dressed, highly articulate—who dispenses cleverly packaged junk scientific or other specialized opinions to lay jurors.").  It follows that the proponent of the expert's opinions must also establish that they are admissible under Rule 403.  *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

## III.    ARGUMENT

Instead of specifically rebutting any of Defendants' experts, CLF pulled in Mr. Pasteris to inject yet another wave of affirmative opinions in the case, thus violating well established case law under the Federal Rules of Civil Procedure. Instead, Mr. Pasteris—without having any knowledge of the issues in this lawsuit—develops his own unsupported theories of what constitutes "Best Industry Practice" as well as what constitutes a "reasonable operator" of a Terminal, a term that does not appear anywhere in the Permit at issue in this lawsuit.

The Court should exclude Mr. Pasteris's opinions for three independent reasons. *First*, his report is procedurally improper under Rule 26 because it offers new affirmative opinions that were not disclosed with CLF's initial expert reports and omits key materials he considered. *Second*, his opinions are inadmissible under Rule 702 because he lacks relevant qualifications, applies no reliable methodology, and fails to tie his conclusions to the 2018/2021 Permit, the Terminal, or any established industry standard. *Third*, his testimony is cumulative of other CLF experts and should therefore be excluded under Rule 403.

### A.    The Court Should Exclude Mr. Pasteris's Testimony under Federal Rule of Civil Procedure 26

#### 1.    Mr. Pasteris's Report Consists Exclusively of Affirmative Opinions

##### a.    *Second Circuit Law is Clear that Expert Rebuttal Testimony Must Not Be Used to Offer Affirmative Opinions*

As a matter of well-settled law, expert rebuttal testimony is limited to "evidence [] intended solely to contradict or rebut evidence on the same subject matter identified by another

party under Rule 26(a)(2)(B) or (C)[.]" Fed. R. Civ. P. 26(a)(2)(D)(ii); *Capri Sun GmbH v. American Beverage Corporation*, 595 F. Supp. 3d 83, 140 (S.D.N.Y. (2022) (explaining that "the charge of a rebuttal expert" is "to criticize the analysis presented by another party") (citation modified). While a "rebuttal expert is permitted some leeway in how he or she explains, counteracts, repels, or disproves the opinion being rebutted," "a party may not use its rebuttal opportunity to 'correct oversights in [that] party's case in chief,' . . . or to offer new opinion that could and should have been included in its initial report." *Brink's Global Servs. USA, Inc. v. Bonita Pearl Inc., et al.*, No. 22-cv-6653, 2024 WL 4227760, at *6 (S.D.N.Y. Sept. 18, 2024) (quoting *Suazo v. Ocean Network Express (N. Am.), Inc.*, 2023 WL 2330428, at *11 (S.D.N.Y. Mar. 2, 2023)); *Jakobovits as Trustee of Lite Trust I v. PHL Variable Ins.*, 645 F. Supp. 3d 95, 106 (E.D.N.Y. 2022) (excluding expert testimony where the report "plainly contains assertions beyond those 'intended solely to contradict or rebut evidence' presented by defendant's experts" and where "[p]laintiff ha[d] not identified any reason why it did not submit an affirmative expert from" the expert or "advanced an argument that defendant was not prejudiced" by the late disclosure).

Assessing that a report is properly within the scope of rebuttal requires more than just taking the expert's or proponent party's word for it. As the Eastern District of New York recognized, "[n]othing in [Federal Rule of Civil Procedure 26(a)(2)(D)(ii)] suggests that a rebuttal expert may provide affirmative opinions merely by citing another party's expert[.]"). In *Jakobovits*, the plaintiff disclosed an expert nominally to rebut two of the defendant's experts. 645 F. Supp. 3d at 106. However, the court found that part of the report "only 'rebuts' [the opposing experts] in the broad sense that [those opposing experts] advance theories at odds with" the plaintiff's expert and, ultimately, excluded those opinions as improper rebuttal. *Id*.

### b.  Mr. Pasteris's Report is Rebuttal in Name Only

While Mr. Pasteris claims to be rebutting the expert testimony of Ms. Bodine, Dr. Jones, Mr. Kovich, and Mr. Uhlmann, Rep. at 1, he notably fails to cite any specific opinions or evidence raised by any of these experts at any point in stating his opinions. Indeed, a single sentence from his introduction—"I was asked to review and rebut the reports of Susan Parker Bodine, Craig Jones, Eric Kovich, and David Uhlmann which seek to minimize the projected impacts of climate on the [nonparty] Shell Site and fail to account for the factors outlined in this report."—is the *sole* reference to these experts in his entire report. *Id*.

In fact, Mr. Pasteris testified clearly that—for all of these experts—he merely skimmed their reports or has no opinions about what they say in those reports. For example, Mr. Pasteris admitted that he barely reviewed the Kovich and Uhlmann reports that he purports to rebut:

Q.  Did you in fact review the expert report of Mr. Kovich?

A.  I glanced at it but didn't do [an] active review worth charging time.

Q.  Same thing for Mr. Uhlmann did you in fact review Mr. Uhlmann's expert report?

A.  I looked at it but there was not a chargeable time for it.

Pasteris Dep. at 19:2–9. What's worse, he admitted to not knowing who either Mr. Kovich or Mr. Uhlmann were, what kind of experts they were, nor *what the substance of their reports was*:

Q.  Do you know who Eric Kovich is?

A.  No.

Q.  Do you know what kind of an expert he is?

A.  No.

Q.  Do you know what [the] substance of his report said?

A.  No.

Q.  What about Mr. Uhlmann, do you know what kind of an expert he is?

    A.  No.

    Q.  Do you know his background and training?

    A.  No.

    Q.  Do you know what his report contained opinion about?

    A.  No.

    Q.  With regards to Mr. Kovich, what were his opinions?

    A.  I do not know.

    Q.  So as you sit here today you don't know what Mr. Kovich's opinions were, the basis of those opinions, and the same goes for Mr. Uhlmann; is that fair?

    A.  They were not relevant to the report that I was writing.

*Id*. at 19:23–21:7 (objections omitted). Similarly, with regards to Ms. Bodine, Mr. Pasteris

testified to having "no opinion" on her report:

    Q.  Do you know who Susan Bodine is?

    A.  She was an author of one of the reports but I never met her, didn't do any research.

    Q.  Do you recall what her background or qualifications are?

    A.  Not without looking at the report.

    Q.  As you sit here today do you have any views on her report?

    A.  No opinion.

*Id*. at 96:22–97:6 (objection omitted). Finally, Mr. Pasteris admitted to having no opinions

regarding Mr. Jones's opinions:

    Q.  You indicated that you did review Dr. Jones's report; true?

    A.  True.

    Q.  And his report has his qualifications; true?

    A.  True.

    Q.  Any opinions about his qualifications that you intend to offer in this case?

     A.  None to offer.

     Q.  Any opinions about the methodology that Mr. Jones used in connection with his report?

     A.  None to offer.

*Id.* at 98:10–22 (objections omitted).

     Mr. Pasteris also did not review any of the deposition testimony of any of these experts that he is purporting to rebut:

     Q.  Did you review any testimony in this case?

     A.  Not that I recall, no.

     Q.  Were you aware that there has been testimony taken in this case?

     A.  No.

     Q.  Did you ask to see any testimony in this case?

     A.  No.

*Id*. at 17:18-25. Again, contrary to Rule 702 and Rule 26, instead of critiquing the methodologies and conclusions used by these various experts, Mr. Pasteris, instead, merely asserts his own affirmative opinions, which clear law plainly prohibits for a rebuttal expert. *Hart v. BHH, LLC*, No. 15CV4804, 2018 WL 3471813, at *9 (S.D.N.Y. July 19, 2018)  ("[t]he scope of a  rebuttal is limited to the same subject matter encompassed in the opposing party's expert report, and a rebuttal expert report *is not the proper place for presenting new legal arguments*, unless presenting those arguments is substantially justified and causes no prejudice.") (internal quotations omitted; emphasis added); *see also In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, 707 F. Supp. 3d 309, 363 (S.D.N.Y. 2023) ("A rebuttal report generally provides an expert the opportunity to respond to criticisms of the original report by the other experts or provide an

update should new science have emerged in the interim. A rebuttal report *is not the proper avenue to introduce entirely new analyses or opinions*.") (emphasis added).

### 2. Mr. Pasteris's Untimely Affirmative Opinions Are Not Substantially Justified or Harmless

Mr. Pasteris's late-disclosed opinions are neither substantially justified nor harmless. As a matter of law, "[s]ubstantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Paulus*, 315 F.R.D. at 17 (quoting *Kunstler v. City of New York*, 242 F.R.D. 261, 264–65 (S.D.N.Y. 2007)). "Harmlessness means an absence of prejudice." *Id*. (quoting *Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 159 (S.D.N.Y. 2012)) "The party that failed to comply with its discovery obligations bears the burden of proving that its failure was both substantially justified and harmless." *Id*. (quoting *Coene v. 3M Co.*, 303 F.R.D. 32, 44 (W.D.N.Y. 2014)).

Here, CLF offers no explanation for disclosing Mr. Pasteris as a rebuttal expert rather than disclosing him alongside their other affirmative experts on the affirmative report deadline. Indeed, the meaning of the 2018/2021 Permit and, specifically, what "Best Industry Practice" entails are the primary issues in this case and specifically highlighted in CLF's complaint, so CLF clearly knew it would need testimony to inform the jury on the topic. Accordingly, the untimely disclosure of Mr. Pasteris is not substantially justified.

In addition, CLF cannot say that Defendants will suffer no prejudice by this late disclosure. By the time CLF disclosed Mr. Pasteris, Defendants' one and only opportunity to disclose expert testimony had passed. *See* Scheduling Order (ECF 661; approved at ECF 662). From a procedural perspective, Defendants did not have the opportunity to rebut Mr. Pasteris's testimony with expert testimony of their own. Worse still, Mr. Pasteris cites factual evidence that

was not previously produced by CLF and/or that Defendants had no opportunity to respond to including some evidence that he still refuses to produce. *See infra* Section III.B.

Given the foregoing, CLF's late disclosure of Mr. Pasteris is neither substantially justified nor harmless and the Court must next consider whether preclusion is appropriate.

### 3. Mr. Pasteris's Improper Rebuttal Should Be Precluded

Under Rule 37(c)(1), improper expert rebuttal testimony should be precluded upon consideration of four factors, including (1) the party's reason for failing to comply with discovery deadlines, (2) the importance of the at-issue expert's testimony, (3) the prejudice the opposing party would experience by having to prepare to oppose the testimony, and (4) whether a continuance is possible. *Chery*, 2024 WL 4372386, at *1. All four factors weigh in favor of preclusion.

*First*, as noted above, CLF failed to offer any explanation for its late disclosure of Mr. Pasteris. Nor is there any realistic justification for Mr. Pasteris's late disclosure given that CLF has long identified the meaning of "Best Industry Practice" as a central issue in its claims. *See supra* Section III.A.2.

*Second*, Mr. Pasteris's testimony is hardly necessary to CLF's case. Indeed, Mr. Pasteris is one of many experts disclosed by CLF who purport to testify about the meaning of the 2018/2021 Permit and "Best Industry Practice," along with being one of multiple experts to testify about precipitation risks, including Goldsmith and Barlow. *Paulus v. Holimont, Inc.*, 315 F.R.D. 13, 17 (W.D.N.Y. 2016) (finding late disclosed expert testimony was not sufficiently important to weigh against preclusion where another expert disclosed by the same party testified on the same topic). As discussed in more detail below, even if Mr. Pasteris's testimony was not cumulative, which it is by every measure, it ultimately would not assist the jury because he fails to actually offer helpful or relevant testimony. *See infra* Section III.C.3.

11

*Third*, as noted above, Defendants are certainly prejudiced by the late disclosure because they now have no opportunity to rebut Mr. Pasteris's untimely affirmative opinions. *See supra* Section III.A.2.

*Fourth*, a continuance of the deadlines in this case would be improper.  This case has been pending for four years, during which time the parties have conducted extensive discovery. Both fact and expert discovery are now closed, and all expert depositions have been completed. Reopening expert discovery at this point would prejudice Defendants and would result in a waste of judicial resources. *See Donaldson v. Grous*, No. 3:22-cv-810 (VDO), 2025 WL 1373741, at *12 (D. Conn. May 12, 2025) (striking late disclosed expert testimony under Rule 37(c)(1); "This action has remained unresolved for many years, and the machinery of trial is far along.  To extend the trial date further still would unnecessarily delay the resolution of this action and thus would not serve the ends of justice.").

For these reasons, Mr. Pasteris's improper rebuttal testimony should be precluded.

**B.     Mr. Pasteris's Failure to Disclose Materials Underpinning His Opinions Renders Those Opinions Inadmissible**

Mr. Pasteris also runs afoul of Rule 26 by failing to produce relevant materials supporting his opinons. Federal Rule 37(c)(1) applies to all disclosure requirements under Rule 26(b)(2), not just the timely identification of experts. *Allen v. Koenigsmann*, No. 19-CV-8173 (LAP), 2023 WL 11803060, at *4–5 (S.D.N.Y. Mar. 30, 2023) (precluding expert report and testimony under Rule 37(c)(1) where party failed to disclose specific documents considered by expert, holding that such nondisclosure prejudiced the opposing party's ability to test the reliability of the expert's opinions and warranted sanctions). This includes the disclosure of materials considered by the expert in forming his or her opinions. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 574 (S.D.N.Y. 2013) ("an expert report must contain all 'the facts or data

considered by the [expert] in forming' the opinions that the expert is to offer.") (quoting Fed. R. Civ. P. 26(b)(2)(B)(ii)). Contrary to the requirements of the Federal Rules of Civil Procedure, Mr. Pasteris failed to disclose materials which he considered in forming his opinions and which appear to partially form the basis of his "Best Industry Practice" opinion. As discussed below, this failure supports preclusion of Mr. Pasteris's opinions.

### 1.    Mr. Pasteris Has Failed to Disclose Materials in His Possession Upon Which He Relies

Mr. Pasteris has failed to provide relevant materials in his possession regarding one of the three pieces of evidence he cites in support of his "Best Industry Practice" opinion. Specifically, in his report, to state that consideration of Climate Change Factors is part of "Best Industry Practice" under the 2018/2021 Permit, Mr. Pasteris cites to a 2009 roundtable where he claims that various industry members, including an unidentified Shell representative, learned of "potential impacts across the oil and gas value chain and identified innovative ways in which businesses have, and can, design resiliency to the anticipated physical impacts that will result from climate change." Rep. at 4–5. However, Mr. Pasteris failed to provide any materials actually used or shown at the roundtable, despite having those materials in his possession:

Q.  And have you provided the materials from the 2009 roundtable to counsel for CLF?

[A.] Not that I'm aware of.

Q.  But you personally have those materials?

A.  I have those materials.

Pasteris Dep. at 101:6–12 (objections omitted).

In particular, Mr. Pasteris references a PowerPoint which summarized the topics covered in the roundtable that, by Mr. Pasteris's assertion, at least partially established the consideration of Climate Change Factors as a part of "Best Industry Practice":

*Id*. at 104:7–13 ("A. What happened was my assessments of ambient air temperature, length of season for the summer, sea, ice, thickness and coverage, snow depth and coverage on page 6, each one of these 12 topics were in depth and analyzed and presented in a PowerPoint. And then they were taken by Jan Dell and translated into these five things that you talked about a minute ago."). In addition, he failed to produce an attendance list, also within his possession, that he claims includes an unnamed representative from non-party "Shell." *Id*. at 120:22-121:10 (describing email that contained a "roundtable follow-up discussion" and "some of the attendees," including non-party "Shell").

### 2.    Mr. Pasteris's Failure to Disclose These Materials Is Neither Substantially Justified Nor Harmless

As with the untimely disclosure of Mr. Pasteris's testimony, when assessing the failure to disclose materials considered by Mr. Pasteris, the Court must first consider whether the failure to disclose is substantially justified or harmless. Here, it is neither.

*First*, Mr. Pasteris's failure to disclose these materials is not substantially justified. When asked if he would provide those materials, he cited potential confidentiality concerns regarding other clients:

Q.  Is that something you would be willing to provide to counsel for CLF?

A.  I'd say the following. It is a private client, ConocoPhillips was, so I don't know what the procedure would be.

Pasteris Dep. at 101:13–17; *see also id. at* 102:6–11 ("[F]irst of all, with a private client there's several steps to this. One is the CH2M Hill company that was, you know, in charge of this. I've not released anything from CH2M Hill to anybody previously. So you've got a step here CH2M Hill, then Conoco, and moving on.").

However, Mr. Pasteris has not cited to any specific confidentiality or non-disclosure agreements which would bar disclosure of these materials. Nor has he indicated any effort to verify whether these materials should not be disclosed.

*Second*, the failure to disclose is not harmless. Mr. Pasteris explained in his deposition that the PowerPoint he described details the information provided to these oil and gas companies, information that, in his opinion, contributed to "Best Industry Practice." Pasteris Dep. at 104:7–13; Rep. at 4–5. In addition, the number and identities of other attendees at the roundtable is also relevant; indeed, if only a very small number of oil and gas companies operating facilities like the Terminal were represented at this roundtable, that would further weigh against the idea that this roundtable could have contributed to "Best Industry Practice."

Accordingly, as the failure to disclose this PowerPoint is neither substantially justified nor harmless, the Court should next consider preclusion.

### 3. Mr. Pasteris's Failure to Disclose These Materials Also Provides Grounds for Preclusion

The same four factors that weigh in favor of preclusion of Mr. Pasteris's opinion in total given his untimely disclosure weigh in favor of precluding Mr. Pasteris's "Best Industry Practice" opinion due to his failure to disclose critical materials.

*First*, as noted above, Mr. Pasteris and counsel for CLF have yet to provide any evidence to suggest that Mr. Pasteris's worries about confidentiality are justified. *See supra* Section III.B.2.

*Second*, as explained above, Mr. Pasteris's "Best Industry Practice" opinion is not necessary to the case because, CLF disclosed multiple experts intending to provide their own opinions regarding "Best Industry Practice," including Goldsmith, Nairn, and Horner. *See supra* Section III.A.3.

15

*Third*, again, as noted above, Defendants are unduly prejudiced for not being able to see for themselves what exactly Mr. Pasteris presented to the roundtable attendees rather than relying on his description of that presentation 14 years after the fact or his account of who attended. Allowing Mr. Pasteris to proffer opinions based on documents that no one else has access to would mean Defendants would be precluded from cross-examining Mr. Pasteris as to the basis for his opinions, a result contrary to the Rules.

*Fourth*, as noted above, a continuance would be inappropriate in this case. *See supra* Section III.A.3; *see also Donaldson*, 2025 WL 1373741, at *12.

### C.    The Court Should Exclude Mr. Pasteris's Testimony under Federal Rule of Evidence 702

#### 1.    Mr. Pasteris is Not Qualified to Offer the Opinions He Asserts in This Case

An expert "must have relevant experience and qualifications such that whatever opinion he will ultimately express would not be speculative." *Foley v. United States*, 294 F. Supp. 3d 83, 91 (W.D.N.Y. 2018); *see McCullock v. H.B. Fuller Co.*, 981 F.2d 656, 657 (2d Cir. 1992) (finding that while a witness might have expertise in other disciplines, "[t]he adequacy of the warning labels was at issue, and Woolley is not an expert in that field because he lacks training or experience in chemical engineering, toxicology, environmental engineering, or the design of warning labels").

Mr. Pasteris's first opinion focuses on the meaning of the term "Best Industry Practice" as used in the 2018/2021 Permit. *See* Rep. at 1. However, Mr. Pasteris knows nothing about the 2018/2021 Permit or, indeed, stormwater permits more generally. By his own admission, he has no experience reviewing any SWPPPs in any state, including Connecticut:

Q.  Have you ever reviewed any Connecticut SWPPPs?

A.  No.

Q. Have you ever signed any permits in Connecticut?

A. No.

Q. Have you ever worked on any Connecticut industrial stormwater permits in Connecticut?

A. No.

Q. Have you ever signed any industrial permits in any state?

A. No.

Q. Have you signed any SWPPPs in any state?

A. No.

Q. Have you ever worked with the EPA or Connecticut DEEP in connection with stormwater permits?

A. No.

Pasteris Dep. at 34:13–35:5 (objections omitted). In fact, Mr. Pasteris readily agreed that the "regulatory requirements for a stormwater permit in Connecticut" are outside of his expertise. *Id.* at 35:6–9 ("Q. Would you say that the regulatory requirements for a stormwater permit in Connecticut are outside of your expertise? A. Yes."). Accordingly, by his own admission, Mr. Pasteris lacks the relevant qualifications to comment on the meaning of the 2018/2021 Permit.

### 2. Mr. Pasteris Failed to Use a Reliable Methodology to Form His Opinions

#### a. An Expert Opinion on "Best Industry Practice" Must Be Reliably Based on Data, Not Anecdote or Personal Experience

As explained by the Supreme Court, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). With regards to industry practices, as the District of Connecticut has held, while an industry "standard of care, practice, policy or custom need not be set down in writing, when an expert offers his

opinion to determine that standard, his opinion must be based in fact or data, must employ sound methods, and must apply those facts and methods to the instant litigation." *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 207 n.34 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018). The Court held in *Munn* that an expert proffered to testify about industry standards instead "gave unsupported personal lay opinions disguised as industry standards" where he based his opinions not on surveys of relevant industry members, but instead on his own "individual practice" and "anecdotal conversation with only a handful of" industry members. *Id*. at 201, 203.

In addition, the Third Circuit, in a decision cited by the District of Vermont,[4] affirmed the exclusion of expert testimony regarding best industry practices because that expert's opinions were "based on a review of unspecified retail manuals," the expert "provided no factual basis for why these manual were relevant, while others were not," "there was no evidence that this method was tested, accepted, or used by other experts in the field," and the expert "did not even review the safety manual or policies of the [] store at issue in this case." *Yazujian v. PetSmart*, 729 Fed. App'x 213, 216 (3d Cir. 2018). Accordingly, the Third Circuit held that the "testimony would have constituted no more than 'subjective belief or unsupported speculation[.]'" *Id*. (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)).

> **b.** **Mr. Pasteris Fails to Cite Any Support for His Opinion that "Best Industry Practice" Requires Consideration of Extreme Precipitation Risks**

Mr. Pasteris identifies three sources in support of his "Best Industry Practice" opinion: (1) a 2008 roundtable; (2) a 2010 paper; and (3) his own work performing climate change analyses for ConocoPhillips. Rep. at 4–7; Pasteris Dep. at 72:9–16; 73:16–17. Yet none of these sources is evidence that consideration of extreme precipitation risks is a part of industry practice for

---

[4] *See Hawley v. Hannaford Bros. Co LLC*, No. 2:16-cv-00249, 2018 WL 3647202, at *4 n. 4 (D. Vt. Aug. 1, 2018).

SWPPP compliance for facilities like the Terminal and he refuses to produce any information about the ConocoPhillips project.

*First*, neither the roundtable nor the paper Mr. Pasteris cites establishes "Best Industry Practice." In his report, Mr. Pasteris cites two sources which he implies demonstrate that consideration of extreme precipitation risks is a part of "Best Industry Practice": a "2009 Climate Adaptation Roundtable" where he spoke to various oil and gas industry members in Brazil, and a "2010 Paper Regarding Projected Impacts, Opportunities and Risks in Global Oil and Gas Value Chain" that he co-authored. Rep. at 4–5.

But like the expert in *Yazujian*, Mr. Pasteris does not explain why he chose these sources in particular as representative of "Best Industry Practice," a failure that renders his opinion pure *ipse dixit*. *Yazujian*, 729 Fed. App'x at 216 (The expert "provided no factual basis for why these manuals were relevant, while others were not" and, as such, "his testimony would have constituted no more than 'subjective belief or unsupported speculation[.]'"). In short, just because Mr. Pasteris says something is "Best Industry Practice" does not make it so.

*Second*, Mr. Pasteris's reference to his prior assessment work for ConocoPhillips is similarly unreliable. In his report, Mr. Pasteris only refers generally to his work "with a variety of companies regarding climate change adaptation at their facilities," "includ[ing] oil and gas assets[.]" Rep. at 6. However, during his deposition, he clarified that he performed "climate change" analyses for one oil and gas company, ConocoPhillips. Pasteris Dep. at 72:9–16 (testifying that the bulk oil fuel terminal facilities he evaluated "were owned by ConocoPhillips"), 73:16–17 ("A. So my work was climate analysis of climate risk to the facilities."), 77:19–22 ("Q. Other than the work that you did for ConocoPhillips have you done any other work for bulk storage fuel terminal facilities? A. No."). Mr. Pasteris further testified

that for this project while he looked at FEMA floodplain maps to perform climate change assessments for ConocoPhillips, he did no other modeling and, indeed, did <u>not</u> calculate precipitation risks for those facilities because "[t]hat was not requested." *Id.* at 76:12–20 ("Q. . . . You indicated that you did a 100 year flood storm modeling for that project? A. I did no modeling. I interpreted the FEMA maps. Q. Okay. In addition to interpreting the FEMA maps did you use any other modeling for purposes of that project? . . . . [A.] No."); 77:16–18 ("Q. And did your report also calculate precipitation risks related to those facilities? A. That was not requested."). In other words, while Mr. Pasteris asserts that his prior experience for ConocoPhillips indicates that "Best Industry Practice" for bulk oil and gas storage terminals includes performing climate change analyses that include assessments of extreme precipitation risks, his prior analyses did not actually include any such assessment.

Even if they had, a sample size of one is insufficient to establish "best industry practice." *Munn*, 24 F. Supp. 3d at 204 ("Regardless what sample size would be sufficient to establish an industry-wide standard of care, a single observation from one other school is insufficient."). Mr. Pasteris performed climate change analyses for only one company. He never reviewed surveys of oil and gas bulk storage terminals or attempted to identify any consensus statements from oil and gas storage terminals:

> Q.  Have you reviewed any government survey related to bulk oil storage terminals?
>
> A.  No.
>
> Q.  Have you reviewed any private surveys related to bulk oil storage terminals?
>
> A.  No.
>
> Q.  Have you reviewed any state survey related to bulk oil storage terminals?
>
> A.  Without the context of survey and definition I can't answer that question.

20

Q.  Have you done any study for purposes of your opinion in this case on any consensus statements from any oil and gas storage terminal facilities?

A.  No.

Q.  Did you look for any consensus statements with regards to your opinions in this case?

A.  No.

Pasteris Dep. at 108:25–109:16, 109:20–110:7 (objections omitted).

Worse still, Mr. Pasteris made no attempt to ascertain what any other member of the industry was doing, going so far as to say it was irrelevant to his opinions:

Q.  Was it important for you to know what other bulk oil terminals in the State of Connecticut were doing as part of your preparation and work in this case?

A.  It was not relevant to my report.

Q.  And so as a result you did not undertake to try and ascertain what other bulk oil terminal facilities in the State of Connecticut were doing?

A.  Correct.

Pasteris Dep. at 24:25–25:8. Indeed, he didn't even try to ascertain what any of the other terminals in the Port of New Haven were doing. *Id*. at 23:25-24:5 ("Q. As part of your preparation in this case, did you undertake to try and ascertain whether or not there were other bulk oil terminal facilities in New Haven Harbor? . . . A. No.").

Just as in *Munn*, Mr. Pasteris's failure to review or assess industry practice more systematically and his reliance, instead, on his own personal practice makes his opinions here "unsupported personal lay opinions disguised as industry standards" which should be precluded. *Munn*, 24 F. Supp. 3d at 201, 203. Accordingly, as Mr. Pasteris fails to use a clear or reliable methodology to assess the bounds of "Best Industry Practice," his testimony should be precluded.

**3.    Mr. Pasteris's Opinions Are Not Relevant to Any Fact at Issue in this Case**

To be admissible, expert testimony must be relevant and help the jury decide facts at issue in the case. *Nimely*, at 397 ("Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'"). Mr. Pasteris's testimony is not relevant or helpful to the jury as it will not assist it in deciding any claim at issue. *See Bustamante v. KIND*, LLC, 100 F.4th 419, 430 (2d Cir. 2024) (affirming district court's decision to exclude expert testimony because it was "not relevant to the task at hand.") (internal quotations and citations omitted); *see also Snyder v. Wells Fargo Bank*, N.A., 594 F. App'x 710, 713–714 (2d Cir. 2014) ((affirming exclusion of expert testimony as irrelevant and improper where the opinion lacked foundation in the defendant's policies or established industry practice, and was instead based solely on the expert's prior employer and the facts of the case itself.)); *Connecticut Fair Hous. Ctr v. CoreLogic Rental Prop. Sols., LLC*, No. 18-CV-705, 2021 WL 1186604, at *5 (D. Conn. Mar. 30, 2021) ("Because this conclusion reached by [the expert] is no longer relevant, it will not help the trier of fact and is inadmissible.").

> a. ***Mr. Pasteris's "Best Industry Practice" Opinion Does Not Help the Jury Determine the Scope of Defendants' Obligations Under Their 2018/2021 Permit***

Mr. Pasteris's first opinion states that "Best Industry Practice requires [nonparty] Shell to consider and protect against reasonably foreseeable risks, including risks from climate changes such as increasing risk of extreme precipitation events." Rep. at 1.

*First*, although Mr. Pasteris claims to offer opinions about the scope of the 2018/2021 Permit and "Best Industry Practice" under the SWPPP, he has *not* reviewed the 2018/2021 Permit itself, any related fact sheets, or any site-specific regulatory materials:

Q.  Did you review the permit, sir?

A.  It was part of the Jones report so when I read the report I saw it; but review, I did not.

Q. Other than seeing references to the 2018 permit in the Jones report did you actually look at the 2018 permit?

A. It was outside the scope of my report.

Q. Did you review the 2021 permit?

A. It was outside the scope of my report.

Q. Did you review the 2024 draft permit?[5]

A. Outside the scope of my report.

Q. Did you actually review the permit?

A. No.

Q. Did you review any of the fact sheets related to the 2018 industrial permit in this case?

A. No.

Q. Did you review any of the fact sheets related to the 2021 industrial stormwater permit in this case?

A. No.

Pasteris Dep. at 29:1–31:13.

Without knowing what the 2018/2021 Permit actually says, Mr. Pasteris's testimony cannot assist the jury in determining what obligations the 2018/2021 Permit imposes. *See id.* at 35:6–9 ("Q. Would you say that the regulatory requirements for a stormwater permit in Connecticut are outside of your expertise? A. Yes."). Moreover, his opinion on "Best Industry Practice" is not grounded in any reliable methodology or industry-wide data, but instead reflects his own subjective views. *See supra* Section III.C.2.

As such, his testimony lacks both relevance and reliability and should be excluded under Rule 702. *Yazujian*, 729 Fed. App'x at 216 (holding that expert's industry standard "testimony

---

[5] On October 1, 2025, CT DEEP issued a final permit, herein, the "New Permit."

would have constituted no more than 'subjective belief or unsupported speculation,' . . . and would not assist the jury in understanding or determining a fact in issue, as required under Rule 702 and *Daubert*"); *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983) (excluding expert opinion concerning industry practice and FAA policy because it was "irrelevant to the jury's determination of violations of the regulations"), *cert. denied*, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983)).

> **b.    *Mr. Pasteris's Precipitation Risk Opinion Is Not Specific to the Terminal and Not Limited To the Near Term Duration of the 2018/2021 Permit***

Even if Mr. Pasteris's opinion regarding climate change-associated precipitation risks were relevant (as discussed, it is not), his failure to assess any specific impacts on the Terminal render his opinion further irrelevant.

An expert's testimony is only admissible if, among other things, it "'reflects a reliable application of the principles and methods to the facts of the case,' i.e., the so-called 'fit' requirement." *Pugliano v. United States*, 315 F. Supp. 2d 197, 202 (D. Conn 2004). Here, Mr. Pasteris fails to apply his opinions regarding extreme precipitation risks to the actual Terminal. As Mr. Pasteris admits, he has done no work to determine how these risks might specifically affect the Terminal:

> Q.  . . . My understanding is [] that one of your opinions has to do with increased precipitation in the Northeast region; true?
>
> A.  Correct.
>
> Q.  And even though you have that opinion you haven't applied that opinion as to what impact it may have on the actual facility, your opinion is related to the increase in precipitation; true?
>
> A.  That is correct.

Pasteris Dep. at 99:12–20. Indeed, when asked by Defendants' counsel, Mr. Pasteris could not correctly identify where the Terminal was on a map:



Exhibit 4 to Pasteris Dep., attached as Ex. C (depicting Mr. Pasteris and, later, CLF's counsel's incorrect attempts to locate the Terminal). Nor is the identification of the wrong facility meaningless since most flood models show a greater impact to terminals located directly on the waterfront versus ones like Defendants:



Exhibit 6 to Pasteris Dep, attached as Ex. D (showing the CIRCA Viewer modeling results for

the Terminal). Mr. Pasteris even testified that he had never been to New Haven. Pasteris Dep. at

21:23-24.  And, since his testimony relates to precipitation, one would have anticipated that he

would have checked to see if the Terminal had any history of flooding.  But he did not do that

either. *Id.* at 37:1-38:25.

Similarly, despite prior rulings limiting CLF's standing to assert claims related to the near

term risks during the time period of the 2018/2021 Permit, *see Conservation L. Found. v. Gulf

Oil Ltd. P'ship*, No. 3:21-cv-00932 (SVN), 2022 WL 4585549, at *7 (D. Conn. Sept. 29, 2022),

Mr. Pasteris was unprepared and unable to limit his opinions on precipitation opinions to the

duration of the term of the 2018/2021 Permit. Pasteris Dep. at 89:8-22. As such his opinions also do not fit the contours of this case in that regard either.

As Mr. Pasteris's testimony cannot help the jury to decide any issue specific to the Terminal, his testimony is not admissible.

### c.      Mr. Pasteris Does Not Know Who the Defendants Are

In addition to not knowing the location of the Terminal, Mr. Pasteris does not know who the actual Defendants are:

Q. Do you have an understanding who Equilon Enterprises is?

A. No.

Q. Do you have an understanding as to who [] Triton Terminaling is?

A. No.

Q. Do you have an understanding as to who Motiva Enterprises is?

A. No.

Q. Do you have an understanding as to who it is who owns the terminal that's at issue in this case?

A. I assume it's Shell, however, it may be any of the people that you mentioned previously.

Pasteris Dep. at 25:9–24. This is significant given Mr. Pasteris's implication that Defendants should have undertaken climate change assessments in part based on non-party "Shell's" participating in the 2009 roundtable, specifically implying that "Shell" should have known that the topics covered in that roundtable were "Best Industry Practice." *See supra* Section III.C.2. Even if it were true that the 2009 roundtable made it such that any attendee should have immediately begun implementing the practices discussed (it is not, as discussed above in Section III.C.2 and III.C.3.a), then the fact that Mr. Pasteris has no clue who any Defendant is here

means that he cannot say that any Defendant attended the roundtable or otherwise should have known what was presented.

### D.    The Court Should Exclude Mr. Pasteris's Testimony Under Federal Rule of Evidence 403

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, Mr. Pasteris's testimony is needlessly cumulative. "Expert testimony presents no exception to [the] general rule" that courts may exclude "needlessly cumulative" evidence under Rule 403. *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F.Supp. 2d 53, 96 (S.D.N.Y. 2001). Here, as explained above, Mr. Pasteris is one of several experts disclosed by CLF to offer the opinion that "Best Industry Practice" requires performing a climate change assessment that considers risks of extreme precipitation, including Goldsmith, Horner, and Nairn. In addition, Mr. Pasteris is one of multiple experts disclosed by CLF who offers opinions attempting to characterize precipitation risks, including Goldsmith and Barlow. Accordingly, Mr. Pasteris's testimony should be precluded under Rule 403.

## IV.    CONCLUSION

The Court should exclude Mr. Pasteris's opinions because they are improper rebuttal, and because Plaintiff cannot satisfy its burden of showing that, "more likely than not," they satisfy the prerequisites for admissibility under Rules 702 and 403 and *Daubert*.

Dated: October 3, 2025                                  Respectfully submitted,

                                                    */s/ Douglas A. Henderson*
                                                    Douglas A. Henderson (phv05547)
                                                    Carmen R. Toledo (phv20194)
                                                    King & Spalding, LLP
                                                    1180 Peachtree Street, N.E.
                                                    Atlanta, GA 30309

T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com