# Exhibit B

Page 1

1                IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF CONNECTICUT

3                       No. 3:21-cv-00933-JAM

4        CONSERVATION LAW FOUNDATION, INC.,    )
                                               )
5                    Plaintiff,                )
            vs.                                )
6                                              )
         SHELL OIL COMPANY, EQUILON            )
7        ENTERPRISES LLC D/B/A SHELL OIL       )
         PRODUCTS US, SHELL PETROLEUM INC.,    )
8        TRITON TERMINALING LLC, and MOTIVA    )
         ENTERPRISES, LLC,                     )
9                                              )
                     Defendant.                )
10       _____)

11

12

13

14              VIDEOTAPED DEPOSITION OF

15                  PHILLIP PASTERIS

16          Taken in behalf of Defendants

17                  *    *    *

18              September 3, 2025

19

20                  Portland, Oregon

21

22

23

24       Priscilla (Pia) Harris, CCR

25       Court Reporter

Phillip Pasteris                September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 2

```
1                       APPEARANCES:
2      For the Plaintiff:
3         MOTLEY RICE LLC
          By: Ridge Mazingo
4         5th Floor
          40 Westminster Street
5         Providence, RI   02903
          (843)216-9620
6         rmazingo@motleyrice.com
7
       For the Defendant:
8
          WIGGIN and DANA LLP
9         By: James O. Craven
          One Century Tower
10        265 Church Street
          New Haven, CT   06510
11        (203)498-4361
          jcraven@wiggin.com
12
13     Also Present:
14        LINDA SINGER, Motley Rice, LLC (Via Zoom)
          MIKE PENDELL, Motley Rice, LLC (Via Zoom)
15        DEVIN WILLIAMS, Videographer
16
17
                         INDEX
18
       EXAMINATION BY:                        PAGE NO.
19
       MR. CRAVEN.................................4,128
20
       MR. MAZINGO...............................120
21
22
23
24
25
```

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

1                          EXHIBITS

2    Exhibit 1    Notice of Deposition/RFP.......................7

3    Exhibit 2    Spreadsheet, PPASTERIS 00000..................12

4    Exhibit 3    Expert Rebuttal Report of Phillip Pasteris.....18

5    Exhibit 4    Aerial View of Facility.......................22

6    Exhibit 5    UCONN Article - Connecticut Sea Level Rise
                  and Storm Surge Viewer........................46
7
     Exhibit 6    Connecticut Shoreline 100 Year Event - Aerial
8                 Photographs...................................47

9    Exhibit 7    US EPA SPCC Field Inspection and Plan
                  Review Checklist..............................61
10
     Exhibit 8    Natural Hazard Risk Assessment Guidance for
11                Marine Oil Terminals, December 2024...........110

12   Exhibit 9    NY State Petroleum Terminal Resiliency
                  Assessment, Final Report - March 2014.........110
13
     Exhibit 10   Supplement Fact Sheet - March 2024............111
14
     Exhibit 11   National Pollutant Discharge Elimination
15                System - General Permit for the Discharge of
                  Stormwater Associated with Industrial
16                Activity Fact Sheet...........................114

17   Exhibit 12   Supplement Fact Sheet - December 2024.........116

18

19                          *    *    *

20

21

22

23

24

25

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 17

1       A    Yes, references.

2       Q    And you saw that in the reports that you

3   reviewed; correct?

4       A    Yes.

5       Q    Did you actually review the references and

6   each of the reports that you reviewed, or were you

7   just reviewing the content of the written report?

8       A    I can't -- I can't recall that I checked

9   every reference.

10      Q    Did you check some of the references?

11      A    Some.

12      Q    Okay.  Did you review the references in the

13  Jones report?

14      A    I can't recall.

15      Q    Do you recall any of the references that

16  were cited that you reviewed?

17      A    Not to my knowledge.

18      Q    Did you review any testimony in this case?

19      A    Not that I recall, no.

20      Q    Were you aware that there had been testimony

21  taken in this case?

22      A    No.

23      Q    Did you ask to see any testimony in this

24  case?

25      A    No.

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 19

1          A     Yes.

2          Q     Can you turn to page A-12?  Does page A-12,

3    A-12 say Exhibit 3 at the top, materials considered?

4          A     Yes.

5          Q     Does it indicate that in addition to the

6    materials cited in your expert report that you also

7    reviewed certain what are called litigation documents?

8          A     Yes.

9          Q     When I look at Exhibit 2, which is your

10   invoice, sir, and compare it to the litigation

11   documents that are listed on page A-12 of your report

12   I see some expert reports listed on page A-12 that are

13   not listed in your time and invoice.  Do you see that?

14         A     Yes.

15         Q     Did you in fact review the expert report of

16   Mr. Kovich?

17         A     I glanced at it but did not do an extensive

18   review worth charging time.

19         Q     Same thing for Mr. Uhlmann, did you in fact

20   review Mr. Uhlmann's expert report?

21         A     I looked at it but there was not a

22   chargeable time for it.

23         Q     Do you know who Eric Kovich is?

24         A     No.

25         Q     Do you know what kind of an expert he is?

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 20

1       A    No.

2       Q    Do you know what his substance of his report

3   said?

4       A    No.

5       Q    What about Mr. Uhlmann, do you know what

6   kind of an expert he is?

7       A    No.

8       Q    Do you know his background and training?

9       A    No.

10      Q    Do you know what his report contained

11  opinions about?

12      A    No.

13      Q    Would it be fair to say that you don't

14  intend to rebut any of the opinions of Mr. Kovich and

15  Mr. Uhlmann in this case?

16           MR. MAZINGO:  Objection, calls for

17  speculation.

18           THE WITNESS:  The report stands that I

19  wrote.

20      Q    (By Mr. Craven) With regards to Mr. Kovich

21  what were his opinions?

22      A    I do not know.

23      Q    Do you know what Mr. Uhlmann's opinions

24  were?

25      A    I do not know.

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 21

1      Q    So as you sit here today you don't know what
2   Mr. Kovich's opinions were, the basis of those
3   opinions, and the same goes for Mr. Uhlmann; is that
4   fair?
5             MR. MAZINGO:  Objection, asked and answered.
6             THE WITNESS:  They were not relevant to the
7   report that I was writing.
8      Q    (By Mr. Craven) Did you ask if there were
9   any other experts that prepared reports in this
10  case?
11     A    No.
12     Q    Were you aware that there were other experts
13  that prepared reports in this case?
14     A    No.
15     Q    Would you want to see the reports of other
16  experts that were prepared in this case?
17            MR. MAZINGO:  Object to form.
18            THE WITNESS:  No.
19     Q    (By Mr. Craven) Why not?
20     A    Based on the material I presented in my
21  report I have no reason to seek additional
22  information.
23     Q    Had you been to New Haven?
24     A    No.
25  ///

Page 23

```
 1   picture?
 2        A    (Witness complies.)
 3        Q    Can you just draw a line to the white and
 4   write on there what it is that you identified, Shell
 5   facility?
 6             MR. MAZINGO:  Phil, you can answer as you
 7   know and write as you please.
 8             THE WITNESS:  (Witness complies.)
 9        Q    (By Mr. Craven) Can you just hold that up
10   to the camera?
11        A    (Witness complies.)
12             MR. MAZINGO:  I'm going to object to this
13   line of questioning as improper, it's outside the
14   scope of the witness's testimony, calls for
15   speculation.
16        Q    (By Mr. Craven) You can put it down now,
17   sir.  Sir, are you familiar with where any of the
18   other bulk oil terminal are located in New Haven
19   Harbor?
20        A    No.
21        Q    Are you familiar with the names of any of
22   the other bulk oil terminal facilities that are
23   located in the New Haven Harbor?
24        A    No.
25        Q    As part of your preparation in this case did
```

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 24

1    you undertake to try and ascertain whether or not

2    there were other bulk oil terminal facilities in the

3    New Haven Harbor?

4              MR. MAZINGO:  Object to form.

5              THE WITNESS:  No.

6         Q    (By Mr. Craven) Did you try and ascertain

7    whether or not there were any other bulk oil

8    terminal facilities in the State of Connecticut?

9              MR. MAZINGO:  I'm going to object as

10   irrelevant and outside the scope of the witness's

11   testimony.

12             THE WITNESS:  Outside the scope of my

13   report.

14        Q    (By Mr. Craven) Did you try and ascertain

15   whether or not there were in fact any other bulk oil

16   terminal facilities in the State of Connecticut?

17             MR. MAZINGO:  Same objection, irrelevant and

18   outside the scope.

19             THE WITNESS:  No.

20        Q    (By Mr. Craven) Why not?

21             MR. MAZINGO:  Same objection, irrelevant and

22   outside the scope.

23             THE WITNESS:  It was not tasked in my work

24   with the CLF.

25        Q    (By Mr. Craven) Was it important for you

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 25

1    to know what other bulk oil terminals in the State

2    of Connecticut were doing as part of your

3    preparation and work in this case?

4         A    It was not relevant to my report.

5         Q    And so as a result you did not undertake to

6    try and ascertain what other bulk oil terminal

7    facilities in the State of Connecticut were doing?

8         A    Correct.

9         Q    Do you have an understanding who Equilon

10   Enterprises is?

11        A    No.

12        Q    Do you have an understanding as to who the

13   Triton Terminaling is?

14        A    No.

15        Q    Do you have an understanding as to who

16   Motiva Enterprises is?

17        A    No.

18        Q    Do you have an understanding as to who it is

19   who owns the terminal at issue in this case?

20        A    Please rephrase that question.

21        Q    Sure.  Do you know who currently owns the

22   terminal that's at issue in this case?

23        A    I assume it's Shell, however, it may be any

24   of the people that you mentioned previously.

25        Q    As you sit here today you assumed it's Shell

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 29

```
 1        Q    (By Mr. Craven) Did you review the permit,
 2   sir?
 3        A    It was part of the Jones report so when I
 4   read the report I saw it; but review, I did not.
 5        Q    Other than seeing references to the 2018
 6   permit in the Jones report did you actually look at
 7   the 2018 permit?
 8             MR. MAZINGO:  Same objection, outside the
 9   scope.
10             THE WITNESS:  It was outside the scope of my
11   report.
12        Q    (By Mr. Craven) Did you review the 2021
13   permit?
14             MR. MAZINGO:  Same objection, outside the
15   scope.
16             THE WITNESS:  It was outside the scope of my
17   report.
18        Q    (By Mr. Craven) Did you review the 2024
19   draft permit?
20             MR. MAZINGO:  Same objection, outside the
21   scope.
22             THE WITNESS:  Outside the scope of my
23   report.
24        Q    (By Mr. Craven) So that means you didn't
25   review it?
```

Phillip Pasteris                          September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 30

```
1              MR. MAZINGO:  Same objection.
2              THE WITNESS:  Outside the scope of my
3       report.
4          Q    (By Mr. Craven) Did you review it or
5       didn't you review it?
6              MR. MAZINGO:  Same objection.
7              THE WITNESS:  I saw it as a reference.
8          Q    (By Mr. Craven) Sir, did you review the
9       2024 draft permit in connection with your review of
10      documents in this case?
11             MR. MAZINGO:  Same objection.
12             THE WITNESS:  It was outside the scope of my
13      report.
14         Q    (By Mr. Craven) So that means you did not
15      review it?
16             MR. MAZINGO:  Same objection.
17             THE WITNESS:  It was a reference.
18         Q    (By Mr. Craven) Sir, I understand it's a
19      reference.  Did you actually review the permit?
20         A    No.
21         Q    Did you review any of the fact sheets that
22      the Connecticut department and environment prepares in
23      connection with the permits?
24             MR. MAZINGO:  Same objection, outside the
25      scope.
```

Phillip Pasteris                          September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

                                              Page 31

1              THE WITNESS:  Please repeat the question.

2         Q    (By Mr. Craven) Sure.  Did you review --

3    I'll withdraw the question and ask a different

4    question.

5              Did you review any of the fact sheets

6    related to the 2018 industrial permit in this case?

7              MR. MAZINGO:  Objection, outside the scope.

8              THE WITNESS:  No.

9         Q    (By Mr. Craven) Did you review any of the

10   fact sheets related to the 2021 industrial

11   stormwater permit in this case?

12             MR. MAZINGO:  Same objection.

13             THE WITNESS:  No.

14        Q    (By Mr. Craven) Did you review any of the

15   fact sheets related to the draft 2024 industrial

16   stormwater permit?

17             MR. MAZINGO:  Same objection.

18             THE WITNESS:  No.

19        Q    (By Mr. Craven) Did you review any of the

20   fact sheets related to the second draft 2024

21   industrial stormwater permit in this case?

22             MR. MAZINGO:  Same objection.

23             THE WITNESS:  No.

24        Q    (By Mr. Craven) Did you review any of the

25   Connecticut DEEP guidance documents related to how

Page 34

1    reviewed the complaint in this case and you said you

2    thought you read it but that it was outside the

3    scope of your review.  My next question was it

4    wasn't listed as one of the documents that you

5    reviewed in this case, and so that leads up to do

6    you think you read it, are you sure you read it,

7    what's your recollection of having read the

8    complaint in the case?

9            MR. MAZINGO:  And I'm going to object to

10   form there but --

11           THE WITNESS:  I can't recall it being

12   provided to me.

13       Q    (By Mr. Craven) Have you ever reviewed any

14   Connecticut SWPPPs?

15       A    No.

16       Q    Have you ever signed any permits in

17   Connecticut?

18       A    No.

19       Q    Have you ever worked on any Connecticut

20   industrial stormwater permits in Connecticut?

21       A    No.

22       Q    Have you ever signed any industrial permits

23   in any state?

24       A    No.

25       Q    Have you signed any SWPPPs in any state?

Page 35

1        A    No.

2        Q    Have you ever worked with the EPA or

3    Connecticut DEEP in connection with stormwater

4    permits?

5        A    No.

6        Q    Would you say that the regulatory

7    requirements for a stormwater permit in Connecticut

8    are outside of your expertise?

9        A    Yes.

10       Q    In your experience working both for the

11   government and in private practice did you have

12   experience where individuals working on projects would

13   interact with regulators that were overseeing those

14   projects?

15            MR. MAZINGO:  I'm going to object to form

16   and also compound question.

17            COURT REPORTER:  Compound you said?

18            MR. MAZINGO:  Yes.

19            THE WITNESS:  No.

20       Q    (By Mr. Craven) Do you have any expertise

21   dealing with hazardous waste issues?

22       A    No.

23       Q    You're a meteorologist; correct?

24       A    Correct.

25       Q    Not an engineer in any state; correct?

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 37

1      Q    Did you attempt to ascertain whether or not
2    the New Haven facility in this case has ever been
3    flooded prior to --
4              MR. MAZINGO:  Object to form.
5      Q    (By Mr. Craven) -- your testimony?
6              MR. MAZINGO:  And object it's outside the
7    scope.
8              THE WITNESS:  No.
9      Q    (By Mr. Craven) Why not?
10             MR. MAZINGO:  I'm going to object as outside
11   the scope.
12             THE WITNESS:  The scope of the report did
13   not include that assertation.
14     Q    (By Mr. Craven) Did you attempt to
15   ascertain whether or not any of the major storms
16   that have hit Connecticut in the last 40 years have
17   caused any flooding at the facility?
18             MR. MAZINGO:  I'm going to object to form
19   and object as outside the scope.
20             THE WITNESS:  I did not, it's outside the
21   scope of my report.
22     Q    (By Mr. Craven) Did you attempt to
23   ascertain whether or not there had been any flooding
24   at any of the facilities in the New Haven Harbor in
25   the last 20 years?

Page 38

1          A     I did not as part of my report.

2          Q     Are there databases that would allow someone

3     like yourself to ascertain whether or not there was in

4     fact flooding in the New Haven Harbor --

5                MR. MAZINGO:  I'm going to object as calls

6     for speculation.

7          Q     (By Mr. Craven) -- based on any storm?

8                MR. MAZINGO:  Outside the scope of the

9     report, calls for speculation, objection.

10               THE WITNESS:  There are data sources that

11    provide tide information.

12         Q     (By Mr. Craven) Okay.  There are data

13    sources that allow someone like yourself or another

14    expert to ascertain whether or not certain

15    facilities were flooded during particular storms;

16    true?

17         A     Unknown.

18         Q     Did you attempt to ascertain whether or not

19    the New Haven facility, any of the facilities in New

20    Haven Harbor were flooded during Superstorm Sandy?

21         A     No.

22         Q     Did you attempt to ascertain whether or not

23    there was any flooding at any of the facilities in the

24    New Haven Harbor for any storm?

25         A     No.

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 72

1       Q    And have you worked on a bulk oil fuel
2    terminal facility?
3       A    Physically?
4       Q    Let's start with physically.  Have you?
5       A    No.
6       Q    Have you done work for a bulk fuel oil
7    terminal facility?
8       A    Yes.
9       Q    What work have you done for a bulk fuel oil
10   terminal facility?
11      A    I evaluated the facilities based on 100 year
12   flood mapping.
13      Q    And which bulk oil fuel terminal facilities
14   did you evaluate?
15      A    They were owned by ConocoPhillips.  They
16   existed in Oklahoma, Texas and Louisiana.
17      Q    And did you prepare reports as a result of
18   your work for ConocoPhillips on bulk oil terminal
19   facilities?
20      A    Yes.
21           MR. MAZINGO:  Object to form.
22           THE WITNESS:  Yes.
23           MR. MAZINGO:  And just a quick interruption,
24   I believe, Madam Court Reporter, I have a couple of
25   colleagues trying to get to the Zoom room.  I'm not

Phillip Pasteris                         September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 73

1    sure who's in charge of that.

2             MR. CRAVEN:  Let's go off the record for

3    five minutes.

4             VIDEOGRAPHER:  Going off the record at

5    11:06 a.m.

6             (Recess was taken from 11:06 to 11:17.)

7             VIDEOGRAPHER:  We're back on the record at

8    11:17 a.m.

9         Q    (By Mr. Craven) Mr. Pasteris, we're back

10   on the record.  Just prior to breaking I had asked

11   you some questions about work that you said you

12   performed for ConocoPhillips.  Do you recall that?

13        A    Yes.

14        Q    How many projects did you work on for

15   ConocoPhillips related to bulk storage fuel terminals?

16        A    So my work was climate analysis of climate

17   risk to the facilities.

18        Q    And was that for three separate bulk storage

19   fuel facilities that ConocoPhillips had?

20        A    No, that was for 48.  Because I mentioned

21   earlier they were in Texas, Oklahoma and Louisiana.

22        Q    And the 48 facilities that you did work for

23   for ConocoPhillips were all bulk storage fuel terminal

24   facilities?

25        A    To the best of my knowledge.  There may have

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 76

1    those -- that project?

2         A    FEMA floodplain.

3         Q    And was your role on those projects simply

4    to map the 100 year flood storm and then provide that

5    information to ConocoPhillips, or did you also do an

6    assessment of their structures and facilities and

7    recommend structural changes to their facilities?

8              MR. MAZINGO:  Object to form of that

9    question as compound.

10             THE WITNESS:  Yeah, compound question.

11   Let's take them one at a time, what's question one?

12        Q    (By Mr. Craven) You indicated that you did

13   a 100 year flood storm modeling for that project?

14        A    I did no modeling, I interpreted the FEMA

15   maps.

16        Q    Okay.  In addition to interpreting the FEMA

17   maps did you use any other modeling for purposes of

18   that project?

19             MR. MAZINGO:  Object to the form.

20             THE WITNESS:  No.

21        Q    (By Mr. Craven) Did you, in connection

22   with that project, make recommendations as to

23   structural changes to any of those facilities?

24        A    No.

25        Q    Do you recall anyone from ConocoPhillips in

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 77

```
 1    connection with that project?

 2         A    No.

 3         Q    Were you aware that Jan Dell was deposed?

 4         A    No.

 5         Q    Was she more involved with that project for

 6    ConocoPhillips than you were?

 7              MR. MAZINGO:  Objection to the form of that

 8    question, it's vague and ambiguous.

 9              THE WITNESS:  I agree with the objection.

10    She was a project manager, she developed the projects

11    and I executed them.

12         Q    (By Mr. Craven) How long did it take you

13    to prepare the report that you prepared in that

14    case?

15         A    About a week.

16         Q    And did your report also calculate

17    precipitation risks related to those facilities?

18         A    That was not requested.

19         Q    Other than the work that you did for

20    ConocoPhillips have you done any other work for bulk

21    storage fuel terminal facilities?

22         A    No.

23         Q    Have you ever performed any work for Shell?

24         A    No.

25         Q    Have you ever performed any work for Equilon
```

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

                                              Page 89

1              THE WITNESS:  I cannot -- so what you're

2       saying is you're asking for projections from previous

3       to 20 -- I -- it's unclear.

4          Q    (By Mr. Craven) Let me withdraw the

5       question and try and ask you a different question --

6          A    Okay.

7          Q    -- Mr. Pasteris.

8              Are you able to offer an opinion as to what

9       the increase in precipitation will be for 2026?

10             MR. MAZINGO:  Object to form of that

11      question, it's outside of the scope of his report and

12      it is improper.

13             THE WITNESS:  I can't offer an opinion as to

14      what the precipitation will be in the Northeastern

15      United States and the facility for calendar year 2026.

16         Q    (By Mr. Craven) Same question for 2027,

17      2028, 2029, 2030, would I get the same answer?

18             MR. MAZINGO:  Same objection.  I'm going to

19      object to this line of questioning, it's attempting to

20      put words in the witness's mouth and it's

21      mischaracterizing his report.

22             THE WITNESS:  I cannot offer an opinion.

23         Q    (By Mr. Craven) Sir, will you look at your

24      report on page 18, and the first paragraph after

25      your bullet 7?  It says in consideration, do you see

Page 96

1    numbers that you've -- strike that.

2              You have no opinions as to whether or not

3    the terminal facility will flood even under the

4    projected increased rain events that you mentioned in

5    your report based on the Tweed New Haven and

6    Bridgeport's Sikorsky memorial data; true?

7              MR. MAZINGO:  Object to form.

8              THE WITNESS:  I have no opinion.

9              MR. CRAVEN:  It's 12 o'clock, I'm at a good

10   breaking point for us to take lunch I think.

11             MR. MAZINGO:  I would be a big fan of that.

12             MR. CRAVEN:  We can go off record.

13             VIDEOGRAPHER:  Going off the record at

14   11:57 a.m.

15             (Lunch recess was taken.)

16             VIDEOGRAPHER:  We're back on the record at

17   1:01 p.m.

18        Q    (By Mr. Craven) Good afternoon

19   Mr. Pasteris, how are you doing?

20        A    Great.

21        Q    We took a little break for our lunch, we had

22   about an hour and we're starting back up again.  Do

23   you know who Susan Bodine is?

24        A    She was an author of one of the reports but

25   I never met her, didn't do any research.

Phillip Pasteris                      September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 97

1      Q    Do you recall what her background or
2    qualifications are?
3      A    Not without looking at the report.
4      Q    As you sit here today do you have any views
5    on her report?
6      A    No opinion.
7      Q    Have you heard the name Matthew Barlow?
8      A    No.
9      Q    Are you aware that CLF has disclosed an
10   expert report from a climatologist named Matthew
11   Barlow in this case?
12     A    No.
13     Q    And no one's told you what his opinions are
14   with regards to potential increase precipitation?
15     A    Correct.
16     Q    Do you have any knowledge one way or another
17   whether or not your opinions may be duplicative of his
18   opinions?
19     A    I have no way of knowing.
20     Q    Have you heard of the name Professor
21   O'Donnell?
22     A    No.
23     Q    Are you aware that CLF disclosed an expert
24   with the last name O'Donnell in this case?
25     A    No.

Phillip Pasteris                        September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 98

1       Q    Are you aware that Mr. O'Donnell is the
2   executive director of CIRCA?
3       A    No.
4       Q    Do you have any view one way or another
5   whether or not your opinions might be duplicative of
6   his opinions?
7            MR. MAZINGO:  I'm going to object to form of
8   this.
9            THE WITNESS:  I have no way of knowing.
10      Q    (By Mr. Craven) You indicated that you did
11  review Dr. Jones's report; true?
12      A    True.
13      Q    And his report has his qualifications; true?
14      A    True.
15      Q    Any opinions about his qualifications that
16  you intend to offer in this case?
17      A    None to offer.
18      Q    Any opinions about the methodology that
19  Dr. Jones used in connection with his report?
20           MR. MAZINGO:  I'm going to object to that as
21  vague.
22           THE WITNESS:  None to offer.
23      Q    (By Mr. Craven) It's my understanding that
24  you have no evidence that there's been any releases
25  from the facility related to any storm events in the

Page 99

1   past?

2              MR. MAZINGO:  Object to form.

3              THE WITNESS:  That is correct.

4       Q    (By Mr. Craven) And you also do not intend

5   to offer an opinion as to the effects of a

6   particular storm on the structure of the facility in

7   the future?

8              MR. MAZINGO:  Object to form.

9              THE WITNESS:  I'm trying to clarify if

10  there's a structural recommendation or anything.  I

11  have no opinion.

12      Q    (By Mr. Craven) My understanding is is

13  that one of your opinions has to do with increased

14  precipitation in the Northeast region; true?

15      A    Correct.

16      Q    And even though you have that opinion you

17  haven't applied that opinion as to what impact it may

18  have on the actual facility, your opinion is related

19  to the increase in precipitation; true?

20      A    That is correct.

21      Q    In your report you reference a 2009

22  roundtable.  Do you recall that?

23      A    Correct.

24      Q    Do you recall whether or not anyone from

25  Shell attended that roundtable?

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 101

1        A     The name of the attendee, no.

2        Q     Do you have the materials from that 2009

3    roundtable?

4        A     I have materials that were presented to the

5    roundtable.

6        Q     And have you provided the materials from

7    that 2009 roundtable to counsel for CLF?

8              MR. MAZINGO:  Object to form.

9              THE WITNESS:  Not that I'm aware of.

10       Q     (By Mr. Craven) But you personally have

11   those materials?

12       A     I have those materials.

13       Q     Is that something that you would be willing

14   to provide to counsel for CLF?

15       A     I'd say the following.  It is a private

16   client, ConocoPhillips was, so I don't know what the

17   procedure would be.

18             MR. MAZINGO:  And I'll, again, just put this

19   on the record.  I'm unaware of any legal obligations

20   Mr. Pasteris may be under with his previous clients as

21   far as non-disclosure agreements, anything like that.

22   I would encourage him to seek legal counsel on those

23   issues with that, so...

24       Q     (By Mr. Craven) What I'm trying to

25   ascertain here, Mr. Pasteris, you personally don't

Page 102

1    have an objection to providing those materials to

2    counsel for CLF, but you would have to check with

3    your former employer or whoever it was to determine

4    whether or not that material is private?

5         A    I think the words that you started the

6    question with might be a little bit -- first of all,

7    with a private client there's several steps to this.

8              One is the CH2M Hill company that was, you

9    know, in charge of this, I've not released anything

10   from CH2M Hill to anybody previously.  So you've got a

11   step here CH2M Hill, then Conoco, and moving on.

12             So, I'm -- I have the information and I'd

13   say that in the context of this question I can't

14   answer it unless you formulate another question for

15   me.

16        Q    So my first question is do you have the

17   materials related to the 2009 roundtable presentation

18   that you referenced in your report?

19        A    Yes.

20        Q    And what materials does that consist of?

21        A    PowerPoint presentation.

22        Q    And other than the PowerPoint presentation

23   from the 2009 roundtable presentation do you have any

24   other documents related to that?

25        A    There were emails from Jan Dell and myself

Page 104

1    enumerated five topics after that, or did Jan Dell

2    present on some and you presented on some?

3        A    Jan Dell presented on the vast majority of

4    those.

5        Q    What specific did you present out of those

6    five, if anything?

7        A    What happened was my assessments of ambient

8    air temperature, length of season for the summer, sea,

9    ice, thickness and coverage, snow depth and coverage

10   on page 6, each one of these 12 topics were in depth

11   and analyzed and presented in a PowerPoint.  And then

12   they were taken by Jan Dell and translated into these

13   five things that you talked about a minute ago.

14       Q    So you presented on the topics that are

15   listed on page 6 of your report starting with ambient

16   temperature increase?

17       A    Correct.

18       Q    And ended with ocean pH?

19       A    Correct.

20       Q    And as a result of your portion of the

21   presentation was there some sort of grid or chart made

22   that was presented to the attendees?

23           MR. MAZINGO:  Object to form.

24           THE WITNESS:  Yes.

25       Q    (By Mr. Craven) And do you have a

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

                                                    Page 108

1    to industrial stormwater permits?

2         A    No.

3         Q    Have you reviewed any oil and gas storage,

4    bulk storage terminal facility surveys?

5              MR. MAZINGO:  Object to form.

6              THE WITNESS:  I don't know what a survey is

7    in this context.

8         Q    (By Mr. Craven) Have you reviewed any

9    surveys?

10        A    No.

11        Q    So the answer to my prior question would

12   have been no?

13        A    No.

14             MR. MAZINGO:  Object, mischaracterizes the

15   witness's testimony.

16        Q    (By Mr. Craven) You have not reviewed any

17   surveys related to the oil and gas bulk storage

18   terminals for purposes of this case; true?

19             MR. MAZINGO:  Objection to the term surveys,

20   it's ambiguous.

21             THE WITNESS:  I cannot answer that without

22   the clear definition of what a survey is, who created

23   the survey, under what form, if it's government

24   survey, state survey, I cannot answer the question.

25        Q    (By Mr. Craven) Have you reviewed any

Page 109

```
 1    government surveys related to bulk oil storage

 2    terminals?

 3              MR. MAZINGO:  Same objection to the term

 4    surveys.

 5              THE WITNESS:  No.

 6        Q    (By Mr. Craven) Have you reviewed any

 7    private surveys related to bulk oil storage

 8    terminals?

 9              MR. MAZINGO:  Same objection.

10              THE WITNESS:  No.

11        Q    (By Mr. Craven) Have you reviewed any

12    state surveys related to bulk oil storage terminals?

13              MR. MAZINGO:  Same objection, ambiguous as

14    to what surveys means.

15              THE WITNESS:  Without the context of survey

16    and definition I can't answer that question.

17        Q    (By Mr. Craven) Sir, do you know what a

18    survey is?

19        A    No.  In this context I do not.

20        Q    Have you done any study for purposes of your

21    opinion in this case on any consensus statements from

22    any oil and gas storage terminal facilities?

23              MR. MAZINGO:  Object to form.  Again it

24    seems to be employing terms of arts that are

25    undefined.
```

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 110

1              THE WITNESS:  No.

2        Q    (By Mr. Craven) Did you look for any

3    consensus statements with regards to your opinions

4    in this case?

5              MR. MAZINGO:  Object to form, ambiguous as

6    to what consensus statements means.

7              THE WITNESS:  No.

8              (Deposition Exhibit 8 was marked for

9              identification.)

10       Q    (By Mr. Craven) Sir, I'm showing you

11   what's been marked Exhibit 8, it has a title Natural

12   Hazard Risk Assessment Guidance for Marine Oil

13   Terminals, with a date of December 2024 on the

14   cover.  Do you see that?

15       A    I see that.

16       Q    Have you seen this document before today?

17       A    No.

18             MR. MAZINGO:  I'm going to object this is

19   irrelevant and outside the scope of this witness's

20   testimony.

21             (Deposition Exhibit 9 was marked for

22             identification.)

23       Q    (By Mr. Craven) Sir -- strike that.

24             Sir, Exhibit 9 is a New York State petroleum

25   terminal resiliency assessment with a final report

Page 120

1          (Recess was taken from 1:36 to 1:46.)

2          VIDEOGRAPHER:  We're back on the record at

3     1:46 p.m.

4

5                        EXAMINATION

6     BY MR. MAZINGO:

7          Q    Okay, Phil, I just have a few questions for

8     you.  I want to clarify a few things.  Phil, I believe

9     you were asked if you reviewed any new documents for

10    your deposition since you wrote your report.  Do you

11    remember that?

12         A    Yes.

13         Q    Okay.  Phil, when you were preparing for

14    your deposition did you go back and look at some

15    emails that you hadn't seen before?

16         A    Yes.

17         Q    Okay.  And did you find an email that was

18    relevant to this deposition?

19         A    Yes.

20         Q    And what was that email?

21         MR. CRAVEN:  Objection to form.

22         Q    (By Mr. Craven) I'm sorry, what is your

23    recollection of that that email contained?

24         MR. CRAVEN:  Objection to form.  You can

25    answer.

Phillip Pasteris                    September 3, 2025
Conservation Law Foundation, Inc. v. Shell Oil Com

Page 121

1          THE WITNESS:  The email was a roundtable
2    follow-up discussion from CH2M Hill management
3    thanking Jan Dell and myself for doing an excellent
4    job at the roundtable, and it contained some of the
5    attendees.
6          Some of the attendees could not attend due
7    to an extreme rainfall event in Houston overnight that
8    flooded all the freeways, over 10 inches up to
9    14 inches of rain occurred, and Shell was listed as
10   one of the attendees.
11       Q    (By Mr. Mazingo) There wasn't a name of
12   the person who was there for Shell there was there?
13       A    There was not.
14       Q    Phil, besides that email did you look at
15   anything else that you hadn't looked at before writing
16   your report that would influence your opinions in this
17   case?
18       A    No.
19       Q    Phil, did you look at everything you needed
20   to look at to form your opinions in this case?
21       A    Yes.
22       Q    Phil, I want to talk about the exhibit you
23   were asked to draw on, I believe that was Exhibit 4.
24   Do you mind pulling that out?  I'm going to have to
25   look at it here because I don't have a copy.  Phil,