# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

<table>
<tr><td>

CONSERVATION LAW FOUNDATION, INC.,

                 Plaintiff,

     v.

EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,

                 Defendants.

</td><td>

Case No: 3:21-cv-00933-VDO

October 3, 2025

</td></tr>
</table>

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT JOSHUA C. MACEY'S OPINIONS AND TESTIMONY

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC (collectively, "Defendants") move to exclude Plaintiff's expert Joshua C. Macey's opinions and testimony because proposes to offer legal opinions that are an impermissible subject of expert testimony, irrelevant, and highly prejudicial. *See* Fed. R. Evid. 702 and 401–403.

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT.................................................................................... 1

II.    BACKGROUND ........................................................................................................ 3

III.   LEGAL STANDARD ................................................................................................ 6

IV.   ARGUMENT ............................................................................................................. 8

    A.   Mr. Macey's Opinions Include Legal Conclusions That Exceed the Scope of Admissible Expert Testimony......................................................................... 8

    B.   Mr. Macey's Legal Opinions Are Not the Result of a Reliable Methodology and Are Not Based on the Facts of This Case ........................................................ 11

    C.   Because They Are Pure Legal Opinions, Mr. Macey's Opinions Cannot Assist the Factfinder ....................................................................................................... 14

    D.   Mr. Macey's Opinions About Nonparties Are Irrelevant.................................. 15

    E.   Mr. Macey Lacks the Requisite Qualifications to Opine as an Expert ............. 17

    F.   The Court Should Exclude Mr. Macey's Opinions Under Rule 403 ................. 19

V.    CONCLUSION........................................................................................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
 303 F.3d 256 (2d Cir. 2002)...............................................................................................7

*Cameron v. City of N.Y.*,
 598 F.3d 50 (2d Cir. 2010)................................................................................................11

*Duchimaza v. United States*,
 211 F. Supp. 3d 421 (D. Conn. 2016).................................................................................14

*Emma Rosina, LLC v. Bilides Bldg. & Excavating, LLC*,
 No. CV020462976S, 2002 WL 31898066 (Conn. Super. Ct. Dec. 10, 2002)..........................16

*Hygh v. Jacobs*,
 961 F.2d 359 (2d Cir. 1992)..............................................................................................11

*Learning Care Group, Inc. v. Armetta*,
 No. 3:13-CV-1540 (VAB), 2016 WL 3248178 (D. Conn. June 12, 2016)
 (Bolden, J.)......................................................................................................................11

*Levinson v. Westport National Bank*,
 No. 3:09-cv-00269 (VLB), 2012 WL 4489260 (D. Conn. Sept. 28, 2012)
 (Bryant, J.) ........................................................................................................................9

*Lippe v. Bairnco Corp.*,
 288 B.R. 678 (S.D.N.Y. 2003)............................................................................................7

*Marx & Co., Inc. v. Diners' Club Inc.*,
 550 F.2d 505 (2d Cir. 1977)..............................................................................7, 11, 17, 19

*Nimely v. City of New York*,
 414 F.3d 381 (2d Cir. 2005)....................................................................................6, 7, 15, 19

*Ruggiero v. Warner-Lambert Co.*,
 424 F.3d 249 (2d Cir. 2005)........................................................................................15, 16

*SLSJ, LLC v. Kleban*,
 277 F.Supp.3d 258, 268-71 (D. Conn. 2017) (Haight, J.) ................................................8, 10

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
 538 U.S. 408 (2003)..........................................................................................................20

*TMI Tr. Co. v. WMC Mortg., LLC*,
 No. 3:12-CV-1538 (CSH), 2017 WL 6617050 (D. Conn. Dec. 28, 2017) ............................20

*TXO Prod. Corp. v. Alliance Res. Corp.*,
509 US 443 (1993)....................................................................................................20

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991).........................................................................................8

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) ..............................................................................19, 20

*United States v. Jones*,
965 F.3d 149 (2d Cir. 2020)............................................................................................6

*Wang v. Omni Hotels Mgt. Corp.*,
3:18-cv-2000, 2025 WL 1782264 (D. Conn. June 27, 2025) (Oliver, J.)...........................6, 14

*Wrubel v. John Hancock Life Insurance Company*,
11 Civ. 1873(AMD)(LB), 2016 WL 11430774 (S.D.N.Y. Mar. 11, 2016)...............................9

**Statutes**

28 U.S.C. § 2462.................................................................................................10, 11

Clean Water Act.............................................................................................2, 15, 17

Resource Conservation and Recovery Act .......................................................2, 15, 17

**Other Authorities**

Fed. R. Evid. 702 ...................................................................................... *passim*

Fed. R. Evid. 401 ....................................................................................................21

Fed. R. Evid. 403 ............................................................................................1, 7, 19, 21

## I.    PRELIMINARY STATEMENT

This Court should exclude the proposed opinions of Plaintiff's expert Joshua Macey pursuant to Federal Rules of Evidence 702 and 403 because they consist entirely of impermissible legal conclusions, have no relevance to the issues to be decided by this Court, and will subject the jury to substantial prejudice and confusion.

First, Mr. Macey's opinions consist entirely of impermissible legal conclusions and statutory interpretation framed as "expert testimony."  The statutory penalty language makes clear that any penalty would apply only to the permittee (i.e., Defendants), but Mr. Macey devotes the bulk of his report to a description of caselaw that he asserts may relate to nonparty Shell plc.  Shell plc is not a permittee and has nothing to do with this litigation.  There is no claim for veil-piercing in the case, and the Complaint was dismissed with prejudice as to Shell Oil Company and Shell Petroleum, Inc. (two intermediate, US-based parent companies of Triton and Equilon).

To the extent Mr. Macey seeks to expand the scope or applicability of the relevant statutes or the Connecticut Civil Penalty Policy beyond the permittees, he engages in improper statutory interpretation that is far outside the scope of an admissible expert opinion.  His arguments about Shell plc's supposed "operational control" or "operational authority" necessarily implicate legal determinations and usurp the Court's role to instruct the jury on the applicable law.  Mr. Macey's report engages in case law analysis and an attempted application of legal standards to disputed facts.  That is not expert opinion, but legal argument (in this case by someone not even admitted to the bar of any jurisdiction).  It should be excluded under well-settled law.

Second, Mr. Macey bases his conclusions not on reliable methodology, but on bald assertions and recitations of a scattering of selective quotations.  He merely summarizes a subset

of public documents selected for him by Plaintiff's counsel, and the narrative he constructs fails to consider key documents related to the New Haven Terminal (the "Terminal"), permit compliance, or "operational control."  Courts agree that such *ipse dixit* summaries do not reflect specialized knowledge or expert methodology.

Third, Mr. Macey's opinion is not based on any facts or data relevant to the Terminal, the operative Permit, or penalty calculations and is instead focused on irrelevant non-parties.  This case is about Defendants' compliance with the Connecticut 2018/2021 General industrial stormwater management permit (the "2018/2021 Permit") issued to the Terminal, but Mr. Macey admits that he offers no opinion on Defendants' compliance, or their financial condition and resources should they be found liable.  Nor is Mr. Macey able to conduct such analyses, as he lacks experience with the Connecticut Department of Energy and Environmental Protection ("CT DEEP"), the Clean Water Act ("CWA"), or the Resource Conservation and Recovery Act ("RCRA") enforcement, petroleum storage or engineering, or stormwater drainage.  Instead, he advocates a legal argument as to an irrelevant nonparty rather than Defendants.  Mr. Macey's testimony cannot assist the fact-finders in resolving any relevant factual issues.

Finally, because Mr. Macey's report lacks any probative value as to penalty calculations or the application of the 2018/2021 Permit to the Terminal, his opinions must be excluded to protect the jury from serious prejudice and confusion.  The jury may confuse Mr. Macey's legal determinations with the Court's authoritative legal instructions, especially given his pedigree as a Yale law professor.  Mr. Macey's testimony also introduces legal and factual questions about corporate structure and parent-subsidiary relationships with respect to nonparty Shell plc, none of which concerns the issues in this case.  These irrelevant considerations will likely confuse and

2

distract the jury from the pertinent issues, and the digression is especially inappropriate given the dismissal with prejudice of two other non-permittees from the case.

## II.    BACKGROUND

In this lawsuit, Plaintiff Conservation Law Foundation, Inc. ("CLF") alleges Defendants Triton Terminaling LLC ("Triton") and Equilon Enterprises LLC ("Equilon") violated the General Permit for Discharge of Stormwater Associated with Industrial Activity applicable to the New Haven Terminal ("the Terminal"), issued by CT DEEP in 2018 and extended in 2021 without substantive changes.  *See* ECF 111, Ruling on Mot. to Dismiss at 34–62 (filed Sep. 16, 2022).  The only Defendants in this case are the New Haven Terminal's former owner/operator Motiva Enterprises LLC, the current owner, Triton, and the current operator and permittee under the 2018/2021 Permit, Equilon.  Shell plc is a holding company and is the ultimate parent company of Triton and Equilon, both of which are separately incorporated companies.  Shell plc has never been a party to this action.  *Id.* at 5-6.  On February 13, 2025, CLF voluntarily dismissed its claims against Shell Oil Company and Shell Petroleum, Inc. – two intermediate, US-based parent companies of Triton and Equilon – with prejudice.  (ECF 529).

This is a permit compliance case.  The central issue in this case is whether the Defendants' operations of the New Haven Terminal violated the 2018/2021 Permit.  In support of its case, CLF has designated Mr. Macey, a law professor with no practical background in regulatory enforcement, permit compliance, engineering, or economics, as its expert witness. *See* Ex. A, Joshua Macey's Expert Report ("Report" or "Rep."); Ex. B, Joshua Macey Rebuttal Report ("Rebuttal Rep.").  In his deposition (Ex. C, Deposition of Joshua Macey ("Macey Dep.")), Mr. Macey concedes that he lacks expertise and experience in the following relevant areas:

3

- **No Relevant Subject-Matter Expertise**
  - No experience working for, or with, CT DEEP, EPA, or any enforcement agency. *See id.* at 36:4-37:8.
  - No experience with the CWA/RCRA in enforcement, compliance, or penalty assessment. *Id.* at 45:23-46:2.
  - No experience operating, designing, or auditing petroleum bulk storage facilities. *Id.* at 34:11-23.
  - Has never prepared or certified SWPPPs or SPCC plans. *Id.* at 61:23-62:10.
  - Not an engineer, a meteorologist, toxicologist, or stormwater/drainage expert. *Id.* at 29:19-23; 31:9-11; 168:25-169:4.

- **Not Certified In Finance or Economics**
  - Not an economist or CPA. *Id.* at 30:9–22, 31:3–4.
  - Holds no finance/accounting credentials. *Id*. at 30:1–8.
  - Disclaims any expertise in economics/accounting. *Id.* at 30:10–19.

Against this backdrop, Mr. Macey's opinions about a non-party and penalty frameworks are laid bare as pure legal advocacy—something he concedes is an improper subject of expert testimony (*see id.* at 6:14-20, 99:23-100:11).  Specifically, Mr. Macey offers the following opinions:

| No. | Summary of Opinions | Source |
|-----|---------------------|--------|
| 1. | All Defendants exerted operational control over the Terminal, especially Equilon, which shared operational authority over the Terminal between 1998 and 2017 and then maintained control over the operations at the Terminal after 2017. | *See* Ex. A, Report, at ¶25-37 |
| 2. | Defendants' operational control was exercised in furtherance of "Shell's"[1] – by which he means non-party Shell plc – environmental and climate policies, with non-party Shell plc's global policies and standards directly implemented at the Terminal. | *See* Ex. A, Report, at ¶38–48 |

---

[1] In his report, when Mr. Macey references "Shell" he is referring to non-party Shell plc.  *See, e.g.,* Ex. A, Macey Rep. at 16-17.

| No. | Summary of Opinions | Source |
|---|---|---|
| 3. | Non-party Shell plc has a healthy balance sheet and is financially capable of paying a large fine; a penalty of nearly any size would not impact non-party Shell plc's continued operations. | *See* Ex. A, Report, at ¶49–51 |
| 4. | Non-party Shell plc's strong balance sheet is relevant to civil penalty calculations, as it relates to the "economic impact of the penalty" and the "economic benefit" obtained from violations. | Ex. B, Rebuttal Report, at ¶2–9 |
| 5. | The Connecticut Civil Penalty Policy ("CPP") is not binding in litigation and does not limit the amount that can be pursued in court; federal statutes and EPA regulations govern penalties in citizen suits. | Ex. B, Rebuttal Report, at ¶10–14 |
| 6. | Non-party Shell plc's financial strength means there should be no downward adjustment of penalties for inability to pay; non-party Shell plc is in a position to pay significant civil penalties. | Ex. B, Rebuttal Report, at ¶15 |
| 7. | Non-party Shell plc's public climate commitments and strong financial position indicate it could have invested more in compliance and climate adaptation, and may have gained reputational/economic benefits from its "green" image. | Ex. B, Rebuttal Report, at ¶8–9 |

Taken together, Mr. Macey's opinions fall squarely into two categories: (1) opinions on "operational control" and "**operator liability**" (his words), including who "owned, operated, participated in, controlled, and managed" the New Haven Terminal; and (2) opinions regarding the financial viability of nonparty Shell plc, which he further contends is relevant to the statutory penalty factors and renders Connecticut's Civil Penalty Policy "not relevant."  Both categories of opinions target nonparty Shell plc and legal frameworks rather than the pleaded question of permit compliance by the actual Defendants in the case and the penalties, if any, they could be required to pay in the hypothetical event they were found to have violated the 2018/2021 Permit (which they did not).

5

### III.    LEGAL STANDARD

While serving as the gatekeeper, the Court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Wang v. Omni Hotels Mgt. Corp.*, 3:18-cv-2000 (VDO), 2025 WL 1782264, at *2 (D. Conn. June 27, 2025) (Oliver, J.) (citation omitted).  As the proponent of Mr. Macey's opinions, CLF has the burden of showing, by a preponderance of the evidence, that they satisfy all of the prerequisites to admissibility under Federal Rule of Evidence 702.  *See United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020).

As recent amendments clarify, Federal Rule of Evidence 702 prohibits a witness qualified as an expert from testifying unless the proffering party proves that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Interpreting the pre-2023 Rule 702, the Second Circuit held that the inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact."  *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

The party proffering the expert—here, CLF—bears the burden of establishing Rule 702's requirements by a preponderance of the evidence.  *Jones*, 965 F.3d at 161; *see also*, Fed. R. Evid. 702. ("A witness who is qualified as an expert ... may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that [the criteria for admissibility are met] ...." (emphasis added)).  The recent amendments to the Rule

6

emphasize that the court must rigorously exercise its gatekeeping responsibility and make sure the proffered opinions are more likely than not to meet all four requirements of the Rule, including the requirement that the expert reliably apply the principles and methods to the facts of the case" in arriving at opinions. *See* Advisory Committee Note to 2023 Amendments to Rule 702 (explaining that "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology."). An expert may testify based on his or her experience alone, but when an expert witness relies "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003) (citing Fed. R. Evid. 702 (advisory committee's notes)."), motion for reconsideration granted on other grounds, 2021 WL 5039035 (Oct. 29, 2021).

Even if an expert is qualified to testify, expert opinions are not admissible unless they are both reliable and relevant to the issues in the case. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 259, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 597). While expert opinions may be admissible to assist the jury in understanding complex legal or regulatory issues, "[t]he basis of expert capacity according to Wigmore (s 555), may 'be summed up in the term *'experience.'*" *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 512 (2d Cir. 1977).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,'" particularly *"given the unique weight such evidence may have in a jury's deliberations." Nimely*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595).

## IV.    ARGUMENT

Plaintiff has designated Mr. Macey—a law school professor who has never practiced law—as its expert witness in this 2018/2021 Permit violation case.  Admittedly, Mr. Macey has no experience within the regulatory compliance and enforcement field.  *See* Ex. C, Macey Dep. at 33:2–7 ("Q: You don't have any background in regulatory enforcement with a government agency?  A: Nope.").  As a result, Mr. Macey is unable to offer any relevant opinions related to the central claims or theories of liability in this case.  *See* Ex. C, Macey Dep. at 64:16-18 ("Q: "You're not offering any opinion about the liability phase of the case?  A: Correct.").  Instead, Plaintiff offers his testimony in support of its argument that non-party Shell plc should be considered when evaluating potential penalties.  But Mr. Macey's opinions consist simply of recitations of legal precedents and statutory analysis—as a legal advocate for Plaintiff.  Despite Mr. Macey's clear lack of qualifications and improper scope of opinions, there is also a substantial risk that the jurors could be influenced by his academic credentials and defer to his improper and unsupported legal conclusions instead of independently applying the Court's instructions to the facts.  Accordingly, the Court should preclude Mr. Macey from trial.

### A.    Mr. Macey's Opinions Include Legal Conclusions That Exceed the Scope of Admissible Expert Testimony

Mr. Macey's expert opinions consist of clear legal advocacy masquerading as independent expert analysis.  Although Mr. Macey claims he is not offering legal opinions (*see* Ex. D, Macey Dep. at 14:21-15:1) even a cursory review of his reports and deposition testimony reveals that his opinions are nothing more than statutory interpretation, case law analysis, and attempted applications of legal standards to disputed facts.  Such testimony is impermissible because it usurps the judge's role in instructing the jury and therefore must be excluded.  *See, e.g., United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991); *SLSJ, LLC v. Kleban,* 277

8

F.Supp.3d 258, 268-71 (D. Conn. 2017) (Haight, J.); *Levinson*, 2012 WL 4489260, at \*5 (granting motion to exclude the report and testimony of expert who "reaches impermissible legal conclusions" when he "attempts to interpret the contract, as well as several statutes and regulations, in a manner that competes with the Court's role in instructing the jury and usurps the jury's role to render legal conclusions").

Mr. Macey's methodology is legal analysis, not specialized, factual expertise.  *Cf. Wrubel v. John Hancock Life Insurance Company*, 11 Civ. 1873(AMD)(LB), 2016 WL 11430774, at \*2 (S.D.N.Y. Mar. 11, 2016) (finding that expert who "simply read all the guidelines" and observed behavior with respect to the guidelines did not have an opinion based on "specialized knowledge that could assist the trier of fact").  Mr. Macey's reports are nothing more than recitations of legal precedents and statutes.  In his twenty-four-page Report, Mr. Macey devotes five pages to simply summarizing a single Supreme Court case—*United States vs. Bestfoods International*—and thirteen law review articles related to analysis of corporate structures.  *See* Ex. A, Report, at 4-8. His Rebuttal Report also references and summarizes four federal statutes and five federal court cases.  *See* Ex. B, Rebuttal Report, at EXH-1-EXH-II.

The chart below demonstrates how Mr. Macey's opinions are not factual or technical expert analysis, but rather legal conclusions that track statutory or judge-made standards and advocate legal outcomes:

| Mr. Macey's Opinion | Impermissible Nature of Legal Opinion |
|---|---|
| "Defendants collectively owned, operated, participated in, controlled, and managed the New Haven Terminal." *See* Ex. A, Rept. at 1. | These are legal terms of art—"owner," "operator," "control," "manage"—lifted from environmental-liability frameworks (including *Bestfoods'* "operator" standard and comparable statutes).<br><br>Whether a parent "operated" or "controlled" a facility is the legal test; telling the jury that |

| Mr. Macey's Opinion | Impermissible Nature of Legal Opinion |
|---|---|
| | Defendants did so is an impermissible legal conclusion. |
| "Defendants' collective operational control … was done in conjunction with and in furtherance of their parent company's policies, procedures, and general business interest."  *Id*. at ¶38 and ¶39 (parent's policies "apply to the entire firm"). | These are veil-piercing/parental-liability legal constructs under *Bestfoods*—distinguishing permissible oversight from impermissible operational control.<br><br>Whether group policies evidence "control" under *Bestfoods* is a legal application, not specialized fact expertise. |
| "Shell's control over the New Haven Terminal processes goes well beyond oversight and supervisory activities common of parent companies whose subsidiaries operate potential environmental hazards." Rept. ¶48. | This is an attempted application of *Bestfoods'* legal standard ("oversight" vs "operation").  It tells the jury his view of the legal bottom line.  That is the Court's function. |
| "Shell has a healthy balance sheet and is capable of paying a large fine, [and the Court should consider consolidated financial strength in penalty factors]." *Id*. at 22–24; *see also*, Ex. B, Rebuttal 1–3, 6–7. | Whether "ability to pay," "consolidated financial strength," or group financials are relevant factors in this citizen suit is a legal relevance/penalty-framework question.  The opinion instructs the Court which legal penalty factors to apply and how to weigh them.  That is legal argument, not expert analysis. |
| "A penalty of nearly any size would merely be absorbed by Shell's profits and would have no impact on the company's continued operations." *See* Ex. A, Rept. at ¶51. | This advocates a penalty outcome under legal factors (deterrence/proportionality), not specialized financial econometrics tied to case facts.  It is a normative legal conclusion aimed at the remedy. |
| "The Connecticut Civil Penalty Policy is not relevant [in citizen suits, such as this]." *Id*. at 4–6. | Admissibility and relevance of state guidance in a federal citizen suit are pure questions of law.  An expert may not instruct the Court on what legal sources are relevant. |
| "The court would likely use 28 U.S.C. § 2462 [and] top-down penalty [method with] approximately $229 million in civil penalties per violation." *Id*. at 3–4. | Predicting which statute of limitations and penalty methodology the Court "would use," then slotting in a penalty calculation, is quintessential legal analysis and advocacy.  Selection of the limitations period and penalty method are legal determinations. |

Courts in this Circuit have repeatedly excluded proposed expert opinions and testimony that were disguised legal opinions. *See, e.g.*, SLSJ, 277 F. Supp. 3d at 268–71 (excluding expert's legal conclusions and opinions that tracked statutory language or were not tied to the facts of the case); *Marx & Co, Inc.*, 550 F.2d at 509–12 (excluding expert's contract interpretation opinions as usurping the court's role); *Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992) ("Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury.").

Mr. Macey cannot cure his opinions by claiming – contrary to fact – that his extensive discussion of case law and other authorities is something other than a legal opinion. Mr. Macey's insistence that he merely "described" *United States vs. Bestfoods International* and "did not apply" it (*See* Ex. C, Macey Dep., at 11:4–15; 242:9-12) is belied by the Reports' repeated use of legal terms and conclusions—"operated," "controlled," "beyond oversight," "ability to pay," "top-down penalty," "§ 2462"—and by his proposed penalty framework and numbers. Courts exclude such testimony even if phrased as "description" because it communicates legal standards and conclusions. *Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d Cir. 2010); *see also*, *See Learning Care Group, Inc. v. Armetta*, No. 3:13-CV-1540 (VAB), 2016 WL 3248178, at *6 (D. Conn. June 12, 2016) (Bolden, J.) (holding that expert testimony concerning "theories of recovery, and which measures of damages to apply to which causes of action," are inadmissible.).

### B.    Mr. Macey's Legal Opinions Are Not the Result of a Reliable Methodology and Are Not Based on the Facts of This Case

Mr. Macey's so-called "legal opinions" are nothing more than factual summaries of cherry-picked, publicly available materials and documents provided by Plaintiff's counsel. Admittedly, Macey did not conduct any independent analysis or apply any specialized

11

methodology.  Instead, he merely recited a selective narrative based on evidence handpicked for him by counsel, while disregarding the broader factual record—including key documents and testimony that directly undermine his conclusions.  *See* Ex. C, Macey Dep. at 61:13–62:20; 62:8–63:1; 21:10–13.  Simply engaging in improper narrative description based on a review of cherry-picked documents is not a reliable methodology.

Mr. Macey admitted that he did not conduct any independent review of the case documents.  Instead, Macey relied exclusively on materials selected and provided by Plaintiff's counsel, testifying that he "reviewed those documents" and "on the basis of the documents they furnished, in response to my description of the kinds of documents that would be useful, I prepared my report."  *Id*. at 67:4-15.

From an evidentiary perspective, Mr. Macey's approach is fundamentally unreliable because he failed to consider or address other key information directly relevant to the opinions he offers.  For example, Mr. Macey opines that Defendants, especially Equilon, exerted operational control over the Terminal during the period in which it was owned and operated by Motiva.  *See* Ex. A, Report, at ¶25–48.  Yet when questioned, Mr. Macey could not identify a single document showing Equilon's involvement in operations at the Terminal prior to 2017, when it is undisputed that Motiva owned and operated the Terminal.  The only documents he cited concerned a 2001 consent decree that did not even cover the New Haven Terminal.  *See* Ex. C, Macey Dep. at 120:5-121:1.

Mr. Macey also opines that the Terminal's operational control, a legal concept for parent-subsidiary relationships, was exercised in furtherance of Shell plc's environmental and climate policies, with Shell plc's global policies and standards being directly implemented at the Terminal.  *See* Ex. A, Report, at ¶38–48.  But again, Mr. Macey failed to cite any documents that

12

actually apply to—or even reference—the New Haven Terminal, so it is unclear how Mr. Macey could even arrive at the conclusion that Shell plc exerted control over that facility:

> Q. **And you haven't reviewed the SEAM standards either?**
>
> A. I have not.
>
> Q. So your expert reports obviously do not offer any opinions regarding SEAM standards, hurricane action plan or the business continuity plan, right? Because you haven't reviewed them?
>
> A. I don't think I reviewed this hurricane action plan. I reviewed some hurricane stuff, but I don't think this is the one. But we'd have to look back.
>
> Q. In any events, my question still stand, you're not offering any opinions about those documents in this case?
>
> A. Correct.

*See* Ex. C, Macey Dep. at 194:23-195:12 (emphasis added).  Mr. Macey improperly reaches this conclusion even though in his deposition he concedes that these types of corporate arrangements are common:

> A. Again, it is common to exercise supervision.  It is common to be able to oversee and possibly approve or veto certain spending decisions.  And so the question of whether those other entities exercise operational control gets to does this at the day-to-day things, is it the major issues.  So again, it's a case specific inquiry that we've been getting at.

*Id.* at 256:24-257:6.  *See also id.* at 83:5-17 (vertical integration is "extremely common" and "there's nothing inherently wrong with vertical integration"); 87:10-15 ("Q. Is it also common for a parent company to install a board of directors to manage its subsidiaries?  A.  Yes.  Q. Nothing inherently wrong with that, right?  A. Nothing inherently wrong about that.").

Finally, Mr. Macey failed to consider the fact that the Court already dismissed Shell Oil Company and Shell Petroleum, Inc. – two intermediate, US-based parent companies of Triton and Equilon – with prejudice.  Nonetheless, he claims that non-party Shell plc, a party further upstream from Triton and Equilon should be considered in connection with any proposed penalties.

13

Mr. Macey's admissions underscore two independent Rule 702 defects. ***First***, he cherry-picked evidence by relying only on certain publicly available materials and produced documents selected by Plaintiff's counsel. That approach not only skews his analysis, but also demonstrates that his opinions are simply attorney advocacy for Plaintiff's position, not the product of any reliable or objective expert methodology. ***Second***, he failed to consider or obtain information that directly bears on the very opinions he offers, such as operational control and compliance obligations, rendering his conclusions unsupported and unreliable

Allowing Mr. Macey to present a selective narrative assembled from cherry-picked public sources and counsel-curated documents—while disregarding case-specific operational and regulatory materials—would usurp the factfinder's role and contravene Rule 702's reliability requirements. Courts routinely exclude such *ipse dixit* summaries that do not apply specialized knowledge or methodology. *See Wang*, 2025 WL 1782264, at *3 (citation modified) ("These conclusions are based on straightforward review of the evidence without application of particular "scientific, technical, or other specialized knowledge," and therefore allowing Fisher to testify on this issue would impermissibly usurp the role of the jury. Fed. R. Evid. 702(a)."); *see also*, *Duchimaza v. United States*, 211 F. Supp. 3d 421, 430–31 (D. Conn. 2016) (excluding an expert whose opinions "reflect mere characterization of the sort of data that a layperson could make.").

## C. Because They Are Pure Legal Opinions, Mr. Macey's Opinions Cannot Assist the Factfinder

Mr. Macey's legal opinions regarding non-party Shell plc cannot assist the jury in assessing liability (a subject Mr. Macey's report does not even address) or any alleged penalties.

First and foremost, Shell plc is not a party to this case. Plaintiff has not asserted any claims against Shell plc, nor has it sought to hold Shell plc liable under any theory. *See* ECF 47. Any opinions regarding Shell plc's conduct, policies, or alleged operational control are wholly

14

irrelevant to the liability or penalty determinations that must be made with respect to the actual Defendants.

The relevant inquiry under the CWA and RCRA penalty provisions is the financial condition and resources of the entities found liable—not their parent or affiliates. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005) (holding "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Even Mr. Macey admits that his opinions about Shell plc's global policies, corporate structure, or alleged influence over the Terminal **do not bear** on whether the Defendants themselves violated the 2018/2021 Permit. The focus must remain on the conduct and compliance of the parties actually before the Court.

Allowing Mr. Macey to introduce irrelevant evidence or testimony about **non-party** Shell plc's global revenues, assets, or credit ratings would serve only to confuse the jury and invite improper consideration of the parent company's resources, rather than focusing on the actual parties and issues in dispute. *See Nimely*, 414 F.3d at 397 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice . . . exercises more control over experts than over lay witnesses.") (citation omitted)).

**D.    Mr. Macey's Opinions About Nonparties Are Irrelevant**

As Mr. Macey has recognized, neither Shell plc nor Shell USA, Inc. is a party to this litigation. *See* Ex. C, Macey Dep., at 21:22-25. As the party that initiated this lawsuit, CLF identified and pled its claims against Defendants over four years ago. Plaintiff has voluntarily dismissed its claims against Shell USA, Inc., with prejudice, and has never asserted any cause of action or attempted to name Shell plc in this case. Nor did CLF plead allegations necessary to pierce the corporate veil, let alone against entities that are not parties to this litigation. *See* ECF

47; *see also*, *id.*[2]  As a matter of law, CLF cannot seek relief of declaratory and injunctive relief, or civil penalties, from a non-party.

Mr. Macey's opinions concerning these nonparty corporate entities, their alleged financial condition or viability, and/or ability to pay a penalty or be liable for damages or injunctive relief, if any, that may result from a lawsuit to which they are not parties, have no bearing on any issue in this lawsuit.  He admitted as much in his deposition:

> Q. **[Y]ou agree that Shell PLC's balance sheet has nothing to do with whether the defendants are in compliance with the permit requirements that are in place at the New Haven term[inal]?**
>
> A. [C]orrect.

Macey Dep. at 232:5-13.

> Q. **Shell PLC income before taxation.  Do[es] that[] have anything to [sic] do with whether or not defendants are in compliance with the permit requirements?**
>
> A. No, I don't think so.
>
> Q. How about Shell PLC's profitability in general?
>
> A. . . . **Shell's balance sheet is not relevant to the question of liability.**

*Id.* at 232:14-25.

As this demonstrates, Mr. Macey's testimony, which "does not relate to any issue in the case is not relevant and, ergo, non-helpful." *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005) (holding "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

---

[2] CLF has not "allege[d] a sufficient factual basis for a court to pierce the corporate veil," or any claim applying alter ego liability, or any other theory that would impute Shell plc's conduct or resources to the Defendants, which is required under Connecticut law.  *See Emma Rosina, LLC v. Bilides Bldg. & Excavating, LLC*, No. CV020462976S, 2002 WL 31898066, at *2 (Conn. Super. Ct. Dec. 10, 2002) ("Under Connecticut law, courts should pierce the corporate veil only under 'exceptional circumstances.'") (citation omitted).  Mr. Macey agrees that holding a parent corporation liable for the actions or losses of one of its subsidiaries "is the exception, not the rule."  Ex. C, Macey Dep. at 98:3-7.

### E.    Mr. Macey Lacks the Requisite Qualifications to Opine as an Expert

Mr. Macey is a law professor.  He has no technical or regulatory expertise, and lacks the qualifications to offer conclusions about the financial condition and viability of non-party corporate entities, statutory interpretation, application, or compliance.  "The basis of expert capacity, according to Wigmore (s 555), may 'be summed up in the term 'experience.'" *Marx & Co., Inc.* 550 F.2d at 512.  As his deposition testimony makes clear, **Mr. Macey has no such experience**.  For example:

**Mr. Macey has no knowledge or experience regarding statutory or regulatory frameworks, including in interpretation, application, or compliance outside of an academic setting:**

- Mr. Macey has no experience working for or directly with any state or federal government agency, including the CT DEEP or the EPA. *See id.* at 30:23–31:1, 32:15–17. He has no other experience working for a government agency in regulatory compliance and enforcement.  *See id.* at 33:2–7.

- Mr. Macey has no experience or expertise regarding the CWA or RCRA.  He has never worked for a government agency in enforcement of federal regulations under the CWA or RCRA, including never assisting any agency in determining whether a statutory penalty is warranted, and if so, providing assistance in calculating the amount of said penalty.  *Id.* at 37-39.  He has also never published or presented anything concerning the regulation of bulk fuel storage, industrial stormwater permits, the CWA, or RCRA.  *Id.* at 46-47.

- Mr. Macey has never spoken directly with any individual employed by or otherwise affiliated with CT DEEP or the EPA about industrial stormwater permits or any other issues relevant to this lawsuit.  *Id.* at 31-32.

**Mr. Macey has no training, experience, understanding, or working knowledge concerning bulk fuel storage facilities or the application of or compliance with relevant statutes and regulations:**

- Mr. Macey has no experience or familiarity with bulk storage facilities or any type of manufacturing or chemical facility, or in any capacity relevant to compliance with environmental regulations within such facility.  *Id.* at 33:13-34:23.  Before his involvement in this lawsuit, Mr. Macey had not previously worked on any projects or studies regarding bulk fuel storage facilities.  *Id.*

17

- Mr. Macey has never prepared or certified a Stormwater Pollution Prevention Plan ("SWPPP") or Spill Prevention and Counter Measures Control Plan ("SPCC"). *Id.* at 33-34. In fact, he asked defense counsel to define these acronyms during his deposition. *Id.* Nor is he "an expert in things like drainage of stormwater." *Id.* at 168:20-25.

- Mr. Macey has never taught law classes in subjects relevant to the CLF's claims in this lawsuit, including any issue pertaining to regulation of bulk fuel storage facilities or industrial stormwater permits. *Id.* at 47:1-8. He has also never taught ethics, civil procedure, or evidence. *Id.* at 49:2-11.

- Mr. Macey is not a climate scientist. *Id.* at 31. His background is limited to "legal corporate governance, corporate structure insurance." *Id.* at 33:8-12. He has no expertise "from an engineering perspective" in "climate change adaptation efforts" or "[a]ctions that one would take to adapt to climate change." *Id.* at 32:2-17.

- Mr. Macey has no training or experience in any type of engineering. *Id.* at 25:20–24.

- Mr. Macey is not a meteorologist, toxicologist, or hurricane risk mitigation expert. *Id.* at 31:5-10, 151:19-24.

Further, Mr. Macey is not qualified to offer the opinions he articulates concerning the financial condition and viability of certain nonparties, including whether Shell plc has a "healthy balance sheet."

- Mr. Macey does not "identify . . . [or] think of [him]self as an economist" does not have a degree in economics, finance, or accounting and is not a CPA. *Id.* at 30:17-31:4.

- Mr. Macey does not have any other educational degrees, professional certifications, or licenses. *Id.* at 30:5-8.

- Though he attempts to provide opinions concerning corporate governance policies and practice of the entities in this lawsuit, the documents he cites do not actually support his opinions. He did not review the depositions or declarations of the individuals with actual knowledge. And Mr. Macey lacks any personal knowledge or experience regarding Defendants' operations that could otherwise save these opinions. *Id.* at 213:11-14.

That he "teaches and writes about bankruptcy . . . and the regulation of financial institutions,"[3] is entirely academic in nature, and does not amount to expertise in assessment of financial resources of corporate entities. In terms of his legal conclusions and regulatory opinions, regardless of his education, Mr. Macey lacks the practical knowledge, skill, experience,

---

[3] Ex. D, Macey Dep. Ex. 5.

18

and training necessary to apply his academic background to provide the factfinder with helpful expert opinion. Without these credentials, Mr. Macey does not have the qualifications to provide opinions concerning the economic or financial condition and viability of any entity, including unqualified opinions about those matters that have no bearing on the issues here. The Court should not allow CLF to inject opinions into trial that can serve no purpose other than to confuse and mislead the jury and needlessly consume valuable trial time.

### F.    The Court Should Exclude Mr. Macey's Opinions Under Rule 403

Mr. Macey's opinions create significant risks of unfair prejudice to Defendants for two reasons: (1) the factfinder may defer to his legal conclusions rather than the Court's instructions, thereby usurping the Court's and the factfinder's proper roles; and (2) his testimony confuses the issues by introducing evidence about non-parties that are unabashedly intended to inflame the passions of the jury against a large, global corporation with substantial assets. As such, even apart from Rule 702, Mr. Macey's testimony should be excluded under Rule 403 because its minimal probative value is substantially outweighed by the dangers of unfair prejudice, confusion, and misleading the jury. *Nimely*, 414 F.3d at 397 ("In addition to the requirements of Rule 702, expert testimony is subject to Rule 403 . . . given the unique weight such evidence may have in a jury's deliberations.") (citation omitted).

Jurors are especially likely to defer to a law professor from a prestigious institution, such as Yale Law School, and claims expertise in specialized legal subjects. Having Mr. Macey present CLF's view of the law before the Court creates a substantial risk that the jury will give Mr. Macey's opinions undue weight, simply because of his academic pedigree, rather than evaluating the substance of his testimony. *See, e.g.*, *Marx & Co., Inc.*, 550 F.2d at 512 ("We cannot ignore the tendency of juries on occasion "to decide simply according to the preponderance of numbers and of influential names."); *United States v. Frazier*, 387 F.3d 1244,

19

1263 (11th Cir. 2004) ("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors.").

Allowing such testimony risks the jury believing that the expert's legal conclusions are more authoritative than the Court's instructions, which is fundamentally improper. *TMI Tr. Co. v. WMC Mortg.*, *LLC,* No. 3:12-CV-1538 (CSH), 2017 WL 6617050, at \*4 (D. Conn. Dec. 28, 2017) ("The principal target of *Daubert* and Rule 702 is the professional expert witness—well educated, impeccably dressed, highly articulate—who dispenses cleverly packaged junk scientific or other specialized opinions to lay jurors."); *Frazier*, 387 F.3d at 1263 ("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors.").

Mr. Macey's testimony includes a factual narrative about corporate structure and parent–subsidiary relationships that is not relevant to the issues the jury must decide. Macey's narrative also risks confusing the jury by encouraging consideration of extraneous matters, rather than focusing on the actual elements at issue. For instance, Mr. Macey's opinions regarding the financial condition of a nonparty serve only to inflame potential bias against large corporations, inviting the jury to render a verdict based on prejudice rather than the facts and law.

Courts have long recognized the prejudicial impact of evidence concerning a defendant's wealth, and the risk is even greater when such evidence concerns nonparties. *See, e.g.*, *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 US 443, 464 (1993) ("We agree with TXO that the emphasis on the wealth of the wrongdoer increased the risk that the award may have been influenced by prejudice against large corporations . . ."); *see also id*. at 492 ("It is a good guess that rich men do not fare well before juries, and the more emphasis placed on their riches, the less well they fare.") (O'Connor, J., dissenting) (citation omitted); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[T]he presentation of evidence of a defendant's net

20

worth creates the potential that juries will use their verdicts to express biases against big business . . .").

Rule 403 requires exclusion of such testimony to ensure that the jury's verdict is based on the law as instructed by the Court and the facts in the record—not on the perceived authority of an expert witness.

## V.      CONCLUSION

For the foregoing reasons, the Court should exclude Mr. Macey's opinions because they fail to satisfy the prerequisites to admissibility of Federal Rules of Evidence 401-403, and 702.

Dated: October 3, 2025                                Respectfully submitted,

*/s/ Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)

Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

22

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com

23