# Exhibit J

# Filed Under Seal

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

Conservation Law Foundation

v.

Equilon Enterprises LLC et al.

Case No. 3:21-cv-00933

**EXPERT WITNESS REPORT OF DAVID M. UHLMANN**

**June 23, 2025**

**<u>Introduction</u>**

1.      I was retained by King & Spalding to evaluate claims against their clients, Equilon Enterprises LLC ("Equilon), Triton Terminaling LLC ("Triton"), and Motiva Enterprises LLC ("Motiva") (collectively, "Defendants"), brought by the Conservation Law Foundation under the Clean Water Act and the Resource Conservation and Recovery Act ("RCRA") and, if requested to do so, to provide expert testimony on behalf of Defendants. Before agreeing to provide an expert opinion in this matter, I advised King & Spalding that I would make no promises about what my opinions would be regarding the merits and the enforceability of Plaintiff's claims against Defendants. King & Spalding and its clients agreed to retain me with that understanding at the rate of $2,250 per hour.

2.      This expert witness report summarizes my opinions related to several issues raised by the Amended Complaint filed in this case, as well as expert reports submitted by Plaintiff. My review has focused on Plaintiff's claims regarding the General Permit for the Discharge of Stormwater Associated with Industrial Activity issued in 2018 by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") and reissued in 2021 without any relevant substantive changes (the "2018/2021 General Permit"). The 2018/2021General

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

**Expert Report of David M. Uhlmann**
**Page 2**

Permit governed stormwater discharges at a bulk storage fuel terminal located at 481 East Shore Parkway, in New Haven, Connecticut (the "New Haven Terminal").

3.      Specifically, I have been asked to opine about Plaintiff's allegations that, at the time the Amended Complaint was filed, Defendants were in violation of a requirement in the General Permit that permittees implement a Stormwater Pollution Prevention Plan ("SWPPP") that includes specific best management practices "to minimize the discharge of pollutants from the permitted facility," where the term "minimize" means "reduce and/or eliminate to the extent achievable using control measures that are technologically available and economically practicable and achievable in light of best industry practice." In addition, I have been asked to opine whether the Defendants created an imminent and substantial endangerment as that term is defined under RCRA through their operation of the New Haven Terminal. Finally, I was asked to opine whether the parent company of Defendants, Shell USA, operated the New Haven Terminal and was responsible for any violations at the New Haven Terminal and whether Shell USA's assets would be relevant in determining the amount of any penalties imposed against Defendants.

4.      Based on the information I reviewed, it is my expert opinion that Defendants complied with the enforceable stormwater pollution prevention requirements of the General Permit by implementing a hurricane action plan and adopting other emergency response measures at the New Haven Terminal. In my opinion, from an enforcement perspective, the "best management practices" and "best industry practices" incorporated into the 2018/2021 General Permit did not require Defendants to take the additional climate resiliency measures specified in the Amended Complaint and in an expert report submitted by Plaintiff. It may have been advisable to implement additional climate resiliency measures at the New Haven Terminal—and

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

**Expert Report of David M. Uhlmann**
**Page 3**

permit revisions in 2024, for the first time, require specific climate resiliency measures. In my opinion, however, from an enforcement perspective, it would not have been possible to treat those specific climate resiliency measures as best industry practices for petroleum bulk storage facilities at the time the Amended Complaint was filed in 2021. To my knowledge, there has never been a Clean Water Act enforcement action for general permit violations, predicated on the best industry practice language, other than this case and three other similar cases filed by Plaintiff against terminal owners or operators in Massachusetts, Rhode Island, and Connecticut.

5.      It is my expert opinion, based on the materials I have reviewed, that Defendants did not create an imminent and substantial endangerment, as that term is defined under RCRA. RCRA creates a cradle-to-grave regulatory scheme for treating, storing, and disposing of hazardous waste. It is my understanding that Defendants were "small quantity generators" of hazardous waste at the New Haven Terminal, based on leaks and spills that occurred occasionally at the facility. But the fuel stored by Defendants at the New Haven Terminal, which is the focus of Plaintiff's imminent and substantial endangerment claims, would only become a solid waste and therefore regulated under RCRA if it were released into the environment. In my opinion, if the legal theory alleged in the Amended Complaint were actionable under RCRA, hundreds if not thousands of facilities across the United States also would be creating imminent and substantial endangerments in violation of RCRA, which is not the intent of the statute.

6.      It is my expert opinion, based on the material I have reviewed, that the corporate parents of Defendants, including Shell USA, did not exercise "active" control over operations at the New Haven Terminal, including over day-to-day operations and decisions relating to compliance with the Clean Water Act. Plaintiff also references "Shell plc" in certain reports, but