# Exhibit A

## Filed Under Seal

## EXPERT REPORT OF SUSAN PARKER BODINE

1. I am Susan Parker Bodine. I am a partner in the law firm Earth & Water Law in Washington, D.C. I have expertise in the scope of the regulatory authority of the Clean Water Act, 33 U.S.C. 1251 *et seq.* and the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq*. My business address is 1455 Pennsylvania Ave., N.W., Suite 400, Washington, D.C. 20004.

**Assignment**

2. I have been retained by King & Spalding LLP to provide an expert opinion regarding whether the facts alleged by Conservation Law Foundation in *Conservation Law Foundation v. Shell Oil Company, et al,* No. 3:21-cv-00933 (D. Ct.) are relevant to the technical requirements of the Clean Water Act (CWA) or the Resource Conservation and Recovery Act (RCRA). My role as an expert is to provide background and technical context regarding the regulatory frameworks, statutory authority, and practical implementation of the CWA and RCRA, based on my extensive experience and expertise in the technical requirements of these statutes. I do not offer legal conclusions or opinions as to the ultimate legal issues in this case, nor do I intend to instruct the Court or jury on the law. My opinions are limited to the technical requirements and regulatory practices under these statutes as they are generally understood and applied by regulatory agencies. I am being compensated at my hourly rate of $750/hr. My compensation is not dependent on the outcome of the litigation.

**Summary of Opinions**

3. The following reflects my technical and regulatory opinions, based on my extensive experience in the enforcement and administration of the CWA and RCRA. My opinions are intended to assist the Court and the parties in understanding the regulatory context and technical requirements of these statutes and are not offered as legal conclusions or as instructions on the law.

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER                    1

4. Based on my decades of technical experience with the CWA, it is my opinion that the duties that Conservation Law Foundation (CLF) seeks to find in the CWA and the Connecticut Department of Energy & Environmental Protection's (DEEP's) 2018 and 2021 General Permit for the Discharge of Stormwater Associated with Industrial Activity are not related to meeting CWA obligations. Specifically, a "climate assessment" and proposed measures to adapt to increased flood risks that may result from climate change do not meet the CWA definition of effluent limits or standards and are not limitations on a discharge, which are central to establishing the practical scope of CWA authority. Further, even if climate assessment and adaptation measures fell within the scope of CWA authority, they do not represent best industry practices so the applicable DEEP permit includes no requirement to implement them.

5. Based on my decades of experience with RCRA technical requirements, it also is my opinion that the petroleum product stored in aboveground storage tanks at the Terminal is not a solid or hazardous waste regulated under RCRA. Specifically, the petroleum product inside of the tanks at Defendants' New Haven Terminal, located at 481 East Shore Parkway, New Haven, Connecticut ("the Terminal") has not been discarded. Therefore, there is no authority under RCRA to regulate the storage of petroleum product at the Terminal.

6. These opinions are based on my extensive experience with the technical requirements of the CWA and RCRA and my understanding of how the CWA and RCRA are interpreted by EPA and implemented in practice and by applying my knowledge of these statutes to the facts presented in this matter. I gained this understanding as a regulator tasked with enforcing these statutes and related regulations, as a regulator tasked with implementing these statutes and revising related regulations, as a congressional staffer tasked with overseeing agency implementation of these statutes and drafting legislation to amend these statutes, and as an attorney in private practice tasked with advising clients on compliance with these statutes.

7. I explain the bases for these opinions below.

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER          2

**Qualifications**

8. I am an environmental law, regulatory compliance, and waste and water policy expert with a J.D. from the University of Pennsylvania (1988). I am a member in good standing of the bar of the District of Columbia.

9. In my 37-year career I have gained significant expertise in the CWA and RCRA. In particular:

   a. From August 1988 through December 1994, I was an associate in the law firm Covington & Burling, where, among other things, I worked on Clean Water Act permits and compliance as well as RCRA regulations and compliance.

   b. From January 1995 through December 2005, I served as a senior counsel and then as staff director of the Subcommittee on Water Resources and Environment of the House Transportation and Infrastructure Committee. That subcommittee has jurisdiction over oil and other pollution of navigable water, including inland, coastal, and ocean waters (which includes jurisdiction over the Clean Water Act). The subcommittee also has jurisdiction over flood control and improvement of rivers and harbors (which includes jurisdiction over the civil works program of the U.S. Army Corps of Engineers).

   c. As a member of the subcommittee staff, I worked on legislation pertaining to and oversight over implementation of the Clean Water Act and the Corps' flood control mission.

   d. The Transportation and Infrastructure Committee also has jurisdiction over federal management of emergencies and natural disasters (which includes jurisdiction over the Federal Emergency Management Agency (FEMA)). Jurisdiction over FEMA now resides within the Subcommittee on Economic Development, Public Buildings, and Emergency Management although in the 104th Congress (1995-96) the FEMA jurisdiction resided within my subcommittee.

**CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER**          3

e.  From January 2006 through January 2009, I served as the Assistant Administrator for the Office of Solid Waste and Emergency Response (OSWER) (now the Office of Land and Emergency Management) of the U.S. Environmental Protection Agency (EPA). That EPA headquarters office is the National Program Manager for EPA's RCRA hazardous waste program and EPA's Spill Prevention, Control, and Countermeasure (SPCC) program. My position required Senate confirmation. In my role as the Assistant Administrator of OSWER, I was responsible for the interpretation and revision of technical regulations.

f.  As the Assistant Administrator for OSWER, I was extensively involved in the October 2008 EPA rulemaking to conform the RCRA Definition of Solid Waste to various decisions of the federal Court of Appeals for the District of Columbia Circuit. That rulemaking focused on identifying when hazardous secondary material has been discarded, which determines when RCRA regulatory authority comes into effect, an issue that is an issue in this litigation. In 2015, a subsequent administration made changes to the October 2008 Definition of Solid Waste regulation. However, after judicial review, the D.C. Circuit vacated many provisions of the 2015 rule for failure to recognize the limits of EPA's statutory authority and restored the October 2008 provisions.

g.  As the Assistant Administrator for OSWER, I also was extensively involved in the December 2008 EPA rulemaking to add flexibilities to EPA's CWA Spill Prevention, Control, and Countermeasure Rule regulations.

h.  From March 2009 through December 2014, I was a partner at the law firm Barnes & Thornburg in Washington, D.C. During that time, on behalf of clients, I was extensively involved in EPA's development and implementation of CWA regulations on behalf of both the agricultural community and the homebuilding community. This work focused on the limits of EPA's authority under the CWA to control runoff.

i.  During my tenure at Barnes & Thornburg, I also worked on EPA's regulations pertaining to non-hazardous secondary materials. The purpose of those regulations is to determine when a non-hazardous secondary material is a waste when combusted. If the secondary material is a waste, it can only be combusted in

a unit that meets the Clean Air Act standards for commercial and industrial solid waste incinerators. I also was involved in the D.C. Circuit litigation challenging those regulations. Like the October 2008 definition of solid waste rulemaking, the non-hazardous secondary material rulemaking focused on identifying when a secondary material has been discarded.

j. From January 2015 to September 2017, I served as the Chief Counsel for the Senate Committee on Environment and Public Works. This committee has jurisdiction over all federal environmental laws, including the CWA and RCRA. As a member of the committee staff, I oversaw agency implementation of the CWA and RCRA and drafted legislation relating to both statutes.

k. From December 2017 to January 2021, I served as the Assistant Administrator for EPA's Office of Enforcement and Compliance Assurance (OECA). I was confirmed by the Senate for this position. Under my direction, this office monitored compliance with all federal environmental laws and enforced against violations of those laws, including the Clean Water Act and RCRA. In my role as the Assistant Administrator of OECA, I was responsible for ensuring the regulated community complied with technical regulations.

l. Since March 2021, I have been a partner at Earth & Water Law, LLC.

m. From these experiences, I have developed specialized knowledge of, and a unique perspective on, the technical provisions of the CWA and RCRA and their implementing regulations, which will aid the fact finder in understanding this complicated, technical body of compliance obligations.

10. Over the course of my career, I have analyzed the CWA and RCRA regulatory requirements on hundreds of occasions, researched the technical requirements of the CWA and RCRA regulations, drafted CWA and RCRA regulations, drafted amendments to the CWA and RCRA, and worked on the implementation and enforcement of the CWA and RCRA regulations in numerous matters across a wide range of industries.

**CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER**