

For a thriving New England
CLF Connecticut
www.clf.org

October 21, 2025

The Honorable Vernon D. Oliver
United States District Court
450 Main Street
Hartford, CT 06103

**RE:** *Conservation Law Foundation v. Shell Oil Co., et al.*, No. 3:21-cv-933 (D. Conn.),
Plaintiff's Request for Pre-Filing Conference On Motions for Partial Summary Judgment

Dear Judge Oliver,

Plaintiff, Conservation Law Foundation, Inc. ("CLF") respectfully submits this letter brief in accordance with the Court's Pretrial Instructions, and Orders 790 and 797.

**CLF's Bases for Summary Judgment**

CLF has four bases for summary judgment:[1] (1) Defendants failed to certify their Stormwater Pollution Prevention Plan ("SWPPP") for the New Haven Terminal, (2) the Terminal's secondary containment area is not impermeable, (3) the Terminal's secondary containment area is undersized, and (4) evaluating and accounting for climate change impacts is a Best Industry Practice. Relevant to all bases, Defendants Motiva, Triton, and Equilon are admitted owners and operators of the Terminal who held and implemented the mandatory permits under the CWA and RCRA for all periods of time within the statute of limitations. SOF ¶¶ 1-5. Each Defendant admits various Shell Group policies control their operations. *Id.*

*Defendants Failed to Certify their SWPPP*

Compliance with the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit") must be written down in a SWPPP with mandatory sections. The SWPPP must be certificated by qualified individuals who sign their name to a specific statement describing the analysis that went into creation of the SWPPP and attesting to the engineering parameters the facility is designed and maintained to. The General Permit requires three different certifications. SOF ¶¶ 20, 22–25 (General Permit §§ 5(c)(4), 5(c)(7), 5(c)(2)(F)). It is an undisputed fact that until 2017 Defendants' SWPPP was contained in a compilation document called the Integrated Contingency Plan, and that document did not contain the mandatory "Plan Certification." SOF ¶¶ 26, 29–30. This certification requires a licensed professional engineer to attest to a thorough and complete review of the SWPPP and the application of professional judgement to confirm compliance with the permit. SOF ¶ 24; (General Permit § 5(c)(7)). In 2017, Defendants issued a new SWPPP that facially included all three certifications, but certifications were expressly and limited to only certain analyses and evaluations, which violates the certification requirements. SOF ¶¶ 32-34. Appendices D and G of the SWPPP document these limitations, and

---

[1] The issues identified in this letter are based on the operative complaint at this time. CLF may modify this request or seek leave for an additional request following the Court's ruling on CLF's pending Motion for Leave to File Second Amended Complaint.

Triton's deposition testimony confirms that their certification was not "full" as required. SOF ¶¶ 33–34. The Permit does not allow conditional or partial certifications. SOF ¶ 20. Because none of the three certifications were properly executed during the relevant period, the SWPPP was invalid, and Defendants were in continuous breach of the Permit.

Certifications are a cornerstone to how regulatory agencies ensure compliance with environmental permits. Each certification is mandatory, must follow specific language, and must be independently executed. Defendants' failures to properly certify their SWPPPs are violations of the Permit as set forth in Counts 3 and 9 of the Amended Complaint and adjudication of these violations will streamline the issues left for trial.

*Defendants Secondary Containment Area Is Not Impermeable*

The General Permit requires permittees to "minimize the potential for leaks and spills," and where double-walled tanks are not used, mandates the use of "an impermeable secondary containment area" of sufficient volume. SOF ¶¶ 35-36. Because the New Haven Terminal does not use double-walled tanks, its secondary containment must be impermeable to comply with the Permit. This requirement is central to Count 7 of the Amended Complaint.

It is undisputed across the record that the Terminal's secondary containment areas are ███. Defendants' 30(b)(6) witness testified ███. SOF ¶ 52. ███. SOF ¶¶ 40–51, 54-57. Defendants' documents ███. SOF ¶ 57. CLF's expert corroborated these findings, concluding that ███. SOF ¶¶ 53, 56. The Terminal's SWPPP does not certify impermeability, and Shell's consultant testified that no permeability assessment was conducted, despite acknowledging it as best industry practice. SOF ¶¶ 58-68. Defendants' failure to make their secondary containment area impermeable is a violation of the General Permit's requirement to minimize risk of leaks and spills, as set forth in the Amended Complaint Count 7 and adjudication of these violations will streamline the issues left for trial.

*Defendants Secondary Containment Area is Inadequately Undersized*

The General Permit requires that secondary containment areas for aboveground storage tanks can hold a certain volume of liquid to account for catastrophic tank failures and leaks. SOF ¶ 69. The secondary containment areas must hold either 100% of the volume of the largest tank or 10% of the total volume of all tanks in the area, whichever is greater, without overflow. SOF ¶ 69 (General Permit § 5(b)(9)(A)(i)).

It is undisputed that ███ SOF ¶ 72. ███. SOF ¶¶ 70-71. ███. SOF ¶¶ 70-71.



▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. SOF ¶¶ 72-75.

Despite this ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, it is an undisputed fact that Shell failed to take the required actions under the General Permit. Section 6(b) of the Permit obligates permittees to immediately investigate and correct violations and report the violation and corrective actions to CT DEEP within five days. Permittees are further required to amend the SWPPP within 120 days of becoming aware of the violation (Permit § 5(c)(5)); and submit updated information to CT DEEP within 15 days (Permit § 6(g)). Shell did not comply with any of these requirements. It is undisputed that Defendants never notified CT DEEP of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. SOF ¶ 76. Defendants' failures to have sufficient secondary containment volume, and subsequent failures to notify CT DEEP after identifying the issue are violations of the Permit, as set forth in the Amended Complaint Counts 5, 8 and 9, and adjudication of these violations will streamline the issues left for trial.

*Accounting for Climate Change Impacts is a Best Industry Practice*

Shell has known for decades that fossil fuels produce carbon dioxide and other greenhouse gases that have had, and will continue to have, catastrophic consequences for our planet. The company began modeling global warming and other climate change consequences with uncanny precision almost 50 years ago. Shell took its findings so seriously that—while publicly casting doubt on climate science—it invested heavily in protecting critical assets and infrastructure from the ever-increasing threat of climate risks such as sea level rise, increasing storm surge, and more frequent and extreme precipitation events. Despite implementing processes requiring analysis of, and adaptation to, climate change risks, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

This Court ruled the General Permit's requirement to minimize pollution to the Best Industry Practice includes climate change impacts, if it is the industry practice at Shell or within the industry. MPSJ Hearing Tr., ECF 305 at 84:3–12. There is no genuine dispute that (1) Shell knew its fossil fuel products were contributing to climate change and climate change posed risks to its facilities, SOF ¶¶ 77-93; (2) that Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, SOF ¶¶ 94-112, and ▓▓▓▓▓▓▓▓▓▓▓▓▓, SOF ¶¶ 96–129, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, SOF ¶¶ 114–133, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and (3) that Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, SOF ¶ 134-138. CLF is entitled to summary judgment that the General Permit requires Defendants to evaluate and account for climate change risk.

**Proposed Briefing Schedule**

CLF proposes a deadline for filing its Summary Judgment Motion of 30 days after Request for Admission practice has been resolved as Defendants have failed to admit or deny many of the RFAs regarding facts about the Terminal's secondary containment area. In the alternative, it would be reasonable for CLF's deadline to be December 17, 2025. Defendants' Opposition, 21 days later on January 7, 2026. CLF's Reply, 14 days later on January 21, 2026.

----

Sincerely,

*s/ James Y. Meinert*

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574

New Orleans, LA 70130
Phone: (832) 671-6381
E-mail:
chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*