UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., *Plaintiff*, v. EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, , TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, *Defendants*. | Civil Action No. 3:21-cv-00933-VDO November 3, 2025 |

**DEFENDANTS' RESPONSES TO PLAINTIFF'S MOTIONS TO SEAL ITS MOTIONS TO PRECLUDE DEFENDANTS' EXPERTS [ECF 707, 715, 723, 731]**

Defendants Equilon Enterprises LLC d/b/a Shell Oil Products US, Motiva Enterprises LLC, and Triton Terminaling LLC, (collectively "Defendants") file this response to Plaintiff Conservation Law Foundation, Inc.'s ("CLF's" or "Plaintiff's") Motions to Seal portions of its Memorandums of Law in Support of and certain corresponding exhibits to its' Motions to Preclude Defendants' Expert Witnesses: Ms. Susan Bodine (ECF 707); Dr. Deborah French-McCay (ECF 715); Dr. Craig Jones (ECF 723); Mr. David Uhlmann (ECF 731); and Ms. Renee Bourdeau (ECF 738)[1] and respectfully request that this Court grant CLF's Motion to Seal the confidential materials related to three of those motions.

**I.      INTRODUCTION**

Plaintiff's Motions to Seal (ECF Nos. 707, 715, 723, and 731) urge wholesale unsealing of portions of its memorandums and corresponding exhibits thereto that contain, quote, or closely paraphrase confidential, non-public business information and technical materials,

---

[1] Upon further review, Defendants agree that **ECF Nos. 739-40** need not be sealed.

including expert reports that incorporate Defendants' proprietary standards and internal analyses previously ordered sealed in this very case. This includes expert reports and deposition testimony that discusses exhibits, including Defendants' expert reports, and documents produced in discovery that are themselves marked confidential. As such, Plaintiff's position is at odds with the governing standards of confidentiality, the Standing Protective Order ("SPO") entered by the Court, and the Court's prior sealing rulings addressing substantially similar material.

In support of its Motions to Preclude, CLF quoted or discussed the following documents in its Memorandums of Law and attached copies of the confidential materials thereto as exhibits:

- **ECF No. 707**: CLF's Motion to Seal Portions of its Daubert Motion to Preclude the Expert Testimony of Ms. Susan Bodine ("Bodine Motion").
    - **ECF No. 708**: Redacted portions of CLF's Memorandum of Law ISO Bodine Motion.
    - **ECF No. 709**: Exhibit A to CLF's Bodine Motion, a copy of Ms. Bodine's expert report.

- **ECF No. 715**: CLF's Motion to Seal Portions of its Daubert Motion to Preclude the Expert Testimony of Dr. Deborah French-McCay ("French-McCay Motion").
    - **ECF No. 716**: Redacted portions of CLF's Memorandum of Law ISO French-McCay Motion.
    - **ECF No. 717**: Exhibit 1 to CLF's French-McCay Motion, Dr. French-McCay's deposition transcript.
    - **ECF No. 718**: Exhibit 2 to CLF's French-McCay Motion, a copy of Dr. French-McCay's expert report.
    - **ECF No. 719**: Exhibit 3 to CLF's French-McCay Motion, a copy of CLF's expert witness Jacqueline Michel's expert report.
    - **ECF No. 720**: Exhibit 4 to CLF's French-McCay Motion, a copy of CLF's expert witness Dr. Robert Nairn's expert rebuttal report.
    - **ECF No. 721**: Exhibit 6 to CLF's French-McCay Motion, a copy of Dr. Jones' revised expert report.

- **ECF No. 723**: CLF's Motion to Seal Portions of its Daubert Motion to Preclude the Expert Testimony of Dr. Craig Jones ("Jones Motion").

- o **ECF No. 724**: Redacted portions of CLF's Memorandum of Law ISO Jones Motion.
- o **ECF No. 725**: Exhibit A to CLF's Jones Motion, a copy of Dr. Jones' expert report appendix A – curriculum vitae.[2]
- o **ECF No. 727**: Exhibit B: to CLF's Jones Motion, a copy of Dr. Jones' revised expert report.
- o **ECF No. 728**: Exhibit D: to CLF's Jones Motion, a copy of Dr. French-McCay's expert report.

- **ECF No. 731**: CLF's Motion to Seal Portions of its Daubert Motion to Preclude the Expert Testimony of Mr. David Uhlmann ("Uhlmann Motion").
  - o **ECF No. 733**: Redacted portions of CLF's Memorandum of Law ISO Uhlmann Motion.
  - o **ECF No. 735**: Exhibit A to CLF's Uhlmann Motion, a copy of Mr. Uhlmann's expert report.
  - o **ECF No. 736**: Exhibit B to CLF's Uhlmann Motion, deposition transcript of Defendants' expert Mr. Uhlmann.

As shown above, the materials at issue include expert reports and deposition testimony that discusses exhibits, including Defendants' expert reports, and documents produced in discovery that are themselves marked confidential. As such, Plaintiff's position seeking wholesale unsealing of these materials is at odds with the governing standards of confidentiality, the Standing Protective Order ("SPO") entered by the Court, and the Court's prior sealing rulings addressing substantially similar material.

Therefore, consistent with Local Rule 5(e)(3), the SPO, and this Court's prior orders, the Court should maintain sealing of the properly designated expert reports [ECF Nos. 709, 718, 719, 720, 721, 727, 728, and 735] and the deposition testimony that reveals or describes those confidential materials [ECF Nos. 717 and 736], as well as, the portions of CLF's Memorandums that cite, quote, or reference these confidential materials [ECF Nos.708, 716, 724, and 733].

---

[2] Upon further review, Defendants agree that **ECF No. 725**, Appendix A of Dr. Jones' Expert Report, which contains a copy of Dr. Jones' current CV, need not be sealed. For the avoidance of doubt, Defendants maintain that all other portions of Dr. Jones' Expert Report have been properly designated confidential and should remain under seal.

In addition, CLF has previously broadcasted its motivation to publicize these materials based on a desire to solicit fundraising contributions from its donors-not in pursuit of any public need for the documents to be in the public domain. See ECF 508, Defendants' Opp. to Plaintiff's Motion to Modify the SPO, at 1-2.  Indeed, CLF's fundraising email to its donors explicitly referenced a large document review of confidentially designated documents, and tied the public disclosure of Defendants' materials to CLF's solicitation of donations, raising the question, "What are they hiding?"  *Id*. (further suggesting that "Shell is fighting to conceal" documents which CLF believes "the public has a right to know").  That email to CLF's donors reveals its true intentions to de-designate Defendants' confidential documents for its own fundraising purposes, not for any public need or the adjudication of any issues before the Court.  CLF's clear intent is flatly inconsistent with the SPO's command that Designated Material be used only for this litigation.  Further, as is the case here, where a litigant signals it will leverage court-filed materials for extra-judicial publicity and fundraising, the risk of misuse and competitive harm is heightened.

## II.    LEGAL STANDARD

Courts in the Second Circuit, including this Court in this case, have found that exhibits containing "confidential, proprietary, and commercially sensitive information that would cause significant competitive harm if publicly disclosed" warrant filing under seal.  ECF 622.  For example, on May 16, 2023, this Court granted in part a similar motion to seal Defendants' confidential documents on the basis that "the Defendants' claims outweigh the relatively low weight that attaches to the presumption of access in this discovery dispute."  ECF 221 at 13.  Again, on September 23, 2023, this Court granted in part another motion to seal concerning Defendants' confidential materials upon the rationale that "the defendants' security and

competitive disadvantage concerns, even if not as weighty as in some other cases, outweigh the low public interest in access to this information." ECF 288 at 2. And most recently on July 11, 2025, this Court granted a similar motion to seal, finding that "the documents contain private, non-public information about Shell's ongoing business activities." ECF 656 at 2; *Negron v. Cigna Corp.*, 2020 WL 13303130, *3 (D. Conn. May 29, 2020); *see also Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, 2013 WL 4012772 (D. Conn. Aug. 5, 2013) (recognizing that the parties to an action often have "significant interest in protecting such [confidential proprietary] information from public dissemination").

### III. ARGUMENT

#### A. Consistent With This Court's Prior Rulings, the Properly Designated Expert Reports Must Remain Sealed.

The Parties have marked their respective expert reports "CONFIDENTIAL" under the SPO. Contrary to Plaintiff's assertions, the expert reports at issue (ECF Nos. 709, 718, 719, 720, 721, 727, 728, 735, and 740) were properly designated confidential because they incorporate and discuss non-public, proprietary materials, including Defendants' internal Design Engineering Practices ("DEPs") and Metocean adaptation work product, as well as facility-specific analyses and sensitive technical parameters. There is no dispute that all these cited materials are marked confidential, as set forth in the table below:

**TABLE A – SUMMARY OF CONFIDENTIAL MATERIAL IN THE EXPERT REPORTS**

| ECF | Document Description | Confidential Nature of Material Contained In CLF's Filings |
|---|---|---|
| 709 | Ms. Bodine's expert report. | Ms. Bodine's expert report discusses CLF's expert reports *marked confidential by Plaintiff themselves*. This includes the expert reports of Drs. O'Donnell, Barlow, Oreskes, Horner, Goldsmith, Nairn and Mr. Macey. Bodine Rpt. at 16-18. |
| 718 | Dr. French-McCay's expert report. | Dr. McCay's report references Defendants' other confidential expert reports, including the expert reports of Mr. Bayles and |

|  |  | Pace, Dr. Etkin, and Dr. Jones – all which contain confidential documents. McCay Rpt. at 6, 12-13, 23. |
|---|---|---|

Mr. Bayles's and Mr. Pace's report contains discussion of Defendants' confidential records including: (1) the Terminal's Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (2) the Terminal's Spill Prevention Control and Countermeasure Plan – SOPUS_NHVN00000582; and (3) dozens of tank and inspection maintenance records.

Mr. Bayles and Mr. Pace also detail CLF's expert reports of Drs. Goldsmith, Nairn, and Horner *marked as confidential by Plaintiffs themselves*.

Dr. Jones's report contains discussion of Defendants' confidential records including: (1) the Terminal's Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (2) a Climate Change Effects Vulnerability Assessment and Mitigation Plan; (3) the Terminal's Emergency Response Action Plan; and (4) the Terminal's Facility Response Plan. ECF 721, Jones Rpt. at 8, 14, 36, 41, 89.

Further, Dr. Jones discusses the confidential depositions of Dr. Sergio Jaramillo and Paul Verlaan. *Id*. at 96.

Dr. Jones also details CLF's expert reports of Drs. Barlow, Goldsmith, Horner, Nairn, O'Donnell, *marked as confidential by Plaintiffs themselves*. *Id*. at 5, 17-19, 24-25, 30-52, 56-58, 62-71, 100-102 (this does not even include every citation made by Dr. Jones).

Dr. Etkin's report details Defendants' confidential records including the Terminal's Emergency Response Action Plan – SOPUS_NHVN02451144; Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (3) the Terminal's Spill Prevention Control and Countermeasure Plan – SOPUS_NHVN00000582; and (4) tank alarm and fill.

Dr. Etkin's expert report discusses CLF's expert report *marked confidential by Plaintiff themselves*. This includes the expert report of Dr. Horner.

Also, Dr. McCay's report details Defendants' other confidential records including the Terminal's Emergency Response Action Plan – SOPUS_NHVN02451144 and Business Continuity and Storm Action Plan – SOPUS_NHVN00269158. McCay Rpt. at 12, 23, 27-28.

6

| | | |
|---|---|---|
| | | Further, Dr. McCay discusses the confidential deposition of Mike Sullivan. McCay Rpt. at 12, 23, 27-28.<br><br>Last, Dr. McCay's expert report discusses CLF's expert report *marked confidential by Plaintiff themselves*. This includes the expert report of Dr. Nairn. McCay Rpt. at 3, 14. |
| 719 | CLF's expert witness Jacqueline Michel's expert report. | Dr. Michel's report references Defendants' other confidential expert reports, including the expert reports of Drs. Etkin, McCay, and Morrison. Michel Rpt. at 2, 9-17.<br><br>Dr. Etkin's report details Defendants' confidential records including the Terminal's Emergency Response Action Plan – SOPUS_NHVN02451144; Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (3) the Terminal's Spill Prevention Control and Countermeasure Plan – SOPUS_NHVN00000582; and (4) tank alarm and fill.<br><br>Dr. Etkin's expert report discusses CLF's expert report *marked confidential by Plaintiff themselves*.<br><br>Dr. Morrison's report details Defendants' confidential records including details of additives stored on site and information about tank management.<br><br>Dr. Morrison's expert report discusses CLF's expert reports *marked confidential by Plaintiff themselves*. This includes the expert report of Drs. Goldsmith, Nairn, and Horner.<br><br>Also, Dr. Michel's report details Defendants' other confidential records including the Terminal's Emergency Response Action Plan – SOPUS_NHVN00210298. Michel Rpt. at 10.<br><br>Last, Dr. Michel's expert report discusses CLF's expert report *marked confidential by Plaintiff themselves*. This includes the expert report of Dr. Nairn. Michel Rpt. at 10-11. |

| 720 | CLF's expert witness Dr. Robert Nairn's expert rebuttal report. | Dr. Narin's rebuttal report references Defendants' other confidential expert reports, including the expert reports of Drs. Jones and McCay, Mr. Bayles and Mr. Pace, and Mr. Kovich. Narin Rebuttal Rpt. at 3, 4, 7-26, Appendix A. In fact, nearly every page of Dr. Narin's report describes Defendants' confidential expert reports, all which contain confidential records.<br><br>As already stated, Dr. McCay's report details Defendants' other confidential records including the Terminal's Emergency Response Action Plan – SOPUS_NHVN02451144 and Business Continuity and Storm Action Plan – SOPUS_NHVN00269158. ECF 718, McCay Rpt. at 12, 23, 27-28.<br><br>Further, Dr. McCay discusses the confidential deposition of Mike Sullivan. *Id*. at 12, 23, 27-28.<br><br>Last, Dr. McCay's expert report discusses CLF's expert report marked *confidential* by Plaintiff themselves. This includes the expert report of Dr. Nairn. *Id*. McCay Rpt. at 3, 14.<br><br>Mr. Bayles's and Mr. Pace's report contains discussion of Defendants' confidential records including: (1) the Terminal's Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (2) the Terminal's Spill Prevention Control and Countermeasure Plan – SOPUS_NHVN00000582; and (3) dozens of tank and inspection maintenance records.<br><br>Mr. Bayles and Mr. Pace also detail CLF's expert reports of Drs. Goldsmith, Nairn, and Horner *marked as confidential by Plaintiffs themselves*.<br><br>Dr. Jones's report contains discussion of Defendants' confidential records including: (1) the Terminal's Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (2) a Climate Change Effects Vulnerability Assessment and Mitigation Plan; (3) the Terminal's Emergency Response Action Plan; and (4) the Terminal's Facility Response Plan. ECF 721, Jones Rpt. at 8, 14, 36, 41, 89.<br><br>Further, Dr. Jones discusses the confidential depositions of Dr. Sergio Jaramillo and Paul Verlaan. *Id*. at 96.<br><br>Dr. Jones also details CLF's expert reports of Drs. Barlow, Goldsmith, Horner, Nairn, O'Donnell, *marked as confidential by Plaintiffs themselves*. *Id*. at 5, 17-19, 24-25, 30-52, 56-58, 62-71, |

|     |     | 100-102 (this does not even include every citation made by Dr. Jones).<br><br>Mr. Kovich's expert report also contains discussion of dozens of sensitive and confidential records including (1) the Terminal's Risk Management Plan – SOPUS_NHVN02173938; (2) Process Safety & Asset Management Standard – SOPUS_NHVN02450062; (3) Health, Safety, Security, Environment, Social Performance ("HSSE") & Asset Management ("SEAM") Standards Governance – SOPUS_NHVN02450159; (4) HSSE & SP Asset Management Foundations Standard – SOPUS_NHVN02449764; (5) Emergency & Spill Response SEAM – SOPUS_NHVN02450514; (6) Accidental Release Prevention and Emergency Release Polices – SOPUS_NHVN02174024; (7) Water in the Environment Manual – SOPUS_PVD00071805; (8) Hazards & Effects Management Process – SOPUS_NHVN01843720; (9) Shell New Haven Terminal Information Book – SOPUS_NHVN01345893; and (10) Dock Operations Manual Marine Transfers – SOPUS_NHVN00188130; tank inspection and maintenance documentation – SOPUS_NHVN00313611– SOPUS_NHVN00316510. There are dozens of other documents not specifically described here.<br><br>Further, Mr. Kovich discusses the confidential deposition of Paul Verlaan, where Verlaan details Defendants' confidential Design and Engineering Practices documentation.<br><br>Mr. Kovich also discusses CLF's expert reports of Drs. Goldsmith, Horner, Nairn, O'Donnell and Mr. Macey *marked as confidential by Plaintiffs themselves*.<br><br>Last, Dr. Nairn's rebuttal report discusses his own original report *marked confidential by Plaintiff themselves*. Nairn Rebuttal Rpt. at 1, Appendix A. Dr. Narin's original report describes several sensitive and confidential records including: (1) the Terminal's containment calculations – SHELLNH_RPMS_00001; (2) a Fourchon Junction Report – SOPUS_NHNV02408843; (3) communications between the Terminal and its consultant, Triton – SHELLNH_TRI_00399; d (4) the Terminal's Spill Prevention Control and Countermeasure Plan – SOPUS_NHVN00000582; and (5) construction documents created by the Terminal's contractor – SHELLNH_RPMS_00009. Nairn Rpt. at iv, 3, 5, 7-8, 49-50, 61-62, 69-70. |
| 721 | Dr. Jones' revised expert report. | Dr. Jones's report contains discussion of Defendants' confidential records including: (1) the Terminal's Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (2) Defendants' |

9

|     |     |     |
| --- | --- | --- |
|     |     | Climate Change Effects Vulnerability Assessment and Mitigation Plan; (3) the Terminal's Emergency Response Action Plan; and (4) the Terminal's Facility Response Plan. Jones Rpt. at 8, 14, 36, 41, 89.<br><br>Further, Dr. Jones discusses the confidential depositions of Dr. Sergio Jaramillo and Paul Verlaan. Jones Rpt. at 96.<br><br>Last, Dr. Jones also details CLF's expert reports of Drs. Barlow, Goldsmith, Horner, Nairn, O'Donnell, *marked as confidential by Plaintiffs themselves*. *See e.g.,* Jones Rpt. at 5, 17-19, 24-25, 30-52, 56-58, 62-71, 100-102 (this does not even include every citation made by Dr. Jones). |
| 727 | Dr. Jones' revised expert report. | *See* ECF 721 above. |
| 728 | Dr. French-McCay's expert report. | *See* ECF 718 above. |
| 735 | Mr. Uhlmann's expert report. | Mr. Uhlmann's report contains discussion of Defendants' confidential records including: (1) the Terminal's Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (2) and the Terminal's Hurricane Action Plan. Uhlmann Rpt. at 2, 19-20.<br><br>Further, Mr. Uhlmann discusses the confidential depositions of Brian Evans. Uhlmann Rpt. at 27.<br><br>Mr. Uhlmann also references Defendants' confidential expert reports including those of Mr. Kovich and Mr. Parkman. Uhlmann Rpt. at 20-21.<br><br>As stated, Mr. Kovich's expert report also contains discussion of dozens of sensitive and confidential records including (1) the Terminal's Risk Management Plan – SOPUS_NHVN02173938; (2) Process Safety & Asset Management Standard – SOPUS_NHVN02450062; (3) Health, Safety, Security, Environment, Social Performance ("HSSE") & Asset Management ("SEAM") Standards Governance – SOPUS_NHVN02450159; (4) HSSE & SP Asset Management Foundations Standard – SOPUS_NHVN02449764; (5) Emergency & Spill Response SEAM – SOPUS_NHVN02450514; (6) Accidental Release Prevention and Emergency Release Polices – SOPUS_NHVN02174024; (7) Water in the Environment Manual – SOPUS_PVD00071805; (8) Hazards & Effects Management Process – SOPUS_NHVN01843720; (9) Shell New Haven Terminal Information Book – SOPUS_NHVN01345893; and (10) Dock Operations Manual Marine Transfers – |

|  |  | SOPUS_NHVN00188130; tank inspection and maintenance documentation – SOPUS_NHVN00313611–SOPUS_NHVN00316510. There are dozens of other documents not specifically described here.<br><br>Further, Mr. Kovich discusses the confidential deposition of Paul Verlaan, where Verlaan details Defendants' confidential Design and Engineering Practices documentation.<br><br>Mr. Kovich also discusses CLF's expert reports of Drs. Goldsmith, Horner, Nairn, O'Donnell and Mr. Macey *marked as confidential by Plaintiffs themselves*.<br><br>Mr. Parkman's report contains discussion of confidential records including (1) the Terminal's Spill Prevention Control and Countermeasure Plan – SOPUS_NHVN00000582; (2) the Terminal's Business Continuity and Storm Action Plan – SOPUS_NHVN00269158; (3) the Terminal's Hurricane Action Plan – SOPUS_NHVN00155559; and (4) Defendants' Climate Change Effects Vulnerability Assessment and Mitigation Plan.<br><br>Mr. Parkman also describes CLF's expert reports of Drs. Goldsmith, Oreskes, Horner, and Nairn, *marked as confidential by Plaintiffs themselves*.<br><br>Last, Mr. Uhlmann also details CLF's expert reports of Dr. Goldsmith and Mr. Macey, *marked as confidential by Plaintiffs themselves*. Uhlmann Rpt. at 15-21, 25-27. |

Further, this Court has already granted sealing of the same or closely related categories of materials in this case, including portions of Dr. Goldsmith's report and materials referencing DEPs and internal Metocean work, finding they "contain private, non-public information about Shell's ongoing business activities." *See e.g.*, ECF 221; ECF 288, and ECF 656.

The declarations previously submitted explain that DEPs are proprietary technical standards subject to license restrictions and that Metocean work comprises confidential assessments and processes developed from unique internal expertise. *See e.g.*, ECF 629-1, Penny Decl., at, ¶¶ 5-6; ECF 630, Jaramillo Decl. at, ¶¶ 9-13; ECF 174-1, Ex. A to Defendants' Response to CLF's Motion to Seal [ECF 174], Feb. 3, 2023 Declaration of Brian Evans at, ¶¶ 9-

11

19; ECF 239-1, Ex. A to Defendants' Response to CLF's Motion to Seal [ECF 239], May 30, 2023 Declaration of Michael Sullivan at, ¶¶ 4-12. Public disclosure would cause competitive harm in two distinct ways: enabling competitors to copy Defendants' business practices and operations without compensation, and disclosing proprietary content and know-how with direct financial and competitive consequences. *Id*.

Plaintiff's Motions to Seal (ECF Nos. 707, 715, 723, 731, and 738) largely ignore the fact that this Court has already weighed these interests in the context of substantively similar materials and ordered sealing. ECF 702 at 3 and 8-11. Nor does Plaintiff identify any reason to depart from those prior findings now. The presumption of access is not absolute; the Court may and should give determinative weight to the well-substantiated confidentiality interests and the risk of competitive harm.

Further, even though the expert reports may otherwise refer to some public materials, the excerpts clearly and undisputedly cover non-public, confidential materials, including Terminal-specific design standards, site-specific capacities, and risk tolerances. *See* **Table A** above. The Court has already recognized the sensitivity of secondary-containment analyses and related parameters, as well as internal adaptation work, and ordered sealing of similar content. *See e.g.*, ECF 221; ECF 288, and ECF 656. Additionally, even if there are prior public filings referencing certain topics broadly, this does not eliminate the confidentiality of the underlying materials. The mere fact that certain information appears in the public domain does not strip confidentiality from other, related, or accompanying compilations, analyses, or additional non-public, commercially sensitive information that are cited in these reports.

    **B. Deposition Testimony Related to Properly Designated Confidential Materials Should Also Remain Sealed.**

12

CLF's Motions to Seal (ECF Nos. 715 and 731) also invite the Court to disregard the Parties' Standing Protective Order and the Court's prior sealing rulings by seeking the unsealing of two expert deposition transcripts, Dr. French-McCay and Mr. Uhlmann (ECF Nos. 717 and 736, respectively) notwithstanding that portions of both these transcripts undisputedly contain, quote from, and discuss materials properly designated as Confidential under the SPO.

*First*, CLF's motions present a false narrative of over-designation by Defendants. Before CLF filed any of its *Daubert* motions, Defendants served targeted, page-and-line confidentiality designations for both the French-McCay and Uhlmann depositions pursuant to the Standing Protective Order (SPO). *See* Ex. 1, Defendants' Conf. Designations of French-McCay Transcript (dated Oct. 1, 2025) ("French-McCay Designations"); *see also*, Ex. 2, Defendants' Conf. Designations of Mr. Uhlmann's Transcript (dated Oct. 1, 2025) ("Uhlmann Designations"). Those designations were tailored to pages that quote, reveal, or analyze Designated Materials—namely, the expert reports and other exhibits that themselves incorporate Defendants' non-public standards and technical work. Nonetheless, CLF elected to file the entire French-McCay transcript under seal and to file broad excerpts from Uhlmann under seal, including pages that Defendants had not designated at all. For example, among the Uhlmann pages CLF filed under seal, Defendants designated only a little over a page (205:19–206:24) as confidential. CLF's choice to seal far more than Defendants designated does not show overreach by Defendants—it underscores the narrow scope of Defendants' designations and improperly expands the sealing dispute.

*Second*, the SPO resolves how deposition testimony must be treated when covering Designated Material. Specifically, the SPO expressly states that when Designated Material is used as a deposition exhibit, "the exhibit and related transcript pages receive the same

13

confidentiality designation as the original Designated Material." ECF 7 at, ¶ 13. In this case, ECF No. 717, Dr. French-McCay's entire deposition transcript, and ECF No. 736, Mr. Uhlmann's deposition transcript excerpts include and discuss their respective expert reports, which as stated above have properly been marked confidential, and other exhibits that were designated Confidential under the SPO because they undisputedly cite and synthesize Defendants' non-public, commercially sensitive materials (including internal technical standards and Metocean team work that this Court has already determined warrant protection).

      Thus, because certain pages of the transcripts reveal and quote from those Designated Materials, the corresponding pages are themselves Designated Materials and must remain sealed. The confidentiality designations here flow from the underlying confidential status of the exhibits themselves and the transcript testimony that describes, quotes, and analyzes them-precisely the situation contemplated by the SPO's directive that "the exhibit and related transcript pages receive the same confidentiality designation" as the underlying Designated Material. ECF 7, SPO at, ¶ 13. That automatic transportation of confidentiality status from the document to the deposition ensures that parties can use confidential exhibits in deposition practice without forfeiting protection over the pages that reveal the substance of those materials. *See Sourgoutsis v. United States Capitol Police*, No. 116CV1096KBJRMM, 2018 WL 4680206, at *3 (D.D.C. Sept. 29, 2018) (rejecting the argument that treating all deposition testimony and exhibits as confidential would constitute an "over designation" recognizing that "some deposition testimony and exhibits may implicate the types of concerns identified" in the Protective Order.). CLF's approach would nullify that safeguard and would defeat the SPO's core function.

      Finally, in line with its prior ruling, this Court should reject CLF's attempt to weaponize ordinary motion practice as an end-run around of the SPO's de-designation process. *See* ECF

517, Jan. 2 7, 2025, Court Order (denying CLF's Motion to Amend the SPO and rejecting Plaintiff's modifications on the basis that the proposal would require the Court to "embroil itself in the[] disputes" concerning whether the material "merited the confidentiality designation in the first place."). As previously recognized by this Court, the SPO provides a specific mechanism for challenging confidentiality designations: 1) a written request to the Designating Person; 2) a good-faith meet-and-confer; and 3) only if necessary, a motion placing the burden on the Designating Person to show the designation is proper. ECF 7 at, ¶ 12. CLF has taken none of those steps with respect to either the transcript designations themselves or the Designated Materials that are embedded in ECF Nos. 717 and 736. Instead, CLF now simply seeks a blanket unsealing of these transcripts, including all the references to the confidential materials embedded therein, without following the process that the SPO requires. The Court has already rejected efforts to upend the SPO and embroil itself in piecemeal de-designation disputes. *See* ECF 517. It should do so again here by enforcing the SPO and prior sealing rulings.

Accordingly, the Court should respectfully maintain the sealing of the specifically designated pages of the French-McCay and Uhlmann transcripts (ECF Nos. 717 and 736) that reveal Designated Materials, as well as the portions of CLF's briefs (ECF Nos. 716 and 733) that quote or closely paraphrase them.

## IV. CONCLUSION

For all these reasons, Defendants respectfully request that the Court seal the properly designated expert reports [**ECF Nos. 709, 718, 719, 720, 721, 727, 728, and 735**] and the deposition testimony that reveals or describes those confidential materials [**ECF Nos. 717 and 736**], as well as, the portions of CLF's Memorandums that cite, quote, or reference these confidential materials [**ECF Nos. 708, 716, 724, and 733**].

Dated: November 3, 2025                      Respectfully submitted,

*/s/ Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889

jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2025 a copy of the foregoing was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com