# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 3, 2025 |
| *Defendants*. | |

**[REDACTED] PLAINTIFF CONSERVATION LAW FOUNDATION'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF <u>JACQUELINE MICHEL, PH.D.</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

I.   Introduction.............................................................................................................. 1

II.  Background ............................................................................................................... 2

III. Legal Standard ........................................................................................................ 3

IV.  Argument .................................................................................................................. 5

    A.  Dr. Michel Is Highly Qualified Expert on Oil Spill Planning Preparedness, Spill
        Response, and Spill Evaluation........................................................................... 5

    B.  Dr. Michel's Opinions are Proper Rebuttal Opinion ........................................ 8

        1.  Dr. Michel Rebuts Dr. Etkin's Credible Worst Case Discharge.................................. 9

        2.  Dr. Michel Rebuts Dr. French-McCay's SIMAP Modeling....................................... 11

        3.  Dr. Michel Rebuts Dr. Morrison's Emergency Response Assumptions .................... 12

    C.  Dr. Michel's Methods Are Reliable and Helpful to the Factfinder ................................. 13

    D.  Dr. Michel's Testimony Is Highly Relevant................................................................. 15

    E.  Dr. Michel's Testimony Does Not Cherry Pick and There Is No Threat of
        Prejudice ........................................................................................................ 18

V.   Conclusion ............................................................................................................. 20

**TABLE OF AUTHORITIES**

*Cases*

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.,*
754 F. Supp. 3d 456 (S.D.N.Y. 2024) ................................................................. 4, 8

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
303 F.3d 256 (2d Cir. 2002) ..................................................................................... 4

*Auto. Ins. Co. of Hartford, Conn. v. Electrolux Home Prods., Inc.,*
No. 10-CV-0011 CS, 2012 WL 6629238 (S.D.N.Y. Dec. 20, 2012) ..................... 19

*Capri Sun GmbH v. American Beverage Corp.,*
595 F. Supp. 3d 83  (S.D.N.Y. 2022) ................................................................. 5, 10

*Connecticut General Life Ins. Co. v. BioHealth Labs., Inc.,*
No. 3:19-cv-01324, 2024 WL 2106557 (D. Conn. Mar. 28, 2024) ......................... 3

*Cooper Crouse-Hinds, LLC v. City of Syracuse, New York,*
568 F. Supp. 3d 205 (N.D.N.Y. 2021) ................................................................... 20

*Cortes-Irizarry v. Corporacion Insular De Seguros,*
111 F.3d 184 (1st Cir. 1997) ................................................................................... 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
43 F.3d 1311 (9th Cir. 1995) .................................................................................. 16

*Daubert v. Merrell Dow Pharms.,*
509 U.S. 579 (1993) ................................................................................................. 3

*In re Mirena IUD Prod. Liab. Litig.,*
169 F. Supp. 3d 396 (S.D.N.Y. 2016) ................................................................. 4, 14

*In re Zyprexa,*
489 F. Supp. 2d 230 (E.D.N.Y. 2007) .................................................................... 14

*Kirksey v. Schindler Elevator Corp.,*
No. CV 15-0115-WS-N, 2016 WL 5213928 (S.D. Ala. Sept. 21, 2016) ............... 17

*Kumho Tire Co., Ltd. v. Carmichael,*
526 U.S. 137 (1999) ............................................................................................. 4, 14

*Melini v. 71st Lexington Corp.,*
No. 07-CV-701, 2009 WL 413608 (S.D.N.Y. Feb., 3, 2009) ................................. 20

*Pagliaroni v. Mastic Home Exteriors, Inc.,*

No. CV 12-10164-DJC, 2015 WL 5568624 (D. Mass. Sept. 22, 2015) ................................. 19

*Precision Trenchless, LLC v. Saertex multiCom LP*,
No. 3:19-cv-0054 (JCH), 2022 WL 594096 (D. Conn. Feb. 28, 2022) ................................. 15

*Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc.*,
208 F. Supp. 2d 423 (S.D.N.Y. 2002) ............................................................... 5, 20

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) .......................................................................... 5, 8

*Stilwell v. Smith & Nephew, Inc.*,
482 F.3d 1187 (9th Cir. 2007) ............................................................................ 17

**Other Authorities**

Fed. R. Evid. 702 Advisory Committee Note (2000) ...................................................... 5

**Rules**

Fed. R. Civ. P. 26(a)(2)(D)(ii) .......................................................................... 5, 8

Fed. R. Evid. 702 .............................................................................................. 3

Fed. R. of Evid. 702(b) ..................................................................................... 19

## I.    INTRODUCTION

Plaintiff Conservation Law Foundation, Inc. ("CLF" or "Plaintiff") respectfully files this Opposition to Defendants' Motion to Exclude the Testimony of Jacqueline Michel, Ph.D., ECF 712 & 764  ("Motion").[1] CLF brought this civil suit under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 6901, et seq. ("CWA"), and the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, et seq. ("RCRA") alleging violations of federal law by Equilon Enterprises LLC d/b/a Shell Oil Products US, Triton Terminaling, LLC, and Motiva Enterprises, LLC (hereinafter, collectively, "Defendants" or "Shell") at their bulk petroleum storage terminal in the Port of New Haven. *See* Am. Compl., ECF 47 ¶ 1. CLF alleges that Defendants have violated the General Permit for Discharges of Stormwater from Industrial Activities by preparing a deficient Stormwater Pollution Prevention Plan and failing to evaluate and address the reasonably foreseeable risks to the New Haven Terminal posed by severe weather, including risks associated with climate change, which threaten to flood the Terminal and release millions of gallons of oil and other pollutants into nearby New Haven Harbor, Quinnipiac River, and Mill River.

To defend against CLF's claims, Defendants engaged experts to model and predict oil spills that would occur from the New Haven Terminal during a major storm event in an effort to support their contention that the existing facility poses little risk to surrounding communities and ecosystems. Defendants' experts' reports rely on biased and inaccurate assumptions and ignore important data and information learned from past oil spills.  In response to those expert reports, Dr. Jacqueline Michel disclosed a rebuttal report showing Defendants' experts' opinions are

---

[1] Pin cites to Defendants' motion and memorandum to exclude fer to the ECF header page numbers. Pin cites to expert reports filed under seal refer to the footer document pages.

contradicted by a host of peer reviewed papers and governmental reports regarding planning for oil spills, responding to oil spills, evaluating oil spills, and facts and data from past oil spills. Defendants' Motion is very similar to their other preclusion motions and argues that Dr. Michel's rebuttal report was not properly disclosed, Dr. Michel is not qualified to give the opinions she does, and otherwise that Dr. Michel's opinions do not "fit" the claims in this case, are irrelevant, unreliable, ignore contradictory evidence, and would prejudice a jury. None of these arguments are accurate. Dr. Michel is a highly qualified expert on exactly the topics of her report and many of the peer-reviewed and governmental publications she and Defendants' experts rely upon are in fact Dr. Michel's own publications. Dr. Michel has been on the front line of oil spill planning and evaluation work for decades, her opinions are reliable and relevant, and her testimony will be essential and helpful to the factfinder. For these reasons, Defendants' Motion should be denied.

## II.    BACKGROUND

On May 8, 2025, CLF disclosed seven expert reports in support of its claims. *See* ECF 698 at 2. On June 23, 2025, Defendants disclosed thirteen expert reports in response to CLF's experts' reports. *Id.* CLF's experts disclosed seven rebuttal reports on July 22, 25, and August 1, 2025. *Id.*

CLF engaged Dr. Jacqueline Michel to review and provide rebuttal to Defendants' expert reports from Dr. Etkin, Dr. French-McCay, and Dr. Morrison. Dr. Michel's expert rebuttal opinion was disclosed on July 22, 2025. Dr. Michel's expert rebuttal report provides the following opinions:

Michel Report, ECF 766, at 2.



*Id.* at 11.

*Id.*

*Id.* at 12.

*Id.*

*Id.* at 17.

## III.    LEGAL STANDARD

Federal Rule of Evidence 702 provides that a qualified expert "may testify in the form of an opinion" if the proponent of the expert demonstrates to the Court that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The district court acts as a "gatekeeper," who is tasked with deciding whether the expert's testimony satisfies Rule 702's requirements. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591-93 (1993). "[T]he Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact. *Connecticut General Life Ins. Co. v. BioHealth Labs., Inc.*, No. 3:19-cv-01324, 2024 WL 2106557 (D. Conn. Mar. 28, 2024) (internal citations omitted).

If an expert meets the threshold requirement of qualification, the Court then must determine whether the expert's testimony itself is reliable. The Supreme Court has identified several factors that may be considered in assessing reliability: (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation," and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593-94) (internal quotation marks and citations omitted). These factors, however, do not constitute a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Id.*; *see generally Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 754 F. Supp. 3d 456, 464 (S.D.N.Y. 2024) ("If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent. Thus, an expert should not be required to satisfy an overly narrow test of his own qualifications, and the court's focus should be on whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth.").

After determining reliability, the Court must decide whether the expert's testimony is relevant, that is, whether it will help the trier of fact. *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016). Like other forms of evidence, expert testimony is relevant if

it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Once the thresholds of reliability and relevance are met, the testimony is admissible. Thereafter, any purported weakness in an expert's methodology or conclusion goes to the degree of credibility to be accorded to the evidence, not to the question of its admissibility. *Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc*., 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 133–35 (D.C. Cir. 1996)). "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee Note (2000).

For rebuttal opinion, Rule 26 allows rebuttal reports "to contradict or rebut evidence on the same subject matter" as an opposing expert's opinion. Fed. R. Civ. P. 26(a)(2)(D)(ii); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party."). To provide and support such opinion a rebuttal witness is allowed to engage in contextual analysis. *Capri Sun GmbH v. American Beverage Corp.*, 595 F. Supp. 3d 83, 140–41 (S.D.N.Y. 2022) (holding a rebuttal expert using an alternative methodology to offer "a competing analysis" is admissible and "is well within the 'same subject matter encompassed in the opposing party's expert report.'" (quoting *Scott*, 315 F.R.D. at 44)).

## IV.    ARGUMENT

### A. Dr. Michel Is Highly Qualified Expert on Oil Spill Planning Preparedness, Spill Response, and Spill Evaluation.

Defendants claim that Dr. Michel "lacks the qualifications necessary to offer expert opinions on worst-case discharge scenarios, emergency preparedness, and ecological risk modeling at the New Haven Terminal" under Rule 702 and *Daubert* because her expertise "is rooted in ***post***-spill response, not in the disciplines required to assess ***future*** risk." ECF 712-1 at

5

19 (emphasis in original). Defendants' argument should be denied because Dr. Michel is a highly qualified expert on planning for oil spills, responding to oil spills, and evaluating oil spills, which are the subject matters of her report. *See generally* Michel Report, ECF 766 at A-3 to A-5 (describing publications and experience on evaluating oil spills that have occurred and preventing effects of future spills such as "Environmental Protection Barrier: Design, Construction and Operations"; "Options for minimizing environmental impacts of inland spill response"; and "Oil Spills: Causes, Consequences, Prevention, and Countermeasures").

There is no question that Dr. Michel is a highly qualified expert in her field. Dr. Michel is a geochemist who specializes in terrestrial and marine pollution studies, coastal geomorphology, and environmental risk assessments. Michel Report, Appendix A: Resume/CV for Jacqueline Michel, Ph.D., ECF 766, at A-1. She has over 45 years of experience in oil spill planning, response, and assessment. Dr. Michel earned her Ph.D. in 1980 from the Department of Geology at the University of South Carolina, Columbia. *Id*. She is a leader in the development of methods and the conduct of Natural Resource Damage Assessments (NDRA) following spills and tanker groundings and has extensive knowledge of and practical experience in pollutant fate, pollutant transport, and ecological effects issues. *Id*. Dr. Michel was one of the founders of Research Planning, Inc. in 1977 and has been the President since 2000. *Id*.

Dr. Michel has extensive experience in oil spill preparation, response, and evaluation. Much of her experience is based on her work for the National Oceanic and Atmospheric Administration ("NOAA") and its Office of Response and Restoration, Emergency Response Division. *Id.* at 1. That team at NOAA provides the scientific support to the U.S. Coast Guard ("USCG") in their work regarding oil and chemical spills nationwide. *Id.* These are the U.S. governmental agencies in charge of analyzing, planning for, and evaluating environmental harms

6

to the coastal region from weather disasters and particularly the oil and chemical spills that can occur from extreme weather events. *See id.* She has written over 300 technical reports and publications, including 48 peer-reviewed journal articles and ten chapters in books. *Id.* at A-1. She has co-authored five books on the coastal geology and ecology of different coastal states. *Id*. She has been recognized for her achievements through appointments to serve on many respected committees and panels, including seven National Academics committees. *Id*. Dr. Michel is an expert in oil and chemical emergency spill preparation, response, research, training, and contingency planning. *Id.* at A-2 to A-3. She is also an expert in natural resource damage assessments and restoration. *Id.* at A-2.

Defendants claim there is some distinction between scientists who assess the risk of future oil spills and scientists who study the consequences and cleanup of spills. ECF 712-1 at 19. Such a distinction is irrelevant because Dr. Michel has significant experience, training, and expertise in both. *See* Michel Report, Appendix A: CV, ECF 766 at A-2 to A-3 ("Dr. Michel was part of the original team of RPI scientists who pioneered much of the early research on oil spill impacts on coastal ecosystems. This work, sponsored by [NOAA], has involved multidisciplinary studies of hazardous materials spill impacts ***and the development of strategies to mitigate these impacts***." (emphasis added)); *see also id.* at A-3 to A-5 (showing publications on both oil spill preparation before spills and evaluation after spills). Furthermore, the opinions Dr. Michel has provided are exactly within her experience and training as her opinions relate to Defendants' experts' models, analyses, and opinions on what type of spill could occur at the New Haven Terminal and how the spill would contaminate the aquatic ecosystem and what level of animal death and toxicity would result in the environment. *Id.* at 2–17. Tellingly, each of Defendants' expert reports that Dr. Michel rebuts actually cite to publications and reports authored by Dr. Michel for important references in

their analysis. Etkin Report, ECF 767, at 53–54, 59–60 (citing 12 of Dr. Michel's papers); French-McCay Report, ECF 789, at L-8, L-8, L-10 to L-14 (citing 17 of Dr. Michel's papers); Morrison Report, ECF 796, at 21-23, 41 (citing one work but discussing it over an entire section of the report).

Defendants claim that Dr. Michel is only qualified to testify about oil spill consequences and not other aspects of oil spill planning and evaluation is an inaccurate view of admissibility. Experts are not subjected to an "overly narrow" test of their qualifications. *Am. Empire Surplus Lines Ins. Co.*, 754 F.Supp.3d at 464 . And education and experience in a "general field closely related to the subject matter in question" is sufficient. *Id.* Dr. Michel is highly qualified and is an authoritative expert across academia, consulting, and government on oil spill preparedness, response, and evaluation, so much so that Defendants' experts heavily cite to Dr. Michel's work and publications. The Court should deny Defendants' Motion.

## B.  Dr. Michel's Opinions are Proper Rebuttal Opinion

Defendants claim that Dr. Michel's opinions were not properly disclosed because they introduce new affirmative opinions rather than rebut Defendants' experts. ECF 712-1 at 13–17. Defendants list these new opinions as "the magnitude of potential oil discharge, the ecological significance of specific toxicity thresholds, and the likelihood of spill-related harm based on external case studies." *Id.* at 14. Defendants' Motion should be denied because Dr. Michel's opinions are rebuttal of Defendants' experts.[2] A rebuttal expert may introduce opinion and evidence "to contradict or rebut evidence on the same subject matter." Fed. R. Civ. P. 26(a)(2)(D)(ii). Courts interpret "same subject matter" broadly. *Scott*, 315 F.R.D. at 44 ("Rebuttal

---

[2] Indeed, Dr. Michel's entire Report is just three sections responding to three of Defendants' expert reports: 1. "Rebuttal to Dagmar Etkin Expert Report" from pages 2–11, 2. "Rebuttal to the Deborah French-McCay Expert Report" from pages 11–16, and 3. "Rebuttal to the Ann Michelle Morrison Expert Report" on page 17. *See* ECF 766 at 2–17.

evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party. . . . [D]istrict courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language."). A rebuttal report is not limited to a single sentence that the other expert's report is wrong, the rebuttal witness is fully allowed to explain why that other expert is wrong through critique of other opinion and presentation of analyses that support the critique and offer contradictory evidence, analysis, or conclusion.

### 1.  Dr. Michel Rebuts Dr. Etkin's Credible Worst Case Discharge

Defendants claim Dr. Michel's Rebuttal Report introduced new opinion on the "magnitude of potential oil discharge" that was not a rebuttal of Defendants' experts. ECF 712-1 at 14. This is not correct. Dr. Michel's opinion on the magnitude of potential oil discharge is rebuttal to Defendants' expert Dr. Dagmar Etkin's report as both reports focus on what would be a credible worst-case discharge at the New Haven Terminal from a large storm event and what volume of oil and chemical spill would be expected to occur. Dr. Etkin notes the scope of her expert report is █████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████ Etkin Report, ECF 767 at 7–8. Dr. Michel's rebuttal is proper because it puts forth critical and competing facts and analysis on the same subject matter—to rebut the ████████████████████████████████████████████ used by Dr. Etkin as well as Dr. Etkin's ultimate estimate ████████████████ .

Dr. Etkin opined ███████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████ *See* ECF 712-1 at 14–15; Etkin Report, ECF 767 at 10 & 28–29. Dr. Michel's rebuttal analyzes Dr. Etkin's analysis and conclusions and points out that Dr. Etkin's analysis is

inconsistent with ████████████████████████████████████████████████████

████████    Dr. Michel points out that ████████████████████████████████████████

████████████████████████████████████████████ ECF 766 at 2. And Dr. Michel points out

that ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ *Id.* at

2, 5–8, 10. Defendants argue ████████████████████████████████████████

████████████████████████████████████████████ Dr. Michel creates "an

entirely new scenario involving multiple simultaneous tank failures and 100% outflow from each

tank" that "is not derived from any defense expert's methodology." ECF 712-1 at 14–15. This is a

mischaracterization of Dr. Michel's Report as it is using Dr. Etkin's methodology, which is just to

████████████████████████████████. Etkin Report, ECF 767 at 7–8. But more importantly, Rule

26 allows rebuttal testimony on "the same subject matter" and there can be no dispute that Dr.

Etkin and Dr. Michel each opine on the same subject matter, which is ████████████████████

████████████████████████████████████████████████

Dr. Michel's report highlights flaws in Dr. Etkin's assumptions and calculations, and then

counters the conclusions put forth by Dr. Etkins by showing how Dr. Etkin's analysis would

change if it had used reasonable assumptions and calculations. Courts routinely recognize that

rebuttal opinion that tests the reasonableness of the opposing experts' assumptions and conclusions

can do so with a competing analysis where the experts differ on methodology or analysis. *Capri

Sun GmbH*, 595 F. Supp. 3d at 140–41 (holding a rebuttal expert using an alternative methodology

to offer "a competing analysis" is admissible and "is well within the 'same subject matter

encompassed in the opposing party's expert report.'" (quoting *Scott*, 315 F.R.D. at 44)). Here, the

experts do not even differ on methodology, Dr. Michel just uses additional data Dr. Etkin had

ignored. These reports are clearly on the same subject matter and the Court should not preclude Dr. Michel's expert rebuttal testimony.

### 2. Dr. Michel Rebuts Dr. French-McCay's SIMAP Modeling

Dr. Michel's Rebuttal Report counteracts and critiques Dr. French-McCay's SIMAP modeling regarding ██████████████████████████████████████████████████ ████████████████████████████████. *See* ECF 766 at 11–16. Defendants do not make even the bare allegation that Dr. Michel's Report covers a different subject matter than Dr. French-McCay's; they only claim Dr. Michel's rebuttal should be limited to recreating the exact same calculation without any deviation. Defendants claim ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ because it "reflects a normative judgement about what standards ***should*** apply, not a response to what Defendants' experts ***actually*** used." ECF 712-1 at 15–16 (emphasis in original). But Dr. Michel's rebuttal is a critique of the ████ ████████████████████████████████████████████████████████████ ████████████████████████ ECF 766 at 11–12, 15 ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ A critique of how a calculation was done is a proper rebuttal opinion. *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.").

Defendants also claim Dr. Michel's Rebuttal Report introduces new opinion because it points out ████████████████████████████████████████████. *See* ECF 712-1 at 15–16. But as even Defendants must acknowledge, Dr. French-McCay's report ████████

████████████████████████████████████████████████████ ECF 712-1 at 15.

Thus, for Dr. Michel to offer competing ██████████████ is inherently a competing analysis of

the same subject matter using the same methodology. This type of critique is not only permissible

rebuttal opinion, it is the core of what type of rebuttal opinion is useful to the court. Furthermore,

the purported "external case studies" Defendants complain about as introducing novel opinion,

ECF 712-1 at 15–16, consist of Dr. Michel pointing out that Dr. French-McCay's ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████ ECF 766 at 12–16 ("████████████████████████████████████████

██████████████████████████████."). Thus, Defendants' claim that Dr. Michel's competing

case studies are "an attempt to introduce affirmative evidence of risk that expands the scope of the

litigation," ECF 712-1 at 16, must be rejected given that Dr. Michel's competing case studies are

the case studies from Defendants' own files and Dr. French-McCay's own past publications on

this exact subject matter.

### 3. Dr. Michel Rebuts Dr. Morrison's Emergency Response Assumptions

Dr. Michel's Rebuttal Report critiques Dr. Morrison's report by pointing out that the

assumptions regarding ████████████████████████████ are incorrect. Dr. Michel is

the author that Dr. Morrison cited to when making a factual claim about ████████████████

████████████████████████████████████████████████████████████████

██████████████████████ Dr. Michel's rebuttal points out that Dr. Morrison's conclusions about

her prior work are factually incorrect and do not lead to the conclusion Dr. Morrison makes. Dr.

Morrison had claimed that ████████████████████████████████████████████

████████████████████████████████████████████████. *See* ECF 766 at 17. Dr. Michel

points out that Dr. Morrison misunderstood ███████████████████████ and thus made an incorrect conclusion:



*Id.* Defendants' view that a rebuttal expert cannot correct the factual assumptions of an opposing party's expert and how that incorrect factual assumption led to an incorrect conclusion has no basis in law. This is precisely why rebuttal opinion is useful to courts and the Court should deny Defendants' Motion.

### C. Dr. Michel's Methods Are Reliable and Helpful to the Factfinder

Defendants argue that Dr. Michel's report "relies almost entirely on generalized personal experiences . . . without any analytical framework" and therefore does not rest on "a reliable, recognized methodology" and must be excluded. *See* ECF 712-1 at 21–28. Dr. Michel's rebuttal opinions are based on NOAA and National Academies methodologies for assessing spill risk and response feasibility and her long career of experience applying those analyses in the field to oil spills and environmental damage from pollutant releases. Furthermore, this argument must fail because Dr. Michel's rebuttal opinion supplies critiques of the facts and assumptions used by Defendants' experts within the methodological frameworks used by Defendants' experts. If the Court finds those methodological frameworks unreliable it should be excluding the opinions of Dr. Etkin, French-McCay, and Dr. Morrison, or simply allow each proper rebuttal testimony on methodology.

Dr. Michel's use of historical analogs from Hurricanes Katrina, Sandy, and Rita are not anecdotes as Defendants argue. ECF 712-1 at 21–22. They are comparative empirical analysis based on experience and data. As Defendants well know, their expert ███████████ ████████████████████████████████████████████████████████ ███████, ECF 767 at 8, which is similar to Dr. Michel's and well within the requirements of Rule of Evidence 702 and *Daubert*. An expert may base their opinions on a review of published studies, industry documents, and other authoritative sources, and need not personally conduct original studies to reach reliable conclusions. *See, e.g.*, *In re Mirena IUD*, 169 F. Supp. 3d at 412. In fact, extensive practical experience applied to the facts and circumstances of a case is a sufficient basis to allow a person to testify as an expert, as experience-based testimony satisfies Rule 702 admissibility requirements. *Kumho Tire Co., Ltd.*, 526 U.S. at 141, 150-51. Here, Dr. Michel's extensive experience in evaluating the causes, extent, and consequences of oil spills qualifies her to provide reliable opinion on whether Defendants' experts' assumptions and conclusions in modeling a spill at the New Haven Terminal are consistent with the facts, outcomes, and consequences at other comparable oil spills.

Defendants claim that Dr. Michel's "testimony rests exclusively on her personal experiences managing spill response projects—with nothing connecting those experiences to the unique conditions at the Terminal other than her word." ECF 712-1 at 23. Courts in the Second Circuit allow expert testimony to be a synthesis of observational data and published literature. *In re Zyprexa*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) (permitting expert testimony of an expert synthesizing published studies, clinical data, and their own professional experience). Defendants' argument ignores the fact that Dr. Michel did not base her opinions purely on her word, but rather based her opinions on her professional experience and on the facts and data of peer reviewed

academic publications and government technical reports precisely on these topics of oil spill, evaluation, and cleanup. In Dr. Michel's rebuttal of Dr. Etkin, Dr. Michel cites to and draws on a ███████████████████████████████████████████████████████ published by the U.S. Department of the Interior. ECF 766 at 2. Dr. Michel also cites to and draws on ████████████████ ██████████████████████████████████████████████████ *Id.* at 3-11. By analyzing and comparing Defendants' experts' opinions to other evaluations, data, and analysis of future and past spills, Dr. Michel has applied both her significant experience in this area as well as relied on the facts and data of the field. That some of these peer reviewed papers and government publications where Dr. Michel draws comparison data and information were authored by Dr. Michel does not render her expert opinions as mere conjecture or speculation. *See Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-cv-0054 (JCH), 2022 WL 594096, at *11 (D. Conn. Feb. 28, 2022) (finding an opinion was neither speculative nor conjectural where it was formed on the basis of the expert's observations of objective evidence).

The Court should reject Defendants' argument that Dr. Michel's testimony is unreliable as her opinions use the same methodologies as Defendants' experts and are fully supported by her own extensive professional experience.

### D. Dr. Michel's Testimony Is Highly Relevant

Defendants claim that Dr. Michel's opinions are not admissible under Rule of Evidence 702 "because they do not 'fit' the claims at issue and will not assist the jury in resolving any disputed fact." ECF 712-1 at 12–14. Defendants' argument is that the 2018/2021 permits for the New Haven Terminal do not require Defendants to consider the effects of climate change. *Id.* However, because the issue of what those permits require is a contested issue in this case, the fact that Dr. Michel's expert opinions do not "fit" ***Defendants' legal theories*** does not provide a basis

for excluding Dr. Michel's opinions under Fed. R. Evid. 702 and *Daubert*. Instead, in assessing whether an expert opinion testimony is "relevant to the task at hand" under Rule 702, the court considers whether the proffered testimony "logically advances a material aspect of *the proposing party's case*." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (emphasis added). That test is met here, and Defendants' Motion should be denied.

First, the question of whether the permits for the New Haven terminal require Defendants to consider the effects of climate change is a core issue in this case. In 2023, Judge Meyer denied Defendants' motion for summary judgment, which was premised on the argument that the current permit for the terminal did not require consideration of climate change, either explicitly or as a best industry practice. Order Denying Mot. for Partial Sum. J., ECF 304. In so doing, Judge Meyer "held that whether consideration of climate change was an 'industry best practice' remained an issue of material fact *that could not be resolved as a matter of law*." *See* Omnibus Ruling Denying Mot. to Stay, Denying Mot. to Strike, ECF 641 at 4 (emphasis added). In a more recent Order denying Defendants' motion to stay, the Court described Plaintiff's "central claim in this action" as "[t]hat the now-governing General Permit required the Defendants to consider the effects of climate change in developing and implementing the Stormwater Pollution Prevention Plan ("SWPPP") for Defendants' New Haven bulk fuel storage terminal, and that the Defendants' failed to comply with this requirement." *Id.* at 2. Notably, Defendants are now proposing to (again) address this central claim in a motion for summary judgment. *See* ECF 806 (letter brief filed by Defendants Equilon Enterprises, LLC and Triton Terminaling LLC). Briefing on the parties' anticipated cross-motions for summary judgment has not yet been set.

Second, a *Daubert* motion is an evidentiary motion, not a dispositive motion. The standard for determining questions of law at summary judgment under Rule 56 is different from the

evidentiary standard that governs the admissibility of expert testimony under Rule 702 and *Daubert*. For that reason, courts are instructed to "exercise caution" when issues that must be addressed at summary judgment intersect with *Daubert* motions. *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997). The court should not, for example, decide the validity of a party's claim in the context of ruling on an evidentiary issue. *See, e.g.*, *Kirksey v. Schindler Elevator Corp.*, No. CV 15-0115-WS-N, 2016 WL 5213928, at *11 (S.D. Ala. Sept. 21, 2016). As applied here, the Court should reject Defendants' invitation to either accept the validity of their legal position on the interpretation of the permits or, alternatively, to decide that contested issue in the context of a *Daubert* motion without affording the parties an opportunity to fully brief that issue (and others) on cross-motions for summary judgment under Rule 56. Instead, because there is "a link between the expert's testimony and the matter *to be proved[,]*" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (citation omitted) (emphasis added), the relevance test is met for purposes of Rule 702 and Dr. Michel's testimony is admissible.

Finally, to the extent Defendants' motion to exclude Dr. Michel's testimony is premised on the outcome of their anticipated motion for summary judgment, their motion is premature and should be denied at this time.

In addition, Defendants claim that Dr. Michel's opinions "do not fit" the claims at issue because they relate to "hypothetical post-spill environmental effects and the likelihood of tank failures, which shed no light on Defendants' regulatory compliance." ECF 712-1 at 17. If the Court rules no expert can testify on hypothetical post-spill environmental effects and the likelihood of tank failures, then the Court would need to throw out testimony from Defendants' experts Dr. Etkin, Dr. French-McCay, and Dr. Morrison as well as Dr. Michel's, as Dr. Michel's testimony covers those subject matters to rebut the testimony on the same subject matter as Defendants'

17

experts. If the Court ruled no testimony could be heard on "the likelihood of tank failures" then most of both Parties' expert reports would need to be excluded. Defendants have made no specific argument why Dr. Michel's testimony is different from the testimony of the other experts on this point and the Court should deny Defendants' Motion.

### E. Dr. Michel's Testimony Does Not Cherry Pick and There Is No Threat of Prejudice

Defendants claim Dr. Michel's rebuttal report fails to address contrary evidence, and complains that Dr. Michel "relies heavily on a narrow set of Gulf Coast hurricanes." ECF 712-1 at 28–31. Defendants' argument belies their real concern, which is that Dr. Michel pointed out that Defendants' experts' assumptions and calculations had ignored "the most catastrophic examples" of oil spills from the last few years along the Atlantic Coast. *Id.* at 30. This claim that Dr. Michel cherry-picked comparative oil spills by focusing on catastrophic spills in the Gulf Coast is both factually inaccurate and is not a reason for exclusion of expert testimony.



Dr. Michel's rebuttal report references and discusses aspects of ██████████████ ██████████████████████████████ ECF 766 at 2–3; ██████████████ ██████████████ *id.* at 3–10; ██████████████████ , *id.* at 11; ██████████ ██████ *id.* at 11; ██████████████████████████████ *id.* at 11–12; ██████████████████████████ , *id.* at 12–14; and ████████ ██████████████████████ , *id.* at 14–17. Defendants claim that Dr. Michel only focused on Gulf Coast spills is incorrect as multiple spills discussed at length were not in the Gulf Coast. As is clear from the report itself, these spills are highlighted because each of them exposes ways that Defendants' experts' reports made assumptions that are inconsistent or contradicted by data from these case studies of oil spills. Thus, these are not arbitrary spill case studies, they are spill case studies most relevant to a factfinder who is evaluating Defendants' and CLF's experts'

reports. Defendants point to three northeastern storms that Dr. Michel did not reference, *see* ECF 712-1 at 31, but these are a red herring. The relevance of those three storms to Dr. Michel's report would be if they showed oil spills that behaved the way Defendants' experts said oil spills would behave, but tellingly, Defendants make no such allegation that inclusion of those storms would rehabilitate their experts reports or otherwise be relevant to any factfinder.

Even if it were the case that Dr. Michel's report lacked case studies from a certain area or did not reference every oil spill known. There is no requirement that experts consider every conceivable point of data—here, every oil spill—in developing their opinions. *Pagliaroni v. Mastic Home Exteriors, Inc.*, No. CV 12-10164-DJC, 2015 WL 5568624, at *7 (D. Mass. Sept. 22, 2015) ("[a]s long as the expert opinion meets the requirements of Rule 702, there is no additional requirement that an expert eliminate all alternative possible causes in offering a differential diagnosis."). The *Daubert* standard requires "sufficient facts or data" not all applicable facts and data. *See* Fed. R. of Evid. 702(b). "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Pagliaroni*, 2015 WL 5568624, at *7 (quoting *Daubert*, 509 U.S. at 590). Furthermore, even if the Court were concerned with the selection of data in Dr. Michel's report, the appropriate remedy would not be exclusion but rather the weight of the testimony. *Auto. Ins. Co. of Hartford, Conn. v. Electrolux Home Prods., Inc.*, No. 10-CV-0011 CS, 2012 WL 6629238, at *2 (S.D.N.Y. Dec. 20, 2012) ("Potential sample bias is a subject for cross-examination, and goes to the weight, not the admissibility, of the expert testimony.").

Defendants also include an argument in their Motion that Dr. Michel's testimony should be excluded under Rule 403 on grounds it could prejudice or mislead a jury. ECF 712-1 at 31–32. The Court should deny this ground for exclusion as Dr. Michel's opinions are relevant rebuttal to Defendants' expert reports, Dr. Michel is highly qualified on the exact subject matter of her opinions, Dr. Michel's opinions use the same methodology as Defendants' experts, and Dr. Michel's opinions are based on reliable data and her own significant experience. Defendants have failed to articulate any material issues with the relevance or reliability of Dr. Michel's opinions as the thrust of their Motion is merely that they find Dr. Michel's opinions to be inconvenient because they undermine Defendants' experts' opinions. As such, "any purported weakness in [Dr. Michel's] methodology or conclusion goes to the degree of credibility to be accorded to the evidence, not to the question of its admissibility." *Royal Ins. Co. of Am.*, 208 F. Supp. 2d at 426 (S.D.N.Y. 2002) (citing *Ambrosini*, 101 F.3d at 133–35). As the courts and Advisory Committee have made clear, "the rejection of expert testimony is the exception rather than the rule." *Cooper Crouse-Hinds, LLC v. City of Syracuse, New York*, 568 F. Supp. 3d 205 (N.D.N.Y. 2021) (internal citations omitted). "This principle is based on the recognition that 'our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.' " *Melini v. 71st Lexington Corp.*, No. 07-CV-701, 2009 WL 413608, *5 (S.D.N.Y. Feb., 3, 2009) (quoting *Amorgianos*, 303 F.3d at 267).

Dr. Michel easily meets the *Daubert* standard of admissibility and her testimony and opinions should not be excluded from this case.

## V.    CONCLUSION

For the foregoing reasons, CLF asks the Court to deny Defendants' Motion to Exclude Dr. Michel. Her expert testimony is squarely within the scope of her education and professional

experience, and her rebuttal report and opinions are highly relevant, reliable, and useful to the trier of fact in the case.

Dated: November 3, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ James Y. Meinert*

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street

Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013

22

E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*