**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 3, 2025 |
| *Defendants*. | |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S**
**OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE**
**THE TESTIMONY OF JOSHUA C. MACEY**

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................... 1

**LEGAL STANDARD** ............................................................................................................ 3

**ARGUMENT** ......................................................................................................................... 5

    A.   Professor Macey's Opinions Are Not Improper Legal Conclusions ................................. 5

    B.   Professor Macey Followed a Reliable and Generally Accepted  Methodology ................. 8

    C.   Professor Macey's Testimony Will Assist the Factfinder ................................................ 10

    D.   Professor Macey is Qualified to Offer His Opinions ...................................................... 11

    E.   Defendants Are Not Significantly Prejudiced by Professor Macey's Opinions ............... 12

**CONCLUSION** ...................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advance Pharm., Inc. v. United States*,
   391 F.3d 377 (2d Cir. 2004) ................................................................................. 2

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ............................................................................. 4, 9

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*,
   451 F.3d 77 (2d Cir. 2006) ................................................................................. 3

*Coan v. Dunne*,
   2019 WL 2169879 (D. Conn. 2019) ................................................................... 6, 8

*Daubert v. Merrell Dow Pharma., Inc.*,
   509 U.S. 579 (1993) .......................................................................................... 4, 9

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   643 F. Supp. 2d 471 (S.D.N.Y. 2009) .............................................................. 9

*In re Mirena IUD Prod. Liab. Litig.*,
   169 F. Supp. 3d 396 (S.D.N.Y. 2016) .............................................................. 5

*In re Refco Sec. Litig.*,
   No. 07 CIV. 8165 (JSR), 2012 WL 13060288 (S.D.N.Y. July 30, 2012) ................. 2

*In re Welding Fume Prod.*,
   2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) .................................................... 2

*Kumho Tire Co. Ltd. v. Carmichael*,
   526 U.S. 137 (1999) .......................................................................................... 4, 9

*Munn v. Hotchkiss Sch.*,
   24 F. Supp. 3d 155 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018) ............................. 9

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ............................................................................. 10

*Novick v. AXA Network, LLC*,
   714 F. App'x 22 (2d Cir. 2017) .......................................................................... 10

*Old Gate Partners, LLC v. Paddock Enters., LLC*,
   No. 3:18-CV-01657 (JCH), 2024 WL 3520168 (D. Conn. May 30, 2024) ...................... 3, 4, 5

*Rochester Gas & Elec. Corp. v. GPU, Inc.*,
   355 F. App'x 547 (2d Cir. 2009) ....................................................................... 5, 8

*SLSJ, LLC v. Kleban*,
   277 F. Supp. 3d 258 (D. Conn. 2017) ......................................................... *passim*

*United States v. Angelilli*,
   660 F.2d 23 (2d Cir.1981) ................................................................................. 3

*United States v. Bestfoods,*
   524 U.S. 51 (1998)..............................................................................................7

*United States v. Bilzerian,*
   926 F.2d 1285 (2d Cir. 1991) .............................................................................5

*United States v. Hoskins,*
   No. 3:12CR238 (JBA), 2019 WL 5556092 (D. Conn. Oct. 28, 2019) ........................9

*United States v. Rankin,*
   No. 3:18-CR-272 (JAM), 2021 WL 5563996 (D. Conn. Nov. 27, 2021) ..........6, 8, 10

*United States v. Tin Yat Chin,*
   371 F.3d 31 (2d Cir. 2004) ..................................................................................3

*Valentin v. New York City,*
   No. 94-CV-3911 (CLP), 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997) ..................4

*Washington v. Kellwood Co.,*
   105 F.Supp.3d 293 (S.D.N.Y. 2015) ...................................................................3

**Rules**

Federal Rule of Evidence 403.......................................................................................5

Federal Rule of Evidence 702.....................................................................................10

## **EXHIBIT LIST**

Exhibit A                    Excerpts of the Joshua Macey September 2025 Deposition Transcript

Plaintiff Conservation Law Foundation, Inc. ("CLF") respectfully submits the following in opposition to Defendant's Motion to Exclude the Testimony of Joshua C. Macey (ECF No. 729; Mem. in Supp. at ECF No. 760).

## INTRODUCTION

In their attempt to exclude Professor Macey, Defendants fundamentally misunderstand, or more likely misconstrue, his opinions and the methodology he used to reach them. As a result, each of their arguments fail.

***First***, Professor Macey's opinions are not improper legal conclusions. Professor Macey essentially offers three opinions: (1) Defendants exerted operational control over the New Haven Terminal at all times relevant to this case; (2) throughout Defendants' involvement over the New Haven Terminal, Defendants' collective operational control over the New Haven terminal was done in conjunction with and in furtherance of their parent company's policies, procedures, and general business interest; and (3) Defendants are capable of paying any fines that may be levied in this case. Professor Macey's first two opinions concern Defendants' corporate structure, governance, and responsibility/authority to operate the New Haven Terminal as set forth in various contracts and agreements. Professor Macey offers no opinion about Defendants' liability for certain acts or omissions while exercising operational control over the terminal. Thus, Professor Macey does not opine on any "ultimate issue." Given corporate entities are a legal construct, a corporate structure analysis necessarily involves some level of "legal" analysis and expertise, however, this is not the same as opining on the viability of claims alleged in a lawsuit or concluding that Defendants violated any law.

Professor Macey's opinion that Defendants have the financial ability to pay any civil penalties in this case is also proper. Experts are routinely permitted to testify about a defendant's

financial condition.  *See, e.g., Advance Pharm., Inc. v. United States*, 391 F.3d 377, 400 (2d Cir. 2004); *In re Refco Sec. Litig.*, No. 07 CIV. 8165 (JSR), 2012 WL 13060288 at *1 (S.D.N.Y. July 30, 2012).

      *Second*, Professor Macey employed a reliable methodology. His selection, review, and analysis of Defendants' internal corporate documents reflect standard practice in his field, and those documents are a sufficient foundation for his opinions.  Defendants have failed to identify any contradictory documents that were allegedly omitted from Professor Macey's analysis.  Even if they had, some contradictory documents are insufficient to render his methodology unreliable. At best, those documents would go to the weight of his testimony and that can be addressed via cross examination at trial.  As will be discussed more fulsomely below, this Court regularly admits testimony on corporate structure and governance based on the same methodology used by Professor Macey.

      *Third*, Professor Macey's opinions are directly relevant to the claims at issue in this case and will assist the factfinder.  Defendants' operational control over the New Haven Terminal during the relevant time period is a crucial fact that must be proved for an affirmative liability determination the jury will make in this case.  Proving operational control requires the review, understanding, and synthesis of vast and complicated documentary material outside the expertise of a common juror.  Indeed, these corporate documents involve complex information being exchanged between parties whose identity and role is not clear.  Professor Macey must be permitted to assist where "the inferences those documents may or may not support are not at all simple."  *In re Welding Fume Prod.*, 2005 WL 1868046 at *17 (N.D. Ohio Aug. 8, 2005).

      His analysis of Shell's financial capacity also relates directly to an issue in this case, namely, penalty assessments under the CWA and RCRA.  *See Catskill Mountains Chapter of Trout*

*Unlimited, Inc. v. City of New York*, 451 F.3d 77, 87 (2d Cir. 2006) (economic impact of penalty on a defendant is relevant to the determination of the penalty amount under the CWA).

**Fourth**, Professor Macey is qualified. Professor Macey is a well-recognized, widely published scholar in the field of corporate law, structure, and governance. Professor Macey has spent years conducting research on and writing about the design, implementation, and organizational hierarchies within companies, and the requirements and procedures for operating a business as a separate entity from its owner or sister subsidiaries. (Macey Rpt., ECF No. 761, at 7–8). Professor Macey is currently an Associate Professor at Yale Law School where he teaches classes on these subjects. This uniquely prepares him to testify about Defendants' corporate structure, the roles and responsibilities of each corporate entity involved with the New Haven Terminal, and their financial position.

## LEGAL STANDARD

"Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 264 (D. Conn. 2017) (quoting *Washington v. Kellwood Co.*, 105 F.Supp.3d 293, 304 (S.D.N.Y. 2015)). "A witness is qualified where he or she has 'superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'" *Old Gate Partners, LLC v. Paddock Enters., LLC*, No. 3:18-CV-01657 (JCH), 2024 WL 3520168 at *6 (D. Conn. May 30, 2024) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)). "One may become qualified as an expert based on practical experience, so that professional education is not a prerequisite." *SLSJ, LLC*, 277 F. Supp. at 266 (citing *United States v. Angelilli*, 660 F.2d 23, 39–40 (2d Cir.1981)). "Alternatively, formal education may also suffice

to qualify a witness as an expert in a particular field, and the lack of extensive practical experience directly on point does not necessarily preclude the expert from testifying." *Id.* (internal quotation and citation omitted).  "When considering an expert's 'practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth.'" *Id.*  (citing *Valentin v. New York City*, No. 94-CV-3911 (CLP), 1997 WL 33323099 at *14 (E.D.N.Y. Sept. 9, 1997)).

"If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable."  *Old Gate Partners, LLC,* 2024 WL 3520168 at *6.  In *Daubert*, the Supreme Court identified four factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation' " and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 593–94 (1993)) (internal quotations and citations omitted).  However, these factors are not a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.*

"In addition to ensuring that expert testimony is reliable, the court must decide whether the expert's testimony is relevant, i.e., whether it will 'help the trier of fact.'" *Old Gate Partners, LLC*, 2024 WL 3520168 at *7 (quoting *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413

(S.D.N.Y. 2016)).  "[E]xpert testimony is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *Id.* (quoting Fed. R. Evid. 403).

"Furthermore, doubts about the usefulness of an expert's testimony, should be resolved in favor of admissibility." *SLSJ*, *LLC*, 277 F. Supp. 3d at 264.  While "[a]s a general rule an expert's testimony on issues of law is inadmissible," *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), "[c]ourts generally permit expert corporate governance testimony," provided the expert does not "track the language of the statute or the law that the defendants are accused of violating." *SLSJ, LLC*, 277 F. Supp. 3d at 268 (internal quotations and citations omitted).

## ARGUMENT

### A.    Professor Macey's Opinions Are Not Improper Legal Conclusions

Defendants fundamentally mischaracterize Professor Macey's opinions.  (*See* ECF No. 760 at 8–11).  Rather than offering legal interpretations or merely tracking ███████████████ ████████ (ECF No. 760 at 9–11), Professor Macey explains Defendants' corporate structure, governance, and contractual responsibilities for operating the New Haven Terminal—testimony squarely within his expertise as a Yale professor of corporate law, structure, and governance.  (*See* Macey Rpt., ECF No. 761, at 2–3).  He does not offer any opinions as to whether Defendants complied with the Permit(s) at issue in this case or whether they violated any statute, rule, or regulation.  Those determinations will be decided by the factfinder.  Likewise, while Professor Macey opines that Defendants can afford to pay any civil penalties levied in this case, he does not opine that Defendants *should* pay any civil penalties.  (Macey Rpt., ECF No. 761, at 7–8).

Experts like Professor Macey are routinely qualified to testify at trial.  *See, e.g.*, *Rochester Gas & Elec. Corp. v. GPU, Inc.*, 355 F. App'x 547, 551 (2d Cir. 2009) (holding testimony

admissible where expert "testified about [defendant's] corporate structure and evidence of dominance by [defendant's parent company]" because it did not "impermissibly state[] legal conclusions"); *United States v. Rankin*, No. 3:18-CR-272 (JAM), 2021 WL 5563996 at *2 (D. Conn. Nov. 27, 2021) ("an expert may properly testify on 'background legal concepts and related practices' that are important to the jury's determination of facts, and '[t]his is especially true where there are background or subsidiary principles of law that may govern or influence the parties' conduct but that are not directly at issue with respect to the law that will form the basis for final jury instructions.'") (quoting *Coan v. Dunne*, 2019 WL 2169879 at *1 (D. Conn. 2019)).

Professor Macey was explicit that he offers no legal opinions.  When asked directly, he testified:

Q. What do you understand your expert role to be in this case?

A. So I -- one of the things I study is corporate governance, corporate structure and corporate law, especially the relationship between corporate governance and corporate structure and environmental remediation. My understanding of my role here is to examine the record about the relationship between different Shell affiliates and subsidiaries and their role in operating the New Haven terminal.

Q. Is it fair to say that some of your opinions in this case are a pure legal nature?

A. No.

…

Q. You are offering some opinions about what the law requires, correct?

A. I don't think so. No, I do not.

…

Q. What would the purpose of your trial testimony be in a case like this?

A. The purpose of my trial testimony would be, to, again, explain how the documents I reviewed provide context for understanding the relationship between various shell entities, especially with their oversight and control and operational responsibility of the New Haven Terminal.

Deposition of Joshua Macey (Sept. 2, 2025), ECF No. 763, at 13:8–21; 14:8–11; 15:8–18.

6

Indeed, Professor Macey's initial report does not discuss or contain a single mention of any rule, regulation, or statute.  (*See* Macey Rpt., ECF No. 761).[1]  Moreover, Professor Macey's initial report contains only two case law citations: (1) a citation to a Hague District Court opinion to support the factual assertion that "Shell plc . . . is a holding company and ultimate shareholder of over 1,100 companies," and (2) a single citation to *United States v. Bestfoods,* 524 U.S. 51, 55 (1998).[2]  As he explained in his deposition testimony, Professor Macey does not offer any opinion regarding *Bestfoods* or its applicability to this case.  (Macey Dep., Ex. A, at 241:1–242:12). Rather, Professor Macey only cites *Bestfoods* in the "Background on Corporate Structure" section of his report to explain an exception to limited liability for the parent company of a subsidiary. (*See* Macey Rpt., ECF No. 761, at 7).

Defendants repeatedly confuse Professor Macey's initial report with his rebuttal report which merely responds to opinions offered by Defendants' experts.  For example, in the chart that appears on pages 9–10 of Defendants' brief, Defendants incorrectly attribute the last two statements regarding the Connecticut Civil Penalty Policy and 28 U.S.C. to Professor Macey's initial report when these two statements actually appear in his rebuttal report.  (*See* ECF No. 760 at 10).  This is a significant distinction.  To the extent those opinions in his rebuttal report could be construed as "legal opinions," those opinions are being offered only in response to the legal opinions being offered by Defendants' experts.  Defendants cannot have it both ways.  If their

---

[1] Although there is an analysis regarding the determination of statutory penalties under the Clean Water Act (CWA) and the Resource Conservation Recovery Act (RCRA) in Professor Macey's rebuttal report, *see* Rebuttal Report of Joshua Macey (July 22, 2025) ("Macey Rebuttal Report"), ECF No. 762, that analysis was done specifically in response to Defendants' experts regarding the application of those statutes to the facts of this case.  *See* Motions to Exclude David Uhlman (ECF No. 733), and Susan Parker Bodine (ECF No. 708).  Should the Court exclude, or Defendants withdraw, those improper opinions, Professor Macey will not offer any counter opinion on that issue in rebuttal.

[2] Defendants' claim that Professor Macey ███████████████████████████████████████████████ ████████████████████████████████████ (ECF No. 760 at 13), is untrue.  (*See* Macey Rpt., ECF No. 761, at 4–8).

experts are going to provide improper legal opinions, Professor Macey should be permitted to rebut those improper legal opinions. Professor Macey has no intention of offering his rebuttal opinions in the absence of affirmative testimony from Defendants' experts on those subjects.

Finally, Defendants incorrectly conflate the "legal" analysis required to analyze corporate structure and governance—which is clearly admissible expert testimony—with a "legal opinion" on an "ultimate issue" in the case—which is not admissible. *See, e.g.*, *Rochester Gas & Elec. Corp.,* 355 F. App'x at 551 (2d Cir. 2009) (holding testimony admissible where expert "testified about [defendant's] corporate structure and evidence of dominance by [defendant's parent company]" because it did not "impermissibly state[] legal conclusions"); *Rankin*, 2021 WL 5563996 at *2 ("an expert may properly testify on 'background legal concepts and related practices' that are important to the jury's determination of facts, and '[t]his is especially true where there are background or subsidiary principles of law that may govern or influence the parties' conduct but that are not directly at issue with respect to the law that will form the basis for final jury instructions.'") (quoting *Coan*, 2019 WL 2169879 at *1).

Given corporate structures are a legal creation, there is necessarily some amount of "legal" analysis required to evaluate them, hence Professor Macey's citation to law review articles on the subject. However, this is not the same as testimony offering an opinion on the viability of legal claims alleged in a lawsuit or an opinion that a party violated the law. Defendants' suggestion otherwise is an ill-disguised attempt to confuse the Court with semantics.

**B.    Professor Macey Followed a Reliable and Generally Accepted   Methodology**

In rendering his opinions in this case, Professor Macey analyzed dozens of internal and publicly available company documents in a manner consistent with years of conducting research on and writing about the design, implementation and organizational hierarchies within companies.

(Macey Rpt., ECF No. 761, at 8).   This is the same methodology and intellectual rigor Professor Macey applies in his non-litigation work.  *See Kumho Tire Co. Ltd.*, 526 U.S. at 152 ("[A]n expert . . . [should] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

Professor Macey's selection of documents represents a standard approach to evaluating corporate relationships, focusing on the most relevant materials that demonstrate actual operational practices.  The documents he reviewed provide a sufficient basis for his conclusions about how the entities functioned in practice.  Tellingly, Defendants fail to identify any specific documents that would contradict his findings but only vaguely hint such hypothetical materials might exist.[3] (*See* ECF No. 760 at 12–14).  A naked assertion that Professor Macey did not consider crucial documents that undermine his opinions is insufficient.  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 479 (S.D.N.Y. 2009) (holding expert's methodology reliable where "[Defendant] implies that the [plaintiff's] attorneys may have skewed [expert's] report by selectively providing him internal corporate studies obtained through discovery. But [defendant] does not point to a single concrete example of a public study or internal document that [expert] overlooked.").

This Court has consistently held the methodology employed by Professor Macey to be reliable and pass muster under *Daubert*.  *See, e.g.,  United States v. Hoskins*, No. 3:12CR238 (JBA), 2019 WL 5556092 at *5 (D. Conn. Oct. 28, 2019) (holding expert "may testify regarding general principles of corporate structure, formation, or governance insofar as that testimony relates

---

[3] Additionally, even if Defendants could point to such a document, this would go to the weight, not the admissibility, of Professor Macey's testimony. *Amorgianos,* 303 F.3d at 267 (holding if the method is reliable, "lack of textual support may go to the weight, not the admissibility" of the expert's testimony.") (internal quotation and citation omitted); *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 200 (D. Conn. 2014), *aff'd,* 724 F. App'x 25 (2d Cir. 2018) ("any issues with [expert's] research go to the weight, not admissibility, of his testimony.").

to this case" where testimony was "based on his academic research and professional experience as documents previously provided by the government in discovery . . . as well as publicly available corporate records."); *SLSJ*, *LLC*, 277 F. Supp. 3d at 279 (holding Yale Law School professor's expert testimony "based on his 'knowledge and expertise in corporate governance and organization" about "general business principles that apply to limited liability companies" admissible); *Rankin*, No. 3:18-CR-272 (JAM), 2021 WL 5563996 at *2–3 (allowing expert to testify on "the general roles and duties of the defendants and other directors of cooperative public corporations" and defendant's "corporate documents.").

### C.    Professor Macey's Testimony Will Assist the Factfinder

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005); *see also Novick v. AXA Network, LLC*, 714 F. App'x 22, 25 (2d Cir. 2017) ("Expert testimony should be liberally admitted if the expert's . . . 'specialized knowledge will assist the trier of fact to understand the evidence.'") (quoting Fed. R. Evid. 702).

It is beyond dispute that Professor Macey has the qualifications, training, and experience as a professor who studies, writes, and lectures about corporate structure, law, and governance that the average juror does not have. As such, his testimony will assist the jury in understanding the relationship between the Defendants and how the various contracts and agreements between them demonstrate that each had operational control over the New Haven Terminal. Establishing operational control is crucial for any liability determination.

Moreover, the fact Shell PLC is not a party to the case does not mean that its policies, procedures, and relationships to the Defendants is irrelevant. Information about Shell PLC is relevant and necessary to explain why, among other things, the named Defendants utilized and

employed the same employees and also explains why the named Defendants worked cooperatively to operate the facility in accordance with Shell PLC's policies and procedures. Prohibiting Professor Macey from even mentioning Shell would only cause confusion.

Although Defendants argue that the relevant inquiry under the CWA and RCRA penalty provisions is the financial condition of the named Defendants, they ignore the fact that the named Defendants, as wholly owned subsidiaries of Shell, do not report separate financial information. Their finances are rolled up with those of their parent corporation and are reported as one entity. (*See, e.g.* Shell Annual Report and Accounts and Form 20-F, 2024, available at https://www.shell.com/investors/results-and-reporting/annual-report-archive.html, at 245 (noting Defendants' SEC reports are "Consolidated Financial Statements" that "comprise the financial statements of the Companies and its subsidiaries")). In the absence of the named Defendants providing any other financial information, Professor Macey should be permitted to discuss the financial health of the company writ large.

### D.    Professor Macey is Qualified to Offer His Opinions

Defendants insist that Professor Macey is not qualified to offer the opinions he offers in this case because he is not a CPA, economist, meteorologist, or toxicologist and has not worked for regulatory agencies or oil companies. (*See* ECF No. 760 at 4, 18). That argument would be compelling if Professor Macey was attempting to provide any opinions that required any of that expertise. He is not. Instead, Professor Macey's core opinions reflect his education, training, and experience: that Defendants exerted operational control over the New Haven Terminal in furtherance of their parent company's policies, procedures, and business interests. He is well qualified to render those opinions. *See SLSJ*, *LLC*, 277 F. Supp. 3d at 279 (holding Yale Law School professor's expert testimony "based on his 'knowledge and expertise in corporate

11

governance and organization" about "general business principles that apply to limited liability companies" admissible).

###### E.    Defendants Are Not Significantly Prejudiced by Professor Macey's Opinions

Defendants' assertions that Professor Macey's opinions should be excluded because they create a significant risk of unfair prejudice fail for two reasons.  First, contrary to Defendants' arguments otherwise, and as set forth above, Professor Macey is not offering any legal opinions.  Second, Defendants have failed to articulate any significant risk of unfair prejudice.  Professor Macey's testimony is highly probative of several issues in this case.  Under Rule 403, "unfair prejudice" is not merely evidence that is damaging to the opposing party, but evidence that has an "undue tendency to suggest a decision on an improper basis," such as anger or emotion.  Testimony about non-parties, which, as set forth above, is relevant to help explain Defendants' conduct, is not inherently prejudicial.  Testimony about Defendants' contractual obligations with regard to operation of the New Haven Terminal is also not inherently prejudicial.  To the extent that Defendants are able to articulate any unfair prejudice, the proper remedy is a limiting instruction rather than the drastic measure of complete exclusion.

###### CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to Deny Defendant's Motion at ECF No. 729.

Dated: November 3, 2025                    Respectfully submitted,

                                    CONSERVATION LAW FOUNDATION, Inc.,
                                    by its attorneys

                                    */s/ Ridge Mazingo*
                                    Ridge Mazingo (phv208402)*
                                    Motley Rice LLC
                                    28 Bridgeside Blvd.
                                    Mount Pleasant, SC 29464

Tel: (843) 216-9620
E-mail: rmazingo@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street, Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street, Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street, Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*

13

Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9013
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*

*Admitted as Visiting Attorney*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2025, the foregoing motion was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Ridge Mazingo*
Ridge Mazingo