UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> Defendants. | Case No: 3:21-cv-00933-VDO <br><br> November 3, 2025 |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S
OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE
THE TESTIMONY OF JAMES O'DONNELL, PH.D.**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND .............................................................................................................. 2

III.  LEGAL STANDARD ..................................................................................................... 2

IV.  ARGUMENT .................................................................................................................. 4

    a.   Dr. O'Donnell's Opinions are Plainly Relevant to the Issues in this Case. ........................ 4

    b.   Dr. O'Donnell's Methodology is Reliable. ............................................................ 6

    c.   Dr. O'Donnell's Testimony Will Not Confuse or Inflame the Jury. .................................. 8

V.   CONCLUSION ................................................................................................................ 9

**TABLE OF AUTHORITIES**

**Cases**

*Ambrosini v. Labarraque*,
   101 F.3d 129 (D.C. Cir. 1996) ............................................................................................... 4

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ............................................................................................... 3, 6

*Boucher v. U.S. Suzuki Motor Corp.*¸
   73 F.3d 18 (2d 1996) ............................................................................................................ 7

*Charter Pracs. Nternational, LLC v. Robb*,
   No. 3:12-cv-1768, 2015 WL13000251 (D. Conn. Mar. 31, 2015) ...................................... 7

*Connecticut General Life Ins. Co. v. BioHealth Labs., Inc., et. al*,
   No. 3:19-cv-01324, 2024 WL 2106557 (D. Conn. Mar. 28, 2024) ..................................... 3

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) .................................................................................................... 3, 5, 7

*In re Mirena IUD Prod. Liab. Litig.*,
   169 F. Supp. 3d 396 (S.D.N.Y. 2016) ................................................................................. 3

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) ......................................................................................................... 3, 6

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ................................................................................................ 7

*Precision Trenchless, LLC v. Saertex multiCom LP*,
   No. 3:19-cv-0054 (JCH), 2022 WL 594096 (D. Conn. Feb. 28, 2022) ............................... 7

*Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc.*,
   208 F. Supp. 2d 423 (S.D.N.Y. 2002) ................................................................................. 4

*United States v. Mulder*,
   273 F.3d 91 (2d Cir. 2001) .................................................................................................. 7

**Rules**

Federal Rule of Evidence 401 ..................................................................................................... 4

Federal Rule of Evidence 403 ..................................................................................................... 8

Federal Rule of Evidence 702 ............................................................................................. 2, 4, 7

Federal Rule of Evidence 702 - Advisory Committee Note (2000) ....................................... 4, 8

## **EXHIBIT LIST**

Exhibit A          Excerpts of the James O'Donnell September 2025 Deposition Transcript

I.    INTRODUCTION

Plaintiff Conservation Law Foundation ("CLF") brought this civil suit under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 6901, et seq. ("Clean Water Act"), and the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, et seq. ("Resource Conservation and Recovery Act" or "RCRA") alleging violations of federal law by Equilon Enterprises LLC d/b/a Shell Oil Products US, Triton Terminaling, LLC, and Motiva Enterprises, LLC (hereinafter, collectively, "Defendants" or "Shell") at their bulk petroleum storage terminal in the Port of New Haven. *See, e.g.* Am. Compl. (ECF 47) at ¶ 1. CLF alleges that Defendants have failed to evaluate and address the reasonably foreseeable risks to the New Haven Terminal posed by severe weather, including risks associated with climate change, which threaten to flood the Terminal and release millions of gallons of oil and other pollutants into nearby New Haven Harbor, Quinnipiac River, and Mill River.

CLF's expert witnesses include Dr. James O'Donnell, a qualified expert who will testify about the threat of sea level rise in the geographic area where Shell's Terminal is located. Defendants do not challenge Dr. O'Donnell's qualifications but seek to exclude Dr. O'Donnell's expert testimony based on the reliability of his methods and the relevance of his opinions. Defendants' motion should be denied for three key reasons. First, sea level rise is directly relevant to CLF's allegations in its complaint, specifically as it is tied to what constitutes best industry practice, a central issue in this case. Second, Dr. O'Donnell is a qualified expert who employed recognized and reliable methodology in his examination of pertinent and relevant studies and papers to determine the threat of sea level rise in the geographic area where the Terminal is located. Lastly, Dr. O'Donnell's testimony provides helpful scientific context and background for the fact

1

finder and will not inflame or confuse the jury. For these reasons, Defendants' motion should be denied.

## II. BACKGROUND

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ In his daily work as a professor at the University of Connecticut and as the executive director of CIRCA, Dr. O'Donnell engages with climate-related issues and science on a daily basis. *See* Ex. A, O'Donnell Dep. at 17:2–11. He is undisputably an expert in climate science.

Dr. O'Donnell has also been appointed to leadership positions on numerous working groups and councils designed to combat climate change. Given his extensive experience in Connecticut specifically, he offers a rich, specialized knowledge of sea level rise and climate change in Connecticut that is directly relevant to determining the threats and dangers that the Terminal faces.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 provides that a qualified expert "may testify in the form of an opinion" if the proponent of the expert demonstrates to the Court that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The district court acts as a "gatekeeper," who is tasked with deciding whether the expert's testimony satisfies Rule 702's requirements. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591–93 (1993). "[T]he Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." *Connecticut General Life Ins. Co. v. BioHealth Labs., Inc., et. al*, No. 3:19-cv-01324, 2024 WL 2106557 (D. Conn. Mar. 28, 2024) (internal citations omitted).

If an expert meets the threshold requirement of qualification, the Court then must determine whether the expert's testimony itself is reliable. The Supreme Court has identified several factors that may be considered in assessing reliability: (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation," and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593–94) (internal quotation marks and citations omitted). These factors, however, do not constitute a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Id*.

After determining reliability, the Court must decide whether the expert's testimony is relevant, that is, whether it will help the trier of fact. *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016). Like other forms of evidence, expert testimony is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination

3

of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Once the thresholds of reliability and relevance are met, the testimony is admissible. Thereafter, any purported weakness in an expert's methodology or conclusion goes to the degree of credibility to be accorded to the evidence, not to the question of its admissibility." *Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc.*, 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 133–35 (D.C. Cir. 1996)). "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee Note (2000).

## IV. ARGUMENT

▮▮▮▮ Instead, Defendants insist that Dr. O'Donnell's methodology is unreliable and his opinions are irrelevant to the issues in this case. As discussed below, Defendants are incorrect.

### a. Dr. O'Donnell's Opinions are Plainly Relevant to the Issues in this Case.

▮▮▮▮ Under Federal Rule of Evidence 401, in order for evidence to be relevant, it must have a tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. ▮▮▮▮

4

██████████████████████████████████████████████████████████

████████████████████████████████████████ This is incorrect.

This case centers around Defendants' failures to adequately prepare for climate change in violation of the Permit. CLF alleges that Defendants failed to comply with the Permit by failing to adequately prepare for and acknowledge the risks posed by climate change. The risks and dangers presented by increased sea level rise, as discussed in Dr. O'Donnell's report, cannot be separated from the issues in this case and whether the Terminal complied with its obligations to sufficiently consider climate change. Defendants' view is that a discussion divorced from the Terminal is irrelevant; however, discussion of the dangers the Terminal and the surrounding area face is directly relevant. Further, as made evident by CLF's other expert reports, a consideration of sea level rise is relevant to what constitutes best industry practice, and it is not possible to discuss why consideration of sea level rise is important without an explanation of the realities and dangers presented by sea level rise.

Defendants further argue that the CIRCA Storm Surge Viewer does not show a threat to the Terminal, but Dr. O'Donnell's deposition testimony makes clear the intent of the tool and why the site of the Terminal is not at the scale that would be identified by the tool as a potential flood site. *See* Ex. A, O'Donnell Dep. at 190:19–23 ("So for prior reasons this has a scale which is fully reliable at the tens of meters level. And so if things are smaller than that are not really observed, not really represented."); 192:17–24 (highlighting the need for higher resolutions and more evaluation to effectively use the CIRCA Storm Surge Viewer to predict flood risks); 196:13–198:16 (explaining that the CIRCA Storm Surge Viewer is not an end-all-be-all tool for predicting flood risks). Furthermore, any challenge to Dr. O'Donnell's testimony based on the CIRCA tool can be discussed on cross-examination and is not an appropriate basis for a *Daubert* motion.

Moreover, the reality of increased sea level rise due to climate change is directly tied to the allegations made in CLF's Amended Complaint. *See* Amend. Compl. ¶ 357 ("Sea level rise has been contributing to increases in the frequency of flood events in Connecticut since before 2015."); 359 ("Sea levels are expected to continue to rise in Connecticut for at least the next 50 years."); 404 ("Shell has failed to consider in the planning process the potential impact of a rise in sea level, coastal flooding, and erosion patterns in operating the Terminal."). As the Amended Complaint explains, Defendants' failure to adequately prepare for increased sea level rise due to climate change increases the potential for pollution from the Terminal. *See Id.* ¶¶ 340–368. In a case that centers around climate change and the dangers faced as a result, a discussion of sea level rise is plainly relevant as to whether Defendants employed practices to protect against these dangers as required by the permit.

### b. Dr. O'Donnell's Methodology is Reliable.

Defendants argue that Dr. O'Donnell's opinions are unreliable because they do not relate to the specific Terminal or the Terminal's specific location, do not utilize a reliable methodology with support from Terminal data, and do not assess any "probable" or "impending" storm effects relating to the Terminal. "In assessing the reliability of a proffered expert's testimony, a district court's inquiry under *Daubert* must focus, not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology." *Amorgianos*, 137 F. Supp. 2d at 162. No single factor is necessarily dispositive of the reliability of a particular expert's testimony, because a trial court need only "consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kumho Tire Co.*, 526 U.S. at 150. The test of reliability is a flexible one depending on the "nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* The court need not weigh the correctness

6

of an expert's opinion or analyze and study the science in question in order to reach its own conclusions. *Charter Pracs. Nternational, LLC v. Robb*, No. 3:12-cv-1768, 2015 WL13000251 at *3 (D. Conn. Mar. 31, 2015).

Under Fed. R. Evid. 702, an expert witness, unlike a lay witness, is "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (quoting *Daubert*, 509 U.S. at 592). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Dr. O'Donnell's opinions are not so "speculative or conjectural" to warrant exclusion. *See Boucher v. U.S. Suzuki Motor Corp.¸* 73 F.3d 18, 21 (2d 1996). Dr. O'Donnell's report cites numerous data sources and scholarly papers in support of his opinions. In addition, Dr. O'Donnell's report analyzes the effects on the very geographic area where the Terminal is located and, as explained in his report, is likely to be impacted by sea level rise in the future. *See Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-cv-0054 (JCH), 2022 WL 594096 at *11 (D. Conn. Feb. 28, 2022) (finding an opinion was neither speculative nor conjectural where it was formed on the basis of the expert's observations of objective evidence). Dr. O'Donnell employs a reliable methodology that examines past events that indicate what may happen in the future. He is not the first expert to employ such a methodology and surely will not be the last.

Furthermore, allowing Dr. O'Donnell to provide an opinion without having applied his methodology specifically to the Terminal at issue does not go against *Daubert*. *See United States*

7

*v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) (finding that an expert witness may offer evidence testimony as background and to assist in proving an element of the alleged offense). The Advisory Committee's Note to Federal Rule of Evidence 702 states:

> Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.

As such, Dr. O'Donnell not linking the reality of sea level rise to the Terminal, does not make his testimony inadmissible. Defendants make numerous arguments that are inappropriate for a Daubert motion. Specifically, many of the issues raised in Defendants motion can be handled on cross-examination of Dr. O'Donnell. Furthermore, Dr. O'Donnell's testimony can be linked to the specific facts of the case by the jury.

### c. Dr. O'Donnell's Testimony Will Not Confuse or Inflame the Jury.

Rule 403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Defendants argue that Dr. O'Donnell's testimony will mislead the jury into evaluating the Defendants' conduct under standards that did not exist at the time of the permit, and that his opinions will not assist in resolving any question related to compliance with the permit.

As discussed above, Dr. O'Donnell's testimony is directly relevant to the issues in this case. Defendants' argument that Dr. O'Donnell's testimony will not aid the factfinder in deciding any relevant issues is false because of all the reasons discussed above. Furthermore, Dr. O'Donnell's testimony does not serve to only inflame the jury; rather, it informs the broader issue of what Defendants should have done and should have considered in complying with the permit. Again,

Defendants attempt to parse issues that simply cannot be separated. Dr. O'Donnell's testimony provides vital context that is needed to decide what constitutes best industry practice and whether Defendants adequately considered the dangers presented by climate change.

## V. CONCLUSION

For the foregoing reasons, CLF respectfully requests that this Court deny Defendants' motion to preclude the expert testimony of Dr. O'Donnell.

Dated: November 3, 2025

Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc.,
by its attorneys

*/s/ Devin Williams*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9628
E-mail: dwilliams@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)

9

Conservation Law Foundation, Inc.
195 Church Street, Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street, Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street, Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013

E-mail: sjacks@motleyrice.com
E-mail: rmazingo@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc*.

*\*Admitted as Visiting Attorney*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2025, the foregoing motion was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Devin Williams*
Devin Williams