# **EXHIBIT 3**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SALINE RIVER PROPERTIES, LLC,
a Michigan limited liability company,

       Plaintiff,                        Case No. 2:10-cv-10507-SFC-MKM

                                            Hon. Sean F. Cox

-v.-

JOHNSON CONTROLS, INC,
a Wisconsin corporation,

       Defendant.

   *consolidated with*

SALINE RIVER PROPERTIES, LLC,
a Michigan limited liability company,

       Plaintiff,                        Case No. 2:10-cv-13406-SFC-MKM

                                            Hon. Sean F. Cox

-v.-

JOHNSON CONTROLS, INC,
a Wisconsin corporation,

       Defendant.

**JOHNSON CONTROLS, INC.'S
RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE
OPINIONS OF WILLIAM MUNO**

Respectfully submitted,

**Johnson Controls, Inc**.
Defendant

By: <u>/s/ Emily E. Hughes</u>
    One of Its Attorneys

Robert A. Roth
Edward V. Walsh, III
REED SMITH LLP
10 South Wacker Drive
Chicago, Illinois 60606-7507
(312) 207-1000

Marc Newman (P51393)
Emily Hughes (P68724)
THE MILLER LAW FIRM
95 West University Drive, Suite 300
Rochester, MI 48307
(248) 841-2200

David H. Fink (P28235)
Darryl G. Bressack (P67820)
FINK & ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 84304
(248) 971-2500

Attorneys for Defendant

## TABLE OF CONTENTS

                                  **Page**

I. Introduction ..................................................................................................... 1

II. Legal Standard For Experts ............................................................................ 2

III. <u>Argument</u> ........................................................................................................ 3

  1. Mr. Muno's Expert Credentials Are Unchallenged ................................ 3

  2. Mr. Muno's Opinions ............................................................................. 4

    a) Plaintiff's Mischaracterization of Mr. Muno's Deposition Testimony ......................................................................................... 5

    b) Mr. Muno's Opinion on the Overall Project Schedule ............... 6

    c) Mr. Muno's Opinion on the Plaintiff's Penalty Demands .......... 9

IV. CONCLUSION .............................................................................................. 11

i

## TABLE OF AUTHORITIES

### Other Authorities

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................. 2, 3, 10

*First Nat'l St. Bank v. Reliance Electric Co.*,
   668 F. 2d 725( 3rd Cir. 1981) ............................................................................ 7

*First Tennessee Bank Nat'l Assn v. Barreto*,
   268 F.3d 319 (6th Cir. 2001) .................................................................... 2, 3, 7

*In re Scrap Metal Antitrust Litig.*,
   No. 1:02 CV 0844, 2006 WL 2850453 (N.D. Ohio 2006), aff'd., 527 F.3d 517 (6th Cir. 2008)
   ............................................................................................................................ 3

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S.137 (1999) ............................................................................................ 2

*TCBY Systems Inc. v. RSP Co.*,
   33 F.3d 925 (8th Cir. 1994) ............................................................................... 7

*The Shaw Group, Inc. v. Marcum*,
   516 F.3d 1061 (8th Cir. 2008) ........................................................................... 7

### Rules

Fed. R. Civ. Proc. § 26(a)(2)(B) .......................................................................... 3, 6

Federal Rule of Evidence 702 .............................................................................. 2, 3

ii

I.   Introduction

In its motion to exclude William Muno, a 31 year veteran of the U.S. Environmental Protection Agency ("EPA") as an expert witness in this matter, Plaintiff spends a lot of time arguing about issues that are not before the Court, and virtually no time on the true issue before the Court, whether Mr. Muno is a qualified expert who will assist the Court in understanding the evidence in this complicated environmental case. Plaintiff's First Amended Complaint (hereafter "*Pl. Am. Compl.*") consists of a single count, incorporating 46 separate paragraphs, entitled "Citizen Suit to Enforce EPA Order". The Order, entered into between JCI and EPA, and to which Plaintiff is not a party, pertains to a former industrial property in Saline, Michigan now owned by Plaintiff. Plaintiff, a real estate developer, has stated that it intended to develop luxury condominiums there. In its amended complaint, Plaintiff demands millions of dollars in penalties and other relief in the form of a far reaching mandatory injunction, based on allegations that JCI violated the Order. Mr. Muno's testimony directly rebuts Plaintiff's main assertion that JCI delayed in implementing the subject Administrative Order on Consent. ("AOC") Mr. Muno also shows that Plaintiff's penalty demands under the AOC are simply unprecedented, particularly given the nature of the alleged "paperwork" violations.

Mysteriously, Plaintiff spends 2 full pages on what Mr. Muno *does not opine*. (*Plaintiff's Motion, pp. 11-12; hereafter Pl. Mot. p. __*") In doing so, Plaintiff simply re-hashes arguments that it has already made in its Motion for Summary Judgment, briefing on which was recently completed. In other parts of its brief Plaintiff argues about what it thinks various provisions of the AOC mean, in purported contrast to what Plaintiff says Mr. Muno "suggests". (*Pl. Mot. pp. 7-10*) With virtually no analysis under applicable Federal Rule of Evidence ("FRE") 702 of Mr. Muno's actual opinions and testimony, Plaintiff's brief is in fact an exercise in setting up and knocking down straw man arguments. Mr. Muno's long, hands-on experience with and specialized knowledge about EPA's customs and practices at cleanup sites under AOC's like the one before the Court, is not challenged by Plaintiff. Instead, having no evidence that JCI did not

1

follow EPA's standard practices under the AOC, and with no disclosed expert in its corner, Plaintiff puts words in Mr. Muno's mouth and then attacks him for supposedly offering "legal conclusions" or testimony that is "irrelevant" or "lacking foundation".

As shown below and fully consistent with Sixth Circuit decisional law, Mr. Muno's testimony is relevant and reliable, derived from substantial practical experience that can assist the Court in understanding the evidence. Any question about Mr. Muno's opinions and testimony should, thus, go to their weight, and not to their admissibility.

## II. Legal Standard For Experts

"If scientific, technical, *or other specialized knowledge,* will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert *by knowledge, experience* or training may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." (Federal Rule of Evidence ("FRE") 702; emphasis supplied) Subparts 1-3 of FRE 702 codify the traditional inquiry set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which may be of limited utility in the context of non-scientific expert testimony. *First Tennessee Bank Nat'l Assn v. Barreto*, 268 F.3d 319, 332, 334 (6th Cir. 2001) (*citations omitted*). The *Daubert* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. *Id.* at 334-335 (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S.137 (1999)). "In some cases… the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon *personal knowledge or experience."* *Id.* at 335 (*citation omitted; emphasis supplied*).

An expert witness need not have personal knowledge of the underlying factual basis of his opinions. FRE 703 specifically states that "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the

- 2 -

expert at or before the hearing." Indeed, "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Id. . "The Court's role is that of gatekeeper[, not] that of armed guard." <u>In re Scrap Metal Antitrust Litig.</u>, No. 1:02 CV 0844, 2006 WL 2850453, at *13 (N.D. Ohio Sept. 30, 2006), <u>aff'd</u>, 527 F.3d 517 (6th Cir. 2008) *(internal quotations omitted)*. The Supreme Court has instructed that instead of wholesale exclusion of expert testimony, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596. Finally, a district court's decision to allow expert testimony is reviewed on an abuse of discretion standard. *First Tennessee*, 268 F.3d at 331.

### III.     Argument

**1.     Mr. Muno's Expert Credentials Are Unchallenged**

Mr. Muno was disclosed as an expert pursuant to Fed. R.Civ.P.26(a)(2)(B) on December 30, 2010. As Plaintiff notes, Mr. Muno provided a written report stating his opinions. As set forth in his curriculum vitae attached to his expert declaration *(Pl. Mot. Ex. 2, full version attached hereto as Defendant's Exhibit A for convenience; hereafter, "Def. Ex. __")* Mr. Muno retired from the U.S. EPA in 2004 after 31 years of service including as:

- Director of Region 5 Superfund

- Chief or RCRA Enforcement Branch with primary responsibility for initiating hazardous waste enforcement actions

- A member of the Senior Executive Service (EPA's highest non-appointed rank) for 13 years

- A recipient of numerous awards and commendations including EPA's Distinguished Career Service Award

Because Mr. Muno's credentials and extensive experience with EPA orders for cleanup sites like the one before the Court cannot be challenged, Plaintiff attacks Mr. Muno for opinions that he does not state on matters for which he has not been tendered. Among other things, Plaintiff assails Mr. Muno for having no legal training and for offering a legal opinion. But Mr. Muno does not offer a legal opinion and is not tendered as a legal expert. His opinions are restricted to the customs and practices of the EPA, on which he has vast knowledge and experience, and on whether the events that unfolded with regard to the subject AOC comport with such customs and practices. This testimony is directly relevant to Plaintiff's allegations that JCI delayed in implementing the AOC. Mr. Muno also states an opinion based on extensive personal experience, about the unprecedented nature of Plaintiff's demand for penalties in this case. He bolsters this opinion with empirical data that he personally reviewed from publicly available EPA files. Plaintiff's counsel deposed Mr. Muno extensively on all of these matters. Plaintiff apparently chose not to retain its own expert on these matters or to depose (or request EPA's agreement under 40 CFR§2.403 to submit for deposition) any active EPA staff member regarding this matter. Plaintiff's arguments about what Mr. Muno is tendered for and what he opines are simply attempts to misdirect the Court's attention from what Mr. Muno actually states, and its direct relevance to this case.

### 2. **Mr. Muno's Opinions**

As Plaintiff notes, Mr. Muno prepared an expert report, a portion of which is attached to Plaintiff's Motion as Exhibit 2, and for the Court's convenience, attached here as Def. Ex. A. In his report Mr. Muno expresses opinions on the following: 1) the guidance documents used by JCI in doing its work under the AOC;[1] 2) the overall project schedule after issuance of the AOC; and, 3) the penalties demanded by Plaintiff for alleged "paperwork" violations, as compared to

---

[1] Plaintiff does not challenge this aspect of Mr. Muno's expert opinion or testimony

- 4 -

Mr. Muno's own experience and knowledge of EPA's customs and practices in seeking such penalties.

        a)      <u>Plaintiff's Mischaracterization of Mr. Muno's Deposition Testimony</u>

Mr. Muno was extensively deposed by Plaintiff (105 pages, 17 exhibits). Many of Plaintiff's arguments here are centered on answers that it got in deposition, but now does not like. For instance, Plaintiff's counsel asked the following:

> *Q. From your review of the administrative order on consent and the materials you were provided, you understood that written quarterly progress reports were required?*
>
>    *A. No.*
>
> *MR. WALSH: Object, foundation.*
>
> *BY THE WITNESS:*
>
>    *A. My previous answer was based upon what was alleged in your complaint, not my interpretation of the AOC itself.*
>
> *Q. Did you review any materials in this case in which EPA indicated that other than written quarterly status reports could be submitted?*
>
>    *A. I didn't see any correspondence from EPA one way or the other. In my reading of the AOC, it doesn't require written quarterly reports.*
>
> (*Pltf. Mot., Ex. 3, pp. 90:19-24; 91:1-11; for convenience, Def. Ex. B, attached*)

- 5 -

Plaintiff asked Mr. Muno whether he thought the AOC required JCI to provide written quarterly reports to EPA and Plaintiff got the answer – no. With no evidence to support its argument that quarterly reports under the AOC must be *in writing*, Plaintiff now seeks to exclude the testimony of a highly experienced expert made in direct response to a question asked by Plaintiff's counsel, to wit, that in his opinion the AOC *does not* require *written* quarterly reports. Moreover, in its brief Plaintiff purposefully omits the above quoted testimony by Mr. Muno in an attempt to make it look like Mr. Muno said something that he did not say. *(Plf. Mot., p.7)* But the full context of Mr. Muno's testimony reveals Plaintiff's attempt to shade his testimony. Mr. Muno admitted to no "paperwork violation" by JCI, but merely stated his understanding that this was Plaintiff's theory based on his review of the Plaintiff's amended complaint.

Finally, Mr. Muno in his Fed. R.Civ.P. 26(a)(2)(B) written opinion *does include* discussion of quarterly reporting in relation to JCI's timeliness under the AOC, and the lack of any EPA demands in connection with quarterly or other reporting under the AOC. (*Def. Ex. A, p. 6*)

        b) <u>Mr. Muno's Opinion on the Overall Project Schedule</u>
           (i) JCI Acted Timely Under the AOC

Mr. Muno's opinion and testimony directly address the issues that have been put before the Court *by Plaintiff.* Among other things he states that *"…JCI's implementation of the AOC requirements was consistent with other sites of equivalent complexity"*. (*Def. Ex. A, p. 4*). He further states: *"Based on my review of the documents regarding JCI's investigation of the Site, the process moved forward in a timely manner to adequately characterize the facility."* (*Id.*, p.5) He further states: *"I conclude that JCI's work at the Site progressed in a timely manner. Moreover, the correspondence from the U.S. EPA Region 5 RCRA project manager indicates to me that she was also satisfied with the overall progress…"*. (*Id.*, p. 5)

- 6 -

All of these opinions are relevant to the issues put to the Court by Plaintiff. Plaintiff alleges in its First Amended Complaint that JCI did not timely make reports to EPA. (*First Amended Complaint, ¶ 8, 10-12, 14, 21, 26, Def. Ex. C*) In its Motion for Summary Judgment Plaintiff argues that JCI caused "delay" in effectuating the AOC, that JCI acted " belatedly", and that enforcement is needed to avoid "further delay".  Plaintiff also asserts that JCI "dug in its heels and dragged its feet". (*See, Plaintiff Motion for Summary Judgment, pp. 14, 16, 17 and 20, excerpts attached as Def. Ex. D*)

Mr. Muno's testimony that the project schedule at the Site unfolded in a typical fashion for EPA administrative orders on consent is similar to the type of expert testimony accepted by the district court in *First Tennessee Bank National Association, supra*.  On review, the Sixth Circuit found no error, much less an abuse of discretion, in the district court's decision to allow an expert to testify about whether a bank had acted in a commercially reasonable manner.  The court found that the expert, a former 40 year employee of defendant the Small Business Administration ("SBA") "…was qualified to offer his opinion on the foregoing issue, by virtue of his specialized knowledge, skill, experience, training or education" 268 F.3d at 332. The district court had stated:  "I think he has specialized knowledge that will assist the trier of fact in understanding the evidence, and any weaknesses in his background will go to the weight to be accorded to his opinion" *Id.* at 333. As with the expert in *First Tennessee,* who assisted the court in understanding the evidence concerning the customs and practices of the banking industry regarding the handling of letters of credit, Mr. Muno can assist this Court in understanding the customs and practices of EPA in overseeing the implementation of an AOC like the one before the Court. Such expert testimony is commonplace. *See, e.g., The Shaw Group, Inc. v. Marcum,* 516 F.3d 1061 (8th Cir. 2008)(admitting testimony of expert on business practices in military contracting); *TCBY Systems Inc. v. RSP Co.,* 33 F.3d 925 (8th Cir. 1994)(admitting testimony of expert on business practices in franchise industry); *First Nat'l St. Bank v. Reliance Electric Co.,* 668 F. 2d 725( 3rd Cir. 1981)( admitting testimony of expert on bank and industry practices)  As

with the experts in the cited cases, any perceived weakness in Mr. Muno's background or experience should go to the weight accorded to his testimony, not its admissibility.

(ii) Plaintiff's Arguments Do Not Address the FRE 702 Standards

Plaintiff attempts to obscure the issues and the true nature of Mr. Muno's expert opinions by engaging in twenty pages of argument. In its attack on Mr. Muno, Plaintiff sets up and knocks down a number of bogey men, failing in the process to show why Mr. Muno's reliable and relevant testimony should not be heard. Plaintiff argues that "Mr. Muno essentially expresses the opinion that if JCI merely submits written reports to EPA, the substantive content of the submittals, and whether they complied with the AOC's express requirements, are irrelevant." (*Pl. Mot., p 7*.) But Mr. Muno does not say or even hint at what Plaintiff argues. Mr. Muno's testimony is centered on the use by JCI of proper regulatory guidance documents, the timeliness of JCI's implementation of the AOC, and the unprecedented nature of Plaintiff's penalty demands.

In another attempt at misdirection, Plaintiff's lengthy argument about what paragraph 17 of the AOC means is just that - argument. It is not argument directed to the merits of Mr. Muno's opinion or whether or not he should be excluded from testifying, but simply argument that properly should have been, but was not, included in Plaintiff's briefing on its Motion for Summary Judgment, or saved for use in cross-examination as *Daubert* instructs.

Plaintiff's additional argument that Mr. Muno should not be allowed to opine on "construction of the AOC, which is an agreement", (Pl. Mot., p. 10) is an interesting hedge on the arguments Plaintiff has made elsewhere in this litigation, including with respect to its state law claims formerly pending before Judge Zatkoff, but now consolidated with this case for purposes of discovery. (*Jan. 5, 2011 Order Reassigning Case (Case No. 2:10-cv-13406, Docket Entry No. 20), Court Order, Feb. 24, 2011*) There, Plaintiff argued that the AOC is a "contract" and that Plaintiff is a third party beneficiary of the "contract". JCI disputes both of these

- 8 -

assertions in its pending motion to dismiss Plaintiff's state law claims. JCI disagrees here that Mr. Muno is offering his construction of the "agreement". Mr. Muno is a classic "customs and practices" or "business practices" witness, in this instance on EPA' customs and practices. Thus, Plaintiff's reliance in its motion on contract interpretation cases, including insurance coverage cases, is far off the mark.

        c)    <u>Mr. Muno's Opinion on the Plaintiff's Penalty Demands</u>

           (i)    Mr. Muno's Opinion is Based on Personal Experience

Plaintiff again mischaracterizes Mr. Muno's stated opinion on Plaintiff's demand for millions of dollars in penalties for the alleged late filing of reports under the AOC. In contrast to Plaintiff's partial quotation of Mr. Muno's expert report, Mr. Muno actually states: "With respect to the penalties that Plaintiff seeks, assuming for the sake of argument that the Plaintiff's allegations of violations by JCI of the AOC are true, *based on my 13 years of experience in the Region 5 RCRA enforcement program, penalties in the range demanded by Plaintiff in this case in excess of $1 million, have never been assessed or collected in a case of this type.*" (*Def. Ex. A, p. 6*) Mr. Muno states from his personal experience with over 100 AOCs and 13 years as head of EPA's Region 5 Resource Conservation and Recovery Act ("RCRA"), enforcement efforts that the penalties demanded by Plaintiff are unprecedented. (*Id*.; *Muno Deposition Excerpts, hereafter "Muno Dep. ___", Def. Ex. E, pp. 33:7-24, 34, 35;36:1-8*) He also notes from personal experience the rarity of multi-day penalties like those sought by Plaintiff for "paperwork" violations, absent some underlying violation directly related to protection of human health and the environment. (*Def. Ex. A, pp. 6-7; Muno Dep, Def. Ex. E, pp. 87:14-24,88:1-22*) He further notes that Plaintiff's amended complaint is brought under RCRA §6972(a)(1)(A) (for violation of an order) and not under § 6972 (a)(1)(B) (for imminent and substantial endangerment to health or the environment). *Id*.

        Plaintiff does not challenge Mr. Muno's opinions that are based on his personal experience with EPA penalties. Thus, assuming, *arguendo*, that the Court excludes Mr. Muno's

- 9 -

testimony regarding his review of the empirical data that verifies his personal experience with EPA penalties, Plaintiff offers no reason and cites no case on why Mr. Muno should not be allowed to testify from his own personal EPA experience on the issue of collection of penalties under AOC's like the one before the Court.

(ii) Mr. Muno Verifies his Personal Experience With Empirical Data

In addition to his own extensive personal experience, Mr. Muno conducted a file review spanning a 30 year period involving 548 cases in the six state EPA Region 5 area, which includes Michigan, where penalties were assessed by EPA. He found only a single case asserted at all under RCRA § 3008(h), the section under which the AOC is issued, with a penalty imposed of only $18,000. (*Def. Ex. A, pp. 6-7*) Moreover, as explained by Mr. Muno, all of the other surveyed cases involved allegations of imminent and substantial endangerment to human health and the environment under RCRA §6972(a)(1)(B) (*Id.*) Plaintiff does not make such allegations in its amended complaint. Its claims, as noted above, are asserted under an entirely different section of RCRA, §6972(a)(1)(A). (*Pl. Am. Compl., Def. Ex. C,* ¶3.) Mr. Muno further states that it is very rare to assess multi-day penalties in any case, noting that of the 548 cases surveyed, only a handful involved substantial penalties and each were "multi-media" cases that asserted violations of more than one environmental statute and all involved allegations of imminent harm, not the late filing of reports. (*Def. Ex. A, pp. 6-7*) Plaintiff's attacks on the data reviewed by Mr. Muno are not addressed to the admissibility of his testimony, or his ability to assist the Court in understanding the evidence, but to the weight of his testimony. Again, allowing vigorous cross examination, and not the wholesale exclusion of testimony, is the course courts should take, as stated in *Daubert*, *supra*.

Plaintiff also heavily relies on its "the AOC is a contract" argument in attempting to convince the Court not to hear Mr. Muno on EPA's customs and practices regarding AOC

- 10 -

penalties. As noted above, JCI has moved to dismiss Plaintiff's contract claims in this litigation and contends that the AOC is not a contract, but a government order under which the government may exercise its discretion to seek, or not to seek, penalties, all as consistent with Mr. Muno's experience in government. Moreover, Plaintiff is not a party to the AOC and it offers *no* evidence that its asserted interpretation of the AOC's penalty provisions is superior to Mr. Muno's long experience with such orders.

## IV. CONCLUSION

For the reasons stated above, JCI respectfully requests that this Court deny Plaintiff's Motion to Exclude any of the opinions stated by Mr. Muno.

Respectfully submitted,

**Johnson Controls, Inc**.
Defendant

By:/s/ Emily E. Hughes
    One of Its Attorneys

Robert A. Roth
Edward V. Walsh, III
REED SMITH LLP
10 South Wacker Drive
Chicago, Illinois 60606-7507
(312) 207-1000

Marc Newman (P51393)
Emily Hughes (P68724)
THE MILLER LAW FIRM
95 West University Drive, Suite 300
Rochester, MI 48307
(248) 841-2200
David H. Fink (P28235)
Darryl G. Bressack (P67820)
FINK & ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 84304
(248) 971-2500

- 11 -

Attorneys for Defendant

- 12 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALINE RIVER PROPERTIES, LLC,
a Michigan limited liability company,

       Plaintiff,

-v.-

JOHNSON CONTROLS, INC,
a Wisconsin corporation,

       Defendant.

_____/

Case No. 2:10-cv-10507

Hon. Sean F. Cox

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send electronic notification of such filing to the following attorneys:

- **Mark D. Evans**
  mevans@markdevanslaw.com

- **Douglas G. McClure**
  mcclure@cmplaw.com,kim@cmplaw.com

       Respectfully Submitted,

       JOHNSON CONTROLS, INC.

       By: /s/ Emily E. Hughes
         Robert A. Roth
         Edward V. Walsh, III
         REED SMITH LLP
         10 South Wacker Drive
         Chicago, Illinois 60606-7507
         (312) 207-1000

         Marc Newman ( P51393)
         Emily Hughes (P68724)
         THE MILLER LAW FIRM
         95- West University Drive

Suite 300
Rochester, MI 48307
(248) 841-2200

David H. Fink (P28235)
Darryl G. Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI  84304
(248) 971-2500

Attorneys for Defendant Johnson Controls, Inc.