## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| Plaintiff, | Case No: 3:21-cv-00933-VDO |
| v. | |
| EQUILON ENTERPRISES LLC, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 3, 2025 |
| Defendants. | |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTION TO PRECLUDE THE EXPERT TESTIMONY OF MS. SUSAN BODINE

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC (collectively, "Defendants") submit this Response in Opposition to Plaintiff's Motion to Preclude the Expert Testimony of Ms. Susan Bodine. As detailed below, Ms. Bodine offers critical expert testimony on the meaning of stormwater permit language and the intricate regulations relating to hazardous waste—two central issues in this lawsuit, from two perspectives. Ms. Bodine was not only a former Assistant Administrator for the Office of Solid Waste and Emergency Response at the U.S. Environmental Protection Agency ("EPA"), which oversaw hazardous waste and spill response regulations, but she was a former Assistant Administrator for EPA's Office of Enforcement and Compliance Assurance, which oversaw all EPA civil and criminal enforcement of the Clean Water Act ("CWA"), the Resource Conservation and Recovery Act ("RCRA") and all other federal environmental regulations. The U.S. Senate confirmed her in both positions. As EPA's chief enforcement administrator, Ms. Bodine's expertise encompasses the technical requirements of industrial stormwater permits, the

**ORAL ARGUMENT REQUESTED**

development and application of "best industry practices," and the practical realities of regulatory compliance and enforcement.

Ms. Bodine's testimony is not only relevant, but essential to assisting this Court or a jury in resolving the complex regulatory and technical issues at the heart of this case. Her opinions are grounded in specialized knowledge and experience, and they fully satisfy the requirements of Federal Rule of Evidence 702.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    SUSAN BODINE'S REGULATORY EXPERIENCE AND EXPERT OPINIONS .......... 2

       A.    Ms. Bodine's Credentials ................................................................... 2

       B.    Ms. Bodine's Opinions on Technical and Complex Definitions and
             Frameworks under the Clean Water Act and RCRA............................... 4

             1.    Opinions Regarding the CWA ................................................. 4

             2.    Opinions Regarding "Hazardous Waste" at the Terminal.......... 5

       C.    Ms. Bodine's Qualifications are Not Challenged ................................. 6

III.   LEGAL STANDARD ......................................................................................... 8

IV.    ARGUMENT ................................................................................................... 9

       A.    Ms. Bodine is Uniquely Qualified to Offer Opinions Regarding EPA's
             Technical Regulatory Requirements .................................................... 10

             1.    Well-settled law states that former employees of regulatory
                   agencies are qualified to offer opinions regarding complex,
                   technical regulatory regimes ................................................. 10

             2.    Ms. Bodine's Extensive Experience Enforcing the Regulatory
                   Regime That Forms the Basis of CLF's Claims Qualify Her to
                   Offer Opinions Regarding the Meaning of the Permit............... 13

             3.    Ms. Bodine's experience enforcing the CWA qualify her to offer
                   opinions regarding the meaning of "best industry practice" in the
                   Permit ................................................................................. 13

             4.    Ms. Bodine's experience enforcing RCRA qualify her to offer
                   opinions regarding why it is inapplicable in this context. ........ 14

       B.    Ms. Bodine's Opinions are Based on Reliable Methods........................ 16

       C.    Ms. Bodine's Opinions are Helpful to the Fact-Finder......................... 23

             1.    Well-settled law in this District and Circuit permits the admission
                   of testimony regarding the application of technical regulatory
                   standards ............................................................................ 23

             2.    Ms. Bodine's Opinions are Not Legal Conclusions.................... 28

             3.    Ms. Bodine's Opinions Will Help the Finder of Fact ................ 34

V.     CONCLUSION ................................................................................................ 34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Home Assur. Co. v. Merck & Co.*,
  386 F.Supp.2d 501 (S.D.N.Y. 2005) ...................................................................11

*Am. Home Assur. Co. v. Merck & Co.*,
  462 F.Supp.2d 435 (S.D.N.Y. 2006).............................................................11, 18

*American Mining Congress v. EPA*,
  824 F.2d 1177 (D.C. Cir. 1987) ...........................................................................15

*Becerra v. Schultz*,
  499 F.Supp.3d 1142 (D. Wyo. 2020).....................................................................22

*Bernhard-Thomas Bldg Sys, LLC v. Weitz Co, LLC*,
  No. 3:04-CV-1317 CFD, 2010 WL 4929029 (D. Conn. Nov. 30, 2010) .................9

*Bethel v. Berkshire Hathaway Homestate Ins. Co.*,
  596 F.Supp.3d 1260 (D. Colo. 2022).....................................................................22

*Boston Sci. Corp. v. Cook Med. LLC*,
  No. 117-cv-03448-JRS-MJD, 2023 WL 1476573 (S.D. Ind. Feb. 2, 2023)....................29, 32

*Cary Oil Co. v. MG Refin. & Mktg., Inc.*,
  No. 99 Civ. 1725(VM), 2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003)........................... *passim*

*CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Assocs.*,
  411 B.R. 571 (N.D. Ill. 2009) ..............................................................................28

*Chitayat v. Vanderbilt Assocs.*,
  No. CIV A 03-5314 DRH ML, 2007 WL 2890248 (E.D.N.Y. Sept. 27, 2007)...............17, 18

*Crown Cork & Seal Co., Inc. Master Ret. Tr. et al. v. Credit Suisse First Boston
  Corp. et al*,
  Nos. 12–cv–05803–JLG, 12–cv–05804–JLG, 12–cv–05805–JLG, 12–cv–
  07263–JLG, 12–cv–07264–JLG, 2013 WL 978980 (S.D.N.Y. Mar. 12, 2013)............7, 16, 28

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)...............................................................................1, 17, 34

*DeGregorio v. Metro-N. R. Co.*,
  No. 3:05-CV-533 (JGM), 2006 WL 3462554 (D. Conn. Nov. 1, 2006) ................22

*Fiataruolo v. United States*,
  8 F.3d 930 (2d Cir. 1993)......................................................................................26

*Forman v. Novartis Pharms. Corp.*,
   794 F.Supp.2d 382 (E.D.N.Y. 2011) ............................................................17, 23

*In re Fosamax Prods. Liab. Litig.*,
   645 F.Supp.2d 164 (S.D.N.Y. 2009)....................................................... *passim*

*In re Golden*,
   No. 16-40809-ESS, 2022 WL 362913 (Bankr. E.D.N.Y. Feb. 4, 2022) ................................23

*Holman v. Illinois Dep't of Corr.*,
   No. 18-CV-1323, 2024 WL 5131945 (C.D. Ill. Dec. 16, 2024) ................................23, 29, 31

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)........................................................................17

*Lickteig v. Cerberus Capital Mgm't, L.P.*,
   589 F.Supp.3d 302 (S.D.N.Y. 2022)........................................................10

*Max Zach Corp. v. Marker 17 Marine*,
   No. 3:23-CV-01088 (VDO), 2024 WL 4614487 (D. Conn. Oct. 30, 2024)...........................8

*Murray Energy Corp. v. McCarthy*,
   No. 5:14-cv-39, 2016 WL 3390517, at *4-5 (N.D. W. Va. June 17, 2016) .........................12

*In re Mirena IUD Prods. Liab. Litig.*,
   169 F.Supp.3d 396 (S.D.N.Y. 2016)........................................................24

*MPM Silicones, LLC v. Union Carbide Corp.*,
   No. 111-CV-1542, 2016 WL 11604974 (N.D.N.Y. July 7, 2016) ...........................27, 31, 32

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F.Supp.3d 152 (S.D.N.Y. 2018)........................................................24

*Old Gate Partners, LLC v. Paddock Enter., LLC*,
   2024 WL 3520168 (D. Conn. May 30, 2024)................................................33

*Post Univ. Inc. v. Learneo, Inc.*,
   No. 3:21-CV-01242 (VDO), 2025 WL 2709370 (D. Conn. Sept. 23, 2025) .....................8, 9

*Reichmann v. Whirlpool Corp.*,
   No. CV 16-5151 (AYS), 2021 WL 12102128 (E.D.N.Y. Mar. 9, 2021) .............................26

*Reynolds v. Arnone*,
   645 F.Supp.3d 17 (D. Conn. 2022)........................................................17

*Saline River Prop., LLC v. Johnson Controls, Inc*,
   No. 10-cv-10507, 2011 WL 6031943 (E.D. Mich. Dec. 5, 2011) .............................12

*Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*,
    576 F.Supp.3d 250 (E.D. Pa. 2021) ...................................................................28

*SLSJ, LLC v. Kleban*,
    277 F.Supp.3d 258 (D. Conn. 2017)...................................................28, 33, 34

*Specht v. Jensen*,
    853 F.2d 805 (10th Cir. 1988) ...........................................................................6

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    No. 5:16-CV-125, 2019 WL 12323322 (D. Vt. July 15, 2019)..................13, 15, 18

*Town of Halfmoon v. Gen. Elec. Co.*,
    2016 WL 866343 (N.D.N.Y. Mar. 3, 2016) ...........................................26, 31, 32

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991).............................................................................33

*United States v. Litvak*,
    808 F.3d 160 (2d Cir. 2015)..............................................................................17

*United States v. Bedford*,
    536 F.3d 1148 (10th Cir. 2008) .........................................................................22

*United States v. Donald*,
    No. 3:21-cr-8 (VAB), 2023 WL 6958797 (D. Conn. Oct. 20, 2023) ......................8

*Wang v. Omni Hotels Management Corporation*,
    No. 3:18-cv-2000 (VDO), 2025 WL 1782264 (D. Conn. June 27, 2025) ...............8

**Statutes**

Clean Water Act, 33 U.S.C. §§ 1251 et seq........................................................ *passim*

Resource Conservation and Recovery Act, 42 U.S.C. §§ 9601 et seq. ................ *passim*

**Other Authorities**

Fed. R. Evid. 401 .....................................................................................................8

Fed. R. Evid. 403 ................................................................................................8, 26

Fed. R. Evid. 701 ...................................................................................................26

Fed. R. Evid. 702 ............................................................................................ *passim*

Fed. R. Evid. 704 ...................................................................................................26

## I.     INTRODUCTION

At the heart of this case is whether the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("2018/2021 Permit"), issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") to Defendants' New Haven petroleum bulk storage terminal (the "Terminal"), contains an ***implied*** requirement that the permittee must conduct a "climate change vulnerability risk assessment" and modify its facility to address "extreme weather." It is undisputed that the Permit itself does not reference climate change, climate resilience, or similar terms. Nevertheless, Plaintiff Conservation Law Foundation ("CLF") contends that a single phrase in the Permit's definition of "minimize"—specifically, "achievable in light of best industry practice"—imposes an obligation to conduct a climate change vulnerability risk assessment. Notably, in its most recent reissuance of the Permit, CT DEEP added a new section addressing "adverse weather events," which it now associates with climate change.

To address these issues, Defendants have offered the expert testimony of **Susan Bodine**, a former Assistant Administrator of the U.S. Environmental Protection Agency with decades of experience interpreting and enforcing the CWA, RCRA, and complex environmental permits related to these and other similar statutes. From an evidentiary perspective, Ms. Bodine's opinions are founded on her actual regulatory experience and provide critical context for understanding the technical meaning and practical application of the industrial stormwater permitting requirements at issue. For example, Ms. Bodine, explains, from the perspective of regulatory enforcement and agency practice, how EPA and state agencies have historically interpreted and implemented these requirements, including that, in her experience, neither EPA nor state agencies have required or interpreted industrial stormwater permits to mandate climate change vulnerability assessments or adaptation measures.

With this in mind, Ms. Bodine's testimony is undoubtedly relevant to the questions before the Court and will assist the fact-finder in resolving the complex regulatory and technical issues presented by this case.

## II.    SUSAN BODINE'S REGULATORY EXPERIENCE AND EXPERT OPINIONS

### A.    Ms. Bodine's Credentials

In its Motion, CLF seeks to minimize Ms. Bodine's expertise by characterizing her as a lawyer whose opinions are, in CLF's view, "nothing more than legal argument" rather than technical or scientific expertise. CLF claims that Ms. Bodine is "not an engineer or an expert in any subject area besides the Clean Water Act, RCRA, the Superfund Cleanup Program, the Brownfield Cleanup Program, and the Army Corps of Engineers Civil Works Program," and contends that her testimony "serves no purpose except as lawyer testimony on a pure issue of law." Plaintiff's Motion to Preclude Ms. Susan Bodine [ECF 706-1] at 4–5.

That mischaracterization ignores the breadth and depth of Ms. Bodine's experience. A more accurate telling shows that Ms. Bodine's career spans nearly four decades of high-level service in regulatory policy, regulatory compliance, and EPA leadership, making her uniquely qualified to opine on the technical requirements and regulatory practices at issue in this case.

For starters, Ms. Bodine earned a J.D., *cum laude*, from the University of Pennsylvania School of Law, where she served on the Editorial Board of the Law Review, and an A.B. in History, *cum laude*, from Princeton University. Ex. 1, Bodine CV at 1.

In addition to her academic credentials, Ms. Bodine brings unmatched practical experience in interpreting complex EPA regulations. As shown by her resume, which is attached to her expert report, Ms. Bodine's government service is distinguished by senior leadership roles at the U.S. Environmental Protection Agency (EPA). From December 2017 to January 2021, Ms. Bodine served as Assistant Administrator for the Office of Enforcement and Compliance

Assurance (OECA), where she was the national program manager for enforcement of all statutes

administered by EPA, including the CWA and RCRA. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

██████████████████████

3

Contrary to CLF's framing, Ms. Bodine's qualifications extend far beyond practicing law.

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████     For this reason, Ms. Bodine is exceptionally well-

positioned to assist the Court and the fact finder in interpreting the technical requirements of the

CWA and RCRA.

     **B.**    **Ms. Bodine's Opinions on Technical and Complex Definitions and Frameworks under the Clean Water Act and RCRA**

     **1.**    **Opinions Regarding the CWA**

As explained in her Expert Report and in her deposition,[1] Ms. Bodine's principal opinion

is that ███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████

       ██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[1] Ms. Bodine's deposition was taken on September 11, 2025.



**2.    Opinions Regarding "Hazardous Waste" at the Terminal**

With respect to RCRA—the federal "hazardous waste" act—Ms. Bodine's opinion is

equally clear.

 In short, Ms. Bodine's experience with these very technical regulatory definitions would assist this Court and a jury in understanding the arcane regulatory definitions at issue in this lawsuit.

### C.    Ms. Bodine's Qualifications Are Not Challenged

CLF's motion does not challenge—nor could it, in good faith—Ms. Bodine's qualifications, the reliability of her methodology, or the relevance of her experience. Instead, CLF's sole argument is that Ms. Bodine's opinions are "legal conclusions" that invade the province of the Court and the jury. *See* ECF 706-1 at 4–6. Nevertheless, out of an abundance of

---

[2] An expert trained in the practice of law "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).

caution, Defendants not only address this issue, but each of the threshold requirements for expert testimony as well, to leave no doubt that Ms. Bodine's opinions are admissible under Rule 702.

*First*, Ms. Bodine is amply qualified to offer the opinions set forth in her report. She has nearly forty years of experience in environmental regulatory enforcement, policy, and statutory interpretation, including senior leadership roles at EPA and on Congressional committees responsible for the very statutes at issue. In this District and in this Circuit, courts routinely find that former agency officials are qualified to testify regarding the statutes and regulations they have implemented and enforced. Here, Ms. Bodine's extensive experience with the CWA and RCRA, and her direct involvement in the development and interpretation of regulatory requirements, more than qualify her to assist the Court and the jury.

*Second*, Ms. Bodine's opinions are grounded in her substantial regulatory and enforcement experience. Again, courts in the Second Circuit recognize that experience may reliably form the basis of an expert opinion, particularly in the context of complex regulatory frameworks and non-scientific expertise. In this way, Ms. Bodine's expert opinions are well supported by existing case law in this District and Circuit.

*Third*, as courts in this Circuit consistently hold, expert testimony based on substantial agency experience provides crucial, relevant, and helpful context for the fact finder. Ms. Bodine's opinions, drawn from her decades of interpreting and enforcing the CWA, RCRA, and related permit provisions at EPA, will assist the Court and the jury in understanding how EPA and state agencies have historically approached the arcane requirements and regulatory language at issue in this case.

Accordingly, Defendants respectfully request that the Court deny CLF's motion.

### III.    LEGAL STANDARD

Federal Rule of Evidence 702 permits a qualified expert to offer opinion testimony at trial if the testimony is based on scientific, technical, or other specialized knowledge, and if it is both reliable and relevant—that is, if it will assist the trier of fact. *See Post Univ. Inc. v. Learneo, Inc.*, No. 3:21-CV-01242 (VDO), 2025 WL 2709370, at *2–3 (D. Conn. Sept. 23, 2025) (applying Fed. R. Evid. 702) (citations omitted). An individual is deemed qualified as an expert when they possess "superior knowledge, education, experience, or skill" in the pertinent field, and may be recognized as an expert based solely on personal experience, so long as their opinion will aid the fact finder. *Id*. at *3 (citation modified).

Once the Court determines that the expert is qualified, it must then assess whether the proffered testimony is reliable. *Id*. at *2. The reliability inquiry is intentionally "flexible," and courts are afforded broad discretion in making this determination. *Max Zach Corp. v. Marker 17 Marine*, No. 3:23-CV-01088 (VDO), 2024 WL 4614487, at *2 (D. Conn. Oct. 30, 2024). In evaluating reliability, the Court considers not only the soundness of the expert's methodology, but also the logical connection between the expert's theory and its application to the facts of the case. *United States v. Donald*, No. 3:21-cr-8 (VAB), 2023 WL 6958797, at *17 (D. Conn. Oct. 20, 2023) (citation omitted).

Expert testimony must also satisfy the requirements of relevance and admissibility under Rule 403. *Post Univ. Inc.*, 2025 WL 2709370, at *3 (applying Fed. R. Evid. 401, 403, 702). Even if a jury could reach its own conclusions without the expert's input, the testimony is admissible if it is likely to assist the jury in its deliberations, particularly where the subject matter is beyond the jury's ordinary experience. *See Wang v. Omni Hotels Management Corporation*, No. 3:18-cv-2000 (VDO), 2025 WL 1782264, at *3 (D. Conn. June 27, 2025) (denying motion to exclude

opinions where expert "employed technical methods that are likelier than not to assist the jury and… utilized sufficiently reliable methods and data").

If these threshold requirements are met, the expert's testimony is admissible. Any alleged weaknesses in the expert's methodology or conclusions go to the weight and credibility of the evidence, not its admissibility, and will therefore be better addressed through cross-examination. *See Post Univ. Inc.*, 2025 WL 2709370, at *3 (citations omitted); *see also Bernhard-Thomas Bldg Sys, LLC v. Weitz Co, LLC*, No. 3:04-CV-1317 CFD, 2010 WL 4929029 (D. Conn. Nov. 30, 2010) ("'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'") (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

## IV.    ARGUMENT

In a case where the central legal question is whether the Connecticut General Permit for the Discharge of Stormwater Associated with Industrial Activity requires all facilities to conduct a "climate change vulnerability risk assessment" under the definition of "minimize" stormwater discharges, Ms. Bodine—drawing on her experience as a senior EPA regulatory official and Congressional counsel—provides admissible, relevant, and reliable expert opinions on the technical regulatory requirements of both EPA and CT DEEP. Ms. Bodine's testimony addresses the meaning and application of relevant terms under the environmental statutes at issue in this litigation.

Under well-established federal law, expert testimony on the meaning and implementation of technical regulatory requirements is routinely accepted, particularly where it will assist the Court and the jury in resolving complex regulatory issues. For the questions presented here, there

is no better expert than Ms. Bodine to explain ████████████████████████

████████████████████████████████████████████████

### A.    Ms. Bodine is Uniquely Qualified to Offer Opinions Regarding EPA's Technical Regulatory Requirements

#### 1.    Well-settled law states that former employees of regulatory agencies are qualified to offer opinions regarding complex, technical regulatory regimes

Courts in the Second Circuit have long recognized that the requirements for expert qualification are to be interpreted broadly. As one court explained, "[c]ourts within the Second Circuit 'have liberally construed expert qualification requirements' when determining if a witness can be considered an expert." *Lickteig v. Cerberus Capital Mgm't, L.P.*, 589 F.Supp.3d 302, 328 (S.D.N.Y. 2022) (quoting *Cary Oil Co. v. MG Refin. & Mktg., Inc.*, No. 99 Civ. 1725(VM), 2003 WL 1878246, at *1 (S.D.N.Y. Apr. 11, 2003)). Under Second Circuit precedent, an expert's experience alone may suffice for qualification. *See Lickteig*, 589 F. Supp.3d at 302 ("Any one of the qualities listed in Rule 702—knowledge, skill, experience, training, or education—may be sufficient to qualify a witness as an expert.") (quoting *Crown Cork & Seal Co., Inc. Master Ret. Tr. et al. v. Credit Suisse First Boston Corp. et al*, Nos. 12–cv–05803–JLG, 12–cv–05804–JLG, 12–cv–05805–JLG, 12–cv–07263–JLG, 12–cv–07264–JLG, 2013 WL 978980, at *2 (S.D.N.Y. Mar. 12, 2013)). Even in the absence of formal training, "practical experience" or "specialized knowledge" can qualify a witness to provide expert opinion under Rule 702. *Lickteig*, 589 F. Supp.3d at 329 (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)). Importantly, "[a]ssertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility of the testimony." *Id*. at 329 (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 282 (E.D.N.Y. 2007)).

This principle is particularly relevant where, as here, an expert is offered to explain the meaning and application of an opaque regulatory scheme. Again, courts in this Circuit routinely find that former agency officials are qualified to testify based on their experience enforcing the very statutes and regulations at issue. *See e.g., In re Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d 164, 190 (S.D.N.Y. 2009) ("The Court finds that Dr. Parisian is qualified based upon her experience as a Medical Officer at the FDA to offer testimony about regulatory requirements relating to the development, testing, marketing, and surveillance of prescription drugs.").

For instance, in *American Home Assurance Company v. Merck & Company, Inc.*, the court considered whether an expert with decades of regulatory experience at the FDA could testify about the meaning of FDA regulations as they applied to vaccine shipments. 386 F.Supp.2d 501, 507-08 (S.D.N.Y. 2005); *Am. Home Assur. Co. v. Merck & Co.*, Inc., 462 F.Supp.2d 435, 451 (S.D.N.Y. 2006). Despite the plaintiff's argument that the expert lacked specific experience with temperature excursions for vaccine shipments, the court found that his extensive regulatory background and leadership at the FDA's Center for Biologics Evaluation and Research made him "intimately familiar with FDA regulations relevant to the Vaccines." *Id*. The court concluded that his testimony on the interpretation of complex regulatory provisions would assist the trier of fact. *Id*.

Similarly, in *Cary Oil*, the court found an expert qualified to testify about the meaning of a petroleum supply contract within the context of CFTC regulations, based on his academic and agency experience, including serving as Chief Economist and Director of the Division of Economic Analysis for the CFTC. 2003 WL 1878246, at *4. The court emphasized that such testimony was "important if Plaintiffs are to explain to the jury the background issues involved in this complex contractual dispute centered in an intricate regulatory scheme." *Id*.

Addressing near-identical issues, courts outside of this district have found former EPA employees qualified to testify regarding federal environmental statutes. For example, in *Murray Energy Corp. v. McCarthy*, the Northern District of West Virginia held that former EPA assistant administrator Jeffrey Holmstead was qualified to testify regarding the Clean Air Act, explaining:

> The EPA also argues that Mr. Holmstead should not be permitted to provide expert testimony because he has no "scientific, technical or other specialized knowledge" as required by Rule 702 of the Federal Rules of Evidence. Frankly, this argument is ridiculous! . . . Mr. Holmstead's testimony is not scientific in the traditional sense, but it is specialized knowledge. Few if any others have worked on CAA matters for more than 25 years in so many different capacities—a White House staffer, an attorney and lobbyist in private practice, and an EPA official—as Mr. Holmstead has done.

No. 5:14-cv-39, 2016 WL 3390517, at *4-5 (N.D. W. Va. June 17, 2016).

Similarly, in *Saline River Prop., LLC v. Johnson Controls, Inc.*—a citizen suit under RCRA seeking to enforce an administrative order on consent ("AOC") issued against defendant Johnson Controls, Inc. ("JCI") by EPA—the court held that the former Chief of RCRA Enforcement in EPA was qualified by his experience to testify that (1) "the AOC did not require JCI to submit written quarterly progress reports to the EPA;" (2) "JCI's work at the site progressed in a timely manner and that JCI followed EPA's standard practices;" and (3) "an award of monetary penalties requested by Saline is unprecedented." No. 10-cv-10507, 2011 WL 6031943, at *2-4 (E.D. Mich. Dec. 5, 2011); *see also* Johnson Controls, Inc.'s Resp. to Pl. Mot. to Exclude Opinions of William Muno, No. 10-cv-10507, ECF 74 (E.D. Mich. June 16, 2011), attached as Ex. 3, at 3 (describing Mr. Muno's credentials).

Under relevant case law, Ms. Bodine's extensive agency and regulatory experience amply qualifies her to offer expert opinions on the meaning and application of the technical regulatory requirements at issue in this case.

### 2. Ms. Bodine's Extensive Experience Enforcing the Regulatory Regime That Forms the Basis of CLF's Claims Qualify Her to Offer Opinions Regarding the Meaning of the Permit

CLF's motion significantly understates and willfully ignores Ms. Bodine's extensive qualifications and experience. Rather than engaging with the substance of her decades-long career in environmental regulatory enforcement and policy, CLF attempts to downplay the value of her expertise by narrowly characterizing her as "a lawyer[]" and disregarding her leadership roles at EPA and in Congress. That approach ignores the direct relevance and depth of Ms. Bodine's experience with the very statutes and regulatory frameworks that form the basis of CLF's claims. As a result, CLF's effort to minimize her qualifications cannot withstand scrutiny, and her testimony is precisely the type of expert insight courts routinely accept in cases involving complex regulatory regimes. *See, e.g., Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-CV-125, 2019 WL 12323322, at *19 (D. Vt. July 15, 2019) (holding that an environmental attorney and former state regulator was qualified to offer rebuttal testimony on the history and application of environmental regulations).

### 3. Ms. Bodine's experience enforcing the CWA qualify her to offer opinions regarding the meaning of "best industry practice" in the Permit

Ms. Bodine's experience enforcing the CWA directly qualifies her to opine on the meaning of "best industry practice" as used in the Connecticut General Permit. Her career reflects not only high-level policy and leadership, but also hands-on engagement with the technical realities of CWA implementation and enforcement. As Assistant Administrator for EPA's Office of Enforcement and Compliance Assurance, Ms. Bodine was responsible for national oversight of CWA compliance, including the interpretation and application of permit terms like "best industry practice." Her work required her to evaluate, in real-world enforcement

contexts, whether regulated entities met evolving industry standards and to distinguish between consensus-based practices and novel or site-specific measures.

This practical enforcement perspective is precisely what courts recognize as the foundation for admissible expert testimony on the meaning of technical regulatory terms. *See, e.g., In re Fosamax*, 645 F. Supp. 2d at 190 (holding former FDA official was qualified to opine on regulatory requirements).



CLF's attempt to recast Ms. Bodine's expertise as mere legal argument ignores the reality that her opinions are grounded in the technical and operational application of the CWA. Her experience provides the Court and jury with the necessary context to understand how "best industry practice" is understood and applied by those charged with enforcing the Permit. This is precisely the type of specialized knowledge Rule 702 envisions, and her testimony will materially assist the trier of fact in resolving the central issues of this case.

### 4. Ms. Bodine's experience enforcing RCRA qualify her to offer opinions regarding why it is inapplicable in this context.

Ms. Bodine's extensive experience with RCRA, including her leadership of EPA's hazardous waste and emergency response programs, uniquely qualifies her to explain why RCRA does not apply to the storage of petroleum products at the New Haven Terminal. Her opinions are grounded in decades of regulatory enforcement and rulemaking—not abstract legal

14

theory—and, for this reason, her testimony provides a helpful backdrop for the trier of fact to evaluate the merits of the case.

As Assistant Administrator for EPA's Office of Solid Waste and Emergency Response (OSWER), Ms. Bodine served as the national program manager for RCRA's hazardous waste program. In that role, she oversaw interpretation and revision of technical regulations, including the 2008 Definition of Solid Waste rulemaking, which clarified when materials are considered "discarded" and therefore subject to RCRA authority. █████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

    ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██

Courts routinely accept testimony from former agency officials on the meaning and application of technical regulatory standards. *See, e.g., Sullivan*, 2019 WL 12323322, at *19 (finding environmental attorney and former state regulator qualified to testify on regulatory

history and application). Ms. Bodine's testimony provides precisely the kind of specialized

knowledge Rule 702 envisions: ███████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████

     Her opinions will assist the trier of fact in understanding the technical boundaries of

RCRA authority and evaluating whether the statute applies to the circumstances alleged. ███

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████

### B.    Ms. Bodine's Opinions are Based on Reliable Methods

     CLF does not directly challenge the reliability of Ms. Bodine's opinions as required by

Rule 702. However, it does assert that her opinions are merely "based on the application of law

to facts. . . using D.C. Circuit case law." ECF 706-1 at 4. CLF mischaracterizes the full bases of

Ms. Bodine's opinions along with mistakenly implying that experts may not rely on legal sources

like case law.

     *First*, Ms. Bodine properly bases her opinions not on mere interpretations of law, but on

her extensive experience and training in environmental enforcement. *See e.g.*, Ex. 4, Deposition

of Susan Bodine ("Bodine Dep.") at 24:11–25:14 (confirming she is familiar with stormwater

permitting issues because of her direct experience with EPA enforcement actions involving stormwater cases during her tenure as Assistant Administrator for Enforcement and Compliance Assurance). As a matter of well-established Second Circuit law, "expert testimony does not [have to] rest on traditional scientific methods" and, accordingly, "district courts must be mindful that 'the *Daubert* factors do not all necessarily apply even in every instance in which reliability of scientific testimony is challenged, and in many cases, the reliability inquiry may instead focus upon personal knowledge and experience of the expert.'" *Unites States v. Litvak*, 808 F.3d 160 n. 25 (2d Cir. 2015) (quoting *Davis v. Carroll*, 937 F.Supp.2d 390, 412 (S.D.N.Y. 2013)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999) ("Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from… specialized experience.'"); *Reynolds v. Arnone*, 645 F.Supp.3d 17, 25-26 (D. Conn. 2022) (holding that expert's "correctional best practices" opinions were "reliable in light of his extensive, specialized experience," including his "substantial practical experience in corrections, particularly in developing correctional policies") (quoting *E.E.O.C. v. Beauty Enterprises, Inc.*, 361 F.Supp.2d 11, 19 (D. Conn. 2005)).

In other words, "[a]n expert is permitted to draw a conclusion from a set of observations based on extensive and specialized experience." *Forman v. Novartis Pharms. Corp.*, 794 F.Supp.2d 382, 384 (E.D.N.Y. 2011); *see also Chitayat v. Vanderbilt Assocs.*, No. CIV A 03-5314 DRH ML, 2007 WL 2890248, at *9 (E.D.N.Y. Sept. 27, 2007) ("Drawing upon one's educational background and practical experience is a reliable methodology through which to develop opinions and reach conclusions about a scientific, technical or other area of specialized knowledge.") (internal citations and quotations omitted). For example, in *Forman*, the Eastern District of New York held that a former FDA employee's opinions regarding the reasonableness

of defendant NPC's conduct pursuant to various FDA regulations were based on a reliable methodology when "the information underlying her conclusions were drawn from her review of certain NPC regulatory filings, internal NPC documents, and medical literature" and she ultimately took this information and "app[ied] the relevant FDA regulations and procedures," and "the same methodology that she applied while working at the FDA." *Id*. Accordingly, the court ultimately held that the expert was "permitted to render opinions on the reasonableness of [NPC's] conduct in its interaction with the FDA and compliance with FDA regulations, including [NPC's] interactions with FDA with respect to labels and warnings, and FDA regulations and interactions with companies regarding clinical trials." *Id*.

Contrary to what CLF says in its motion, Ms. Bodine does not base her opinions on reviewing and interpreting case law. Instead, her opinions are based primarily on her own experience enforcing the CWA and RCRA, which is wholly appropriate in this context. *See In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 190 (holding former FDA official qualified to opine on regulatory requirements); *Am. Home Assur. Co. v. Merck & Co.*, 386 F. Supp. 2d 501, 507–08 (S.D.N.Y. 2005) (allowing expert with decades of FDA experience to testify on regulatory meaning); *Am. Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 451 (S.D.N.Y. 2006) (same, emphasizing familiarity with complex regulations); *Cary Oil Co.*, 2003 WL 1878246, at *4 (finding former regulator qualified to explain technical regulatory scheme); *Murray Energy Corp.*, 2016 WL 3390517, at *4–5 (holding former EPA official's specialized regulatory knowledge admissible under Rule 702); *Saline River Props.*, 2011 WL 6031943, at *2–4 (accepting testimony of former EPA RCRA enforcement chief on agency practices); *Sullivan*, 2019 WL 12323322, at *19 (D. Vt. July 15, 2019) (finding environmental attorney and former regulator qualified to testify on regulatory history and application). As she explains, ■



**_Broad Regulatory Experience._** Her opinions establish that she has unparalleled experience with both the CWA and RCRA regulatory frameworks. This background is critical because it demonstrates that her testimony is grounded in decades of practical enforcement and rulemaking, not abstract theory, and will help the Court or jury understand how these statutes operate in practice. For example:







Consistent with the cases discussed above, Ms. Bodine's reliance on her own experiences, as discussed above, is more than sufficient to render her opinions reliable.

**Second**, while Ms. Bodine does reference case law in her opinions, her use of case law is not improper. Indeed, courts regularly find that experts may refer to and rely on statutes, regulations, and case law in developing their opinions. *DeGregorio v. Metro-N. R. Co.*, No. 3:05-CV-533 (JGM), 2006 WL 3462554, at *4 (D. Conn. Nov. 1, 2006) (holding expert could "testify, based upon his twenty-five years of railroad experience, regarding the similarity, or dissimilarity, between the Shuttlewagon at issue here and the railroad equipment addressed in the various court decisions listed in his expert report, if he has professional knowledge of same" and ultimately, could rely on regulations and case law in addition to his experience) (citing *Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 295 (N.D. Ill. 2005) ("If [the expert's] testimony is based on certain regulations in addition to his industry experience, he may reference those regulations."); *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) ("An 'expert may not state legal conclusions drawn by applying the law to the facts,' but '[a]n expert may ... refer to the law in expressing his or her opinion.'") (quoting *A.E. ex rel Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)); *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F.Supp.3d 1260, 1268 (D. Colo. 2022) ("[R]eferencing industry standards—some of which are derived from case law—does not constitute improper legal-conclusion testimony. An expert witness 'may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.'") (quoting *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988)); *Becerra v. Schultz*, 499 F.Supp.3d 1142, 1151 (D. Wyo. 2020) ("An expert is also generally permitted to

refer to the law in expressing his opinion."); *Holman v. Illinois Dep't of Corr.*, No. 18-CV-1323, 2024 WL 5131945, at *5 (C.D. Ill. Dec. 16, 2024) (appeal dismissed) ("Ms. Stanosheck testified about conducting an extensive investigation of the evidence regarding Plaintiff's disability, the conditions at Pontiac, and the ADA requirements upon which her opinions were based... The Court finds there was no error in allowing Ms. Stanosheck to opine on these issues. '[T]here is a difference between opining on a legal issue and simply relying on legal standards to produce a proper, admissible expert opinion.'" (quoting *Boston Sci. Corp. v. Cook Med. LLC*, No. 117-cv-03448-JRS-MJD, 2023 WL 1476573, at *5 (S.D. Ind. Feb. 2, 2023)). CLF cites **no case law** to the contrary.

Accordingly, Ms. Bodine's opinions are reliable.

**C.    Ms. Bodine's Opinions are Helpful to the Fact-Finder**

Repeatedly, CLF claims Ms. Bodine's opinions consist of "[a] lawyer's legal argument" that is only "based on the application of law to facts," i.e., legal conclusions that "improperly invades the court's province." ECF 706-1 at 4. But as a matter of clear law, this argument is wrong.

> **1.    Well-settled law in this District and Circuit permits the admission of testimony regarding the application of technical regulatory standards**

Under well-settled Second Circuit law, the testimony of qualified experts can help juries better understand complex statutory and legal regimes. *See Forman*, 794 F.Supp.2d at 384 (holding former FDA employee's testimony regarding "the reasonableness of Novartis' conduct in its interactions with the FDA and compliance with FDA regulations" was relevant and helpful); *In re Golden*, No. 16-40809-ESS, 2022 WL 362913, at *14 (Bankr. E.D.N.Y. Feb. 4, 2022) ("[W]here an expert testifies, based on his or her experience and expertise, as to matters that may assist the court, but does not offer legal opinions, that testimony may be considered.

23

And this does not change merely because the expert's opinion relates to a topic or subject matter where laws and regulations also play a role."); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F.Supp.3d 152, 184 (S.D.N.Y. 2018) ("In his report, Professor Thomas explains the procedures under the complex law governing approvals of generic drugs, which is subject matter that is foreign to the average person. He does not provide 'legal conclusions' or opine on whether Defendants violated the Act, but simply explains the mechanics of drug approval, which provides context that is likely to 'assist the trier of fact.'") (quoting Fed. R. Evid. 702).

Still, other cases further crystallize this point. *See In re Mirena IUD Prods. Liab. Litig.*, 169 F.Supp.3d 396, 467 (S.D.N.Y. 2016) ("Admitting expert testimony in this context makes sense given the complicated nature of FDA regulations, and it would be helpful to the jury to have an expert explain this complex regulatory process."); *Cary Oil*, 2003 WL 1878246, at *4 (holding that "having an expert witness such as Gay—who teaches graduate level courses in derivatives, has authored articles discussing derivatives hedging and valuation, and was Chief Economist and Director of the Division of Economic Analysis for the CFTC, where he led a team that examined contracts similar to one at issue here—is important if Plaintiffs are to explain to the jury the background issues involved in this complex contractual dispute centered in an intricate regulatory scheme"); *In re Fosamax*, 645 F.Supp. 2d at 191 (holding that "[a] lay jury cannot be expected to understand the complex regulatory framework that informs the standard of care in the pharmaceutical industry" and held that the former FDA expert's "assessment of the reasonableness of Merck's conduct in light of her experience and her understanding of FDA regulations will be helpful to the jury").

Outside of this Circuit, courts hold the testimony of former EPA employees would help the jury understand various environmental statutes and EPA's standard practices under those

24

statutes. For example, the Northern District of West Virginia determined that former EPA assistant administrator Jeffrey Holmstead could testify regarding the Clean Air Act and EPA's practices under that statute. *Murray Energy Corp.*, 2016 WL 3390517, at *6. The court dismissed assertions that Mr. Holmstead's testimony consisted of "legal conclusions," including statements such as "I am not aware that EPA has made a meaningful effort during this time to disclose or even evaluate actual or potential job losses or shifts in employment resulting from the administration and enforcement of the CAA." and "As far as I know, EPA has never made any effort to conduct continuing evaluations of the job losses or shifts in employment that result from CAA regulations." *See id*. at *4 ("This Court does not agree that the statements which the EPA contends are legal conclusions are in fact such."); *see also* Pl. Mem. in Opp. to Def. Mot. to Disqualify or Exclude Jeffrey Holmstead, No. 5:14-cv-39, ECF 228 (N.D. W. Va. June 2, 2016), attached as Ex. 5, at 24 (quoting Holmstead report).

In *Saline River*, the plaintiff asserted "that [the expert's] opinion that [defendant] JCI responded timely to EPA's requests and that JCI followed EPA's standards practices . . . constitutes a legal conclusion[.]" *Saline River Props*, 2011 WL 6031943, at *3. The court rejected this argument, instead agreeing that the expert's "vast knowledge and experience," including his time leading the RCRA Enforcement Branch, meant that his "testimony relating to EPA customs and standards in these types of administrative consent orders would be relevant and helpful to the jury." *Id*. (citing *Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co.*, 2008 WL 668242, at *3, n.2 (N.D. Ohio Mar. 4, 2008) (finding "[e]vidence of custom and usage is relevant to the interpretation of ambiguous language in a contract;" "[e]xpert testimony is admissible to show custom and usage in an industry even if that testimony embraces the ultimate issue to be decided by the trier of fact.")).

Even more relevant, "the Second Circuit has held that '[e]xperts may testify on … mixed questions of fact and law.'" *Cary Oil*, 2003 WL 1878246, at *5–6 (quoting *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993). Indeed, "the mere fact that an expert's opinion is based on criteria delineated by the applicable law does not transmogrify it into a legal conclusion." *Town of Halfmoon v. Gen. Elec. Co.*, 2016 WL 866343, at *16 (N.D.N.Y. Mar. 3, 2016) (holding that former EPA Region IX RCRA Enforcement Chief's testimony that party's response costs were not necessary or consistent with the National Contingency Plan was not a legal conclusion). Moreover, "[t]his sort of testimony is not objectionable merely 'because it embraces an ultimate issue to be decided by the trier of fact.'" *Fiataruolo*, 8 F.3d at 941 (quoting Fed. R. Evid. 704). As the Advisory Committee to the Federal Rules explained:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704, Advisory Committee Notes (1972); *Reichmann v. Whirlpool Corp.*, No. CV 16-5151 (AYS), 2021 WL 12102128, at *1 (E.D.N.Y. Mar. 9, 2021) ("For example, this means that an expert in an antitrust case cannot testify to whether a party's conduct was 'anticompetitive' or 'unlawful' under the Sherman Act, but can, for example, testify about factors that would tend to show anticompetitive conduct in a market and describe why, in the expert's opinion, those factors are present in case at hand.").

For example, in a private party response action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the central question the parties sought

to answer was whether "the costs … incurred in responding to contamination were 'consistent with the National Contingency Plan' ('NCP')." *MPM Silicones, LLC v. Union Carbide Corp.*, No. 111-CV-1542 (BKS/ATB), 2016 WL 11604974, at *1 (N.D.N.Y. July 7, 2016) (quoting 42 U.S.C. § 9607(a)(4)(B)). CERCLA states that a response action is "consistent with the NCP" if the action "'is in substantial compliance' with various NCP provisions[.]" *Id*. at *2 (quoting 40 C.F.R. § 300.700(c)(3)(i)). There, "[t]he parties agree[d] that substantial compliance with the NCP is a mixed question of law and fact," but disagreed as to whether experts could properly opine on compliance with the NCP. *Id*. The court held that "[e]xpert testimony as to NCP compliance is appropriate given the NCP's complex regulatory framework" and ultimately found "that an expert's factual analysis of MPM's actions, preliminary investigations of hazardous waste contamination, and whether MPM's actions were consistent with the NCP would be helpful to the Court in resolving the issues regarding the NCP." *Id*. at *3.

Similarly, in *Fosamax*, the Southern District of New York held that the former FDA employee expert could "testify[] about general FDA regulatory requirements and procedures" and "Merck's compliance therewith," explaining that experts "may offer testimony embracing an ultimate issue of fact that the jury will decide." *Fosamax*, 645 F.Supp.2d at 191.

In other words, while no expert in this case may offer the opinion "Defendants did/did not violate the CWA or RCRA," experts are more than welcome to look to the evidence and opine on what "best industry practice" requires, whether Defendants did or did not implement practices and technologies consistent with "best industry practice," and whether the Terminal did or did not present an imminent and substantial endangerment to human health or the environment. Ms. Bodine's opinions properly walk this line and will help a fact-finder understand these highly complex and technical statutory and regulatory regimes.

27

### 2.    Ms. Bodine's Opinions are Not Legal Conclusions

CLF's sole argument in its motion is that Ms. Bodine's opinions consist of inadmissible legal conclusions. However, CLF is incorrect for several reasons.

**First**, while CLF makes much of the fact that Ms. Bodine was initially trained as an attorney, that fact does not make an expert's opinions "legal conclusions." CLF certainly cites no case law that says so. Indeed, courts regularly hold that attorneys are qualified to testify as experts. *See, e.g., Murray Energy Corp.*, 2016 WL 3390517, at *5 (holding that attorney's testimony was admissible as expert opinion); *CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 571, 586 (N.D. Ill. 2009) (holding attorney was qualified "to testify as an expert in the field of corporate governance" based on his "training and experience in that he is a law professor; a specialist in the field of corporate law; a lawyer; a published author regarding a variety of corporate law topics; a former management consultant; and has had dealings with in excess of twenty separate boards of directors"); *Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*, 576 F.Supp.3d 250, 258–59 (E.D. Pa. 2021) (holding that law professor was "an expert on the legal framework that shapes the investment advising industry"). Indeed, in *SLSJ, LLC v. Kleban*, a case cited by CLF, the court found that a law professor was qualified to testify as an expert. *See SLSJ, LLC v. Kleban*, 277 F.Supp.3d 258, 273 (D. Conn. 2017) (holding that law professor was qualified as "an expert in corporate governance and in the relationship between LLC's and their members" and "he may assist the jury in understanding the basic principles of corporate governance").[3] In addition, as discussed above, experts may properly rely on statutes, regulations, and case law in developing their opinions. *See supra* Section IV.B.

---

[3] This opinion pertains to the testimony of Jonathan Macey, not to Joshua Macey, who is a separate individual and a retained expert in this litigation.

Here, Ms. Bodine's ████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████ do not convert her opinions to "legal conclusions."

**Second**, the statements and opinions that CLF points to as "legal conclusion" are simply not. CLF specifically asserts that paragraphs 18-19, 27, 34-37, 42, and 51 of her report constitute legal conclusions. Defendants take these each in turn.

In **Paragraph 18**, Ms. Bodine states that ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See, e.g.,*

*Holman*, 2024 WL 5131945, at *5 (holding expert's testimony about "the ADA requirements upon which her opinions were based" were not legal conclusions); *Boston Sci. Corp.*, 2023 WL 1476573, at *6 (holding in patent case that expert did "not provide an impermissible legal opinion" and, "[r]ather, based on his extensive experience in the [U.S. Patent & Trademark Office]," expert "provides an opinion as to whether there was any unreasonable delay in the

prosecution of the asserted patents," an "inquiry [that] is derived from established legal standards that [the expert] summarized and properly relied on in his report").

In **Paragraph 27**, Ms. Bodine explains that  This testimony is precisely like testimony found admissible by other courts. *See, e.g., Murray Energy Corp.*, 2016 WL 3390517, at *4 (holding that statements such as "I am not aware that EPA has made a meaningful effort during this time to disclose or even evaluate actual or potential job losses or shifts in employment resulting from the administration and enforcement of the CAA." and "As far as I know, EPA has never made any effort to conduct continuing evaluations of the job losses or shifts in employment that result from CAA regulations" made by a former EPA assistant administrator were not legal conclusions).

**Paragraph 35** states that  Contrary to CLF's assertion, this statement is not "attorney argument about an agency's intent." Mot. at 5. Indeed, CLF cites to no case law saying as much. Instead, relevant case law

makes clear that experts with appropriate expertise may testify as to what regulations do (and do not) require or what industry standards do (or do not) encompass. *See, e.g., Saline River Props.*, 2011 WL 6031943, at *3 (holding that expert's "vast knowledge and experience," including his time leading the RCRA Enforcement Branch, meant that his "testimony relating to EPA customs and standards in these types of administrative consent orders would be relevant and helpful to the jury" in understanding the obligations the defendant had under the AOC at issue); *Town of Halfmoon*, 2016 WL 866343, at *16 (holding that former EPA Region IX RCRA Enforcement Chief's testimony that party's response costs were not necessary or consistent with the National Contingency Plan was not a legal conclusion); *MPM Silicones, LLC*, 2016 WL 11604974, at *3 (holding that "[e]xpert testimony as to NCP compliance is appropriate given the NCP's complex regulatory framework" and "that an expert's factual analysis of . . . whether MPM's actions were consistent with the NCP would be helpful to the Court in resolving the issues regarding the NCP"); *Fosamax*, 645 F. Supp. 2d at 191 (holding former FDA employee expert could "testify[] about general FDA regulatory requirements and procedures" and "Merck's compliance therewith" and experts "may offer testimony embracing an ultimate issue of fact that the jury will decide"). Ms. Bodine's testimony does not seek to tell the jury what to write on the verdict form. Instead, she explains, based on her vast experience and training, about general EPA requirements and procedures.

**Paragraphs 36–37** of Ms. Bodine's report explain ██████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████, *e.g., Holman*, 2024 WL 5131945, at *5 (holding there was "no error in allowing [an expert] to opine" on "the ADA requirements upon which her opinions were based");

*Bos. Sci. Corp.*, 2023 WL 1476573, at *6 (holding expert did "not provide an impermissible legal opinion" and, "[r]ather, based on his extensive experience in the [U.S. Patent & Trademark Office]," expert "provides an opinion as to whether there was any unreasonable delay in the prosecution of the asserted patents," an "inquiry [that] is derived from established legal standards that [the expert] summarized and properly relied on in his report").

**Paragraph 42**, which states Ms. Bodine's opinion  Thus, just as with her opinion as stated in **Paragraph 27**, this opinion falls within the bounds of what courts say experts may testify to with regards to the structure of regulatory regimes. *See, e.g., Saline River Props.*, 2011 WL 6031943, at *3; *Town of Halfmoon*, 2016 WL 866343, at *16; *MPM Silicones, LLC*, 2016 WL 11604974, at *3; *Fosamax*, 645 F.Supp.2d at 191. Ms. Bodine's testimony does not seek to tell the jury what to write on the verdict form. Instead, she explains, based on her vast experience and training, about general EPA requirements and procedures.

In **Paragraph 51**, Ms. Bodine explains that This paragraph

summarizes Ms. Bodine's statements in **Paragraphs 35** & **42** and, accordingly, is admissible for the same reasons discussed above.

*Third*, the case law cited by CLF in the legal standard section of its motion (as CLF does not cite to a single case in its argument) does not weigh against (and, in many cases, weighs in favor of) the admissibility of Ms. Bodine's opinions. While in *Bilzerian*, the Second Circuit affirmed the trial court's decision to preclude an expert's opinion "as to whether [the defendant's] actions violated the securities laws," the court allowed the expert to testify as to "general background on federal securities regulation and the filing requirements of Schedule 13D," stating that "in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." *United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991).

Similarly, CLF relies on *Old Gate Partners, LLC v. Paddock Enter., LLC*, 2024 WL 3520168, at *7 (D. Conn. May 30, 2024), for the unremarkable general proposition that experts may not offer legal conclusions. But CLF fails to note that in that case, this Court held that the expert did not offer "an impermissible legal opinion[]" because he did "not impermissibly 'communicat[e] a legal standard'" and instead properly "explain[ed] the relevant certifications that [an affiliate to the defendant] filed with DEEP, and opine[d] that [the affiliate] did not adhere to the requirements of these certifications." *Id.* at *15. His opinions, like the opinions of Ms. Bodine here, were admissible.

CLF cites again to generic statements from *SLSJ* that experts may not testify on ultimate legal conclusions and discussions of case law specific to corporate governance testimony. *SLSJ, LLC v. Kleban*, 277 F.Supp.3d 258, 269 (D. Conn. 2017). But that Court clarified that experts are permitted to testify "on factual conclusions that may embrace an ultimate issue" so long as they

do not testify "on ultimate legal conclusions." *Id*. When discussing this distinction with regard to a corporate governance expert, the court explained that the expert could "explain the terms 'freeze out' or 'squeeze out' as they relate to the legal principles of a limited liability entity" but could not testify as to the ultimate legal question of whether or not the defendant breached its fiduciary duties. *Id*. at 284. Thus, none of these cases support the exclusion of Ms. Bodine's opinions.

*    *    *

Accordingly, given the above, Ms. Bodine's opinions do not consist of legal conclusions.

### 3.    Ms. Bodine's Opinions Will Help the Finder of Fact

Finally, contrary to CLF's assertions, Ms. Bodine's opinions—based on her significant hands-on experience enforcing the CWA and RCRA along with her extensive training in environmental enforcement—will offer the fact-finder invaluable information.

As summarized above, courts in the Second Circuit and beyond are in agreement that when faced with complex statutes such as the CWA and RCRA, the perspective of former agency employees are extremely helpful to the courts. *See supra* Section IV.C.1. As is also explained above, like the experts in these cases, Ms. Bodine is supremely qualified to offer the fact-finder important insights into how EPA enforces the CWA, RCRA, and related permits. *See supra* Section IV.A. Accordingly, Ms. Bodine's opinions will be of invaluable help to the fact-finder as it navigates these highly technical statutory and regulatory requirements.

## V.    CONCLUSION

Defendants respectfully request that the Court deny CLF's *Daubert* Motion to Preclude the Expert Testimony of Ms. Susan Bodine.

Dated: November 3, 2025

Respectfully submitted,

*/s/ Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
Hilgers Graben PLLC
1372 Peachtree Street, N.E.
19ᵗʰ Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16ᵗʰ Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com