**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 3, 2025 |
| | **FILED UNDER SEAL** |
| *Defendants*. | |

**PLAINTIFF'S [UNREDACTED] OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
EDWIN LEVINE'S OPINIONS AND TESTIMONY**

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD...................................................................................................... 2

ARGUMENT................................................................................................................... 4

A.  Mr. Levine's Opinions Are Proper Rebuttals Because He "Contradicts or Rebuts"
Defendants' Expert Reports.................................................................................. 4

B.  Mr. Levine's Opinions Are Relevant and Will Not Unfairly Prejudice or Confuse
the Factfinder ....................................................................................................... 8

C.  Defendants' Arguments Based on the Relevance of Mr. Levine's Testimony
Regarding Requirement to Consider Climate Change are Premature ............................ 11

CONCLUSION.............................................................................................................. 13

**TABLE OF AUTHORITIES**

*Cases*

*Ambrosini v. Labarraque,*
101 F.3d 129 (D.C. Cir. 1996) ............................................................................................ 10

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
303 F.3d 256 (2d Cir. 2002) ................................................................................................ 3

*Brink's Global Servs. USA, Inc. v. Bonita Pearl Inc.,*
No. 22-cv-6653, 2024 WL 4227760 (S.D.N.Y. Sept. 18, 2024) ........................................ 7

*Cooper Crouse-Hinds, LLC v. City of Syracuse, New York,*
568 F. Supp. 3d 205 (N.D.N.Y. 2021) .............................................................................. 10

*Cortes-Irizarry v. Corporacion Insular De Seguros,*
111 F.3d 184 (1st Cir. 1997) ............................................................................................. 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
43 F.3d 1311 (9th Cir. 1995) ..................................................................................... *passim*

*Dominion Resources SVC, Inc. v. Alstom Power, Inc.,*
No. 3:16-CV-544, 2018 WL 3752878 (D. Conn. Aug. 8, 2018) ........................................ 9

*E.E.O.C. v. Morgan Stanley & Co.,*
324 F. Supp. 2d 451 (S.D.N.Y. 2004) .............................................................................. 10

*Kirksey v. Schindler Elevator Corp.,*
No. CV 15-0115-WS-N, 2016 WL 5213928 (S.D. Ala. Sept. 21, 2016) ......................... 12

*Kumho Tire Co., Ltd. v. Carmichael,*
526 U.S. 137 (1999) ............................................................................................................ 3

*McCullock v. H.B. Fuller Co.,*
61 F.3d 1038 (2d Cir. 1995) ............................................................................................. 10

*Melini v. 71st Lexington Corp.,*
No. 07-CV-701, 2009 WL 413608 (S.D.N.Y. Feb. 13, 2009) .......................................... 11

*Old Gate Partners, LLC v. Paddock Enters., LLC,*
No. 3:18-CV-01657 (JCH), 2024 WL 3520168 (D. Conn. May 30, 2024) .................... 2, 3

*Pitasi v. Stratton Corp.,*
968 F.2d 1558 (2d Cir. 1992) ............................................................................................. 8

*Redcell Corp. v. A. J. Trucco, Inc.,*
No. 20 CIV 0018 (AT)(SLC), 2022 WL 3700148 (S.D.N.Y. Aug. 26, 2022) ................. 10

*Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc.*,
   208 F. Supp. 2d 423 (S.D.N.Y. 2002)................................................................... 10

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................ 8

*Sec. & Exch. Comm'n v. Ripple Labs, Inc.,*
   No. 20 CIV. 10832 (AT), 2023 WL 5670711 (S.D.N.Y. Mar. 6, 2023) ................................. 10

*SLSJ, LLC v. Kleban*,
   277 F. Supp. 3d 258 (D. Conn. 2017).................................................................. 2, 3

*Stilwell v. Smith & Nephew, Inc.*,
   482 F.3d 1187 (9th Cir. 2007) ............................................................................ 12

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)............................................................................... 3

### Rules

Fed. R. Civ. P. 26............................................................................................... 8

Fed. R. Evid. 702 ......................................................................................... 2, 11, 12

**INTRODUCTION**

Plaintiff Conservation Law Foundation, Inc. ("CLF") respectfully submits the following in opposition to Defendants' Motion to Exclude Edwin Levine's Opinions and Testimony and supporting memorandum (ECF 711).

Mr. Levine provides relevant rebuttal to the expert testimony provided by Defendants relating to their proposed models regarding the risks of oil spills at the New Haven Terminal, namely that the models are insufficiently specific, and that the models do not account for the many uncertainties that arise in the real—not modeled—world during climate derived-extreme weather events such as hurricanes. Mr. Levine brings thirty-eight years of experience and has been engaged in 250 incident responses, ranging from oil spills to chemical releases to radiological and biological threats, including responses to incidents caused by hurricanes and other weather-related events, and involving storage tanks and industrial facilities. (Levine Rebuttal Rpt., ECF 759, at 1). Based on his experience, Mr. Levine opines that oil spills behave differently than projected by models during severe weather events and catastrophic releases. His testimony will provide important context for the trier of fact regarding the limitations of using those models. His testimony provides an explanation for understanding that modeled outcomes rarely align with the real-world and unforeseen impacts during hurricane events.

In his expert analysis, Mr. Levine provides examples of oil spill incidents associated with other terminals that have been impacted by hurricanes. His analysis is directly relevant to understanding the risk that extreme weather events pose to the New Haven Terminal. His testimony is not confusing or prejudicial but is the opinion of an expert in oil spill response who will help a factfinder understand the limitations of complex, potentially misleading models.

**LEGAL STANDARD**

"Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 264 (D. Conn. 2017) (quoting *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015)). "A witness is qualified where he or she has 'superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'" *Old Gate Partners, LLC v. Paddock Enters., LLC*, No. 3:18-CV-01657 (JCH), 2024 WL 3520168, at *6 (D. Conn. May 30, 2024) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)). "One may become qualified as an expert based on practical experience, so that professional education is not a prerequisite." *SLSJ, LLC*, 277 F. Supp. at 266 (citing *United States v. Angelilli*, 660 F.2d 23, 39–40 (2d Cir.1981)). "Alternatively, formal education may also suffice to qualify a witness as an expert in a particular field, and the lack of extensive practical experience directly on point does not necessarily preclude the expert from testifying." *Id.* (internal quotation and citation omitted). "When considering an expert's 'practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth.'" *Id.* (citing *Valentin v. New York City*, No. 94-CV-3911 (CLP), 1997 WL 33323099, at *14 (E.D.N.Y. Sept. 9, 1997)).

"If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable." *Old Gate Partners, LLC*, 2024 WL 3520168, at *6. In *Daubert*, the Supreme Court identified four factors that may be considered in assessing reliability:

2

(1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation' " and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593–94) (internal quotations and citations omitted).  However, these factors are not a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.*

"In addition to ensuring that expert testimony is reliable, the court must decide whether the expert's testimony is relevant, i.e., whether it will 'help the trier of fact.'" *Old Gate Partners, LLC,* 2024 WL 3520168, at *7 (quoting *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016)).  "[E]xpert testimony is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 403).

"Furthermore, doubts about the usefulness of an expert's testimony, should be resolved in favor of admissibility." *SLSJ, LLC*, 277 F. Supp. 3d at 264.  While "[a]s a general rule an expert's testimony on issues of law is inadmissible," *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), "[c]ourts generally permit expert corporate governance testimony," provided the expert does not "track the language of the statute or the law that the defendants are accused of violating." *SLSJ, LLC*, 277 F. Supp. 3d at 268 (internal quotations and citations omitted).

3

## ARGUMENT

### A. Mr. Levine's Opinions Are Proper Rebuttals Because He "Contradicts or Rebuts" Defendants' Expert Reports

Defendants' argument that Mr. Levine's opinions do not sufficiently "contradict or rebut" Defendants' expert reports (Defendants' Motion to Exclude, ECF 755, at 10) misses the mark. Contrary to the expert opinions from Drs. French-McCay and Etkin, Mr. Levine draws upon his extensive experience over several decades of responding to spill incidents, including oil spills from coastal oil storage facilities caused by hurricanes, to opine that

> [t]he potential for future spillage related to storm damage of offshore structures, pipelines, and coastal facilities, particularly in light of increased intensity and frequency of severe storms and hurricanes related to climate change, represents a considerable risk of future oil inputs into the marine environment.

(Levine Rpt. ECF 759 at 23). This testimony directly contradicts and rebuts the testimony of Drs. French-McCay and Etkin that the risk of an oil spill from the New Haven facility is "extremely improbable" and "highly unlikely," respectively. (French-McCay Expert Report, ECF 768, at 5–6; Etkin Expert Report, ECF 767 at 10-add proper cites).

Defendants take Mr. Levine's testimony out of context when they state that he "admitted that oil spills from any terminal are 'highly unlikely.'" (Defendants' Motion to Exclude, ECF 755, at 21). The full deposition transcript reads as follows:

> Q    And you say that:  While the expert report prepared by Dr. Schmidt Etkin states, quote, Oil facility spills are unlikely events for any particular facility or storage tank, end of quote.  I would point out that the percent probability of a spill is not zero. Did I read that correctly?
>
> A    Yes.
>
> Q    Do you agree that oil facility spills are highly unlikely events for any particular facility or storage tank?
>
> A    Yes.

4

Q    But your opinion is is that the percent probability is not zero?

A    It's not my opinion.  That's the fact.  You know, the spills are low probability high impact events.

(Levine Deposition, ECF 758, at 167:15–168:8). The import of Mr. Levine's testimony is best understood in the context of his expert report in which he makes clear that modeling limited to a "particular facility or storage tank" does not capture the full extent of the risk of a spill from a coastal petroleum storage facility.

Further, Mr. Levine's rebuttal includes a number of other related opinions that directly call the expert opinions of Dr. French-McCay and Dr. Etkin into question including that:

- the oil spill modeling report cited by Dr. French-McCay does not include specific conditions necessary to predict the risks of a catastrophic release. Specifically, Mr. Levine states that:

> The Oil Spill Modeling report cited by expert Dr. French-McKay compares variable scenarios to assess possible outcomes from an oil release at the New Haven Terminal. However, a spill during a severe weather event or catastrophic release will behave differently in some aspects than the most probable outcomes identified. The most accurate models are run with local conditions and spill-specific data. These runs certainly help bound the issue, but for any actual release, specific model runs would be necessary, as each set of conditions would be unique.

(Levine Rpt. ECF 759 at 3);

- the modeling performed by Defendants' experts does not address explosion risks or the potential for the creation of a vapor plume as the result of a spill. Specifically, Mr. Levine uses an example air dispersion model to show how this could be done, stating that:

> In addition to the liquid oil, the aerosols and vapors may have impacts on animals and people. In Appendix 2, an example air dispersion model for a 1,000,000-gallon release of gasoline on the Motiva New Haven facility was run. Under the conditions used for this model run, an air plume can be seen

5

to extend almost six miles downwind at the odor threshold concentration (0.25 ppm). In the New Haven area, this could represent impacts on thousands of people. While the odor threshold is below any government action level criteria for direct health effects, the volume of 911 calls from concerned citizens will be great. Additionally, some sensitive populations (elderly, frail, or very young) may experience adverse effects from even this low an exposure.

 (Levine Rpt. ECF 759 at 4) (emphasis added);

■ public agencies have an obligation to consider worst-case scenarios informed by experience such as the Exxon-Valdez and Deepwater Horizon oil spills, which have had impacts many decades after they occurred. Specifically, Mr. Levine states that:

While the Expert Report prepared by Dr. Schmidt-Etkin states "oil facility spills are highly unlikely events for any particular facility or storage tank," I would point out that the percent probability of a spill is not zero. Government regulations still require plans to address possible worst-case scenarios. These regulations are based on minimum regret versus maximum win situations.

(Levine Rpt. ECF 759 at 4):

■ models cannot capture unforeseen risks associated with incident responses, such as the compounding effects of the damage caused by the extreme weather event on a facility operator's ability to respond to an oil spill. Specifically, Mr. Levine states that:

When severe weather occurs, issues may arise that are not anticipated in facility prevention and response plans and site construction. Due to the very nature of the variability, intensity, and numerous other factors, not every contingency can be accounted for when preparing to prevent or respond to a pollution event. In my professional career, I have been a witness to the unforeseen impacts of oil spills that have occurred due to natural disasters and human causal factors.

One factor to consider in the case of oil spills occurring during weather events is the compounding nature of the oil on top of the damage already wrought by the weather event. This both complicates the ability to respond and multiplies the mental toll on people.

(Levine Rpt. ECF 759 at 5).

In sum, Mr. Levine provides an entirely relevant rebuttal of the testimony of Drs. Etkin and French-McCay relating to their proposed models regarding the risks of oil spills at the New Haven terminal. His testimony makes clear that the models they rely upon as the basis of their testimony are insufficiently specific, and that the models do not account for the many uncertainties that arise in the real—not modeled—world during extreme weather events such as hurricanes. His opinions are based on his extensive experience responding to spill incidents and provide a clear basis for a factfinder to determine that best industry practice should be to consider the risks of climate change-derived extreme weather events at a coastal marine petroleum storage facility like Defendants' facility in New Haven.

The purpose of a rebuttal report is to "contradict or rebut evidence on the same subject matter" offered to the Court by the opposing party. Fed. R. Civ. P. 26(a). A rebuttal report is only admissible if it explains, repels, counteracts, or disproves, the opposing evidence. *Brink's Global Servs. USA, Inc. v. Bonita Pearl Inc.*, No. 22-cv-6653, 2024 WL 4227760, at *8 (S.D.N.Y. Sept. 18, 2024). Courts have been reluctant to narrowly construe the term "same subject matter"; thus, rebuttal experts are permitted leeway in how they explain, repel, counteract, or disprove the opposing evidence. *Id.*

Further, Defendants' assertion that Mr. Levine's opinion "introduce[s] new analyses or opinions" is misplaced. (Defendants' Motion to Exclude, ECF 755 at 14). In fact, Mr. Levine's testimony provides an alternative, and critical method for understanding the risks of catastrophic spills at marine petroleum storage facilities at risk of extreme weather such as hurricanes and floods. He offers the air dispersion modeling results, for instance, as an example of additional modeling that should be performed in assessing the risks associated with a catastrophic oil spill at the New Haven terminal. Courts generally interpret "same subject matter" broadly, allowing

7

rebuttal experts reasonable flexibility to use new methods or approaches to counter the opposing party's expert opinions. *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *Allen v. Dairy Farmers of Am., Inc.*, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013)). *See also Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1562 (2d Cir. 1992) (rebuttal testimony should be admitted where not necessary for plaintiff's prima facie case and served the permissible rebuttal function of impeaching defendant's witnesses).

In this instance, the purpose and import of Mr. Levine's testimony is to rebut their overall methodology. Mr. Levine relies upon his experience of thirty-eight years responding to hundreds of incidents, coupled with an examination of spills at similarly situated coastal petroleum storage facilities, including some impacted by hurricanes, to opine that it is a mistake to rely upon narrowly crafted models. The modeling relied upon by Defendants' experts does not capture the complexity of real-world oil spills, is based on incomplete information, and does not consider all relevant pathways of exposure including air.

In sum, Mr. Levine's report and testimony conforms to the definition of rebuttal reports as he explains, repels, counteracts, and disproves Dr. French-McCay's and Dr. Etkin's opinions and, as such, is proper rebuttal under Rule 26.

### B. Mr. Levine's Opinions Are Relevant and Will Not Unfairly Prejudice or Confuse the Factfinder

Mr. Levine provides examples of oil spill incidents associated with other terminals that have been impacted by hurricanes and uses these examples to explain the risks of oil spills for coastal petroleum storage facilities such as the New Haven Terminal. Mr. Levine's expert rebuttal testimony is directly relevant to understanding the risk of oil spills that are present at the New Haven Terminal, and at any coastal petroleum storage facility, due to climate change-derived extreme weather events such as hurricanes. He draws upon his many decades of experience in

applied spill response to help the factfinder understand that the models that Drs. French-McCay and Etkin rely on to evaluate the risk of oil spills at the New Haven Terminal are insufficient. His testimony is not confusing or prejudicial but is the opinion of an expert in oil spill response. The fact that Mr. Levine's rebuttal testimony does not specifically address the 2018/2021 Permit or the Spill Prevention Control and Counter Measure ("SPCC") plan for the New Haven Terminal (Defendants' Memo In Support, ECF 755, at 1–2) does not make his opinions irrelevant or prejudicial. *See Dominion Resources SVC, Inc. v. Alstom Power, Inc.*, No. 3:16-CV-544, 2018 WL 3752878, at *6 (D. Conn. Aug. 8, 2018) ("[Expert's] opinion does not need to be specifically tailored to the exact type of company that [defendant] is in order to assist the trier of fact. By providing an opinion on the customary meaning of 'commercial general liability insurance' in the market as a whole, his opinion assist [sic] the trier of fact in determining a factual issue that is actually in dispute."). That Mr. Levine looks to the effects of hurricanes on other oil terminals beyond the New Haven Terminal in forming the opinion that the New Haven Terminal is at risk of an oil spill will assist the factfinder in understanding the risks of climate change-derived extreme weather events at the New Haven Terminal and is exactly the analysis that a responsible industrial facility should undertake when evaluating the risk of catastrophic spills from critical infrastructure such as large volume coastal petroleum storage facilities.

For these reasons, Mr. Levine's opinions are relevant to the claims in this case because they are a demonstration of a reliable and relevant methodology to the facts of this case, one that demonstrates the limitations of the limited modeling done by Drs. French-McCay and Etkin. Defendants' criticisms of Mr. Levine's testimony go to the weight of his testimony, not its admissibility. Defendants remain free to challenge the weight that the factfinder should give Mr. Levine's opinions, but those opinions are clearly relevant to understanding the shortcomings of

9

the models relied upon by Drs. French-McCay and Etkin and to the risk of oil spills at coastal petroleum storage facilities such as the New Haven Terminal. *See McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995); *see also Redcell Corp. v. A. J. Trucco, Inc.,* No. 20 CIV 0018 (AT)(SLC), 2022 WL 3700148, at *9 (S.D.N.Y. Aug. 26, 2022) ("[D]ifferences of opinion and alleged weaknesses in the experts' methodologies will go to the weight to be given the expert testimony, not its admissibility.") (citations omitted); *Sec. & Exch. Comm'n v. Ripple Labs, Inc.,* No. 20 CIV. 10832 (AT), 2023 WL 5670711, at *24 (S.D.N.Y. Mar. 6, 2023) (admitting expert witness rebuttal testimony criticizing another expert's methodology).

Mr. Levine is highly qualified, bringing significant relevant and real-world experience to assist the trier of fact, his opinions are relevant to the key issues of this case, and his methodology is simple and comprehensible. For these reasons, the probative value of Mr. Levine's testimony is high and will help the trier of fact. Any weakness in Mr. Levine's methodology or conclusions "goes to the degree of credibility to be accorded to the evidence, not to the question of its admissibility." *Royal Ins. Co. of Am. v. Joseph Daniel Const. Inc.*, 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 133–35 (D.C. Cir. 1996)). As the courts and Advisory Committee have made clear, "the rejection of expert testimony is the exception rather than the rule." *Cooper Crouse-Hinds, LLC v. City of Syracuse, New York*, 568 F. Supp. 3d 205, 220 (N.D.N.Y. 2021) (quoting Fed. R. Evid. 702 advisory committee note to 2000 amdts); *see also E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 313 F. Supp. 2d 213, 226 (S.D.N.Y. 2004). "This principle is based on the recognition that 'our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.'" *Melini v. 71st Lexington Corp.*, No. 07-CV-701, 2009 WL 413608, *5 (S.D.N.Y. Feb. 13, 2009) (quoting

*Amorgianos*, 303 F.3d at 267). For these reasons, Defendants' motion to exclude Mr. Levine's testimony should be denied.

### C. Defendants' Arguments Based on the Relevance of Mr. Levine's Testimony Regarding Requirement to Consider Climate Change are Premature

Defendants seek to preclude the expert testimony of Mr. Levine as irrelevant in part based on their contention that the 2018/2021 permits for the New Haven Terminal do not require Defendants to consider the effects of climate change. (Defendants' Motion to Exclude, ECF 755 at 2). However, because the issue of what those permits require is a contested issue in this case, the fact that Mr. Levine's expert opinions do not support Defendants' legal theories does not provide a basis for excluding Mr. Levine's opinions under Fed. R. Evid. 702 and *Daubert*. Instead, in assessing whether an expert opinion testimony is "relevant to the task at hand" under Rule 702, the court considers whether the proffered testimony "logically advances a material aspect of *the proposing party's case.*" *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (emphasis added). That test is met here, and Defendants' motion should be denied.

First, the question of whether the permits for the New Haven Terminal require Defendants to consider the effects of climate change is a core issue in this case. In 2023, Judge Meyer denied Defendants' motion for summary judgment, which was premised on the argument that the current permit for the terminal did not require consideration of climate change, either explicitly or as a best industry practice. Order Denying Mot. for Partial Sum. J., ECF 302. In so doing, Judge Meyer "held that whether consideration of climate change was an 'industry best practice' remained an issue of material fact *that could not be resolved as a matter of law*." ECF 641 at 4 (emphasis added). In a more recent Order denying Defendants' motion to stay, the Court described Plaintiff's "central claim in this action" as "[t]hat the now-governing General Permit required the Defendants to consider the effects of climate change in developing and implementing the Stormwater Pollution

Prevention Plan ('SWPPP') for Defendants' New Haven bulk fuel storage terminal, and that the Defendants' failed to comply with this requirement." ECF 641 at 2. Notably, Defendants are now proposing to (again) address this central claim in a motion for summary judgment. *See* ECF 806 (letter brief filed by Defendants Equilon Enterprises, LLC and Triton Terminal LLC). Briefing on the Parties' anticipated cross-motions for summary judgment has not yet been set.

Second, a *Daubert* motion is an evidentiary motion, not a dispositive motion. The standard for determining questions of law at summary judgment under Fed. R. Civ. P. 56 is different from the evidentiary standard that governs the admissibility of expert testimony under Rule 702 and *Daubert*. For that reason, courts are instructed to be "cautious" when issues that must be addressed at summary judgment intersect with *Daubert* motions. *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997). The court should not, for example, decide the validity of a party's claim in the context of ruling on an evidentiary issue. *E.g.*, *Kirksey v. Schindler Elevator Corp.*, No. CV 15-0115-WS-N, 2016 WL 5213928, at *11 (S.D. Ala. Sept. 21, 2016). As applied here, the Court should reject Defendants' invitation to either accept the validity of their legal position on the interpretation of the permits or, alternatively, to decide that contested issue in the context of a *Daubert* motion without affording the parties an opportunity to fully brief that issue (and others) on cross-motions for summary judgment under Rule 56. Instead, because there is "a link between the expert's testimony and the matter *to be proved[,]*" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (citation omitted, emphasis added), the relevance test is met for purposes of Rule 702 and Mr. Levine's testimony is admissible.

Finally, to the extent Defendants' motion to exclude Mr. Levine's testimony is premised on the outcome of their anticipated motion for summary judgment, their motion is premature and should be denied at this time.

12

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks this Court to Deny Defendants'

Motion to exclude Mr. Levine's rebuttal testimony.


Dated: November 3, 2025                         Respectfully submitted,

                                                CONSERVATION LAW
                                                FOUNDATION, Inc., by its attorneys

                                                */s/ David K. Mears*
                                                David K. Mears (phv 208829)*
                                                Tarrant, Gillies, & Shems LLP
                                                44 East State Street
                                                Montpelier, VT 05602
                                                Tel: (802) 223-1112
                                                E-mail: david@tarrantgillies.com

                                                Ridge Mazingo (phv208402)*
                                                28 Bridgeside Blvd.
                                                Mount Pleasant, SC 29464
                                                Tel: (843) 216-9620
                                                Email: rmazingo@motleyrice.com

                                                Linda Singer (phv208339)
                                                401 9th St. NW, Suite 630
                                                Washington, DC 20004
                                                Tel: (202) 386-9626
                                                Tel: (202) 386-9627
                                                Email: lsinger@motleyrice.com

                                                Michael Pendell (ct27656)
                                                One Corporate Center
                                                20 Church St., 17th Floor
                                                Hartford, CT 06103
                                                Tel: (860) 218-2722
                                                Email: mpendell@motleyrice.com

                                                James Meinert (ct31637)
                                                Conservation Law Foundation, Inc.
                                                62 Summer St
                                                Boston, MA 02110
                                                Tel: (617) 850-1744
                                                Tel: (617) 850-1707

13

E-mail: jmeinert@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 622-3020
Tel: (802) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com

*Attorneys for Plaintiff Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

14