# EXHIBIT A

**to Plaintiff Conservation Law Foundation's Opposition to Defendants' Motion to Exclude the Testimony of Joshua C. Macey**

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


```
----------------------------x
CONSERVATION LAW              :
FOUNDATION, INC.,             :
                             :
         Plaintiff           :
                             :CASE NO.
    -versus-                 :3:21-CV-00933-VDO
                             :
EQUILON ENTERPRISES LLC       :
d/b/a SHELL OIL PRODUCTS      :
US, TRITON TERMINALING LLC :
and MOTIVE ENTERPRISES LLC,:
                             :
         Defendants          :
----------------------------x
```

Videotaped Deposition of JOSHUA MACEY, taken pursuant to Rule 30 of the Federal Rules of Civil Procedure, held at the law offices of WIGGIN AND DANA, LLP, One Century Tower, 265 Church Street, New Haven, Connecticut, before Julia Flynn Cashman, RPR, CSR and Notary Public in and for the State of Connecticut, on Tuesday, September 2, 2025, at 9:00 a.m.

Page 240

Q. Okay.  Have you been asked by CLF to do any additional work on this case?

A. No.

Q. Outside of participating at trial.

A. Yep, no.

Q. And are you currently planning to do any additional analysis regarding your opinions in this case --

A. No.

Q. -- other than what is included in your expert reports?

A. No.

Q. Okay.

MR. KEARNEY:  For now, those are all the questions that I have for you.  Thank you very much for your time.  I may have additional questions after Mr. Pendell asks you; I may not. But thank you very much.

THE DEPONENT:  Thanks for talking to me today.

CROSS-EXAMINATION

BY MR. PENDELL:

Q. Professor, I'll be brief.  Can you hear me okay?

A. Yes.

Page 241

Q. Going back to the beginning of the deposition, counsel asked you a question about Bestfoods.  If you look at page 7 of your report, that's where you -- if you need to, that's where it is, that is where you first cite --

A. Yes.

Q. -- Bestfoods.  In that section of the report, actually talking about the background on corporate structure, true?

A. Yes.

Q. And specifically your discussion of Bestfoods, isn't it true that your discussion of Bestfoods was because you were trying to give one or two examples of when -- as an exception to limited liability for the subsidiary or for the parent company of the subsidiary?

MR. KEARNEY:  Objection to form.

A. Yes, in terms of it's providing context of two exceptions to the default rule of limited liability, to provide context for the -- (inaudible).

(The reporter asked for clarification)

A. -- factual opinion I'm giving here.

Q. But you did not -- did you endeavor to take the facts as you found them here -- well, strike

Page 242

that.  I don't mean that.

Did you endeavor to take, after looking at the corporate documents in this case to understand the corporate structure, did you then endeavor to take that analysis and apply the Bestfoods standard to make a determination as to whether or not it met the Bestfoods standard?

MR. KEARNEY:  Objection to form.

A. I did not make -- I described the facts as I would think that someone would find them to be relevant or useful, but I did not apply the Bestfoods standard to these facts.

Q. Counsel asked you some questions way back in the beginning of the deposition about the percentage of your income that was from being an expert witness in this litigation versus Yale. And I think you said around 20 percent, correct?

A. Yep.

Q. That's 20 percent just for this year, true?

A. True.

Q. Because prior to this year, you had never done this before, right?

A. I have never received consulting income before, yes.

Q. Do you have any other case as we sit here

Page 243

today where you plan in the next 12 months to be an expert witness?

A. Unfortunately not, no, I do not.

Q. So that was, that 20 percent, at least for the foreseeable future, was a one-time deal?

A. It was a one-time deal.  And I don't anticipate more consulting.

Q. Okay, let me ask you, counsel asked you about -- he showed you Mr. Yeates' Declaration, I think that that was exhibit -- well, I mean you can pull it out if you have it.  I don't know what exhibit number it was, but his Declaration.

You understand that that Declaration was created in the course of this litigation in support of a legal argument that was being made by counsel?

MR. KEARNEY:  Objection.

Q. Do you understand that?

A. Yes, I do.

MR. KEARNEY:  For the record, objection to form.

Q. The documents that you received and reviewed in this case, when were those created?

A. Those were created during the course of -- they were documents about what procedures,