**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br>     *Plaintiff*, <br><br>            v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br>     *Defendants*. | Civil Action No. 3:21-cv-00933-VDO <br><br><br> November 3, 2025 |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S**
**OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE**
**THE TESTIMONY OF PHILLIP PASTERIS, M.S.**

**TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................. 1

**LEGAL STANDARD** ........................................................................................................... 2

**ARGUMENT**......................................................................................................................... 4

    A.   Mr. Pasteris is Qualified, Employed a Reliable Methodology to Render His Opinions, and His Testimony will Assist the Trier of Fact........................................................................ 4

    B.   Mr. Pasteris' Opinions Directly Address Issues in the Case ............................................. 7

    C.   Mr. Pasteris Did Not Fail to Disclose Facts or Data as Required by Fed. R. Civ. Pro. 26. 9

    D.   Mr. Pasteris's Opinions Are Not Needlessly Cumulative. ............................................. 10

**CONCLUSION** ................................................................................................................... 11

ii

## TABLE OF AUTHORITES

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)..................................................................................................... 3

*Bartlett v. Mut. Pharm. Co.*,
759 F. Supp. 2d 171 (D.N.H. 2010).......................................................................................... 11

*Daubert v. Merrell Dow Pharma., Inc.*,
509 U.S. 579 (1993)..................................................................................................................... 3

*Dominion Res. SVC, Inc. v. Alstom Power, Inc.*,
No. 3:16-CV-544, 2018 WL 3752878 (D. Conn. Aug. 8, 2018)................................................ 5

*Donaldson v. Grous*,
No. 3:22-CV-810 (VDO), 2025 WL 1373741 (D. Conn. May 12, 2025) ................................ 10

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
No. 14-MD-2542 (VSB), 2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) ..................................... 9

*In re Mirena IUD Prod. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016)......................................................................................... 4

*Kumho Tire Co. Ltd. v. Carmichael*,
526 U.S. 137 (1999).......................................................................................................... 3, 4, 6

*Munn v. Hotchkiss Sch.*,
24 F. Supp. 3d 155 (D. Conn. 2014), *aff'd,* 724 F. App'x 25 (2d Cir. 2018) .......................... 5, 6

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005)......................................................................................................... 4

*Novick v. AXA Network, LLC*,
714 F. App'x 22 (2d Cir. 2017)..................................................................................................... 4

*Old Gate Partners, LLC v. Paddock Enters., LLC*,
No. 3:18-CV-01657 (JCH), 2024 WL 3520168 (D. Conn. May 30, 2024)............................ 3, 4

*Sec. & Exch. Comm'n v. McGinnis*,
No. 5:14-CV-6, 2019 WL 13172368 (D. Vt. Feb. 19, 2019)..................................................... 11

*SLSJ, LLC v. Kleban*,
277 F. Supp. 3d 258 (D. Conn. 2017)................................................................................. 2, 3, 4

*United States v. Angelilli*,
660 F.2d 23 (2d Cir.1981)............................................................................................................ 3

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)....................................................................................................... 4

*United States v. Patel*,
No. 3:21-CR-220 (VAB), 2023 WL 2643815 (D. Conn. Mar. 27, 2023) ................................. 5

*United States v. Tin Yat Chin*,
371 F.3d 31 (2d Cir. 2004)..................................................................................... 3

*Valentin v. New York City*,
No. 94-CV-3911 (CLP), 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997) .................................. 3

*Washington v. Kellwood Co.*,
105 F.Supp.3d 293 (S.D.N.Y. 2015).................................................................................. 2

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
571 F.3d 206 (2d Cir. 2009).................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) ............................................................ 8

Federal Rule of Evidence 403.................................................................................... 4, 10

Federal Rule of Evidence 702.................................................................................... 4

## EXHIBIT LIST

Exhibit A            Eric Kovich Expert Report*

Exhibit B            Excerpts of the Phillip Pasteris September 2025 Deposition Transcript

*Documents denoted with an asterisk are being filed under seal pursuant to this Court's Protective Order (ECF 7).*

Plaintiff Conservation Law Foundation, Inc. ("CLF") respectfully submits the following in opposition to Defendants' Motion to Exclude the Expert Philip Pasteris' Opinions and Testimony (ECF No. 742; Memorandum in Support at ECF No. 742-1).

## INTRODUCTION

Mr. Pasteris has been a meteorologist for over fifty years, fifteen years of which were spent as an industry consultant providing climate change risk analyses at the request of private clients, including members of the oil and gas industry and owners of coastal facilities. (Pasteris Rpt., ECF No. 742-2, at 1, 4). Mr. Pasteris opines that (1) it is best industry practice to perform a climate risk assessment at the New Haven Terminal and (2) a climate risk assessment is warranted at the New Haven Terminal given risks posed to the area including ever-increasing extreme precipitation events. Mr. Pasteris' opinions are based on his extensive experience as an industry consultant and his training as a meteorologist and directly respond to contrary opinions that Defendants seek to elicit from Susan Parker Bodine, Craig Jones, Eric Kovich, and David Uhlmann. As is characteristic in Defendants' sweeping motions to exclude all of Plaintiff's experts, Defendants' Motion to Exclude Mr. Pasteris' testimony amounts to nothing more than baseless arguments founded upon mischaracterizations. As a result, each of their arguments fail.

*First*, Mr. Pasteris is eminently qualified to testify based on his experience as an industry consultant and his training as a meteorologist. To form his opinions, Mr. Pasteris employed a reliable methodology that mirrors his non-litigation work as well as the work of other experts in his field. Mr. Pasteris' opinions are that: (1) it is best industry practice to conduct a climate risk assessment at the New Haven facility and (2) a climate risk assessment is warranted in New Haven given risks climate change poses to the area including the trend of ever-increasing extreme precipitation events. These opinions are at the very heart of this lawsuit and directly rebut

Defendants' experts' opinions to the contrary.  Defendants' argument that it is necessary for Mr. Pasteris to be able to point to which Terminal along the New Haven harbor is Defendants', recite the language of the Permit, and identify particular Shell subsidiaries in order to form these opinions is a red herring.

*Second*, Defendants' suggestion that Mr. Pasteris failed to disclose "key materials" used to form his opinions fails for three reasons.  For one, Mr. Pasteris' testimony is not based on the documents cited by Defendants but on his consulting experience writ large. The documents cited by Defendants are specific exchanges and documents with clients from his time as an industry consultant working on separate matters. Second, Defendants had a full and fair opportunity to ask Mr. Pasteris about these materials at his deposition, which they did, and to seek production of these documents, which they did not.  Third, even if the Court agrees with Defendants that these documents should be produced, the proper remedy is an order compelling these documents, not wholesale exclusion of Mr. Pasteris' testimony.

*Third*, Mr. Pasteris' testimony is not needlessly cumulative under Rule 403 because he offers an opinion and perspective that is not offered by any of CLF's other experts.  Defendants' arguments to the contrary are both incorrect and premature.

## LEGAL STANDARD

"Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 264 (D. Conn. 2017) (quoting *Washington v. Kellwood Co.*, 105 F.Supp.3d 293, 304 (S.D.N.Y. 2015)).  "A witness is qualified where he or she has 'superior knowledge, education, experience, or skill with the subject matter of the proffered

2

testimony.'" *Old Gate Partners, LLC v. Paddock Enters., LLC*, No. 3:18-CV-01657 (JCH), 2024 WL 3520168 at *6 (D. Conn. May 30, 2024) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).  "One may become qualified as an expert based on practical experience, so that professional education is not a prerequisite." *SLSJ, LLC,* 277 F. Supp. at 266 (citing *United States v. Angelilli*, 660 F.2d 23, 39–40 (2d Cir.1981)).  "Alternatively, formal education may also suffice to qualify a witness as an expert in a particular field, and the lack of extensive practical experience directly on point does not necessarily preclude the expert from testifying." *Id.* (internal quotation and citation omitted).  "When considering an expert's 'practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth.'" *Id.*  (citing *Valentin v. New York City*, No. 94-CV-3911 (CLP), 1997 WL 33323099 at *14 (E.D.N.Y. Sept. 9, 1997)).

"If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable." *Old Gate Partners, LLC,* 2024 WL 3520168 at *6.  In *Daubert*, the Supreme Court identified four factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation' " and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 593–94 (1993)) (internal quotations and citations omitted).  However, these factors are not a "definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  Instead, the inquiry is a flexible one and must be "tied to

the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*.

"In addition to ensuring that expert testimony is reliable, the court must decide whether the expert's testimony is relevant, i.e., whether it will 'help the trier of fact.'" *Old Gate Partners, LLC,* 2024 WL 3520168 at *7 (quoting *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016)). "[E]xpert testimony is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 403).

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005); *see also Novick v. AXA Network, LLC*, 714 F. App'x 22, 25 (2d Cir. 2017) ("Expert testimony should be liberally admitted if the expert's . . . 'specialized knowledge will assist the trier of fact to understand the evidence.'") (quoting Fed. R. Evid. 702). "[D]oubts about the usefulness of an expert's testimony, should be resolved in favor of admissibility." *SLSJ*, *LLC,* 277 F. Supp. 3d at 264. While "[a]s a general rule an expert's testimony on issues of law is inadmissible," *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

## ARGUMENT

### A. Mr. Pasteris is Qualified, Employed a Reliable Methodology to Render His Opinions, and His Testimony will Assist the Trier of Fact.

Mr. Pasteris is qualified to testify to the opinions he offers in this case. Mr. Pasteris has been a meteorologist for over fifty years. (Pasteris Rpt., ECF No. 742-2, at 1). Fifteen of those years were spent as an industry consultant providing climate change risk analyses at the request of private clients, including members of the oil and gas industry and owners of coastal facilities. (Pasteris Rpt., ECF No. 742-2, at 4). Mr. Pasteris' experience as an industry consultant qualifies

him to speak on industry practices. *See, e.g.*, *United States v. Patel*, No. 3:21-CR-220 (VAB), 2023 WL 2643815 at *33 (D. Conn. Mar. 27, 2023) (finding experts qualified based on their respective experience in the aerospace industry and confirming "[a]n expert can be considered qualified under *Daubert* based on experience alone"); *Dominion Res. SVC, Inc. v. Alstom Power, Inc.*, No. 3:16-CV-544, 2018 WL 3752878 at *8 (D. Conn. Aug. 8, 2018) (finding expert sufficiently qualified to testify in the field of insurance contracts based on years of experience as a claims handler, manager, and consultant within the property and casualty insurance industry).

Mr. Pasteris does not need expertise in stormwater permits or SWPPP's to form his opinions. Despite Defendants' repeated attempts to narrow the definition of "best industry practices" to a legal term of art that can be analyzed only in relation to requirements expressly enumerated in the Connecticut General Permit, this Court held the determination of "best industry practices" is a factual inquiry based on industry-wide practices. (*See* MPSJ Hearing Tr., ECF No. 305 at 82:20–83:15; 86:8–16 (holding "[w]hether industry wide practice is to consider climate change factors is a factual question" and that "industry-wide practices establish what constitutes best industry practice.")). Mr. Pasteris' industry consulting experience is, therefore, exactly what is required to assist the jury in answering this question.

Mr. Pasteris employed a reliable methodology to reach his opinions in this case. In *Munn v. Hotchkiss School*, cited by Defendants, this Court held that expert testimony must be "properly grounded in an accepted body of learning or experience in the expert's field." *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 202 (D. Conn. 2014), *aff'd,* 724 F. App'x 25 (2d Cir. 2018). Mr. Pasteris' methodology clearly meets this threshold. Mr. Pasteris' opinion that best industry practice requires consideration of climate change risk at the New Haven facility is based on both his fifteen years of experience as an industry consultant on climate change risks and his meteorological analysis of

risk factors relevant to the New Haven Terminal. (*See* Pasteris Rpt., ECF No. 742-2, at 1 ("[M]y independent opinions are based on my background, education, experience, and analysis of the published climate data and climate change model results.").

Mr. Pasteris employed the same type of analysis and level of rigor that he would employ in his non-litigation work as an industry consultant on climate risk. *See Kumho Tire*, 526 U.S. at 152 ("[A]n expert . . . [should] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."). Even if the Court adopts Defendants' narrow definition of "industry" as "bulk storage fuel terminals," Mr. Pasteris' work as an industry consultant included climate change analyses of forty-eight separate bulk storage fuel terminals. (Pasteris Dep., ECF No. 742-3, at 73:20–21). His experience is more than enough to "properly ground" his testimony. *See Munn,* 24 F. Supp. 3d at 202.

Mr. Pasteris' meteorological analysis likewise employs the same methodology characteristic of other experts in his field. (*See* Pasteris Rpt., ECF No. 742-2, at 18–20 (analyzing data from the NOAA and the Northeast Regional Climate Center)). Defendants' suggestion that Mr. Pasteris could not possibly forecast conditions in New Haven because he has never visited the city is absurd. (*See* ECF No. 742-1 at 26). Defendants' assertion that Mr. Pasteris could not testify that the New Haven Terminal is vulnerable to climate change because he cannot say which of the terminals on the New Haven Harbor belongs to Shell is likewise inapposite. (*See id.* at 25–26). Mr. Pasteris' testimony is not that Defendants must modify the Terminal based on where it sits on a flood-plain or in relation to other facilities. In fact, Mr. Pasteris does not offer an opinion on whether Defendants should modify their facility at all. (Pasteris Rpt., ECF No. 742-2, at 4 ("I am not providing any opinion or recommendation regarding specific structural modifications that may be warranted in response to climate risk factors.")). Rather, Mr. Pasteris' testimony is that, given

the overall threat climate change poses to New Haven and the industry-wide practice of assessing risks for climate change, it would be best practice for Defendants to *consider* climate change risks and "ensure its facility infrastructure and risk management protocols at the New Haven Terminal adequately account for climate change risks." (*Id.*). To offer this opinion, Mr. Pasteris does not need to be able to pick out the precise location of the Terminal along the New Haven coast nor be able to recite the language of the Permit or the particular Shell subsidiaries that qualify as Defendants in this case.

### B. Mr. Pasteris' Opinions Directly Address Issues in the Case

Mr. Pasteris' opinions are (1) it is best industry practice to perform a climate risk assessment at the New Haven Terminal and (2) a climate risk assessment is warranted at the New Haven Terminal given risks posed to the area including ever-increasing extreme precipitation events. Put more simply, Mr. Pasteris' opinions are that it is an "industry practice" to assess climate change risks to onshore facilities based on his experience performing numerous climate risk assessments at similarly situated facilities since 2008, and that it is "best" to do so for the New Haven Terminal given risks posed by climate change (i.e.: "best industry practice"). These are issues at the very heart of this case and his opinion directly rebuts and contradicts the opinions of Defendants' experts Susan Parker Bodine, Craig Jones, Eric Kovich, and David Uhlmann. (Pasteris Rpt., ECF No. 742-2, at 1). Those experts generally opine that conducting a climate risk assessment for coastal facilities is not best industry practice.

For example, Ms. Bodine opines that "[E]ven if climate assessment and adaptation measures fell within the scope of CWA authority, they do not represent best industry practices. . . ." (Expert Report of Susan Parker Bodine, June 23, 2025, ECF No. 709, at 2). Despite defining "Best Industry Practices" as "reflect[ing] widely adopted practices by a particular industry . . ."

Dr. Jones opines throughout his report that a climate change analysis is not a "best industry practice." (See Expert Report of Craig Jones, Ph.D., June 23, 2025, ECF No. 727, at 31–37). Mr. Kovich likewise opines, based on his "several decades of experience working in and with terminal companies," that taking climate change into account is not a "best industry practice," or indeed even an "industry practice." (Expert Report of Eric Kovich, P.E., June 23, 2025, attached as Ex. A, at 39–44). Attorney Uhlmann states that "designing and hardening facilities for long-term impacts of climate change, do not appear to have been generally accepted or implemented widely enough to be considered enforceable best industry practices." (Expert Report of David M. Uhlmann, June 23, 2025, ECF 735, at 20–21).

Thus, Defendants' assertion that Mr. Pasteris' opinions do not rebut or contradict their experts' opinions is wrong. Although Mr. Pasteris may not rebut every single opinion offered by any one of Defendants' experts, he is not required to do so. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (requiring only that rebuttal testimony be "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)"). Rather, Mr. Pasteris rebuts very specific opinions offered by four of Defendants' experts. Specifically, he rebuts that considering climate change at a facility like the New Haven Terminal is neither an "industry practice" nor a "best industry practice." Rebutting this opinion does not require Mr. Pasteris to remember details about each of these experts as Defendants suggest. (See ECF No. 742-1 at 7–9). Furthermore, a party is not required to "offer an explanation" for offering a witness in rebuttal See Fed. R. Civ. P. 26(a)(2)(D)(ii). However, given Defendants' experts' opinions are based on their experience working with the industry (*see, e.g.* Kovich Rpt., Ex. A, at 2–3, 39–44; Uhlmann Rpt., ECF 784, at 4–6, 20–22), Plaintiff is entitled to bring an expert in rebuttal who also has experience in the industry and has directly contradictory opinions. *See, e.g., In re Keurig*

8

*Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2025 WL 354671 at \*51–52 (S.D.N.Y. Jan. 30, 2025) (permitting industry expert offered to rebut opposing party's proffered industry expert to testify).  The issues raised by Defendants go to weight rather than admissibility and may be explored on cross-examination.  *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) ("contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.") (internal quotations and citations omitted).

**C. Mr. Pasteris Did Not Fail to Disclose Facts or Data as Required by Fed. R. Civ. Pro. 26**

Defendants' argument that Mr. Pasteris' opinions should be excluded for "failing to produce relevant materials supporting his opinions" fails for three reasons.  First, Mr. Pasteris did not rely upon the particular documents Defendants complain were not produced to form his opinions.  Mr. Pasteris' opinion that consideration of climate change risks is a "best industry practice" is based on his fifteen years of experience writ-large consulting with industry—including the oil and gas industry—on climate change risk.  (*See* Pasteris Rpt., ECF No. 742-2, at 4).  That opinion is not based on the results or contents of any specific consultation with any particular client.  What is relevant to his opinion is the mere fact that numerous companies since 2008 engaged him in performing climate change risk assessments of their facilities (i.e., this was an "industry practice").  The results or specific information exchanged with clients are not necessary in forming this opinion.

Second, Defendants had a full and fair opportunity to question Mr. Pasteris about these particular client engagements at his deposition and did so.  (*See* Deposition of Phillip Pasteris (September 3, 2025), Ex. B, at 99:21–107:20).  These materials were not produced because Mr. Pasteris is concerned about violating any non-disclosure or confidentiality agreements with

9

previous clients.  (*See* Pasteris Dep., ECF No. 742-3, at 101:13–102:15).  At his deposition, Plaintiff's counsel objected in good faith to Mr. Pasteris' producing these materials given potential confidentiality concerns. (*See* Pasteris Dep., Ex. B, at 101:18–101:23; 103:2–8).  Defendants did not follow up with undersigned counsel to negotiate a compromise or otherwise discuss the production of these materials.  Nor did Defendants seek Court intervention to try and obtain these materials.[1]  Instead, they let the issue go until this instant Motion to Exclude, which does not seek to force Mr. Pasteris to produce the documents, but instead tries to use the issue they abandoned as a reason to preclude his otherwise relevant and well-founded opinions.

Third, even if the Court decides Defendants are entitled to these materials, the proper solution is that Mr. Pasteris be compelled to produce them, not that Mr. Pasteris be precluded from testifying.  *See Donaldson v. Grous*, No. 3:22-CV-810 (VDO), 2025 WL 1373741 at \*12 (D. Conn. May 12, 2025) ("[p]reclusion is a harsh remedy that should only be imposed in rare situations").

### D.    Mr. Pasteris's Opinions Are Not Needlessly Cumulative.

Mr. Pasteris' testimony is not needlessly cumulative.  *See* Fed. R. Evid. 403 (providing a court may, but is not required, to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence").  Defendants disclosed fourteen experts in response to CLF's seven initial experts.  As outlined above, Mr. Pasteris' testimony is a direct rebuttal to four of Defendants experts' opinions regarding best industry practice.

While other Plaintiff experts offer opinions regarding best industry practice and precipitation risks, Mr. Pasteris' rebuttal testimony is unique because it directly rebuts Defendants'

---

[1] Defendants failed to even officially request that Mr. Pasteris produce these materials at his deposition; Defense counsel merely asked if he would have any objection to producing the materials.  (*See* Pasteris Dep., ECF No. 742-3, at 101:13–14).  Defendants cannot fail to seek production of these materials then attempt to use them as a sword to exclude Mr. Pasteris' testimony.

experts' testimony that, based on their experience consulting with the oil and gas industry, climate change risk assessments are not "best industry practice."  Plaintiff is entitled to rebut Defendants' expert testimony from industry consultants with testimony from an industry consultant with a contradictory opinion. *See Sec. & Exch. Comm'n v. McGinnis*, No. 5:14-CV-6, 2019 WL 13172368 at *5 (D. Vt. Feb. 19, 2019) (holding expert's testimony not cumulative where expert had something unique to add); *Bartlett v. Mut. Pharm. Co.*, 759 F. Supp. 2d 171, 213 (D.N.H. 2010) (holding testimony not cumulative where "each witness . . . had something different to add . . . No single witness . . . could have given the jury a full picture of what happened.").

Moreover, whether testimony is cumulative should be decided at trial as witnesses are offered, not during pretrial *Daubert* briefing.  Parties have the liberty to pick and choose which witnesses they will call at trial and on what topics those witnesses will testify.  At this juncture, no one has provided any testimony at trial so Defendants' arguments that his testimony is cumulative is premature.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks this Court to Deny Defendant's Motion at ECF 742.

Dated: November 3, 2025              Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc.,
by its attorneys

*/s/ Ridge Mazingo*
Ridge Mazingo (phv208402)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
E-mail: rmazingo@motleyrice.com

James Y. Meinert (ct31637)

11

Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street, Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street, Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street, Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004

12

Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9013
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff
Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

13

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, the foregoing motion was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s/ Ridge Mazingo
Ridge Mazingo

1