# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, , TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>*Defendants*. | Civil Action No. 3:21-cv-00933-VDO<br><br><br>November 3, 2025<br><br><br>**FILED UNDER SEAL** |

## PLAINTIFF'S UNREDACTED OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE BRUNO PIGOTT'S OPINIONS AND TESTIMONY

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................................ iii

EXHIBIT LIST ............................................................................................................................. v

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT ................................................................................................................................. 4

    A.  Mr. Pigott's Opinions Provide Timely Rebuttal. ............................................................... 4

    B.  Mr. Pigott's Opinions are Relevant, and are Based on a Reliable Methodology
        Using Relevant Information. ............................................................................................... 6

    C.  Mr. Pigott Provides Helpful Information to the Fact Finder Relevant to a
        Determination of Whether Defendants Violated the Clean Water Act. ............................. 9

    D.  Mr. Pigott's Opinions Will Assist the Fact Finder and Defendants are Not
        Significantly Prejudiced by Mr. Pigott's Opinions. ......................................................... 11

    E.  Defendants' Arguments Based on the Relevance of Mr. Pigott's Testimony
        Regarding Requirement to Consider Climate Change are Premature. .............................. 11

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002).................................................................................... 3

*Cortes-Irizarry v. Corporacion Insular De Seguros*,
111 F.3d 184 (1st Cir. 1997)................................................................................... 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
43 F.3d 1311 (9th Cir. 1995) ................................................................................. 12

*E.E.O.C. v. Beauty Enters., Inc.*,
361 F. Supp. 2d 11 (D. Conn. 2005).................................................................... 8, 10

*In re E. I. du Pont de Nemours and Co. C-8 Pers. Inj. Lit.*,
345 F.Supp.3d 897 (S.D. Ohio 2015) ...................................................................... 7

*In re Rezulin Prod. Liab. Litig.*,
369 F. Supp. 2d 398 (S.D.N.Y. 2005)....................................................................... 7

*Kirksey v. Schindler Elevator Corp.*,
No. CV 15-0115-WS-N, 2016 WL 5213928 (S.D. Ala. Sept. 21, 2016) ................................. 13

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)............................................................................................ 4, 7

*Manzo v. Stanley Black & Decker, Inc.*,
No. 13-CV-3963 (MKB), 2024 WL 5319230 (E.D.N.Y. Mar. 20, 2024) ................................. 7

*Metavant Corp. v. Emigrant Sav. Bank*,
619 F.3d 748 (7th Cir. 2010) .................................................................................. 8

*Old Gate Partners, LLC v. Paddock Enters., LLC*,
No. 3:18-CV-01657 (JCH), 2024 WL 3520168 (D. Conn. May 30, 2024)........................... 3, 4

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) .................................................................................. 5

*SLSJ, LLC v. Kleban*,
277 F. Supp. 3d 258 (D. Conn. 2017)..................................................................... 3, 4

*Stilwell v. Smith & Nephew, Inc.*,
482 F.3d 1187 (9th Cir. 2007) ............................................................................... 13

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
No. 21-cv-03496-AMO, 2024 WL 1975456 (N.D. Cal. 2024) .............................................. 8

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991).............................................................................................. 4, 9

*United States v. Rankin*,
No. 3:18-CR-272 (JAM), 2021 WL 5563996 (D. Conn. Nov. 27, 2021) ................................ 10

**EXHIBIT LIST**

Exhibit A.      Bodine Expert Report*

Exhibit B.      Uhlmann Expert Report*


\* Documents denoted with an asterisk are being filed under seal pursuant to this Court's Protective Order (ECF 7)

Plaintiff Conservation Law Foundation, Inc. ("CLF") respectfully submits the following in opposition to Defendant's Motion to Exclude Bruno Pigott's Opinions and Testimony, ECF 726 and Memorandum in Support, ECF 782.

**INTRODUCTION**

Unlike the expert witnesses whose reports he is rebutting, Bruno Pigott is not an attorney and does not offer legal opinions on the ultimate issues presented in this matter. Instead, he provides a helpful rebuttal of Defendants' legal arguments presented as expert opinions by Susan Bodine and David Uhlmann. To do so, he draws upon forty years of practical experience as a public official at both the state and federal level, with much of that experience working for environmental regulatory agencies applying the Clean Water Act through drafting and interpreting regulations, permits, guidance documents and memoranda. Pigott Rebuttal Expert Rpt., ECF 785, at 2.

If the Court precludes Mr. David Uhlmann's and Ms. Susan Bodine's testimony, as CLF has moved, then Mr. Pigott's rebuttal testimony is not necessary. If, however, the Court allows these two defense experts to testify, Mr. Pigott's testimony will assist the fact finder in understanding the interplay between state and federal stormwater regulation, as well as the mix of guidance documents as they relate to state and EPA interpretation of the federal Clean Water Act, regulations, and enforcement and permit decisions. Mr. Pigott's testimony will also assist the fact finder in understanding that regulatory agencies should and do require consideration of climate mitigation in Clean Water Act permits. In contrast to Ms. Bodine's and Mr. Uhlmann's expert reports, Mr. Pigott does not offer his own legal interpretations but provides practical examples of how regulatory agencies apply the Clean Water Act. His methodology is a straightforward

1

application of his extensive experience and review of public documents, including EPA guidance documents and memoranda. *Id.* at 4.

At the core of Mr. Pigott's testimony is his assertion that permit conditions requiring the exercise of best management practices, best engineering practices, and best industry practices (collectively "best industry practices") as well as narrative requirements are enforceable when included in Clean Water Act permits. He provides examples from his experience in Indiana and at the EPA to support this assertion. Mr. Pigott does not testify to the ultimate legal question of whether Defendants' have violated their General Permit for Discharge of Stormwater Associated with Industrial Activity ("Permit"). Instead, he provides the fact finder with a helpful roadmap for navigating the mix of practical, policy and regulatory considerations that are relevant to a regulator's decisions regarding enforcement of Clean Water Act permits such as the one at issue in this matter.

While Mr. Pigott provides references to relevant regulations, the statute itself, and case law interpreting Clean Water Act permits generally, Mr. Pigott does so to help the fact finder understand the basic legal construct, not to suggest a specific conclusion resulting from the application of water quality law to the facts of this case. If the testimony of Ms. Bodine and Mr. Uhlmann is allowed, Mr. Pigott's testimony provides a clear rebuttal of their legal conclusions that such enforcement is not authorized under the Clean Water Act.

## LEGAL STANDARD

"Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 264 (D. Conn. 2017) (quoting *Washington v.*

2

*Kellwood Co.*, 105 F.Supp.3d 293, 304 (S.D.N.Y. 2015)).  "A witness is qualified where he or she has 'superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'"  *Old Gate Partners, LLC v. Paddock Enters., LLC*, No. 3:18-CV-01657 (JCH), 2024 WL 3520168, at *6 (D. Conn. May 30, 2024) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).  "One may become qualified as an expert based on practical experience, so that professional education is not a prerequisite."  *SLSJ, LLC*, 277 F. Supp. at 266 (citing *United States v. Angelilli*, 660 F.2d 23, 39–40 (2d Cir.1981)).  "Alternatively, formal education may also suffice to qualify a witness as an expert in a particular field, and the lack of extensive practical experience directly on point does not necessarily preclude the expert from testifying."  *Id.* (internal quotation and citation omitted).  "When considering an expert's 'practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth.'"  *Id.* (citing *Valentin v. New York City*, No. 94-CV-3911 (CLP), 1997 WL 33323099, at *14 (E.D.N.Y. Sept. 9, 1997)).

"If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable."  *Old Gate Partners, LLC* 2024 WL 3520168, at *6.  In *Daubert*, the Supreme Court identified four factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation' " and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 593–94 (internal quotations and citations omitted).  However, these factors are not a

"definitive checklist or test." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.*

"In addition to ensuring that expert testimony is reliable, the court must decide whether the expert's testimony is relevant, i.e., whether it will 'help the trier of fact.'" *Old Gate Partners, LLC*, 2024 WL 3520168, at *7 (quoting *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016)). "[E]xpert testimony is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 403).

"Furthermore, doubts about the usefulness of an expert's testimony, should be resolved in favor of admissibility." *SLSJ, LLC*, 277 F. Supp. 3d at 264 (quoting *Canino v. HRP, Inc.*, 105 F. Supp. 2d 21, 28 (N.D.N.Y. 2000)). While "[a]s a general rule an expert's testimony on issues of law is inadmissible," *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), "[c]ourts generally permit expert corporate governance testimony," provided the expert does not "track the language of the statute or the law that the defendants are accused of violating." *SLSJ, LLC*, 277 F. Supp. 3d at 268 (internal quotations and citations omitted).

## ARGUMENT

### A.  Mr. Pigott's Opinions Provide Timely Rebuttal.

Defendants assert that Mr. Pigott's expert rebuttal report presents affirmative opinions outside the scope of permissible expert rebuttal. Mem. in Support of Defs.' Mot. to Preclude Bruno Pigott ("Mem."), ECF 782 at 8-12. To make this argument, Defendants ignore the fact that a central premise of Mr. Uhlmann's and Ms. Bodine's testimony is their legal argument that the Permit's

4

requirements to address climate mitigation are not enforceable and that  "best management practices" or "best industry practices" (collectively "best industry practices")  as used in the Permit do not include consideration of climate change driven risks. Bodine Rpt., Ex. A, ¶¶ 24-25, 27; Uhlmann Rpt., Ex. B, at ¶¶ 19-22. Mr. Pigott rebuts these arguments, applying his extensive experience with Clean Water Act enforcement at both the state and federal level, and drawing on EPA guidance and memoranda, to reach opposite conclusions.[1] "Federal Rule of Civil Procedure 26 allows rebuttal expert testimony 'intended solely to contradict or rebut evidence on the same subject matter identified by another party.'" *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 1405185, at *2 (S.D.N.Y. Apr. 14, 2021) (citations omitted); *see also Sci. Components Corp. v. Sirenza Microdevices, Inc.,* No. 03 CV 1851(NGG)(RML), 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008) (expert rebuttal testimony allowed where the testimony was within scope of testimony being rebutted and provided helpful background information).

More specifically, Mr. Pigott opines that the Permit conditions require consideration of climate change risks and that these conditions are enforceable. Pigott Rebuttal Expert Rpt., ECF 785, at 5-7.  Mr. Pigott's expert rebuttal report explains in detail how the relevant statute, regulations, permit and regulatory agency practice support the conclusion that an NPDES stormwater permit requiring the use of "best industry practice: or "good engineering practice" necessarily encompasses consideration of climate change-driven risks such as extreme precipitation, storm surge, flooding and sea-level rise. *Id.* at 11-12. He also draws on those same

---

[1] Defendants' argument that Mr. Pigott's rebuttal testimony should be excluded because it does not address Mr. Uhlmann's or Ms. Bodine's opinions related to the Resource Conservation and Recovery Act ("RCRA"), Mem. at 11, is a red herring. Rebuttal testimony can be partial and still be admissible. Expert testimony, including rebuttal testimony, can be partial and still be admissible.  *See Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010) ("Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible.").

5

sources and his experience to opine that such best industry practice requirements and narrative requirements are enforceable. *Id.* at 19. Courts routinely permit expert testimony offered to help a fact finder understand complex regulatory programs. *See Bilzerian*, 926 F.2d at 1294 (upholding trial court decision to allow expert to explain securities regulations where testimony limited to background information, not ultimate legal issue regarding whether securities laws were violated). In this instance, Mr. Pigott's testimony provides an independent analysis helpful to a fact finder, an analysis that directly rebuts the opinions of Defendants' experts.

Further, Mr. Pigott's rebuttal testimony was only necessary due to Defendants' effort to provide legal conclusions disguised as expert opinions through Mr. Uhlmann and Ms. Bodine. If this Court precludes Mr. Uhlmann and Ms. Bodine from testifying as experts, as CLF is seeking, then Mr. Pigott's testimony is not necessary. Having opened the door to Mr. Pigott's rebuttal by offering expert testimony contradicting CLF's presentation of the law, Defendants cannot now reasonably argue that CLF should be precluded from providing expert rebuttal testimony on the same issue.

### B. Mr. Pigott's Opinions are Relevant, and are Based on a Reliable Methodology Using Relevant Information.

Defendants assert a flawed premise, namely that Mr. Pigott's opinions could only be relevant to the extent based on a review of the specific Clean Water Act Permit applicable to Defendants' New Haven facility, the "2018/2021 Permit." Mem. at 12-13. To the contrary, Mr. Pigott provides a relevant opinion based on his experiences, both as the administrator of a state-based program implementing the National Pollutant Discharge Elimination System ("NPDES"), and as the EPA official responsible for overseeing the NPDES program nationally. An expert's testimony does not need to be precisely tailored to the subject matter of the dispute to be helpful to the fact finder. *See Manzo v. Stanley Black & Decker, Inc.*, No. 13-CV-3963 (MKB), 2024 WL

5319230 (E.D.N.Y. Mar. 20, 2024) ("An expert need not be precluded from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute.") (citations and quotations omitted)).

In addition, extensive practical experience applied to the facts and circumstances of a case is a sufficient basis to allow a person to testify as an expert. Experience-based testimony satisfies Rule 702 admissibility requirements. *See Kumho Tire Co., Ltd.*, 526 U.S. at 141, 150-51; *In re E. I. du Pont de Nemours and Co. C-8 Pers. Inj. Lit.*, 345 F.Supp.3d 897, 902-907 (S.D. Ohio, 2015) (finding that a state of the art or state of the knowledge expert who intends to provide experience-based testimony or an experience-based opinion may well assist the trier of fact in understanding the evidence and/or in determining a fact in issue).

The Permit at issue is a federally enforceable Clean Water Act permit issued based on the State of Connecticut's federally authorized NPDES program. Mr. Pigott relies on his general experience implementing water pollution control permit programs at the state level and the overarching industrial stormwater management program at the federal level to rebut the assertions of Defendants' experts that these programs do not require consideration of climate change-derived risks. Mr. Pigott's reference to other stormwater pollution control permits and programs is not an "apples to oranges" comparison, as Defendants suggest, Mem. at 14, 16, but is more akin to a comparison of different varieties of apples, in which the differences between the programs being analyzed are not significant for the purposes of understanding the opinion. *See In re Rezulin Prod. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) ("A crucial consideration in evaluating the admissibility of expert testimony is whether the conclusions flow reliably from the premises. As the Supreme Court has explained, '[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" (quoting *Gen. Elec. Co. v. Joiner*, 522

7

U.S. 136 (1997)). In this case, there is no significant "analytical gap" between the regulatory decisions and permits that Mr. Pigott analyzes and the Connecticut industrial stormwater regulatory program.

Mr. Pigott's methodology is well accepted for the type of expert testimony he provides. Namely, he reviewed relevant guidance documents, memoranda, permits, regulations and enforcement actions related to water pollution control regulation under the Clean Water Act and applied his professional experience working in this area to provide an opinion that will be useful to a fact finder in navigating this complex regulatory program. Rule 702 does not require that every expert opinion be based upon peer review, publication, or widespread acceptance in the scientific community. The reliability that Rule 702 and the cases interpreting Rule 702 require, can be met in this instance by virtue of the fact of Mr. Pigott's background, review of relevant public documents, and his careful analysis and response to the opinions of Mr. Uhlmann and Ms. Bodine. "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data." *Metavant Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (allowing expert to testify on whether a corporation's performance was "commercially reasonable" based on his experience in business sector); *see also Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.,* No. 21-cv-03496-AMO, 2024 WL 1975456, at *11 (N.D. Cal. 2024) (allowing an expert testimony that "will aid the fact finder to understand the regulatory framework," but precluding expert from offering an ultimate opinion about a party's compliance with the law); *E.E.O.C. v. Beauty Enters., Inc.*, 361 F. Supp. 2d 11, 19-20 (D. Conn. 2005) (holding that expert's non-scientific, experience-based expert opinion was reliable and admissible because expert testimony need not rely on scientific testing to be valid). Even a casual review of Mr. Pigott's forty years of professional experience, which includes terms as a former Indiana Department of Environmental

Management Commissioner, and as Deputy, and then Acting, Administrator for Water of EPA, makes clear that he has a level of professional experience that provides significant indicia of reliability. Further, the materials he relies upon are governmental documents and decisions. In his opinion, Mr. Pigott provides clear and logical explanations for why each of these documents contradicts the opinions of Defendants' experts Mr. Uhlmann and Ms. Bodine.

Defendants' arguments are best viewed as challenges to weight that should be given to Mr. Pigott's expert rebuttal opinion and so go to the scope of his testimony, not whether his testimony should be precluded entirely. Defendants could, for instance, argue that there are differences between the examples and sources of information cited by Mr. Pigott on the one hand, and the New Haven Permit on the other, in their effort to diminish Mr. Pigott's opinions. To the extent that these differences are even meaningful, they do not rise to the level of making his testimony irrelevant. To the contrary, Mr. Pigott's testimony will assist the trier of fact in understanding the regulatory context in which the New Haven Facility Permit should be considered and ultimately, in understanding that government agencies can, should and often do enforce narrative requirements including best industry practices and that responsible industrial facility operators take climate change-derived extreme weather, storm surge, flooding, and sea-level rise into account when designing, constructing and operating water pollution control facilities.

### C. Mr. Pigott Provides Helpful Information to the Fact Finder Relevant to a Determination of Whether Defendants Violated the Clean Water Act.

Contrary to Defendants suggestion that Mr. Pigott offers legal opinions, or that he has misconstrued the law, Mr. Pigott instead provides important context regarding the interpretation and implementation of the Clean Water Act by state regulatory agencies and EPA. Experts like Mr. Pigott, who provide testimony regarding complex federal and state regulatory programs may be qualified to testify at trial. *See, e.g.*, *Bilzerian*, 926 F.2d at 1294–95 (experts should not testify

to legal conclusions but it was not error for an expert to testify to the background of securities regulation, filing requirements and hypotheticals without testifying that the defendant's behavior violated the securities law); *see also Beauty Enters., Inc.*, 361 F. Supp. 2d at 20 (D. Conn. 2005) (allowing expert "familiar with applicable federal and state safety codes and regulations, including Uniform and International Fire and Building Codes, National Electrical Code, and OSHA" to testify regarding company's compliance with safety program in order to assist trier of fact); *see also United States v. Rankin*, No. 3:18-CR-272 (JAM), 2021 WL 5563996, at *2 (D. Conn. Nov. 27, 2021) ("an expert may properly testify on 'background legal concepts and related practices' that are important to the jury's determination of facts, and '[t]his is especially true where there are background or subsidiary principles of law that may govern or influence the parties' conduct but that are not directly at issue with respect to the law that will form the basis for final jury instructions.'") (quoting *Coan v. Dunne*, 2019 WL 2169879, at *1 (D. Conn. 2019)).

As Defendants acknowledge, Mr. Pigott does not offer any opinions as to the ultimate issue of whether Defendants complied with the Permit at issue in this case or whether the Defendants violated any statute, rule, or regulation.  Mr. Pigott does not intrude on the purview of the Court by applying his experience to the various guidance documents, memoranda, regulatory provisions, permit decisions and enforcement actions that he reviewed in forming expert testimony to clarify regulatory agency interpretations and practice as necessary to rebut the assertions of Defendants' experts Mr. Uhlmann and Ms. Bodine. Further, as noted above, if Ms. Bodine's and Mr. Uhlmann's testimony is precluded, as CLF is seeking, then Mr. Pigott's rebuttal testimony is unnecessary.

**D. Mr. Pigott's Opinions Will Assist the Fact Finder and Defendants are Not Significantly Prejudiced by Mr. Pigott's Opinions.**

Contrary to Defendants' assertions, Mr. Pigott's opinions would assist the jury in understanding the complex regulatory framework of the Clean Water Act as necessary to rebut the legal arguments presented as expert testimony by Mr. Uhlmann and Ms. Bodine regarding the enforceability of NPDES permit provisions referencing best industry practice. Defendants have failed to articulate any significant risk of unfair prejudice. Instead of confusing the jury or prejudicing Defendants due to his former titles[2], Mr. Pigott's testimony will assist the jury in understanding the reasoning used by regulatory agencies when writing permits or taking enforcement actions. Defendants have failed to offer a basis for their argument that Mr. Pigott's testimony will confuse the fact finder, and testimony about the way regulatory agencies apply the Clean Water Act is not inherently prejudicial. To the extent that Defendants are able to articulate any unfair prejudice, they should seek a limiting instruction rather than complete exclusion.

**E. Defendants' Arguments Based on the Relevance of Mr. Pigott's Testimony Regarding Requirement to Consider Climate Change are Premature.**

Defendants seek to preclude the expert testimony of Mr. Pigott as irrelevant in part based on their contention that the 2018/2021 permits for the New Haven Terminal do not require Defendants to consider the effects of climate change. Mem. at 12. However, because the issue of what those permits require is a contested issue in this case, the fact that Mr. Pigott's expert opinions do not support Defendants' legal theories does not provide a basis for excluding Mr. Pigott's opinions under Fed. R. Evid. 702 and *Daubert*. Instead, in assessing whether an expert

---

[2] The irony in Defendants' argument that a jury may assign "talismanic significance" to Mr. Pigott's testimony due to his former roles as a state environmental agency commissioner and EPA official, *see* Mem. at 28, is that he is rebutting Mr. Uhlmann, who was himself a former high-ranking EPA and U.S. Department of Justice official. If Mr. Pigott's testimony is precluded due to his former titles, then the same analysis should result in the preclusion of Mr. Uhlmann's testimony.

opinion testimony is "relevant to the task at hand" under Rule 702, the court considers whether the proffered testimony "logically advances a material aspect of *the proposing party's case*."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (emphasis added).  That test is met here, and Defendants' motion should be denied.

First, the question of whether the permits for the New Haven terminal require Defendants to consider the effects of climate change is a core issue in this case. In 2023, Judge Meyer denied Defendants' motion for summary judgment, which was premised on the argument that the current permit for the terminal did not require consideration of climate change, either explicitly or as a best industry practice.  Order Denying Defs.' Mot. for Partial Sum. J., ECF 302.  In so doing, as this Court recently recognized, Judge Meyer "held that whether consideration of climate change was an 'industry best practice' remained an issue of material fact *that could not be resolved as a matter of law*."  ECF 641 at 4 (emphasis added).  In a more recent order denying Defendants' motion to stay, the Court described Plaintiff's "central claim in this action" as "[t]hat the now-governing General Permit required the Defendants to consider the effects of climate change in developing and implementing the Stormwater Pollution Prevention Plan ("SWPPP") for Defendants' New Haven bulk fuel storage terminal, and that the Defendants' failed to comply with this requirement."  ECF 641 at 2.  Notably, Defendants are now proposing to (again) address this central claim in a motion for summary judgment.  *See* Defs.' Letter Req. for Prefiling Conference on Mot. for Summ. J., ECF 806. Briefing on the Parties' anticipated cross-motions for summary judgment has not yet been set.

Second, a *Daubert* motion is an evidentiary motion, not a dispositive motion.  The standard for determining questions of law at summary judgment under Rule 56 is different from the evidentiary standard that governs the admissibility of expert testimony under Rule 702 and

*Daubert*.  For that reason, courts are instructed to "exercise caution" when issues that must be addressed at summary judgment intersect with *Daubert* motions.  *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997).  The court should not, for example, decide the validity of a party's claim in the context of ruling on an evidentiary issue.  *See, e.g.*, *Kirksey v. Schindler Elevator Corp.*, No. CV 15-0115-WS-N, 2016 WL 5213928, at *11 (S.D. Ala. Sept. 21, 2016).  As applied here, the Court should reject Defendants' invitation to either accept the validity of their legal position on the interpretation of the permits or, alternatively, to decide that contested issue in the context of a *Daubert* motion without affording the parties an opportunity to fully brief that issue (and others) on cross-motions for summary judgment under Rule 56.  Instead, because there is "a link between the expert's testimony and the matter *to be proved[,]*" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (citation omitted) (emphasis added), the relevance test is met for purposes of Rule 702 and Mr. Pigott's testimony is admissible.

Finally, to the extent Defendants' motion to exclude Mr. Pigott's testimony is premised on the outcome of their anticipated motion for summary judgment, their motion is premature and should be denied at this time.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to Deny Defendant's Motion.

Dated: November 3, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

13

*/s/ David K. Mears*
David K. Mears (phv 208829)*
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

Ridge Mazingo (phv208402)*
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Email: rmazingo@motleyrice.com

Linda Singer (phv208339)
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Email: lsinger@motleyrice.com

Michael Pendell (ct27656)
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
Email: mpendell@motleyrice.com

James Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
Tel: (617) 850-1707
E-mail: jmeinert@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

14

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 622-3020
Tel: (802) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
E-mail: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: 832-671-6381
E-mail: chancethelawyer@gmail.com


*Attorneys for Plaintiff Conservation
Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

15