FILED UNDER SEAL

# EXHIBIT B

FILED UNDER SEAL

**CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER**

**Expert Report of David M. Uhlmann**
**Page 9**

greenhouse gas emissions were endangering public health and the environment.[7] The

endangerment finding allowed EPA to regulate greenhouse gas emissions from mobile sources

(*i.e.*, cars and trucks)[8] and stationary sources (*i.e.*, power plants and refineries).[9] EPA also has

required climate disclosures under the Clean Air Act and other environmental laws.[10]

19.     EPA also has begun addressing climate resiliency and encouraging facilities to

plan for climate risks.[11] As with climate mitigation, however, Congress has not provided EPA

with statutory tools to require climate resiliency efforts, which leaves the Agency limited in its

ability to require climate resiliency as part of regulatory programs. These limitations are

especially acute in statutes like the Clean Water Act and RCRA, which speak even less directly

to climate change than the Clean Air Act.

20.     The Clean Water Act and RCRA do not mention climate change, and I do not

recall any regulations promulgated by EPA under the Clean Water Act or RCRA that impose

---

[7] Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15, 2009).

[8] *See* EPA, Regulations for Greenhouse Gas Emissions from Passenger Cars and Trucks, https://www.epa.gov/regulations-emissions-vehicles-and-engines/regulations-greenhouse-gas-emissions-passenger-cars-and (last updated Feb. 28, 2025).

[9] *See* EPA, Greenhouse Gas Standards and Guidelines for Fossil Fuel-Fired Power Plants, https://www.epa.gov/stationary-sources-air-pollution/greenhouse-gas-standards-and-guidelines-fossil-fuel-fired-power (last updated June 18, 2025).

[10] *See* EPA, Greenhouse Gas Reporting Program (GHGRP), https://www.epa.gov/ghgreporting (last updated May 22, 2025).

[11] *See, e.g.*, EPA, 2024–2027 Climate Adaptation Plan (June 2024), https://www.epa.gov/system/files/documents/2024-06/epas-2024-2027-climate-adaptation-plan-508-compliant.pdf; *see also* EPA, Climate Adaptation Plans, https://www.epa.gov/climate-adaptation/climate-adaptation-plans#previousCAPs (last updated Feb. 12, 2025) (linking to previous Climate Adaptation plans from 2012, 2013, 2014, and 2021).

FILED UNDER SEAL

**CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER**

**Expert Report of David M. Uhlmann**
**Page 10**

express requirements relating to climate change on regulated industries. As a result, in my opinion, EPA would not have a basis to allege violations of the Clean Water Act or RCRA based on the failure to plan for climate change, absent regulations that did not exist when the Amended Complaint was filed in 2021 or applicable permits that include specific climate resiliency requirements.

21.     Since Plaintiff filed its Amended Complaint, EPA has taken steps to enhance climate enforcement, including imposition of climate resiliency measures as part of settlement agreements. On September 28, 2023, when I served as the EPA Assistant Administrator for Enforcement and Compliance Assurance, I issued EPA's Climate Enforcement Strategy.[12] In that document, I directed "all EPA enforcement and compliance offices to address climate change, whenever appropriate, in every matter within their jurisdiction." Pursuant to the Climate Enforcement Strategy, EPA's enforcement and compliance programs were required to prioritize enforcement and compliance actions to mitigate climate change; include climate adaptation and resilience in "case conclusions" (*e.g.*, settlement agreements) whenever appropriate; and provide technical assistance to state and local partners to achieve climate-related solutions.

22.     Significantly, however, EPA's Climate Enforcement Strategy recognized the relative lack of statutory and regulatory requirements relating to climate resiliency, noting that EPA's enforcement and compliance should work to incorporate climate resiliency measures into "agreed upon case resolutions," such as settlement agreements, with regulated entities. EPA did not direct its enforcement and compliance divisions to identify violations of environmental

---

[12] Climate Enforcement Strategy, *supra* note 2.

FILED UNDER SEAL
CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

**Expert Report of David M. Uhlmann**
**Page 11**

statutes and regulations, including the Clean Water Act and RCRA, that were related to entities' failures to adapt to or plan for climate change-related impacts to their operations.

23.    In furtherance of the Climate Enforcement Strategy, EPA issued a June 12, 2024, memorandum titled *Addressing Climate Vulnerabilities in Water Enforcement Remedies* ("EPA Water Enforcement Memo")[13] that directed EPA's water enforcement staff to ensure that entities in violation of the Clean Water Act "consider climate change in taking the steps needed to return to, and maintain, compliance" with the Clean Water Act. The EPA Water Enforcement Memo notes that "[s]ettlements resolving CWA … enforcement actions should incorporate the remedial measures necessary to address vulnerabilities to climate change that will ensure long-term compliance" with the Clean Water Act. The EPA Water Enforcement Memo recommends specific resilience and adaptation measures, including several measures related to stormwater, that entities that are in violation of other aspects of the Clean Water Act can implement to address climate change vulnerabilities moving forward.

24.    The EPA Climate Enforcement Strategy and the EPA Water Enforcement Memo demonstrate that, through the end of the Biden Administration, EPA's enforcement program only addressed climate resiliency in the context of the Clean Water Act as a settlement term. Despite the fact that climate enforcement was one of my top priorities, EPA did not pursue enforcement

---

[13] Joseph Theis, Acting Director, Water Enforcement Division, Office of Civil Enforcement, Memorandum Re: Addressing Climate Vulnerabilities in Water Enforcement Remedies (June 12, 2024), https://www.epa.gov/system/files/documents/2024-06/addressingclimatevulnerabilitiesinwaterenfremedies.pdf. The EPA Water Enforcement Memo recognizes that "[t]he design of compliance remedies has traditionally been based on historic climate and hydrologic patterns, but historic weather patterns and data are no longer adequate to accurately characterize current or future conditions in light of a changing climate." *Id.* at 3.