**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| Plaintiff, | Case No: 3:21-cv-00933-VDO |
| v. | |
| EQUILON ENTERPRISES LLC, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 17, 2025 |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE**
**THE EXPERT TESTIMONY OF MATTHEW BARLOW, PH.D.**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ......................................................................................................... 1

II.    ARGUMENT................................................................................................................. 1

      A.     Dr. Barlow's opinions do not "fit" this case and will not assist the finder of fact in
              any way .................................................................................................................. 3

      B.     CLF essentially concedes that its intended use of Dr. Barlow's opinions is
              improper and should be excluded under Rule 403.................................................. 8

III.   CONCLUSION.............................................................................................................. 8

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC (collectively, "Defendants") submit this reply in support of their Motion to Preclude the Expert Testimony of Matthew Barlow, Ph.D.

## I.    INTRODUCTION

The problem with Plaintiff Conservation Law Foundation's ("CLF") Opposition (ECF 821) can be summed up in one sentence: It embraces Dr. Barlow's generalizations of hypothetical risks to New Haven while providing zero evidence that Dr. Barlow's analysis can be reliably linked to the Terminal. Rather than demonstrate that Dr. Barlow reliably applied his methodology to the issues in this case, CLF embraces generalized statements about climate risks to New Haven and invites the jury to assume those risks necessarily implicate the Terminal. Dr. Barlow admits he has not reviewed the Permit[1] or the Terminal's Stormwater Pollution Prevention Plan ("SWPPP"), offers no opinion on the Terminal's stormwater handling or resilience, misapprehends the flood zone predictions of CLF's own expert, and projects conditions decades beyond any conceivable permitting horizon. CLF's failure to bridge these gaps underscores the lack of "fit" required under Rule 702 and highlights the risk of unfair prejudice and juror confusion under Rule 403. The Court should exclude Dr. Barlow's testimony in its entirety.

## II.    ARGUMENT

CLF dedicates a significant portion of its argument to critiquing Defendants' theory of the case and asserting that Defendants' objections regarding Dr. Barlow's unfamiliarity with the

---

[1] The applicable permit when CLF filed this lawsuit was the 2018 CT DEEP General Permit, which was renewed without substantive changes in 2021. CT DEEP terminated the 2018/2021 Permit on October 1, 2025, and the Terminal is currently regulated by a new permit that became effective on November 1, 2025. The new CT DEEP permit now includes—for the first time—"climate change" consideration requirements. *See generally* https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwater-gp#Permit%20Documents.

Permit are misplaced, claiming the Permit is not the sole relevant issue. *See* ECF 821, Opp. at 5-

7, 9. This position fundamentally misapprehends Defendants' Motion. The core issue is that Dr.

Barlow's opinions lack relevance to the Permit, the SWPPP, or any other governing document, as

he admits he has not reviewed them. *See* ECF 732-5, Ex. D Barlow Dep. at 63:21-25 ("Q. Do

you have any opinions in this case as to what's required under any Connecticut permit? A. I do

not have opinions on permitting. Q. Or what is required under any permit? A. Or what is

required."); *id.* at 126:16-22 ("Q. You're not going to offer any opinions in this case as to

whether or not, one way or another, the [SWPPP] in connection with the facility in this case is

compliant or not compliant? A. I will not be offering opinions on that, yes."). Similarly, Dr.

Barlow's testimony cannot establish a danger to the Terminal that would mandate specific

actions under "best industry practice," because he fails to connect his generalized analysis to any

actual or imminent threat to the Terminal or even to New Haven as a whole. *Id.* at 197:22-25

("Q. Do you have any knowledge whatsoever as to how the facility at issue in this case handles

precipitation or stormwater? A. Not really, no."); *id.* at 119:23-120:6 ("Q. And, again, you're not

offering any opinions in this case as to whether or not the facilities in New Haven Harbor are

able to withstand any increase in precipitation or particular storm, or storm surge, true? ... You're

not saying whether they can or can't; you have no opinions about that, right? A. That's correct.").

Without a foundational connection to either the Permit or the Terminal, Dr. Barlow's

opinions do not "fit" the facts of this case and thus cannot assist the jury. *See* Fed. R. Evid. 702

("A witness who is qualified as an expert ... may testify in the form of an opinion or otherwise if

the proponent demonstrates to the court that it is more likely than not that [the criteria for

admissibility are met]"); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)

("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not

only relevant, but reliable."); *Pugliano v. U.S.*, 315 F. Supp. 2d 197, 202 (D. Conn. 2004) (expert

testimony is only admissible if, among other things, it "reflects a reliable application of the

principles and methods to the facts of the case," and is adequately tied to the case such that it will

assist the jury, the so-called "fit" requirement). His opinions must be excluded in their entirety.

> **A.      Dr. Barlow's opinions do not "fit" this case and will not assist the finder of fact in any way**

Beyond complaining about Defendants' theory of the case, CLF makes essentially one

argument for why Dr. Barlow's testimony "fits" the facts of this case and will assist the trier of

fact: because sea level rise is dangerous and will affect New Haven generally, and since the

Terminal is in New Haven, Dr. Barlow's opinions are therefore helpful to the trier of fact. ECF

821, Opp. at 5, 8-9. According to CLF, "Dr. Barlow's expert opinion addresses the necessary

predicates about the impacts of climate change on the Connecticut coast where the New Haven

terminal is located." *Id.* at 8. CLF further contends that "whether Dr. Barlow has reviewed the

SWPPP in this case is irrelevant to his opinion about the state of climate change in the New

Haven area." *Id.*

While CLF's affirmative arguments misunderstand Rule 702, as discussed below, the

most striking aspect of CLF's Opposition is its omissions. CLF makes *no* attempt to argue that

Dr. Barlow, or any of its other experts, will link the hypothetical dangers he discusses to the

Terminal. Instead, CLF merely contends that generalized dangers to New Haven somehow

impact Defendants' obligations under the Permit, without any showing that those dangers are

relevant to the Terminal itself. *See generally id.* Indeed, CLF fails to mention Dr. Barlow's

mistaken belief that the Terminal would fall within the flood zone predicted by the analyses of

one of CLF's own experts, ***when in fact it would not***. *See id.*; *cf.* ECF 732-1, Memo. at 8-12.[2]

Nor does CLF attempt to address how Dr. Barlow's projections, which extend more than 25

years into the future, are relevant long after any possible Permit obligation would have expired.

*See generally* ECF 821; *cf.* ECF 732-1, Memo. at 13-14.

By failing to draw any of these critical connections, CLF has not met its burden to

demonstrate, by a preponderance of the evidence, that Dr. Barlow "reliabl[y] appli[es]…the

principles and methods to the facts of the case," as required by the recent amendments to Rule

702. *See Fleming v. Vill. of Rockville Ctr.*, 2025 WL 2774808, at *6 (E.D.N.Y. Sept. 24, 2025)

("Rule 702 was amended in 2023 'in response to court decisions that admitted expert testimony

too liberally.'"). Dr. Barlow's analyses, model methods, and publications fail to demonstrate any

danger to the Terminal. *See* ECF 732-5, Ex. D, Barlow Dep. at 197:22-25 ("Q. Do you have any

knowledge whatsoever as to how the facility at issue in this case handles precipitation or

stormwater? A. Not really, no."); *id*. at 121:18-21 ("Q. Did you look at any documents from any

bulk storage fuel terminal facility related to the impacts of storms? A. No."); *id*. at 119:23-120:6

("Q. And, again, you're not offering any opinions in this case as to whether or not the facilities in

New Haven Harbor are able to withstand any increase in precipitation or particular storm, or

storm surge, true? ... You're not saying whether they can or can't; you have no opinions about

that, right? A. That's correct."). This admission is pivotal, for without such connective testimony,

Dr. Barlow's opinions on general hypothetical threats of climate change to New Haven cannot

inform whether "best industry practice" would have required such considerations for the

Defendants' Terminal, because Dr. Barlow does not know whether an analysis of the Terminal

---

[2] CLF's expert, Dr. O'Donnell, admitted that his Connecticut Institute for Resilience & Climate Adaptation (CIRCA) model and his peer-reviewed publications show no flooding at the Terminal even under maximal sea level rise predictions and a once in a century storm event. *See* ECF 713-5, Ex. D, O'Donnell Dep. Ex. 11.

would, in fact, reveal any threat. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005); *Daubert.*, 509 U.S. at 591 (citation omitted) ("[E]xpert testimony which does not relate to any issue in the case is not relevant and, *ergo*, non-helpful."); *Munn v. Hotchkiss Sch.*, 24 F.Supp.3d 155, 207 n.34 (D. Conn. 2014), *aff'd*, 724 Fed. Appx. 25 (2d Cir. 2018) ("I can think of no stronger basis for excluding testimony than proof that the testimony lacks any basis in fact. … Here, [the expert] could not demonstrate that data existed regarding the issues about which he was testifying as an expert, and as a result, he could not articulate a connection between his opinion and underlying facts, nor could he demonstrate that his methodology, if any, was sound."). Indeed, as a matter of logic, "best industry practice" cannot require addressing threats that do not exist or are irrelevant to a particular facility. Instead, Dr. Barlow's opinions serve only to unfairly prejudice the jury by alleging that climate change will negatively impact the "geographic area" where they live, despite there being no demonstrated connection to even hypothetical effects at the Terminal.

CLF's failure to respond to these arguments, coupled with its flawed affirmative arguments, demonstrates a fundamental misunderstanding of Defendants' Motion and CLF's obligations as the proponent of expert evidence under Rule 702. As emphasized by the recent amendments to Rule 702, ***it is Plaintiff's obligation*** to show, more likely than not, that Dr. Barlow's opinions will "assist" the trier of fact. Fed. R. Evid 702; *Fleming*, 2025 WL 2774808, at *6. Part of this obligation includes, as explained in Defendants' Motion, a requirement that the expert reliably apply their methodology to the facts of the case in a way that directly relates the testimony to an issue the trier of fact must decide. *Reynolds v. Arnone*, 645 F.Supp.3d 17, 22 (D. Conn. 2022) (citation omitted) ("This [fit] requirement means that [e]xpert testimony which does

not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citations and

quotations omitted).

It is this lack of "fit" that represents the flaw in Dr. Barlow's opinions. Defendants did not

argue that Dr. Barlow must be the sole expert to read the Permit, the SWPPP, or to have linked

his analysis to the Terminal in some reliable way. *See* ECF 732-1, Memo. at 11-18. Instead,

Defendants argued that Dr. Barlow must undertake some action-such as reviewing the Permit or

SWPPP, or linking his opinions to the Terminal-that would make his opinions relevant to the

facts of this case. Yet CLF itself concedes that Dr. Barlow did none of these things, insisting

instead that his generalized opinions about the risks of rising sea levels to New Haven are

sufficient proof that his opinion will "assist" the trier of fact. *See* ECF 732-1, Memo. at 5-6, 8-9.

This is precisely the "fatal" flaw Defendants' Motion identified: a demonstrable

connection to the actual Terminal at issue is essential to the "fit" requirement. Without it, Dr.

Barlow's generalized testimony cannot "fit" any relevant issue in this case. *See Pugliano*, 315 F.

Supp. 2d at 202. CLF essentially admits this in its motion by stating it intends to use Dr.

Barlow's testimony to show the dangers of climate change to the "geographic area" of New

Haven and then to invite the jury to assume this means there is a risk to the Terminal, without

any evidence from Dr. Barlow's model to support such an assumption. *See* ECF 821, Opp. at 7-9;

ECF 732-1, Memo. at 5-6, 8. At the very least, Dr. Barlow has done nothing to establish that

connection.

Absent this connection, CLF's suggestions for how it intends to use Dr. Barlow's

opinions demonstrate a level of generality that cannot satisfy Rule 702's "fit" requirement. Under

CLF's theory, because the Terminal is located in New Haven, any expert testimony regarding

risks to New Haven generally is "relevant" and fits the case, irrespective of any specific analysis

6

relating to the Terminal. Yet this theory has been resoundingly rejected under Rule 702 and represents precisely the type of evidence the "gatekeeper" is tasked with excluding, as it lacks any limiting principle and serves only to mislead a jury. *Wang v. Omni Hotels Mgmt. Corp.*, 3:18-cv-2000, 2025 WL 1782264, at *2 (D. Conn. June 27, 2025) (emphasizing the court's gatekeeping role). Taken to its logical conclusion, since the Terminal is also part of the United States, and the United States arguably may experience drought as a result of climate change, the Terminal would be required to assess the risks of drought. Such a requirement is untenable, for there is no evidence that the Terminal will suffer the consequences of drought.

So too here. Because Dr. Barlow cannot testify that sea level rise will actually affect the Terminal, and his model shows no such effect, there can be no "fit" to the claims actually at issue in the case. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d. Cir 2002). And without that "fit," Dr. Barlow's testimony cannot assist the jury, an issue requiring exclusion to avoid jury confusion. *Id.* at 267 ("[I]t is critical that an expert's analysis be reliable at every step."); *United States v. Donald*, No. 3:21-cr-8 (VAB) 2023 WL 6958797, at *17 (D. Conn. Oct 20, 2023)(citing *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F.Supp.2d 334, 350 (2d Cir. 2005))(the Daubert inquiry requires courts to "examine not only the validity of the expert's methodology, but also the analytical connection between the application of the expert's proffered theory to the facts at issue in the case").

The single case CLF cites in support of its relevance argument demonstrates *precisely* why Dr. Barlow's opinion should be excluded. On page eight of its Opposition, CLF cites *Snyder v. Wells Fargo Bank*, N.A., 594 F. App'x 710, 713 (2d Cir. 2014), the sole piece of caselaw it proffers to justify meeting its burden of proof on the relevance issue. Yet *Snyder* affirmed the

exclusion of an expert in largely similar circumstances *because their opinion was insufficiently specific to the policy at issue*. *See id.* There, the court stated:

> The record indicates that the purported basis for this opinion was the expert's experience working at Merrill Lynch, where such immediate implementation was authorized. But what Merrill Lynch policy allowed does not speak to Wachovia's policies—which the expert testified he had never read. Thus, an opinion so grounded was properly excluded as irrelevant.

*Id.* In short, even the lone case CLF cites in support of its position, much like the rest of its Opposition, underscores why Dr. Barlow's opinions must be excluded.

### B. CLF essentially concedes that its intended use of Dr. Barlow's opinions is improper and should be excluded under Rule 403

CLF's conclusory argument that Dr. Barlow's opinions are relevant and not unduly prejudicial under Rule 403 once again proves exactly the opposite point. Beyond repeating its previous relevance arguments, CLF states simply that "[t]he issue of whether climate change is or will in the future have an impact on natural hazards which the New Haven Terminal as a coastal facility is subject to, including rainfall, sea level rise, and storm surge, is a foundational issue in this case on which expert testimony is both necessary and highly relevant." ECF 821, Opp. at 10. In essence, CLF admits that it will use Dr. Barlow's testimony to mislead and inflame the jury by asserting that "best industry practice" required Defendants to consider the general dangers of climate change, even though Dr. Barlow offers no opinion that the Terminal itself was actually at risk from any of those dangers. This is exactly the sort of unduly prejudicial evidence Rule 403 was intended to bar. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403). Dr. Barlow's opinions should also be excluded under Rule 403.

### III. CONCLUSION

For the reasons stated in this reply and in Defendants' opening brief, the Court should exclude Dr. Barlow's opinions in their entirety.

Dated: November 17, 2025                  Respectfully submitted,

*/s/ Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

9

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE & DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

10

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com

11