**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> EQUILON ENTERPRISES LLC, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> Defendants. | Case No: 3:21-cv-00933-VDO <br><br><br> November 17, 2025 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE**
**THE EXPERT TESTIMONY OF JAMES O'DONNELL, Ph.D.**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Dr. O'Donnell's opinions are not relevant to the alleged Permit violations and will not assist the jury ................................................................................... 2

    B. Dr. O'Donnell's opinions cannot be reliably applied to the Terminal .................... 8

III. CONCLUSION ............................................................................................................. 10

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC ("Defendants") submit this reply in support of their Motion to Preclude the Expert Testimony of James O'Donnell, Ph.D., ECF 713.

## I.   INTRODUCTION

Plaintiff Conservation Law Foundation's ("CLF") Opposition (ECF 829) demonstrates exactly why Dr. O'Donnell must be excluded: it confirms that Dr. O'Donnell has no opinions specific or even connected to the Terminal or the applicable Permit,[1] as he must to meet Rule 702's "fit" requirement. An opinion about sea level rise generally is not inherently relevant to the Terminal without expert testimony connecting it. Yet CLF fails to meet its burden to cross the fatal gap between generalized climate assertions and the Terminal. CLF's Opposition cites no authority permitting an expert to inflame a jury with undifferentiated sea-level-rise narratives while admitting he knows nothing about the Terminal itself. And indeed, Dr. O'Donnell himself admits he "did no evaluation of the specific Equilon terminal" and "is not going to offer any opinions" on how sea level rise may affect it. Further, CLF's attempt to have the jury step in to infer the missing linkage on its own only underscores the methodological chasm presented by Dr. O'Donnell's opinions. Dr. O'Donnell's own modeling tool and peer-reviewed work—both generated outside of litigation—find no flooding at or near the Terminal under extreme weather scenarios. And yet CLF would invite the jury to infer a risk of catastrophic flooding to the Terminal, contrary to Dr. O'Donnell's own CIRCA modeling tool.[2] The Court's gatekeeping role

---

[1] The applicable permit when CLF filed this lawsuit was the 2018 CT DEEP General Permit, which was renewed without substantive changes in 2021. CT DEEP terminated the 2018/2021 Permit on October 1, 2025, and the Terminal is currently regulated by a new permit that became effective on November 1, 2025. The new CT DEEP permit now includes—for the first time—"climate change" consideration requirements. *See generally* Conn. Dept. of Energy & Environmental Protection, *Industrial Stormwater General Permit*. Available at: https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwater-gp#Permit%20Documents.

[2] CLF's defense of Dr. O'Donnell's methods and opinions puts it on the horns of a dilemma. It is undisputed that both his CIRCA model and his 2021 peer reviewed article show no flooding at the Terminal due to storm surge in a

1

is at its zenith here—CLF's Opposition doubles down on conjecture, abandons controlling law, and asks to try climate change writ large rather than the facts relevant to this facility and the requirements of the Permit. These fatal flaws cannot merely be addressed on cross examination but rather require exclusion by the gatekeeper charged with preventing the jury from hearing unreliable, irrelevant, and confusing testimony. Dr. O'Donnell's testimony should be excluded.

## II.     ARGUMENT

### A.     Dr. O'Donnell's opinions are not relevant to the alleged Permit violations and will not assist the jury

CLF makes a feeble attempt to argue that Dr. O'Donnell's opinions are actually relevant, but its arguments miss the mark, because none adequately explains how Dr. O'Donnell's general opinions apply to this Terminal and the alleged Permit violations. Indeed, CLF fails to meet its burden of demonstrating by a preponderance of the evidence that Dr. O'Donnell's testimony more likely than not will assist the finder of fact or is anything less than "unduly prejudicial." *See* Fed. R. Evid. 403, 702. Notably, CLF's relevance arguments contain *no* citations to case law, likely because there is no caselaw that would allow inflammatory generalizations about an alleged universal threat to be admitted into evidence without testimony actually connecting that threat to the facts at issue. *See* ECF 829, Opp. at 4-6, 8; *cf. Pugliano v. United States*, 315 F. Supp. 2d 197, 202 (D. Conn. 2004) (Rule 702 requires that an expert opinion "assist the trier of fact to understand the evidence or to determine a fact in issue" and "reflect[] a reliable application of the principles and methods to the facts of the case," *i.e.*, "the so-called 'fit'

---

100-year storm. If his CIRCA model and article are reliable, there is no impact at the Terminal and Dr. O'Donnell's opinions regarding sea level rise are speculative and untethered to any facts or data relevant to this case. Otherwise, CLF and Dr. O'Donnell are forced to admit that his CIRCA model is unreliable—which is, in fact, what CLF ends up doing in its Opposition. *See* ECF 829, Opp. at 5 (articulating excuses why the CIRCA model failed to show flooding at the Terminal). Notably, CLF has no explanation for why the Court should also ignore Dr. O'Donnell's published peer reviewed literature that also shows no impact at the Terminal.

requirement"); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 270 (2d Cir. 2002) (affirming exclusion of expert testimony relying on scientific literature about the disease but not specific to the plaintiff's individual circumstances for failing to "fit" the facts of the case). Likewise, CLF completely fails to discuss Dr. O'Donnell's **own admission** that one must know a site's location in New Haven Harbor to determine whether it will be affected by even the most extreme sea-level rise projections. *See generally* ECF 829, Opp.; *cf.* ECF 713-1, Memo. at 12. And while CLF responds to Defendants' reference to Dr. O'Donnell's own flood risk tools, such as the CIRCA Storm Viewer, it completely ignores Dr. O'Donnell's peer-reviewed publication in *Coastal Engineering* ***that also shows no risk to the Terminal***. *See generally* ECF 829, Opp.; *cf.* ECF 713-1, Memo. at 15 (citing Dr. O'Donnell's peer-reviewed publications that show no risk of flooding to the Terminal and other models overstating the risks in New Haven).

CLF's failure to address these critical flaws is itself reason to grant Defendants' motion. However, even considering the affirmative arguments CLF does make, they are entirely conclusory and cannot save Dr. O'Donnell's testimony.

***First***, CLF argues that "[t]he risks and dangers presented by increased sea level rise … cannot be separated from the issues in this case and whether the Terminal complied with its obligations to sufficiently consider climate change," and "the allegations made in [the complaint]." ECF 829, Opp. at 4-6. In support, CLF relies solely on attorney argument that "discussion of the dangers the Terminal and the surrounding area face is directly relevant." *Id*.

Far from refuting Defendants' arguments that Dr. O'Donnell's opinions do not "fit" the case and are unduly prejudicial, CLF's arguments replicate the exact flaws present in Dr. O'Donnell's report. Dr. O'Donnell's opinions do not provide any support for CLF's claim that the Terminal is in "danger" from rising sea levels because Dr. O'Donnell does not offer any

3

evidence or opinion at all, much less one that demonstrates that CLF has more likely than not met its burden of proof, that "***reliabl[y] appli[es] … the principles and methods to the facts of the case***," as required under the latest amendments to Rule 702. *See Fleming v. Vill. of Rockville Ctr.*, No. 2:19-CV-5435, 2025 WL 2774808, at *6 (E.D.N.Y. Sept. 24, 2025) (Rule 702 was amended in 2023 "in response to court decisions that admitted expert testimony too liberally."). Indeed, Dr. O'Donnell admits that his analyses, model methods, and publications fail to show any danger to the Terminal under even the most extreme projected sea level rises combined with once-in-a-millennia storms. *See* ECF 713-3, Ex. B, O'Donnell Dep. at 185:13-21 ("Q: And you are not going to offer any opinions about the potential effects any sea level rise may or may not have on the Equilon terminal in this case? A: That is correct."). This admission is key, for without such connective testimony, Dr. O'Donnell's opinions on general threats of climate change to New Haven cannot inform whether "best industry practice" would have required such considerations for Defendants' Terminal, because Dr. O'Donnell does not know whether an analysis of the Terminal would, in fact, reveal any threat. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005); *Daubert.*, 509 U.S. at 591 (citation omitted) ("[E]xpert testimony which does not relate to any issue in the case is not relevant and, *ergo*, non-helpful."); *Munn v. Hotchkiss Sch.*, 24 F.Supp.3d 155, 207 (D. Conn. 2014), *aff'd*, 724 Fed. Appx. 25 (2d Cir. 2018) ("I can think of no stronger basis for excluding testimony than proof that the testimony lacks any basis in fact. … Here, [the expert] could not demonstrate that data existed regarding the issues about which he was testifying as an expert, and as a result, he could not articulate a connection between his opinion and underlying facts, nor could he demonstrate that his methodology, if any, was sound."). As a matter of basic logic, "best industry practice" cannot require addressing threats that do not exist relevant to a specific facility. Instead, Dr. O'Donnell's

opinions serve only to inflame the passions of the jury by alleging that climate change will negatively impact the "geographic area" where they live, despite there being no connection to even hypothetical effects at the Terminal.

**Second**, CLF tries to explain that Dr. O'Donnell's CIRCA Storm Viewer tool, which was developed outside of litigation[3] as a resource for Connecticut communities to prepare for projected impacts of climate change,[4] is not precise enough to show effects at the Terminal because, while it was intended to zoom in on specific sites, it is only accurate to tens of meters (in other words, to 0.1 meter or approximately 3.97 inches), meaning it can miss "smaller" changes. *See* ECF 829, Opp. at 5 (citing O'Donnell Dep. at 190:19-23) (testifying that the model is "intended to zoom in" and "fully reliable at the tens of meters level"). Despite this minuscule margin of error, compared to the 20 inches of projected sea level rise and a 500-year flood event showing no flooding at or near the Terminal as depicted in the CIRCA documents, *see* ECF 713-5, Ex. D, O'Donnell Dep. Ex. 11, CLF speculates that this does not prove with certainty that the Terminal is not at risk of flooding and argues that this is an issue for cross-examination.[5] *Id.*

This argument entirely flips the burden of proof and misunderstands the court's gatekeeping role under Rule 702. Defendants agree that far more analysis would be required to show a relevant risk to the Terminal and to make Dr. O'Donnell's opinions admissible, especially since all evidence currently in the record, including Dr. O'Donnell's CIRCA tool and peer-reviewed publication, suggests no such evidence exists. *See* ECF 713-1, Memo. at 8-16. The

---

[3] It is axiomatic that research conducted independent of litigation is deemed more reliable than litigation-driven opinions. *See* Fed. R. Evid 702, Adv. Comm. Note to 2000 Amd. (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995); *Sheehan v. Daily Racing F., Inc.*, 104 F.3d 940, 924 (7th Cir. 1997)).

[4] *See* University of Connecticut, *About CIRCA* (last visited on November 11, 2025). Available at: https://circa.uconn.edu/about/.

[5] The fatal flaws in Dr. O'Donnell's opinions cannot be addressed on cross-examination. *See* Section II.B, below.

point is that Dr. O'Donnell has not done that analysis and cannot say if there is any risk to the Terminal. *Id.* at 8-13. That admission is important because, as Dr. O'Donnell's own tools, publications, and testimony show, not every location on earth is vulnerable to flooding from sea level rise. *See* ECF 713-3, Ex. B, O'Donnell Dep. at 110:3-116:24. Indeed, while CLF may complain about the imprecision of Dr. O'Donnell's modeling methodology, those methods uniformly show there is no risk to the Terminal. *See* ECF 713-5, Ex. D, O'Donnell Dep. Ex. 11.

From an evidentiary perspective, this is the "fatal" flaw that Defendants' motion identified: a connection to the actual Terminal at issue is essential to meet the "fit" requirement. Without it, Dr. O'Donnell's generalized testimony cannot "fit" any relevant issue in this case. *See Pugliano*, 315 F. Supp. 2d at 202. CLF essentially admits this in its motion by stating it intends to use Dr. O'Donnell's testimony to show the dangers of climate change to New Haven's "geographic area" and then to invite the jury to assume this means there is a risk to the Terminal, without any evidence from Dr. O'Donnell's own modeling to support such an assumption. *See* ECF 829, Opp. at 8-9. At the very least, Dr. O'Donnell has done nothing to draw that connection.

Under CLF's theory, because the Terminal is in New Haven, any expert testimony of risks to New Haven generally is "relevant" and fits the case, regardless of any specific analysis relating to the Terminal. *Id* at 4-6. Yet this theory has been resoundingly rejected under Rule 702 and is exactly the sort of evidence the "gatekeeper" is supposed to keep out, for it lacks any limiting principle and serves only to mislead a jury. *Wang v. Omni Hotels Mgmt. Corp.*, 3:18-cv-2000, 2025 WL 1782264, at *2 (D. Conn. June 27, 2025) (emphasizing the court's gatekeeping role). Taken to its logical conclusion, since the Terminal is also part of the United States, and the United States arguably may experience drought as a result of climate change, the Terminal would be required to assess the risks of drought. Such generalized reactionism is not—and cannot be—

required as part of "best industry practice, for there is no evidence that the Terminal will suffer the consequences of drought.

So too here. Because Dr. O'Donnell cannot testify that sea level rise will actually affect the Terminal, and his CIRCA model and peer-reviewed publication show no such effect, there can be no "fit" to the claims actually at issue in the case. *See Amorgianos*, 303 F.3d at 265. And without that "fit," Dr. O'Donnell's opinions cannot assist the jury, requiring exclusion to avoid confusion to the jury, not merely cross-examination as CLF suggests. *Id.* at 267 ("[I]t is critical that an expert's analysis be reliable at every step."); *United States v. Donald*, 2023 WL 6958797, at *17 (citing *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F.Supp.2d 334, 350 (2d Cir. 2005) (the Daubert inquiry requires courts to "examine not only the validity of the expert's methodology, but also the analytical connection between the application of the expert's proffered theory to the facts at issue in the case").

***Third***, CLF's conclusory argument that Dr. O'Donnell's opinions are relevant and not unduly prejudicial under Rule 403 again proves exactly the opposite point. Beyond referencing its previous relevance arguments, CLF states simply that "Dr. O'Donnell's testimony ***does not serve to only inflame the jury***; rather, it informs the broader issue of what Defendants should have done and should have considered in complying with the permit" and that "Dr. O'Donnell's testimony provides vital context that is needed to decide what constitutes best industry practice and whether Defendants adequately considered the dangers presented by climate change." ECF 829, Opp. at 8-9 (emphasis added). In essence, CLF admits that it will use Dr. O'Donnell's testimony to mislead and inflame the jury by telling them that "best industry practice" required Defendants to consider the general dangers of climate change, even though Dr. O'Donnell does not offer any opinion that the Terminal itself was actually at risk from any of those dangers. This

7

is exactly the sort of "unduly prejudicial" evidence Rule 403 was intended to bar. *See Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403).

### B.    Dr. O'Donnell's opinions cannot be reliably applied to the Terminal

Additionally, CLF's assertion that Dr. O'Donnell's methodology, model, and opinions can be reliably applied to the Terminal largely addresses an argument Defendants did not make. Defendants have not challenged Dr. O'Donnell's general methodology for assessing sea level rise *elsewhere*. The "analytical gap" Defendants identified was not between Dr. O'Donnell's data and his general opinions on sea level rise. *See* ECF 713-1, Memo. at 11-15. Instead, Defendants argued that Dr. O'Donnell does not offer data or evidence to reliably extrapolate from his general opinions *to the Terminal*, as required by revised Rule 702(d) (requiring a showing that the expert reliably applied his principles and methods to the facts of the case). *Id.*

On this crucial point, CLF misses the mark. Citing no supporting cases and relying solely on a decades-old advisory committee note that predates the adoption of *Daubert*'s reliability test and Rule 702's recent amendments, *Grindstaff v. Coleman,* 681 F.2d 740, 743 (11th Cir. 1982) (quoting CLF's same language eleven years before the abandonment of *Frye*), CLF suggests that Dr. O'Donnell can provide a mere "exposition of scientific or other principles relevant to the case" and need not reliably opine about the danger to the Terminal because the jury can perform this linkage independently. ECF 829, Opp. at 8 ("Dr. O'Donnell's testimony can be linked to the specific facts of the case by the jury").

This argument fundamentally misconstrues Defendants' position, the advisory committee's note, and the nature of Dr. O'Donnell's modeling testimony. It is undisputed that an expert may testify in the form of an exposition instead of an opinion if they choose. Indeed, in instances where a link between the case facts and the underlying scientific principle is readily apparent, no issue arises. *See, e.g.*, *United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001)

8

(expert may provide background information to aid jury understanding).

The core issue here is that a general scientific principle of sea level rise is not inherently relevant to the Terminal without specific connective testimony, which Dr. O'Donnell's modeling and opinions do not provide. As explained in Defendants' initial brief, there is no "[relevance] to the case" without a showing of actual risk to the Terminal from Dr. O'Donnell's modeling. But Dr. O'Donnell admitted during his deposition that he "d[id] no evaluation of the specific Equilon terminal" and "[is] not going to offer any opinions about the potential effects any sea level rise may or may not have on the Equilon terminal in this case." ECF 713-3, Ex. B, O'Donnell Dep. at 185:13-21. Courts have consistently held that expert testimony unrelated to any issue in the case is not relevant and, consequently, is unhelpful. *Reynolds v. Arnone*, 645 F.Supp.3d 17, 22 (D. Conn. 2022) (citation omitted) ("This [] requirement means that [e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citations and quotations omitted); *Ellis v. Y.M.C.A. Camp Mohawk, Inc.*, 2014 WL 3906325, at *3 (D. Conn. Aug. 11, 2014) ("Expert testimony is required 'when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors.'") (quoting *LePage v. Horne*, 262 Conn. 116, 125 (2002)).

CLF's only other argument is again an unsupported sweeping statement that "Defendants' … arguments … are inappropriate for a Daubert motion" and that "many of the issues raised … can be handled on cross[ ]." ECF 829, Opp. at 8. To the extent CLF is suggesting that Dr. O'Donnell need not "reliably apply" his methodology to the facts of this case, it is clearly wrong. *See* Fed. R. Evid. 702. Indeed, as the Advisory Committee recently noted, such a view is clearly "an incorrect application of Rules 702 and 104(a)." *See* 2023 Advisory Comm. Notes §1 ("Some challenges to expert testimony will raise matters of weight … . But this does not mean, as certain

9

courts have held, that arguments about the sufficiency of an expert's basis always go to weight and not admissibility."); *see also, e.g., Fleming*, 2025 WL 2774808, at *6 ("Rule 702 was amended in 2023 "in response to court decisions that admitted expert testimony too liberally."); *In re Valsartan, Losartan, & Ibersartan Prods. Liab. Litig.*, MDL No. 19-2875, 2025 WL 3141002, at *12 (D. N.J. Nov. 10, 2025) (rejecting plaintiff's suggestion that flaws in expert's testimony could be addressed by "vigorous cross-examination" because "this would amount to a total abdication of [the court's] gatekeeping responsibility").

This Court should decline CLF's invitation to apply an erroneous evidentiary standard by merely waving away the relevance and reliability issues in Dr. O'Donnell's opinion. Because Dr. O'Donnell has not demonstrated a reliable method to bridge this "analytical gap," his opinions must be excluded. *See Pugliano*, 315 F. Supp. 2d at 202 (Rule 702 requires expert opinions to "fit" the facts of the case); *Amorgianos*, 303 F.3d at 265 (affirming exclusion where expert's opinions lacked connection to case-specific facts).

### III. CONCLUSION

For the reasons stated in this reply and in Defendants' opening brief, the Court should exclude Dr. O'Donnell's opinions in their entirety.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)

10

KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
(704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE &DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648

11

T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com