UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>                Plaintiff,<br><br>   v.<br><br>EQUILON ENTERPRISES LLC, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>                Defendants. | Case No: 3:21-cv-00933-VDO<br><br>November 17, 2025 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE
<u>THE EXPERT TESTIMONY OF WENDI GOLDSMITH</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. Dr. Goldsmith Is Not Qualified to Offer her Opinions ........................................... 2

    B. Dr. Goldsmith's Opinions Are Unreliable ............................................................... 5

    C. CLF Has the Burden to Show That Dr. Goldsmith Has a Sufficient Basis to Support Her Opinions .............................................................................................. 7

    D. Dr. Goldsmith's Unsupported Opinions About Engineering and Best Industry Practice Are Irrelevant and Risk Confusing the Jury .............................................. 9

III. CONCLUSION .................................................................................................................. 10

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC (collectively, "Defendants") submit this reply in support of their Motion to Preclude the Expert Testimony of Wendi Goldsmith.

## I. INTRODUCTION

CLF argues that "Defendants' criticism of Dr. Goldsmith's methodology [is] simply a repackaging of legal arguments that this Court has already considered and rejected." ECF 822, Opp. at 18. But Defendants do not attempt to "relitigate" Judge Meyer's prior rulings. *Id.* at 1, 18. Instead, Defendants have shown that Dr. Goldsmith is not qualified to provide opinions about "[w]hether best industry practice is to consider climate change," and that her testimony is unreliable and irrelevant under Federal Rules of Evidence 702 and 403. ECF 305 at 85:13-16.

Dr. Goldsmith relies on three cherry-picked, inapplicable sources to arrive at her best industry practice opinion, ECF 743-1, Def. Memo ISO Mot. ("Memo.") at 24-28; she failed to conduct any survey or consult any petroleum bulk storage facilities to determine their actual practices, ECF 743-2, Ex. A Goldsmith Dep. ("Dep.") at 235:22-236:3, 237:3-5; and she could not identify a single petroleum bulk storage facility that assessed climate change factors, *id.* at 238:6-11. Dr. Goldsmith admits that she has no training or experience in engineering, the petroleum bulk storage industry, or stormwater permit compliance for petroleum terminals. *Id.* at 20:13-15, 24:12-15, 28:3, 30:2-5. Dr. Goldsmith did not even know that the actual "industry" involved in the dispute is the "Petroleum Bulk Storage" industry, based on the EPA SIC code for the New Haven Terminal—SIC Code 5171. *See id.* at 229:6-19; 2021 EPA MSGP, Appendix N - List of SIC and NAISC Codes at N-19 (SIC Code 5171 - Petroleum Bulk Stations and Terminals).

All these issues go to admissibility, not weight, because CLF has failed to carry its burden to show that "it is more likely than not that" Dr. Goldsmith's testimony meets "the

1

admissibility requirement[s]" of Rule 702, as amended. Fed. R. Evid. 702, Adv. Comm. Notes, 2023 Amendments. Rule 702 does not allow an evidentiary free-for-all just because there are unresolved questions of fact. Admitting her baseless opinions about the 2018/2021 Permit[1] and the technical engineering requirements of bulk petroleum storage facilities—some of which were never included in CLF's pre-suit Notice of Intent—risks confusing the issues, misleading the jury, and causing Defendants undue prejudice. Fed. R. Evid. 403. All Dr. Goldsmith's opinions must be excluded pursuant to Federal Rules of Evidence 702 and 403.

## II.    ARGUMENT

### A.    Dr. Goldsmith Is Not Qualified to Offer her Opinions

CLF contends that Dr. Goldsmith is qualified to offer expert testimony in this case because of her "experience in flood management infrastructure, disaster resilience, and sustainable planning with significant work focused on critical infrastructure." ECF 822, Opp. at 8. But CLF does not—and cannot—dispute that Dr. Goldsmith is offering engineering opinions, even though she is "not an engineer at all," ECF 743-2, Dep. at 28:1-3; she has never worked on "environmental compliance for operating a petroleum bulk storage terminal," *id.* at 24:12-15; and she has never interacted with CT DEEP "on any industrial stormwater permitting issue," *id.* at 27:2-5. Dr. Goldsmith also did not conduct any independent research or investigation to understand best industry practices for petroleum bulk storage facilities, *id*. at 235:22-237:5, 238:6-11. Indeed, CLF does not dispute that Dr. Goldsmith has never stepped foot in any petroleum bulk storage facility other than this Terminal in this litigation. *See id.* at 21:7-24:11.

CLF defends Dr. Goldsmith's expertise in geology and hydrogeology, arguing that

---

[1] The applicable permit when CLF filed this lawsuit was the 2018 CT DEEP General Permit, which was renewed without substantive changes in 2021. CT DEEP terminated the 2018/2021 Permit on October 1, 2025, and the Terminal is currently regulated by a new permit that became effective on November 1, 2025. The new CT DEEP permit now includes—for the first time—"climate change" consideration requirements. *See generally* https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwater-gp#Permit%20Documents.

2

Defendants have "fail[ed] to articulate any rationale for why direct, hands-on experience with a petroleum bulk fuel storage terminal is necessary." ECF 822, Opp. at 11. The rationale is simple: Dr. Goldsmith cannot assist the trier of fact understand what constitutes "best industry practice" for the Terminal when she knows nothing about the petroleum bulk storage industry. Nor does she have any experience or relevant specialized knowledge regarding permitting or preparation of Stormwater Prevention Plans ("SWPPPs"). Dr. Goldsmith's "qualifications" are of "little value" in this case, where the Court must determine the discrete issue of whether Defendants violated the Permit. *Cf. Duchimaza v. United States*, 211 F.Supp.3d 421, 431 (D. Conn. 2016).

CLF argues that EPA does not require that an engineer prepare SWPPPs under its multi-sector general permit ("MSGP"). ECF 822, Opp. at 10. However, the EPA MSGP is not the permit at issue here. The relevant permit is the 2018/2021 CT DEEP General Permit. And the 2018/2021 Permit *does* require SWPPPs to be prepared and certified by a registered professional engineer. 2018 Permit at 25 § 5(c)(2)(F). In fact, CLF's expert Richard Horner acknowledged as much in his deposition. *See* ECF 734-4, Horner Dep. at 41:14-42:2. Ultimately, CLF's argument is unavailing, since Dr. Goldsmith lacks *any* experience preparing SWPPPs in Connecticut, and she has never certified a SWPPP under the MSGP. ECF 743-2, Dep. at 28:18-24 ("Q. … Have you ever certified a SWPPP in the State of Connecticut? A. Not in Connecticut. Q. Are you capable of certifying a SWPPP in the State of Connecticut? A. Not in Connecticut."), 29:1-5.

CLF's cited cases are inapposite. For example, in *American Empire*, the district court held that an expert was qualified with respect to "post policy premium" insurance audits because of his "specialized knowledge" of the insurance industry, and his "experience of over 30 years in the insurance industry and related experience involving insurance coverage as a trial attorney." *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Envt'l Consulting, Inc.*, 754 F. Supp. 3d

3

456, 465 (S.D.N.Y. 2024). Dr. Goldsmith does not have "specialized knowledge" of the petroleum bulk storage industry that would qualify her to opine on the 2018/2021 Permit requirements, nor does she have "practical experience" with the Permit or the industry.

To get around Dr. Goldsmith's obvious lack of qualifications, CLF argues that her "general qualifications" make her "*better* suited to testify to industry practices and customs" than more specialized experts "who may have an insular perspective." ECF 822, Opp. at 10 (quoting *McBeth v. Porges*, No. 15-CV-2742 (JMF), 2018 WL 5997918, at *6 (S.D.N.Y. Nov. 15, 2018) (cleaned up)). Unlike the expert in *McBeth*, however, Dr. Goldsmith does not have either "general" or "specific" knowledge or experience regarding facilities such as the Terminal. *Cf. McBeth*, 2018 WL 5997918, at *6.

CLF also contends that the Defendants' motion "[i]gnores CLF's RCRA claims and cannot exclude Dr. Goldsmith's testimony on that basis." ECF 822, Opp. at 21. But Dr. Goldsmith's admitted lack of engineering expertise also renders her unqualified to offer opinions regarding the technical engineering specifications related to the Terminal's berms, infrastructure, tanks, and secondary containment, or the likelihood that any of them would fail and cause a release or discharge that would create an "imminent and substantial" danger to human health or the environment. *See* ECF 743-2, Dep. at 28:3 ("I am not an engineer at all"). Her opinion ███████████████████████████████████████████████████████████████████ *id.*, is not based on any relevant "knowledge, skill, experience, training, or education," Fed. R. Evid. 702.

CLF has failed to meet its burden to show by a preponderance of the evidence that Dr. Goldsmith has the requisite specialized knowledge or experience that will assist the trier of fact to understand the evidence or resolve the CWA or RCRA claims at issue in this case.

4

### B. Dr. Goldsmith's Opinions Are Unreliable

CLF contends that Dr. Goldsmith's opinions regarding the Terminal's compliance with the 2018/2021 Permit is the product of a reliable methodology—"systematic gap analysis"—which it claims "involves a detailed comparison between the existing conditions and practices at the New Haven Terminal and information set forth in recognized engineering standards and guidance." ECF 822, Opp. at 12. CLF claims that Dr. Goldsmith relied on sufficient facts or data to conduct her systemic gap analysis, based on her review of "facility documentation, site assessments, and … vulnerabilities relative to existing and reasonably foreseeable risks"; "reports from respected climate change, coastal engineering, and civil engineering experts"; "established guidelines" from various respected organizations; and internal company documents. *Id.* at 12-14.

CLF is mistaken. Dr. Goldsmith's testimony is not based on sufficient facts or data. Dr. Goldsmith acknowledged in her deposition that she relied on three sources[2] to reach her conclusion that assessing climate change risk is a best industry practice. *See* ECF 743-1, Memo. at 24-28. None of these sources represents best industry practice or even applies to the petroleum bulk storage industry generally or the Terminal specifically. *See id.* (ASCE Standard 24-14 applies only to "new construction," and EPA guidance document applies only to Wastewater Treatment and Sewage Facilities).

On the flip side, Dr. Goldsmith failed to consider the available regulatory and industry evidence that is directly relevant to whether consideration of climate change factors is "best industry practice." She candidly admitted that she did not consider any of the EPA or CT DEEP guidance relevant to compliance with the 2018/2021 Permit that is at issue in this case. *See* ECF

---

[2] Dr. Goldsmith acknowledged that the remaining sources cited in her report do not inform her opinions regarding best industry practice. *See* Ex. 1, Excerpts of Goldsmith Dep. at 164:16-19, 177:4-13, 140:12-14, 141:8-12, 203:19-204:3.

5

743-1, Memo. at 24 (discussing sources and collecting deposition testimony). Nor did she research or survey other petroleum bulk storage facilities to determine what best industry practice in the petroleum bulk storage industry actually is. ECF 743-2, Dep. at 235:22-236:3, 237:3-5. In her deposition, she could not point to a single facility in any industry that incorporates climate change analysis into its control measures as a best industry practice. *Id.* at 238:6-11.

"[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [an expert's] methodology and the expert's conclusions." *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005). "Unfounded extrapolations not supported by, or sufficiently related to, scientific data or expertise should be rejected." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007). It is difficult to imagine how Dr. Goldsmith's "systematic gap analysis" could be reliable when she: (1) consulted only three sources —all of which are irrelevant to the industry at issue in this case, (2) ignored relevant sources, and (3) failed to conduct any survey of or research actual practices at petroleum bulk storage facilities.

While CLF argues that "Dr. Goldsmith does not rest on subjective personal preference or unsupported subjective criteria," and that "she reviewed relevant literature, agency guidance, and established standards" to reach her opinions," ECF 822, Opp. at 14-16, it is clear that she cherry-picked from the available authorities and sources, and failed to consider any sources that were contrary to her predetermined opinions. *See In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 298 (S.D.N.Y. 2018) (excluding expert whose "cherry-picking approach is at odds with principles of sound science").

Dr. Goldsmith also failed reliably to apply the available facts and data to her "systematic gap analysis." Dr. Goldsmith did not compare the Terminal with "survey results or … other

reliable facts or data of a type reasonably relied upon by other experts in the [bulk fuel storage industry]." *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 201-06 (D. Conn. 2014) (excluding expert because, among other things, "he lacked adequate or comparable data on specific issues" and "substituted his personal opinion … for proper expert opinion about industry standards"). Her opinions are based on little more than her "subjective determination" of what constitutes best industry practice. *Meineker v. Hoyts Cinemas Corp.*, 154 F. Supp. 2d 376, 380 (N.D.N.Y. 2001) (holding that expert's opinion was unreliable because there were "no standards to control the operation of" the expert's "technique"). "Rule 702 demands more than the exercise of an expert's subjective judgment for his or her testimony to be 'reliable' under the Federal Rules." *Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:19-CV-839, 2021 WL 4170757, at *19 (D. Conn. Sept. 14, 2021).

      **C.    CLF Has the Burden to Show That Dr. Goldsmith Has a Sufficient Basis to Support Her Opinions**

CLF does not respond to Defendants' arguments regarding the unreliable application of Dr. Goldsmith's systematic gap analysis, or the insufficiency of the facts or data that she relied upon to reach her opinions. CLF argues that because Dr. Goldsmith offered "some explanation" as to how she came to her conclusions, any "criticisms regarding the alleged subjectivity of her methodology and the selection of sources" go to the weight, rather than the admissibility of her testimony. ECF 822, Opp. at 13 (quoting *McBeth*, 2018 WL 5997918, at *6).

CLF misconstrues Federal Rule of Evidence 702. First, it is CLF's burden—not Defendants'—to show that it is "more likely than not that [Dr. Goldsmith] has a sufficient basis to support [her] opinion[s]." Fed. R. Evid. 702, Adv. Comm. Notes, 2023 Amendments. CLF has failed to carry that burden. In 2023, "the Advisory Committee sought to clarify [Rule 702] to provide guidance to district courts that were misapplying it." *In re Keurig Green Mountain*

7

*Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2025 WL 354671, at *1 (S.D.N.Y. Jan. 30, 2025). The Advisory Committee explained that the changes to the rule sought to "emphasize that expert testimony may not be admitted unless *the proponent* demonstrates to the court that it is more likely than not that the proffered testimony" is admissible. Fed. R. Evid. 702, Adv. Comm. Notes, 2023 Amendments.

Even more importantly, as the recent amendments to Rule 702 make clear, CLF's claim that Defendants can explore the flaws in Dr. Goldsmith's opinions through cross-examination is "an incorrect application" of the Rule. *Id*. An "attack by the opponent" goes "to the weight of the evidence" ***only if*** the "court has found it more likely than not that" an expert is qualified and that her testimony is reliable and relevant. Fed. R. Evid. 702, Adv. Comm. Notes, 2023 Amendments; *see also In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 19-2875 (RMB/SAK), 2025 WL 3141002, at *12 (D. N.J. Nov. 10, 2025) (rejecting plaintiff's suggestion that flaws in expert's testimony could be addressed by "vigorous cross-examination" because "this would amount to a total abdication of [the court's] gatekeeping responsibility"). Here, Dr. Goldsmith's testimony is not based on sufficient facts or data regarding best industry practice in the petroleum bulk storage industry, and her testimony does not reflect a reliable application of her "systematic gap analysis" to the facts of this case.

CLF cannot satisfy its burden by simply providing "some explanation" as to how Dr. Goldsmith reached her conclusions. ECF 822, Opp. at 13. If that were the law, then virtually any attack on an expert's opinion would go to the weight of the evidence. Instead, CLF is required—and has failed—to show that it is more likely than not that Dr. Goldsmith's testimony is "ground[ed] in the methods and procedures of science" and is "more than subjective belief or unsupported speculation." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043-44 (2d Cir. 1995).

8

Because Dr. Goldsmith's testimony "is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 *mandate* the exclusion of [her] unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (emphasis added).

### D. Dr. Goldsmith's Unsupported Opinions About Engineering and Best Industry Practice Are Irrelevant and Risk Confusing the Jury

CLF argues that "because the adequacy of CLF's notice of intent to sue" is a "contested issue[] in this case," Defendants' argument that many of Dr. Goldsmith's opinions are not included in the Notices of Intent ("NOIs") and therefore are not relevant is not a basis for exclusion. ECF 822, Opp. at 18. In support, CLF cites to this Court's denial of Defendants' motion to stay. *Id.* CLF mischaracterizes that ruling.

The Court denied Defendants' motion to stay without prejudice, ruling that it was "not the proper vehicle" to resolve whether CLF's experts could opine on allegations not included in the NOIs, and directed Defendants to raise the issue through "Daubert motions, motions for partial summary judgment, motions in limine, or something else."[3] ECF 641, Order at 10. That is exactly what Defendants have now done. CLF ignores that language in the Court's ruling and elected to not respond to Defendants' arguments that Dr. Goldsmith's opinions regarding alleged violations not identified in the NOIs must be excluded as irrelevant. ECF 743-1, Memo. at 31-34.

CLF bears the burden to show that Dr. Goldsmith's testimony is relevant to the claims at issue in this case. Fed. R. Evid. 702. CLF made no effort to make a showing that Dr. Goldsmith's challenged opinions are in fact relevant to the claims properly before the Court. It has now waived the issue, and this Court should therefore exclude as irrelevant any of Dr. Goldsmith's

---

[3] Defendants also intend to raise this argument in their motions for summary judgment, as previewed in their letter briefs. ECF 804 and 806.

9

opinions based on allegations not identified in CLF's NOIs.

Also, all of Dr. Goldsmith's opinions about Permit compliance should be excluded as irrelevant because they fail to address best industry practices with respect to the petroleum bulk storage industry and the 2018/2021 Permit. CLF claims that Dr. Goldsmith's testimony is relevant because there is "a link between the [Dr. Goldsmith's] testimony and the matter to be proved." ECF 822, Opp. at 21 (quoting *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)). But CLF fails adequately to support that conclusory statement with any record evidence. As Defendants explained in their motion, "[n]one of Dr. Goldsmith's opinions reference the 2018/2021 Permit and most do not mention best industry practice." ECF 743-1, Memo. at 35.

Admitting Dr. Goldsmith's opinions would cause Defendants severe prejudice. Dr. Goldsmith never stepped foot in a bulk petroleum storage facility prior to this case or "worked for any party on environmental compliance for operating a petroleum bulk storage terminal." ECF 743-2, Dep. at 24:12-15. She also admits that she is "not an engineer at all." *Id.* at 28:3. Allowing her to offer opinions about "best industry practice" in the petroleum bulk storage industry or the Terminal's technical engineering specifications risks confusing the issues and misleading the jury.

### III. CONCLUSION

For the reasons stated above and in their initial brief, Defendants respectfully request that the Court exclude Wendi Goldsmith's expert opinions pursuant to Rules 702 and 403.

Dated: November 17, 2025				Respectfully submitted,

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
T: (704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889

jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE & DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com