**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-VDO <br><br><br> November 17, 2025 <br><br> **FILED UNDER SEAL** |

**[UNREDACTED] REPLY IN FURTHER SUPPORT OF PLAINTIFF CONSERVATION
LAW FOUNDATION'S *DAUBERT* MOTION TO PRECLUDE THE
<u>EXPERT TESTIMONY OF DR. CRAIG JONES</u>**

TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.    Dr. Jones Offers Numerous Impermissible Legal Opinions. .................................... 1

II.   Dr. Jones Should Not Be Allowed to Testify About the Delft 3d Flood Modeling or Any Opinions that this Modeling Informed................................................................. 4

   A.  Defendants Cite No Authority for Permitting Dr. Jones to Present Undisclosed Expert Testimony................................................................................................ 4

   B.  Defendants Make Clear They Plan for Dr. Jones to Testify About the Delft3D Model and His Use of the Model to Evaluate Flooding at the Terminal. .......................... 6

   C.  Defendants' Citations to FRE 703 Cases are Irrelevant ....................................... 6

   D.  Dr. Jones' Failure to Disclose His Work and Reliance on Delft3D Modeling Significantly Disadvantages CLF. ....................................................................... 7

III.  Conclusion ............................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*AmTrust N. Am., Inc. v. KF&B, Inc.*,
  No. 17-CV-5340 (LJL), 2020 WL 5578675 (S.D.N.Y. Sept. 16, 2020) ................................. 5

*DeGregorio v. Metro-North R.R. Co.*,
  No. 3:05-cv-533(JGM), 2006 WL 3462554 (D. Conn. Nov. 1, 2006) ................................... 1

*Rodriguez v. Vill. of Port Chester*,
  535 F. Supp. 3d 202 (S.D.N.Y. 2021)................................................................................... 5

**Rules**

Fed. R. Civ. P. 26(a)(2)(B)(i)................................................................................................... 5

Fed. R. Evid. 703 ..................................................................................................................... 7

Defendants' Opposition confirms that Dr. Jones is offering impermissible legal opinions that conflict with Judge Meyer's holding in this case. That he offers them from an "engineering perspective" changes nothing. Defendants' Opposition also confirms that Dr. Jones' report did not disclose his use of the Delft3D FM Model in this case, that he relied on that modeling to inform his opinions, and that Defendants intend to offer him at trial to testify about the modeling. This Court should exclude Dr. Jones' impermissible legal opinions and testimony about his undisclosed modeling and related opinions.

## I.    DR. JONES OFFERS NUMEROUS IMPERMISSIBLE LEGAL OPINIONS.

Dr. Jones attempts to explain the law, which is not a "fact in issue" requiring an expert. "[A]n expert should not be permitted to express an opinion that is merely an interpretation of federal statutes or regulations, as that is the sole province of the Court." *DeGregorio v. Metro-North R.R. Co.*, No. 3:05-cv-533(JGM), 2006 WL 3462554, at *3 (D. Conn. Nov. 1, 2006). Defendants' lengthy table makes clear that Dr. Jones' opinions are, at their core, legal interpretations of the permit's requirements, not purely engineering assessments.

Dr. Jones' opinions that rely on his personal interpretation of the permit's language constitute impermissible legal opinions. Rather than providing expert engineering analysis, Dr. Jones assumes the role of interpreting the meaning of the permit, which is the exclusive domain of the Court. By basing his conclusions on what he believes the permit "requires" or considers "binding," *see* Opp. ECF 835, ECF 842, at 4[1], Dr. Jones improperly substitutes his own legal judgment for that of the Court, contravening established precedent that prohibits experts from offering opinions on matters of law.  For example, Opinion 1 rests on Dr. Jones' legal conclusion that the permit "did not mandate the consideration of rising sea levels, storm surge, or other adverse

---

[1] Pin cites refer to the ECF header stamp.

1

weather events." Opp. at 24. Defendants claim this is not a legal opinion because Dr. Jones is offering an opinion from an "engineering perspective" and engineers "regularly advise permittees" about permit requirements" and "must understand the standards that apply to the permittee at issue." *Id.* But these arguments do not alter the fact that the opinion is legal. Nor is Dr. Jones helping explain complex, technical regulatory requirements. *See* Opp. at 17.

Dr. Jones also offers a host of other opinions that reject written standards and guidance as "nonbinding" or that reject them as not referenced by name in the permit. *See* Opp. at 9. However, any opinion that dismisses or rejects external standards or guidance solely on the grounds that it is not expressly binding or incorporated into the permit is fundamentally inconsistent with Judge Meyer's holding in this case. Judge Meyer made clear that best industry practice does not need to be spelled out in the permit to be required. Mot. for Partial Summ. J. Hr'g Tr., ECF 305, at 77. It is the law of the case that if it is an industry practice to consider climate change factors, the permit includes such requirements, even if the permit itself does not contain more explicit language regarding climate change. *Id.* at 86. If industry practice is represented or informed by what Dr. Jones calls "nonbinding" standards or guidance, the permit requires that practice as well. Dr. Jones' opinions to the contrary disregard the controlling interpretation provided by the Court in favor of his own legal interpretation of the same permit.

The following table responds to Defendants' arguments presented in Table 1 of their Opposition brief.

| Opinion | Legal Opinion | Conflicts with Judge Meyer's Opinion and Bases for Exclusion |
|---|---|---|
| 1 | The permit "did not mandate the consideration of rising sea levels, storm surge, or other adverse weather events." Opp., Table 1, at 24. | "If the best industry practice is to require consideration of climate change factors, then the permit includes this requirement despite the absence of more explicit language in the permit about climate change factors." ECF 305 at 86. |

2

| 2 | CLF's allegations based on standards and guidance documents "that were not incorporated into" the permit. Opp., Table 1, at 25. | "The very purpose of a best industry practice requirement, in my view, is to require industry to conform to best practices even if the content of such best practices are not spelled out word for word in the permit itself, in no small part because of the common sense reality that best practices may evolve over time." ECF 305 at 83. |
| --- | --- | --- |
| 3 | The permit "does not require the terminal to incorporate climate scenario modeling or long-term oceanographic projections." Opp., Table 1, at 25. | "If the best industry practice is to require consideration of climate change factors, then the permit includes this requirement despite the absence of more explicit language in the permit about climate change factors." ECF 305 at 86. |
| 4 | "The term [best industry practice] has no formal definition . . . and the term has not been adopted as a binding compliance benchmark." Opp., Table 1, at 26. | "[T]he permit unambiguously imposes a minimization duty that, in turn, references and incorporates best industry practice." ECF 305 at 86. |
| 6–12 | Various government and industry guidance and standards are not "binding" or "impose mandatory climate adaptation standards." Opp., Table 1, at 28. | Ignores Judge Meyer's construction of "best industry practice." |
| 13–14 | The Terminal meets or exceeds "enforceable BMP requirements" and there are "best industry practices" that are "not required" by the permit. Opp., Table 1, at 28. | Ignores Judge Meyer's construction of "best industry practice." |
| 15 | The Terminal's secondary containment berms are in "full compliance" with the permit. Opp., Table 1, at 28. | States the ultimate legal conclusion. |
| 16 | The permit "does not require" berms to withstand wave attack from storm surge. Opp., Table 1, at 28. | Ignores Judge Meyer's construction of "best industry practice." |
| 17 | Certain written plans at the terminal "collectively demonstrate compliance" and "incorporate BMPs and best industry practices that address adverse weather risks."  Opp., Table 1, at 29. | Expresses a legal opinion about demonstrating compliance, not "custom and usage." *See* Opp., Table 1, at 29 (citing *Saline River Props., LLC v. Johnson Controls, Inc.,* No. CIV.A. 10-10507, 2011 WL 6031943 *3 (E.D. Mich. Dec. 5, 2011). |
| 18 | A 500-year event design threshold is "nonbinding." Opp., Table 1, at 29. | Ignores Judge Meyer's construction of "best industry practice." |

3

| 19 | The 500-year event and higher thresholds "are not required for existing terminal under current law." Opp., Table 1, at 29. | Ignores Judge Meyer's construction of "best industry practice." |
|---|---|---|
| 29 | NOAA Atlas 15 "has not been adopted" by EPA or CT DEEP. Opp., Table 1, at 30. | Ignores Judge Meyer's construction of "best industry practice." |
| 25 | "The 2024 Connecticut Stormwater Quality Manual, for the first time, mentions that sea level will rise 20 inches by 2050, **but it still does not prescribe that permittees take action to address any specific impacts**." (emphasis added). Opp., Table 1, at 30. | Ignores Judge Meyer's construction of "best industry practice." |

## II.    DR. JONES SHOULD NOT BE ALLOWED TO TESTIFY ABOUT THE DELFT 3D FLOOD MODELING OR ANY OPINIONS THAT THIS MODELING INFORMED.

### A. Defendants Cite No Authority for Permitting Dr. Jones to Present Undisclosed Expert Testimony.

This Court should not allow Dr. Jones to testify about the Delft 3D model, his use of the model to evaluate flooding at the New Haven Terminal, or opinions for which "he relied in part on Delft3D in connection with his retention in this case." Opp. at 34. Defendants "agree" the Federal Rules of Civil Procedure require "a complete statement of all opinions the witness will express and the basis and reasons for them." *Id.* at 24–35. Yet throughout their opposition, Defendants repeatedly acknowledge that Dr. Jones' expert report did not disclose *any* information about his work on the Delft3D FM modeling. *Id.* at 35. Indeed, the first time anyone stated that Dr. Jones was involved with and/or had performed the Delft3D FM modeling was at his deposition. Nevertheless, Defendants argue without citing a single case or rule that "Dr. Jones is allowed to

testify to the inputs and operation of the Delft3D model upon which Dr. French-McCay relied."
Opp. at 32.[2]

CLF is entitled to rely on the four corners of Dr. Jones' disclosed expert report. Rule 26 places the affirmative burden on the party proffering the expert to provide a complete disclosure of all opinions the expert will express and the bases for those opinions in the expert report. Fed. R. Civ. P. 26(a)(2)(B)(i). "This rule is intended to ensure that the party opposing an expert has his report, and the assumptions forming the bases for that report, before the deposition so that the deposition can be effective and counsel can develop material to probe the witness during cross-examination." *AmTrust N. Am., Inc. v. KF&B, Inc.*, No. 17-CV-5340 (LJL), 2020 WL 5578675, at *3 (S.D.N.Y. Sept. 16, 2020).

The rules do not oblige an opposing party to guess or speculate about what opinions an expert intends to offer, or which materials may form the basis of those opinions. Nor do the rules allow the expert to disclose this information for the first time at their deposition. "[I]t is well-settled . . . that an expert's deposition testimony cannot cure a party's failure to disclose opinions in their expert's report under Rule 26." *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 211 (S.D.N.Y. 2021) (quoting *Clayton v. Katz*, No. 1:10-CV-5755 ALC, 2015 WL 1500248 at *5 (S.D.N.Y. Mar. 31, 2015)).  The failure to disclose any information about Dr. Jones' use of Delft3D FM modeling in his expert report violates both the spirit and the letter of this disclosure requirements set forth in Rule 26. This Court should not allow Defendants to avoid these clear requirements without any legal authority supporting their argument. *See* Opp. at 34–36.

---

[2] Defendants' arguments about the appropriateness of the Delft 3D model for modeling flood impacts at the Terminal is a red herring. *See* Opp. at 32–34. Dr. Jones may not testify about the Delft3D model, his use of the model, or any opinions that relied on the modeling because he omitted any information about these in his expert report.

**B. Defendants Make Clear They Plan for Dr. Jones to Testify About the Delft3D Model and His Use of the Model to Evaluate Flooding at the Terminal.**

Defendants' opposition brief makes clear *for the first time* their intent for Dr. Jones to testify about the Delft3D FM Model and his use of the model in forming his opinions. The brief explicitly states, "Dr. Jones is allowed [to] testify to the inputs and operation of the Delft3D model upon which Dr. French-McCay relied." Opp. at 32. Defendants note that "Dr. Jones plainly testified to CLF that the Delft FM model was conducted by him and another member of his team at his direction," and that his "opinions are informed by the Integral [i.e., Delft3D] modeling." *Id.* at 34–35. They also emphasize that Dr. Jones "twice affirmed that his 'opinions are informed by the Integral [i.e., Delft3D] modeling.'" *Id.* at 34.

Defendants state that "Dr. Jones' team at Integral ran the Delft3D model to evaluate water levels and their associated water depths over inland areas." *Id.* They also assert that "Dr. Jones used appropriate scientific methods to identify, model, and analyze the impacts [adverse weather] events could hypothetically have on the Terminal." *Id.* Moreover, Defendants expressly confirm Dr. Jones as the testifying expert on the Delft3D FM model, not another member of his team at Integral: "That witness is Dr. Jones." *Id.* at 36. These admissions collectively demonstrate that Defendants intend Dr. Jones to offer expert testimony about the Delft3D FM Model, its operation, and its role in informing his expert opinions to oppose CLF's claims. However, none of this information is disclosed in Dr. Jones' expert report as it was required to be under Rule 26 for Dr. Jones to testify as an expert.

**C. Defendants' Citations to FRE 703 Cases are Irrelevant.**

Defendants' reliance on cases interpreting Federal Rule of Evidence 703 is misplaced and has no bearing on the admissibility of Dr. Jones's testimony regarding his own modeling work and the opinions he formed based on that work. *See* Opp. at 36 n.15 (citing Rule 703 cases). Rule 703

6

governs the circumstances under which an expert may base an opinion on facts or data that are not themselves admissible, provided those facts or data are of a type reasonably relied upon by experts in the field. However, the central issue here is not whether Dr. Jones may rely on otherwise inadmissible information as the basis for his opinions, but whether he may offer opinions and testify about work that were never disclosed in his expert report as required by Rule 26(a)(2)(B). Accordingly, Defendants' citations to Rule 703 case law are irrelevant to the core issue regarding the Delft3D modeling.[3]

### D. Dr. Jones' Failure to Disclose His Work and Reliance on Delft3D Modeling Significantly Disadvantages CLF.

CLF is significantly prejudiced by the Defendants' failure to disclose Dr. Jones' involvement in the Delft3D FM flood modeling prior to his deposition. The expert disclosure rules are designed to ensure that opposing parties have full notice of the opinions an expert will offer and the bases for those opinions, so they can adequately prepare for deposition and cross-examination. Here, Dr. Jones' expert report omitted any reference to his performance of Delft3D FM modeling and did not list the model as a reference or describe how its results informed his opinions. As a result, CLF was deprived of the opportunity to meaningfully question Dr. Jones about the modeling during his deposition, to probe his methodology, inputs, assumptions, and conclusions, thereby undermining the core purpose of the expert disclosure process.

Defendants cannot seriously contend that CLF was on notice of Dr. Jones' work with Delft3D FM modeling or that he was relying on the modeling to inform his opinions in this case. *See* Opp. at 36 n.15. As the record makes clear, the first time either Defendants or Dr. Jones

---

[3] Nor does Rule 703 provide a means to circumvent Rule 26's expert disclosure requirements. *See* Fed. R. Evid. 703.

disclosed his involvement with the Delft3D FM model was at his deposition, long after the expert disclosure deadline and far too late for meaningful preparation.

Defendants suggest that CLF had enough information based on the mere presence of "Jones" in a filename. Opp. at 35–36. CLF did not "know," as Defendants claim, that Jones performed the modeling until he testified as much at his deposition. *See id.* Nor did CLF know that Defendants intended for Dr. Jones to be "that witness" to testify about the modeling, or that he relied on the Delft3D modeling to inform his opinions. *See* Opp. at 36. Even if CLF knew all these things somehow in the absence of the required disclosures, Defendants' production of Delft3D model files was incomplete. CLF requested the Delft3D FM model data, but Defendants never produced the input files; they only produced the output files. *See* Nairn Rebuttal Rpt., ECF 772 at 18. As Dr. Nairn explained:

> This prevents me from being able to properly assess the Integral/Jones numerical model results as the input files contain the configuration details such as boundary conditions, grid setup, bathymetry and model parameters that define how the model was constructed and run. In addition, no calibration or validation of the model was presented in the Jones or French-McCay report, which further reduces my ability to assess the model results.

*Id.* Defendants' after-the-fact rationalizations cannot cure the prejudice that resulted.

## III.    CONCLUSION

CLF respectfully requests that the Court grant Plaintiff's motion.

8

Dated: November 17, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ Kenneth J. Rumelt*

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

9

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu
Devin Williams*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo*
Shalom Jacks*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

10

Vincent Greene*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*