## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

             v.

EQUILON ENTERPRISES LLC D/B/A SHELL
OIL PRODUCTS US, TRITON TERMINALING
LLC, and MOTIVA ENTERPRISES LLC,

    *Defendants*.

Civil Action No. 3:21-cv-00933-VDO

November 17, 2025

**FILED UNDER SEAL**

## REPLY IN FURTHER SUPPORT OF PLAINTIFF'S *DAUBERT* MOTION
## TO PRECLUDE THE EXPERT TESTIMONY OF
## <u>RENEE BOURDEAU</u>

**TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................... 1

**ARGUMENT**.......................................................................................................................... 1

    A.   Ms. Bourdeau's opinions are not based on her purported expertise. ................................. 1

    B.   Ms. Bourdeau's opinions are not helpful to the trier of fact. .............................................. 4

    C.   Ms. Bourdeau's methodology is inadequate, and her opinions are unreliable................... 7

**CONCLUSION** ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
303 F.3d 256 (2d Cir. 2002) ............................................................................................... 9

*Gen. Elec. Cap. Corp. v Nichols,*
No. 3:09-cv-758, 2011 U.S. Dist. LEXIS 46095 (D. Conn. April 29, 2011) ............................ 3

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
484 U.S. 49 (1987) ............................................................................................................. 10

*Liberty Mut. Ins. Co. v. Day to Day Imps. Inc.*,
No. 22-cv-02181, 2025 U.S. Dist. LEXIS 144858 (S.D. N.Y. July 29, 2025) ........................... 9

*SR Int'l Bus. Ins. Co. V.* World Trade Ctr. Props., LLC,
467 F.3d 107 (2d Cir. 2006) ............................................................................................... 3

*Utility Air Regulatory Group v. EPA*,
573 U.S. 302 (2014) ............................................................................................................ 7

**Other Authorities**

78 Fed. Reg. 12477 (2013) ....................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 37(c)(1) ................................................................................... 4

Federal Rule of Evidence 401 .............................................................................................. 7, 10

Federal Rule of Evidence 403 .............................................................................................. 7, 10

**INTRODUCTION**

Defendants' Opposition to Plaintiff Conservation Law Foundation's ("CLF") Motion to Preclude the Testimony of Renee Bourdeau ("Opp'n") (ECF 820) fails to demonstrate that Ms. Bourdeau's opinions are based on her expertise or experience, helpful to the factfinder, or the result of sound methodology. Their Opposition focuses on Ms. Bourdeau's purported qualifications, which CLF did not raise in its Motion, and on her ability to assist the factfinder to understand and interpret SWPPPs, which is testimony that she has not offered in her report or her depositions. Defendants have not demonstrated that the opinion Ms. Bourdeau does offer – that based on her review of SWPPPs, conversations with a CT DEEP employee, and reading of the DEEP General Permits ("Permit") and Guidance Document, best industry practice does not require consideration of climate change – is grounded in her purported expertise or reliable methodology. CLF's Motion should be granted.

**ARGUMENT**

**A.      Ms. Bourdeau's opinions are not based on her purported expertise.**

Defendants argue that Ms. Bourdeau is "exceptionally qualified to opine on industry practice in general and, in particular, to assess and interpret the contents of SWPPPs and explain their meaning and function to a jury, including what they say about industry practice." ECF 820, Opp'n at 12. The problem for Defendants is that Ms. Bourdeau does not offer these opinions in her report. Nowhere does she opine on industry practice in general. Nor does she assess and interpret the contents of SWPPPs and explain their meaning and function. The closest she comes to such an opinion is reciting what the regulation states regarding the information that SWPPPs must include, which does not assess or interpret their contents or explain their meaning and function. *See* Memorandum of Law in Support of CLF's *Daubert* Motion to Preclude the Expert Testimony of Renee Bourdeau (ECF 737-1) at Ex. 1, Bourdeau Rpt. (ECF 740) at 2:56–63.

1

Instead, Ms. Bourdeau offers an opinion that, based the absence of terms or language about climate change in the General Permit, the Permit Guidance, SWPPPs submitted to CT DEEP by other permittees, and various enforcement actions she reviewed, the Permit does not require permittees to consider climate change and she "see[s] no evidence" that best industry practice under the Permit requires the consideration of climate change. ECF 740, Bourdeau Rpt. at 4:119–137. Ms. Bourdeau offers no analysis or insight based on her expertise or experience; she simply looked at these documents for terms or language regarding climate change and formulated her opinions that the Permit does not require consideration of climate change based on that review. *See* ECF 737-1 at Ex. 2, 2025 Bourdeau Dep. (ECF 737-3) at 67:20-71:2, 72:14-74:19 (deposition testimony discussing the basis of each of Ms. Bourdeau's opinions).

Defendants attempt to explain away Ms. Bourdeau's deposition testimony which confirms that she did not use her expertise or experience in reaching her opinions (*See* ECF 737-1 at Ex. 3, 2023 Bourdeau Dep. (ECF 737-4) at 74:18–75:6), noting that the deposition was taken before Ms. Bourdeau prepared her expert report. ECF 820, Opp'n at 12. But the opinion Ms. Bourdeau expressed in her 2023 deposition – that permittees were not required to consider climate change – is the same opinion that she wrote in her report. Other than writing her report and preparing for her deposition, Ms. Bourdeau did not conduct any additional work after she was asked to serve as an expert. ECF 737-1 at Ex. 2, 2025 Bourdeau Dep. (ECF 737-3) at 53:5–12. There is no indication that she suddenly employed her expertise or based these same opinions on her work as an engineer after she wrote them down in a report. Furthermore, Ms. Bourdeau testified in her 2025 deposition that, with two exceptions not relevant here, she stood by the testimony in the 2023 deposition and there was nothing inaccurate about that testimony. ECF 737-3, 2025 Bourdeau Dep. at 15:9–16:21.

Defendants cite *Gen. Elec. Cap. Corp. v Nichols* in support of their argument that Ms. Bourdeau utilized her expertise in reaching her opinions. ECF 820, Opp'n at 13. But in *Nichols,* the expert used his specialized knowledge and experience to conduct calculations to dispute the valuations at issue in the case. No. 3:09-cv-758, 2011 U.S. Dist. LEXIS 46095 (D. Conn. April 29, 2011). The court held that an expert qualified on the basis of experience "must show how his or her experience . . . led to his conclusion or provided a basis for his opinion." *Id. at* \*15–16 (citing *SR Int'l Bus. Ins. Co. V.* World Trade Ctr. Props., LLC, 467 F.3d 107, 132 (2d Cir. 2006)) (citation modified). Ms. Bourdeau has failed to do that here as neither her report or deposition testimony explain or demonstrate how her expertise or experience led to her opinions in this case. In formulating her opinions, Ms. Bourdeau simply did what a lay person could do – read through documents to see if they said anything about climate change – as she admitted in her deposition.

Defendants' argument that Ms. Bourdeau had to "use her expertise to understand the documents and plans to comprehend their aims and meanings" in order to offer opinions "assessing the aim and purpose" of the plans is not consistent with Ms. Bourdeau's report or her deposition testimony. Neither contain any discussion of the "aims and meanings" of the SWPPPs she reviewed. She simply opines that the SWPPPs and other documents she reviewed did not contain climate change terms or discussions and, therefore, there is no industry practice to consider climate change. Defendants also contend that Ms. Bourdeau's testimony is necessary because a "non-engineer would be ill-equipped to understand many of the technicalities and language used in SWPPPs in assessing the aim and purpose of the plans," citing to language in Defendants' SWPPP regarding "catch basins, lift stations, drainage lines, containment berms, valves, and retention basins." ECF 820, Opp'n at 13, 16. But, again, Ms. Bourdeau's opinions do not provide any information or clarity regarding the technicalities and language used in SWPPPs. Furthermore,

3

because Ms. Bourdeau did not discuss or explain the "technicalities and language used in SWPPPs" in her report or her deposition, she cannot opine on these issues during trial.[1]  *See* Federal Rules of Civil Procedure 37(c)(1) ("[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *See also* ECF 737-3, 2025 Bourdeau Dep. at 76:4–7 ("Q. Does this report contain all of your opinions in this matter and the basis for those opinions?  A. Yes.")

Defendants also attempt to downplay the fact that, due to the nature of the work Ms. Bourdeau conducted, she was designated as a fact witness, and they mischaracterize CLF's argument regarding the same.  CLF does not dispute that witnesses can testify as both an expert and a fact witness under some circumstances.  The problem here is that Ms. Bourdeau did not do any work or formulate her opinions based on her expertise.  Defendants and Ms. Bourdeau determined that the "scope of work . . . is to be a fact witness."  ECF 737-4, 2023 Bourdeau Dep. at 18:7–10.  In other words, they acknowledged that her work, and the conclusions she drew from them, were that of a fact witness.  Ms. Bourdeau did nothing – no additional analysis or research – to elevate this work to that of an expert. *See* ECF 737-3, 2025 Bourdeau Dep. at 53:2–12.

**B.**     **Ms. Bourdeau's opinions are not helpful to the trier of fact.**

Defendants appear to realize the weakness of Ms. Bourdeau's "expert opinions" and attempt to pivot to recharacterize her as an expert who will use her purported expertise and experience to help the trier of fact understand the complicated, technical language used in SWPPPs.  Defendants again ignore the fact that Ms. Bourdeau does not offer any opinions that do

---

[1] This is also true of Defendants' claim that Ms. Bourdeau has "superior knowledge and skill to evaluate what engineers and permittees actually do in SWPPPS, and to explain the technical content for the jury."  ECF 820, Opp'n at 2.  Ms. Bourdeau does not do this in her report or in deposition. She therefore cannot offer such opinions at trial.

this. Her opinion is simply that because there is no specific language in the Permit, Permit guidance, or the SWPPPs she reviewed about climate change, best industry practice does not require the consideration of climate change.[2]

Defendants claim that Ms. Bourdeau's testimony is needed to interpret the SWPPPs in order to assist the jury who might otherwise be confused by the SWPPPs' technical terms and may not understand what best industry practice is. ECF 820, Opp'n. at 15–17. However, Ms. Bourdeau does not interpret or explain the SWPPPs technical terms, nor does she define or explain the meaning of "best industry practice" in her report. The only "interpretation" of the SWPPPs that she did was looking for language about climate change or climate change related terms. She did not use her expertise or experience to draw any conclusions about whether climate change was considered, nor did she use such expertise to reach her conclusion that consideration of climate change is not required.

Instead, Ms. Bourdeau testified that she was trying "to determine if the permittees and engineers . . . were including language which suggests that they were considering climate change such as sea level rise, extreme participation patterns, terms like that associated with climate change." ECF 737-3, 2025 Bourdeau Dep. at 59:15–60:22. Despite her testimony that this was not "a keyword search[] per se," reading through the SWPPPs to search for terms or language associated with climate change is what Ms. Bourdeau did, by her own description. *Id.,* s*ee* ECF 737-4, 2023 Bourdeau Dep. at 74:18–75:6; *see also id.* at 30:10–31:23, 34:21–36:8, 39:10–40:18 (discussing whether she found particular words in the SWPPPs she reviewed). Further, Ms. Bourdeau did not review any Defendant documents related to best industry practice, review any

---

[2] Defendants selectively quote footnote 4 from CLF's Motion and spend significant time in their Opposition brief making the obvious argument that an expert can opine about facts. The problem with Ms. Bourdeau's opinion, as is discussed in the cited footnote, is not simply that it consists of a factual conclusion, it is that her conclusion is based on incomplete data and inadequate methodology, as discussed in Section C, below.

5

journals or literature about best industry practice, or conduct any research outside of reading through the Permit, the Permit Guidance, and the SWPPPs other permittees submitted to Connecticut DEEP. ECF 737-3, 2025 Bourdeau Dep. at 32:11-33:4, 74:16–19, 74:21–76:2. Ms. Bourdeau's conclusion that she saw no evidence of an industry practice or best industry practice for facilities to consider climate change and that the Permit does not require consideration of climate change is not helpful to anyone because it is not grounded in Ms. Bourdeau's expertise or experience or, as discussed further below, sound methodology.  Ms. Bourdeau should not be permitted to testify as an expert when her opinions reflect no expertise, are not reliable and are, therefore, not helpful to the factfinder.

Defendants argue that Ms. Bourdeau's testimony should be admitted to assist the fact-finder because none of CLF's experts are engineers or have any experience with SWPPPs, and none of CLF's experts evaluated other permittees' SWPPPs or spoke with CT DEEP to determine whether it agrees with CLF's interpretation of the Permit.  ECF 820, Opp'n at 20–21.  However, as Defendants are aware, CLF's expert Richard Horner has advanced degrees in engineering, including a Ph.D. in Civil and Environmental Engineering from University of Washington and two Mechanical Engineering degrees from the University of Pennsylvania.  Horner Rpt. (ECF 753) at 6.  In addition, Dr. Horner has spent his 58-year career evaluating stormwater management systems and doing work such as helping develop an industry-specific stormwater permit for metal recyclers in California and serving as an appointed special master in federal court to help bring a Los Angeles permittee into compliance with the terms of a consent decree regarding an industrial stormwater permit. *Id.* at 9–10.  And, unlike Ms. Bourdeau's report, Dr. Horner's report does explain some of the technical aspects of a SWPPP and of the Permit.  *See, e.g., id.* at 15–16, 20–21, 32–33, 37–38.

Furthermore, Defendants' suggestion that CLF's experts should have evaluated other permittees' SWPPPs and talked to CT DEEP regarding whether the agency agrees with CLF's interpretation of the Permit is wrong. Such information is irrelevant. SWPPPs written by other permittees are not evidence of the Permit's requirements or best industry practice. Furthermore, how an agency chooses to interpret and enforce a permit is not dispositive of the scope of the Permit or the meaning of "best industry practice" as a matter of law. *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 326 (2014) ("the 'independent enforcement authority' furnished by the citizen-suit provision cannot be displaced by a permitting authority's decision not to pursue enforcement.") (citing 78 Fed. Reg. 12477, 12486–12487 (2013)); Order Denying Mot. to Strike, 6/13/25 (ECF 641) at 6 ("Agencies are afforded no veto power over citizen suits . . .Instead, the citizen suit provision is perhaps at its most force when an agency disagrees with the suits theory of recovery.").

The fact that CLF's experts did not rely on other permittees' SWPPPs or CT DEEP's enforcement of the Permit is not a reason to discount their opinions or methodology.  The fact that Ms. Bourdeau relies on this irrelevant information is an additional reason that her testimony should be excluded.  Instead of assisting the fact finder, this testimony may mislead the jury into believing that other permittees' choices in designing their SWPPPs and CT DEEP's choices in enforcing the Permit are synonymous with the legal requirements imposed by statute and permit, which they are not. Any probative value this information has is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. As such, Ms. Bourdeau's opinions utilizing this information should be excluded pursuant to Fed. R. Evid. 401 and 403.

**C.      Ms. Bourdeau's methodology is inadequate, and her opinions are unreliable.**

Ms. Bourdeau's methodology is insufficient and the conclusions she draws from it are, therefore, unreliable.  Far from making "a single challenge" to Ms. Bourdeau's methodology, CLF

has identified numerous flaws in Ms. Bourdeau's methods:  she only reviewed 152 of 1,647 submitted SWPPPs; she is unaware of the number of SWPPP she reviewed that were for coastal facilities; she only reviewed one SWPPP for a bulk petroleum storage terminal; she does not know whether the SWPPPs she reviewed were the most recent SWPPPs for each facility; and she admits that the facilities' most recent SWPPPs are likely on site at the facilities, but she did not attempt to visit the sites where the most recent SWPPPs are located.  ECF 737-1 at 6–8; ECF 737-3, 2025 Bourdeau Dep. at 62:2–4 ("Q. Did you . . . have you visited any of the facilities whose SWPPPs you reviewed?  A. No.").

Defendants argue in their opposition that, despite these and other shortcomings discussed in CLF's Motion, Ms. Bourdeau's methodology is sound and her opinions are reliable because she used the information that was easily accessible to her and publicly available.[3] ECF 820, Opp'n at 21–22. But the fact that this was the information that Ms. Bourdeau could easily retrieve does not mean it was sufficient information upon which to base her opinion.  Her opinion is not just that, in the 152 publicly available SWPPPs she reviewed, she did not see language regarding climate change.  She opines that, based on this limited research, "I see no evidence of a . . . 'best industry practice' . . .  for facilities regulated under the DEEP program to conduct a 'climate change vulnerability' risk assessment" and that the Permits "do not contain a requirement that permittees are required or even recommended to consider 'climate change' when preparing a SWPPP." ECF 740, Bourdeau Rpt. at 4:119–137. This is an analytical bridge too far.  Particularly when Ms. Bourdeau did not review any Defendant documents related to best industry practice, did not review

---

[3] While Defendants claim that Ms. Bourdeau "attempted outreach to additional facilities" they fail to mention that this consisted only of Ms. Bourdeau attempting to call "maybe six" facilities.  ECF 737-3, 2025 Bourdeau Dep. at 57:7–58:7. Furthermore, she did not attempt to reach out to any of the engineers who prepared the SWPPPs to ask them if they considered climate change in preparing the SWPPP and did not speak with anyone at the permittee's facilities. *Id.* at 60:23–61:23.

any journals or literature about best industry practice, conduct any other research, or base this opinion on her own expertise or experience. ECF 737-3, 2025 Bourdeau Dep. at 32:11–33:4, 74:16–19, 74:21–76:2; ECF 737-4, 2023 Bourdeau Dep. at 74:18–75:6.

Ms. Bourdeau's opinion that she saw "no evidence" of a best industry practice is not helpful to the jury or reliable when she considered such a limited amount of information.  Her opinion that the Permit does not require permittees to consider climate change is unreliable for the same reason. While an expert does not have to review every relevant fact or data point in reaching her opinion, what is reviewed must be adequate to support the expert's conclusions.  *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256 (2d Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.").  Here, "there is simply too great an analytical gap between the data and the opinion proffered" to admit Ms. Bourdeau's testimony.  *Liberty Mut. Ins. Co. v. Day to Day Imps. Inc.*, No. 22-cv-02181, 2025 U.S. Dist. LEXIS 144858 at *15 (S.D. N.Y. July 29, 2025).

Ms. Bourdeau's additional reliance on her conversations with a DEEP employee and her review of various enforcement actions does not bridge this gap because this information suffers from similar limitations.  While Ms. Bourdeau asked Ms. Abbott whether she was aware of any SWPPPs that considered climate change and whether she was aware of related CT DEEP enforcement actions, she has no idea of the depth, breadth, or basis of Ms. Abbott's knowledge regarding these topics. *See, e.g.,* ECF 737-3, 2025 Bourdeau Dep. at 71:8–15 ("I haven't done extensive research on Karen Abbott's career and how long she's been with DEEP – I think she said it was 15 years – or when she started or what her roles were in all those situations.").  In addition, Ms. Bourdeau does not even know, and was unable to tell CLF, how many enforcement actions

she herself reviewed in reaching her conclusions, or which permittees were subject to the enforcement actions. ECF 737-3, 2025 Bourdeau Dep. at 63:15–64:9. In any event, as stated above, a lack of CT DEEP enforcement is not dispositive of the Permit's requirements and, therefore, does not support Ms. Bourdeau's conclusion that permittees were not required to consider climate change. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 62 (1987). An agency's failure to enforce a permit's provisions is irrelevant in citizen suits and any probative value it has is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. This information, and Ms. Bourdeau's opinions relying on it, should be excluded pursuant to Fed. R. Evid. 401 and 403.

## CONCLUSION

For the foregoing reasons, CLF respectfully asks this Court to Grant CLF's Motion to Preclude the Expert Testimony of Renee Bourdeau.

Dated: November 17, 2025

Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc.,
by its attorneys

*/s/ Elizabeth Smith*
Elizabeth Smith (phv208361)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9627
E-mail: esmith@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*

10

Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street, Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street, Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street, Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9628
E-mail: lsinger@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor

11

Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*

*\*Admitted as Visiting Attorney*

12

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, the foregoing motion was filed through the Court's electronic filing system ("ECF"), through which the document is available for viewing and downloading from the ECF system, and a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Elizabeth Smith*
Elizabeth Smith