## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 17, 2025 |
| | **FILED UNDER SEAL** |
| *Defendants*. | |

**[UNREDACTED] PLAINTIFF CONSERVATION LAW FOUNDATION'S REPLY TO DEFENDANTS' RESPONSES [ECF 825] TO PLAINTIFF'S MOTIONS TO SEAL ITS MOTIONS TO PRECLUDE DEFENDANTS' EXPERTS [ECF 707, 715, 723, 731]**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................ iii

I.    Introduction .................................................................................................................. 1

II.    Argument ...................................................................................................................... 1

    A.  Defendants Fail to Argue to the Sealing Standard ................................................... 1

    B.  Defendants' Misrepresent the Court's Rulings ......................................................... 5

    C.  Defendants' Misrepresent the Record of Confidentiality Claims ............................ 7

    D.  Defendants' Interpretation of the Protective Order Regarding Deposition
        Transcripts is Unworkable and Irrelevant for the Sealing Standard .......................... 8

III.    Conclusion ................................................................................................................... 10

**TABLE OF AUTHORITIES**

*Cases*

*Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC,*
   No. 3:18-CV-705 (VLB), 2020 WL 13303727 (D. Conn. Aug. 21, 2020) .............................. 3

*CSL Silicones, Inc. v. Midsun Grp. Inc.,*
   No. 3:14-CV-1897 (CSH), 2017 WL 4750701 (D. Conn. July 12, 2017)................................ 4

*In re Parmalat Sec. Litig.,*
   258 F.R.D. 236 (S.D.N.Y. 2009) ........................................................................................... 3

iii

## I.    INTRODUCTION

Plaintiff Conservation Law Foundation, Inc. ("CLF" or "Plaintiff") respectfully files this Reply to Defendants' Responses to Plaintiff's Motions to Seal its Motions to Preclude Defendants' Experts [ECF 707, 715, 723, 731] ("Defs. Resp. to MTS"). ECF 825. Defendants' arguments assume an incorrect standard of sealing at odds with district and circuit precedent, misrepresent the Court's rulings in this case, and also misrepresent this case's record on confidentiality claims. Defendants propose the Court adopt a reading of the Standing Protective Order ("SPO") (ECF 7) that is unintelligible and unworkable. Despite Defendants' unsupported free-floating assertions, there is simply no evidence on the record that placing the Motions to Exclude, expert reports, and deposition transcripts on the public docket will have any impact on Defendants at all. At issue in the underlying Motions to Seal is not whether Defendants' primary documents, like a DEP or metocean analysis, could be designated confidential under the SPO. The Court's decision is whether Defendants have provided specific and adequate evidence of harm that outweighs the strong presumption of public access and can therefore justify sealing an entire expert report based on a few references to primary documents on a few pages. The Court should disregard Defendants' arguments and deny the underlying Motions to Seal resulting in CLF's Motions to Exclude and their expert report and deposition transcript exhibits unredacted and unsealed.

## II.    ARGUMENT

### A.  Defendants Fail to Argue to the Sealing Standard

Defendants' only argument in favor of sealing is to note where within expert reports there are references to primary documents, or other expert reports that contain references to primary documents, that have been designated confidential under the SPO. This argument ignores that the sealing standard in this Circuit, as this Court has noted, ECF 221, requires at least two additional steps. The party seeking protection from disclosure must provide specific allegations explaining

1

how exposure of designated material would cause a business or financial harm. The court must then weigh that claim against the presumption of public access. Defendants' failure to supply any of this information should result in the filings being placed on the public docket.

Defendants' Response applies to four different motions (ECFs 707, 715, 723, and 731) and covers the sealing of redactions in four memorandum of law (ECFs 708, 716, 724, and 733), and an associated eight reports and deposition transcripts across 10 exhibits: Bodine Report (ECF 709), French-McCay Transcript (ECF 716), French-McCay Report (ECFs 718 and 728), Michel Report (719), Nairn Rebuttal Report (720), Jones Revised Report (ECFs 721 and 727), Uhlmann Report (ECF 735), Uhlmann Transcript (ECF 736). Defendants provide a "Table A - Summary of Confidential Materials in the Expert Reports" that purports to identify citations where there is a reference to or discussion of documents designated confidential but fail to address why such citations or discussions warrant sealing[1]. ECF 825 at 5–11. Moreover, this table discusses, at most, a few pages of each report and therefore Defendants have failed to justify keeping the entire reports under seal. In addition, the Table puts forward information in cited-to reports (those not at issue in the Court's decision) that are unrelated to the reference in the report at issue in the Court's decision. For example, Table A states that the French-McCay Report cites to the Bayles & Pace Report, and then states the designated documents used in the Bayles & Pace Report. *See* ECF 825 at 5–6. But, Table A fails to explain that the two single line references to the Bayles & Pace Report in the French-McCay Report do not refer to any of that designated information, but instead paraphrase one Bayles & Pace opinion. *See* ECF 825 at 5–6; French-McCay Report, ECF 718 at 12, 23 ("The tanks are designed to withstand storm surge conditions and extreme winds (Bayles and Pace,

---

[1] Defendants also make a point of the fact that CLF designated its expert reports confidential. *See, e.g.*, ECF 825 at 5. That CLF acted in accordance with the SPO has no bearing on whether or not such documents should be sealed.

2025).").

For the two deposition transcripts, Defendants filed their original line-by-line confidentiality designations (ECFs 825-1 and 825-2) and then make the assertion that each "is tailored to pages that quote, reveal, or analyze Designated Materials" and those excerpts "include and discuss their respective expert reports . . . and other exhibits that . . . cite and synthesize Defendants' non-public, commercially sensitive materials." ECF 825 at 13–14. These generalized, unsupported statements do not provide any explanation of a business or financial harm related to any of these designations or even identify what specific documents or information is at issue.

Defendants' failure to point to any specific information in the expert reports that would be harmful if revealed is indicative of their fundamental inability to support their claims to sealing and should be fatal to their justification for sealing these documents. Courts require parties to justify why disclosure of confidential material causes a harm because the confidentiality applied to discovery materials is for the purpose of allowing discovery to proceed smoothly, and does not have a direct relationship to the Court's weighing decision regarding motions to seal. *See In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009); *Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, No. 3:18-CV-705 (VLB), 2020 WL 13303727, at *3 (D. Conn. Aug. 21, 2020) ("[T]he fact that business documents are secret . . . does not warrant sealing absent a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection."); *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *2 (D. Conn. July 12, 2017) (finding that a party's designation of a document as "confidential" under a protective order does not grant a presumption that sealing is appropriate where the order "grant parties 'open-ended and unilateral deference' to protect whichever discovery materials they choose" (citations omitted)). For example, Defendants'

3

Table A states that Dr. French-McCay's report includes details from two documents, the Emergency Response Action Plan and the Business Continuity and Storm Action Plan. *See* ECF 825 at 6. What this table fails to explain is the French-McCay Report citations to those documents do not expose any specific information about the documents, much less a trade secret or proprietary information that could cause business harm. The citations at pages 12 and 23 merely say: "The facility plans call for balancing the volumes of oil in the tanks to reduce likelihood of leakage or failure when a severe storm is predicted." ECF 718 at 12, 23. And the citation at pages 27 to 28 merely says: "The facilities oil spill response plan would include provision for such cleanup operations, at capacities based on a WCD (Triton Terminaling LLC, 2024). As part of the response, responders would control spreading of the oil with booms, barriers (e.g., to drainage), and sorbents and other activities." ECF 718 at 27–28. These quotes are the entirety of the information that would be exposed by making the report public. They are highly generalized simple summaries stating that Defendants' have emergency response plans and those plans have some basic steps. Further, Defendants claim the French-McCay report's citations from the Sullivan Deposition exposes confidential information, but the only two references[2] to Sullivan in that report are simply to the assertion that "These protocols were followed for Superstorm Sandy." *See* ECF 718 at 12, 23. Defendants are required to explain how exposure of this type of information would be competitively disadvantageous. They did not provide this explanation, because there is no realistic or reasonable argument that the above quoted information simply stating Defendants have emergency response plans, those plans have steps, and those plans were followed in one storm, have any relationship to a business or financial harm.

---

[2] Table A says there are citations to Sullivan's transcript on pages 12, 23, and 27-28, but that is incorrect, the above cited sentence is found verbatim on pages 12 and 23. Pages 27 and 28 of the French-McCay report do not have any citation to Sullivan, nor any uncited in text descriptions from that deposition.

### B. Defendants' Misrepresent the Court's Rulings

Defendants cite to the Court's rulings on past motions to seal on discovery motions and make two claims: 1) CLF's position "is at odds with . . . the Court's prior sealing rulings," and 2) the prior rulings were on the same or "substantially similar material." ECF 825 at 2, 3, 11, 12, 13, 15. Both contentions are incorrect misrepresentations.

First, prior rulings on motions to seal have all stated they were limited to the lower standard applied to discovery motions in general and specifically to how the documents at issue were related to the judicial function in those motions. In the Court's May 16, 2023 ruling on a motion to seal regarding CLF's motion to compel discovery, the Court stated, "In holding that the *Lugosch* test favors sealing these documents in this instance, I express no view as to whether they would merit sealing if submitted at a later phase of the case, e.g., in connection with a summary judgment motion." ECF 221 at 16–17; *see also* ECF 288 ("The Court expresses no view on whether the portions of Exhibits Q, S, or Z that will remain sealed under this order would merit continued sealing if submitted in connection with a summary judgment or other dispositive filing, or as exhibits at trial."). Furthermore, when evaluating motions to seal on discovery motions, the Court made some rulings based on how the exhibit was related to the arguments in the discovery motions. For example, in the Court's September 23, 2023 ruling on the motion to seal regarding CLF's motion for additional depositions, the Court noted that CLF had cited certain documents and emails to show the role of a certain consultant, which was unrelated to the technical information also in those documents, which were the basis of Defendants' alleged competitive harm. ECF 288 ("CLF cited them only for the identity and role of the consultant that performed the spill containment volume calculations, not for the calculations themselves or for their other engineering content. . . . Because CLF cited Exhibits Q and S only for these two points, the additional information in the document would have essentially no bearing on the public's ability to monitor how the Court

5

performed its Article III duties in adjudicating the discovery motion."). Because the Court's prior rulings were expressly confined to discovery motions and the specific way those documents were used in those discovery motions, those prior rulings have no bearing on the decision on the instant Motion to Seal.

Second, the Court's prior rulings were not on the same materials at issue here, as Defendants allege. The Court's current decision is whether expert reports and deposition transcripts should be sealed. The prior motion to seal rulings related to Defendants' emails and documents. The only time the Court has considered the confidentiality of any expert material in this case is the ECF 616 excerpt of Dr. Wendi Goldsmith's Expert Report which was used as an exhibit to CLF's Opposition to Defendants' Motion to Stay, ECF 604. The Court ruled on July 22, 2025 that the ruling was on a non-dispositive motion where the presumption of public access is low and granted sealing of only a portion of Dr. Goldsmith's report. ECF 656. Notably, Defendants had come forward in their brief on the Motion to Seal acknowledging that wholesale sealing of the Report excerpt was inappropriate and supplied a version of the excerpt with line-by-line redactions just over quotes and discussions of the content of confidential documents. *See* 629 at 5; 629-4. The difference between Defendants' primary documents and an expert report generally discussing those materials is important because Defendants claimed that their harm is tied to the fact that they sell some of these documents to third parties. *See* ECF 629 at 4 ("[P]otential customers could access the documents without compensation to Shell GSI, the owner of the intellectual property, causing direct financial loss to Shell GSI."). Where paraphrases or quotes from a document are the only thing exposed, there is no reduction in a third party's need to purchase the primary document.

Here, the Court need not follow the prior rulings on primary documents, as the materials at issue here are expert reports, which are different from Defendants' primary documents.

6

Furthermore, the only other time the Court has considered sealing an expert report or deposition, both Defendants and the Court agreed that sealing was only warranted for portions of the report.

### C. Defendants' Misrepresent the Record of Confidentiality Claims

Defendants' Response includes a series of claims that certain documents are confidential. These claims ignore that many of the documents either were never designated confidential, or Defendants already withdrew any claim to confidentiality. Defendants' Response Table A claims that many expert reports should be sealed due to references to documents that are already public.

As an initial matter, Defendants argue for sealing of the Nairn Rebuttal Report based on purported references to designated information. *See* ECF 825 at 8–9. As CLF has noted in other filings, this Rebuttal Report was not designated confidential by any party. ECF 832 at 16. Defendants claim references to the Business Continuity Plan warrant sealing. ECF 825 at 6, 7, 8, 9, 10, 11. The Business Continuity Plan was produced with confidential designations, but then Defendants stated that in a February 2023 declaration that the information in that Plan did not warrant sealing. ECF 174 at 8 ("The Business Continuity Plan is a confidential document because it contains personal information that is considered to be company-internal and persons named in the document would have an expectation of privacy. See Ex. A, ¶ 14. However, this personal information is limited to the appendices. The remainder of the document includes a general process that is not detailed enough to be considered commercially valuable or competitively sensitive."). Defendants also claim references to the Terminals' Spill Prevention Control and Countermeasures Plan warrants sealing. ECF 825 at 6, 7, 8, 9, 11. That document has been on the public docket since 2022. *See* ECF 47-8. As CLF has noted in previous filings, claims that core details about the Terminal's layout, what is stored in which tanks, and calculations about secondary containment volume are confidential, should be disregarded as that information has long been public in documents filed by CLF and by Defendants. *See* ECF 702 at 3–4, 8–9, and 10–11. Furthermore,

Defendants' claim references to a "Climate Change Effects Vulnerability Assessment and Mitigation Plan" warrant sealing, ECF 825 at 6, 8, 10, 11, without explaining that refers to an appendix to a SWPPP for Defendants' facility in Long Beach, California that is submitted to government regulatory bodies in California and CLF obtained an unredacted copy of that document (as anyone could) from those government entities.

In addition, Defendants claim citations to other expert reports in this case are a basis for sealing expert reports and deposition transcripts. ECF 825 at 5-10, 13. That reasoning is circular. Defendants' argument relies on the assumption that sealing of the expert reports is automatically warranted, ignoring the fact that designation of a report does not justify sealing and secondary references to a report must also be independently examined to determine if that secondary reference meets the sealing standard. For example. Defendants note that Dr. Michel's Report cites to the Etkin, McCay, and Morrison Reports. *Id.* at 7.   Those citations are merely general recitations of expert opinion., which in Defendants own briefs they have filed in open court. *See* Defs. Mot. to Exclude Dr. Michel, ECF 712-1 at 8–10, 14–16, and17–28.

Defendants' failure to explain to the Court the many ways the documents cited in these reports were never confidential or have long been in the public domain undercuts any reliance the Court can place on Defendants' unsupported assertions.

### D. Defendants' Interpretation of the Protective Order Regarding Deposition Transcripts is Unworkable and Irrelevant for the Sealing Standard

As CLF has pointed out in previous filings, Defendants' argument that deposition transcripts should be self-designating, and now argue should be self-sealing, ECF 825 at 12–15, are not supported by the text of the SPO and are unworkable. *See* ECF 799 at 3–4. The protective order states that transcripts may be designated one of two ways, "(a) when the testimony is recorded, or (b) by written notice to all counsel of record." ECF 7 ¶ 13. The protective order does

8

not say there is a third option. Defendants claim that paragraph 13 automatically makes deposition testimony confidential where a confidentially designated exhibit is used and discussed. ECF 825 at 13–14. The sentence from the SPO that Defendants partially quote relates to whether a designated exhibit may be used and shown to a witness. The purpose of that sentence is to ensure that confidential designation of a document does not interfere with a party's ability to use the document in a deposition. It is not a secret third way to designate transcripts. Regardless, Defendants' only make this argument seemingly as a justification for the designations they made in writing. *See* ECF 825-1 and 825-2.

What Defendants fail to include in this argument is an actual argument or even assertion that to make the designated material public would cause any harm to Defendants. Even the most cursory review of these passages will show why Defendants did not put forward significant argument on harm as the transcripts simply do not discuss in detail anything remotely confidential. For example, the designations on the Uhlmann Deposition excerpt deal exclusively with Mr. Uhlmann's compensation as an expert and involve no discussion of Defendants' documents or business. *See* ECF 736. And the designations on the French-McCay Deposition excerpt deal with what materials were considered, her compensation, the history of development of a licensable oil spill model, the expert's results from running a model, and a discussion on how the expert's results compare to other sites or other experts' opinions. *See* ECF 716. At no point is there any discussion of a single document or information that relates to Defendants' business practices. Tellingly, the exhibits introduced in Dr. French-McCay's deposition do not include a single document produced by Defendants. ECF 716 at 4.

Defendants' entire argument for sealing the two deposition transcripts at issue relate to procedural issues with how a party designates material, rather than any explanation to the Court of

9

the contents of the transcripts or what harm would fall to Defendants should those transcript excerpts be exposed. This is for the simple reason that there is no good faith argument that the material would cause any business or competitive harm to Defendants. The Court should not seal the deposition transcripts as Defendants have put forward no workable basis for ruling there is information that should be sealed.

## III.   CONCLUSION

For the foregoing reasons, CLF asks the Court to deny the underlying Motion to Seal and rule the memorandum of law, expert reports, and expert deposition transcript excerpts be placed on the public docket.

Dated: November 17, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ James Y. Meinert*
James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC

11

One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, CT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*

12