**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EQUILON ENTERPRISES LLC, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>Defendants. | Case No: 3:21-cv-00933-VDO<br><br>November 17, 2025 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PRECLUDE THE EXPERT TESTIMONY OF NAOMI ORESKES, PH.D., UNDER RULES 702 AND 403**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. CLF Relies on an Outdated Version of Rule 702 ..... 1

B. CLF Fails to Show that Prof. Oreskes's Initial Opinions are Admissible ..... 3

1. Prof. Oreskes is Not Qualified to Opine on Permit Terms ..... 3

2. CLF Fails to Show the Reliability of Prof. Oreskes's Methodology ..... 4

3. CLF Fails to Provide the Information Necessary to Reproduce (and Test the Reliability of) Prof. Oreskes's AI Searches ..... 6

4. CLF's Opposition Shows that Prof. Oreskes's Opinions Do Not Fit This Case ..... 7

C. Prof. Oreskes's Ad Hominem Attacks against Mr. Uhlmann Are Inadmissible ..... 9

D. Prof. Oreskes's Rebuttal Opinions Are Unduly Prejudicial ..... 10

III. CONCLUSION ..... 10

## I. INTRODUCTION

As Defendants explain in their Motion to Preclude Professor Oreskes' testimony ("Mot."), "the only issues in this case for the Court or the jury to decide (and for experts to weigh in on) are: (1) whether the 2018/2021 Permit includes a requirement to consider Climate Change Factors; and (2) whether failure to consider Climate Change Factors exactly as CLF and its experts believe they should be considered constitutes a violation of the 2018/2021 Permit and represents an 'imminent and substantial endangerment to human health or the environment.'" ECF 741-1, Mot. at 1. Prof. Oreskes' opinions do not address these issues. Instead, she opines about climate change with no connection to the Terminal or the Permit, in an effort to turn this permit case into a referendum against the fossil fuel industry's alleged cover up of climate change risks.

Prof. Oreskes admitted she knows nothing about the relevant stormwater permits, the relevant statutes, or best industry practices at petroleum bulk storage terminals like the Terminal. CLF does not deny this, instead admitting that Prof. Oreskes's sole role in this case is to offer inflammatory testimony about "the [fossil fuel] industry's historical efforts to corrupt the science related to climate change and the people responsible for regulating them," including by disparaging the credibility of Defendants' expert and former head of enforcement at EPA in the Biden Administration, Mr. Uhlmann. ECF-840 ("Opp.") at 14. As explained below, CLF fails to meet its burden to demonstrate the admissibility of Prof. Oreskes's opinions under Rule 702.

## II. ARGUMENT

### A. CLF Relies on an Outdated Version of Rule 702

As the Court knows, "Rule 702 was amended in December 2023 'to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility

requirements set forth in the rule.'" *Gursslin v. City of Rochester*, No. 6:20-CV-06508 EAW, 2025 WL 26669, at *2 (W.D.N.Y. Jan. 3, 2025) (quoting Fed. R. Evid. 702 Adv. Comm. note to 2023 amendment). CLF cites the old three-prong rule and ignores the new four-prong rule entirely. *See* Opp. at 4; *see also Post Univ. v. Learneo, Inc.*, 3:21-CV-01242 (VDO), 2025 WL 2709370, at *2 (D. Conn. Sept. 23, 2025) (holding that to satisfy its burden, the proponent must establish that expert testimony satisfies the four prerequisites of Rule 702).

CLF dismisses Defendants' concerns about Prof. Oreskes's testimony as issues that "go[] to the degree of credibility to be accorded to the evidence, not to the question of its admissibility" and argues that "our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." Opp. at 5 (citations omitted). However, the cases it cites predate the rule change. *See id*. Now, the Advisory Committee and courts subsequently applying the new Rule 702 recognize the need for stricter admissibility requirements. *See* 2023 Adv. Comm. Notes §1 ("Some challenges to expert testimony will raise matters of weight … But this does not mean, as certain courts have held, that arguments about the sufficiency of an expert's basis always go to weight and not admissibility."); *see also, e.g.*, *Fleming v. Vill. of Rockville Ctr.*, No. 2:19-CV-5435, 2025 WL 2774808, at *6 (E.D.N.Y. Sept. 24, 2025) ("Rule 702 was amended in 2023 'in response to court decisions that admitted expert testimony too liberally."); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 , 2025 WL 2383768, at *2 (Aug. 18, 2025) ("Because jurors may lack the specialized knowledge to evaluate the quality of witness's opinion and its limitations, it is not enough to presume expert testimony admissible and relegate issues of reliability to cross-examination. … Courts must withhold endorsement from expert witnesses who fail to meet Rule 702's standards—they cannot bypass this gatekeeping responsibility and pass it off to the jury.") (cleaned up); *In re Valsartan, Losartan, &*

*Irbesartan Prods. Liab. Litig.*, MDL No. 19-2875, 2025 WL 3141002, at *12 (D.N.J. Nov. 10, 2025) ("The entire purpose of Rule 702 is to keep unreliable expert testimony from ever reaching a jury. And for good reason. How could the Court ever 'unring' the proverbial bell *after* the jury had listened to hours of unreliable expert testimony? The prejudice to Defendants would be insurmountable.").

The Court should decline CLF's invitation to apply an erroneous evidentiary standard.

**B. CLF Fails to Show that Prof. Oreskes's Initial Opinions are Admissible**

**1. Prof. Oreskes is Not Qualified to Opine on Permit Terms**

As CLF concedes, Prof. Oreskes "does not have any expertise in permitting and enforcement." Opp. at 1. Nor does CLF challenge that Prof. Oreskes admits that she lacks expertise in "the operation of energy and oil and gas facilities" or "industrial stormwater permits." Mot. at 8. Nor does CLF attempt to deny Prof. Oreskes's admission that she is not offering opinions at all on what is "best industry practice" or "best management practice" under any relevant permit. *Id*. at. 8-9 (quoting Oreskes Dep. at 311:17-21 ("[Q.] You're not offering any opinion about what best industry practice is under any of these industrial stormwater permits, correct? **A. Correct.**"); 311:23-312:4 ("Q. And you're not offering opinions on best management practices under these industrial stormwater permits, or even generally in this case, you're not offering opinions on best management practices, correct? … **A. Correct.**")).

Instead, CLF asserts that Prof. Oreskes "is uniquely qualified to provide opinions on what information about climate change was known by or available to the Defendants and when that occurred." Opp. at 6. But as Defendants explained in their Motion, CLF brings a strict liability CWA permit claim, not a common law negligence claim. Mot. at 20. The only question to resolve is whether, under the 2018/2021 Permit, the term "best industry practice" includes consideration of Climate Change Factors, as CLF claims. *Id*. at 18-20. Prof. Oreskes's knowledge regarding the

development of climate change science and the activities of the "fossil fuel industry" going back to the 1950s has no bearing on what constituted "best industry practice" for managing stormwater at petroleum bulk storage facilities between 2018 and 2024. *Id*. CLF certainly has not met its burden to explain how it could.

A historian who claims no knowledge of the permit in question, of industrial stormwater permits at all, of the operations of the specific facility in question, nor of what constitutes "best industry practice" is clearly not qualified to testify in a case where the only issue is what "best industry practice" means in the context of this industrial stormwater permit. Accordingly, Prof. Oreskes is not qualified to offer any testimony that could be relevant in this case.

**2. CLF Fails to Show the Reliability of Prof. Oreskes's Methodology**

According to CLF, Prof. Oreskes's "methodology" is, in fact, reliable. Opp. at 7-13. However, CLF either ignores or misstates case law cited by Defendants, including the *Mann* case where Prof. Oreskes's nearly identical opinions were excluded as unreliable. *Id*. at 11.

*First*, CLF attempts to distinguish this case from *Mann*, stating that she was excluded there simply because "the concept of 'climate reconstruction' was not relevant to that case." *Id*. at 11. That's incorrect. The *Mann* court made clear that her testimony was largely inadmissible:

> To be clear, the majority of Dr. Oreskes' originally offered expert testimony remains unreliable and irrelevant. Dr. Oreskes' report discusses the history of 'the debate over anthropogenic climate change,' to include her opinion as to CEI's character, history, and agenda. Such opinions are not demonstrably the product of any scientific principle or method, and are largely irrelevant.

ECF 741-7, Ex. F to Mot., at 22, *Mann v. Nat'l Review, Inc., et al*, 2012 CA 008263 B, 22 (D.C. Super. Ct. Jan. 25, 2022). These are the same opinions and methods Prof. Oreskes offers here, so the same result should occur.

*Second*, CLF attempts to defend Prof. Oreskes's [REDACTED] by citing to the same Statement on Standards of Professional Conduct from the American Historical

Association ("AHA Statement") Defendants cited in their Motion. *See* Opp. at 8; Mot. at 14. But the quote CLF points to misses the mark. At no point did Defendants assert that *any* reliance on secondary sources was inappropriate. Instead, Defendants explain, citing to the AHA Statement, [redacted] was not in line with the professional standards of historians. *See* Mot. at 14 (quoting AHA Statement, ECF-741-8, at 2) (explaining that "distinction between primary and secondary sources is among the most fundamental that historians make" and that "the professional practice of history means respecting the integrity of primary and secondary sources ***while subjecting them to critical scrutiny*** and contributing in a fairminded way to ongoing scholarly and public debates over what those sources tell us about the past and also what they fail to illuminate") (emphasis added); ECF 741-4, Oreskes Dep. at 156:23-157:10 [redacted]. Under Rule 702, this uncritical use of secondary sources makes her methodology unreliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (explaining that an expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 593 F. Supp. 2d 549, 564 (S.D.N.Y. 2008) (excluding expert testimony for failing to rise to intellectual rigors of his field).

*Third*, CLF asserts there are cases where historical testimony can help the fact-finder decide a fact at issue. Opp. at 7-10. Indeed, Defendants acknowledged that the Second Circuit has identified discrete, limited circumstances where a historian's testimony can help a jury. *See* Mot. at 25 (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135-36 (2nd Cir. 2013)).

The out-of-circuit cases CLF cites demonstrate those discrete circumstances where historical testimony on relevant claims is allowed. *See, e.g., Jacobson v. R.J. Reynolds Tobacco*

*Co.*, No. 1:12-cv-23781-UU, 2013 U.S. Dist. LEXIS 197101, at *3 (S.D. Fla. Sept. 20, 2013) (allowing historian's testimony regarding development of epidemiological literature relating to smoking where plaintiff alleged multiple counts of fraudulent concealment alleging that the defendants engaged in a decades long conspiracy to conceal the dangers of smoking);[1] *Am. Eagle Outfitters, Inc. v. Walmart, Inc.*, 2023 U.S. Dist. LEXIS 21641, at *2-3, 6-7 (holding expert in denim and blue jeans, including the "trademark significance and strength of [back pocket stitching] logos, could testify in trademark case about brand strength of trademarked back pocket stitching); *Cyprus Amaz Minerals Co. v. TCI Pac. Communs., Inc.*, No. 11-CV-0252-CVE-PJC, 2014 U.S. Dist. LEXIS 21829, at *23-24 (N.D. Okla. Feb. 21, 2014) (in case where central issue was "whether a corporation that was dissolved in 1926 was a subsidiary" of a mining company, expert economist could testify about mining industry economics during relevant time period); *Walden v. City of Chicago*, 755 F.Supp.2d 942, 946-47, 953 (N.D. Ill. 2010) (where central issue was whether plaintiff's rights were violated due to Chicago police policy and practices during 1952 arrest, expert could testify about policy and practice of Chicago police in 1952). Unlike the cases CLF cites, and despite CLF's insistence to the contrary, the "fossil fuel industry's" knowledge of climate change dating back half-a-century is not relevant to industrial stormwater management practices in petroleum bulk storage facilities between 2018 and 2024.

CLF also ignores the case law Defendants cite showing that Prof. Oreskes's recitation of case documents and cherry-picked headlines is within the jury's capabilities. Mot. at 23-26.

### 3. CLF Fails to Provide the Information Necessary to Reproduce (and Test the Reliability of) Prof. Oreskes's AI Searches

CLF misconstrues Defendants' concerns regarding Prof. Oreskes's usage of AI and

[1] *See* Complaint, *Jacobson*, No. 1:12-cv-23781-UU, ECF 1, at 39 (S.D. Fla. Oct. 17, 2012). Despite Prof. Oreskes's and CLF's repeated and improper attempts to shoehorn a fraudulent concealment claim into this strict liability CWA permit case, CLF's 30(b)(6) witness has already admitted that CLF is not asserting any fraud claims. *See* Mot. at 20.

demonstrates serious confusion about how AI works, if not willful ignorance.

At no point did Defendants argue that the use of AI is inherently unreliable. Thus, CLF's cites to case law and articles talking about the ways that AI can help the legal practice are inapposite. *See* Opp. at 9-10. Indeed, in *Ferlito v. Harbor Freight Tools USA, Inc.*, the expert in question testified that he did not at all rely on AI or consider its findings in making his opinions and instead, simply "used ChatGPT after he had written his report to confirm his findings." 2025 WL 1181699, at *4 (E.D.N.Y. Apr. 23, 2025). That is markedly different from the situation here where Prof. Oreskes testifies that [REDACTED], a problem further exacerbated by the fact that CLF hinges the reliability of her methodology largely on her ability "to choose reliable sources." Opp. at 7-11 (quoting *Maxine D. Goodman*, Slipping Through the Gate, 60 Baylor L. Rev. 824, 857 (2008)).

Instead of finding her use of AI unreliable *per se*, Defendants' concern is the lack of disclosure around Prof. Oreskes's use of AI and that her research cannot be replicated. Mot. at 17 ("no one, including Defendants, could use the information made available by CLF or Prof. Oreskes to precisely repeat her analysis").[2] *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F.Supp.3d 1075, 1135 (S.D. Fla. 2022) (excluding expert who did not provide sufficient information so others could replicate his testing) (and cases cited at 1130-1135).

CLF's Opposition does nothing to dispel the mystery around Prof. Oreskes's AI usage in her "methodology."

**4. CLF's Opposition Shows that Prof. Oreskes's Opinions Do Not Fit This Case**

CLF ultimately admits [REDACTED]

[REDACTED]

[2] CLF also ignores the grave security concerns identified by Defendants in their Motion. Mot. at 30 n. 6.

[REDACTED] *See* Opp. at 6. These opinions do not "fit" this case.

*First*, CLF incorrectly claims Prof. Oreskes's report includes opinions [REDACTED] [REDACTED]. *Id*. However, this contradicts Prof. Oreskes's testimony that she never looked for or cited materials specific to Defendants in this case, choosing instead to focus erroneously on non-party Shell plc or one of its numerous other subsidiaries. Oreskes Dep. at 118:8-14-18 (admitting she did not mention Triton or Equilon in her report), 119:2-24 ([REDACTED] [REDACTED]). Even if Defendants' knowledge was relevant, then Prof. Oreskes's opinions, by her admission, provide zero evidence of that knowledge. Both CLF and Prof. Oreskes fail to even reference the petroleum bulk storage industry that Defendants are actually a part of and whose best practices under the CWA are actually relevant, opting instead to try to lump Defendants into "the fossil fuel industry."

*Second*, CLF implies incorrectly that this Court has already determined that Defendants' knowledge of climate change science is relevant and admissible at trial. Opp. at 12 (citing *Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21-CV-00933 (JAM), 2023 WL 5434760, at *1 (D. Conn. Aug. 22, 2023)). But this Court was very clear that its assertion of relevance was limited to "*the 26(b)(1) sense*." *Id*. (emphasis added). As a matter of law, "the definition of relevance in the universe of discovery is broader than that in evidence." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005); *Eng v. City of New York*, 786 F. Supp. 3d 520, 522 (E.D.N.Y. 2025) ("Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial.") (citation omitted). In addition, while CLF cites to its own complaint to support the idea that Defendants' knowledge of climate change science is relevant to Defendants' obligations under the 2018/2021 Permit as well as whether Defendants have created an imminent and substantial endangerment, Opp. at 12, a complaint is

hardly binding authority as to what is admissible at trial. Instead, the law is clear that CWA and RCRA claims are strict liability claims, such that individual knowledge and intent are irrelevant. *See City & Cnty. of San Francisco, California v. Env't Prot. Agency*, 604 U.S. 334, 350 (2025) ("The CWA imposes a regime of strict civil liability[.]"); *U.S. v. Yetim*, 251 F. Supp. 3d 461, 469 (E.D.N.Y. 2017) ("RCRA is a strict liability statute[.]").

Prof. Oreskes's opinions regarding the history of climate change science and Defendants' knowledge do not fit the claims at issue in this strict liability stormwater permit case.

**C. Prof. Oreskes's Ad Hominem Attacks against Mr. Uhlmann Are Inadmissible**

In its Opposition, CLF does not address any of Defendants' arguments regarding the inadmissibility of Prof. Oreskes's opinions [REDACTED] [REDACTED]. Mot. at 35.

Most notably, CLF does not distinguish from or even acknowledge the clear Second Circuit case law Defendants cite holding that no expert may testify as to the credibility or bias of another witness because that responsibility belongs solely to the fact-finder. *Id.* at 35. The failure to respond to this argument means CLF concedes it. *See Skyline Risk Mgmt., Inc. v. Legakis*, 733 F.Supp.3d 316, 325 (S.D.N.Y. 2024) ("A plaintiff effectively concedes a defendant's arguments by [its] failure to respond to them.") (citation omitted). CLF does not dispute that Prof. Oreskes admitted to having no expertise regarding the ethical obligations of lawyers or the compensation of expert witnesses. Oreskes Dep. at 258:19-25 (admitting she does not know the Rules of Professional Responsibility for lawyers), 256:16-20 (admitting she is not an expert in legal ethics), 293:7-9 ([REDACTED]). Nor does CLF deny that Prof. Oreskes is not an expert on the CWA or RCRA, the actual topics on which Mr. Uhlmann testifies. *Id.* at 256:21-24.

Nor does CLF deny that Prof. Oreskes has no methodology for forming this conclusion.

Instead, CLF asserts without explanation or without citing to any authority that this testimony is [redacted] Opp. at 14. This unsupported statement is insufficient to meet CLF's burden to demonstrate that Prof. Oreskes used a reliable methodology and reliably applied it to the facts in this case. Instead, it just proves that Prof. Oreskes's opinions are based on pure, inadmissible *ipse dixit*. Fed. R. Evid. 702; *see* Mot. at 34 (collecting cases); *Amorgianos v. Amtrak,* 303 F.3d 256, 266 (2d Cir.2002) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

### D. Prof. Oreskes's Rebuttal Opinions Are Unduly Prejudicial

As Defendants explain in their Motion, as a matter of Second Circuit law, allowing Prof. Oreskes to testify about Mr. Uhlmann's credibility and bias would be unfairly prejudicial. *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (holding "it was an abuse of the district court's substantial discretion in such matters to determine that [an expert] vouching for [other witnesses'] veracity—even were it otherwise admissible—was not prejudicial, confusing, and misleading to the jury within the meaning of Rule 403.")). Rather than engage with the Second Circuit's decision in *Nimely*, which is directly on point, CLF once more ignores it and chooses instead to cite to generic law stating courts' general preference against striking experts. Opp. at 12. Not one of these cases addresses the risk of undue prejudice borne from allowing an expert to testify about another witness's credibility and, thus, do not apply.

Prof. Oreskes's rebuttal opinions are unduly prejudicial and inadmissible under Rule 403.

## III. CONCLUSION

Defendants respectfully request that the Court grant their Motion to Preclude the Expert Testimony of Naomi Oreskes under Federal Rules of Evidence 702 and 403.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Douglas A. Henderson*

Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
T: (704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE & DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com