UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> EQUILON ENTERPRISES LLC, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> Defendants. | Case No: 3:21-cv-00933-VDO <br><br><br> November 17, 2025 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE
THE EXPERT TESTIMONY OF EDWIN LEVINE**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

    A. Mr. Levine's Opinions are Improper Rebuttal Under Rule 26 Because They Are Unresponsive to Defense Experts' Oil Spill Models and Calculations ................... 3

    B. Mr. Levine's Opinions are Irrelevant Because They Have No Link to the Terminal, the 2018/2021 Permit, or CLF's Claims in This Case ............................ 6

    C. Mr. Levine's Opinions Are Likely to Confuse the Issues and Mislead the Jury ..... 9

III. CONCLUSION ................................................................................................................... 10

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC (collectively, "Defendants") submit this reply in support of their Motion to Preclude the Expert Testimony of Edwin Levine.

## I.    INTRODUCTION

As noted in Defendants' Motion, CLF designated Mr. Edwin Levine, a marine scientist with no experience with industrial stormwater permits generally, the CT DEEP stormwater permit in particular, or the New Haven Terminal, to offer "rebuttal" opinions concerning "oil spill response and impacts." ECF 711-1, Def. Memo ISO Mot. ("Memo.") at 1. Far from offering rebuttal opinions, Mr. Levine's opinions were wholly new opinions, not specifically rebutting Defendants' experts. In its Opposition, CLF contends that "Mr. Levine provides relevant rebuttal" to Dr. Etkin's and Dr. French-McCay's "proposed models regarding the risks of oil spills at the New Haven Terminal, namely that the models are insufficiently specific, and that the models do not account for the many uncertainties that arise in the real—not modeled—world." ECF 827, Opp. at 1.

Mr. Levine's testimony does not "rebut or contradict" the reliability of Defendants' experts' oil spill models and calculations, however. Mr. Levine agrees that Dr. French-McCay used "[t]he most accurate models" and the most "specific model runs" available to assess the risk or impact of spills at the New Haven Terminal." ECF 711-5, Levine Rpt. ("Rpt") at 3. He also agrees with Dr. Etkin that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ECF 711-4, Ex. C Levine Dep. ("Dep.") at 167:24-168:3. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at 79:12-16. His opinions about his experience with oil spill response and climate change impacts are not responsive to Defendants' experts' models and calculations regarding the

1

risk and impact of hypothetical spills at the Terminal, and the Court should exclude them as improper rebuttal under Federal Rule of Civil Procedure 26(a)(2)(D)(ii). *See, e.g.*, ECF 711-5, Rpt. at 5 ██████████████████████████████████████████████████████

██████████████████████████████████); *id.* at 4 ██████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████.

      Setting aside that Mr. Levine's opinions are improper rebuttal, his opinions also have nothing to do with the risk of an oil spill at the Terminal or Defendants' compliance with the 2018/2021 Permit.[1] Mr. Levine admits that he did "not look[] at the effects of any weather specific" to the New Haven Terminal, ECF 711-4, Dep. at 122:11-18, that he has no opinions "related to the actual operation of the facility at issue in this case," Ex. 1, Excerpt of Levine Dep. at 108:2-8, and that he is not offering any opinions about the 2018/2021 Permit, ECF 711-4, Dep. at 105:12-16. In short, the Court should exclude Mr. Levine's testimony as irrelevant because it will not "help the trier of fact to understand the evidence or to determine" the CWA or RCRA claims at issue in this case. Fed. R. Evid. 702(a). And since none of Mr. Levine's opinions relate to the Terminal, the 2018/2021 Permit, or any of CLF's claims, his opinions about his experience with oil spills and his recommendation to "address climate change impacts" risk confusing the issues and misleading the jury about Defendants' obligations, and the Court should exclude them as unfairly prejudicial to Defendants. *See* Fed. R. Evid. 403.

---

[1] The applicable permit when CLF filed this lawsuit was the 2018 CT DEEP General Permit, which was renewed without substantive changes in 2021. CT DEEP terminated the 2018/2021 Permit on October 1, 2025, and the Terminal is currently regulated by a new permit that became effective on November 1, 2025. The new CT DEEP permit now includes—for the first time—"climate change" consideration requirements. *See generally* https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwater-gp#Permit%20Documents.

## II.     ARGUMENT

After reviewing the substantive issues raised by Defendants in their expert reports, CLF pulled in Mr. Levine for the first time to offer opinions on new topics. Yet CLF identified Mr. Levine as a "rebuttal" expert. As explained below, for both substantive and procedural reasons, Mr. Levine's expert opinions should be precluded under Rule 26, Rule 702 and Rule 403.

### A.     Mr. Levine's Opinions are Improper Rebuttal Under Rule 26 Because They Are Unresponsive to Defense Experts' Oil Spill Models and Calculations

CLF attempts to frame Mr. Levine's opinions as a rebuttal of Defendants' experts' use of oil spill models and calculations to determine the risk and impact of a hypothetical oil spill at the Terminal. *See* ECF 827, Opp. at 1, 4-5. Mr. Levine's testimony fails to challenge Defendants' experts' methodology, however, since he agrees that ▌ ECF 711-5, Rpt. at 3.

Indeed, Dr. French-McCay used "specific model runs" and "spill specific data" to reach her opinions. In her model runs, Dr. French-McCay used data from Dr. Etkin's estimated likelihood of various discharge volumes, which was based specifically on the volumes of the tanks at the Terminal. *See* ECF 830-1, French-McCay Rpt. at 10-11, 20-21. Dr. French-McCay also dedicates appendices to the model inputs, which include local topography and climate conditions based on NOAA data collected at a station located in New Haven Harbor. *See id.* at Appxs. A & E. It is difficult to imagine model runs that are more site-specific than that, and Mr. Levine's testimony does not "rebut or contradict" the reliability of Defendants' experts' oil spill models and calculations. Fed. R. Civ. P. 26(a)(2)(D)(ii).

To be sure, CLF contends that Mr. Levine's opinions "make[] clear that ▌

3

███████████████████████████ ECF 822, Opp. at 5; *see* ECF 711-5, Rpt. at 5 ("[N]ot every contingency can be accounted for when preparing to prevent or respond to a pollution event."). But Mr. Levine agrees that ██████████████████████████████████████ *id*. at 4; ECF 711-4, Dep. at 167:24-168:3, and his statement that ████████████████████ ███ fails to rebut or contradict Defendants' experts' opinions, *id*. at 167:15-168:8; *see also* ECF 711-1, Memo. at 16 ("Stating that the possibility of a spill is 'not zero' is no more helpful than stating that the likelihood of getting struck by lightning twice is also 'not zero.'").

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████—***have nothing to do*** with Defendants' experts' oil spill modeling and calculations or the claims at issue in this case. ECF 711-5, Rpt. at 5. *See Barack v. Am. Honda Motor Co.*, No. 09-CV-565, 2013 WL 12291437, at *1 (D. Conn. Apr. 10, 2013) (striking "rebuttal" opinions that were not responsive to opposing experts).

The legal problem is straightforward. Dr. French-McCay's and Dr. Etkin's reports do not "open the door for [Mr. Levine] to offer … broad new opinion[s]" about disaster response that are unrelated to the Terminal and unresponsive to Defendants' experts' testimony. *Brink's Glob. Servs. USA, Inc. v. Bonita Pearl Inc.*, No. 22-CV-6653, 2024 WL 4227760, at *8 (S.D.N.Y. Sept. 18, 2024) (excluding opinions that did not respond to or rebut defendants' experts).

Rule 26 also bars Mr. Levine from "introduc[ing] entirely new analyses or opinions" about climate change or air dispersion that are outside the scope of Defendants' experts' reports or CLF's claims. *In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, 707 F. Supp. 3d 309, 363 (S.D.N.Y. 2023). CLF does not respond to Defendants' argument that "neither of Defendants' experts even *mention* climate change in their opinions about modeling or calculating

4

potential oil spills at the Terminal." ECF 711-1, Memo. at 12-13.

As for Mr. Levine's ▮▮▮▮▮ CLF argues ▮▮▮▮▮ ▮▮▮▮▮ ECF 827, Opp. at 5. Factually, Mr. Levine's ▮▮▮▮▮ does not "rebut or contradict" Defendants' experts' opinions about the likelihood or impact of a spill at the Terminal. Fed. R. Civ. P. 26(a)(2)(D)(ii); ECF 711-5, Rpt. at 4 (admitting ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ). In addition, Dr. French-McCay did not perform ▮▮▮▮▮ ▮▮▮▮▮ has nothing to do with the CWA or RCRA claims in this case. So when Mr. Levine introduces his ▮▮▮▮▮, he's not rebutting anything from Defendants' experts, and none of the CLF experts ever expressed any opinions regarding "air quality."

The cases cited by CLF in support of Mr. Levine's opinions do not apply. In *Scott v. Chipotle Mexican Grill, Inc.*, the rebuttal expert provided an analysis of "variations in staffing and customer flow … to refute" Chipotle's expert's "findings that Chipotle's employment data show[ed] that it [made] similar use of restaurant staff" across its stores. 315 F.R.D. 33, 45 (S.D.N.Y. 2016). In this case, Dr. Levine's ▮▮▮▮▮ has *nothing to do* with Defendants' experts' oil spill modeling or calculations.

The Second Circuit's holding in *Pitasi v. Stratton Corp.*, also cited by CLF, has nothing to do with the proper scope of an expert rebuttal report. 968 F.2d 1558 (2d Cir. 1992). In that case, the court held that eliciting testimony at trial for impeachment purposes served a "permissible rebuttal function," even though the testimony sought "was not necessary for [the plaintiff's] *prima facie* case." *Id.* at 1561-62.

5

From an evidentiary perspective, Mr. Levine admits the ▓▓▓▓▓▓▓▓▓▓▓▓ is the *only* modeling that he performed that is specific to the Terminal. *See* ECF 711-5, Rpt. at A-10; ECF 711-4, Dep. at 79:12-16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ He did not evaluate "the structural aspects" of the Terminal, the "engineering and structural integrity" of the petroleum bulk storage tanks at the Terminal, or anything responsive to Defendants' experts' oil spill modeling and calculations. ECF 711-4, Dep. at 122:24-123:20.

In other words, rather than respond to or contradict Defendants' experts' analyses, Mr. Levine "introduce[s] entirely new analyses or opinions" about disaster response, climate change impacts, and air dispersion which are not proper rebuttal. *In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, 707 F. Supp. 3d at 363. This court should accordingly exclude Mr. Levine's opinions under Federal Rule of Civil Procedure 26(a)(2)(D)(ii). It is unfair for CLF to designate a new "rebuttal" expert who introduces "new" opinions because Defendants' experts would never have the opportunity to review that model from an engineering and scientific perspective.

**B.    Mr. Levine's Opinions are Irrelevant Because They Have No Link to the Terminal, the 2018/2021 Permit, or CLF's Claims in This Case**

CLF's only response to Defendants' detailed attacks on the relevance of Mr. Levine's testimony, *see* ECF 711-1, Memo. at 16-20, is that Mr. Levine's "examples of oil spill incidents associated with other terminals that have been impacted by hurricanes" will help the trier of fact "to understand[] the risk that extreme weather events pose to the New Haven Terminal," ECF 827, Opp. at 1; *see id.* at 9-10. CLF completely ignores the prejudice to Defendants of introducing brand new opinions through a "rebuttal" expert. *See infra* Section II.C.

Further, Mr. Levine's examples of oil spill incidents associated with faraway terminals are little more than "apples to oranges" comparisons that have no bearing on the likelihood of a

6

spill at the Terminal or Defendants' compliance with the 2018/2021 Permit. *Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-CV-0054, 2022 WL 594096, at *31 (D. Conn. Feb. 28, 2022). ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████. *See* ECF 711-4, Dep.at 163:12-16; 76:20-23. █

████████████████████████████████████████ *see* ECF 711-5, Rpt. at

4, and Mr. Levine's ████████████████████████████████████████

████████████████████████████████████████, *id.* at 5, 11-12. Mr. Levine also admitted that the Ashland oil spill included in his report was not the result of any weather event and that the tanks involved in that spill were being filled for the first time after being transported across the country. *See* ECF 711-4, Dep. at 122:4-20.

Indeed, Mr. Levine fails to provide any relevant link between his report and conditions at the Terminal that would make any material fact at issue in this case "more probable or less probable." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). Again, the sole legal question here is whether Defendants complied with the 2018/2021 Permit.

Yet Mr. Levine admits that he did "not look[] at the effects of any weather specific" to the Terminal, *id.* at 122:11-18, that he has no opinions "related to the actual operation of the facility in this case," Ex. 1, Excerpts of Levine Depo. at 108:2-8, and he is not offering any opinions about the 2018/2021 Permit, ECF 711-4, Dep. at 105:12-16. Mr. Levine also admitted that he did not review any of the Terminal's operational documents—including its hurricane action plan, emergency response plan, or spill prevention plan. *Id.* at 94:9-95:24. He could not even say what a Stormwater Pollution Prevention Plan or SPCC plan was. *Id.* at 94:1-3, 105:2-3. And as previously explained, Mr. Levine admitted that he did not evaluate "the structural

7

aspects" of the Terminal or the "engineering and structural integrity" of the petroleum bulk storage tanks at the Terminal. *Id*. at 122:24-123:20. Because Mr. Levine did not even consider the Terminal in his Report, his oil spill examples and his general, qualitative opinions about oil spills and climate change will not "help the trier of fact to understand the evidence or to determine" CLF's claims. Fed. R. Evid. 702(a).

The *only* testimony Mr. Levine provides that is remotely related to the Terminal is the previously discussed ▮▮▮▮▮▮▮▮▮▮ that Mr. Levine admits ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF 711-5, Rpt. at 4. Again, putting aside that CLF did not claim any violations related to air dispersion in either its Notice of Intent to Sue or its Complaint, the Levine ▮▮▮▮▮▮▮▮ has no relevance to the CWA or RCRA claims at issue in this case—neither statute regulates air or odor dispersion.

CLF argues that Mr. Levine's admitted failure to address conditions at the Terminal does not make his opinions irrelevant, but the case it cites does not support its argument. *See* ECF 827, Opp. at 9. In *Dominion Resources SVC, Inc. v. Alstom Power, Inc.*, the court held that the reliability of an expert's testimony was "weakened by [his] reference to the standard insurance market rather than the market specific to large insureds," but was "nonetheless probative of the customary meaning of commercial general liability insurance"—a material issue in the suit. No. 3:16-CV-544, 2018 WL 3752878, at *7 (D. Conn. Aug. 8, 2018). Mr. Levine's opinions about the risk of oil spills and climate change impacts, by contrast, are simply not "probative" of the conditions at the Terminal or Defendants' compliance with the 2018/2021 Permit.

As it does for all its experts, CLF suggests that "Defendants' criticisms of Mr. Levine's testimony go to the weight of his testimony, not its admissibility." ECF 827, Opp. at 9. As the recent Amendments to Rule 702 make clear, however, an "attack by the opponent" goes "to the

8

weight of the evidence" ***only if*** the "court has found it more likely than not that" an expert is qualified and his testimony is reliable and relevant. Fed. R. Evid. 702, Adv. Comm. Notes, 2023 Amendments; *see also In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 19-2875 (RMB/SAK), 2025 WL 3141002, at *12 (D. N.J. Nov. 10, 2025) (rejecting plaintiff's suggestion that flaws in expert's testimony could be addressed by "vigorous cross-examination" because "this would amount to a total abdication of [the court's] gatekeeping responsibility").

The recent Amendments to Rule 702 also make clear that it is *CLF's* responsibility to show by a preponderance of the evidence that Mr. Levine's opinions are relevant to the claims that are at issue in this case. *See* Fed. R. Evid. 702, Adv. Comm. Notes, 2023 Amendments ("[E]xpert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."). From an evidentiary perspective, because CLF fails to carry its burden to show by a preponderance of the evidence that Mr. Levine's testimony has any bearing on the Terminal, Defendants' compliance with the 2018/2021 permit, or the CWA and RCRA claims at issue in this case, the court should exclude Mr. Levine's testimony as irrelevant. Fed. R. Evid. 702.

### C. Mr. Levine's Opinions Are Likely to Confuse the Issues and Mislead the Jury

Since none of Mr. Levine's opinions relate to the Terminal, the 2018/2021 Permit, or any of CLF's claims, his opinions about oil spills and his recommendation to "address climate change impacts" risk confusing the issues and misleading the jury. *See* Fed. R. Evid. 403. This case is about one CT DEEP permit, not the actual oil spill responses at other locations.

Mr. Levine's opinions about his experiences with oil spills are likely to mislead the jury about the likelihood of an oil spill at the Terminal with no quantitative basis or its "possible" or "potential" consequences at the Terminal. *See* ECF 711-5, Rpt. at 1-5 (

9

███████ (emphasis added)). Mr. Levine's opinions about ███████ ███████ ECF 711-4, Dep. at 167:24-168:3; ███████ ███████ *id*. at 174:8-13; CIRCA modeling of storm events up to a 500-year rainfall event and 20-inch sea level rise "shows no impact to the [Terminal]," *id*. at 90:2-15; and ███████ ███████, *id*. at 101:1-14, as well as ███████, *id*. at 96:9-97:9.

Mr. Levine's fourth opinion about climate change impacts at facilities elsewhere also will confuse the legal issues here and mislead the jury because Mr. Levine admitted that he is not offering ***any*** opinions about Defendants' compliance with the 2018/2021 Permit requirements or the Terminal's SPCC plan for oil spill prevention. *Id.* at 105:12-16, 123:21-124:11, 94:9-23. Mr. Levine's *ipse dixit* opinion that facilities "need to address climate change impacts," ECF 711-5, Rpt. at 5, has nothing to do with the CWA or RCRA claims that are at issue in this case and risks confusing the jury about Defendants' obligations under the 2018/2021 Permit. *Cf. Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (trial court erred by allowing an expert to "state his belief" about witnesses' credibility under Rule 403).

Because Mr. Levine's testimony is irrelevant to the CWA or RCRA claims at issue and prejudicial to Defendants, this court should exclude Mr. Levine's testimony under Rule 403.

### III. CONCLUSION

For these reasons, Defendants respectfully request that the Court exclude Mr. Levine's rebuttal opinions pursuant to Federal Rule of Civil Procedure 26 and Federal Rules of Evidence 702 and Rule 403.

Dated: November 17, 2025                    Respectfully submitted,

/s/ Douglas A. Henderson
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
T: (704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889

jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE & DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com