UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br>         Plaintiff, <br><br>   v. <br><br> EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br>         Defendants. | Case No: 3:21-cv-00933-VDO <br><br> November 17, 2025 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE
THE EXPERT TESTIMONY OF JACQUELINE MICHEL, Ph.D.**

## **TABLE OF CONTENTS**

                                                                                                                          **Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

        A.      Dr. Michel is Unqualified to Testify Regarding Pre-Spill Preparedness and Prevention ................................................................................................................ 1

        B.      Dr. Michel's Opinions Are Improper Because They Are Untimely and Exceed the Scope of Rebuttal ................................................................................................ 3

        C.      Dr. Michel's Opinions Are Unreliable Because She Does Not Employ Any Discernable Methodology .................................................................................... 6

        D.      Dr. Michel's Opinions Are Irrelevant Because They Do Not Address Defendants' Regulatory Compliance ......................................................................................... 8

        E.      Dr. Michel's Opinions Are Prejudicial Because They Rely Heavily on Unrelated and Inflammatory Case Studies ............................................................................. 9

III. CONCLUSION ................................................................................................................ 10

Defendants Equilon Enterprises LLC, Triton Terminaling LLC, and Motiva Enterprises LLC (collectively, "Defendants") submit this reply in support of their Motion to Preclude the Expert Testimony of Jacqueline Michel, Ph.D.

## I.     INTRODUCTION

CLF's Opposition cannot rescue Dr. Michel's opinions from exclusion under Rule 702. No spill has occurred, and Dr. Michel does not offer any opinions on the likelihood of a spill or the adequacy of Defendants' spill-preparedness measures. Instead, her testimony speculates about what might happen if a spill occurred—hypothetical scenarios that are irrelevant to the issues before the Court. Even if such opinions were relevant, Dr. Michel is not qualified to offer them, as her expertise lies in spill response, not in pre-spill planning or compliance with the Terminal's Permit.[1] CLF's attempt to recast these deficiencies as matters of "weight" ignores Rule 702's clear mandate that CLF bears the burden of proving admissibility. CLF has not met that burden and, therefore, Dr. Michel's testimony is inadmissible.

## II.    ARGUMENT

### A.    Dr. Michel is Unqualified to Testify On Pre-Spill Preparation and Prevention

In this case, CLF alleges that CT DEEP requires permittees to conduct a climate change assessment as part of their stormwater and spill prevention obligations. To support its claims, CLF retained Dr. Michel—not to opine on the Terminal's compliance with its Permit, but to critique Defendants' experts (Drs. Etkin, French-McCay, and Morrison) and speculate about hypothetical consequences should an extreme weather event affect the Terminal in the future.

---

[1] The applicable permit when CLF filed this lawsuit was the 2018 CT DEEP General Permit, which was renewed without substantive changes in 2021. CT DEEP terminated the Permit on October 1, 2025, and the Terminal is currently regulated by a new permit that became effective on November 1, 2025. The new CT DEEP permit now includes—for the first time—"climate change" consideration requirements. *See generally* https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwatergp#Permit%20Documents.

1

CLF now asserts that "Dr. Michel is a highly qualified expert on planning for oil spills, responding to oil spills, and evaluating oil spills." ECF 826, Opp. at 6. Defendants do not dispute that Dr. Michel has decades of experience in *post*-spill response and project management. But that is not the issue. The question under Rule 702 is whether she possesses the specialized knowledge necessary to opine on *pre*-spill planning, risk assessment, and regulatory compliance. She does not. And her own deposition confirms this, as she testified to the fact that she is not a structural, industrial, chemical, or mechanical engineer; not a meteorologist, metocean engineer, toxicologist, or climate scientist; and has never prepared or certified a Stormwater Pollution Prevention Plan ("SWPPP") or Spill Prevention, Control, and Countermeasure ("SPCC") plan; never designed a bulk storage facility or secondary containment; and never worked for CT DEEP, EPA, or any Connecticut industrial facility. *See* ECF 712-2, Ex. A, Michel Dep. ("Dep.") at 36:17-38:3, 38:4-40:8.

CLF's argument to the contrary is superficial, relying on conclusory statements rather than evidence of planning expertise. For example, CLF asserts that "Dr. Michel has extensive experience in oil spill preparation, response, and evaluation[,]" including "over 45 years of experience in oil spill planning, response, and assessment." ECF 826, Opp. at 6. But while CLF invokes terms like "preparation" and "planning", CLF does not—and cannot—identify a single case study, project, or position in which Dr. Michel was responsible for addressing such pre-spill issues. This omission underscores the lack of any spill planning or modeling expertise. *Id*. at 5-8.

The few materials CLF does cite, such as a handful of Dr. Michel's publications and her work at RPI, are referenced only in passing and without explanation as to the nature of her actual role, the extent of her contributions, or how any of them establishes pre-spill expertise. *Id*. at 6-7. CLF does not establish that Dr. Michel is qualified to address the issues of planning and risk

2

assessment, which lie at the heart of this case. *See Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 359 (2d Cir. 2004) ("Rule 702 requires that expert testimony come from someone who is 'qualified as an expert by knowledge, skill, experience, training or education'"). Instead, CLF proves Defendants' position. For example, CLF applauds Dr. Michel for her work "following spills and tanker groundings" and highlights her leadership in the "Office of Response and Restoration, Emergency Response Division," which she herself cites as the basis for "[m]ost of [her] expertise." ECF 826, Opp. at 6; ECF 712-3, Michel Rebuttal Rpt. ("Rpt.") at 1. Thus, CLF's own evidence makes Defendants' point that Dr. Michel may be qualified with regard to response, but not preparation, probability analysis, or modeling.

This distinction is critical. As courts have recognized, expertise in one field does not automatically qualify an expert to opine on matters in a related but distinct field. *See, e.g., Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 642 (S.D.N.Y. 2007) ("An expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702."); *Johnson v. Walden Univ., Inc.*, No. 3:08CV00045 DJS, 2012 WL 2087414, at *4 (D. Conn. June 8, 2012) (under the Rules of Evidence, "there is some limit to every expert's expertise and that he cannot be allowed to go beyond it"); *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) ("[t]o determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." Here, the mismatch between Dr. Michel's resume and the subject matter she now seeks to offer testimony on requires exclusion.

    **B.    Dr. Michel's Opinions Are Improper Because They Are Untimely and Exceed the Scope of Rebuttal**

CLF ignores a key procedural defect: Dr. Michel's opinions were disclosed late and

3

improperly. She is not a true rebuttal expert—her testimony advances affirmative theories on spill aftermath and remediation that Defendants never raised. *See* ECF 712-1, Def. Memo. ISO Mot. ("Memo.") at 8-11. Labeling her as "rebuttal" is a clear attempt to evade Rule 26 and inject new opinions after the deadline. This alone warrants exclusion.

In fact, CLF does not dispute that Dr. Michel was retained with ample time to disclose her opinions with its initial affirmative reports. *See* ECF 712-2, Dep. at 7:18-20; 9:3-9 (explaining timing of retention). This strategic delay is the very sandbagging this Court has prohibited in the past and should do so again here. *See Chery v. Town of Enfield*, No. 3:19-CV-1952 (VDO), 2024 WL 4372386, at *1 (D. Conn. Oct. 2, 2024) (applying Fed. R. Civ. P. 37(c)(1) to exclude testimony due to untimely disclosure); *see also Brink's Glob. Servs. USA, Inc. v. Bonita Pearl Inc.*, 2024 WL 4227760, at *6 (S.D.N.Y. 2024) (excluding "new opinions that could and should have been included in its initial report").

CLF incorrectly argues that rebuttal is permissible so long as it addresses the same subject matter. ECF 826, Opp. at 8-12. Rule 26(a)(2)(D)(ii) confines rebuttal to opinions "intended solely to contradict or rebut evidence on the same subject matter" disclosed by another party. Courts consistently hold that rebuttal is not a license to introduce new theories, cure omissions, or roll out opinions that could and should have been disclosed affirmatively. *See, e.g., In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.*, 707 F. Supp. 3d 309, 363 (S.D.N.Y. 2023) ("A rebuttal report is not the proper avenue to introduce entirely new analyses or opinions."); *Brink's Glob. Servs. USA*, 2024 WL 4227760, at *6 ("a party may not use its rebuttal opportunity to 'correct oversights in [that] party's case in chief' … or to offer new opinions that could and should have been included in its initial report").

Measured against this standard, Dr. Michel's report is improper rebuttal. Although styled

4

as "rebuttal," it advances new affirmative theories that were available during CLF's initial affirmative disclosures. For example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ECF 712-3, Rpt. at 2-11. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. at 11-16. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[2] *Id*. at 17. Defendants first learned of these inapt opinions in Dr. Michel's so-called "rebuttal" report.

These are not harmless deviations. CLF could have disclosed Dr. Michel's opinions affirmatively but withheld them for rebuttal, depriving Defendants of any chance to respond under the Court's schedule. CLF's reliance on *Scott* (and *Capri Sun* quoting *Scott*) does not excuse this harm. Those decisions permit rebuttal only within the same framework—not as a vehicle for introducing new affirmative theories. In fact, though CLF conveniently ignores this point, *Scott* itself underscores that "[a] rebuttal expert report is not the proper place for presenting new legal arguments, unless presenting those arguments is substantially justified and causes no prejudice." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016). Dr. Michel's report exceeds that boundary, introducing multiple-tank failure scenarios, novel toxicity thresholds, and unrelated spill analogies. Such opinions are improper rebuttal and should be precluded. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (dictating that a party may offer a rebuttal expert's opinions only "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified" by another party).

---

[2] Dr. Michel's testimony about other sites and spills is irrelevant to the claims at issue in this case, namely, whether Defendants violated the 2018/2021 Permit. Her opinions are untethered to the Terminal, the Terminal's protocols and procedures to prepare for storm events, or the effects of extreme weather at the Terminal. Indeed, she cites no examples of any negative effects from severe weather events at the Terminal—because there are none.

### C. Dr. Michel's Opinions Are Unreliable Because She Does Not Employ a Reliable or Discernable Methodology

CLF's Opposition cannot fix the fundamental unreliability of Dr. Michel's approach. CLF claims that "Dr. Michel did not base her opinions purely on her word," that her methodology is based "on her professional experience and on the facts and data of peer-reviewed academic publications and government technical reports," and that she "applied both her significant experience in this area as well as relied on the facts and data of the field." ECF 826, Opp. 13-15. But CLF never identifies the name of this supposed methodology—because it is not a methodology at all. And "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit expert testimony that is based solely on 'experience' or 'training' with no identified methodology or connection to an industry standard." *Smith v. Herman Miller, Inc.*, 2005 WL 2076570, at *4 (E.D.N.Y. 2005).

A few scattered citations do not change that; Dr. Michel's testimony remains inadmissible considering it consists of little more than her own say-so, predicated on anecdotal experiences responding to oil spills. For example, consider this exchange concerning the adequacy of secondary containment at the Terminal, where she rejects the objective regulatory standard and replaces it with nothing more than her own, subjective experience:

> Q. Okay. So then this section of the regulation is what would apply to the terminal, is what I'm trying to get at; right? Because we agree that the aboveground storage tanks have adequate secondary containment?
>
> A. You know, their calculations do, but, you know, ***my experience at spills at facilities***, you know, shows that that's not, you know, adequate secondary containment.

Ex. 1, Excerpts of Michel Dep. at 64:17-65:5 (emphasis added; objection omitted). *See Perkins v. Origin Medsystems, Inc.*, 299 F. Supp. 2d 45, 54 (D. Conn. 2004) ("An expert's testimony must be held inadmissible if … the opinion is connected to the existing data only by the *ipse dixit*

6

of the expert."); *see also Charter Pracs. Nternational, LLC v. Robb*, No. 3:12-CV-1768, 2015 WL 13000251, at *5 (D. Conn. Mar. 31, 2015) (excluding expert testimony where, despite citing several other sources, the report was "largely anecdotal").

While an expert may testify based on experience alone, *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), Rule 702 requires more: "When an expert witness relies solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Connecticut Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2021 WL 4170757, at *19 (D. Conn. Sept. 14, 2021) (citing Fed. R. Evid. 702 Adv. Comm. notes). Dr. Michel does none of this. Her report offers anecdotal recollections and generalized assertions, untethered from any analytical framework.[3] ECF 712-3, Rpt. CLF's failure to show that Dr. Michel applied a reliable process to apply her experience to the facts means her opinions should be excluded in their entirety.

Under amended rule 702, CLF—not Defendants—must show it is "more likely than not" that her testimony is admissible; courts cannot defer reliability concerns to cross-examination. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at *2 (S.D.N.Y. Jan. 30, 2025) ("A court cannot bypass this gatekeeping responsibility and pass it off to the jury by declaring 'questions of the sufficiency of an expert's basis, and the application of the expert's methodology, [to be] questions of weight and not admissibility.'") (citing Fed. R. Evid. 702, Adv. Comm. Notes, 2023 Amendments). CLF's contention then that "the appropriate

---

[3] CLF's attempt to liken Dr. Michel's approach to that of Defendants' experts fails legally and factually**.** Defendants' experts employed rigorous, transparent methodologies grounded in regulatory standards, validated modeling, and site-specific data, producing detailed, documented reports. *See* ECF 712-1, Memo. at 3-5 (detailing the opinions of Drs. Etkin, French-McKay, and Morrison). By contrast, Dr. Michel's brief, experience-driven submission lacks any replicable process or objective validation. *See* ECF 826 Opp. at 13; ECF 712-3, Rpt.

remedy would not be exclusion" because the flaws in Dr. Michel's opinions are merely a matter of "weight," is therefore indefensible. ECF 826, Opp. at 19 (disputing data-selection bias).

### D. Dr. Michel's Opinions Are Irrelevant Because They Do Not Address Defendants' Regulatory Compliance

CLF's own framing of its claims underscores why Dr. Michel's opinions are irrelevant to the issues before the Court. In its introduction, CLF asserts that this case turns on whether Defendants (1) prepared a deficient Stormwater Pollution Prevention Plan ("SWPPP") and (2) failed to evaluate and address the reasonably foreseeable risks to the New Haven Terminal posed by severe weather, including risks associated with climate change. ECF 826, Opp. at 1. Yet CLF fails to explain how Dr. Michel's testimony helps prove or disprove either of these contentions.

Indeed, Dr. Michel does not opine on whether the SWPPP is deficient, nor does she address whether Defendants' operations failed to meet regulatory requirements or industry standards. *See generally* ECF 712-3, Rpt. She offers no analysis of the Permit's terms, no review of the SWPPP or related compliance documents, and no assessment of the regulatory framework at issue. *Id*. Instead, her testimony is limited to generalized assertions about what might happen in the event of a spill, based on her experience with unrelated incidents, most of which occurred in far-away locations. ECF 712-1, Memo. at 19-20; Ex. 1, Excerpts of Michel Dep. at 113:2-20 (acknowledging that her references to Katrina, Harvey, Rita, and Sandy are not offered to suggest that a storm at the New Haven Terminal would produce similar spill characteristics).

This disconnect matters because the case turns on pre-spill compliance obligations—not hypothetical spill aftermath—and Rule 702 demands that expert testimony be both reliable *and* relevant. The threshold inquiry is whether the opinion is sufficiently tied to the facts to assist the trier of fact. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993); *Pugliano v. United States*, 315 F.Supp.2d 197, 202 (D. Conn. 2004) ("The final requirement of Rule 702 is

8

that the expert witness must be able to assist the trier of fact to reach accurate results. This is the so-called 'fit' requirement."). Here, Dr. Michel's opinions are untethered to the governing regulatory framework and the factual questions before the Court, rendering them irrelevant and inadmissible.

CLF's sole claim of relevance is that "Dr. Michel's testimony covers … the same subject matters as Defendants' experts," suggesting that exclusion of one side's expert requires exclusion of the other. ECF 826, Opp. at 17-18. This is nothing more than a rhetorical tactic, relying on a false equivalence to distract from the distinct and well-founded bases for exclusion of Dr. Michel's opinions. The comparison does not withstand scrutiny.

Unlike Defendants' experts, Dr. Michel did not review the operative permit, the SWPPP, or any site-specific engineering or compliance documents. ECF 712-2, Dep. at 47:3-24. She did not perform any modeling or quantitative analysis. *Id*. at 16:20-23. Her opinions are not grounded in the regulatory context that governs this litigation, nor do they address the specific deficiencies alleged by CLF. Simply put, Dr. Michel's testimony is not "apples to apples" with that of Defendants' experts; it is unrelated to the actual claims and defenses in this case.

To crystallize this point, note that nowhere in its Opposition does CLF identify a single disputed fact or legal issue to which Dr. Michel's opinions are relevant. Instead, CLF flatly asserts that "there is 'a link between [Dr. Michel]'s testimony and the matter to be proved[.]'" ECF 826, Opp. at 17 (quoting *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)). But Rule 702 demands that a connection be made. Here, CLF has failed to show by a preponderance of the evidence that Dr. Michel's opinions are sufficiently related to the questions at hand, and, Dr. Michel's testimony should be excluded as irrelevant under Rule 702.

**E.    Dr. Michel's Opinions Are Prejudicial Because They Rely Heavily on Unrelated and Inflammatory Case Studies**

9

CLF's Opposition does not explain why the Gulf Coast events highlighted in Dr. Michel's report are relevant to the Terminal, nor why the Northeast events discussed during her deposition and referenced in Defendants' opening brief were excluded. CLF's only justification for Dr. Michel's reliance on Gulf Coast examples is that Defendants' experts "ignored" these case studies. ECF 826, Opp. at 18. This is simply incorrect. Defendants' experts made a deliberate, reasoned choice to emphasize data that is most probative and reliable, rather than outlier events with little connection to the Terminal.

In contrast, Dr. Michel inexplicably elevates less relevant, prejudicial data (Katrina, Rita, and Harvey), ECF 712-3, Rpt. at 2-11, above the most applicable evidence (Hanna, Gloria, and the Great New England Hurricane). ECF 712-2, Dep. at 83:5-85:4. This inversion of standards is indefensible. Prevailing case law demands that expert testimony be anchored in the most pertinent and reliable facts and data—not those cherry-picked for dramatic effect. *See, e.g., In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 252-253 (S.D.N.Y. 2018) (excluding expert opinions, in part, because the expert ignored evidence that undercut their opinions by focusing on tenuous analogies while ignoring more obvious comparisons); *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 437-438 (S.D.N.Y. 2005) (excluding expert testimony that ignored contrary evidence). By focusing on catastrophic Gulf Coast spills with no principled connection to New Haven, CLF invites the jury to draw broad, misleading conclusions that distort the facts and undermine a fair proceeding. Dr. Michel's opinions are inadmissible under Rule 403.

## III.    CONCLUSION

For these reasons and the reasons stated in Defendants' opening brief, Dr. Michel's testimony must be excluded pursuant Rules 702 and 403.

Dated: November 17, 2025                              Respectfully submitted,

/s/ Douglas A. Henderson
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
T: (704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE & DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com