# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| Plaintiff, | Case No: 3:21-cv-00933-VDO |
| v. | |
| EQUILON ENTERPRISES LLC, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 17, 2025 |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE THE EXPERT TESTIMONY OF RICHARD HORNER, PH.D.

**TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................................ 1

    A.    CLF Cites an Outdated and Incorrect Legal Standard ........................................... 1

    B.    Dr. Horner's Opinions Do Not "Fit" the Claims at Issue ...................................... 2

    C.    Dr. Horner's Failed to Consider Available Data ...................................................... 4

    D.    Dr. Horner's "Best Industry Practice" Opinion Is *Ipse Dixit* ................................. 6

    E.    Dr. Horner Does Not Have the Necessary Qualifications ...................................... 6

        1.    Dr. Horner Has No Experience with the Relevant Industry or Permit ....... 6

        2.    Dr. Horner Is Not a Licensed Professional Engineer ................................. 8

        3.    Dr. Horner's Experience Is Not Current ...................................................... 9

    F.    Dr. Horner's Opinions Are Prejudicial under Rule 403 ....................................... 10

II.   CONCLUSION ......................................................................................................... 10

Plaintiff Conservation Law Foundation ("CLF") bears the burden to show by a preponderance of the evidence that the opinions of its expert, Richard Horner, Ph.D., meet the requirements of Rules 702 and 403. They do not. Nothing in CLF's Opposition can salvage Dr. Horner's opinions: they must be excluded in their entirety.[1]

## I.    ARGUMENT

### A.    CLF Cites an Outdated and Incorrect Legal Standard

The admissibility of expert opinions is governed by Rule 702, but CLF cites an outdated version of the rule. As this Court recognizes, "Rule 702 was amended in December 2023 'to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.'" *Gursslin v. City of Rochester*, No. 6:20-CV-06508, 2025 WL 26669, at *2 (W.D.N.Y. Jan. 3, 2025) (quoting Fed. R. Evid. 702 Adv. Comm. note, 2023 amend.). To satisfy its burden, CLF must establish that Dr. Horner's testimony satisfies the ***four*** prerequisites to admissibility set forth in Rule 702. *See Post Univ. Inc. v. Learneo, Inc.*, 3:21-CV-01242, 2025 WL 2709370, at *2 (D. Conn. Sept. 23, 2025).

Disregarding the requirements of the amended Rule, CLF cites an incorrect evidentiary standard, offers conclusory assurances about Dr. Horner's opinions, and argues that any flaws in the opinions "should be tested" through "active cross-examination." ECF 837, Pl.'s Opp. ("Opp.") at 15-17. CLF's suggestion, however, is plainly "an incorrect application of Rules 702 and 104(a)." 2023 Adv. Comm. Notes §1 ("Some challenges to expert testimony will raise

---

[1] The applicable permit when CLF filed this lawsuit was the 2018 CT DEEP General Permit, which was renewed without substantive changes in 2021. CT DEEP terminated the 2018/2021 Permit on October 1, 2025, and the Terminal is currently regulated by a new permit that became effective on November 1, 2025. The new CT DEEP permit now includes—for the first time—"climate change" consideration requirements. *See generally* https://portal.ct.gov/deep/water-regulating-and-discharges/stormwater/industrial-stormwater-gp#Permit%20Documents.

1

matters of weight … But this does not mean, as certain courts have held, that arguments about the sufficiency of an expert's basis always go to weight and not admissibility."); *see also Fleming v. Vill. of Rockville Ctr.*, No. 2:19-CV-5435, 2025 WL 2774808, at *6 (E.D.N.Y. Sept. 24, 2025) ("Rule 702 was amended in 2023 'in response to court decisions that admitted expert testimony too liberally.'"); *In Re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. MDL 19-2875, 2025 WL 3141002, at *12 (D.N.J. Nov. 10, 2025) (rejecting plaintiffs' invitation to address flaws in the expert's testimony through "vigorous cross-examination," because to do so "would amount to a total abdication of its gatekeeping responsibility"). The Court should decline CLF's invitation to apply an erroneous evidentiary standard.

### B.    Dr. Horner's Opinions Do Not "Fit" the Claims at Issue

In its Opposition, CLF declares, without support, that its "notices of intent ["NOIs"] to sue provided adequate notice" of the alleged violations Dr. Horner opines about. ECF 837, Opp. at 17. CLF fails to point to any specific language in the NOIs or Complaint to support this statement. There is none. CLF's self-serving statement is directly contrary to Dr. Horner's admissions during his deposition. *See*, *e.g.*, ECF 734-4, Horner Dep. ("Dep.") at 166:10-11 ("Q. Did you see any reference to permeability? A. No."), 166:21-25 ("Q. Is there any mention in that document about the bypass being inadequate? A. It's not there, but I was asked to analyze it.").

Because CLF is barred under the Clean Water Act from asserting claims premised on alleged violations not contained in its NOIs, expert opinions based on those new allegations are irrelevant and inadmissible under Rule 702. *See, e.g., Save Our Health Org. v. Recomp of Minn., Inc.*, 37 F.3d 1334, 1337 (8th Cir. 1994) (where plaintiff failed to include alleged violations in NOI, the court held: "We are not permitted to entertain these allegations, which could have been included in the notice, which would have provided the government and the alleged violator with more information, and which might have led the plaintiffs to a quicker resolution of their claim.

The failure to include these alleged violations is fatal to this suit."); *see* ECF 734-1, Memo. at 20-24. Here, by not specifically rebutting or offering any factual explanation for where notice of Dr. Horner's alleged violations can be found in the NOI, CLF has conceded the truth of the statement: the alleged violations Dr. Horner includes in his report are not identified in the NOIs to give sufficient notice to Defendants and the relevant agencies, CT DEEP and EPA.

Instead of properly responding to Defendants' arguments, CLF deflects. *First*, CLF claims without citing any authority that now is not the "appropriate" time for "resolving the adequacy of citizen suit notice." ECF 837 Opp. at 17-18. CLF cites no authority for this proposition and Defendants have found none. In fact, the opposite is true; courts consider adequacy of alleged violations in the NOI at the *Daubert* phase. *See, e.g.*, *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, No. CV 111-174, 2013 WL 12141348, at *15 (S.D. Ga. Dec. 23, 2013) (considering whether an expert's testimony was admissible under *Daubert* in part based on whether the alleged violations were sufficiently contained in the NOI and Complaint).[2] Moreover, when Defendants first raised this issue with a motion for stay, the Court denied the motion without prejudice, ruling that was "not the proper vehicle" to resolve whether CLF's experts could opine on allegations not included in the NOIs, and directed Defendants to raise the issue through "*Daubert* motions, motions for partial summary judgment, motions *in limine*, or something else."[3] ECF 641 at 10. That is exactly what Defendants have now done.

*Second*, CLF claims it is not bound by the statutorily required NOI and relevance is determined solely based on how CLF decides to frame its case after the fact. ECF 837, Opp. at 18. From a statutory perspective, CLF may not amend the NOI or Complaint through expert

---

[2] In *Jones Creek*, the court ultimately allowed the testimony after finding that the alleged violations were sufficiently identified in the NOI. That is not the case here, as Dr. Horner admitted.

[3] Defendants also intend to raise this argument in their motions for summary judgment, as previewed in their letter briefs. ECF Nos. 804 and 806.

3

testimony. Legally, the opposite is true; the relevance and admissibility of CLF's expert's opinion is limited by the NOI and Complaint. *Cf. Harris v. Velichkov*, 860 F. Supp. 2d 970, 978 (D. Neb. 2012), *aff'd sub nom. Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780 (8th Cir. 2014) (excluding plaintiff's expert's opinions on FedEx's purported duty to perform an investigation because the complaint did not allege FedEx acted negligently; the opinions therefore were "not relevant to any fact of consequence in determining the action, and are therefore inadmissible").

*Third*, CLF contends that Defendants "mischaracterize[ed]" Dr. Horner's admissions that certain of his opinions were not included in the NOI. ECF 837, Opp. at 18-19. But CLF's attempt to rewrite its expert's testimony is unavailing. As mentioned above, Dr. Horner clearly made those admissions. CLF was required to identify "activity alleged to constitute a violation" in the NOI. 40 CFR § 135.3(a). There is no serious dispute that the NOI does not sufficiently identify the violations Dr. Horner opines about. This failure renders Dr. Horner's opinions irrelevant.

### C.      Dr. Horner Failed to Consider Available Data

Ignoring the requirements of amended Rule 702, CLF argues that Dr. Horner's opinions on permeability are reliable because he reviewed a 2022 Sovereign Consulting report, agreed with it based on his site visit, and reviewed a Soil Survey of New Haven County. ECF 837, Opp. at 11-12. According to CLF, Dr. Horner then concluded, based on a "Shell Project Meeting" at the Terminal on June 12, 2019, "that contaminants are likely permeating through the highly conductive soils of the Terminal to the groundwater which flows west-southwest towards the New Haven Habor." *Id.* at 12. CLF contends this is sufficient basis for Dr. Horner's opinion.

CLF misses the mark. Dr. Horner's analysis is flawed because he failed to consider all available data; failed to conduct his own testing, as permitted by the Court; and failed to explain how he concluded the soil was not impermeable. CLF offers no explanation for why Dr. Horner failed to collect and analyze samples to test the soil, even though CLF requested permission to

4

sample, which the Court granted. ECF 734-4, Dep. at 113:8-22, 114:18-19; *see* CLF's Feb. 25, 2025 Request for Entry onto Land, attached as **Ex. 1** (seeking to conduct soil sampling at Terminal); March 20, 2025 Conf. Memo. and Order (ECF 548), attached as **Ex. 2** (granting CLF permission to conduct a site visit and soil sampling). There is no dispute that Dr. Horner has failed to consider all available soil sampling[4] data, and CLF offers no explanation for this failure. Because he cherry-picked the data, his opinions are unreliable. *Cf. In re Prempro Prods. Liab. Litig.*, No. MDL 4:03-CV-1507, 2012 WL 13033298, at *3 (E.D. Ark. Apr. 11, 2012) ("'cherry-picking' positive studies, or specific data from studies, while ignoring contrary studies or data raises red flags in a *Daubert* analysis"); *Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, No. 00 C 0191, 2003 WL 1797844, at *2 (N.D. Ill. Apr. 3, 2003) (excluding testimony of expert who "failed to familiarize himself with existing data," because "such selective use of facts failed to satisfy the scientific method and *Daubert*).

Dr. Horner offers no engineering explanation for how he determined the soil is "permeable," a central point in his opinion. Dr. Horner relies simply on his own say-so. He readily admits he performed no qualitative analysis regarding percolation rate. ECF 734-4, Dep. at 146:25-147:16. He claims the soil is permeable because liquids can "rapidly infiltrate and percolate downward," ECF 734-3, Rpt. at 4, but offers no evidence for how he reached that conclusion other than the dictionary definition. ECF 734-4, Dep. at 92:14-93:14 ("Q. What does 'impermeable' mean? … A. 'Impermeable' means that it does not transmit. Q. And where is that definition found? A. I would say in Merriam-Webster. … I did not look for the definition, as I very well understand what impermeable means."). "[N]othing in either *Daubert* or the Federal

---

[4] ECF 734-4, Dep. at 193:15-21 ("Q. [S]o you reviewed the 67 soil borings from 2003, right? … A. Right. Q. Were you aware that there were additional boring logs available from 2020 and 2024? A. No, I didn't get that information."). He also conducted no research to determine what information might be available about soil at the Terminal other than looking at the New Haven County soil survey. *Id.* at 194:9-14.

Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Amorgianos v. Nat'l R.R. Pass. Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *see also In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*, 2021 WL 781682, at *13 (D. Md. Mar. 1, 2021) ("[A]ny opinions [that] are based on any of the experts' subjective beliefs—as opposed to his or her specialized knowledge, skill, experience, training, or education—are unreliable and should be excluded"). Dr. Horner's opinion on permeability is based only on his personal opinion.

### D.     Dr. Horner's "Best Industry Practice" Opinion Is *Ipse Dixit*

CLF argues that Dr. Horner's opinion on "best industry practice" for bulk petroleum facilities is reliable but merely repeats statements from his Report and deposition. Neither Dr. Horner nor CLF offers any support for that opinion. Because CLF fails to address any of the arguments on these points in the Motion, *see* 734-1, Memo. 13-15, this point is waived.

### E.     Dr. Horner Does Not Have the Necessary Qualifications
#### 1.     Dr. Horner Has No Experience with the Relevant Industry or Permit

CLF does not dispute that Dr. Horner has no experience with the CT DEEP industrial stormwater permit, no non-litigation experience with petroleum bulk storage facilities, no experience preparing SWPPPs, and no experience designing secondary containment for stormwater permits.[5] Yet Dr. Horner intends to offer opinions about each of these topics.

None of the purported qualifications and experience CLF references in its Opposition supports Dr. Horner's expertise as to these topics. That he has acted as a paid expert in other cases for the past decade and a half—involving other industries and/or other environmental

---

[5] *See* ECF 734-4, Dep. at 64:5-8 (never worked on a project in Connecticut), *id*. 64:9-14 and 81:12-14 (no experience with CT DEEP), *id*. 35:18-20 (never prepared a SWPPP), *id*. 45:12-46:3, **Ex. 3**, Dep Excerpts at 79:18-80:6 (never worked at, overseen operations at, designed, or been involved with environmental compliance management at a petroleum bulk storage terminal or tanks), ECF 734-4, Dep. at 88:6-7 (not a tank engineer).

issues, ECF 837, Opp. at 8—does not confer the requisite qualification to meet the requirements

of Rule 702. *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) ("it would

be absurd to conclude that one can become an expert simply by accumulating experience in

testifying."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 440 (S.D.N.Y. 2016),

*aff'd*, 713 Fed. Appx. 11, 15 (2d Cir. 2017) (excluding experts who "lacked pre-litigation

expertise" and "developed their theories for the purposes of this litigation"); *In re*

*Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, No. 22MD3043, 2024 WL 3357608, at *14

(S.D.N.Y July 10, 2024) ("In determining whether the witness has the relevant experience, courts

consider 'the degree to which that experience was developed for litigation.'").

CLF repeats vague summaries of Dr. Horner's experience from his Report, but fails to

provide any context for how that experience qualifies him to offer opinions here. *See Lickteig v.*

*Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 329 (S.D.N.Y. 2022) (if a witness's "expertise

is too general or too deficient," the court "may properly conclude that [he is] insufficiently

qualified."). Although nearly all of Dr. Horner's experience relates to urban stormwater

management, CLF points to his minimal experience drafting one "industry-specific" permit for a

metal recycler in California. ECF 837, Opp. at 8-9. But the Terminal is not in California or in the

metal recycling industry and it is not overseen by a California agency. Dr. Horner's experience

advising on consent decree compliance for a stormwater permit in California for an automobile

recycling yard, *see* ECF 837, Opp. at 9, only underscores his lack of relevant experience with CT

DEEP, the bulk petroleum storage industry, SWPPPs or secondary containment.

The opinions Dr. Horner offers pertain to CT DEEP's Permit and the Terminal's

secondary containment areas. None of the experience CLF cites has any relevance to the

opinions he intends to offer in this case. CLF glosses over this critical distinction by claiming

7

that Dr. Horner's qualifications "in a general field closely related to the subject matter in question" suffice. Opp. at 9 (citing *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Envt'l Consulting, Inc.,* 754 F.Supp.3d 456, 464 (S.D.N.Y. 2024), and *Manzo v. Stanley Black & Decker, Inc.*, No. 13-CV-3963, 2024 WL 5319230, at *8 (E.D.N.Y. Mar. 20, 2024)). But CLF offers no explanation for how Dr. Horner's largely irrelevant experience is "closely related" to the opinions he offers here. When CLF argues its expert is "close enough," that signals the expert testimony will not meet the new requirements of Rule 702.

Neither *Empire Surplus* nor *Manzo* supports CLF's position. *Empire Surplus* involved an insurance expert offering opinions on "post policy premium audits" in connection with surplus lines policies. 754 F. Supp. 3d at 463. Unlike Dr. Horner, that expert had specific experience with "surplus lines" insurance issues over the course of his career. *Id.* at 464-65. Similarly, in *Manzo*, the expert possessed relevant experience offering the same sorts of opinions he was offering in that case: the safety standards of power tools in the woodworking industry. 2024 WL 5319230 at *8. Dr. Horner's situation is not comparable because he has no experience working with petroleum bulk storage terminals, SWPPPs or secondary containment areas, which are the issues he intends to testify about here.

Defendants are not arguing that Dr. Horner may not be able to be qualified as an expert in stormwater discharge issues in other jurisdictions, involving other regulatory bodies, with respect to permits related to other industries or other subject matters. But his lack of any experience related to the subject of his proposed opinions here – no experience with CT DEEP; no experience with the bulk petroleum storage industry; no experience with SWPPPs; and no experience with secondary containment areas – renders him unqualified.

### 2.    Dr. Horner Is Not a Licensed Professional Engineer

CLF mentions but does not disprove Defendants' argument that Dr. Horner is not

qualified to offer any opinions on the SWPPP or the construction or design of the stormwater drainage system pursuant to the 2018/2021 Permit because he is not a licensed professional engineer. The 2018/2021 Permit and the CT DEEP guidance document expressly require "any evaluation, construction, or modification of the design of a stormwater drainage system" to be "certif[ied] by a professional engineer licensed to practice in the state of Connecticut." *See* ECF 734-5 at 6, 17. Given his lack of license in Connecticut (or any state in the U.S.), Dr. Horner's opinions on the SWPPP or his proposed modifications could not be implemented and CLF offers no opinion from any other licensed professional engineer stating that Dr. Horner's opinions could be implemented, rendering Dr. Horner's opinions unhelpful to the jury. CLF's failure to respond to this argument amounts to waiver of this point. *See* ECF 734-1, Memo. at 16-18.

### 3.    Dr. Horner's Experience Is Not Current

Like many of CLF's arguments in its Opposition, CLF does not dispute the underlying and principal premise of Defendants' motion to preclude Dr. Horner's testimony—it is undisputed that Dr. Horner retired in 2008 and since 2011 has worked only as a paid consultant and litigation expert. *See* ECF 734-4, Dep. at 50:11-14, 51:2-6, 52:11-18. He no longer actively researches the issues on which he purports to be an expert and he has not performed any research in years. *Id.* at 50:15-51:1. CLF admits that Dr. Horner has only worked as a paid consultant and litigation expert since retirement. *Id*. at 52:11-18; ECF 837, Opp. at 10.

CLF's lone effort to rebut Defendants' argument is to label his "consulting" work as "non-litigation." ECF 837, Opp. at 10. But a review of his post-2011 consulting work on his CV demonstrates the opposite. *See* 734-3, Rpt. at xxxvii- xxxix. Of those items listed under the "Consulting" heading, the vast majority, if not all, of the entries involve pre-litigation and post-litigation assessments or analyses for a variety of parties, including law firms, legal groups, and environmental advocacy groups. A cursory review of Dr. Horner's CV demonstrates that CLF's

9

use of the term "non-litigation consulting work" is at best misleading and at worst deceptive. Dr. Horner has no relevant experience in the past decade and a half not tied to litigation work.

### F.    Dr. Horner's Opinions Are Prejudicial under Rule 403

CLF contends that Dr. Horner's opinions, despite their unreliability and unhelpfulness to a jury, are not prejudicial and should be allowed.

Because CLF has failed to satisfy its burden of showing that Dr. Horner's opinions are admissible under Rule 702, allowing it to present his unqualified, unreliable, and unsupported opinions can only mislead the jury and result in confusion of the issues and unfair prejudice to Defendants, given the substantial risk that the jury might base its verdict, at least in part, on Dr. Horner's unfounded opinions. The risk is particularly acute in a case such as this one, where the testimony concerns issues that are complex in nature and are coming from a former professor. *See U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) ("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors."); *Castelluccio v. Int'l Bus. Machines Corp.*, 2012 WL 5408420, at *7 (D. Conn. Nov. 6, 2012) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); *In Re Valsartan*, 2025 WL 3141002, at *12 ("How could the Court ever 'unring' the proverbial bell *after* the jury had listened to hours of unreliable expert testimony? The prejudice to Defendants would be insurmountable."). Dr. Horner's unduly prejudicial testimony should be excluded.

## II.    CONCLUSION

For the foregoing reasons and as more fully discussed in the initial Motion, Dr. Horner's testimony should be excluded in its entirety.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
T: (704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

11

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE & DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

12

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com

13