**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| Plaintiff, | Case No: 3:21-cv-00933-VDO |
| v. | |
| EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 17, 2025 |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE
THE EXPERT TESTIMONY OF ROBERT NAIRN**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

   A.   Defendants' Motion Asserts *Evidentiary* Objections Regarding the *Admissibility* of Dr. Nairn's Opinions ............................................................... 2

   B.   CLF Failed to Establish Dr. Nairn's Opinions Are Admissible Under the Rules of Evidence ........................................................................................ 3

      1.   Dr. Nairn never read the Permit and could not reliably apply principles or methodology to analyze or interpret it ....................................... 3

      2.   Dr. Nairn relies on irrelevant and unsubstantiated standards ..................... 4

      3.   CLF cannot establish Dr. Nairn's opinions are admissible with its own endorsement of his methodology and purported application thereof.......... 6

   C.   Binding Precedent Requires Exclusion of Dr. Nairn's Unhelpful Opinions........... 8

III.  Conclusion ....................................................................................................... 10

## I.    INTRODUCTION

Rather than addressing the flaws in Dr. Nairn's opinions to meet its burden, CLF goes on a diatribe accusing Defendants of trying to rewrite and undo this Court's orders. ECF 823, Opp. at 1-2, 9-12. CLF is wrong.

In its response, CLF alleges Defendants' Rule 702 challenging CLF expert Nairn somehow tries to redefine Judge Meyer's statements that questions of fact existed on certain permit issues. ECF 823, Opp. at 1-2, 9-12. From its comments, CLF suggests resolving those questions of fact would be an evidentiary free-for-all, with any and all experts offering whatever opinions they wanted. CLF then switches gears and tries to suggest Defendants' Rule 702 tries to rewrite Judge Oliver's motion on the earlier motion to strike concerning CLF's failure to provide notice of all claims as required by the Clean Water Act.

Defendants are not trying to rewrite Judge Meyer's or this Court's rulings at all. Rather, Defendants show that Dr. Nairn is not qualified to provide opinion on a wide range of issues, especially when he admits he knows nothing about the Permit requirements at issue in this lawsuit.  As the proponent of Dr. Nairn, CLF is required to establish "that it is **more likely than not**" that Dr. Nairn's proffered testimony meets each of the criteria for admissibility under Rule 702. *Wang v. Omni Hotels Mgt. Corp.*, 3:18-cv-2000 (VDO), 2025 WL 1782264, at *3 (D. Conn. June 27, 2025) (emphasis in original).  Relying on an incorrect evidentiary standard that has not been "the law in this [C]ircuit" for nearly two years, *contra* Opp. at 7-9, 16, its Opposition makes clear that CLF cannot identify the **four** prerequisites for admissibility under Rule 702—much less establish that Dr. Nairn's opinions satisfy **all** of them.  As the Court suggested, Defendants raise the issues of notice in this Motion.

Finally, CLF's assertion, ECF 823, Opp. at 18-19, that Defendants did not assert objections to its RCRA claim is also incorrect. *See* ECF 744-1, Mot. at 6-10, 27-28, 37-38. For

1

each of the reasons set forth in Defendants' Motion and this Reply, the Court should exclude Dr. Nairn's opinions.

## II.   ARGUMENT

### A.  Defendants' Motion Asserts *Evidentiary* Objections Regarding the *Admissibility* of Dr. Nairn's Opinions

Consistent with the Court's instruction (ECF 641), Defendants' Motion seeks to exclude Dr. Nairn's opinions pursuant to Federal Rules of Evidence 401, 402, 403, and 702. ECF 770.[1] As noted earlier, the vast majority of Dr. Nairn's "opinions" allege violations that were never identified in the Notice of Intent to Sue. That requirement is mandatory under the Clean Water Act, in and above the FRCP requirements.

Contrary to CLF's claims, the **adequacy** of CLF's NOI—or lack thereof, ECF 823, Opp. at 9-12—misses the mark.[2] Regardless of the adequacy of CLF's NOI, the **only** claims in this trial are those stated in CLF's NOI and properly pled in its Complaint. Dr. Nairn's **extraneous opinions about non-existent "claims"** are irrelevant and cannot assist the jury in resolving the questions before it. As the Court suggested, Defendants seek to resolve their evidentiary objections to Dr. Nairn's inadmissible opinions under the applicable rules. ECF 641 at 10. The Court's Order speaks for itself, and CLF cannot rewrite it based on a parsed excerpt taken out of context. ECF 823, Opp. at 10. That the Court "could not resolve [the] dispute [about the jurisdictional prerequisites of CLF's citizen suit] on the basis of a table listing allegedly improper opinions" and limited briefing, ECF 641 at 10, has no bearing on Defendants' Motion. [3]

---

[1] As the Court is aware, Defendants have previously raised jurisdictional or procedural objections and arguments. Defendants reserve their right to seek reconsideration and/or raise additional objections as appropriate.

[2] The Court concluded that Defendants' motion to strike was not the proper procedural vehicle to resolve that issue. Defendants maintain that CLF's NOI is insufficient, but their Motion is not an "attempt to relitigate" previously asserted arguments. *Contra* ECF 823, Opp. at 1-2, 9-10. Nor is there a need for them to do so here.

[3] Defendants have not "ignored [CLF's] RCRA claims." *Contra* ECF 823, Opp. at 18-19. As explained, the same notice and reliability defects render Dr. Nairn's opinions inadmissible under both statutes. 744-1, Mot. at 6-12 (notice), 13-21 (Rule 702 reliability), 36-38 (Rule 403). The challenged theories—including ingress/egress

### B. CLF Failed to Establish Dr. Nairn's Opinions Are Admissible Under the Rules of Evidence

CLF's conclusory assurance that "Dr. Nairn's opinions are reliable," which is not the correct evidentiary standard, effectively concedes Defendants'' argument that they are not admissible under the applicable Rule 702. *See, e.g.*, *Devito v. Smithkline Beecham Corp.*, No. 02-CV-0745NPM, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (failure to respond to a specific challenge to an expert "amounts to a concession by plaintiff that the court should exclude [the expert's] testimony."); *see also Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), ("failure to provide argument on a point at issue constitutes abandonment"), *aff'd*, 130 F.3d 1101 (2d Cir. 1997), *cert. denied*, 525 U.S. 813 (1998).[4]

#### 1. Dr. Nairn never read the Permit and could not reliably apply principles or methodology to analyze or interpret it

Because he never read the Permit, Dr. Nairn's opinions are not based on the facts of the case. It follows that Dr. Nairn could not have reliably applied any purported principles, ECF 823, Opp. at 13, and methods to documents he **never** read. 744-1, Mot. at 17-19. CLF's failure to respond to this objection effectively concedes it. *See Devito*, *supra* at 4 and n.3.

---

thresholds, berm "failure," and 100- and 500-year flood "design" standards—were not disclosed in CLF's NOI or pleadings. *See id*. at 6-10. CLF has failed to rebut Defendants' Motion beyond its own assurances. ECF 823, Opp. at 18-19. RCRA does not relax CLF's burden under Rule 702. That CLF has claims under RCRA and the CWA is not a license to present undisclosed opinions, to rely on inapposite standards meant for other regulatory contexts (*e.g.*, NHTSA roadway depth guidance or new-construction floodplain codes), or to avoid applying any method to Terminal-specific facts. ECF 823, Opp. at 7, 15-17, 20. That is true regardless of whether the claim label is CWA or RCRA.

Regarding its RCRA claim, CLF has not shown a reliable expert linkage from flooding to RCRA "endangerment," including whether handling, storage, treatment, transportation, or disposal of solid or hazardous waste at the facility may present an imminent and substantial endangerment to health or the environment. ECF 823, Opp. at 18. Dr. Nairn does not offer those opinions. Defendants' objections to CLF's CWA claims, 744-1, Mot. at 9-10, 21-36, apply with full force and effect to all claims, regardless of the acronym(s) CLF or Dr. Nairn may attach.

[4] *Accord Green v. Doukas*, No. 97 CIV.8288CMGAY, 2001 WL 767069, at *8 (S.D.N.Y. June 22, 2001) (granting motion to preclude expert testimony because "plaintiff's failure to oppose the motion suggests … it has merit[ ]"); *Smith v. Boehringer Ingelheim Pharm., LLC*, No. 3:24-CV-01266, 2025 WL 2403042, at *4 (D. Conn. Aug. 19, 2025) ("Plaintiff does not respond directly to Defendants' argument … and so the court considers the point to be conceded.") (quoting *Simons v. Yale Univ.*, 712 F. Supp. 3d 267, 277 (D. Conn. 2024)).

Despite his failure to review the Permit, Dr. Nairn was unable to state whether he intends to testify at trial that Defendants' allegedly violated terms a document he has not read, stating: "I don't know what I will do at trial. **I haven't been instructed by CLF…. I have not been instructed by CLF.**" ECF 744-4, Ex. C., Nairn Dep. ("Dep.") at 112:5-19. CLF's claim that "[a]n expert's statement that they have not had discussions with counsel about what his role will be at trial clearly does not render that expert's opinions unreliable," ECF 823, Opp. at 13, is immaterial and contrary to precedent. *First*, Dr. Nairn's statement did not address his possible **role** at trial—he could not identify **his opinions** because CLF had not yet instructed him on that point. *See id.*; 744-1, Mot. at 15-16. Additionally, where, as here, an expert "relie[s] upon the plaintiff's attorney to provide him with" the substance of his testimony, his opinions are inadmissible. *See Prohaska v. Sofamor, S.N.C.*, 138 F. Supp. 2d 422, 437 (W.D.N.Y. 2001) ("[Plaintiff's expert] was not in fact an expert… he was hired by the plaintiffs, but that he subsequently attempted, with dubious success, to qualify himself as such by a selective review of the relevant literature.") (citation omitted); *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-cv-8645, 2018 WL 1889763, at *3-4 (S.D.N.Y. Apr. 18, 2018) (expert may not "act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's 'story'").[5]

### 2. Dr. Nairn relies on irrelevant and unsubstantiated standards

Turning to his methodological flaws, Dr. Nairn's opinions are anchored in irrelevant and inapplicable standards of professional societies and non-governing organizations.[6] CLF makes no attempt to show that these standards apply to bulk storage facilities like the Terminal or even

---

[5] CLF fails to respond to the merits of Defendants' Rule 403 objections, instead offering an unsupported blanket denial. ECF 823, Opp. at 19.

[6] For example, Dr. Nairn cites to guidance concerning flood resistance and management that have nothing to do with the Permit concerning **actual** discharges—not floods. *See, e.g.*, ECF 823, Opp., 16 n.5.

whether they are generally accepted by qualified experts in the field. ECF 823, Opp. at 16-17.

CLF's only attempt to support Dr. Nairn's methodology comes in the form of several out-of-context quotes from Shell's corporate representative, Mike Sullivan. ECF 823, Opp. at 15. According to CLF, Mr. Sullivan's testimony suggests "no one suggests that it is CT DEEP that conclusively decides as an initial matter what is best industry practice." *Id.* (citing Sullivan Dep. at 83:1-3). Taken out of context, this incomplete snippet misrepresents the substance of Mr. Sullivan's testimony. While he acknowledged that CT DEEP does not unilaterally dictate best industry practice, Mr. Sullivan did not suggest that any party—or expert—may substitute their own preferences in place of regulatory guidance or industry consensus. He also explained that compliance and best practices at the facility are determined through a combination of the Permit's requirements, input from environmental coordinators and consultants, and site-specific operational realities—not abstract standards or personal opinions. Ex. 1, Sullivan Dep. at 89:22-93:21. Notwithstanding, even CLF's citation of an incomplete and misleading snippet of Mr. Sullivan's testimony fails to support its circular reasoning.

Taken in context, Mr. Sullivan's testimony underscores that the determination of best industry practice must be rooted in the actual regulatory framework and operational realities, not in abstract or subjective standards. In comparison, Dr. Nairn selectively cites immaterial guidance from ASCE, ASFPM, FEMA, and the USACE. ECF 823, Opp. at 16, n.5.[7]

Dr. Nairn also disregards the applicable guidance for regulated stormwater management at petroleum bulk storage facilities. 744-1, Mot. at 20, 26-27. Instead, Dr. Nairn attempts to shift the scope of this case, offering opinions about "best practices" in the abstract field of coastal

---

[7] Dr. Nairn likewise cites the National Highway Traffic Safety Act, 744-1, Mot. at 19, 28, as yet another standard for flooding that, somehow, ends up being considered a violation of the stormwater Permit. As Dr. Nairn concedes, the Permit "does not speak to ingress or egress routes at [] industrial facilities," but he claims that "the implications of what must be done under the permit would require ingress and egress." ECF 744-4, Dep. at 114:16-23.

engineering and flood risk reduction projects, rather than addressing the actual requirements for bulk fuel storage and containment under the permit. *See e.g.*, *id.* at 25, 35. The law is clear: expert opinions must be centered on the facts and regulatory context of the case.

CLF's attempt to bootstrap unrelated standards to bolster Dr. Nairn's opinions confuses the regulatory requirements. ECF 823, Opp. at 16-17. The Permit governs the Terminal and is the cornerstone of this case. Yet CLF claims that any "lack of textual authority" for Dr. Nairn's opinions goes merely to weight, not admissibility. ECF 823, Opp. at 16. Applying the 2023 amendments, reliability is a threshold question of admissibility. "Indeed, 'there are only so many questions of weight that can be tolerated;'" the Court "cannot bypass [its] gatekeeping responsibility and pass it off to the jury" by declaring 'questions of the sufficiency of an expert's basis, and the application of the expert's methodology, [to be] questions of weight and not admissibility." *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570, 2025 WL 2383768, at *2 (S.D.N.Y. Aug. 18, 2025)). Dr. Nairn's opinions, untethered from the legal requirements in the Permit, are inadmissible under the applicable Rule.

### 3. CLF cannot establish Dr. Nairn's opinions are admissible with its own endorsement of his methodology and purported application thereof

In lieu of asserting a cogent—and legally sound—opposition, CLF resorts to casting aspersions and insults, dismissing Defendants' arguments as "very confusing," "difficult to decipher," and "frankly nonsensical." ECF 823, Opp. at 16-17. CLF's purported confusion is likely attributable to its reliance on the incorrect legal standards, including an outdated version of Rule 702.[8] CLF's attempt to salvage Dr. Nairn's opinions fails for at least three more reasons:

---

[8] *See Cayuga Indian Nation of N.Y. v. Pataki*, 83 F.Supp.2d 318, 322 (N.D.N.Y. 2000) ("[P]roponent's burden … to establish admissibility, rather than the opponent's burden to establish inadmissibility."); *cf. Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 554 F.Supp.3d 606, 618 (S.D.N.Y. 2020) (party "cannot shift the evidentiary burden … to escape its own failure to provide" admissible evidence), *aff'd*, 839 Fed. Appx. 545 (Fed. Cir. 2021).

*First*, Dr. Nairn offers opinions "on the adequacy of flood protection," "the stability (i.e., susceptibility to erosion and breaching) of the containment berms … including ingress and egress routes," and "evaluat[ing] the containment volume of the two fuel storage yards and Retention Pond." ECF 744-2, April 30, 2025 Nairn Rpt. at ii.[9]  A quick review of the Permit—and/or binding precedent—makes clear that these reports opinions do not belong in this case.

*Second*, without more, Dr. Nairn's "decades of experience in the field," is an insufficient basis for his opinion that "best industry practices [] apply to flood protection at the terminal," ECF 823, Opp. at 17, which is irrelevant in any event. So, while an expert may arguably rely on his experience to support his opinion, Dr. Nairn's opinion is not admissible until CLF "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *mot. for recon. granted on other grounds*, 2021 WL 5039035 (Oct. 29, 2021). CLF has not even attempted to make that showing. *See* ECF 823, Opp. at 17.

*Finally*, though CLF claims that "*Munn*[10] has absolutely no bearing on this case," it offers no explanation and does not attempt to distinguish the experts, or their conclusions and underlying methodologies, or otherwise support its argument beyond its conclusory endorsement of Dr. Nairn. ECF 823, Opp. at 17-18. *Munn* is factually analogous to this case and binding authority. *See* 24 F. Supp. 3d at 201 (excluding an expert's "unsupported, personal lay opinions **disguised** as industry standards") (emphasis added). As in *Munn*, Dr. Nairn's *ipse dixit* opinions

---

[9] *See also, e.g.*, ECF 744-4, Dep. at 114:21-23 ("[T]he implications of what must be done under the permit would require ingress and egress."); ECF 744-3, July 22, 2025 Nairn Rpt. at 24 ("[T]he best industry practices would relate to the discipline of flood protection . . . which is my area of expertise."); *id.* ("Best Industry Practices are utilized for evaluation of the performance of the **containment berms** . . ."); ECF 744-2, April 30, 2025 Nairn Rpt. at 71 ("The berms should be designed and constructed in accordance with the **best engineering practices**, ensuring structural integrity and impermeability under design conditions, including **rainfall, storm surge, and wave action**"). Best engineering practices is not a Permit requirement. Dr. Nairn is introducing additional requirements that are not in the 2018/2021 Permit.

[10] *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 201 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018).

are inadmissible. *Id.* CLF cannot circumvent the applicable standard with conclusory statements and improper arguments.

### C. Binding Precedent Requires Exclusion of Dr. Nairn's Unhelpful Opinions

The clearest example of what's legally wrong with Dr. Nairn's "opinions" is his misleading suggestion that flooding is somehow prohibited by the 2018/2021 Permit at issue in this case. Dr. Nairn repeatedly seeks to create and impose "flood management" requirements to "protect[] against" hypothetical flood events that may occur at an unknown time in the future. *See* ECF 823, Opp. at 6-7, 14-15. According to CLF, flood management, and industrial stormwater management and containment are "two sides of the same coin." Opp. at 14.

As a matter of law, stormwater discharge are <u>not</u> "two sides of the same coin"—that's the false predicate in Dr. Nairn's opinions. The 2018/2021 Permit includes no such requirements, and it's legal error to suggest otherwise, as Dr. Nair does. The CT DEEP "industrial stormwater" permit address stormwater "discharges." *See generally* ECF 744-5, Ex. D, 2018/2021 Permit. The 2018/2021 Permit is not a "flood control" permit. As well known, the Clean Water Act does not regulate "floods" or "flooding." *See* 26 U.S.C. § 1251, *et seq.* In fact, the word "flood" only appears in one section of the CWA. To suggest the 2018/2021 Permit requires a permittee to make changes to prevent a flood is misdirection of the worst kind in this case about compliance with the stormwater "discharge' permit.

Contrary to CLF's representation, *id.*, Second Circuit rejects Dr. Nairn's opinion that stormwater BMPs require permittees like the Defendant to implement flooding protections to prepare for climate-related flooding events, such as his proposed "berm" structure. *See Nat. Res. Def. Council v. U.S. E.P.A.*, 808 F.3d 556, 579 (2d Cir. 2015). Instead, the court explained, a under the CWA, a permit "must establish limits **on discharges**" and **"may** then mandate [BMPs]," *id.* at 565 (emphases added), and that a BMP is "either a practice or procedure that

8

"typically involve requirements," that "**can also be** structural requirements including . . . berms to channel water away from pollutant sources," *id.* at 579 (emphasis added).

Nothing in that opinion supports Dr. Nairn's legal opinions that Defendants violated the permit by protecting against possible flood events that may hypothetically occur at an unknown time in the future.  That's just legally not correct.  Just as Dr. Nairn seeks to impose liability on Defendants based on his opinions concerning what a permit **should require**, as opposed to the requirements actually stated in the Permit, CLF creatively interprets the *Natural Resources* opinion to support its argument BMPs **require** flood protection and preparedness. Opp. at 14. But the opinion makes clear that, while a permit **"may"** mandate BMPs that **"can"** include structural requirements, **"including"** berms, "[t]he **point of a permit is to prevent discharges** that violate water quality standards *before* they happen." 808 F.3d 556, 579 (2d Cir. 2015) (italics in original, other emphasis added). Dr. Nairn's "flood" analysis misconstrues the central issues in this case—compliance with the Permit governing the Terminal—and CLF has not established by a preponderance of the evidence a key foundational element of Dr. Nairn's opinion.

Per the Second Circuit, the CWA "gives the EPA jurisdiction to regulate and control only **actual** discharges—not potential discharges… effluent limitations can …be applied only to … **discharge of pollutants**,' i.e. those point sources that are **actually** discharging." *Waterkeeper Alliance, Inc.*, 399 F.3d at 505 (emphases in original) (citation modified). Other courts consistently hold that "EPA's jurisdiction [under the CWA] is **limited to regulating the discharge of pollutants**…. [it] is **powerless to impose permit conditions unrelated to the discharge itself**." *See Nat. Res. Def. Council, Inc. v. EPA*, 859 F.2d 156, 170 (D.C. Cir. 1988) (emphasis added).[11] Conversely, "**environmental effects… cannot be deemed to be either**

---

[11] *See also, e.g.*, *Nat. Res. Def. Council*, 822 F.2d at 129 ("As we read the Clean Water Act, **EPA's jurisdiction is limited to regulating the discharge of pollutants**, such as formulating effluent standards, issuing or denying

**direct or indirect effects of EPA's issuance of a discharge permit**," nor are they "'effects,' in any practical sense, of the permit issuance." *Nat. Res. Def. Council, Inc. v. EPA*, 822 F.2d 104, 131 n.27 (D.C. Cir. 1987).

Dr. Nairn's opinions regarding implicit requirements concerning flood management and protection and climate change risks—or anything other than actual discharges—are irrelevant. His opinion cannot assist the jurors—it can only mislead them. *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury.").

## III.    CONCLUSION

For these reasons stated here and in Defendants' initial motion, the Court should exclude the opinions of CLF's expert, Dr. Robert Nairn.

---

permits . . .") (citation omitted); *id.* at n.23 ("[The CWA] 'does not regulate construction of facilities, **only discharges** from them.'") (emphasis added) (quoting 47 Fed. Reg. at 52,077); *cf. Nat. Res. Def. Council, Inc. v. Costle,* 568 F.2d 1369, 1380 (D.C. Cir.1977) ("[W]hen numerical effluent limitations are infeasible, EPA may issue permits with conditions designed to reduce the level of effluent discharges to acceptable levels.").

Dated: November 17, 2025

Respectfully submitted,

/s/ Douglas A. Henderson
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
T: (404) 572-2769
dhenderson@kslaw.com
ctoledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street
Suite 1700
Charlotte, NC 28202
T: (704) 503-2551
alewis@kslaw.com

Rose H. Jones
HILGERS GRABEN PLLC
1372 Peachtree Street, N.E.
19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

Anthony G. Papetti (phv206982)
BEVERIDGE & DIAMOND, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

11

John S. Guttmann (ct25359)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)*
BEVERIDGE & DIAMOND, P.C.
400 West 15th Street
Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

***Counsel for Defendants***

12

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com

13