

For a thriving New England
CLF Connecticut
www.clf.org

November 26, 2025

The Honorable Thomas O. Farrish
United States District Court
450 Main Street
Hartford, CT 06103

**RE:** *Conservation Law Foundation v. Shell Oil Co., et al.*, No. 3:21-cv-933-VDO (D. Conn.), <u>Plaintiff's Motion to Determine the Sufficiency of Defendants' Responses to CLF's Requests for Admission.</u>

Dear Judge Farrish,

      Plaintiff, Conservation Law Foundation, Inc. ("CLF") respectfully submits this letter brief in accordance with the Court's Orders, ECF 473 and 921, to determine the sufficiency of Defendants' Responses to CLF's Requests for Admission ("RFAs") pursuant to Rule 36(a)(6). Defendants' Responses are insufficient and violate Rule 36(a) and the Court should order Defendants to unequivocally and simply admit or deny the requests as set forth below.

      CLF's RFAs sought admissions on simple statements regarding core facts about the New Haven Terminal's secondary containment berms, contents of and analyses associated with the Terminal's Stormwater Pollution Prevention Plan ("SWPPP"), and communications with the Connecticut Department of Energy and Environmental Protection ("CT DEEP"). Defendants tether their refusal to admit or deny these core and basic facts to their contention that these facts are irrelevant to this litigation. This is directly contrary to Defendants' years of arguments on the scope of Rule 26(b) that the New Haven Terminal's day-to-day operations and compliance with its stormwater permits are *the only relevant issues in this litigation*. Defendants' about-face makes it clear they simply do not want to admit the basic facts about their Terminal, and want to put a roadblock in front of CLF's dispositive motions and presentations at trial. However, streamlining the Court's work in evaluating dispositive motions and issues at trial is the exact purpose of RFAs, and the Court should grant CLF's Motion and order Defendants to respond to CLF's RFAs.

      CLF requests that the Court overrule two types of Defendants' inappropriate objections across RFAs 1–4, 14, and 17–20, and modify their responses accordingly. And CLF requests the Court overrule Defendants' relevance objections and to simply admit or deny RFAs 5–7 and 9–17 because the RFAs are within the scope of permissible discovery under Rules 36(a)(1) and 26(b)(1).

**Background**

      CLF served 40 RFAs on September 16, 2025, Exhibit A, and Defendants served objections

and responses on October 16, 2025, Exhibit B.[1] CLF sent a deficiency letter on October 28, 2025, raising five issues with Defendants' objections and responses to the RFAs: (1) improper use of general objections; (2) improper specific objections that did not refer to the RFA text; (3) improper specific objections claiming new legal terms were introduced that are not relevant to the suit; (4) refusal to admit or deny RFAs 5–7 or 9–17 based on relevance objections; and (5) failure to substantiate burden to respond to RFAs 21–40. CLF requested a response and a meet and confer both in the letter and then in follow-up on November 4, 5, 11, 12, 17, and 18. Defendants responded by letter on November 20, 2025, only to issues 4 and 5 in CLF's letter. Defendants' letter stood on objections and refused to amend or revise any objections or responses. The Parties met and conferred on November 21, determined they were at an impasse, and reported the impasse to the Court on CLF's issues 2, 3, and 4. CLF moves only on issues 2, 3, and 4 in order to focus and conserve judicial resources on Defendants' insufficient responses that will most certainly impede the Court's rulings on dispositive motions and trial if left unaddressed.

Issue 2 relates to RFAs 1–4, 18, and 20. Issue 3 relates to RFAs 1–4, 14, 17–20. Issue 4 relates to RFAs 5–7 and 9–17. CLF does not seek any action on Defendants' responses to RFAs 8 or 21–40.

**CLF's Requests for Admission Are Limited to the Physical Facts of the New Haven Terminal, the Contents of the SWPPP, and Whether Defendants Communicated Certain Facts about the Terminal to CT DEEP.**

CLF served focused RFAs that are limited to facts relevant to its claims. CLF did not use its RFAs to ask Defendants to admit issues of law, endorse contrived hypothetical scenarios, or admit tangential propositions about Shell's activities and scientific work all over the world. Even if RFAs covering those areas would have been permissible, CLF chose to seek simple admissions on the basic facts of the New Haven Terminal, the contents of one of the primary regulatory documents at issue—the SWPPP—and whether Defendants communicated specific facts about the Terminal to CT DEEP. CLF structured its RFAs around specific dates and documents. Each RFA is intended to streamline this litigation as it moves towards dispositive motions and trial.

Despite CLF's good faith effort to request simple, relevant, and useful admissions, Defendants have taken an extreme position and refused to respond to nearly all the RFAs based on improper, pages-long "objections" consisting of legal theories and argument that make no reference to any objection or issue with the RFA to which it purportedly responds. Defendants will have the opportunity to present their legal theories to the Court through summary judgment and trial.[2] However, in advance of those next steps in this litigation, Defendants must complete

---

[1] This Letter Brief and its Exhibits are not filed under seal because Defendants did not designate their responses confidential when serving them, as would be required by the Protective Order. ECF 7 ¶ 10. CLF believes no confidentiality designation has been made regarding these RFAs or Defendants' Responses.

[2] To the extent Defendants base their objections or responses on legal arguments regarding the sufficiency of CLF's Notices of Intent to Sue, those arguments have been presented to the Court in requests to file dipositive motions, ECF 806 at 2, and are not a basis for refusing to respond to RFAs. As CLF recently noted, Defendants' NOI arguments are factually and legally deficient and a recent Second Circuit decision means their arguments do not go to a jurisdictional issue. *See* ECF 877 at 2.

discovery in compliance with the applicable Federal Rules. Once again, Defendants have not done so here. Defendants' refusal to respond to CLF's RFAs in the manner required by the Federal Rules is once again forcing CLF and the Court to engage in rounds of briefing and argument. Just like Defendants' years of refusal to produce relevant and discoverable documents in response to CLF's requests for production, Defendants are now taking positions regarding the scope of Rule 26 that have no basis in law and are contrary to Defendants' past positions and the Court's prior rulings on the exact same issues. CLF respectfully asks the Court to Order under Rule 36(a)(6) that Defendants' responses to RFAs 1–7, 9–20 do not comply with the applicable rules and directing Defendants to unequivocally and simply admit or deny the requests as set forth below.

**Defendants' Responses to CLF's RFAs Use Improper Objections and then Deny, or Refuse to Admit or Deny, Basic Details About the Terminal and Relevant Documents to this Case**

*The Court Should Strike Defendants' Improper, Pages-Long "Objections" that Present Legal Argument and Do Not Refer to Objections or Aspects of the RFA.*

Defendants objections to CLF's RFAs contain long narrative multi-page sections of legal argument and regulatory commentary that do not identify or object to any particular wording or part of the request. This practice violates Rule 36(a)(4), which requires concise, good-faith responses, not hair-splitting avoidance and advocacy. *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988) ("[A] reviewing court should not permit a responding party to undermine the efficacy of the rule by crediting disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party."). CLF requests that the Court overrule and order Defendants to remove the following "objection" text:

- Defendants' paragraphs of objections to RFA 1, starting on page 10 at "under the general permit," and extending through the end of the section on page 13.

- For RFA 2, the paragraphs starting on page 15 at "CT DEEP recently," and extending through the end of the section on page 17.

- For RFAs 3 and 4, removal of the same paragraphs from the objections to RFA 2.

- For RFA 18, removal of the full paragraph in the specific objections section on page 55.

- For RFA 20, removal of the paragraphs starting on page 60 at "Defendants also object," through the end of the section on page 63.

These objections are improper advocacy and are unrelated to and not responsive to the RFA text. For example, RFAs 1–4 simply ask Defendants to admit whether certain analyses were undertaken when creating the SWPPP, and whether the SWPPP contains certain information or control measures. Ex. A at 5. If Defendants did not conduct the analysis described in the RFA or did not include control measures in their SWPPP as described in the RFAs, Defendants should simply admit the RFAs. Instead, Defendants have provided extensive legal argument on what different regulatory regimes require. *See, e.g.*, Ex. B at 10–13. Defendants' presentations of legal argument were not inspired by, or put at issue by, CLF's RFAs, which did not ask for admissions on legal determinations or conclusions. *See Vincent ex rel. Vincent v. Mortman*, No. 3:04-cv-491 (JBA) (JGM), 2006 WL 1281758, at *2 (D. Conn. May 3, 2006). Because each of these "objections" that are pages of legal argument and general regulatory commentary, are then

incorporated into and justify each response, CLF requests that the Court both overrule the objections and order Defendants to amend their responses to simply admit or deny.

*The Court Should Strike Defendants' Improper "New Legal Terms" Objections and Order Defendants to Simply Admit or Deny the RFAs.*

Defendants object to CLF's RFAs regarding the SWPPP, the Terminal's secondary containment area, and specific identified documents and concepts, claiming that the RFAs are written in such a way that they "attempt[] to create and introduce new regulatory and legal terms, standards, concepts, and requirements not contained in the General Permit" and are therefore irrelevant. Ex. B at 10, 14, 19, 25, 47, 54, 55, 57, and 60. Defendants made this "new legal terms" objection to RFAs 1–4, 14, 17–20. *Id.* Based on these objections, Defendants denied RFAs 1–4 and 20 and refused to admit or deny RFAs 14 and 17. For RFAs 18 and 19, Defendants admit that the document cited in the RFA exists or contains a quote but otherwise deny that the document contains the information CLF asks about or could otherwise support the request.

All these objections are improper as CLF is not limited to RFAs that only use the words found in the General Permit. In objecting that CLF's RFAs depart from a permissible set of "regulatory and legal terms," it is Defendants who are introducing artificial concepts and constraints in order to deny the RFA or claim they cannot admit or deny. This type of objection and response is an attempt to obfuscate and frustrate the very purpose of RFAs and should not be allowed. *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77–78 (N.D.N.Y. 2003) ("[W]hen the answer cannot be a succinct yes or no, and a qualification of the response is needed . . . qualifications are to provide clarity and lucidity . . . and not to obfuscate, frustrate, or compound the references."). Objections, if needed, must clearly, specifically, and succinctly state the part of the request creating difficulty. As this Court has recently noted, if the objecting party is concerned that the requesting party "is using undefined terms in a loaded way," that is not grounds to fail to answer but, rather, the responding party must respond and explain the meaning of the term it is using or responding to. *Conservation L. Found., Inc. v. Pike Fuels Ltd. P'ship*, No. 3:21-cv-009323-SVN, 2025 WL 2987007, at *5 (D. Conn. Oct. 23, 2025).

Defendants' "new legal terms" objections are not only improper, but Defendants should not be able to use these objections to deny the plain and simple language of the RFAs. For example, RFAs 1–4 simply ask Defendants to admit whether certain analyses were undertaken when creating the SWPPP, and whether the SWPPP contains certain information or control measures. Ex. A at 5. Instead of confirming what is, or is not, in the SWPPP, Defendants have contrived these "new legal term" objections in an effort to manufacture grounds to deny the request. Ex. B at 13–14, 17–19, 23–24, 28–29. In response to RFAs 14 and 17, which are also addressed below, Defendants use these objections despite the fact that these RFAs simply ask whether a communication with CT DEEP occurred around a construction project at the Terminal, and whether an evaluation of the containment area recommended by a consultant was undertaken. Ex. A at 7. If Defendants did not make the communication or undertake the evaluation, they should simply admit the RFAs. Instead, they have manufactured the "new legal term" objection to claim the RFA is irrelevant and justify standing on objections. Ex. B at 48–49, 54.

Perhaps even more inappropriate is Defendants' use of the "new legal term" objection to RFAs 18 and 19, which simply seek admissions that two cited documents have the meaning the documents themselves provide. RFA 18 asks Defendants to admit that the identified Design and

Engineering Practice ("DEP") applies to the design of new facilities and the operation of existing facilities that are coastal and onshore facilities. Ex. A at 8. The applicability of this DEP is addressed in the DEP itself. *See generally* ECF 606 at 31–33 (describing how the 2017 version of the same DEP applies to facilities). While the Court's role is not to adjudicate the truth of the RFA,[3] Defendants' use of the "new legal term" objection to claim the facts at issue are not relevant, and their denial on those grounds, is a clear attempt to frustrate this process. *See* Ex. B at 55–57. Similarly, RFA 19 merely asks Defendants to admit the that a document produced by Defendants includes certain quoted statements that are at different parts of a checkbox style document. Ex. A at 8. Yet, Defendants claim that their objection and denial are warranted because they "deny that the referenced ALARP document can be considered within the scope of what the General Permit contemplates . . . [and] further deny that any such internal documents establish what may or may not constitute 'best management practices' or 'best industry practices' in the industry at large." Ex. B at 57, 59. RFA 19 does not ask for these elements Defendants included in their denial. These denials are based on the "new legal terms" objection manufactured by Defendants to avoid admitting what the document says. Defendants will have a full and fair opportunity to present their legal arguments regarding this and other documents at summary judgment and at trial. However, those arguments are not a valid basis for avoiding the RFA.

CLF requests the Court strike Defendants' "new legal terms" objections and then order Defendants to amend their connected responses to succinctly admit or deny the RFAs.

*Defendants Claim RFAs Related to the Terminal's Secondary Containment Area Are Irrelevant to this Litigation, When Defendants Previously Argued the Secondary Containment Structures Are Defendants' Defense to CLF's Claims and **Are One of <u>the Only Subjects</u> that <u>Is Relevant</u>** to this Litigation.*

Defendants erroneously claim that CLF's RFAs on the Terminal's secondary containment area are irrelevant to this litigation and outside the scope of Rule 26(b). The Court should not allow this blatant attempt to flout the Federal Rules and frustrate the purpose of RFAs.

The General Permit requires permittees to evaluate and implement best management practices ("BMPs") to the best industry practice in order to "minimize the potential for leaks and spills," and in doing so to use control measures that result in "an impermeable secondary containment area" that must be sized to hold either 100% of the volume of the largest tank or 10% of the total volume of all tanks in the area, whichever is greater, without overflow. 2021 General

---

[3] CLF can supply the 2021 DEP should the Court wish to review how the document's stated scope is directly contradicted by Defendants' response that they "deny that the [DEP] applies to any existing, in-service asset,", and by Defendants' extraneous statements to further deny that any "[DEP] impose[s] any standards applicable to existing facilities." Ex. B at 56. Both unrelated to CLFs RFA and the latter is flatly contradicted by a DEP that was unsealed in this matter and states it applies to the design of new facilities as well as operation or modification of existing facilities. *See* Metocean Data Acquisition Data Requirements for Projects and Real-Time Systems DEP (Sept. 2017) (ECF 153) at 4 ("This DEP specifies requirements . . . for use in the design, construction and operation of offshore and onshore structures of all types." . . . "This DEP contains mandatory requirements . . . ." "This DEP is intended for use in project development and operations of various facilities both offshore and onshore." . . . "When DEPs are applied, a Management of Change (MOC) process shall be implemented; this is of particular importance when existing facilities are to be modified.").

Permit, ECF 248-5, § 5(b)(9)(A)(i). CLF's complaint alleges that Defendants must meet and go beyond these baseline containment requirements because those same requirements say the control measures must be engineered to the best industry practice, which CLF alleges means addressing the increased risks from climate change and then correspondingly increasing protective best practices and infrastructure at the Terminal. From the documents and depositions in this case, it is clear that Defendants have never complied with the baseline containment requirements and have not evaluated measures that would protect against increased risks from climate change. Central material facts for dispositive motions and trial will include what the basic facts of the Terminal's physical structures are, including what analyses and parameters were considered to design those physical structures. Defendants' argument that the Terminal's physical containment structures are outside the scope of Rule 26 is not credible because, in fact, they are a core issue in this litigation.

      Defendants refuse to admit or deny RFAs 5–7 and 9–17 by claiming the RFAs seek responses on facts that are "irrelevant to any claim or defense in this action," "there is no cause of action related to" the facts about the New Haven Terminal, and therefore the RFA "is not relevant or proportional to the needs of this case." Resps. at 31, 34, 36, 40, 41, 43, 45, 46, 49, 50, 52, 54. The permissible scope of RFAs includes "any matters within the scope of Rule 26(b)(1) relating to: (A) facts . . . ." Fed. R. Civ. P. 36(a)(1). Matters are within the scope of Rule 26(b)(1) if they are "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." CLF's RFAs 5–7 and 17 relate to the Terminals' secondary containment area and whether it is permeable and allows stormwater to infiltrate into the soil and groundwater. Ex. A at 6–7. CLF's RFAs 9–13 relate to an evaluation by Defendants' environmental consultant to calculate secondary containment volumes at the Terminal, the consultant's conclusions, and a decision to undergo a construction activity to increase the size of a containment area. *Id.* CLF's RFAs 14–16 relate to whether Defendants communicated the new secondary containment calculations or subsequent construction project to CT DEEP or updated or amended their SWPPP to include the new stormwater management design. *Id.* at 7. All these RFAs focus on facts about the Terminal's secondary containment structures, which are stormwater BMPs used to comply with the General Permit, and are within the scope of Rules 36(a)(1) and 26(b)(1). Defendants' objections and refusal to admit or deny on a theory the Terminal's secondary containment area is irrelevant to this litigation is not credible and contradicts Defendants' past statements to this Court.

      Defendants have repeatedly taken the position in this litigation that the core facts relevant to the suit are their stormwater BMPs at the New Haven Terminal and all the day-to-day operations of the New Haven Terminal related to the CWA and RCRA. When opposing CLF's Motions to Compel documents, Defendants stated that the following categories of documents were so far within the scope of Rule 26(b) that they had already produced these documents without standing on a relevance or burden objection:

> [R]ecords, policies, procedures, manuals, presentations, spreadsheets, and other documents for the New Haven Terminal relating to the following: **Management of stormwater**; waste/remediation; extreme weather; **emergency preparedness and response**; **permit compliance and general permitting**; **leaks/spills**; **groundwater monitoring**; employee training; tank inspections; processes for managing weather-related hazards; **and, Terminal infrastructure related to these topics**.

ECF 177 at 12 (emphasis added). Defendants repeated this exact statement in a sworn affidavit of counsel. ECF 177-1 ¶ 15. This was not a one-off position, but one Defendants repeatedly made. *See* ECF 324-1 ¶ 5; ECF 325-1 at 14. In early motion practice on the scope of discovery and case management issues, Defendants took the position that their alleged compliance with the General Permit's terms and RCRA requirements were "the only questions" in the case. ECF 128 at 2 ("This case presents straightforward claims about regulatory compliance. More specifically, the only questions at issue are whether a fuel terminal located in the Port of New Haven [] is currently operating in compliance with a state-issued Clean Water Act [] stormwater permit."). Furthermore, Defendants argued in their 2023 motion for partial summary judgment that CLF's claims must fail because constructing secondary containment to CLF's climate factors would negate the impermeability and secondary containment volume requirements in their permits. ECF 248-01 at 21–23 & ECF 272 at 11. This argument presented the impermeability and containment volume requirements in the General Permit as a defense to CLF's claims regarding addressing climate change risks. If Defendants have previously argued their compliance with the impermeability and secondary containment volume requirements are a bar to CLF's climate change claims, Defendants should not now be able to argue those requirements are so irrelevant to this case they cannot answer simple RFAs on those topics. None of Defendants' past positions are compatible with Defendants' new claim, after the conclusion of 4+ years of fact discovery, that the facts of the Terminal's containment berms and structures are outside the scope of Rule 26(b).

Taking contradictory legal positions is inappropriate. *See generally New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (noting that judicial estoppel prevents a party from "assum[ing] a contrary position" "simply because his interests have changed" where the legal position in an earlier proceeding was successful). While courts will prohibit a party from taking a contrary position where judicial estoppel applies, the ramification for a party taking an inconsistent legal position in the same case should be waiver or rejection of the position.

Regardless of Defendants' new position being contrary to their prior positions, Defendants are also arguing a position contrary to the Court's rulings in this case. In the Court's Order on CLF's Revised Requests for Production ("RFPs"), the Court ordered full compliance with Revised RFP 23 that sought documents on "the design, construction, maintenance, or modification of the Terminal's berms, secondary containment areas, outfalls, stormwater drainage or pipes," among other infrastructure, and including documents showing the same at 15 other facilities. ECF 372 at 21 & 27. The Court's prior ruling an RFP was within the scope of Rule 26(b) should not leave room for Defendants to now claim an RFA on the same subject is outside the scope of Rule 26(b).

Defendants objected to and refused to admit or deny CLF's RFAs 5–7 and 9–17 based on a legal position on the scope of Rule 26(b) that is contrary to their past positions in this litigation and contrary to the Court's past discovery orders. The Court should overrule these objections and order Defendants to simply admit or deny these RFAs.

Sincerely,

*s/ James Y. Meinert*
James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110

Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail:
chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*

Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*