# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Case No: 3:21-cv-00933-VDO <br><br> September 16, 2025 |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S
FIRST SET OF REQUESTS FOR ADMISSION TO ALL DEFENDANTS**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and LR Cv 26 and 36, Plaintiff, the Conservation Law Foundation ("Plaintiff" or "CLF"), through undersigned counsel, hereby propound the following Requests for Admission to Defendants Equilon Enterprises LLC d/b/a Shell Oil Products US, Shell Oil Company, Shell Petroleum, Inc., Motiva Enterprises LLC, and Triton Terminaling LLC (collectively "Defendants" or "Shell") in accordance with the Instructions and Definitions listed herein.

**I.    INSTRUCTIONS**

1. A request is admitted unless, within 30 days after being served, you serve on Plaintiff a written answer or objection addressed to the request and signed by you or your attorney.

2. If a request is not admitted, the answer must specifically deny it or state in detail why you cannot truthfully admit or deny it. A denial must fairly respond to the substance of the

1

request; and when good faith requires that you qualify an answer or deny only a part of a request, the answer must specify the part admitted and qualify or deny the rest.

3. If you deny a request, you must provide a detailed explanation of the facts that contradict the request. This includes any evidence or information that supports your denial.

4. If you answer that you lack sufficient information to admit or deny a request, you must state that you have made a reasonable inquiry and that the information known or readily obtainable is insufficient to enable you to admit or deny the request.

5. The grounds for objecting to a request must be stated with specificity under each individual request. You must not object solely on the ground that the request presents a genuine issue for trial. Any ground not stated in an objection shall be deemed waived. The requirement that the grounds for objecting be stated with specificity under each individual request precludes the consideration of any generic general objections.

6. If you object or refuse to answer a request on the grounds of alleged confidentiality or privilege, you must state each and every ground under which the information is being withheld, the general subject matter of the information, and any other information to enable the assessment of whether the asserted privilege applies, as FRCP 26(b)(5) requires.

7. Each Defendant must respond individually to each request unless the request is directed only to other Defendant(s).

8. These requests are continuing in nature and you must supplement your answers pursuant to FRCP 26(e) or seek to withdraw or amend your answers pursuant to FRCP 36(b).

9. Unless otherwise stated, the relevant time period for these requests is 2008 to present.

## II.     DEFINITIONS

Unless otherwise stated, whenever these Requests for Admission use a term defined in the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq. ("Clean Water Act" or "CWA"), or the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, et seq. ("Resource Conservation and Recovery Act" or "RCRA") or in the regulations promulgated under these Acts, the term shall have its statutory or regulatory meaning.

Whenever these Requests for Admission use the terms listed below, the following definitions shall apply:

1. **All /Each.** The terms "all" and "each" shall both be construed as all and each.
2. **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.
3. **Number**. The use of the singular form of any word includes the plural and vice versa.
4. **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).
5. **Concerning.** The term "concerning" means relating to, describing, evidencing, or constituting.
6. **CT DEEP.** The term "CT DEEP" means the Connecticut Department of Energy and Environmental Protection.
7. **Defendants.** Unless otherwise stated, the term "Defendants" as used herein shall include Equilon Enterprises LLC d/b/a Shell Oil Products US, Motiva Enterprises LLC, and Triton Terminaling LLC, along with, where applicable, their agents, assigns, contractors, officers, directors, employees, partners, corporate parent(s), subsidiaries, or

affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

8. **Document.** The term "document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term. A request for production of "documents" shall encompass, and the response shall include, electronically stored information, as included in Fed R. Civ. P. 34(a), unless otherwise specified by the requesting party.

9. **General Permit.** The term "General Permit" shall mean the General Permit for Discharge of Stormwater Associated with Industrial Activity issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") that is currently in effect and any prior version(s) that were in effect from October 1, 2011, to the present.

10. **Matter.** The term "this matter" means the above-captioned lawsuit.

11. **Person.** The term "person" means any natural person or any business, legal, or governmental entity or association.

12. **Plaintiff.** The term "Plaintiff" shall mean the Conservation Law Foundation, Inc.

13. **Refer.** The terms "refer to," "refers to," or "referring to" shall mean discussing, mentioning, or relating in any way.

14. **Relate.** The terms "relate to," "relates to," or "relating to" shall mean concerning, constituting, defining, embodying, identifying, reflecting, referring to, stating, or dealing with in any way.

15. **Shell Group.** The term "Shell Group" means Shell plc (formerly known as Royal Dutch Shell) and its direct or indirect subsidiaries.

16. **SWPPP.** The term "SWPPP" shall mean any stormwater pollution prevention plan created by Defendants or on Defendants' behalf for the Terminal pursuant to § 5(c) of the General Permit.

17. **Terminal.** "Terminal" shall refer to the terminal located at 481 East Shore Parkway, New Haven, Connecticut.

18. **Terminal Site.** "Terminal Site" shall mean the property where the Terminal is located and all locations to which hazardous waste has traveled.

19. **You/Your.** Unless otherwise defined, the terms "You" or "Your" shall mean the Defendants and any consultants, agents, or representatives acting on their behalf or at their direction.

III.   **REQUESTS FOR ADMISSION**

1. Admit that the information submitted to CT DEEP in or with the 2017 SWPPP for the Terminal was not gathered and evaluated utilizing a system designed to assure that qualified personnel considered the reasonably foreseeable risks of pollutant discharges associated with climate change.

2. Admit that the 2017 SWPPP for the Terminal contains no consideration of the impact of sea level rise, coastal flooding, or erosion patterns on coastal development.

3. Admit that the 2017 SWPPP for the Terminal does not include control measures that minimize the risk of pollutant discharges from storm surge flooding.

4. Admit that the 2017 SWPPP for the Terminal does not include control measures that minimize the risk of pollutant discharges from storm surge flooding as worsened by sea level rise and increased frequency and severity of storms.

5. Admit that the 2017 SWPPP for the Terminal does not address the potential for leaks and spills due to the Terminal's permeable secondary containment area.

6. Admit that industrial stormwater has infiltrated into the ground within the Terminal's secondary containment areas.

7. Admit that You did not receive approval from CT DEEP to infiltrate industrial stormwater into the ground within the Terminal's secondary containment areas.

8. Admit that the Integrated Contingency Plan (Deposition Exhibit 1216) does not contain the following engineering certification:

> I certify that I have thoroughly and completely reviewed the Stormwater Pollution Prevention Plan prepared for this site. I further certify, based on such review and site visit by myself or my agent, and on my professional judgment, that the Stormwater Pollution Prevention Plan meets the criteria set forth in the General Permit for the Discharge of Stormwater Associated with Industrial Activity effective on October 1, 2011. I am aware that there are significant penalties for false statements in this certification, including the possibility of fine and imprisonment for knowingly making false statements.

9. Admit that on July 28, 2021, You received a letter from Paul Simonetta and Stephen Benben, Triton Environmental, Inc. (SOPUS_NHVN00190740), and on that date You were aware that the secondary containment area volumes for Tanks 1, 2, and 3 at the Terminal did not provide sufficient containment volume as required by the 2019 General Permit.

10. Admit that You did not inform CT DEEP that the secondary containment area volumes for Tanks 1, 2, and 3 at the Terminal did not provide sufficient containment volume as required by the 2019 General Permit within fifteen days of receiving the July 28, 2021 letter from Triton Environmental, Inc. (SOPUS_NHVN00190740).

11. Admit that You have never informed CT DEEP that the secondary containment area volumes for Tanks 1, 2, and 3 at the Terminal did not provide sufficient containment volume

as required by the General Permit after receiving the July 28, 2021 letter from Triton Environmental, Inc. (SOPUS_NHVN00190740).

12. Admit that the secondary containment area volumes for Tanks 1, 2, and 3 at the Terminal did not provide sufficient containment volumes from October 1, 2011 to August 29, 2022 as required by the General Permit.

13. Admit that on August 30, 2022, You installed a bypass pipe between the secondary containment area for Tanks 1, 2, and 3 and the Tank 24 diked area.

14. Admit that You did not inform CT DEEP about Your plan to install a bypass pipe to increase the secondary containment area volume for the Tank 1, 2, and 3 containment area prior to August 30, 2022.

15. Admit that You have not amended or updated the SWPPP for the Terminal with information about the bypass pipe that You installed to increase the secondary containment area volume for the Tank 1, 2, and 3 containment area.

16. Admit that You did not recertify the Terminal's SWPPP pursuant to Section 5(c)(5) of the General Permit after installing the bypass pipe to increase the secondary containment area volume for the Tank 1, 2, and 3 containment area.

17. Admit that You did not perform an evaluation of the permeability of the earthen materials that comprise the floor and berms of the secondary containment areas at the Terminal in response to Triton Environmental, Inc's July 28, 2021 letter recommending an "evaluation of the permeability of the earthen materials that comprise the floor and berms of the secondary containment areas." (Ex. 1226 at SOPUS_NHVN00190740 – SOPUS_NHVN00190747).

18. Admit that the Feb. 2021 DEP 37.00.10.10-Gen (SOPUS_NHVN02448801) applies to the design of new facilities and operation of existing facilities that are coastal and onshore facilities within the Shell Group.

19. Admit that the document produced at SOPUS_NHVN00249686 is an ALARP Determination for the Hazard "H-08.1 Weather – High Winds, Flooding" for a June 2016 "New Haven Terminal HSE Case", that determined that "Construct flood walls around facilities that are located in low lying areas" is a "credible/practicable" measure for the Terminal but was not implemented because "disproportionate resources required to implement."

20. Admit that the risk of a loss of primary containment at the Terminal due to storm surge flooding is worsened by sea level rise and increased frequency and severity of storms.

21. Admit that there is a risk of a loss of primary containment at the Terminal due to storm surge flooding.

22. Admit that You have not modified the Terminal to minimize the risk of oil and chemical spills resulting from storm surge flooding.

23. Admit that You have not modified the Terminal to minimize the risk of oil and chemical spills resulting from storm surge flooding as worsened by sea level rise and increased frequency and severity of storms.

24. Admit that sea level rise in the Long Island Sound has been accelerating over the past 100 years.

25. Admit that discharges from storm surge are non-stormwater discharges under the General Permit.

26. Admit that the 2017 SWPPP for the Terminal contains no descriptions of the worsening impact of flooding, sea level rise, increased frequency and severity of storms, increased