## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | |
| *Plaintiff*, | Civil Action No. 3:21-cv-00933-VDO |
| v. | |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, | November 28, 2025 |
| *Defendants*. | |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S REPLY
TO DEFENDANTS' OPPOSITION TO MOTION TO SEAL (ECF 880)**

I.      **INTRODUCTION**

Plaintiff Conservation Law Foundation ("CLF") respectfully submits this Reply to Defendants' Opposition (ECF 880) to CLF's Motion to Seal (ECF 809) its letter motion request for a pre-filing conference on motions for summary judgment and preliminary statement of undisputed material facts ("Letter Motion" and "Preliminary Statement"). CLF files this Reply only to correct misrepresentations in Defendants' Opposition to ensure the Court has the details of the complicated history of confidentiality designations, withdrawals and waivers of confidentiality claims, and the prior rulings in this case and the Rhode Island matter. By misrepresenting the record and failing to include certain information, Defendants' Opposition tacitly asks the Court to overturn and disregard the Parties' and the Court's years of work to appropriately and fairly deal with the consequences of Defendants' decision to blanket designate nearly every document produced in this litigation as confidential despite the fact that much, if not all, of the documents produced in this case relate to environmental regulations and management rather than commercial or financial information, much less competitive information akin to trade secrets.

The excerpts and statements of facts at issue here do not meet the Protective Order's definition of "Confidential," as they are not the full primary documents and they are limited, contextual references that do not expose competitive business information. Under the sealing standard, the disclosure of this information does not pose a risk of competitive harm. Furthermore, Defendants' Opposition includes an "Appendix A" that includes claims of confidentiality that have been withdrawn by Defendants in response to CLF's requests for de-designation, were waived by Defendants when they previously placed them on the public docket, or were overruled by the Court in the context of past motions to seal. Because Defendants fail to identify truly confidential material, fail to justify sealing under the law, and have relied on withdrawn or overruled

1

confidentiality claims, the Court should deny the underlying Motion to Seal and preserve open access to judicial documents.

## II.   ARGUMENT

### A. The Excerpts and Facts in CLF's Letter Motion and Preliminary Statement Do Not Reveal Confidential Information.

Defendants assert that CLF's Letter Motion and Preliminary Statement reveal proprietary technical standards, internal processes, and security-sensitive details, ECF 880 at 4–6, but that characterization is incorrect. The excerpts and facts in CLF's Letter Motion and Preliminary Statement are limited, contextual references or quotes that are facts about the New Haven Terminal and Defendants' general group-wide assessments of climate change risks and practices used to address climate change risks. These references and quotes are not the full primary documents and do not disclose the engineering specifications or competitive information that could allegedly be at issue if the full set of exhibits to the Preliminary Statement were at issue.

The information in CLF's Preliminary Statement paragraphs 1 to 76 are all specific facts and limited quotes from documents about the Defendants' relationship to the New Haven Terminal and facts about the Terminal's stormwater management system, and public access to these facts would not expose competitive information or security risks to Defendants. The information in CLF's Preliminary Statement paragraphs 77 to 139 are specific facts and limited quotes from Defendants' general group-wide assessments of climate change risks and practices used to address climate change risks, and public access to these excerpts and facts would not expose the purported business strategies or research that might be gleaned from a full set of those documents. The Standing Protective Order's ("SPO's") definition of "Confidential" information is narrowly defined as non-public material that the disclosing party reasonably and in good faith believes contains or comprises: (a) trade secrets; (b) proprietary business information; or (c) information

2

implicating an individual's legitimate expectation of privacy. ECF 7 ¶ 3. Because these are factual references and excerpts and do not expose full documents they do not fall within any of these categories—they do not reveal proprietary formulas, confidential business strategies, or private personal information. Defendants' conclusory statements that the confidential designation of entire documents should now automatically translate to the references and excerpts in CLF's Letter Motion and Preliminary Statement should be rejected and the Court need not reach the sealing analysis and should deny the underlying Motion to Seal.

### B. Defendants Ignore the History of Prior De-Designations, Waivers, and Court Rulings

Defendants' Opposition claims the Court has previously recognized the confidentiality of and competitive financial interest in design and engineering practices ("DEPs") and metocean work, and the details of their facility and communications with consultants have been sealed for competitive business and security harms. ECF 880 at 4–6. These broad assertions ignore, and are contradicted by, the fact that Defendants de-designated some of these documents; the Court ruled these and similar documents do not warrant full sealing, and Defendants themselves filed much of this information on the public docket thereby waiving confidentiality over details about the facility and consultant communications. Over nearly four years of litigation, Defendants' decision to blanket designate nearly every produced document has forced the Parties and the Court to repeatedly evaluate Defendants' confidentiality claims. Instead of recognizing that long history of discussions and rulings, Defendants make blanket statements that claim confidentiality over information they long-ago agreed had no confidentiality and mischaracterize the Court's prior rulings and findings. CLF asks the Court to set aside Defendants' Opposition, Appendix A misrepresentations, and self-serving Declarations, and deny the underlying Motion to Seal.

#### 1. Defendants Withdrew Confidential Designations from Documents Shared

**with Government Entities after CLF's Challenges.**

Defendants attempt to claim confidentiality on documents where they withdrew their confidential designations. In late 2024 and early 2025, the Parties engaged in a meet and confer process to address CLF's challenge to Defendants' confidentiality designations. As a result of this process, Defendants agreed to de-designate numerous documents, including documents referenced in the CLF's Preliminary Statement. These documents include a 2022 Completion of Investigation ("COI") Report (SHELLNH_SOV_04276), and a 2023 Remedial Action Plan ("RAP") (SOPUS_NHVN00247004). *See* Defs. Opp. App. A, ECF 880-1 at 4–6.

In late 2024 CLF informed Defendants it would be challenging the confidentiality designations as provided in the protective order. *See* SPO, ECF 7 ¶ 12 (providing for written challenges to designations, a 15-business-day response period, burden on the designating party, and authorization to apply to the Court for relief after a meet and confer, with sanctions awarded for positions "taken without substantial justification"); *see also* ECF 497 at 3. The Parties agreed that CLF would limit its challenges to batches of no more than 500 documents at a time, not more than once every two weeks. ECF 497 at 3. After months of regular meet and confers, Defendants agreed to de-designate most of the documents the Parties agreed were in the Government communications and documents submitted to the Government category. ECF 532 at 2 (joint reporting of Defendants' agreement to de-designate a set of "communications with, and documents provided to, state and federal agencies"). Defendants de-designated documents by sending spreadsheets with lists of bates numbers. Meinert Decl., Ex. A ¶¶ 4–5. One of the documents on these de-designation lists was SOPUS_NHVN00247004, which is the copy of the 2023 RAP that is at issue in the underlying Motion. *Id.* ¶ 6; ECF 880-1 at 5. Another document on the de-designation list was SHELLNH_SOV_04276, which is the copy of the 2022 COI report at issue

in the underlying Motion. Meinert Decl., Ex. A. ¶ 7; ECF 880-1 at 4–6. While Defendants' Opposition states these documents are marked confidential, the reality is they were originally designated confidential, and Defendants subsequently withdrew that confidentiality designation.[1]

### 2. Documents Shared With CT DEEP Are Not Confidential

A related document, which should not be treated as confidential, is a 2003 Subsurface Investigation Letter (SOPUS_NHVN00001480), CLF did not previously challenge the confidentiality of this document, however, it was similarly shared with CT DEEP. Defendants' claim that "[d]isclosure would cause competitive harm," ECF 880-1 at 4, should be disregarded. The de-designated RAP lists the Subsurface Investigation document in a "prior environmental investigations and reports" section that is described as "an inventory of available documentation submitted to the CTDEEP which has been completed during the course of investigation activities at the site to support the findings of the COI." Meinert Decl., Ex. A. ¶ 9. The Subsurface Investigation document, COI, and RAP are all environmental monitoring, sampling, and remediation documents that are created and provided to CT DEEP under environmental laws. These documents are both available to CT DEEP and the public under FOIA. Under federal law, these types of environmental monitoring documents generally cannot be withheld from FOIA requests, absent a finding the information would expose a trade secret. *See generally* 33 U.S.C. § 1318(b); 40 C.F.R. §§ 2.301-311. The identity, locations, and concentrations of pollutants present in the soil and groundwater at the New Haven Terminal would not expose a trade secret. In fact, an Environmental Conditions Assessment Form CLF received from CT DEEP and publicly

---

[1] CLF acknowledges it redacted quotes from the COI and RAP when filing its Letter Motion and Preliminary Statement. This was a mistake by CLF, in part due to the fact that after de-designation, Defendants did not re-produce the documents with confidentiality designation removed and so the documents still carry a confidentiality stamp when viewed within or downloaded as pdfs from CLF's e-litigation document management system. Meinert Decl., Ex. A ¶ 8. CLF does not believe CLF's redactions, nor Defendants' argument for confidentiality in its Opposition, have any effect on the documents' status as not designated.

attached to its Complaint nearly four years ago similarly lists the 2003 Subsurface Investigation as a document underlying its information. *See* ECF 47-6 at 3. While the Parties impasse over the confidentiality of certain categories of documents has been pending in front of Judge Farrish since March, ECF 539 at 2–5, CLF is surprised and disappointed to see Defendants so willing to ignore and overlook their prior agreement with CLF's position that documents submitted to the government generally, and particularly those that consist of environmental monitoring information, do not meet the confidentiality definition of the SPO and therefore would certainly not be eligible for sealing.

### 3. Defendants' Declarations and the Court's Prior Rulings Do Not Support Blanket Sealing of All Information in Defendants' Documents.

Defendants cite five declarations of their employees from various sealing motions across the case's history in support of sealing documents in Appendix A - Sullivan ECF 239-1, (2) Evans ECF 174-1, (3) Simonetta ECF 880-2, (4) Jaramillo ECF 630, and (5) Penny ECF 629. These declarations do not support the general statements made in Defendants' Opposition because they cover different documents, and the declarations admit that full sealing is not warranted. The Court has previously found these declarations do not support full sealing of Defendants' documents.

Defendants contend that their "facility-specific technical parameters and operations" warrant sealing, citing to the Jaramillo declaration. ECF 880 at 4. However, that declaration was made regarding metocean analyses and does not reference facility-specific technical parameters. The examples in the Opposition of "non-public plans," ECF 880 at 4, are different from those in the Jaramillo declaration, and Defendants' Opposition lists documents that are publicly available through FOIA and have been filed on the public docket (by CLF and by Defendants) for years. *See* ECF 1-8 (SWPPP); ECF 1-9 (SPCC); ECF 158 (Business Continuity Plan); ECF 248-16 (SWPPP). Defendants use these claims to argue the excerpts and facts from the Integrated Contingency Plan

6

(ICP), "contain[] competitively sensitive and/or proprietary business information," ECF 880-1 at 2, but as detailed in CLF's Preliminary Statement, the ICP is just the earlier version of the SWPPP that both CLF and Defendants' publicly filed on the docket.

Defendants cite the Evans declarations and Parts S and Q of Sullivan's declaration for the proposition that documents should be sealed because they are commercially sensitive such that competitors could use them to improve their own plans, and information on the number and location of tanks at the Terminal could assist bad actors in causing physical harm to facilities. *See* ECF 880-1 at 6–8. But both the Evans and Sullivan declarations admit Shell's documents need not be fully sealed. The Evans declaration admits that the Business Continuity Plan contains "general process that is not detailed enough to be considered commercially valuable or competitively sensitive." ECF 174-1 at 4. The Sullivan declaration claims that "information about tank dimensions and volume at the Terminal . . . could assist bad actors." ECF 239-1 at 3. But Defendants then acknowledged that based on Sullivan's declaration, only parts of the documents then at issue would warrant sealing. ECF 239 at 9–11 (acknowledging Exhibits G, I, J, T, Q, S, and Z did not need to be fully filed under seal). While the Court did allow some filing of Terminal details under seal, the Court did not squarely reach that issue as the Court noted that CLF's underlying discovery motion had not cited to the specific calculations, and therefore the Court's adjudication did not need those aspects of those documents. ECF 288. However, more importantly, Defendants' claim that exposure of the Terminal's tank locations, dimensions, and piping systems poses a security risk is not credible, as this information has already been public in documents CLF and Defendants have filed on the docket numerous times.  The Terminal's SWPPP states the exact capacity of each tank at the facility, ECF 47-7 at 9–11, the Terminal's SPCC includes additional information on the tank heights and diameters, ECF 47-8 at 55–58, and the Terminal's SPCC

7

describes details of the stormwater drainage systems including diameters and flow rates of various pipes in that system, ECF 47-8 at 38–39. Further, the secondary containment calculations that Defendants claimed could pose a security risk are contained within the SPCC, which has been on the public docket for years. *See* ECF 47-8 at 63–64.

For the metocean analyses and DEPs at issue, ECF 880-1 at 9–11, CLF has repeatedly briefed, see, e.g., ECFs 832 and 924, how the Court's prior treatment of these documents in relationship to discovery motions found that DEPs did not necessarily warrant sealing, and that Defendants have regularly described and published their metocean work and research in public. *See* ECF 221 at 6–8 (noting that the DEPs make clear on their face "that the Defendants share them with 'other companies'" including contractors and subcontractors, and therefore they do not appear to be business competitive or trade secret); ECF 326-1 at 25-26 (noting information about the Metocean team's analysis is publicly available); *see* ECF 309-11 & 309-12 (research papers by Defendants' metocean scientists and described in their public SEC filings).

### 4. Defendants Waived Confidentiality as to the Communications with Environmental Consultants at Issue.

Defendants' Opposition broadly claims communications with environmental consultants would expose both entities confidential information and details of the Terminal discussed in those materials would expose security sensitive information. ECF 880 at 5–6; 880-1 at 3, 6–8. In support of these claims, Defendants submitted a declaration from Paul Simonetta generally stating the documents cited in CLF's Preliminary Statement are commercially sensitive. ECF 880-2. These papers ignore that the same information and material was publicly filed by Defendants when they put Mr. Simonetta's entire deposition testimony, as the Rule 30(b)(6) designee of Triton

8

Environmental, on the public docket, ECF 248-21.[2]

The Triton 2017 email and SWPPP Scope of Work letter, ECF 880-1 at 3, was used as an exhibit in that deposition, see ECF 248-21 at 46:14–20, and was fully discussed and described in detail, *id.* at 46:14–52:14, covering the same information in the Preliminary Statement. The 2021 Triton letter and email regarding secondary containment and permeability assessments, ECF 880-1 at 6–7, were also discussed, quoted, and described in detail in the public deposition testimony, ECF 248-21 at 117:9–129:9. That Defendants did not take steps to protect this information so they could file their 2023 MPSJ in public, but now use attestations of their same consultant to prevent CLF's arguments from being public is a prejudicial weaponization of the Protective Order. The Court should not tolerate a party weaponizing the SPO by freely ignoring confidentiality designations by third parties when it suits them to have their arguments in public, but then using declarations from the same third party to try to seal their opponent's arguments over the exact same materials. Regardless of the prejudice caused by Defendants' actions, in filing the entire 30(b)(6) deposition transcript on the docket, Defendants have waived arguments to confidentiality over the work and details discussed in that transcript, which are the arguments they now seek to make through the Simonetta declaration at ECF 880-2.

### C. The Rhode Island Rulings Are Not Precedential or Persuasive

Defendants' Opposition cites to four text orders from the District of Rhode Island granting motions to seal that Defendants previously attached to a Reply Brief. *See* ECF 787 at 6; 787-1 to 787-4. CLF responded to those Rhode Island text orders by noting those rulings should not be persuasive in this district because they dealt with different information, and, the First and Second

---

[2] CLF previously noted that Defendants' filing appeared to be a blatant violation of the Protective Order as Paul Simonetta designated his deposition transcript on behalf of third-party Triton Environmental, ECF 259-4, and then without any Party withdrawing the designation, Defendants filed the full transcript on the public docket. *See* ECF 259 at 11 n.7.

Circuits do not apply the same legal tests to decisions to seal documents. *See* ECF 799 at 2–3. As this Court is aware, the Second Circuit operates under a robust presumption of public access to judicial documents and mandates that courts weigh the public interest and claims of confidentiality as to each document and claim of confidentiality when ruling on dispositive or discovery motions. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–23 (2d Cir. 2006). CLF stated in its underlying Motion that the highest weight of this presumption applies given that the filings at issue relate to the parties' anticipated motions for partial summary judgment. By contrast, the First Circuit has repeatedly said the common-law/First Amendment rights of access do not extend to discovery materials. *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11–13 (1st Cir. 1986) ("[T]here is no right of public access to documents considered in civil discovery motions . . . . [W]e decline to extend to materials used only in discovery the common law presumption that the public may inspect judicial records."). Furthermore, Defendants' claim that those four rulings are similar to the Court's task here, ECF 880 at 3–4, 7, is incorrect, as that Rhode Island court accepted the parties' representations the materials had been designated without any findings or reasoning, see ECFs 787-1 to 787-4. None of these text orders include any analysis of the confidentiality designation, and some of the Rhode Island court's text orders granting motions to seal are explicitly made "without prejudice to CLF's right to move to unseal specific material at any time." *See* 787-4. Such cursory and preliminary rulings have no relevance or persuasive value to practice in the District of Connecticut.

## III. CONCLUSION

For the foregoing reasons, CLF asks the Court deny the underlying Motion to Seal, ECF 809.

Dated: November 28, 2025

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ James Y. Meinert*
James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Anna M. Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3020
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
E-mail: amcmonigle@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574

New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
Tel: (843) 216-9013
E-mail: rmazingo@motleyrice.com
E-mail: sjacks@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
**Admitted as Visiting Attorney*
