

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000   **f.** 843.216.9450

**Shalom D. Jacks**
*Licensed in SC*
direct:  843.216.9013
sjacks@motleyrice.com

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

**VIA CM/ECF**                                          December 23, 2025

The Honorable Thomas O. Farrish
United States District Court
450 Main Street, Suite 262
Hartford, CT 06103

**RE:** *Conservation Law Foundation v. Shell Oil Co., et al.*, No. 3:21-cv-933 (D. Conn.)

Dear Judge Farrish,

      Plaintiff Conservation Law Foundation ("CLF") respectfully submits this letter brief in opposition to Defendants' Motion to Compel ("Motion") to be filed simultaneously pursuant to this Court's Orders, ECF Nos. 473 and 936.[1] Defendants seek additional information regarding CLF's expert witness Dr. Naomi Oreskes' ("Dr. Oreskes") use of artificial intelligence ("AI") to categorize and sort documents for her expert report. Dr. Oreskes' limited use of AI for this purpose (AI was not used to generate her expert report, or any text therein) was disclosed in her report and fully explored by Defendants in her expert deposition. CLF also responded to additional questions posed by Defendants on this topic. Defendants' *Daubert* challenge to Dr. Oreskes' use of AI is also pending before the Court. Despite CLF and Dr. Oreskes' timely and complete expert disclosures, fulsome responses to requests for additional information, and Defendants' full and fair opportunity to depose Dr. Oreskes on this issue, Defendants now seek to compel additional discovery to support their unfounded allegation that the Protective Order was breached in this case. CLF objects to Defendants' Request for Additional Materials dated December 17, 2025, ("Defs. Ex. A"), to the extent that it is unreasonably broad, duplicative, oppressive, and outside the scope of what is discoverable under the Federal Rules. Furthermore, the requests violate the Parties' Rule 29 stipulation that expert drafts and communications are non-discoverable.[2] For the duration of this dispute, Defendants have not proffered any basis in law for their unreasonably broad discovery requests seeking additional information pertaining to Dr. Oreskes' use of AI in preparation of her expert report. Defendants' repeated requests for additional discovery materials without legal basis, amounts to an unfairly prejudicial abuse of the expert discovery process.

      **I.**    **Background of Defendants' Requests, CLF and Dr. Oreskes' Fulsome Responses, and Defendants' Refusal to Accept CLF's Responses**

---

[1] CLF attempts to respond as fully as possible in this Motion, but CLF objects to Defendants' brief in its entirety and does not waive the right to respond to any argument found therein.

[2] "**Non-Discoverability**: Drafts of expert reports and communications between experts, employees and consultants of Party-related entities on expert opinions or settlement-related issues, including emails, notes, and other correspondence, shall not be subject to discovery. This includes any preliminary findings or informal discussions that have occurred between experts employees or consultants of Party-related entities." *See* Email from K. Rumelt, CLF, to D. Henderson, King & Spalding (Aug. 5, 2024).

Dr. Oreskes' expert report was disclosed on May 8, 2025. *See* ECF No. 589 at 3. Dr. Oreskes' expert report identifies the use of AI in document review and contains much of the information Defendants have requested pertaining to her use of the AI tool, including the number of times certain key-word searches produced hits, for example: "Across 39 IPCC reports, from 1990 to 2023, the terms sea 'level rise' or 'sea-level rise' occurs 4,645 times. The term 'coastal flooding' appears 181 times (Appendix 2)." Oreskes Rpt., ECF No. 778 at 76–77. CLF has diligently responded to Defendants on the Oreskes' AI issue since their first request for additional information on August 4, 2025, fourteen weeks after service of Dr. Oreskes' expert report. CLF responded to Defendants' initial request on August 6, identifying that Dr. Oreskes used "OpenAI's GPT-4o, accessed through Microsoft Azure services via the secure Azure API" to "filter out documents" and run "searches" on "the entire unfiltered corpus of Shell documents," with specific confirmation of key-word searches including "sea-level rise" and mentions of a list of think tanks. Email from D. Williams, Motley Rice, to D. Henderson et al., King & Spalding (Aug. 6, 2025). CLF responded to follow-up questions a day later to confirm the "AI program . . . did not generate any reports or print outs," and "no experimental prompts were stored" because "[t]he AI was merely used to sift through results," as well as note that the requests were coming 14 weeks after the report disclosure and that Dr. Oreskes would be available for further information in her deposition. Email from D. Williams, Motley Rice, to D. Henderson et al., King & Spalding (Aug. 7, 2025). Defendants took the deposition of Dr. Oreskes on September 9, 2025, and questioned her at length about AI. *See* Oreskes Dep., ECF No. 863 at 225–44. On September 19, Defendants emailed a new list of requests/interrogatories to which CLF gave signed responses on September 25:

> **Defendants' Request (1a):** *Details on the specific CHAT-GPT program that was used, including provider, the specific model/version/licensing level of the program, deployment mode (cloud/on-prem) date range of use. who holds the license of that program, and the security and access controls applied to the program (Professor Oreskes said it was CHAT-GPT on a "secure" server—we need all identifying information on the actual AI platform used and specific details on the "secure" server).*
>
> **CLF's Response (1a):** Objection. The request exceeds the requirements of FRCP Rule 26(a)(2)(B) and 26(b)(4)(C), which do not require the production of experts' "file" but only of materials that are "considered" or "relied upon." Objection to the extent this has been asked and answered in an email to Defendants dated August 6, 2025 and within Dr. Oreskes deposition taken on September 11, 2025. OpenAI's suite of models: GPT-4o and GPT-4.5 was accessed through Microsoft Azure services via the secure Azure API (Application Programming Interface) was used to filter documents. See Dr. Oreskes deposition testimony pg. 242, lines 4-11.
>
> **Defendants' Request (1b):** *Details of the methodology including the tasks performed by the AI tool (e.g., classification, summarization, retrieval), and the general workflow by which Defendants' documents were loaded and results exported or shared with the expert.*
>
> **CLF's Response (1b)**: Objection. The request exceeds the requirements of FRCP Rule 26(a)(2)(B) and 26(b)(4)(C), which do not require the production of experts' "file" but only of materials that are "considered" or "relied upon." Objection to the extent this has been asked and answered in an email to Defendants dated August 6, 2025 and within Dr. Oreskes deposition taken on September 11, 2025. After AI-

based filtering, Professor Oreskes manually reviewed the resulting subset of documents. This two-stage approach—AI filtering followed by human verification—was designed to completely exclude the risk of AI 'hallucination'. In the worst-case scenario, relevant documents may have been inadvertently excluded, which would understate rather than overstate our findings. Not every think tank from the database was found in the corpus, but several were, and the Bates numbers of the resulting, verified documents are already provided in the original report. The AI program used by Professor Oreskes did not generate any reports or print outs. The AI was merely used to sift through results. All conclusions were written after manually reviewing the documents sorted by the AI program. As such, no experimental prompts were stored. In addition, we can confirm that no confidential documents were submitted to any open-AI platform. No documents were "ingested." None of the documents were used for training any AI or machine learning tool. Search terms including: "Sea Level," "Sea Lever Rise," and "SLR" were utilized to provide a subset of documents that were manually reviewed by Dr. Oreskes. See Dr. Oreskes deposition testimony pgs. 225-244 describing the methodology used to review documents in this case.

***Defendants' Request (1c)****: A specific list of the names and dates of all public or private documents used by Professor Oreskes or her assistants that were used in connection with the AI platform.*

**CLF's Response (1c)**: Objection. The request exceeds the requirements of FRCP Rule 26(a)(2)(B) and 26(b)(4)(C). The "list" requested does not exist and therefore cannot be provided.

***Defendants' Request (1d)****: A list of the Bates numbers of all Defendants' produced documents that were uploaded, ingested, or otherwise made available to any AI tool used in connection with Oreskes' analysis, including, if reasonably available, date/time of ingestion and any system-generated tags or classifications. referenced by Oreskes on p. 225.*

**CLF's Response (1d):** Objection to the mischaracterization of Dr. Oreskes' testimony. Objection. Exceeds the requirements of FRCP 26(a)(2)(B). Objection to the extent that this has been asked and answered in the deposition of Dr. Oreskes, pg. 229, lines 4-12. Objection to the extent this has been previously provided to Defendants in Dr. Oreskes' citations within her Expert and Rebuttal Reports and in her Materials Considered Lists. A partial list of the Bates numbers is provided in the Second Additional Materials Considered List provided with this response. We reserve the right to supplement this list.

***Defendants' Request (1e)****: All AI outputs, reports, dashboards, exports, or result lists that Oreskes considered, reviewed, referenced, or relied upon in forming her opinions (whether or not ultimately cited in her report), including any lists of documents the AI identified as relating to sea-level rise, referenced by Oreskes on p. 225.*

**CLF's Response (1e):** Objection. Exceeds the requirements of FRCP 26(a)(2)(B). Objection to the extent that this has been asked and answered in the deposition of Dr. Oreskes, pg. 229, lines 4-12. Objection to the extent this has been previously provided to Defendants in Dr. Oreskes' citations within her Expert and Rebuttal Reports and in her Materials Considered Lists.

CLF Objs. & Resps. to Defs. Req. for Add'l Materials, at 2–4 (Sept. 25, 2025).[3]

Following the September 25 responses above, Defendants and CLF met and conferred on October 2, November 4, November 21, December 4, December 8, and finally December 10 where impasse was reported to this Court. Punctuated between each meet and confer were emails between the Parties. CLF's prompt responses to each of the questions Defendants posed would be met with weeks or a month of silence before Defendants asked permutations of their questions as if CLF had not already provided that information. *See* JSRs, ECF Nos. 793 at 3–4; 814 at 3–4; 870 at 3–4; 922 at 3–5; 932 at 3–5. Although Defendants' tactics created an appearance that this was a live issue, the details of the Parties' communications show that CLF and Dr. Oreskes provided fulsome responses during the expert discovery period and over the past four months.[4]

CLF has requested leave to file an affidavit attesting to the facts already communicated to Defendants, that the use of a Microsoft Azure cloud server did not result in exposure of confidential information and was not used to develop or train any AI service or large language model. CLF Proposed Ex. A., Kaurov Decl. The Declarant is Dr. Alexander A. Kaurov, Dr. Oreskes' research assistant, who under her direction uploaded documents to an Azure (Microsoft's cloud) server, rented for exclusive use on this project. Dr. Kaurov used Microsoft's Azure OpenAI services to run searches on existing litigation documents to identify relevant documents for Dr. Oreskes' further review. Dr. Oreskes and Dr. Kaurov collaborated with CLF to ascertain a secure method for analyzing and sorting the hundreds of thousands of litigation documents to categorize those relevant to Dr. Oreskes' expert report. In that process, Microsoft Azure's security terms of service documentation were reviewed. *See* https://learn.microsoft.com/en-us/legal/cognitive-services/openai/data-privacy. Microsoft Azure's terms confirm: prompts and outputs are not available to other customers or OpenAI, not used to improve models, and remain exclusive to the user. Thus, no third-party exposure occurred.

## II.      Dr. Oreskes' Limited Use of AI to Search Documents Has Been Fully Explored by Defendants and Explained by CLF and Dr. Oreskes

Dr. Oreskes did not use AI to generate any portion of her expert report. Under Dr. Oreskes' direction, her research assistant, Dr. Alexander A. Kaurov, used AI to simply apply search terms, like "sea level rise," to thousands of existing litigation documents produced in this case to find documents potentially relevant to the history of climate change science for review by Dr. Oreskes. *See* Oreskes Dep., ECF No. 863 at 227:4–9 ("We used [AI] to identify [existing] documents. Then there is a body of documents that I look at every document that I deem to be relevant and relied on in this report is cited in the report and has been provided to [Defendants]."); *id.* at 228:14–24; 229:4–12; 234:4–7; *see also* Oreskes Rpt., ECF No. 778 at 76. Once the documents containing those types of phrases were identified, Dr. Oreskes personally reviewed each document individually to assess their relevance to this case. *See* Oreskes Dep., ECF No. 863 at 225:16–20; 227:22–25; 228:1–5. Not a single word or document within her expert report was generated by AI. For the duration of the keyword search and document analysis, the litigation documents were held

---

[3] CLF is using a portion of its letter to provide this excerpt instead of requesting to file these responses as a separate exhibit. However, CLF can file the full document upon request, which contains nearly three additional pages.

[4] Notably, Defendants have not responded to CLF's responsive requests for production following depositions of Defendants' experts for: the invoices of Chris Leonard; invoices and information concerning documents reviewed, protective order signatures, and cloud server usage by two individuals Mr. Uhlmann testified helped prepare his expert report; a site survey Dr. Kovich testified that he reviewed that was not included in his report and what Sarah Tabassum and Laurie Cote did as related to Kovich's expert report as neither persons were under his direction.

in a private, secure Microsoft Azure server and only reviewed using the Microsoft Azure OpenAI service. The use of these Microsoft Azure services fully complies with the Protective Order. *See* CLF Proposed Ex. A., Kaurov Decl. ¶¶ 3–7.

The use of AI to assist in document reviews is a regular and normal litigation activity. Notably, Defendants have freely admitted that they use AI to review and identify documents for production in this litigation. *See* ECF Nos. 128-5, 177-7, 324-3, 324-1. There has been no question whether this disclosure opens Defendants up to "discovery on discovery" to allow CLF to demand communications, contracts, and logs of activity between Defendants' Counsel and cloud server or AI services companies. The fact that Defendants do so here is disingenuous at best.

As addressed in CLF's Opposition to Defendants' *Daubert* motion to preclude Dr. Oreskes' testimony, which is currently before Judge Oliver, Defendants' assertion that they do not have this particular AI tool is a red herring for several reasons. *See* ECF No. 777 at 16. First, the AI tool she used is available on the open market.[5] Second, Defendants have the list of documents that make up the universe of Defendants' materials Dr. Oreskes was working from. They also have the search terms Dr. Oreskes provided to the AI tool and the list of documents relied on. Thus, Defendants have everything they need to understand how Dr. Oreskes narrowed the universe of thousands of documents to find the ones that were most relevant to her analysis. It is not rocket science, nor is it novel. There are numerous litigation platforms used by experts and attorneys that run key word searches to locate relevant documents. The AI tool Dr. Oreskes utilized is no different.

The use of cloud-based servers to host documents on its own is not a suspicious activity. The ESI agreement fully contemplates Parties may be using cloud-based servers. *See* ECF No. 211-1 ¶¶ 4.1, 4.2 (acknowledging use of "online data storage such as Dropbox or Google Drive" without discussion of producing contracts or communications to verify encryption or configurations ensuring non-access to third parties). The Parties are not otherwise entitled to discover the names, terms, and contracts between law firms and server space providers. The Protective Order places the obligation to maintain confidentiality on the Parties without a provision for taking discovery on others regarding their compliance. CLF has attested to compliance with the Protective Order in signed responses and can include a witness declaration (which was provided to Defendants) that no access to third parties of confidential information has occurred. *See* CLF Objs. & Resps. to Defs. Req. for Add'l Materials (Sept. 25, 2025); CLF Proposed Ex. A., Kaurov Decl. ¶¶ 3–7.

### III. CLF Has Fully Complied with Rule 26, Defendants' Requests Violate a Rule 29 Stipulation, and Defendants' Requests Are Outside the Scope of What Courts' Order for Relief Regarding AI Usage.

Federal Rule of Civil Procedure 26(a)(2)(B) governs disclosure requirements for experts using AI for document analysis. Expert reports must contain "all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." The 2010 amendment clarified that disclosure includes all facts or data "considered" by the expert, not only those relied upon. The 2010 Advisory Committee Notes explain that "facts or data" should be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Accordingly, both Parties have the full body of litigation documents produced in this case upon which the AI tool was used to categorize

---

[5] *See* https://azure.microsoft.com/en-us/pricing/details/cognitive-services/openai-service/

5

and segregate relevant documents relevant to her expert report.

In this case, expert discovery has been limited from the full scope of Rule 26 by the Parties' Rule 29 stipulation that expert drafts, preliminary notes, findings, and communications with other experts and third parties related to Parties are not subject to discovery. *See supra* note 2. Defendants' Exhibit A seeks documents including: an AI Services Contract, AI Controls and Security, Records of how litigation documents were uploaded to the Azure secure server, initial AI Inputs and Outputs, and the AI Preservation/Disposition—all of these are expert notes, drafts, or communications needed by, and made during, the report drafting process and therefore exceed the parameters set forth by the Parties' Rule 29 stipulation. Importantly, this Court has previously held that "[p]arties are free to agree upon…limitations upon discovery," and that "courts ordinarily enforce them" when they are clear. *See* Farrish Order, ECF No. 546 (Tr. of Misc. Hrg., Feb. 7, 2025, ECF No. 528, at 15:23–16:5) (citing, inter alia, *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-cv-260 (KAD) (TOF), 2020 WL 7828790, at *4 (D. Conn. Dec. 31, 2020)).

Furthermore, the process Dr. Oreskes used resembles Technology Assisted Review ("TAR") that courts approve in cases where litigants use AI to categorize and sequester documents prior to production. *See Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 127–28 (S.D.N.Y. 2015) (citing cases) ("Judge Miller said that he could find no authority that would allow him to require Biomet [Defendant] to share seed documents with plaintiffs' counsel…")); *see also* ECF Nos. 128-5, 177-7, 324-3, 324-1 (Defendants' describing their own use of TAR in this litigation over the same documents). Importantly, however, after the production of documents is completed, the party receiving the documents is trusted to handle the documents in accordance with the case terms. Courts are primarily concerned with the irresponsible use of generative AI where an expert's report is written by AI or case law is nonexistent. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 465 (S.D.N.Y. 2023); *see also Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 497 (D. Wyo. 2025); *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025). These traditional concerns of courts are not present here.

It remains unclear what legal basis Defendants are using to seek this information. To the extent Defendants' Motion uses the requests in the Notice of Deposition or consider any of their emailed requests as Interrogatories or Requests for Production, CLF requests the Court sustain CLF's objections, or otherwise quash the requests. If Defendants' Motion now presents new grounds, CLF asks the Court to enforce the parties' non-discovery stipulation, and/or treat this letter brief as a request for a protective order regarding Defendants' Exhibit A requests.

### IV. Defendants' Requests for Information are Untimely and Impermissibly Overlap with Pending Motions

Finally, Defendants' Exhibit A requests come eight Months after Dr. Oreskes disclosed her report on May 8, 2025. Even Defendants' initial request for additional information on August 4 was far more than 30 days after the disclosure of Dr. Oreskes' expert report—which is the general guideline for serving a motion to compel provided in the CMO, ECF No. 52 at 4. Furthermore, Defendants continued expansion and refashioning of their requests between August 4 and December 17, makes clear this is a fishing expedition with no actual timely litigation purpose.

Regardless, Defendants' have already filed their motion to exclude this testimony based on an alleged failure to disclose this information. *See* Defs. Mem. In Supp. Mot. to Exclude Oreskes, ECF No. 741-1 at 21–23; CLF Oreskes Opp., ECF No. 840 at 14–16. Defendants' motion to

exclude argued that failures to disclose certain details prevents others from duplicating the analysis and rendering the methodology unreliable. ECF No. 741-1 at 21–23. Defendants' current Motion alongside their prior *Daubert* argument, uses the allegedly deficient disclosure as sword and shield with Defendants wanting there to be less disclosure before the *Dabuert* deadline so they can claim it is grounds for exclusion, but then after *Daubert* briefing completes, reviving and expanding requests they had already admitted were fully at an impasse. *See* ECF 741-1 at 23 n.3. Defendants current requests are untimely and should have resolved their requests for information before the *Daubert* deadline. To allow continued information requests is prejudicial to CLF and Defendants should be required to live with the outcome on the pending motion. Defendants should not be allowed to prejudicially wield this issue because Defendants did not diligently pursue this issue before the Court's expert exclusion deadline. Defendants did not send particularized requests between September 19 and October 24, and only substantively revived and expanded their requests well after the *Daubert* briefing had completed. Failure to diligently pursue discovery is grounds to quash requests. In the ECF No. 277 Order, the Court held that CLF had not diligently pursued the information that Defendants placed behind relevance redactions. ECF No. 277 at 12. Despite CLF's lack of knowledge that the redactions were on relevance grounds and would not be put at issue by a later produced privilege log. *See* ECF No. 280-1 at 10–11 (motion for reconsideration regarding Defendants' failure to disclose the use of relevance redactions).

For the foregoing reasons and depending on what basis Defendants' Motion now provides for these requests, CLF asks the Court to sustain CLF's objections to the Oreskes Notice of Deposition, and/or enforce the parties non-discovery stipulation, and/or quash Defendants' requests, and/or grant CLF's motion for a protective order as to these requests.

\*\*\*

Respectfully submitted,
CONSERVATION LAW FOUNDATION, Inc., by its attorneys

/*s/ Shalom D. Jacks*
Shalom D. Jacks

7