UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>*CLF*,<br>v.<br><br>EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>*Defendants*. | Civil Action No. 3:21-cv-00933-VDO<br><br>December 23, 2025 |

**MOTION TO COMPEL PRODUCTION OF RELIANCE MATERIALS RELATED TO USE OF ARTIFICIAL INTELLIGENCE, OR IN THE ALTERNATIVE, FOR SANCTIONS RELATED TO UNPRESERVED EVIDENCE**

**I.     INTRODUCTION**

We are at a pivotal point in the use of generative artificial intelligence ("AI") in litigation. CLF's expert Dr. Naomi Oreskes's admittedly used AI in preparing her expert report and opinions, and Defendants move to compel production of those reliance materials. Defendants provided a list of specific materials in five meet and confers, several written exchanges and in a letter on December 17, 2025 as ordered by the Court. Dr. Oreskes's use of AI as a methodology for analyzing documents and developing her expert opinions is no different from any other expert's reliance on other types of facts or data subject to disclosure under Rule 26, and CLF's refusal to provide same is a direct violation of the Rules. This is a simple request for information that should be readily available to CLF via the AI platform used by Dr. Oreskes, and CLF's refusal to produce it raises serious concerns for Defendants' ability to adequately cross-examine Dr. Oreskes at trial. Indeed, to the extent such information is no longer available, CLF has failed to preserve discoverable and relevant information and should be subject to spoliation sanctions, including precluding Dr. Oreskes from offering any opinions or testimony based on unpreserved data, an award of the costs and fees incurred by Defendants in pursuing this dispute, an adverse jury instruction, and any other sanction the Court may deem just and proper under the circumstances.[1]

In addition, Dr. Oreskes's use of AI to upload Defendants' confidential materials onto the AI platform raises serious confidentiality concerns and potential violations of the Standing Protective Order ("SPO"). Defendants have raised this concern to CLF, which has only responded with a series of vague, incomplete, and non-substantive statements regarding the security and compliance measures in place to ensure that Defendants' confidential material was not disclosed. Third-party AI platforms, like the one used by Dr. Oreskes, introduce new and novel confidentiality

---

[1] Dr. Oreskes use, consideration and reliance on AI generated material and information is also the subject of Defendants' pending Rule 702 motion, which Defendants hereby incorporate by reference as if fully set forth herein.

1

concerns, particularly with respect to retention, logging and disclosure for training purposes. CLF has failed to provide the requested information, necessary to demonstrate compliance with the SPO.

## II. FACTUAL BACKGROUND

### A. Dr. Oreskes's Use of AI to Prepare Expert Opinions

Dr. Oreskes relied on an AI workflow to form substantive opinions in her Expert Report regarding the history of climate science and Shell's internal knowledge. Dr. Oreskes testified that she and her assistant, Dr. Kaurov, jointly developed the prompts used to analyze Defendants' document production, Dr. Kaurov "ran the analysis," and that Dr. Oreskes then reviewed the AI-identified documents. ECF 840 Ex. A at 227 and 235: 10-20. Dr. Oreskes further characterized the AI tool as a "sieve to identify all the documents that could be relevant." *Id.* at 225:6-15.

Critically, however, Dr. Oreskes admitted that she did not validate the AI platform's results against the full corpus of produced documents to determine what responsive or contradictory materials may have been missed, excluded or misinterpreted by the AI model. *Id*. at 229. Initially, Dr. Oreskes testified she believed the AI searched "through all of the documents provided by the Defendants," effectively the entire production. *Id.* at 25:16-18. When pressed on the technical infeasibility of a discrete AI instance reviewing such a large volume, she insisted her assistant had a "particular toolkit." *Id.* at 233. After her deposition, there was a significant amount of back and forth between the parties to confirm that documents were, in fact, provided to the AI platform for analysis. After stating that no documents were "ingested", CLF acknowledged in a November 21, 2025 meet and confer that documents were uploaded to the AI tool and Defendants requested "[a] list of the Bates numbers of all Defendants' produced documents that were uploaded, ingested, or otherwise made available to any AI tool.". *See* Sept. 25, 2025 Objections and Responses to Defendants' Supplemental Requests for Documents; Dec. 17, 2025 Letter re Discovery Dispute, Ex. B.

To date, CLF has steadfastly refused to produce the specific list of Bates numbers loaded into the tool and considered by the AI model. This refusal to disclose the specific documents provided to the AI model—material considered and relied upon by Dr. Oreskes in developing her opinion from this workstream—is a clear violation of the rules relating to expert disclosures and prevents Defendants from analyzing the basis and methodology for the expert's opinions.

### B. The Apparent Destruction of Prompts and Admission of Spoliation

During Dr. Oreskes's deposition, Defendants asked Dr. Oreskes about the "prompts" and "searches" used in her AI analysis. Dr. Oreskes testified she believed they had been supplied or could be supplied by Dr. Kaurov. Following the deposition, on September 19, 2025, Defendants sent a deficiency letter specifically requesting: (1) details on the methodology and tasks performed by the AI; (2) a list of all Defendants' documents ingested by the AI; and (3) "All AI outputs... including any lists of documents the AI identified as relating to sea-level rise." *See* Sept. 19, 2025, Email re Dr. Oreskes Deposition, Ex. C.

CLF's responses were evasive. The Parties met for further discussion on September 24, 2025, and CLF requested more time to address the issue. On September 25, 2025, CLF claimed the AI did not "generate any reports or print outs", stating further that "no *experimental* prompts

2

were stored." *See* Ex. A (emphasis added). Given the inconsistencies with prior statements on these issues, parties continued to engage in extensive meet-and-confer discussions.

The Parties met again on October 2 and October 6, 2025, and Defendants reiterated the need for production of the inputs and outputs to examine the expert's work. On November 4, 2025, Defendants emailed again, asking for confirmation that CLF adequately preserved the prompts and results of any search that was run. CLF continued to assert that requested information was not subject to disclosure under Rule 26. After the parties called the clerk on December 10, 2025 to report the discovery dispute, the Court requested Defendants to serve a one-page, non-argumentative statement of the dispute on CLF's counsel by December 17, 2025. ECF 936. Defendants' submission is attached as Ex. B. Defendants' letter detailed the specific requests for the documents relied upon; the AI services contract; AI controls and security; AI confidentiality and access; materials considered by AI model; AI inputs and outputs; and AI preservation/disposition. *Id.*

As ordered by the Court, the parties continued to meet and confer and on December 19, 2025, CLF served the Declaration of Dr. Oreskes's assistant Alexander A. Kaurov. This declaration confirms that Dr. Oreskes's reliance materials and methodology related to the use of AI were not preserved. Kaurov Decl., Ex. D. ("I did not export or preserve a complete native 'prompt/output log' as standalone files on my personal systems or in a cloud environment"). CLF did not provide any further information with respect to the other requests in Defendants' December 17th letter, and on December 22, 2025, the parties had another meet-and-confer and declared an impasse on all issues. This briefing now follows.

### C. Defendants' Inability to Confirm CLF's Compliance with Protective Order

The SPO (ECF 7) mandates that "Designated Material shall not be used or disclosed for any purpose other than the litigation of this action" and strictly limits custody and control of such materials to prevent the parties' confidential materials from disclosure to individuals or entities that should not have access. Despite these restrictions, Dr. Oreskes testified that she utilized "ChatGPT on a secure server" to analyze Defendants' confidential materials. Oreskes Dep., 234. In a subsequent declaration, her assistant, Alexander "Sasha" Kaurov, clarified that the documents were processed using a "Microsoft Azure cloud environment." Kaurov Decl. at ¶5, Ex. D.

It is well established that uploading confidential discovery materials to a third-party AI platform raises significant security and compliance concerns, particularly with respect to data retention, logging, and potential model training. *See Warner v. Gilbarco, Inc.*, 2025 U.S. Dist. LEXIS 215397 (E.D. Mich. 2025) (modifying protective order to prohibit uploading confidential discovery materials to any AI platform, reasoning that doing so could destroy confidentiality because AI tools may store or reuse uploaded data). To ensure Defendants' confidential materials have been properly safeguarded, Defendants requested production of the Azure/OpenAI contract governing this use, confirmation that model training, fine-tuning, and logging of customer content for model improvement were disabled, and documentation specifying whether the AI instance was configured as "Enterprise, Private, [or] Isolated." *See* Ex. B. These materials are necessary to confirm that Defendants' confidential and trade-secret information was not disclosed to any third party, including ingestion by Microsoft or OpenAI or potential disclosure to the public domain, in violation of the Protective Order.

However, CLF refused to produce the requested information. Instead, CLF submitted a declaration from Dr. Oreskes's assistant Alexander A. Kaurov citing a public URL describing

3

Microsoft's standard terms of service. Kaurov Decl., Ex. D. CLF has provided no evidence specific to the actual Azure/OpenAI instance used in this litigation to demonstrate that Defendants' confidential discovery materials were not retained, logged, or used for training purposes by Microsoft or OpenAI.

In sum, CLF transmitted Defendants' confidential discovery materials to an unidentified third-party AI configuration without producing evidence of compliance with the SPO, and Defendants are left unable to confirm that their confidential business records have not been improperly disclosed or otherwise risk disclosure to the public domain.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 26(a) governs the disclosure of expert testimony. The rule requires a party to disclose the identity of its expert and to accompany the expert's disclosure with a written report containing <u>inter alia</u> "the facts or data considered by the witness in forming [his opinions.]" *In re Elysium Health-Chromadex Litig.*, 2021 U.S. Dist. LEXIS 65831, (S.D.N.Y. 2021). The Advisory Committee notes to the 2010 amendment of Rule 26 note that "the intention is that 'facts or data' be interpreted as broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment)). "To comply with the disclosure requirements, an expert must disclose the 'how' and 'why' the expert reached his conclusions." *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 2024 U.S. Dist. LEXIS 225465, (S.D.N.Y. 2024); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 44802, (S.D.N.Y. 2005) (holding that an expert's report must include the "essential details needed to understand and assess" the conclusions therein).

Under Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure, "[a] party seeking discovery may move for an order compelling answer, designation, production or inspection." Fed. R. Civ. P. 37(a)(3)(B). The Rules provide that sanctions may also be imposed for noncompliance, including preclusion of the expert, monetary sanctions, compelled disclosures, an adverse jury instruction, or any other sanctions the court deems appropriate.

The SPO mandates that "Designated Material shall not be used or disclosed for any purpose other than the litigation of this action" and expressly limits disclosure to specific authorized persons who have signed an agreement to be bound by the Order. Paragraph 8 further requires that "[a] person having custody of Designated Material shall maintain it in a manner that limits access to the Designated Material to persons permitted such access under this Order."

### IV.  ARGUMENT

#### A. CLF's Failure to Produce or Preserve AI "Facts or Data" Violates Local Rule (C)(1)(a)(iii), Connecticut Practice Book § 13-4 and Federal Rule of Civil Procedure 26

In her expert report and deposition, Dr. Oreskes admitted she used AI to assist in developing her opinions in this case. However, CLF has refused to produce the underlying facts, data and documents that construct the methodology she relied on. In a new declaration on December 19, 2025, CLF admitted they did not preserve the prompts or results of this analysis. Ex. D. This

information is fundamental to opinions in Dr. Oreskes's report and significantly compromises Defendants' ability to cross-examine this witness at trial, in clear violation of Rule 26.

Rule 26(a)(2)(B)(ii) requires the disclosure of "facts or data considered by the witness." In the context of AI, the "facts or data considered" relied upon are the specific documents fed into the system or otherwise sourced for analysis, together with user-entered inputs and AI-generated outputs. In pursuit of this discovery, Defendants explicitly requested "[a] list of the Bates numbers of all Defendants' produced documents that were uploaded, ingested, or otherwise made available to any AI tool." CLF has refused to provide this list, asserting vaguely that the expert was provided access to "the documents produced in this action."

Dr. Oreskes admitted in her deposition and expert report that she utilized OpenAI's GPT models. In fact, she has explained that she considered the information provided by the AI model in preparing her report. CLF's attempts to distinguish AI from any other methodology used by a testifying expert defies logic. Under Rule 26 "facts or data considered by a witness" are not defined differently based on the technology or "toolkit" used by the expert to assist in the development of their report. Documents and information provided to the AI model, and the companion information provided by the model, are no different than any other underlying citation or formula, which are routinely required to be disclosed. *See DDK Hotels, LLC v. Williams-Sonoma, Inc.,* 2025 U.S. Dist. LEXIS 166986, *11 (E.D.N.Y. Aug. 26, 2025) (compelling disclosure of citations to the exact documents from which the data was derived, as well as native versions of the tables and charts used in the report, including the calculations). With respect to AI, the documents provided to the model and the inputs and outputs generated by it are the equivalent of any underlying formula or calculation and as such are "facts or data considered by a witness," and are clearly discoverable under the Rules. This is akin to a medical expert refusing to provide the methodology, underlying data, or records considered for his or her determination of medical causation in a personal injury case. Yet CLF has not only failed to produce any underlying data, specifically the prompts, queries, and direct outputs from the AI model, but it now appears that this information is no longer available. This failure to comply with Rule 26 obligations and the apparent inability to comply—even if ordered by the Court—is deeply prejudicial to Defendants' ability to assess, validate and cross-examine Dr. Oreskes methodology and expert opinions.

Without the ability to verify the integrity of Dr. Oreskes's process, Defendants face severe prejudice. Defendants are not able to determine how the data impacted Dr. Oreskes's opinions, whether the AI hallucinated and provided misleading or inaccurate information, or whether the AI failed to retrieve relevant documents due to flawed prompts or bias. Given CLF's refusal to provide a complete list of documents considered by the AI model and the inputs and outputs appear to have been deleted, Defendants are unable to understand the foundation for significant portions of the expert's opinion and are unable to replicate the study.

Dr. Oreskes's report relies on underlying data and AI that has simply not been disclosed to Defendants. Without it, Defendants are unable to understand the foundation of Dr. Oreskes's opinion, let alone prepare for an adequate cross-examination at trial. Therefore, Defendants request that the Court compel such information that Plaintiff should have produced at the outset, as required by Rule 26.

> **B. CLF's Failure to Disclose Expert Reliance Materials Warrants Compulsion, or in the Alternative, Preclusion and Other Sanctions**

CLF's failure to provide this highly relevant and discoverable information raises serious concerns that necessitate this motion. In the first instance, to the extent that these materials and information remain available to CLF, it must be produced immediately. In the alternative, if CLF has deleted this information or otherwise allowed it to become spoliated, sanctions are the only way to cure the prejudice suffered by Defendants. At minimum, Dr. Oreskes must be precluded from offering any opinions or testimony supported by AI searches which have not been (and perhaps may not be able to be) produced to Defendants. In addition, Defendants seek sanctions to include their fees and costs in pursuing this dispute, an adverse jury instruction regarding Dr. Oreskes's lack of support for associated opinions, and any additional sanctions the Court may deem just and proper under the circumstances.

The failure to disclose these AI reliance materials independently violates Rules 26 and 702. Without disclosure of the inputs, outputs, and scope of documents reviewed, Defendants cannot evaluate the methodology employed, test its reliability, assess whether evidence favorable to Defendants was ignored, or prepare for cross-examination.

Preclusion is also warranted under Rule 37(c)(1), which bars the use of information or witnesses not properly disclosed under Rule 26(a) unless the failure was substantially justified or harmless. The failure here is neither. CLF's expert relied on a generative AI system as the foundation of her opinions, yet Defendants are left to speculate whether the system hallucinated facts, excluded critical evidence, or selectively filtered documents. CLF has admitted that the underlying AI data no longer exists, and Dr. Kaurov, the sole operator of the system, is the only person with knowledge of its operation, leaving Defendants without any recourse.

Connecticut Practice Book Rule 13 4(h) provides that when a party fails to comply with expert disclosure obligations under Rule 13 4(b), the Court may compel disclosure, preclude the expert, impose monetary sanctions, or issue any other orders it deems appropriate. Defendants therefore request that the Court compel production of the information requested in Defendants December 17, 2025 letter. If that information does not, in fact, exist, Defendants request that the Court preclude any opinions and testimony of Dr. Oreskes founded on her use of AI and award sanctions in the form of attorneys' fees and costs incurred in pursuing this motion, together with an adverse jury instruction as appropriate.

By choosing to employ generative AI, CLF's expert voluntarily introduced a powerful and novel technology into the evidentiary record. The specific documents uploaded, prompts input by the user, and outputs generated by the platform are quintessential expert reliance materials that must be disclosed. The failure to do so is a clear violation of the Rules and warrants sanctions.

### C. CLF Has Failed to Demonstrate Compliance with the Protective Order Regarding Confidential Data Uploaded to Third-Party AI Servers

Defendants remain concerned that their confidential materials may have been compromised and put at risk of public disclosure via Dr. Oreskes's use of AI. Dr. Oreskes testified that she and her assistant, Dr. Kaurov, utilized Microsoft Azure's OpenAI service to process Defendants' documents, many of which, based on the documents identified in the materials considered lists, Defendants reasonably believe are designated **CONFIDENTIAL** or **CONFIDENTIAL – ATTORNEYS' EYES ONLY**. Uploading highly sensitive, proprietary business information to a third-party cloud-based AI platform constitutes a disclosure to that third party. Unless specific enterprise-grade security configurations are enabled (e.g., "zero data

retention" or "opt-out of model training"), Generative AI platforms often ingest user data to train their models, potentially exposing Defendants' trade secrets to the public domain or other parties.[2]

To address this concern, Defendants reasonably requested "Evidence demonstrating the Azure/OpenAI contract governing this use... and provid[ing] confirmation that model training, fine-tuning, or logging of customer content for model improvement was disabled." Defendants specifically requested the configuration details of the "deployment, instance, model endpoint" to ensure the environment was truly isolated.

CLF repeatedly refused to provide this documentation. Instead, they have merely provided a declaration from Dr. Kaurov stating he "researched Microsoft Azure's security terms of services documentation at [a public] url." Reliance on a general public URL is insufficient to prove that the *specific* instance used by Dr. Oreskes was configured to prevent data leakage or model training. Without the specific configuration logs or service contract, Defendants are unable to confirm whether their confidential data was used to train a public AI model or was otherwise disclosed to a third party in violation of Paragraphs 5 and 8 of the Protective Order.

### V.   CONCLUSION

Dr. Oreskes's reliance on generative AI renders all materials and data related to that methodology subject to Rule 26's disclosure requirements. Accordingly, Defendants respectfully request that the Court compel immediate production of all Bates numbers uploaded to the AI tool, any all logs of prompts (inputs) or responses (outputs) generated in connection with Dr. Oreske's AI workstream, and responses sufficient to demonstrate that Defendants' confidential information was not disclosed, through the AI tool, in violation of the Protective Order. In the alternative, to the extent CLF is no longer available or otherwise cannot be produced, Defendants respectfully request that the Court: 1) strike any opinion or testimony from Dr. Oreskes that relies on the use of AI based on unpreserved data, and; 2) issue an adverse jury instruction to cure the prejudice incurred by Defendants from Dr. Oreskes's reliance on unpreserved and unavailable data; and (3) impose sanctions against CLF to include reasonable attorneys' fees and costs incurred in connection with this motion, and any other sanctions the Court may deem just and proper.

---

[2] See the "Preventing Abuse" section of the website cited in Mr. Kaurov's December 19, 2025 declaration, *Data, Privacy, and Security for Azure Direct Models in Microsoft Foundry* (Microsoft), which notes that "Azure Direct Models include abuse monitoring features that may retain prompts and generated content temporarily to detect misuse", https://learn.microsoft.com/en-us/azure/ai-foundry/responsible-ai/openai/data-privacy?view=foundry-classic&tabs=azure-portal; see also David Gauthier-Villars & Megan Niemi, *From Innovation to Exposure: Artificial Intelligence Risks for Legal Professionals* (July 14, 2025) (explaining that uploading confidential data to AI tools without clear understanding of data retention and processing policies can result in retention of sensitive information and potential confidentiality breaches), https://www.reuters.com/legal/legalindustry/innovation-exposure-artificial-intelligence-risks-legal-professionals-2025-07-14/. This confidentiality risk was widely reported in 2024 with respect to Azure OpenAI Services prior to Microsoft's updates to abuse monitoring policies for enterprise Copilot deployments; see *Legal Industry Players Missed a Microsoft AI Loophole That Could Expose Confidential Data* (Law.com) (originally reported and later archived Legal Industry Players Missed a Microsoft AI Loophole That Could Expose Confidential Data| Law.com; summarized in "Azure OpenAI Service Has Confidentiality Loophole," *Legaltech News / Legal Dive*) (noting that default logging and monitoring features could expose client data absent explicit configuration of zero-data-retention protections) Azure OpenAI Service has confidentiality loophole, Legaltech News reports | Legal Dive.

7

Dated: December 23, 2025                              Respectfully submitted,

/s/ *Rose J. Jones*
Rose J. Jones (phv208026)
Hilgers PLLC
3100 Interstate N. Circle SE
Suite 200 #1047
Atlanta, GA 30339
T: (678) 229-1983
rjones@hilgerslaw.com

Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com
CToledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street Suite 1700
Charlotte, North Carolina 28202
T: (704) 503-2600
alewis@kslaw.com

Anthony G. Papetti (phv206982)
Beveridge & Diamond, P.C.
825 Third Ave., 16th Floor
New York, NY 10022
T: (212) 702-5400
F: (212) 702-5442
apapetti@bdlaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower 265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

<mark>
<mark>John S. Guttmann (ct25359)
Beveridge & Diamond, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
T: (202) 789-6020
F: (202) 789-6190
jguttmann@bdlaw.com

Bina R. Reddy (phv20420)
Beveridge & Diamond, P.C.
400 West 15th Street Suite 1410
Austin, TX 78701-1648
T: (512) 391-8000
F: (202) 789-6190
breddy@bdlaw.com

Megan L. Marzec Morgan (phv20623)
Roy D. Prather III (phv206800)
Beveridge & Diamond, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201-4150
T: (410) 230-1305
F: (410) 230-1389
mmorgan@bdlaw.com
rprather@bdlaw.com

*Counsel for Defendants*

<mark>

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 23, 2025 a copy of the foregoing MOTION TO COMPEL PRODUCTION OF RELIANCE MATERIALS RELATED TO USE OF ARTIFICIAL INTELLIGENCE, OR IN THE ALTERNATIVE, FOR SANCTIONS RELATED TO UNPRESERVED EVIDENCE was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

      /s/ *Rose J. Jones*
Rose J. Jones (phv208026)
Hilgers PLLC
3100 Interstate N. Circle SE
Suite 200 #1047
Atlanta, GA 30339
T: (678) 229-1983
rjones@hilgerslaw.com