**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Conservation Law Foundation, Inc., | |
| Plaintiff, | Civil No. 3:21-cv-00933 (VDO) |
| v. | |
| Shell Oil Co., *et al.*, | March 18, 2026 |
| Defendants. | |

**RULING AND ORDER ON MOTIONS TO SEAL**

This is an environmental lawsuit between a non-profit advocacy group, Conservation Law Foundation, Inc. ("CLF"), and Shell Oil and other petroleum companies ("Defendants"). Following a long and bitterly-contested discovery period, each side has moved to preclude evidence from the other side's expert witnesses. (ECF Nos. 706, 710–14, 722, 726, 729, 730, 732, 734, 737, 741–44.) In all but one of those motions, the parties' briefs quoted from, or attached as exhibits, expert witness reports and deposition transcript excerpts containing information that the Defendants regard as confidential. Pursuant to Paragraph 14 of the Standing Protective Order (ECF No. 7) and Rule 5(e) of the Local Rules of Civil Procedure for the District of Connecticut, the parties filed those reports, excerpts, and other allegedly-confidential documents provisionally under seal, along with ten separate motions for further sealing. (ECF Nos. 707, 715, 723, 731, 738, 745, 836, 845, 896, 908.)

This Ruling resolves the ten motions to seal. For the reasons set forth below, all ten motions will be denied, and the currently-sealed documents will be ordered unsealed.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2025, the parties filed motions to preclude expert testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The Defendants moved to preclude testimony from eleven of CLF's experts (ECF Nos. 710–13, 726, 729, 732, 734, 741, 742, 743, 744), and CLF moved to preclude testimony from five of the Defendants' experts.  (ECF Nos. 706, 714, 722, 730, 737.)

In contrast to some other cases, the parties did not file their *Daubert* motions contemporaneously with motions for summary judgment.  The two sides had requested separate deadlines for *Daubert* motions on the one hand, and summary judgment motions on the other (*see* Jt. Status Rpt., ECF No. 651), and the Court granted their request.  (Scheduling Order, ECF No. 652.)  Under the chambers practices of the presiding District Judge, the Honorable Vernon D. Oliver, parties must request a pre-filing conference before filing motions for summary judgment. Both sides asked for such a conference (ECF Nos. 804, 806, 808), and their requests remain *sub judice* as of this writing.  As a result, *Daubert* motions and summary judgment motions will be filed months apart in this case, rather than contemporaneously as often happens in other cases. This fact will affect the sealing analysis, as will be discussed below.

When the Defendants filed their *Daubert* motions, they unsurprisingly attached the challenged experts' reports and deposition transcripts as exhibits.  (*See, e.g.,* ECF No. 710) (Defendants' motion challenging anticipated testimony from Dr. Wendi Goldsmith, and attaching excerpts from her deposition transcript and her report as Exs. 2 and 7, respectively).  The Defendants contend that much of the information referenced in CLF's experts' reports and depositions is confidential.  In particular, they note that several reports reference or quote from Shell's "internal Design Engineering Practices," or "DEPs," and they assert that the DEPs contain

"commercially valuable and other competitively sensitive information, as well as confidential technical information related to [their] business activities." (ECF No. 745, at 7–8.) Thus, when they submitted their motions to preclude, they redacted allegedly-confidential information from their briefs and transcript exhibits, and they filed the experts' reports provisionally under seal.[1] They accompanied these filings with a single, omnibus motion for further sealing, encompassing the information that they had redacted or withheld from all eleven *Daubert* motions. (*See generally id.*)

The Defendants did not, however, attach any new declarations or affidavits to support their claims of confidentiality and commercial harm. (*Id.*) Instead, they cited four declarations that they had filed with previous motions to seal relating to discovery disputes, three of which dated back to early 2023. (*Id.* at 7–9; *see also* ECF Nos. 174-1, 234-1, 239-1.) The Defendants also argued that the unredacted filings should remain sealed because the Court had previously allowed the same or similar information to remain under seal in those earlier disputes. (ECF No. 745 at 7, 9.) Their brief assumed without argument that the standard for sealing is no different in the *Daubert* context than it was in the discovery context. In any event, the Defendants provided no evidence in support of their claims of competitive harm beyond what they had already submitted in the discovery setting. This fact will also affect the sealing analysis.

CLF also moved to preclude expert witness testimony (ECF Nos. 706, 714, 722, 730, 737), and it likewise attached the challenged experts' reports and deposition transcripts as exhibits. (*E.g.,* ECF No. 706) (CLF's motion to preclude anticipated testimony from Susan Bodine, attaching her report and deposition transcript as Exs. A and B, respectively). Following the

---

[1]    In the case of Dr. Wendi Goldsmith, the Defendants initially filed their entire brief under seal (ECF No. 710-1), but they later corrected this and filed a redacted version at ECF No. 743-1.

3

procedure set forth in the Standing Protective Order, CLF filed its unredacted motions and certain exhibits provisionally under seal, accompanied by five separate motions to seal.  (ECF Nos. 707, 715, 723, 731, 738.)  But CLF does not believe that the unredacted motions and exhibits meet the legal standard for sealing, and it therefore opposed its own motions.  (*See id.*)  CLF also noted that the Defendants did not designate the deposition transcripts of Craig Jones, Ph.D. and Renee Bourdeau as confidential (ECF Nos. 723, 738), and that Ms. Bourdeau's deposition transcript contained the same information contained in her expert report—which, CLF contends, is "based on publicly available information" and therefore not appropriate for sealing.  (ECF No. 738.)

The Defendants filed an omnibus response to CLF's five motions.  (ECF No. 825.)  They agreed that Dr. Jones's curriculum vitae (ECF Nos. 722-2, 725) could be unsealed, along with CLF's motion to preclude Ms. Bourdeau's testimony (ECF Nos. 737-1, 739) and Ms. Bourdeau's expert report (ECF Nos. 737-2, 740).  (*See* ECF No. 825 at 1 n.1, 3 n.2.)  But the Defendants sought to maintain everything else under seal, asserting that the redacted information is confidential and that its disclosure will cause them competitive harm.  (ECF No. 825 at 4–12.)  Again, the Defendants did not provide any new declarations or affidavits in support of these claims of harm, instead pointing to the same four previously-filed declarations and to the Court's previous decisions on motions to seal in the discovery context.  (*Id.* at 4–5, 11–12.)

On November 3, 2025, each side filed its opposition to the other side's *Daubert* motions.  (ECF Nos. 820–24, 826–31, 833–835, 837, 840.)  On November 17, 2025, the parties filed their reply briefs.  (ECF Nos. 884–95.)  The Defendants filed omnibus motions to seal the unredacted copies of their opposition and reply memoranda and accompanying exhibits.  (ECF No. 836, 908.)  These motions substantially repeated the arguments made in support of their previous motions to seal.  (*Compare* ECF Nos. 745, 825 *with* ECF Nos. 836, 908.)  Similarly, CLF filed omnibus

motions to seal its own unredacted memoranda and accompanying exhibits. (ECF Nos. 845, 896.) But CLF again opposed its own motions, explaining that the oppositions and replies implicated substantially the same body of "documents and information" already at issue in the previously filed motions to seal. (ECF No. 845 at 4–5; ECF No. 896 at 3–4.) In response, Defendants filed their own memorandum to support their request to maintain certain of CLF's filings under seal. (ECF No. 933.) CLF also objected to Defendants' motions to seal at ECF Nos. 836 and 908, arguing, *inter alia,* that the Defendants failed to specifically identify the confidential information at issue and that the Defendants have not met the standard for sealing of documents. (*See generally* ECF Nos. 924, 930.)

In summary, the parties have filed over a dozen memoranda on the issue of whether their *Daubert* motions and exhibits should remain sealed in part. Neither side requested oral argument. The motions are therefore ripe for decision.

## II.     APPLICABLE LEGAL PRINCIPLES

### A.     Basic, Uncontested Principles

The undersigned has issued nine rulings on sealing in this case, ranging from a few sentences of docket text to an eighteen-page opinion. (ECF Nos. 221, 238, 288, 379, 471, 560, 622, 655, 656); *see also Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21-cv-933 (JAM) (TOF), 2023 WL 5567614 (D. Conn. May 16, 2023). In those rulings, the Court identified the basic legal principles that govern motions to seal in the Second Circuit. *E.g., id.* at *1–3. In the ten pending motions, no party disputes these basic principles. The Court will nevertheless include them here for purposes of completeness.

"The Supreme Court and the Second Circuit have recognized the public's right to access court records and proceedings, which is rooted in both the common law and the First Amendment."

*Travelers Indem. Co. v. Excalibur Reins. Corp.*, No. 3:11-cv-1209 (CSH), 2013 WL 4012772, at *2 (D. Conn. Aug. 5, 2013) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597–98 (1978)). "Consequently, there is a strong presumption against sealing court records from public inspection." *Id.* "The public's right to access court documents is not, however, absolute in that it may be surmounted by a party's showing that sealing will further other substantial interests, for example, a criminal defendant's right to a fair trial or a third party's privacy interests." *Id.* at *3 (citing *Matter of New York Times Co.*, 828 F.2d 110, 114–16 (2d Cir. 1987)). "Thus, in limited circumstances and upon a showing of compelling need, the court may order certain records to be sealed." *Id.* (citing, *inter alia*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006)).

Courts in the Second Circuit follow a three-step process in determining whether to seal documents that have been placed before them. *Lugosch*, 435 F.3d at 119–20. First, the court determines whether the document is a "judicial document" to which a presumption of public access attaches. *Id.* at 119. Second, if the document is indeed a judicial document, the court determines the weight to be given to the presumption under the circumstances of the case. *Id.* Third, after determining the weight to be accorded to the presumption, the court "balance[s] the competing considerations against it." *Id.* at 120 (citation omitted). At all times, "[t]he burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

In performing the first step of this three-step process, courts regard the document at issue as a "judicial document" if it is "relevant to the performance of the judicial function and useful in the judicial process[.]" *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). "Such documents are presumptively public so that the federal courts 'have a measure of

accountability' and so that the public may 'have confidence in the administration of justice.'" *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")).   "In determining whether a document is a judicial record, [courts] evaluate the 'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceedings.'"   *Id.* at 139–40 (quoting *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013)) (brackets and ellipsis omitted).

In performing the second step of the process—the assessment of the weight to be accorded to the presumption—courts consider "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1049).   "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049.   For example, "[t]he weight of [the] presumption is of the 'highest' for 'documents used by parties moving for summary judgment,' which 'should not remain under seal absent the most compelling reasons.'" *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, No. 3:18-cv-705 (VLB), 2020 WL 13303727, at *2 (D. Conn. Aug. 21, 2020) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)) (ellipsis omitted).   Conversely, "[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach[.]" *Amodeo II*, 71 F.3d at 1050.

In the third step of the three-step process, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050). "Courts have identified several countervailing considerations that may overcome even strong presumptions of public access." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023). "Foremost among the competing concerns that a court weighing disclosure must consider is 'the privacy interest of the person resisting disclosure.'" *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020) (quoting *Amodeo II*, 71 F.3d at 1050). "In determining the proper weight to accord an asserted privacy interest, a court should consider both 'the degree to which the subject matter is traditionally considered private rather than public,' as well as 'the nature and degree of the injury' to which the party resisting disclosure would be subjected were the privacy interest not protected.' *Id.* (quoting *Amodeo II*, 71 F.3d at 1051) (brackets omitted).

## B.    The Second *Lugosch* Factor in the Context of Motions to Preclude Expert Witness Testimony

The parties do not dispute these basic principles, but they do dispute the weight to be accorded to the presumption of access in this instance. The Court's nine previous sealing rulings all concerned documents filed in connection with discovery disputes (ECF Nos. 221, 238, 288, 379, 471, 560, 622, 655, 656), and in that setting, "the presumption of access typically has only modest weight." *Conservation L. Found.*, 2023 WL 5567614, at *2 (citing *Keurig,* 2023 WL 196134, at *3) (bracket and quotation marks omitted). But this time, the question of sealing arises in connection with *Daubert* motions. The parties apparently dispute whether this makes a difference.

For its part, CLF argues that this difference changes the presumption's weight from "modest" to "strong." (*E.g.*, ECF No. 707, at 2.) It contends that, "[u]nlike exhibits to discovery

motions, which this Court has noted are only afforded a 'presumption of access' of 'modest weight' . . . exhibits to a motion to preclude expert testimony are given a 'strong presumption' of public access."  (*Id.*) (citation omitted).  It cites *Castelluccio v. International Business Machines Corporation*, a 2013 case in which Judge Squatrito held that portions of a declaration submitted in support of a *Daubert* motion implicated a "strong" presumption because they were "used to determine litigants' substantive legal rights[.]"  (*Id.*) (quoting *Castelluccio*, No. 3:09-cv-1145 (DJS), 2013 WL 12319859, at *5 (D. Conn. Mar. 28, 2013)) (internal citation and quotation marks omitted).  If CLF observes any distinction between the nearly insurmountable weight to be afforded to the presumption at summary judgment, and the weight to be afforded in the context of a stand-alone *Daubert* motion, that distinction is not evident from its briefs.  (*See id.*)

For their part, the Defendants do not come right out and say that the presumption of access is the same in the discovery and *Daubert* contexts.  (*E.g.*, ECF No. 825, at 4–5.)  But they ask the Court to follow the decisions that it made in the earlier discovery disputes (*see id.*), and thus the argument is implied.  If the Defendants observe any distinction between the no more than "modest" weight to be afforded to the presumption in the discovery context, and the weight to be afforded in the context of a stand-alone *Daubert* motion, that distinction is likewise not apparent from their papers.  (*See id.*)

Having carefully considered the relevant authorities, the Court concludes that both parties have overstated their case.  On the one hand, CLF overstates things when it suggests that the weight to be attached the presumption on a stand-alone *Daubert* motion is the same as the weight given to the presumption of access in the summary judgment context.  The Second Circuit has explained that "the presumption of public access in filings submitted in connection with discovery disputes ***or motions in limine*** is generally somewhat lower than the presumption applied to material

introduced at trial, or in connection with dispositive motions[,]" *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (emphasis added)—and a *Daubert* motion is, of course, a type of motion *in limine*. Applying this principle from *Brown*, Judge Vargas recently held that, "while a court must still articulate specific and substantial reasons for sealing" material attached to a *Daubert* motion, "the reasons usually need not be as compelling as those required to seal summary judgment filings." *Dixon v. Reid*, No. 23-cv-09878 (JAV), 2025 WL 3638270, at *1–2 (S.D.N.Y. Dec. 15, 2025) (quoting *Brown*, 929 F.3d at 50). And even in *Castelluccio*, the court did not regard the presumption as insurmountable. While Judge Squatrito did indeed hold that exhibits to a *Daubert* motion enjoy a "strong" presumption of access, he nevertheless ordered one document redacted because it contained "proprietary information, the release of which could result in competitive injury to the defendant." 2013 WL 12319859, at *5; *see also Vanguard Dealer Servs., LLC v. Bottom Line Driven, LLC*, No. 3:21-cv-659 (JAM) (SDV), 2023 WL 4746180, at *1–2 (D. Conn. Apr. 27, 2023) (holding that, although "[b]riefs and evidence submitted in support of . . . *Daubert* motions are judicial documents, and the presumption of public access to these documents is strong," pricing and sales commission information should remain sealed because of "a valid risk of competitive harm"). Most of the cases that applied a strong presumption of access to *Daubert* materials were cases in which the *Daubert* motion was an integral part of a contemporaneously-filed summary judgment package, not a stand-alone motion as in this case. *E.g., Dawson v. Merck & Co., Inc.*, No. 1:12-cv-1876 (BMC) (PK), 2021 WL 242148, at *6 (E.D.N.Y. Jan. 24, 2021); *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 221 (S.D.N.Y. 2019).

On the other hand, the Defendants are mistaken when they suggest that the analysis is no different here than it is in the discovery context. In particular, they are mistaken to the extent they suggest that, if a document was ordered sealed when filed as an exhibit to a discovery motion, it

10

must also be sealed when filed as an exhibit to a *Daubert* motion.  (ECF No. 825, at 4.)  One case

that starkly illustrates the effect of a changed context on the sealing analysis is *CNY Fair Housing,*

*Inc. v. Wellclover Holdings LLC.*  In that case, a Magistrate Judge granted a motion to seal eight

documents that had been filed in connection with a discovery dispute.  No. 5:21-cv-361 (BKS)

(ML), 2024 WL 2049047, at *3 n.2 (N.D.N.Y. May 8, 2024).  Later, the parties submitted the same

eight documents as exhibits to a summary judgment motion, and they cited the Magistrate Judge's

decision in support of an argument that the documents should remain sealed despite the different

procedural posture.  *Id.*  But the District Judge disagreed.  "The reasons for sealing documents

submitted in connection with a motion for discovery 'usually need not be as compelling as those

required to seal summary judgment filings.'"  *Id.* (quoting *In re N.Y.C. Policing During Summer*

*2020 Demonstrations*, 635 F. Supp. 3d 247, 253 (S.D.N.Y. 2022)).  "Unlike documents submitted

in connection with a motion for summary judgment, which are accorded the strongest presumption

of access, the presumption of access for documents submitted in connection with a discovery

motion is entitled to only modest weight."  *Id.* (citation and quotation marks omitted).  For this

reason and others, the District Judge denied a motion to seal the very same documents that the

Magistrate Judge had previously ordered sealed in the discovery phase.  *Id.* at *6.

The Defendants' position is not only unsupported by any genuine authority; it is also at

odds with prior rulings in this very case.  To be sure, the Court has sealed exhibits to discovery

motions in response to claims of business confidentiality and competitive harm, as the Defendants

note.  (*E.g.,* ECF Nos. 221, 288, 379, 560, 622.)  But each such ruling cited the relatively low

weight that is accorded to the presumption of access in the discovery context.  (*Id.*)  Moreover,

several of these rulings placed the Defendants on notice that the factors might balance differently

if the same or similar documents were filed in connection with a different type of motion.  *E.g.,*

11

*Conservation L. Found.*, 2023 WL 5567614, at *7–8 (ordering nine exhibits sealed because the Defendants' claim of "competitive harm" "outweigh[ed] the relatively low weight that attaches to the presumption of access in this discovery dispute[,]" but "express[ing] no view as to whether they would merit sealing if submitted at a later phase of the case, *e.g.*, in connection with a summary judgment motion"); (ECF No. 288) ("The Court expresses no view on whether the portions of Exhibits Q, S, or Z that will remain sealed under this order would merit continued sealing if submitted in connection with a summary judgment or other dispositive filing, or as exhibits at trial."); (*see also* ECF Nos. 379, 560, 622).  In other words, the Defendants have long known that they might have to come forward with more and better evidence of greater competitive harm if they wished to seal allegedly-confidential documents that were placed before the Court in some context other than a discovery dispute.

The different context imparts higher weight to the presumption of public access.  While a ruling on a *Daubert* motion is not a final adjudication of any claim or defense, the motions and documents at issue here are closer to the core of the Court's Article III responsibilities than the motions and documents at issue during the discovery phase.  In one discovery motion, for example, CLF wanted the Court to know that a particular consulting firm had performed a particular assignment for the Defendants, because it wanted the Court to understand why it sought to take the firm's deposition.  (Mot. for Add'l Depos., ECF No. 181, at 26–27.)  To prove the entirely uncontested point that the consultant had done the assignment, CLF attached two reports showing the firm's detailed calculations about the capacities of the Defendants' oil terminal.  (*See id.* and ECF Nos. 289, 290.)  Because the calculations were irrelevant to the discovery motion—and because discovery motions, in any event, are merely "ancillary to the court's core role in adjudicating the case," *Brown*, 929 F.3d at 50—the Court ordered the calculations sealed, even

12

though the Defendants' claims of commercial harm were not especially well supported.  (ECF No. 288) (permitting Defendants to redact Exs. Q and S to CLF's motion).  In this instance, by contrast, the Defendants seek to seal the reports and deposition testimony of the very experts whose testimony is being fought over.  (*E.g.*, ECF No. 825, at 2–3) (listing six expert reports that the Defendants seek to seal).  Stated another way, the documents that CLF attached to its discovery motions were generally peripheral to an inquiry that is only "ancillary" to the Court's core Article III duties, *Brown*, 929 F.3d at 50, but the documents at issue here are central to an inquiry that is closer to that core.

Guided by these considerations, the Court will apply the following principles to the second and third steps of the *Lugosch* analysis.  The public's interest in accessing judicial documents weighs more heavily in the balance in this instance than it did at the discovery stage, *see CNY Fair Housing*, 2024 WL 2049047, at *3 n.2, but not as heavily as it will at summary judgment.  *Dawson*, 2021 WL 242148, at *6.  Although heightened, that interest can be overcome by a showing of competitive harm in a proper case.  *See Castelluccio*, 2013 WL 12319859, at *5.  But because the public interest carries more weight here, the Defendants were required to come forward with a stronger claim of competitive harm than they did in the discovery context.  *See In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure *would result in an injury sufficiently serious to warrant protection*; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." (emphasis added)).

## III.   ANALYSIS

In this case, the Defendants do not dispute that the documents at issue qualify as "judicial documents" in the first step of the *Lugosch* analysis (*see, e.g.,* ECF No. 825), nor could they.  The

documents are chiefly reports and deposition testimony by the very experts whose opinions are being challenged (*see, e.g.,* ECF No. 825, at 5–11), and they are therefore "relevant to the performance of the judicial function and useful in the judicial process[.]" *Amodeo I*, 44 F.3d at 145. Thus, the question presented is whether the public interest identified at the second step is outweighed by the harm demonstrated at the third.

To support a claim of competitive or other commercial harm, the party seeking sealing must ordinarily come forward with something beyond its counsel's say-so. As Judge Torres has explained, "conclusory statements that documents contain confidential business information are insufficient to justify sealing[.]" *Secs. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-cv-10832 (AT), 2022 WL 17751466, at *2 (S.D.N.Y. Dec. 19, 2022) (citation and quotation marks omitted). "Rather, the moving party must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *Id*. (citation, quotation marks, and *sic* omitted). Indeed, in this very case the Court previously declined to seal certain Shell documents because the Defendants had "not explained the injury that would follow from their disclosure, aside from a conditional and conclusory statement by their counsel that, 'should competitors have access,' 'it *could* cause financial harm.'" *Conservation L. Found*., 2023 WL 5567614, at *4 (brackets omitted, emphasis in original).

In the ten motions to seal that are presently before the Court, the Defendants have come forward with no new affidavits evidencing commercial harm that would flow from the public disclosure of the specific documents at issue. Instead, they have directed the Court's attention to four declarations that they previously filed in connection with discovery disputes, some of them more than two or even three years old. (*E.g.*, ECF No. 825, at 11–12) (directing the Court to declarations at ECF Nos. 174-1, 239-1, 629-1, and 630). The first is a February 3, 2023 declaration

from their Distribution Operations Manager, Brian Evans, stating that nine specific documents filed with a 2023 discovery motion were not publicly available and would cause competitive harm if disclosed. (ECF No. 174-1.) The Court ordered those nine documents sealed because Mr. Evans' specific showing "outweigh[ed] the relatively low weight that attache[d] to the presumption of access in this discovery dispute." *Conservation L. Found.*, 2023 WL 5567614, at *7. The second is a May 23, 2023 declaration from a contracting and procurement lawyer, Matthew Penny, purporting to explain the confidential character of two Design and Engineering Practices ("DEP") documents. (ECF No. 234-1.)[2] The Court declined to seal those documents, even in the discovery context. *Conservation L. Found.*, 2023 WL 5567614, at *4; (*see also* ECF No. 238) (denying motion for reconsideration). The third is a May 30, 2023 declaration from the Defendants' Facilities Manager, Michael Sullivan, in which he stated that engineering documents filed with a different 2023 discovery motion were not publicly available and would "raise[] concerns about . . . facility safety and security" if disclosed. (ECF No. 239-1, ¶ 7.) The Court sealed most of the documents because, in the context of that discovery dispute, "the weight of the presumption of public access to any information beyond the identity and role of" the engineer was "especially low." (ECF No. 288.) Finally, the Defendants cite the June 4, 2025 declaration of Sergio Jaramillo that they filed in connection with yet another discovery motion. (ECF No. 630.) The Court granted sealing in that instance, again citing "the no more than 'modest weight' that attache[d] to the presumption of access," but "express[ing] no view on whether these exhibits would merit sealing if filed as exhibits to a dispositive motion or at trial." (ECF No. 656.)

---

[2]     The Defendants re-filed this declaration at ECF No. 629-1 in connection with another sealing dispute.

These declarations do not justify sealing the documents the Defendants seek to seal in this context.  Take, for example, the May 23, 2023 declaration from Matthew Penny at ECF No. 234-1.  That declaration explains generally that "DEPs" "reflect the professional, technical know-how of Shell," and that access to them "is controlled through a restricted portal system that has security controls in place."  (ECF No. 234-1, ¶¶ 6, 9.)  It adds that DEPs are sometimes provided to third parties, but only "under contractual agreements through which Shell . . . is compensated[,]" and "[t]hus, the DEPs have commercial value."  (*Id.* at ¶ 11.)  The Defendants correctly note that some of CLF's expert witnesses cited or quoted from Shell DEPs in their reports (ECF No. 745, at 7); for example, Dr. Goldsmith's sixty-page report contains about fifteen paragraphs discussing or quoting from four specific DEPs.  (ECF No. 751.)  But the Defendants do not explain how public disclosure of those discussions or quotes would result in any commercial harm.  While the Penny Declaration asserts that DEPs have commercial value as a general matter, it does not explain why the specific sections of the specific DEPs cited by CLF's experts implicate any privacy or competitive concerns sufficient to overcome the presumption of access.

The same is true of the other three declarations.  The February 3, 2023 declaration from Brian Evans discussed nine specific documents or groups of documents that CLF had attached as exhibits to a discovery motion (ECF No. 174-1), and the Court did indeed hold that the declaration supported sealing those specific documents in the discovery context because, among other reasons, they "contain[ed] no indicia of external circulation" and some "include[d] personal information of employees." *Conservation L. Found.*, 2023 WL 5567614, at \*5, 7.  But the Evans declaration says nothing about the expert reports and deposition transcripts at issue here, and the Defendants' briefs do not show that the nine groups of documents referenced by Mr. Evans were among the

documents discussed or quoted by CLF's experts.  (*See* ECF Nos. 745, 825, 836, 908.)[3]  The May 30, 2023 declaration from Michael Sullivan likewise discusses three specific documents or groups of documents (ECF No. 239-1), but the Defendants have not shown that those documents were referenced or quoted by any CLF expert.  (*See* ECF Nos. 745, 825, 836, 908.)  Finally, the June 4, 2025 declaration from Sergio Jaramillo similarly concerns eight specific documents that the Defendants have not shown to be at issue here.  (ECF No. 630; *see also* ECF Nos. 745, 825, 836, 908.)  And even as to those eight documents, the Jaramillo declaration was only slightly more specific than the typical "conclusory statements that documents contain confidential business information[.]"  *Ripple Labs, Inc.*, 2022 WL 17751466, at *2; (*see* ECF No. 630) (stating that, if the eight documents "were made publicly available, it would cause the release of non-public, sensitive and/or proprietary business information . . . and therefore cause competitive harm").  While this statement might have been sufficient to overcome the presumption of public access to the eight specific documents in the context of a discovery motion (*see* ECF No. 656), it is insufficient to overcome the presumption here, where both the context and the documents are different.

The Defendants make other arguments in support of sealing, but none are persuasive.  They make a general claim that the documents at issue "incorporate [their] proprietary standards and

---

3       Mr. Evans did discuss a "Hazard and Effects Management Process," or "HEMP," document, and he also discussed a "Continuity Plan."  (ECF No. 174-1, at ¶¶ 11, 14.)  In their response to CLF's motions to seal, the Defendants stated that CLF's expert Eric Kovich discussed a "HEMP" document in his report, and that six different experts discussed a "Business Continuity and Storm Action Plan" in their reports.  (ECF No. 825, at 6–11.)  But the "HEMP" document discussed by Mr. Evans was a different document from the one discussed by Mr. Kovich.  (*Compare* ECF No. 174-1, at ¶ 11 (citing Bates No. SOPUS_NHVN00038398) *with* ECF No. 825, at 9–10 (citing Bates No. SOPUS_NHVN01843720).)  Similarly, the "Continuity Plan" cited by Mr. Evans was a different document from the "Business Continuity and Storm Action Plan" cited by the six experts.  (*Compare* ECF No. 174-1, at ¶ 14 (citing Bates No. SOPUS_NHVN00000663) *with* ECF No. 825, at 6–10 (citing Bates No. SOPUS_NHVN00269158).)

internal analyses" (ECF No. 825, at 2), but again, these sorts of conclusory statements do not suffice. *Ripple Labs, Inc.*, 2022 WL 17751466, at *2. They argue that unsealing these documents would be "at odds with . . . the Standing Protective Order" (ECF No. 825, at 2), because they designated many of the documents as "confidential" in good faith under the terms of that order; but the order is crystal clear that a party's confidentiality designation does not control the sealing analysis. (Standing Prot. Order, ECF No. 7, at 3) (stating that "[t]his Protective Order does not provide for the automatic sealing of . . . Designated Material"). This is true even though some documents were "marked confidential by the Plaintiff themselves [*sic*]," as the Defendants note (ECF No. 825, at 5), because *neither* party's confidentiality designation controls the Court's own balancing of the public's right of access with the claims of commercial harm. (*See* Standing Prot. Order, ECF No. 7, at 3.) Finally, the Defendants claim that "CLF has previously broadcasted its motivation to publicize these materials based on a desire to solicit fundraising contributions from its donors-not in pursuit of any public need for the documents to be in the public domain." (ECF No. 825, at 4.) But even if the Court were to accept that CLF had an ulterior motive, the Defendants cite no authority for the proposition that CLF's motives are relevant to the *Lugosch* analysis. (*See id.*) In short, all the Defendant's arguments are unpersuasive, and the Court declines to adopt them.

## IV.    CONCLUSION AND ORDER

The Court has carefully considered all the arguments raised by the parties in the ten motions, even if not specifically referenced herein. Having done so, and for the reasons stated above, the motions to seal at ECF Nos. 707, 715, 723, 731, 738, 745, 836, 845, 896, and 908 are **DENIED.** The Clerk of the Court is respectfully directed to unseal the following documents: ECF

Nos. 708, 709, 716, 717, 718, 719, 720, 721, 724, 725, 727, 728, 733, 735, 736, 739, 740, 746–786, 838, 839, 841, 842, 843, 844, 846–869, 897-902, and 909–919.

This is not a recommended ruling. It is a ruling by a Magistrate Judge on a "nondispositive motion[] . . . relating to discovery," D. Conn. L. Civ. R. 72.1(C)(2), and as such it is reviewable only upon timely objection and pursuant to the "clearly erroneous or . . . contrary to law" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b); *see also Grand v. Schwarz*, No. 15-cv-8779 (KMW), 2018 WL 1604057, at * (S.D.N.Y. Mar. 28, 2018) (affirming Magistrate Judge's order unsealing documents because it "was not clearly erroneous or contrary to law"); *Morris v. Jetblue Airways Corp.*, No. 15-cv-1664 (ENV) (RLM), 2015 WL 8042227, at *3 (E.D.N.Y. Dec. 3, 2015) (same); *Pullman v. Alpha Media Publ'g, Inc.*, No. 12-Civ.-1924 (PAC) (SN), 2014 WL 5044224, at *2 (S.D.N.Y. Sept. 23, 2014) (same). It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

So ordered this 18th day of March, 2026, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge