**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

CONSERVATION LAW FOUNDATION, INC.,

    *Plaintiff*,

          v.

SHELL OIL COMPANY, EQUILON
ENTERPRISES LLC D/B/A SHELL OIL
PRODUCTS US, SHELL PETROLEUM, INC.,
TRITON TERMINALING LLC, and MOTIVA
ENTERPRISES LLC,

    *Defendants*.

Civil Action No. 3:21-cv-00933-VDO

June 1, 2026

**CONSERVATION LAW FOUNDATION INC.'S OBJECTION
TO THE MAGISTRATE JUDGE'S ORDER NO. 970**

Pursuant to 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L.R. 72.2 of the Local Rules of the United States District Court for the District of Connecticut, Plaintiff Conservation Law Foundation, Inc. ("CLF") respectfully objects to Magistrate Judge Thomas O. Farrish's May 18, 2026 Order (ECF No. 970, the "Order"), which granted Defendants' Motion to Compel Production of Reliance Materials (ECF No. 941). The Order is clearly erroneous or contrary to law for the following reasons: (1) it misapplied the scope of expert discovery to reach more than what an expert "considered" under Fed. R. Civ. P. 26(a)(2)(B)(ii); (2) it failed to apply controlling case law providing that a discovery dispute is resolved where the producing party confirms, in good faith, that the requested information does not exist; (3) it failed to apply the Parties' Rule 29 Stipulation; (4) it granted the motion despite Defendants' failure to carry their burden of proof; (5) it ordered CLF to respond to Rule 33 interrogatories and Rule 34 requests for production that Defendants never served, which is procedurally improper; and (6) it failed to

1

consider the untimeliness of Defendants' motion and its impermissible overlap with other pending motions.

For the above reasons, CLF respectfully requests this Court deny Defendants' Motion to Compel in reconsideration of Judge Farrish's ruling (ECF 970).

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court," except for certain enumerated dispositive motions. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Discovery matters are ordinarily classified as non-dispositive and are reviewable by the district court under the "clearly erroneous or contrary to law" standard. *Id.* "A ruling is 'clearly erroneous' if after reviewing the entire record the court is 'left with the definite and firm conviction that a mistake has been committed.'" *Ungar v. City of New York*, 329 F.R.D. 8, 11 (E.D.N.Y. 2018) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "Similarly, under the 'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure." *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quotation marks, alterations, and citation omitted). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Hoar*, 900 F.2d at 525, (citing 28 U.S.C.S. § 636(b)(1)(C)).

## BACKGROUND

As CLF explains in its brief (ECF 940), Dr. Oreskes' expert report was disclosed on May 8, 2025. *See* ECF No. 778. The report identifies her use of artificial intelligence ("AI") in document review and discloses much of the information Defendants now seek, including the frequency of key-word search hits: "Across 39 IPCC reports, from 1990 to 2023, the terms 'sea level rise' or

2

'sea-level rise' occurs 4,645 times. The term 'coastal flooding' appears 181 times (Appendix 2)." Oreskes Rpt., ECF No. 778 at 76–77. "In Shell documents produced through discovery, we similarly found sea level, sea level rise, coastal flooding, and extreme weather mentioned many thousands of times." *Id*. The report further states that Dr. Oreskes "directed the use of AI to examine Shell's relations with a set of think tanks which have been involved in activities that scientific organizations, such as the Royal Society, have identified as being anti-scientific, that have disparaged scientists and/or scientific findings, or that have actively lobbied against climate policies." *Id*. at 92.

CLF has responded diligently since Defendants' first follow-up email requesting additional information on August 4, 2025—fourteen weeks after service of the report. On August 6, 2025, CLF explained that Dr. Oreskes used "OpenAI's GPT-4o, accessed through Microsoft Azure services via the secure Azure API" to "filter out documents" and run "searches" on "the entire unfiltered corpus of Shell documents," confirming specific key-word searches including "sea-level rise" and the think-tank list. Ex. A, Email from Devin Williams, Motley Rice, to Douglas Henderson et al., King & Spalding (Aug. 6 -7, 2025). The next day, in response to an additional follow-up email, CLF confirmed that the "AI program . . . did not generate any reports or print outs," and that "no experimental prompts were stored" because "[t]he AI was merely used to sift through results" while noting that Dr. Oreskes would be available for further questioning at her deposition. *Id*.

Defendants deposed Dr. Oreskes on September 9, 2025, questioning her at length about AI. *See* Oreskes Dep., ECF No. 863 at 225–44. Defendants then sent a post-deposition follow-up email requesting additional materials on September 19, 2025. The parties met and conferred on September 22, and then CLF gave signed objections and responses as a courtesy to the requests

for additional materials on September 25, 2025. ECF No. 941-3; ECF No. 941-1. The Parties then met and conferred on October 2, November 4, November 21, December 4, December 8, and December 10, with emails exchanged in between. Throughout, CLF's prompt answers were repeatedly met with weeks of silence followed by Defendants' re-posing variations of questions CLF had already answered, and expanding and/or changing the scope of their interest in additional materials or information. *See* JSRs, ECF Nos. 793 at 3–4; 814 at 3–4; 870 at 3–4; 922 at 3–5; 932 at 3–5.

Pursuant to the Discovery Order (ECF No. 473), the Parties met and conferred again after Defendants filed a one-page statement of the relief sought. ECF No. 941-2. The matter remained unresolved, and the Court ordered simultaneous letter briefs filed by December 23, 2025 (ECF No. 936). On April 15, 2026, Judge Farrish ordered the Parties to confer for four cumulative hours as a final attempt to resolve all remaining discovery motions (ECF No. 961). The Parties thereby resolved Defendants' claim that Dr. Oreskes' use of a third-party cloud storage platform to review documents was in violation of the Standing Protective Order (ECF No. 7), but the Parties could not resolve Defendants' requests for the AI prompts and outputs (ECF No. 963). CLF argued that issue at the Final Discovery Hearing on May 14, 2026, after which Judge Farrish ordered CLF to produce the AI prompts (ECF No. 970).

## ARGUMENT

I.      **The Magistrate Judge's Order used the general scope of relevance under Rule 26(b) and CLF has complied with the expert disclosure requirements of Rule 26(a)(2)(B).**

The Magistrate Judge's Order is clearly erroneous and contrary to law because it relies on the scope of relevant discovery in Rule 26(b) in ordering disclosure beyond the requirements for expert disclosures. ECF No. 970. Federal Rule of Civil Procedure 26(a)(2)(B) governs disclosure

4

requirements for experts using AI for document analysis. Expert reports must contain "all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i),(ii). The 2010 amendment clarified that disclosure includes all facts or data "considered" by the expert, not only those relied upon. The 2010 Advisory Committee Notes explain that "facts or data" should be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." "[T]he courts have embraced an objective test that defines 'considered' [in Rule 26(a)(2)(B)(ii)] as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of [her] opinion, if the subject matter relates to the facts or opinions expressed." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016) (quoting *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 05-cv-80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007)) (alteration in original). In preparation of her expert report, Dr. Oreskes "relied on scientific papers, reports, newspaper articles, magazine articles, advertisements, and secondary sources available in the public domain…including her own background research." Oreskes Rpt., ECF No. 778 at 19. She also "relied on materials produced in this litigation." *Id*. The materials that Dr. Oreskes relied on were cited within the expert report and provided in the materials considered lists.[1] *Id*.

Thousands of documents were produced by Defendants as part of the discovery process in this litigation. In order to objectively analyze this body of documents and identify those most relevant to her expert report on the history of climate change science, Dr. Oreskes and her research assistant, Dr. Kaurov, "developed a strategy, and it's not anything particularly fancy" to "simply

---

[1] Defendants seek a more stringent discovery standard for Dr. Oreskes than they apply to their own experts—Jones, Uhlmann, and Kovich—each of whom failed to disclose all facts/data "considered" or required compensation information under Fed. R. Civ. P. 26(a)(2)(B)(ii), (vi), despite CLF's October 2, 2025 requests and follow-ups.

use AI as a sieve to identify all the documents that could be relevant to a particular question." ECF No. 863 at 225:10-13. Specifically, Dr. Oreskes states that she "directed the use of artificial intelligence as an additional means to observe how often the words sea level, sea level rise, or related term (such as coastal flood, coastal erosion, and extreme weather) appeared in the IPCC and Shell documents." ECF No. 778 at 76; ECF 863 at 225, 228. Dr. Oreskes also used the Royal Society list of organizations and the names of certain nongovernmental organizations ("NGOs") as search terms. ECF 778 at 92; *see* ECF 863 at 239-241. CLF has provided all of the search terms to Defendants.[2] Because the expert's AI prompts or search terms were used solely to cull—to narrow a large universe of documents, produced by the Defendants, to a manageable set for review—before the expert selected materials to rely upon and formed her opinions, they were not themselves "considered by the witness in forming" the opinions contained in the report. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii).

Notably, in her deposition, Dr. Oreskes uses the terms "search terms" and "prompts" interchangeably. In the exchange below, she corrects Defendants' characterization of the prompts as something other than search terms- specifically, their suggestion that the prompts amounted to "generative analysis":

> Q. There would have been a prompt, which is what most platforms use –
> A. You mean like a search term?
> Q. They don't use a search term. They like a prompt now, because it's different than a searching, because a prompt implies there is some analysis, "generative analysis."
> A. We don't do that.

ECF No. 863 at 227:12-19.

---

[2] The Royal Society list of think tanks (a public record) and the NGO names were provided to Defendants by CLF in a Second Additional Materials Considered list on September 25, 2025. ECF No. 941-1.

As CLF stated at the Final Discovery Hearing on May 14, 2026, this process is analogous to asking a person to search for documents containing a given word and then, upon identifying those documents, reviewing them for context and refining the search accordingly. *See* Ex. C, Hr'g. Tr. at 10-13. The back-and-forth between an expert and a researcher consists of communications or notes that are not reduced to writing and that remain interactive throughout the process. *Id.* So too here, when Dr. Oreskes and Dr. Kaurov discussed the search terms/prompts, Dr. Kaurov used them as an intermediary, interactive tool to further narrow the universe of documents. Dr. Kaurov did not simultaneously export every iteration of the experimental prompts—nor is that required. *See* ECF No. 941-4, 8.

Defendants admit that they have the subset of documents identified through the culling process:

> THE COURT: Okay. So, on the first part on the list of documents search and the Bates numbers, you had me there for a second, but I think I lost you for a little bit, so -- so, there's the list of how many documents go into the engine in the first place, and then Dr. Kaurov does whatever he does to cull things down and then there's a smaller body of documents that goes to Dr. Oreskes and, presumably, you know, there's some left on the cutting room floor, she never sees them, right?
> MR. BELL: That's what we've been told.
> THE COURT: Okay. And you have the Bates numbers as to second smaller body of documents, right?
> MR. BELL: Yes, sir. Yes, sir.

Ex. C, Hr'g Tr. at 23. Defendants impermissibly seek documents that Dr. Oreskes did not even consider:

> THE COURT: Okay. What I'm trying to figure out here is why does it matter to you whether, you know, Document No. 800,000 reached Dr. Oreskes as opposed to Document No. 1.3 million that didn't?
> MR. BELL: Because -- well, two reasons. Okay.
> If there are documents in Bates Nos. 1 million to 2 million that contain things that are directly opposite of the opinion she's offering and she didn't even consider them, she didn't even give herself the chance to consider them because they're not in the set, that is a pretty potent argument for our Rule 702 motion and, failing that, it is a really powerful argument for the jury. And right now I have no way of making that argument because I can't substantiate it.

*Id.* at 24. The documents Defendants seek—those Dr. Oreskes did not "consider"—lie beyond the reach of Rule 26(a)(2)(B)(ii). Regardless, Defendants already possess the documents they produced in this litigation.

Moreover, applying the same logic above to the other categories of documents Dr. Oreskes relied on (i.e., the scientific papers, reports, newspaper and magazine articles, advertisements, and publicly available secondary sources, including her own background research) yields an absurd result. Under that theory, Defendants could not substantiate their cross-examination at trial unless Dr. Oreskes first identified for them a potential body of publicly available climate change documents that Defendants would claim are contrary to her opinions, and that she may never have read or considered. But Rule 26(a)(2)(B)(ii) obligates her to produce only the documents she relied on and considered. Requiring more is contrary to law. Dr. Oreskes explained that at the conclusion of the searches she personally reviewed each identified document for context and relevance to her expert report. ECF No. 863 at 234-237.

The Magistrate Judge's Order erroneously relies on an application of a broad discovery standard under Rule 26(b) instead of the disclosure obligation on an expert under Rule 26(a)(2)(B)(ii). As discussed more fulsomely below, there is no case law directly on point holding that experimental AI prompts are discoverable in the expert-witness context and the Court should not create such law, particularly where, as here, the Parties have agreed to narrow discovery. Regardless, CLF complied with Rule 26(a)(2)(B)(ii), the basic ingredients—the search terms— have been provided to Defendants, who can use them to replicate searches on their own documents and to cross-examine Dr. Oreskes accordingly. Defendants' claims of prejudice fall flat, especially given that they did not even retain a Historian of Science to rebut Dr. Oreskes' opinions.

II. **The Magistrate Judge's ruling clearly erred in ordering CLF to produce experimental prompts that do not exist and are, therefore, unavailable for production.**

The Magistrate Judge's Order clearly erred by relying on Defendants' characterization of the AI tool and the prompts contrary to the evidence as set forth by Dr. Oreskes' testimony and the CLF's written statements. Defendants began probing Dr. Oreskes' use of AI as a search tool on August 4, 2025, fourteen weeks after the production of her expert report, which was disclosed on May 8, 2025. *See* ECF No. 778. On August 7, CLF advised by email that the "AI program . . . did not generate any reports or print outs," and that "no experimental prompts were stored" because "[t]he AI was merely used to sift through results." Ex. A, Williams' Email. CLF met with Dr. Oreskes and Dr. Kaurov and made a good-faith effort to identify any missing information on the AI issue—an effort punctuated by meet-and-confers with Defendants and multiple intervening emails affirming that nothing further exists to provide. In an effort to settle the discovery dispute entirely, CLF voluntarily obtained Dr. Kaurov's Declaration, in which he further confirmed:

> Prompts/queries and model outputs were used interactively as an intermediary tool to identify potentially relevant documents for further review. I did not export or preserve a complete native "prompt/output log" as standalone files on my personal systems or in the cloud environment."

ECF No. 941-4, 8.

During the four-hour meet and confer ordered by the Court (ECF 961), Defendants raised the issue that Dr. Kaurov's statement—"I did not export or preserve a 'complete' native log prompt/output log"—could imply that some version of prompts/output log does exist, and requested that CLF confirm this detail. Accordingly, in good faith, CLF again met with Dr. Oreskes and her research assistant, Dr. Kaurov, and reported back to the Defendants that the meaning of

9

this sentence is that no such information exists in any form.[3]  Moreover, CLF confirmed at least ten times in the Final Discovery Hearing that no other information exists and, if it did, CLF would certainly produce it to resolve this issue. *See* Ex. C, Hr'g Tr. at 9, 13, 14, 15, 16, 27, 28.  It was therefore clearly erroneous, or contrary to law, to order CLF to produce what does not exist. *See Menard v. Chrysler Grp. LLC*, No. 14 CV 6325 VB, 2015 WL 5472724, at *3 (S.D.N.Y. July 2, 2015) (quoting *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978) ("[A] party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production.")).

III.    **The Magistrate Judge's ruling erred in finding the prompts discoverable, contrary to the plain meaning of the Parties' Rule 29 Agreement.**

The Magistrate Judge's Order that CLF produce the "prompts" is clearly erroneous under the plain meaning of the Parties' Rule 29 stipulation. Even if the prompts existed, they are not discoverable under the Parties' Rule 29 stipulation, which deliberately narrows the universe of discoverable expert materials below the default set by Rule 26(a)(2)(B)(ii): "The courts have embraced an objective test that defines 'considered' [] as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of [her] opinion, if the subject matter relates to the facts or opinions expressed." *Mirena*, 169 F. Supp. 3d at 470 (quoting *Euclid*, 2007 WL 1560277, at *4).  The Parties' Rule 29 stipulation, however, contracts around that default. It removes the expert report drafting process from discovery:

> Non-Discoverability: Drafts of expert reports and communications between experts, employees and consultants of Party-related entities on expert opinions or settlement-related issues, including emails, notes, and other correspondence, shall not be subject to discovery. This includes any preliminary findings or informal discussions that have occurred between experts employees or consultants of Party-related entities.

---

[3] Throughout the meet and confer process, Dr. Oreskes and Dr. Kaurov confirmed several times that no prompts were stored as is consistent with CLF's initial August 7 email following the production of Dr. Oreskes' expert report.

Ex. B, Email from K. Rumelt to D. Henderson (Aug. 5, 2024).[4]

Read plainly, the stipulation makes only the final report and its directly supporting materials discoverable—not the process by which the report was developed. The prompts fall squarely within the materials the Parties agreed to shield. The discussions between Dr. Oreskes and her research assistant, Dr. Kaurov, to develop those prompts could fall into nearly any category within this agreement, arguably including "notes," but explicitly comprise "communications" as supported by Dr. Oreskes' testimony. Ex. C, Hr'g. Tr. at 18; *see* ECF No. 863 at 226. Because the prompts are protected by the Rule 29 stipulation, Judge Farrish's Order compelling their production rests on a misapplication of that stipulation and is therefore clearly erroneous and contrary to law.

Furthermore, Judge Farrish's ruling that the AI prompts are discoverable as part of Dr. Oreskes' methodology is clearly erroneous. Notably, no federal court—until Judge Farrish's ruling—has held that an expert witness's AI prompts, queries, system instructions, or chat logs are discoverable as "facts or data considered" under Rule 26(a)(2)(B)(ii); this remains an area of first impression in the expert-witness-specific context. The decision on which Judge Farrish relies, *Macchia v. ADP*, does not involve AI prompts or the scope of expert discovery under Rule 26. *See Macchia*, 711 F. Supp. 3d 162 (E.D.N.Y. 2024). *Macchia* concerns a former employee who sued her former employer for pregnancy discrimination and retaliation in violation of Title VII. *Id*. at 163. There, the Magistrate Judge granted the employee's motion to strike a report—generated by a vendor the employer had retained regarding advertisements for jobs the employee allegedly could have applied for after her termination—which the employer sought to introduce as fact evidence. *Id*. at 166-167. The vendor used a website that collected advertisements from sixty-five-thousand

---

[4] The stipulation language was provided in full in CLF's original brief. ECF No. 940 at 1 n.2.

(65,000) online sources, resulting in billions of job ads, and applied search terms to narrow those ads to the ones most relevant to Macchia's expertise. *Id.* Critically, the employer did not disclose the vendor as an expert; the report was introduced as factual evidence rather than timely produced as an expert report, depriving the plaintiff of any opportunity to rebut it, to depose the witness, or to take other action available under the federal rules.

This case is different in every material respect. Dr. Oreskes was timely disclosed as an expert, and her expert report was timely served on May 8, 2025. As discussed below, her report identified her use of AI as a tool. *See* ECF No. 778 at 76–77, 92–93, App'x 2. Many of her search terms were also disclosed and were applied to the known universe of litigation documents available to both CLF and Defendants—unlike in *Macchia*, where the website was continuously updated from thousands of databases. *Macchia*, 711 F. Supp. 3d at 166-167. Unlike the *Macchia* plaintiff, therefore, Defendants have suffered no prejudice and have had ample time and opportunity to prepare a rebuttal report and to depose Dr. Oreskes on her methodology, including the prompts and search terms.

## IV. The Magistrate Judge's ruling clearly erred in finding that the Defendants carried their threshold burden.

The Magistrate Judge's Order granting Defendants' Motion to Compel (ECF 970) is clearly erroneous because the Defendants' failed to carry their burden. On a motion to compel, the moving party bears the initial burden of showing the material sought is relevant and discoverable. *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). Only then does the burden shift to the responding party to justify withholding. *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). The movant's burden includes a factual predicate: a court cannot compel what does not exist, and a good-faith averment of nonexistence resolves the issue. *Menard v. Chrysler Grp. LLC*, No. 14 CV 6325 (VB), 2015 WL

5472724, at *3 (S.D.N.Y. July 2, 2015) (quoting *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595

(S.D.N.Y. 1978)). Defendants thus had to prove, with competent evidence, both what the tool was

and that responsive material exists within CLF's control.

Defendants did neither. Their account of the tool rested entirely on the unsworn argument

of counsel, who have no personal knowledge and no relevant expertise. Argument of counsel is

not evidence. *Roche v. Garland*, No. 20-1537, 2022 WL 14177187, at *2 (2d Cir. Oct. 25, 2022).

The only competent evidence in this case concerning the AI tool, searches performed, prompts

and/or search terms, originates from both Dr. Oreskes' deposition and her research assistant, Dr.

Kaurov's sworn declaration. *See* ECF No. 863; ECF No. 941-4. CLF provided sworn statements

and represented what records exist:

> Dr. Oreskes' testimony is we don't give AI prompts because that can be viewed as
> biasing. So, we're not giving them prompts, we're just giving them search terms,
> so the primary search term was "sea-level rise." That's her testimony. And, again,
> this is culling. It's not generative AI. It's not learning AI. It's a culling. And so,
> again, we are down this road almost a year over using machine to cull documents
> versus a person to cull documents. That's what we're talking about, Your Honor.

Ex. C, Hr'g Tr. at 16. While the Defendants only provided unsupported characterizations of what

counsel assumes could exist:

> And you know, this is inputs into an AI machine. And any of us who have used
> ChatGPT, which is the AI mechanism that was used here, know that you just don't
> enter search terms, you wouldn't just enter "sea-level rise."
>
> That is what we're entitled to know and that it did exist at one point, almost
> certainly because that's the only way this would work and ChatGPT can keep a
> record of those things and should have in this situation.

*Id.* at 18, 19. And CLF rebutted and confirmed that Defendants' belief of what might exist is

inconsistent with the facts and evidence in this case:

> There's no documentation from the AI computer system. We have counsel saying
> this is what should exist and I have Dr. Oreskes saying I don't have what they're
> asking me for.

13

*Id.* at 27.

Because Defendants never carried their threshold burden, the burden never shifted, and Plaintiffs' good-faith representation that the prompts do not exist should have ended the inquiry. *See Menard*, 2015 WL 5472724, at *3. By adopting Defendants' unsupported account and ordering production, the Magistrate Judge made a finding with no evidentiary basis and misapplied the governing burden-shifting framework by requiring CLF to disprove the existence of materials Defendants never showed to exist. Either ground requires that the order be set aside. Fed. R. Civ. P. 72(a).

V.    **The Magistrate Judge's ruling clearly erred in finding that CLF must respond to Rule 33 Interrogatories and Rule 34 Requests for Production that do not exist and are procedurally improper.**

The Magistrate Judge's Order is clearly erroneous in finding that CLF must respond to Rule 33/34 requests for production that do not exist and are procedurally improper. In its ruling following the Final Discovery Hearing, Judge Farrish ordered CLF to "revise its responses to any Rule 33 interrogatories or Rule 34 requests for production that call for disclosure of any artificial intelligence prompts and/or queries used by Dr. Oreskes or her team in the course of producing her expert witness report." ECF No. 970. There are no Rule 33 interrogatories or Rule 34 requests for production that were ever formally served on CLF. At issue are Defendants' counsel's follow-up email requests after receiving Dr. Oreskes' expert report and her deposition testimony concerning Dr. Oreskes' use of AI. These requests were made informally—through email and during meet-and-confer sessions—not through any formal mechanism and CLF responded to these requests voluntarily and maintaining its objections that CLF had fully complied with the Rule 26(a)(2) disclosure requirements. *See* JSRs, ECF Nos. 793 at 3–4; 814 at 3–4; 870 at 3–4; 922 at 3–5; 932 at 3–5.

14

An informal email request cannot be enforced by a motion to compel under Federal Rule of Civil Procedure 37, precisely because it was not served as a formal request under Rule 34. *See, e.g.*, *Wells Fargo Bank, N.A. Tr. v. Konover*, No. 3:05CV1924(CFD)(WIG), 2010 WL 11561491, at \*4 (D. Conn. June 22, 2010); *see also Schneider ex rel. A.T. v. City of Buffalo*, No. 18-CV-1431V(SR), 2021 WL 5042502 (W.D.N.Y. Oct. 29, 2021) ("Although informal exchange of discovery is certainly permissible, the appropriate mechanism for obtaining documents is set forth in Rule 34 of the Federal Rules of Civil Procedure. Where documents are not requested pursuant to this mechanism, but in a 'highly informal, extra-procedural manner' such as a letter, the party evading the formality of a document demand may not rely upon Rule 37 of the Federal Rules of Civil Procedure to obtain compliance." (quoting *Schwartz v. Marketing Pub. Co.*, 153 F.R.D. 16, 21 & n.12 (D. Conn. 1994)). As the court explained in *Schwartz v. Marketing Publishing Co.*, "the entire enforcement mechanism of Rule 37 contemplates the parties having formally resorted to the underlying discovery rule, in this case Rule 34, rather than a casual, informal request contained in a letter." 153 F.R.D. at 21 n.12. Because Defendants never sought leave from the Court to serve additional Rule 33/34 requests much less formally served the predicate discovery requests, the Magistrate Judge's Order that CLF must respond under Rules 33 or 34 is clearly erroneous and contrary to law.

The *Wynne* case is directly instructive on whether Rules 33 and 34 are the procedurally correct vehicles for obtaining discovery in the expert context—and it confirms that they are not. *See, e.g.*, *Wynne v. Town of E. Hartford*, No. 3:20CV1834(JCH), 2023 WL 1272892 (D. Conn. Jan. 31, 2023). The dispute in *Wynne* concerned whether the plaintiff could obtain expert discovery by serving Rule 33(a)(2) interrogatories and Rule 34(a) requests for production, within the scope of Rule 26(b), through defense counsel—rather than by deposing the expert and serving a Rule 45

subpoena for the required documents. *Id*. at *2. The court held that, while "the rules permit the use of interrogatories and requests for production, the rules clearly indicate that they permit a party to serve such requests on another party." *Id*. (emphasis omitted). As in the present case with Dr. Oreskes, the expert in *Wynne* was a third-party retained to prepare a report and testify at trial, and was therefore not a party to the litigation. *Id*. The court further observed that, although the plaintiff had directed the requests to the defendants, the actual responses would come from the expert through the defendants. On that basis, the court denied the motion to compel expert discovery under Rules 33 and 34, noting that "there is a dearth of case law on this question." *Wynne* at *2, n.1. The court added that it was "left to assume the lack of case law is at least in part due to the unusual method of expert discovery being advanced by plaintiff." *Id*. Accordingly, ordering responses under Rules 33 and 34 is procedurally improper.

Furthermore, the Magistrate Judge's Order not only requires compliance with Rule 33/34 requests where there are none, but then authorizes Defendants to file a Rule 37(b) motion for sanctions if they believe CLF's response could be considered inconsistent with some set of facts. This aspect of the Order is clearly erroneous and contrary to law because it creates a Rule 37(b) duty where there is no underlying discovery obligation. The Order states that CLF must respond to any Rule 33 or 34 discovery request and that "Rule 37(b) sanctions may then become available to the defendants if that representation is later revealed to be untrue." ECF No. 970. This aspect of the Order is clearly erroneous and contrary to law because it transforms an email exchange between the Parties whereby CLF voluntarily and in good faith provided additional clarifying information into a sanctions-backed obligation.

**VI.    The Magistrate Judge's ruling clearly erred in finding that CLF must respond to Defendants' untimely request for production that impermissibly overlaps with other pending motions.**

16

The Magistrate Judge's Order requiring CLF to respond to Defendants' untimely motion is clearly erroneous, as that motion seeks to evaluate Dr. Oreskes' methodology and impermissibly overlaps with the pending *Daubert* motion. Defendants' initial request for additional information was received by CLF on August 4, 2025, eighty-eight (88) days after the disclosure of Dr. Oreskes' expert report (May 8, 2025). The guideline for serving a motion to compel is thirty (30) days as provided in the CMO, ECF No. 52 at 4. Following the deposition of Dr. Oreskes on September 9, Defendants did not send particularized requests between September 19 and October 24, until after the *Daubert* briefing was completed on October 3, 2025. The *Daubert* Motion raises many of the alleged methodology issues presented in the Motion to Compel (ECF 941) are more appropriately heard in a *Daubert* hearing. *See* Oreskes Opp., ECF No. 862. Failure to diligently pursue discovery is grounds to quash. In the ECF No. 277 Order, the Court held that CLF had not diligently pursued the information that Defendants placed behind relevance redactions. ECF No. 277 at 12. This was despite CLF's lack of knowledge that the redactions were on relevance grounds and would not be put at issue by a later produced privilege log. *See* ECF No. 280-1 at 10–11 (motion for reconsideration regarding Defendants' failure to disclose the use of relevance redactions).

As Defendants have already sought to remedy the perceived lack of production from Dr. Oreskes in their *Daubert* filing, they should not be simultaneously permitted to pursue the same information through untimely discovery requests and motion to compel. CLF requests the Court find that Defendants' use of a perceived lack of production as basis to obtain discovery and also to exclude the expert's testimony is improper overlap between pending motions.

## CONCLUSION

For the aforementioned reasons, CLF respectfully requests that this Court find Order No. 970 clearly erroneous and contrary to law and quash Defendants' Motion to Compel (ECF 941).

17

Dated: June 1, 2026

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ Shalom Jacks*
Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9013
E-mail: sjacks@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Kristine S. Tardiff (phv208957)*
Conservation Law Foundation, Inc.
27 North Main Street
Concord, NH 03301
Tel: (603) 573-9144
ktardiff@clf.org

Christopher M. Kilian (ct31122)
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692

18

Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*

19

Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
E-mail: rmazingo@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
*\*Admitted as Visiting Attorney*