**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

---

CONSERVATION LAW FOUNDATION,
INC.,

        Plaintiff,

    v.

EQUILON ENTERPRISES LLC D/B/A
SHELL OIL PRODUCTS US, TRITON
TERMINALING LLC, and MOTIVA
ENTERPRISES LLC,

        Defendants.

Case No: 3:21-cv-00933-VDO

June 10, 2026

---

**OPPOSITION TO CONSERVATION LAW FOUNDATION INC.'S EMERGENCY
MOTION TO STAY THE MAGISTRATE JUDGE'S ORDER (ECF NO. 970) PENDING
RESOLUTION OF ITS RULE 72(a) OBJECTIONS**

Defendants Equilon Enterprises LLC d/b/a Shell Oil Products US, Motiva Enterprises

LLC, and Triton Terminaling LLC oppose CLF's Emergency Motion to Stay the Magistrate

Judge's Order (ECF 970) Pending Resolution of its Rule 72(a) Objections.  While the Court

issued a stay pending its consideration of CLF's Motion to Stay and its Objection, there is no

reason for a continued stay here.[1]  In accordance with the Court's Order, Defendants take this

opportunity to explain why the Motion to Stay should be denied.  Defendants will also submit an

opposition to CLF's Objection to Judge Farrish's Order.

In short, Judge Farrish's ruling, which was based on extensive briefing, a review of the

record, and oral argument, was correct.  On May 18, 2026, Judge Farrish ordered CLF to revise

its responses to Defendants' requests for additional information and produce the artificial

intelligence ("AI") prompts and queries utilized by its purported expert historian, Dr. Naomi

---

[1] On June 3, 2026, the Court entered a stay of ECF 970 pending the Court's consideration of
CLF's Motion to Stay and its Objection to Judge Farrish's Order.  ECF 977.

Oreskes, by June 1, 2026. *See* ECF 970.  Judge Farrish treated Dr. Oreskes's use of AI the same way as any other methodology an expert might use.  AI is not entitled to any special, unwritten discovery rules.  Where, as here, AI forms part of the expert's methodology, the prompts, inputs, and outputs the expert used must be preserved and produced just like any other reliance materials.  Judge Farrish's Order simply applied these basic principles to this case.

Judge Farrish's ruling, however, has apparently put CLF in a difficult position because Dr. Oreskes did not preserve the AI prompts she used.  *See* ECF 941-1 at 4 ("no experimental prompts were stored"); *see also* ECF 975-3.  CLF has, in other words, been ordered to produce discoverable materials that once existed but now, according to CLF, no longer exist.  *See* Kaurov Decl., ECF No. 941-4, ¶ 8 (admitting to the creation of a "prompt/output log"); *see also* ECF 975-3, at 34:12-13 (Magistrate Judge Farrish recognizing Defendants' valid basis for discovery by pointing to "Dr. Kaurov's declaration which does say that there were prompts rather than search terms"); *Id.* at 16:12-13 (finding it significant that "Dr. Kaurov [said] that there were prompts, not just search terms but prompts in the AI"); *Id.* at 18:12–16 (calling out CLF's semantic defense by stating, "I know you think that Dr. Kaurov is using the word 'prompts' as just a synonym for what Dr. Oreskes called 'search terms' but put your finger on the exact word in that discovery agreement that you would think that 'search terms' falls under"). While there may be consequences for that, it does not change whether the AI prompts were discoverable in the first place. They were.  The potential consequences for failing to preserve that information are a separate issue.

Also, despite CLF titling its motion as an "emergency" there is no emergency here. CLF's "emergency" argument relies on a claim of irreparable harm, an argument that is undermined by their own conduct. Two weeks after the Court's Order and on the date of the

production deadline, CLF filed an objection to the Order and an "emergency" motion to stay seeking to indefinitely halt its compliance with the Order. At the May 14th hearing, CLF disclosed that the prompts and outputs at issue had not been preserved. *See* ECF 975-3, at 10:15–16 (statement of CLF's counsel, Mr. Greene, asserting, "Your Honor, they don't exist. There's nothing to pull."). Thus, well before entry of the Order—and certainly before the compliance deadline—CLF was aware of the precise circumstances it now contends justify emergency extraordinary relief. CLF did not timely seek an extension of time to comply with the order and did not promptly seek a stay. They also did not seek to meet and confer about this issue with defense counsel prior to its filing. Instead, they waited until the day compliance was required before filing their motion. Such delay is inconsistent with CLF's claim that there was an emergency or that immediate and irreparable harm necessitates such relief.

Because CLF cannot meet the stringent, heavy burden required to stay a discovery order pending a Rule 72(a) objection, the Court should deny its motion and lift the stay.

## **LEGAL STANDARD**

The filing of an objection to a magistrate judge's order does not automatically stay the effect of that order, and the objecting party remains obligated to comply. *See Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 124 F.R.D. 75, 79 (S.D.N.Y. 1989). Because Magistrate Judge Farrish's Order (ECF 970) concerns a non-dispositive discovery matter, it may be set aside only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This standard of review is "highly deferential," and magistrate judges are afforded broad discretion in managing discovery and resolving non-dispositive disputes. *See Pugh-Ozua v. Springhill Suites, No. 18 Civ. 1755 (RA)*, 2020 WL 6562376, at *7 (S.D.N.Y. Nov. 9, 2020). A district court may not substitute its judgment for that of the magistrate judge merely because it

would have decided the matter differently; reversal is warranted only where the magistrate judge abused that broad discretion. *Id.*

To obtain a stay, the court's exercise of discretion is guided by four factors: (1) whether the stay applicant has made a strong showing that they are likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Nken v. Holder*, 556 U.S. 419 (2009).

The party seeking the stay bears a "heavy burden" of demonstrating that these factors favor relief. *See Monterey Bay Military Hous., LLC v. Ambac Assur. Corp.*, 2023 U.S. Dist. LEXIS 150000, at *14 (S.D.N.Y. Aug. 25, 2023) (internal citation omitted). The first two factors—likelihood of success and irreparable injury—are the "most critical." *Nken*, 556 U.S. at 434. A mere "possibility" of relief or "some possibility of irreparable injury" is insufficient. *Id.* at 420. Rather, the alleged injury must be actual, imminent, and non-speculative. *See United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*, 2012 U.S. Dist. LEXIS 69311, at *7 (S.D.N.Y. May 17, 2012).

Importantly, neither the burden of complying with a discovery order nor the ordinary costs of litigation constitutes irreparable harm. *See Monterey Bay*, 2023 U.S. Dist. LEXIS 150000, at *21–22. Likewise, a party cannot establish a strong likelihood of success merely by repackaging arguments that the magistrate judge has already considered and rejected. *Id.* at *20.

## **ARGUMENT**

CLF has not made a showing that would justify a continued stay. Rather than showing clear error, CLF asks this Court to revisit issues that were fully litigated before Judge Farrish and resolved based on a developed factual record and lengthy oral argument. Indeed, CLF cannot

show a clear error because there was none—Judge Farrish correctly applied traditional discovery principles to this case.

The issue is not complicated.  Dr. Oreskes and her assistant described the prompts and outputs as part of a methodology. Her use of AI, including the directions, guidance, and context provided to it, are part of her methodology, as Dr. Oreskes candidly admitted in her deposition. Accordingly, this information is discoverable. *See* Order Granting Mot. to Compel, ECF No. 970, at 2 (holding that "the process by which Dr. Oreskes culled down the defendants' document production into a subset to be worked with is an aspect of that methodology" and that such methodology is "fair ground for discovery" under Rule 26) (citing *Macchia v. ADP, Inc.*, 711 F. Supp. 3d 162, 167–68 (E.D.N.Y. 2024).  It is as simple as that.

No further stay is required.  As explained below, CLF has not shown a likelihood of success on the merits, an irreparable injury, a public interest that would justify a continued holdup of this critical expert discovery.  The Court should lift the stay and overrule CLF's objection to Judge Farrish's Order.

## I.   CLF Has Not Demonstrated a Likelihood of Success on the Merits

CLF has not made a "strong showing" that Judge Farrish's order was clearly erroneous or contrary to law. See *Monterey Bay*, 2023 U.S. Dist. LEXIS 150000, at *20 (denying a motion to stay a magistrate judge's discovery order pending the resolution of objections because the moving parties failed to meet their heavy burden of establishing a likelihood of success on the merits or irreparable harm). That deferential standard applies because CLF does not identify any legal or factual error in the Order; it largely repackages arguments already presented to, and

correctly rejected by, Judge Farrish and to the extent it raises any new issues it waived those by not raising them prior to the hearing with Judge Farrish.[2]

In support of its Motion, CLF offers six brief arguments, none of which shows that Judge Farrish's Order was clearly erroneous at all, let alone a "strong showing."  Indeed, Judge Farrish considered and correctly rejected three of these arguments (*see* ECF 974 at I.A, I.B, and I.E). *See Monterey Bay*, U.S. Dist. LEXIS 150000, at \*20 (holding that simply repeating "arguments previously made and rejected in opposition to the Motions to Compel and at oral argument" fails to establish a likelihood of success on the merits); *see also Schwartz v. Dolan*, 159 F.R.D. 380, 384 (N.D.N.Y. 1995) (holding that the "[m]ere repetition of arguments previously considered and rejected cannot be characterized as a strong showing"); *Shays v. F.E.C.*, 340 F. Supp. 2d 39, 45–47 (D.D.C. 2004) (finding that a stay applicant who "offer[ed] little more than a regurgitation of rejected arguments" did not establish a likelihood of success).  CLF's remaining three claims (*see* ECF 974 at I.C, I.D and I.F), were never raised with Judge Farrish and are, therefore, waived.  In any event, those arguments are incorrect too.  In short, CLF has failed entirely to prove this "critical" factor.

**A.    The Order Falls Squarely within the Permissible Scope of Expert Discovery.**

Judge Farrish rightly determined that the AI prompts Dr. Oreskes used in her methodology are discoverable.  This determination is well-grounded in settled discovery principles. Materials reflecting an expert's data selection, filtering, and methodological choices fall squarely within the scope of Rule 26 because they bear directly on the reliability and formation of the expert's opinions. *See Macchia*, 711 F. Supp. 3d at 167–68 (holding that the use of search criteria to compile and filter relevant data from a larger database constitutes expert

---

[2] CLF did not seek re-argument or clarification of the Order.

methodology, as it requires specialized knowledge and judgments regarding which sources to search and which data to retain or reject). CLF offers no basis to conclude that this application of Rule 26 was clearly erroneous; it simply wanted a different outcome.

CLF cites *In re Mirena* for the proposition that materials an expert did not consider lie beyond the scope of Rule 26.  But the holding of *In re Mirena* strongly undermines CLF's argument and supports Judge Farrish's Order. *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 469 (S.D.N.Y. 2016). In *In re Mirena*, the court rejected an expert's attempt to artificially narrow the scope of her discoverable reliance materials. The expert, a former FDA medical officer, refused to disclose facts from her personal involvement in the FDA's regulatory review, subjectively claiming she based her opinions only on the public documentary record. *Id.* at 470–71. The court precluded her testimony, holding that Rule 26 employs an "objective test" for what an expert "considered," and an expert's claim that she did not actually consider certain underlying materials is not controlling. *Id.* at 470–72. Just as the expert in *In re Mirena* could not shield the underlying process that inevitably shaped her review, Dr. Oreskes cannot shield the AI prompts she used to "cull" the documents she later reviewed. *See* ECF 941-1 at 3 and ECF 975-1 at 4 ("After AI-based filtering, Professor Oreskes manually reviewed the resulting subset of documents. This two-stage approach—AI filtering followed by human verification—was designed to completely exclude the risk of AI 'hallucination.'").

CLF's bait and switch argument that Dr. Oreskes only "considered" the final subset of documents—and not the AI prompts and queries used to cull them—fails the objective test of Rule 26, and is also inconsistent with her actual testimony where she claims the selection of materials was as "unbiased" and "neutral" as can be while later acknowledging herself that using prompts can lead to bias. *See* ECF 840-1 at 9. A proposed expert cannot artificially divorce her

final opinions from the methodology and data-filtering process used to reach them, nor can she avoid disclosure simply by subsequently claiming that she did not rely upon the prompts once they are requested. *Id*.; *see also Id.* at 10.

CLF has also downplayed how Dr. Oreskes used AI in her methodology. In its Motion, CLF claims that AI was used solely to review Defendants' document production. But Dr. Oreskes identified that she also used AI to review multiple IPCC documents and evaluate "think tanks" by searching the Royal Society. Expert Report of Naomi Oreskes at 76 and 92.[3]

> **B.** **A Party Cannot Avoid Discovery Obligations Through Its Own Failure to Preserve Evidence.**

CLF's contention that the Order improperly compels production of materials that "do not exist" misses the point. This was CLF's primary argument before Judge Farrish. Whether the materials exist today does not matter. It is certain, as CLF and Dr. Kaurov have acknowledged, that the AI prompts were used and existed at one point in time. They are discoverable. Whether Dr. Oreskes or CLF took the necessary steps to retain that discoverable material does not change that. Indeed, to conclude otherwise would encourage CLF and others to not retain discoverable materials in the hope that by doing so, those materials will later become non-discoverable because they no longer exist. That is the exact opposite of what parties should do in litigation.

CLF's reliance on *Menard* and *Zervos* does not alter that Judge Farrish' conclusion. *See Menard v. Chrysler Grp. LLC*, 2015 WL 5472724, at *3 (S.D.N.Y. July 2, 2015); *see also Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978). Those cases address circumstances in which responsive documents never existed in the first place. They do not insulate a party from discovery where the record supports the conclusion that responsive

---

[3] While it is unclear what role AI may have had in drafting Dr. Oreskes's Report, there are errors in the Report a history professor would not be expected to make. For instance, Dr. Oreskes refers to "President Kennedy" at a time when Dwight Eisenhower was President. Oreskes Rep. at 35.

materials were created and used but are no longer being produced or preserved.  In short, CLF's argument is not that the Order is clearly erroneous; it is that it disagrees with factual findings supported by record evidence and settled discovery law.

Defendants submitted sworn testimony from Dr. Oreskes's assistant expressly referencing "prompt[s]" (ECF 941-4 at ¶8) as well as deposition testimony confirming their use in the research process and experts' methodology. *See* ECF 840-1 at 10. On the record (ECF 970), the Magistrate Judge properly applied *Lewis v. Doe*, 2021 WL 863473, at \*5 (D. Conn. Mar. 8, 2021), in concluding while a good-faith averment that documents do not exist normally resolves a discovery dispute (*see Zervos*, 79 F.R.D. at 595), this protective principle does not apply when the requesting party has a "strong reason for disbelieving" the claim. *Lewis*, 2021 WL 863473, at \*5.

In short, the mere fact that the AI prompts may no longer exist does not render them non-discoverable.  If it were otherwise, a party could conceal any materials simply by destroying or not preserving them.  If the materials never existed, then that is one thing.  But here, it is undisputed that Dr. Oreskes and Dr. Kaurov used AI prompts as part of their methodology. Those prompts are discoverable, regardless of whether Dr. Oreskes and Dr. Kaurov have failed to preserve them.

### C.    The Existence of the AI Prompts Is Based on More Than Just "Attorney Argument."

CLF argues that Defendants failed to satisfy a purported "threshold burden" because the Motion to Compel relied only on "attorney argument."  That contention is incorrect and ignores both the evidentiary record presented to the Court and the Court's express findings in its May 18, 2026 Order.  *See* ECF 970.

Defendants did not rely on attorney argument alone.  The Motion to Compel, which was made in compliance with the Court's discovery directive, cited and attached evidence including CLF's written responses, correspondence between the parties, and the declaration of Dr. Kaurov. *See* ECF 941.  Indeed, the Court expressly relied on Dr. Kaurov's declaration—not counsel's argument—in finding that Defendants had "an evidence-backed reason for doubting CLF's representation" that no additional responsive information existed because Dr. Kaurov himself "referenced 'prompt[s]' in his declaration."  *See* ECF 970.  CLF is therefore directly contradicted by the record and the Court's findings.

The cases cited by CLF concerning the insufficiency of attorney argument are therefore inapposite.  The Court did not grant Defendants' motion based on speculation or unsupported assertions.  Rather, it found that Defendants had a "reason backed up by solid evidence rather than mere suspicion" to questions CLF's position.  *Id.*  Having made that finding, the Court determined that it was appropriate to place CLF under an order requiring production of responsive materials or, after diligent search, a verified response stating that no additional materials exist.  *Id.*

### D.    The Order Is Procedurally Proper.

CLF claims that Judge Farrish's Order is "procedurally improper" because the Order compels discovery responses that were "never formally served."  As an initial matter, CLF never presented this argument to Magistrate Judge Farrish, and it is waived.  Courts in this Circuit consistently hold that a party may not raise new arguments or factual contentions for the first time in objections to a magistrate judge's discovery ruling.  *See Macchia,* 711 F. Supp. 3d at 166 (citing *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403–04 (S.D.N.Y. 2020)).  Having failed to raise this purported procedural defect during the discovery dispute itself, CLF cannot now rely on it to demonstrate that the Order was clearly erroneous or

contrary to law. At no point during that process did CLF contend that the dispute could not be adjudicated because the requests had not been "formally served." To the contrary, CLF litigated the merits of the dispute before Magistrate Judge Farrish, lost on the merits, and now seeks to recast the issue as a procedural defect. Rule 72(a) does not permit a party to reserve arguments, await an adverse ruling, and then raise those arguments for the first time before the district judge.

The argument is also contrary to the record. Following Dr. Oreskes's deposition, Defendants requested the materials on which she relied in forming her opinions, including the AI-related materials that are the subject of the Order. *See* ECF 941-2, Exhibit B. The parties then engaged in multiple meet-and-confer sessions regarding those requests. When those efforts failed to resolve the dispute, the parties followed the precise procedure established by the Court for discovery disputes: they notified the Court, conferred with chambers, and submitted letter briefs pursuant to the Court's discovery-dispute procedures set forth in ECF 473. *See* ECF 940; *see also* ECF 941. Defendants' motion to compel was filed in accordance with those procedures, and CLF fully participated in the process.

None of CLF's cited cases changes this result. First, CLF's argument that informal discovery requests cannot be enforced relies on *Schwartz v. Marketing Publishing Co.*, a rigid, thirty-year-old decision that fails to account for the local rules' reliance upon meeting and conferring and the Court's inherent authority to manage discovery in an efficient fashion. *See* 153 F.R.D. at 21. More recent jurisprudence within this Circuit recognizes that courts have the discretion to enforce informal requests, noting that it is unjust for a party to consistently indicate a willingness to engage with informal requests only to later hide behind the formalities of Rule 34 to oppose a motion to compel. *See Murphy v. Maggs*, 2024 U.S. Dist. LEXIS 36335, at *16– 17 (W.D.N.Y. Mar. 1, 2024) (enforcing an informal document request and explicitly noting the

split in authority regarding *Wells Fargo Bank, N.A. Trustee v. Konover*, 2010 WL 11561491, *4 (D. Conn. 2010). Second, CLF's reliance on *Wynne v. Town of East Hartford* to argue that Rules 33 and 34 are improper vehicles for expert discovery takes the case completely out of context. *See* 2023 WL 1272892, *2 (D. Conn. Jan. 31, 2023). In *Wynne*, the court rejected a plaintiff's attempt to use Rules 33 and 34 to force defendants to track down a third-party expert's past testimony and peer-reviewed publications from entirely unrelated cases, reasoning that it impermissibly shifted the burden and cost of compiling third-party discovery. *Wynne*, 2023 U.S. Dist. LEXIS 15832 at *2–3, *6–7. Here, Defendants are not asking CLF to compile Dr. Oreskes's unrelated past testimony; rather, Defendants are seeking the specific facts, data, and AI prompts she actively used as part of her own disclosed methodology to cull documents and form her opinions for *this* case. Because the disclosure of reliance materials and methodology is a mandatory obligation under Federal Rule of Civil Procedure 26(a)(2)(B)(ii), *Wynne* is wholly inapplicable.

CLF's argument also ignores CLF's own affirmative obligations. Defendants were not required to formally request Dr. Oreskes's methodology materials because their preservation and disclosure is mandatory. Under Federal Rule of Civil Procedure 26(a)(2)(B)(ii), an expert's disclosure must automatically be accompanied by a written report containing "the facts or data considered by the witness in forming" her opinions. *See In re Elysium Health-Chromadex Litig.*, 2021 U.S. Dist. LEXIS 65831, *3 (S.D.N.Y. 2021) (affirming that Rule 26 requires an expert's written report to contain "the facts or data considered by the witness in forming" their opinions). Because the disclosure of an expert's methodology and reliance materials is a mandatory, affirmative duty, CLF was obligated to produce them without awaiting a formal discovery request. CLF failed to do so, even after Defendants made this request.

### E. The AI Prompts and Outputs are Not Covered by the Rule 29 Stipulation.

Judge Farrish correctly rejected CLF's argument that the Rule 29 Stipulation somehow excluded AI prompts from discovery (without ever mentioning them). The stipulation states:

Non-Discoverability: Drafts of expert reports and communications between experts, employees and consultants of Party-related entities on expert opinions or settlement-related issues, including emails, notes, and other correspondence, shall not be subject to discovery. This includes any preliminary findings or informal discussions that have occurred between experts [sic] employees or consultants of Party-related entities."

*See* ECF 975-2 at 3. The stipulation does not include expert reliance materials related to a final report, or materials that form the basis of the expert's methodology. Instead, CLF claimed that the AI prompts fell under the general category of "notes." Judge Farrish rightly rejected that argument, concluding that any agreement limiting discovery must be "quite clear," and that the stipulation does not extend to AI prompts used as part of an expert's methodology, such as document identification, filtering, or analysis used as part of the proposed expert's final opinions. See ECF 970. At most, CLF's argument reflects a competing interpretation of the stipulation— not the kind of clear legal error required to justify a stay.

CLF's argument further depends on treating a software tool as though it were a human participant in the litigation. The Rule 29 agreement protects preliminary draft communications among people. It does not immunize the operation of an analytical tool that an expert chose to employ and champion as part of her claimed unbiased process in forming her opinions. CLF has failed to show that Judge Farrish's conclusion that the stipulation did not cover the AI prompts was clearly erroneous.

### F.    Traditional Discovery Principles Support Judge Farrish's Order.

CLF attempts to portray this dispute as a question of first impression. It is not. The technology Dr. Oreskes used may be relatively new, but the governing discovery principles apply as they always do. As courts within this Circuit have recently recognized in the context of generative AI, "AI's novelty does not mean that its use is not subject to longstanding legal principles." *U.S. v. Heppner*, No. 25-CR-503, *14 (S.D.N.Y. Feb. 17, 2026).

Judge Farrish did not create a novel rule of discovery. Rather, he applied the well-established principle that an opposing party is entitled to examine the methodology a testifying expert used to arrive at her opinions. *See Macchia.*, 711 F. Supp. 3d at 167–68 (affirming that an expert witness's methodology is fair ground for discovery). Whether an expert relies on a statistical model, a proprietary database, a complex formula, a coding protocol, or an AI-assisted review process, the same fundamental rule applies: the opposing party is entitled to discover the information necessary to understand, evaluate, and test that methodology.

That is precisely what Judge Farrish ordered here. According to CLF's own witnesses, Dr. Oreskes used the AI tool in part as a "sieve" to identify, filter, and select the documents that formed the basis of her analysis. *See* ECF 840-1 at 9. The documents provided to the tool, the instructions and parameters used to operate it, and the outputs it generated are therefore part of the methodology that produced her opinions—as Dr. Oreskes acknowledged. Without access to those materials, Defendants cannot meaningfully assess how the relevant document universe was selected, whether the process was reliable, or whether it can be replicated.

Courts have long recognized that expert discovery extends beyond an expert's ultimate conclusions to encompass the method by which those conclusions were reached. *See Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 2024 U.S. Dist. LEXIS 225465, at *7(S.D.N.Y. 2024) (compelling full disclosure of an expert's methodology and holding that an

expert must disclose the "how" and "why" they reached their conclusions so the opposing party can adequately assess the opinions). Judge Farrish's Order does nothing more than apply these settled principles to the methodology Dr. Oreskes chose to employ. CLF's "first impression" argument ultimately confuses the tool with the rule. The tool may be new; the discovery obligation is not.

**II.    CLF Will Not Suffer Irreparable Harm Without a Continued Stay.**

CLF cannot satisfy the second stay factor because it identifies no "actual and imminent" injury that would result from compliance with the Judge Farrish's non-dispositive discovery order. *See Westchester Cnty.*, 2012 U.S. Dist. LEXIS 69311, at *7. Instead, CLF relies on speculation about (i) having to supplement discovery responses and (ii) the remote possibility of future sanctions—neither of which constitutes irreparable harm as a matter of law. *See Nken*, 556 U.S. at 434–35 (holding that the "possibility" standard is too lenient and that simply showing some "possibility of irreparable injury" or a mere chance of success fails to satisfy the requirements for a stay).  And if, as CLF says, there are no AI prompts to produce, then there is no "irreparable harm" that will come from not producing them.

Compliance with a discovery order does not constitute irreparable injury. Courts in this Circuit have repeatedly held that the ordinary burden of responding to discovery—particularly where, as here, the order simply requires supplementation or clarification—does not justify a stay. *See Monterey Bay*, 2023 U.S. Dist. LEXIS 150000, at *21–22. That is because such compliance is part of the routine operation of litigation and does not create any cognizable legal injury. CLF's assertion that it will be harmed by being required to revise or supplement its responses reduces to the proposition that complying with a lawful discovery obligation is itself irreparable injury, a theory courts routinely reject. *See Monterey Bay*, 2023 U.S. Dist. LEXIS 150000, at *21–22  (holding that the ordinary burden of complying with a discovery order does

not justify a stay, as accepting such an argument would make stays routine rather than an extraordinary remedy) (citing *N.R.D.C. v. U.S. F.D.A.*, 884 F. Supp. 2d 108, 124 (S.D.N.Y. 2012)).

Nor does CLF's speculation about potential sanctions alter the analysis. Indeed, that would transform every discovery order into a potential basis for a stay, which is not the law. Discovery sanctions are not the type of "harm" a stay is meant to guard against—they are self-inflicted harms caused by a party's own failure to comply with discovery obligations.  Courts within this Circuit have expressly rejected this type of speculative theory. In *Westchester County*, the court denied a stay where the movant argued that compliance with a discovery order might eventually expose it to monetary sanctions, holding that such harm was purely conjectural where no sanctions motion had been filed and the party would in any event have a full opportunity to contest sanctions if they were ever sought. *See* 2012 U.S. Dist. LEXIS 69311, at *7–8.  The court reasoned that because no motion for sanctions had been filed, the harm was purely speculative, and if sanctions were ever pursued, the party would "have a full and fair opportunity to litigate the issue." *Id.* at *8.

Even if sanctions could be considered such a harm, the Supreme Court has made clear that a "possibility" of future harm is insufficient to establish irreparable injury required for a stay. *Nken*, 556 U.S. at 434–35. Here, CLF's claimed harm is even more attenuated: it depends on a chain of contingencies that has not occurred and may never occur, including (1) CLF's future compliance decisions, (2) a hypothetical determination that those responses are inadequate, and (3) a subsequent sanctions motion that has not been filed.

The same reasoning applies here. Defendants have not moved for sanctions because CLF has not responded in accordance with the Order. Judge Farrish's Order does not impose

sanctions or find any violation. It merely observes that Rule 37(b) consequences "may then become available" only in the event CLF's future sworn discovery responses are later shown to be untruthful. *See* ECF 970. That conditional, forward-looking statement underscores the speculative nature of CLF's asserted harm; it does not create present injury.

### III.    Defendants Should Not Have to Wait Further For This Discovery

The balance of hardships weighs heavily against a stay because the requested discovery goes to the heart of Defendants' ability to test and challenge the opinions of CLF's purported expert witness. The AI prompts and search logs are not peripheral materials; they are the direct means by which Defendants can evaluate how Dr. Oreskes identified, filtered, and analyzed information informing her opinions. Without them, Defendants are deprived of the ability to determine whether the AI tools were supplied with biased or incomplete inputs, whether relevant information was excluded from consideration, and whether the outputs generated by those tools reliably support the conclusions she intends to offer at trial.

A stay would allow CLF to continue withholding materials Judge Farrish has already determined is discoverable, while Defendants prepare their case without access to core reliance materials bearing directly on the credibility, reliability, and admissibility of Dr. Oreskes's opinions. Courts routinely recognize that such impairment of a party's ability to obtain and use relevant discovery constitutes substantial prejudice weighing against a stay. *See, e.g., Monterey Bay*, 2023 U.S. Dist. LEXIS 150000, at *25–26 (acknowledging the argument that a stay of discovery prejudices a party forced to prepare expert reports and brief summary judgment "without a full record," and recognizing the parties' "right to proceed expeditiously" toward resolution); *see also Litton Indus., Inc.*, 124 F.R.D. at 79 (rejecting automatic stays of discovery orders because allowing such delays would "grind the magistrate system to [a] halt"). The

prejudice to Defendants is real and ongoing, whereas CLF identifies only speculative future harms that may never materialize. The balance therefore tips decidedly in Defendants' favor.

**IV.    CLF Identifies No Public Interest That Justifies Suspending a Lawful Discovery Order**

CLF's final argument merely repackages its disagreement with the Order. The public interest is not served by delaying compliance with a valid discovery order while CLF pursues further review. Rather, the public has a strong interest in the efficient administration of justice, the timely resolution of disputes, and adherence to court-ordered discovery obligations. Those interests are particularly acute where, as here, the disputed materials relate directly to the methodology employed by one of CLF's proposed expert.  On the other hand, the public interest is not served by rewarding strategic delay.

## **CONCLUSION**

For the foregoing reasons, CLF's Emergency Motion to Stay should be denied, and CLF should be ordered to immediately comply with Magistrate Judge Farrish's May 18, 2026 Order.

Dated: June 10, 2026

Respectfully submitted,

/s/ Rose J. Jones
Rose J. Jones (phv208026)
Hilgers PLLC
1372 Peachtree Street, N.E., 19th Floor
Atlanta, GA 30309
Tel: (678) 229-1983
rjones@hilgerslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street Suite 1700
Charlotte, NC 28202
Tel: (704) 503-2551
alewis@kslaw.com

Douglas A. Henderson (phv05547)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-2769
dhenderson@kslaw.com

James O. Craven (ct18790)
Shook, Hardy & Bacon
City Place 1
185 Asylum Street Suite 3701
Hartford, CT 06103
Tel: (860) 515-8901
jcraven@shb.com

Drew T. Bell (phv208721)
KING & SPALDING LLP
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: (512) 457-2000
Email: dbell@kslaw.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2026 a copy of the foregoing OPPOSITION TO CONSERVATION LAW FOUNDATION INC.'S EMERGENCY MOTION TO STAY THE MAGISTRATE JUDGE'S ORDER (ECF NO. 970) PENDING RESOLUTION OF ITS RULE 72(a) OBJECTIONS was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system  and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s/ Rose J. Jones
Rose J. Jones (phv208026)
Hilgers PLLC
1372 Peachtree Street, N.E., 19th Floor
Atlanta, GA 30309
Tel: (678) 229-1983
rjones@hilgerslaw.com