**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>  Plaintiff,<br><br> v.<br><br>EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>  Defendants. | Case No: 3:21-cv-00933-VDO<br><br><br><br>June 15, 2026 |

**OPPOSITION TO CONSERVATION LAW FOUNDATION INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER NO. 970**

Defendants Equilon Enterprises LLC d/b/a Shell Oil Products US, Motiva Enterprises LLC, and Triton Terminaling LLC oppose Conservation Law Foundation Inc.'s ("CLF") Objection to Judge Farrish's Order (ECF 970). As in its Motion to Stay, CLF offers six reasons for overturning Judge Farrish's Order, none of which has merit. Indeed, Judge Farrish considered and correctly rejected most of these arguments. The Court should do the same.

While the issue involves the relatively new technology of artificial intelligence ("AI"), Judge Farrish's ruling is nothing more than a straightforward application of traditional expert discovery rules. It is not complicated. CLF's purported expert historian, Dr. Naomi Oreskes, used AI to filter out and "cull" the document production in this case as part of her methodology. In other words, based on prompts and other inputs, the AI program selected the materials Dr. Oreskes would review in forming her opinions. These are, necessarily, more than mere search terms—they are the instructions and context Dr. Oreskes gave to the ChatGPT system she used

1

as part of arriving at her opinions.[1]  These prompts, inputs, and outputs are clearly discoverable, as Judge Farrish held.

CLF's arguments similarly fail.  *First*, Judge Farrish correctly held that the AI process constitutes an aspect of Dr. Oreskes's methodology (as she admitted in her deposition) and is therefore discoverable.  *Second*, the Order properly applied controlling precedent in concluding that CLF's informal assertion of nonexistence was outweighed by record evidence demonstrating that such materials were created and used.  *Third*, Judge Farrish correctly determined that the Parties' Rule 29 Stipulation lacks the "clear" language required to shield these specific methodology materials from discovery.  *Fourth*, Defendants satisfied their burden by relying on sworn testimony from CLF's own witnesses establishing the existence and use of the AI prompts and queries.  *Fifth*, CLF has waived its procedural objections regarding service, and Judge Farrish acted well within his discretion in resolving the discovery dispute on the merits.  *Finally*, Defendants have diligently pursued this discovery, have met and conferred about it on multiple occasions, and the pending *Daubert* motion does not moot the need for these materials.  *See* ECF 741.

For these reasons, Judge Farrish's Order is correct.  It is supported by the facts and the law, and CLF has not shown Judge Farrish's ruling was clearly erroneous or contrary to law. CLF's objection should therefore be overruled.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), a district court may modify or set aside a magistrate judge's order on a non-dispositive matter only if it is

---

[1] CLF's claim that the ordered materials never existed is inconsistent with the sworn testimony of both Dr. Oreskes and Dr. Kaurov, who testified that prompts/queries and model outputs were used interactively as an intermediate tool as part of her methodology to identify documents to support her opinions.  *Id.* at ¶ 8; *see also* ECF 840-1 at 10.

"clearly erroneous or contrary to law." This is a highly deferential standard. Magistrate judges are afforded broad discretion in managing discovery and resolving discovery disputes, and their rulings should not be disturbed absent an abuse of that discretion. *See Milan v. Sprint Corp.*, 2018 U.S. Dist. LEXIS 59170, at \*5 (E.D.N.Y. Apr. 6, 2018).

A ruling is only "clearly erroneous" if the reviewing court is left with the definite and firm conviction that a mistake has been committed. *E.E.O.C. v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (quoting *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001)). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (internal quotation marks omitted). District courts routinely uphold magistrate judges' discovery orders under this deferential standard. *See, e.g., Milan*, 2018 U.S. Dist. LEXIS 59170 at \*4–5 (affirming the magistrate judge's order granting a motion to compel, noting that magistrate judges are best qualified to judge the discovery process and their rulings should be overturned only for an abuse of discretion); *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y.*, LLC, 2025 U.S. Dist. LEXIS 219125, at \*5 (W.D.N.Y. July 17, 2025) (adopting the magistrate judge's recommendation to disqualify an expert witness and preclude evidence because the order was neither clearly erroneous nor contrary to law); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 124 F.R.D. 75, 77 (S.D.N.Y. 1989) (dismissing objections and affirming the magistrate judge's discovery scheduling order, emphasizing the broad discretion afforded to magistrates that will be overruled only if abused). Accordingly, a party bears a heavy burden to demonstrate that a magistrate judge's order constitutes a clear error of fact or a misapplication of law.

## **ARGUMENT**

**a.    Judge Farrish Correctly Found That the AI Prompts Are Discoverable, And CLF Has Not Produced Them.**

The AI prompts and inputs are clearly discoverable, as Judge Farrish concluded. Under Federal Rule of Civil Procedure 26(a)(2)(B)(ii), a testifying expert must disclose all "facts or data considered by the witness in forming" their opinions. This standard is deliberately expansive; as the 2010 Advisory Committee Notes emphasize, the phrase "facts or data" must be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Courts within this Circuit enforce an objective test, defining "considered" as "anything received, reviewed, read, or authored by the expert, before or in connection with the forming of [her] opinion, if the subject matter relates to the facts or opinions expressed." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016). Furthermore, to satisfy these strict disclosure requirements and allow for meaningful cross-examination, an expert must fully disclose their methodology, including the "'how' and 'why' the expert reached his conclusions." *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 2024 U.S. Dist. LEXIS 225465, *7 (S.D.N.Y. 2024).

Here, the use of a generative AI tool was not ancillary to Dr. Oreskes's analysis, but instead a foundational component of her workflow that she herself described as part of her "methodology" in preparing her expert report. *See* ECF 840-1 at 9. As reflected in the record, she engaged a computational scientist, Dr. Kaurov, to implement and manage at least part of this technical process. *See id.* Where an expert employs a tool to meaningfully assist in document review, culling, and shaping the evidentiary universe underlying the opinions, that process constitutes discoverable methodology. *See Macchia v. ADP, Inc.*, 711 F. Supp. 3d 162, 167–68 (E.D.N.Y. 2024) (holding that an expert witness's methodology is fair ground for discovery);

*Harrington*, 2024 U.S. Dist. LEXIS 225465, at *14 (noting that to comply with disclosure requirements, an expert must disclose the "how" and "why" they reached their conclusions). Judge Farrish has already correctly recognized this precedent and applied it here. *See* ECF 970 at 1–2 (explaining that "[a]n expert witness's methodology is fair ground for discovery . . . and under the facts of this case, the process by which Dr. Oreskes culled down the defendants' document production into a subset to be worked with is an aspect of that methodology"). Without disclosure of that process, Defendants cannot fully evaluate, test, or challenge the reliability of the opinions offered.

Disclosure is further required because Rule 26(a)(2)(B) extends beyond materials an expert ultimately "relies" upon at the final stage of the analysis. It requires disclosure of all facts or data considered in forming the opinions, a deliberately broad standard designed to permit effective cross-examination and rebuttal. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) advisory committee's note to 2010 amendment; *In re Elysium Health-Chromadex Litig.*, 2021 U.S. Dist. LEXIS 65831, at *4 (S.D.N.Y. 2021) (noting that "'facts or data' be interpreted broadly to require disclosure of any material considered by the expert"). Courts routinely apply this principle to require disclosure of underlying filtering, culling, and selection methodologies used to shape the evidentiary record on which expert opinions are based—just like the process Dr. Oreskes used here. *See Macchia*, 711 F. Supp. 3d, at 167–68.[2]

Ultimately, CLF has produced no valid reason for the lack of disclosure other than repeated statements from counsel that "they do not exist" and the sworn declaration from Dr. Kaurov that the material was not saved or preserved. *See* ECF 975-3 at 9:10–11 (Mr. Greene

---

[2] It would be a strange result if Federal Rule of Evidence 702 required courts to scrutinize the reliability of an expert's methodology, but discovery into the foundational facts and data underlying that methodology was somehow not permitted under Federal Rule of Civil Procedure 26.

stating, "they don't exist"); *see also* ECF 975-1 at 1 (CLF's counsel confirming via email that "no experimental prompts were stored")); *see also* ECF 941-4 at ¶ 8 (stating he "did not export or preserve a complete native 'prompt/output log'").  As Judge Farrish correctly noted. such assertions are insufficient to avoid the entry of an initial order to produce.  Tr. at 33.  The fact that CLF or Dr. Oreskes may not have preserved materials they should have retained does not make those materials non-discoverable.

CLF's claim that disclosure is unnecessary because Dr. Oreskes did not ultimately "rely" on specific AI inputs or outputs is incorrect.  The relevant inquiry is not limited to what Dr. Oreskes ultimately considered in forming her opinions, but what her analytical framework and process was.  Because AI was part of that process, it is fair game for exploration and cross examination. But as of now, Defendants have no visibility into how Dr. Oreskes used AI and cannot meaningfully explore that aspect of her methodology.

Finally, CLF offers no substantive justification for its failure to produce these materials beyond its apparent inability to preserve them.  That failure, however, does not alter the scope of the Rule 26 obligations and cannot be used to restrict discovery into the very methodology that forms the basis of the expert opinions at issue.

> **b.  Judge Farrish Correctly Found That the AI Prompts Existed at One Time and That CLF Must Produce Them.**

CLF's contention that the Order improperly compels production of materials that "do not exist" misses the point.  Defendants seek an initial order of production because that is the foundational precursor to seeking relief when materials are not produced in response to an order. The question is not whether the materials are presently available, but whether they ever existed.

The record and common sense show that the AI prompts undoubtedly existed, even if CLF and Dr. Oreskes have since failed to preserve them.[3]

That fact is established in the record through two separate admissions: first, by Dr. Oreskes during her September 9, 2025 deposition, and later by her research assistant, Dr. Kaurov, in his sworn December 19, 2025 declaration. *See* ECF 840-1 at 10; ECF 941-4 at ¶ 8. Taken together, these admissions confirm that the prompts were generated, were used in the course of Dr. Oreskes's methodology in this case, and thus fall squarely within the scope of discoverable materials. The existence of the AI prompts is no surprise—this is how ChatGPT, the AI platform Dr. Oreskes used, works, both for her and everyone else. For ChatGPT to perform a task, it is necessary to give it instructions and context so the program knows what to do. It is common knowledge that this goes beyond mere search terms.

Nor is CLF aided by its reliance on cases like *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593 (S.D.N.Y. 1978), and *Menard v. Chrysler Grp. LLC*, 2015 WL 5472724 (S.D.N.Y. July 2, 2015). Those decisions address circumstances where the requested materials never existed in the first place, not situations where the materials were created and used, and then allegedly not preserved. The distinction is significant. As Judge Farrish correctly recognized, *Lewis v. Doe*, 2021 WL 863473, at *5 (D. Conn. Mar. 8, 2021), permits reliance on a good-faith assertion of nonexistence only in the absence of contrary evidence, and expressly recognizes an exception where the requesting party presents a "strong reason for disbelieving" the claim supported by substantial evidence. *See* ECF 970 at 2.

---

[3] Whether Dr. Oreskes or CLF took the necessary steps to retain that discoverable material does not negate their discovery obligations. A party cannot avoid disclosure of discoverable material by allowing it to be discarded, not retained, or otherwise rendered unavailable after it has been created and used. To conclude otherwise would encourage CLF and others to evade Rule 26 by failing to preserve precisely the materials that reveal how expert opinions were formed—an outcome directly at odds with the Federal Rules and the truth-seeking function of discovery.

Here, Defendants have provided precisely the type of evidence demonstrating that the prompts existed and were used in the expert process.  Judge Farrish agreed, and his factual finding is entitled to deference.  The objections should be overruled.

### c. The AI Prompts and Outputs are Not Covered by the Clear Language of the Rule 29 Stipulation.

Judge Farrish rightly rejected CLF's attempt to wedge the AI Prompts into the Parties' Rule 29 agreement.  The purported Rule 29 email does not, by its terms, encompass expert reliance materials tied to the preparation of a final report or materials that form part of an expert's methodology.  *See* ECF 975-2 at 3.  CLF nevertheless contends that the AI prompts may be swept into broad categories such as "notes" or "communications."  *See* ECF 976 at 11. Judge Farrish disagreed, emphasizing that any agreement limiting discovery must be "quite clear," and concluding that the stipulation does not extend to AI prompts used as part of an expert's methodological process, including document identification, filtering, and analysis underlying the expert's opinions.  *See* ECF 970.

CLF also argues that Judge Farrish clearly erred in relying on *Macchia*, asserting that the case is distinguishable because Dr. Oreskes was timely disclosed as an expert, whereas the vendor in *Macchia* was not.  *See* 711 F. Supp. 3d at 162. This argument misapprehends both the holding in *Macchia* and the basis for its application here.

In *Macchia*, a party attempted to introduce a vendor's compilation of thousands of job advertisements as mere "fact evidence," arguing that the vendor simply ran search terms through an internet database.  *Id.* at 166.  The district court rejected this, finding that the process of filtering, verifying, and culling a massive universe of documents using specific search parameters and specialized knowledge constitutes an expert methodology.  *Id.* at 166–67. Because the vendor was performing expert work, the court struck the report for failing to comply

with the expert disclosure requirements of Federal Rule of Civil Procedure 26(a)(2). *Id.* at 167. The core principle from *Macchia* does not depend on whether a witness is designated as an expert, but rather that the act of filtering and culling data through structured criteria is itself methodological and therefore subject to disclosure. Dr. Oreskes herself identified this process as part of her "methodology." ECF 840-1 at 9.

Judge Farrish properly applied *Macchia* for that central proposition: that the process of reducing a large universe of documents into a smaller, reviewable subset is part of an expert's methodology. The fact that Dr. Oreskes was timely disclosed as an expert is beside the point. If anything, Dr. Oreskes's disclosure as an expert only reinforces Defendants' position because her methodology falls squarely within Rule 26(a)(2)(B)(ii), which requires the disclosure of all "facts or data considered." Fed. R. Civ. P. 26(a)(2)(B)(ii). By CLF's own admission, Dr. Oreskes and Dr. Kaurov used their AI tool as a "sieve to identify all the documents that could be relevant," filtering down millions of pages into the subset she ultimately reviewed. *See* ECF 840-1 at 9; *see also* ECF No. 941-4 at ¶ 8. Under *Macchia*, that culling process is precisely the type of methodology that must be disclosed.

CLF's claim that Defendants will not suffer any prejudice from CLF's failure to produce this discovery is similarly incorrect. CLF contends that Defendants suffered no prejudice because general search terms and the broader litigation universe were available. *See* ECF 976 at 12. But that position ignores the very concern recognized in *Macchia*—without access to the parameters and processes used to construct the subset of materials, an opposing party cannot meaningfully assess the reliability of the selection process itself. Here, absent disclosure of the inputs, prompts, and outputs used in the AI-assisted filtering process, Defendants cannot test whether responsive materials were excluded, whether the tool introduced unintended bias or

hallucinated, or whether relevant documents favorable to Defendants were omitted from the dataset on which the expert ultimately relied. *See* ECF 941 at 6. Defendants should not be left to take CLF and Dr. Oreskes's word for it that there is nothing to see here—that is the whole point of expert discovery.

Judge Farrish did not err in applying well-established discovery principles in this case. Whether an expert uses human reviewers, keyword filters, or AI systems, the underlying selection criteria and filtering process that shape the evidentiary record are discoverable methodology under Rule 26. The AI prompts Dr. Oreskes used are no exception.

### d.      Defendants Carried Their Threshold Burden for Discoverability Under Rule 26.

For similar reasons, CLF's argument that Defendants failed to establish the discoverability of the requested reliance materials is meritless. Under Rule 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to a claim or defense and proportional to the needs of the case. The AI prompts at issue readily satisfy that standard.

The authorities CLF cites do not support a contrary result. CLF relies on *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017), and *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012), to argue that Defendants failed to establish the relevance of the requested materials. While the party seeking discovery bears the initial burden of demonstrating relevance, that burden is not onerous. Rule 26(b)(1) embodies a broad and liberal standard of discoverability, requiring only a showing that the requested materials bear on a claim, defense, or another matter properly within the scope of discovery.

Judge Farrish correctly found that Defendants satisfied that burden here. The record establishes that the AI prompts and outputs were used to identify, filter, and cull the universe of

documents reviewed by Dr. Oreskes in forming her opinions.  Materials reflecting that process are directly relevant to assessing the foundation, reliability, and completeness of her methodology.  Indeed, they go to the heart of Defendants' ability to test the opinions offered and to prepare effective cross-examination and rebuttal.  Once Defendants made this threshold showing, the burden shifted to CLF to demonstrate why the requested discovery should nonetheless be denied.  CLF failed to carry that burden.

Moreover, Defendants supported their request with competent evidence derived from CLF's own witnesses.  Dr. Oreskes testified regarding the use of the AI tool in her review process, and Dr. Kaurov subsequently confirmed that prompts and outputs were generated as part of that process.  *See* ECF 840-1 at 9–10; ECF 941-4 at ¶ 8.  Based on this evidence, Judge Farrish had a firm factual basis to conclude that the requested materials existed, were considered as part of the expert's methodology, and fell within the scope of Rule 26 discovery.  *See Milan*, 2018 U.S. Dist. LEXIS 59170 at *5. Accordingly, Judge Farrish faithfully applied the governing burden-shifting framework, properly considered the evidentiary record before him, and correctly concluded that CLF was required to conduct a diligent search for responsive materials.  The resulting Order is neither clearly erroneous nor contrary to law.

### e.    Judge Farrish's Order Was Procedurally Proper.

CLF claims that Judge Farrish's Order is "procedurally improper" because it compels discovery responses to requests that were purportedly "never formally served."  *See* ECF 976. That technical argument was not raised before Judge Farrish and is inconsistent with the meet and confer process in this case.  Thus, this argument is waived.

CLF fully litigated the merits of this discovery dispute before Judge Farrish without ever raising any objection regarding the manner of service or the procedural vehicle through which Defendants sought relief.  Having elected to contest the substance of Defendants' request before

11

Judge Farrish, CLF cannot now, after receiving an adverse ruling, raise a procedural objection for the first time before this Court.  Rule 72(a) does not permit a party to withhold arguments, await the outcome of a dispute, and then present new theories on objection.  *See Macchia*, 711 F. Supp. 3d at 168 (holding that "new arguments and factual assertions may not be raised for the first time in an objection to a magistrate judge's discovery order") (citing *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403–04 (S.D.N.Y. 2020)).  Because CLF failed to present this argument to Judge Farrish when it had the opportunity to do so, the argument has been forfeited.

Even if the Court were to consider the argument on the merits, it still fails.  The dispute before Judge Farrish had been thoroughly briefed and argued.  The parties had already joined issue on whether CLF was required to produce the AI prompts and related materials, and Judge Farrish possessed broad discretion to manage discovery and resolve the impasse presented to him.  Under those circumstances, converting the parties' dispute into an order requiring compliance was an entirely appropriate exercise of that authority.  Courts routinely enter discovery orders designed to bring finality to disputes that have been fully litigated, rather than requiring the parties to engage in needless procedural formalities before obtaining relief.  There is no reason to overturn Judge Farrish's Order on this basis.

### f.     Judge Farrish's Ruling Did Not Err in Finding Defendants' Request Timely and Proper, Despite Pending Motions.

CLF also contends that Judge Farrish's Order is clearly erroneous because it compels responses to an allegedly "untimely" request that purportedly "impermissibly overlaps" with Defendants' pending Rule 702 motion.  *See* ECF 976.  This argument was not raised before Judge Farrish in connection with this dispute and, in any event, the record demonstrates otherwise.

Defendants diligently pursued the discovery at issue. CLF attempts to manufacture an untimeliness argument by focusing on the period between Dr. Oreskes's May 8, 2025 expert report and Defendants' August 4, 2025 request for additional materials. That characterization ignores the actual sequence of events. After receiving Dr. Oreskes's report, Defendants timely deposed her on September 9, 2025, at which point the role of the AI-assisting culling process and the existence of related reliance materials became clear. Following that testimony, Defendants promptly issued a deficiency letter on September 19, 2025, specifically requesting production of those materials. *See* ECF 941-3 at 1.

Rather than immediately seeking judicial intervention, Defendants participated in the meet-and-confer process required by this Court's procedures. Between September and December 2025, the parties engaged in at least nine discussions in an effort to resolve the dispute without court involvement. *See* CLF's Corrected Obj. (ECF No. 976) at 4. Only after those efforts proved unsuccessful did Defendants bring this issue before Judge Farrish on December 10, 2025. Thus, any passage of time resulted not from lack of diligence by Defendants, but from their good-faith efforts to resolve the matter through the cooperative process contemplated by the discovery rules. CLF cites to a prior discovery order in this case (ECF No. 277) to argue that a failure to diligently pursue discovery is grounds to quash, but unlike the circumstances there, Defendants acted with utmost diligence here by following up immediately after the deposition and engaging in months of mandated meet-and-confers. *See* ECF 976 at 17.

Furthermore, CLF's new argument that this discovery "impermissibly overlaps" with the pending Rule 702 challenge fails.  In fact, the existence of that motion shows the importance of obtaining the materials underlying Dr. Oreskes's methodology. Discovery directed to the basis and reliability of an expert's opinions is consistent with—and essential to—Rule 702 issues. As

13

Defendants explained to Judge Farrish at the discovery hearing, if the AI tool excluded documents from the curated universe that directly contradict Dr. Oreskes's opinions, that fact would be "a pretty potent argument for our Rule 702 motion," but Defendants currently have "no way of making that argument because [they] can't substantiate it" without the underlying prompts and outputs. ECF 975-3 at 24:5–10. Obtaining these reliance materials is a prerequisite to evaluating the reliability of the methodology challenged in that very motion.

Judge Farrish properly rejected CLF's attempt to use the timing of a court-directed meet-and-confer process as a basis for avoiding production. Magistrate judges possess broad discretion to manage discovery and to resolve disputes presented through established pretrial procedures. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (affirming the district court's enforcement of discovery orders and emphasizing the broad discretion afforded to magistrate judges to manage pretrial discovery and definitively resolve disputes presented through court-directed procedures). The Order reflects a reasoned exercise of that discretion, grounded in the procedural history of this case and the relevance of the requested materials.

Accordingly, Judge Farrish's determination that Defendants' request was timely and proper was neither clearly erroneous nor contrary to law.

## CONCLUSION

For the foregoing reasons, CLF's Objection to Magistrate Judge Farrish's Order (ECF 970) should be overruled, and CLF should be ordered to immediately comply with Judge Farrish's May 18, 2026 Order.

14

Dated: June 15, 2026

Respectfully submitted,

/s/ Rose J. Jones
Rose J. Jones (phv208026)
Hilgers PLLC
1372 Peachtree Street, N.E., 19th Floor
Atlanta, GA 30309
Tel: (678) 229-1983
rjones@hilgerslaw.com

Antonio E. Lewis (phv03069)
King & Spalding, LLP
300 S Tryon Street Suite 1700
Charlotte, NC 28202
Tel: (704) 503-2551
alewis@kslaw.com

Douglas A. Henderson (phv05547)
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-2769
dhenderson@kslaw.com

James O. Craven (ct18790)
Shook, Hardy & Bacon
City Place 1
185 Asylum Street Suite 3701
Hartford, CT 06103
Tel: (860) 515-8901
jcraven@shb.com

Drew T. Bell (phv208721)
KING & SPALDING LLP
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: (512) 457-2000
Email: dbell@kslaw.com

Counsel for Defendants

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2026 a copy of the foregoing OPPOSITION TO CONSERVATION LAW FOUNDATION INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER NO. 970 was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s/ Rose J. Jones
Rose J. Jones (phv208026)
Hilgers PLLC
1372 Peachtree Street, N.E., 19th Floor
Atlanta, GA 30309
Tel: (678) 229-1983
rjones@hilgerslaw.com