**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> *Plaintiff*, <br> v. <br><br> SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC, <br><br> *Defendants*. | Civil Action No. 3:21-cv-00933-VDO <br><br><br> June 29, 2026 |

**CONSERVATION LAW FOUNDATION INC.'S REPLY TO DEFENDANTS'**
**OPPOSITION (ECF NO. 981) TO CONSERVATION LAW FOUNDATION INC.'S**
<u>**OBJECTION TO THE MAGISTRATE JUDGE'S ORDER NO. 970.**</u>

### I.      INTRODUCTION

Conservation Law Foundation ("CLF") submits this Reply to correct the legal and factual mischaracterizations and omissions in Defendants' Opposition to CLF's Objection to the Magistrate Judge's Order No. 970 ("Defendants' Opposition" or "Opp."). ECF No. 981. For the reasons set forth in CLF's Motion to Stay (ECF 974), its related Reply (ECF 982), CLF's Objections to the Magistrate Judge's Order (ECF 975) ("CLF's Objection"), and this Reply, the Court should find the Magistrate Judge's Order No. 970 clearly erroneous and contrary to law and deny Defendants' Opposition in its entirety.

### II.      ARGUMENT

#### A.  CLF Fully Disclosed Dr. Oreskes' Methodology, Including How and Why She Reached Her Opinions.

Dr. Oreskes' expert report makes clear what opinions she will offer at trial. Those opinions are:

1

1.  Scientific consensus confirms that climate change is occurring and has caused, and will continue to cause, sea level rise, more severe weather, increased precipitation, flooding, fires, and other serious consequences;
2.  Shell knows and has admitted the reality of climate change; and
3.  Despite what it knew or should have known, Shell supported third-party organizations that disparaged credible scientific evidence of climate change and worked to block meaningful policy that Shell publicly claimed to support.

ECF 741-2 at 1–2. Defendants have not refuted any of these opinions. Instead, Defendants focus on a single minor aspect of Dr. Oreskes' litigation-document review process in an effort to obscure the substance of her disclosed opinions and claim there has not been full disclosure. Defs. Opp. at 4. Dr. Oreskes' report clearly described her methodology: she contextualized primary and secondary sources concerning the history of climate science, including Defendants' litigation documents, to arrive at her opinions. ECF 741-2 at 10–19. Dr. Oreskes simply selected which of Defendants' litigation documents to further review by applying disclosed search terms, including "sea level rise" to the documents.  Defendants deposed Dr. Oreskes at length regarding this portion of her process, and she explained:

> But let me just maybe say one more thing to help clarify this for the record. Imagine a box. And every document provided by your client, the Defendant, is in that box. I now have access to that box, and I search that box. In the old days, I would search it by printing all the papers and read them, but that takes a heck of a long time.
>
> The great thing that AI does for us is it accelerates that process. **It doesn't do anything we couldn't do by hand**, but it does it a whole heck of a lot faster, which in a situation like this where time is limited and there is a deadline, a court-imposed deadline, it's very helpful to be able to use this new, good tool to identify documents that use the words "sea level rise." That's all it does. And then I look at those documents.

ECF No. 863 at 232:6–23 (Emphasis added).

Ultimately, Defendants' Opposition asks the Court to accept an illogical and disingenuous premise: although Defendants possess the full litigation document library and were given the relevant search terms, they still cannot determine how to search **their own** materials to counter Dr. Oreskes' opinions.

2

Defendants rely on *Harrington* to argue that CLF has not fully disclosed the facts and data Dr. Oreskes considered or relied upon, such that Defendants can determine "how" and "why" she reached her opinions. *See* Defs. Opp. at 5; *see Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, No. 21-CV-761 (LGS) (VF), 2024 WL 5074923 (S.D.N.Y. Dec. 9, 2024). However, that case is inapplicable to facts at issue. *Harrington* concerns a mathematical analysis of "spoofing" episodes in the context of trading data where an expert applied algorithms to an intermediary data set which resulted in his final opinion; he failed to produce both the algorithms and the data set. Here, Defendants possess the entire universe of litigation documents, the disclosed search terms, Dr. Oreskes' report, and deposition testimony regarding her review process. Thus, unlike in *Harrington*, Defendants have all of the facts and data necessary to evaluate and challenge Dr. Oreskes' opinions.

This case instead more closely resembles *In re Elysium Health-ChromaDex Litigation*, where the court held that an opposing party is not entitled to an expert's draft analyses, intermediary calculations, or alternative approaches when it already possesses the underlying facts and data used by the expert. *See e.g.*, *In re Elysium Health-ChromaDex Litig.*, No. 17-CV-7394 (LJL), 2021 WL 1249223 (S.D.N.Y. Apr. 5, 2021). Here, Defendants have the same litigation documents reviewed by Dr. Oreskes and can conduct their own searches, retain their own expert, and challenge Dr. Oreskes' conclusions through cross-examination. Rule 26 does not require the disclosure of intermediary analytical steps beyond the facts and data supporting the expert's opinions.

> **B. Defendants Have Already Established That the Rule 29 Stipulation Is Enforceable and Protects Communications Between Experts and Their Employees and Consultants; Accordingly, the Court Should Enforce the Parties' Stipulation.**

Defendants argue that the language of the Rule 29 Stipulation is unclear. Defs. Opp. at 8–10. Yet Defendants previously relied upon the same Stipulation to prevent inquiry into communications between their own testifying expert and another consultant concerning how a model, that was used as input into the testifying expert's model, was set up. During the deposition of Dr. French-McCay, CLF asked:

> Q. Okay. Did you instruct Integral on how to set up the Delft3D model?
> A. No.
> Ms. Toledo: Object to form, communications with the experts –between the experts
> are by agreement, not discoverable.

ECF 717, French-McCay Dep. at 47:16–48:22. Defendants' counsel's objection demonstrates a clear understanding that the Rule 29 Stipulation protects communications including an expert's "instructions" to another consultant on how to set up their model. Here, Dr. Oreskes' discussions with her research assistant regarding prompts or search terms used to identify litigation documents likewise are communications about how to set up a process. *See id.*; *see also* ECF 863 at 226:3–5.

Defendants cannot reasonably maintain that the Rule 29 Stipulation was sufficiently clear to shield their expert from questioning about communications concerning a model set-up, while simultaneously arguing that the same stipulation provides no protection for communications concerning the document-identification process used by Dr. Oreskes. The Parties' own conduct demonstrates their shared understanding that the stipulation protects communications between experts, consultants, and those assisting them regarding the preparation of their expert reports. Accordingly, this mutual understanding of what the Rule 29 Stipulation protects utterly undermines Defendants' argument that CLF knew or should have known to "preserve" any prompts, as Defendants clearly demonstrate an understanding that the Stipulation protects from disclosure communications or instructions on how to set up a model or process within the context

4

of the Parties' expert reports. *See* Defs. Opp. at 7. Rather, it is clear that CLF's conduct and that of the Defendants are mirrored and reflect their similar understanding of the Rule 29 Stipulation.

### C. Defendants' Descriptions of the ChatGPT Consumer Chatbot Product Are Unrelated to the Azure API Used By Dr. Oreskes and Reliance on Defendants' Irrelevant and Misleading Claims on Prompt Histories Is In Error.

Defendants' Opposition repeatedly and erroneously describes features of the OpenAI ChatGPT consumer chatbot product as characteristics that must be innate to all platforms and products that use AI technology. Indeed, counsel for the Plaintiff has endeavored to educate Defendants' counsel on this error, including at oral argument on this issue, yet Defendants persist in the same repeated mischaracterization. These comparisons and assumptions are misleading, irrelevant, and unsupported by the record, and the Court's reliance on Defendants' ultimate claim that all AI systems record and store prompt histories, including the tools used here, is in error.

Defendants' Opposition states that Dr. Oreskes used "a generative AI tool." Opp. at 4. This repeated characterization is wrong because it obscures the limited purpose for which the tool was used in this case which was, as the record reflects, as a document-search and document-filtering tool. *See* ECF 940 at 2 (describing use as filtering documents, running searches, and confirming key-word searches). CLF re-states and incorporates its arguments from its Reply to the Motion to Stay Opposition regarding Defendants' insinuation that AI may have drafted Dr. Oreskes report to the extent any such insinuation follows from Defendants' Opposition here. *See* ECF 982 at 6–7.

Defendants claim that "the AI prompts undoubtedly existed" because "this is how ChatGPT, the AI platform Dr. Oreskes used, works, both for her and everyone else." Opp. at 7. Defendants further state "[f]or ChatGPT to perform a task, it is necessary to give it instructions and context so the program knows what to do. It is common knowledge that this goes beyond mere search terms." Opp. at 7. These claims are incorrect, are unsupported by any evidence, and are directly contradicted by the record. CLF has consistently and repeatedly pointed Defendants and

the Court to the Microsoft Azure terms of service documentation, which explains that prompts and uploaded data are not stored or available to the AI model for training or retraining. *See* ECF 940 at 4 (linking to Microsoft Azure's security terms of service); 941-4 at ¶ 4 (same). Those Microsoft Azure terms of service, which were linked by both Parties in their briefs and were discussed in the Parties' meet and confers, state in bold that the Microsoft Azure "models are stateless: no prompts or completions are stored in the model." https://learn.microsoft.com/en-us/legal/cognitive-services/openai/data-privacy. The terms of service informs users that if they want to "store[] message history and other content related to message history . . . required for multi-turn conversations and workflows" they must purchase, install, and use separate API models and features to make the model "stateful." The Microsoft Azure API set up and used by Drs. Kaurov and Oreskes is automatically a stateless model that does not retain information and data between prompts in a history or by incorporating it or retraining it into the model. *See* ECF 940 at 4; 941-4 at ¶¶ 4, 7, 8 (noting that the prompts and data were not stored or exported and the Azure service did not use that information to train or retrain the "Azure OpenAI Service foundation models").

Moreover, Defendants claim that it is "common sense" and "common knowledge" that AI prompts exist here because that is "how ChatGPT [] works" is contradicted by OpenAI's own descriptions of its models. *See* Defs. Opp. at 7. The OpenAI Developer site provides guides for using the OpenAI models. The guide on "Conversation State" describes different ways a user can create prompt history retention to convert the model from "stateless" to "stateful," which means the model will "capture the previous state of a conversation" and add "the model's previous response output as input, and append that input to your next request." *Conversation State*, OpenAI Developers, https://developers.openai.com/api/docs/guides/conversation-state (last accessed June 29, 2026). The Conversation State guide provides a number of ways to code the past prompts so

they are placed in a storage location and then become part of the model for that conversation. *Id.* This conversational feature is one that OpenAI has developed for its ChatGPT consumer chatbot product. It is not an automatic feature of all AI tools, as Defendants' claim, much less of the Microsoft Azure API, which the record is clear does not automatically include such a tool. Both the Microsoft Azure terms of service and OpenAI Developer site are clear that if a user, like Dr. Kaurov, is using a stateless model, the user needs to code in instructions or use a specific API that will create and store a chat log and retrain the chat log into the model so that it has a conversational feel and functionality.

Notably, Defendants' entire argument rests on generalized assumptions about the consumer ChatGPT chatbot product rather than evidence concerning Azure OpenAI services actually used in this matter. They cite no declaration, deposition testimony, technical documentation, or expert opinion showing that the specific Azure deployment used by Dr. Oreskes retained prompt histories capable of production. They cite to "common knowledge" when reality is that what they put forth to the Court is both erroneous claims about a specialized privately licensed program. As a result, without any declaration, deposition testimony, technical documentation, or expert opinion, Defendants' claims should be disregarded as mere conjecture that is demonstrably incorrect.

Accordingly, this Court should not credit Defendants' statements in their Opposition regarding the "common sense" existence of prompt logs or their misleading attributions of their own experience using the ChatGPT chatbot with the Microsoft Azure API at issue in this case. The Magistrate erroneously relied on Defendants' similar statements made during the Final Discovery Hearing, which Defendants have now expanded upon in their Opposition, and the Court

should grant CLF's Objection as presented in Objection section II regarding the non-existence of prompt logs. ECF 876 at 9–10.

## III.    CONCLUSION

For these further reasons, CLF respectfully requests that this Court find Order No. 970 clearly erroneous and contrary to law, and deny Defendants' Opposition (ECF 981) in its entirety.


Dated: June 29, 2026

Respectfully submitted,

CONSERVATION LAW
FOUNDATION, Inc., by its attorneys

*/s/ Shalom Jacks*

Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9013
E-mail: sjacks@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Kristine S. Tardiff (phv208957)*
Conservation Law Foundation, Inc.
27 North Main Street
Concord, NH 03301
Tel: (603) 573-9144
ktardiff@clf.org

Christopher M. Kilian (ct31122)
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3009

E-mail: ckilian@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

9

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
E-mail: rmazingo@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff
Conservation Law Foundation, Inc.*
*Admitted as Visiting Attorney*

10