**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,<br><br>Defendants. | Case No: 3:21-cv-00933-VDO<br><br>August 25, 2026 |

**AMENDED STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS MOTIVA ENTERPRISES, LLC'S** **<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Motiva Enterprises LLC ("Motiva"), respectfully submits the following Amended Draft Statement of Undisputed Facts[1] in support of its Motion for Summary Judgment.

1. This case concerns an onshore petroleum bulk storage and distribution terminal located at 481 East Shore Parkway, New Haven, Connecticut (the "Terminal"). ECF 47, Plaintiff's Amended Complaint ("Am. Compl.") at ¶ 2.

2. Motiva owned and operated the New Haven Terminal between 2000 and May 2017. *Id.*, at ¶ 34.

3. In May 2017, Motiva ceased ownership and operation of the Terminal. *Id.* ¶ 35.

[1] To avoid duplication, Motiva hereby incorporates by reference, as if set forth fully herein, the statements and supporting record citations contained in the Statements of Undisputed Facts filed by the other Defendants in connection with their respective motions for summary judgment.

4. Since May 2017, Triton Terminaling LLC has owned, and Equilon Enterprises LLC has operated the Terminal pursuant to the General Permit for Discharge of Stormwater Associated with Industrial Activity issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP"). *Id*. at ¶¶ 29-32.

5. At the time Plaintiff filed this action in July 2021, the permit at issue was the 2019 General Permit No. GSI002800. *Id*. at ¶ 28.

6. The 2019 Permit expired in September 2021 and was replaced in October 2021 without any substantive changes. *Id*. at ¶ 175.

7. Plaintiff's only remaining count against Motiva is Count XIII in the Amended Complaint. *See* ECF 111, Judge Sarah Merriam's Ruling on Defendants' Motion to Dismiss (dated Sept. 16, 2022) (the "MTD Ruling") at 62.

8. Plaintiff's only remaining count against Motiva, Count XIII, alleges a "violation of the Resource Conservation and Recovery Act ["RCRA"]– Imminent and Substantial Endangerment to Human Health and the Environment." *See* ECF 47, Plaintiff's Am. Compl. at ¶¶ 486-502.

9. RCRA applies only to solid and hazardous "waste" and does not apply to petroleum-containing "products" stored for use and distribution in bulk storage tanks. *See* 42 U.S.C. § 6903 (defining "solid waste" and "hazardous waste"); 40 C.F.R. § 261.2 (same); *Characterization of Remediation Waste* Presentation, CT DEEP, "Characterization of Remediation Waste" Presentation (Oct. 17, 2017), https://portal.ct.gov/-/media/deep/waste_management_and_disposal/hazardous_waste/characterizationofremediationwastepdf.pdf?rev=f5e69d4274b240fa8848d774d49be444&hash=C

2DE548FFF026D496AB103DC952531FE (hereafter "Characterization of Remediation Waste Presentation").

10. To bring a claim under 42 U.S.C. § 6972(a)(1)(B), Plaintiff must show that (1) a "past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility"; (2) "has contributed" or "is contributing"; (3) "to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste"; and (4) "which may present an imminent and substantial endangerment to health or the environment."

11. CT DEEP has explained that: "A waste that is placed into storage or disposal prior to the effective date of RCRA is not a waste until it is removed from storage or disposal. As a result: Environmental media that was contaminated with hazardous waste before the effective date of RCRA is not hazardous waste as long as it is in the ground. Once it is removed from the ground (e.g., dug up or pumped out), it is 'generated' and becomes a waste – and potentially a hazardous waste." Characterization of Remediation Waste Presentation.

12. There is no evidence of any RCRA violations occurring at the Terminal during the relevant time period. *See* EPA, Detailed Facility Report, https://echo.epa.gov/detailed-facility-report?fid=110000491977.

13. None of Plaintiff's experts supply any evidence to support Plaintiff's RCRA claim in Count XIII against a past facility owner like Motiva.

14. Product for sale placed into storage is not waste. *See* 40 C.F.R. § 261.2 (defining "solid waste" as "any discarded material . . . "); EPA Frequent Questions Related to Hazardous Waste Recycling, the Definition of Solid Waste and Other Exemptions and Exclusions ("Under RCRA, unused products do not become 'waste' until they become 'discarded material.' EPA

believes that an unused product becomes 'discarded' when an intent to discard the material is demonstrated."), *available at* https://www.epa.gov/hw/frequent-questions-related-hazardous-waste-recycling-definition-solid-waste-and-other-exemptions.

15. The product shipped to and stored at the Terminal is product that will be distributed to customers. For example, the Terminal stores gasoline, diesel fuel, biofuel, and ethanol. *See* Ex. L, Feb. 6, 2025 M. Sullivan Dep. at 12:21-13:21. The Terminal is a storage facility for these products, where they are safely stored and then distributed to customers and end users. *Id.* at 62:15-25.

16. The Terminal was properly engineered, managed, and operated during Motiva's ownership and operation. Ex. D, Pace & Bayles Report at 43-44; Ex. E, Jones Report at 4-7; Ex. F, Zeeb Report at 15-18; Ex. A, Kovich Report at 1-2.

17. The storage tanks at the terminal meet or exceed all standards for similar storage tanks. Ex. D, Pace & Bayles Report at 2 ("In our report, we show the tanks at the Terminal were designed appropriately, they have been maintained appropriately, and they have been inspected on a regular basis, in accordance with Best Industry Practice.").

18. The Terminal is located 1,500 feet from the nearest shoreline, and its tanks are surrounded by a secondary containment dike wall. Ex. D, Pace & Bayles Report at 43.

19. There is no evidence in the record that Motiva's operations of the Terminal present an imminent and substantial endangerment to human health and the environment. *See* Ex. D, Pace & Bayles Report at 44; *see also*, Ex. A, Kovich Report at 45; Ex. G, Morrison Report at 2-3; Ex. H, Tsuji Report at 35.

20. Nor is there any evidence that there is an imminent and substantial risk of harm to any of Plaintiff's members due to Motiva's prior ownership of the Terminal. Ex. H, Tsuji Report at 1-5; Ex. G, Morrison Report at 4.

21. The Terminal complies with RCRA and complied during Motiva's ownership and operation. *See* Ex. A, Kovich Report at 45.

22. Plaintiff's expert witnesses have also failed to identify any objective evidence that Motiva or any other Defendant violated the 2019 Permit. Indeed, Motiva did not operate the Terminal after 2017, and Plaintiff's expert reports only mention Motiva as a prior owner. Plaintiff's experts do not offer any substantive opinions about Motiva. *See, e.g.,* Ex. B, Horner Rebuttal Report at 5 ("The current operational status as Shell New Haven Terminal extends from May 2000, when the property was transferred to Motiva, and then to Triton in October 2017.").

23. In December 2022, EPA inspected the Terminal and its SPCC Plan and confirmed it complies with the SPCC regulations and the Clean Water Act. Ex. K, U.S. EPA SPCC Field Inspection and Plan Review Checklist – SOPUS_NHVN00527912.

24. The discharge pollutant concentrations, monitored and reported to CT DEEP, have all been below permit benchmark concentrations in the 5-year period before the filing of this lawsuit, or since the Terminal's implementation of the 2017 SWPPP. *See* Ex. J, Parkman Report at 46; Ex. C Horner Dep. at 39:17-22, 116:12-117:5.

25. The 2019 Permit, the 2025 Permit, and the 2021 MSGP have not incorporated ASCE24-14 or ASCE24-24 or their "critical infrastructure" definition. Ex. I, Goldsmith Depo. at 166:15-167:4; 167:4-9.

26. CT DEEP has never issued a Notice of Violation relating to the Terminal's secondary containment areas, berms, or permeability. *See* Ex. K U.S. EPA SPCC Field Inspection and Plan Review Checklist – SOPUS_NHVN00527912.

27. CT DEEP has never issued a Notice of Violation of RCRA to the Terminal. *See* EPA, Detailed Facility Report, https://echo.epa.gov/detailed-facility-report?fid=110000491977.

28. EPA has never issued a Notice of Violation of RCRA to the Terminal. *See* EPA, Detailed Facility Report, https://echo.epa.gov/detailed-facility-report?fid=110000491977.

29. Contrary to Plaintiff's suggestion, a climate change analysis was not required by the 2019 Permit or any earlier stormwater permits. Also, the 2019 Permit and earlier stormwater permits do not mention sea level rise, storm surge, flooding, hurricanes, increasing frequency or severity of storm events, or other adverse weather events, let alone a purported requirement to conduct a climate change risk assessment as alleged by Plaintiff. *See* ECF 1-2, Exhibit A to Plaintiff's Compl.

30. Neither Plaintiff nor its experts have come forward with objective evidence that the Terminal tanks are likely to fail under any particular weather event introduced by Plaintiff or by its experts, or identified a mechanism of failure. *See* Ex. D, Pace & Bayles Report at 2.

31. The Terminal is compliant with the Connecticut Transfer Act, which is a program administered by CT DEEP that regulates soil and groundwater investigation corrective action and closure. Ex. F, Zeeb Report at 15-18.

32. Neither Plaintiff nor its experts have come forward with evidence that the Terminal has released "pollutants" in violation of RCRA. *See* Ex. J, Parkman Report at 46; Ex. C Horner Dep. at 39:17-22, 116:12-117:5.

Dated: August 25, 2026

Respectfully submitted,

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
Carmen R. Toledo (phv20194)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com
CToledo@kslaw.com

Antonio E. Lewis (phv03069)
KING & SPALDING LLP
300 S Tryon Street Suite 1700
Charlotte, North Carolina 28202
T: (704) 503-2600
alewis@kslaw.com

James O. Craven (ct18790)
WIGGIN AND DANA LLP
One Century Tower 265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
T: (203) 498-4400
F: (203) 782-2889
jcraven@wiggin.com

Rose J. Jones (phv208026)
Hilgers Graben PLLC
1372 Peachtree Street, N.E. 19th Floor
Atlanta, GA 30309
T: (678) 229-1983
rjones@hilgersgraben.com

***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2026, a copy of the foregoing was filed through the Court's electronic filing system ("ECF"), by which means the document is available for viewing and downloading from the ECF system and a copy of the filing will be sent electronically to all parties registered with the ECF system.

/s/ *Douglas A. Henderson*
Douglas A. Henderson (phv05547)
KING & SPALDING LLP
1180 Peachtree Street, NE Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
dhenderson@kslaw.com