**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

CONSERVATION LAW FOUNDATION, INC.,

*Plaintiff*,

v.

SHELL OIL COMPANY, EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US, SHELL PETROLEUM, INC., TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,

*Defendants*.

Civil Action No. 3:21-cv-00933-VDO

November 12, 2026

**CONSERVATION LAW FOUNDATION INC.'S SUPPLEMENTAL RESPONSE REGARDING DR. KAUROV'S USE OF AI, AS REFERENCED DURING ORAL ARGUMENT PURSUANT TO ORDER ECF NO. 1026.**

## I. INTRODUCTION

Conservation Law Foundation ("CLF") submits this response pursuant to The Honorable Vernon D. Oliver's November 5, 2026 Order (ECF 1026) to supplement the information regarding Dr. Kaurov's use of AI referenced during the November 3, 2026 oral argument.

The November 3, 2026 hearing concerned pleadings CLF filed to correct the legal and factual mischaracterizations and omissions in Defendants' Opposition to CLF's Objection to the Magistrate Judge's Order No. 970 ("Defendants' Opposition" or "Opp."). ECF No. 981. For the reasons set forth in CLF's Motion to Stay (ECF 974), its related Reply (ECF 982), CLF's Objections to the Magistrate Judge's Order (ECF 975) ("CLF's Objection"), CLF's Reply (ECF 986), and this Supplement, the Court should find the Magistrate Judge's Order No. 970 clearly erroneous and contrary to law and deny Defendants' Opposition in its entirety.

## II. DR. KAUROV'S USE OF AI

At all times, Dr. Kaurov performed his work as a research assistant under the direction of Dr. Naomi Oreskes, a Historian of Science who has offered an expert report in this case. Pursuant to the Court's Order (ECF 1026), CLF interviewed Dr. Kaurov to obtain answers to the Court's questions concerning the output of the Microsoft Azure program and the time period over which the document review occurred.

### A. Selection of the Microsoft Azure Program

Dr. Kaurov explained that he and Dr. Oreskes, in collaboration with counsel, chose the Microsoft Azure service because its security measures essentially eliminated any risk of creating additional records or 3rd party access to the documents or information under review, which was a primary consideration, given the sensitive and confidential nature of the litigation documents he was reviewing. The computer, temporary document hosting, and large language model ("LLM") services Dr. Kaurov used through Microsoft Azure did not automatically track search terms or prompts and operations through the service are not logged or visible to the service provider or other users of the service. This differs from the consumer-facing ChatGPT chat bot product, where there are configurations where the service provider, or others, could read or access users' chats. The use of LLM through Microsoft Azure's service is understood by those in the field to be more secure.

### B. What Came Back From Each Search or Prompt

The first question on which the Court requested clarification is: (1) "What came back to [Dr. Kaurov] as a result of each search or prompt?" Tr. at 21:19–21. Dr. Kaurov confirmed that the LLM used through Microsoft Azure's service did not create any summaries, outlines, or templates. Its output consisted of lists of Bates numbers and excerpts from the documents. Dr.

Kaurov manually reviewed outputs for false positives and shared the Bates numbers with Dr. Oreskes, who reviewed the documents themselves in Everlaw.

For example, Dr. Oreskes instructed Dr. Kaurov to determine how many times "sea level rise" and related terms appeared in the Shell documents, without regard to the context in which they were used. Dr. Oreskes's report describes the result:

> In Shell documents produced through discovery, we similarly found sea level, sea level, coastal flooding, and extreme weather mentioned many thousands of times. While this analysis does not provide the context in which these terms were discussed, the quantity of mentions further confirms that Shell has been well aware of sea level rise as a climate risk and its relation to coastal flooding, coastal erosion, and extreme weather events. It is also consistent with the conclusion that the attention to these issues in the Shell scenario work reflected a broad awareness of climate change, sea level rise, and coastal flooding.

ECF 741-2 at 76–77.

### C. Time Period of the Review and Tracking Between Sessions

The Court's second question is: "And this document review took place over the course of what period of time, if you know?" Tr. at 23:8–10. Dr. Kaurov verified that the document review occurred in multiple sessions between March 30, 2025 and July 13, 2025. Dr. Kaurov's invoice for this time period was previously produced without redactions to Defendants on September 25, 2025. *See* Exhibit A, Kaurov Invoice (NORESKES_000007) (redacted for personal information and confidential price and amount information).

Relatedly, the Court asked how Dr. Kaurov completed the document review over multiple sessions and tracked where he left off in each. *See* Tr. at 23:21–25; 24:1–21. Within each session, Dr. Kaurov interactively queried the documents using written scripts with the LLM, which returned the Bates numbers of relevant documents and excerpts. Within the session, Dr. Kaurov would review the LLM outputs and modify the written script prompts without saving each iteration of the script. Between sessions, he communicated with Dr. Oreskes to refine the searches and then

ran the refined queries in the next session. Sessions were not stored once they ended; storing them would have required Dr. Kaurov to programmatically write that storage or logging capability into the process. Instead, he tracked each session in conversation, and notes that he shared, with Dr. Oreskes.

## III. THE PARTIES' SHARED UNDERSTANDING OF THE RULE 29 STIPULATION

CLF reiterates that Defendants themselves have relied on the Rule 29 Stipulation[1] to prevent inquiry into communications between their own testifying expert and another consultant about how a model was set up, where that model served as an input to the testifying expert's model. During the deposition of Dr. French-McCay, CLF asked:

> Q Okay. Did you instruct Integral on how to set up the Delft3D model?
> A No.
> Ms. Toledo: Object to form, communications with the experts –between the experts are by agreement, not discoverable.

ECF 717, French-McCay Dep. at 47:16–48:22.

Defendants' counsel's objection demonstrates a clear understanding that the Rule 29 Stipulation protects communications such as an expert's "instructions" to another consultant on how to set up a model, which are indisputably part of that expert's methodology. Dr. Oreskes's discussions with her research assistant about the prompts or search terms used to identify litigation

[1] Defendants demonstrate their reliance on the Rule 29 Stipulation to protect communications between experts or experts and their employees as recently as in the Providence, Rhode Island companion case. For example, in the deposition of Dr. French-McCay, Defendants' expert, taken September 23, 2026, Counsel objected as follows: Q "Next we have Saied Saiedi. Again, please correct me if I mispronounce his name. What are – what are his areas of expertise? A He's a coastal engineer. Q What role did he have in drafting your expert report? A He had no role in drafting my report. Q What role did he have in helping prepare your expert report? A I had asked him to review Nairn's report with respect to coastal engineering discussions in that report and based – just on the phone. I had some discussions with him about what was in Nairn's report. Q And with respect to your discussions with him concerning Nairn's report, what specifically were you discussing with him? Mr. Bell: And I'll object that the discussions with employees are not discoverable under the parties' agreement. I'll instruct the witness not to answer that." Exhibit B, French-McCay Tr. at 35:15–25; 36:1–9.

documents are likewise communications about how to set up a process. *See id.*; *see also* ECF 863 at 226:3–5.

Defendants cannot reasonably maintain that the Rule 29 Stipulation was clear enough to shield their expert from questioning about communications concerning a model set-up, while simultaneously arguing that the same Stipulation provides no protection for communications concerning the document-identification process Dr. Oreskes used. The Parties' own conduct demonstrates their shared understanding that the Stipulation protects communications between experts, consultants, and those assisting them in preparing their expert reports.

That shared understanding resolves Defendants' argument that CLF knew or should have known to "preserve" any prompts. *See* Defs. Opp. at 7. Defendants clearly understand that the Stipulation protects from disclosure communications and instructions on how to set up a model or process in connection with the Parties' expert reports.

## IV. CONCLUSION

This supplemental response further supports CLF's request that the Court find Order No. 970 clearly erroneous and contrary to law and deny Defendants' Opposition (ECF 981) in its entirety.

Dated: November 12, 2026

Respectfully submitted,

CONSERVATION LAW FOUNDATION, Inc., by its attorneys

*/s/ Shalom Jacks*

Shalom Jacks (phv208834)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9013
E-mail: sjacks@motleyrice.com

James Y. Meinert (ct31637)
Conservation Law Foundation, Inc.
62 Summer St
Boston, MA 02110
Tel: (617) 850-1744
E-mail: jmeinert@clf.org

Kristine S. Tardiff (phv208957)*
Conservation Law Foundation, Inc.
27 North Main Street
Concord, NH 03301
Tel: (603) 573-9144
ktardiff@clf.org

Christopher M. Kilian (ct31122)
Anna Tadio (phv208827)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 223-5992
Tel: (802) 622-3009
E-mail: ckilian@clf.org
E-mail: atadio@clf.org

Ana McMonigle (ct31370)
Andrea Leshak (phv208945)*
Conservation Law Foundation, Inc.
195 Church Street
Mezzanine Level, Suite B
New Haven, CT 06510
Tel: (203) 298-7692
Tel: (203) 902-2157
E-mail: amcmonigle@clf.org
E-mail: aleshak@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC

650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Phone: (832) 671-6381
E-mail: chancethelawyer@gmail.com

Linda Singer (phv208339)*
Elizabeth Smith (phv208361)*
Mimi Liu (phv208839)*
Devin Williams (phv208833)*
Motley Rice LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Tel: (202) 386-9626
Tel: (202) 386-9627
Tel: (202) 386-9628
Tel: (202) 386-9625
E-mail: lsinger@motleyrice.com
E-mail: esmith@motleyrice.com
E-mail: mliu@motleyrice.com
E-mail: dwilliams@motleyrice.com

Michael Pendell (ct27656)
Motley Rice LLC
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
Tel: (860) 218-2722
E-mail: mpendell@motleyrice.com

Ridge Mazingo (phv208402)*
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9620
E-mail: rmazingo@motleyrice.com

Vincent Greene (phv208487)*
Motley Rice LLC
40 Westminster St., 5th Floor
Providence, RI 02903 US
Tel: (401) 457-7730
E-mail: vgreene@motleyrice.com

David K. Mears (ct208829)
Tarrant, Gillies, & Shems LLP
44 East State Street
Montpelier, VT 05602
Tel: (802) 223-1112
E-mail: david@tarrantgillies.com

*Attorneys for Plaintiff*
*Conservation Law Foundation, Inc.*
**Admitted as Visiting Attorney*