UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CONSERVATION LAW FOUNDATION, INC.,

*Plaintiff,*

-against-

EQUILON ENTERPRISES LLC *doing business as* SHELL OIL PRODUCTS US, TRITON TERMINALING LLC, and MOTIVA ENTERPRISES LLC,

*Defendants.*

**MEMORANDUM & ORDER**

3:21-CV-933 (VDO)

**VERNON D. OLIVER**, United States District Judge:

Pending before this Court are objections to the Magistrate Judge's order compelling production of reliance materials related to the use of artificial intelligence. For the following reasons, the Court overrules the objections and affirms Judge Farrish's May 18, 2026, Order in all respects.

## I. BACKGROUND

The plaintiff, Conservation Law Foundation, Inc. ("CLF"), a nonprofit corporation dedicated to the conservation and protection of New England's public health, environment, and natural resources, brought this citizen enforcement action under the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") for alleged unlawful conduct at a bulk storage and fuel terminal located in New Haven, Connecticut. Pending in this action are one RCRA claim and eleven CWA claims against three companies, Equilon

Enterprises LLC d/b/a Shell Oil Products US ("Equilon"), Triton Terminaling LLC ("Triton"), and Motiva Enterprises LLC ("Motiva") (collectively, "Defendants").[1]

This action was commenced on July 7, 2021.[2] The operative complaint is the Amended Complaint filed on February 1, 2022.[3] On September 16, 2022, the Honorable Sarah A.L. Merriam granted in part and denied in part a motion to dismiss.[4] Specifically, Judge Merriam dismissed counts 12 and 14 against all defendants, and dismissed all claims asserted against Motiva, other than Claim 13.[5] Defendants filed an answer on October 7, 2022.[6] On February 11, 2025, the parties stipulated to dismiss Shell Oil and Shell Petroleum.[7] Therefore, the claims between Plaintiff CLF and Defendants Equilon, Triton, and Motiva remain pending.[8]

As is relevant to the current objections, Plaintiff engaged Dr. Naomi Oreskes, the Charles Henry Lea Professor of the History of Science and Affiliated Professor of Earth and Planetary Sciences at Harvard University, to be an expert witness in this case.[9] In writing the opening report, Dr. Oreskes relied on materials produced in this litigation,[10] and employed a

---

[1] *See* Am. Compl., ECF No. 47; Stipulation of Dismissal, ECF No. 527; Order, ECF No. 529.

[2] *See* Compl., ECF No. 1.

[3] *See* ECF No. 47.

[4] *See* Order, ECF No. 111 (*Conservation L. Found., Inc. v. Shell Oil Co.*, 628 F. Supp. 3d 416 (D. Conn. 2022)).

[5] *See generally id.*

[6] Answer, ECF No. 120.

[7] *See* ECF Nos. 527, 529.

[8] Joint Notice, ECF No. 1009 at 2 ("The claims remaining in this matter against Equilon Enterprises LLC d/b/a Shell Oil Products US, and Triton Terminaling LLC are Counts I – XI and XIII. The claim remaining in this matter against Motiva Enterprises LLC is Count XIII.").

[9] ECF No. 778 at 1.

[10] *Id.* at 21.

computational scientist, Dr. Alexander A. Kaurov, as a research assistant to assist with her review of materials produced in this litigation.[11] After Plaintiff provided access to the documents produced in this action, Dr. Kaurov processed those documents using a dedicated Microsoft Azure cloud environment created solely for the project.[12] To review and search the produced documents in this litigation, prompts, queries, and model outputs were used interactively as intermediate tools to identify potentially relevant documents for further review.[13] Dr. Kaurov used ChatGPT to search for documents and to identify the documents for Dr. Oreskes to review.[14] While doing so, Dr. Kaurov did not preserve complete native "prompt/output log" standalone files on any personal systems or in a cloud environment.[15]

On December 23, 2025, Defendants moved to compel production of artificial intelligence ("AI") reliance materials.[16] Defendants argued that Plaintiff violated Federal Rule of Civil Procedure 26(a)(2)(B) by refusing to produce the underlying facts, data, and documents that construct the methodology Dr. Oreskes relied on to use AI.[17] Defendants noted that Dr. Oreskes relied on an AI workflow to form substantive opinions in her expert report and that she and Dr. Kaurov jointly developed prompts used to analyze Defendants' document

---

[11] Kaurov Decl., ECF No. 941-4 at 2.

[12] *Id.* at 3.

[13] *Id.*

[14] Oreskes Tr., ECF No. 863 at 227:4–5 ("We used the ChatGPT to identify the documents."); *id.* at 234:13–15 (Q: What programs was he using to search? A: We use ChatGPT on a secure server.)

[15] *Id.*

[16] ECF No. 941.

[17] *Id.* at 4–5.

production.[18] Plaintiff objected to the motion with a simultaneously filed letter brief.[19] The parties then conferred for the purpose of reducing the areas in dispute, as directed by Magistrate Judge Thomas O. Farrish, and reported that they had resolved all issues except for "their dispute concerning Defendants' request for the prompts Dr. Oreskes used in conducting her AI analysis and outputs."[20] The Magistrate Judge held a hearing on the remaining dispute on May 14, 2026.[21] On May 18, 2026, Judge Farrish granted the motion to compel, deeming it appropriate to place Plaintiff under an order of production.[22]

Plaintiff timely filed its objections, to which the Defendants filed a response.[23] Plaintiff then filed a reply.[24] This Court stayed the Magistrate Judge's Order pending resolution of the objections and heard oral argument on November 3, 2026.[25] On November 12, 2026, Plaintiff filed a supplement.[26]

## II. STANDARD OF REVIEW

A district court reviewing a magistrate judge's order pertaining to "pretrial matter[s] not dispositive of a party's claim or defense" is governed by Federal Rule of Civil Procedure 72(a). "Matters concerning discovery generally are considered 'nondispositive' of the

---

[18] *Id.* at 2.

[19] ECF No. 940.

[20] ECF No. 963 at 2.

[21] ECF No. 971.

[22] ECF No. 970 (*Conservation L. Found., Inc. v. Shell Oil Co.*, No. 21-cv-933 (TOF), 2026 WL 2664341 (D. Conn. May 18, 2026)).

[23] ECF Nos. 975, 976, 981.

[24] ECF No. 986.

[25] ECF Nos. 977, 1025.

[26] ECF No. 1027.

litigation," and when reviewing a magistrate judge's discovery order under Rule 72(a), "the district judge in the case must consider timely objections and modify or set aside any part of the magistrate judge's order that is clearly erroneous or is contrary to law." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010) (cleaned up). Under the "clearly erroneous" standard of review, a district court may reverse a magistrate judge's finding only if it is "left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (quoting *United States v. Garcia*, 413 F.3d 201, 222 (2d Cir. 2005)). Similarly, under the "contrary to law" standard of review, a district court may reverse a finding only if a magistrate judge "fail[ed] to apply or misappl[ied] relevant statutes, case law or rules of procedure." *Catskill Dev., LLC v. Park Place Entm't*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (cleaned up). A magistrate judge's finding may not be modified simply because the reviewing district judge would have decided the case differently. *In re Sampedro*, No. 18-MC-47 (JBA), 2019 WL 101902, at *1 (D. Conn. Jan. 3, 2019) (citing *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).

## III. <u>DISCUSSION</u>

Judge Farrish's May 18 Order compelled Plaintiff to "revise its responses to any Rule 33 interrogatories or Rule 34 requests for production that call for disclosure of any artificial intelligence prompts and/or queries used by Dr. Oreskes or her team in the course of producing her expert witness report."[27] As discussed below, the May 18 Order is neither clearly erroneous nor contrary to law and the Court discerns no abuse of discretion in the Magistrate Judge's

[27] ECF No. 970.

issuance of the discovery order. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

**A. Procedural Objections**

The Court first addresses Plaintiff's argument that the Magistrate Judge' order was procedurally improper because it enforced "informal" discovery requests sent through email, as opposed to "formal" Rule 33 interrogatories or Rule 34 requests for production sent through service. The Court easily rejects this legal argument because Plaintiff has waived it. A district judge ordinarily does not "consider new arguments raised in objections to a magistrate judge's opinion that could have been raised before the magistrate [judge] but were not." *Kumaran v. Nat'l Future Ass'n*, No. 20-CV-3668, 2024 WL 2330655, at *3 (S.D.N.Y. May 22, 2024) (cleaned up); *see also See v. Gov't Emps. Ins. Co.*, No. 21-CV-0547, 2026 WL 891603, at *14 (E.D.N.Y. Apr. 1, 2026) (collecting cases). Plaintiff, through counsel, did not argue that the Magistrate Judge was without authority under Federal Rule of Civil Procedure 37 to compel production of materials requested in an email. Plaintiff comes closest when it asserted that "[i]t remains unclear what legal basis Defendants are using to seek this information. To the extent Defendants' Motion uses the requests in the Notice of Deposition or consider any of their emailed requests as Interrogatories or Requests for Production, CLF requests the Court sustain CLF's objections, or otherwise quash the requests."[28] Nowhere in that sentence or its letter brief, however, does Plaintiff argue that granting a motion to compel would be procedurally improper or that Federal Rule of Civil Procedure 37 did not provide the Magistrate Judge with the authority to compel disclosure.

[28] ECF No. 940 at 6.

But the Court exercises its discretion here to note that it was neither clearly erroneous nor contrary to law to compel production of materials requested through email. At issue are Defendants' follow-up email requests after receiving Dr. Oreskes's expert report and her deposition testimony concerning the use of AI. As recounted by Plaintiff, "[o]n September 19, Defendants emailed a new list of requests/interrogatories to which CLF gave signed responses on September 25."[29] The signed responses show that Plaintiff treated the emailed requests as formal requests for Rule 33 interrogatories or Rule 34 requests for production, despite being sent through email, as Plaintiff provided responses and objections, including that the discovery requests "are duplicative, oppressive, and outside the scope of what is discoverable under the Federal Rules."[30] While Plaintiff noted some specific objections—such as the requests being outside the request of Rule 26(a)(2)(B) and Rule 26(b)(4)(C)—it did not object to Defendants serving discovery requests through email, as opposed to formal service.[31] Thus, it would be within the discretion of the Magistrate Judge to grant the motion to compel here, as Plaintiff waived the service issue by failing to specifically state the objection in its responses to Defendants. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); Fed. R. Civ. P. 34(b)(2)(B) (requiring a party to "state with specificity the grounds for objecting to the request, including the reasons").

---

[29] ECF No. 940 at 2.

[30] ECF No. 941-1 at 2.

[31] *See generally* ECF No. 941-4.

Plaintiff's argument on its substance thus fails to leave the Court "with the definite and firm conviction that a mistake has been committed." *Snow*, 462 F.3d at 72.

Next, the Court rejects Plaintiff's argument that the Magistrate Judge clearly erred in granting an untimely motion to compel. Even assuming that the motion to compel was untimely, there would be no clear error as the record reveals good cause to consider a motion to compel at a late stage. "[T]he primary consideration" in determining whether good cause has been shown for a late filing "is whether the moving party can demonstrate diligence." *Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007); *accord Casagrande v. Norm Bloom & Son, LLC*, No. 11-CV-1918 (CSH), 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014). In the dispute at bar, Defendants emailed Plaintiff a deficiency letter requesting production of materials related to Dr. Oreskes's use of AI ten days after her deposition, where the existence of related reliance materials was revealed. Then, Defendants conferred with Plaintiff at least seven times before bringing this issue before the Magistrate Judge in December 2025.[32] It is thus not clearly erroneous to consider a late-filed motion to compel in light of Defendants' diligence in pursuing the discovery at issue after learning information at Dr. Oreskes's deposition.

The Court similarly rejects the argument that the Magistrate Judge misinterpreted the parties' stipulation under Federal Rule of Civil Procedure 29(b). Federal Rule of Civil Procedure 29(b) provides that the parties may, without court approval, enter into stipulations that govern or limit discovery unless that stipulation interferes with court deadlines. Specifically, the parties may stipulate to "procedures governing or limiting discovery." Fed.

---

[32] *See* ECF No. 976 at 3-4.

R. Civ. P. 29(b). Courts will ordinarily enforce agreements governing discovery and hold the parties to the terms of agreement. *Conservation L. Found., Inc. v. Shell Oil Co.*, No. 21-CV-933 (VDO) (TOF), 2025 WL 842278, at *4 (D. Conn. Mar. 18, 2025); *Bray v. Santander Bank, N.A.*, No. 19-CV-1759 (KAD) (RAR), 2021 WL 10281467, at *2 (D. Conn. Sept. 3, 2021); *see also Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1124 (2d Cir. 1993) (finding that a party should not "be allowed to violate a stipulation into which it freely entered").

Here, there is no dispute that the parties are bound by a Rule 29 stipulation, which includes the following Non-Discoverability provision:

> **Non-Discoverability:** Drafts of expert reports and communications between experts, employees and consultants of Party-related entities on expert opinions or settlement-related issues, including emails, notes, and other correspondence, shall not be subject to discovery. This includes any preliminary findings or informal discussions that have occurred between experts employees or consultants of Party-related entities.[33]

Thus, the parties stipulated to remove certain categories of documents related to the expert report drafting process from discovery, including drafts, communications, emails, notes, and other correspondence.

This Court discerns no abuse of discretion in the Magistrate Judge's conclusion that the agreement was not clear in excluding Dr. Oreskes' AI prompts or queries from the scope of discovery. It was not clearly erroneous for the Magistrate Judge to distinguish AI prompts or queries from the categories of documents in the agreement here, where the agreement does not even mention the use of artificial intelligence. "Prompts," as referenced here and in Dr.

[33] ECF No. 975-2 at 3.

Kaurov's declaration, refers to how users interact with ChatGPT. ChatGPT's official website indicates that "[p]rompting is how you tell ChatGPT what you want to know, make, or change" and that "[a] prompt can be a question, an instruction, or a goal."[34] The website further provides that, after reviewing the response from ChatGPT, users can "use follow-up messages to shape the result."[35] Against this backdrop, it was not clearly erroneous for the Magistrate Judge to conclude that AI prompts are distinguishable from an expert's "notes" related to draft expert opinions and to reject the interpretation of the stipulation in a way that excluded AI prompts from the universe of discoverable materials.

### B. Merits Objections

The Court likewise rejects Plaintiff's objections on the merits. Plaintiff first objects to the Magistrate Judge's reliance on the scope of relevance in Federal Rule of Civil Procedure 26(b) instead of the disclosure obligation on an expert under Federal Rule of Civil Procedure 26(a)(2)(B). But the Magistrate Judge's citation to Rule 26(b) was neither contrary to law nor clearly erroneous in light of that rule proving the framework for certain aspects of expert discovery. And there is no abuse of discretion here because this Court's assessment of whether the motion to compel must be granted is the same under either Rule 26(b) or Rule 26(a)(2)(B).

As to Rule 26(b), this Court concurs with the reasoning provided by the Magistrate Judge in granting the motion to compel. The Magistrate Judge did not clearly err in concluding that an expert witness's methodology is fair ground for discovery. Plaintiff's objection does not instill in the Court a conviction that the Magistrate Judge erred, because this Court

---

[34] CHATGPT, *Prompting*, https://learn.chatgpt.com/docs/prompting [https://perma.cc/NRW5-4TKQ].

[35] *Id.*

concludes that the process by which Dr. Oreskes culled down the defendants' document production into a subset to be worked with falls within the scope of discovery, as it is nonprivileged matter that is relevant to a party's claim or defense and proportional to needs of the case. Fed. R. Civ. P. 26(b). Judge Farrish adequately considered how Defendants satisfied the "relatively low threshold for a party to show that the material sought is relevant to any claim or defense in the litigation." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (cleaned up).

Similarly, pursuant to Rule 26(a)(2)(B), this Court concludes that Plaintiff must disclose artificial intelligence prompts and queries used by Dr. Oreskes or her team in the course of producing her expert witness report. Where a party seeks to introduce evidence through an expert witness, the "disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Witnesses who are specially employed to provide expert testimony in a case have an affirmative duty to provide a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them;" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii).

Here, the Court concludes that artificial intelligence prompts or queries used by Dr. Oreskes or her team in the course of producing her expert witness report is discoverable under Rule 26(a)(2)(B)(i) because they comprise "the basis" for the opinions that Dr. Oreskes will express. As noted above, ChatGPT's website indicates that "[p]rompting is how you tell ChatGPT what you want to know, make, or change" and that, as part of the prompting process,

users can "use follow-up messages to shape the result."[36] To review and search the produced documents in this litigation with ChatGPT, Dr. Oreskes or Dr. Kaurov used prompts or queries and model outputs as an intermediate tool to identify potentially relevant documents for further review.[37] At her deposition, Dr. Oreskes testified that she used "AI as a sieve to identify all the documents that could be relevant to a particular question" and to "go through all of the documents provided by the Defendant to find all of the documents that mention sea level rise."[38] To do this, Dr. Oreskes discussed with her research assistant what the prompts would be and reviewed the documents after the analysis was run.[39] Thus, it appears that the prompts and queries comprise the basis for Dr. Oreskes's opinions.

Finally, the Court rejects Plaintiff's argument that the Magistrate Judge erred in compelling production of materials that, based on counsel's representations, do not exist. Judge Farrish correctly acknowledged that, under ordinary circumstances, courts generally should deny a motion to compel when a party avers in good faith that the items sought simply do not exist, or are not in his possession, custody, or control. In the absence of any showing to the contrary, a court may accept the representations of counsel that materials never existed. *See Hollis v. Dep't of Mental Health*, No. 14-CV-516 (AWT), 2016 WL 1408077, at *6 (D. Conn. Apr. 8, 2016). But Judge Farrish did not clearly err in concluding that there was an evidence-backed reason for doubting Plaintiff's representation that materials never existed. Dr.

---

[36] *Id.*

[37] ECF No. 941-4 at 2.

[38] ECF No. 863 at 225:11–20.

[39] *Id.* at 226:1–7 (Q: So who actually ran the AI searches, prompts, for you? A: Well, this was discussed in the document we provided. Sasha and I sat down together to discuss what the prompts would be. Sasha ran the analysis, and then I reviewed all the documents.").

Oreskes's assistant, Dr. Kaurov, referenced "prompt[s]" in his declaration. Specifically, to review and search the produced documents in this litigation, Dr. Kaurov represents that prompts or queries and model outputs were used interactively as an intermediate tool to identify potentially relevant documents for further review.[40] Indeed, Dr. Oreskes discussed Dr. Kaurov, her research assistant, what the prompts would be and reviewed the documents after the analysis was run.[41] The testimony under penalty of perjury provided by Dr. Kaurov and Dr. Oreskes comprise "solid evidence" that AI prompts or queries used by Drs. Oreskes and Kaurov existed at one time, and thus, an order of production is warranted. *Lewis v. Doe*, No. 19-cv-2015 (JCH) (TOF), 2021 WL 863473, at *5 (D. Conn. Mar. 8, 2021); *see also Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs.*, 318 F.R.D. 28, 43 (S.D.N.Y. 2016) (issuing order of production where a party came forward with "specific evidence to call into question [the] contention that no further responsive documents exist").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's objections are **overruled,** and the Magistrate Judge's Order is affirmed in its entirety. The stay is **lifted** and Plaintiff is directed to comply in full with Judge Farrish's May 18, 2026, order by no later than **December 18, 2026**.

**SO ORDERED.**

Hartford, Connecticut
November 20, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

[40] ECF No. 941-4 at 3.

[41] ECF No. 863 at 226:1–7 (Q: So who actually ran the AI searches, prompts, for you? A: Well, this was discussed in the document we provided. Sasha and I sat down together to discuss what the prompts would be. Sasha ran the analysis, and then I reviewed all the documents.").